UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MOOG INC.,

                                      Plaintiff,

          v.                                               Case No. 1:22-cv-00187-LJV-JJM

SKYRYSE, INC., ROBERT ALIN PILKINGTON,
MISOOK KIM, and DOES NOS. 1-50,

                                      Defendants.

_____


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
SKYRYSE'S CONTINGENT MOTION TO DISMISS COUNTS I, II, V, VI, IX,
AND X OF PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**


**SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP**
*Attorneys for Moog Inc.*
Rena Andoh
Travis J. Anderson (*pro hac vice*)
Tyler E. Baker (*pro hac vice motion filed*)
Kazim A. Naqvi (*pro hac vice*)
30 Rockefeller Plaza
New York, New York 10112
212.653.8700


**HODGSON RUSS LLP**
*Attorneys for Moog Inc.*
Robert J. Fluskey, Jr.
Melissa N. Subjeck
Pauline T. Muto
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, NY  14202-4040
716.856.4000

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ..............................................................................................................1

II.   RELEVANT PROCEDURAL HISTORY ........................................................................1

III.  LEGAL STANDARD ........................................................................................................2

IV.   ARGUMENT ....................................................................................................................3

  A.   Under *Twombly*, Moog Has Plausibly Pleaded Trade Secret
       Misappropriation by Skyryse, and Therefore Counts I and II of the
       Complaint Should Survive ........................................................................................3

    1.   Moog Appropriately Pleads Certain Facts "On Information and
         Belief" ...........................................................................................................3

    2.   Moog's allegations are not conclusory as to Skyryse and Moog has
         pleaded sufficient facts at this stage as to Skyryse's wrongful
         misappropriation and other harmful conduct, and is entitled to all
         reasonable inferences ....................................................................................6

    3.   Moog does not impermissibly rely on group pleading ..............................15

    4.   Moog Has Sufficiently Stated a Claim For Each Additional Cause
         of Action Challenged by Skyryse: Unfair Competition,
         Conspiracy, Tortious Interference With Prospective Economic
         Advantage, and Unjust Enrichment ...........................................................17

      (a)   Moog's claim for unfair competition against Skyryse
            (Count V) is not duplicative ...........................................................17

      (b)   Moog has stated a plausible claim for conspiracy against
            Skyryse (Count VI). .......................................................................20

      (c)   Moog has stated a plausible claim for tortious interference
            with prospective economic advantage against Skyryse
            (Count VI). .....................................................................................22

      (d)   Moog has stated a plausible claim for unjust enrichment
            against Skyryse (Count X). .............................................................23

  B.   In the event the Court finds any causes of action insufficiently pleaded,
       Moog requests leave to amend the Complaint ........................................................24

V.    CONCLUSION ................................................................................................................26

## TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*Amimon Inc. v. Shenzhen Hollyland Tech Co.*
    No. 20 CIV. 9170 (ER), 2021 WL 5605258 (S.D.N.Y. Nov. 30, 2021) ................................18

*Appalachian Enter., Inc. v. ePayment Sols., Ltd*.
    2004 WL 2813121 (S.D.N.Y. Dec. 8, 2004) ...........................................................................16

*Arista Recs., LLC v. Doe 3*
    604 F.3d 110 (2d Cir. 2010)..............................................................................................3, 4

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009)...........................................................................................................2, 4

*Balance Point Divorce Funding, LLC v. Scrantom*
    978 F. Supp. 2d 341 (S.D.N.Y. 2013)....................................................................9, 10, 11, 12

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007).......................................................................................3, 4, 13, 21, 24

*Big Vision Private Ltd. v. E.I. du Pont de Nemours and Co.*
    610 F. App'x 69 (2nd Cir. 2015) ...........................................................................................18

*Boykin v. KeyCorp*
    521 F.3d 202 (2d Cir. 2008)....................................................................................................3

*Bytemark, Inc. v. Xerox Corp.*
    342 F. Supp. 3d 496 (S.D.N.Y. 2018)....................................................................................16

*Campbell All. Grp., Inc. v. Dandekar*
    No. 5:13-CV-00415-FL, 2013 WL 12144048 (E.D.N.C. Dec. 23, 2013) ..............................25

*CBS Corp. v. Dumsday*
    268 A.D.2d 350 (1st Dep't 2000) ..........................................................................................17

*Chambers v. Time Warner, Inc.*
    282 F.3d 147 (2d Cir. 2002)....................................................................................................2

*In re Collins*
    540 B.R. 54 (Bankr. E.D.N.Y. 2015)......................................................................................4

*Data Device Corp. v. W.G. Holt, Inc.*
    No. 19-CV-4105(JS)(ARL), 2020 WL 7024312 (E.D.N.Y. Nov. 30, 2020)
    ...................................................................................................................6, 8, 9, 10, 12

*De Sole v. Knoedler Gallery*
   LLC, 137 F. Supp. 3d 387 (S.D.N.Y. 2015)...........................................................14

*Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.*
   2021 WL 3042616 (N.D. Cal. Jul. 19, 2021).........................................................23

*Exceed Holdings LLC v. Chicago Bd. Options Exch. Inc.*
   2018 WL 4757961 (S.D.N.Y. Sept. 30, 2018).......................................................10

*Ferring B.V. v. Allergan, Inc.*
   4 F. Supp. 3d 612 (S.D.N.Y. 2014) .......................................................................18

*First Manhattan Consulting Grp., LLC v. Novantas, Inc.*
   No. 652492/2014, 2015 WL 3883082 (N.Y. Sup. Ct. June 23, 2015)..............13, 17

*Foman v. Davis*
   371 U.S. 178 (1962)..............................................................................................25

*Frazer Exton Dev., LP v. Kemper Env't, Ltd.*
   No. 03 CIV. 0637 (HB), 2004 WL 1752580 (S.D.N.Y. July 29, 2004), *aff'd*, 153 F.
   App'x 31 (2d Cir. 2005)...........................................................................................5

*Front, Inc. v. Khalil*
   103 A.D.3d 481 (1st Dep't 2013), *aff'd*, 24 N.Y.3d 713 (2015)............................18

*Frydman v. Verschleiser*
   172 F. Supp. 3d 653 (S.D.N.Y. 2016)...................................................................12

*Installed Bldg. Prod., LLC v. Cottrell*
   No. 13-CV-1112-ASC, 2014 WL 3729369 (W.D.N.Y. July 25, 2014) ..............2, 6

*In re Interconnect Telephone Servs., Inc.*
   54 B.R. 859 (Bankr. S.D.N.Y. 1985).....................................................................19

*ITC Ltd. v Punchgini, Inc.*
   9 N.Y.3d 467 (2007) .............................................................................................17

*In re Ivan F. Boesky Sec. Litig.*
   36 F.3d 255 (2d Cir.1994)......................................................................................14

*Koam Produce, Inc. v. DiMare Homestead, Inc.*
   213 F. Supp. 2d 314 (S.D.N.Y. 2002), *aff'd*, 329 F.3d 123 (2d Cir. 2003) ...........14

*Lindner v. Int'l Bus. Machs. Corp.*
   06-cv-4751 (RJS), 2008 WL 2461934 (S.D.N.Y. June 18, 2008)...........................4

*Lopez v. BigCommerce, Inc.*
   No. 16-CV-8970 (JPO), 2017 WL 3278932 (S.D.N.Y. Aug. 1, 2017) ...................16

*Manchanda v. Navient Student Loans*
    No. 19CV5121, 2020 WL 5802238 (S.D.N.Y. Sept. 29, 2020) .........................................15, 16

*Mastercraft Decorators, Inc. v. Orlando*
    356 F. Supp. 3d 259 (W.D.N.Y. 2018) ...................................................................................9

*Medtech Prod. Inc. v. Ranir, LLC*
    596 F. Supp. 2d 778 (S.D.N.Y. 2008).............................................................................13, 22

*Member Servs., Inc. v. Sec. Mut. Life Ins. Co. of New York*
    No. 06-CV-1164, 2010 WL 3907489 (N.D.N.Y. Sept. 30, 2010)..........................................18

*Next Commc'ns, Inc. v. Viber Media, Inc.*
    No. 14-CV-8190 (RJS), 2016 WL 1275659 (S.D.N.Y. Mar. 30, 2016)...................................4

*Nokaj v. N. E. Dental Mgmt., LLC*
    No. 16-CV-3035 (KMK), 2019 WL 634656 (S.D.N.Y. Feb. 14, 2019)...............................15

