UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MOOG INC.,

                        Plaintiff,

            v.                                          Case No. 1:22-cv-00187-LJV-JJM

SKYRYSE, INC., ROBERT ALIN PILKINGTON,
MISOOK KIM, and DOES NOS. 1-50,

                        Defendants.


# MOOG'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANT SKYRYSE'S
## MOTION TO DISMISS OR, ALTERNATIVELY, TO TRANSFER VENUE


**SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP**
*Attorneys for Moog Inc.*
Rena Andoh
Travis J. Anderson (*pro hac vice*)
Tyler E. Baker (*pro hac vice filed*)
Kazim A. Naqvi (*pro hac vice*)
30 Rockefeller Plaza
New York, New York 10112
212.653.8700


**HODGSON RUSS LLP**
*Attorneys for Moog Inc.*
Robert J. Fluskey, Jr.
Melissa N. Subjeck
Pauline T. Muto
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, NY  14202-4040
716.856.4000

## **TABLE OF CONTENTS**

PAGE

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF FACTS .............................................................................................2

ARGUMENT ................................................................................................................8

POINT I.   SKYRYSE IS SUBJECT TO PERSONAL JURISDICTION DUE TO ITS
           WRONGFUL CONDUCT IN, AND DIRECTED TO, NEW YORK.
           IN ANY EVENT, SKYRYSE'S PERSONAL JURISDICTION
           ARGUMENT IS FORFEITED. .........................................................................8

   A.   Skyryse is subject to jurisdiction in New York *via* its coordinated theft of trade
        secrets, the 2018 and 2019 NDAs, and its poaching of New York-based
        employees. ....................................................................................................8

   B.   Skyryse forfeited its objection to personal jurisdiction by agreeing to relief
        against it, requesting that this court "so order" stipulations, and engaging in
        expedited discovery. ......................................................................................12

POINT II.   VENUE IS PROPER IN THE WESTERN DISTRICT OF NEW YORK
            AND LITIGATING IN THIS COURT WILL CAUSE MINIMAL
            INCONVENIENCE TO SKYRYSE. ...............................................................14

   A.   Venue is proper in the Western District of New York because Skyryse
        committed wrongful acts in this District................................................................14

   B.   As with their personal jurisdiction defense, Skyryse has waived any
        objections to venue by litigating in this Court. .......................................................16

POINT III.   IN THE ALTERNATIVE, MOOG REQUESTS DISCOVERY
             ON JURISDICTION AND VENUE AND AN EVIDENTIARY
             HEARING..................................................................................................17

POINT IV.   SKYRYSE CANNOT SUSTAIN THE HIGH BURDEN REQUIRED TO
            JUSTIFY TRANSFER THIS ACTION TO THE CENTRAL DISTRICT
            OF CALIFORNIA. .......................................................................................17

        1.   Moog's choice of forum is entitled to *significant* deference. ...................18

        2.   The convenience of the witnesses does not favor transfer, as most
             Moog witnesses are located in New York. ...............................................19

        3.   Transferring the case would improperly shift the inconvenience
             to Moog..................................................................................................20

## <u>TABLE OF CONTENTS - cont'd</u>

<u>PAGE</u>

4.   The locus of operative facts does not favor transfer. ................................21

5.   All identified witnesses can be compelled to testify in this District. ..........21

6.   The relative means of the parties does not favor transfer. .........................21

7.   Trial efficiency and the interests of justice do not favor transfer. .............22

8.   *Moog, Inc. v. Newport Aeronautical, Inc.* is distinguishable. ...................23

9.   The remaining factors do not favor transfer. ...............................................24

CONCLUSION .................................................................................................................25

# **TABLE OF AUTHORITIES**

<u>PAGE</u>

**Federal Cases**

*Advanced Fiber Techs. Trust v. J & L Fiber Servs., Inc.*,
   2008 WL 4890377 (N.D.N.Y. Nov. 12, 2008) ........................................................25

*Altman v. Lib. Equities Corp.*,
   322 F. Supp. 377 (S.D.N.Y. 1971) ........................................................16

*Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*,
   4557 F. Supp. 2d 474 (S.D.N.Y. 2006)........................................19, 20, 22

*Arch Specialty Ins. Co. v. Ent. Specialty Ins. Servs., Inc.*,
   2005 WL 696897 (S.D.N.Y. Mar. 24, 2005) ........................................18

*Argent Funds Grp., LLC v. Schutt*,
   2006 WL 2349464 (D. Conn. June 27, 2006)........................................15

*Asahi Metal Indus. Co., Ltd. v. Superior Court of California*,
   480 U.S. 102 (1987)........................................................12

*Atl. Recording Corp. v. BCD Music Grp., Inc.*,
   2009 WL 1390848 (S.D.N.Y. May 7, 2009) *denying reconsideration* 2009
   WL 2046036 (S.D.N.Y. July 15, 2009) ........................................21

*Bates v. C & S Adjusters, Inc.*,
   980 F.2d 865 (2d Cir. 1992)........................................................14, 16

*Buffalo Newspress Inc. v. Adlife Marketing & Comms. Co., Inc.*,
   2019 WL 3886725 (W.D.N.Y. Aug. 19, 2019) ........................................25

*Burger King v. Rudzewicz*,
   471 U.S. 462 (1985)........................................................9, 22

*Calder v. Jones*,
   465 U.S. 783 (1984)........................................................11

*Chloe v. Queen Bee of Beverly Hills, LLC*,
   616 F.3d 158 (2d Cir. 2010)........................................................22

*Colabufo v. Cont'l Cas. Co.*,
   2006 WL 1210919 (E.D.N.Y. Apr. 27, 2006) ........................................22

*Cold Spring Harbor Lab'y v. Ropes & Gray LLP*,
   762 F. Supp. 2d 543 (E.D.N.Y. 2011) ........................................16

## <u>TABLE OF AUTHORITIES - cont'd</u>

<u>PAGE</u>

*Corporacion Mexicana de Manteniniemto Integral, S. De. R.L. De C.V v. Pemex-Exploracion Y Produccion,*
 832 F.3d 92 (2d Cir. 2016)..............................................................................12, 13

*Distefano v. Carozzi N. Am., Inc.,*
 2002 WL 31640476 (E.D.N.Y. Nov. 16, 2002).....................................................22

*Dorchester Fin. Secs., Inc. v. Banco BRJ, S.A.,*
 722 F.3d 81 (2d Cir. 2013)..............................................................................8, 17

*Eades v. Kennedy, PC Law Offices,*
 799 F.3d 161 (2d Cir. 2015)............................................................................10, 11

*Elite Licensing, Inc. v. Thomas Plastics, Inc.,*
 2003 WL 473669 (S.D.N.Y. Feb. 21, 2003).........................................................23

*Fifth Ave. of Long Island Realty v. Caruso Mgmt. Co.,*
 2009 WL 412126 (E.D.N.Y. Feb. 17, 2009)..........................................................17

*Gross v. BBC,*
 386 F.3d 224 (2d Cir. 2004)................................................................................18

*Hamilton v. Atlas Turner, Inc.,*
 197 F.3d 58 (2d Cir. 1999)............................................................................12, 13

*Hart v. Crab Addison, Inc.,*
 2014 WL 2865899 (W.D.N.Y. June 24, 2014).....................................................17

*Hitachi Data Sys., Credit Corp. v. Precision Discovery, Inc.,*
 331 F. Supp. 3d 130 (S.D.N.Y. 2018)..................................................................11

*Hsin Ten Enter. USA, Inc. v. Clark Enters.,*
 138 F. Supp. 2d 449 (S.D.N.Y. 2000)..................................................................15

*Ikon Office Sols., Inc. v. Rezente,*
 2010 WL 395955 (E.D. Pa. Feb. 3, 2010) ............................................................15

*Int'l Controls & Meas. Corp. v. Honeywell Int'l, Inc.,*
 2013 WL 4805801 (N.D.N.Y. Sept. 9, 2013)............................................19, 20, 24

*Kirk v. New York State Dep't of Educ.,*
 2008 WL 819632 (W.D.N.Y. Mar. 25, 2008)........................................................14

