Exhibit A

**SheppardMullin**

Sheppard Mullin Richter & Hampton LLP
30 Rockefeller Plaza
New York, NY 10112-0015
212.653.8700 main
www.sheppardmullin.com

212.634.3092 direct
randoh@sheppardmullin.com
File Number: 02HL-350124

April 7, 2022

**VIA E-MAIL ONLY**

Hon. Jeremiah J. McCarthy                    mccarthy@nywd.uscourts.gov
Deputy Clerk: Eric Glynn
United States Magistrate Judge
Robert H. Jackson United States Courthouse
2 Niagara Square
Buffalo, NY 14202

Re:    *Moog Inc. v. Skyryse, Inc., et al.*
       U.S. District Court, Western District of New York – Case No. 1:22-cv-00187

Dear Honorable Judge McCarthy:

        We are counsel for plaintiff Moog, Inc. ("Moog") in the above-referenced matter. Pursuant to this Court's standing order, we are seeking the Court's immediate guidance on three related issues: 1) individual defendants Misook Kim's and Robert Alin Pilkington's refusal to agree to an "Attorneys' Eyes Only" ("AEO") provision in a draft stipulated protective order between the parties; 2) Defendants' refusal to agree to a forensic firm review protocol and related source code protocol; and 3) Moog's concerns with Defendants' alleged compliance with the March 11, 2022 Stipulated Order (the "Stipulated Order") regarding the return of Moog's direct and derivative non-public information.  Moog requests a conference with the Court as soon as possible at the Court's convenience, and remains prepared to file a motion or additional materials at the Court's direction.

        This case involves former Moog and current Skyryse employees Kim and Pilkington copying a total of over 1.3 million Moog files before leaving Moog to join its competitor Skyryse. After departing for Skyryse, Kim returned two hard drives to Moog, one of which she used to copy over 136,000 files of Moog data and had been intentionally formatted to wipe it clean. Notably, Defendants do not and cannot dispute any of these facts. And, it is undisputed that in response to the Stipulated Order, Defendants have turned over a combined 25 electronic devices and over 11,000 files of Moog data to the neutral forensic firm agreed to by the parties. Yet, as the enclosed correspondence reflects, Defendants point the finger at Moog and claim Moog is engaging in bad faith litigation conduct.

        The three instant issues are time-sensitive and require swift resolution. The parties' deadline to agree on a neutral forensic firm protocol to review and image the 25 devices and additional data turned over by Defendants is this Friday, April 8.  Further, Defendants' expedited discovery responses are due Monday, April 11.  Counsel for Kim and Pilkington has refused to meet and confer with Moog on these issues and has rejected all of Moog's requests for additional information without compromise.  Counsel for defendant Skyryse, Inc. ("Skyryse") has not responded to Moog's meet and confer request on the AEO issue.  Skyryse has also claimed it cannot enter into a forensic firm review protocol until Moog identifies its trade secrets with sufficient particularity. Skyryse has provided limited additional information at Moog's request

# **Sheppard**Mullin

Honorable Judge McCarthy
April 7, 2022
Page 2

regarding its purported compliance with the Stipulated Order, however, there remain more questions than answers.  Skyryse has now belatedly offered a meet and confer with respect to its compliance with the Stipulated Order, and while Moog will absolutely engage with Skyryse in good faith in that process, the timing of this case is such that Moog does not believe it can wait to seek judicial intervention.   In the event that the meet and confer results in resolution, or at least progress, Moog will promptly inform the Court.

The three issues, in sum, are:

- The parties must enter into a protective order governing confidential information as a threshold issue, given the sensitivity of the materials involved.  Moog requires an AEO provision given that the materials taken by Defendants include large quantities of Moog non-public information, including trade secret source code.  Kim and Pilkington have refused to agree to any AEO provision that does not exempt the two of them fully – even though permitting them access to all of the materials they took would essentially nullify the provision of the Stipulated Order prohibiting them from accessing those very materials. Moog asked for a meet and confer, and Kim and Pilkington refused and Skyrise failed to respond at all. Moog seeks an order that the stipulated protective order include an AEO provision that does not include a wholesale carve out for Kim and Pilkington or any former author or recipient of Moog highly-sensitive data.

- The parties must agree by tomorrow, April 8, to a forensic firm protocol for review and imaging of the devices and data containing Moog data turned over by Defendants. Defendants claim they cannot agree to a protocol until Moog identifies its trade secrets with additional particularity, notwithstanding that Moog has: 1) identified its trade secrets in detail in the Complaint and related filings; and 2) provided Defendants will all information it could generate regarding the files copied by Defendants including comprehensive file logs, folder logs, and available MD5#[1] values. To be clear, Moog's ability to provide comprehensive information about the files has been limited by the individual defendants' efforts to cover their tracks.  Moog seeks an order that the parties' agreement regarding the forensic firm protocol does not require any further identification of trade secrets by Moog.

- Moog is extremely concerned that Defendants did not sufficiently search or otherwise perform diligence before claiming compliance with the Stipulated Order. The information provided by defendant Skyryse to date indicates that it only searched for identical Moog files on Skyryse-issued devices using the limited information that Moog was able to retrieve, even though Moog advised that the file names and especially the MD5# values could not be relied upon by Skyryse in isolation in its searching. Notably, there is no indication Skyryse: (a) conducted any searches on the contents of the 23 electronic devices turned over by Kim and Pilkington's counsel, (b) conducted any investigation into whether any of the 23 devices turned over by Kim and Pilkington (or either of the two devices returned by Kim to Moog) or any devices associated with any of the other 18 employees that moved from Moog to Skyryse were connected to the Skyryse network,

---

[1] An MD5# value is an alphanumeric string that is generated from and uniquely corresponds to a particular file. If two files differ by even a single character, then the MD5# value for the two files will differ as well.  Likewise, if the MD5# values for two files are identical, then the contents of the two files will likewise be identical.

**Sheppard** Mullin

much less whether any data was copied from any of those devices, (c) conducted any searches to try and locate the over 1.2 million files of Moog data copied by Pilkington, or (d) made any attempt whatsoever to ascertain whether any portions of Moog files were integrated into Skyryse software or documents. Moog seeks an order requiring Defendants to provide information regarding the steps they took to search for these Moog data within these files and devices.

These issues are explicated in more detail below, as well as in the attached correspondence between the parties. Moog thanks the Court for any assistance it may be able to provide to help resolve these matters.

**Relevant Factual Background**

Moog initiated this lawsuit on March 7, 2022. (ECF 1). A brief summary of the key allegations giving rise to this lawsuit is as follows:

- Moog, a publicly traded aerospace and defense company founded in 1951, has developed over the past 15 years a base flight control software that "pairs up" with the hardware computers contained inside aircraft, functioning as the executive software that runs other flight control applications. This base software for commercial use is called Platform. Moog has also developed base flight control software for military use (eRTOS) and motor applications (AMP). Moog has invested hundreds of millions of dollars in building, testing, and certifying its base flight control software and project-specific applications. Compl. ¶¶ 10, 25-27, 37.

- Gonzalo Rey (former Moog Director of Engineering and Chief Technology Officer) and Sathyanarayana Achar (former Moog Engineering Technical Fellow), now employees of defendant Skyryse, Inc. ("Skyryse"), oversaw the development of Moog Platform base software beginning in 2007. Defendant Robert Alin Pilkington (former Senior Staff Engineer) ("Pilkington") was the lead architect on eRTOS, and supervised defendant Misook Kim ("Kim"). *Id.*, ¶¶ 51, 53, 54.

- The trade secrets at issue in this lawsuit include Moog's flight control source code, and documents and checklists prepared by Moog's Software Engineering Process Group ("SEPG") which contain processes to ensure software is being developed in a manner to meet certification by the Federal Aviation Administration and other similar authorities. *Id.*, ¶¶ 34, 39.

- In 2018, Moog and Skyryse explored a business relationship whereby Moog would provide helicopter flight control systems for Skyryse to install and implement into its business. The parties entered into two NDAs. After the parties completed Phase 1 of their engagement, Skyryse stopped its business operations, fired many of its employees, and pivoted its business model into offering a flight control operating system, called FlightOS. Given the overlap in what Skyryse was now pursuing compared to Moog, the parties ended their business relationship in September 2020. In October 2020, Skyryse announced a $200 million Series B fundraise. *Id.*, ¶¶ 76-87.

**Sheppard**Mullin

Honorable Judge McCarthy
April 7, 2022
Page 4

- To date, Skyryse has hired 20 software engineers from Moog, with the majority of these departures occurring in the past few months. Rey was the first Moog employee to join Skyryse when he left Moog in 2017. Pilkington left Moog on November 12, 2021 to join Skyryse, and  Kim left Moog on December 17, 2021 to join Skyryse. *Id*., ¶¶ 91-92.

- On November 19, 2021, between the hours of 3:00 and 7:00 a.m. and from a remote location, former Moog employee and current Skyryse employee Kim copied certain Moog data to an external hard drive. Kim copied 136,994 separate files, including 43,960 source code files, using Pilkington's file path to copy the data onto the external hard drive. *Id*., ¶¶ 115,123. In its initial filings, Moog included a file log containing the file name, file path, external hard drive involved, encryption status, folder/hard drive name and location, file size, date and time of copying, and other unique identifiers for each of the 136,994 files copied by Ms. Kim on November 19, 2021 (the "File Log"). (ECF 4-18, 4-19).

- Kim copied, among other things, 100% of the base Platform, eRTOS, and AMP software. Kim copied the entire application layer for seven project-specific applications, including six military projects. Kim essentially copied nearly everything that Moog's flight control software engineering teams had worked on over the past 15 years. Compl., ¶¶ 117-120.

- Upon request from Moog to return its data in January and February 2022, Kim returned two external hard drives, both of which contained no files. Moog discovered through forensic analysis that the first hard drive returned had been re-named in an effort to resemble the second hard drive which was used to actually copy Moog's data. The second hard drive returned, which was used to copy over 136,000 files of Moog's data, had been intentionally formatted sometime after Kim's departure from Moog in such a manner that it is impossible to determine the contents of the drive or if any data was copied or transferred to another device. It was also revealed that Kim copied additional Moog data to the second hard drive on December 15, 2021, and 54 GB of data was deleted from one of Kim's computers just two days later. Finally, forensic analysis showed there was a third external hard drive used by Kim during the relevant period which has not been returned to Moog. *Id*., ¶¶ 130-141.

- Moog's investigation has continued after the filing of the Complaint in this action, and in a March 21, 2022 letter, Moog notified counsel for Skyryse, Pilkington and Kim that it had found evidence of another series of downloads, this time by Pilkington.  Moog explained that there was evidence that Pilkington had downloaded approximately 1.1 million files of Moog data from his Moog-issued laptop onto an external hard drive, and then subsequently downloaded another 130,000 files to another hard drive on his last day of employment by Moog.  (See Exhibit 1).

**Relevant Procedural Background**

In its Motion for Temporary Restraining Order/Preliminary Injunction, Moog sought, among other things, that Defendants turn over all Moog non-public information in their possession (and any data incorporating such information) to a neutral forensic firm, and any electronic devices containing such information. (ECF 4, 4-32).  On March 11, 2022, Defendants executed the Stipulated Order, containing essentially all of the substantive relief Moog sought in its moving

**Sheppard**Mullin

Honorable Judge McCarthy
April 7, 2022
Page 5

papers, including turn-over of all direct and derivative Moog non-public information (and electronic devices) on or before April 1, 2022. (ECF 25, 28). On March 17, 2022, all parties entered into a stipulation regarding expedited discovery, which included providing written discovery responses on or before April 13, 2022, and production of documents on or before April 27, 2022. (ECF 33).

On March 23, 2022, at Skyryse's request and as a supplement to the file log Moog had attached as an exhibit to the Complaint, Moog provided a log with MD5# values for approximately 62,000 files from Kim's Moog-issued laptop that may correspond to certain of the 136,994 files that Kim copied from that laptop on November 19, 2021 (the "Hash Log"), and that this was all the hash information that Moog could generate in connection with the 136,994 files. (See Exhibit 2). Moog further advised that the MD5# values are of limited probative value because, among other things, they were generated from files that could have been edited, altered, and/or manipulated by Kim or in the normal course of business after the copying occurred.   This information was provided in addition to the File Log.

On April 1, 2022, Kim and Pilkington turned over a total of 23 electronic devices to the neutral forensics firm, and Skyryse turned over Kim and Pilkington's Skyryse-issued laptop devices, along with 11,093 Moog files – although it is unclear whether the files were delivered independently of the laptops. (See Exhibits 3, 4).  In their communication, Skyryse admitted that those 11,093 Moog files were located on Pilkington's Skyryse-issued laptop, thereby proving that Pilkington had possession while at Skyryse of Moog files that Kim took without authorization at a time when Kim was still a Moog employee. The parties' deadline to agree to a forensic firm protocol for review and imaging of these devices and data is April 8, 2022. (ECF 25, 28).

### The Individual Defendants' Refusal to Agree to an AEO Provision in the Draft Stipulated Protective Order and Refusal to Meet and Confer

Skyryse's counsel circulated a first draft of a proposed protective order on March 14, 2022. (See Exhibit 5 – E-mail Thread). Counsel for Skyryse and Moog exchanged multiple rounds of comments.  Both parties generally agreed on the inclusion of an AEO provision. Counsel for Kim and Pilkington first provided his input on April 1, 2022, stating that "we cannot agree to it as currently drafted (by either party) and that "[w]e will not agree to an 'attorneys' eyes only' category that does not provide a mechanism for us to discuss materials with our clients."

In response, Moog's counsel explained why an AEO provision is required in this case, and that it cannot include a carve out allowing Pilkington and Kim to review such materials even if they were prior authors or recipients of such information. Moog explained:

- Allowing Kim and Pilkington to review Moog's source code or other AEO materials would nullify one of the main points of relief in the Stipulated Order. ECF 25, § 7 ("Any of Plaintiff's non-public information, documents, records, files, or data in any Defendant's possession, custody, or control (if any) shall not be used or reviewed by Defendants.").

- This case involves trade secret misappropriation claims involving highly-sensitive technical documents and source code, so Moog must ensure that its trade secrets are not further put at risk in the hands of a competitor.

- Moog cannot agree to allow its former employees hired by Skyryse to review its source code or other AEO materials because, among other things, at least 20 of Skyryse's 71 employees used to work at Moog. Conversely, Moog has no former Skyryse employees on payroll. Such imbalance is patently unfair.

- The draft protective order contains a mechanism to challenge a designation if needed, and counsel for Pilkington and Kim can address such issues through the meet and confer process and motion practice on a case-by-case basis.

Moog also requested a telephonic meet and confer with counsel for all Defendants on or before 5:00 p.m. EST on Wednesday, April 6.

In response, Pilkington and Kim's counsel repeated that he would not agree to an AEO provision that does not allow him to discuss such materials with his clients. Moog then requested a telephonic meet and confer with counsel for all Defendants.  But, Pilkington and Kim's counsel refused, claiming that "Moog must first remedy the errors and failings identified in Skyryse's April 1 letter" and that "no meet and confer is productive until Moog first fixes its own failings." Skyryse has not responded to Moog's meet and confer request or otherwise weighed in since April 1.

**Moog's Concerns Regarding Compliance with the Stipulated Order**

On Friday, April 1, 2022, Skyryse's counsel sent a letter to Moog's counsel where it claimed it complied with the Stipulated Order by relying upon certain information provided by Moog, that a "vast majority" of the files turned over by Skyryse purportedly do not constitute Moog non-public information, and that Moog has purportedly not identified its trade secrets with sufficient particularity. (See Exhibit 4). Notably, Skyryse did admit that Kim's company laptop had received data from the Moog devices involved in copying over 136,000 Moog files, and that it found over 11,000 files of identical Moog files on Pilkington's laptop. On Monday, April 4, 2022, Skyryse's counsel sent an e-mail where it claimed the forensic firm protocol could not be agreed upon until Moog identified its trade secrets with sufficient particularity. (See Exhibit 6, Ex. C).

Also on April 4, Moog sent a response letter laying out the apparent deficiencies in Defendants' compliance with the Stipulated Order, and requested additional information regarding the steps taken to comply with the Stipulated Order by close of business April 6. (See Exhibit 6). Moog requested that if Defendants were not willing to provide such information, then the parties telephonically meet and confer before that same deadline.

