UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MOOG, INC.,

                Plaintiff,

      v.

SKYRYSE, INC., ROBERT ALIN
PILKINGTON, MISOOK KIM, and DOES
NOS. 1-50.

                Defendants.

Civil Action No. 1:22-cv-00187-LJV-JJM

**MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANT
SKYRYSE, INC.'S MOTION TO
COMPEL TRADE SECRET
IDENTIFICATION**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND.........................................................2

III.  EVERY PLAINTIFF IN A TRADE SECRET ACTION MUST DISCLOSE ITS
TRADE SECRETS WITH PARTICULARITY..................................................................7

IV.  MOOG HAS FAILED TO DISCLOSE ANY OF ITS ALLEGED TRADE
SECRETS. ...........................................................................................................9

      A.     Moog has refused to identify its alleged trade secrets. ...........................................9

            1.     Moog erroneously invokes the liberal standard for pleadings to try
to justify its refusal to identify its trade secrets in discovery....................11

            2.     Moog knows exactly what its trade secrets are, where they are
located, and how to identify them. ...............................................13

      B.     Moog's failure to provide sufficient disclosure has prejudiced and will
continue to prejudice the defendants......................................................15

V.    REQUESTED RELIEF.............................................................................................17

VI.  CONCLUSION.....................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Big Vision Private Ltd. v. EI DuPont De Nemours & Co.*,
 1 F. Supp. 3d 224 (S.D.N.Y. 2014)......................................................................7

*Ferguson v. Ferrante*,
 No. 13 CIV. 4468 (VEC), 2014 WL 1327968 (S.D.N.Y. Apr. 3, 2014) ..................................8

*irth Sols., LLC v. Apex Data Sols. & Servs., LLC*,
 No. 18-CV-6884-FPG, 2019 WL 283831 (W.D.N.Y. Jan. 22, 2019) ............................8, 9, 12

*Lockheed Martin Corp. v. L-3 Commc'ns Corp.*,
 No. 1:05-CV-902-CAP, 2006 WL 8432941 (N.D. Ga. Oct. 27, 2006) ..................................10

*Medidata Sols., Inc. v. Veeva Sys., Inc.*,
 No. 17 CIV. 589 (LGS), 2022 WL 585734 (S.D.N.Y. Feb. 25, 2022)............................10, 16

*Medtech Prods. Inc. v. Ranir, LLC*,
 596 F. Supp. 2d 778 (S.D.N.Y. 2008)....................................................................8

*MSCI Inc. v. Jacob*,
 36 Misc. 3d 211, 945 N.Y.S.2d 863 (N.Y. 2012) ....................................7, 8, 10, 12

*Next Commc'ns., Inc. v. Viber Media, Inc.*,
 No. 14-cv-8190 (RJS), 2017 WL 4402540 (S.D.N.Y. Sept. 30, 2017) ..................................11

*Porous Media Corp. v. Midland Brake Inc.*,
 187 F.R.D. 598 (D. Minn. 1999)....................................................................8

*Proofpoint, Inc. v. Vade Secure, Inc.*,
 No. 19-CV-04238-MMC, 2020 WL 836724 (N.D. Cal. Feb. 20, 2020) ................................12

*Sit-Up Ltd. v. IAC/InterActiveCorp.*,
 No. 05 CIV 9292 (DLC), 2008 WL 463884 (S.D.N.Y. Feb. 20, 2008) ..................8, 9, 12, 16

*Switch Commc'ns Grp. v. Ballard*,
 No. 2:11–CV–00285–KJD, 2012 WL 2342929 (D. Nev. June 19, 2012)................................7

*Xerox Corp. v. Int'l Bus. Machines Corp.*,
 64 F.R.D. 367 (S.D.N.Y. 1974) ....................................................................7

### STATUTES

18 U.S.C. § 1839(3) ....................................................................13

## RULES

Fed. R. Civ. P. 12 ..........................................................................................................11

Fed. R. Civ. P. 12(b)(6) .................................................................................................11

Fed. R. Civ. P. 26(e) .......................................................................................................9

Fed. R. Civ. P. 33(d) ...........................................................................................3, 10, 17

Fed. R. Civ. P. 33(d)(1) .................................................................................................10

## I.      INTRODUCTION

Like any plaintiff in a trade secret case, Moog has a fundamental obligation to identify its alleged trade secrets with particularity. This disclosure is required early in the action to protect against hindsight claims of misappropriation based on the details Moog learns about Skyryse's confidential technology; to permit Skyryse to take any remedial action that may be necessary; and so the parties and the Court can understand the bounds of appropriate discovery. This obligation is well established under federal and New York law, and Moog was required by the Federal Rules to provide this information weeks ago in responding to interrogatories. But Moog has excused itself from this obligation, telling Skyryse that *it will not identify its own trade secrets unless and until the Court orders it to do so*. If Skyryse is to be given a fair opportunity to take appropriate discovery and defend itself—including at the upcoming preliminary injunction hearing—then Moog must identify its alleged trade secrets with particularity or be precluded from asserting any it fails to sufficiently disclose.

