20:30:24

1                    UNITED STATES DISTRICT COURT

2                  WESTERN DISTRICT OF NEW YORK

3
    - - - - - - - - - - - - - - X
4   MOOG INC.,                  )      22-CV-187
                    Plaintiff  )
5   vs.
                                   Buffalo, New York
6   SKYRYSE, INC., et al        )    June 1, 2022
                    Defendant.
7   - - - - - - - - - - - - - - X
    **STATUS CONFERENCE**
8   **Proceeding held via Zoom for Government Platform as well**
    **as AT&T Teleconference**
9   **All parties appeared remotely.**

10                    TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE JEREMIAH J. MCCARTHY
11                UNITED STATES MAGISTRATE JUDGE

12
    FOR PLAINTIFF: SHEPPHARD MULLIN RICHETER & HAMPTON, LLP
13                    BY: RENA ANDOH, ESQ.
                        LAI YIP, ESQ.
14                        KAZIM A. NAQVI, ESQ.
                        TRAVIS J. ANDERSON, ESQ.
15                           -and-
                    HODGSON RUSS, LLP
16                    BY: ROBERT J. FLUSKEY, JR, ESQ.
                        PAULINE MUTO, ESQ.
17
    FOR DEFENDANT:  LATHAM & WATKINS, LLP
18                    BY: DOUGLAS E. LUMISH, ESQ.
                        GABRIEL S. GROSS, ESQ.
19                        KELLEY STOREY, ESQ.
                             -and-
20                    HARRIS BEACH, LLP
                    BY: TERRANCE P. FLYNN, ESQ.
21

22  FOR DEFENDANT
    PILKINGTON/KIM: WINGET, SPADAFORA & SCHWARTZBERG, LLP
23                    BY: ALEXANDER TRUITT, ESQ.

24  **COURT REPORTER: Karen J. Clark, Official Court Reporter**
                    **Karenclark1013@AOL.com**
25                    **100 State Street**
                    **Rochester, New York 14614**

1

2                    P R O C E E D I N G
                  *              *              *
3

4

20:30:24
20:30:26    5          MAGISTRATE JUDGE MCCARTHY:  Why don't we go

20:30:29    6    through, everyone identify themselves and who they are

            representing.

20:30:30    7          MS. ANDOH:  Rena Andoh, Shepphard Mullin,

20:30:34    8    for Plaintiff.  With me today from my firm Lai Yip and

20:30:39    9    Kazim Naqui, and from the Hodgson Russ firm we have and

20:30:52   10    Pauline Muto and Robert Fluskey.

20:30:52   11          MAGISTRATE JUDGE MCCARTHY:  Okay.

20:30:57   12          MR. GROSS:  Your Honor, this is Dave Gross

20:31:01   13    speaking from Latham and Watkins on behalf of Defendant

20:31:14   14    Skyryse, my partner Doug Lumish is here with me, also

20:31:25   15    our colleague Kelley Storey, and our local counsel,

20:31:35   16    Terry Flynn.

20:31:39   17          MAGISTRATE JUDGE MCCARTHY:  Okay.  Thank

20:31:40   18    you.  And, Gabe, you are just audio, correct?

20:31:44   19          MR. GROSS:  I am today, your Honor, and

20:31:46   20    thank you for the Court's indulgence.  I appreciate it.

20:31:48   21          MAGISTRATE JUDGE MCCARTHY:  Sure.  No

20:31:49   22    problem.  And I thank you all for convening on such

20:31:53   23    short notice.  I had originally thought that just on

20:31:58   24    review of the papers I would be good to go, but the best

20:32:02   25    laid plans.  So I wanted to hear a little more from

```
 1              MOOG, INC VS. SKYRYSE, INC. ET AL.
 2  everybody.
 3              MR. TRUITT:  If I may give my appearance as
 4  well, your Honor.  Alex --
 5              MAGISTRATE JUDGE MCCARTHY:  I'm sorry.
 6              MR. TRUITT:  Alexander Truitt on behalf of
 7  the individual Defendants, Mr. --
 8              MAGISTRATE JUDGE MCCARTHY:  Yes, I
 9  apologize, Mr. Truitt.
10              MR. TRUITT:  And I also appreciate the
11  courtesy of allowing me to appear via audio.  I am from
12  Winget, Spadafora and Schwartzberg.
13              MAGISTRATE JUDGE MCCARTHY:  Okay.  Thank
14  you.
15              Eric, you want to go ahead and call the
16  case?
17              THE CLERK:  Yes, Judge.  We're on the record
18  in civil proceeding 22CV187, Moog, Inc. V Skyryse, Inc.
19  All appearances have been stated.  The Honorable
20  Jeremiah J. McCarthy presiding.
21              MAGISTRATE JUDGE MCCARTHY:  Thank you again.
22  And the purpose of today's proceeding is to hear more
23  from the parties in regard to Moog's motion to set
24  revised scheduling orders, which is docket No. 118.  I
25  have been through the papers, I'll be through them
```

1          MOOG, INC VS. SKYRYSE, INC. ET AL.

20:33:28   2    again, but I would like to briefly hear from -- maybe

20:33:33   3    not so briefly -- hear from you, but before I do that, I

20:33:38   4    have a couple of general questions and comments.  First

20:33:45   5    of all, I know one of the areas of dispute is whether

20:33:50   6    the deadline should be hard deadlines or substantial

20:33:54   7    production deadlines.  And, as I indicated in my e-mail

20:33:59   8    of the other day, and with due respect to Moog, I

20:34:05   9    recognize the fact that some deadlines in the past have

20:34:09   10   been unequivocal, but your proposal that we have hard

20:34:16   11   deadlines with a right to apply to modify scheduling

20:34:20   12   orders on a showing of good cause, that can lead to a

20:34:27   13   lot of confusion and delay as well as to what

20:34:29   14   constitutes good cause.  And I grant you that my

20:34:34   15   definition of "substantial production" is not perfect,

20:34:38   16   either, but I think it places the burden on the -- it

20:34:45   17   makes clear, first of all, that any farrier in

20:34:51   18   production should not delay the schedule and briefing

20:34:55   19   and discovery schedule necessary for the preliminary

20:34:58   20   injunction hearing, which now is going to take place, I

20:35:00   21   guess, tentatively, October 17th, with Judge Vilardo.

20:35:07   22   And it places the burden of explanation or excuse on the

20:35:15   23   party who has desires to make additional productions

20:35:19   24   beyond the substantial production deadline, so I'm up in

20:35:24   25   the air on a lot of things.  But I think in terms of how

1          MOOG, INC VS. SKYRYSE, INC. ET AL.

20:35:28   2    that is going to be defined, I think that is the best

20:35:31   3    way to go.  Now, one of the things that Moog says in

20:35:38   4    opposing -- excuse me, that Skyryse says in opposing

20:35:44   5    Moog's motion is that, at some point, if Skyryse were to

20:35:50   6    identify its trade secrets, everything would go a lot

20:35:55   7    more smoothly.  And I've said in my e-mail that it's

20:36:00   8    unrealistic to expect Moog to identify all of its trade

20:36:05   9    secrets when it doesn't know the full scope of what has

20:36:10   10   been taken.  But, Mr. Hunter's declaration submitted in

20:36:14   11   support of the motion for a preliminary injunction seems

20:36:19   12   to identify with a fair level of specificity what the

20:36:22   13   problem areas are.  And, I mean, what is the problem

20:36:29   14   with requiring Moog to identify its trade secrets,

20:36:35   15   obviously, in a manner that doesn't destroy the secrecy

20:36:42   16   value, Ms. Ando, I guess I'll hear from you on that.

20:36:45   17          MS. ANDOH:  Your Honor, I think your point

20:36:47   18   with regard to the Hunter declaration is well taken.

