# EXHIBIT D

**From:** Kazim Naqvi
**Sent:** Wednesday, June 29, 2022 7:56 PM
**To:** 'Ryan.Banks@lw.com' <Ryan.Banks@lw.com>; Kelley.Storey@lw.com; Cassandra.Baloga@lw.com; Lai Yip <LYip@sheppardmullin.com>; Travis Anderson <TAnderson@sheppardmullin.com>; Rena Andoh <RAndoh@sheppardmullin.com>; Tyler Baker <TBaker@sheppardmullin.com>; RFluskey@hodgsonruss.com; MSubjeck@hodgsonruss.com; PMuto@hodgsonruss.com; rdutta@hodgsonruss.com
**Cc:** truitt.a@wssllp.com; green.a@wssllp.com; SKYRYSEMOOG.LWTEAM@lw.com; tflynn@harrisbeach.com
**Subject:** RE: Moog v. Skyryse, No. 22-cv-187 (W.D.N.Y.)

Ryan:

Thank you for explaining Skyryse's position, however we disagree with each of your points which I address in turn.

Skyryse's citations to Dkt. 99, its Motion to Adopt Inspection Protocol filed before the Court ruled on the matter, highlights the issue. Moog and Skyryse asked the Court to adopt their respective inspection protocols. The Court entered Moog's. Skyryse is now just overriding the Court's decision, claiming that its objections to Moog's protocols were not addressed. That was Judge McCarthy's decision. So, Skyryse's statement that "Moog can only blame itself for its reluctance to heed Skyryse's warning and nonetheless pursue the iDS Addendum without adequately addressing the production of source code" is in fact directed towards Judge McCarthy. Skyryse cannot, nearly two months later, complain about the fact that Judge McCarthy entered Moog's protocol over Skyryse's. If Skyryse maintained legitimate objections to Moog's Inspection Protocol as entered by the Court, why did it not immediately raise those issues to Moog and the Court, especially when it had responsive source code to turn over before the June 2 production deadline?

Second, Skyryse's admission that it has produced certain source code to iDS in response to the March 11 Order shows on its face why a separate protocol is not necessary. Why would it be proper for the Parties to review source code turned over to iDS pursuant to the provisions in the Inspection Protocol, but not to review other source code that may or may not be responsive to the March 11 Order? There is already an extremely detailed procedure in place for the parties to review all materials, including source code, that has been delivered to iDS. Skyryse has delivered source code to iDS. Why would there be two separate protocols for reviewing separate groups of source code. This makes no sense. Similarly, Skyryse has produced nearly 300 files designated as AEO-Source Code to Moog. This was done without the need of a separate inspection protocol

Third, the contention that Moog's Inspection protocol, entered by the Court, "fails to set forth restrictions on the access to, use of, or review of source code materials" is just not correct.  The inspection protocol is extremely restrictive, and you have simply pointed to no deficiencies in this respect in the inspection protocol.  iDS is a neutral firm that has all the capabilities to host the source code—indeed they are doing that *already*.  They have source code produced by Skyryse, and many thousands of files of Moog source code.  Having them host *all* source code review is practical, efficient, and preserves party resources, which is why the inspection protocol expressly provides for this.  Forcing the parties to set up an additional layer of inspection is totally disproportionate, unnecessary, wasteful and, it appears to us, a delay tactic.  You are even proposing that the parties be forced to inspect source code in-person, which makes no sense given that the parties have already expended significant

resources working with iDS to set up an extremely secure remote review process.  We would also note that remote review of source code has become relatively common during the pandemic.  How many files of source code is Skyryse planning to make available for inspection?  If it is a small volume, then that would only underscore the complete waste of adding an additional layer of inspection complexity to this case.

Fourth, if Skyryse wants to propose an amendment to the existing Inspection Protocol to place limits on printing (or electronic production) of source code, we are open to discussing that.  If you have other specific concerns about the Inspection Protocol, please name them and we can discuss whether an amendment is appropriate.  But to impose *another* inspection protocol in this case, that governs only certain source code files (but not others), makes no sense.

Fifth, the fact that the main Protective Order has a "HIGHLY CONFIDENTIAL – SOURCE CODE" provision that is now moot is not material.  First, we pointed out early on to Skyryse that this designation would be moot in light of our inspection protocol, so Skyryse has been aware of this all along.  See attached.  Second, the "HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL & EXPERTS' EYES ONLY" designation expressly covers source code, and you have identified nothing about that designation that is deficient.

