UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| MOOG, INC.,<br><br>               Plaintiff,<br><br>     v.<br><br>SKYRYSE, INC., ROBERT ALIN PILKINGTON, MISOOK KIM, and DOES NOS. 1-50.<br><br>               Defendants. | Civil Action No. 1:22-cv-00187-LJV-JJM<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SKYRYSE, INC.'S MOTION TO COMPEL PRODUCTION** |

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ......................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND.........................................................2

III.    LEGAL STANDARD..................................................................................................4

IV.     ARGUMENT.............................................................................................................5

      A.      Moog has impermissibly refused to produce relevant documents
          responsive to RFP Nos. 5 and 15. .............................................................5

      B.      Moog should be compelled to produce relevant documents regarding its
          automated flight programs in response to RFP No. 11.........................................10

V.      CONCLUSION.........................................................................................................13

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**CASES**

*Art & Cook, Inc. v. Haber*,
    416 F. Supp. 3d 191 (E.D.N.Y. 2017) ....................................................................................7, 9

*Broker Genius, Inc. v. Zalta*,
    280 F. Supp. 3d 495 (S.D.N.Y. 2017)......................................................................................6, 9

*Burns v. Imagine Films Ent., Inc.*,
    164 F.R.D. 589 (W.D.N.Y. 1996).................................................................................................5

*Cappetta v. GC Services Ltd. Partnership*,
    2008 WL 5377934 (E.D.Va. Dec. 24, 2008) ..............................................................................5

*Defiance Button Mach. Co. v. C & C Metal Prod. Corp.*,
    759 F.2d 1053 (2d Cir. 1985).......................................................................................................6

*State Farm Mut. Auto. Ins. Co. v. Fayda*,
    No. 14CIV9792WHPJCF, 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015) ........................4

*Herring v. Clark*,
    No. 1:05-cv-0079, 2011 WL 2433672 (E.D. Cal. June 14, 2011)...............................................4

*Mason v. Amtrust Fin. Servs., Inc.*,
    848 F. App'x 447 (2d Cir. 2021) .........................................................................................5, 6, 7

*Sanford Redmond, Inc. v. Mid-am. Dairymen, Inc.*,
    No. 85 CIV 4574 (RJV), 1992 WL 57090 (S.D.N.Y. Mar. 4, 1992) ........................................9

*Sasqua Grp., Inc. v. Courtney*,
    No. CV 10-528 ADS AKT, 2010 WL 3613855, at *19 (E.D.N.Y. Aug. 2, 2010), *report and recommendation adopted*, No. 10-CV-528 ADS ETB, 2010 WL 3702468 (E.D.N.Y. Sept. 7, 2010) ............................................................................................................................................7

*Sprint Commc'ns Co. L.P. v. Charter Commc'ns, Inc.*,
    No. 20-CV-2161-JWB-TJJ, 2020 WL 7770931 (D. Kan. Dec. 30, 2020) ................................8

*Structured Cap. Sols., LLC v. Commerzbank AG*,
    177 F. Supp. 3d 816 (S.D.N.Y. 2016).......................................................................................10

*Struthers Sci. & Int'l Corp. v. Gen. Foods Corp.*,
    51 F.R.D. 149 (D. Del. 1970) ......................................................................................................8

*Turret Labs USA, Inc. v. CargoSprint, LLC*,
    No. 21-952, 2022 WL 701161 (2d Cir. Mar. 9, 2022)...........................................................5, 8

**STATUTES**

18 U.S.C. § 1839(3) ....................................................................................................................................1

**RULES**

Fed. R. Civ. P. 26(b)(1)...............................................................................................................................4

I.      **INTRODUCTION**

Defendant Skyryse, Inc. moves to compel the production of non-privileged documents responsive to its Requests for Production ("RFP") Nos. 5, 11, and 15, which call for documents regarding basic elements of Moog's trade secret claim and which Moog has failed to produce.

