# Exhibit B

**Gabriel S. Gross**
Direct Dial: +1.650.463.2628
gabe.gross@lw.com

**LATHAM & WATKINS LLP**

140 Scott Drive
Menlo Park, California 94025
Tel: +1.650.328.4600  Fax: +1.650.463.2600
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Moscow |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Century City | Paris |
| Chicago | Riyadh |
| Dubai | San Diego |
| Düsseldorf | San Francisco |
| Frankfurt | Seoul |
| Hamburg | Shanghai |
| Hong Kong | Silicon Valley |
| Houston | Singapore |
| London | Tel Aviv |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |
| Milan | |

File No. 072290-0003

June 4, 2022

<u>VIA EMAIL</u>

Rena Andoh
Sheppard Mullin Richter & Hampton LLP
30 Rockefeller Plaza
New York, New York 10112-0015
*randoh@sheppardmullin.com*

Re:   *Moog Inc. v. Skyryse, Inc. et al.*, No. 22-cv-187 (W.D.N.Y.)

Dear Ms. Andoh:

As we explained in our letter dated May 26, 2022, many of Moog's responses to Skyryse's Requests for Production ("RFPs") and interrogatories, served on April 13, 2022, are seriously deficient. We addressed several fundamental deficiencies in our last letter, and now write regarding multiple other deficiencies in Moog's RFP responses. Please be prepared to discuss these issues at the meet-and-confer call scheduled for Monday, June 6. We are in the process of reviewing Moog's June 2, 2022 document production and reserve all rights and remedies, and may need to raise additional issues with you upon further review of that production.

**<u>Moog's Deficient RFP Responses</u>**

**<u>Request for Production No. 1</u>** – "All Documents, Communications, and Things that are identified in, support, refute, or relate to Moog's March 7, 2022 court filings and the contentions therein, including but not limited to all evidence that supports, refutes, or relates to Moog's allegations of likelihood of success on the merits and irreparable harm."

In response to RFP No. 1, Moog agreed to produce "non-privileged documents that support the allegations in Moog's Complaint." Please confirm you have produced ***all*** non-privileged documents that support the allegations in your March 7, 2022 court filings. Pursuant to Federal Rule of Civil Procedure 37, Skyryse reserves all rights to object to, and seek to exclude as evidence, any and all requested discovery that is not timely produced by Moog. Additionally, Moog has provided no basis for its apparent refusal to produce all evidence that is *identified in*, *refutes,* or *relates to* the allegations in its March 7 filings, particularly allegations of likelihood of success on the merits and irreparable harm. Moog must produce such responsive documents. Please be prepared to discuss Moog's objections, and the bases thereof, at the parties' June 6th meet-and-confer call.

**Request for Production No. 5** – "All Documents and Communications relating to any confidentiality obligations owed to You by Your employees, Your customers, and/or Your suppliers, including, without limitation, Your efforts to investigate compliance with, and enforcement of, those confidentiality obligations."

Although RFP No. 5 calls for documents relating to confidentiality obligations owed to Moog by all of its employees, customers, and suppliers, Moog agreed to produce only documents "related to former Moog employees who now work for Skyryse." It is entirely improper for Moog to unilaterally limit the request in this way, with no explanation other than the conclusory statement that "[a]ny confidentiality obligations owed by Moog to its customers or suppliers are not at issue in this case." As a preliminary matter, RFP No. 5 did not request information regarding confidentiality obligations owed by Moog to these third parties, but rather confidentiality obligations *owed by these third parties and employees to Moog*. As you know, in order to prevail on its motion for preliminary injunctive relief, Moog will be required to show a likelihood of success on the merits, including that Moog has "taken reasonable measures to keep [its alleged trade secret] information secret." 18 U.S.C. § 1839(3)(A). The measures Moog took, or failed to take, to instate and enforce confidentiality obligations with third parties are directly relevant to this analysis. Skyryse is therefore entitled to discover the extent to which Moog protected, or failed to sufficiently protect, its alleged trade secrets from disclosure to third parties, including, but not limited to, customers and suppliers, and the extent to which it protected, or failed to sufficiently protect, the alleged trade secrets from misuse or disclosure by *any and all* employees who had access to them. *Turret Labs USA, Inc. v. CargoSprint, LLC*, No. 21-952, 2022 WL 701161, at *2 (2d Cir. Mar. 9, 2022) ("the reasonableness analysis will often focus on who is given access, and on the importance of confidentiality and nondisclosure agreements to maintaining secrecy"). Please be prepared to explain at the June 6th meet-and-confer call Moog's basis for refusing to produce documents responsive to the whole of this request.

**Request for Production No. 6** – "All Documents and Communications relating to Moog's provision of its source code to any third party, including but not limited to the source code for Platform."

