# Exhibit D

# Public Redacted Version

| | |
|---|---|
| **From:** | Osborne, Juli (Bay Area) |
| **Sent:** | Monday, June 27, 2022 6:22 PM |
| **To:** | 'Kazim Naqvi'; Rena Andoh |
| **Cc:** | #C-M SKYRYSE - MOOG - LW TEAM; green.a@wssllp.com; Lai Yip; MSubjeck@hodgsonruss.com; pmuto@hodgsonruss.com; rdutta@hodgsonruss.com; RFluskey@hodgsonruss.com; Travis Anderson; Tyler Baker; tflynn@harrisbeach.com; truitt.a@wssllp.com |
| **Subject:** | RE: Moog v. Skyryse, No. 22-cv-187 (W.D.N.Y.) |

Kazim,

We respond to your email below regarding Moog's responses to Skyryse's RFPs.

- **RFP No. 10** – The limitation to employees *who worked on Moog's flight control software* was inadvertently omitted and we had no intention of modifying what we proposed on June 9th. That aside, your email does not respond to the key point in our Friday email following our meet-and-confer call. As we stated in that email and on our call, Moog's production responsive to RFP No. 10 must include documents regarding attrition among this group of employees ***generally-speaking*** (i.e., not related to any single employee) – for example, presentations to the board regarding general patterns of attrition among this group of employees, or communications regarding causes of or solutions for this attrition.  Please confirm that it will, otherwise we intend to move on this.

- **RFP No. 11** – In the spirit of compromise and to advance expedited discovery, we have already significantly narrowed the scope of RFP No. 11 to permit documents "sufficient to show the nature, scope, purpose, content, and duration of Moog's internal research, programs, and projects related to automated helicopter flight, including but not limited to, the cessation of any research, programs, and projects."  After sitting on this proposal for over two weeks, Moog finally responded on Friday that it will only produce "documents sufficient to show the ***nature*** and ***scope*** of Moog's programs and projects related to automated helicopter flight," but not the ***purpose***, ***content, duration***, and ***cessation*** of any such projects.  Moog's agreement to produce only a small subset of what is called for by this RFP, even after it was significantly narrowed, is unacceptable.  Please explain your basis for withholding the documents regarding the purpose, content, duration, and cessation of any such projects.  If Moog refuses to produce these documents after Skyryse's reasonable proposal to narrow the request, we will move to compel.

- **Alin Pilkington Exit Documents** – Given Moog's refusal to answer whether it has *already* produced Mr. Pilkington's exit checklist and related departure documents, or *cannot locate* these documents, we can only conclude that it is the latter. Should Moog later produce any such documents or attempt to rely on them at trial, we will move for the evidence to be excluded pursuant to FRCP 37(c)(1).

Additionally, and related to our discussions regarding Skyryse's RFP No. 5, we understand from the parties' correspondence and meet-and-confers that Moog's position on RFP No. 15 is similar to its position on RFP No. 5 – that Moog cannot be expected to produce all responsive documents because its trade secrets "go back 15 years" and involve "millions of files."  Instead, you have only agreed that Moog will produce documents "sufficient to show Moog's efforts to protect the secrecy of its trade secrets at issue." Given the positions you have articulated in our meet-and-confers, however, including, for example, your unwillingness to produce, at a minimum, all confidentiality policies and NDAs applicable to the trade secrets at issue, which would be responsive to both RFP Nos. 5 and 15, we fail to see how the documents Moog has agreed to produce would actually be "sufficient to show" its efforts to protect the alleged trade secrets. Please confirm that we understand your position correctly.

1

Thanks,
Juli

---

**From:** Kazim Naqvi <KNaqvi@sheppardmullin.com>
**Sent:** Friday, June 24, 2022 7:10 PM
**To:** Osborne, Juli (Bay Area) <julianne.osborne@lw.com>; Rena Andoh <RAndoh@sheppardmullin.com>
**Cc:** #C-M SKYRYSE - MOOG - LW TEAM <SKYRYSEMOOG.LWTEAM@lw.com>; green.a@wssllp.com; Lai Yip <LYip@sheppardmullin.com>; MSubjeck@hodgsonruss.com; pmuto@hodgsonruss.com; rdutta@hodgsonruss.com; RFluskey@hodgsonruss.com; Travis Anderson <TAnderson@sheppardmullin.com>; Tyler Baker <TBaker@sheppardmullin.com>; tflynn@harrisbeach.com; truitt.a@wssllp.com
**Subject:** RE: Moog v. Skyryse, No. 22-cv-187 (W.D.N.Y.)

Juli:

This responds to your e-mail below.

