UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————————

MOOG INC.,

                            Plaintiff,

v.                                                    Case No.: No. 22-cv-00187

SKYRYSE, INC., ROBERT ALIN
PILKINGTON, MISOOK KIM, and DOES NOS.
1-50,

                            Defendants.

———————————————————————————

**PLAINTIFF'S OPPOSITION TO DEFENDANT SKYRYSE, INC.'S**
**<u>MOTION TO COMPEL PRODUCTION OF DOCUMENTS</u>**

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................................1

II.    LEGAL STANDARD................................................................................................3

III.   SKYRYSE'S MOTION SHOULD BE DENIED .............................................................4

    A.    Skyryse's RFPs Nos. 5 and 15 are Overbroad, Unduly Burdensome, and
        Not Proportional to the Needs of the Case .............................................................4

        1.    Moog Has Already Produced a Large Volume of Responsive
              Documents ...................................................................................................5

        2.    Skyryse's RFPs Nos. 5 and 15 are Overbroad, Unduly
              Burdensome, and Not Proportional to the Needs of the Case....................6

        3.    Skyryse's Cited Authority is Distinguishable...........................................11

        4.    Moog Has Not Taken Any Inconsistent Positions.....................................14

    B.    Moog Has Already Produced Documents Responsive to Skyryse's RFP
        No. 11 by Providing the Exact Information Skyryse is Seeking ...........................15

IV.    CONCLUSION..............................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Badr v. Liberty Mutual Group, Inc.*,
No. 3:06CV1208, 2007 WL 2904210 (D. Conn. Sept.28, 2007) ............................................7

*Black v. Buffalo Meat Serv., Inc.*,
No. 15CV49, 2016 WL 4365506 (W.D.N.Y. Aug. 16, 2016)..................................................3

*Gropper v. David Ellis Real Est., L.P.*,
No. 13 CIV. 2068 ALC JCF, 2014 WL 518234 (S.D.N.Y. Feb. 10, 2014)......................13, 14

*Huayuan Chen v. Stony Brook University*,
2018 WL 1368031 (E.D.N.Y. 2018).......................................................................................3

*Mason v. Amtrust Fin. Servs., Inc.*,
848 F. App'x 447 (2d Cir. 2021) .....................................................................................11, 12

*Mattel, Inc. v. MGA Ent., Inc.*,
No. CV 04-9049 DOC RNBX, 2010 WL 3705895 (C.D. Cal. Sept. 17, 2010) .....................10

*McCall v. State Farm Mut. Auto. Ins. Co.*,
No. 2:16-cv-01058-JAD-GWF, 2017 WL 3174914 (D. Nev. July 26, 2017) ..........................4

*O'Garra v. Northwell Health*,
2018 WL 502656 (E.D.N.Y. 2018)..........................................................................................3

*Optionality Consulting Pte. Ltd. v. Edge Tech. Grp. LLC*,
No. 18CV5393ALCKHP, 2022 WL 1977746 (S.D.N.Y. June 3, 2022)...................................7

*Pollard v. E.I. DuPont de Nemours & Co.*,
No. 95–3010, 2004 WL 784489 (W.D. Tenn. 2004)......................................................7, 8, 9

*Rice v. Reliastar Life Insurance Co.*,
Civ. A. No. 11–44, 2011 WL 5513181 (M.D. La. Nov. 10, 2011)...........................................7

*Smith v. Haag*,
2009 WL 3073976 (W.D.N.Y. 2009) .......................................................................................3

*Sprint Commc'ns Co. L.P. v. Charter Commc'ns, Inc.*,
No. 20-CV-2161-JWB-TJJ, 2020 WL 7770931 (D. Kan. Dec. 30, 2020) .......................13, 14

*Struthers Sci. & Int'l Corp. v. Gen. Foods Corp.*,
51 F.R.D. 149 (D. Del. 1970) ...............................................................................................12

*Trilegiant Corp. v. Sitel Corp.*,
   272 F.R.D. 360 (S.D.N.Y. 2010) ............................................................................................11

*United States v. Nosal*,
   291 F.R.D. 403 (N.D. Cal. 2013)...............................................................................................9

