UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MOOG, INC.,<br><br>       Plaintiff,<br><br>  v.<br><br>SKYRYSE, INC., ROBERT ALIN PILKINGTON, MISOOK KIM, and DOES NOS. 1-50.<br><br>       Defendants. | Civil Action No. 1:22-cv-00187-LJV-JJM<br><br>**REPLY IN SUPPORT OF DEFENDANT SKYRYSE, INC.'S MOTION TO COMPEL TRADE SECRET IDENTIFICATION** |

## TABLE OF CONTENTS

                                                                                 **Page**

I.     INTRODUCTION .................................................................................................................1

II.    ARGUMENT........................................................................................................................2

         A.     Moog offers no justification for concealing its alleged trade secrets. .....................2

         B.     Moog can take appropriate steps to supplement its trade secret identification if necessary. ......................................................................................3

         C.     The liberal standard for pleadings is irrelevant.........................................................3

         D.     Moog's interrogatory response is deficient..............................................................6

         E.     Skyryse's motion is timely and properly seeks to compel an identification of trade secrets from the owner of those alleged trade secrets. ..............................9

III.   CONCLUSION...................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

### **CASES**

*Carl Zeiss Meditec, Inc. v. Topcon Med. Sys., Inc.*,
  No. 2021-1839, 2022 WL 1530491 (Fed. Cir. May 16, 2022) .................................................8

*DeRubeis v. Witten Techs., Inc.*,
  244 F.R.D. 676 (N.D. Ga. 2007) ...............................................................................................5

*IntelliCAD Tech. Consortium v. Suzhou Gstarsoft Co.*,
  508 F. Supp. 3d 790 (D. Or. 2020) ...........................................................................................5

*irth Sols., LLC v. Apex Data Sols. & Servs., LLC*,
  No. 18-CV-6884-FPG, 2019 WL 283831 (W.D.N.Y. Jan. 22, 2019) .......................................4

*KLX Energy Servs. LLC v. Magnesium Mach., LLC*,
  No. CIV-20-1129-F, 2022 WL 1785493 (W.D. Okla. June 1, 2022) .......................................7

*Kyocera Int'l, Inc. v. Nokia, Inc.*, No. 04 CV 1992 B (JFS),
  2005 WL 8173284 (S.D. Cal. Aug. 9, 2005) ............................................................................8

*Lockheed Martin Corp. v. L-3 Commc'ns Corp.*,
  No. 1:05-CV-902-CAP, 2006 WL 8432941 (N.D. Ga. Oct. 27, 2006) ....................................6

*MSCI Inc. v. Jacob*,
  36 Misc. 3d 211, 945 N.Y.S.2d 863 (N.Y. 2012) ...................................................................10

*Next Commc'ns., Inc. v. Viber Media, Inc.*,
  No. 14-cv-8190 (RJS), 2017 WL 4402540 (S.D.N.Y. Sept. 30, 2017) ....................................4

*Proofpoint, Inc. v. Vade Secure, Inc.*,
  No. 19-CV-04238-MMC, 2020 WL 836724 (N.D. Cal. Feb. 20, 2020) ..................................4

*Rensselaer Polytechnic Inst. v. Apple Inc.*,
  No. 1:13-CV-0633 DEP, 2014 WL 1871866 (N.D.N.Y. May 8, 2014) ...................................8

*Sit-Up Ltd. v. IAC/InterActiveCorp.*,
  No. 05 CIV 9292 (DLC), 2008 WL 463884 (S.D.N.Y. Feb. 20, 2008) ...............................4, 9

*St. Jude Med. S.C., Inc. v. Janssen-Counotte*,
  305 F.R.D. 630 (D. Or. 2015) ...................................................................................................8

### **STATUTES**

18 U.S.C. § 1839(3) ......................................................................................................................10

**RULES**

Fed. R. Civ. P. 33(d) ................................................................................................6, 7, 8

Fed. R. Civ. P. 65(d) ...........................................................................................................8

