UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MOOG INC.,

                Plaintiff,

v.

SKYRYSE, INC., ROBERT ALIN PILKINGTON, MISOOK KIM, and DOES NOS. 1-50,

                Defendants.

Case No.: No. 22-cv-00187

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO COMPEL WRITTEN DISCOVERY RESPONSES AND PRODUCTION OF DOCUMENTS**

SMRH:4866-8076-0617.4

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................1

II. SKYRYSE'S CONTINUED REFUSAL TO ANSWER MOOG'S QUESTIONS ............1

    A. Skyryse Employees on Leave ..................................................................1

    B. Individuals Who Work on Pilkington and Kim's Teams..........................3

    C. Search Term Hits for Moog Non-Public Information..............................3

    D. Moog Non-Public Information That Does Not Relate to Kim and Pilkington..................................................................................................4

III. SKYRYSE'S ADDITIONAL PROPOSED SOURCE CODE PROTOCOL IS UNNECESSARY AND INEFFICIENT ..................................................................4

    A. The Court's Inspection Protocol Already Governs Source Code ............4

    B. Skyryse's Lone Purported Issue with the Court's Inspection Protocol Does Not Merit a Separate, Second Review Protocol........................................5

    C. Any iDS Challenges or Delays are Due to Defendants' Failure to Meet Court-Ordered Deadlines ..........................................................................7

    D. Skyryse's Cited Authority is Distinguishable...........................................8

IV. SKYRYSE HAS NOT PRODUCED ALL DOCUMENTS RESPONSIVE TO MOOG'S RFPS NOS. 8-10 ......................................................................................9

    A. RFP No. 8..................................................................................................9

    B. RFP No. 9..................................................................................................9

    C. RFP No. 10..............................................................................................10

V. SKYRYSE HAS NOT PROVIDED COMPLETE ANSWERS TO MOOG INTERROGATORIES NOS. 6-8 ..........................................................................10

# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*In re Allergan PLC Sec. Litig.*,
   No. 18CIV12089CMGWG, 2020 WL 4034751 (S.D.N.Y. Mar. 30, 2020) ............................3

*Crawford-El v. Britton*,
   523 U.S. 574 (1998) ...................................................................................................................5

*Gorman v. Rensselaer Cnty.*,
   No. 114CV0434LEKDJS, 2016 WL 6679545 (N.D.N.Y. May 18, 2016) ...............................9

*John Wiley & Sons, Inc. v. Book Dog Books, LLC*,
   298 F.R.D. 184 (S.D.N.Y. 2014) ...............................................................................................2

I.      **INTRODUCTION**

Skyryse claims it has "worked tirelessly to cooperate with Moog" and "gone far above and beyond its obligations." (Opp., p. 18). The long record before this Court shows just the opposite. Skyryse's litigation conduct is not indicative of a party with nothing to hide, despite its repeated promises of transparency. The fact remains that Skyryse refuses to: 1) answer basic questions that this Court has ordered it to answer; 2) produce source code pursuant to the Court's secure and robust Inspection Protocol (which the Court already spent weeks adjudicating); and 3) provide responsive documents and information in response to Moog's discovery requests.

II.     **SKYRYSE'S CONTINUED REFUSAL TO ANSWER MOOG'S QUESTIONS**

Skyryse does not dispute that during the June 16 hearing, the Court ordered Skyryse to answer Moog's four unanswered questions from its June 16 hearing.[1] Instead, Skyryse claims that it has already answered the questions, "so the issue is moot." (Opp., p. 1). As shown in the moving papers, Skyryse has refused to provide basic answers to Moog's questions.  Skyryse also claims that "Moog has not made any showing that it is entitled to a Court order allowing such unauthorized discovery through a letter-writing campaign." (Opp. at p. 1). But, there is no unauthorized discovery and there is no further showing required. Moreover, substantively, Skyryse's purported reasons for not answering each of the questions lacks merit.

   A.     **Skyryse Employees on Leave**

It is undisputed that Skyryse has refused to identify ten of the fifteen employees it placed on administrative leave, and the reasons for their placement. Skyryse first argues that it has

---

[1] The Court provided Skyryse with clear guidance, stating that: "I think you could assume that, if need be, interrogatories will be served. So, to the extent you can respond to this information without a formal request, I encourage you to do so…[A]s much as possible, you should treat them as though they were formally requested and answer in the same way…."  (6/16/22 Tr. 43:22-25, 44:5-7.)

