UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MOOG, INC.,<br><br>      Plaintiff,<br><br> v.<br><br>SKYRYSE, INC., ROBERT ALIN PILKINGTON, MISOOK KIM, and DOES NOS. 1-50.<br><br>      Defendants. | Civil Action No. 1:22-cv-00187-LJV-JJM<br><br>**REPLY IN SUPPORT OF DEFENDANT SKYRYSE, INC.'S MOTION TO COMPEL PRODUCTION** |

**TABLE OF CONTENTS**

                                                                                                                                **Page**

I. INTRODUCTION ...........................................................................................................1

II. THE COURT SHOULD COMPEL MOOG TO PROVIDE DISCOVERY
REGARDING ITS EFFORTS TO MAINTAIN THE SECRECY OF ITS
ALLEGED TRADE SECRETS. ......................................................................................2

      A.     Discovery regarding Moog's confidentiality agreements and related efforts
to maintain secrecy is essential to resolving the merits of Moog's claims. ..............2

      B.     Moog mischaracterizes the legal standard for proportionality, which
Skyryse has easily met. ..............................................................................................3

      C.     Moog's sparse document productions are insufficient. ...........................................4

      D.     Moog's excuses lack merit. .......................................................................................6

      E.     Moog mischaracterizes the cases on which it relies, which are inapposite
and distinguishable. ....................................................................................................8

III. THE COURT SHOULD GRANT SKYRYSE'S MOTION TO COMPEL
RELATING TO MOOG'S AUTOMATED FLIGHT RESEARCH AND
PROGRAMS. ..................................................................................................................10

IV. CONCLUSION ...............................................................................................................10

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Art & Cook v. Haber*,
   416 F. Supp. 3d (E.D.N.Y 2017) ..................................................................................2, 5

*Assured Guar. Mun. Corp. v. UBS Real Est. Sec. Inc.*,
   No. 12 CIV. 1579 (HB), 2013 WL 1195545 (S.D.N.Y. Mar. 25, 2013) ..................................6

*Badr v. Liberty Mutual Group, Inc.*,
   No. 3:06CV1208, 2007 WL 2904210 (D.Conn. Sept. 28, 2007) .............................................8

*Broker Genius, Inc. v . Zalta*,
   280 F. Supp. 3d 495 (S.D.N.Y 2017) ........................................................................................5

*Burns v. Imagine Films Ent., Inc.*,
   164 F.R.D. 589 (W.D.N.Y. 1996) ..............................................................................................6

*Cappetta v. GC Services Limited Partnership,*
   No. 3:07CV288, 2008 WL 5377934 (E.D. Va. Dec. 24, 2008) .................................................6

*Cornell Rsch. Found., Inc. v. Hewlett Packard Co.*,
   223 F.RD. 55, 67 (N.D.N.Y. 2003) ...........................................................................................8

*Herring v. Clark*,
   No. 1:05-cv-00079-LJO-SMS-PC,
   2011 WL 2433672 (E.D. Cal. June 14 2011) ...........................................................................7

*Manning v. Gen. Motors*,
   247 F.R.D. 646 (D. Kan. 2007)..................................................................................................6

*Mason v. Amtrust Fin. Servs., Inc.*,
   848 F. App'x 447 (2d Cir. 2021) ...............................................................................................2

*Mattel, Inc. v. MGA Entertainment., Inc.*,
   No. CV 04-9049 DOC, 2010 WL 3705895 (C.D. Cal. Sept. 17, 2010) ....................................8

*O'Garra v. Northwell Health*,
   No. CV162191DRHAYS, 2018 WL 502656 (E.D.N.Y. Jan. 22, 2018) .................................3, 9

*Optionality Consulting Private Ltd. v. Edge Tech. Group LLC*,
   No. 18-CV-5393(ALC)(KHP), 2022 WL 1977746 (S.D.N.Y. June 3, 2022) ...........................9

*Pollard v. E.I. DuPont de Nemours & Co.*,
   No. 95-3010, 2004 WL 784489 (W.D. Tenn. 2004)..................................................................8

*Rice v. Reliastar Life Insurance Co.*,
  Civ. A. No. 11-44-BAJ-CN, 2011 WL 5513181 (M.D. La. Nov. 10, 2011)..............................8

*Sanford Redmond, Inc. v. Mid-America Dairyman, Inc.*,
  No. 85 CIV 4574 (RJW), 1992 WL 57090 (S.D.N.Y. Mar. 4, 1992).........................................5