*Ochre LLC v. Rockwell Architecture Plan. & Design, P.C.*
    No. 12 CIV. 2837 KBF, 2012 WL 6082387 (S.D.N.Y. Dec. 3, 2012)..............................15, 16

*PharmacyChecker.com, LLC v. National Assn. of Boards of Pharmacy*
    530 F. Supp. 3d 301 (S.D.N.Y. 2021).....................................................................................21

*PRCM Advisers LLC v. Two Harbors Inv. Corp.*
    2021 WL 2582132 (S.D.N.Y. Jun. 23, 2021) .........................................................................23

*R.R. Donnelley & Sons Co. v. Marino*
    505 F. Supp. 3d 194 (W.D.N.Y. 2020).............................................................................12, 18

*Reading Intern., Inc. v. Oaktree Capital Mgmt. LLC*
    317 F. Supp. 2d 301 (S.D.N.Y. 2003).....................................................................................22

*Roy Exp. Co. Establishment of Vaduz, Liechtenstein v. Columbia Broad. Sys., Inc.*
    672 F.2d 1095 (2d Cir. 1982)..................................................................................................17

*Samanich v. Facebook*
    2021 WL 2856634 (E.D.N.Y. July 8, 2021) (emphasis in Skyryse's Motion Br. )................19

*Soo Park v. Thompson*
    851 F.3d 910 (9th Cir. 2017) ..................................................................................................21

*State v. Panex Indus., Inc.*
    No. 94-CV-0400E(H), 1997 WL 128369 (W.D.N.Y. Mar. 14, 1997) ....................................25

*Tocker v. Philip Morris Co., Inc.*
    470 F.3d 481 (2d Cir. 2006)....................................................................................................24

*UFCW Loc. 174 Com. Health Care Fund v. Homestead Meadows Foods Corp.*
    No. 05 CIV. 7098 (DLC), 2005 WL 2875313 (S.D.N.Y. Nov. 1, 2005) ..................................4

*Uni-Systems, LLC v. U.S. Tennis Ass'n, Inc.*
    350 F. Supp. 3d 143 (E.D.N.Y. 2018) ..................................................................................18

*Uni-World Cap., L.P. v. Preferred Fragrance, Inc.*
    43 F. Supp. 3d 236 (S.D.N.Y. 2014)....................................................................................25

*United Rentals, Inc. v. Price*
    473 F. Supp. 2d 342 (D. Conn. 2007)..................................................................................23

*ValveTech, Inc. v. Aerojet Rocketdyne, Inc.*
    No. 17-CV-6788-FPG, 2019 WL 4688737 (W.D.N.Y. Sept. 26, 2019) ...............................8

*Yahoo! Inc. v. XYZ Cos.*
    872 F. Supp. 2d 300 (S.D.N.Y. 2011)..................................................................................21

*Zylon Corp. v. Medtronic, Inc.*
    137 A.D.3d 462 (1st Dep't 2016) ........................................................................................20

<u>Statutes</u>

18 U.S.C. § 1839(3) ..................................................................................................................10, 11

<u>Other Authorities</u>

Fed. R. Civ. P. 12(b)(6)...........................................................................................................1, 2, 6

Fed. R. Civ. P. 15(a) ....................................................................................................................24

RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT §§ 40 & 42 (2011).............24

Rule 8 ............................................................................................................................................15

Rule 8(a).........................................................................................................................................16

Plaintiff Moog Inc. ("Plaintiff" or "Moog"), by and through its undersigned counsel, hereby submits this memorandum of law in opposition (the "Opposition") to Defendant Skyryse, Inc.'s ("Skyryse") contingent motion to dismiss Counts I, II, V, VI, IX, and X of Moog's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion").

## I.       **INTRODUCTION**

Skyryse's Motion is properly denied as Moog's Complaint contains sufficient allegations to satisfy *Twombly*'s pleading requirements.  Skyryse's Motion ignores material portions of the Complaint which satisfy the requisite pleading standard at this procedural stage, and also ignores the requirement under Rule 12(b)(6) that the allegations in the complaint must be accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor.  Instead, Skyryse relies on three heavily-repeated, but inaccurate refrains: (1) Moog is not entitled here to plead in part on "information and belief" (in fact, it is, given the circumstances here); (2) Moog has made nothing but conclusory allegations against Skyryse (the face of the Complaint says otherwise); and (3) Skyryse did not actually engage in the alleged conduct (this is a merits argument not appropriate on a Rule 12(b)(6) motion, where factual allegations must be presumed to be true). As explained further herein, a fair and complete reading of Moog's Complaint demonstrates that Moog has in fact alleged facts to state plausible claims for relief, including for trade secrets misappropriation, against Skyryse, and Skyryse's Motion is therefore properly denied in full.

## II.       **RELEVANT PROCEDURAL HISTORY[1]**

On March 7, 2022, Moog initiated this action and filed a Motion for Temporary Restraining Order/Preliminary Injunction seeking, among other things, Defendants' turnover to a neutral forensic firm of all Moog non-public information in their possession (and any data

---

[1] For a full recitation of the facts, Plaintiff respectfully refers the Court to the Complaint. (Dkt. 1.)  Relevant facts from the Complaint are cited to throughout this Opposition.

incorporating such information) and any electronic devices containing such information. (Dkts. 4, 4-32.)  On March 11, 2022, Defendants stipulated to an order with all of the substantive relief Moog sought in its moving papers, including return of all direct and derivative Moog non-public information on or before April 1, 2022. (Dkts. 25, 28.)[2]

### III.   <u>LEGAL STANDARD</u>

A complaint survives a motion to dismiss under Rule 12(b)(6) when it states a plausible claim for relief through "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).  On a motion to dismiss, "the Court must 'accept[ ] as true the complaint's factual allegations and draw [ ] all reasonable inferences in the plaintiff's favor.'"  *Installed Bldg. Prod., LLC v. Cottrell*, No. 13-CV-1112-ASC, 2014 WL 3729369, at *1 (W.D.N.Y. July 25, 2014) (quoting *New York Life Ins. Co. v. United States*, 724 F.3d 256 (2d Cir. 2013)).  It is not necessary for the complaint to assert "detailed factual allegations," but "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true." *Id.*  Further, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (quotations and citations omitted).

---

[2] On April 1, 2022: (1) Kim and Pilkington turned over a total of 23 electronic devices to the forensics firm; (2) Skyryse turned over Kim and Pilkington's Skyryse-issued laptop devices; (3)Skyryse admitted it found 11,093 files on Pilkington's Skyryse device that matched the file names of those Kim took from Moog; and (4) Skyryse admitted that Kim's Skyryse-issued laptop received data from the devices she used to copy Moog's data *See* Exhibit A (Moog's April 7, 2022 letter submission) to the Declaration of Rena Andoh (dated Apr. 12, 2022) in support of this Opposition ("Andoh Decl.").

## IV.     ARGUMENT

A.     **Under *Twombly*, Moog Has Plausibly Pleaded Trade Secret Misappropriation by Skyryse, and Therefore Counts I and II of the Complaint Should Survive**

1.     **Moog Appropriately Pleads Certain Facts "On Information and Belief"**

The Second Circuit has made clear that "[t]he *Twombly* plausibility standard . . . **does not prevent a plaintiff from 'pleading facts alleged 'upon information and belief' ' where the facts are peculiarly within the possession and control of the defendant**, or where the belief is based on factual information that makes the inference of culpability plausible.**" *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (emphasis added) (citing *Boykin v. KeyCorp,* 521 F.3d 202, 215 (2d Cir. 2008) and *Iqbal,* 129 S. Ct. at 1953); *see Twombly* 550 U.S. at 556 ("[a]sking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal[ity].").  Indeed, the Second Circuit has explained that where certain information is "particularly within [the defendant]'s knowledge and control . . .  [p]leading on the basis of information and belief is generally appropriate under such circumstances." *Boykin*, 521 F.3d at 215.