*Krape v. PDK Labs, Inc.,*
 194 F.R.D. 82 (S.D.N.Y. 1999) ...........................................................................16

**<u>TABLE OF AUTHORITIES - cont'd</u>**

PAGE

*Licci v. Lebanese Canadian Bank*,
732 F.3d 161 (2d Cir. 2013)..................................................8

*Marine Midland Bank, N.A. v. Miller*,
664 F.2d 899 (2d Cir. 1981)..................................................17

*Marquest Med. Prods., Inc. v. EMDE Corp.*,
496 F. Supp. 1242 (D. Colo. 1980).........................................14

*MacDermid, Inc. v. Deiter*,
702 F.3d 725 (2d Cir. 2012)..................................................11

*McQueen v. Huddleston & Huddleston*,
2013 WL 5592804 (W.D.N.Y. Oct. 10, 2013) .........................18

*Meetings & Expositions, Inc. v. Tandy Corp.*,
490 F.2d 714 (2d Cir. 1974)..................................................13

*Moog, Inc. v. Newport Aeronautical, Inc.*,
2016 WL 3444238 (W.D.N.Y. June 23, 2016) . (Skyryse Mem., )................23, 24

*Moore v. Allentown Vill. Soc'y, Inc.*,
2013 WL 4008740 (W.D.N.Y. Aug. 5, 2013) .........................18

*MPD Accessories, B.V. v. Urban Outfitters, Inc.*,
2013 WL 4399199 (S.D.N.Y. Aug. 13, 2013)..........................20

*N.Y. Packaging II LLC v. Mustang Mktg. Grp. LLC*,
2022 WL 604136 (E.D.N.Y. Mar. 1, 2022)..............................15

*Pecorino v. Vutec Corp.*,
934 F. Supp. 2d 422 (E.D.N.Y. Nov. 30, 2012) .......................19

*Plunkett v. Valhalla Inv. Servs., Inc.*,
409 F. Supp. 2d 39 (D. Mass. 2006) ......................................13

*Race Safe Sys. v. Indy Racing League*,
251 F. Supp. 2d 1106 (N.D.N.Y. 2003)...............................17, 19

*Reliance Ins. Co. v. Six Star, Inc.*,
155 F. Supp. 2d 49 (S.D.N.Y. Aug. 10, 2001)..........................21

*RMS Titanic, Inc. v. Geller*,
2000 WL 306997 (D. Conn. Jan. 10, 2000)...........................22, 23

## <u>TABLE OF AUTHORITIES - cont'd</u>

<u>PAGE</u>

*Room Serv. Movies, Inc. v. Whiting*,
    1985 WL 2030 (S.D.N.Y. July 18, 1985) .................................................................9

*S. New England Telephone Co. v. Global NAPs Inc.*,
    624 F.3d 123 (2d Cir. 201).......................................................................................8

*Sacody Tech., Inc. v. Avant, Inc.*,
    862 F. Supp. 1152 (S.D.N.Y. 1994).................................................................15, 16

*Schomann Int'l Corp. v. N. Wireless, Ltd.*,
    35 F. Supp. 2d 205 (N.D.N.Y. 1999)...............................................................9, 10

*Schwab Short-Term Bond Market Fund v. Lloyds Banking Group PLC*,
    22 F.4th 103 (2d Cir. 2021) *cert. pet. filed Lloyds Banking Group PLC v.*
    *Schwab Short-Term Bond Market Fund*, No. 21-1237 ......................................9, 11

*Security Mut. Life Ins. Co. v. Shapiro*,
    2009 WL 295779 (N.D.N.Y. Sept. 11, 2009) ......................................................21

*Steuben Foods, Inc. v. Morris*,
    2002 WL 1628061 (W.D.N.Y. May 29, 2002)...............................................10, 21

*Stewart v. Manhattan Yacht Club, Inc.*,
    2018 WL 3579849 (S.D.N.Y. July 25, 2018) ......................................................15

*TouchTunes Music Corp. v. Rowe Int'l Corp.*,
    676 F. Supp. 2d 169 (S.D.N.Y. 2009)..................................................................18

*Vermont Castings, Inc. v. Evans Prods. Co.*,
    510 F. Supp. 940 (D. Vt. 1981)............................................................................15

*Vuitton v. Rags on Wheels*,
    1992 WL 465310 (E.D. Cal. Aug. 13, 1992) .......................................................12

*Weisman Celler Spett & Modin, P.C. v. Trans-Lux Corp.*,
    2012 WL 5512164 (S.D.N.Y. Nov. 14, 2012).....................................................17

*Wyrough & Loser, Inc. v. Pelmore Labs., Inc.*,
    376 F.2d 543 (3d Cir. 1967).................................................................................12

**Federal Statutes**

28 U.S.C. § 1391(b) ....................................................................................................14

28 U.S.C. § 1404(a) ....................................................................................................17

**<u>TABLE OF AUTHORITIES - cont'd</u>**

<u>PAGE</u>

**Rules**

Federal Rule of Civil Procedure 12(h) .............................................................................12

Federal Rule of Civil Procedure 12(b)(3) .........................................................................14

**Other Authorities**

U.S. District Court – Judicial Caseload Profile, *available at*
    https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile12
    31.2021.pdf .................................................................................................................24

## **PRELIMINARY STATEMENT**

This Court has jurisdiction and venue is proper. Skyryse would prefer to defend this lawsuit in California. But Skyryse conflates its own preference with the law and conveniently ignores Moog's allegations (and, in fact, its own conduct) directed to New York. New York is not simply Moog's "backyard," but a focal point of Skyryse, Pilkington, and Kim's conduct and wrongdoing.

Skyryse claims that this Court lacks personal jurisdiction over it because "Skyryse did not commit any of the alleged conduct in New York, nor direct the conduct towards New York." (Motion to Dismiss, Dkt. 48-1 ("Skyryse Mem."), at 1). It similarly claims that venue is improper because Moog failed to allege that significant events material to its claims occurred here. (*Id*. at 2). Neither is the case. Skyryse intentionally fostered a business relationship with Moog, a New York-based corporation, which included engaging in three in-person meetings in New York and ultimately consummating two Non-Disclosure Agreements governed by New York law, which Skyryse subsequently breached when it misappropriated Moog's data. Skyryse further poached (or attempted to poach) New York-based Moog employees, and conspired with Kim and Pilkington to access, download, and ultimately misappropriate data housed in Moog's New York servers. These acts are sufficient to confer personal jurisdiction over Skyryse and also make venue proper in this district.

Skyryse then argues in the alternative that this case should be transferred to the Central District of California largely based on *its* convenience. But while Moog *could* have filed this action in that district, it did not have to do so. And the alleged inconvenience to Skyryse (a

purportedly "small" company that has admittedly raised $250 million[1] in capital and employs 71 individuals) or the individual defendants (who are now employees of Skyryse and subject to its control) is nonsensical.  Documents can be transmitted electronically, testimony can be taken virtually, and both Skyryse and the individual Defendants are working with national law firms with offices in both California and New York.  Simply, Skyryse is properly held to account for its actions here.

<u>**STATEMENT OF FACTS**</u>

This case arises out of the massive theft of Moog's trade secrets by two former employees—Defendants Kim and Pilkington—in concert with their new employer and Moog competitor, Skyryse.  Specifically, Moog's Platform base flight control software, and related project-specific applications, constitute extremely valuable, sensitive, and proprietary information.  (Declaration of Michael Hunter, dated Feb. 28, 2022, Dkt. 4-2 ("Hunter Dec.") ¶ 12).  Platform allows Moog to be a front-runner in obtaining bids from commercial or military parties and its source code and related data is housed on a secure server at Moog's East Aurora, New York offices.  (*Id.* ¶¶ 13, 25).