Counsel for Pilkington and Kim sent a response letter on April 4, 2022 that consisted almost entirely of ad hominem attacks on Moog's counsel. (See Exhibit 7). At the conclusion of the letter, Pilkington and Kim's counsel rejected each of Moog's requests in its April 4, 2022 letter, and made its own separate set of demands including dismissal of this lawsuit.[2] Pilkington and Kim's counsel did not respond to Moog's meet and confer request.

---

[2] One of the demands was that Moog immediately produce the personnel records of Pilkington and Kim, even though the request for such records was made on March 17, 2022 and, pursuant to Cal. Lab. Code § 1198.5, Moog's deadline to produce such records is April 16, 2022. Regardless, Moog produced the requested personnel records on April 5, 2022. (See Exhibit 8 – E-mail Thread).

**Sheppard**Mullin

On April 6 at 7:54 p.m. EST, Skyryse sent a letter responding to Moog's requests for additional information. (See Exhibit 9). Setting aside the additional attacks on Moog's counsel and claims of bad faith litigation, Skyryse described its efforts to comply with the Stipulated Order. (*Id*. at pp. 4-5). Noticeably absent from Skyryse's description is any indication that it:

- Searched Skyryse's systems for any Moog data transferred from *any of the 23 electronic devices* turned over by Pilkington and Kim's counsel;

- Searched Skyryse's devices or systems for Moog data transferred *from any devices associated with* the 20 former Moog employees employed at Skyryse;

- Searched for any of the *1.2 million files copied by Pilkington*, or investigated the two separate hard drives involved in those acts of copying;

- Searched for any derivative Moog data that may have been incorporated or altered in connection with Skyryse data.

By its own description, Skyryse's search was limited to searching for identical Moog files from the File Log and Hash Log (which only involved the over 136,000 files copied by Kim, and even then, the MD5# values were only even marginally recoverable for about 62,000 files) on Skyryse-issued laptops only. Skyryse's claim that Moog represented these two logs were solely "sufficient for Defendants to comply with the March 11 stipulated order" is incorrect. Moog's March 23 e-mail explained in detail why the Hash Log has limited probative value, and that the File Log and Hash Log constituted all the information Moog could provide—not that they are the beginning and end of what Skyryse should search for. (Exhibit 2 at pp. 1-2). Moreover, because the searches run by Skyryse rely on partial data that Moog attempted to recover in the face of active efforts by Pilkington and Kim to obscure their efforts, Skyryse's searches are ineffective because of obfuscation by Skyryse's own employees. However, even if the lists were complete, Skyryse's search methodology would not account for portions of files integrated into Skyryse's work product because such partial use would not include a complete file, nor would it account for any of the 1.2 million files that Pilkington took.

With respect to Skyryse's claim that Moog has not identified its trade secrets, as an initial matter, the Stipulated Order requires Defendants to preserve and turn over Moog's "non-public information" (regardless of whether they are trade secrets) as well as any derivative information using or incorporating Moog's non-public information. Second, Moog's pleadings identify in detail the trade secrets at issue in this case – notably, Skyryse did not move to dismiss the Complaint on the basis that Moog did not adequately identify its trade secrets. Third, the fact that there may be some public information within the over 1.3 million files copied by Defendants does not mean Defendants cannot comply with their obligations under the Stipulated Order. Fourth, Moog never took the position that every file listed in the File Log and Hash Log constitutes a trade secret— merely that every file on that list was downloaded by Kim from Moog. Indeed, on March 23, Skyryse requested MD5# values "for each file Plaintiff alleges Defendants wrongfully acquired." (Exhibit 2 at p. 7.) Finally, given that Skyryse's own employees committed the copying at issue (which Defendants do not deny), they are well aware of what they did with those files after they took them. Moog is merely obligated to put Defendants on reasonable notice of the trade secrets at issue and the materials that were taken from Moog, not create and send a curated list of every

# **Sheppard**Mullin

Honorable Judge McCarthy
April 7, 2022
Page 8

file copied by Kim and Pilkington (and such task would be impossible given Kim and Pilkington's efforts to obfuscate what they were doing).

**Moog's Requested Relief**

Moog seeks a Court order:

1.  That the stipulated protective order between the parties include an AEO provision that does not allow such designated materials to be reviewed or discussed by Pilkington, Kim, or former authors or recipients of such information.

2.  That the parties' agreement regarding the forensic firm protocol does not require any further identification of trade secrets by Moog.

3.  Requiring Defendants to explain in writing, within seven days, the steps taken to:

    *   Search Skyryse's systems for any Moog data contained transferred from any of the 23 electronic devices turned over by Pilkington and Kim's counsel;

    *   Search Skyryse's devices or systems for Moog data transferred from any personal devices of the other 20 former Moog employees employed at Skyryse (or at a minimum, the 15 non-party former Moog employees who departed after Pilkington);

    *   Search for any of the 1.2 million files copied by Pilkington, or investigate the two separate hard drives involved in those acts of copying; and

    *   Search for any derivative Moog data that may have been incorporated or altered in connection with Skyryse data.

Moog's counsel is available at the Court's convenience for a telephonic conference and is prepared to submit any other materials that the Court requests. Thank you in advance for your time and consideration of this matter.

Very truly yours,

Rena Andoh
for SHEPPARD MULLIN RICHTER & HAMPTON LLP

SMRH:4884-3698-2298.9
cc:    Counsel of Record

# EXHIBIT 1

**Sheppard**Mullin

Sheppard Mullin Richter & Hampton LLP
30 Rockefeller Plaza
New York, NY 10112-0015
212.653.8700 main
www.sheppardmullin.com

212.634.3092 direct
randoh@sheppardmullin.com
File Number: 02HL-350124

March 21, 2022

**VIA E-MAIL ONLY**

Rory S. Miller, Esq.                    rmiller@lockelord.com
Mitchell J. Popham, Esq.                mpopham@lockelord.com
LOCKE LORD LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, California 90071

Josh Krevitt, Esq.                      jkrevitt@gibsondunn.com
Kate Dominguez, Esq.                    kdominguez@gibsondunn.com
Angelique Kaounis, Esq.                 akaounis@gibsondunn.com
GIBSON, DUNN, & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193

Re:   *Moog Inc. v. Skyryse, Inc., et al.*
      U.S. District Court, Western District of New York – Case No. 1:22-cv-00187
      Meet and Confer: Plaintiff's Responses to FHC's Interrogatories, Set Two

Dear Counsel:

As you are aware, we are counsel for Moog Inc. ("Moog") with respect to the above-referenced lawsuit. Our ongoing investigation has recently revealed that, in addition to the substantial copying of Moog data performed by defendant Misook Kim as described further in the Complaint and Moog's Motion for Preliminary Injunction (and supporting papers), defendant Robert Alin Pilkington also copied large volumes of Moog proprietary and confidential data just before his departure from Moog and before joining defendant Skyryse, Inc.

Specifically, we have discovered that on October 27, 2021 (the date that Mr. Pilkington provided notice of his resignation from Moog), Mr. Pilkington copied *approximately 1.1 million files* of Moog proprietary and confidential data from his Moog-issued laptop onto an external hard drive. We have also discovered that on November 12, 2021 (Mr. Pilkington's last day at Moog), he copied *approximately 130,000 additional files* of Moog proprietary and confidential data from his Moog-issued laptop onto an external hard drive. The external hard drives involved in these acts are: 1) Buffalo 1 TB Hard Drive, USB Serial Number AFDD0200107304 (the "Buffalo Hard Drive"); and 2) Samsung T7 Thumb Drive, Serial Number S5SCNS0R700159M (the "Samsung Thumb Drive"). It further appears efforts were taken to conceal this data transfer by Mr. Pilkington, which rendered it difficult for Moog not only to discover the theft, but to fully identify the breadth of it. Our investigation remains ongoing.

As you can appreciate, Moog has serious concerns over these acts committed by Mr. Pilkington in conjunction with the previously identified acts of Ms. Kim. Though you should have

**Sheppard**Mullin

Rory S. Miller, Esq.
Mitchell J. Popham, Esq.
March 21, 2022
Page 2

already done so pursuant to the temporary restraining order in this case and your general duties to preserve evidence relating to the pending claims in this case, you are hereby further put on notice of these duties and specifically instructed to preserve and isolate the Buffalo Hard Drive and Samsung Thumb Drive. They are not to be tampered, altered with, or connected to any other devices. No copies of the Buffalo Hard Drive or Samsung Thumb Drive, or any data therein, may be made.  We demand that these devices be turned over to Moog immediately, and no later than the deadlines imposed by the March 11, 2022 Stipulation and Order (ECF Nos. 25 and 28).  Again, the demands herein are already contemplated within and required under the March 11, 2022 Stipulation and Order, but we wanted to specifically advise you of these acts and the devices involved as soon as possible.

Should it be discovered that these devices have been tampered with, altered, connected to other devices, or copied in any manner, Moog reserves all rights including, but not limited to, a motion for sanctions, contempt, or spoliation. All rights are expressly reserved.

Very truly yours,

Rena Andoh
for SHEPPARD MULLIN RICHTER & HAMPTON LLP

SMRH:4874-3061-3526.2
4893-1923-8402.4

cc:    Travis Anderson, Esq.
       Lai L. Yip, Esq.
       Kazim A. Naqvi, Esq.
       Robert J. Fluskey, Jr., Esq.
       Melissa N. Subjeck, Esq., Esq.

EXHIBIT 2

**From:** Kazim Naqvi
**Sent:** Wednesday, March 23, 2022 5:02 PM
**To:** 'Goeke, Justine' <JGoeke@gibsondunn.com>; 'Dominguez, Kate' <KDominguez@gibsondunn.com>;
'Miller, Rory' <Rory.Miller@lockelord.com>; Rena Andoh <RAndoh@sheppardmullin.com>
**Cc:** Travis Anderson <TAnderson@sheppardmullin.com>; 'Fluskey Jr., Robert J.'
<RFluskey@hodgsonruss.com>; 'Subjeck, Melissa N.' <MSubjeck@hodgsonruss.com>; 'Muto, Pauline T.'
<pmuto@hodgsonruss.com>; 'Popham, Mitchell' <MPopham@lockelord.com>; 'Kaounis, Angelique'
<AKaounis@gibsondunn.com>; 'tflynn@harrisbeach.com' <tflynn@harrisbeach.com>; 'Krevitt, Josh'
<JKrevitt@gibsondunn.com>; Lai Yip <LYip@sheppardmullin.com>
**Subject:** RE: Moog v. Skyryse (22-cv-187) - Forensics Firm

Justine—

I am following up on my e-mail below regarding Skyryse's request that Moog provide hash values for
"each file Plaintiff alleges Defendants wrongfully acquired."

As a threshold matter, defendant Misook Kim herself accessed, copied, and stored the data at issue onto
at least two external hard drives, of which one has never been provided to Moog and the other has been
formatted and therefore wiped.  The party who is most likely to have the information you are seeking is
Misook Kim, not Moog.  Therefore, her counsel would be the best source from which to obtain hash
values or other unique identifiers for the Moog data she took upon departure. We suggest you request
such information directly from Locke Lord.

Second, as set forth in detail in Moog's Complaint, Motion for Preliminary Injunction, and accompanying
papers, Ms. Kim manipulated, altered, and/or deleted the Moog data at issue. This conduct included
intentionally formatting and wiping at least the Samsung Hard Drive onto which she copied 136,994 of
Moog's files. As a result, Moog does not have these 136,994 files that Ms. Kim copied onto the Samsung
Hard Drive (again, because she wiped those files from the drive) and therefore Moog does not have such
files from which to create the hash values you request.

In a good faith effort to work with you on providing what you requested, however, we have searched for
the 136,994 files on Ms. Kim's Moog-issued laptop computers using file name and partial file path.  We
were able to find what may be corresponding files for approximately 62,000 of the 136,994 files that
were not deleted and subsequently overwritten.  (Ms. Kim apparently deleted the remainder of the
136,994 files on her Moog-issued laptop after she copied them and those deleted files were
subsequently overwritten and are therefore not recoverable.)  We generated hash values for these
approximately 62,000 files, which are in the attached Excel spreadsheet.  The password will be sent
separately.  To be clear, we made a good faith effort to find corresponding files that were intact and
could be hashed, but cannot guarantee that they are an exact match to what Ms. Kim actually took.

However, we note that even if the approximately 62,000 files were the same as what Ms. Kim actually
took, the attached hash values would still be of limited probative value at this stage.  After Ms. Kim
improperly copied all the data onto the Samsung Hard Drive, she may have edited any of these
approximately 62,000 files on her laptop.  As you probably know, a difference of even a single character
in any file changes the hash value of that file.  Therefore, the hash value of a file on her laptop may not
match the hash value of the corresponding file she copied onto the Samsung Hard Drive.  Moreover, if
she edited any of the files on the Samsung Hard Drive after copying, those files would likewise generate
a different hash value than the corresponding files she originally took from Moog.

In summary, as set forth below, Moog provided Skyryse on March 8, 2022 with, among other things, file names, file path, and file size of each of the 136,994 Moog files referenced in the Complaint. And, it has now provided hash values for over 62,000 of the corresponding files from Ms. Kim's Moog-issued laptop (subject to the caveats regarding usability or lack thereof identified above).  As noted previously, Skyryse has more than enough information to satisfy its compliance obligations under the March 11, 2022 stipulated order.

Thank you,
Kazim

**Kazim Naqvi**
**Sheppard**Mullin | Los Angeles
+1 424-288-5336 | ext. 15336

**From:** Kazim Naqvi
**Sent:** Thursday, March 17, 2022 7:43 PM
**To:** 'Goeke, Justine' <JGoeke@gibsondunn.com>; Dominguez, Kate <KDominguez@gibsondunn.com>; Miller, Rory <Rory.Miller@lockelord.com>; Rena Andoh <RAndoh@sheppardmullin.com>
**Cc:** Travis Anderson <TAnderson@sheppardmullin.com>; Fluskey Jr., Robert J. <RFluskey@hodgsonruss.com>; Subjeck, Melissa N. <MSubjeck@hodgsonruss.com>; Muto, Pauline T. <pmuto@hodgsonruss.com>; Popham, Mitchell <MPopham@lockelord.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; tflynn@harrisbeach.com; Krevitt, Josh <JKrevitt@gibsondunn.com>
**Subject:** RE: Moog v. Skyryse (22-cv-187) - Forensics Firm

Hi Justine—

We are not agreeable to using Stroz as the third-party forensics firm.  We are fine with iDiscovery Solutions.  Please confirm your agreement to moving forward with iDiscovery Solutions.

Regarding your second request, Skyryse was served with the information you requested on March 8, 2022 along with the Complaint and other filings. Specifically, Ex. A to the Declaration of Ian Bagnald contains a file log for the data at issue in the Complaint which, among other things, provides the file names (column J), file path (column K), and file size (column L). This log was provided on a thumb drive that was served on all Defendants. This information is sufficient for Defendants to comply with the March 11, 2022 stipulated order. As a courtesy, we will also work to get you the hash values for the files.

Thank you,
Kazim

**Kazim Naqvi**
**Sheppard**Mullin | Los Angeles
+1 424-288-5336 | ext. 15336

**From:** Goeke, Justine <JGoeke@gibsondunn.com>
**Sent:** Thursday, March 17, 2022 2:04 PM
**To:** Kazim Naqvi <KNaqvi@sheppardmullin.com>; Dominguez, Kate <KDominguez@gibsondunn.com>; Miller, Rory <Rory.Miller@lockelord.com>; Rena Andoh <RAndoh@sheppardmullin.com>
**Cc:** Travis Anderson <TAnderson@sheppardmullin.com>; Fluskey Jr., Robert J.

<RFluskey@hodgsonruss.com>; Subjeck, Melissa N. <MSubjeck@hodgsonruss.com>; Muto, Pauline T. <pmuto@hodgsonruss.com>; Popham, Mitchell <MPopham@lockelord.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; tflynn@harrisbeach.com; Krevitt, Josh <JKrevitt@gibsondunn.com>
**Subject:** Moog v. Skyryse (22-cv-187) - Forensics Firm

Kazim, Rena:

In follow-up to our discussion during Tuesday's meet-and-confer, we propose Stroz for the third-party forensics firm described in the March 11, 2022 stipulation. Of the three forensics firms Plaintiff proposed, we would be willing to consider iDiscovery Solutions, but believe Stroz is best situated.

To facilitate the procedures contemplated by the March 11, 2022 stipulation, we ask that Plaintiff promptly provide us with hash values, all file names, and any unique identifiers for each file Plaintiff alleges Defendants wrongfully acquired.