Rather than identifying its trade secrets and clarifying the scope of discovery, Moog has done the opposite. It has demanded virtually unlimited discovery into Skyryse's business at extraordinary cost and disruption and in an exceptionally short timeframe, while concealing essential facts and its own theories of the case by contending it is just too burdensome to do so. This has led to a wide-ranging fishing expedition by Moog, has imposed an enormous and disproportionate burden on Skyryse, and has unfairly prejudiced Skyryse's ability to prepare a defense. To this day, three months into the period for expedited discovery, Skyryse still does not know what trade secrets are at issue—not a single one. But Moog knows exactly what its alleged trade secrets are, having told the Court it knows where on its computer systems they reside, in what types of files they are contained, and even the names of the files in which they are documented.

There is no legitimate reason Moog could not have disclosed its trade secrets with particularity weeks ago, focusing the parties' and the Court's efforts on the documents that matter in this case, instead of on an unbounded and nebulous universe based on vastly overbroad keywords that Moog knows are not a good faith tool to locate relevant documents. Rather, Moog is exploiting a tactical advantage to impose excessive burdens on Skyryse, a small start-up company that Moog views as a competitive threat. Skyryse has met its obligations despite Moog's overreach, and it is time for Moog to begin to do its part and inform Skyryse and the Court what alleged trade secrets are actually at issue in this action. Respectfully, and to ensure basic fairness in these proceedings, the Court should grant this motion ordering Moog to immediately identify its trade secrets with particularity.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Moog filed this lawsuit and moved for a temporary restraining order, a preliminary injunction, and expedited discovery, against Skyryse, individual defendants Alin Pilkington and Misook Kim, and "Does Nos. 1-50" on March 7, 2022. (ECF 1, 4, 6.) Moog's allegations have centered primarily on actions by Ms. Kim and Mr. Pilkington, both former Moog employees. Moog alleges that Ms. Kim, under the direction of Mr. Pilkington, copied files onto an external hard drive slightly less than a month prior to her departure from Moog and brought those files with her when she departed Moog. (Compl., ¶¶ 114-115.) Moog brought this lawsuit following an internal investigation into Ms. Kim's actions, launched in late January 2022. (*Id*. ¶ 108.) Led by Moog's own Security Operations team, this investigation purportedly enabled Moog to identify, before bringing suit, (1) which files had been downloaded or copied, including (2) the names and (3) types of the data files that were copied, and (4) the directory structures and (5) file paths used in connection with

the alleged copying. (*Id*. ¶ 113.) As a result of this investigation, Moog has a detailed understanding of exactly what purported trade secret information is at issue and was allegedly misappropriated.

Despite having long ago inventoried these trade secrets, Moog has refused to identify even one of them in discovery. On March 23, 2022, pursuant to the expedited schedule requested by Moog (ECF 33, 36), Skyryse propounded fifteen interrogatories to Moog, including Interrogatory No. 1: "Identify, for each Defendant, each alleged Trade Secret that You contend that Defendant misappropriated." But when the April 13 deadline to respond arrived, Moog refused to disclose any of its trade secrets, saying only vaguely and inadequately that "Pursuant to Federal Rule of Civil Procedure 33(d), Moog will make its trade secrets at issue in this case available for inspection by Defendant." (Ex. A (Moog's Responses and Objections to Skyryse's Interrogatories).) Skyryse's Interrogatory Nos. 2-9 similarly require Moog to provide information about the alleged trade secrets it was supposed to have identified by now and consequently Moog's responses to those interrogatories are deficient as well.

Moog's deliberate refusal to identify its trade secrets has had wide-ranging effects on the parties' ability to collect and produce responsive documents. Moog propounded excessively broad discovery requests, covering nearly the entirety of Skyryse's business, including aspects that have nothing to do with Moog or its claims. (*See, e.g.*, Andoh Decl., Ex. I, ECF 142-10 (discussing the disproportionate breadth of Moog's RFPs, including, *inter alia*, requests for "All Documents and Communications, from January 1, 2021 to present, Concerning the development, testing, or certification of Skyryse's flight control software" and "All deletion logs and versioning logs from Skyryse's software versioning and revision control systems, test tools, and software function names used in connection with its flight control software.") Moog unreasonably expected Skyryse

to turn over literally "tens of millions of files" to the neutral forensics vendor iDS during this period of expedited discovery. (Memo., ECF 118-12, at 2, 9, 10.)