20:36:50   19   We've done what we can at this juncture to try and

20:36:54   20   provide notice to the Defendants as to what it is we

20:36:57   21   believe our trade secret materials, and we've done it to

20:37:00   22   the best of our ability.  So, you know, this is an

20:37:02   23   ongoing process.  But I want to be a little careful

20:37:06   24   about the insinuation that we're somehow into expedited

20:37:10   25   discovery.  No party has turned over documents yet in

1          MOOG, INC VS. SKYRYSE, INC. ET AL.

20:37:49  2    response to document demands.  We still don't have

20:37:59  3    access to the images at IDS.  So, functionally, we're

20:38:05  4    still at the pleading phase in terms of our ability to

20:38:09  5    have access to Skyryse's information.  And, as your

20:38:12  6    Honor knows from the complaint and from the preliminary

20:38:15  7    injunction motion, we're in a little bit of a unique

20:38:18  8    situation in that both of the individual Defendants that

20:38:22  9    we've accused of stealing our information, took very

20:38:29  10   active steps to cover their tracks after they took our

20:38:33  11   information, which, again that is logical, right, you

20:38:38  12   don't want to get caught.  But what it has left us with

20:38:44  13   is that we have a situation where we have highly

20:38:47  14   incomplete information.  You know, not to go sort of too

20:38:55  15   far into the weeds, but some of this actually sort of

20:39:04  16   interlays over some of the arguments that Skyryse is

20:39:17  17   trying to make with respect to, for example, the search

20:39:23  18   terms issue.  So, we have two sets of downloads that we

20:39:27  19   know have happened.  And, but, in both cases, we know

20:39:31  20   they've happened, not because we've been able to recover

20:39:34  21   copies of what was taken, we know what is taken because

20:39:37  22   there are forensic relics that identify which, at least,

20:39:44  23   some level of understanding what they took.  And in each

20:39:52  24   individual Defendant's case, what we know is slightly

20:39:55  25   different.  So with respect to Defendant Kim, what we

1                    MOOG, INC VS. SKYRYSE, INC. ET AL.

20:40:00  2      know is we know the file names of the files that she

20:40:03  3      took.  We don't have a copy of the files.  She wiped the

20:40:07  4      hard drive that we believe she used to take those files,

20:40:13  5      and so when it was returned to us, it was, like, factory

20:40:18  6      wiped, nothing on there.  And while it might seem as

20:40:21  7      though it's a simple matter for us to go back and pull

20:40:26  8      all of the files again because we have all of the file

20:40:29  9      names, it's not actually that simple.  There are a few

20:40:32 10      reasons why.  One reason why is because there was a time

20:40:36 11      lag that was pretty substantial between the time that

20:40:40 12      the theft happened and the time we found it.  And a lot

20:40:43 13      of the files she took are living files.  They are not

20:40:46 14      sort of a static document that nobody touches.  So, over

20:40:50 15      time, there are substantial changes that are made to

20:40:52 16      these documents as part of Moog's day-to-day business

20:40:56 17      because these files are part of Moog's active business.

20:40:59 18      So, in order for us to be able to identify specifically

20:41:02 19      what she took, we really need to get access to the files

20:41:09 20      that she took.  It's really an approximation on our

20:41:16 21      part.  Also, files get moved into different locations

20:41:19 22      over time.  They get renamed.  There are all different

20:41:22 23      kinds of reasons why the file list we provided, even

20:41:25 24      though it's the best information we had and we did

20:41:30 25      everything we could to put Skyryse on notice, is not

1          MOOG, INC VS. SKYRYSE, INC. ET AL.

2    perfect.  As a matter of fact, when Skyryse asked us to

3    provide MD5 hash values, your Honor will remember with

4    probably painful recollection with the amount of paper

5    that we provided in order to describe MD5 hash value.

6    But, the reason why we were only able to generate those

7    hash values for only about half of the documents and we

8    weren't able to verify the identity of the MD5 hashes is

9    because these documents change over time, and when the

10   documents change, the MD5 hashes change.  And in a lot

11   of instances, we weren't able to identify conclusively

12   the specific document because we don't have that

13   document in the file system that Ms. Kim took it in.

14          With respect to Mr. Pilkington, we have an

15   even slightly more complicated situation.  For example,

16   he took almost 1.2 million files.  And we said Kim took

17   about 136,000 or 137,000 that we're aware of.  The 1.2

18   million files, we don't even have the file names.  We

19   have the names of the folders, that is the information

20   that we have.  So while we are diligently trying to

21   reconstruct, to the best of our ability, what might have

22   been contained in those files, we are now trying to

23   reconstruct a file system that he took as a snapshot

24   back in November, and I think even in October, and we're

25   now trying to reconstruct that months later when we're

1          MOOG, INC VS. SKYRYSE, INC. ET AL.

20:43:57   2   in an active business and these files are being used,

20:44:06   3   modified, moved, regularly.  And so, you know, with all

20:44:14   4   of that having been said, we believe that we've done

20:44:25   5   absolutely everything we can to identify at this phase,

20:44:34   6   not having access to the files, not having access to

20:44:37   7   their computers, not having access to any documents that

20:44:40   8   we've requested that they turn over to us to identify

20:44:43   9   the categories of trade secrets that we know and believe

20:44:55   10  exist in there, and to provide as much information as we

20:45:23   11  can about what we know that those downloads have

20:45:26   12  contained.

20:45:27   13          And I will note one thing that did not go

20:45:30   14  mentioned in Skyryse's brief, that also goes to this

20:45:33   15  point is, and it's a little bit tangential, because I

20:45:37   16  want to be careful about making sure that we're not

20:45:42   17  conflating Skyryse's obligation to comply with the March

20:45:45   18  11 turnover order with their discovery obligations.

20:45:50   19  But, we actually, at their request, after we provided

20:45:55   20  them the incomplete MD5 hashes, we met and conferred.

20:45:59   21  This is actually prior counsel, Gibson Dunn, we met and

20:46:03   22  conferred with them and wanted to try and help shortcut

20:46:07   23  at least some of these issues around being able to

20:46:10   24  identify things that we thought would be uniquely Moog,

20:46:18   25  so we actually provided a list of 32 search terms, and I

MOOG, INC VS. SKYRYSE, INC. ET AL.

believe referenced it actually in our forensic protocol briefing to your Honor. We provided a list of 32 search terms that are targeted and really designed to identify markers that are pretty unique to Moog proprietary information, and so where we can, we have tried to be helpful in trying to narrow the issues here and trying to give them something that they can work with to try and have a slightly less large universe of materials to look at. But, I think, you know, for them to say that we have to identify with more specificity than we currently have without having access to discovery with them, all of our trade secrets that we believe are at issue in this case, when the people on their side of the case who took this stuff, made active efforts to cover it up, and obscure it so that we couldn't do that, doesn't really make sense.

And I'll just say in closing, and I don't want to overstate or overemphasize this point, but I think it's worth mentioning again, we're at the pleading phase. They did not move to dismiss our complaint on the basis that we failed to put them on sufficient notice with respect to our trade secrets. So, as far as we're concerned, we've done everything we can at the complaint phase, which is operationally where we're at

1          MOOG, INC VS. SKYRYSE, INC. ET AL.

20:48:03   2   right now, to give them information.  We've kept them

20:48:08   3   apprised of our continuing investigation.  We've given

20:48:12   4   them additional information as we've had it.  We've

20:48:16   5   tried to be cooperative in providing them with

20:48:18   6   additional information.  But telling us that we now need

20:48:21   7   to effectively provide them with a close of discovery

20:48:26   8   level description at the opening of discovery, we

20:48:33   9   believe, is not proper and should not be a threshold

20:48:36   10  issue.

20:48:37   11         MAGISTRATE JUDGE MCCARTHY:  Okay.  Before I

20:48:52   12  hear from counsel for Skyryse -- wait a second, okay.

20:48:59   13  Gabe Gross, he disappeared, now he is back.  I allow

20:49:04   14  myself in every conference that I have, I allow myself

20:49:07   15  one stupid question, okay?  So here it comes.  You may,

20:49:13   16  you may object to any further questions on the basis of

20:49:19   17  stupidity, but let me just ask you this.  The March 11th

20:49:22   18  -- and I want -- this is directed to everybody.  The

20:49:26   19  March 11th stipulation gives in, I guess, 40,000 foot

20:49:34   20  language, general prohibitions about what the Defendants

20:49:37   21  cannot do.  They cannot use any non-private or

20:49:43   22  non-public information of Moog's, et cetera, et cetera.