Finally, the notion below that Ms. Yip's reasonable and common sense proposal contemplates "allowing people to simply carry their source code around from homes to offices or elsewhere" is just deliberately misconstruing the issue. As Ms. Yip explained below, and as Mr. Vaughn confirmed earlier today, there is no source code housed on the inspection laptops. The laptops are just vehicles to access iDS' review platform where the source code and other materials are stored. Per the provisions of the Inspection Protocol, all such access to the review platform is heavily secured and monitored via videoconference. Indeed, access to the source code that Skyryse has admittedly produced to iDS will occur in this manner. Ms. Yip is asking for a simple change to allow folks with the inspection laptops to access iDS' review platforms from work, office, etc. given the realities of current working environments. The fact that Skyryse cannot even agree to this proposal, to accommodate people and their working and family situations, is very unfortunate but not surprising given the litigation conduct throughout the case.

There is no need for further back and forth. We will have the Court decide this issue.

Thank you,
Kazim


**Kazim Naqvi**
**SheppardMullin** | Los Angeles
+1 424-288-5336 | ext. 15336

**From:** Ryan.Banks@lw.com <Ryan.Banks@lw.com>
**Sent:** Tuesday, June 28, 2022 10:55 PM
**To:** Kazim Naqvi <KNaqvi@sheppardmullin.com>; Kelley.Storey@lw.com; Cassandra.Baloga@lw.com; Lai Yip <LYip@sheppardmullin.com>; Travis Anderson <TAnderson@sheppardmullin.com>; Rena Andoh <RAndoh@sheppardmullin.com>; Tyler Baker <TBaker@sheppardmullin.com>; RFluskey@hodgsonruss.com; MSubjeck@hodgsonruss.com; PMuto@hodgsonruss.com; rdutta@hodgsonruss.com
**Cc:** truitt.a@wssllp.com; green.a@wssllp.com; SKYRYSEMOOG.LWTEAM@lw.com;

tflynn@harrisbeach.com
**Subject:** RE: Moog v. Skyryse, No. 22-cv-187 (W.D.N.Y.)

Kazim,

This responds to your e-mail below with regards to source code production.

Skyryse's position with respect to source code is unchanged since prior to the Court's entry of Moog's forensic protocol (Dkt. 96-2, the "iDS Addendum"). As we explained more than a month ago, Moog's protocol is both too narrow and too broad. "It is too narrow because if Moog has requests for specific source code files that are relevant and discoverable, there is no reason to think they necessarily will be found on the devices in iDS's custody rather than in another source code repository. It is too broad because even if a machine in iDS's custody has discoverable source code that Moog is interested in, this does not justify an expansive and unlimited search of the entire machine and all of its other irrelevant, confidential, private contents." Dkt 99-1 at 13. Moog can only blame itself for its reluctance to heed Skyryse's warning and nonetheless pursue the iDS Addendum without adequately addressing the production of source code. Skyryse made clear back in early May the same point it reiterates now: if Moog wants to review source code that is not contained on a device subject to be produced to iDS, Skyryse is happy to arrange that "the requested, relevant source code [be made] available for inspection to counsel and experts on isolated, non-networked machines, at controlled, supervised locations, with restrictions on access, printing, and note-taking." *Id*. With that in mind, despite Moog's failure to draft a source code protective order on its own, Skyryse has taken the initial burden of providing an initial draft. It is attached for your review.

To be clear, the scope of the iDS Addendum is unambiguously defined on the very first page of the Addendum to encompass only "material that is made available for inspection through iDiscovery," not "all source code productions in the case" as you represent below. Dkt 96-2 at 1. In accordance with the March 11 Order, the only material that needs be turned over to iDS for inspection is "non-public information . . . belonging to Plaintiff" that "necessarily includes property of any Defendant." Dkt. 25 at 2. While Skyryse has produced the source code and other materials that meet this definition, Plaintiffs' near-unbounded requests for Skyryse's source code simply do not meet that definition, and therefore are not covered by the iDS Addendum.