Plaintiff Moog filed its lawsuit and motion for a temporary restraining order and preliminary injunction on March 7, 2022. In its papers, Moog claims that Skyryse unlawfully raided Moog's employees as part of a conspiracy to steal Moog's trade secrets, which Moog claims to have spent decades developing, and demands the Court enter a broad preliminary injunction against Skyryse. Despite the breadth of its allegations and requested extraordinary relief, Moog refuses to produce documents relevant to the core elements of its claims.

Specifically, Skyryse requested that Moog produce documents related to confidentiality obligations owed to Moog by employees and third parties who accessed Moog's alleged trade secrets and the steps Moog has taken to protect those alleged trade secrets. These documents go to the heart of Moog's claims, for Moog must show it took "reasonable measures to keep such information secret" in order to even qualify for trade secret protection. 18 U.S.C. § 1839(3). Skyryse also requested that Moog produce documents related to its internal research, programs, and projects related to automated helicopter flight. This too relates directly to Moog's claims, since documents reflecting Moog's use of its alleged trade secrets will show, for example, whether they actually reflect information that was "not generally known" to or "readily ascertainable by" others, and whether it remained subject to reasonable security measures. *Id.*

The relevance and importance of this information could not be clearer, yet Moog has failed to produce it. Moog cannot contest its relevance, and its only remaining objection is to the breadth of the requests – apparently due to the fact that Moog is a large publicly traded company and claims

1

to be asserting rights in "millions" of trade secrets – has no merit. Moog's size does not excuse it from its discovery obligations, and the scope of discovery is a problem of Moog's own making because Moog has refused to focus its claims on a reasonable number of specific trade secrets— or even to identify any of them, despite having purportedly taken inventory of them months ago.[1] Skyryse respectfully requests that the Court order that Moog immediately produce documents responsive to Skyryse's relevant and proportional document requests.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Skyryse served its First (Expedited) Requests for Production pursuant to the expedited schedule requested by Moog (ECF 33, 36) on March 23, 2022. Among other topics, Skyryse served targeted requests for documents relating to the confidentiality obligations Moog employees and third parties owed to Moog to protect the secrecy of their alleged trade secrets (Ex. A, at 9 (RFP No. 5)), Moog's efforts to maintain the secrecy of its trade secrets (*id*. at 17-18 (RFP No. 15)), and Moog's research and projects related to automated helicopter flight (*id*. at 14 (RFP No. 11)). When the deadline to respond to Skyryse's requests arrived on April 13, 2022, Moog agreed to produce only a fraction of the documents requested, claiming that the requests were overbroad, repeating its now familiar refrain that requests relating to its alleged trade secrets concerned "millions of files" and involved "thousands of employees" and "15 years of work" and for that reason, responding to the requests about its own alleged trade secrets would be unduly burdensome.[2]

---

[1] For this very reason, Skyryse separately has moved to compel Moog to identify its trade secrets with particularity. (ECF 166.) As explained therein, Moog knows exactly what its own trade secrets are, where they are located on its systems, and in what types of files they purportedly are documented.

[2] This, despite the fact that Moog propounded excessively broad discovery requests to Skyryse, covering nearly the entirety of Skyryse's business, and made no effort to limit its requests in view of the limits of the expedited discovery period ordered by the Court (ECF 33, 36) (*see, e.g.*, Moog's Requests for Production, Ex. E (calling for, *inter alia*, "All deletion logs and versioning logs from Skyryse's software versioning and revision control systems, test tools, and software function

Of particular concern to Skyryse were Moog's refusals to produce documents responsive to RFP Nos. 5 and 15, both of which call for documents going to the core elements of Moog's trade secret claim and are directly relevant to Moog's motion for a preliminary injunction. In response to RFP No. 5, which calls for documents and communications relating to confidentiality obligations owed to Moog by its employees, customers, and suppliers, Moog claims arbitrarily that only documents "related to former Moog employees who now work for Skyryse" are relevant and refuses to produce any documents regarding the confidentiality obligations of other employees or third parties. Moog's excuse is that "Moog is a publicly traded company with tens of thousands of employees, customers, and suppliers," so the request is overbroad. (Ex. A at 10.) Similarly, in response to RFP No. 15, which calls for all documents relating to Moog's efforts to maintain the secrecy of its alleged trade secrets, Moog objected that the request was overbroad because "Moog's Trade Secrets include tens of millions of lines of source code and other documents," and "[i]dentifying each individual who accessed such information, and the dates of access, is impracticable" for a public company the size of Moog. (*Id*. at 18.)