In response to RFP No. 6, Moog agreed to produce only "documents sufficient to demonstrate the restricted manner and scope in which its trade secrets at issue in this case have been disclosed to third parties," objecting that the request "seeks information or documents outside the scope of Moog's Motion for Preliminary Injunction" and is overbroad. For the reasons explained above with respect to RFP No. 5, Skyryse's request seeks documents that are plainly relevant at least to the third prong of the DTSA claim, which requires Moog to show that it took reasonable measures to protect its alleged trade secrets. 18 U.S.C. § 1839(3)(A); *Turret Labs USA, Inc.*, 2022 WL 701161, at *2. *All* such documents that support or undermine Moog's claims regarding its source code, not merely documents cherry-picked by Moog that help support its case, must be produced. As for Moog's objection that the request is overbroad, this is a problem of Moog's own making by trying to make this case about hundreds of thousands of unspecified, undefined trade secrets. As we have explained, the overbroad and burdensome nature of discovery will remain a problem until Moog identifies with particularity the alleged trade secrets that are actually at issue in the case. Because Moog has refused repeated requests from Skyryse to identify

its alleged trade secrets, Skyryse is unable to limit any requests that hinge on the identification of Moog's trade secrets, including RFP No. 6. If Moog provides information sufficient to identify its alleged trade secrets or otherwise confirms that certain Moog code is not a trade secret and/or is not the basis for any claims in this case, Skyryse is willing to meet and confer with Moog regarding the scope of this request.

**Request for Production No. 10** – "All Documents and Communications relating to attrition among Moog employees, including but not limited to documents identifying all Moog employees who have left Moog's employment in the last five years and the dates on which they left Moog's employment."

In response to RFP No. 10, Moog agreed only to produce a subset of the documents requested, specifically, "non-privileged documents responsive to this request as they relate to the departures of Moog employees who are now employed or work for Defendant." Moog has apparently (arbitrarily) refused to produce other documents responsive to this request, including documents relating to attrition among Moog employees and documents sufficient to identify *all* Moog employees who have left Moog's employment in the last five years, not merely those employees who left Moog to work at Skyryse. Moog objects that this request seeks "documents outside the scope of Moog's Motion for Preliminary Injunction," but Moog alleged in its Memorandum of Law In Support of its Motion for a Preliminary Injunction that Skyryse's "strategy" was to "hire[] away over twenty Moog employees" (Dkt. 4-1 at 1) and devoted an entire section of its brief to allegations that Skyryse engaged in a scheme of "[r]aiding of Moog's [e]mployees" (*id*. at 8-9). To respond to allegations like these, which Moog itself has placed at issue in its preliminary injunction motion, Skyryse is entitled to discover the extent to which departures by Moog employees were due to factors other than "[r]aiding" and "aggressive[] recruit[ing]" by Skyryse, including by gathering evidence showing any general pattern of attrition at the company and departures of employees from Moog to go to companies other than Skyryse. This request also squarely relates to Moog's practices and policies regarding employee departures, including Moog's failures to reasonably protect its alleged trade secrets in connection with employees leaving the company.

Please explain your basis for withholding documents responsive to Skyryse's request, which is plainly relevant to the allegations in Moog's complaint and preliminary injunction motion for at least the reason described above. Moog's other objections—including an objection that "the term 'third party' is vague" despite the fact that this term is not used in the request, and the conclusory objection that this request is "overbroad," with no further explanation—provide no basis for refusing to produce the full scope of documents requested by RFP No. 10.

**Request for Production No. 11** – "All Documents and Communications regarding Moog's internal research, programs, and projects related to automated helicopter flight, including but not limited to, the cessation of any research, programs, and projects."

In response to RFP No. 11, Moog agreed to produce documents "only as they relate to its business relationship to Defendant," but not documents related to any independent internal Moog research or projects on automated flight, claiming that such documents are "not narrowly tailored to any claim or defense in the case." We disagree. Documents related to Moog's purported

**LATHAM&WATKINS**LLP

independent research and projects on automated flight are relevant at least to the show the alleged harm (including irreparable harm), or lack thereof, that Moog claims to have suffered as a result of the trade secret violations it alleges. These documents also are plainly relevant to Moog's claims and implications that Skyryse did not independently develop its own technology but instead derived it from Moog's alleged trade secrets. Moog claimed in its complaint that unmanned helicopter aviation "is a new market" and companies "are rushing to become the market leader," that "Moog has invested approximately five (5) years of research and development into unmanned helicopters," and that "[b]y stealing Moog's source code . . . Skyryse has jumped to the front of this race to be first to market and has slashed Moog's tires along the way." Compl. ¶ 143. It further alleged in its Memorandum of Law In Support of its Motion for a Preliminary Injunction that it suffered irreparable harm because "Skyryse has unlawfully jumped to the front of this race" in the unmanned helicopter aviation market. Dkt. 4-1 at 15. To disprove these allegations of competitive harm and test the extent to which Moog actually was, or would have been, a leader in this market but for any alleged trade secret misappropriation, Skyryse is entitled to discover documents reflecting the extent of Moog's previous, independent work in this area. Moog has not justified its refusal to produce documents responsive to the whole of RFP No. 11. Please be prepared to discuss this issue at the June 6th meet-and-confer.