- RFP No. 1 – I do not agree with the entirety of your summary. Regardless, Moog has produced any documents that it has come across in the course of its investigation that refute its allegations, whether or not those documents are responsive to other RFPs, and will continue to do so.

- RFP No. 5 – I strongly disagree with your characterization of our call. But, I agree we are at an impasse.

- RFP No. 10 – Your summary is not accurate and omits a key point. Moog agrees to produce non-privileged documents that could be located in its possession, custody or control sufficient to show the attrition of employees from its aircraft controls business segment in the last 5 years **who worked on Moog's flight control software**, including documents showing the identities and dates of such departed employees, and the reasons why they left, to the extent they exist. The bolded part above was part of Skyryse's prior proposal, and so it must be included.

- RFP No. 11 – Moog will agree to produce documents sufficient to show the nature and scope of Moog's programs and projects related to automated helicopter flight.

- Alin Pilkington Agreements/Exit Documents – it is unclear what you are moving to compel. We have advised that we have not withheld any documents and have produced all non-privileged documents in Moog's possession, custody or control that could be located after a reasonable and diligent search. That is Moog's discovery obligation and it has complied with it.

Thank you,
Kazim

**Kazim Naqvi**
**SheppardMullin** | Los Angeles
+1 424-288-5336 | ext. 15336

---

**From:** julianne.osborne@lw.com <julianne.osborne@lw.com>
**Sent:** Friday, June 24, 2022 3:11 PM
**To:** Kazim Naqvi <KNaqvi@sheppardmullin.com>; Rena Andoh <RAndoh@sheppardmullin.com>
**Cc:** SKYRYSEMOOG.LWTEAM@lw.com; green.a@wssllp.com; Lai Yip <LYip@sheppardmullin.com>; MSubjeck@hodgsonruss.com; pmuto@hodgsonruss.com; rdutta@hodgsonruss.com; RFluskey@hodgsonruss.com; Travis Anderson <TAnderson@sheppardmullin.com>; Tyler Baker <TBaker@sheppardmullin.com>; tflynn@harrisbeach.com; truitt.a@wssllp.com
**Subject:** RE: Moog v. Skyryse, No. 22-cv-187 (W.D.N.Y.)

Kazim,

We write to summarize the parties' discussions at the meet-and-confer this morning.

**Moog's Responses to Skyryse's Requests for Production**

- **Skyryse RFP No. 1** – We asked you to explain your position that a request to produce all documents that *refute* Moog's allegations is overbroad, but a request to produce all documents that *support* its allegations is not. You responded that you are familiar with documents that support your own claims from your investigation, but have no way of identifying documents that refute the many allegations in your Complaint, unless they hit on the search terms targeted toward one of Skyryse's other RFPs. We explained that we expect that Moog has produced and will produce any documents that it has come across in the course of its investigation, whether or not those documents are responsive to other RFPs, that refute its allegations. We also explained that "refute" should be interpreted in the broadest sense of that word, and would encompass any documents that even arguably undermine any of Moog's allegations. You confirmed that Moog is not withholding any such documents, and will continue to produce them moving forward.

- **Skyryse RFP No. 5** – We explained why all measures Moog took, or failed to take, to instate and enforce confidentiality obligations relating to its alleged trade secrets go to the heart of Moog's case and are relevant to its burden to show that it has kept this information secret. You responded that the request, even as narrowed on June 9th, is overbroad because these trade secrets "go back 15 years" and have involved "thousands of employees." As we explained, any overbreadth problem here is one of Moog's own making because of its overbroad view of what information at issue is actually trade-secret protected. And as we also pointed out, your position is entirely inconsistent with Moog's Complaint, which states that "only certain employees at Moog have access to the software database [at issue] on a 'need to know' basis" (Compl. ¶ 184). Moreover, your repeated reliance on Moog's size to justify Moog's failure to respond fully and completely to Skyryse's discovery requests is improper; Moog is not excused of its discovery obligations just because it is a big company.

  You also argued that this dispute is intertwined with Skyryse's motion to compel trade secret identification, on which we will have more clarity from the judge next week. But *whether or not* the Court requires Moog to tell Skyryse what its trade secrets are, Moog knows what they are and must produce the requested documents – this information is relevant to multiple elements of Moog's claims on which Moog carries the burden. Based on our discussion, it appears we are at an impasse. Even when we proposed that *at a minimum*, Moog should produce all confidentiality policies and NDAs applicable to the trade secrets at issue, you refused, and said that Moog maintains that it should only be required to produce these documents to the extent they are "related to former Moog employees who now work for Skyryse." This position is untenable. Plaintiff's burden in this case covers the measures it takes generally and not just with regard to these former employees. Given Moog's unreasonable position, Skyryse has no choice but to move the Court to compel the production of these documents.