*Vaigasi v. Solow Management Corp.*,
   No. 11-cv-5088 (RMB)(HBP), 2016 WL 616386 (S.D.N.Y. Feb. 16, 2016) ....................9, 10

*In re Welspun Litig.*,
   No. 16-CV-6792 (RJS), 2018 WL 4693586 (S.D.N.Y. Mar. 4, 2018).......................................3

**Rules**

Federal Rule of Civil Procedure 26(b)(1) ....................................................................................3, 4

## I.   <u>INTRODUCTION</u>

Skyryse has burdened this Court with a motion to compel even though Moog has already produced a large volume of documents in response to each request at issue. This is not a scenario where Moog has refused to comply with discovery requests. To the contrary, Moog has produced to Skyryse over 28,000 pages of documents, including no less than six different categories of documents related to Moog's efforts to maintain the secrecy of its trade secrets.  Moog has even produced spreadsheets and logs showing each Moog employee who has had access to the flight control programs at issue in this case located in Moog's software database (including its Jira and Subversion repositories), as well as when such employees were granted access or had access removed—the number of employees in these logs is in the thousands.  Yet, Skyryse claims that it is entitled to far more, while completely disregarding this Court's requirement to consider proportionality and burden in connection with discovery.

Skyryse's RFPs Nos. 5 and 15 ask Moog to, without limitation, produce every single document that in any manner relates to its efforts to maintain the secrecy of its trade secrets at issue in this case, including as it relates to any Moog employee, customer or supplier that has a connection to the trade secrets. The circumstances of this case present unique burden and scope issues. It is undisputed that defendants Kim and Pilkington copied over 1.4 million Moog files before joining Skyryse, covering essentially all the Moog's flight control software built since 2007.  Because what defendants took covers such a significant portion of Moog's trade secrets going back more than a decade, likewise a significant portion of Moog's workforce would be implicated by Skyryse's production requests.

The concurrently filed declaration of Michael Hunter (lead flight control software engineer at Moog) explains the burdens to comply with Skyryse's RFPs Nos. 5 and 15. Because

-1-

of the volume of theft by Defendants, Moog would likely have to search for and collect up to 8 different categories of documents each for approximately 4,000-6,000 employees going back to 2007. Moog would likely have to produce thousands of contracts and underlying communications with over 1,000 combined customers and suppliers. Most if not all of these customer and supplier agreements also require customer/supplier approval before disclosure of the contracts. This is the type of fishing expedition that federal courts around the country do not allow. Documents responsive to Skyryse's RFPs Nos. 5 and 15 should be limited to a reasonable sample of Moog's employees, such as the former Moog employees later hired by Skyryse—a group of individuals who are indisputably at issue in this case and referenced in the Complaint. In other words, the allegations in this case focus on the taking of Moog's trade secrets by former Moog employees who moved to Skyryse.  Therefore, the most relevant security restrictions in this case involve those restraints on the employees who circumvented them to take Moog's materials.  Moog has already produced responsive documents for these individuals, who worked in a range of different jobs while at Moog.

As to RFP No. 11, Skyryse's motion to compel further responses is likewise without merit. Moog has complied and already produced the documents Skyryse has requested, including "documents sufficient to show the nature and scope of Moog's programs and projects related to automated helicopter flight." These highly proprietary documents provide considerable detail regarding *each and every Moog project in this area*, the customers involved, the timing and duration of such projects, and the exact helicopters and technology being developed under such projects. Thus, as Moog advised Skyryse before it filed the motion, Moog produced documents showing the purpose, content, duration, and cessation (if any) of any such projects. Skyryse does not and cannot argue that it is entitled to anything more, such as all underlying research &

-2-

development or technical documents for such projects. Such a demand is especially concerning to Moog where Skyryse publicly advertises itself as a direct competitor to Moog in this arena, and it is simply unnecessary for Skyryse to have such a detailed view into Moog's business. Skyryse hastily moved to compel on this request instead of waiting to review Moog's production which provides the exact information Skyryse is seeking. The issues in this case are specific to Moog trade secrets taken by Skyryse. The information Moog has produced about its programs is more than sufficient to provide Skyryse with context for the Moog materials taken by Skyryse, and Skyryse has not articulated any other reason for seeking these materials. The Court should deny Skyryse's motion to compel regarding RFP No. 11 as moot because Moog has already complied with it and produced the requested documents.