**I.      INTRODUCTION**

Moog's opposition brief is telling in what it does not say. Moog does not deny that it has known for months exactly what files it alleges Defendant Kim took from Moog without permission, where they are located on Moog's systems, what types of files they are, and—most importantly—what alleged trade secrets might reside within those files. And Moog does not deny that, despite having such granular detail, it has refused to identify even one of those alleged trade secrets in discovery, much less with the particularity the law requires. Indeed, Moog stubbornly refuses to identify even a single one of its alleged trade secrets despite knowing it must do so in the upcoming preliminary injunction proceedings if it hopes to carry its burden. Specifically, for its preliminary injunction motion—which has been pending for 18 weeks—Moog must identify any alleged trade secrets that are in play, prove those alleged trade secrets have value from not being generally known in the field, prove they were subject to reasonable efforts to protect their secrecy, and prove they were misappropriated by Skyryse. In this light it is not plausible that Moog still has no idea what trade secrets are at issue, and thus its refusal to identify them is a tactical ploy designed to keep Skyryse in the dark and on its heels for as long as possible. The time has come for Moog, at last, to tell Skyryse (and the Court) what those alleged trade secrets are.

Moog's main excuse is that it cannot know "each and every" trade secret that allegedly has been misappropriated until it has completed taking discovery. That does not justify Moog concealing all of the alleged trade secrets it must know of now. If during the course of discovery Moog believes it to be necessary, it can take appropriate steps to supplement its trade secret identification.

Moog's other excuses are equally unavailing. For example, the liberal standard for the sufficiency of a pleading does not apply to Moog's discovery failures. And Skyryse's motion is altogether timely; Skyryse sought a trade secret identification in its very first interrogatory, and promptly moved for relief after Moog stated it would not provide this information unless ordered

by the Court to do so. Moog also unequivocally has *not* provided a sufficient response by simply making nine devices available for inspection—this does nothing to inform Skyryse of what alleged trade secrets *Moog* contends are at issue. And finally, Moog's argument that Skyryse can figure out what trade secrets *Moog* contends have been misappropriated through discovery from the *other defendants* is nonsensical. Only Moog knows what alleged trade secrets it will contend were misappropriated in this action, and how Moog will contend they meet the legal definition of a trade secret. For these reasons, and as detailed further below, the Court should compel Moog to identify its trade secrets with particularity.

## II.     ARGUMENT

### A.     Moog offers no justification for concealing its alleged trade secrets.

Moog filed its complaint on March 7, alleging that "Defendants have already willfully and maliciously acquired, disclosed, and used Moog's trade secrets." (Compl. ¶ 172.) Moog could not have made this serious allegation without believing it had a sound basis. Indeed, Moog does not refute in its Opposition that it was able to catalog the files that were downloaded and copied following a detailed investigation by Moog's Security Operations Manager, Ian Bagnald, in February, and that it has detailed information in its possession about the contents of every such file. (*Id.* ¶¶ 112-13; ECF 4-18 ¶¶ 7-8, 12-13.) Yet Moog refuses to identify the alleged trade secrets contained in those files.

Moog argues that "it *may* need to further identify the trade secrets at issue in the case in advance of the Preliminary Injunction hearing" (Opp. at 3) (emphasis added), but offers no legitimate reason why it has failed, thus far, to disclose what it already knows. Accordingly, Moog should be compelled now to identify the alleged trade secrets it knows to be at issue, and it should be precluded from asserting at the preliminary injunction hearing any alleged trade secrets it is currently aware of but refuses to identify.

2

### B. Moog can take appropriate steps to supplement its trade secret identification if necessary.

Moog's argument that it "is entitled to fully review the voluminous data turned over to iDS to understand the full nature of Defendants' misappropriation" before identifying its trade secrets (Opp. at 14) is a deflection. That Moog has still more discovery materials to review does not absolve it of its obligation to disclose *now* all of the trade secrets it already knows are at issue.