"explained the reasons why fifteen Skyryse employees were placed on leave" because they were "formerly associated with Moog on administrative leave" and include "employees who appear to have done nothing wrong." (Opp., p. 3). This is wholly inadequate and evasive. Skyryse has not identified these ten additional employees by name, or indicated for each one whether they were found to have possessed Moog non-public information, deleted data, or both.

Outside of the five employees that Skyryse has identified, it claims "there is no more non-privileged or work product information Moog needs or to which it is entitled." (*Id.*). Skyryse also claims that the identities of these ten additional employees "are not relevant to the claims or defenses in this case." (*Id.*). However, during the April 26 emergency conference requested by Skyryse, Skyryse's counsel unambiguously stated that the fifteen employees placed on leave consisted of "individuals who have been identified as having possessed Moog information, and individuals who had both evidence of deletion on their devices, and file name hits." (ECF 95 at 15:4, 20:5-12). How can Skyryse, on the one hand, make this disclosure to the Court and Moog but, on the other hand, claim that the identities of these individuals are not relevant to the claims and defenses in the case? If each of the fifteen employees, in Skyryse's own words, "possessed Moog information" or had "evidence of deletion" and "file name hits," Moog is entitled to know who they are and what they were identified as doing.[2]

Finally, Skyryse claims that the information sought by Moog is "unduly burdensome." (*Id.*). As a threshold matter, Skyryse has not provided any evidence to support any purported burden, as required under the law. *See John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298

---

[2] Skyryse's claim that Moog "attempts to impugn their reputations" is unsupported and incorrect. (Opp., p. 3). Nonetheless, to accommodate any confidentiality concerns, Moog will agree that the names of the ten additional employees, and the reasons for being placed on administrative leave, can be filed under seal and be designated as "CONFIDENTIAL" information under the protective order until and unless adverse employment action is taken against them.

F.R.D. 184, 186 (S.D.N.Y. 2014) (party objecting on burden or overbreadth grounds must describe the burden by "submitting affidavits or offering evidence revealing the nature of the burden."). There is no burden involved. Moog is merely requesting that Skyryse identify the names of 10 employees and provide an explanation of why each one was placed on administrative leave.

## B. Individuals Who Work on Pilkington and Kim's Teams

Skyryse has refused for months to identify employees involved in the possession of Moog data or deletion of data who worked on defendants Kim and Pilkington's team. Skyryse claims it answered the question by identifying Eric Chung. (Opp., p. 4). But, Skyryse's answer was limited to "the individuals identified in Skyryse's Opposition," meaning just five out of the fifteen employees referenced above. Skyryse has not identified whether any of the other ten employees worked on Kim and Pilkington's team. This question is easily answered and obviously relevant.

## C. Search Term Hits for Moog Non-Public Information

Skyryse has disclosed to the Court that it "found enough [Moog non-public information] that it does – it causes us concern" and a "significant number of hits" from the "list of file names and hash values" provided by Moog. (ECF 95 at 18:12-13, 19:17-24). Because this involves Moog non-public information in the hands of a competitor, Moog is entitled to know which search terms were run and the hits thereon. *See In re Allergan PLC Sec. Litig.*, No. 18CIV12089CMGWG, 2020 WL 4034751, (S.D.N.Y. Mar. 30, 2020) (where the court was "concerned that the defendants are not being sufficiently forthcoming about the search process," "the defendants must provide the plaintiff with the hit counts for searches run with proposed terms — regardless of whether the defendants believe the terms are proper.").

Skyryse claims Moog's request is "more discovery about discovery" and "not relevant to either party's claim or defenses." (Opp., p. 5). But the search terms used to locate Moog's non-public information on Skyryse's systems are clearly relevant to Moog's trade secret claims against

Skyryse. Skyryse also claims Moog's request is not "authorized by the Court's order permitting limited, expedited discovery." (*Id.*). But that is beside the point—Skyryse was *separately* ordered to answer Moog's questions regarding search terms. (6/16/22 Tr. 43:22-25, 44:5-7.)