*Smith v. Haag,*
  No. 08-CV-6360CJS, 2009 WL 3073976 (W.D.N.Y. Sept. 22, 2009).....................................9

*Structured Cap. Sols., LLC v. Commerzbank AG,*
  177 F. Supp. 3d 816 (S.D.N.Y 2016).......................................................................................3

*Trilegiant Corp. v. Sitel Corp.*,
  272 F.R.D. 360 (S.D.N.Y. 2010) .............................................................................................9

*Turret Labs USA, Inc. v. CargoSprint LLC*,
  No. 21-952, 2022 WL 701161 (2d Cir. Mar. 9, 2022)...........................................................3, 5

*United States v. Nosal*,
  291 F.R.D. 403 (N.D. Cal. 2013),
  *objections sustained in part and overruled in part*, No. CR-08-0237 EMC,
  2013 WL 11327121 (N.D. Cal. Mar. 29, 2013)........................................................................8

*Vaigasi v. Solow Mgmt. Corp.*,
  No. 11-cv-5088 (RMB)(HBP), 2016 WL 616386 (S.D.N.Y. Feb. 16, 2016) ...........................9

I.  **INTRODUCTION**

Moog's opposition brief confirms exactly why Skyryse needs, and is entitled to take, full and fair discovery into the efforts Moog has taken to keep its alleged trade secrets a secret. For example, Moog admits that it is withholding thousands of relevant documents in this case and that "4,000-6,000 current and former employees … have had access to" the relevant repositories in this case. Opp. at 8. Moog also contends that Skyryse's requests for documents concerning access to its trade secrets by third parties implicates "thousands of contracts and underlying communications with over 1,000 combined customers and suppliers." *Id*. at 2. This is unusual, to say the least. Far from safeguarding its alleged trade secrets or restricting access to them on a "need to know" basis, as one would expect for true trade secrets, Moog has apparently allowed access to them by thousands of people. Moog also admits that ███████████████████████████████████ ████████ The facts surrounding Moog's treatment of its alleged trade secrets, once fully discovered, may prove fatal to Moog's claims.

Despite these revelations, Moog is defiantly withholding a significant volume of unquestionably relevant documents, complaining it is too burdensome to produce the contracts it knows it has entered with its employees, suppliers, and customers. Moog cannot avoid this discovery by making unsubstantiated claims of burden, producing only self-serving documents showing nominal measures to protect secrecy, while withholding hundreds or thousands of others. Moog came to this Court demanding extraordinary, emergency relief, making serious accusations of "an enormous amount" of trade secret misappropriation, arguing its damages are "simply massive." And it has insisted on vast discovery from Skyryse in severely truncated time periods, knowing full well Skyryse is a much smaller company with a tiny fraction of Moog's resources. Moog should not now be heard to complain about the work it has to do to provide discovery that is commensurate with the scope of its claims and entirely proportional to the needs of this case. Finally, Moog has

1

offered no reason why it should be permitted to withhold documents pertaining to its most relevant research and development programs. Respectfully, the Court should grant Skyryse's motion.

## II. THE COURT SHOULD COMPEL MOOG TO PROVIDE DISCOVERY REGARDING ITS EFFORTS TO MAINTAIN THE SECRECY OF ITS ALLEGED TRADE SECRETS.

Moog has refused to produce documents related to the confidentiality obligations owed to Moog by its customers, employees, and suppliers (in response to Skyryse's request no. 5), and relating to Moog's other efforts to maintain the secrecy of its alleged trade secrets (in response to Skyryse's request no. 15). Moog offers no legitimate excuse for withholding this discovery.

### A. Discovery regarding Moog's confidentiality agreements and related efforts to maintain secrecy is essential to resolving the merits of Moog's claims.

Moog cannot "succeed on a claim of misappropriation of trade secrets" unless it took "'reasonable measures' to keep the proprietary information secret.'" *Mason v. Amtrust Fin. Servs., Inc.*, 848 F. App'x 447, 450 (2d Cir. 2021) (affirming denial of preliminary injunction). Moog's interrogatory responses and opposition brief show that discovery regarding these issues, including Moog's confidentiality agreements and related efforts to maintain secrecy, is critical to this case.