This case presents the precise scenario envisioned by the above authority.  Skyryse's Motion argues that the Complaint fails without specifics of Skyryse's use of misappropriated information. *See, e.g.*, Motion Br. at 2.  But that is not what the law requires at this stage of the proceedings, and without discovery, Moog is of course presently without the benefit of access to (i) Skyryse's internal communications, (ii) Skyryse's servers, computers and other devices that contain the types of materials at issue in this case, (iii) Skyryse's two electronic devices and the individual defendants' 23 electronic devices turned over to the forensics firm; (iv) Skyryse's products in development, and (v) Skyryse's software code, drawings, and other materials for the

same.  In other words, Moog has no visibility into the types of evidence that would typically demonstrate use of the stolen materials in Skyryse's business activities.  Moog therefore cannot be faulted at this point for not knowing the full specifics of how Skyryse has integrated or utilized Moog's proprietary material in, or in development of, Skyryse's own competing flight control systems and software.  "At this stage, without discovery, it is to be expected that Plaintiff[] would have limited knowledge of the extent to which Defendant has used [its] trade secrets."  *Next Commc'ns, Inc. v. Viber Media, Inc.*, No. 14-CV-8190 (RJS), 2016 WL 1275659, at *5 (S.D.N.Y. Mar. 30, 2016) (denying motion to dismiss on trade secret misappropriation claim and finding plaintiffs sufficiently alleged that defendant used their trade secrets in developing a feature for its own app); *see also UFCW Loc. 174 Com. Health Care Fund v. Homestead Meadows Foods Corp.*, No. 05 CIV. 7098 (DLC), 2005 WL 2875313, at *2 (S.D.N.Y. Nov. 1, 2005) ("[defendant] objects that many of the facts in the Complaint are pleaded upon information and belief. This formulation is entirely appropriate for facts that are customarily within the possession of the defendants and subject to verification through discovery."); *Arista Recs., LLC*, 604 F.3d 110 at 120-21 (rejecting defendant's "contention that *Twombly* and *Iqbal* require the pleading of specific evidence or extra facts beyond what is needed to make the claim plausible."); *cf. Lindner v. Int'l Bus. Machs. Corp.*, 06-cv-4751 (RJS), 2008 WL 2461934, at *16-17 (S.D.N.Y. June 18, 2008) (allegations based on "information and belief" acceptable regarding information "peculiarly within the opposing party's knowledge").[3]

---

[3] *See also In re Collins*, 540 B.R. 54, 64 (Bankr. E.D.N.Y. 2015) (denying motion to dismiss trade secrets misappropriation claim where defendants contended that trustee did not allege specific instances where defendants used the alleged trade secret, finding that the trustee alleged defendants used the alleged trade secrets to secure contracts and that "[t]he specifics of the proprietary information and trade secrets involved, and the instances when they were used, is the type of information particularly within the control of Defendants that the Trustee may plead on the basis of information and belief.").

Skyryse argues that "the Complaint contains no factual allegations showing Rey or anyone else at Skyryse was aware of or directed Kim to download any Moog material—all of Moog's allegations to that end rest on 'information and belief' alone."  Motion Br. at 4.  But Skyryse's attempt to impliedly distance itself completely from Pilkington in such argument is a red herring because, as alleged, Pilkington *was a senior level employee at Skyryse* when he (and Skyryse) directed Kim to access and copy Moog's data *using Pilkington's branch* in advance of her resignation from Moog, data which was then delivered to Pilkington and Skyryse.  *See, e.g.*, Compl. ¶¶ 92-93, 122, 172.  Skyryse was therefore aware and directed Kim and, as explained further herein, Pilkington's actions were done for and attributable to Skyryse.  Further, Moog's argument is not accurate because Moog in fact does allege that Skyryse coordinated with Pilkington and Kim in order to have Kim access and take Moog's trade secret, proprietary, and confidential data (*see, e.g.*, *id.* ¶¶ 122, 169, 172, 187, 189), and Skyryse and its employees engaged in an aggressive raid of Moog employees to get to such information (*see, e.g.*, *id.* ¶¶ 4, 6-7, 88-107).  Moreover, Moog did not have the benefit of discovery into communications between Skyryse employees (including Rey, Pilkington, and Kim) when it drafted the complaint.  Skyryse's argument that the Complaint somehow lacks allegations of Skyryse's knowledge of, planning of, and active hand in the complained of tortious activity is at odds with the plain text of the Complaint and the black letter law regarding pleading, and should be rejected.[4]

---

[4] In a footnote, Skyryse makes the passing argument that California law should apply to the trade secret misappropriation claim to the extent there is a conflict between New York and California law.  Motion Br. at 7 n.3.  But Skyryse points to no actual *conflict* between the trade secret misappropriation laws of those states; it merely argues California law should govern.  *Frazer Exton Dev., LP v. Kemper Env't, Ltd.*, No. 03 CIV. 0637 (HB), 2004 WL 1752580, at *12 (S.D.N.Y. July 29, 2004), *aff'd*, 153 F. App'x 31 (2d Cir. 2005) ("If no conflict exists, then the court should apply the law of the forum state in which the action is being heard.").  Second, as explained in Moog's oppositions to Defendants' motions to transfer venue, the substantial contacts with New York here dictate application of New York law (*e.g.*, plaintiff Moog is located

2.  **Moog's allegations are not conclusory as to Skyryse and Moog has pleaded sufficient facts at this stage as to Skyryse's wrongful misappropriation and other harmful conduct, and is entitled to all reasonable inferences**

Skyryse argues that "Moog does not make a single factual allegation showing Skyryse ever acquired, used, or disclosed any of the files the individual defendants are alleged to have stolen."  Motion Br. at 2.  Such argument is at direct odds with the face of the Complaint.  *See Data Device Corp. v. W.G. Holt, Inc.*, No. 19-CV-4105(JS)(ARL), 2020 WL 7024312, at *5 (E.D.N.Y. Nov. 30, 2020) ("Fundamentally, Defendants' reading of the Complaint fails to acknowledge Plaintiff's allegations *in their entirety*.") (emphasis added).  Indeed, when considered in specific and in whole, and granting Moog all reasonable inferences as required under Rule 12(b)(6), the Complaint adequately alleges facts of Skyryse's coordinated efforts to target, access, take, and use Moog's trade secret, proprietary, and confidential information for and in its business.  *Installed Bldg. Prod.*, 2014 WL 3729369, at *4 ("the Court's task here is to determine - *when viewing all of the complaint's factual allegations in the light most favorable to the Plaintiff* - whether the information and belief pleadings '*raise a reasonable expectation that discovery will reveal evidence*' proving the Plaintiff's claim*"*) (emphasis added) (quoting *Twombly*, 550 U.S. at 556).  For example, the Complaint expressly alleges that:

- "Skyryse made the strategic decision to take what it could not develop quickly enough, and engage in a 'full court press' to take from Moog as many key employees as possible so that it can shortcut its own timeline and costs in developing automated flight software and related products." Compl. ¶ 89.

- "The data from the G280 project is directly related to what Skyryse is pursuing and would be extremely valuable to Skyryse and would save it tremendous time, money, effort, and resources in having to build these programs from scratch."  *Id.* ¶ 153.

- Skyryse "recruit[ed] swaths of Moog's valuable employees" in order "to use [Moog's] misappropriated information to improperly shortcut Skyryse's own research and

---

in New York, Defendants committed torts within the state and with effect in the state, choice of law clauses for NDAs with Skyryse are New York, etc…).

development costs and timeline to give Skyryse a competitive advantage, and undercut, steal, and/or interfere with Moog's business." *Id.* ¶ 4; *see also id.* ¶¶ 90, 107, 157, 220 (detailing Gonzalo Rey's targeted solicitation efforts of key Moog developers who worked on underlying flight control software trade secret technologies Platform and eRTOS).

- "Aware of the secrecy and value of Moog's trade secrets and confidential and proprietary information . . . Skyryse nevertheless coordinated with Pilkington and Kim in efforts to misappropriate such material of and from Moog" (*id.* ¶¶ 169 & 187), and Skyryse and Pilkington "coordinated" in order to have Kim, "while she was still an employee of Moog, to copy and misappropriate an enormous amount of Moog's confidential, proprietary, and trade secret data and program files . . . and to provide such information to Pilkington and Skyryse for improper use." (*Id.* ¶ 6.)

- Skyryse, Pilkington, and Kim "reached an agreement to commit [misappropriation]. This agreement is indicated by their collaboration and cooperation to use Moog's trade secret, confidential and proprietary information in and for Skyryse's business." *Id.* ¶ 219; *Id.* ¶ 244 ("each of the Defendants committed an act in furtherance of the agreement to commit the above alleged torts, as indicated by *their collaboration and cooperation to use Moog's trade secret, confidential and proprietary information in and for Skyryse's business*.").