The acts that eventually culminated in the theft of Platform and other software began in 2018, when Skyryse and Moog (specifically, Moog's Growth and Innovation Group,

---

[1]     Skyryse has sought, and obtained, substantial investments from New York venture capital firms.  *See* Aria Alamalhodaei, *Skyryse Brings in $200M to Make Flying an Aircraft as Simple as Swiping a Touchscreen*, TechCrunch (Oct. 27, 2021) *available at* https://techcrunch.com/2021/10/27/skyryse-brings-in-200m-to-make-flying-an-aircraft-as-simple-as-swiping-a-touchscreen/ (identifying investors including Rosecliff, Republic Capital, and Foristar).  *See also* Rosecliff, "About," *available at* https://rosecliff.com/about/ (Rosecliff is an investment management firm based in New York City); Crunchbase - Fortistar *available at* https://www.crunchbase.com/organization/fortistar (identifying HQ in New York); Crunchbase – Republic Capital available at https://www.crunchbase.com/organization/republic-labs (identifying HQ in New York).

which is based in New York) began to explore a business relationship.  (Declaration of Paul

Stoelting, dated Feb. 28, 2022, Dkt. 4-9 ("Feb. Stoelting Dec."), ¶¶ 3, 7) (Declaration of Paul

Stoelting, dated April 12, 2022 ("April Stoelting Dec.") ¶ 3).  The discussions between the

companies included three in-person meetings from 2018-2020 between Skyryse and Moog at

Moog's facilities in New York.  (April Stoelting Dec. ¶ 10).  There was an initial in-person

meeting between Skyryse and Moog in New York in early 2019 to introduce Skyryse to Moog

for the contemplated projects between the companies.  (*Id.* ¶ 11).  As the discussions progressed,

and to facilitate the exchange of information to evaluate the opportunity, Moog and Skyryse

entered into two separate Non-Disclosure Agreements on October 24, 2018 (the "2018 NDA")

and March 15, 2019 (the "2019 NDA") (collectively, the "NDAs"), both of which had New York

choice of law provisions.  (Feb. Stoelting Dec. ¶¶ 12-13, Exs. A, B).  The NDAs were signed by

Dave Norman, located in New York, on behalf of Moog.  (April Stoelting Dec. ¶ 15).  Under

those NDAs, the Parties agreed not to disclose any proprietary information disclosed by the other

parties, refrain from any reverse engineering, and the receiving party of such information could

only use it for the limited purpose of the contemplated engagement between Moog and Skyryse.

(Feb. Stoelting Dec., Exs. A, B § 2).

Moog and Skyryse anticipated that their business relationship would be conducted

in four separate phases.  On May 31, 2019, the Parties entered into a statement of work for Phase

1 (the "SOW").  (*Id.* ¶ 14, Ex. C).  Skyryse sent the SOW to Norman, a New York-based

employee working in Moog's Growth and Innovation Group.  (April Stoelting Dec. ¶ 15).  On

June 3, 2019, Moog and Skyryse entered into a corresponding "Terms and Conditions of Sale"

(the "T&C").  (Feb. Stoelting Dec. ¶ 20, Ex. D).  The T&C was signed by Norman on behalf of

Moog.  (April Stoelting Dec. ¶ 15).  The T&C contains provisions that the Parties cannot use

each other's pre-existing proprietary IP for any other purpose than performing under the T&C, and expressly prohibited reverse engineering.  (Feb. Stoelting Dec., Ex. D §§ 20, 23).  Then, on August 8 and 9, 2019, there was a two-day design review meeting between Skyryse and Moog at Moog's facilities in New York to review the design for the systems that Moog was to provide to Skyryse under Phase 1 of the SOW.  (April Stoelting Dec. ¶ 12).  On February 12, 2020, there was a further one-day design review meeting between Skyryse and Moog at Moog's facilities in New York.  (*Id.* ¶ 13).

On May 22, 2020, Skyryse issued a request for quote ("RFQ") to Moog—addressed and sent to Moog employee Timothy Abbott, also based in New York.  (Feb. Stoelting Dec. ¶ 24, Ex. E) (April Stoelting Dec. ¶ 15).  On September 22, 2020, Moog submitted a bid (prepared by Moog's Aircraft Group located in New York) in response to Skyryse's RFQ for $46,195,870.  (Feb. Stoelting Dec., ¶ 26, Ex. F) (April Stoelting Dec. ¶ 15).  Skyryse advised Moog that its bid was too expensive and declined.  (Feb. Stoelting Dec. ¶ 27).  Skyryse's rejection was communicated to Moog's New York offices.  (April Stoelting Dec. ¶ 15).  Phase 1 concluded, but the terms of the 2018 and 2019 NDAs were never terminated.  (Feb. Stoelting Dec. ¶ 28).  Between late 2019 and early 2021, there was at least one scheduled videoconference meeting *per week* between Skyryse and Moog personnel, and the Moog personnel attending the meetings were all based at Moog's New York facilities.  (April Stoelting Dec. ¶ 14).

In addition to having fostered a business relationship with Moog's Growth and Innovation Group in New York, Skyryse has also poached Moog employees, with the majority of this conduct occurring in the past few months. (Hunter Dec. ¶ 34).  Gonzalo Rey—who was based in Moog's East Aurora, New York location for several years—helped pioneer the development of the Platform software and was the first Moog employee to join Skyryse when he

left Moog in 2017.  (Hunter Dec. ¶ 34) (Compl. ¶ 220).  Rey has tremendous institutional

knowledge regarding Moog's flight control software and the key personnel involved in its

development.  (Hunter Dec. ¶ 35) (Compl. ¶¶ 51, 92).  Achar joined Skyryse in January 2022,

after advising Moog that he was retiring.  (*Id*.).  Pilkington left Moog on November 12, 2021 to

join Skyryse.  (*Id*.).  Kim also left Moog on December 17, 2021 to join Skyryse.  (*Id*. ¶ 34).

Several additional software engineers have followed suit.  Skyryse has reached out to a large

number of software engineers at Moog—***and has succeeded in poaching four employees from***

***Moog's New York location.***  (*Id*.).  While some engineers have remained loyal to Moog, Skyryse

has aggressively recruited them as well.  For example, in August 2021, Rey contacted Hunter (a

New York-based employee) and asked him to join Skyryse.  (*Id*. ¶ 36).  In November 2021,

Pilkington reached out to Hunter asking him to join Skyryse and further advised Hunter that

there was "urgency" at Skyryse.  (*Id*. ¶ 37).  Similarly, on October 13, 2021 and again on

October 22, 2021, Rey contacted Schmidt (another New York-based employee) to see if he

would join Skyryse.  (Declaration of Todd Schmidt, dated April 8, 2022 ("April Schmidt Dec.")

¶¶ 5-6).  Rey went so far as to offer to allow Schmidt to work remotely in New York by renting

office space near his home.  (*Id*., Ex. A).

       After beginning an investigation into whether any departing Moog employees had

taken or copied Moog data before their departure, Moog discovered that, on November 19, 2021,

between the hours of 3:16 and 7:33 a.m., and from a remote location, former Moog employee

Kim copied certain Moog data to an external hard drive. (Declaration of Ian Bagnald, dated

March 6, 2022, Dkt. 4-18 ("Bagnald Dec."), ¶¶ 8, 10).  This event took place less than one month

before Kim's last day at Moog, and less than one week after Pilkington, her supervisor, left

Moog for Skyryse.  (*Id*.).  Kim copied 136,994 separate files and used Pilkington's file path to

copy the data onto the external hard drive. (Bagnald Dec. ¶¶ 8, 13, 14) (Hunter Dec. ¶ 47) (Schmidt Dec. ¶ 23).

The scope of data copied by Kim is massive: she essentially copied everything that Moog's flight control software engineering teams had worked on *over the past 15 years*. (Hunter Dec. ¶ 63) (Schmidt Dec. ¶ 27) (Lopez Dec. ¶ 14).  And all of the data copied by Kim is located on Moog's internal servers in East Aurora, New York.  (Hunter Dec. ¶ 25).  This fact was common knowledge among the Moog software engineering team.  (Declaration of Michael Hunter, dated April 8, 2022 ("April Hunter Dec.") ¶ 7).