Please let us know if it would be helpful to discuss.

Regards,

Justine


**Justine Goeke**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193
Tel +1 212.351.5372 • Fax +1 212.817.9472
JGoeke@gibsondunn.com • www.gibsondunn.com

# EXHIBIT 3

**From:** Waqas Anis <wanis@idsinc.com>
**Sent:** Monday, April 4, 2022 1:31 PM
**To:** Kazim Naqvi <KNaqvi@sheppardmullin.com>; Jim Vaughn <JVaughn@idsinc.com>; Miller, Rory <Rory.Miller@lockelord.com>
**Cc:** Rena Andoh <RAndoh@sheppardmullin.com>; Goeke, Justine <JGoeke@gibsondunn.com>; James Fazio <JFazio@sheppardmullin.com>; Travis Anderson <TAnderson@sheppardmullin.com>; Popham, Mitchell <MPopham@lockelord.com>; Froehlich, Joseph <JFroehlich@lockelord.com>; Dominguez, Kate <KDominguez@gibsondunn.com>; Polka, Michael M. <MPolka@gibsondunn.com>; Townsend Bourne <tbourne@sheppardmullin.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>
**Subject:** RE: Moog v. Skyryse- Call re iDiscovery engagement and device protocol

Kazim,

We received two boxes and the following devices were identified in each box:

**Alin Pilkington's box**
1. Western Digital External HD, SN: WX21DBBP7C8E
2. Buffalo External HD SSD, SN: 40608110534064
3. Buffalo External HD SSD, SN: 40608120102352
4. iPad A1459, SN:DMPJL0TCF18C
5. iPhone XS
6. iPad A1652, SN: DLXR3L7PGMW3
7. Western Digital External HD,  SN: WXU2EA00YVMN
8. Western Digital External HD,  SN: WXV2EA0FNHWW
9. Samsung Portable SSD, SN:S5SXNS0R700159M
10. MacBook Pro A19990, SN: C02XG6PHJH6
11. Blue 1 TB usb flash drive
12. SanDisk Cruzer 64 GB

**Misook Kim's box**
1. iPhone 13 or 12
2. Adata usb flash drive
3. Verbatim usb flash drive
4. SanDisk Cruzer 8 GB
5. Memorex 16 GB
6. Microsoft Surface Model 1645, SN: 070961552052
7. LG Gram Model: 169T0P, SN: 11OQCWC563905
8. iPad A1584, SN: DLXQTE2FMLL
9. MacBook Pro A1502, SN: C02P702TFVH9
10. KIA usb flash drive
11. Blue/Silver External HD

Thanks,



**Waqas Anis**
*Digital Forensics Jr. Consultant*
Direct: +1.714.581.4823 | wanis@idsinc.com
US: +1.800.813.4832 | UK/EEA: +44 (0)20 8242
4130
iDSinc.com

**From:** Kazim Naqvi <KNaqvi@sheppardmullin.com>
**Sent:** Monday, April 4, 2022 12:44 PM
**To:** Jim Vaughn <JVaughn@idsinc.com>; Miller, Rory <Rory.Miller@lockelord.com>
**Cc:** Rena Andoh <RAndoh@sheppardmullin.com>; Goeke, Justine <JGoeke@gibsondunn.com>; Waqas
Anis <wanis@idsinc.com>; James Fazio <JFazio@sheppardmullin.com>; Travis Anderson
<TAnderson@sheppardmullin.com>; Popham, Mitchell <MPopham@lockelord.com>; Froehlich, Joseph
<JFroehlich@lockelord.com>; Dominguez, Kate <KDominguez@gibsondunn.com>; Polka, Michael M.
<MPolka@gibsondunn.com>; Townsend Bourne <tbourne@sheppardmullin.com>; Samplin, Ilissa
<ISamplin@gibsondunn.com>
**Subject:** RE: Moog v. Skyryse- Call re iDiscovery engagement and device protocol

[EXTERNAL SENDER]

Jim—

We wanted to follow up on an identifying list of the devices turned over by the Individual Defendants on
Friday.

Thanks,
Kazim

**Kazim Naqvi**
**Sheppard**Mullin | Los Angeles
+1 424-288-5336 | ext. 15336

**From:** Jim Vaughn <JVaughn@idsinc.com>
**Sent:** Friday, April 1, 2022 6:30 PM
**To:** Miller, Rory <Rory.Miller@lockelord.com>; Kazim Naqvi <KNaqvi@sheppardmullin.com>
**Cc:** Rena Andoh <RAndoh@sheppardmullin.com>; Goeke, Justine <JGoeke@gibsondunn.com>; Waqas
Anis <wanis@idsinc.com>; James Fazio <JFazio@sheppardmullin.com>; Travis Anderson
<TAnderson@sheppardmullin.com>; Popham, Mitchell <MPopham@lockelord.com>; Froehlich, Joseph
<JFroehlich@lockelord.com>; Dominguez, Kate <KDominguez@gibsondunn.com>; Polka, Michael M.
<MPolka@gibsondunn.com>; Townsend Bourne <tbourne@sheppardmullin.com>; Samplin, Ilissa
<ISamplin@gibsondunn.com>
**Subject:** Re: Moog v. Skyryse- Call re iDiscovery engagement and device protocol

We will be providing a list, but not today.


----
Jim Vaughn, GCFE, EnCE

Managing Director
535 Anton Blvd., Suite 860 | Costa Mesa, CA. 92626
Direct: 714.261.0348 | jvaughn@idsinc.com
iDSinc.com

---

**From:** Miller, Rory <Rory.Miller@lockelord.com>
**Sent:** Friday, April 1, 2022 6:23 PM
**To:** Kazim Naqvi <KNaqvi@sheppardmullin.com>
**Cc:** Jim Vaughn <JVaughn@idsinc.com>; Rena Andoh <RAndoh@sheppardmullin.com>; Goeke, Justine <JGoeke@gibsondunn.com>; Waqas Anis <wanis@idsinc.com>; James Fazio <JFazio@sheppardmullin.com>; Travis Anderson <TAnderson@sheppardmullin.com>; Popham, Mitchell <MPopham@lockelord.com>; Froehlich, Joseph <JFroehlich@lockelord.com>; Dominguez, Kate <KDominguez@gibsondunn.com>; Polka, Michael M. <MPolka@gibsondunn.com>; Townsend Bourne <tbourne@sheppardmullin.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>
**Subject:** Re: Moog v. Skyryse- Call re iDiscovery engagement and device protocol

[EXTERNAL SENDER]

Why doesn't iDS prepare a list? Alternatively, if the concern is whether devices were lost in transmittal to iDS I will communicate with Jim separately.


On Apr 1, 2022, at 6:09 PM, Kazim Naqvi <KNaqvi@sheppardmullin.com> wrote:


** External Email -- Sender: knaqvi@sheppardmullin.com **


Rory—

Pursuant to Jim's request and as provided by Skyryse earlier, can counsel for the individual defendants provide a list with specifications of the devices turned over to iDS today? This will ensure that all parties are clear and on the same page regarding the number and type of devices that have been turned over and in the custody of iDS.

Thank you,
Kazim


On Apr 1, 2022, at 5:20 PM, Miller, Rory <Rory.Miller@lockelord.com> wrote:


That should be the individual defendants' materials yes.


On Apr 1, 2022, at 5:06 PM, Jim Vaughn <JVaughn@idsinc.com> wrote:


** External Email -- Sender: JVaughn@idsinc.com **

Hello All.  After Waqas had left the office, he received a call from a courier who was attempting to make another delivery.  This of course was unknown to us.  He drove back to the office and was told there are a couple boxes.  Can someone please tell us if this is computers and devices for the individual defendants, and if so, what is it that we should have gotten?

Thank you

----
**Jim Vaughn, GCFE, EnCE**
***Managing Director***
535 Anton Blvd., Suite 860 | Costa Mesa, CA. 92626
Direct: 714.261.0348 | jvaughn@idsinc.com
iDSinc.com

# EXHIBIT 4

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Kate Dominguez
Direct: +1 212.351.2338
Fax: +1 212.716.0839
KDominguez@gibsondunn.com

April 1, 2022

<u>VIA E-MAIL</u>

Rena Andoh, Partner
Sheppard, Mullin, Richter & Hampton LLP
30 Rockefeller Plaza
New York, NY 10112

Re:  *Moog, Inc. v. Skyryse, Inc. et al.*, No. 22-cv-187 (W.D.N.Y.)

Counsel:

We write regarding Skyryse's compliance with its obligations under the March 11, 2022 Stipulation and Order (ECF Nos. 25, 36) (the "March 11 Order") and Moog's failure to sufficiently identify the purported non-public, trade secret information at issue in this action.

**Skyryse's Compliance with the March 11 Order**

***Production of Devices which Received Data from Enumerated Devices***.  Pursuant to Section 5 of the March 11 Order, Skyryse was obligated to produce to the neutral forensics firm, iDiscovery Solutions ("iDS"), for forensic imaging any of its devices which received, copied, or was transferred any information or data from the four devices mentioned in Section 4 of the March 11 Order (the "Enumerated Devices").  In compliance with Section 5, Skyryse delivered a Skyryse-issued laptop used by Ms. Kim (the "Kim Laptop") to iDS today.  A diligent search of Skyryse-issued devices did not uncover other devices which received, copied, or was transferred any information or data from the Enumerated Devices.

***Delivery of Records Plaintiff Identified as Belonging to Plaintiff***.  Pursuant to Sections 2 and 3 of the March 11 Order, Skyryse was obligated within 21 days of the Order to deliver to Moog any and all originals and copies of all non-public information, documents, records, files, or data in Skyryse's possession, custody, or control belonging to Moog, and to deliver to iDS any such files that have been integrated, combined, inserted, modified, updated, upgraded, or otherwise used by any defendant in such a manner that delivery necessarily includes property of any defendant.

To enable Skyryse to locate such non-public information, documents, records, files, or data belonging to Moog, Moog produced to Skyryse an Excel spreadsheet entitled mkim3.xls, listing 136,994 records allegedly downloaded by Ms. Kim (the "Moog Filename List").  Moog represented to Skyryse that the Moog Filename List was "sufficient for Defendants to

**GIBSON DUNN**

April 1, 2022
Page 2

comply with the March 11 stipulated order"—*i.e.*, for Skyryse to use to identify non-public information belonging to Moog.  Moog also produced an Excel spreadsheet entitled Log with MD5_encrypted.xlsx, purporting to list 62,408 MD5 hash values associated with a subset of the Moog Filename List (the "Moog Hash Value List").

Upon review, Skyryse discovered the Moog Filename List contains many thousands of files with generic filenames readily found in non-Moog file systems, either because they are used or produced by common applications or because they are commercially available.  For example, the Moog Filename List contains 97 instances of files named main.c, which is a filename common to every program written in that language.  Files matching MD5 hash values supplied in the Moog Hash Value List also have been revealed as public information, rather than information belonging to Moog.  For example, the Moog Hash Value List contains a file named pre-rebase.sample associated with a hash value of 56e45f2bcbc8226d2b4200f7c46371bf.  A basic Internet search (*see* tinyurl.com/3brps9tj) reveals this file is not a Moog file, but rather is a file copyrighted by Junio C. Hamano, a well-known open-source software developer employed by Google.  Thus, it clearly is not the case that every—or even most—of the files identified by Moog in its Moog Filename and Hash Value Lists constitute information belonging to or originating with Moog.

Despite the demonstrated unreliability of the Moog Filename and Hash Value Lists provided by Moog for purposes of identifying Moog non-public information, Skyryse conducted a diligent search of Skyryse's files for Moog's purportedly non-public information.  Among other things, Skyryse used the lists Moog provided to search the Skyryse-issued laptop used by R. Alin Pilkington (the "Pilkington Laptop").  A search of the Pilkington Laptop using the lists turned up 11,093 files.  Because both lists Moog supplied are wildly overbroad— containing thousands of entries of information that is not proprietary to Moog—we suspect the vast majority (if not all) of the 11,093 files are not subject to production under the March 11 Order, which requires only "*non-public* information . . . of Plaintiff" to be returned to Moog or delivered to iDS.  March 11 Order ¶¶ 2, 3 (emphasis added).  But because it is not feasible for Skyryse to evaluate conclusively all 11,093 files from the Pilkington Laptop by today's  April 1, 2022 delivery deadline, in an abundance of caution Skyryse delivered all 11,093 files to iDS.

Skyryse has not ascertained whether any of the 11,093 files from the Pilkington Laptop actually include Plaintiff's non-public information.  Under the circumstances, Skyryse is not *required* under the March 11 Order to deliver either the Pilkington Laptop or any of its contents.  This is because Skyryse did not determine any files on the Pilkington Laptop contained non-public information belonging to Moog, and because the device does not fall within Section 5 of the Order.  However, given Moog's failure to sufficiently identify its purported non-public information, out of an abundance of caution Skyryse delivered to iDS

**GIBSON DUNN**

April 1, 2022
Page 3

the 11,093 files found on the Pilkington Laptop that contained attributes matching the overbroad list of names and hash values provided by Moog.

To be clear, Skyryse has *not* determined these files or any other files in Skyryse's possession contain *any* non-public information belonging to Moog.

**<u>Moog's Failure to Identify Its Purported Trade Secrets</u>**

This failure by Moog to provide even a credible list of its purported non-public information underscores that Moog has not complied with its basic obligation to identify with reasonable particularity the alleged trade secrets it contends are at issue in this case. Moog's failure to do so has created undue burden for Skyryse in complying with the March 11 Order, is hindering Skyryse's ability to respond to Moog's discovery requests, and prejudices Skyryse's ability to defend against Moog's groundless claims. Moog must cure this deficiency—and identify with particularity the purported secrets it contends were taken from Moog by Kim and Pilkington on or about November 19, 2021—for discovery to proceed.

Before commencing discovery, a plaintiff asserting a trade secret claim is required to identify its trade secrets "with sufficient specificity to inform the defendant of what they are alleged to have misappropriated." *Pauwels v. Deloitte LLP*, 2020 WL 818742, at *4 (S.D.N.Y. Feb. 19, 2020). Where, as here, source code is at issue, a trade secret plaintiff must "identify, with reasonable particularity, which of the component parts or sequencing of their source code are not (1) publicly available information, (2) commonly-used algorithms, or (3) third-party licensing." *MSCI Inc. v. Jacob*, 945 N.Y.S.2d 863, 866 (N.Y. Sup. Ct. 2012) (barring plaintiffs from seeking further discovery until the required identification was made*); see also, e.g.*, *Powerweb Energy, Inc. v. Hubbell Lighting, Inc.*, 2012 WL 3113162, at *2 (D. Conn. July 31, 2012) (granting protective order and ordering plaintiff to "provide defendants with a description that defines with reasonable specificity the alleged trade secrets which form the basis of its misappropriation claim" before further discovery could proceed); *cf.* Cal. Code. Civ. P. § 2019.210 ("[B]efore commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity.").

Moog not only has failed to satisfy this obligation, but also affirmatively provided Skyryse with *misinformation*—incorrectly categorizing seemingly *public* information as Moog's own non-public information. Moog is required to identify its purported trade secrets with reasonable particularity. A list of generic files Moog stored in its archives does not satisfy this requirement and prejudices Skyryse's ability to search for the Moog information Moog claims was misappropriated, and to defend this case. Expedited discovery cannot proceed if

**GIBSON DUNN**

April 1, 2022
Page 4

Moog does not identify its alleged trade secrets with reasonable particularity.  Please confirm
Moog will promptly rectify this deficiency.  Otherwise, Skyryse may seek court intervention.