Skyryse repeatedly asked Moog to identify its alleged trade secrets, or at least propose a suitable set of search terms to help focus discovery on topics that are actually related to its alleged trade secrets. (*See, e.g.,* Andoh Decl., Ex. B, ECF 142-3; *id.*, Ex. D, ECF 142-5; Opposition to Moog's Motion for Scheduling Orders, ECF 128.) In response, Moog gave Skyryse a list of many tens of thousands of file names and hash values to use as search terms, which included generic, commonly used, and publicly known terms, and the names of third-party source code files. As Skyryse explained to Moog, these did nothing to help focus discovery; to the contrary, used as search terms, these file names and hash valued resulted in an inordinate number of irrelevant hits.

Moog's unwillingness to disclose its alleged trade secrets has proved an impediment not only to Skyryse's efforts to collect and produce responsive materials and to take any necessary remedial actions, but also its efforts to seek relevant information from Moog. Because Moog refused to identify its alleged trade secrets, it consequently failed to adequately respond to Skyryse's other discovery requests asking for more information about them. For example, at least three of Skyryse's requests inquire into, among other things, the development of Moog's alleged trade secrets, where they are stored, and under what circumstances they have been disclosed – basic information every trade secret plaintiff is required to disclose. But Moog exploited its own evasion tactics to avoid answering, claiming these interrogatories are "overbroad and burdensome" because "Moog's trade secrets at issue in this case" purportedly "consist of millions of files," files that Moog has refused to identify. (*See* Ex. A (Moog's responses to Interrogatory Nos. 3, 4, and 8).) Moog cannot possibly have a good-faith, evidence-supported basis to own "millions" of legitimate trade secrets that qualify for trade secret protection under law. Nor can it seriously intend to

assert an unreasonably large number of trade secrets in this case before the Court or a jury, for practical reasons.

Hoping to avoid burdening the Court with this dispute, on May 26, Skyryse sent Moog's counsel a letter asking for a complete response to Skyryse's Interrogatory No. 1 and to its related Interrogatory Nos. 2-9. (Ex. B.) Moog responded that "[n]o further identification or supplementation . . . is required," and maintained this position when the parties met and conferred on May 31. (Ex. C.) The following week, Skyryse notified Moog of additional deficiencies in its responses to Skyryse's document requests and again pointed out that by identifying its trade secrets, Moog could focus discovery on what matters and resolve many of the parties' disputes. In response, Moog's counsel communicated not only that they did *not* intend to provide any more information in response to Interrogatory No. 1 before the deadline for discovery disputes to be submitted to the Court, but also that they intended to wait at least another two-and-a-half more months—if not ordered by the Court sooner—before identifying Moog's alleged trade secrets at all. (Ex. D (June 6, 2022 Email from K. Naqvi) ("Moog will not be able to understand the full extent of what was taken until it has, at minimum, reviewed all of the electronic devices in iDS's possession, taken depositions, *and expedited discovery is completed.*"[1]).) This, despite Moog purportedly having inventoried thousands of its trade secrets in detail during its pre-suit investigation. To date, the only information Moog has disclosed during discovery regarding its alleged trade secrets is that "documents responsive to Interrogatory No. 1 *may* exist on the 9 Moog devices [Moog] turned over to iDS on 6/1/22." (Ex. E (June 10 Email from K. Naqvi).)

The Court should see these dilatory, evasive tactics for what they are: Moog exploiting a procedural advantage to inflict an asymmetric discovery burden on Skyryse (the much smaller

---

[1] All emphasis in quotes has been added unless otherwise indicated.

party in this action), while tactically taking a "shoot-first-aim-later" approach to this lawsuit. Rather than *first* advancing a fact-based theory of trade secret misappropriation based on the extensive information it collected before filing suit, and *then* pursuing discovery relevant to its claims, Moog instead has done the reverse. It vaguely alleges misappropriation of "millions" of unidentified trade secrets so it can obtain extensive and invasive discovery into Skyryse's business, and now is working on constructing a litigation theory to fit whatever discovery it collects and can portray as evidence of alleged misappropriation—all before it is forced to identify its own trade secrets in any meaningful way.