20:49:48   23  How do you envision, assuming that you are successful on

20:49:53   24  a -- on the preliminary injunction motion, what

20:49:57   25  additional type of relief are you going to get?  Are you

1          MOOG, INC VS. SKYRYSE, INC. ET AL.

20:50:00   2   going to get more specificity and definition of what it

20:50:03   3   is they cannot do?  And I recognize, in fact, I was

20:50:06   4   talking with my law clerks earlier, it's been a while

20:50:10   5   since I have been involved in trade secret litigation,

20:50:15   6   but I suppose one of the problems you all face is how do

20:50:22   7   you describe your trade secret at some point in the

20:50:25   8   litigation with sufficient aspecificity that the

20:50:27   9   Defendant can properly prepare a defense and yet not --

20:50:35   10  not destroy its secrecy.  But, back to my initial

20:50:39   11  question.  You've already got very general protections

20:50:41   12  in the March 11th order or stipulation which, which was

20:50:48   13  then adopted, approved by Judge Vilardo.  What do you

20:50:55   14  expect that you're going to get additionally, assuming

20:50:57   15  that the Defendants would be willing, and I think they

20:50:59   16  would, to continue abiding by that?  What type of

20:51:04   17  additional relief are you going to get?  Is it going to

20:51:07   18  be a greater definition of what it is they cannot do?

20:51:12   19          MS. ANDOH:  So, your Honor, that is not a

20:51:14   20  dumb question at all.

20:51:15   21          MAGISTRATE JUDGE MCCARTHY:  Okay.  That

20:51:16   22  means I get --

20:51:18   23          MS. ANDOH:  You get it back.

20:51:19   24          MAGISTRATE JUDGE MCCARTHY:  I can carry it.

20:51:21   25          MS. ANDO:  I will say this, I think it might

```
 1              MOOG, INC VS. SKYRYSE, INC. ET AL.
 2    be a little premature.  But I will tell you that there
 3    -- and your Honor, I'm going to go through a little bit
 4    extreme of consciousness, forgive me if I go a little
 5    bit out there.  It seems to me there are still two sets
 6    of issues that we're dealing with.  And I think we still
 7    need to get some additional clarity around before I can
 8    really answer the question.
 9              The first thing, we've raised this before,
10    and without causing a conflagration among my cocounsel
11    here, we have real concerns about the level of
12    compliance with the March 11th order as it stands now.
13    So, one of the things we really need to, and by we, I
14    mean Moog, is the March 11 order really effective and do
15    we need to reword it or do we need to have additional
16    restrictions or do we need to have tighter restrictions
17    in order to make sure that we're actually getting the
18    comfort that was intended when we entered the March 11
19    order in the first place?  I know this is actually
20    related to the memorandum of law that we submitted to
21    your Honor.  You know, we were told back on April
22    25th --
23              MAGISTRATE JUDGE MCCARTHY:  -- 26th, no,
24    you're right, it was the 25.th our conference was on the
25    26th.
```

1               MOOG, INC VS. SKYRYSE, INC. ET AL.

2           MS. ANDOH:  That's right.  And I think my

3  original discussion with them was over the weekend prior

4  to that.  So two months ago, or, I guess, a month and a

5  half ago now, we found out that they found what they

6  believed to be non-public Moog information that was on

7  their systems.  And ever since then, we've been asking

8  them for additional information, and they have made

9  turnovers of some documents to IDS.  They did one

10  turnover, I'm looking at my notes right now, on April 29

11  of 568 files, and then two files on May 5th, but nothing

12  since then.  And part of what Josh Krevitt, again,

13  former counsel, discussed with you at this hearing on

14  April 26th, they imaged 36 devices, and these devices

15  were imaged for a combination of two different sets of

16  issues that they had concerns around.  One of which was

17  the non-public information, and the other was this

18  spoliation issue.  We -- none of those images have been

19  turned over to the IDS.  We still don't have any

20  information from -- from Skyryse or any further

21  information from Skyryse about what is on there, what

22  these search term hits were, and it's left us with a

23  very deep concern that there is still our non-public

24  information sitting out there that is not in compliance

25  with the March 11 order.  And your Honor will recall

1                 MOOG, INC VS. SKYRYSE, INC. ET AL.

20:54:49    2   that their compliance deadline with the March 11 order

20:54:55    3   was April 1st, and we're now sitting in June.  So, you

20:55:03    4   know, I say this, not because I want to raise

20:55:06    5   necessarily this whole kettle of fish today, but I say

20:55:09    6   this to say that we don't think that the March 11 order

20:55:12    7   has been particularly effective, and we probably, if we

20:55:17    8   can't reach resolution with Skyryse, you know, we will

20:55:20    9   be coming to your Honor with an order to compel

20:55:25   10   compliance with the March 11 order, whatever

20:55:29   11   configuration it is.

20:55:30   12                 I think it's also going to force us to think

20:55:32   13   about what the relief is that we actually need on this

20:55:36   14   preliminary injunction so we don't continue to have this

20:55:39   15   drip, drip, drip, and we really are able to articulate

20:55:43   16   and identify what it is that we believe, you know, that

20:55:46   17   they've taken that is actually being used.  We know that

20:55:51   18   if the use is limited to a specific program, maybe we'll

20:55:54   19   just ask for a restriction on that program.  But we

20:55:59   20   don't know that at this point because we haven't gotten

20:56:03   21   access and they still haven't turned over all of the

20:56:06   22   evidence of use.  And this is sort of a long-winded way

20:56:08   23   of saying, I believe that we will need to and want to

20:56:14   24   seek a more tailored injunction by the time we get to

20:56:19   25   October 17.  I don't know that it will necessarily just

                         MOOG, INC VS. SKYRYSE, INC. ET AL.

20:56:23   2   be more focused, it may also be slightly different,

20:56:28   3   depending on what we find.  You know, some of the things

20:56:31   4   that -- some of the information that we've heard, it

20:56:35   5   indicates that it's possible that there may be some

20:56:37   6   additional issues here that are outside of the scope of

20:56:40   7   what we initially pled in our complaint with respect to

20:56:46   8   these two sets of downloads.  Again, we just don't know

20:56:50   9   yet, and so it's very hard for me to say for certain

20:56:57   10  what it is that we're going to be seeking come October

20:57:00   11  17.  But, what I can represent to the Court is that

20:57:03   12  we're going to be very thoughtful about it, and we're

20:57:05   13  not going to try and maintain the broadest possible

20:57:09   14  relief.  We're going to maintain the most effective type

20:57:14   15  of relief to protect Moog's information.

20:57:17   16                 MAGISTRATE JUDGE MCCARTHY:  Okay.  Am I

20:57:17   17  going to hear from Mr. Gross or Mr. Lumish or maybe even

20:57:22   18  Mr. Flynn?

20:57:24   19                 MR. GROSS:  Your Honor, it may be a

20:57:26   20  combination, this is Gabe Gross speaking from Latham,

20:57:29   21  and I apologize, I lost my connection inexplicably

20:57:43   22  during Ms. Ando's argument, but I am back and it seems

20:57:53   23  to be working now.

20:57:54   24                 MAGISTRATE JUDGE MCCARTHY:  Okay.  Let me

20:57:57   25  ask you this, basically, it seems to me that your

                    MOOG, INC VS. SKYRYSE, INC. ET AL.

primary argument for not meeting the various production
deadlines and asking for a few more weeks to do so is
your need to complete your privilege review.  And I
recognize that there are thousands or tens of thousands
of documents.  I understand that.  But, on the other
hand, at the early stage of this case, some promises
were made, and it was by prior counsel, and, but, as I
said, I think at the time of the transition, the Court
was not going to stand in the way of a change of counsel
provided that it doesn't delay the progress of the
litigation.  So, if I understand correctly, you want
until June 24th to complete your privilege review and
you say that is aspirational, but more realistic than
June 2nd, or whatever Moog is talking about.  So I guess
I'm just kind of trying to -- I'm wrestling with the
fact that there were some deadlines and some promises
and now it seems we're asking for more time, and,
believe me, I understand this cannot be an easy task to
go through all of this.  But having said that, I'll you
have the floor now.

                    MR. GROSS:  Thank you, your Honor.  And I'll
try and answer that question first and also address the
three that I did hear you pose to Ms. Andoh and come
back to those.