Moreover, the need for a source code protective order is evident from the Court's original protective order. Dkt. 89. There, the protective order sets forth a category of protection for "HIGHLY CONFIDENTIAL – SOURCE CODE" Material, but fails to set forth restrictions on the access to, use of, or review of source code materials. *Id.* Instead, the original protective order explicitly left that out to be defined in a later source code protective order. The iDS Addendum likewise fails to account for or provide restrictions on "HIGHLY CONFIDENTIAL – SOURCE CODE" Material, again signifying the clear need for an additional source code protective order.

Finally, production of all source code through iDS would result in inadequate protection for Skyryse's source code. For example, the iDS Addendum fails to set forth any cumulative or consecutive page limit restrictions for printing source code, despite this customary practice being nearly universally adopted in intellectual property cases. If Skyryse were to produce its source code to iDS (despite no requirement from the March 11 Order or iDS Addendum to do so), under the iDS Addendum, Moog could request Skyryse's entire source code production be printed and shipped to Moog wholesale. Skyryse's only potential remediation would be to petition the Court and challenge the production wherein, per the iDS

Addendum, it would be Skyryse's burden to show Moog's overreach.  This is backwards.  Such an unreasonable request should be presumptively overreaching, with it being Moog's burden to demonstrate why it is not overreaching.  Any standard source code protocol would not allow for such impermissible overreach.

As another example, Ms. Yip's June 27 email requests amending the iDS Addendum to allow for the review of iDS materials, including source code, at home with the ability to "take the inspection laptop elsewhere via hand carry."  While we may be willing to agree to some compromise with respect to the files currently in iDS's custody, this is insufficient to adequately protect all source code. While there may be certain security mechanisms in place on the laptops, a tech company's source code is often one of its most valuable assets and requires the utmost protections. And we cannot imagine that either Skyryse or Moog will be willing to accept the risk associated with allowing people to simply carry their source code around from homes to offices or elsewhere, when such source code would be kept in secure repositories in an office in the ordinary course of business. Therefore in response to Ms. Yip's email, we cannot agree to Moog's proposal to the extent that Moog is attempting to apply it to source code review and instead propose that the review of source code the parties make available for inspection directly to each other be done on-site with in-office review and appropriate security restrictions, as is commonplace in IP cases involving the discovery and inspection of source code.

Best,
Ryan


**From:** Kazim Naqvi <KNaqvi@sheppardmullin.com>
**Sent:** Friday, June 24, 2022 7:04 PM
**To:** Storey, Kelley (DC) <Kelley.Storey@lw.com>; Baloga, Cassandra (NY) <Cassandra.Baloga@lw.com>; Lai Yip <LYip@sheppardmullin.com>; Travis Anderson <TAnderson@sheppardmullin.com>; Rena Andoh <RAndoh@sheppardmullin.com>; Tyler Baker <TBaker@sheppardmullin.com>; RFluskey@hodgsonruss.com; MSubjeck@hodgsonruss.com; PMuto@hodgsonruss.com; rdutta@hodgsonruss.com
**Cc:** truitt.a@wssllp.com; green.a@wssllp.com; #C-M SKYRYSE - MOOG - LW TEAM <SKYRYSEMOOG.LWTEAM@lw.com>; tflynn@harrisbeach.com
**Subject:** RE: Moog v. Skyryse, No. 22-cv-187 (W.D.N.Y.)

Kelley:

This responds to your e-mail below.

**Source Code Production**

Skyryse's position is confounding. First, the e-mail correspondence between our firm and Gibson Dunn, the language of the Inspection Protocol itself, and the fact that the Inspection Protocol was entered six weeks ago demonstrates that the Inspection Protocol was to govern the production and review of ***all source code productions in the case***, and that iDS would be the vehicle for such review. Second, the timing of Skyryse's claim that a separate addendum for source code review between the parties is required speaks for itself. Why was this issue not raised well before Skyryse's June 2 production deadline, when it is the party with responsive source code to produce? Why did Skyryse not seek clarification after Judge McCarthy entered the Inspection Protocol on May 13? Finally, the e-mail below

does not explain in any manner how the Inspection Protocol already entered by the Court is insufficient for the inspection of source code as a practical matter. Skyryse does not identify anything insufficient about the parties producing source code to iDS, having them host the code (along with all the other devices and data it has received), and remotely reviewing the source code through the inspection laptops, per all the built-in protections of the existing Inspection Protocol. There is no reason, and Skyryse certainly does not identify one, to add a separate, additional, and unnecessary layer of complexity to this case and treat source code productions between parties differently. This only serves to delay proceedings even further. The e-mail below also does not offer any proposal or reasoning why a separate addendum is required.