The parties have repeatedly met and conferred regarding these requests, including on June 9, 2022 and June 24, 2022, and Skyryse's counsel has explained why the measures Moog took, or failed to take, to protect its alleged trade secrets (including the specific contracts meant to protect the confidentiality of its purported trade secrets) go to the heart of Moog's burden to show that the information it claims as its trade secrets is, in fact, secret, and that Moog took reasonable measures to maintain its secrecy.

---

names used in connection with its flight control software" and "All Documents and Communications, from January 1, 2021 to present, Concerning the development, testing, or certification of Skyryse's flight control software, including, but not limited to, Source Code, software planning Documents, software testing or certification Documents, test equipment and simulations, and software quality control Documents.")

Despite the fact that Skyryse tethered its requests to the specific trade secrets in this case, Moog objected on overbreadth grounds, arguing that its purported trade secrets allegedly "go back 15 years," consist of "millions of lines of source code and other documents," and have been accessed by "thousands of employees." (Moog's Responses to Skyryse's Requests for Production, Ex. A at 18; June 21, 2022 email from K. Naqvi, Ex. D.) Skyryse's counsel also repeatedly articulated the importance of RFP No. 11, particularly the relevance of documents regarding Moog's internal research and projects related to automated flight to Moog's argument that it would be irreparably harmed absent injunctive relief by losing its position in the emerging automated helicopter market. (June 4 Letter from G. Gross, Ex. B.)

Following the parties' June 24, 2022 meet-and-confer, counsel for Skyryse sent correspondence summarizing the parties' discussions and confirming for each of these requests why the parties were at an impasse. (June 24 and June 27 Emails from J. Osborne, Ex. D.) Moog's continued refusal to compromise on RFP Nos. 5, 11, and 15 necessitates this motion.

## III.   LEGAL STANDARD

The Federal Rules of Civil Procedure permit discovery regarding any "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Under the amended rules, "[r]elevance is still to be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense." *State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14CIV9792WHPJCF, 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015) (citation omitted). "Further, large corporations and institutions" "are expected to have means for locating documents requested in legal matters," *Herring v. Clark*, No. 1:05-cv-0079-LJO-SMS-PC, 2011 WL 2433672, at *9 (E.D. Cal. June 14, 2011), and the "mere fact that responding to a discovery request will require the objecting party to expend considerable time, effort and expense consulting, reviewing and analyzing huge volumes

4

of documents and information is an insufficient basis to object to a relevant discovery request."

*Cappetta v. GC Servs. Ltd. P'ship*, No. 3:08CV288, at *3 (E.D.Va. Dec. 24, 2008) (quoting *Burns*

*v. Imagine Films Ent., Inc.*, 164 F.R.D. 589, 593 (W.D.N.Y. 1996).).

IV.     ARGUMENT

   A.     **Moog has impermissibly refused to produce relevant documents responsive to RFP Nos. 5 and 15.**

Moog refuses to produce documents that relate to the core elements of its trade secret

claims and are critical to Skyryse's defense, including opposing Moog's motion for a preliminary

injunction. Specifically, Skyryse has requested that Moog produce documents and communica-

tions related to the confidentiality obligations owed to Moog by its customers, employees, and

suppliers (*see* Ex. A at 9-10 (Skyryse RFP No. 5)), and documents relating to Moog's efforts to

maintain the secrecy of its alleged trade secrets (*see id.* at 17-18 (Skyryse RFP 15).) Controlling

Second Circuit authority confirms that these documents are directly relevant to Moog's prelimi-

nary injunction motion and must be produced.