**Request for Production No. 12** – "All Communications with or regarding each Former Moog Employee after each gave notice of an intent to cease employment with Moog."

In response to this request, Moog agreed to produce only a subset of the communications requested, specifically only "non-privileged communications with or related to the departed Moog employees who left Moog to work for Defendant" and only communications that "pertain to such individuals' exit from Moog." While we are willing to meet and confer with Moog regarding the scope of this request, Moog has offered no justification – other than boilerplate relevance and overbreadth objections – for its improper attempt to narrow the request. Communications with all former Moog employees – not just those who left to work for Skyryse – are relevant for multiple reasons, including to show the extent to which Moog enforced its former employees' post-employment confidentiality obligations and whether and to what extent former employees had access to Moog information and/or continued moonlighting for Moog following their departure. And as Moog itself has argued in correspondence to Skyryse, withholding responsive documents on overbreadth grounds is impermissible without "a specific showing of the nature of the burden." *See* April 19, 2022 Letter from T. Anderson re: Skyryse's Discovery Responses. Moreover, Moog has no basis to withhold communications with departed Moog employees now employed by Skyryse aside from those pertaining to their "exit from Moog." For example, Moog's and its personnel's communications with such people after they left Moog are directly relevant to Moog's knowledge, encouragement, and authorization of their activities. Please be prepared to discuss this issue at the June 6th meet-and-confer call.

**Request for Production No. 13** – "All Communications, and all Documents regarding any Communications, with any of Your actual or prospective customers regarding the acts You allege were committed by any Defendant in the Complaint, including but not limited to, regarding the alleged Trade Secrets. This Request includes, but is not limited to, any recordings or transcripts of

**LATHAM&WATKINS**LLP

internal Moog meetings at which the topic of communicating with actual or prospective customers regarding the acts You allege were committed by any Defendant in the Complaint."

In response to RFP No. 13, Moog improperly narrowed the scope of documents requested, agreeing only to produce "any communications with actual or prospective customers regarding the *security breaches* alleged in Moog's Complaint" (emphasis added). Moog has provided no basis for withholding communications with customers regarding the lawsuit more generally or regarding the four claims against Skyryse that Moog references in its motion for preliminary injunctive relief, which allege conduct broader than "security breaches." Skyryse is entitled to full discovery on this topic, which includes statements Moog may have made to third parties that may undermine its allegations. Please confirm that Moog will produce any and all such communications.

**Request for Production No. 15** – "All Documents relating to Your efforts to maintain the secrecy of the alleged Trade Secrets, including without limitation (i) Documents sufficient to identify all Persons who have accessed the alleged Trade Secrets; and (ii) Documents sufficient to show the confidentiality obligations of each such Person to You."

Here again, Moog has inappropriately limited the scope of this request, agreeing to produce only "documents sufficient to show Moog's efforts to protect the secrecy of its trade secrets at issue in this case, including as they relate to departed Moog employees who now work for Defendant." RFP No. 15 appropriately calls for "All Documents," not "documents sufficient to show," and for the reasons discussed above with respect to RFP Nos. 5 and 6, Skyryse is entitled to discover *all* documents showing Moog's efforts to maintain the secrecy of its trade secrets, not just a sampling of documents cherry-picked by Moog that help support its case. This is necessary to provide a complete picture of the conditions under which Moog has permitted access to its allegedly secret information. 8 U.S.C. § 1839(3)(A); *Turret Labs USA, Inc. v. CargoSprint, LLC*, No. 21-952, 2022 WL 701161, at *2 (2d Cir. Mar. 9, 2022). Please confirm that Moog will produce ***all documents*** relating to its efforts to maintain the secrecy of its alleged trade secrets—each and every one that Moog claims is at issue in this lawsuit. This includes documents sufficient to identify all persons who have access to or have had access in the past to Moog's alleged trade secrets – as Moog has already agreed to do in response to RFP No. 8 – as well as documents sufficient to show any confidentiality obligations of each such person. If Moog refuses to produce such documents, please be prepared to discuss this issue at the June 6th meet-and-confer.

*       *       *

Please confirm by Monday, June 6 that Moog will remedy the deficiencies described above, serve supplemental responses to Skyryse's Requests for Production, and supplement any deficiencies in its June 2nd document production with subsequent productions. We reserve all rights to seek appropriate relief from the Court with respect to the above requests, including by moving to compel.

**Rena Andoh**
**June 4, 2022**
**Page 6**

**LATHAM&WATKINS**LLP

Very truly yours,

*[signature]*

Gabriel S. Gross
of Latham & Watkins LLP

cc:     Counsel of record

US-DOCS\132463262.2