- **Skyryse RFP No. 10** – We explained our concern that Moog's agreement to produce only documents "sufficient to show the attrition of employees" in Moog's aircraft controls business segment would exclude indisputably relevant documents regarding *why* these employees left Moog. To address this concern, you agreed to produce documents sufficient to show the identities of all employees in the aircraft controls business segment who have left Moog in the last five years, the dates those employees left, *and the reasons they left*. We believe we are close to reaching an agreement on this RFP, but as we stated on the call, Moog's production must include documents regarding attrition from this division generally-speaking (i.e., not related to any single employee) – for example, presentations to the board regarding general patterns of attrition in this division, or communications regarding causes of or solutions for employee attrition.

- **Skyryse RFP No. 11** – We understand that you are still evaluating the proposal we sent on June 9th regarding this RFP and will let us know your position today.

3

**Alin Pilkington's Exit Documents**

We asked you to clarify whether Moog's position is that it has *already* produced Mr. Pilkington's exit checklist and related departure documents, or that it *cannot locate* these documents. You stated that Moog has produced "everything that we could locate" from Mr. Pilkington's personnel file but would neither confirm nor deny that these particular documents had been located and produced. Please confirm that you ran a search for these documents and could not find them, otherwise we may move to compel these documents.

Thanks,
Juli

---

**From:** Kazim Naqvi <KNaqvi@sheppardmullin.com>
**Sent:** Thursday, June 23, 2022 9:37 PM
**To:** Osborne, Juli (Bay Area) <julianne.osborne@lw.com>; Rena Andoh <RAndoh@sheppardmullin.com>
**Cc:** #C-M SKYRYSE - MOOG - LW TEAM <SKYRYSEMOOG.LWTEAM@lw.com>; green.a@wssllp.com; Lai Yip <LYip@sheppardmullin.com>; MSubjeck@hodgsonruss.com; pmuto@hodgsonruss.com; rdutta@hodgsonruss.com; RFluskey@hodgsonruss.com; Travis Anderson <TAnderson@sheppardmullin.com>; Tyler Baker <TBaker@sheppardmullin.com>; tflynn@harrisbeach.com; truitt.a@wssllp.com
**Subject:** RE: Moog v. Skyryse, No. 22-cv-187 (W.D.N.Y.)

Counsel:

To streamline tomorrow's meet and confer, below are our positions regarding the various issues discussed below.

**Moog's Supplemental Interrogatory Responses**

We disagree with Skyryse's positions and its unilateral insistence on form over substance. These tactics are not well taken. Regardless, attached are Moog's Supplemental Interrogatory Responses, which provide the exact same information that was provided to you via e-mail on June 10.

**Documents and Communications Regarding the Investigation of Bruce Pixley**

We disagree with your positions. There has been no waiver. The facts and documents underlying Mr. Pixley's investigation are set forth in his declaration. The evidence he relied upon primarily consists of the computers and electronic devices discussed in his declaration that have been turned over to iDS. We will not be producing any privileged communications between our firm and Mr. Pixley.

**Communications with ▮▮▮▮▮▮▮▮**

We have already agreed to produce these communications. We will produce all communications between Moog and ▮▮▮▮▮▮▮▮ that relate to Skyryse or any of the allegations in the Complaint. There is no dispute. We have already proposed to extend Skyryse's deadline to move to compel on documents produced after Friday, by 7 days after receipt of such documents. We have not heard back from you on that proposal. And, we offered the same proposal for any discovery responses or documents that Skyryse produces beyond Friday. We have not heard from you on that either.

**Moog's Trade Secrets Training and Documents Relating to Pilkington's Departure**

We stand by all the statements in my e-mail below, and we have met our discovery obligations. Questions regarding the trade secrets trainings or other documents can be made during depositions of Moog's witnesses.

**Moog's Responses to Skyryse's Requests for Production**

4

- Skyryse RFP No. 1 – we stand by the statements in my prior e-mail.
- Skyryse RFP No. 5 – we stand by the statements in my prior e-mail.
- Skyryse RFP No. 10 – we stand by the statements in my prior e-mail. Under Skyryse's arguments, producing documents "sufficient to show" anything would always constitute improper cherry picking. That is not the law. Skyryse has employed this very type of response.
- Skyryse RFP No. 11 – we are still evaluating and will endeavor to provide our position on this request tomorrow.
- Skyryse RFP No. 12 – Skyryse's proposal is acceptable.
- Skyryse RFP No. 13 – Moog is not withholding any documents responsive to this request on privilege grounds.