## II.    **LEGAL STANDARD**

"Courts have wide discretion to manage discovery." *Smith v. Haag*, 2009 WL 3073976, *3 (W.D.N.Y. 2009). In establishing entitlement to requested discovery, it is the moving party's "burden to show how the requested records are relevant, material and proportional to the claims made." *O'Garra v. Northwell Health*, 2018 WL 502656, *5 (E.D.N.Y. 2018). Additionally, "[t]he party seeking the discovery must make a prima facie showing, that the discovery sought is more than merely a fishing expedition." *Huayuan Chen v. Stony Brook University*, 2018 WL 1368031, *4 (E.D.N.Y. 2018); *accord,* Cleveland-Goins v. City of New York, No. 99 CIV. 1109(AGS), 1999 WL 673343, at *2 (S.D.N.Y. Aug. 30, 1999). "Under Federal Rule of Civil Procedure 26(b)(1), requested discovery must be both relevant and proportional to the claim." *In re Welspun Litig.*, No. 16-CV-6792 (RJS), 2018 WL 4693586, at *3 (S.D.N.Y. Mar. 4, 2018); *see also Black v. Buffalo Meat Serv., Inc.*, No. 15CV49, 2016 WL 4365506, at *6 (W.D.N.Y. Aug. 16, 2016)

("Relevance under Rule 26(b)(1) is now tempered by proportionality; particular items may be relevant but discovery to obtain them may not be proportionate to that case").

The factors to assess in determining whether a request is proportional include: the parties' relative access to relevant information; the importance of the discovery in resolving the issues; and whether the burden outweighs the likely benefit. Fed. R. Civ. P. 26(b)(1). "If the requirement for proportionality in discovery means anything, however, it must mean that burdensome, tangential discovery should not be permitted based on the mere possibility that something may turn up to support what is otherwise only speculation." *McCall v. State Farm Mut. Auto. Ins. Co.*, No. 2:16-cv-01058-JAD-GWF, 2017 WL 3174914, at \*9 (D. Nev. July 26, 2017).

## III.   **SKYRYSE'S MOTION SHOULD BE DENIED**

### A.   **Skyryse's RFPs Nos. 5 and 15 are Overbroad, Unduly Burdensome, and Not Proportional to the Needs of the Case**

Skyryse's RFP No. 5 seeks: "All Documents and Communications relating to any confidentiality obligations owed to You by Your employees, Your customers, and/or Your suppliers, including, without limitation, Your efforts to investigate compliance with, and enforcement of, those confidentiality obligations." Notwithstanding the facially overbroad nature of this request, Moog did not refuse to produce responsive documents, and instead agreed to "produce non-privileged documents responsive to this request solely related to former Moog employees who now work for Skyryse." (Declaration of Rena Andoh ("Andoh Dec."), Ex. A). As described further below, Moog produced these responsive documents and others on or before June 2.  After meeting and conferring, Skyryse only agreed to limit RFP No. 5 to the "alleged trade secrets," but has not agreed to any other temporal or scope limitation.

Skyryse's RFP No. 15 seeks: "All Documents relating to Your efforts to maintain the secrecy of the alleged Trade Secrets, including without limitation (i) Documents sufficient to identify all Persons who have accessed the alleged Trade Secrets; and (ii) Documents sufficient to show the confidentiality obligations of each such Person to You." In response, Moog again agreed to produce responsive documents, stating that it will "produce documents sufficient to show Moog's efforts to protect the secrecy of its trade secrets at issue in this case, including as they relate to departed Moog employees who now work for Defendant." (*Id*.). While Moog and Skyryse did not adequately meet and confer on this request, Skyryse's issue appears to be that Moog has only agreed to produce "documents sufficient to show Moog's efforts to protect the secrecy of its trade secrets at issue in this case" as opposed to any document that in any manner relates to Moog's secrecy efforts for its trade secrets.