Skyryse understands, and explained at the June 1 hearing, that Moog "may not know, *at this point*, with 100 percent precision *every* file that has been taken" while discovery is underway (Opp. at 10 (quoting ECF 170 at 20:9-13).) This does not, however, excuse Moog from responding to Interrogatory No. 1 by disclosing all of the trade secrets it knows of now. If Moog learns of more relevant information later on, it can seek to supplement that response. But Moog should not be permitted to continue hiding the facts that it already knows, and has known for months.

Moog's argument that delays by iDS and Skyryse are somehow to blame should be soundly rejected. (Opp. at 10.) Skyryse has turned over to iDS discoverable electronic devices on schedule and pursuant to the protocol requested *by Moog* (ECF 96-2), and Skyryse completed its privilege review by the deadline set by the Court. Due to no fault of Skyryse, iDS has been delayed preparing the devices for review. That the iDS process Moog insisted upon has moved more slowly than expected is no excuse for Moog failing to disclose what it *currently* knows about its trade secrets from its own investigation and from the voluminous discovery Skyryse has produced directly to Moog.

### C. The liberal standard for pleadings is irrelevant.

Moog argues in its Opposition that "this case remains literally and functionally at the pleading stage" (Opp. at 11), and so, because its *complaint* may have satisfied the liberal pleading standard, Moog is somehow justified in shirking its *discovery* obligations. This is plainly wrong. Moog

3

has a discovery obligation to identify its alleged trade secrets with particularity. Skyryse is not challenging Moog's pleading for failure to state a claim under Rule 12, but that does not mean Moog has satisfied Rules 26 or 33 in responding to interrogatories. Moog's arguments to the contrary are legally and factually erroneous.

Legally, there is no merit to Moog's argument that the liberal pleading standard applies to this discovery dispute. (*See* Mot. at 11-13 (*citing, e.g., Next Commc'ns., Inc. v. Viber Media, Inc.,* No. 14-cv-8190 (RJS), 2017 WL 4402540, *4 (S.D.N.Y. Sept. 30, 2017) ("Although Next's general descriptions of its alleged secrets were enough to survive a motion to dismiss, the purpose of Phase I discovery in this case was for Next to identify those secrets more specifically."); *Sit-Up Ltd. v. IAC/InterActiveCorp.,* No. 05 CIV 9292 (DLC), 2008 WL 463884, at *6 (S.D.N.Y. Feb. 20, 2008) (holding that plaintiffs must "identify with specificity what information they consider to have been a trade secret ... because the defendants have a right during discovery to test whatever the plaintiff's theory is.").)) Moog argues that *Next Communications* and *Sit-Up* are not relevant because they "involved a motion for summary judgment" (Opp. at 16), but both cases speak to the level of disclosure required ***in discovery***, and are therefore plainly applicable here.

Curiously Moog then attempts to distinguish *Irth* and *Proofpoint* by arguing that these cases are not applicable because they "involved adjudication of a preliminary injunction motion." (Opp. at 17-18; *Irth Sols., LLC v. Apex Data Sols. & Servs., LLC*, No. 18-CV-6884-FPG, 2019 WL 283831, at *8 (W.D.N.Y. Jan. 22, 2019); *Proofpoint, Inc. v. Vade Secure, Inc.*, No. 19-CV-04238-MMC, 2020 WL 836724, at *2 (N.D. Cal. Feb. 20, 2020).) But the parties here are taking tailored discovery specifically for the upcoming hearing on Moog's *preliminary injunction* motion, and so both cases are on all fours.

4

In contrast, Moog's cited cases speak to the level of disclosure required at the pleading stage, and are not relevant to this discovery dispute. (*See* Opp. at 13-15.)[1] Moog relies on passages regarding the level of specificity required in a trade secret plaintiff's complaint to survive a motion to dismiss, or the threshold question of whether the plaintiff should have to identify its trade secrets *before* it can obtain discovery. These cases have no bearing here, where (1) the sufficiency of the complaint is not the issue, and (2) Moog already has obtained extensive discovery from Skyryse.