### D.  Moog Non-Public Information That Does Not Relate to Kim and Pilkington

Moog seeks clarity on whether any of Moog's non-public information located at Skyryse did not relate to Kim and Pilkington. Skyryse indisputably has not identified whether any of the tens of thousands of Moog non-public files turned over by Skyryse relate to Kim and Pilkington or not. This is information that Skyryse can and must easily provide, for Moog to understand if the misappropriation at issue ventures beyond the named Defendants.

## III.  SKYRYSE'S ADDITIONAL PROPOSED SOURCE CODE PROTOCOL IS UNNECESSARY AND INEFFICIENT

Skyryse is asking the Court to enter a second inspection protocol governing only a certain subset of source code, with the remaining source code (numbering at least in the tens of thousands of files) would continue to be governed by the Court's existing Inspection Protocol (entered by the Court's order at ECF 109). This request should be denied for several reasons.

### A.  The Court's Inspection Protocol Already Governs Source Code

This Court already entered Moog's Inspection Protocol on May 13 which addresses the production and review of source code. (ECF 176 at pp. 8-10). Skyryse does not dispute any of this. Instead, Skyryse argues that the already-entered Inspection Protocol only governs materials (including source code) turned over to iDS pursuant to the March 11 Order and does not "apply to Skyryse's own proprietary source code" that does not contain Moog information. (Opp., p. 7).

Skyryse is incorrect. First, there is nothing in the Court's inspection protocol that limits it to documents turned over pursuant to the March 11 Order. Instead, it covers materials "made available for inspection through neutral forensic vendor iDiscovery," i.e., iDS. (ECF 96-2, p. 1).

There is no reason why Skyryse cannot make its source code available for inspection through iDS—as Moog has *already* done for at least tens of thousands of source code files. As Moog explained in its opening brief, the Court's Inspection Protocol is extremely secure, and Skyryse has not provided a single piece of evidence showing otherwise.

Skyryse claims that the Inspection Protocol does not govern the production or review of "source code repositories." (Opp., p. 9). Yet, just a few pages later, Skyryse acknowledges that it has produced its own "source code repositories" and other "volumes of source code" to iDS. (Opp., p. 16). This by itself highlights the contradictory nature of Skyryse's positions. ***Skyryse has already produced its own source code repositories to iDS***. Other than arguing technicalities that do not offer any practical benefit, Skyryse does not and cannot explain the benefit or necessity of having two separate inspection protocols govern two separate groups of source code.

Skyryse also claims that a second protocol is needed because the protective order entered by the Court "expressly contemplated the parties agreeing to a source code review order submitted as an 'addendum to be submitted to the Court.'" (Opp., p. 11). ***But that is exactly what happened here***. The Inspection Protocol entered by the Court on May 13 is titled "ADDENDUM TO PROTECTIVE ORDER" and expressly states in the first paragraph that it is intended to, among other things, cover "Source Code." (ECF 96-02, p. 1).

Judicial economy, efficiency, and practicality would be served by requiring all source code production and review to take place under the Court's Inspection Protocol, remotely through iDS, especially given that Moog and Skyryse have *already* produced large volumes of source code to iDS. *See Crawford-El v. Britton*, 523 U.S. 574, 599 (1998) ("the discovery process [should] facilitate prompt and efficient resolution of the lawsuit.").

**B.     Skyryse's Lone Purported Issue with the Court's Inspection Protocol Does Not Merit a Separate, Second Review Protocol**

Skyryse claims throughout the Opposition that the Court's Inspection Protocol is inadequate and lacks necessary security restrictions. Yet, *it only identifies one purported deficiency*, that "Moog would be able to print out Skyryse's entire production of source code without limit." (Opp., p. 10). This is incorrect. First, the framework of "printing" out paper copies of source code in this case does not make sense. Electronic production of source code (as needed, and on a HIGHLY CONFIDENTIAL—OUTSIDE COUNSEL & EXPERTS' EYES ONLY basis as the producing party may elect) is the sensible approach. Indeed, Skyryse has already *electronically* produced to Moog numerous source code files. Paper copies of source code will eventually have to digitized anyway to facilitate the submission of briefs to the Court, expert reports, etc. Forcing the expert or lawyer to show up in-person at Latham & Watkin's offices and then take back printed paper copies of source code—when the parties worked so hard to get a remote inspection protocol in place—simply does not reflect the practicalities of this case or that we are living in a pandemic. It also unnecessarily singles out source code for special treatment, when other technical documents in this case, such as schematics and software requirements documents, are equally valuable and are being governed by the Court's Inspection Protocol.