Moog's opposition reveals that a staggering number of people may have had access to Moog's alleged trade secrets. This includes 4,000-6,000 current and former employees who Moog states unequivocally "have had access to" the repositories Moog says hold its purported trade secrets. (Opp. at 8-9.) It also includes twenty third-party customers and 995 third-party suppliers with agreements Moog concedes are implicated by Skyryse's requests. (Opp. at 10.) Moog admits that ███████████████████████████████████████ (ECF 166-3 at 27.) Such unhampered access to the alleged trade secrets could vitiate any legal protection. *Art & Cook v. Haber*, 416 F. Supp. 3d, 191, 197-98 (E.D.N.Y

2

2017). Moog also does not dispute that it has entered into confidentiality agreements of only limited duration (Mot. at 9-10), which also could doom its claims. *Structured Cap. Sols., LLC v. Commerzbank AG*, 177 F. Supp. 3d 816, 835-36 (S.D.N.Y 2016). And Moog has failed to provide a straight answer regarding who has accessed its purportedly trade secret source code. Moog first claimed that it ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (ECF 166-3 at 29), then claimed ▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (*id.*), and now Moog asserts there are numerous "contracts with certain of Moog's customers related to the provision of Moog's flight control source code." (Opp. at 6.). "[W]here an alleged trade secret consists 'primarily, if not entirely,' of a computer software's functionality," "the reasonableness analysis will often focus on who is given access, and on the importance of confidentiality and nondisclosure agreements to maintaining secrecy"—which Skyryse is entitled to explore in discovery. *Turret Labs USA, Inc. v. CargoSprint LLC*, No. 21-952, 2022 WL 701161, at *2 (2d Cir. Mar. 9, 2022).

    **B.**    **Moog mischaracterizes the legal standard for proportionality, which Skyryse has easily met.**

Moog argues that in assessing proportionality the Court should consider only (1) the parties' access to information, (2) the importance of the discovery, and (3) whether the burden of the discovery outweighs its benefit. (Opp. at 4.) But Moog leaves out half the test. The relevant factors also include: (4) the importance of the issues at stake in the litigation, (5) the amount in controversy, and (6) the parties' resources. *O'Garra v. Northwell Health*, No. CV162191DRHAYS, 2018 WL 502656, at *2 (E.D.N.Y. Jan. 22, 2018). All six factors favor Skyryse.

*First*, Moog cannot deny the importance of the issues at stake in this litigation. Moog has accused Skyryse of "illegal taking and use of its trade secrets" including "the misappropriation of sensitive US Government technical data developed by Moog." (ECF 1 at ¶ 1.) Skyryse must have a full and fair opportunity to defend itself against such serious claims.

3

***Second***, the amount in controversy warrants compelling this discovery. Moog claims it has suffered damages, and when discussing its investments in the purported trade secrets, alleges that "the magnitude is simply massive" including investments of "$28 million" and "$100 million." (*Id*. ¶¶ 37, 154, 176-77, 192.) Moog suggests its trade secrets have contributed to its "annual sales of approximately $3 Billion" and also to Skyryse's "initial venture funding of $25 million," "13 million," and "another $200 million investment." (*Id.* ¶¶ 10-11, 77.) Skyryse categorically denies these allegations, but Moog has placed hundreds of millions of dollars "in controversy" and so its complaints about the "burden" of producing a few thousand documents are not well taken.

***Third***, Moog is the only party with access to this information, as the documents and contracts reflecting Moog's secrecy measures—whether sufficient or not—are entirely in its control.

***Fourth***, as a global, publicly held company with $3 billion in revenue, Moog plainly has the resources to identify and produce a few thousand documents that are already in its possession.

***Fifth***, Moog does not even try to refute the case law Skyryse cited in its motion establishing the importance of whether a plaintiff has taken reasonable measures to protect the alleged trade secrets. (*See* Mot. at 5-10.) The issue goes directly to the heart of Moog's misappropriation claim.

***Sixth***, there is no serious question that the benefit of this discovery, which speaks to an essential element of Moog's case, far outweighs any burden or expense to Moog in producing a collection of relevant business records. The burden on Moog of producing a few thousand documents pales in comparison to the litigation and discovery burdens Moog has imposed on Skyryse, and to the monetary and injunctive remedies Moog demands.

### C. Moog's sparse document productions are insufficient.

Moog claims that it has "already produced a large volume of responsive documents" that purportedly show "the substantial efforts it has taken to maintain the confidentiality of its trade secrets." (Opp. at 1, 5-6.) Not so. Moog has produced a select few self-serving documents, but has

4

fallen far short of producing anything resembling a complete set of responsive documents. Moog claims to have produced a few "spreadsheets and logs" identifying each "Moog employee who has had access to the flight control programs at issue in this case." (Opp. at 5). But these spreadsheets identify thousands of employees who had access to the repositories holding the alleged trade secrets, and when viewed in the context of Moog's admission that ███████████████████ ████████████, only confirm the importance of Skyryse's requests. Skyryse is entitled to documents showing which of those ████████████████████████████████████████████, and that Moog has electronic databases identifying this information undercuts its burden claims.