- "[T]here was no reason for Kim to access the data in this fashion, let alone copy it, aside from being *directed to do so by* Pilkington *and Skyryse* ahead of her resignation from Moog." *Id.* ¶ 122 (emphasis added).

- "*[I]n coordination with Skyryse*, Kim copied and delivered to Pilkington and Skyryse the data files that she copied from Moog containing Moog's trade secrets and confidential and proprietary information *for Skyryse's use in, in connection with, and for the advancement of Skyryse's business*." *Id.* ¶¶ 172 & 189; *id.* ¶ 212 ("*Skyryse misappropriated* Moog's trade secrets and confidential and proprietary information *on its own and in coordination with Pilkington and Kim*.") (emphasis added); id. ¶ 244 ("*in coordination with Skyryse*, Kim copied nearly all of the files (including coding, testing, and certification files) related to Sensitive Government Programs 1 and 2" and "*in coordination with Skyryse*, Kim copied nearly all of the files (including coding, testing, and certification files) related to the eRTOS Platform flight control software. Sensitive Government Programs 1 and 2 and eRTOS programs are just a few of the many programs that Kim copied in their entirety or near entirety, at the instruction of Pilkington, *and in coordination with Skyryse*.") (emphasis added); *see also id.* ¶¶ 174, 191, 211.

- "*Skyryse used* the confidential information that Moog provided under the NDAs in an improper manner, including *to develop its own competing flight control systems and software*, and to raid and solicit Moog's most knowledgeable employees regarding its flight control software." *Id.* ¶ 212 (emphasis added); *see also id.* ¶¶ 169 & 187.

- "*Skyryse used* information gained from Moog regarding its flight control software for purposes beyond the scope of the limited purpose of the Parties' business engagement in Phase 1 under the SOW including to: 1) develop its own flight control systems and software;

and 2) raid and solicit Moog's key software engineering personnel who have most knowledge of Moog's flight control software."   *Id.* ¶ 229 (emphasis added).

- "Skyryse has, in bad faith, employed unfair means, including but not limited to inducing Pilkington and Kim to: violate their duties of loyalty to Moog; lure away key software development employees from Moog; and, misappropriate Moog's trade secret, confidential, and proprietary information, as part of a deliberate and malicious strategy to harm Moog's business and unfairly trade on Moog's investments of time and money in software and employees." *Id.* ¶ 208.

- Skyryse has "unfairly compet[ed] by simultaneously crippling Moog's staffing numbers while having former Moog employees utilize and build on Moog's confidential, proprietary, and trade secret information for Skyryse's benefit." *Id.* ¶ 7; *see id.* ¶ 143.

The Complaint thus amply alleges that not only did Skyryse and its employees engage in a coordinated effort to improperly obtain Moog's trade secret, proprietary, and confidential information, but also that Skyryse used such information for development of its own competing flight control systems and software.  In the same way that Moog is permitted to allege certain facts on "information and belief" (based on the circumstances of material information being uniquely in Skyryse's possession (*see* Section VI.A.1, *supra*)), Moog is also, at this stage, not required to allege exactly how Skyryse misused Moog's trade secrets.

For example, in *ValveTech, Inc. v. Aerojet Rocketdyne, Inc.*, No. 17-CV-6788-FPG, 2019 WL 4688737 (W.D.N.Y. Sept. 26, 2019), this Court evaluated a motion to dismiss federal and state trade secret misappropriation claims, in which the defendant (just like Skyryse here) asserted that the plaintiff had not "properly alleged its wrongful acquisition, disclosure, or use of any trade secrets." *Id.* at *5.  In denying the defendant's motion, this Court explained that the plaintiff was "not required to 'plead exactly' how [the defendant] improperly obtained or used the alleged trade secrets," before discovery, "since [the defendant] is the only one who has that information at this time." *Id.* (citation omitted); *see also Data Device*, 2020 WL 7024312, at *4

(same).[5]  The same reasoning should apply here, especially given that Moog's allegations must be viewed as a whole, and facts sufficient to raise an inference of improper use will suffice at this stage.  *See Balance Point Divorce Funding, LLC v. Scrantom*, 978 F. Supp. 2d 341, 353 (S.D.N.Y. 2013) (citing *CBS Corp. v. Dumsday*, 268 A.D.2d 350, 353 (1st Dep't 2000)).

The *Balance Point* case is instructive.  In that case, in moving to dismiss the plaintiff's trade secret misappropriation claim, the defendant asserted the claim was deficient because it neither alleged that he used the plaintiff's trade secrets, nor that he employed improper means in obtaining them.  *Id.*  Like Skyryse in the instant action, the defendant did not challenge that the misappropriated information constituted trade secrets or that he obtained a copy of it.  *Id.*  But the defendant argued that mere possession of a trade secret is not sufficient to establish that he used the trade secret in any way.  *Id.*  The court rejected the argument, explaining that "[a] claim of misappropriation is 'rooted in the improper use of trade secrets to gain an advantage over plaintiff.'"  *Id.* (quoting *CBS Corp.*, 268 A.D.2d at 353).  The court found that the plaintiff's "pleadings [gave] rise to a plausible inference that [the defendant] used the purchase agreements [at issue] to gain an advantage over it in competition," and that the defendant was in a

---

[5] The *Data Device* case, which Skyryse also cites, explains why Skyryse's reliance on cases such as *Mastercraft Decorators, Inc. v. Orlando*, 356 F. Supp. 3d 259 (W.D.N.Y. 2018), is misplaced. The *Data Device* court denied a motion to dismiss a trade secret misappropriation claim, and found that "a fair reading of the Complaint in its entirety leads to the reasonable inference that Defendants misappropriated Data Device's trade secrets." 2020 WL 7024312, at *5.  The court further observed that, unlike in *Mastercraft Decorators*, the *Data Device* action involved more than a simple customer list, the use of which would have been easier to ascertain and plead.  *Id.* at *4.  Instead, "Data Device alleges that Defendants used a host of confidential data, including customer configuration and operational preferences and requirements, pricing and margin information, sales activity, and customer identities to bring a new product to market and sell it at competitive costs."  *Id.*  The court found that "[a]t this stage, without discovery, it is to be expected that Plaintiff would have limited knowledge of the extent to which Defendant has used their trade secrets."  *Id.* at *4-5. The court further held that the "Defendants' reading of the Complaint fails to acknowledge Plaintiff's allegations in their entirety," and that a fair reading in its entirety lead to reasonable inferences of trade secret misappropriation.

competitive position to the plaintiff at the time of receipt of the trade secret information in question. *Id.* The court concluded that "[a] reasonable inference from the pleading is that knowledge of the contents of the template of the [plaintiff's purchase] agreement would enable [the competitor] inevitably to better compete with [the plaintiff]." *Id.* If the defendant "took any action in his management of [the competitor] in response to what he saw, it would constitute use of the agreement to gain an advantage over [the plaintiff]." *Id.* Further, the defendant's seeking of the protectable information fell below reasonable conduct standards in the industry, and so improper means were also alleged. *Id.* Stating that a plaintiff need only "plead facts sufficient to raise an inference that a defendant improperly used a trade secret, but need not specifically plead that the defendant used the trade secrets," the court determined that "[b]ecause the complaint plausibly alleges that [the defendant] used the information in [plaintiff]'s purchase agreements and that he obtained the purchase agreements through improper means, the complaint states a claim for misappropriation of trade secrets" *Id.* at 354.

Here, Skyryse's Motion does not argue that Moog has failed to adequately plead trade secrets; it only challenges whether there is sufficient pleading as to Skyryse's acquisition, disclosure, or use of such trade secrets.[6] Moog need not plead disclosure of the trade secrets at issue by Skyryse to sufficiently state a claim, and "acquisition" and "use" are alternative bases for liability under the DTSA (*see* 18 U.S.C. § 1839),[7] but in any event Moog has pleaded

[6] Skyryse's reliance on *Exceed Holdings LLC v. Chicago Bd. Options Exch. Inc*., 2018 WL 4757961, at \*6 (S.D.N.Y. Sept. 30, 2018) is misguided. There, the court found no factual allegations that the defendant CBOE "disclosed" the trade secret information at issue to a third party entity, VEST (i.e. facts alleged showing that VEST received information from CBOE). Here, Moog has sufficiently alleged that Skyryse received Moog's proprietary information from Kim/Pilkington, and used such information in its business. Moog is not accusing Skyryse of "disclosing" this information to another party.