Upon discovering Kim's massive theft, Moog filed its Complaint and its Motion for a Temporary Restraining Order and a Preliminary Injunction on March 7, 2022.  (Dkts. 1-6). In connection with its motion for temporary relief, Moog filed a witness list, identifying (among others) the key witnesses at Moog who would testify at the preliminary injunction hearing. (Moog's Witness List, Dkt. 4-30).  Of the seven Moog witnesses identified, four of them are based in New York (Michael Hunter, Todd Schmidt, Paul Stoelting, and Jamie Daly).  Hunter and Schmidt submitted the longest declarations in connection with Moog's moving papers and are Moog's most critical witnesses.  They explain the development of Platform and other flight control applications, their value, the measures to protect their secrecy, the extent and nature of the data copied by Kim, and the impact and irreparable harm such conduct has had on Moog. (Hunter Dec. ¶¶ 5-29, 40-67) (Schmidt Dec. ¶¶ 5-8, 16-32).  Hunter and Schmidt are the key Moog witnesses who can describe the nature and value of the trade secrets at issue in this case.

Instead of litigating the request for temporary relief, and raising its defenses based on jurisdiction and venue, on March 11, 2022, Defendants executed the Stipulated Order, agreeing to essentially all of the substantive relief Moog sought in its moving papers.  (Dkts. 25,

28).  Thereafter, on March 18, 2022, all parties entered into a stipulation regarding expedited

discovery, which included providing written discovery responses on or before April 13, 2022,

and production of documents on or before April 27, 2022.  (Dkt. 33).  On March 23, Skyryse

served written discovery on Moog.  (Declaration of Rena Andoh, dated April 12, 2022 ("Andoh

Dec.") ¶ 3).  On March 29, Skyryse filed its motion to dismiss based on personal jurisdiction and

venue.  (Dkt. 48).  Skyryse also filed a motion to dismiss for failure to state a claim.  (Dkt. 49).

        In connection with its motion to dismiss, Skyryse proffered the Declaration of

Gonzalo Rey, the Chief Technical Officer at Skyryse.  Rey claims that Skyryse has no operations

in this District and that its documents, records, emails, and systems are stored in California.

(Declaration of Gonzalo Rey, dated March 29, 2022, Dkt. 48-5 ("Rey Dec.") ¶¶ 18-20).  He

further notes that the individual defendants live in California, their Skyryse-issued devices are

located in California, and the witnesses having the greatest familiarity with Skyryse's technology

are also in California.  (*Id*. ¶¶ 21-22, 28).  He then claims—without any supporting detail—that it

would "impose a considerable strain and expense on Skyryse and its personnel to travel to the

Western District of New York."  (*Id*. ¶ 24).  While Rey claims that there are California-based

third parties who "may" become witnesses in the action, he identifies only one—Martin Cooper,

who has "recruited many of Skyryse's engineers."  (*Id*. ¶ 29).  Rey does not claim that Mr.

Cooper recruited any of the former Moog employees.

        In connection with expedited discovery in this action, Skyryse has admitted that

Kim's Skyryse-issued laptop received data from the Moog devices involved in copying over

136,000 Moog files and that it found over 11,000 files of identical Moog files on Pilkington's

Skyryse-issued laptop.  (Andoh Dec. ¶ 2 & Ex. A (Letter from R. Andoh to Hon. Judge

McCarthy, dated April 7, 2022)).  Moreover, Moog also recently learned of another series of

downloads by Pilkington while he was still a Moog employee—of over 1.1 million files of Moog data onto external hard drives.  (*Id*.).

<u>**ARGUMENT**</u>

**POINT I.      SKYRYSE IS SUBJECT TO PERSONAL JURISDICTION DUE TO ITS WRONGFUL CONDUCT IN, AND DIRECTED TO, NEW YORK.  IN ANY EVENT, SKYRYSE'S PERSONAL JURISDICTION ARGUMENT IS FORFEITED.**

**A.      Skyryse is subject to jurisdiction in New York *via* its coordinated theft of trade secrets, the 2018 and 2019 NDAs, and its poaching of New York-based employees.**

To defeat a motion to dismiss for lack of personal jurisdiction, and in the absence of an evidentiary hearing, Moog need only make a *prima facie* showing of jurisdiction.  *See, e.g.,* *Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 167-68 (2d Cir. 2013) (citation omitted); *S. New England Telephone Co. v. Global NAPs Inc*., 624 F.3d 123 (2d Cir. 201) (citation omitted).  Pleadings and affidavits must be construed in the light most favorable to Moog, and all doubts must be resolved in its favor.  *Licci,* 732 F.3d at 167 (citation omitted); *Dorchester Fin. Secs., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (citation omitted).  While Skyryse claims that Moog has failed to show "any suit-related" conduct creating a substantial connection to New York (*see* Skyryse Mem., at 7-8), it either downplays or simply ignores its New York-focused conduct, including: (i) intentionally fostering a relationship with Moog in New York (including numerous in-person meetings in New York and weekly video conferences with Moog's New York-based personnel), (ii) the NDAs it entered into with Moog in which it agreed to be governed by New York law, and (iii) its (including through its agents Pilkington and Kim) multiple, wrongful acts aimed at causing injury to Moog in New York.[2]

---

2      Personal jurisdiction encompasses three requirements: plaintiff's service of process must have been procedurally proper, there must be a statutory basis for personal jurisdiction rendering service effective, and the exercise of personal jurisdiction must comport with

*First*, Skyryse purposefully availed itself of this forum by establishing a multi-year relationship with Moog's Growth and Innovation Group, a New York-based company and group, pursuant to which discussions and in-person meetings occurred in New York and contracts were executed between the parties.  (April Stoelting Dec. ¶¶ 10-13).  Two of these contracts, the 2018 and 2019 NDAs (*see* Compl., Exhs. C, D), predicate the breach of contract claim here and both contain a New York choice-of-law provision—a fact relevant to the personal jurisdiction analysis.  *Burger King v. Rudzewicz*, 471 U.S. 462, 481-82 (1985); *Room Serv. Movies, Inc. v. Whiting*, 1985 WL 2030, at *4 (S.D.N.Y. July 18, 1985) (parties' decision to include a choice-of-law provision in contract "reinforces" that they "envisioned the possibility of litigating" in New York).  Moreover, Moog performed substantial services under those contracts out of its New York location (Compl. ¶ 67)—as Skyryse was well-aware, given the weekly videoconference meetings it had between late 2019 and early 2021 with Moog personnel, *all of whom were based in New York*.  (April Stoelting Dec. ¶ 14).  In further recognition of its relationship with Moog in New York, Skyryse sent all contract-related materials to *Moog's New York location.*  (April Stoelting Dec. ¶ 15).  By engaging in these acts, Skyryse "reach[ed] out beyond" California to establish a multi-year business relationship with a New York-based company—and, specifically, its New York-based employees—and its breach of these contracts caused "foreseeable injuries" to Moog in New York.  *See Burger King*, 471 U.S. at 479-81; *Schomann Int'l Corp. v. N. Wireless, Ltd.*, 35 F. Supp. 2d 205, 211 (N.D.N.Y. 1999) (personal

---

constitutional due process principles.  *Schwab Short-Term Bond Market Fund v. Lloyds Banking Group PLC*, 22 F.4th 103, 121 (2d Cir. 2021) (citation omitted) *cert. pet. filed Lloyds Banking Group PLC v. Schwab Short-Term Bond Market Fund*, No. 21-1237. Skyryse does not claim improper service, nor does it contest the statutory basis for jurisdiction, implicitly conceding that Moog has satisfied these requirements.  Instead, it opposes personal jurisdiction on the basis of failure to comply with due process requirements.

jurisdiction over defendants where they "deliberately reached out" to negotiate and enter into a contract with a New York business, contract contemplated regular contact with plaintiff's New York office, and required that notices, invoices, and payment requests be sent to New York and parties agreed that contract be governed by New York law).