Sincerely,

Kate Dominguez

# EXHIBIT 5

**From:** Miller, Rory <Rory.Miller@lockelord.com>
**Sent:** Monday, April 4, 2022 2:52 PM
**To:** Rena Andoh <RAndoh@sheppardmullin.com>; Kazim Naqvi <KNaqvi@sheppardmullin.com>
**Cc:** Goeke, Justine <JGoeke@gibsondunn.com>; Lai Yip <LYip@sheppardmullin.com>; Kaounis, Angelique <akaounis@gibsondunn.com>; Travis Anderson <TAnderson@sheppardmullin.com>; Dominguez, Kate <KDominguez@gibsondunn.com>; Fluskey Jr., Robert J. <RFluskey@hodgsonruss.com>; tflynn@harrisbeach.com; Krevitt, Josh <jkrevitt@gibsondunn.com>; Subjeck, Melissa N. <MSubjeck@hodgsonruss.com>; Muto, Pauline T. <pmuto@hodgsonruss.com>; Popham, Mitchell <MPopham@lockelord.com>; James Fazio <JFazio@sheppardmullin.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Polka, Michael M. <MPolka@gibsondunn.com>
**Subject:** RE: Moog v. Skyryse (22-cv-187) - Protective Order

Rena: in order to have a productive meet and confer, given the hyperbolic claims in Kazim's email of earlier today, Moog must first remedy the errors and failings identified in Skyryse's April 1 letter. Until we know what the ***real,*** as opposed to falsely claimed, trade secret information is, I don't see how we can meaningfully discuss the contours of a protective order. If Moog remedies those errors and mistakes identified by Skyryse, we are available at either of those times, but, again, no meet and confer is productive until Moog first fixes its own failings.

RSM

Rory S. Miller
Locke Lord LLP
213.687.6753 Direct

**From:** Rena Andoh <RAndoh@sheppardmullin.com>
**Sent:** Monday, April 4, 2022 2:45 PM
**To:** Miller, Rory <Rory.Miller@lockelord.com>; Kazim Naqvi <KNaqvi@sheppardmullin.com>
**Cc:** Goeke, Justine <JGoeke@gibsondunn.com>; Lai Yip <LYip@sheppardmullin.com>; Kaounis, Angelique <akaounis@gibsondunn.com>; Travis Anderson <TAnderson@sheppardmullin.com>; Dominguez, Kate <KDominguez@gibsondunn.com>; Fluskey Jr., Robert J. <RFluskey@hodgsonruss.com>; tflynn@harrisbeach.com; Krevitt, Josh <jkrevitt@gibsondunn.com>; Subjeck, Melissa N. <MSubjeck@hodgsonruss.com>; Muto, Pauline T. <pmuto@hodgsonruss.com>; Popham, Mitchell <MPopham@lockelord.com>; James Fazio <JFazio@sheppardmullin.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Polka, Michael M. <MPolka@gibsondunn.com>
**Subject:** RE: Moog v. Skyryse (22-cv-187) - Protective Order

**\*\* External Email -- Sender:** randoh@sheppardmullin.com **\*\***

Rory,

Please advise your availability to meet and confer on this issue (or one of your colleagues).   I can be available any time between 1:30-3, 3:30-6pm ET tomorrow or anytime 2-6pm ET on Wednesday.  I also ask that a representative of Skyryse from Gibson Dunn participate so that all of the parties' positions with respect to the AEO provision are discussed.

Regards,

Rena

**Rena Andoh**
+1 212-634-3092 | direct
RAndoh@sheppardmullin.com | Bio

**Sheppard**Mullin
30 Rockefeller Plaza
New York, NY 10112-0015
+1 212-653-8700 | main
www.sheppardmullin.com | LinkedIn | Twitter

**From:** Miller, Rory <Rory.Miller@lockelord.com>
**Sent:** Monday, April 4, 2022 1:11 PM
**To:** Kazim Naqvi <KNaqvi@sheppardmullin.com>
**Cc:** Rena Andoh <RAndoh@sheppardmullin.com>; Goeke, Justine <JGoeke@gibsondunn.com>; Lai Yip <LYip@sheppardmullin.com>; Kaounis, Angelique <akaounis@gibsondunn.com>; Travis Anderson <TAnderson@sheppardmullin.com>; Dominguez, Kate <KDominguez@gibsondunn.com>; Fluskey Jr., Robert J. <RFluskey@hodgsonruss.com>; tflynn@harrisbeach.com; Krevitt, Josh <jkrevitt@gibsondunn.com>; Subjeck, Melissa N. <MSubjeck@hodgsonruss.com>; Muto, Pauline T. <pmuto@hodgsonruss.com>; Popham, Mitchell <MPopham@lockelord.com>; James Fazio <JFazio@sheppardmullin.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Polka, Michael M. <MPolka@gibsondunn.com>
**Subject:** Re: Moog v. Skyryse (22-cv-187) - Protective Order

No. We will not agree to an AEO category without any provision for us to discuss designated materials with our clients, especially materials that they have already reviewed or authored.

On Apr 4, 2022, at 10:01 AM, Kazim Naqvi <KNaqvi@sheppardmullin.com> wrote:

**\*\* External Email -- Sender: knaqvi@sheppardmullin.com \*\***

Rory,

We must have an AEO designation for records in this case, and we cannot create a carve out that allows you to disclose those designated documents to your clients, notwithstanding that they may be the authors or prior recipients of the designated documents. As you are well aware, this case centers on the wrongful conduct of your clients in their capacity as Skyryse employees – specifically, to wrongfully take and exploit the very materials you are now insisting they have renewed access to. This is particularly problematic because it would nullify the stipulated TRO. Indeed, one of the main points of relief your clients agreed to was that they would not access, use, or review any of Moog's materials. *See* March 11, 2022 Stipulation and Order, Section 7 ("Any of Plaintiff's non-public information, documents, records, files, or data in any Defendant's possession, custody, or control (if any) shall not be used or reviewed by Defendants."). The fact that they previously had access to these materials does not nullify the uncontroverted fact that they have no right to access them now that they are no longer Moog

employees, and such access is highly detrimental to Moog's interest in keeping its confidential materials confidential.

Because this case involves claims for trade secret misappropriation involving highly-sensitive source code, Moog must ensure that its trade secrets are not disclosed to third parties.  Defendants have already tried to do an end run around Moog's right to protect its nonpublic information by inserting a provision – that Moog rightfully rejected – stating that any prior author or recipient have access review AEO designated materials at any time in the case following production.  Moog cannot agree to that access.  First, Skyryse and Moog are direct competitors.  Second, Skyryse has hired at least 20 former Moog employees who may have previously authorized or received Moog's trade secrets.  Such a provision would potentially allow more than one fourth of all Skyryse employees to gain access to Moog's trade secrets and source code.  Such access would be completely antithetical to the intent of any AEO provision.  Finally, while Skyryse has 20+ former Moog employees on payroll, Moog has NO former Skyryse employees.  Therefore Skyryse would have the perspective of many of its engineers in analyzing the materials, while Moog would not have the benefit of any such perspective.  Such imbalance is patently unfair.

Finally, the PO provides a mechanism to challenge a designation if needed.  As a result, if you believe that a subset of records designated as AEO need to have a less restrictive designation in order for you to adequately represent your clients, that can be addressed through the meet and confer process and through motion practice, on a case-by-case basis.  But where we currently sit, before any discovery has occurred, and given the sensitivities of the data at issue in this case, Moog needs the preliminary right to designate records as AEO.

Let us know if you would like to have a call to further confer, but we need clarity on your position by end of day Wednesday, April 6.  And if we are unable to resolve the impasse, we will promptly seek the Court's assistance, as we need to have a PO entered as soon as possible in order to ensure expedited discovery progresses as scheduled.

Thank you,


**Kazim Naqvi**
**SheppardMullin** | Los Angeles
+1 424-288-5336 | ext. 15336

**From:** Miller, Rory <Rory.Miller@lockelord.com>
**Sent:** Friday, April 1, 2022 1:22 PM
**To:** Rena Andoh <RAndoh@sheppardmullin.com>; Goeke, Justine <JGoeke@gibsondunn.com>; Lai Yip <LYip@sheppardmullin.com>
**Cc:** Kaounis, Angelique <AKaounis@gibsondunn.com>; Travis Anderson <TAnderson@sheppardmullin.com>; Dominguez, Kate <KDominguez@gibsondunn.com>; Fluskey Jr., Robert J. <RFluskey@hodgsonruss.com>; tflynn@harrisbeach.com; Krevitt, Josh <JKrevitt@gibsondunn.com>; Kazim Naqvi <KNaqvi@sheppardmullin.com>; Subjeck, Melissa N. <MSubjeck@hodgsonruss.com>; Muto, Pauline T. <pmuto@hodgsonruss.com>; Popham, Mitchell <MPopham@lockelord.com>; James Fazio <JFazio@sheppardmullin.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Polka, Michael M. <MPolka@gibsondunn.com>
**Subject:** RE: Moog v. Skyryse (22-cv-187) - Protective Order

Rena:

Regarding the protective order, we cannot agree to it as currently drafted (by either party). We are not willing to agree to a protective order that permits the restriction of our ability to discuss evidence with our clients, in particular (but by no means limited to) the limitations in your redline 6.5(g), which are simply unacceptable. We will not agree to an "attorneys' eyes only" category that does not provide a mechanism for us to discuss materials with our clients.

Rory S. Miller
Locke Lord LLP
213.687.6753 Direct

**From:** Rena Andoh <RAndoh@sheppardmullin.com>
**Sent:** Thursday, March 31, 2022 4:37 AM
**To:** Goeke, Justine <JGoeke@gibsondunn.com>; Lai Yip <LYip@sheppardmullin.com>
**Cc:** Miller, Rory <Rory.Miller@lockelord.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Travis Anderson <TAnderson@sheppardmullin.com>; Dominguez, Kate <KDominguez@gibsondunn.com>; Fluskey Jr., Robert J. <RFluskey@hodgsonruss.com>; tflynn@harrisbeach.com; Krevitt, Josh <JKrevitt@gibsondunn.com>; Kazim Naqvi <KNaqvi@sheppardmullin.com>; Subjeck, Melissa N. <MSubjeck@hodgsonruss.com>; Muto, Pauline T. <pmuto@hodgsonruss.com>; Popham, Mitchell <MPopham@lockelord.com>; James Fazio <JFazio@sheppardmullin.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Polka, Michael M. <MPolka@gibsondunn.com>
**Subject:** RE: Moog v. Skyryse (22-cv-187) - Protective Order

**\*\* External Email -- Sender:** randoh@sheppardmullin.com **\*\***

Justine,

Please see our changes to the draft Protective Order. If Locke Lord can confirm whether they intend to propose any changes independently of Gibson Dunn, that would be very helpful. I don't believe we've seen any comments from them yet on the Protective Order.

Best,
Rena

**Rena Andoh**
+1 212-634-3092 | direct
RAndoh@sheppardmullin.com | Bio

**Sheppard**Mullin
30 Rockefeller Plaza
New York, NY 10112-0015
+1 212-653-8700 | main
www.sheppardmullin.com | LinkedIn | Twitter

**From:** Goeke, Justine <JGoeke@gibsondunn.com>
**Sent:** Monday, March 28, 2022 9:38 PM

**To:** Rena Andoh <RAndoh@sheppardmullin.com>; Lai Yip <LYip@sheppardmullin.com>
**Cc:** Miller, Rory <Rory.Miller@lockelord.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Travis Anderson <TAnderson@sheppardmullin.com>; Dominguez, Kate <KDominguez@gibsondunn.com>; Fluskey Jr., Robert J. <RFluskey@hodgsonruss.com>; tflynn@harrisbeach.com; Krevitt, Josh <JKrevitt@gibsondunn.com>; Kazim Naqvi <KNaqvi@sheppardmullin.com>; Subjeck, Melissa N. <MSubjeck@hodgsonruss.com>; Muto, Pauline T. <pmuto@hodgsonruss.com>; Popham, Mitchell <MPopham@lockelord.com>; James Fazio <JFazio@sheppardmullin.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>; Polka, Michael M. <MPolka@gibsondunn.com>
**Subject:** RE: Moog v. Skyryse (22-cv-187) - Protective Order

Hi Rena,

I have attached Skyryse's proposed edits to the protective order.  Please let us know if it would be helpful to discuss.

Regards,

Justine

**Justine Goeke**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193
Tel +1 212.351.5372 • Fax +1 212.817.9472
JGoeke@gibsondunn.com • www.gibsondunn.com

**From:** Rena Andoh <RAndoh@sheppardmullin.com>
**Sent:** Monday, March 28, 2022 7:14 AM
**To:** Lai Yip <LYip@sheppardmullin.com>
**Cc:** Miller, Rory <Rory.Miller@lockelord.com>; Goeke, Justine <JGoeke@gibsondunn.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; Travis Anderson <TAnderson@sheppardmullin.com>; Dominguez, Kate <KDominguez@gibsondunn.com>; Fluskey Jr., Robert J. <RFluskey@hodgsonruss.com>; tflynn@harrisbeach.com; Krevitt, Josh <JKrevitt@gibsondunn.com>; Kazim Naqvi <KNaqvi@sheppardmullin.com>; Subjeck, Melissa N. <MSubjeck@hodgsonruss.com>; Muto, Pauline T. <pmuto@hodgsonruss.com>; Popham, Mitchell <MPopham@lockelord.com>; James Fazio <JFazio@sheppardmullin.com>
**Subject:** Re: Moog v. Skyryse (22-cv-187) - Protective Order

**[WARNING: External Email]**

Justine,

Following up on Lai's email from Thursday - it's been a week and we still have not received comments on the protective order. Additionally, following up on an email my colleague James Fazio sent on Friday, we are still awaiting your availability for a call today to discuss procedures for turnover of devices.  I've copied in James to this email chain for ease of communication.

We look forward to your responses on both of these fronts.

We would also appreciate any comments from counsel for Kim and Pilkington on the protective order to the extent they have any comments independent from those from counsel for Skyryse.

Regards,
Rena

**Rena Andoh**
+1 212-634-3092 | direct
RAndoh@sheppardmullin.com | Bio

**SheppardMullin**
30 Rockefeller Plaza
New York, NY 10112-0015
+1 212-653-8700 | main
www.sheppardmullin.com | LinkedIn | Twitter

On Mar 24, 2022, at 5:11 PM, Lai Yip <LYip@sheppardmullin.com> wrote:

Counsel, following up with the protective order and whether you have any comments.  We note that we have not yet seen comments from Locke Lord; receiving those would help move the process forward.

Thanks,

**Lai L. Yip**
+1 415-774-3147 | direct
LYip@sheppardmullin.com | Bio

**Sheppard**Mullin
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111-4109
+1 415-434-9100 | main
www.sheppardmullin.com | LinkedIn | Twitter

**From:** Lai Yip <LYip@sheppardmullin.com>
**Sent:** Monday, March 21, 2022 5:08 PM
**To:** Miller, Rory <Rory.Miller@lockelord.com>; Rena Andoh <RAndoh@sheppardmullin.com>
**Cc:** Goeke, Justine <JGoeke@gibsondunn.com>; Kaounis, Angelique <akaounis@gibsondunn.com>;
Travis Anderson <TAnderson@sheppardmullin.com>; Dominguez, Kate
<KDominguez@gibsondunn.com>; Fluskey Jr., Robert J. <RFluskey@hodgsonruss.com>;
tflynn@harrisbeach.com; Krevitt, Josh <jkrevitt@gibsondunn.com>; Kazim Naqvi
<KNaqvi@sheppardmullin.com>; Subjeck, Melissa N. <MSubjeck@hodgsonruss.com>; Muto, Pauline T.

<pmuto@hodgsonruss.com>; Popham, Mitchell <MPopham@lockelord.com>
**Subject:** RE: Moog v. Skyryse (22-cv-187) - Protective Order

Counsel,

Please find attached our proposed edits to the draft protective order, plus a redline.  Note that we propose addressing protocols pertaining to source code, as well as discovery materials that are made available for inspection rather than produced in the first instance (like source code), in separate addenda.  Also, please copy me on correspondence moving forward pertaining to the protective order and source code.

Thank you,

**Lai  L. Yip**
+1 415-774-3147 | direct
LYip@sheppardmullin.com | Bio

**Sheppard**Mullin
Four Embarcadero Center, 17th Floor
San Francisco,  CA 94111-4109
+1 415-434-9100 | main
www.sheppardmullin.com | LinkedIn | Twitter

**From:** Miller, Rory <Rory.Miller@lockelord.com>
**Sent:** Friday, March 18, 2022 9:01 AM
**To:** Rena Andoh <RAndoh@sheppardmullin.com>
**Cc:** Goeke, Justine <JGoeke@gibsondunn.com>; Kaounis, Angelique <akaounis@gibsondunn.com>; Travis Anderson <TAnderson@sheppardmullin.com>; Dominguez, Kate <KDominguez@gibsondunn.com>; Fluskey Jr., Robert J. <RFluskey@hodgsonruss.com>; tflynn@harrisbeach.com; Krevitt, Josh <jkrevitt@gibsondunn.com>; Kazim Naqvi <KNaqvi@sheppardmullin.com>; Subjeck, Melissa N. <MSubjeck@hodgsonruss.com>; Muto, Pauline T. <pmuto@hodgsonruss.com>; Popham, Mitchell <MPopham@lockelord.com>
**Subject:** Re: Moog v. Skyryse (22-cv-187) - Protective Order

Thanks Rena. Going forward please copy my partner Mitch Popham on everything. I've added him here so you have his email. Much appreciated.