On the current schedule ordered by the Court, Skyryse will need to file its opposition to Moog's motion for a preliminary injunction just two weeks after the close of expedited discovery, on September 8, 2022. To prevail on that motion, Moog must show that it actually possesses trade secrets that are, in fact, secret and not generally known, and valuable as a result of that alleged secrecy. Yet, unless the Court orders Moog to identify its alleged trade secrets well before expedited discovery concludes, Skyryse will have no meaningful opportunity to test Moog's allegations in discovery before the briefing begins, crippling its ability to prepare a defense in these expedited proceedings and beyond. And Skyryse will be similarly hampered in its efforts to ensure there is no use at the company of any alleged Moog trade secrets, an effort that also requires Moog to say what those alleged trade secrets are. Accordingly, Skyryse respectfully requests that the Court order Moog to immediately identify every alleged trade secret it intends to raise in this action with particularity, or be precluded from asserting in this action any alleged trade secret it fails to sufficiently disclose.

## III.     EVERY PLAINTIFF IN A TRADE SECRET ACTION MUST DISCLOSE ITS TRADE SECRETS WITH PARTICULARITY.

Courts in the Second Circuit have made clear that plaintiffs in trade secret cases must identify their trade secrets with "particularity." *Big Vision Private Ltd. v. EI DuPont De Nemours & Co.*, 1 F. Supp. 3d 224 (S.D.N.Y. 2014). The particularity requirement has several purposes – most fundamentally, to permit a defendant to understand the charges against it and form a complete and well-reasoned defense. *Id*. at 257-58. The requirement that a plaintiff disclose its alleged trade secrets at the outset also exists for important policy reasons, including to ensure that a plaintiff cannot conjure up a trade secret claim after the fact, designing such claims to match the discovery produced by the defendant. *See, e.g., Switch Commc'ns Grp. v. Ballard*, No. 2:11–CV–00285–KJD, 2012 WL 2342929, at *4 (D. Nev. June 19, 2012) ("[R]equiring the plaintiff to state its claimed trade secrets prior to engaging in discovery ensures that it will not mold its cause of action around the discovery it receives."). Importantly, the particularity requirement also serves an important practical purpose: to assist courts and parties in framing the appropriate scope of discovery. *Xerox Corp. v. Int'l Bus. Machines Corp*., 64 F.R.D. 367, 371–72 (S.D.N.Y. 1974) ("The burden is upon the plaintiff to specify [its alleged trade secrets], not upon the defendant to guess at what they are …. Clearly until this is done, neither the court nor the parties can know, with any degree of certainty, whether discovery is relevant or not, and it is doubtful whether [defendant] can undertake any meaningful discovery program …."); *see also MSCI Inc. v. Jacob*, 36 Misc. 3d 211, 213-14, 945 N.Y.S.2d 863, 865 (N.Y. 2012) ("Only by distinguishing between the general knowledge in their field and their trade secrets, will the court be capable of setting the parameters of discovery and will defendants be able to prepare their defense."). And here, an identification of the alleged trade secrets will also permit Skyryse to take any appropriate remedial action—a goal one would expect Moog to share.

Because an identification of trade secrets is crucial to the orderly progress of discovery, courts have agreed that "the law requires that a trade secret plaintiff identify trade secrets with reasonable particularity *early in the case.*" *MSCI Inc.*, 36 Misc. 3d at 213-14; *see also Porous Media Corp. v. Midland Brake Inc.*, 187 F.R.D. 598, 600 (D. Minn. 1999) ("Ordering the listing of trade secrets *at the outset of the litigation* is a common requirement."); *see also Ferguson v. Ferrante*, No. 13 CIV. 4468 (VEC), 2014 WL 1327968, at *2 (S.D.N.Y. Apr. 3, 2014) (granting motion to compel a response to interrogatories requesting plaintiff to particularly identify the allegedly stolen trade secrets). Although a few courts have allowed trade secrets plaintiffs leeway to gather some, *limited* discovery before formulating particularized trade secret disclosures, even those courts have found that specific trade secret disclosures must be made sufficiently in advance of a preliminary injunction hearing to permit the defendant to prepare its defense. *Medtech Prods. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 820 (S.D.N.Y. 2008).

This is for good reason: if a defendant is not given sufficient advance notice of which trade secrets plaintiff alleges it misappropriated, then the defendant has no opportunity to test, through written discovery and depositions, whether the plaintiff actually has a protectable trade secret – as is required for the plaintiff to establish that it has a likelihood of success on the merits of its trade secret misappropriation claim – and to determine the extent of any misappropriation. *See Sit-Up Ltd. v. IAC/InterActiveCorp.,* No. 05 CIV 9292 (DLC), 2008 WL 463884, at *6 (S.D.N.Y. Feb. 20, 2008) (describing plaintiff's obligation to identify its trade secrets and stating that plaintiffs "have to be able to identify with specificity what information they consider to have been a trade secret .... If the plaintiff can't do that now, it can't proceed on that theory, because the defendants have a right during discovery to test whatever the plaintiff's theory is."); *see also irth Sols., LLC v. Apex Data Sols. & Servs., LLC*, No. 18-CV-6884-FPG, 2019 WL 283831, at *8 (W.D.N.Y. Jan.