1           MOOG, INC VS. SKYRYSE, INC. ET AL.

20:59:41   2           You just put your finger on one of the

20:59:44   3   issues is the review for potentially privileged

20:59:47   4   information on some devices that are in the neutral

20:59:50   5   forensic vendor's possession that has to be completed,

20:59:55   6   that will, that hundreds of hours that we're committed

20:59:58   7   to doing and have been working on, and all of the

21:00:00   8   parties and their counsel on this call have been

21:00:04   9   communicating with the vendor to make sure that is in

21:00:08  10   place properly with the appropriate contractual

21:00:13  11   protections and we're moving forward on that.  This

21:00:19  12   issue is emblematic of that, and if you let me explain

21:00:35  13   more on that for a moment, please, it's here is what I'm

21:00:42  14   trying to convey.  The issue about, I think it's five

21:00:47  15   devices from Defendant Skyryse, some others from the

21:00:51  16   individual Defendants, but five devices that we're

21:00:53  17   talking about that need to have the privilege review

21:00:56  18   completed, which we're working on.  The issue is that in

21:00:59  19   the absence of a way to whittle, search or sift through

21:01:58  20   the contents of those devices, it was a large volume.

21:02:02  21   For those five, it happened to be about half a million

21:02:06  22   documents, which is why the task is significant in

21:02:08  23   magnitude and is taking time.  And we wanted to be up

21:02:12  24   front with our colleagues at Shepphard Mullin and the

21:02:16  25   Court about the number of hours it will take to get

                    MOOG, INC VS. SKYRYSE, INC. ET AL.

21:02:18   2   through that.  We are absolutely working on that.  The

21:02:22   3   reason I say it's emblematic of the issues that I think

21:02:25   4   are posing all parties some difficulty here is that in

21:02:29   5   the absence of a way to focus in on what's relevant

21:02:32   6   through -- be it through search terms, be it through a

21:02:36   7   specific identification of the trade secrets, what

21:02:39   8   Defendant Skyryse is left to do and is doing right now

21:02:42   9   is looking at the entire universe and then trying to

21:02:45   10  make sure we get to the Plaintiff and their counsel the

21:02:49   11  expedited discovery that is actually going to speak to

21:02:53   12  the claims in this case and to the defenses.  So I hope

21:02:56   13  that addresses your first question about the five

21:02:58   14  devices that require privilege review.  And that June

21:03:01   15  24th date is one I think we can meet and we're

21:03:05   16  absolutely committed to doing so if we have the Court's

21:03:17   17  permission to do so.

21:03:20   18          But I would like to address this, this

21:03:23   19  larger, this larger issue, because I did hear Ms. Andoh

21:03:28   20  explain that, from Moog's perspective, they've done

21:03:31   21  everything they can to try and provide some guidance,

21:03:34   22  some clarity about what the trade, the trade secrets are

21:03:38   23  that would help Skyryse sort through what really is now

21:03:43   24  an overwhelming amount of information.  We've mentioned

21:03:46   25  in our papers, and I imagine it stuck out to your Honor,

1              MOOG, INC VS. SKYRYSE, INC. ET AL.

21:03:49  2    that it's millions of files, it's terabytes of data,

21:03:53  3    it's really a tremendous amount of information that

21:03:56  4    we've preserved in order to make sure we can go through

21:03:59  5    discovery in an orderly way.  And so there have been

21:04:03  6    discussions, both between our predecessor counsel and us

21:04:06  7    and Ms. Andoh and her team at the Plaintiff's counsel

21:04:10  8    about how to do this.  And respectfully, we just

21:04:13  9    disagree that Moog has done everything it could.  We

21:04:16  10   understand the points that they've made that some files

21:04:19  11   have changed, that some files are not static and that

21:04:23  12   they may not know, at this point, with one 100 percent

21:04:26  13   precision every file that has been taken.  But we do

21:04:30  14   know that they know by name and by file path where the

21:04:34  15   files were located on Moog's servers, what, at least

21:04:37  16   136,000 of these files were.  And Moog is in a position

21:04:42  17   to use that information to go look at their files in

21:04:45  18   whatever form they exist today, and I understand Ms.

21:04:48  19   Andoh's point that they may have changed, but look at

21:04:52  20   those files, and, one, determine if any of them are

21:04:55  21   trade secrets that they could actually enforce trade

21:04:58  22   secret rights in this case, and, two, which ones, and

21:05:00  23   then work with us to come up with some search terms that

21:05:05  24   could actually focus on things that are relevant to the

21:05:08  25   claims.  And Ms. Andoh did mention in a prior exchange

1                 MOOG, INC VS. SKYRYSE, INC. ET AL.

21:05:15    2    that where they provided search terms, I think in the

21:05:27    3    neighborhood or 30 or 32, that is very helpful.  We

21:05:29    4    would like to continue that discussion.  We hope it goes

21:05:32    5    father, because in the last discussion when those search

21:05:35    6    terms came up, Moog was not willing to drop any of the

21:05:39    7    others, and there are thousands of others that we've

21:05:41    8    tried to use by taking advantage of the information they

21:05:44    9    have, like the file names and the hash values for

21:05:47   10    example.  But thousands and thousands of search terms

21:05:51   11    applied to a universe of 30 million documents doesn't

21:06:36   12    bring us to something that any of the lawyers in this

21:06:38   13    case could use to actually get to a relevant, manageable

21:06:43   14    amount of discovery.  So that was why, your Honor, we

21:06:46   15    requested the Court just order the parties to meet and

21:06:49   16    confer and continue this process in earnest so we can

21:06:54   17    hopefully get to a way in which the discovery moves

21:06:57   18    forward and in an efficient way to get to what Moog

21:07:05   19    needs to prosecute this case, and, frankly, what the

21:07:08   20    Defendants need to defend theirs.  So, that is sort of

21:07:17   21    my high level, my high level.  I wanted to make sure I

21:07:20   22    answered your Honor's three questions that you started

21:07:22   23    the session with.  The first being about substantial

21:07:27   24    completion versus absolute completion of discovery tasks

21:07:32   25    by certain deadlines.  It won't surprise you to know, we

MOOG, INC VS. SKYRYSE, INC. ET AL.

21:07:36  2    agree with you.  And by requiring good cause for in

21:08:20  3    order to supplement a production, for example, seems

21:08:22  4    inappropriate.  We agree it could create delay and

21:08:27  5    confusion over what "good cause" means, and we think

21:08:29  6    that requiring substantial completion of these expedited

21:08:55  7    discovery tasks by the dates set out in the papers makes

21:08:59  8    sense.

21:09:00  9         MAGISTRATE JUDGE MCCARTHY:  Well, as I said

21:09:01  10   before, there is some uncertainty as well or potential

21:09:06  11   delay with the -- with my approach of putting the onus

21:09:12  12   on the party who's allegedly not substantially produced

21:09:19  13   that can still lead to some delay, but I think, on

21:09:23  14   balance, perhaps it's less delay than just fighting over

21:09:26  15   whether there is or is not good cause.

21:09:30  16        MS. ANDOH:  Your Honor, for what it's worth

21:09:32  17   --

21:09:32  18        MAGISTRATE JUDGE MCCARTHY:  Yeah.

21:09:33  19        MS. ANDOH:  -- we've not made a submission

21:09:35  20   since your Honor's e-mail.  We actually were completely

21:09:38  21   comfortable with your Honor's definition of

21:09:41  22   substantially in the e-mail if that helps at all.

21:09:45  23        MAGISTRATE JUDGE MCCARTHY:  Well, that does

21:09:46  24   help, and I thank you.  So, that is one thing that we

21:09:52  25   can all agree on.  And I guess then the --

1        MOOG, INC VS. SKYRYSE, INC. ET AL.

2        MS. ANDOH:  I did want to be briefly heard

3   on two points that --

4        MAGISTRATE JUDGE MCCARTHY:  I'll let you be

5   heard, but I got to get this thought out of my head

6   because, otherwise, it will disappear.  As I see it, the

7   options are, with respect to the completion of the

8   privilege review is either -- well, there is a couple

9   possibilities.  One is to direct the parties to meet and

10  confer and try to come up with search terms.  One is to

11  say, no, Skyryse, you can have until June 24th, but it

12  better be a full review and full production.  And one is

13  to, well, I guess that is two.  I had a third, that has

14  already disappeared.  With -- with Moog reserving its

15  rights to claim that the March 11th order has, I think

16  it was March 11th, yeah, March 11th order has been

17  violated, and just practically speaking, you know, I'm

18  not an expert in this area, it does seem to me, I can

19  see Moog's position that this should have been under

20  way, but I also can see what Mr. Gross is saying, that

21  it has been under way.