We will raise this issue with Judge McCarthy immediately, and are confident that he will see this delay tactic for what it is.

**Moog RFPs Nos. 8-10**

The e-mail below states: "Moog now states that flight control software is equivalent to all of Skyryse's software, which creates the same over-breadth problems we previously identified." But, Skyryse has not identified any over-breadth problems. Our June 16 e-mail expressly asked Skyryse for any information to substantiate any overbreadth concerns. We asked Skyryse to advise if it develops any software or hardware unrelated to flight control. We have not heard any response. Skyryse also has not substantiated any purported burden as required by, for example, identifying the volume of source code at issue. Moog's understanding, until and unless Skyryse shows otherwise, is that all of Skyryse's software and hardware relates to flight control and therefore is responsive to RFPs Nos. 8-10.

For RFP No. 8, Skyryse represents that it has produced two source code repositories. As an initial matter, we do not believe that what Skyryse has produced, based on the descriptions provided, are source code "repositories," but we will confirm upon obtaining access through the inspection laptops. In any event, what Skyryse has produced does not cover the documents responsive to this request. RFP No. 8, as narrowed, seeks "Documents sufficient to show the structure of Skyryse's shared networks, software databases, internal data servers for flight control software, and the access of Former Moog Employees thereto." The source code documents Skyryse claims it has produced does not comply with RFP No. 8. We will move to compel.

Regarding RFP No. 9, the e-mail below does not address it whatsoever. Skyryse to date has only agreed to produce "documents and communications sufficient to show Source Code and software planning Documents, to the extent we understand those requests." RFP No. 9 does not ask for documents "sufficient to show," and Moog is entitled to review all of Skyryse's flight control source code and software planning documents, especially given Skyryse's failure to demonstrate it has any source code unrelated to flight control. Skyryse has not agreed to produce any of the other requested documents. We will move to compel.

Regarding RFP No. 10, we appreciate that the production of two purported "source code repositories" (if that is what they are) are possibly responsive to some portions of this request. But, RFP No. 10 seeks the production of "*All* deletion logs and versioning logs from Skyryse's software versioning and revision control systems, test tools, and software function names used in connection with its flight control software." Skyryse has not agreed to produce all non-privileged responsive documents. We will move to compel.

**Moog RFP No. 5**

Skyryse claims it has "substantially completed production of such documents on June 2." This indicates that the production is not complete. Please advise if there are any additional responsive documents to be produced and, if so, when they will be produced.

Thank you,
Kazim

**Kazim Naqvi**
**SheppardMullin** | Los Angeles
+1 424-288-5336 | ext. 15336

**From:** Kelley.Storey@lw.com <Kelley.Storey@lw.com>
**Sent:** Friday, June 24, 2022 11:22 AM
**To:** Kazim Naqvi <KNaqvi@sheppardmullin.com>; Cassandra.Baloga@lw.com; Lai Yip <LYip@sheppardmullin.com>; Travis Anderson <TAnderson@sheppardmullin.com>; Rena Andoh <RAndoh@sheppardmullin.com>; Tyler Baker <TBaker@sheppardmullin.com>; RFluskey@hodgsonruss.com; MSubjeck@hodgsonruss.com; PMuto@hodgsonruss.com; rdutta@hodgsonruss.com
**Cc:** truitt.a@wssllp.com; green.a@wssllp.com; SKYRYSEMOOG.LWTEAM@lw.com; tflynn@harrisbeach.com
**Subject:** RE: Moog v. Skyryse, No. 22-cv-187 (W.D.N.Y.)

Kazim,

We write in response to your June 7 and 22 emails.

Moog once again misrepresents the Court's orders and discovery history of this case.  The Court ***has not***, as you claim, entered any order amending or adding to the provisionally entered Protective Order that would govern the production and review of source code in this action.  In fact, Section 8.1 of the provisionally entered May 6, 2022 Protective Order (ECF 89) states that the "parties are discussing protocols pertaining to Source Code and will address these protocols in an addendum to be submitted to the Court."  While Moog later submitted an Addendum to the Protective Order (ECF 96-2) that governs "Discovery Material that is made available for inspection through neutral forensic vendor iDiscovery" and "add[s] a new confidentiality designation, i.e., 'HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL & EXPERTS' EYES ONLY,'" that Addendum ***does not*** include any provisions directed to the review of source code (except for any that may be delivered to iDS), including for example any provisions describing how, when, and where the parties' experts can review source code and under what circumstances.