   "To succeed on a claim of misappropriation of trade secrets under the DTSA and New

York common law, the owner of the trade secret must take 'reasonable measures' to keep the

proprietary information secret." *Mason v. Amtrust Fin. Servs., Inc.*, 848 F. App'x 447, 450 (2d Cir.

2021) (summary order) (denying preliminary injunction where plaintiff failed to take reasonable

measures to protect its trade secrets); *see also Turret Labs USA, Inc. v. CargoSprint, LLC*, No. 21-

952, 2022 WL 701161, at *3–4 (2d Cir. Mar. 9, 2022) (affirming dismissal of DTSA and New

York common law trade secret claims where plaintiff failed to sufficiently allege "reasonable

measures to keep its information secret"). Legal protection for an alleged trade secret is immedi-

ately extinguished if it is disclosed—even inadvertently—to a third party that is not required to

maintain its confidentiality. *See Defiance Button Mach. Co. v. C & C Metal Prods. Corp.*, 759

F.2d 1053, 1063 (2d Cir. 1985) (holding a trade secret loses its protection even if inadvertently or accidentally disclosed). This is true even where a plaintiff takes numerous other measures to protect its alleged trade secrets. *See Broker Genius, Inc. v. Zalta*, 280 F. Supp. 3d 495, 517–18 (S.D.N.Y. 2017) (denying preliminary injunction where plaintiff disclosed trade secrets to customers without "binding them to confidentiality agreements" even though plaintiff took other measures to protect its trade secrets, including by ensuring employees signed non-disclosure agreements.) Stated differently, and in Moog's own words: ███████████████████████████████ ███████████████████████████████ (Moog's Trade Secret Training Transcript, ECF 4-6.)

For these reasons, recent Second Circuit decisions confirm that courts adjudicating preliminary injunction motions in the trade secret context must consider the very information Moog refuses to produce in response to Skyryse's discovery requests: documents and communications related to the confidentiality obligations owed to the plaintiff by its customers, employees, and suppliers and documents relating to the plaintiff's efforts to maintain the secrecy of its alleged trade secrets. Specifically, in *Mason*, the Second Circuit recently affirmed Judge Cote's denial of a preliminary injunction in a case involving New York and federal trade secret claims where the plaintiff failed to enter into a non-disclosure agreement before sharing his purported trade secrets with his employer, despite plaintiff's objection "that the district court overlooked various measures that he allegedly took to protect the [alleged trade secrets]." 848 F. App'x 447 at 450. Agreeing with the district court's rationale, the Second Circuit confirmed that the other measures plaintiff identified to protect his purported secrets could not "reasonably ensure that the Pricing Model would be protected" where plaintiff had failed to enter into a non-disclosure agreement with his employer.

*Id.*[3] In line with this recent Second Circuit authority, Skyryse is entitled to discover any disclosures by Moog of its purported trade secrets to third parties and any confidentiality obligations owed (or not owed) to Moog by those parties in order to determine whether Moog's alleged trade secrets actually qualify as such.

In response to Skyryse's targeted discovery requests, Moog has responded with inconsistent positions that have muddied the waters. This makes it all the more important that Moog produce the responsive documents to provide a more complete and clear picture of the conditions under which Moog has permitted access to its allegedly secret information. For example, in response to Interrogatory No. 5, Moog claimed that it has ████████████████████████ ████████████████████████████████████████████ ████████████████████████████ (ECF 166-3 (Resp. to Interrogatory No. 5) at 29.) Moog further claims in its Complaint and responses to Skyryse's interrogatories that "access to [Moog's] software database is on a 'need to know' basis that must be approved by the lead on the software program" (Compl. ¶¶ 43, 167; ECF 166-3 (Moog's Response to Interrogatory No. 5) at 28), and agreed in response to RFP 8 to "produce non-privileged documents sufficient to show all parties or individuals with access to the trade secrets at issue in this case." (Ex. A at 18.) Yet Moog objects to RFP Nos. 5 and 15 as "overbroad and unduly burdensome" because it cannot