Thank you,
Kazim

**Kazim Naqvi**
**SheppardMullin** | Los Angeles
+1 424-288-5336 | ext. 15336

**From:** Kazim Naqvi
**Sent:** Thursday, June 23, 2022 10:17 AM
**To:** 'julianne.osborne@lw.com' <julianne.osborne@lw.com>; Rena Andoh <RAndoh@sheppardmullin.com>
**Cc:** SKYRYSEMOOG.LWTEAM@lw.com; green.a@wssllp.com; Lai Yip <LYip@sheppardmullin.com>; MSubjeck@hodgsonruss.com; pmuto@hodgsonruss.com; rdutta@hodgsonruss.com; RFluskey@hodgsonruss.com; Travis Anderson <TAnderson@sheppardmullin.com>; Tyler Baker <TBaker@sheppardmullin.com>; tflynn@harrisbeach.com; truitt.a@wssllp.com
**Subject:** RE: Moog v. Skyryse, No. 22-cv-187 (W.D.N.Y.)

Juli:

I am not available this afternoon. My availability tomorrow is now 10-11 AM and after 2 PM PST. Please send an invite for whatever works for you.

Thank you,
Kazim

**Kazim Naqvi**
**SheppardMullin** | Los Angeles
+1 424-288-5336 | ext. 15336

**From:** julianne.osborne@lw.com <julianne.osborne@lw.com>
**Sent:** Thursday, June 23, 2022 9:37 AM
**To:** Kazim Naqvi <KNaqvi@sheppardmullin.com>; Rena Andoh <RAndoh@sheppardmullin.com>
**Cc:** SKYRYSEMOOG.LWTEAM@lw.com; green.a@wssllp.com; Lai Yip <LYip@sheppardmullin.com>; MSubjeck@hodgsonruss.com; pmuto@hodgsonruss.com; rdutta@hodgsonruss.com; RFluskey@hodgsonruss.com; Travis Anderson <TAnderson@sheppardmullin.com>; Tyler Baker <TBaker@sheppardmullin.com>; tflynn@harrisbeach.com; truitt.a@wssllp.com
**Subject:** RE: Moog v. Skyryse, No. 22-cv-187 (W.D.N.Y.)

Kazim,

We are also available at other times today – any time before 11 or after 1 PST. Please let us know if any time today works for you.

Thanks,

Juli

---

**From:** Kazim Naqvi <KNaqvi@sheppardmullin.com>
**Sent:** Thursday, June 23, 2022 8:30 AM
**To:** Osborne, Juli (Bay Area) <julianne.osborne@lw.com>; Rena Andoh <RAndoh@sheppardmullin.com>
**Cc:** #C-M SKYRYSE - MOOG - LW TEAM <SKYRYSEMOOG.LWTEAM@lw.com>; green.a@wssllp.com; Lai Yip <LYip@sheppardmullin.com>; MSubjeck@hodgsonruss.com; pmuto@hodgsonruss.com; rdutta@hodgsonruss.com; RFluskey@hodgsonruss.com; Travis Anderson <TAnderson@sheppardmullin.com>; Tyler Baker <TBaker@sheppardmullin.com>; tflynn@harrisbeach.com; truitt.a@wssllp.com
**Subject:** RE: Moog v. Skyryse, No. 22-cv-187 (W.D.N.Y.)

Counsel:

I am no longer available at 3 PM today to meet and confer regarding the below issues.

I am available tomorrow from 12-1 PM PST. Please send an invite if that works. If that does not work, please propose alternative dates/times.

Thank you,
Kazim


**Kazim Naqvi**
**Sheppard**Mullin | Los Angeles
+1 424-288-5336 | ext. 15336

**From:** julianne.osborne@lw.com <julianne.osborne@lw.com>
**Sent:** Wednesday, June 22, 2022 8:38 PM
**To:** Kazim Naqvi <KNaqvi@sheppardmullin.com>; Rena Andoh <RAndoh@sheppardmullin.com>
**Cc:** SKYRYSEMOOG.LWTEAM@lw.com; green.a@wssllp.com; Lai Yip <LYip@sheppardmullin.com>; MSubjeck@hodgsonruss.com; pmuto@hodgsonruss.com; rdutta@hodgsonruss.com; RFluskey@hodgsonruss.com; Travis Anderson <TAnderson@sheppardmullin.com>; Tyler Baker <TBaker@sheppardmullin.com>; tflynn@harrisbeach.com; truitt.a@wssllp.com
**Subject:** RE: Moog v. Skyryse, No. 22-cv-187 (W.D.N.Y.)

Kazim,

We respond to your June 21 email below. We are available at 3 pm PST tomorrow, June 23, to meet and confer.