As described below, Skyryse's RFP Nos. 5 and 15 are overly oppressive and not proportional to the needs of the case in light of the voluminous documents produced by Moog.

### 1. Moog Has Already Produced a Large Volume of Responsive Documents

Regarding confidentiality and efforts to keep secret the trade secrets involved in this case, and consistent with its compliance statements in response to Skyryse's RFPs Nos. 5 and 15, Moog has already produced the following categories of documents:

1. Several detailed and extremely voluminous spreadsheets and logs showing each Moog employee who has had access to the flight control programs at issue in this case located in Moog's software database (including its Jira and Subversion repositories), as well as when such employees were granted access or had access removed. The number of employees in these logs is in the thousands.

2. Employee handbooks containing confidentiality obligations and signed acknowledgments by the former Moog employees at issue in this case;

3. Moog Intellectual Property policies containing confidentiality obligations;

4. Moog's trade secret trainings and records of completion for the former Moog employees at issue in this case;

5. Signed confidentiality agreements, non-disclosures, and/or exit forms and other related documentation for the former Moog employees at issue in this case;

6. Relevant portions of contracts with certain of Moog's customers related to the provision of Moog's flight control source code to such customers;

Skyryse's repeated claims that "Moog refuses to produce documents relevant to the core elements of its claims" simply are not true. (Mot. at p. 1). Moog has produced several categories of documents showing the substantial efforts it has taken to maintain the confidentiality of its trade secrets. Notably, Skyryse does not address at all the documents that Moog ***has produced*** to date on this topic, or why such documents are inadequate for Skyryse to present its arguments in response to Moog's Preliminary Injunction Motion.

Skyryse claims it is entitled to discovery that tests whether Moog has taken reasonable efforts to maintain its trade secrets. But this is not a case where Moog has refused to produce responsive documents. Instead, as demonstrated below, it appears that Skyryse is just seeking to ratchet up Moog's expense by forcing it to gratuitously search for and collect several categories of documents going back 15 years that relate to several thousand employees, customers, and suppliers.  Skyryse has not demonstrated such discovery is proportional to the needs of the case.

**2.      Skyryse's RFPs Nos. 5 and 15 are Overbroad, Unduly Burdensome, and Not Proportional to the Needs of the Case**

As Moog has articulated to Skyryse during meet and confer, it would be unduly burdensome for Moog to search for, collect, review and produce all documents that relate in any way to confidentiality obligations owed to Moog for any of the tens of thousands of trade secrets at issue in this case. Courts around the country frequently hold that a request for "any and all documents" relating to a particular subject is overbroad and improper, especially under facts similar to those here. For example, in *Optionality Consulting Pte. Ltd. v. Edge Tech. Grp. LLC*, No. 18CV5393ALCKHP, 2022 WL 1977746 (S.D.N.Y. June 3, 2022), a trade secrets case, the court found that a request for production was "wildly overbroad" and "presumptively improper" where it sought "documents and communications related to a broad swath of documents for a broad category of services for an unlimited time period." *Id.* at \*4 (internal citations omitted); *see also Rice v. Reliastar Life Insurance Co.*, Civ. A. No. 11–44, 2011 WL 5513181, at \*2 (M.D. La. Nov. 10, 2011) (finding that "a request for 'any and all documents' relating to a particular subject is overbroad and amounts to little more than a fishing expedition"); *Badr v. Liberty Mutual Group, Inc.*, No. 3:06CV1208, 2007 WL 2904210, at \*3 (D. Conn. Sept.28, 2007) (finding request for "any and all" documents overly broad); *Pollard v. E.I. DuPont de Nemours & Co.*, No. 95–3010, 2004 WL 784489, at \*5 (W.D. Tenn. 2004) (holding "any and all" request ambiguous and overbroad). There must be guardrails around what Skyryse is entitled to discover on this topic—otherwise, the burden created by Defendants' unprecedented volume of trade secret theft would be borne not by Defendants, but by Moog. This would be neither proper nor fair.