Moog's argument that "this case remains literally and functionally at the pleading stage" should also be rejected. (Opp. at 11.) Moog filed its complaint on March 7, and discovery has proceeded for nearly four months. And the parties are just three months away from a merits-based hearing on Moog's demand for a preliminary injunction. To date, at Moog's insistence, Skyryse has shouldered an enormous and disproportionate burden responding to Moog's virtually unlimited discovery requests, all at extraordinary cost and disruption to its business. Having long passed "the pleadings stage," Skyryse has produced over 50,000 pages of documents and nearly a dozen electronic devices for inspection. The burdens of this case, while significant, should not continue to be a one-way street in which Moog demands advanced and vast discovery from Skyryse while

---

[1] Even so, many of Moog's cited cases support Skyryse's motion. In *IntelliCAD*, while the Court declined to compel particularized trade secret disclosures from ITC before the commencement of discovery, it specifically distinguished several cases in the preliminary injunction context – where plaintiff *was* required to identify its trade secrets with particularity – because "the ITC [*IntelliCAD*] has not moved for a preliminary injunction." *IntelliCAD Tech. Consortium v. Suzhou Gstarsoft Co.*, 508 F. Supp. 3d 790, 798 (D. Or. 2020). And in *DeRubeis*, cited by Moog for its discussion of "policies which support allowing the trade secret plaintiff to take discovery prior to identifying its claimed trade secrets," the court also identified at least four policies requiring particularized disclosures prior to discovery and ultimately determined that the policies favoring disclosure were more persuasive, granting a motion to compel trade secret identification. *DeRubeis v. Witten Tech*s., Inc., 244 F.R.D. 676, 680-82 (N.D. Ga. 2007).

Moog withholds fundamental and basic information going to the heart of its case and its preliminary injunction motion in particular. Moog should be compelled to identify without further delay the specific trade secrets it alleges were taken in this action.

### D. Moog's interrogatory response is deficient.

In response to Skyryse's Interrogatory No. 1 requesting a narrative description of Moog's alleged trade secrets, Moog has provided only a cryptic, one-sentence pledge to "make its trade secrets at issue in this case available for inspection," invoking Rule 33(d). (ECF 166-3 at 6-7.). Moog has not supplemented its response and has made clear it will not do so unless ordered by the Court. (ECF 166-6.) This response is woefully inadequate and the Court should compel a complete response.[2]

For one, Moog cannot hide behind Rule 33(d). Unless it is contending that every word in every document allegedly taken by Ms. Kim or Mr. Pilkington is a trade secret—an implausible contention—merely identifying the documents (which Moog has yet to do) would fall far short of meeting Moog's discovery obligations. Rather, Moog needs to explain what *information* it alleges is a Moog trade secret—i.e., what information it claims is secret and not generally known, has value from that alleged secrecy, and was the subject of reasonable measures to protect its secrecy. Merely pointing to a list of production numbers does not come close to providing this information.[3]

---

[2] Moog feigns ignorance regarding what Skyryse is seeking in response to Interrogatory No. 1, claiming that "Skyryse's Motion is silent on what additional information Moog could possibly provide at this stage." (Opp. at 15.) Skyryse has made abundantly clear, and for avoidance of doubt, now states again, that Interrogatory No. 1 seeks a narrative response describing with particularity what Moog's alleged trade secrets are, e.g., which specific software, components of software, checklists, code, or compilations thereof Moog claims are protectable as trade secrets under the law.

[3] Even if a Rule 33(d) response were sufficient here (it is not), Moog has failed to specify by production numbers any documents as required by the Rule. Fed. R. Civ. P. 33(d)(1) (requiring a party to "*specify[] the records* that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could."); *Lockheed Martin*

*Lockheed Martin Corp. v. L-3 Commc'ns Corp.*, No. 1:05-CV-902-CAP, 2006 WL 8432941, at *1 (N.D. Ga. Oct. 27, 2006) (relying on Rule 33(d) "is a completely insufficient response to an interrogatory requesting that a plaintiff in a trade secrets case identify what information it contends is proprietary."); *see also KLX Energy Servs. LLC v. Magnesium Mach., LLC*, No. CIV-20-1129-F, 2022 WL 1785493, at *1 (W.D. Okla. June 1, 2022) (finding that invoking Rule 33(d) in response to an interrogatory requesting an identification of trade secrets "is wholly–and obviously–insufficient" because "KLX could look at every one of the previously-produced documents and not know, with any certainty, which ones Mag Machine relies on as containing, describing or identifying a particular trade secret.").