Meanwhile, the Court's Inspection Protocol already has robust procedures for requesting, and objecting to, the production of source code. Specifically, the Court's Inspection Protocol provides that the "Receiving Party may request production of documentary Inspection Materials" but that "[i]f the Producing Party objects to production of Inspection Materials, the parties must promptly meet and confer." (ECF 96-02 at §§ IV.1 & IV.3, pp. 12–13). If the parties cannot agree, then the Producing Party can prevent the production by filing a request with the Court within five business days of the meet and confer, and then the Court will decide. (*Id.* at § IV.3, p. 13).

Moreover, the Inspection Protocol has a provision that expressly prohibits abuse of the requests for production of source code, as follows:

> The Receiving Party shall not request production of Source Code in order to review Source Code outside of the Inspection Laptop in the first instance, as the parties acknowledge and agree that the purpose of the protections herein would be frustrated by such a request. Production of Source Code is permitted solely to enable use of such Source Code in filings, depositions, proceedings, contentions, expert reports, and related drafts and correspondence.

If Skyryse wants to place numeric limits on the number of pages of source code to be produced, there is no reason why the Parties cannot meet and confer on this simple issue and modify the existing Inspection Protocol to place a presumptive page limit on producing source code. Skyryse provides no explanation as to how the Inspection Protocol would "need to be entirely re-written to account for source code" or why a further meet and confer would "surely cause further delay." (Opp., p. 11). A meet and confer on a limited issue would surely cause less delay than negotiating Skyryse's brand new 11-page inspection protocol. Moreover, Skyryse has yet to identify how many lines of source code they have – for all anyone knows, it could be printed out in a few pages. Given the foregoing, the Court should, at most, order the parties to meet and confer and agree on a presumptive page limit for producing source code within 7 days and otherwise confirm that the Inspection Protocol covers all source code produced in the case.

        C.      **Any iDS Challenges or Delays are Due to Defendants' Failure to Meet Court-Ordered Deadlines**

Skyryse also complains that "the parties have faced significant challenges implementing the iDS Protocol and working with iDS." (Opp., p. 11). But, these challenges are mostly attributable to Skyryse and the Individual Defendants' insufficient diligence in working with iDS to complete the privilege excision, resulting in a situation where—to this day—Moog has access to almost ***none*** of Skyryse's devices. (ECF 180-06). Moreover, it makes no sense to go through

all the effort of working out all the issues with the iDS to set up inspection laptops, virtual machines, remote access, etc., only to then jettison all that in favor of a second inspection protocol for only a select subset of documents. Adding a second inspection protocol will take weeks to negotiate and to logistically set up (in addition to being unnecessary and costly).

### D. Skyryse's Cited Authority is Distinguishable

Skyryse cites to five cases to argue that its proposal of a "standard, stipulated source code review order" is standard practice in intellectual property cases. (Opp., p. 9). These citations are all protective orders or stipulations including language regarding source code review and production protocol, and are highly distinguishable situations for several reasons.

First, they all deal with patent infringement suits where the inventions at issue involved software/source code rather than the case here, involving the theft of over 1.4 million files where there are numerous technical files that are as valuable as source code. Second, nowhere in the docket for any of these cases is there a second different and separate protocol stipulated to by the parties or entered by the court to address the review and production of only a certain subset of source code. These patent cases only involved one source code review protocol, unlike here where the Court's Inspection Protocol already governs the review of source code via iDS. Third, in all of these cases the parties did not already have a third party neutral vendor involved for the purpose of safely producing and reviewing source code. Here, the parties have already involved iDS, which is provides an extremely secure and robust security mechanism for remote review. Fourth, there is no indication in any of these cases that any party had already produced substantial source code before the Protective Order or Stipulation at issue was entered into, as is the case here. As described above, Skyryse has already produced source code repositories and other volumes of source code to iDs, and has produced to Moog at least 295 files designated as source code. Therefore, Skyryse's reliance upon these cases is misplaced.