Moog also improperly limited its productions to documents "related to former Moog employees who now work for Skyryse," excluding thousands of others. (Opp. at 4.) But the number, roles, and confidentiality obligations of all employees who had access to the alleged trade secrets are plainly relevant. *See Art & Cook*, 416 F. Supp. 3d at 197-198 (denying preliminary injunction where employees other than defendant did not sign non-disclosure agreements). Why should Moog be permitted to withhold documents showing that ████████████████████████████████████ ████████████, just because those employees do not "now work for Skyryse?"

Moog also has restricted its production to "[r]elevant portions of contracts with certain customers related to the provision of Moog's flight control source code to such customers." (Opp. at 6.) But Skyryse is entitled to more than *portions* of contracts with *certain* customers, especially given the implication from Moog's opposition that thousands of such customers may have had access to the alleged trade secrets (Opp. at 7-8). *Turret Labs*, 2022 WL 701161, at *3-4.[1]

---

[1] *See*, *e.g.*, *Sanford Redmond, Inc. v. Mid-America Dairyman, Inc.*, No. 85 CIV 4574 (RJW), 1992 WL 57090, at *4 (S.D.N.Y. Mar. 4, 1992) (no trade secret protection in the absence of any "requirement that the [third party's] employees sign confidentiality agreements"); *Broker Genius, Inc. v . Zalta*, 280 F. Supp. 3d 495, 517-18 (S.D.N.Y 2017) (denying preliminary injunction where plaintiff disclosed trade secrets to customers without "binding them to confidentiality agreements").

### D. Moog's excuses lack merit.

Moog claims the Declaration of Michael Hunter "details the tremendous burden upon Moog to comply with Skyryse's request" to produce relevant documents. (Opp. at 7.) It does not. Mr. Hunter simply confirms that Moog has thousands of responsive documents it is improperly withholding. He states that Moog has electronic databases tracking employees who have had access to the relevant information, and that "Moog would have to search for and collect dozens if not hundreds of customer contracts and non-disclosure agreements," and "likely over 1,000 supplier contracts." (Hunter Decl. ¶¶ 14-18.) But beyond his conclusory opinion that collecting these records would inflict some "tremendous burden" on Moog (an international company with $3 billion in annual sales), Mr. Hunter provides no facts actually demonstrating any undue hardship.

Mr. Hunter does not contend that the documents are not readily available; he does not describe some inordinate number of expected man-hours or expense to collect them; nor does he explain any extraordinary steps Moog would have to take to collect these business records—which is a routine part of discovery in any civil action. (*Id.*) *See, e.g.*, *Manning v. Gen. Motors*, 247 F.R.D. 646, 654 (D. Kan. 2007) (finding defendant "failed to adequately support its undue burden objection" where it did not "provide the Court with any evidence showing the expenditure of time, effort or money that would be necessary to produce the requested documents"); *Assured Guar. Mun. Corp. v. UBS Real Est. Sec. Inc.*, No. 12 CIV. 1579 (HB) (JCF), 2013 WL 1195545, at *5 (S.D.N.Y. Mar. 25, 2013) (finding the "total number of documents to be reviewed, by itself, does not warrant curtailing discovery").[2] At bottom, Mr. Hunter's declaration does nothing more than

---

[2] Moog fails to address *Cappetta v. GC Services Limited Partnership*, which explained that "[t]he mere fact that responding to a discovery request will require the objecting party to expend considerable time, effort and expense consulting, reviewing and analyzing huge volumes of documents and information is an insufficient basis to object to a relevant discovery request." No. 3:07CV288, 2008 WL 5377934, at *3 (E.D. Va. Dec. 24, 2008) (quoting *Burns v. Imagine Films Ent., Inc.*, 164

6

confirm that Moog has thousands of relevant documents in its possession that it is withholding. Skyryse has not embarked on a "fishing expedition"—it seeks discovery on a discrete topic, documented in a finite set of documents.