[7] As Skyryse's own cited case law makes clear, "disclosure" is not the only form of trade secret misappropriation, either under the DTSA or state law. *See Data Device*, 2020 WL 7024312, at

acquisition and use by Skyryse, and at a very minimum, has "plead[ed] facts sufficient to raise an inference that [Skyryse] improperly used a trade secret." *Balance Point*, 978 F. Supp. 2d at 353.

Moog has alleged that Skyryse, a direct competitor in automated flight software industry, "recruit[ed] swaths of Moog's valuable employees" in order "to use [Moog's] misappropriated information to improperly shortcut Skyryse's own research and development costs and timeline to give Skyryse a competitive advantage, and undercut, steal, and/or interfere with Moog's business." Compl. ¶ 4. Moog has further alleged that "[a]ware of the secrecy and value of Moog's trade secrets and confidential and proprietary information . . . Skyryse nevertheless coordinated with Pilkington and Kim in efforts to misappropriate such material of and from Moog" and that Skyryse, Pilkington, and Kim conspired in order to have Kim, "while she was still an employee of Moog, to copy and misappropriate an enormous amount of Moog's confidential, proprietary, and trade secret data and program files . . . and to provide such information to Pilkington and Skyryse for improper use." *Id.* ¶¶ 6, 69 & 187. Moog has further alleged that "under Pilkington's instruction, and in coordination with Skyryse, Kim copied and delivered to Pilkington and Skyryse the data files that she copied from Moog containing Moog's trade secrets and confidential and proprietary information for Skyryse's use in, in connection with, and for the advancement of Skyryse's business." *Id.* ¶¶ 172 & 189. Moog has therefore alleged improper means employed, and Skyryse's acquisition and use of the trade secret information at issue, and therefore "[a] reasonable inference from the pleading is that knowledge of the contents of" Moog's trade secret and proprietary information "would enable [Skyryse]

---

*3 ("the DTSA provides three alternative bases for liability: (1) acquisition, (2) disclosure, or (3) use.") (citing 18 U.S.C. § 1839(3)).

inevitably to better compete with [Moog]."  *Balance Point*, 978 F. Supp. 2d at 353.[8]

Case law makes clear that the fact that it may take a defendant years to design and develop its product "does not rebut the plausible inference that Defendants used Plaintiff's confidential" information "to successfully design, develop, market and sell" the defendant's own product line, especially given Moog's allegation, "which the Court must accept as true," that the lead time to develop the automated flight software at issue here takes years.  *Data Device*, 2020 WL 7024312, at *4.  Here, Moog has alleged that "Moog's executive Platform base flight control software and related project-specific applications," to which Pilkington and Kim had senior level access, was "developed over many years" and "is the result of years of manpower and hundreds of millions of dollars invested by Moog," and that "[i]f another party gained access to Moog's flight control software and related data, it would give that party a substantial and unfair competitive advantage as it would save that party literally tens of millions of dollars and several years investing in development and testing that software."  Compl. ¶¶ 5-6, 143.  Moog further

---

[8] Skyryse's reliance on *Frydman v. Verschleiser*, 172 F. Supp. 3d 653 (S.D.N.Y. 2016) and *R.R. Donnelley & Sons Co. v. Marino*, 505 F. Supp. 3d 194 (W.D.N.Y. 2020), for its arguments that Moog has not sufficiently pleaded against Skyryse, is misplaced.  While the plaintiff in *Frydman* included mere conclusory labels in attributing an employee's alleged actions to the company (e.g., "effected the scheme through Akerman"), by contrast, Moog's Complaint dedicates numerous paragraphs to describing Skyryse's plan to raid Moog employees as a means to getting at Moog's proprietary information and coordination with Pilkington and Kim to have Kim thieve Moog's data and deliver it to Skyryse for use in Skyryse's business.  Skyryse's reliance on *Marino* is likewise misguided.  In *Marino*, the plaintiffs simply concluded that the defendant employer, Mercury, knew of the employees' contractual obligations and hired them in order to benefit the company and become a competitor.  The court wrote: "Plaintiffs allege that Marino and Gaborski did so, and that Mercury hired Marino and Gaborski. But this is not enough to create liability as to Mercury… Plaintiffs focus exclusively on conduct purportedly engaged in by Marino and Gaborski."  *Id.* at 207.  The court's determination further hinged on the fact that the plaintiff cited no case law to support the proposition that "a party can be brought into a trade secret misappropriation case simply by offering employment to an employee who has been disloyal to his or her former employer."  *Id.*  By contrast, Moog's Complaint alleges a very active role by Skyryse, using multiple employees to effectuate a multi-pronged plan.

alleges that to "obtain a significant advantage against competitors, Skyryse made the strategic decision to take what it could not develop quickly enough, and engage in a 'full court press' to take from Moog as many key employees as possible so that it can shortcut its own timeline and costs in developing automated flight software and related products." *Id.* ¶ 89. Skyryse's own cited cases recognize that this "shortcutting" of development time qualifies as sufficiently pleaded use in light of the circumstances. In *Medtech Prod. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 787-90 (S.D.N.Y. 2008), the court found that the plaintiff had plausibly pleaded a claim for trade secret misappropriation where the plaintiff was without the benefit of discovery on the matter. The plaintiff alleged that, like here, two former employees left for the defendant company with extensive knowledge of the plaintiff's business and the production process for the plaintiff's proprietary product, and disclosed the plaintiff's trade secrets in violation of confidentiality agreements in place, and that, shortly thereafter, the defendant company (with little experience in the relevant market), was able to rush a competing product to the market, with a greatly reduced development process. *See id.* The court concluded that "[t]hese allegations make [plaintiff]'s claim for trade secret misappropriation plausible." *Id.* at 790.

Like the plaintiff in *Medtech*, Moog here has alleged that two former employees, with substantial knowledge of and exposure to Moog's proprietary and trade secret production information, took and disclosed such information to Skyryse, which enabled Skyryse to "improperly shortcut Skyryse's own research and development costs and timeline to give Skyryse a competitive advantage, and undercut, steal, and/or interfere with Moog's business." Compl. ¶ 4. Therefore, under Skyryse's own cited authority, Moog's allegations satisfy the *Twombly* plausibility pleading standard for misappropriation of trade secrets. *See also First Manhattan Consulting Grp., LLC v. Novantas, Inc.*, No. 652492/2014, 2015 WL 3883082, at *9

(N.Y. Sup. Ct. June 23, 2015) (in action against two former employees and their new employer, finding that complaint sufficiently pleaded use of plaintiff's trade secrets by defendant new employer to gain an advantage over the plaintiff, and that the allegations allowed the inference that the former employees breached their agreements with the plaintiff, and that the new employer induced such breaches, in order to wrongfully usurp the plaintiff's opportunities).

In arguing that the Complaint fails to sufficiently allege facts as to Skyryse's actions, the Motion also fails to acknowledge that once Pilkington was hired by Skyryse, he was a Skyryse employee working on behalf of Skyryse, and that his actions for the benefit of the company can be attributed to Skyryse. It does not matter if the actions were illegal or beyond the written scope of the employee's job description, so long as they were done to further the interests of the employer. *See De Sole v. Knoedler Gallery*, LLC, 137 F. Supp. 3d 387, 418 (S.D.N.Y. 2015) (finding that art gallery could be held responsible for fraudulent actions of gallery employees because the sale of artwork, even fraudulently, was within their functions to sell artwork at a profit, and "[a]n employee's actions fall within the scope of employment where the purpose in performing such actions is to further the employer's interest); *cf. In re Ivan F. Boesky Sec. Litig.*, 36 F.3d 255, 265 (2d Cir.1994) ("Acts are within the scope of employment if they in some way further the interests of the employer, and not solely benefit the employee."); *Koam Produce, Inc. v. DiMare Homestead, Inc.*, 213 F. Supp. 2d 314, 325 (S.D.N.Y. 2002), *aff'd*, 329 F.3d 123 (2d Cir. 2003) (employer was liable for actions of employee who bribed inspectors because the purpose of the employee's payments was to influence the outcome of the inspection of fresh fruit and produce conducted at employer's location, and so bribes were paid in the course of employee's employment, for the benefit of the employer, and were ratified by the employer). The Complaint alleges that Pilkington resigned from Moog on November 11, 2021 (Compl. ¶

101), and on November 19, 2021, Kim, while still a Moog employee and at Pilkington's instruction (with Skyryse's input), copied the data from Moog's internal servers to an external hard drive using Pilkington's branch, and then delivered such data to Pilkington and Skyryse for Skyryse's benefit (*id.* ¶ 112, 122, 172).  Thus, Pilkington's alleged actions that occurred after his hiring by Skyryse and done to and for Skyryse's benefit are attributable to Skyryse as his employer.  *Nokaj v. N. E. Dental Mgmt., LLC*, No. 16-CV-3035 (KMK), 2019 WL 634656, at *12 (S.D.N.Y. Feb. 14, 2019) ("an employer may be held responsible where an employee's actions were at least partially in furtherance of his employer's interests.").  Notably, Skyryse's motion does not disclaim any agency model between Skyryse and Pilkington, and instead merely argues that the Complaint alleges certain and specific actions by Pilkington and not by Skyryse.  But Skyryse is responsible and can be held accountable for Pilkington's actions at least after November 11, 2021, which only adds weight to the conclusion that Moog has sufficiently pleaded misappropriation by Skyryse.