Second, Skyryse engaged in wrongful conduct directed specifically to Moog in New York by poaching four New York-based employees and attempting to poach an additional two New York-based employees. (Hunter Dec. ¶¶ 34, 36-37) (April Schmidt Dec. ¶¶ 5-6). Skyryse was well-aware that poaching New York-based employees would injure Moog's operations in New York—regardless of whether it also poached employees in California. Indeed, Skyryse's declarant, Gonzalo Rey, was heavily involved on the part of Skyryse throughout the 2018 and 2019 work between Skyryse and Moog, and visited New York on several occasions pursuant to this venture. (April Stoelting Dec. ¶¶ 11-13). Yet when it ended, Rey proceeded to lead Skyryse's efforts to target and hire Moog employees, including two New York employees, as Skyryse seeks to replicate what Moog has done. (Hunter Dec. ¶ 36) (April Schmidt Dec. ¶¶ 5-6). See Steuben Foods, Inc. v. Morris, 2002 WL 1628061, at *4 (W.D.N.Y. May 29, 2002) (out-of-state corporation should have reasonably anticipated being haled into court in New York when it recruited plaintiff's employees located in New York despite awareness of non-solicitation agreement and warning letter from plaintiff). These affirmative acts directed to New York—constituting unfair competition (Compl. ¶¶ 207-216)—distinguish Skyryse's circumstances from those considered by the authorities denying personal jurisdiction based on defendant's mere knowledge of plaintiff's location. Compare Eades v. Kennedy, PC Law Offices, 799 F.3d 161, 168-69 (2d Cir. 2015) (defendant's mailing debt collection notice to plaintiff in New York, engaging in one debt collection phone call with plaintiff in New York,

and mailing a summons and complaint to plaintiffs in New York were sufficient to establish

minimum contacts where claims arose directly from these communications) *with Hitachi Data*

*Sys., Credit Corp. v. Precision Discovery, Inc.*, 331 F. Supp. 3d 130, 144 (S.D.N.Y. 2018) (sole

connection between third-party defendants suit-related conduct and New York was the allegation

that defendant's HQ were located in New York).

   *Third*, data that was accessed and downloaded by Kim at Pilkington's direction

and misappropriated by Skyryse was located in New York.  (Compl. ¶¶ 112, 169).  Kim and

Pilkington knew this to be the case, as it was common knowledge among Moog software

engineers.  (April Hunter Dec. ¶ 7).  This constitutes minimum contacts with New York.  *See*

*MacDermid, Inc. v. Deiter*, 702 F.3d 725, 730 (2d Cir. 2012) (defendant knew email servers she

used and confidential files she misappropriated were located in Connecticut and used those

servers to send an email which constituted the tort; she additionally directed her allegedly

tortious conduct towards plaintiff, a Connecticut corporation) (citing *Calder v. Jones*, 465 U.S.

783, 790 (1984)).  And these actions are imputed to Skyryse based on its conspiracy with

Pilkington and Kim.  *See Schwab Short-Term Bond Market Fund*, 22 F.4th at 122.[3]

   This is more than sufficient to show that Skyryse has "minimum contacts"

allowing this Court to exercise personal jurisdiction.  Notably, Skyryse does not claim that the

---

[3]   The conspiracy between and among Skyryse, Pilkington, and Kim is further supported
     by the fact (uncovered in discovery) that Kim's Skyryse-issued laptop received data
     from the Moog devices involved in copying the 136,000 Moog files and that over 11,000
     files of identical Moog files were found on Pilkington's Skyryse-issued laptop.  (Andoh
     Dec. ¶ 2 & Ex. A).

exercise of personal jurisdiction over it would be *un*reasonable, which is unsurprising, given the heavy burden required to sustain that argument.[4]

**B.    Skyryse forfeited its objection to personal jurisdiction by agreeing to relief against it, requesting that this court "so order" stipulations, and engaging in expedited discovery.**

A party can forfeit objections to personal jurisdiction by its conduct—regardless of its compliance with the requirements of Federal Rule of Civil Procedure 12(h). *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 60-61 (2d Cir. 1999). This has occurred here. Prior to filing its motion to dismiss based on personal jurisdiction, Skyryse entered into *two* stipulations before this Court, essentially agreeing to Moog's request for temporary relief, and setting forth a comprehensive framework for document production, depositions, and briefing in connection with Moog's motion for a preliminary injunction. (*See* Dkts. 25, 33). Skyryse further joined in the affirmative request to this Court to "so order" these stipulations (*see id.*) and has affirmatively engaged in expedited discovery, including by serving written discovery, even before filing the instant motion. (Andoh Dec. ¶ 3). This should constitute a forfeiture.[5]

---

[4]    The factors that the Court must consider in determining the reasonableness of exercising jurisdiction are: the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies. *See Asahi Metal Indus. Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 113 (1987). Skyryse addresses none of these factors in its personal jurisdiction argument.

[5]    *See Corporacion Mexicana de Manteniniemto Integral, S. De. R.L. De C.V v. Pemex-Exploracion Y Produccion*, 832 F.3d 92, 100 (2d Cir. 2016) (defendant forfeited personal jurisdiction and venue by affirmatively requesting appellate court to vacate and remand decision to district court); *Wyrough & Loser, Inc. v. Pelmore Labs., Inc.*, 376 F.2d 543 (3d Cir. 1967) (defendant waived personal jurisdiction defense by participating in preliminary injunction hearing); *Vuitton v. Rags on Wheels*, 1992 WL 465310, at *2 (E.D. Cal. Aug. 13, 1992) (defendant failed to file answer but signed stipulation to preliminary injunction against himself through which the court obtained personal jurisdiction such that default judgment was proper) (adopting findings and

While the stipulations include language indicating that Skyryse consented to the jurisdiction and venue of the Court only for purposes of the stipulation and "for no other purpose," this is insufficient for preservation.  (Dkts. 25 ¶ 11; 33 ¶ 14).  *See Corporacion Mexicana de Manteniniemto Integral, S. De. R.L. De C.V.*, 832 F.3d at 102 (defendant abandoned its arguments regarding personal jurisdiction and venue by requesting vacatur and remand); *Hamilton*, 197 F.3d, 61-62 (personal jurisdiction defense asserted in answer forfeited by participation in extensive pre-trial proceedings).  The "equivocal" language does not clearly indicate that Skyryse intended to challenge jurisdiction and venue.  *See Plunkett v. Valhalla Inv. Servs., Inc.*, 409 F. Supp. 2d 39, 42, n.1 (D. Mass. 2006) (defendants "marginally" and "equivocal[ly]" asserted defense of lack of personal jurisdiction in their answer, then participated in substantive litigation activities for eleven months before filing a motion on the defense).  And, in fact, before it did so challenge, it engaged in significant and substantive litigation steps in furtherance of Moog's request for a preliminary injunction, including the two stipulations *ordered by this Court* and engaging in expedited discovery.  (Andoh Dec. ¶ 3).  Skyryse also participated in an April 8, 2022 conference with Magistrate Judge McCarthy to address compliance with the Court's orders and related matters; notably, counsel did not suggest that they were limiting their litigation activity in this Court given their objections based on jurisdiction.[6]  Skyryse cannot now "walk away" from the Court having repeatedly "submitted

---

recommendations of Magistrate Judge); *see also Meetings & Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir. 1974) (stipulation and agreement of settlement "so ordered" by a judgment is a "consent to the exercise of the court's power to compel compliance").

[6]     Moog has requested a transcript of the April 8, 2022 conference.

[itself] for the presumed advantages which [it] obtained." *Marquest Med. Prods., Inc. v. EMDE Corp.*, 496 F. Supp. 1242, 1246 (D. Colo. 1980).

> **POINT II.     VENUE IS PROPER IN THE WESTERN DISTRICT OF NEW YORK AND LITIGATING IN THIS COURT WILL CAUSE MINIMAL INCONVENIENCE TO SKYRYSE.**

**A.     Venue is proper in the Western District of New York because Skyryse committed wrongful acts in this District.**

The Court's role in deciding a motion to dismiss for improper venue under Rule 12(b)(3) is simply to determine whether the plaintiff's choice of venue is ***proper***, not whether some other venue would have been better. *Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 867 (2d Cir. 1992) (court is not required to "determine the best venue"). When relying on pleadings and affidavits, the plaintiff need only make a *prima facie* showing of venue, and the court must view all facts in the light most favorable to the plaintiff. *Kirk v. New York State Dep't of Educ.*, 2008 WL 819632, at *2-3 (W.D.N.Y. Mar. 25, 2008) (quotations omitted). But Skyryse's venue argument largely ignores Moog's allegations of New York-based conduct in favor of California connections. This is not the appropriate analysis. Venue is proper in this district because a "substantial part of the events" underlying the claims occurred here. *See* 28 U.S.C. § 1391(b). The fact that certain events connected with Moog's claims also occurred in California is irrelevant.