R

On Mar 17, 2022, at 6:00 PM, Rena Andoh <RAndoh@sheppardmullin.com> wrote:

** External Email -- Sender: randoh@sheppardmullin.com **

Justine,

We are working to compile our comments and our client's comments, and will provide them as soon as they're ready.  In the interim, if counsel for Kim and Pilkington have any comments they want to share, that would be very helpful in moving the process along.  I've added Rory as a cc to this email so their counsel is looped into the discussions.  I think you circulated the draft before they were retained.

Regards,
Rena

**Rena Andoh**
+1 212-634-3092 | direct
RAndoh@sheppardmullin.com | Bio

**SheppardMullin**
30 Rockefeller Plaza
New York, NY 10112-0015
+1 212-653-8700 | main
www.sheppardmullin.com | LinkedIn | Twitter

On Mar 17, 2022, at 8:51 PM, Goeke, Justine <JGoeke@gibsondunn.com> wrote:

Kazim, Rena:

Please let us know if you have any comments or edits to the proposed protective order that we sent you on Monday.  Many thanks.

Regards,

Justine

**Justine Goeke**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193
Tel +1 212.351.5372 • Fax +1 212.817.9472
JGoeke@gibsondunn.com • www.gibsondunn.com

**From:** Goeke, Justine
**Sent:** Monday, March 14, 2022 1:49 PM
**To:** Kaounis, Angelique <AKaounis@gibsondunn.com>; Travis Anderson <TAnderson@sheppardmullin.com>; Dominguez, Kate <KDominguez@gibsondunn.com>; Fluskey Jr., Robert J. <RFluskey@hodgsonruss.com>; tflynn@harrisbeach.com; Krevitt, Josh <JKrevitt@gibsondunn.com>
**Cc:** Kazim Naqvi <KNaqvi@sheppardmullin.com>; Subjeck, Melissa N. <MSubjeck@hodgsonruss.com>;

Rena Andoh <RAndoh@sheppardmullin.com>; Muto, Pauline T. <pmuto@hodgsonruss.com>
**Subject:** RE: Moog v. Skyryse (22-cv-187) - M&C re Expedited Discovery

Counsel,

In advance of tomorrow's meet-and-confer, I have attached a draft proposed protective order.  This is subject to our client's continued review and signoff, but we are sending it now in the interest of time.

Thanks,

Justine Goeke

**Justine Goeke**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193
Tel +1 212.351.5372 • Fax +1 212.817.9472
JGoeke@gibsondunn.com • www.gibsondunn.com

# EXHIBIT 6

**Sheppard**Mullin

Sheppard Mullin Richter & Hampton LLP
30 Rockefeller Plaza
New York, NY 10112-0015
212.653.8700 main
www.sheppardmullin.com

212.634.3092 direct
randoh@sheppardmullin.com
File Number: 02HL-350124

April 4, 2022

**VIA E-MAIL ONLY**

Rory S. Miller, Esq.                        rory.miller@lockelord.com
Mitchell J. Popham, Esq.                    mpopham@lockelord.com
William Mullen, Esq.                        william.mullen@lockelord.com
Joseph N. Froelich, Esq.                    jfroehlich@lockelord.com
LOCKE LORD LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, California 90071

Josh Krevitt, Esq.                          jkrevitt@gibsondunn.com
Kate Dominguez, Esq.                        kdominguez@gibsondunn.com
Angelique Kaounis, Esq.                     akaounis@gibsondunn.com
Michael M. Polka, Esq.                      mpolka@gibsondunn.com
Justine Goeke, Esq.                         jgoeke@gibsondunn.com
GIBSON, DUNN, & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193

Re:    *Moog Inc. v. Skyryse, Inc., et al.*
       U.S. District Court, Western District of New York – Case No. 1:22-cv-00187
       Failure to Comply With the March 11, 2022 Stipulation and Order (ECF Nos. 25, 28)

Dear Counsel:

We write in response to defendant Skyryse, Inc.'s April 1, 2022 letter (the Letter")
regarding its purported compliance with the March 11, 2022 Stipulation and Order (ECF Nos. 25,
28) (hereafter, the "Order"). Upon review of the Letter, it is evident that Skyryse has not conducted
the good-faith effort and search required to comply with the Order. Further, we have received no
information from individual defendants Misook Kim and Alin Pilkington (the "Individual
Defendants") regarding compliance with the Order.

As set forth below, Skyryse's attempt to point the finger at Moog is improper and belied
by the record and filings in this case. If these issues are not rectified immediately, we will be forced
to seek judicial intervention.

**A.    Information Provided to Defendants on March 8, 2022**

Moog's Complaint, Motion for Temporary Restraining Order/Preliminary Injunction, Motion
for Expedited Discovery, and all supporting declarations and papers were filed on March 7, 2022.
(ECF Nos. 1-7). All of these materials were served on each of the defendants on March 8, 2022.
(ECF Nos. 13-15). These filings include the following information regarding Moog's non-public
information copied and/or misappropriated by Defendants:

**SheppardMullin**

Rory S. Miller, Esq.
Mitchell J. Popham, Esq.
Josh Krevitt, Esq.
Kate Dominguez, Esq.
April 4, 2022
Page 2

- Specification of the two Moog-issued laptop and two external hard drive devices used by Kim to copy Moog's data (that Moog is aware of and has possession of). (Bagnald Dec., ¶ 11) (*See generally* Pixley Dec.);

- The dates, time, and manner in which Moog's data was copied by Ms. Kim on November 19, 2021 and December 15, 2021. (Bagnald Dec., ¶ 10) (Pixley Dec., ¶¶ 22-27);

- A detailed breakdown by category of the 136,994 Moog files copied by Ms. Kim, including that 43,960 files constitute Moog source code. (Complaint, ¶ 115) (Bagnald Dec., ¶ 13) (Hunter Dec., ¶ 43) (Schmidt Dec., ¶ 19);

- A detailed list of the commercial and military program classifications amongst the 136,994 files copied by Ms. Kim on November 19, 2021. (Complaint, ¶ 117) (Hunter Dec., ¶ 44) (Schmidt Dec., ¶ 20);

- A file log containing the file name, file path, external hard drive involved, encryption status, folder/hard drive name and location, file size, date and time of copying, and other unique identifiers *for each of the 136,994 files copied by Ms. Kim on November 19, 2021*. (the "File Log") (Bagnald Dec., Ex. A);

- A detailed explanation regarding how the data copied by Ms. Kim on November 19, 2021 was intentionally altered, manipulated, and or deleted from Ms. Kim's Moog-issued laptop devices and/or the external hard drives used in the copying. (Complaint, ¶¶ 133-140) (*See generally* Pixley Dec.);

- Specification that the Moog trade secrets at issue in this case are its flight control source code and Software Engineering Process Group ("SEPG") documents (as opposed to all data copied by Defendants). (Complaint, ¶¶ 39) (Hunter Dec., ¶¶ 28, 46).

**B.    The March 11, 2022 Order**

Having previously been served with all of the above information, Defendants thereafter stipulated to the March 11 Order, and the requirements and timelines therein. Specifically, in relevant part, the Order provides as follows:

- "Within 21 days of this Order, each Defendant shall deliver to Plaintiff *any and all originals and copies of all non-public information, documents, records, files, or data in that Defendant's possession, custody, or control* (i) of, from, or belonging to Plaintiff, and (ii)(a) provided, offered, transmitted, or conveyed to any Defendant by any current or former Moog employee, and/or (ii)(b) copied or taken from Plaintiff's email, shared network drives, desktop computers, laptops, USB drives, databases, work-issued phones, and work issued tablets . . ." (Order, § 2, emphasis added);

- *"if any such non-public information, documents, records, files or data of Plaintiff has been integrated, combined, inserted, modified, updated, upgraded or otherwise*

**Sheppard**Mullin

Rory S. Miller, Esq.
Mitchell J. Popham, Esq.
Josh Krevitt, Esq.
Kate Dominguez, Esq.
April 4, 2022
Page 3

> *used by any Defendant in such a manner that such delivery necessarily includes property of any Defendant* (if any exists), then such information shall be given to a third-party forensics firm mutually agreed-upon by the parties . . ." (Order, § 2);

- "Defendant Kim and Defendant Pilkington shall each preserve and not otherwise tamper with or modify in any way the hard drives of her and his personal computers, laptops, phones, USB devices, external data storage devices, or other electronic devices used in the last twelve months, including but not limited any device which received, copied, or was transferred any information from the following devices: 1) SAMSUNG PSSD T7 SCSI Disk Device; Model MU-PC1T0H; PSID: S9D10DUTM3SS76AGF4193P37BD4NA660; SN: S5SXNS0R702326Z; Capacity: 1 TB; 2) Western Digital My Passport; Model WDBYFT0030BBL-WESN; Serial Number: WX310DB63ED85; Capacity: 3 TB; 3) Dell Latitude 7480 laptop computer (Service Tag FGPYGH2); and 4) Dell Precision 7540 laptop computer (Service Tag 9S4Z433)." (Order, § 4);

- "Skyryse shall preserve and not otherwise tamper with or modify in any way its email, shared network drives, desktop computers, and to the extent reasonably necessary to preserve potentially relevant evidence, laptops, USB drives, databases, work-issued phones, and work issued tablets, and/or the hard drives of any desktop computers, laptops, phones, USB devices, external data storage devices, or other electronic devices issued by Skyryse for use by any employee and which was used in the last year, and *produce any of its devices which received, copied, or was transferred any information or data from the four devices mentioned in Section 4 above to the Forensics Firm*, for forensic imaging." (Order, § 5, emphasis added).

Notably, the March 11 Order requires Defendants to preserve and turn over Moog's "non-public information," not just its trade secrets or source code. The Order also does not require Moog to identify its trade secrets (even though it already has, as described above in Section A) or provide a specific list to Defendants including specifying information for just Moog's trade secrets.

Therefore, Skyryse's argument in the Letter that Moog has not identified its trade secrets with sufficient particularity is not only baseless, but also irrelevant to issues regarding compliance with the Order.

Further, the March 11 Order required Skyryse to turn over not just identical copies of Moog's non-public information, but also any of Moog's data that has been "integrated, combined, inserted, modified, updated, upgraded or otherwise used by any Defendant."

**C.   On March 17, 2022, Skyryse Requests Information It Already Had for 9 Days**

On March 17, 2022, Skyryse's counsel sent an e-mail to Moog's counsel requesting: "To facilitate the procedures contemplated by the March 11, 2022 stipulation, we ask that Plaintiff promptly provide us with hash values, all file names, and any unique identifiers for each file Plaintiff alleges Defendants wrongfully acquired." (*See* Exhibit A). Skyryse made this request

**Sheppard**Mullin

Rory S. Miller, Esq.
Mitchell J. Popham, Esq.
Josh Krevitt, Esq.
Kate Dominguez, Esq.
April 4, 2022
Page 4

notwithstanding the fact that it had, as of March 8, 2022, the file names and several other categories of unique identifiers for each of the 136,994 files copied by Ms. Kim on November 19, 2021.

Later that same day, Moog's counsel advised Skyryse's counsel of the information contained in the File Log served to Skyryse on March 8, 2022, and further stated: "As a courtesy, we will also work to get you the hash values for the files." (*Id.*).

**D.     On March 21, 2022, Moog Identifies an Additional Approximately 1.2 Million Moog Files Copied by Mr.  Pilkington**

On March 21, 2022, Moog sent a letter to counsel for all Defendants advising that it had recently discovered that: 1) on October 27, 2021 (the date Mr. Pilkington provided notice of his resignation from Moog), Mr. Pilkington copied approximately 1.1 million files of Moog proprietary and confidential data from his Moog-issued laptop onto an external hard drive; 2) on November 12, 2021 (Mr. Pilkington's last day at Moog), he copied approximately 130,000 additional files of Moog proprietary and confidential data from his Moog-issued laptop onto an external hard drive; and 3) the external hard drives involved in these acts are a Buffalo 1 TB Hard Drive, USB Serial Number  AFDD0200107304;  and  a  Samsung  T7  Thumb  Drive,  Serial  Number S5SCNS0R700159M. (*See* Exhibit B).

For obvious reasons, Mr. Pilkington, a current Skyryse employee, and his counsel are the best sources for information regarding the location and unique identifiers of these additional approximately 1.2 million files of Moog data. However, as yet another good faith effort to provide Skyryse with all available information, concurrently with this letter we are providing you with a log showing, among other things, folders copied by Mr. Pilkington on the above dates. As we advised in our March 21 letter, because Mr. Pilkington took efforts to conceal this data transfer, Moog is unable to recover the specific file names and unique identifiers associated therein.  Because the hard drives used by Mr. Pilkington in these acts of copying are not available to Moog, it is providing all information it could recover from inspecting Mr. Pilkington's Moog-issued laptop computers.

**E.     On March 23, 2022, Moog Provides Available MD5 Hash Values in Good Faith**

On March 23, 2022, Moog's counsel sent a follow-up e-mail to Skyryse's counsel regarding its request for MD5 hash values. Therein, Moog:

- Advised that because "defendant Misook Kim herself accessed, copied, and stored the data at issue onto at least two external hard drives, of which one has never been provided to Moog and the other has been formatted and therefore wiped," "[t]he party who is most likely to have the information you are seeking is Misook Kim, not Moog." Therefore, Moog's counsel advised that Skyryse should request information regarding the hash values or other unique identifiers from Ms. Kim's counsel.

- Stated that "Ms. Kim manipulated, altered, and/or deleted the Moog data at issue. This conduct included intentionally formatting and wiping at least the Samsung Hard Drive onto

**Sheppard**Mullin

Rory S. Miller, Esq.
Mitchell J. Popham, Esq.
Josh Krevitt, Esq.
Kate Dominguez, Esq.
April 4, 2022
Page 5

which she copied 136,994 of Moog's files." Therefore, Moog "does not have these 136,994 files that Ms. Kim copied" and "therefore Moog does not have such files from which to create the hash values you request."

- In a good faith effort to provide Skyryse the information it requested, "searched for the 136,994 files on Ms. Kim's Moog-issued laptop computers using file name and partial file path." It was "able to find what may be corresponding files for approximately 62,000 of the 136,994 files that were not deleted and subsequently overwritten" and "generated hash values for these approximately 62,000 files" which was concurrently provided to counsel for all Defendants in a spreadsheet (the "Hash Log").

- Specifically cautioned Skyryse that "even if the approximately 62,000 files were the same as what Ms. Kim actually took, the attached hash values would still be of limited probative value at this stage" because "[a]fter Ms. Kim improperly copied all the data onto the Samsung Hard Drive, she may have edited any of these approximately 62,000 files on her laptop." Further, "if she edited any of the files on the Samsung Hard Drive after copying, those files would likewise generate a different hash value than the corresponding files she originally took from Moog." (Exhibit A).

In short, Moog has provided to date every piece of information in its possession, custody or control or that it could generate regarding the 136,994 files copied by Ms. Kim on November 19, 2021. While Moog made considerable efforts to generate hash values for the portion of the 136,994 files that were not deleted and subsequently overwritten, it advised Skyryse that the hash values are of limited probative value and cannot be relied in isolation to find such data (either in identical or derivative form) on Skyryse's systems.

**F.** **Skyryse Has Not Complied with the March 11 Order**

Skyryse's Letter concludes it has complied with the March 11 Order. However, it is self-evident that Skyryse has not.

As set forth above, the March 11 Order required Skyryse to turn over on or before April 1, 2022: 1) "any and all originals and copies of all non-public information, documents, records, files, or data in that Defendant's possession, custody, or control"; and 2) any Skyryse data that has been "integrated, combined, inserted, modified, updated, upgraded or otherwise used by any Defendant" with Moog non-public information. (Order, § 2).