22, 2019) (holding that because plaintiff had not adequately identified its trade secrets, "this Court cannot identify what, exactly, Plaintiff's trade secrets are or determine whether they merit protection, let alone craft an injunction specific enough to put Defendants on notice o[f] what information may or may not be disclosed.") (internal quotes and citation omitted).

The natural consequence of a plaintiff failing to disclose its trade secrets with sufficient specificity is that it cannot assert those trade secrets against a defendant. Depending on the stage of the lawsuit, such a failure in discovery necessarily leads to the denial of a preliminary injunction motion, *see, e.g., irth*, 2019 WL 283831, at *6-8 (denying preliminary injunction motion where "Plaintiff has not shown a likelihood of success on the merits as to its trade secrets claims because it has not adequately identified the trade secrets it wishes to protect."), or compels entering summary judgment in the defendant's favor. *See, e.g., Sit-Up*, 2008 WL 463884, at *11-12 (granting summary judgment for defendant because plaintiff sit-up failed to identify with adequate specificity seventy-seven alleged trade secrets it claimed were misappropriated, noting that by "making such extensive claims, sit-up has a heavy burden to shoulder").[2]

## IV.   MOOG HAS FAILED TO DISCLOSE ANY OF ITS ALLEGED TRADE SECRETS.

### A.   Moog has refused to identify its alleged trade secrets.

Moog has failed to identify its trade secrets with sufficient particularity. Moog refuses to respond to Skyryse's interrogatory calling for a description of its trade secrets, and has disregarded its obligation under the Federal Rules to timely supplement this response. Fed. R. Civ. P. 26(e).

---

[2] The *Sit-Up* court also explained the level of specificity required by a proper trade secret identification: "Specificity is required at the moment of divulging so that the party to whom the secret is revealed understands the contours of the secret information and does not inadvertently or purposefully transgress its boundaries. Similarly, specificity is required before the court so that the defendant can defend himself adequately against claims of trade secret misappropriation, and can divine the line between secret and non-secret information, and so that a jury can render a verdict based on a discriminating analysis of the evidence of disclosure and misappropriation." *Id*. at *11.

Moog's vague pledge in response to Interrogatory No. 1 to "make its trade secrets at issue in this case available for inspection," invoking Rule 33(d), is a misuse of that rule and clearly deficient. *See* Fed. R. Civ. P. 33(d)(1); *see also Lockheed Martin Corp. v. L-3 Commc'ns Corp*., No. 1:05-CV-902-CAP, 2006 WL 8432941, at *1 (N.D. Ga. Oct. 27, 2006) (relying on Rule 33(d) "is a completely insufficient response to an interrogatory requesting that a plaintiff in a trade secrets case identify what information it contends is proprietary"). It is not plausible, for example, that every word of every one of the thousands of documents Ms. Kim and Mr. Pilkington are said to have copied meet the legal requirements for trade secret protection, *i.e.,* that they are in fact secret and derive value from their secrecy as opposed to public or generally available information. Yet, with a Rule 33(d) response, Moog would essentially leave it to Skyryse and the Court to guess what passages, algorithms, or information contained in many thousands of pages of those documents are alleged to be Moog trade secrets. This would turn the burden of proof on its ear.

Similarly, Moog's vague statement in an email from counsel that "documents responsive to Interrogatory No. 1 may exist on the 9 Moog devices turned over to iDS on 6/1/22" (Ex. E) entirely bypasses its burden to describe with particularity (in a verified interrogatory response) information that only Moog has, and forces Skyryse to guess what its trade secrets are, improperly "shift[ing] the burden to defendants to clarify plaintiffs' claim." *MSCI Inc.*, 36 Misc. 3d at 214; *see also MSCI Inc.*, 36 Misc. 3d at 214; *see also Medidata Sols., Inc. v. Veeva Sys., Inc.*, No. 17 CIV. 589 (LGS), 2022 WL 585734, at *1 (S.D.N.Y. Feb. 25, 2022) ("It is neither [defendant's] nor the Court's burden to ascertain whether any identifiable trade secret evidence can be gleaned from tens of thousands of pages of documentation."). Only Moog knows what information *on its own devices and in its own files* is allegedly entitled to trade secret protection, and by continuing to evade disclosure, Moog is violating its most basic discovery obligation as a trade secret plaintiff.