22       MR. GROSS:  Well, your Honor, if I may, we

23  actually made a proposal today that I think may be

24  useful on this particular issue.  The privilege review

25  of the five devices in IDS's possession, I think, may

                              MOOG, INC VS. SKYRYSE, INC. ET AL.

21:11:36   2    help.  I think we'll need your Honor to enter an order

21:11:39   3    to give us clarity.  But one of the things that I think

21:11:42   4    the neutral forensic examiner might be able to help us

21:11:50   5    do is temporarily excise from those devices or at least

21:12:05   6    make unavailable the 15,000 or so documents we know need

21:12:09   7    further review so that Moog's counsel can have access to

21:12:13   8    the remainder, which your Honor has granted them to have

21:12:16   9    under the forensic protocol.  And then in parallel, they

21:12:20   10   can be reviewing that document while we get through the

21:12:22   11   privilege review, and it won't hold anything up, and

21:12:25   12   those that turn out to be not privilege, we can let IDS

21:12:29   13   know would be okay to put back in the image, and the

21:12:32   14   things that are privileged, will, of course, get logged

21:12:35   15   in the ordinary course of discovery, and a privilege log

21:12:39   16   will be provided to Moog's counsel.

21:12:43   17            So, I think that may be a practical solution

21:14:12   18   in the near term as we're working through this

21:14:14   19   significant privilege review project.

21:14:17   20            MR. TRUITT:  Your Honor, this is Alex Truitt

21:14:20   21   for the individual Defendants.  I just have to make a

21:14:24   22   point with Moog's suggestion.  We are, in some ways,

21:14:27   23   reaching a similar conclusion.  We believe that we can

21:14:30   24   identify a number of devices to which we have a high

21:14:33   25   degree of certainty to which there is no possible

1          MOOG, INC VS. SKYRYSE, INC. ET AL.

21:14:36   2   privilege communications.  For the individual

21:14:39   3   Defendants, the difficulty we're dealing with right now

21:14:42   4   is that there are probably a very small number of

21:14:45   5   documents to which privilege actually applies due to the

21:14:49   6   time frames between when the events occurred and the

21:14:53   7   commencement of this litigation.  However, just to make

21:14:56   8   sure that we're able to appropriately state our position

21:15:01   9   with privilege and then allow, you know, Ms. Andoh's

21:15:06  10   client to review the remaining documents pursuant to the

21:15:09  11   previous orders of this Court, I think it makes sense to

21:15:13  12   at least ensure that the parties are able to kind of

21:15:16  13   move on both fronts, to kind of allow them to sort of

21:15:19  14   segment where the potentially privileged communications

21:15:23  15   or other materials exist, and so those can be given

21:15:27  16   further review as the remainder of documents to which,

21:15:32  17   you know, the parties are more convinced there is no

21:15:34  18   possible privilege would apply, could be released to any

21:15:39  19   party who wishes to review them.

21:15:41  20          MAGISTRATE JUDGE MCCARTHY:  So, Alex, you

21:15:43  21   said a moment ago, or maybe I misheard you, I thought

21:15:45  22   you said you're aligned with Moog's position, but it

21:15:48  23   sounds --

21:15:49  24          MR. TRUITT:  Did I say Moog?  I meant to say

21:15:52  25   Mr. Gross.

1              MOOG, INC VS. SKYRYSE, INC. ET AL.

21:15:53   2              MAGISTRATE JUDGE MCCARTHY:  Maybe I misheard

21:15:54   3   you.  But, okay, all right, I understand.

21:15:57   4              Going back to Gabe Gross for a minute.  Of

21:16:00   5   the 15,000 documents or files that may contain

21:16:04   6   privileged information, what percentage is that of the

21:16:08   7   entire universe of documents that we're talking about?

21:16:12   8              MR. GROSS:  So, of the five devices from

21:16:15   9   which they came, your Honor, it's between two and three

21:16:18  10   percent of the half million files on those devices, if

21:16:21  11   I'm doing my mental math correctly.  Of the 30 million

21:16:25  12   documents that Skyryse has segregated separately as part

21:16:29  13   of its investigation to find potentially discoverable

21:17:02  14   information, its, of course, a much smaller percentage,

21:17:08  15   and those will be reviewed for privilege as well.

21:17:11  16              MAGISTRATE JUDGE MCCARTHY:  So you're

21:17:11  17   saying, if I understand you correctly, you're saying

21:17:13  18   that, at a maximum, you'd be withholding perhaps three

21:17:20  19   percent, maybe less, of the documents now to complete

21:17:24  20   your privilege review.  Everything else would be made

21:17:27  21   available to them, what, immediately?

21:17:30  22              MR. GROSS:  I think we just need to work

21:17:32  23   with the forensic vendor to see how he could implement

21:17:37  24   that.  But I think you're right, your Honor, 15,000 of

21:17:43  25   about 500,000, if my math is right, should be about

```
 1              MOOG, INC VS. SKYRYSE, INC. ET AL.
 2    three percent.  So the vast majority of what's on those
 3    devices would be available for inspection, if, as I
 4    assume the IDS, the neutral vendor, could help us
 5    segregate that potential privileged minority of
 6    documents.
 7              MAGISTRATE JUDGE MCCARTHY:  Ms. Andoh, what
 8    about that?
 9              MS. ANDOH:  So, your Honor, we received that
10    proposal about an hour before the proceeding, and we
11    were sort of assessing it as the hearing began.  Based
12    on what I understand from what Mr. Gross is saying, and
13    from the e-mail that Ms. Storey sent us, I think we can
14    agree to that.  With respect to the privilege review, I
15    just want to be a little bit careful here your Honor
16    because there seems to be a lot of conflation of search
17    terms with privilege review, and they are not really the
18    same thing.  But they are separate sorts of buckets of
19    issues here.  But with respect to the question of us
20    being able to get access to the vast majority of
21    documents and files on the five Skyryse devices and the
22    23 individual Defendant devices that currently reside
23    with IDS, I think we are in favor of Skyryse's proposal
24    to segregate just the 15,000 in their case, and it
25    sounds like Mr. Truitt is saying it would be a much
```

1          MOOG, INC VS. SKYRYSE, INC. ET AL.

21:19:11   2   lower number in the case of the individual Defendants,

21:19:13   3   and give us as close as possible to immediate access to

21:19:16   4   the remainder of the information on those images.  Now,

21:19:20   5   I think we would still ask that you would impose a June

21:19:25   6   24th deadline for the privilege review, because I think

21:19:30   7   15,000 documents could very reasonably be completed in

21:19:43   8   terms of review before June 24th.  And we do want to

21:19:48   9   have sort of an end date where we actually have

21:19:50   10  everything other than privilege material from the five

21:19:53   11  images, but I think that that is a workable proposal

21:19:55   12  with respect to the materials that currently reside with

21:19:58   13  IDS in terms of giving us access to those images.

21:20:04   14          MAGISTRATE JUDGE MCCARTHY:  All right.  Then

21:20:06   15  I think that is great progress, and I've got a district

21:20:11   16  judge calling me, but I'm just going to ignore him.

21:20:15   17          MS. ANDOH:  And, your Honor, I just wanted

21:20:16   18  to respond really briefly to one comment that Mr. Gross

21:20:21   19  made about this 136,000 files, and this idea we should

21:20:24   20  be able to go back and use these file paths to go

21:20:27   21  identify them and look at them.  This sort of highlights

21:20:31   22  a particular issue that Moog has, which is, at some

21:20:40   23  point, right, Ms. Kim actually took 136,000 files,

21:20:49   24  right, she took them with her.  Our understanding, based

21:20:57   25  on the information that we've been giving, is that those

MOOG, INC VS. SKYRYSE, INC. ET AL.