As you know, such source code review procedures are commonplace in intellectual property cases like this, involving computer technology and requiring discovery of source code.  Both of our firms undoubtedly have numerous examples of such protective orders addressing this issue from other trade secret or patent matters, and in the absence of a proposal from Moog, we are happy to propose a procedure that is suitable to this case to help push the discovery process forward. To the extent Moog

claims to have been prejudiced by not yet receiving Skyryse's source code, that prejudice is of Moog's own making, including its failure to even propose or discuss a source code review procedure with Skyryse to this point, or to include one in its Addendum.

Beyond that, Moog's demand that Skyryse immediately produce its source code is premature given the parties are still negotiating the parameters of Moog's overbroad RFPs.  Specifically, for RFP Nos. 8-10, the parties have not yet agreed upon a definition of "flight control software," despite Moog previously acknowledging that its proposed definition was too broad and agreeing to narrow the scope of its request.  But Moog now states that flight control software is equivalent to all of Skyryse's software, which creates the same over-breadth problems we previously identified.  Nonetheless, and despite the lack of clarity from Moog, and subject to its objections, Skyryse has already produced two source code repositories to iDS that might contain information that Moog may allege reflects its trade secrets, solely because they contain "hits" on Moog's unreliable and overly broad search terms, and thus might be potentially relevant to the parties' claims and defenses in this action.

In addition, for RFP No. 10, we appreciate your acknowledgment that software function names are likely to have been included in Skyryse's source code productions.  We also appreciate your clarification as to the information Moog seeks with this request.  The production of the two source code repositories to iDS included deletion logs and versioning from software versioning control systems, deletion logs and versioning from test tools, and software function names that are maintained in the ordinary course of business.

To the extent Skyryse produces any additional responsive source code, it will do so according to the provisions of a protective order that governs the production and review of source code in discovery in this action, by both sides.

We also separately respond to the outstanding issues identified in your June 7 email relating to Moog's other RFPs:

Skyryse confirms that for RFP Nos. 1, 3, 4, and 11, it is not withholding non-privileged responsive documents subject to its objections.

For RFP No. 5, Skyryse conducted a diligent search of documents in its possession, custody, and control for the term "Moog," and substantially completed production of such documents on June 2. Skyryse reserves the right to supplement its production in the event additional responsive documents are located.

For RFP No. 6, Skyryse has produced non-privileged, responsive documents maintained in the ordinary course of business in its possession, custody, or control that could be reasonably located and made available upon a diligent search, to the extent they exist. Skyryse reserves the right to supplement its production in the event additional responsive documents are located.


Best,
Kelley

**Kelley Storey**
Pronouns: she/her/hers

**LATHAM & WATKINS** LLP
555 Eleventh Street, NW | Suite 1000 | Washington, D.C. 20004-1304
D: +1.202.637.2317


**From:** Kazim Naqvi <KNaqvi@sheppardmullin.com>
**Sent:** Wednesday, June 22, 2022 7:58 PM
**To:** Baloga, Cassandra (NY) <Cassandra.Baloga@lw.com>; Lai Yip <LYip@sheppardmullin.com>; Travis Anderson <TAnderson@sheppardmullin.com>; Rena Andoh <RAndoh@sheppardmullin.com>; Tyler Baker <TBaker@sheppardmullin.com>; RFluskey@hodgsonruss.com; MSubjeck@hodgsonruss.com; PMuto@hodgsonruss.com; rdutta@hodgsonruss.com
**Cc:** truitt.a@wssllp.com; green.a@wssllp.com; #C-M SKYRYSE - MOOG - LW TEAM <SKYRYSEMOOG.LWTEAM@lw.com>; tflynn@harrisbeach.com
**Subject:** RE: Moog v. Skyryse, No. 22-cv-187 (W.D.N.Y.)

Counsel:

Skyryse's response as to Interrogatory No. 1 is troubling. The Court already entered a protective order governing the production of source code on May 13, when it approved Moog's proposed Inspection Protocol (ECF Nos. 96, 96-02, 109). The Inspection Protocol is titled as "ADDENDUM TO PROTECTIVE ORDER" and expressly states in the first paragraph that it is intended to "add a new confidentiality designation, i.e., 'HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL & EXPERTS' EYES ONLY,' which would cover Source Code and other documents as further addressed below. This Addendum shall be considered part of the Protective Order as if it were fully incorporated therein."