---

[3] *See, e.g., Art & Cook, Inc. v. Haber,* 416 F. Supp. 3d 191, 197–98 (E.D.N.Y. 2017) (denying preliminary injunction despite fact that "[p]laintiff took other steps to secure its information, such as utilizing a password-protected server, password-protected folders, and a third-party internet security company to protect its servers from outside hacking" because certain employees did not "sign the handbooks and/or non-disclosure agreements" but "their access to [p]laintiff's information was not limited accordingly"); *Sasqua Grp., Inc. v. Courtney*, No. CV 10-528 ADS AKT, 2010 WL 3613855, at *19 (E.D.N.Y. Aug. 2, 2010), *report and recommendation adopted*, No. 10-CV-528 ADS ETB, 2010 WL 3702468 (E.D.N.Y. Sept. 7, 2010) (denying preliminary injunction because "even if the database information may once have had protection, the customer information lost its character as a trade secret because Sasqua failed to take reasonable steps to protect the information from coming into other hands")

identify the "thousands of employees" who have accessed its alleged trade secrets. (June 21, 2022 email from K. Naqvi, Ex. D.) But Moog does not explain how, if the alleged trade secrets are closely guarded and accessed only on a "'need to know' basis" (Compl. ¶¶ 43, 167), it can also be the case that "[i]dentifying each individual who accessed such information, and the dates of access, is impracticable and not proportional to the needs of the case," (Ex. A at 18) (June 21, 2022 email from K. Naqvi, Ex. D.)

Setting aside the fact that Skyryse's requests are limited only to the alleged trade secrets in this case and thus not overbroad, *see Struthers Sci. & Int'l Corp. v. Gen. Foods Corp.*, 51 F.R.D. 149, 154 (D. Del. 1970) (finding discovery not overbroad when "limited to those specific trade secrets which it claims were disclosed"), if Moog has actually restricted access to its trade secrets as it claimed in its Complaint and in response to Interrogatory No. 5 (ECF 166-3), then the requests cannot be overbroad and unduly burdensome, as Moog argues. On the other hand, to the extent Moog claims its trade secrets go back fifteen years and have been accessed by "thousands of employees," those statements undermine Moog's trade secret claims and Skyryse is entitled to investigate who accessed the trade secrets, when they were accessed, and under what circumstances and contractual terms. *See Turret Labs*, 2022 WL 701161, at *2 ("where an alleged trade secret consists 'primarily, if not entirely,' of a computer software's functionality," "the reasonableness analysis will often focus on who is given access, and on the importance of confidentiality and nondisclosure agreements to maintaining secrecy"). Under either scenario, Moog must produce these documents. *Sprint Commc'ns Co. L.P. v. Charter Commc'ns, Inc.*, No. 20-CV-2161-JWB-TJJ, 2020 WL 7770931, at *6–7 (D. Kan. Dec. 30, 2020) (granting motion to compel "[d]ocuments and communications showing each and every measure taken to maintain the secrecy of each alleged trade

secret" despite Sprint's objection "to the request as overbroad and not proportional to the needs of the case").