**Moog's Supplemental Interrogatory Responses**
We disagree with your contention that our letters and emails constitute supplemental RFP responses. These letters and emails are part of ongoing, good-faith discussions and negotiations, including several meet and confers, to narrow the scope of Moog's overly broad RFP requests. Moog has not served formal "supplemental" RFP requests reflecting the parties' agreements, nor has it served formal "supplemental" responses to Skyryse's RFPs – indeed, your email below includes Moog's positions concerning the parties' ongoing negotiation over Skyryse's RFPs, and Moog has not formally memorialized these positions in supplemental RFP responses.

In contrast to these discussions, your email on June 10th purports to provide "supplementation of [Moog's] interrogatory responses" by invoking Rule 33(d). But an email is not an adequate substitute for a formal, sworn response to an interrogatory. Just as Skyryse has formally supplemented its interrogatory responses, so must Moog. As such, we look forward to receiving your supplemental interrogatory responses tomorrow, June 23, noting that this supplement should

have occurred on June 2 when Moog made its document production, as promised by Moog in its letter to Skyryse on May 27.

**Documents and Communications Regarding the Investigation of Bruce Pixley**
Considering Moog's compliance statement and the fact that Moog's production entirely excludes any documents referencing Bruce Pixley and communications to/from Mr. Pixley, we can only conclude that Moog is withholding these documents on the basis of privilege.  Withholding these documents on privilege grounds is entirely improper given the detailed description of Mr. Pixley's investigation that Moog included in its Complaint (Compl. ¶¶ 133-141) and interrogatory responses (Moog Inc.'s Responses to Skyryse's First Set of (Expedited) Interrogatories, at 13-20).  *See Equal Emp. Opportunity Comm'n v. Sterling Jewelers,* Inc., No. 08-CV-0706-RJA-MJR, 2017 WL 3575101, at *3 (W.D.N.Y. Jan. 3, 2017) (Attorney-client privilege is waived if the "holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the matter or communication.") Moog cannot fairly rely on the documents and information underlying Mr. Pixley's investigation—or any opinions or conclusions he reached based on them—unless and until such documents are produced in discovery, as requested by RFP No. 9, among other RFPs.

**Communications with** ▇▇▇▇▇▇▇▇

We understand from your email at 1:28 pm today that Moog has agreed to produce all communications with ▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ related to this case." Please confirm that this includes any communications with either ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ relating to Skyryse, including regarding ▇▇▇▇▇▇▇▇▇▇▇▇▇, and including communications both before and after ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. These materials are relevant to Moog's claims in this case, and fall squarely within the scope of Skyryse's RFP No. 9, which called not only for documents and communications relating to ▇▇▇▇▇▇▇▇▇▇▇▇, but "relating to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ We expect this production as early as possible next week. These documents were indisputably responsive to RFP No. 9 and should have been produced by the deadline for substantial production on June 2nd. We reserve all rights to seek an extension to the June 30th deadline to move to compel if all of these documents are not promptly produced.

**Moog's Trade Secrets Training and Documents Relating to Pilkington's Departure**
Trade Secret Trainings – Your email below does not point to any Bates numbers for relevant training protocols or documentation provided in connection with its "trade secret trainings." Please identify any such documents by Bates number, or confirm that none exist.  Additionally, the transcription of Moog's trade secret training filed at ECF 4-6 is undated, and for that reason, it is impossible for us to determine whether former Moog employees who left Moog for Skyryse, including defendants Pilkington and Kim, attended the training.  Please provide the date on which this transcribed training was given, and any responsive documents that indicate to whom it was communicated and when.

Documents Related to Pilkington's Departure – We have reviewed the personnel files and agreements as they relate to Pilkington and Kim, and have not located for Mr. Pilkington an Termination Checklist, Exit Interview form, or any related departure documentation. Based on your representation that "Moog has produced any non-privilege responsive documents it could locate," we can only conclude that these documents do not exist for Mr. Pilkington. Please confirm.

**Moog's Responses to Skyryse's Requests for Production**
- **Skyryse RFP No. 1 –** We understand from your email that Moog has produced all non-privileged documents that *support* the allegations in the Complaint, but has refused to produce all non-privileged documents that *refute* the allegations in its Complaint, unless those documents are responsive to other RFPs. Moog has provided no reasoned basis for its inconsistent treatment of these two categories of documents. To the extent Moog has a reasoned basis to support its apparent position that a request to produce all documents that *refute* its allegations is overbroad, but a request to produce all documents that *support* its allegations is not, Moog has not "supported [] its burden or overbreadth objection[] with a specific showing of the nature of the burden, including through affidavits or other admissible evidence," as Moog has argued is required from Skyryse in response to Moog's own RFPs (ECF 166-8 at 7). It is black letter law that Skyryse is entitled to these materials (*see, e.g., Wanna Play Prod. Inc. v. Emery*, No. 8:20-CV-443-CEH-JSS, 2021 WL 3552296, at *2 (M.D. Fla. Mar. 12, 2021) (ordering plaintiff to produce documents "relating to any information that either supports or refutes any

7

of the allegations in the Amended Complaint," finding that "because these requests are limited by reference to the First Amended Complaint, the Court finds that these requests seek information that is relevant and proportional to the needs of the case."), so please confirm that you plan to produce them immediately.