The Michael Hunter Declaration details the tremendous burden upon Moog to comply with Skyryse's requests. Moog's Teamcenter database holds many types of proprietary information regarding the flight control software and programs at issue in this case, including

electrical schematics, actuator schematics, and other types of proprietary technical documents. (Hunter Dec., ¶ 14). There are currently approximately 4,000 Teamcenter users for Moog employees just in the United States alone. (*Id*.). Going back to 2007 when Moog started building its flight control software, the number of total Teamcenter users would likely be an additional approximately 1,000-2,000. (*Id*.).

Similarly, Moog's Jira and Subversion repositories store the flight control software, source code, software artifacts, and related documents for each of Moog's flight control programs at issue in this case. (*Id*. at ¶ 15). There are approximately 3,300 current Moog employees who have access to Jira and Subversion. (*Id*.). From 2007 onwards, the number is closer to approximately 3,800 users. (*Id*.).

If Defendants had stolen information pertaining to just one of Moog's programs, for example, the number of employees at issue here would be fewer.  But Defendants have stolen information pertaining to approximately 21 Moog programs across Moog's entire flight control software program, thereby at least tangentially touching a huge proportion of Moog's workforce—essentially all or nearly all employees who have had access to Teamcenter, Jira, and Subversion since 2007.  This volume issue is a problem of Defendants' making, not Moog's, and Moog should not be forced to bear undue burden due to Defendants' wrongdoing.

In order to produce all documents responsive to Skyryse's RFPs Nos. 5 and 15, Moog would likely have to search for and collect the following categories of documents for each the approximately 4,000-6,000 current and former employees who have had access to Moog's Teamcenter, Jira, and Subversion repositories (with some of these records dating back to 2007):

- All confidentiality agreements and non-disclosure agreements;

- All signed confirmations of receipt of Moog's employee handbooks;

- All records and logs of completed trade secret and other intellectual property trainings;

- All records of when each of these employees were granted access to Jira, Subversion, and Teamcenter, and when such access stopped;

- All program-specific confidentiality agreements/non-disclosure agreements (for example, Moog has already produced spreadsheets showing all individuals who have been given access to Moog's Sensitive Government Programs 1 and 2, totaling over 750 employees);

- All documents related to requests and approval for each employee to have access to Moog's systems and networks;

- All documents related to requests and approval for each employee to have access to Moog's Teamcenter database; and

- All documents related to requests and approval for each employee to have access to Moog's Jira and Subversion repositories. (*Id*. at ¶ 16).

In sum, Moog would likely be required to search for and collect up to 8 different categories of documents each for approximately 4,000-6,000 employees going back to 2007. (*Id*.). Courts routinely deny this type of broad discovery, even if the subject matter has relevance. *United States v. Nosal*, 291 F.R.D. 403, 411 (N.D. Cal. 2013), objections sustained in part and overruled in part, No. CR-08-0237 EMC, 2013 WL 11327121 (N.D. Cal. Mar. 29, 2013) (where court acknowledged that whether the plaintiff "maintained the secrecy of the information Nosal is charged with stealing" is relevant, it still denied a request that would "effectively require Korn/Ferry to examine all of its communications with anyone who ever worked for it" because it was an "extraordinary burden" and "so broad that it would be overly oppressive."); *Vaigasi v.*

*Solow Management Corp.*, No. 11-cv-5088 (RMB)(HBP), 2016 WL 616386, at \*14 (S.D.N.Y. Feb. 16, 2016) (rejecting a party's request for over 1,000 items).

Regarding Skyryse's requests as they pertain to Moog's customers and suppliers, similar burden and overbreadth issues exist. The flight control programs copied by Defendants include actuator schematics, electrical components, and other hardware components that implicate essentially each of Moog's Aircraft Group suppliers. These requests would implicate approximately 20 Moog customers and approximately 995 suppliers. (*Id*. at ¶¶ 17, 18). Moog would likely have to search for and produce applicable contracts and confidentiality agreements with such customers and suppliers that have any relation to the numerous trade secrets in this case, and the communications underlying such agreements. (*Id*.). Because Moog generally has multiple contracts and agreements with each of its relevant customers and suppliers, producing documents responsive to RFPs Nos. 5 and 15 would likely include thousands of contracts and agreements that contain confidentiality obligations. (*Id*.). And, many if not all of Moog's flight control customers and suppliers require approval before disclosure of the agreements at issue, adding a layer of tremendous burden on Moog. (*Id*.). Most critically, Skyryse cannot articulate a justification sufficient to impose this level of burden on Moog – Skyryse is essentially asking for full access into Moog's flight control operations business.