In meeting and conferring, Moog stated that its trade secrets "may exist" on nine devices Moog turned over to iDS (ECF 166-7 at 1), but this too is plainly insufficient. Pointing to nine entire devices, each likely containing millions of files, and saying that Moog's trade secrets "may exist" somewhere on them is tantamount to providing Skyryse with nine separate haystacks and inviting it to find the needles that "may" be in them on its own. Moog has made no attempt to specify any particular files, pages, or code on even one of the devices that reflect its alleged trade secrets. Nor has Moog explained how this information is allegedly differentiated from publicly available or generally known information. Only Moog knows what information on its own devices and in its own files is allegedly entitled to trade secret protection, and there is no excuse for its ongoing failure to identify that information.

Identifying trade secrets with particularity is not just an obligation of every trade secret plaintiff and essential to a defendant's ability to prepare a defense, but it is also necessary for a

---

*Corp.*, 2006 WL 8432941, at *2 (holding that if a plaintiff invokes Rule 33(d) in response to an interrogatory requesting trade secret identification, it must "specify a page number or paragraph number referencing the precise material that it claims to be proprietary.").

thorough assessment of a preliminary injunction motion. Moog cannot possibly expect the Court to award any appropriate relief if it cannot ascertain what the trade secrets are. *Carl Zeiss Meditec, Inc. v. Topcon Med. Sys., Inc.*, No. 2021-1839, 2022 WL 1530491, at *2 (Fed. Cir. May 16, 2022) (holding that the Court is required to "engage an analysis of the likelihood of success on [each of plaintiff's] many and varied alleged trade secrets," and that "Rule 65(d) expressly requires that the injunction order itself must 'describe in reasonable detail—*and not by referring to the complaint or other document*—the act or acts restrained or required.'") (quoting Fed. R. Civ. P. 65(d)). Even the cases Moog cites in its Opposition confirm this point. *See, e.g., St. Jude Med. S.C., Inc. v. Janssen-Counotte*, 305 F.R.D. 630, 635 (D. Or. 2015) (denying preliminary injunction because "St. Jude S.C. cannot generically claim the entire Strat Plan, which amounted to over 500 slides, as trade secret information," and without knowing what they are, "the Court cannot assess whether the information is a trade secret at all.")

Moog's attempts to justify its one-sentence response to Interrogatory No. 1 are unpersuasive. Moog cites *Rensselaer Polytechnic Inst. v. Apple Inc.*, No. 1:13-CV-0633 DEP, 2014 WL 1871866, at *5 (N.D.N.Y. May 8, 2014) and *Kyocera Int'l, Inc. v. Nokia, Inc.*, No. 04 CV 1992 B (JFS), 2005 WL 8173284, at *5 (S.D. Cal. Aug. 9, 2005) for the proposition that "a Rule 33(d) response and production of source code in lieu of a narrative response" is appropriate. (Opp. at 21.) These cases have no bearing here – neither is a trade secret case, and neither concerned an interrogatory requiring a particularized trade secret identification. In both, the court permitted invoking Rule 33(d) in response to interrogatories that asked only for an "identification of the source code" responsible for various functions of the product or device at issue. *Kyocera*, 2005 WL 8173284 at *3. While pointing to blocks of code was responsive in those circumstances, it is not here, for the reasons described above.