## IV. SKYRYSE HAS NOT PRODUCED ALL DOCUMENTS RESPONSIVE TO MOOG'S RFPS NOS. 8-10

### A. RFP No. 8

For the past three months, Skyryse has not agreed to produce any documents responsive to Moog's RFP No. 8. Indeed, the only written response received by Moog on this RFP is Skyryse's boilerplate objections. (ECF 176-09). Now, for the first time in its Opposition, Skyryse claims it is "not withholding responsive non-privileged documents and that it has "searched for documents" but has been "unable to locate additional responsive documents." (Opp., p. 15).

While Moog finds it difficult to believe that Skyryse cannot locate any documents responsive to RFP No. 8, given that Skyryse is a sophisticated technology company with over 70 employees, Skyryse should be ordered to memorialize its new positions above in a formal supplemental response within 7 days that no non-privileged responsive documents could be located following a reasonable and diligent search. Indeed, a formal supplemental response is required so that Moog can test these positions later in the case. *See Gorman v. Rensselaer Cnty.*, No. 114CV0434LEKDJS, 2016 WL 6679545, at *2 (N.D.N.Y. May 18, 2016) (where attorney affirmed in opposition to a motion to compel that responsive documents were being gathered, the court "agree[d] that the Defendants should file a formal supplemental discovery response.").

### B. RFP No. 9

Skyryse claims for the first time in its Opposition that it "is not withholding responsive non-privileged documents." (Opp., p. 15). But, all Skyryse has agreed to produce to date are "source code and software planning documents." (*Id*.). It has not agreed to produce all documents from 2021 to present regarding the development, testing, or certification of Skyryse's flight control software, as requested by RFP No. 9. Skyryse has not agreed to produce, for example, software testing or certification Documents, test equipment and simulations, and software quality control

Documents. In its Opposition, Skyryse does not dispute the relevance of RFP No. 9. It does not articulate any burden or overbreadth objection. Thus, the Court should order Skyryse to provide a supplemental response agreeing to produce all non-privileged documents responsive to RFP No. 9 and to complete such production within 7 days (or to confirm no other documents exist).

### C. RFP No. 10

Again, for the first time in Opposition, Skyryse indicates it will agree to produce all non-privileged documents responsive to RFP No. 10. Thus, the Court should order Skyryse to provide a supplemental response affirming it will produce all non-privileged documents responsive to RFP No. 10 and to complete such production within 7 days.

### V. SKYRYSE HAS NOT PROVIDED COMPLETE ANSWERS TO MOOG INTERROGATORIES NOS. 6-8

As discussed in the moving papers, Skyryse has failed to provide several categories of responsive information to these interrogatories. Contrary to Skyryse's claims, none of the outstanding items are "additional information" that Moog never asked for, rather, they squarely fall under the umbrella of interrogatories at issue. And, Skyryse has not demonstrated that any of the requested information is irrelevant or overbroad. The Court should order Skyryse to provide complete, verified supplemental responses to Moog's Interrogatories Nos. 6-8.[3]

---

[3] Skyryse's gratuitous and ad hominem attacks on Moog and its counsel are improper and unnecessary. Moog takes particular issue with Skyryse's claim that Moog has not properly met and conferred on discovery disputes. Skyryse's claim that Moog's "discovery motions contain no affidavits reflecting any attempts by Plaintiff to meet and confer with Defendants" is directly contradicted by the Exhibits attached to the Declaration of Rena Andoh showing extensive and detailed meet and confer on each instant issue. (ECF 176-176-06, 07, 08, 11). The fact that many of the issues before the Court have been pending for 3 months, and have already been ordered by the Court, speaks for itself.

Dated: New York, New York
       July 13, 2022

                                    **SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**

*Attorneys for Plaintiff Moog Inc.*

By:   s/Rena Andoh
      Rena Andoh
      Travis J. Anderson (admitted *pro hac vice*)
      Tyler E. Baker (admitted *pro hac vice*)
      Kazim A. Naqvi (admitted *pro hac vice*)
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 653-8700

and

**HODGSON RUSS LLP**

By:   s/Robert J. Fluskey, Jr.
      Robert J. Fluskey, Jr.
      Melissa N. Subjeck
      Reetuparna Dutta
      Pauline T. Muto
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York 14202
(716) 856-4000