Second, Moog attempts to show undue burden by attacking a strawman. Moog points to categories of documents that it claims would be burdensome to collect and produce. (Opp. at 8-9.) But Skyryse confirmed for Moog long ago in meeting and conferring that it is *not* seeking such documents through its discovery requests. (ECF 179-6 (June 22, 2022 J. Osborne email) at 8 ("we disagree with your exaggeration that Skyryse's revised request calls for 'every single data log and time entry where a Moog employee accessed Moog's software database.' It does not.").

Third, Moog argues that the "volume issue is a problem of Defendants' making," repeating its mantra that Defendants Kim and Pilkington allegedly took "millions" of trade secrets. (Opp. at 8.) But the present dispute is not about which trade secrets are at issue; that is the subject of a separate motion. (ECF 166.) The issue here is whether Moog will be compelled to provide discovery about its own disclosure, dissemination, and cavalier treatment of its trade secrets. (Mot. at 8-10.) Moog's pattern of providing thousands of people access to its trade secrets is indisputably a problem of Moog's own making, and the topic is properly the subject of discovery.

Fourth, Moog's attempt to distinguish Skyryse's cited case law denying preliminary injunctions in trade secret cases as "not relevant as a procedural matter" is nonsensical. (Opp. at 11.) Moog acknowledges that it will have to "show that it took reasonable measures to protect its trade secrets at the appropriate time." (*Id.*) With a merits-based preliminary injunction hearing three months away, and depositions right around the corner, that time is now.

---

F.R.D. 589, 593 (W.D.N.Y. 1996)). "[L]arge corporations and institutions…are expected to have means for locating documents requested in legal matters." *Herring v. Clark*, No. 1:05-cv-00079-LJO-SMS-PC, 2011 WL 2433672, at *9 (E.D. Cal. June 14 2011).

7

Fifth, Moog's concern about third-party confidentiality is of no moment. Producing documents subject to confidentiality obligations is normal in business litigation, and there is a Protective Order in place to accommodate such concerns. (Dkt. 89.) *Cornell Rsch. Found., Inc. v. Hewlett Packard Co.*, 223 F.RD. 55, 67 (N.D.N.Y. 2003). If Moog contends it needs third parties' consent to provide discovery, then Moog needs to substantiate this, and should have obtained those consents long ago. This does not change Skyryse's legitimate need for this discovery.

### E. Moog mischaracterizes the cases on which it relies, which are inapposite and distinguishable.

Moog relies heavily on *Mattel, Inc. v. MGA Entertainment., Inc.*, No. CV 04-9049 DOC (RNBX), 2010 WL 3705895, at *9 (C.D. Cal. Sept. 17, 2010). But in *Mattel*, the court declined to compel production of documents where the proponent failed to establish that the request was related to a "legal claim or defense to this case." *Id*. Moog does not, and cannot, deny the relevance of Skyryse's document requests. Moog's selective quotations from *United States v. Nosal* hide its limited value. 291 F.R.D. 403, 411 (N.D. Cal. 2013), *objections sustained in part and overruled in part*, No. CR-08-0237 EMC, 2013 WL 11327121 (N.D. Cal. Mar. 29, 2013). *Nosal* was a criminal case that involved a subpoena served on a third party. *Id*.[3] The court quashed the subpoena because the defendant "was provided with many or perhaps all responsive documents in the course of discovery in a related civil arbitration," *Nosal*, 2013 WL 11327121 at *11, and "[i]t would be burdensome to require [a third party] to duplicate that effort." *Nosal*, 291 F.R.D. at 411. Moog is not a third party and Skyryse has not received the responsive documents in a separate proceeding.

---

[3] *Rice v. Reliastar Life Insurance Co.*, Civ. A. No. 11-44-BAJ-CN, 2011 WL 5513181 (M.D. La. Nov. 10, 2011), *Badr v. Liberty Mutual Group, Inc.*, No. 3:06CV1208, 2007 WL 2904210 (D.Conn. Sept. 28, 2007), and *Pollard v. E.I. DuPont de Nemours & Co.*, No. 95-3010, 2004 WL 784489 (W.D. Tenn. 2004) also involved third-party subpoenas and are therefore inapposite.

8

Moog's reliance on *O'Garra*, 2018 WL 502656, at *1, is also misplaced. The court there rejected plaintiffs' argument that "[d]efendant should not be allowed to fish through his entire personnel file," because plaintiffs' allegations had put the documents "squarely at issue." *Id.* at *3. The same is true here: Moog has put the documents relating to how its trade secrets have been treated by thousands of employees, suppliers, and customers, squarely at issue. *Smith v. Haag* also does not support Moog's argument because the court there quashed the requests on relevance and not burden grounds, and enforced other requests "to produce documents contained in [employee] personnel files" where it could "lead to the discovery of admissible evidence." No. 08-CV-6360CJS, 2009 WL 3073976, at *3-4 (W.D.N.Y. Sept. 22, 2009).