### 3.   Moog does not impermissibly rely on group pleading

"'Nothing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant.'" *Manchanda v. Navient Student Loans*, No. 19CV5121, 2020 WL 5802238, at *2 (S.D.N.Y. Sept. 29, 2020) (quoting *Vantone Grp. Ltd. Liab. Co. v. Yangpu NGT Indus. Co.*, 2015 WL 4040882, at *4 (S.D.N.Y. July 2, 2015)).  Also, Moog has "provide[d] a plausible factual basis to distinguish the conduct of each of the defendants."  *Ochre LLC v. Rockwell Architecture Plan. & Design, P.C.*, No. 12 CIV 2837 KBF, 2012 WL 6082387, at *6 (S.D.N.Y. Dec. 3, 2012).  While the Complaint alleges that the Defendants engaged in some collective activity (for example, the agreement to misappropriate Moog's proprietary information), or that a result occurred because of that collective activity ("as a result of Defendants' collective actions, Skyryse now has

Moog's trade secret, confidential, and proprietary information from theft of over 136,000 files that Skyryse can use and, on information and belief, is using to its competitive advantage" (Compl. ¶¶ 174 & 191)), the Complaint also sets forth numerous allegations identifying which particular defendant engaged in particular conduct, and which ascribe particular actions to particular defendants.  In other words, "the Complaint attributes some specific conduct to each Defendant" or pleads "against both [Skyryse] and [the individual defendants]—acting either individually or jointly." *Manchanda*, 2020 WL 5802238, at *2–3; *see Lopez v. BigCommerce, Inc.*, No. 16-CV-8970 (JPO), 2017 WL 3278932, at *2 (S.D.N.Y. Aug. 1, 2017) (refusing to dismiss complaint on Rule 8(a) grounds even where "the [complaint] frequently refer[red] to '[d]efendants' without distinguishing between [them]" because plaintiff "provide[d] *some* factual basis for liability" and "only two [d]efendants [were] named in the [c]omplaint" (emphasis in original)).  Thus, the Complaint is a far cry from the pleadings in cases relied on by Skyryse, in which the plaintiffs "merely 'lump[ed] all the defendants together in each claim and provid[ed] no factual basis to distinguish their conduct." *Ochre LLC v*, 2012 WL 6082387, at *6.[9]

For example, the Complaint alleges that: "under Pilkington's instruction, and in coordination with Skyryse, Kim copied and delivered to Pilkington and Skyryse the data files

---

[9] In the same way, Skyryse also improperly relies on *Appalachian Enter., Inc. v. ePayment Sols., Ltd.*, 2004 WL 2813121 (S.D.N.Y. Dec. 8, 2004), wherein the court observed that "[t]he complaint merely refers to the culpable acts committed by all seventeen defendants, without any attempt to differentiate which act was taken by which party, or how the parties are interrelated." *Id.* at *7.  This is clearly not the case here based on a fair review of Moog's Complaint, as Moog provides factual allegations regarding each of the defendants' wrongdoings.  For the same reason, Skyryse's reliance on *Bytemark, Inc. v. Xerox Corp.*, 342 F. Supp. 3d 496, 513 (S.D.N.Y. 2018), is misguided, as in that case, the plaintiff only alleged wrongdoing with respect to the "Xerox Entities," yet tried, by group pleading of "Defendants" to ascribe that conduct to defendants Conduent and NJ Transit.  Here, by contrast, Moog has alleged both distinct and collective actions for each of Skyryse, Pilkington, and Kim, and has not relied on pure group pleading to implicate Skyryse.  *Bytemark* is inapposite on this point.

that she copied from Moog containing Moog's trade secrets and confidential and proprietary

information for Skyryse's use in, in connection with, and for the advancement of Skyryse's

business." Compl. ¶¶ 172 & 189.  While such allegation clearly shows the Defendants working

together, it explains each defendant's individual actions and role: Skyryse coordinated with Kim

and Pilkington on copying and delivery of Moog's data files; Pilkington instructed Kim to copy

and deliver the data files; Kim was the one actually performing the copying and delivery to

Pilkington (and Skyryse).  *See also, e.g., id.* ¶¶ 6, 89, 94, 95-100, 102-106, 125.

### 4. Moog Has Sufficiently Stated a Claim For Each Additional Cause of Action Challenged by Skyryse: Unfair Competition, Conspiracy, Tortious Interference With Prospective Economic Advantage, and Unjust Enrichment

#### (a) Moog's claim for unfair competition against Skyryse (Count V) is not duplicative.

The Second Circuit has made clear that a claim for unfair competition under New York

law is "broad and flexible" and "encompass[es] any form of commercial immorality."  *Roy Exp.*

*Co. Establishment of Vaduz, Liechtenstein v. Columbia Broad. Sys., Inc.*, 672 F.2d 1095, 1105

(2d Cir. 1982).  "[A]n unfair competition claim involving misappropriation usually concerns the

taking and use of the plaintiff's property to compete against the plaintiffs own use of the same

property."  *ITC Ltd. v Punchgini, Inc.*, 9 N.Y.3d 467, 478 (2007) (internal quotation marks

omitted.)  "To state such a claim, a plaintiff must demonstrate that it had compiled information

used in its business that provided an opportunity to obtain a competitive advantage and that a

competitor misappropriated it."  *First Manhattan Consulting Grp.*, 2015 WL 3883082, at *7.

Plaintiff's unfair competition claim is adequately pleaded on multiple grounds.  Where,

as here, misappropriation of trade secrets is adequately pleaded, so too is an unfair competition

claim.  *See id.* at *8 ("The complaint also states an unfair competition claim based on Novantas's

misappropriation of FMCG's trade secrets."); *CBS Corp. v. Dumsday*, 268 A.D.2d 350, 353 (1st

Dep't 2000) ("… the scenario set forth by plaintiff permits an inference that defendants improperly used trade secrets in an effort to supplant plaintiff.  Thus, causes of action [for common-law misappropriation and unfair competition] have been stated."); *see also Front, Inc. v. Khalil*, 103 A.D.3d 481, 483 (1st Dep't 2013), *aff'd*, 24 N.Y.3d 713 (2015) (finding same factual allegations stated causes of action for unfair competition and misappropriation of trade secrets).  In addition, the unfair competition claim also survives here because it is broader than the alleged trade secret misappropriation.  *See Amimon Inc. v. Shenzhen Hollyland Tech Co.*, No. 20 CIV 9170 (ER), 2021 WL 5605258, at *14 (S.D.N.Y. Nov. 30, 2021) (denying motion to dismiss and rejecting defendants' argument that "unfair competition claim [was] duplicative of the trade secrets claim because both are based on the same set of facts," explaining that "[a]lthough one approach in the Second Circuit has been to dismiss unfair competition claims when they are duplicative, another has been to simply analyze the claims together.") (distinguishing *Uni-Systems, LLC v. U.S. Tennis Ass'n, Inc.*, 350 F. Supp. 3d 143 (E.D.N.Y. 2018), cited by Skyryse); *Member Servs., Inc. v. Sec. Mut. Life Ins. Co. of New York*, No. 06-CV-1164, 2010 WL 3907489 (N.D.N.Y. Sept. 30, 2010) (rejecting argument that "[a]s Plaintiffs' trade secrets claim must fail, so must their unfair competition claim," and stating that "even where the information taken would not otherwise qualify as a trade secret, the unauthorized physical taking and exploitation of internal company documents for use in a competitor's business constitutes unfair competition.") (citation omitted).[10]