Indeed, Skyryse ignores its most significant New York-based wrongful conduct— its misappropriation of Moog's data located in New York *via* its conspiracy with Kim and Pilkington to access Moog's New York-based server, and wholesale copy over 136,000 files of Moog's, including proprietary, confidential, and trade secret data. (Compl. ¶¶ 1-2, 6, 112, 115). Indeed, over 11,000 of these files were recently identified on Pilkington's Skyryse-issued computer (*see* Andoh Dec. ¶ 2, Ex. A), showing that Pilkington had possession of Moog files

while at Skyryse. And Skyryse has admitted that Kim's Skyryse-issued laptop received data

from the Moog devices involved in copying over 136,000 Moog files. (*Id*.). As courts in the

Second Circuit have held, "acquiring trade secrets by accessing a server in New York can be a

significant event for venue purposes."[7] And venue is proper over all claims because they are all

predicated upon the misappropriation of trade secrets. (Compl. ¶¶ 169, 172, 198, 204, 208, 219-

20, 229, 244, 252, 262).[8] While Skyryse relies on *Ikon Office Sols., Inc. v. Rezente*, 2010 WL

395955 (E.D. Pa. Feb. 3, 2010) for the proposition that accessing servers is insufficient to

establish venue, this is contrary to decisions in the Second Circuit.

But that's not all. Skyryse negotiated and entered into two contracts with

Moog—with negotiations and meetings occurring in this District (April Stoelting Dec. ¶¶ 10-

13)—and then breached these contracts by improperly using Moog's confidential and trade

secret information. Moreover, while Skyryse attempts to downplay its poaching (and attempted

poaching) of New York-based employees as "tangential," these actions are significant events for

purposes of the unfair competition claim. (Hunter Dec. ¶ 34) (April Schmidt Dec. ¶¶ 5-6). *See*

*Sacody Tech., Inc. v. Avant, Inc.,* 862 F. Supp. 1152, 1157 (S.D.N.Y. 1994) (venue may be

satisfied by communication transmitted to or from district given sufficient relationship between

---

[7]     *See N.Y. Packaging II LLC v. Mustang Mktg. Grp. LLC*, 2022 WL 604136, at*4
        (E.D.N.Y. Mar. 1, 2022); *Argent Funds Grp., LLC v. Schutt*, 2006 WL 2349464, at *2
        (D. Conn. June 27, 2006) (substantial events material to misappropriation claim occurred
        in Connecticut where non-Connecticut defendant accessed a Connecticut server to steal
        confidential information); *Vermont Castings, Inc. v. Evans Prods. Co.*, 510 F. Supp. 940,
        945-46 (D. Vt. 1981) (letters and telephone calls initiated by agent outside Vermont and
        addressed to plaintiff in Vermont was sufficient for venue).

[8]     Alternatively, venue is proper under the doctrine of "pendent venue" because all claims
        arise out of the same operative facts. *See Stewart v. Manhattan Yacht Club, Inc.*, 2018
        WL 3579849, at *7 (S.D.N.Y. July 25, 2018); *Hsin Ten Enter. USA, Inc. v. Clark
        Enters.*, 138 F. Supp. 2d 449, 462 (S.D.N.Y. 2000) (quotation omitted).

communication and claim; venue proper where at least some of the parties' dealings took place over the phone and by correspondence and facsimile); *see also Bates*, 980 F.2d at 867-68 (receipt of collection notice within district—which was mailed to plaintiff's prior out-of-state address and then forwarded—was sufficient for venue).

Skyryse's reliance on *Cold Spring Harbor Lab'y v. Ropes & Gray LLP*, 762 F. Supp. 2d 543 (E.D.N.Y. 2011) is misplaced.  There, the claim was for legal malpractice, which the Court expressly noted was different from straightforward breach of contract cases.  *Id*. at 555. In malpractice cases, "the alleged malpractice, not the entire attorney-client relationship" is relevant to a venue analysis.  *Id*.  Thus, the court found transfer appropriate because the attorney performed the majority of his work, which encompassed the malpractice, in Massachusetts, and not in New York.  *Id*. at 556.  Here, by contrast, the alleged underlying acts and wrongdoing arose from New York (the 2018-2019 venture), targeted Moog data in New York, and harmed Moog in New York.

**B.**     **As with their personal jurisdiction defense, Skyryse has waived any objections to venue by litigating in this Court.**

Objections to venue must be "timely and sufficient."  *See Altman v. Lib. Equities Corp.*, 322 F. Supp. 377, 379 (S.D.N.Y. 1971).  Thus, "[a] party can lose his right to bring a motion challenging venue … because the court interprets his pre-trial conduct as having waived his right to challenge venue." *Krape v. PDK Labs, Inc.*, 194 F.R.D. 82, 86 (S.D.N.Y. 1999) (citations omitted).  As stated above, Skyryse's conduct in this case has waived any objections to venue by actively participating in litigation in this Court.  (*See supra* Point I(B)).

**POINT III.    IN THE ALTERNATIVE, MOOG REQUESTS DISCOVERY ON JURISDICTION AND VENUE AND AN EVIDENTIARY HEARING.**

In determining a motion to dismiss for lack of personal jurisdiction or improper venue, this Court may permit discovery in aid of the motion or conduct an evidentiary hearing on the motion.  *See See Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981) (citations omitted); *see also Dorchester Fin. Sec.*, 722 F.3d at 85; *Weisman Celler Spett & Modin, P.C. v. Trans-Lux Corp.*, 2012 WL 5512164, at *1 (S.D.N.Y. Nov. 14, 2012).

If the Court is inclined to find that Moog did *not* sustain its *prima facie* burden on jurisdiction and venue, Moog respectfully requests discovery in the form of four depositions, four interrogatories, four requests for admissions, and four requests for production of documents to be served on each of the Defendants, followed by an evidentiary hearing on this motion.

**POINT IV.    SKYRYSE CANNOT SUSTAIN THE HIGH BURDEN REQUIRED TO JUSTIFY TRANSFER THIS ACTION TO THE CENTRAL DISTRICT OF CALIFORNIA.[9]**

As an alternative to dismissal, Skyryse seeks a transfer to the Central District of California under 28 U.S.C. § 1404(a).  (Skyryse Mem., at 13).  But a plaintiff—here, Moog—has the privilege, conferred by statute, of choosing the forum.  *Race Safe Sys. v. Indy Racing League*, 251 F. Supp. 2d 1106, 1111 (N.D.N.Y. 2003).  And Skyryse has failed to sustain its burden to establish, *by clear and convincing evidence*, a "strong case" for transfer.  *Hart v. Crab Addison, Inc.*, 2014 WL 2865899, at *3 (W.D.N.Y. June 24, 2014); *see also Fifth Ave. of Long Island Realty v. Caruso Mgmt. Co.*, 2009 WL 412126, at *7 (E.D.N.Y. Feb. 17, 2009).  While Moog *could* have filed in the Central District of California, it was not required to do so.

---

[9]    Moog adopts and incorporate all arguments made in its opposition to Defendants Pilkington and Kim's motion to dismiss for change of venue to the Central District of California.

In determining whether to grant a motion for transfer, the Court may consider the following factors: "(1) the plaintiff's choice of forum; (2) the place where the operative facts occurred; (3) the convenience of the parties; (4) the convenience of the witnesses; (5) the availability of process to compel attendance of unwilling witnesses; and (8) the forum's familiarity with governing law." *McQueen v. Huddleston & Huddleston*, 2013 WL 5592804, at *4 (W.D.N.Y. Oct. 10, 2013). But, given a plaintiff's statutory privilege, "our legal system has traditionally deferred to the plaintiff's choice of forum, and unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gross v. BBC*, 386 F.3d 224, 230 (2d Cir. 2004).