In purported compliance with these orders, Skyryse claims only: "Skyryse conducted a diligent search of Skyryse's files for Moog's purportedly non-public information. Among other things, Skyryse used the lists Moog provided to search the Skyryse-issued laptop used by R. Alin Pilkington." (Letter, p. 2). Skyryse gives no indication what any of these "other things" are. Skyryse gives no indication that it conducted any of the following measures to comply with the March 11 Order:

**Sheppard**Mullin

Rory S. Miller, Esq.
Mitchell J. Popham, Esq.
Josh Krevitt, Esq.
Kate Dominguez, Esq.
April 4, 2022
Page 6

- Inquired with Ms. Kim and Mr. Pilkington as to the location, transmission, and use of Moog's non-public information after they copied such data upon departure from Moog and retained such information upon commencing employment with Skyryse;

- Searched Ms. Kim's Skyryse-issued laptop;

- Searched Ms. Kim's and Mr. Pilkington's Skyryse-issued phones or external devices;

- Searched any of Skyryse's internal systems, software database, document management systems;

- Searched any laptop device, phone, or external hard drive or USB device belonging to any individual other than Ms. Kim or Mr. Pilkington, including Gonzalo Rey or any of the other 20+ former Moog employees who now work for Skyryse;

- Undertook a meaningful search for copies of the files and systems described as trade secrets in Skyryse's complaint and moving papers, beyond simply running the hash values against Pilkington's laptop.

The foregoing is not meant to be an exhaustive list of the measures Skyryse must take to comply with the March 11 Order. Rather, these are the basic starting points that any good faith investigation must include. Given that Ms. Kim and Mr. Pilkington are the individuals who copied, manipulated, and deleted Moog data and retained possession of such data upon beginning employment at Skyryse, any investigation should begin by finding out from them or their counsel what they have done with Moog's data.

Instead, the Letter shows that Skyryse's investigation entailed waiting until the last second before searching only Mr. Pilkington's Skyryse-issued laptop for identical file names and hash values from the File Log and Hash Log. Skyryse appears to have primarily, if not solely, relied on the Hash Log to conduct its minimal search even though Moog clearly advised that the Hash Log is of limited probative value and cannot be relied upon in isolation. And, Moog never advised that each and every file listed in the File Log or Hash Log constitutes Moog's trade secrets or non-public information. Skyryse's purported investigation does not constitute the good faith and diligent search contemplated in the stipulated order.

Aside from hash values, Skyryse did not ask for any other information from Moog to assist its investigation. This conduct does not reflect good faith efforts, violates the March 11 Order, and gives Moog no assurance that all of its non-public information (direct or derivative) in Skyryse's possession, custody or control has been identified, preserved, and turned over to iDS. Skyryse's actions and inactions appear to leave Moog no choice but to swiftly raise these issues with the Court.

**Sheppard**Mullin

Rory S. Miller, Esq.
Mitchell J. Popham, Esq.
Josh Krevitt, Esq.
Kate Dominguez, Esq.
April 4, 2022
Page 7

**G.**     **Skyryse's Admissions That it has Acquired Moog's Non-Public Information**

Notwithstanding Skyryse's failure to comply with the March 11 Order in good faith, the Letter conclusively establishes that Skyryse has thousands of Moog files in its possession.

The Letter admits that Ms. Kim transferred Moog non-public data from the devices in Section 4 of the Order to her Skyryse-issued laptop. (Letter, p. 1). The Letter further admits that Skyryse located 11,093 files on Mr. Pilkington's Skyryse's issued laptop that identically matched the hash values in the Hash Log provided by Moog on March 23, 2022. (Letter p. 2). Thus, it is evident that Skyryse has acquired Moog's non-public information and/or trade secret data, and that such data has infiltrated Skyryse's systems. This reality flies in the face of Skyryse's legal filings to date, including its two motions to dismiss filed on March 29, 2022, which repeatedly claim that Skyryse has done nothing wrong, Ms. Kim and Mr. Pilkington acted in isolation, and Skyryse has not acquired, used, or disclosed Moog's non-public information and/or trade secrets.

Skyryse's attempts to downplay and deflect from the significance of its possession of thousands of Moog files is striking. Notably, the Letter is completely silent about the contents of Ms. Kim's Skyryse-issued laptop, and the quantity and nature of Moog non-public information contained therein. Moog looks forward to the imaging and inspection of that device.

Next, Skyryse claims that the Moog File Log "contains many thousands of files with generic filenames readily found in non-Moog file systems." (*Id.*). It also claims that "the vast majority (if not all) of the 11,093 files are not subject to production of the March 11 Order" because they purportedly do not contain "non-public information." (*Id.*). Yet, Skyryse could only conclusively point to one file out of 11,093 that purportedly contains public information. (*Id.*). Skyryse has simply provided no evidence or justification that "many thousands" or the "vast majority" of the 11,093 files turned over by Skyryse contain public or non-Moog information. The fact that Skyryse has turned over 11,093 files in purported compliance with the March 11 Order suggests, on its face, that all or substantially all of such files contain Moog non-public information.

Skyryse's claim that "it is not feasible" to "evaluate conclusively all 11,093 files" also lacks justification. Skyryse evidently had the capacity to search such files to hand-pick the one example that purportedly is publicly available. Skyryse has had the File Log since March 8, 2021, and knowingly stipulated to the March 11 Order and the 21 day turnaround obligations therein. Skyryse cannot, on the one hand, stipulate to an order with a 21 day deadline but, on the other hand, complain that it could not properly comply with the stipulated order because of the 21 day deadline. It is evident that the two Skyryse-issued laptops and 11,093 files turned over by Skyryse are just the tip of the iceberg of Moog's data in Skyryse's possession.

**H.**     **The Individual Defendants' Failure to Provide Any Information**

Of further concern is that Moog has received no specific information whatsoever from counsel for the Individual Defendants regarding their efforts to comply with the March 11 Order. The only information provided to Moog to date is that certain of the Individual Defendants' personal devices have been turned over to iDS. Counsel for the Individual Defendants has not

**Sheppard**Mullin

Rory S. Miller, Esq.
Mitchell J. Popham, Esq.
Josh Krevitt, Esq.
Kate Dominguez, Esq.
April 4, 2022
Page 8

even provided a list of devices that was turned over. There has been no indication whatsoever that the Individual Defendants have consulted with Skyryse, their employer, to identify the manner and locations in which Moog data has infiltrated Skyryse's systems. There is no justification for a lack of collaboration between Skyryse and the Individual Defendants to comply with the March 11 Order and turn over all Moog non-public information (direct or derivative).

**I.**     **The March 11 Order Did Not Require the Turn Over of Any Skyryse Data**

On April 4, 2022, Skyryse's counsel sent an e-mail claiming that "before iDS accesses the data and devices delivered to it by defendants, the parties will need to enter into a protective order and protocol that protects the parties' proprietary information." (*See* Exhibit C). Moog does not disagree with this position. However, Skyryse doubles down on the statements in its April 1 Letter claiming it has "not been able to confirm whether the data Skyryse provided to the neutral forensics firm actually includes Moog's non-public information." (Emphasis in original). Skyryse also argues that "defendants have turned over data and devices containing Skyryse's non-public and proprietary information.  Skyryse will not permit any form of access, search, or analysis that does not provide the appropriate protections for Skyryse's data." (*Id.*).  As we understand this statement, Skyryse is not saying that its information has been integrated with Moog's non-public information, but rather that it merely exists on the same devices on which Moog's information exists – the devices that Skyryse turned over to iDiscovery.

Notably, the March 11 Order does not require or address the turnover of any of Skyryse's non-public or proprietary information.  Indeed, the TRO's stated purpose is to return Moog's non-public information, not produce Skyryse's own materials.  Skyryse has apparently turned over this information on its own volition, and this uncalled for provision of information cannot be used as a basis to stall the inspection of Moog's non-public information which was turned over by Skyryse and the Individual Defendants.

**J.**     **Immediate Resolution is Required Before Judicial Intervention**

On or before 5:00 p.m. EST on Wednesday April 6, 2022, Moog demands:

1. Skyryse describe in detail the manner in which it searched Ms. Kim's Skyryse-issued laptop for Moog non-public information and the results of such search;

2. Skyryse identify all electronic devices it searched (including by USB serial number) in purported compliance with the March 11 Order (including but not limited to all desktop computer devices, laptop devices, cell phones, USB drives, and external hard drives), and describe in detail the manner in which such devices were searched (e.g., search terms used, what metadata was searched, etc.);

3. Skyryse identify all systems, networks, software databases, document repositories, and other similar systems it searched in purported compliance with the March 11 stipulated order;

**Sheppard**Mullin

Rory S. Miller, Esq.
Mitchell J. Popham, Esq.
Josh Krevitt, Esq.
Kate Dominguez, Esq.
April 4, 2022
Page 9

4. Skyryse provide the names, file paths, and hash values of the 11,093 matched files identified on Pilkington's Skyryse-issued laptop;

5. Skyryse describe in detail the efforts it has taken to search for the over 1.2 million files of Moog data coped by Mr. Pilkington on October 27, 2021 and November 12, 2021, including an identification of all electronic devices and systems searched (including by USB serial number) and search methodologies used (e.g., search terms used, what metadata was searched, etc.);

6. The Individual Defendants describe in detail the steps they took to comply with the March 11 Order, including an identification of all electronic devices searched (including by USB serial number) and search methodologies used (e.g., search terms used, what metadata was searched, etc.);

7. Skyryse and the Individual Defendants turn over to iDS all additional Moog non-public information that was not previously turned over by the April 1, 2022 deadline;

8. Skyryse and the Individual Defendants identify any and all hard drives, computers, electronic devices, electronic media, documents, and materials that have been preserved in compliance with the March 11 Order.

If Defendants are not willing to provide all requested information within the time stated, then Moog requests that Defendants' counsel provide their availability for a telephonic meet and confer to take place on or before 5:00 p.m. EST on Wednesday, April 6, 2022. If all these issues are not resolved by close of business Wednesday, Moog will be forced to raise these issues with the Court and, among other things, seek a Court order requiring Defendants to provide the requested information and conduct certain, specific steps to comply with the March 11, 2022 Order. Such steps will be necessary to preserve the integrity of the Court's Order. All rights are expressly reserved.

Very truly yours,

Rena Andoh
for SHEPPARD MULLIN RICHTER & HAMPTON LLP

cc:   Travis Anderson, Esq.
      Lai L. Yip, Esq.
      Kazim A. Naqvi, Esq.
      Robert J. Fluskey, Jr., Esq.
      Melissa N. Subjeck, Esq.

**EXHIBIT A**

**From:** Kazim Naqvi
**Sent:** Wednesday, March 23, 2022 5:02 PM
**To:** 'Goeke, Justine' <JGoeke@gibsondunn.com>; 'Dominguez, Kate' <KDominguez@gibsondunn.com>; 'Miller, Rory' <Rory.Miller@lockelord.com>; Rena Andoh <RAndoh@sheppardmullin.com>
**Cc:** Travis Anderson <TAnderson@sheppardmullin.com>; 'Fluskey Jr., Robert J.' <RFluskey@hodgsonruss.com>; 'Subjeck, Melissa N.' <MSubjeck@hodgsonruss.com>; 'Muto, Pauline T.' <pmuto@hodgsonruss.com>; 'Popham, Mitchell' <MPopham@lockelord.com>; 'Kaounis, Angelique' <AKaounis@gibsondunn.com>; 'tflynn@harrisbeach.com' <tflynn@harrisbeach.com>; 'Krevitt, Josh' <JKrevitt@gibsondunn.com>; Lai Yip <LYip@sheppardmullin.com>
**Subject:** RE: Moog v. Skyryse (22-cv-187) - Forensics Firm

Justine—

I am following up on my e-mail below regarding Skyryse's request that Moog provide hash values for "each file Plaintiff alleges Defendants wrongfully acquired."

As a threshold matter, defendant Misook Kim herself accessed, copied, and stored the data at issue onto at least two external hard drives, of which one has never been provided to Moog and the other has been formatted and therefore wiped.  The party who is most likely to have the information you are seeking is Misook Kim, not Moog.  Therefore, her counsel would be the best source from which to obtain hash values or other unique identifiers for the Moog data she took upon departure. We suggest you request such information directly from Locke Lord.

Second, as set forth in detail in Moog's Complaint, Motion for Preliminary Injunction, and accompanying papers, Ms. Kim manipulated, altered, and/or deleted the Moog data at issue. This conduct included intentionally formatting and wiping at least the Samsung Hard Drive onto which she copied 136,994 of Moog's files. As a result, Moog does not have these 136,994 files that Ms. Kim copied onto the Samsung Hard Drive (again, because she wiped those files from the drive) and therefore Moog does not have such files from which to create the hash values you request.

In a good faith effort to work with you on providing what you requested, however, we have searched for the 136,994 files on Ms. Kim's Moog-issued laptop computers using file name and partial file path.  We were able to find what may be corresponding files for approximately 62,000 of the 136,994 files that were not deleted and subsequently overwritten. (Ms. Kim apparently deleted the remainder of the 136,994 files on her Moog-issued laptop after she copied them and those deleted files were subsequently overwritten and are therefore not recoverable.)  We generated hash values for these approximately 62,000 files, which are in the attached Excel spreadsheet.  The password will be sent separately.  To be clear, we made a good faith effort to find corresponding files that were intact and could be hashed, but cannot guarantee that they are an exact match to what Ms. Kim actually took.

However, we note that even if the approximately 62,000 files were the same as what Ms. Kim actually took, the attached hash values would still be of limited probative value at this stage.  After Ms. Kim improperly copied all the data onto the Samsung Hard Drive, she may have edited any of these approximately 62,000 files on her laptop.  As you probably know, a difference of even a single character in any file changes the hash value of that file.  Therefore, the hash value of a file on her laptop may not match the hash value of the corresponding file she copied onto the Samsung Hard Drive.  Moreover, if she edited any of the files on the Samsung Hard Drive after copying, those files would likewise generate a different hash value than the corresponding files she originally took from Moog.

In summary, as set forth below, Moog provided Skyryse on March 8, 2022 with, among other things, file names, file path, and file size of each of the 136,994 Moog files referenced in the Complaint. And, it has now provided hash values for over 62,000 of the corresponding files from Ms. Kim's Moog-issued laptop (subject to the caveats regarding usability or lack thereof identified above).  As noted previously, Skyryse has more than enough information to satisfy its compliance obligations under the March 11, 2022 stipulated order.

Thank you,
Kazim

**Kazim Naqvi**
**Sheppard**Mullin | Los Angeles
+1 424-288-5336 | ext. 15336

**From:** Kazim Naqvi
**Sent:** Thursday, March 17, 2022 7:43 PM
**To:** 'Goeke, Justine' <JGoeke@gibsondunn.com>; Dominguez, Kate <KDominguez@gibsondunn.com>; Miller, Rory <Rory.Miller@lockelord.com>; Rena Andoh <RAndoh@sheppardmullin.com>
**Cc:** Travis Anderson <TAnderson@sheppardmullin.com>; Fluskey Jr., Robert J. <RFluskey@hodgsonruss.com>; Subjeck, Melissa N. <MSubjeck@hodgsonruss.com>; Muto, Pauline T. <pmuto@hodgsonruss.com>; Popham, Mitchell <MPopham@lockelord.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; tflynn@harrisbeach.com; Krevitt, Josh <JKrevitt@gibsondunn.com>
**Subject:** RE: Moog v. Skyryse (22-cv-187) - Forensics Firm

Hi Justine—

We are not agreeable to using Stroz as the third-party forensics firm.  We are fine with iDiscovery Solutions.  Please confirm your agreement to moving forward with iDiscovery Solutions.

Regarding your second request, Skyryse was served with the information you requested on March 8, 2022 along with the Complaint and other filings. Specifically, Ex. A to the Declaration of Ian Bagnald contains a file log for the data at issue in the Complaint which, among other things, provides the file names (column J), file path (column K), and file size (column L). This log was provided on a thumb drive that was served on all Defendants. This information is sufficient for Defendants to comply with the March 11, 2022 stipulated order. As a courtesy, we will also work to get you the hash values for the files.

Thank you,
Kazim

**Kazim Naqvi**
**Sheppard**Mullin | Los Angeles
+1 424-288-5336 | ext. 15336

**From:** Goeke, Justine <JGoeke@gibsondunn.com>
**Sent:** Thursday, March 17, 2022 2:04 PM
**To:** Kazim Naqvi <KNaqvi@sheppardmullin.com>; Dominguez, Kate <KDominguez@gibsondunn.com>; Miller, Rory <Rory.Miller@lockelord.com>; Rena Andoh <RAndoh@sheppardmullin.com>
**Cc:** Travis Anderson <TAnderson@sheppardmullin.com>; Fluskey Jr., Robert J.