When pressed, Moog's counsel said they do not plan to respond to Interrogatory No. 1 or otherwise identify Moog's alleged trade secrets until, at the earliest, depositions conclude in late August, or until ordered by the Court. (Ex. D (June 6, 2022 Email from K. Naqvi).) There is no legitimate justification for Moog's failure to fulfill its discovery obligations and it is essential that Skyryse know what the alleged trade secrets are now, before depositions, so that it is not unfairly surprised by the concealed information.

Moog has presented two main excuses for its failure to identify its own trade secrets in this action for alleged trade secret misappropriation, but neither is availing.

### 1. Moog erroneously invokes the liberal standard for pleadings to try to justify its refusal to identify its trade secrets in discovery.

First, Moog has argued that it has already provided all the disclosure required at this stage of the case, in the allegations of its complaint. (*See* Ex. F April 19 Letter from T. Anderson ("Given the specificity of Moog's descriptions of the underlying trade secrets *in the complaint* and motion for preliminary injunction papers, and given that Skyryse did not file a Rule 12 motion challenging the sufficiency of Moog's trade secrets, any objections on this ground lack merit and cannot be used to impede discovery.").) This argument misses the point. Skyryse is not challenging Moog's pleading for failure to state a claim at this stage. The Rule 12(b)(6) standard is irrelevant now, after months of discovery and leading up to a preliminary injunction hearing. (ECF 79.)

Rather, as Skyryse has repeatedly told Moog, as a trade secret plaintiff, Moog has a *discovery* obligation to identify its alleged trade secrets with particularity. *Next Commc'ns, Inc. v. Viber Media, Inc.,* No. 14-cv-8190 (RJS), 2017 WL 4402540, *4 (S.D.N.Y. Sept. 30, 2017) ("Although Next's general descriptions of its alleged secrets were enough to survive a motion to dismiss, the purpose of Phase I discovery in this case was for Next to identify those secrets more specifically.") Such a disclosure would put meaningful parameters around discovery and allow

Skyryse to prepare its defense to Moog's preliminary injunction motion. *MSCI Inc.*, 36 Misc. 3d at 213-14 n.2 (rejecting plaintiffs' reliance on a case "assessing the sufficiency of the claim at the *motion to dismiss stage*," during which the plaintiff is "giv[en] [] the benefit of all favorable inferences," because "[t]his is clearly not the posture of, or the standard to be followed in, discovery.").

Moog's obfuscation denies Skyryse basic due process by prejudicing Skyryse's ability to take essential discovery relating to the factual underpinnings of Moog's allegations and Skyryse's own defenses. How can Skyryse be expected to take fair discovery about Moog's alleged trade secrets—to investigate, for example, whether they actually constitute protectable trade secrets, were the subject of reasonable security measures, and were not generally known to others in the industry—*when Moog refuses to identify its trade secrets at all*, much less with the legally required particularity?

Moreover, even if the generalized descriptions of trade secrets Moog provided in its complaint and preliminary injunction papers were enough to survive a motion to dismiss, they are entirely insufficient at this stage of the case. (Compl., ¶¶ 39, 165.) Vague descriptions of "certain" information in broad categories like "source code," "certification process documents," and "checklists" come nowhere close to meeting the standard for "particularity" required of trade secret disclosures in discovery. *See Sit-Up*, 2008 WL 463884, at *6-7 (rejecting plaintiff's "outline[] [of] general categories into which the alleged trade secrets fell" and requiring plaintiff "to provide defendants with 'narrative identifier[s] of [its] trade secrets, with sufficient specificity so that we would know what they are."); *see also irth Sols.*, 2019 WL 283831, at *7 ("Courts have held that compilation trade secrets, such as software programs, must be described with sufficient specificity that its protectability can be assessed and to show that its compilation is unique.") (internal quotes and citation omitted); *see also Proofpoint, Inc. v. Vade Secure, Inc.*, No. 19-CV-04238-MMC,

2020 WL 836724, at *2 (N.D. Cal. Feb. 20, 2020) (holding that describing alleged trade secrets as "source code" "is not sufficiently specific to make out a prima facie case of trade secret misappropriation and, consequently, is insufficient to satisfy the first requirement for a preliminary injunction").

Only Moog knows, for example, *which* specific lines or blocks of its source code, *which* information in its certification process documents, and *which* portions of its checklists it alleges to be trade secrets. And only Moog knows what information among these files, if any, was the subject of reasonable measures to maintain their secrecy, and derives independent economic value from being not generally known to or readily ascertainable by others—as needed to qualify for trade secret protection. *See, e.g.*, 18 U.S.C. § 1839(3). Skyryse is entitled to learn specifically what trade secrets it is accused of misappropriating so that it can prepare its defense, including an opportunity to test through discovery whether Moog's alleged trade secrets actually qualify for trade secret protection. Skyryse propounded written discovery requests on these topics, which Moog was required to answer weeks ago—not at some later time that is tactically beneficial for Moog, when it will be too late for Skyryse to take fair discovery.