136,000 files existed on at least one device and they
were accessed.  We have still not been able to, with 100
percent confirmation, we don't know for certain whether
a full copy of those 136,000 or 137,000 files have been
turned over to IDS as part of either the 23 devices that
the individual Defendants turned over or the five
devices that Skyryse turned over.  But I think my
initial reaction to Mr. Gross's point is why would we go
through the trouble of trying to imperfectly approximate
what was downloaded when we can just go to IDS and look
at the 136,000 files that Ms. Kim downloaded.  Once we
have access to those, we have absolutely no problem with
going through them and identifying which files we think
are confidential trade secret information.  But we can't
even get a straight answer from the Defendants as to
whether a complete set of what she downloaded is with
IDS or not.  We're working under the assumption that she
didn't actually delete every instance of those files and
that, in fact, there is at least one device that has
been turned over to IDS that has that full complement of
137,000 files.  You know that is something that,
presuming that they exist, we should just have access to
them.  They are our files anyway.  We can go through
them and identify which ones -- and, your Honor, this is

1            MOOG, INC VS. SKYRYSE, INC. ET AL.

21:22:42   2    just to sort of particularly the problem we feel is a

21:22:47   3    Catch 22.  We keep being told we need to identify our

21:22:52   4    trade secrets with more specificity, but, the only

21:22:59   5    possible location in which our file still exist is with

21:23:04   6    the neutral vendor because Defendants turned them over.

21:34:12   7            MR. GROSS:  So, your Honor, if I may just

21:34:14   8    offer a couple of points in response to this.  You know,

21:34:17   9    this case, like every case, has its own factual

21:34:29  10    idiosyncrasies, but it's also very much like most trade

21:34:35  11    secret cases in that the Plaintiff has a sense for what

21:34:38  12    was taken, maybe not with one 100 percent precision, has

21:34:44  13    in its own files information about what it believes was

21:34:49  14    taken, and is in a position to identify with some

21:34:54  15    particularity what its alleged trade secrets are.  I

21:35:00  16    mean, rest assured, nobody will be trying a case to a

21:35:04  17    jury with 1.2 million trade secrets and/or 136,000 trade

21:35:18  18    secrets, that obviously can't happen.

21:35:24  19            MAGISTRATE JUDGE MCCARTHY:  I'd like to sit

21:35:25  20    in on the voir dire for that trial.

21:35:27  21            MR. GROSS:  I'm sure.  I'm sure.  And, you

21:35:30  22    know, your Honor, it's often a common posture we see in

21:35:34  23    these trade secret actions that a Plaintiff doesn't

21:35:39  24    naturally want to show what the trade secrets are until

21:35:44  25    it's ordered to do so or required by some legal process

1                    MOOG, INC VS. SKYRYSE, INC. ET AL.

21:35:50   2   to do so.  So, while I understand Ms. Andoh, as

21:35:54   3   discovery proceeds, may need to update and/or amend the

21:36:01   4   trade secret information, I take issue with the notion

21:36:12   5   that Moog, with all of its alleged technologies and

21:36:17   6   secrets and file names and paths and computer servers at

21:36:23   7   its disposal, as it has been for many months, can't tell

21:36:32   8   us more in terms of what the substance of its alleged

21:36:36   9   trade secrets are which, of course, would streamline the

21:37:30   10  discovery process and let us focus on what matters.

21:37:34   11          MAGISTRATE JUDGE MCCARTHY:  Well, if they

21:37:35   12  know, I think it's undisputed that she took files,

21:37:39   13  whether the files that she took are trade secrets or not

21:37:43   14  is a separate question, but, what is the problem with

21:37:49   15  her proposal that you just -- because its got Moog

21:37:55   16  information in it, it may have Skyryse information as

21:37:59   17  well, but that is the type of information that you give

21:38:01   18  to IDS.  So what is the problem, aside from a privilege

21:38:06   19  issue, of just allowing Moog then to look at what's with

21:38:11   20  IDS, and then tell you, okay, we don't care about X, Y

21:38:16   21  and Z, but A, B and C are of concern to us?

21:38:20   22          MR. GROSS:  I understand the question, I

21:38:21   23  think, your Honor, and it's a fair one, but the problem,

21:38:23   24  I think, is that waiting for them to have gone through

21:38:28   25  everything in IDS's possession, which you have granted

1          MOOG, INC VS. SKYRYSE, INC. ET AL.

21:38:31  2   them the right to do, while, at the same time, demanding

21:38:35  3   that Skyryse turn over all discovery out of its 30

21:38:39  4   million files and 7 terabytes of data without having

21:38:44  5   some guidance from the Plaintiff who knows what its

21:38:50  6   actual trade secrets are, creates a real

21:38:52  7   disproportionate burden and a cart/horse problem.  Even

21:39:00  8   before Moog reviews the information in IDS's possession,

21:39:03  9   it knows what it knows about its trade secrets and it

21:39:06  10  could be providing an identification with specificity

21:39:10  11  about what those trade secrets are.  Maybe it would need

21:39:16  12  to amend that after it looks through everything that is

21:42:24  13  in IDS's possession, and we can handle those amendments

21:43:43  14  and supplements as necessary.  That is the way discovery

21:43:46  15  works.  But for it to sit here and say as it has -- we

21:43:52  16  don't know what the trade secrets are, but you go turn

21:43:56  17  over all your discovery to us, really creates this

21:44:00  18  cart/horse problem and a disproportionate burden.

21:44:05  19          MS. ANDOH:  Your Honor, we absolutely have

21:44:09  20  not said that.  I mean, our complaint, and the

21:44:12  21  attachment to our complaint and our preliminary

21:44:15  22  injunction papers provide substantial guidance and we

21:44:18  23  provided additional substantial guidance.  Again, the

21:44:21  24  cart/horse problem here, I think, from our perspective,

21:44:24  25  is Defendant's position, which is that somehow or

1          MOOG, INC VS. SKYRYSE, INC. ET AL.

21:44:27   2  another we should be in a position to give them a full

21:44:30   3  identification of trade secrets when their employees

21:44:33   4  intentionally deleted the files that they took and

21:44:36   5  covered up their tracks after they were taken.  And, you

21:44:39   6  know, your Honor, I mean, with respect to the volume of

21:44:42   7  material, you know, it's not that I'm not without

21:44:45   8  sympathy.  I don't think any lawyer relishes having to

21:44:51   9  go through millions of files, but, again, it's also not

21:44:57  10  our fault that their employees took one point -- almost

21:45:01  11  4 million files that we're aware of sitting here today

21:45:04  12  with them.  The volume problem was created by

21:45:07  13  Defendant's conduct.  The problem here is not created by

21:45:11  14  Moog's inability to sufficiently identify its trade

21:45:15  15  secrets.  It's the conduct of Defendants that is causing

21:45:17  16  the volume problem.

21:45:18  17          And I just want to go back again and point

21:45:20  18  out that when we filed this case, Defendants claim that

21:45:24  19  they could identify non-public Moog information and turn

21:45:28  20  all of it over within three weeks of the date of the

21:45:31  21  stipulated order.  March 11th was the date of the order

21:45:34  22  and April 1 was the turnover date.  They certified to us

21:45:41  23  on April 1st that they had, in fact, identified all

21:45:48  24  non-public information and turned it over to IDS, and

21:45:50  25  now, two months later, we're still not hearing, after

1          MOOG, INC VS. SKYRYSE, INC. ET AL.

21:45:54   2   finding out or, what is it, less than a month later,

21:45:58   3   that they were wrong about that.  We've had additional

21:46:02   4   turnovers to IDS, we're still waiting to hear that they

21:46:11   5   are actually done identifying non-public information.

21:46:17   6   And, I think, you know, to some degree, the problem here

21:46:23   7   is that we're basically being told, well, now, well, we

21:46:28   8   can't comply with the March 11th order because you have

21:46:32   9   to tell us exactly what we took and used, which,

21:46:35   10  obviously, we can't, absent discovery.