The main provisions governing source code are I.1 and VIII, although there are provisions related to source code throughout the Inspection Protocol. The Source Code responsive to Interrogatory No. 1 should have been produced on June 2. Please produce it to iDS immediately. Moog reserves all rights regarding Skyryse's failure to turn over this Source Code by June 2.

Regarding Interrogatory No. 3, Skyryse's counsel unambiguously stated during the June 16 conference that it has supplemented every interrogatory that it feels needs supplementation, and no further supplementation was forthcoming. Now, Skyryse is indicating it will further supplement its response at least to Interrogatory No. 3 "in the coming week." Please serve all of Skyryse's further supplemental responses by this Friday. If Skyryse intends to serve the supplemental responses after Friday, please confirm that Skyryse agrees that Moog's deadline to move to compel regarding issues related to the further supplemental responses will be continued to 7 days after receipt of the supplemental responses. This is the same proposal we offered you in connection with Moog's re-production of the chat messages.

Thank you,
Kazim


**Kazim Naqvi**
**Sheppard**Mullin | Los Angeles
+1 424-288-5336 | ext. 15336

**From:** Cassandra.Baloga@lw.com <Cassandra.Baloga@lw.com>
**Sent:** Wednesday, June 22, 2022 4:14 PM
**To:** Kazim Naqvi <KNaqvi@sheppardmullin.com>; Lai Yip <LYip@sheppardmullin.com>; Travis Anderson <TAnderson@sheppardmullin.com>; Rena Andoh <RAndoh@sheppardmullin.com>; Tyler Baker <TBaker@sheppardmullin.com>; RFluskey@hodgsonruss.com; MSubjeck@hodgsonruss.com; PMuto@hodgsonruss.com; rdutta@hodgsonruss.com
**Cc:** truitt.a@wssllp.com; green.a@wssllp.com; SKYRYSEMOOG.LWTEAM@lw.com; tflynn@harrisbeach.com
**Subject:** RE: Moog v. Skyryse, No. 22-cv-187 (W.D.N.Y.)

Kazim,

We write in response to your June 15 email.

*AEO Designations* – Skyryse disagrees with the assertion that the confidentiality designations for its Interrogatory and RFA responses were improper. In any event, and in the spirit of resolving this issue, Skyryse agrees to re-designate those responses as Confidential under the Protective Order.

*Interrogatory Verification* – As discussed with Judge McCarthy, Skyryse is planning to verify its supplemental interrogatory responses by this Friday, June 24, 2022.

*Interrogatory No. 1* – Skyryse plans to produce documents responsive to the remainder of Interrogatory No. 1 pursuant to Rule 33(d). However, because that Interrogatory calls for the production of source code, Skyryse cannot produce that material until the Court has entered a protective order relating to the production of source code. Skyryse will make its production after such a protective order has been entered.

*Interrogatory No 3* – Skyryse disagrees with your mischaracterization of the statements in its Opposition to Moog's Motion to Compel (ECF 156), including the claim that Skyryse's opposition identified several groups of Moog Confidential Information on Skyryse's systems. As we have explained to you a number of times, Skyryse's delivery of devices or files to iDS out of an abundance of caution in no way means Skyryse has actually identified evidence that those devices or files actually contain Moog's allegedly confidential information. In any event, and as explained in Skyryse's Opposition, Skyryse plans to supplement its Interrogatory responses consistent with its obligations under the Federal Rules, including by supplementing Interrogatory No. 3 in the coming week.

We understand that these responses should resolve the concerns in your June 15 email but are available to discuss further if necessary.

Best,
Cassie

**Cassandra Marie Baloga**
*Pronouns: she/her/hers*

**LATHAM & WATKINS LLP**
1271 Avenue of the Americas | New York, NY 10020
D: +1.212.906.4592

**From:** Kazim Naqvi <KNaqvi@sheppardmullin.com>
**Sent:** Monday, June 20, 2022 12:56 PM
**To:** Baloga, Cassandra (NY) <Cassandra.Baloga@lw.com>; Lai Yip <LYip@sheppardmullin.com>; Travis Anderson <TAnderson@sheppardmullin.com>; Rena Andoh <RAndoh@sheppardmullin.com>; Tyler Baker <TBaker@sheppardmullin.com>; RFluskey@hodgsonruss.com; MSubjeck@hodgsonruss.com; PMuto@hodgsonruss.com; rdutta@hodgsonruss.com
**Cc:** truitt.a@wssllp.com; green.a@wssllp.com; #C-M SKYRYSE - MOOG - LW TEAM <SKYRYSEMOOG.LWTEAM@lw.com>; tflynn@harrisbeach.com
**Subject:** RE: Moog v. Skyryse, No. 22-cv-187 (W.D.N.Y.)