Producing documents responsive to RFP Nos. 5 and 15 is especially important here given Moog's representation ███████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████ which by itself would destroy any trade secret protections that at one time applied to Moog's alleged trade secrets. *See Art & Cook, Inc.*, 416 F. Supp. 3d at 197–98 (denying preliminary injunction where certain employees did not "sign the handbooks and/or non-disclosure agreements" but "their access to [p]laintiff's information was not limited accordingly"). Equally pertinent are the confidentiality obligations owed to Moog by its customers and suppliers—including the specific terms of any agreements between Moog and third parties. *See Broker Genius*, 280 F. Supp. 3d 517–22 (denying trade secret claim where plaintiff "disclosed its alleged secrets to each of its customers without notifying them of the information's confidential nature or binding them to confidentiality agreements" and explaining that a comparison of the specific terms of plaintiff's various agreements "lays bare the inadequacy" of plaintiff's other agreements to protect its trade secrets"); *see also Sanford Redmond, Inc. v. Mid-America Dairymen, Inc.*, No. 85 CIV 4574 (RJV), 1992 WL 57090, at *4 (S.D.N.Y. Mar. 4, 1992) (no trade secret protection where agreements did not sufficiently protect trade secrets despite plaintiff's other measures to ensure secrecy, including because there was "no requirement that the [third party's] employees sign confidentiality agreements").

While Moog objects that Skyryse's requests are overbroad because the "development of its flight control software goes back 15+ years" (June 21, 2022 email from K. Naqvi, Ex. D), the record shows that Moog has entered into non-disclosure agreements with third parties, including

9

Skyryse, that are limited in duration. (*See, e.g.*, ECF 1-4, Ex. D to Complaint) (Moog non-disclosure agreement limiting confidentiality obligations to ten years). It is black-letter law that trade secret claims fail on the "independent ground" that alleged trade secrets were disclosed "pursuant to a nondisclosure agreement that had long since expired" despite other measures the plaintiff may have taken to protect the trade secrets. *Structured Cap. Sols., LLC v. Commerzbank AG*, 177 F. Supp. 3d 816, 835–36 (S.D.N.Y. 2016). This is because a "temporary pledge to secrecy is exactly that: temporary. Once a third party's confidentiality obligations (assuming *arguendo* one exists) expires, so does the trade secret protection." *Id*. Skyryse is entitled to know whether Moog has entered similar agreements limited in time and scope, which would undermine Moog's trade secret claims today.

**B.     Moog should be compelled to produce relevant documents regarding its automated flight programs in response to RFP No. 11.**

Moog has also impermissibly refused to produce documents sufficient to show the nature, scope, purpose, content, and duration of its internal research, programs, and projects related to automated helicopter flight, including but not limited to, the cessation of any research, programs, and projects. Documents related to Moog's independent research and projects on automated flight are indisputably relevant to Moog's trade secret claims and Skyryse's defenses in this case, for several reasons. *First*, documents reflecting Moog's use of its alleged trade secrets in its automated flight projects will show, for example, whether its alleged trade secrets actually reflect information that was "not generally known" to or "readily ascertainable by" others, and whether they remained subject to reasonable security measures. *Second*, these documents are relevant to disprove Moog's allegations of misappropriation, in particular implications that Skyryse did not independently develop its own automated flight technology. (*See* Motion for Preliminary Injunction, ECF 4-1 at 7-8 ("Skyryse called its flight operating system 'Luna,' which was very similar to Moog's name

for its autonomous flight system previously discussed with Skyryse, 'Lucy'" and involved "exactly the technology that it had proposed engaging Moog to perform"); *see also* Compl. at ¶¶ 8, 89 (alleging that Skyryse has poached Moog employees and misappropriated Moog's trade secrets "so that it can shortcut its own timeline and costs in developing automated flight software and related products.")

*Finally*, these documents also are relevant to the elements Moog must prove in order to establish that preliminary injunctive relief is warranted, in particular that it has suffered irreparable harm as a result of Skyryse's alleged trade secret misappropriation. Moog claims in its complaint that unmanned helicopter aviation "is a new market" and companies "are rushing to become the market leader," and that "Moog has invested approximately five (5) years of research and development into unmanned helicopters," and was "a first-mover in the market." (Compl. ¶ 143; Motion for PI, ECF 4-1 at 14-15.) For this reason, Moog argues that it was irreparably harmed by Skyryse because "[b]y stealing Moog's source code and other proprietary information . . . Skyryse has jumped to the front of this race to be first to market and has slashed Moog's tires along the way." (*Id*.) To disprove these allegations of competitive harm and test the extent to which Moog actually was, or would have been, a leader in this market but for any alleged trade secret misappropriation, Skyryse is entitled to discover documents reflecting the extent of Moog's previous, independent work in this area.