- **Skyryse RFP No. 5** – As we've stated on multiple occasions, Moog's overbreadth objections to discovery requests regarding its "alleged trade secrets" are not well-founded, when it is Moog that has failed to reasonably narrow the scope of such requests by defining its alleged trade secrets. Moreover, we disagree with your exaggeration that Skyryse's revised request calls for "every single data log and time entry where a Moog employee accessed Moog's software database." It does not. RFP No. 5, as we have explained through good-faith meeting and conferring, calls for documents and communications "relating to the confidentiality obligations *related to the Trade Secrets at issue*," not for data logs and time entries.

    As we explained in our letter on June 4, 2022, documents responsive to RFP No. 5 go to the heart of Moog's case, implicating its burden to prove that it has "taken reasonable measures to keep [its alleged trade secret] information secret." 18 U.S.C. § 1839(3)(A). **All** measures Moog took, or failed to take, to instate and enforce confidentiality obligations with **all** third parties are directly relevant to this analysis – not just measures related "to a more specific group of employees, such as the former Moog employees who now work for Skyryse," as Moog maintains. *See, e.g., Fail-Safe LLC v. A.O. Smith Corp.,* 744 F. Supp. 2d 831, 857 (E.D. Wis. 2010) ("disclosure of a trade secret outside a confidential relationship destroys the legal protection."); *see also* Moog's Trade Secret Training Transcript, ECF 4-6 ██████████████████████████████████████████████████████████████ Please be prepared to discuss this RFP on tomorrow's meet-and-confer call.

- **Skyryse RFP No. 10** – Moog's position that it will only produce documents "sufficient to show the attrition of employees from its aircraft controls business segment" is insufficient, particularly given that we have already narrowed this request significantly with both subject matter and time limitations. Skyryse is entitled to **all** responsive documents regarding the departure of employees from Moog's aircraft controls business segment in the last 5 years, including the reasons for their departure, in order to respond to Moog's allegations that Skyryse conspired to "hire[] away over twenty Moog employees" (ECF 4-1 at 1) and its implication that the only reason Moog employees left was alleged "[r]aiding" and "aggressive[] recruit[ing]" by Skyryse (ECF 4-1 at 8-9). Moog's proposal that it be entitled to cherry-pick which such documents are produced is unacceptable. Please be prepared to discuss this issue on tomorrow's meet-and-confer call.

- **Skyryse RFP No. 11** – Moog's email yesterday did not include a response to Skyryse's June 9 proposal regarding RFP No. 11. Please advise us on your position immediately. Please also confirm that Moog has produced <u>all</u> documents related to Moog's business relationship with Skyryse.

- **Skyryse RFP No. 12** – For the purpose of advancing expedited discovery, and to address your concern that the request would call for a large number of emails to and from employees after they gave notice but before they left the company, we will agree to narrow the scope of this request to: All Communications with or regarding each Former Moog Employee (a) starting one week before each employee's last date of employment with Moog *regarding Skyryse, the employee's termination or post-employment obligations, and any contemplated ongoing post-termination work for, or contributions to Moog*, and (b) after each employee's final day at Moog regarding any ongoing interaction the employee had with Moog or its personnel.

- **Skyryse RFP No. 13** – Thank you for Moog's confirmation that it has produced "all non-privileged documents constituting communications with actual or prospective customers regarding the allegations in the Complaint." Please clarify that Moog is not withholding any such communications with customers on the basis of privilege.

We look forward to discussing these issues with you further tomorrow at 3 pm.

Thanks,
Juli

**From:** Kazim Naqvi <KNaqvi@sheppardmullin.com>
**Sent:** Tuesday, June 21, 2022 8:08 PM
**To:** Osborne, Juli (Bay Area) <julianne.osborne@lw.com>; Rena Andoh <RAndoh@sheppardmullin.com>
**Cc:** #C-M SKYRYSE - MOOG - LW TEAM <SKYRYSEMOOG.LWTEAM@lw.com>; green.a@wssllp.com; Lai Yip <LYip@sheppardmullin.com>; MSubjeck@hodgsonruss.com; pmuto@hodgsonruss.com; rdutta@hodgsonruss.com; RFluskey@hodgsonruss.com; Travis Anderson <TAnderson@sheppardmullin.com>; Tyler Baker <TBaker@sheppardmullin.com>; tflynn@harrisbeach.com; truitt.a@wssllp.com
**Subject:** RE: Moog v. Skyryse, No. 22-cv-187 (W.D.N.Y.)