This is the type of fishing expedition that courts do not allow. *See Mattel, Inc. v. MGA Ent., Inc.*, No. CV 04-9049 DOC RNBX, 2010 WL 3705895, at \*9 (C.D. Cal. Sept. 17, 2010) (denying as "overbroad" a request which sought "[a]ll documents and communications that refer or relate to any failures to comply with [Mattel Mexico's] policies or procedures to maintain the secrecy of [Mattel Mexico's] trade secrets."). Skyryse does not, and cannot, demonstrate why it is required to obtain several categories of documents for between 4,000 and 6,000 employees and

nearly 1,000 suppliers, as opposed to a more reasonable sample. *See Trilegiant Corp. v. Sitel Corp.*, 272 F.R.D. 360, 366 (S.D.N.Y. 2010) (holding that a request demanding documents relating to 134,000 thousand individuals was "unreasonably burdensome" but that requests pertained to groups within the "cohort of 134,000" may be "appropriate in scope"). Skyryse is not entitled to explore Moog's customer and supplier contracts and relationships. Moog has already produced a large volume of documents responsive to RFPs Nos. 5 and 15, and has tailored its production to relevant individuals—the sample of 20 employees who departed Moog and went to Skyryse and are referenced in the Complaint. Notably, Skyryse has not made a single proposed limitation in terms of scope of employees, customers, or suppliers for RFPs Nos. 5 and 15.

### 3.        Skyryse's Cited Authority is Distinguishable

Most of Skyryse's Motion argues the merits as if this were briefing on Moog's Preliminary Injunction Motion, which it is not. Skyryse cites several cases involving preliminary injunction or other dispositive rulings where a court found the plaintiff did not take reasonable efforts to keep its proprietary information secret.  That is not before this Court now. Moog will show that it took reasonable measures to protect its trade secrets at the appropriate time. But this is discovery, and much of the legal authority cited by Skyryse has no bearing on the appropriateness (or lack thereof) of RFPs Nos. 5 and 15. Skyryse solely focuses on relevance, as opposed to burden or proportionality which are the primary objections asserted by Moog here.[1]

---

[1] While the primary preliminary injunction case cited by Skyryse, *Mason v. Amtrust Fin. Servs., Inc.*, 848 F. App'x 447 (2d Cir. 2021), is not relevant as a procedural matter, we note that it is nonetheless easily distinguishable. *Mason* does not involve the copying of over 1.4 million files by a company's former employees (including tens of thousands of source code files and other trade secrets), a prior NDA executed between the parties, or admitted possession and use of such trade secrets by the defendant. It also does not involve a company taking considerable

Before this Court is a discovery dispute, and the handful of cases cited by Skyryse involving discovery disputes are inapposite. Skyryse cites to *Struthers Sci. & Int'l Corp. v. Gen. Foods Corp.*, 51 F.R.D. 149 (D. Del. 1970) for the general proposition that discovery is not overbroad when "limited to those specific trade secrets which it claims were disclosed." (Mot. at p. 8). But in *Struthers*, the number of trade secrets at issue involved only "103 items of separate information." 51 F.R.D. at 152. Here, by stark contrast, the magnitude of theft by Defendants is staggering—Moog is presently aware of 1.4 million files that were copied by Kim and Pilkington, including at least tens of thousands of technical files and other trade secrets. The burdens involved here in producing documents going back 15 years and related to 4,000-6,000 employees and over 1,000 customers and suppliers are nothing similar to those in *Struthers*.

Further, this case did not even involve the discovery related to ***maintaining*** secrecy of trade secrets, but instead the ***identification*** of trade secrets. *Id*. Here, the matter of trade secret identification is being dealt with in separate motion practice. And in that respect, this case *helps* Moog because the court specifically noted that "Struthers will have the burden at trial of proving the secrecy of its alleged trade secrets at the time of disclosure but the cases have not yet reached that point." *Id*. Thus, the court deferred any rulings on the merits and denied the defendant's motion to compel further identification of trade secrets.