8

Moog also argues that providing a narrative response "would require Moog to list each and every line of code from the tens of thousands of source code files." (Opp. at 4.) Interrogatory No. 1 requires no such thing. It asks Moog to identify its trade secrets, not "every single line of non-public source code." (*Id*. at 10.) Moog cannot seriously contend that "each and every line" of its source code constitutes a protectable trade secret, nor could it possibly intend to assert such an unreasonably large number of trade secrets in proceedings before this Court or a jury. Indeed, Moog confirms in its Opposition that it believes some (as of yet undisclosed) *combinations* of code – not each individual line – constitute its trade secrets, and devotes an entire page to arguing that compilations of data are protectable as trade secrets. (*Id*. at 22-23.) But to the extent Moog intends to claim that it has "compilation" trade secrets, it still must tell Skyryse what those compilations are; Skyryse should not be forced to guess. As courts in this circuit have explained:

> Whether something is protectable, and whether it is deserving of protection, are two entirely different questions. New York and Second Circuit law establish that compilation trade secrets are protectable but, as discussed above, the law requires the trade secret claimant [1] to describe the secret with sufficient specificity that its protectability can be assessed and [2] to show that the compilation is unique.

*Sit-Up,* 2008 WL 463884, at *10. Moog has failed to do either.

### E.  Skyryse's motion is timely and properly seeks to compel an identification of trade secrets from the owner of those alleged trade secrets.

After arguing that Skyryse's motion is "premature," Moog makes the puzzling argument that Skyryse should have raised this issue sooner, when the Parties were discussing the procedure for expedited discovery. (Opp. at 5-6 ("Skyryse entered into the stipulation having full notice of the allegations in the Complaint and the trade secrets at issue, and did not raise any challenge or objection to Moog's identification of trade secrets.").) This is another distraction; Skyryse's willingness to cooperate in expedited discovery was not a blank check permitting Moog to hide the alleged trade secrets that are at issue in this action. Nothing in the discovery stipulation remotely

suggests that Skyryse waived its right to seek a detailed identification of Moog's trade secrets. Skyryse requested a narrative identification of Moog's trade secrets as soon as expedited discovery commenced – indeed, in its very first interrogatory – because Moog has a discovery obligation to describe them with particularity.

Finally, Moog argues that "If Skyryse wants a more specific understanding of the nature and scope of Moog's trade secrets, it merely needed to obtain information from [defendants] Kim and Pilkington." (Opp. at 18.) This sarcastic argument is disingenuous at best and "shifts the burden to defendants to clarify plaintiffs' claim." *MSCI Inc. v. Jacob*, 36 Misc. 3d, 211, 214 (N.Y. 2012). *Moog* is the plaintiff. Only *Moog* claims to own protectable trade secrets in this case. Only *Moog* knows which of those trade secrets it intends to assert. No defendant knows what those alleged trade secrets are, nor do they bear Moog's burden to establish the basic elements of its case. Moog, not an accused third party, should be compelled to identify each alleged trade secret at issue and establish they were subject to reasonable measures to maintain their secrecy and derive independent economic value from being not generally known to or readily ascertainable by others. *See, e.g.*, 18 U.S.C. § 1839(3).

### III.     CONCLUSION

For the foregoing reasons, Skyryse respectfully requests that the Court order Moog to immediately identify with reasonable particularity the trade secrets it claims were misappropriated by any defendant in response to Skyryse's Interrogatory No. 1, and supplement its responses to Interrogatory Nos. 2-9 with information regarding any trade secrets Moog discloses.

| | |
|---|---|
| Dated: July 12, 2022 | */s/ Gabriel S. Gross* |

                                      **LATHAM & WATKINS LLP**

                                      Douglas E. Lumish (Admitted *Pro Hac Vice*)
Gabriel S. Gross
140 Scott Drive
Menlo Park, California 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600
Email: doug.lumish@lw.com
       gabe.gross@lw.com

Joseph H. Lee (Admitted *Pro Hac Vice*)
650 Town Center Drive
20th Floor
Costa Mesa, California 92626
Telephone: (714) 540-1235
Facsimile: (714) 755-8290
Email: joseph.lee@lw.com

**HARRIS BEACH PLLC**
Terrance P. Flynn
726 Exchange Street, Suite 1000
Buffalo, New York 14210
Telephone: (716) 200-5050
Email: tflynn@harrisbeach.com

Counsel for Defendant Skyryse, Inc.