Next, Moog's description of *Vaigasi* is misleading. *Vaigasi v. Solow Mgmt. Corp.*, No. 11-cv-5088 (RMB)(HBP), 2016 WL 616386, at *14 (S.D.N.Y. Feb. 16, 2016). That court did not reject "a party's request for over 1,000 items," as Moog states. (Opp. at 9-10.) The court rejected plaintiff's attempt to serve 1,100 **document requests** in an employment discrimination case. In *Optionality,* also cited by Moog, the court held that a request was overbroad because it was not tailored to services and offerings relevant to the trade secrets at issue. *Optionality Consulting Private Ltd. v. Edge Tech. Group LLC*, No. 18-CV-5393(ALC)(KHP), 2022 WL 1977746 at *4 (S.D.N.Y. June 3, 2022). Here, there is no dispute that Skyryse's requests are tailored to information related to Moog's alleged trade secrets. Finally, *Trilegiant* is also of no use to Moog. *Trilegiant Corp. v. Sitel Corp.*, 272 F.R.D. 360, 366 (S.D.N.Y. 2010). The court there held that it was "unreasonably burdensome" to serve a document request pertaining to 134,000 individuals but that a request tailored to a smaller group would be "appropriate in scope." *Id.* Moog's opposition confirms that Skyryse's request captures a much smaller group than that at issue in *Trilegant*.

9

### III. THE COURT SHOULD GRANT SKYRYSE'S MOTION TO COMPEL RELATING TO MOOG'S AUTOMATED FLIGHT RESEARCH AND PROGRAMS.

Moog fails to justify its refusal to produce documents regarding the purpose, content, and duration of its automated flight research and programs. Moog claims it "has already produced the documents" on July 1, 2022. (Opp. at 15.) But Moog produced only six responsive documents, which are not sufficient to show the "purpose, content, and duration or cessation of" its automated flight programs. Moog claims that these documents might *happen* to be responsive, and that is somehow sufficient. It is not. Moog refuses to produce documents **sufficient to show** the purpose, content, and duration of Moog's automated flight projects. (Opp. at 16.)

Moog does not dispute the relevance of the requested documents, and its burden objection has no merit. The automated flight projects at issue date back only five years (Compl. ¶ 143), and Skyryse has already substantially narrowed RFP No. 11 from "All Documents and Communications" to "Documents *sufficient to show* the nature, scope, purpose, content, and duration" of such projects. Nevertheless, Moog claims that producing these documents "would necessarily entail the production of every research & development and technical document underlying such projects." (Opp. at 16.) Moog provides no evidence substantiating its burden claims.

Moog's attempt to characterize this dispute as premature is also inaccurate. Skyryse did not "hastily fil[e] a motion to compel" without reviewing Moog's production. (Opp. at 17.) Rather, Moog refused to produce documents responsive to a request that Skyryse had *significantly narrowed*. It was clear from Moog's representations, and after over a month of conferring, that the parties were at an impasse, and the six documents Moog produced on July 1 only confirmed that the limited subset of responsive documents Moog had agreed to produce was not sufficient.

### IV. CONCLUSION

For the reasons stated above Skyryse respectfully requests that the Court grant its motion.

Dated: July 13, 2022 /s/ Gabriel S. Gross

**LATHAM & WATKINS LLP**

Douglas E. Lumish (Admitted *Pro Hac Vice*)
Gabriel S. Gross
Arman Zahoory (Admitted *Pro Hac Vice*)
140 Scott Drive
Menlo Park, California 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600
Email: doug.lumish@lw.com
           gabe.gross@lw.com

Joseph H. Lee (Admitted *Pro Hac Vice*)
650 Town Center Drive
20th Floor
Costa Mesa, California 92626
Telephone: (714) 540-1235
Facsimile: (714) 755-8290
Email: joseph.lee@lw.com

**HARRIS BEACH PLLC**
Terrance P. Flynn
726 Exchange Street, Suite 1000
Buffalo, New York 14210
Telephone: (716) 200-5050
Email: tflynn@harrisbeach.com

Counsel for Defendant Skyryse, Inc.