        Moreover, Skyryse's Motion misconstrues Moog's unfair competition claim.  Moog is

_____

[10] Skyryse's citations to *Uni-Systems*, 350 F. Supp. 3d 143, *R.R. Donnelley & Sons Co. v. Marino*, 505 F. Supp. 3d 194, 207 (W.D.N.Y. 2020), *Ferring B.V. v. Allergan, Inc.*, 4 F. Supp. 3d 612 (S.D.N.Y. 2014), and the like are therefore not controlling.  *See also Big Vision Private Ltd. v. E.I. du Pont de Nemours and Co.*, 610 F. App'x 69, 71 (2nd Cir. 2015) ("a plaintiff need not establish misappropriation of a trade secret then, to state a claim for unfair competition.").

not alleging the hiring of dozens of Moog employees alone is unfair competition.  Rather, Moog alleges the raiding of Moog employees was part of a broader bad-faith scheme to misappropriate Moog's labors and gain an unfair competitive advantage over Moog and others in the flight control software market.  *See, e.g.*, Compl. ¶ 89 ("Facing considerable pressure to meet investor expectations and obtain a significant advantage against competitors, Skyryse made the strategic decision to take what it could not develop quickly enough, and engage in a 'full court press' to take from Moog as many key employees as possible so that it can shortcut its own timeline and costs in developing automated flight software and related products."); *id.* ¶ 4 (Skyryse "recruit[ed] swaths of Moog's valuable employees" in order  "to use [Moog's] misappropriated information to improperly shortcut Skyryse's own research and development costs and timeline to give Skyryse a competitive advantage, and undercut, steal, and/or interfere with Moog's business."); *id.* ¶ 208 ("… Skyryse has, in bad faith, employed unfair means, including but not limited to inducing Pilkington and Kim to violate their duties of loyalty to Moog . . ."); *id.* ¶ 211 ("… Skyryse has raided these employees as part of its scheme to gain access to confidential, proprietary trade secret information …"); *id.* ¶ 213 ("… Skyryse has used and continues to use Moog's trade secrets . . . to gain a competitive advantage over Moog (and other competitors) in the flight control software market.").  Skyryse's own cited authority makes clear that "[t]he essence of an unfair competition claim is that the defendant has misappropriated the labors . . . of another and has done so in *bad faith*."  *Samanich v. Facebook*, 2021 WL 2856634, at *7 (E.D.N.Y. July 8, 2021) (emphasis in Skyryse's Motion Br. at 15).

In short, while Moog's claims for trade secret misappropriation and unfair competition are certainly linked, they are not duplicative and thus should survive a motion to dismiss.  *See, e.g., In re Interconnect Telephone Servs., Inc.*, 54 B.R. 859, 863 (Bankr. S.D.N.Y. 1985)

(denying motion to dismiss unfair competition claim because it was "not redundant" of plaintiff's misappropriation claim in that "[i]n the third cause of action, Interconnect makes a broad unfair competition claim premised on the fiduciary duty owed by employees to their employer.  In the fourth cause of action, Interconnect alleges misappropriation of trade secrets, which is not dependent on the existence of a fiduciary duty."); *Zylon Corp. v. Medtronic, Inc.*, 137 A.D.3d 462, 463 (1st Dep't 2016) (affirming denial of motion for summary judgment dismissing misappropriation and unfair competition claims, and finding "[t]he unfair competition claim is not duplicative of the misappropriation of trade secrets claim.").

> **(b)     Moog has stated a plausible claim for conspiracy against Skyryse (Count VI).**

Skyryse argues Moog fails to state a claim for conspiracy because Moog has failed to plead the underlying tort for misappropriation of trade secrets.  But as shown above, Moog has stated a viable misappropriation claim (*see* Section IV.A, *supra*), so Moog has in fact adequately pleaded an underlying tort to state a claim for conspiracy.

Moog has additionally pleaded the additional elements required to claim conspiracy:

i.    an agreement between two or more parties (as indicated by Skyryse's, Pilkington's, and Kim's cooperation and coordination in taking Moog's trade secret and proprietary information) (*e.g.*, Compl. ¶¶ 4, 6, 9, 94, 219);

ii.   an overt act in furtherance of the agreement (the raiding of Moog's employees and the taking of Moog's data and delivery of the same to Skyryse) (*id.* ¶¶ 6, 89, 90-129, 134-141, 220);

iii.  the parties' intentional participation in the furtherance of a plan or purpose (each of Skyryse, Pilkington, and Kim played one or more active roles in the scheme) (*id.* ¶¶ 6, 89, 90-129, 134-141, 220); and

iv.   resulting damage or injury (robbing Moog of its years and millions of dollars of investments to be market first-mover, crippling Moog's software engineering workforce, harm to Moog's reputation, goodwill, and security) (*id.* ¶¶ 142-159, 221-22).

Of course, Moog presently lacks discovery on precisely what was said between Skyryse, Pilkington, and Kim.  But Moog has pleaded sufficient circumstantial facts to reasonably infer a

conspiracy, which is permissible in the circumstances.  *See PharmacyChecker.com, LLC v. National Assn. of Boards of Pharmacy*, 530 F. Supp. 3d 301, 337 (S.D.N.Y. 2021) (denying motion to dismiss conspiracy claim because plaintiff's "allegations are sufficient circumstantial evidence of a conspiracy."); *Yahoo! Inc. v. XYZ Cos.*, 872 F. Supp. 2d 300, 305 (S.D.N.Y. 2011) ("Agreements in civil conspiracies may be inferred from circumstantial evidence, as they are often difficult to prove through direct evidence.") (internal quotations and citation omitted); *cf. Soo Park v. Thompson*, 851 F.3d 910, 928-29 (9th Cir. 2017) (finding that where "complaint alleged facts that are 'suggestive' of an agreement to engage in 'illegal conduct'" and "entire factual context is considered," *Twombly* standard was met to state civil conspiracy claim).

The Complaint alleges that Defendants agreed to misappropriate Moog's proprietary information, as indicated by their cooperation and collaboration and respective roles in carrying out the plan to "recruit swaths of Moog's valuable employees" in order "to use [Moog's] misappropriated information to improperly shortcut Skyryse's own research and development costs and timeline to give Skyryse a competitive advantage, and undercut, steal, and/or interfere with Moog's business."  Compl. ¶ 4.  Indeed, the Complaint alleges Skyryse recruited Gonzalo Rey (who pioneered the development of Moog's flight control software, knew how Moog tested and certified its software, and knew what employees to target), who then led Skyryse's solicitation efforts of Moog's software engineers, which resulted in the pirating of Moog's entire software development team and at least 20 Moog employees, including high-level officers, senior level engineers, coding engineers, and testers.  *See id.* ¶¶142, 209, 220.  Rey had been communicating with Moog employees about joining Skyryse, and disclosed Skyryse's plans to develop products similar to Moog.  *Id.* ¶ 97.  Pilkington left Moog on Nov. 11, 2021 and shortly thereafter joined Skyryse, and was one of those employees who, once at Skyryse, joined its

raiding efforts to obtain Moog's proprietary information, by recruiting Moog's employees and by instructing Kim to download Moog's data on her way out. *Id.* ¶¶ 101-02.  As alleged, Kim agreed to and carried out portions of the scheme, copying "almost the entirety of Moog's flight control software engineering development efforts over the past fifteen years" using Pilkington's branch *less than one week* after Pilkington (her direct supervisor) left Moog for Skyryse and *less than one month* before Kim left for Skyryse, where both Pilkington and Kim are performing the same job functions they performed at Moog. *Id.*, ¶¶112, 114, 120, 122, 125.  Such circumstantial evidence aptly alleges a conspiracy to misappropriate Moog's trade secrets. *See, e.g., Reading Intern., Inc. v. Oaktree Capital Mgmt. LLC*, 317 F. Supp. 2d 301, 319 n.10 (S.D.N.Y. 2003) (denying motion to dismiss civil conspiracy claim because "plaintiffs 'have identified the co-conspirators and described the nature and effect of the alleged conspiracy,' which is sufficient to withstand a motion to dismiss.") (citation omitted).[11]

### (c)   Moog has stated a plausible claim for tortious interference with prospective economic advantage against Skyryse (Count VI).