### 1.   Moog's choice of forum is entitled to *significant* deference.

A plaintiff's choice of forum will not be disturbed unless the movant shows that the balance of convenience and justice "tips heavily in favor of transfer." *Moore v. Allentown Vill. Soc'y, Inc.*, 2013 WL 4008740, at *2 (W.D.N.Y. Aug. 5, 2013). Indeed, "[c]ourts should disturb plaintiff's choice of forum 'rarely,' doing so only when the defendant clearly establishes an 'oppressiveness and vexation' that is 'out of all proportion to the plaintiff's convenience.'" *Arch Specialty Ins. Co. v. Ent. Specialty Ins. Servs., Inc.*, 2005 WL 696897, at *7 (S.D.N.Y. Mar. 24, 2005) (quotation omitted). Deference "is even stronger where the chosen forum is also the plaintiff's home district[,]" which is "especially true where plaintiff's chosen forum is its principal place of business." *TouchTunes Music Corp. v. Rowe Int'l Corp.*, 676 F. Supp. 2d 169, 173 (S.D.N.Y. 2009).

Here, Moog's home district is the Western District of New York, and its principal place of business and corporate headquarters are located in East Aurora, New York. (Compl.

¶ 10). While Skyryse attempts to downplay the deference provided to Moog's choice of forum (*see* Skyryse Mem., at 24-25), the case law is clear. This factor weighs strongly against transfer.

### 2.    The convenience of the witnesses does not favor transfer, as most Moog witnesses are located in New York.

This factor "is generally relevant only with respect to third-party witnesses, since employees of the parties will as a practical matter be available in any venue by virtue of the employment relationship." *Int'l Controls & Meas. Corp. v. Honeywell Int'l, Inc.*, 2013 WL 4805081, at *20 (N.D.N.Y. Sept. 9, 2013) (internal quotation marks omitted); *see also Race Safe Sys.*, 251 F. Supp. 2d at 1111; *Pecorino v. Vutec Corp.*, 934 F. Supp. 2d 422, 442-43 (E.D.N.Y. Nov. 30, 2012). Skyryse identifies a number of potential witnesses; all are employees of either Moog or Skyryse. (Rey Dec. ¶¶ 24-28).[10] Skyryse then speculates that other third-party advisors or contractors "may" become witnesses in the action. (*Id*. at ¶ 29).[11] But Skyryse fails to identify any potential non-employee witnesses and the nature of their testimony—this is insufficient to meet its burden for transfer. *See Indian Harbor*, 419 F. Supp. 2d at 401. And with the creation of video conference technology, the need for witnesses to commit to long-

---

[10]    While Moog identified Bruce Pixley as a potential witness (Rey Dec. ¶ 26), and Mr. Pixley is not a Moog employee, he has been retained by counsel for Moog for purposes of this matter and will appear in this District for the preliminary injunction hearing. (*See* Declaration of Bruce Pixley, dated March 5, 2022, Dkt. 4-28, ¶ 7).

[11]    The Declaration of Gonzalo Rey (Dkt. 48-5) contains a number of conclusory and speculative statements that should preclude its consideration in connection with Skyryse's motion. Rey claims that Skyryse "may" call as a witness Martin Cooper, who has "recruited many of Skyryse's engineers" (although he does not state that Cooper recruited any Moog employees) and other "California-based contractors" "may" also become witnesses. Rey further claims that he "received no indication that any of these California-based non-party witnesses would be willing to testify voluntarily," although he does not state *whether he asked them*. Rey Dec. ¶ 29; *see also* ¶¶ 24 ("it would impose a considerable strain and expense on Skyryse and its personnel to travel to the Western District of New York"), 27 ("Ray Paprocki . . . may be called as a witness"), 30 (Skyryse would be "greatly inconvenienced by the demands of a cross-country lawsuit").

distance travel (assuming a routine commercial flight would actually cause some burden) has been obviated. *See Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.,* 4557 F. Supp. 2d 474, 478 (S.D.N.Y. 2006). To the extent travel would impose a burden, Skyryse ignores the burden to Moog witnesses if this case is transferred, as Moog's key witnesses are located here, including Michael Hunter, Todd Schmidt, Paul Stoelting, and Jamie Daly. Indeed, Hunter and Schmidt are key witnesses for Moog regarding the nature and value of the trade secrets at issue in this case. (Hunter Dec. ¶¶ 5-29, 40-67) (Schmidt Dec. ¶¶ 5-8, 16-32).

       **3.**     **Transferring the case would improperly shift the inconvenience to Moog.**

Skyryse's arguments focus primarily on its own convenience. But courts in this District do not transfer cases merely to convenience one party over another. *Int'l Controls*, 2013 WL 4805801, at *22. Skyryse argues that the "vast majority of witnesses are in California[.]" (Skyryse Mem., at 17). But the key witnesses from Moog reside in New York—not California. (Moog's Witness List, Dkt. 4-30). Transferring this case from New York to California would merely shift the inconvenience from Skyryse to Moog without any gain in efficiency of resolution. Nor is there any significant inconvenience to Skyryse from litigating in New York. Skyryse (contrary to its attempt to downplay its weight) is a sizeable company (Rey Dec. ¶¶ 10-17), working with counsel that has offices in California and New York. While it claims that its witnesses "would incur significant time, expense, and inconvenience if required to appear in the Western District of New York" (Skyryse Mem., at 19), the same is true for Moog New York-based witnesses, if required to litigate in the Central District of California. In any event, with the advance of technology, including videoconference technology, inconvenience to Skyryse and its witnesses can be significantly reduced. *See*, *e.g.*, *MPD Accessories, B.V. v. Urban Outfitters, Inc.*, 2013 WL 4399199, at *10 (S.D.N.Y. Aug. 13, 2013).

4. __The locus of operative facts does not favor transfer.__

Skyryse argues most of the conduct in this lawsuit occurred in California. (Skyryse Mem., at 21-22).  But Skyryse ignores its New York-centric contractual relationship. (April Stoelting Dec. ¶¶ 11-13).  Skyryse also ignores Rey's attempts to solicit New York Moog employees to join Skyryse.  (Hunter Dec. ¶ 36) (April Schmidt Dec. ¶¶ 5-6).  *See Steuben Foods, Inc.*, 2002 WL 1628061, at *5 (considering that solicited employees were recruited in the district as part of transfer analysis).  Lastly, Skyryse fails to address the fact that the data stolen was stored on Moog's New York servers.  (Hunter Dec. ¶ 25) (April Hunter Dec. ¶ 8).

5. __All identified witnesses can be compelled to testify in this District.__

Despite Skyryse's statements, all properly identified witnesses will be required to testify in New York as employees of either Skyryse or Moog.  Skyryse only speculates that third-party witnesses may be needed to provide testimony.  (Rey Dec. ¶ 29).  The availability of process to compel witnesses, therefore, is considered a "neutral factor" because Skyryse failed to identify anyone who would be unwilling to testify in this District.  *See Security Mut. Life Ins. Co. v. Shapiro,* 2009 WL 295779, at *8 (N.D.N.Y. Sept. 11, 2009).  Even so, "the unavailability of process over third-party witnesses does not compel transfer when the practical alternative of offering videotaped or deposition testimony of a given witness exists."  *Reliance Ins. Co. v. Six Star, Inc.,* 155 F. Supp. 2d 49, 58-59 (S.D.N.Y. Aug. 10, 2001) (quotation omitted).