<RFluskey@hodgsonruss.com>; Subjeck, Melissa N. <MSubjeck@hodgsonruss.com>; Muto, Pauline T. <pmuto@hodgsonruss.com>; Popham, Mitchell <MPopham@lockelord.com>; Kaounis, Angelique <AKaounis@gibsondunn.com>; tflynn@harrisbeach.com; Krevitt, Josh <JKrevitt@gibsondunn.com>
**Subject:** Moog v. Skyryse (22-cv-187) - Forensics Firm

Kazim, Rena:

In follow-up to our discussion during Tuesday's meet-and-confer, we propose Stroz for the third-party forensics firm described in the March 11, 2022 stipulation.  Of the three forensics firms Plaintiff proposed, we would be willing to consider iDiscovery Solutions, but believe Stroz is best situated.

To facilitate the procedures contemplated by the March 11, 2022 stipulation, we ask that Plaintiff promptly provide us with hash values, all file names, and any unique identifiers for each file Plaintiff alleges Defendants wrongfully acquired.

Please let us know if it would be helpful to discuss.

Regards,

Justine


**Justine Goeke**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193
Tel +1 212.351.5372 • Fax +1 212.817.9472
JGoeke@gibsondunn.com • www.gibsondunn.com

**EXHIBIT B**

**SheppardMullin**

Sheppard Mullin Richter & Hampton LLP
30 Rockefeller Plaza
New York, NY 10112-0015
212.653.8700 main
www.sheppardmullin.com

212.634.3092 direct
randoh@sheppardmullin.com
File Number: 02HL-350124

March 21, 2022

**VIA E-MAIL ONLY**

Rory S. Miller, Esq.                    rmiller@lockelord.com
Mitchell J. Popham, Esq.                mpopham@lockelord.com
LOCKE LORD LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, California 90071

Josh Krevitt, Esq.                      jkrevitt@gibsondunn.com
Kate Dominguez, Esq.                    kdominguez@gibsondunn.com
Angelique Kaounis, Esq.                 akaounis@gibsondunn.com
GIBSON, DUNN, & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193

Re:    *Moog Inc. v. Skyryse, Inc., et al.*
       U.S. District Court, Western District of New York – Case No. 1:22-cv-00187
       Meet and Confer: Plaintiff's Responses to FHC's Interrogatories, Set Two

Dear Counsel:

As you are aware, we are counsel for Moog Inc. ("Moog") with respect to the above-referenced lawsuit. Our ongoing investigation has recently revealed that, in addition to the substantial copying of Moog data performed by defendant Misook Kim as described further in the Complaint and Moog's Motion for Preliminary Injunction (and supporting papers), defendant Robert Alin Pilkington also copied large volumes of Moog proprietary and confidential data just before his departure from Moog and before joining defendant Skyryse, Inc.

Specifically, we have discovered that on October 27, 2021 (the date that Mr. Pilkington provided notice of his resignation from Moog), Mr. Pilkington copied *approximately 1.1 million files* of Moog proprietary and confidential data from his Moog-issued laptop onto an external hard drive. We have also discovered that on November 12, 2021 (Mr. Pilkington's last day at Moog), he copied *approximately 130,000 additional files* of Moog proprietary and confidential data from his Moog-issued laptop onto an external hard drive. The external hard drives involved in these acts are: 1) Buffalo 1 TB Hard Drive, USB Serial Number AFDD0200107304 (the "Buffalo Hard Drive"); and 2) Samsung T7 Thumb Drive, Serial Number S5SCNS0R700159M (the "Samsung Thumb Drive"). It further appears efforts were taken to conceal this data transfer by Mr. Pilkington, which rendered it difficult for Moog not only to discover the theft, but to fully identify the breadth of it. Our investigation remains ongoing.

As you can appreciate, Moog has serious concerns over these acts committed by Mr. Pilkington in conjunction with the previously identified acts of Ms. Kim. Though you should have

**Sheppard**Mullin

Rory S. Miller, Esq.
Mitchell J. Popham, Esq.
March 21, 2022
Page 2

already done so pursuant to the temporary restraining order in this case and your general duties to preserve evidence relating to the pending claims in this case, you are hereby further put on notice of these duties and specifically instructed to preserve and isolate the Buffalo Hard Drive and Samsung Thumb Drive. They are not to be tampered, altered with, or connected to any other devices. No copies of the Buffalo Hard Drive or Samsung Thumb Drive, or any data therein, may be made.  We demand that these devices be turned over to Moog immediately, and no later than the deadlines imposed by the March 11, 2022 Stipulation and Order (ECF Nos. 25 and 28).  Again, the demands herein are already contemplated within and required under the March 11, 2022 Stipulation and Order, but we wanted to specifically advise you of these acts and the devices involved as soon as possible.

Should it be discovered that these devices have been tampered with, altered, connected to other devices, or copied in any manner, Moog reserves all rights including, but not limited to, a motion for sanctions, contempt, or spoliation. All rights are expressly reserved.

Very truly yours,

Rena Andoh
for SHEPPARD MULLIN RICHTER & HAMPTON LLP

SMRH:4874-3061-3526.2
4893-1923-8402.4

cc:     Travis Anderson, Esq.
        Lai L. Yip, Esq.
        Kazim A. Naqvi, Esq.
        Robert J. Fluskey, Jr., Esq.
        Melissa N. Subjeck, Esq., Esq.

**EXHIBIT C**

**From:** Goeke, Justine <JGoeke@gibsondunn.com>
**Sent:** Monday, April 4, 2022 11:10 AM
**To:** Rena Andoh <RAndoh@sheppardmullin.com>; Travis Anderson <TAnderson@sheppardmullin.com>
**Cc:** James Fazio <JFazio@sheppardmullin.com>; Popham, Mitchell <MPopham@lockelord.com>;
Froehlich, Joseph <JFroehlich@lockelord.com>; Dominguez, Kate <KDominguez@gibsondunn.com>;
Polka, Michael M. <MPolka@gibsondunn.com>; Kazim Naqvi <KNaqvi@sheppardmullin.com>;
Townsend Bourne <tbourne@sheppardmullin.com>; Samplin, Ilissa <ISamplin@gibsondunn.com>;
Miller, Rory <Rory.Miller@lockelord.com>
**Subject:** Moog v. Skyryse

Hi Rena, Travis:

Skyryse and the individual defendants delivered devices and data to the neutral forensics firm, iDS, on
April 1, 2022, in conformity with the March 11 Order.  ECF No. 25.

The March 11 Order further provides that the parties shall agree on a protocol for searching the
information delivered to the forensics firm, or otherwise may submit a status report to the Court.  We
anticipate that Moog will request that any forensics protocol include a search for Moog's "non-public
information."  However, in order for the parties to reach agreement on an appropriately-tailored
protocol, Moog must correct the misinformation and deficiencies identified in our April 1, 2022 letter—
including Moog's incorrect categorization of seemingly public information as Moog's own non-public
information.

Additionally, before iDS accesses the data and devices delivered to it by defendants, the parties will
need to enter into a protective order and protocol that protects the parties' proprietary
information.  For the reasons explained in our April 1, 2022 letter, we have not been able to confirm
whether the data Skyryse provided to the neutral forensics firm *actually includes Moog's non-public
information*.  But we do know that the defendants have turned over data and devices containing
*Skyryse's* non-public and proprietary information.  Skyryse will not permit any form of access, search, or
analysis that does not provide the appropriate protections for Skyryse's data.

Please let us know if you would like to have a call to discuss.

Regards,

Justine Goeke


**Justine Goeke**

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP
200 Park Avenue, New York, NY 10166-0193
Tel +1 212.351.5372 • Fax +1 212.817.9472
JGoeke@gibsondunn.com • www.gibsondunn.com

EXHIBIT 7



300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071
Telephone: 213-485-1500
Fax: 213-485-1200
www.lockelord.com

Rory S. Miller
Direct Telephone: 213-687-6753
Direct Fax: 213-341-6753
rory.miller@lockelord.com

April 4, 2022

By Email

Rena Andoh, Esq.
Sheppard Mullin Richter & Hampton LLP
30 Rockefeller Plaza
New York, New York 10112
randoh@sheppardmullin.com

Re:     *Moog, Inc. v. Skyryse, Inc. et al.,* W.D.N.Y. Case No. 1:22-cv-00187

Dear Rena:

We are in receipt of your letter of April 4, which was transmitted after the close of business even on the west coast despite demanding actions within less than twenty four hours.

The lengthy (nearly nine full pages of single-spaced text) letter is largely devoted to a self-serving retelling of events to date, much of which is of minimal, if any, reference to the specific issues that Moog appears to wish to dispute. Our refusal to engage with you in preparing an equally lengthy and equally self-serving letter in reply is not agreement with any of Moog's "facts" but a desire to conserve legal expenditures and time on behalf of our clients.

The main thrust of your letter that actually pertains to any issue relevant to the individual defendants data collection and turnover practices does not come until the very end of page seven of your missive, and is a series of complaints that the individual defendants did not provide Moog with "specific information" regarding their efforts in furtherance of the parties' stipulation of March 11. You go on to complain that the individual defendants did not themselves provide you with a list of devices that they provided to the third party forensics firm, and that the individual defendants did not describe to Moog what steps they (and their counsel) had done in conjunction with Skyryse (and its counsel) to gather and produce devices.  Finally, your letter makes the unfounded assertion that there was somehow a "lack of collaboration between Skyryse and the Individual Defendants." (Letter at p. 8).

All of these complaints are nonsense. ***Nothing*** in the March 11 stipulation entitles Moog to ***any*** of the information your letter complains about not receiving; unsurprisingly, at no point does your letter actually point to anything from the stipulation establishing a basis for your demands.

In any event, Moog now has an inventory of the devices collected by the Individual Defendants and provided to the third-party forensics firm—an inventory prepared by that third party firm, and thus free of any claims of bias, obfuscation, or misrepresentation.  At this juncture, Moog is entitled

Rena Andoh, Esq.
April 4, 2022
Page 2

to nothing more, and is certainly not entitled to attempt to pry into the attorney work product of Skyryse and the Individual Defendants' document collection and investigation efforts.

The April 4 letter is, sadly, typical of Moog's approach to this litigation: to make broad and sweeping accusations without any basis, and then to issue demands that far exceed anything Moog could possibly be entitled to receive, and to follow those accusations and demands with faulty conclusions, such as your assertion that there was a "lack of collaboration" among the defendants in discharging their device gathering and evidence preservation duties. Other irresponsible accusations and assumptions made by Moog in its Complaint will be brought to light by the Individual Defendants in the course of the expedited discovery in this matter.

All while Moog is hurling these accusations, it continues to engage in obstructionist and abusive litigation conduct. The impropriety of Moog's efforts to have this matter heard by the Western District of New York, rather than in the appropriate venue of a court with personal jurisdiction over the Individual Defendants, has already been set forth in our motion to dismiss. Similarly, Moog has so far refused to provide the employee records to which both of the Individual Defendants are statutorily entitled to receive, and has stated its intention to continue to withhold those materials until the last possible day under the relevant statutes.

The abuses continue with Moog's intentionally vague and abusive claims for trade secret protection for information that cannot possibly constitute trade secrets, as documents in the April 1, 2022 letter from Kate Dominguez on behalf of Skyryse—abuses that the April 4 letter appears to double down on by asserting that every single file ever copied by either Individual Defendant, regardless of whether or not it contained public information or non-Moog related information, is somehow improper.

Finally, we should turn to yet another Moog effort to strong-arm the Individual Defendants and Skyryse through this litigation: the draft protective order. Moog is taking the position that even authors and recipients of documents themselves may not be shown materials that a party designates except *during* their deposition. *See* March 29, 2022 Moog Redline of Protective Order at 6.5(g). In effect, Moog is demanding the ability to engage in litigation by surprise, where it is able to spring documents on witnesses during deposition that those witnesses' own counsel are prohibited from discussion at all with them.

Simply put, Moog's demands and conduct to date are unreasonable and without foundation in law or fact. All of Moog's demands—both from your April 4, 2022 letter and your March 29, 2022 protective order proposal—are hereby rejected by the Individual Defendants. Instead, the Individual Defendants demand that Moog agree to the following no later than 5:00 p.m. EST on Wednesday April 6, 2022:

(1) Dismissal of the Western District of New York action without prejudice and/or a stipulation to transfer the matter in its entirety to the United States District Court for the Central District of California;

(2) Identification of Moog's purported trade secrets with reasonable particularity, as demanded by Ms. Dominguez's April 1, 2022 letter;

Rena Andoh, Esq.
April 4, 2022
Page 3

(3) Delivery of all employee records for both Mr. Pilkington and Ms. Kim required by California Labor Code sections 432 and 1198.5; and

(4) Agreement to a protective order that does not limit the ability of counsel to freely discuss designated materials with their clients.

We look forward to Moog's agreement to all four of these points no later than 5:00 p.m. EST on Wednesday April 6, 2022.

Sincerely,

Rory S. Miller

# EXHIBIT 8

**From:** Miller, Rory <Rory.Miller@lockelord.com>
**Sent:** Tuesday, April 5, 2022 10:28 PM
**To:** Kazim Naqvi <KNaqvi@sheppardmullin.com>
**Cc:** Rena Andoh <RAndoh@sheppardmullin.com>; Goeke, Justine <JGoeke@gibsondunn.com>;
Dominguez, Kate <KDominguez@gibsondunn.com>; Travis Anderson
<TAnderson@sheppardmullin.com>; Fluskey Jr., Robert J. <RFluskey@hodgsonruss.com>; Subjeck,
Melissa N. <MSubjeck@hodgsonruss.com>; Muto, Pauline T. <pmuto@hodgsonruss.com>; Popham,
Mitchell <MPopham@lockelord.com>; Kaounis, Angelique <akaounis@gibsondunn.com>;
tflynn@harrisbeach.com; Krevitt, Josh <jkrevitt@gibsondunn.com>; Aloma Harris
<AiHarris@sheppardmullin.com>
**Subject:** Re: Moog v. Skyryse (22-cv-187) - Employee Files


Kazim:

While I am glad that Moog has now agreed to one of the four bullet points in my April 4, 2022 letter, I
would like to make sure that I have Moog's position clear. Moog wants to insist that these materials, to
which the individual defendants have an absolute, unqualified statutory right, be treated as
"confidential" under the terms of a protective order that is not only not entered, but whose current
form is rejected by those same individual defendants?

We will not agree to abide by any of Moog's unilateral and extra-legal demands, including on the use of
these materials which, again, the individual defendants have an absolute right to possess and use as
they see fit. What we do expect is that Moog will continue to abide by *its* obligations regarding
confidentiality of employee information.

We await Moog's compliance with the other three points of my April 4, 2022 letter, including the
voluntary dismissal of the entire action or stipulation to transfer to the Central District of California, no
later than close of business eastern time tomorrow.

RSM


On Apr 5, 2022, at 9:42 PM, Kazim Naqvi <KNaqvi@sheppardmullin.com> wrote:

** External Email -- Sender: knaqvi@sheppardmullin.com **


Rory—

Please find enclosed the production of Misook Kim and Robert Alin Pilkington's personnel records,
pursuant to your request made on March 17, 2022. Under the applicable statute, Cal. Lab. Code §
1198.5, Moog's deadline to provide these records is April 16, 2022. We are providing these records 11
days before the deadline as a courtesy.

Please also note that all of these records have been marked "CONFIDENTIAL," and we expect such
materials to be treated as CONFIDENTIAL within the scope of the draft protective order until such time
as the final Protective Order is executed and entered by the Court.

Thank you,
Kazim


Kazim Naqvi
SheppardMullin | Los Angeles
+1 424-288-5336 | ext. 15336

From: Kazim Naqvi
Sent: Friday, March 18, 2022 11:46 AM
To: 'Miller, Rory' <Rory.Miller@lockelord.com>; Rena Andoh <RAndoh@sheppardmullin.com>
Cc: Goeke, Justine <JGoeke@gibsondunn.com>; Dominguez, Kate <KDominguez@gibsondunn.com>;
Travis Anderson <TAnderson@sheppardmullin.com>; Fluskey Jr., Robert J.
<RFluskey@hodgsonruss.com>; Subjeck, Melissa N. <MSubjeck@hodgsonruss.com>; Muto, Pauline T.
<pmuto@hodgsonruss.com>; Popham, Mitchell <MPopham@lockelord.com>; Kaounis, Angelique
<akaounis@gibsondunn.com>; tflynn@harrisbeach.com; Krevitt, Josh <jkrevitt@gibsondunn.com>
Subject: RE: Moog v. Skyryse (22-cv-187) - Employee Files

Rory—

We have received your request for personnel records. We will comply with your request within the
statutory deadline.