       **2.**    **Moog knows exactly what its trade secrets are, where they are located, and how to identify them.**

Moog's other principal excuse for refusing to abide by its discovery obligations is its claim that it does not yet know which of its alleged trade secrets are at issue in this case. (*See, e.g.,* Ex. F (April 19 Letter from T. Anderson).) The Court inquired into this line of argument, noting in an email on May 25 that "Moog will have to identify [its trade secrets] sufficiently in advance of the hearing to enable a proper defense," and asking, "how can it be expected to do so now, when it does not yet know the full extent of what was taken?" As Skyryse has explained, the answer is that *Moog does indeed know right now* the extent of what it alleges was taken and which of its alleged

13

trade secrets are involved, and certainly has enough information to describe them with specificity. (ECF 128.)

Indeed, Moog has long been in a position to share information about its alleged trade secrets. For example, before filing this lawsuit, Moog conducted its own detailed investigation led by its Security Operations Manager, Ian Bagnald, which allegedly revealed that Defendant Kim copied from Moog's servers "136,994 files to an external hard drive on November 19, 2021." (ECF 4-18, ¶¶ 7-8.) Mr. Bagnald provided the Court with "an Excel spreadsheet with the file log showing the file name and type of each and every file copied by Ms. Kim" and a detailed breakdown of the file types showing, for example, how many are "source code" files, how many are "spreadsheets," how many are "plain text" or "Misc." files, among others. (*Id*. ¶¶ 12-13, Exh. A; *see also* Complaint, ¶¶ 112-120.) Moog was in possession of this granular data about each file that it alleges was taken long before it filed this lawsuit, and has had months to review the contents of its own files to discern what, if anything in them, is actually a trade secret. While Moog's analysis of the documents and devices that the defendants have produced in discovery may help Moog determine the alleged *use* of Moog's information, Moog's identification of *its own trade secrets* requires no such analysis. Yet Moog continues to conceal what information in its own files purportedly constitutes its trade secrets, opportunistically using the Court's inquiry in its May 25 email as justification for withholding material, discoverable information.

Even putting aside that Moog long ago inventoried the files containing the trade secrets it alleges were taken, Moog and its counsel also have received over 50,000 pages of discovery from the defendants, and multiple devices that Defendants turned over to the neutral forensics vendor, iDS, including (1) Ms. Kim's Skyryse-issued laptop, (2) 11,000 files from Mr. Pilkington's laptop, (3) a hard drive containing 568 non-human readable files, (4) two Skyryse-issued laptops used by

Mr. Pilkington, (5) a USB drive containing two source code repositories, (6) another engineer's Skyryse-issued laptop, (7) that engineer's USB drive, and (8) twelve recovered files that were emptied from his recycle bin. There was no excuse for Moog's failure to identify its alleged trade secrets at the outset of litigation, and certainly none at this point after receiving extensive discovery from Defendants.

Moog has argued to Skyryse and likely will argue to the Court that it needs more time to review the discovery it has received from the defendants, or possibly even take more discovery, before it will be in a position to disclose its trade secrets with specificity. (*See* Ex. D.) Not so. Moog *might* learn more information during discovery that leads it to change its view of this case, in which case Moog may take appropriate, timely steps towards supplementing the discovery and disclosures it already provided. But the mere fact that Moog might learn additional relevant facts in the future does not justify its decision to conceal for the past three months, and continue withholding, what it already knows about its alleged trade secrets. As explained above, Moog has conducted its own detailed investigation and as a result has had in its possession detailed information about every allegedly misappropriated trade secret since before it filed this suit. *Supra* at 2-3. At a minimum, Moog must describe those alleged trade secrets with specificity now to fulfill its discovery obligations.

### B.   Moog's failure to provide sufficient disclosure has prejudiced and will continue to prejudice the defendants.

Moog's refusal to provide even basic information about its alleged trade secrets has profoundly impeded the progress of this case. Skyryse repeatedly urged Moog to identify its alleged trade secrets and work with the defendants to devise strategies and processes for discovering documents actually relevant to those trade secrets, which would make discovery more focused and less burdensome. But Moog was unwilling to do so. As a result, Skyryse has been forced to respond

to broad discovery requests regarding nearly the entirety of its business, sort through an enormous amount of electronically stored information (ESI) – altogether, over 30 million files and more than seven terabytes of data, much of it irrelevant. This, coupled with efforts to respond to Moog's endless barrage of pressure tactics and complaints of non-compliance, has been a tremendously time-intensive and expensive effort, going far beyond the limited, expedited discovery contemplated by the stipulated order. (ECF 33.) And it has resulted in an entirely unequal discovery burden, with Skyryse pouring significant time and manpower into addressing Moog's limitless requests, while Moog withholds critical information going to the heart of its case.