21:46:38   11          Frankly, your Honor, to some degree, I think

21:46:40   12  that what probably makes the most sense at this point,

21:46:44   13  because it feels like this issue just sort of keeps

21:46:48   14  coming up again and again and again, I think as a

21:46:51   15  starting point, let's get us access to the images in IDS

21:46:56   16  so we can start looking at this stuff and we can start

21:46:59   17  getting a more detailed level of description around the

21:47:02   18  files that were taken and the files we assert are trade

21:47:05   19  secret of those files and we get a chance to look at the

21:47:08   20  actual evidence that has been turned over.  And no one

21:47:12   21  is saying that we're going to wait until October 16th to

21:47:16   22  give them an identification of trade secrets.  But I

21:47:19   23  also think that this is, to some degree, of a little bit

21:47:23   24  of a side show with respect to the discovery deadlines.

21:47:27   25  Because the question of their compliance with the March

MOOG, INC VS. SKYRYSE, INC. ET AL.

11th order is a separate order and a separate set of
issues than whether the document demands that the sides
have issued to each other and interrogatories and RFAs
and depositions take place before the August 25th
deadline that everybody has agreed should be in place
and the October 17 hearing date that everybody has
agreed should be in place.  I think we just need to work
backwards from those dates that everybody has agreed to.
Impose dates and then, and then, to the extent we want
to have a continuing fight over this March 11th order,
we can raise it separately to your Honor as either a
motion to compel, whatever structure makes the most
sense, but I think, to some degree, it's
overcomplicating things, but I think the real starting
point here is getting some actual deadlines for the
materials that are already with the neutral vendor.  And
then, to the extent that we can't get actual resolution
on the disclosures that we've been promised since April
26th and haven't received yet, with respect to the
spoliation and use issues, we will be back to your Honor
with that and we will -- we will proceed accordingly.

MAGISTRATE JUDGE MCCARTHY:  All right.  Let
me go back for a minute to the area that it seems like
the parties have reached agreement on, which is that

                        MOOG, INC VS. SKYRYSE, INC. ET AL.

21:49:00  2   Skyryse will hold back for now roughly 15,000 files to

21:49:08  3   complete their privilege review.  The individual

21:49:11  4   Defendants will hold back a lesser number to complete

21:49:15  5   their privilege review.  Everything else will be,

21:49:18  6   provided that IDS has the capability of doing so, the

21:49:24  7   remainder of the documents in IDS's possession currently

21:49:30  8   will be made available to Moog.  Is that something that

21:49:34  9   everybody agrees on?

21:49:36  10              MR. GROSS:  I think we have agreement on

21:49:37  11  that, your Honor.

21:49:38  12              MS. ANDOH:  We do, your Honor.

21:49:39  13              MR. GROSS:  And I do appreciate the

21:49:40  14  qualification that you just mentioned, that it is

21:49:43  15  pending IDS's technical capability to segregate the

21:49:48  16  information, which I don't expect will be a problem, but

21:49:52  17  we have to confirm that.

21:49:53  18              MS. ANDOH:  And, your Honor, we're willing

21:49:55  19  to agree that IDS can provide us with the information on

21:50:00  20  a rolling basis since there are multiple devices

21:50:03  21  involved, so, I think --

21:50:05  22              MAGISTRATE JUDGE MCCARTHY:  All right.

21:50:06  23              MR. TRUITT:  And just to touch in on

21:50:08  24  practicalities of this, we feel, at least at the bare

21:50:12  25  minimum --

1          MOOG, INC VS. SKYRYSE, INC. ET AL.

21:50:12    2          MAGISTRATE JUDGE MCCARTHY:  I'm sorry.

21:50:14    3          MR. TRUITT:  This is Alex Truitt for the

21:50:16    4  individual Defendants.

21:50:16    5          MAGISTRATE JUDGE MCCARTHY:  Okay.

21:50:17    6          MR. TRUITT:  We have the lion's share of the

21:50:20    7  devices that have been submitted to IDAS, and, at the

21:50:24    8  bare minimum, we should at least be able to identify,

21:50:27    9  with a good degree of specificity, the devices which we

21:50:30   10  believe there is absolutely no privilege information

21:50:34   11  which should be able to get a lot of this review

21:50:37   12  underway.

21:50:37   13          MAGISTRATE JUDGE MCCARTHY:  Okay.  That is

21:50:38   14  good.  And then now I've already -- we've already

21:50:42   15  discussed the fact that the scheduling order will

21:50:47   16  incorporate my definition of substantial -- "substantial

21:50:52   17  production," rather than hard deadlines.

21:50:59   18          Is there -- can we put the rest of the

21:51:02   19  issues on hold for now until we reconvene?  I know we

21:51:08   20  have a monthly meeting coming up, what, the 16th?  I can

21:51:12   21  meet with you earlier than that, too.  But let me just,

21:51:15   22  let me throw something out there for all of you, and

21:51:20   23  this is not by way of threat at all, it's just that I'm

21:51:25   24  trying to wrestle with your expectations and my

21:51:32   25  obligations, for example, I think I mentioned to you

                    MOOG, INC VS. SKYRYSE, INC. ET AL.

that every third month, I come on criminal duty, meaning

any new criminal case that comes in, comes to me.  I

have to review search warrant applications and I have to

review complaints, et cetera, and conduct arraignments,

things of that sort.  Shortly before we commenced today,

I got an e-mail from an Assistant U.S. Attorney saying

he is going to be sending over a complaint, and I just

said, well, hold your horses, because I'm not going to

interrupt this conference, so I'll talk to you later.

But, I just point that out because I want you to know, I

will do my best in working with you all, but there are

some limits on both my technical knowledge, that is

probably the greatest limit, and also my time

availability.  And I'm wondering whether we should be

considering appointing a special master to deal with

some of these things.  I just throw that out for your

consideration.  And if you say no, then fine, I'll do my

best, but we're going to be getting in areas that have,

you know, that far exhaust my technical understanding

and capabilities.  And, perhaps, if we had a somebody

with a greater technical background than a political

science major, which I was, it would be helpful to

everybody.  I throw that out for you to think about.

You don't have to answer today.  But, I would be

1          MOOG, INC VS. SKYRYSE, INC. ET AL.

21:53:08    2    interested in at least your preliminary reactions to

21:53:13    3    that.

21:53:14    4          MR. GROSS:  Sure.  This is Mr. Gross for

21:53:16    5    Skyryse.  Preliminarily, it's intriguing and certainly

21:53:23    6    something we would be happy to talk to our client about.

21:53:28    7    And we'll be happy to meet and confer with the other

21:53:31    8    party's counsel on it.  I think it's something that

21:53:33    9    could be useful in a case like this.

21:53:37   10          MS. ANDOH:  Yes, your Honor.

21:53:38   11          MAGISTRATE JUDGE MCCARTHY:  Bearing in mind

21:53:39   12    there is an expense.  I work for free for you the

21:53:42   13    taxpayer, but if we get into a special master, there

21:53:48   14    could be expense involved, but, the benefits might make

21:53:53   15    up for any expense.

21:53:55   16          MS. ANDOH:  Your Honor, I think, I think,

21:53:57   17    we're also interested in discussing it with our client.

21:54:00   18    I think there are a lot of things about that proposal

21:54:03   19    that makes sense.  I think the one concern we have, if

21:54:06   20    it becomes a second gate keeper to your Honor, if we

21:54:09   21    really need to have a decision made and it actually

21:54:12   22    creates more delay in the end because of the additional

21:54:15   23    process of sort of having to go through that additional

21:54:17   24    filter.  But having said that, I think, you know,

21:54:20   25    obviously, this case is a case that has a lot of

1          MOOG, INC VS. SKYRYSE, INC. ET AL.

21:54:23   2    different moving pieces, and it could be really helpful

21:54:26   3    to have additional assistance.  So, we're happy to go

21:54:30   4    ahead and discuss that with the client and get --

21:54:33   5          MAGISTRATE JUDGE MCCARTHY:  Just consider

21:54:33   6    it, because, obviously, I don't have anybody in mind.

21:54:37   7    You all might be able to agree on somebody.  But if we

21:54:42   8    go down that road, that person, I presume, could devote

21:54:48   9    as much time as needed to the intricacies to this case,

21:54:53   10   whereas my availability is going to be a little less.

21:54:55   11   And, perhaps, even more importantly, my understanding of

21:54:59   12   some of the issues.  I'm doing my best.  But, so, yeah,

21:55:03   13   just think about that.  We don't need to decide that

21:55:06   14   today, obviously.  And I know there are a lot of things

21:55:10   15   that you just need a decision on, I understand that and

21:55:14   16   that is why, you know, but it's very important to me and

21:55:19   17   to you that, as much as possible, my decision be the

21:55:23   18   correct one.