Counsel:

We have not heard back from you regarding a time to meet and confer regarding the below issues, particularly the improper AEO designation pursuant to Section 5.2 of the Stipulated Protective Order. The deadline to meet and confer on that issue is Wednesday. Please provide your availability to meet and confer this afternoon or tomorrow.

Thank you,
Kazim

**Kazim Naqvi**
**SheppardMullin** | Los Angeles
+1 424-288-5336 | ext. 15336

**From:** Kazim Naqvi
**Sent:** Wednesday, June 15, 2022 10:32 AM
**To:** 'Cassandra.Baloga@lw.com' <Cassandra.Baloga@lw.com>; Lai Yip <LYip@sheppardmullin.com>; Travis Anderson <TAnderson@sheppardmullin.com>; Rena Andoh <RAndoh@sheppardmullin.com>; Tyler Baker <TBaker@sheppardmullin.com>; RFluskey@hodgsonruss.com; MSubjeck@hodgsonruss.com; PMuto@hodgsonruss.com; rdutta@hodgsonruss.com
**Cc:** truitt.a@wssllp.com; green.a@wssllp.com; SKYRYSEMOOG.LWTEAM@lw.com; tflynn@harrisbeach.com
**Subject:** RE: Moog v. Skyryse, No. 22-cv-187 (W.D.N.Y.)

Counsel:

We write to meet and confer and address several deficiencies in Skyryse's supplemental discovery responses served late last night.

**Improper AEO Designation:**

Skyryse's supplemental Interrogatory and RFA responses are both designated as AEO. This is improper. The supplemental responses do not contain any highly sensitive, proprietary, or technical information warranting AEO protection. There is no trade secret material discussed in the responses. The mere identification of current or former Skyryse employees who possessed and/or used Moog data does not constitute grounds for AEO designation. Nor does the identification of the software programs or tools used by Skyryse. Pursuant to Section 5.2 of the Stipulated Protective Order (ECF 89), we request a meet

and confer on this issue. We are generally available in the afternoon on June 17 and 20. Please provide your availability.

**Special Interrogatory Responses:**

**No Verification**

Skyryse's supplemental interrogatory responses did not contain any verification as required under Rule 33(b)(3). Please provide one immediately.

**Interrogatory No. 1**

Skyryse indicates that pursuant to Rule 33(d), Skyryse "will produce documents responsive to the remainder of this Interrogatory." Please confirm whether Skyryse has already produced such documents or, if not, provide a date certain when the documents will be produced.

**Interrogatory No. 3**

In response to Interrogatory No. 3, Skyryse identified just three laptop devices which contain Moog Confidential Information. However, in Skyryse's Opposition to Moog's Motion to Compel (ECF 156), it identified several groups of Moog Confidential Information including: 1) the "568 non-human readable files"; 2) "two source code repositories"; 3) "USB Drive"; 4) "twelve recovered files that were emptied from Alex Wang's re-cycle bin"; and 5) "twelve documents that Mr. Pilkington appears to have emailed himself that potentially contain non-public Moog information."

It appears that some or all of these groups of documents did not originate and/or were not located on the three laptops identified by Skyryse in its supplemental response. We request that Skyryse clarify its position. If any of the groups of documents identified by Skyryse on pages 22 and 23 of its Opposition filed on June 14 were not located on the three laptops identified by Skyryse, it must further supplement and correct its response to Interrogatory No. 3.

The foregoing does not cover all the deficiencies in Skyryse's supplemental responses, and we reserve the right to meet and confer and/or move to compel on other responses. As stated above, we are available in the afternoons on June 17 and 20 to discuss the foregoing issues. Please confirm your availability.

Thank you,
Kazim

**Kazim Naqvi**
**SheppardMullin** | Los Angeles
+1 424-288-5336 | ext. 15336