In a good-faith effort to compromise with Moog and resolve this dispute without the Court's intervention, Skyryse narrowed RFP No. 11 significantly, although the request as originally issued was proper, and Moog will be required to respond to the full scope of the request in due course, after expedited discovery has concluded. (June 9 Email from J. Osborne, Ex. C.) As originally issued, RFP No. 11 called for "All documents and Communications regarding Moog's

internal research, programs, and projects related to automated helicopter flight, including but not limited to, the cessation of any research, programs, and projects." For the sake of compromise and efficiency during expedited discovery, Skyryse agreed to narrow the request to "documents *sufficient to show* the nature, scope, purpose, content, and duration of Moog's internal research, programs, and projects related to automated helicopter flight, including but not limited to, the cessation of any research, programs, and projects." (*Id*.)

Still, Moog refused to compromise. In response to Skyryse's narrowed request, Moog agreed only to produce "documents sufficient to show the nature and scope of Moog's programs and projects related to automated helicopter flight," but not their purpose, content, and duration or the cessation of any such projects. (June 24 Email from K. Naqvi, Ex. D.) The documents Moog is unreasonably withholding are indisputably relevant. Documents regarding the *purpose* of Moog's internal research and projects on automated flight are relevant to test Moog's claim that it was "racing to become the industry leader by releasing successful, safety-tested, certified, and comprehensive unmanned aviation systems" and that Skyryse interfered with this objective through its alleged misappropriation (Compl. ¶¶ 88, 143.) The *content* of such projects is relevant to disprove implications that Skyryse did not independently develop its own technology but instead derived it from Moog's alleged trade secrets; for example, a comparison of the content of Moog's internal research on automated flight with Skyryse's own work in this area will bolster Skyryse's independent development defense. Finally, documents regarding the *duration* and *cessation* of any internal research and projects on automated flight are relevant to test Moog's allegation Moog "has invested approximately five (5) years of research and development into unmanned helicopters," and will therefore be irreparably harmed if Skyryse overtakes it in the race to be first in the unmanned aviation market. (*id*. ¶ 143.) Moog has not explained how producing such documents

12

would place any undue burden on Moog, given that Skyryse has agreed to limit its request to documents *sufficient to show* the purpose, content, duration, and cessation of Moog's internal research. Accordingly, Moog has no basis for withholding documents responsive to RFP No. 11, as revised, and must be compelled to produce them.

## V.       CONCLUSION

For the foregoing reasons, Skyryse respectfully requests that the Court grant its motion to compel and order Moog to immediately produce all non-privileged documents responsive to Skyryse's RFP Nos. 5, 11, and 15.

Dated: June 30, 2022                              */s/ Gabriel S. Gross*

**LATHAM & WATKINS LLP**

Douglas E. Lumish (Admitted *Pro Hac Vice*)
Gabriel S. Gross
140 Scott Drive
Menlo Park, California 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600
Email: doug.lumish@lw.com
           gabe.gross@lw.com

Joseph H. Lee (Admitted *Pro Hac Vice*)
650 Town Center Drive, 20th Floor
Costa Mesa, California 92626
Telephone: (714) 540-1235
Facsimile: (714) 755-8290
Email: joseph.lee@lw.com

Julianne C. Osborne (Admitted *Pro Hac Vice*)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
Fax: (415) 395-8095
Email: julianne.osborne@lw.com

**HARRIS BEACH PLLC**
Terrance P. Flynn

13

726 Exchange Street, Suite 1000
Buffalo, New York 14210
Telephone: (716) 200-5050
Email: tflynn@harrisbeach.com

Counsel for Defendant Skyryse, Inc.