Counsel:

This responds to Skyryse's June 20th letter (the "Letter") regarding various purported discovery issues.

**Moog's Supplemental Interrogatory Responses**

The Letter omits our June 12th e-mail on this very issue (attached here). Therein, Moog agreed to provide formal supplemental interrogatory responses regarding its Rule 33(d) invocation consistent with Moog's June 10th e-mail. Because Skyryse did the exact same thing that it is complaining about regarding its supplemental responses to Moog's RFPs, we proposed a mutual exchange date exchange date for Moog's supplemental interrogatory responses and Skyryse's supplemental RFP responses on June 17th. We never heard back from you. We remain ready to serve the supplemental interrogatory responses. Please confirm a date for the mutual exchange and we will serve the supplemental interrogatory responses accordingly.

**Documents and Communications Regarding the Investigation of Bruce Pixley**

Consistent with its compliance statement, Moog has produced all non-privileged documents regarding the investigation of Bruce Pixley. We further note that the "evidence he considered" and the "analysis and conclusions from his investigation" are included in his March 7 declaration (ECF 4-28).

**Communications with ▓▓▓▓▓▓▓**

RFP No. 9 requested documents and communications relating to Moog's investigation into the misappropriated trade secrets at issue in this case. To the extent Moog has communicated with ▓▓▓▓▓▓▓, such communications are not related to Moog's investigation, and instead may be related to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. The conclusion that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ is false and misleading.

Regardless, we are considering your request and will respond to this separately.

**Moog's Trade Secrets Training and Other Documents**

Moog has produced non-privileged documents in response to RFP No. 1 consistent with its compliance statement. Regarding Moog's trade secrets training, documents responsive to this issue as they relate to the Individual Defendants include but are not limited to MOOG0000007 and 112. Further, transcriptions of the trade secret trainings and other related materials are attached as Exhibit D to the March 7 Declaration of Michael Hunter (ECF 4-2, 4-6).

Regarding documents related to Mr. Pilkington's departure from Moog, Moog has produced any non-privileged responsive documents it could locate in its possession, custody or control following a reasonable and diligent search. We further note that on or about April 5, Moog produced the non-privileged personnel files and agreements as they relate to Kim and Pilkington within Moog's possession, custody or control that could be located after a reasonable and diligent search.

9

**Moog's Responses to Skyryse's Requests for Production**

There is nothing "dilatory" about Moog's evaluation of its positions regarding certain of Skyryse's RFPs. It has been 12 days since the parties met and conferred on this issue. As I told Ms. Osborne last Wednesday, June 15, we are continuing to discuss the various proposals with our client in an effort to reach mutually agreeable resolutions. Part of that process requires investigation into the nature and volume of potentially responsive documents. As Skyryse well knows, this process cannot be completed within a week. We note that Skyryse promised in writing certain supplemental responses to Interrogatories and RFAs (which generally require far less effort and burden than producing large volumes of documents in response to broad RFPs) on May 4, yet did not serve such supplemental responses until nearly six weeks later on June 14. Skyryse's attempt to characterize Moog's diligent meet and confer efforts as "dilatory" is not well-taken and is contradicted by the record of correspondence between the parties.

Regardless, at your request, please find below a detailed response for each of the RFPs that we discussed in response to Ms. Osborne's June 9 e-mail (attached). Regarding RFP No. 11, we are continuing to look into your proposal and aim to get you a response by Thursday, June 23.

- **Skyryse RFP No. 1 -** Moog has produced all non-privileged documents that support the allegations in the Complaint in Moog's possession, custody or control that could be located following a reasonable and diligent search. Moog's position is that as part of the broad contention discovery contemplated by this request, Moog has satisfied its obligations. RFP No. 1 is a limitless catch-all request that is not reasonably tailored as drafted. To be clear, Moog will not exclude or refuse to produce any documents that may refute the allegations in the Complaint if they are otherwise responsive to reasonably tailored requests. For example, in response to Skyryse's other requests, Moog has already produced non-privileged documents in its possession, custody or control related to its employees' access to the programs and trade secrets at issue, efforts to maintain secrecy of its confidential information, etc. To the extent any of these documents refute any of the allegations in Moog's Complaint, then Skyryse has them. But, simply propounding an open ended request seeking all documents that may potentially refute any of the hundreds of allegations in the Complaint is overbroad, vague, and ambiguous.