The specific portion of this case cited by Skyryse involved the plaintiff's cross motion to compel where the defendant refused to produce any of its trade secret information whatsoever. *Id*. at 154. That clearly is not at issue here given Moog's compliance statements and substantial document productions. And, the court's general statement that "discovery will be limited to those

---

efforts to protect its software and other trade secrets. *Mason* has no application here, factually or procedurally.

specific trade secrets which it claims were disclosed to General Foods" was made in the context of requiring the defendant to provide discovery on its alleged trade secrets, and not, as here, producing every single document related to confidentiality obligations for its trade secrets.

Skyryse also cites to *Sprint Commc'ns Co. L.P. v. Charter Commc'ns, Inc.*, No. 20-CV-2161-JWB-TJJ, 2020 WL 7770931 (D. Kan. Dec. 30, 2020).  Again, here, the scope of trade secrets and burdens involved are nothing similar. The misappropriated trade secrets at issue constituted "3,500 electronically stored documents." *Id*. at *2. Here, there has been a theft of at least 1.4 million files.

The document request at issue in *Sprint* is also distinguishable. There, it was "Documents and communications showing each and every measure taken to maintain secrecy of each alleged trade secret." *Id*. at *6. The plaintiff in *Sprint*, unlike here, did not request "all documents relating to" any confidentiality obligations owed by any of the plaintiff's thousands of employees, customers, or nearly 1,000 suppliers. The document request in Sprint was narrowly tailored to the legal test for trade secret confidentiality, as opposed to any and all documents related to "confidentiality obligations." *See Gropper v. David Ellis Real Est., L.P.*, No. 13 CIV. 2068 ALC JCF, 2014 WL 518234, at *4 (S.D.N.Y. Feb. 10, 2014) (a request for "any and all" documents is "inherently overbroad" and that an "appropriate request would seek documents sufficient to identify the number of employees at relevant times" as opposed to any and all documents related to that subject).

Finally, while the plaintiff in *Sprint* generally objected on overbreadth and lack of proportionality grounds, there was no indication that the plaintiff was able to demonstrate that the volume of responsive documents went back 15 years and likely encompassed up to 8 categories of documents for 4,000-6,000 employees or nearly 1,000 customers and suppliers, as

is the case here. And, perhaps most importantly, the court in *Sprint* took issue with the plaintiff's response that it would only produce documents "showing its ***reasonable*** efforts to maintain the secrecy of its trade secrets." *Id*. (emphasis added). Here, Moog agreed to and did produce documents fully responsive to RFP No. 5, but just limited the scope to former Moog employees who joined Skyryse—a reasonable limitation that achieves the proper balance of burdens. Moog did not impose any subject matter limitation or unilaterally take the position that it would only produce documents showing "reasonable" efforts to maintain secrecy like in *Sprint*.

In sum, Skyryse fails to cite a single case where a court granted a motion to compel production of documents in response to a broad request for every single document related to confidentiality of trade secrets under the circumstances before this Court. In the absence of such authority, Skyryse's Motion should be denied.

### 4. Moog Has Not Taken Any Inconsistent Positions

Skyryse claims Moog has taken inconsistent positions and has advanced the nonsensical argument that "if Moog has actually restricted access to its trade secrets as it claims in its Complaint . . . then the requests cannot be overbroad and unduly burdensome." (Mot. at p. 8). Skyryse also concludes that Moog's statements that its "trade secrets go back fifteen years" and have been accessed by "thousands of employees" "undermine Moog's trade secret claims." (*Id*.).

Skyryse is ignoring the shocking scale of the misconduct of its current employees and former employees Kim and Pilkington. As alleged in Moog's Complaint and supported by three declarations, Kim "essentially copied everything that Moog's flight control software engineering teams had worked on over the past 15 years." (ECF 4-1 at p. 11). And, this fact only concerns the 136,994 files copied by Kim and does not contemplate ***the over 1.3 million files copied by Pilkington*** which was discovered by Moog after its Complaint was filed.