Next, Skyryse argues that Moog has failed to state a claim for tortious inference with prospective economic advantage because Skyryse's hiring away of Moog's at-will employees cannot support a claim for tortious inference.  Without repeating the argument above, Skyryse did not merely hire away at-will Moog employees Pilkington, Kim, and Rey innocuously in a vacuum, as Skyryse would have it.  To the contrary, Skyryse has hired and continue to employ Pilkington and Kim notwithstanding its knowledge of their theft, and systematically plundered much of Moog's software development team, impairing Moog's ability to support military

---

[11] *Medtech Products Inc v. Ranir LLC*, 596 F. Supp. 2d 778 (S.D.N.Y. 2008), cited by Skyryse, is distinguishable.  There, plaintiff alleged in a single sentence that defendants "conspired, agreed, and planned to use Medtech's confidential and proprietary information."  *Id.* at 795.  As shown above, however, Moog has alleged many facts comprising circumstantial evidence of a conspiracy.

projects requiring employees with "elevated access credentials," and compelling Moog to notify

customers of defendants' theft of Moog's trade secrets, which tarnishes Moog's reputation and

jeopardizes Moog's hard-won relationships with its customers, including the U.S. government.

Compl., ¶¶ 241, 242, 246, 248.  Such allegations are more than sufficient to state a viable claim

for tortious interference with prospective economic advantage.  *See, e.g., United Rentals, Inc. v.*

*Price*, 473 F. Supp. 2d 342, 347 (D. Conn. 2007) (finding that defendant's "disclosure of

United's confidential trade secrets and proprietary information" supported a claim for tortious

interference with United's existing and prospective business relationships).[12]

> **(d)**    **Moog has stated a plausible claim for unjust enrichment against
> Skyryse (Count X)**.

Finally, Skyryse makes the time-worn argument that Moog's unjust enrichment claim

fails because it is merely duplicative of Moog's misappropriation and breach of contract claims,

which Skyrye contends also fail.  Again, Skyryse is wrong.  Moog is entitled to plead unjust

enrichment as an alternative to its misappropriation and/or breach of contract claims, such that if

for some reason Moog does not prevail on its misappropriation and contract claims, Moog still

has an alternative means of recovery.  *See, e.g., PRCM Advisers LLC v. Two Harbors Inv. Corp.*,

2021 WL 2582132, at *18 (S.D.N.Y. Jun. 23, 2021) (denying motion to dismiss unjust

enrichment claim even if cased "on the same factual allegations" as another claim because

"[u]njust enrichment may be pled in the alternative to a contractual claim 'if there is a bona fide

---

[12] Skyryse's reliance on *Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.*, 2021 WL
3042616 (N.D. Cal. Jul. 19, 2021), is unavailing.  There, the district court dismissed plaintiff's
tortious interference claim because "it significantly overlaps with [plaintiff's] misappropriation
of trade secrets claims."  *Id.* at *4.  Here, Moog's claim relies significantly on factual allegations
different from misappropriation, including how defendants' raiding of many Moog employees
with tough-to-get access credentials interfered with Moog's ability to perform under contracts
requiring such credentials, and that defendants' theft of Moog's trade secrets has required Moog
to notify its customers of such theft, which damages Moog's reputation and jeopardizes Moog's
customer relationships—allegations which are not essential to Moog's misappropriation claim.

dispute concerning the [existence] of a contract or whether the contract covers the dispute in issue . . ."); *cf.* RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT §§ 40 & 42 (2011) (unjust enrichment is an equitable theory of relief that may be awarded based on conversion or interference with a trade secret.).

Additionally, Moog's unjust enrichment claims alleges that Skyryse has been enriched not just by Skyryse's trade secrets, but also Skyryse's investments in labor, and confidential and proprietary information that may not technically qualify as a trade secret (*e.g.*, sensitive US Government technical data developed by Moog). *See* Compl. ¶¶ 252-53 ("Defendants have unjustly received and retained the benefits of the efforts and investments of Moog . . . and improperly utilized to their benefit the Moog's effort and investment in a host of employees raided by Defendants and in confidential and proprietary information developed by Moog, to the benefit of Skyryse's business and the advantage of Pilkington and Kim."). Thus, the unjust enrichment claim seeks not to remedy just Skyryse's improper gains from misappropriation of trade secrets *alone*, but rather the whole of Skyryse's ill-gotten gains as a result of raiding Moog's employees and taking people, information, and resources that would save Skyryse years and millions of dollars of investment and develop expenses. *Id.* ¶¶ 89, 153, 252-53.

**B.**     **In the event the Court finds any causes of action insufficiently pleaded, Moog requests leave to amend the Complaint**

While Moog maintains that it has sufficiently pleaded all causes of action to satisfy the *Twombly* pleading standard, in the event that the Court finds any causes of action insufficiently pleaded, Moog respectfully requests leave to amend the Complaint. Under Fed. R. Civ. P. 15(a), even if a court should find that an operative complaint is lacking in specificity, leave to amend to cure any such deficiencies should be "freely given when justice so requires." *Tocker v. Philip Morris Co., Inc.*, 470 F.3d 481, 491 (2d Cir. 2006). Indeed, leave to amend should be denied

only in the face of undue delay, bad faith, undue prejudice, futility of amendment, or where the

movant has repeatedly failed to cure deficiencies in previous amendments.  *Foman v. Davis*, 371

U.S. 178, 182 (1962); *see State v. Panex Indus., Inc.*, No. 94-CV-0400E(H), 1997 WL 128369, at

*2 (W.D.N.Y. Mar. 14, 1997) ("The party opposing a motion for leave to amend has the burden

of establishing that granting such leave would be unduly prejudicial.").

      Here, there is no undue delay (Moog is promptly seeking leave to amend in light of a

motion to dismiss), no bad faith, no undue prejudice to Skyryse (the case has recently begun and

Skyryse would have the opportunity to challenge any amended pleading), amendment is not

futile (Skyryse's arguments on pleading deficiencies go to factual specificity, not legal

impossibility), and there have been no prior amendments.  This request makes additional sense in

light of the circumstances presented here, where certain facts lie uniquely within Skyryse's

control, and the parties are presently conducting expedited discovery on Moog's

misappropriation claims ordered in connection with Moog's motion for a preliminary

injunction.[13]  Moog respectfully requests that in the event that the Court find that one or more

causes of action challenged by Skyryse's Motion fail to state a claim, that Moog be permitted to

amend the Complaint following completion of that ordered expedited discovery.  *See Uni-World

Cap., L.P. v. Preferred Fragrance, Inc.*, 43 F. Supp. 3d 236, 253 n.9 (S.D.N.Y. 2014) (granting

motion to amend complaint while motion for preliminary injunction was pending where motion

to amend was prompted by evidence obtained during expedited discovery); *see also Campbell

All. Grp., Inc. v. Dandekar*, No. 5:13-CV-00415-FL, 2013 WL 12144048, at *1-2, *4 (E.D.N.C.

Dec. 23, 2013) (granting motion for leave to amend complaint while a motion for preliminary

---

[13] Should amendment be permitted at this juncture, the subsequently discovered facts regarding
Alin Pilkington's own download of 1.2 million Moog files, and the discovery of over 11,000
Moog files on Pilkington's Skyryse-issued computer can be added.  *See* Andoh Decl. Ex. A.

injunction was pending and expedited discovery had already been ordered).

## V.    **CONCLUSION**

For the foregoing reasons, Moog respectfully requests Skyryse's Motion be denied.

Dated:  New York, New York
       April 12, 2022

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**

By:      */s/ Rena Andoh*
       Rena Andoh
       Travis J. Anderson (*pro hac vice*)
       Tyler E. Baker (*pro hac vice* forthcoming)
       Kazim A. Naqvi (*pro hac vice*)
    30 Rockefeller Plaza
    New York, New York 10112
    Telephone:  (212) 653-8700

    and

**HODGSON RUSS LLP**

By:      */s/ Robert J. Fluskey, Jr.*
       Robert J. Fluskey, Jr.
       Melissa N. Subjeck
       Pauline T. Muto
    The Guaranty Building
    140 Pearl Street, Suite 100
    Buffalo, New York 14202
    (716) 856-4000

    *Attorneys for Plaintiff Moog Inc.*