6. __The relative means of the parties does not favor transfer.__

Skyryse attempts to paint itself as small company.  This is misleading.  Courts have repeatedly held that the relative means of the parties carries little weight when both parties are corporations.  *See*, *e.g.*, *Atl. Recording Corp. v. BCD Music Grp., Inc.*, 2009 WL 1390848, at *7 (S.D.N.Y. May 7, 2009), *denying reconsideration* 2009 WL 2046036 (S.D.N.Y. July 15,

2009).  Moreover, Skyryse is hardly "small"; it boasts that it has raised "$250 million" in funding to date and employs 71 individuals.  (Skyryse Mem., at 2-3).  It further claims to be a "trailblazing California-based company that is revolutionizing flight by empowering anyone, anywhere, to fly an aircraft as safely as a highly experienced pilot would." (*Id*. at 1).  It also has a proven record of engaging in contacts with Moog in New York, including multiple in-person meetings (apparently without burden).  (April Stoelting Dec. ¶¶ 10-13).  Skyryse also fails to provide any detail or evidence showing that, without transfer, the costs of litigation would be unduly burdensome to its finances.  *Am. Eagle Outfitters, Inc.,* 457 F. Supp. 2d at 478.

7.   **Trial efficiency and the interests of justice do not favor transfer.**

While this District may have more cases per judge than the Central District of California, this is not a dispositive factor and must be balanced against the significant interest that the forum has in protecting its corporations' from wrongful conduct.  *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 173 (2d Cir. 2010) (quoting *Burger King*, 471 U.S. at 483).  Moreover, given how far along this case has already come in this District, efficiency concerns are best served by continuing here.  *See Colabufo v. Cont'l Cas. Co.*, 2006 WL 1210919, at *5 (E.D.N.Y. Apr. 27, 2006) (denying motion to transfer and stating that "congestion of the courts, though entitled to some weight, is not dispositive" and "importance is rather limited"); *Distefano v. Carozzi N. Am., Inc.*, 2002 WL 31640476, at *4 (E.D.N.Y. Nov. 16, 2002) (docket congestion "does not carry Defendant's burden of tipping the balance in favor of transfer").

Transferring this case to the Central District of California would also impede and interfere with Moog's ability to obtain injunctive relief.  Given the gravity of the conduct, any delay is irreparably harmful.  The parties have already entered into stipulations and began expedited discovery (Andoh Dec. ¶ 3), including appearing before this Court to address

discovery disputes.  (Dkt. 57).  Transfer would impair the progress already made.  *RMS Titanic, Inc. v. Geller*, 2000 WL 306997, at *7 (D. Conn. Jan. 10, 2000); *see also Elite Licensing, Inc. v. Thomas Plastics, Inc.*, 2003 WL 473669, at *2 (S.D.N.Y. Feb. 21, 2003).

        **8.**    ***Moog, Inc. v. Newport Aeronautical, Inc.* is distinguishable.**

        Skyryse relies heavily on *Moog, Inc. v. Newport Aeronautical, Inc.*, 2016 WL 3444238 (W.D.N.Y. June 23, 2016) (Decision and Order, Foschio J.).  (Skyryse Mem., at 15-17).  But, other than the fact that Moog was a party to that matter, the circumstances are different.  There, Moog brought an action against Newport Aeronautical claiming it had infringed several of Moog's copyrights in violation of federal copyright law and New York common law.  *Id.* at *1.  Unlike Skyryse, Newport actually was a small company—employing only ***three*** officers and employees with less than $1 million in revenue.  *Id.* at *4, 6.  All three employees would have been required to testify, and the testimony would be "essential to determining whether infringement occurred."  *Id.* at *5.  Newport did not hire any former Moog employees nor did it have a prior contractual and business relationship with Moog.  *See id.* at *1.

        Here, Skyryse is significantly larger than Newport.  It has 71 full-time employees, and over $250 million in funding.  (Skyryse Mem., at 2-3).  Unlike *Newport*, Skyryse will not have to have *all* of its employees testify in New York.  And Moog anticipates testimony will be required from four New York witnesses that are vital to its case.[12]  And, of course, Skyryse had a prior contractual and business relationship with New York (with the NDAs governed by New

---

[12]     Unlike in *Newport*, where the court determined that Moog witness testimony was not "essential" to the infringement claim, testimony from Moog witnesses here is vital to the trade secret, breach of contract, and unfair competition claims.  (Hunter Dec. ¶¶ 5-29, 40-67) (Schmidt Dec. ¶¶ 5-8, 16-32).  Skyryse disingenuously argues that a majority of Moog's listed witnesses are located in California (Skyryse Mem., at 18-19), ignoring the importance and weight of the witnesses.

York law) and had previously traveled to New York numerous times without any apparent burden.  (Feb. Stoelting Dec., Ex. A, B) (April Stoelting Dec. ¶¶ 10-13).  Further, Newport involved copyright infringement claims where the allegedly infringing product resided in California.  2016 WL 3444238, at *6.[13]  Here, Skyryse has hired 20 former Moog employees, at least two of which *directly copied and misappropriated Moog data stored in New York*.  (Bagnald Dec. ¶ 7) (Andoh Dec., Ex. A).  The two scenarios are nothing alike.[14]

       **9.**        **The remaining factors do not favor transfer.**

       The remaining factors to be considered by this Court weigh against transfer.  With respect to access to documents, "in today's world of faxing, scanning, and emailing documents, the location of relevant documents is largely a neutral factor."  *Int'l Controls*, 2013 WL 4805801, at *23.  Skyryse failed to identify any documents it could not transport to this District and expressly stated that its data "is also remotely accessible."  (Skyryse Mem., at 21).  The availability of compulsory process also weighs against transfer.  Skyryse only properly identifies current employees as potential witnesses.  (*See* Dkt. 48-5).  But there is no need to compel

---

[13]     The court in *Newport* also noted that weighing against transfer was the lack of any explanation by defendant as to how documents or evidence would be cumbersome to transport to this Court.  2016 WL 3444238, at *5.  The same is true here.  All parties are represented by global law firms, and evidence can be sent electronically, and witnesses can appear virtually.  Skyryse has also not articulated any burden in having relevant electronic devices transported to New York.  *See generally* Rey Dec.

[14]     The *Newport* court cited data indicating that, as of March 31, 2016, the median time between the commencement of a civil action and trial was 54.6 months in the Western District of New York, as compared to 20.2 months in the Central District of California.  2016 WL 3444238, at *7.  As of Dec. 31, 2019 (post-dating Skyryse's Sept. 30, 2019 data, which it claimed was the most recently available (*see* Skyryse Mem., at 16)), the Western District improved to 57.1 months, while the Central District of California (as of Dec. 31, 2021) was 24.2 months.  *See* U.S. District Court – Judicial Caseload Profile, *available at* https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2021.pdf.

current employees because "any employee of a party, despite their geographic location, can be reasonably expected to testify as witnesses at trial." *Advanced Fiber Techs. Trust v. J & L Fiber Servs., Inc.*, 2008 WL 4890377, at *4 (N.D.N.Y. Nov. 12, 2008).  Finally, Moog's claims based on theories such as breach of contract will involve state common law, which weighs against transfer to a court outside New York. *See Buffalo Newspress Inc. v. Adlife Marketing & Comms. Co., Inc.,* 2019 WL 3886725, at *5 (W.D.N.Y. Aug. 19, 2019).

## <u>CONCLUSION</u>

Skyryse's attempt to avoid being held accountable in the forum in which many of its wrongful acts were aimed, and the effect thereof were felt, should fail.  If Skyryse did not want to litigate here, it should not have engaged wrongful conduct toward Moog, an East Aurora-based corporation and should not have actively litigated this matter, including entering into two stipulations ordered by this Court.  If the Court does choose to transfer to California, Moog respectfully requests that it not dismiss the case to ensure that the temporary restraining order—protecting Moog's trade secrets—remains in place.  (*See* Dkt. 25, ¶ 12).

Dated:  April 12, 2022

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
*Attorneys for Moog Inc.*


By: s/Rena Andoh
       Rena Andoh
       Travis J. Anderson (*pro hac vice*)
       Tyler E. Baker (*pro hac vice*)
       Kazim A. Naqvi (*pro hac vice*)
30 Rockefeller Plaza
New York, New York 10112
212.653.8700


**HODGSON RUSS LLP**
*Attorneys for Moog Inc.*


By: s/Robert J. Fluskey, Jr.
       Robert J. Fluskey, Jr.
       Melissa N. Subjeck
       Pauline T. Muto
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, NY  14202-4040
716.856.4000