Best,
Kazim

Kazim Naqvi
SheppardMullin | Los Angeles
+1 424-288-5336 | ext. 15336

From: Miller, Rory <Rory.Miller@lockelord.com<mailto:Rory.Miller@lockelord.com>>
Sent: Thursday, March 17, 2022 4:14 PM
To: Rena Andoh <RAndoh@sheppardmullin.com<mailto:RAndoh@sheppardmullin.com>>
Cc: Goeke, Justine <JGoeke@gibsondunn.com<mailto:JGoeke@gibsondunn.com>>; Kazim Naqvi
<KNaqvi@sheppardmullin.com<mailto:KNaqvi@sheppardmullin.com>>; Dominguez, Kate
<KDominguez@gibsondunn.com<mailto:KDominguez@gibsondunn.com>>; Travis Anderson
<TAnderson@sheppardmullin.com<mailto:TAnderson@sheppardmullin.com>>; Fluskey Jr., Robert J.
<RFluskey@hodgsonruss.com<mailto:RFluskey@hodgsonruss.com>>; Subjeck, Melissa N.
<MSubjeck@hodgsonruss.com<mailto:MSubjeck@hodgsonruss.com>>; Muto, Pauline T.
<pmuto@hodgsonruss.com<mailto:pmuto@hodgsonruss.com>>; Popham, Mitchell
<MPopham@lockelord.com<mailto:MPopham@lockelord.com>>; Kaounis, Angelique
<akaounis@gibsondunn.com<mailto:akaounis@gibsondunn.com>>;
tflynn@harrisbeach.com<mailto:tflynn@harrisbeach.com>; Krevitt, Josh
<jkrevitt@gibsondunn.com<mailto:jkrevitt@gibsondunn.com>>
Subject: Re: Moog v. Skyryse (22-cv-187) - Employee Files

Sorry, Ms. Kim. I have no idea why I did that.

On Mar 17, 2022, at 4:08 PM, Rena Andoh
<RAndoh@sheppardmullin.com<mailto:RAndoh@sheppardmullin.com>> wrote:

** External Email -- Sender: randoh@sheppardmullin.com<mailto:randoh@sheppardmullin.com> **

Rory,

Just to get clarification, who is Ms. Chen?

Thanks,
Rena

Rena Andoh
+1 212-634-3092<tel:+1%20212-634-3092> | direct
RAndoh@sheppardmullin.com<mailto:RAndoh@sheppardmullin.com> |
Bio<https://www.sheppardmullin.com/RAndoh>

SheppardMullin
30 Rockefeller Plaza<x-apple-data-detectors://2/0>
New York, NY 10112-0015<x-apple-data-detectors://2/0>
+1 212-653-8700<tel:+1%20212-653-8700> | main
www.sheppardmullin.com<https://www.sheppardmullin.com/> |
LinkedIn<https://www.linkedin.com/company/sheppard-mullin-richter-&-hampton-llp> |
Twitter<https://twitter.com/sheppardmullin>

On Mar 17, 2022, at 5:43 PM, Miller, Rory
<Rory.Miller@lockelord.com<mailto:Rory.Miller@lockelord.com>> wrote:

Kazim, Rena-

As we were reviewing Moog's papers filed in this action, we note that it did not include copies of any
employment agreements, offer letters, and the like with either Mr. Pilkington or Ms. Chen.

As you are no doubt aware, such records are required by law to be maintained for all California based
employees and provided upon request. Cal. Lab. Code §§ 432 & 1198.5. Furthermore, the relevant
section of the Moog employee handbook on page 18 also contemplates the release of employment files
to the employees.

Please provide us with copies of all employments and offer letters between Moog and either Mr.
Pilkington or Ms. Chen as soon as possible, as their contents are highly relevant to the immediate issues
being resolved on the stipulated expedited schedule.

RSM

_____

Atlanta | Austin | Boston | Brussels | Chicago | Cincinnati | Dallas | Hartford | Houston | London | Los Angeles | Miami | New Orleans | New York | Newark | Providence | San Francisco | Stamford | Washington DC | West Palm Beach

For more information visit www.lockelord.com<http://www.lockelord.com>

# EXHIBIT 9

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Kate Dominguez
Direct: +1 212.351.2338
Fax: +1 212.716.0839
KDominguez@gibsondunn.com

April 6, 2022

<u>VIA E-MAIL</u>

Rena Andoh
Sheppard, Mullin, Richter & Hampton LLP
30 Rockefeller Plaza
New York, NY 10112

Re:  *Moog, Inc. v. Skyryse, Inc. et al.*, No. 22-cv-187 (W.D.N.Y.)

Counsel:

We write in response to your April 4, 2022 letter.  As we have told Moog from the outset of this case, Skyryse has no interest in obtaining or retaining any of Moog's information.  That is why within days of learning of Moog's allegations, Skyryse agreed to take steps to identify any Moog information in Skyryse's possession and, if any were uncovered, to return it—notwithstanding that Moog had not made the necessary showing to warrant such relief.  Skyryse's voluntary undertaking is reflected in the parties' March 11, 2022 Stipulation and Order (ECF Nos. 25, 28) (the "March 11 Order").  As we explained in our April 1, 2022 letter ("April 1 Letter"), Skyryse fully complied with its obligations under the March 11 Order.  Moog's accusations to the contrary have no basis in fact, and instead appear to be motivated by a desire to harass, cause unnecessary delay, and needlessly burden Skyryse.

**<u>Skyryse's Compliance with the March 11 Order</u>**

On March 7, 2022, Moog filed its Complaint and simultaneous motions for a temporary restraining order, preliminary injunction, and expedited discovery *without any prior warning to Skyryse*.  Nevertheless, as soon as Skyryse learned of Moog's allegations, Skyryse promptly took steps to preserve data, investigate Moog's claims, and ensure that Moog's data was not being held or used by Skyryse.  To that end, and in order to avoid burdening the court in connection with Moog's motion for a temporary restraining order, Skyryse agreed to the relief set out in the March 11 Order.

Specifically, the March 11 Order requires Skyryse to:

- refrain from using, accessing, disclosing, copying, or transmitting, any of Moog's non-public information in Skyryse's possession, custody, or control (if any);

Beijing · Brussels · Century City · Dallas · Denver · Dubai · Frankfurt · Hong Kong · Houston · London · Los Angeles · Munich
New York · Orange County · Palo Alto · Paris · San Francisco · São Paulo · Singapore · Washington, D.C.

**GIBSON DUNN**

April 6, 2022
Page 2

- deliver to Moog any of Moog's non-public information in Skyryse's possession, custody, or control (if any), unless delivery would necessarily include property of any defendant;

- deliver to a mutually agreed neutral forensics firm any of Moog's non-public information, the delivery of which would necessarily include property of any defendant;

- deliver to the neutral forensics firm any Skyryse devices which received, copied, or was transferred any information from any of four devices identified in the Order (the "Enumerated Devices"); and

- preserve evidence.

Skyryse complied with each and every one of its obligations under the March 11 Order:

- Skyryse conducted a good faith investigation, as described further below, in order to locate any non-public information belonging to Moog, to ensure that no such information was being held or used by Skyryse, and to discover whether any Skyryse-issued device had received, copied, or was transferred any information from any of the Enumerated Devices.

- After a diligent search, ***no non-public information of Moog's was positively identified in Skyryse's possession, custody, or control***.

- Skyryse delivered to the neutral forensics firm, iDiscovery Solutions ("iDS"), 11,093 files found on defendant Pilkington's Skyryse-issued laptop (the "Pilkington Files") for which Skyryse could not definitively rule out the inclusion of Moog's non-public information before the April 1 return deadline passed, due to the overbroad and misleading information Moog had provided regarding its files (as set forth in Skyryse's April 1 Letter). Delivery to iDS conformed with the March 11 Order, because to the extent any non-public Moog information was included in the files, it could not be delivered to Moog without also delivering Skyryse's information.

- Skyryse delivered to iDS defendant Kim's Skyryse-issued laptop, in conformity with its obligation to submit for forensic imaging any Skyryse device which received information from any of the Enumerated Devices.

- Skyryse preserved and is continuing to preserve evidence.

**GIBSON DUNN**

April 6, 2022
Page 3

Thus, Skyryse fully complied with the March 11 Order.  Yet in response, and without *any* inquiry, Moog sent its April 4, 2022 letter (the "Moog Letter"), in which Moog makes a series of unwarranted and meritless accusations, mischaracterizes the March 11 Order, and demands discovery with a manufactured two-day deadline—all without rectifying any of the deficiencies Skyryse cited in the April 1 Letter.

The Moog Letter is a bad-faith litigation tactic.  If Moog continues on this course, Skyryse is prepared to seek all appropriate recourse.

**Moog's Groundless and False Accusations**

Moog makes a series of false and unwarranted accusations, premised on a willful misreading of the April 1 Letter.  Nevertheless, to clarify the record, we have endeavored to address Moog's accusations below.  Given that the Moog Letter contains numerous misrepresentations, we discuss just some of the most egregious examples.

***False Accusation:  "Moog's Non-Public Information Infiltrated Skyryse's Systems."***
Moog writes "it is evident that Skyryse has acquired Moog's non-public information and/or trade secret data, and that such data has infiltrated Skyryse's systems."  Moog Letter at 7.  That is false.  Contrary to Moog's unfounded assertions, after a diligent search, Skyryse uncovered no evidence that Moog's non-public information was transmitted from Ms. Kim's or Mr. Pilkington's Skyryse-issued laptop to the Skyryse network, other employees, or other Skyryse-issued devices.

Moog attempts to justify its baseless accusation by falsely stating that Skyryse delivered the Pilkington Files to iDS because "all or substantially all of such files contain Moog non-public information."  Moog Letter at 7.  Yet Skyryse told Moog ***exactly the opposite*** in the April 1 Letter.  There, we explicitly stated that Skyryse did ***not*** identify any of the Pilkington Files as Moog's non-public information, and, to the contrary, Skyryse's investigation suggests that the vast majority (if not all) of the 11,093 files are ***not*** Moog's non-public information.  As we explained, Skyryse delivered those files to iDS only in an abundance of caution, because the filenames or hash values matched entries on Moog's overbroad and inaccurate lists.

Tellingly, Moog does not deny that the information Moog produced to Skyryse purporting to identify Moog's "non-public information" is replete with generic filenames and public or non-Moog information.  Instead, Moog complains that Skyryse "hand-pick[ed]" just "one example that purportedly is publicly available" to highlight in its April 1 Letter.  Moog Letter at 7.  Although Skyryse is under no obligation to enumerate all the problems with Moog's lists, other examples include that the filename list contains numerous filenames of source code (*e.g.*, acosf.c; atanf.c; ctype.c; libcov-printf.c; memcmp.c; memcpy.c; memset.c;

**GIBSON DUNN**

April 6, 2022
Page 4

s_ceil.c; s_floor.c; sqrtf.c; startup.c; strtoul.c; sync.c; timestamp.c) copyrighted to *third parties*, including Texas Instruments, Bullseye Testing Technology, Sun Microsystems, and Daniel Drake—many of which are distributed under public license and all of which are definitively *not* Moog files.  These are included among the Pilkington Files.  Other examples are that Moog's filename list includes "manifest.mf" (which matches 160 files from among the Pilkington Files) and "license.txt" (which matches 230 files from among the Pilkington Files).  "Moog" does not appear in any of these files, and there is no other indication that the files with these names contain Moog's non-public information.

These are just some of the examples that illustrate why Skyryse does not believe the Pilkington Files are actually likely to contain Moog's non-public information.  Moog's attempt to transform Skyryse's good-faith production of these files to iDS because their contents could not be verified before the April 1 return date into evidence that "that Skyryse has acquired Moog's non-public information and/or trade secret data, and that such data has infiltrated Skyryse's systems" is abusive and wrong.

***False Accusation:  Skyryse Did Not Undertake a "Good Faith Investigation."***  Moog writes—without support or justification—that Skyryse did not conduct a "good faith investigation."  Moog writes that Skyryse "wait[ed] until the last second before searching only Mr. Pilkington's Skyryse-issued laptop for identical file names and hash values" and "primarily, if not solely, relied on the Hash Log to conduct its minimal search."  Moog Letter at 6.  Moog provides no evidence to support its groundless accusations, none of which is true.

Notably, the March 11 Order—the text of which Moog principally drafted—is *silent* regarding the contours of any inquiry or investigation Skyryse was required to undertake to identify any Moog non-public information.  Nevertheless, Skyryse undertook a diligent investigation, including but not limited to:[1]

- Interviewing Skyryse personnel, including Mr. Pilkington and Ms. Kim.

- Ascertaining the history of device connections on the Skyryse devices issued to Mr. Pilkington, Ms. Kim, and 19 other personnel.  Our investigation showed that only

---

[1] Skyryse provides this information without waiver of work product, attorney-client privilege, common interest protection, or any other privilege or protection.

**GIBSON DUNN**

April 6, 2022
Page 5

Ms. Kim's laptop had been connected to one of the Enumerated Devices, and it was turned over to iDS in its entirety.

- Searching the Pilkington laptop for both filename and hash value matches to the lists produced by Moog—the former of which Moog represented was "sufficient for Defendants to comply with the March 11 stipulated order." March 17, 2022 email from Kazim Naqvi. Skyryse delivered to iDS every file that matched the Moog File Name List or the Hash Value List, notwithstanding clear indications that many (if not all) of the resulting files were not Moog data.

- Searching for any evidence that Moog data was transmitted from Ms. Kim's or Mr. Pilkington's Skyryse-issued laptop to the Skyryse network. Skyryse found no evidence of infiltration.

- Searching the entirety of Skyryse's network drives associated with all active employees of Skyryse for Filename and Hash Value matches. Skyryse found no Moog files.

Thus, notwithstanding that the March 11 Order does not delineate any particular steps Skyryse must undertake in order to identify Moog non-public data, Skyryse conducted a diligent search for Moog's non-public data at considerable cost. That investigation continues. As explained in Skyryse's April 1 Letter, however, Moog's failure to meaningfully identify its non-public information—and its false identification of public and third-party information as Moog's property—has exacerbated the difficulty and the expense associated with Skyryse's investigation, and will continue to do so if not rectified.

***False Accusation: Skyryse "Stall[ed]."*** Moog writes, without support, that Skyryse seeks to use its good-faith provision of Skyryse information to iDS "to stall the inspection of Moog's non-public information." Moog Letter at 6, 8. This specious accusation is debunked by the very language of the March 11 Order and Skyryse's compliance therewith. The March 11 Order contemplates that Skyryse may produce *its devices* (containing Skyryse proprietary and confidential information) and *its data* to a neutral forensics firm. Skyryse met the deadline for delivering devices and data to the neutral forensics firm. Skyryse's demand that its data be adequately protected—by an appropriate protective order and forensic review protocol—is entirely reasonable. There is no basis for Moog's accusation that Skyryse has delayed or stalled.

**GIBSON DUNN**

April 6, 2022
Page 6

**Moog's Improper Demands and Discovery Requests**

Moog is not entitled to conduct *ad hoc* discovery by interrogating Skyryse counsel by late-night letter, nor is it permitted to invade attorney-client and work product privileges.

The parties agreed to a detailed expedited discovery framework and schedule, which the Court ordered on March 18, 2022.  ECF Nos. 33, 36 (the "March 18 Order").

Indeed, Moog has already served on Skyryse:

- 10 interrogatories with subparts (in excess of the number permitted by the March 18 Order);

- 11 requests for production—including, for example, "All Documents and Communications, from January 1, 2021 to present, Concerning the development, testing, or certification of Skyryse's flight control software including, but not limited to, Source Code, software planning Documents, software testing or certification Documents, test equipment and simulations, and software quality control Documents"; and

- 3 requests for admission.

Now, Moog purports to seek additional discovery, in contravention of the discovery limits negotiated and agreed between the parties and ordered by the Court.  Moog's requests are improper.  Nevertheless, Skyryse is willing to meet and confer with Moog regarding Moog's concerns.

\* \* \*

Skyryse diligently complied with the March 11 Order, as detailed above and in the April 1 Letter.  Moog's baseless accusations and unjustified demands are not productive.  If Moog continues on this course, Skyryse is prepared to seek all appropriate recourse.

Sincerely,

Kate Dominguez