Even more fundamentally, Moog's obfuscation and delays have deprived Skyryse of a reasonable opportunity to prepare its defenses, and will continue to unduly prejudice Skyryse with each passing day, especially as the parties move into preparations for, taking, and defending depositions. By trying to delay until *after* the close of expedited discovery to identify its trade secrets, Moog is intent on denying Skyryse its right to gather discovery to test whether and to what extent Moog's alleged trade secrets are indeed protectable, and marshal the necessary evidence to show that, as Skyryse has maintained from the outset, it never wanted or intended to use Moog's trade secrets. *Medidata Sols., Inc.*, 2022 WL 585734, at *1 (holding that because plaintiff "provided no specific explanation" of its alleged trade secrets in interrogatory responses, "a factfinder could not apply to those allegedly misappropriated documents the appropriate follow-on factual tests – such as whether any alleged trade secrets they allegedly contained were valuable, misappropriated or maintained as secrets."); *see also Sit-Up,* 2008 WL 463884, at *6 (holding that plaintiffs "have to be able to identify with specificity what information they consider to have been a trade secret .... If the plaintiff can't do that now, it can't proceed on that theory, because the defendants have a right during discovery to test whatever the plaintiff's theory is.").

16

The same is true for Skyryse's alleged *use* of the alleged trade secrets. To determine whether any alleged trade secrets copied by Ms. Kim or Mr. Pilkington were ever actually used at Skyryse, and to ensure no ongoing use of those alleged trade secrets, Skyryse must, of course, know what the trade secrets are. Moog's refusal to provide that basic information is flatly inconsistent with the notion that there is an urgent situation in which its valuable trade secrets are being used at Skyryse in a way that justifies the extraordinary relief of a preliminary injunction. If that were true, Moog would have identified the alleged trade secrets long ago to assist Skyryse in its efforts to ensure those alleged trade secrets never made it onto Skyryse's systems or into its products, or to remove them if they did. Knowing this, Moog's stubborn refusal to identify its trade secrets speaks volumes as to its true motives in this action.

Skyryse asked for and is entitled to a written identification, with particularity, of each of Moog's alleged trade secrets. Absent an order from the Court compelling this discovery immediately, any belated identification of Moog's trade secrets will come too late and will lack the legally required specificity. Further, Moog's pledge to make certain trade secrets "available for inspection" is entirely insufficient to satisfy Moog's discovery obligation to identify and describe its trade secrets with particularity.

## V.   REQUESTED RELIEF

Skyryse respectfully requests that the Court issue an order requiring Moog to immediately: (1) answer in full Skyryse's Interrogatory No. 1 calling for Moog to identify with particularity, every alleged trade secret it intends to assert in this action, including through a narrative response and not solely by invoking Rule 33(d), and (2) supplement in full its responses to Skyryse's Interrogatory Nos. 2-9 calling for information regarding any trade secrets Moog discloses in response to Interrogatory No. 1.

## VI.    CONCLUSION

For the foregoing reasons, Skyryse respectfully requests that the Court grant its motion to compel and order Moog to immediately identify with reasonable particularity the trade secrets it claims were misappropriated by the defendants, or be precluded from asserting any trade secrets it has failed to sufficiently disclose in proceedings before this Court.

Dated: June 21, 2022                              */s/ Gabriel S. Gross*
                                           **LATHAM & WATKINS LLP**

                                           Douglas E. Lumish (Admitted *Pro Hac Vice*)
                                           Gabriel S. Gross
                                           140 Scott Drive
                                           Menlo Park, California 94025
                                           Telephone: (650) 328-4600
                                           Facsimile: (650) 463-2600
                                           Email: doug.lumish@lw.com
                                                   gabe.gross@lw.com

                                           Joseph H. Lee (Admitted *Pro Hac Vice*)
                                           650 Town Center Drive
                                           20th Floor
                                           Costa Mesa, California 92626
                                           Telephone: (714) 540-1235
                                           Facsimile: (714) 755-8290
                                           Email: joseph.lee@lw.com

                                           **HARRIS BEACH PLLC**
                                           Terrance P. Flynn
                                           726 Exchange Street, Suite 1000
                                           Buffalo, New York 14210
                                           Telephone: (716) 200-5050
                                           Email: tflynn@harrisbeach.com

                                           Counsel for Defendant Skyryse, Inc.