21:55:24   19          So, in any event, back to my, my proposal or

21:55:30   20   inquiry of a couple minutes ago.  Can we go with what

21:55:37   21   we've agreed on now and reconvene at a date that you

21:55:40   22   want to talk about the remainder?  So, a couple of

21:55:45   23   global things, my understanding, first of all, Moog is

21:55:48   24   reserving its rights to argue that the March 11th order

21:55:53   25   has been violated; and Skyryse reserves its right to

1          MOOG, INC VS. SKYRYSE, INC. ET AL.

21:55:57    2   argue that it has not.  The privilege review would

21:56:05    3   continue, but not to be -- it's not to be completed by

21:56:11    4   June 2nd, it would be completed by June 24th, provided

21:56:15    5   that the files, other than those 15,000 for Skyryse or

21:56:24    6   fewer than that for the individual Defendants, would be

21:56:26    7   made available to Moog as soon as IDS is able to do so.

21:56:32    8   Is that -- does that kind of summarize where we've been

21:56:35    9   at today?

21:56:36   10          MS. ANDOH:  That is my understanding with

21:56:38   11   one addition, which is that we still need a document

21:56:41   12   production deadline, which is separate from this

21:56:45   13   privilege review and image deadline.  In other words,

21:56:47   14   the parties have also engaged in what I'm going to call

21:56:54   15   standard RFP practice, and there needs to be a deadline

21:57:01   16   set for the parties to exchange documents.

21:57:04   17          MAGISTRATE JUDGE MCCARTHY:  Okay.  And I

21:57:05   18   apologize.  What deadlines have the parties respectfully

21:57:09   19   suggested?

21:57:09   20          MS. ANDOH:  So Moog suggested tomorrow, June

21:57:13   21   2nd, understanding that, given the timing of this

21:57:16   22   hearing, that that may not be practicable, but the idea

21:57:20   23   here is not to have any further delay.  The original

21:57:23   24   document turnover deadline that was stipulated in the

21:57:25   25   original discovery order in this case was, I believe,

                    MOOG, INC VS. SKYRYSE, INC. ET AL.

21:57:28   2   April 26th.

21:57:30   3                    MAGISTRATE JUDGE MCCARTHY:  All right.  Mr.

21:57:31   4   Gross?

21:57:33   5                    MR. GROSS:  Your Honor, I think we are

21:57:35   6   prepared to make a substantial production tomorrow, June

21:57:38   7   2nd, and this was in part --

21:57:40   8                    MAGISTRATE JUDGE MCCARTHY:  I knew I

21:57:41   9   shouldn't have said that.

21:57:42   10                    MR. GROSS:  No, no, I think it's good news

21:57:44   11   for everyone.  We're prepared to do it and it was, in

21:57:50   12   part, dependent on your Honor's tentative ruling that

21:59:15   13   the production be substantially complete, understanding

21:59:18   14   that discovery is going to be continue beyond June 2nd.

21:59:22   15                    MAGISTRATE JUDGE MCCARTHY:  All right.  Then

21:59:23   16   let's go with that.  And if Moog is pleased with what it

21:59:26   17   gets, that is great.  And if not, then we'll have the

21:59:29   18   issue of whether, in fact, the production was

21:59:33   19   substantial.

21:59:34   20                    MS. ANDOH:  Well, your Honor, hopefully

21:59:37   21   we'll be able to (inaudible) you, but we're not sure.

21:59:43   22                    MAGISTRATE JUDGE MCCARTHY:  All right.  What

21:59:45   23   I would suggest as in with all of these conferences,

21:59:50   24   it's recorded, I would suggest that somebody ask for a

21:59:53   25   transcript just so we have a record of what was said in

                    1              MOOG, INC VS. SKYRYSE, INC. ET AL.
21:59:56    2    all of our conferences down the road.  I would also
22:00:00    3    suggest that the parties try to submit to me a
22:00:05    4    stipulation encompassing what we have agreed on today
22:00:08    5    and we'll take it from there.
22:00:11    6              MR. GROSS:  Thank you, your Honor.  And I
22:00:12    7    will just note, I don't think there is any argument on
22:00:15    8    this, but I will note for the record that these
22:00:17    9    substantial completion deadlines that I think we're in
22:00:20   10    general agreement on, they apply to both parties and
22:00:22   11    Moog has committed to producing documents to us as well.
22:00:26   12    These are not unilateral, it is expected completion from
22:00:30   13    both sides.
22:00:31   14              MAGISTRATE JUDGE MCCARTHY:  Absolutely,
22:00:32   15    absolutely.
22:00:33   16              Now, we are next scheduled to get together
22:00:36   17    on June 16th at 4 p.m., but if the parties want to meet
22:00:44   18    with me in advance of that date, just let me know and
22:00:49   19    we'll set something up, okay?
22:00:52   20              MS. ANDOH:  Thank you, your Honor.  I think
22:00:53   21    that -- I think what we may choose to do, just speaking
22:00:57   22    for Plaintiff, to the extent that we've gotten anything
22:01:01   23    that we believe everybody is in at an impasse on, we
22:01:06   24    might take your Honor up on filing a motion ahead of the
22:01:10   25    hearing so that way when we reconvene, your Honor has

1                MOOG, INC VS. SKYRYSE, INC. ET AL.

22:01:15    2    the party's position in writing.

22:01:17    3                MAGISTRATE JUDGE MCCARTHY:  That's fine,

22:01:18    4    that's fine.  As I said before, I prefer the informal

22:01:23    5    approach with correspondence in advance of the

22:01:26    6    conference, and I understand that is sometimes counter

22:01:29    7    productive.  But I would, short of a motion, which you

22:01:33    8    can file, if you want, but I also, we discussed

22:01:36    9    previously that in advance of the -- of any of our

22:01:41   10    monthly conferences, you send me a letter just updating

22:01:44   11    me on where things stand and what is -- what are the

22:01:49   12    topics for discussion at that particular conference so I

22:01:53   13    can kind of hit the ground running, okay?

22:01:58   14                MR. GROSS:  Understood, your Honor.  We'll

22:01:59   15    be in touch with you.  And I just want to note, while I

22:02:01   16    hope we will resolve a lot of our disputes through

22:02:06   17    meeting and conferring in good faith, there may be some

22:02:45   18    we come back to you on, and I would just ask that if

22:02:49   19    they require full briefing, we don't let the monthly

22:02:55   20    status conferences turn into pre-hearing, hearing, that

22:03:04   21    each side has had the opportunity to be heard through

22:03:07   22    briefing.

22:03:07   23                MAGISTRATE JUDGE MCCARTHY:  I agree.  If I

22:03:08   24    find, and this would not be anybody's fault, but if I

22:03:11   25    conclude that these informal conferences are not really

MOOG, INC VS. SKYRYSE, INC. ET AL.

22:03:15  2   serving a purpose, then we'll go in a different

22:03:18  3   direction.  But I did in, I think I mentioned, you know,

22:03:23  4   I had five patent cases involving the same patents and

22:03:29  5   the same Plaintiffs and different Defendants, and we,

22:03:31  6   just to keep from getting inundated, we went to the

22:03:37  7   monthly meeting protocol and had a good deal of success

22:03:43  8   in forestalling a ton of motions, not complete success,

22:03:48  9   but some success.  And I'm happy to say, those cases are

22:03:52  10  all now settled.  So, in any event, happy June everybody

22:03:58  11  and we will be in touch.

12            MR. GROSS:  Thank you, your Honor.

22:04:02  13            MR. TRUITT:  Thank you, your Honor.

22:04:03  14            MS. ANDOH:  Thank you, your Honor.

22:04:03  15            MAGISTRATE JUDGE MCCARTHY:  Okay.  Take

22:04:04  16  care.

17                         *    *    *

18                  CERTIFICATE OF REPORTER

19

20     I certify that the foregoing is a correct transcript

21  of the record to the best of my ability of proceedings

22  transcribed from the audio in the above-entitled matter.

23

24  S/ Karen J. Clark,   RPR

25  Official Court Reporter