- **Skyryse RFP No. 5** – Skyryse's revised proposal remains overbroad. Seeking "all documents" that relate in any way to confidentiality obligations owed by Moog's employees, customers, or suppliers regarding the trade secrets at issue encompasses a massive volume of documents. There is no time limitation whatsoever. Given that Moog's development of its flight control software goes back 15+ years, this request seeks the production of, for example, every single data log and time entry where a Moog employee accessed Moog's software database. This request encompasses thousands of employees.  This proposed request would also seek the production of, for example, every single contract Moog has entered into with any of its customers or suppliers relating to flight control with a confidentiality provision. This is an improper fishing expedition into Moog's third party contracts and business relationships. Moog maintains that this request must be limited to a more specific group of employees, such as the former Moog employees who now work for Skyryse. We are open to considering time limitations or other similar limitations that sufficiently narrow the scope of this request.

- **Skyryse RFP No. 6** – Skyryse's revised and narrowed request is acceptable. Moog has produced all non-privileged documents responsive to RFP No. 6 as revised in Moog's possession, custody or control that could be located following a reasonable and diligent search.

- **Skyryse RFP No. 10 –** Following a reasonable and diligent search, Moog is prepared to produce non-privileged documents that could be located in its possession, custody or control sufficient to show the attrition of employees from its aircraft controls business segment in the last 5 years whose worked on Moog's flight control software, including documents showing the identities and dates of such departed employees. Please confirm this proposal works for you.

- **Skyryse RFP No. 12 –** Skyryse's proposal is still unacceptable as it remains overbroad and not tailored to the claims and defenses in this case. As proposed, Skyryse is essentially asking for production of every single e-mail

sent or received by approximately 20 former Moog employees during the last week of their employment at Moog, without any subject matter limitation. As you know, employees often send and receive hundreds of e-mails per day. The volume of e-mails will be in the tens of thousands. The e-mails called for by this request also have no subject matter limitation, so they would include, for example, e-mails regarding internal Moog projects or events completely unrelated to the allegations in the Complaint, lunch meetings, travel arrangements, etc. Moog stands by its position that there needs to be subject matter limitation given the massive volume of e-mails requested. Certain areas that may be appropriate for subject matter limitation include: 1) the employees' exit from Moog; 2) the employees continuing to work on Moog matters after ending employment with Moog; or 3) Skyryse.

- **Skyryse RFP No. 13** – Moog has produced all non-privileged documents constituting communications with actual or prospective customers regarding the allegations in the Complaint.

Should there be a need to further meet and confer on any of the foregoing, I am not available on Wednesday. I am available on Thursday from 8-10 AM and 3-5 PM PST.

Thank you,
Kazim


**Kazim Naqvi**
**SheppardMullin** | Los Angeles
+1 424-288-5336 | ext. 15336

**From:** julianne.osborne@lw.com <julianne.osborne@lw.com>
**Sent:** Monday, June 20, 2022 9:10 AM
**To:** Rena Andoh <RAndoh@sheppardmullin.com>; Kazim Naqvi <KNaqvi@sheppardmullin.com>
**Cc:** SKYRYSEMOOG.LWTEAM@lw.com; green.a@wssllp.com; Kazim Naqvi <KNaqvi@sheppardmullin.com>; Lai Yip <LYip@sheppardmullin.com>; MSubjeck@hodgsonruss.com; pmuto@hodgsonruss.com; rdutta@hodgsonruss.com; RFluskey@hodgsonruss.com; Travis Anderson <TAnderson@sheppardmullin.com>; Tyler Baker <TBaker@sheppardmullin.com>; tflynn@harrisbeach.com; truitt.a@wssllp.com
**Subject:** Moog v. Skyryse, No. 22-cv-187 (W.D.N.Y.)

Counsel:

Please see the attached correspondence.

Best regards,
Juli


**Julianne Osborne**

**LATHAM & WATKINS LLP**
505 Montgomery Street
Suite 2000
San Francisco, CA 94111-6538
Direct Dial: +1.415.395.8160
Email: julianne.osborne@lw.com
https://www.lw.com


_____

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient.  Any review, disclosure, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you are not the intended recipient, please contact the sender and delete all copies including any attachments.

Latham & Watkins LLP or any of its affiliates may monitor electronic communications sent or received by our networks in order to protect our business and verify compliance with our policies and relevant legal requirements. Any personal information contained or referred to within this electronic communication will be processed in accordance with the firm's privacy notices and Global Privacy Standards available at www.lw.com.

Attention: This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.