The theft of trade secrets in this case is perhaps unprecedented. When there is trade secret theft involving at least a million copied files (including at least tens of thousands of technical documents and other trade secret files), there are considerable burdens in responding to overbroad discovery requests. When the theft involves taking everything that an entire software department has worked on for over 15 years, and there are likely between 4,000 and 6,000 current and former employees implicated, there are significant proportionality issues to consider. There is nothing inconsistent with Moog showing that it has restricted access to its trade secrets, while resisting production responsive to RFPs Nos. 5 and 15 where the burden is massive and the request is not *reasonably* calculated to lead to the discovery of admissible evidence beyond the materials already produced by Moog.

The cases cited by Skyryse involve theft of dozens, a few hundred, or perhaps a few thousand files. The volume and scope here is far different, and Skyryse cannot benefit from the misconduct of its current and former employees by requiring Moog to undertake unreasonable burdens to respond to RFPs Nos. 5 and 15.

Skyryse's claim that the "scope of discovery is a problem of Moog's own making" is supremely ironic—it is actually the opposite, a problem of *defendants'* making, by having stolen over 1.4 million files from Moog. (Mot. at p. 2). Moog should not be punished and unduly burdened because of the shocking volume of trade secrets taken by Defendants.

**B.     Moog Has Already Produced Documents Responsive to Skyryse's RFP No. 11 by Providing the Exact Information Skyryse is Seeking**

Skyryse's motion to compel further responses regarding RFP No. 11 is baseless and unwarranted. Moog has complied and has already produced the documents Skyryse has requested. As Skyryse admits, Moog agreed to produce "documents sufficient to show the nature

and scope of Moog's programs and projects related to automated helicopter flight" and in fact produced such documents on July 1, 2022. Skyryse apparently takes issue with Moog not agreeing to produce all documents sufficient to show the "purpose, content, and duration or cessation of any such projects." But Moog's counsel expressly advised Skyryse that the documents produced in response to RFP No. 11 would necessarily include information regarding the purpose, content, duration, or cessation of Moog's projects in this area (if any). (Andoh Dec., Ex. B).

The documents produced by Moog, which are highly proprietary and sensitive, show:

- All of Moog's projects in the areas of automated helicopter flight;

- Each customer Moog has worked with or pitched in this area;

- The duration and timing of such projects; and

- The content and purpose of such projects, including the exact helicopters and technology being designed under such projects.

Moog attaches these documents under seal for the Court's review as Exhibit "C" to the Andoh Dec. There has been no cessation of Moog projects in this area, so there is nothing for Moog to produce on that subject. Skyryse claims it is "entitled to discover documents reflecting the extent of Moog's previous, independent work in this area." (Mot. at p. 11). Moog has done exactly that and given Skyryse an extremely detailed insight into all its projects in the area of automated helicopter flight. As Moog has advised Skyryse, it cannot agree to produce all documents sufficient to show the purpose and content of such projects as that would necessarily entail the production of every research & development and technical document underlying such projects. (Andoh Dec., Ex. B). Skyryse does not argue it is entitled to such documents, nor can it.

Instead of hastily filing a motion to compel before receiving the documents Moog committed to producing, Skyryse should have reviewed Moog's production because it would have determined that it received the exact information it was asking for. The Court should deny Skyryse's motion to compel regarding RFP No. 11 as moot because Moog has already complied with it and produced the requested documents.

## IV.    CONCLUSION

Moog respectfully requests that the Court deny Skyryse's Motion in its entirety.

Dated:  New York, New York
        July 11, 2022

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
*Attorneys for Plaintiff Moog Inc.*

By:____s/Rena Andoh_____
        Rena Andoh
        Travis J. Anderson (admitted *pro hac vice*)
        Tyler E. Baker (admitted *pro hac vice*)
        Kazim A. Naqvi (admitted *pro hac vice*)
30 Rockefeller Plaza
New York, New York 10112
Telephone:  (212) 653-8700

and

**HODGSON RUSS LLP**

By:____s/Robert J. Fluskey, Jr._____
        Robert J. Fluskey, Jr.
        Melissa N. Subjeck
        Reetuparna Dutta
        Pauline T. Muto
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York 14202
(716) 856-4000