```
 1                    UNITED STATES DISTRICT COURT

 2                   WESTERN DISTRICT OF NEW YORK

 3
       - - - - - - - - - - - - - - X
 4     MOOG INC.,              )      22-CV-187
                     Plaintiff  )
 5     vs.
                                    Buffalo, New York
 6     SKYRYSE, INC., et al    )     July 15, 2022
                       Defendant.
 7     - - - - - - - - - - - - - - X
       ORAL ARGUMENT
 8     Proceeding held via Zoom for Government Platform
       All parties appeared remotely.
 9     Transcribed from audio of Zoom for Government Platform

10                     TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE JEREMIAH J. MCCARTHY
11               UNITED STATES MAGISTRATE JUDGE

12
       FOR PLAINTIFF: SHEPPHARD MULLIN RICHETER & HAMPTON, LLP
13                    BY: RENA ANDOH, ESQ.
                          LAI YIP, ESQ.
14                        KAZIM A. NAQVI, ESQ.
                             -and-
15                    HODGSON RUSS, LLP
                      BY: ROBERT J. FLUSKEY, JR, ESQ.
16                        PAULINE MUTO, ESQ.

17     FOR DEFENDANT:  LATHAM & WATKINS, LLP
                       BY: DOUGLAS E. LUMISH, ESQ.
18                         GABRIEL S. GROSS, ESQ.
                           KELLEY STOREY, ESQ.
19                         ARMAN ZAHOORY, ESQ.
                           RYAN BANKS, ESQ.

20

21     FOR DEFENDANT
       PILKINGTON/KIM: WINGET, SPADAFORA & SCHWARTZBERG, LLP
22                     BY: ALEXANDER ASHER TRUITT, ESQ.
                           ANTHONY D. GREEN, ESQ.

23

24     COURT REPORTER: Karen J. Clark, Official Court Reporter
                        Karenclark1013@AOL.com
25                      100 State Street
                        Rochester, New York 14614
```

```
 1              MOOG, INC. VS. SKYRYSE, INC.

 2

 3              P R O C E E D I N G
                *           *           *
 4

 5
12:32:19
12:32:19 6

12:33:14 7         THE CLERK:  Good afternoon.  We're on the

12:33:17 8    record in civil proceeding 22CV187, Moog V Skyryse for

12:33:25 9    oral argument.  Could, participants please state their

12:33:28 10   appearances?

12:33:31 11        MS. ANDOH:  Your Honor, on behalf of

12:33:33 12   Plaintiff Moog, you have Rena Andoh, Lai Yip and Kazim

12:33:39 13   Naqvi from Sheppard Mullin, and then you have Rob

12:34:29 14   Fluskey and Polly Muto from Hodgson Russ.

12:34:33 15        MAGISTRATE JUDGE MCCARTHY:  Okay.  Good

12:34:33 16   afternoon, everyone.

12:34:35 17        MS. ANDOH:  Good afternoon.

12:34:36 18        MR. LUMISH:  Good afternoon, your Honor.

12:34:38 19   Doug Lumish, Latham and Watkins from Skyryse.  With me

12:34:43 20   is my partner, Gabe Gross.  And then if you take up all

12:34:47 21   of the motions, you'll hear from Arman Zahoory and Ryan

12:34:52 22   Banks.  And then some other team members that are here

12:34:55 23   to observe.  And then I want to introduce Gerry Luni.  I

12:35:00 24   don't know if we did this last time.  Ms. Luni is

12:35:02 25   general counsel at Skyryse, and she is observing here as
```

```
          1                MOOG, INC. VS. SKYRYSE, INC.
12:35:05  2    well.
12:35:05  3                MAGISTRATE JUDGE MCCARTHY:  Good afternoon,
12:35:07  4    everyone.  I do believe I met Ms. Luni at the last
12:35:11  5    conference, if memory serves.  Okay.
12:35:14  6                MR. GREEN:  Good afternoon, Anthony Green
12:35:16  7    and here on behalf the individual Defendants Robert
12:35:25  8    Pilkington and Ms. Misook Kim.
12:35:25  9                MAGISTRATE JUDGE MCCARTHY:  Good afternoon
12:35:26 10    to all of you.  And did you all receive my e-mail of
12:35:31 11    earlier today?
12:35:31 12                MS. ANDOH:  We received an e-mail from you
12:35:34 13    regarding the trade secret identification motion.  You
12:35:37 14    referenced the possibility of also sending some notes on
12:35:42 15    Moog's motion to compel that we did not receive.
12:35:44 16                MAGISTRATE JUDGE MCCARTHY:  You did not
12:35:45 17    receive that because I didn't send it.
12:35:47 18                MS. ANDOH:  As long as it wasn't
12:35:48 19    transmitted, your Honor, we're good.
12:35:50 20                MAGISTRATE JUDGE MCCARTHY:  No, that is
12:35:51 21    okay.  I may, you know, depending on the time frame
12:35:55 22    today, I may have to do a little triage and reconvene,
12:36:02 23    perhaps, next week on some aspects.  Let me just begin,
12:36:06 24    and then I'll hear from counsel.  I do want to address,
12:36:11 25    first, and I know all three motions that are before me
```

```
 1              MOOG, INC. VS. SKYRYSE, INC.
 2   right now, the Skyryse's motion to compel identification
 3   of the trade secrets, that is docket No. 166.  And then
 4   Moog's motion to compel, production of discovery
 5   responses, that is 176.  And Skyryse's motion to compel
 6   production of various discovery information is 179.  I
 7   want to start with the trade secret motion, and we'll go
 8   as far as we can today.  And if we need to continue into
 9   some day next week or whenever is convenient for all of
10   you, I will work that out.  I got some more flexibility.
11   I think you had been advised that I, believe it or not,
12   might be serving on a state court jury, and I thought I
13   would be knocked out immediately.  But, to my amazement,
14   I wasn't.  I was eventually knocked out, but I was kind
15   of amazed I stayed in the process as long as I did.
16   But, in any event, I think it helped that I wore my robe
17   over to jury selection.  All right.
18              First of all, let me ask all of you, has
19   anybody contacted Judge Vilardo's Chambers to set a
20   specific date or dates for the hearing in October?  I
21   tried to contact his Chambers today, but the calendar
22   clerk was out.  Has that been done?
23              MS. ANDOH:  To my knowledge, your Honor, it
24   has not.  And that is actually sort of a housekeeping
25   issue that I think we probably need to raise with you in
```

1          MOOG, INC. VS. SKYRYSE, INC.

12:38:13    2   context of some of this motion practice because what

12:38:16    3   you're going to be hearing from us when we talk about

12:38:19    4   this trade secret issue is that there is quite a backlog

12:38:24    5   at our forensic vendor with respect to Moog getting

12:38:28    6   access to all of the images that have been produced to

12:38:31    7   it.  So, as we sit here today, I think the hope had been

12:38:35    8   that we were going to have access to all of the images

12:38:37    9   by the beginning of July, and it now appears that we

12:38:40   10   will not have access to all of them until, possibly, by

12:38:43   11   the end of this month, depending on the speed with which

12:38:46   12   the various technical issues and backlog is getting

12:38:50   13   resolved.  And, also, I defer to my colleague, Mr.

12:38:54   14   Fluskey on this, but we were trying to figure out what

12:38:57   15   the best way was to have this discussion with your

12:39:00   16   Honor, because it seems unlikely that we're going to be

12:39:02   17   able to have this October 17 date hold if we're in a

12:39:06   18   situation where we still haven't actually received

12:39:09   19   access to all of the discovery that we're supposed to be

12:39:12   20   reviewing eight weeks out.

12:39:15   21          MAGISTRATE JUDGE MCCARTHY:  Right.  Okay.

12:39:16   22   No, I understand.  And that seems to be an issue that is

12:39:22   23   nobody's fault, directly, other than it's just a

12:39:26   24   logistical problem that has arisen.  So, I guess what --

12:39:30   25   we'll put that issue on hold for a little bit.  And I'll

1                    MOOG, INC. VS. SKYRYSE, INC.

12:39:35   2   hear from counsel from Skyryse on this motion, but the

12:39:39   3   reason I sent that e-mail was just to kind of think out

12:39:44   4   loud, if you will, and, as I indicated, that is by no

12:39:49   5   means a final decision, but it's just that I see things

12:39:56   6   unfolding at one speed or another under those general

12:40:03   7   parameters.  I think everybody would agree that whenever

12:40:06   8   -- when you get to the preliminary injunction hearing,

12:40:10   9   whenever that is, whether it's October or a later date,

12:40:15   10  if Moog is going to succeed, it's going to have to give

12:40:21   11  Judge Vilardo considerable detail as to precisely which

12:40:28   12  trade secrets it claims to have been wrongfully used by

12:40:32   13  the Defendants, taken and/or used.  And by the same

12:40:38   14  token, well, I can say, having spoken to Judge Vilardo

12:40:46   15  on this question, that, you know, he is going to want to

12:40:52   16  make sure that Skyryse and the individual Defendants

12:40:55   17  have had an adequate opportunity to prepare their

12:41:00   18  position once that specific identification has been

12:41:05   19  made.  Now, I did say in the past, and, you know, I

12:41:08   20  recognize that Moog has quoted my statement that

12:41:12   21  Skyryse, or, excuse me, that it cannot be expected to

12:41:19   22  identify all of the trade secrets which it will claim or

12:41:23   23  which it will intend to invoke in this case when it

12:41:29   24  doesn't know the full scope of what was taken, and, I

12:41:34   25  can see their position in that regard.  On the other

1          MOOG, INC. VS. SKYRYSE, INC.

12:41:36   2   hand, at some point, that is going to have to occur and

12:41:40   3   then I think we have to work backwards from that as to

12:41:43   4   when the specific identification is going to take place.

12:41:48   5   And, you know, I'm not, by no means, an expert on source

12:41:52   6   code or anything of that sort, but it does seem to me

12:41:55   7   from what I've read, that there is going to have to be a

12:41:59   8   fairly specific identification of the particular

12:42:02   9   components of source code, whether by line or whatever

12:42:23   10  that is claimed to be a trade secret and why.  And,

12:42:34   11  then, there also has to be -- it's part of Moog's burden

12:42:41   12  in showing that a particular item is a trade secret,

12:42:44   13  they are going to have to show, not only that it's not

12:42:47   14  known in the art, but that reasonable measures have been

12:42:52   15  taken to protect its confidentiality.  And I know that

12:42:55   16  is part of the dispute in terms of the demands that

12:42:58   17  Skyryse is making, I guess, in its companion motion.

12:43:02   18  But, sooner or later, that identification, specific

12:43:09   19  identification, is going to have to be made.  And I just

12:43:13   20  thought I would throw this out to people.  I'm sure it's

12:43:21   21  something that everybody has already been thinking of,

12:43:23   22  but it seems to me we need to work out a time frame for

12:43:27   23  which the specific identification is going to be made

12:43:30   24  and work backwards from that.  I've said my peace in

12:44:47   25  that regard for right now.

| | | |
|---|---|---|
| | 1 | MOOG, INC. VS. SKYRYSE, INC. |
| 12:44:49 | 2 | I'd like to hear from counsel, first, from |
| 12:44:51 | 3 | Skyryse, and then from counsel for Moog and the |
| 12:44:54 | 4 | individual Defendants. |
| 12:44:56 | 5 | MR. LUMISH:  Thank you, your Honor.  Doug |
| 12:44:58 | 6 | Lumish again for Skyryse.  Forgive me if I keep clearing |
| 12:45:02 | 7 | my throat and coughing.  I'm about day 20 after Covid |
| 12:45:06 | 8 | and it won't quite leave. |
| 12:45:09 | 9 | MAGISTRATE JUDGE MCCARTHY:  Sorry to hear |
| 12:45:11 | 10 | that. |
| 12:45:11 | 11 | MR. LUMISH:  It keeps interrupting my |
| 12:45:13 | 12 | ability to spike.  I apologize for that. |
| 12:45:15 | 13 | MAGISTRATE JUDGE MCCARTHY:  No problem. |
| 12:45:16 | 14 | MR. LUMISH:  Your Honor, I was instructed |
| 12:45:18 | 15 | when I was a young lawyer that when the judge has given |
| 12:45:22 | 16 | a tentative in your favor, don't talk too much and don't |
| 12:45:26 | 17 | talk your way out of the tentative, so I'm going to be |
| 12:46:30 | 18 | careful here not to do that. |
| 12:46:32 | 19 | MAGISTRATE JUDGE MCCARTHY:  Let me just |
| 12:46:33 | 20 | emphasize, it's only very tentative.  It's kind of |
| 12:46:40 | 21 | thinking out loud with you folks.  But I see your point |
| 12:46:44 | 22 | in your papers, but I also, you know, to a certain |
| 12:46:48 | 23 | extent, I see Moog's point.  So I'm just trying to work |
| 12:46:52 | 24 | through a realistic time table for everybody. |
| 12:46:56 | 25 | MR. LUMISH:  Fair enough, your Honor, and I |

1          MOOG, INC. VS. SKYRYSE, INC.

12:46:58  2   understand that.  So, I think the point from Moog that

12:47:01  3   I'll start with, which is the one I think your Honor

12:47:04  4   probably has some sympathy with the allegations this is

12:47:08  5   some vast theft and some extraordinary case and there

12:47:38  6   are these huge numbers of documents that we hear in

12:47:40  7   every paper and we hear about in every hearing, I just

12:47:44  8   want to start at first principles.  This case is not

12:47:47  9   some extreme outlier that should be one that throws all

12:47:52  10  the rules out the window, including Rule 26 and Rule 33.

12:47:56  11  The allegations at heart are that two former Moog

12:48:01  12  employees left the company, and on the way out the door,

12:48:03  13  they copied a large volume of documents.  And given the

12:48:06  14  volume, it's probably a hard drive or, you know, some

12:48:09  15  large directories and what not.  And I'll let Mr. Green

12:48:13  16  speak to the details of that if he chooses to.  But at

12:48:16  17  the end of the day, this fact pattern is a common one.

12:48:20  18  It's what you hear every day in trade secret cases all

12:48:25  19  over the country that the former employees left and took

12:48:28  20  documents with them when they left and brought them with

12:48:31  21  them when they joined a competitor.  It's not some

12:49:56  22  extraordinary case.  It's not some extreme fact pattern

12:50:03  23  that somehow excuses Moog from basic discovery

12:50:08  24  obligations.  And that is what our motion is really

12:50:12  25  about is one about a basic discovery obligation.  We ask

1          MOOG, INC. VS. SKYRYSE, INC.

12:50:25   2    in our first interrogatory, which is the classic

12:50:30   3    interrogatory one in a trade secret case, "tell us what

12:50:35   4    your trade secrets are."  And they should be forced to

12:50:39   5    answer that like every other trade secret Plaintiff.

12:50:42   6    It's four months into the case now.  We are, unless they

12:50:46   7    are successful in, apparently, now to move the hearing,

12:50:49   8    which we may object to, three months away from a hearing

12:50:53   9    in front of Judge Vilardo where they are going to ask

12:50:56   10   Judge Vilardo to impose very significant injunctive

12:50:59   11   relief on Skyryse.  And what they are not going to say

12:51:04   12   to Judge Vilardo is, well, our trade secrets are

12:51:07   13   somewhere in the nine devices that we gave to the

12:51:10   14   neutral discovery vendor, IDS, go find them for

12:51:17   15   yourself.  And yet, that is what they've told us.  And

12:51:22   16   they are not going to say to Judge Vilardo, it's all of

12:51:25   17   every single word of the 1.1 million files we say that

12:51:29   18   Mr. Pilkington took and the 136,000 files that we say

12:51:35   19   Ms. Kim took, go figure it out yourself.  They are going

12:51:42   20   to give Judge Vilardo, if they want to win their motion,

12:51:48   21   they are going to give Judge Vilardo some discrete set

12:51:51   22   of things they say here is what is different about what

12:51:54   23   we do from what's in the general knowledge of the field.

12:51:57   24   That is definitional for trade secret.  If they don't do

12:52:01   25   that, they are out.  They are going to say, here are the

1                     MOOG, INC. VS. SKYRYSE, INC.

12:52:05  2  specific trade secrets.  They have to identify them with

12:52:08  3  particularity in the rules of the district.  If they

12:52:15  4  don't do that, they are out.  They have to show they had

12:52:18  5  possession of those trade secrets.  As your Honor noted,

12:52:21  6  they have to show they took reasonable protective

12:52:26  7  measures to protect those trade secrets.  Those are all

12:52:29  8  things that are definitional.  If they don't meet those

12:52:38  9  thresholds that they even begin to have trade secrets,

12:52:42  10  they lose.  So, we know they have to come to Judge

12:52:48  11  Vilardo with something.  And right now, what they've

12:52:50  12  given us in response to interrogatory one is, we'll tell

12:52:53  13  you later after discovery is over, maybe, but go

12:52:57  14  investigate it yourself by asking our former employees

12:53:01  15  who you fired, and by looking in the nine devices that

12:53:03  16  we produced to IDS.  That is not a proper response.

12:53:06  17  That is not in any way close to a sufficient response

12:53:11  18  under Rule 26 or Rule 33.  And at the end of the day,

12:53:15  19  we're really just asking them to provide a true and

12:53:19  20  honest response.  They can supplement.  Let's talk about

12:53:23  21  the volume again.  I understand, your Honor, where the

12:53:28  22  issues lie.  I get it, there are a lot of issues that

12:53:34  23  are here.  They say it's of our making, but it's really

12:53:39  24  of their making.  They don't identify which of those

12:53:44  25  files matter.  Some of them, I don't know what they are,

1                    MOOG, INC. VS. SKYRYSE, INC.

12:53:47   2   although Mr. Green maybe knows better than I do.  Some

12:53:51   3   of them may be system files.  1.1 million files sounds

12:54:00   4   to me like a hard drive dump.  What is it in that that

12:54:11   5   matters?  What are they going to stand up and say?  It's

12:54:18   6   a trade secret for which preliminary injunctive relief?

12:54:28   7   I have no idea.  And they simply need to tell us and

12:54:31   8   they should have told us already.

12:54:33   9            So, when your Honor talks about time frames,

12:54:43  10   we think they should start today, give them a week, give

12:54:50  11   them two weeks to start telling us a list of

12:54:56  12   particularized trade secrets, but it shouldn't be longer

12:54:59  13   than that.  They want to start taking depositions of

12:55:01  14   witnesses soon.  We've been suffering under the

12:55:05  15   abnormality of the vague document request that we've

12:55:09  16   gotten and produced just everything we can find.  And

12:55:12  17   it's time now to start to tailor this case to make it

12:55:16  18   proportional to a trade secret case in a normal sense.

12:55:20  19   Again, we're three months in the case, and we're three

12:55:22  20   months from a preliminary injunctive hearing, and we're

12:55:25  21   kind of in opposite land.  It's moving in the opposite

12:55:29  22   way of a normal trade secret case.  We're turning the

12:55:34  23   company upside down and producing all of this vast

12:55:37  24   discovery when they haven't identified a single trade

12:55:44  25   secret.  And they've told us in no uncertain terms, they

1          MOOG, INC. VS. SKYRYSE, INC.

12:55:47   2   just won't unless your Honor tells them they have to.

12:55:51   3   We're here asking your Honor to tell them they have to.

12:55:54   4   Your Honor knows that they have to do all of the things

12:55:56   5   I said, identify the trade secrets with particularity.

12:55:59   6   They have to show they are different in the general

12:56:15   7   knowledge.  They have to show they had possession of

12:56:22   8   them.  They have to show, to reasonable measures, all

12:56:29   9   that requires for them to say what they are.  So let's

12:56:33   10  get to step one.  And it sounds like we'll be fighting

12:56:39   11  about all of those other things as well, but we should

12:56:41   12  be at step one.  They should have known step one when

12:56:45   13  they sued us.  They should have known step one when

12:56:50   14  their info security team did their full catalog of all

12:56:57   15  of the documents they say were taken.  And they are now

12:57:00   16  alleging to your Honor and in public documents where

12:57:05   17  they were all incredibly valuable and important to them.

12:57:09   18  They should know within them are the trade secrets down

12:57:12   19  to the files, to the routines.  If they are going to

12:57:16   20  take the position, well, it's all of the documents, they

12:57:18   21  should have to live in that, too, is another way to look

12:57:22   22  at it, your Honor.  That means they have a burden of

12:57:27   23  proof in every singing one of the million something

12:57:33   24  documents is outside of the general knowledge of the

12:57:36   25  field, was subject to reasonable measures, was actually

MOOG, INC. VS. SKYRYSE, INC.

a secret, has commercial value due to it being kept secret and away from the eyes of its competitors.  They are not going to be able to meet that burden.  There are many, many cases, we've cited some of them where district courts shut down requests for injunctive relief or ultimately causes of action for trade secret misappropriation when that is what the Plaintiff comes forward with.  They stole one million documents, so we should not have to hit them over the head with an (inaudible).  That is not the way the law works.  It's time now to answer your Honor's question directly.  We think it's late for them to begin to identify this data.

Now, on the volume point, this just goes to supplementation, from our perspective.  They felt they had enough to make very, very severe allegations in a public filing in a complaint under Rule 11.  They felt they had enough to demand a TRO to seek a preliminary injunction, to send over thousands of key words, to submit declarations from their employees saying where these documents come from, what their names are, what their file paths are.  They have enough data.  They've had it from the beginning of the case to start to tell us what the trade secrets are.  We think we are entitled to, today, your Honor, to know everything they are going

1          MOOG, INC. VS. SKYRYSE, INC.

12:59:18   2   to allege to Judge Vilardo that they are aware of.  We

12:59:25   3   think we are entitled to know everything that they

12:59:30   4   believe is a trade secret that they've identified.  And

12:59:32   5   if they think they need to supplement later, they can

12:59:36   6   certainly do so.

12:59:37   7          So, that was a lot, your Honor.  I know

12:59:38   8   there is going to be more responses from opposing

12:59:41   9   counsel that I'll ask for the opportunity to respond to.

12:59:44  10   But, to me, those are the fundamental principles that

12:59:46  11   lead to our request that Moog be compelled to respond to

12:59:52  12   interrogatory one.  Maybe give them a week or two, if

12:59:55  13   you feel it's appropriate, but we think the time has

12:59:58  14   already passed for a proper response.

13:00:00  15          MAGISTRATE JUDGE MCCARTHY:  All right.

13:00:01  16   Thank you.  Ms. Andoh or whoever wants to speak on

13:00:05  17   behalf of Moog.

13:00:05  18          MS. ANDOH:  Your Honor, I'm happy to.  And

13:00:08  19   I'll say, I'm about 16 days out from Covid, so I may

13:00:14  20   also have a little bit of a frog.

13:00:21  21          MAGISTRATE JUDGE MCCARTHY:  My apologies to

13:00:22  22   both of you.  I'm kind of glad we're by Zoom today.

13:00:26  23          MS. ANDOH:  Absolutely.

13:00:27  24          MAGISTRATE JUDGE MCCARTHY:  No offense.

13:00:36  25          MR. LUMISH:  This is a virulent strain.  It

<pre>
 1          MOOG, INC. VS. SKYRYSE, INC.
 2   seems to be getting everybody.
 3          MS. ANDOH:  It's pretty amazing.  So, your
 4   Honor, I'm going to start by quoting myself, actually,
 5   from the last hearing because we discussed this very
 6   issue on the, I guess, or, I guess it was two hearings
 7   ago, June 1st.  I said specifically to your Honor in
 8   response to the same argument, I think as a starting
 9   point let's get access to the images from IDS so we can
10   start looking at this stuff and can start getting a more
11   detailed level of description around the files that were
12   taken and the files we assert are trade secret of those
13   files when we get a chance to look at the actual
14   evidence that has been turned over.  And no one is
15   saying that we're going to wait until October 16 to give
16   them an identification of trade secrets.  This is to
17   say, your Honor, we've never said -- and I don't
18   understand how many times, we've said this so many times
19   now, your Honor.  No one is saying that we're going to
20   go into a preliminary injunction hearing with a judge
21   without having an identification of trade secrets.  That
22   has never been Moog's position.
23          MAGISTRATE JUDGE MCCARTHY:  No, Ms. Andoh, I
24   know you've never said that.  I think the question is,
25   and, you know, it would be foolery to take that
</pre>

1                MOOG, INC. VS. SKYRYSE, INC.

13:03:20   2   position.  You'd lose automatically.  You know that;

13:03:23   3   everybody knows that.  But the issue is, as Mr. Lumish

13:03:34   4   says, and I apologize if we're covering territory that

13:03:38   5   we've already covered, but, you know, in trying to

13:03:44   6   manage things as best I can within the limits of my

13:03:47   7   memory.  But, when Moog commenced this case, you know

13:03:54   8   consistent with Rule 11, it did make reference to

13:03:59   9   various trade secrets having been taken.  And putting

13:04:03  10   aside for a minute the issue of supplementation,

13:04:09  11   notwithstanding what I said previously, it does seem to

13:04:13  12   me that it ought to be able to at least begin to

13:04:17  13   describe to Skyryse and to the individual Defendants

13:04:21  14   what portions of what was taken do constitute trade

13:04:27  15   secrets and why.  I mean, this isn't a larceny case

13:04:31  16   where, you know, even if you assume for sake of argument

13:04:35  17   that, and maybe it may well be true that the employees

13:04:39  18   should not have taken what they took, but, again, it's

13:04:44  19   not, it's not a claim that they stole just information.

13:04:50  20   The claim in this case, as I understand it, is that they

13:04:54  21   stole valuable trade secrets.  To the extent you had in

13:05:01  22   mind or Moog had in mind from the time it commenced this

13:05:05  23   action what those are, I think it should start to

13:05:07  24   identify those in a more detailed level than just by

13:05:13  25   reference to various files or so forth or by saying go

1              MOOG, INC. VS. SKYRYSE, INC.

13:05:20   2    to the Defendants Kim and Pilkington because they knew

13:05:24   3    what they took.

13:05:27   4              MS. ANDOH:  So, your Honor, if I could.

13:05:28   5              MAGISTRATE JUDGE MCCARTHY:  Let me just

13:05:29   6    finish and then I'll hear from you.  The fact that they

13:05:32   7    may know what they took doesn't necessarily mean that

13:05:38   8    that that is what Moog is going to claim to be a trade

13:05:41   9    secret.  And that, you know, I cited from that article

13:05:44   10   in my e-mail today.  That is one of the arguments that I

13:05:49   11   am currently not overly impressed with.  So, back to

13:05:54   12   you.

13:05:54   13             MS. ANDOH:  So, your Honor, I think, so, to

13:05:58   14   beg your Honor's forgiveness, I'm going to take a couple

13:06:01   15   steps back here.  I think that one of -- as a starting

13:06:04   16   point, again.  There is no dispute that we understand

13:06:07   17   that we need to identify these trade secrets before we

13:06:10   18   get to a preliminary injunction.  I will say, just

13:06:13   19   quickly, and from a legal standpoint, that, you know, as

13:06:16   20   far as the case law is concerned, the case law is

13:06:19   21   consistent with what we're saying is we need to have

13:06:22   22   some access to discovery because we're in a situation

13:06:27   23   where we don't know the full scope of what they've taken

13:06:30   24   nor do we know what they've actually used at this point.

13:06:37   25   And I would point your Honor to the o two cases that we

1                    MOOG, INC. VS. SKYRYSE, INC.

13:06:41   2   cited, in particular, to the *IntelliCAD* case and the

13:06:46   3   *Medtech* case, where, in both instances, the judge said

13:06:48   4   we would need to I.D. after expedited discovery and

13:06:54   5   before the preliminary injunction hearing.  Now, I also

13:07:00   6   just want to be really clear about what the status of

13:07:03   7   discovery really is and where we are relative to when we

13:07:07   8   filed the complaint.  Because, I think, one of the

13:07:09   9   things that is getting glossed over by Skyryse is where

13:07:14   10  we actually are in the discovery process notwithstanding

13:07:17   11  the amount of time that has elapsed since the complaint

13:07:22   12  was filed, what we knew when the complaint was filed and

13:07:27   13  what we know sitting here today.

13:07:34   14             So, when we filed the complaint, obviously,

13:07:40   15  we ran in to get a TRO because we found out that Misook

13:07:46   16  Kim had taken about 136,000 files, and we knew that in

13:21:25   17  them were files that we knew we would be claiming were

13:21:30   18  trade secrets.  We did not know what those files were

13:21:33   19  with specificity because she had deleted the evidence of

13:21:37   20  her download when she took the files.  We gave a list of

13:21:40   21  the names of the files and we had explained at the time

13:21:43   22  that one of the issues is that because the actual files

13:21:47   23  that were taken were deleted, we couldn't necessarily

13:21:52   24  confirm the exact contents, but we certainly had an

13:21:57   25  approximation, the best approximation we had and charged

MOOG, INC. VS. SKYRYSE, INC.

13:22:04   2   in the complaint.  Mr. Pilkington's theft didn't

13:22:09   3   actually come to light until after the complaint had

13:22:11   4   already been filed.  So when you read our original

13:22:16   5   complaint, you only see Misook Kim's taking as part of

13:22:20   6   this.  We actually discovered Mr. Pilkington's taking of

13:22:26   7   stuff, which is the actual 1.2 million files later.  We

13:22:34   8   immediately identified that information to opposing

13:22:37   9   counsel as soon as we had it.  And, again, you know, we

13:22:41   10  knew the names of folders that had been taken.  We did

13:22:45   11  not have an exact copy of what had been taken because,

13:22:50   12  again, the whole point of this is he had covered his

13:22:53   13  tracks on the way out the door.  What did we know then

13:23:03   14  and what do we know now?  So, as best as we understand

13:23:07   15  it, and I will say, your Honor, we still do not have

13:23:10   16  access to the images at IDS, and I know this sounds like

13:23:15   17  a broken record, but this has been one of the most

13:23:19   18  frustrating situations that I've ever been involved with

13:23:23   19  in terms of a trade secret case because they keep saying

13:23:28   20  that they've turned over all of this discovery, but it

13:23:33   21  doesn't matter if I can't access it.  They turned over

13:26:55   22  all of this stuff to IDS.  It doesn't mean that I

13:26:58   23  actually have access to it.  Right?  We need to be given

13:27:02   24  access through IDS.  There have been a number of delays.

13:27:07   25  There have been a number of technical issues.  As I sit

                          MOOG, INC. VS. SKYRYSE, INC.
13:27:13   2    here today, I believe Skyryse turned over seven or eight
13:27:17   3    images, computer images to IDS.  We have unfettered
13:27:21   4    access, I believe, to only one of them at this point.
13:27:24   5    So, as far as being able and as far as the 23 devices
13:27:29   6    that the individuals turned over, we still have limited
13:27:32   7    access to most of them.  So, there are 30 or 31 images
13:27:36   8    that were turned over to IDS by Defendants, and we don't
13:27:42   9    have access to the vast majority of them.  And we still
13:27:46   10   don't have access to confirm whether there is a complete
13:27:52   11   copy of everything that was taken by the Defendants
13:27:54   12   there for us to go through.  So, now we're talking about
13:27:58   13   approximations.  And I understand that that may be what
13:28:03   14   we may have to do for the time being in order to get
13:28:09   15   through this.  But, I really don't want to underestimate
13:28:15   16   the volume.  I feel like every time we have this
13:28:18   17   discussion, I get told that, you know, that the burden
13:28:20   18   is massive on Skyryse's part, but somehow or another
13:28:23   19   there is no way that we're going to find 1.2 million
13:28:34   20   trade secrets.  So, I think it bears explaining briefly
13:28:42   21   what it is that we understand has actually been taken.
13:28:47   22   There are on the order of about 20 something different,
13:28:50   23   I'm going to call them classifications of materials,
13:28:53   24   that were taken by the two Defendants.  In calling them
13:28:56   25   classifications, and, honestly, your Honor, it might be

1              MOOG, INC. VS. SKYRYSE, INC.

13:29:01   2   easier to call them buckets.  Some of those buckets are

13:29:05   3   projects, meaning files, for a specific project or a

13:29:13   4   specific employer such as the U.S. Military.  Some of

13:29:52   5   them are a type of document or a classification of

13:29:57   6   documents that sort of, for lack of a better

13:30:00   7   description, your Honor, is sort of a library that you

13:30:03   8   use when you're working on specific projects.  But, it

13:30:06   9   is not a "hard drive dump," which is what Mr. Lumish

13:30:13   10  just described it as.  It's actually a very well

13:30:16   11  tailored and expansive library of all of the materials

13:30:21   12  that Moog uses when it's completing these projects for

13:30:25   13  these customers.

13:30:28   14             As far as I understand it, all of the stuff

13:30:31   15  that was taken falls into one of these 20 something

13:30:34   16  buckets.  And we, you know, we have done everything that

13:30:38   17  we can to try and identify with as much specificity as

13:30:42   18  possible what these buckets are, what the types of

13:30:45   19  materials that existed in them are, and the information

13:30:47   20  that we had.  The problem that we're coming up against

13:30:51   21  now, your Honor, because of the volume involved in this,

13:30:53   22  because we're talking, again, about 1.4 million

13:30:57   23  documents.  And it's one thing to say, you know, go line

13:30:59   24  by line through code and identify which lines of code it

13:31:03   25  is.  But now we're talking about other types of

1          MOOG, INC. VS. SKYRYSE, INC.

13:31:07  2   documents that we need to go through to figure out in

13:31:35  3   order for us to say what are our trade secrets.  And we

13:31:40  4   really don't think it's appropriate for us to have to go

13:31:43  5   through this process multiple times.  If we go through

13:31:46  6   it now, based on what we've approximated or what we

13:31:50  7   think we might be able to approximate from our own data

13:31:53  8   what was taken, it's inevitably going to have to be done

13:31:59  9   again once we get access to IDS's images, and we can go

13:32:05  10  through and actually comport what was actually taken.

13:32:10  11  And, again, you know, he said -- Mr. Lumish said

13:32:13  12  something to the effect of, I'm going to have to prove,

13:32:17  13  I have a burden of proof on the 1.4 million documents.

13:32:24  14  That's not true.  The misappropriation claims are that

13:32:29  15  they misappropriated information and they used it.  So,

13:32:35  16  I can identify trade secrets that are protectable that

13:32:38  17  were used and properly protected, then I succeed on my

13:32:44  18  claim.  I don't have to necessarily win on all 1.4

13:32:53  19  million files.  But, having said all of that and getting

13:32:56  20  back to the immediate issue, we are actually almost not

13:33:03  21  further along than when we filed the complaint in terms

13:33:06  22  of having access to the images that contained the

13:33:09  23  materials that were taken.  To give an example, your

13:33:12  24  Honor, one of the hard drives that Skyryse turned over

13:33:15  25  is 568 partial images.  And I call them that just

```
 1              MOOG, INC. VS. SKYRYSE, INC.
```

13:33:19  2  because they are really documents.  And they apparently

13:33:22  3  represent the hits that were, that were -- the documents

13:33:27  4  that hit on the search terms that we provided them that

13:33:30  5  we said would be most likely be indicative based on our

13:33:34  6  educated guess of material that was our non-public

13:33:39  7  information in their possession, custody and control.  I

13:35:46  8  don't have access to that.  I still can't even look at

13:35:49  9  that to figure out whether we're actually claiming that

13:35:52  10  any of those 568 documents that we're going to argue are

13:35:59  11  among the trade secrets that were used.  And that is

13:36:02  12  just one of the seven or eight images that is there.  I

13:36:08  13  mean, the other critical computers that we don't have

13:36:11  14  access to yet, we don't have access to Mr. Pilkington's

13:36:16  15  Skyryse-issued computer.  We don't have access to Ms.

13:36:20  16  Kim's Skyryse-issued computer yet.  So, you know, I

13:36:27  17  think, your Honor, in our minds, at least initially, and

13:36:31  18  certainly based on the case law that we saw, I mean,

13:36:33  19  we've always said, and I think going back to several

13:36:36  20  hearings back, your Honor, when you asked us, did we

13:36:39  21  intend to modify the relief we were seeking and did we

13:36:43  22  intend to do anything in terms of modifying the motion

13:36:46  23  for preliminary injunction, and I believe I answered at

13:36:48  24  the time that we always knew that discovery was going to

13:36:51  25  influence the way in which these things were going to be

1                       MOOG, INC. VS. SKYRYSE, INC.

13:36:55   2   sought, ultimately.  We know that -- not only do we know

13:36:58   3   more now than we did when the complaint was filed, the

13:37:02   4   structure of the case has changed dramatically since the

13:37:06   5   time we filed the case.  We found out there was an

13:37:09   6   additional 1.2 million files taken.  Four employees that

13:37:14   7   we're aware of have been terminated from Skyryse in

13:37:18   8   connection of this case.  Two of whom are not named

13:37:22   9   individual Defendants, but at least one of whom appears

13:37:26   10  to have had our non-public information on his device at

13:37:31   11  least according to disclosures that we've gotten from

13:37:36   12  Skyryse.  And so, you know, we're not even sure, because

13:37:40   13  we still can't get confirmation from Skyryse whether the

13:37:45   14  only theft that we're going to be identifying in the

13:37:48   15  course of our discovery are Pilkington and Kim or

13:37:53   16  whether there are additional pieces of information that

13:37:57   17  we need to deal with.  Again, your Honor, I'm not

13:37:59   18  suggesting that this should be an endless process, but I

13:38:02   19  am suggesting that we should, at a minimum, be given

13:38:05   20  sufficient time, once we have access to the actual

13:38:08   21  materials that were taken, so that we can go through

13:38:11   22  them and provide this itemized list that Mr. Lumish is

13:38:16   23  asking for.  To say we should go in now and try and give

13:38:20   24  him -- it seems incredibly impractical and burdensome to

13:38:26   25  force us to go through this procedure multiple times

1                 MOOG, INC. VS. SKYRYSE, INC.

13:38:30  2   just so that they can get some kind of a response to

13:38:35  3   their interrogatory now that we're then going to have to

13:38:38  4   continue to modify four or five or six times as we

13:38:41  5   continue to get access to these files and we continue to

13:38:44  6   identify these lists.  So, I think our original proposal

13:38:48  7   would have been to say, when we renew our motion for

13:38:56  8   preliminary injunction, which we're going to do at the

13:39:00  9   close of fact discovery, that, at that point in time, we

13:39:06  10  include the full identification of trade secrets so that

13:39:09  11  they have plenty of time to oppose that identity of

13:39:15  12  trade secrets in their motion and that they have plenty

13:39:29  13  of opportunity to prepare for the hearing before Judge

13:41:13  14  Vilardo, and so that the entire briefing before Judge

13:41:17  15  Vilardo is consistent with what we're actually claiming

13:41:19  16  for purposes of the preliminary injunction hearing.  I

13:41:23  17  think that, again, no one is saying that we're not going

13:41:25  18  to do it.  And, your Honor, we also, I almost feel

13:41:29  19  sheepish saying this, but, you know, this is not because

13:41:32  20  of a lack of effort on our part or because of lack of

13:41:35  21  organization or because, you know, we're hiding the ball

13:41:37  22  or intentionally trying to put them at a disadvantage in

13:41:40  23  the discovery process.  The whole reason we asked for

13:41:43  24  expedited discovery in the first place is so that we

13:41:49  25  could perform this identification before we got to the

1          MOOG, INC. VS. SKYRYSE, INC.

13:41:54  2  preliminary injunction hearing.  So, it is really only

13:42:00  3  -- for us to be able to handle this in a way approaching

13:42:05  4  efficiency given the volume and given the challenges and

13:50:00  5  issues here.  I think the appropriate thing to do

13:50:06  6  continues to be to allow us to have sufficient time with

13:50:09  7  access to these images so that we can compile a

13:50:13  8  comprehensive list of what, A, what was taken, and, B,

13:50:18  9  what was taken that we claim to be trade secrets, and,

13:50:23  10  C, sufficient detail around those specific trade secrets

13:50:28  11  that we're claiming so that we satisfy Judge Vilardo's

13:50:32  12  requirements.  And that is what we've said from day one

13:50:36  13  and it continues to be what we're saying now.

13:50:39  14          MR. LUMISH:  May I respond briefly, your

13:50:40  15  Honor?

13:50:40  16          MAGISTRATE JUDGE MCCARTHY:  Well, you may in

13:50:41  17  a minute.  Well, let me hear from counsel for the

13:50:47  18  individual Defendants, if they wish to add anything.

13:50:54  19          MR. GREEN:  Yes, your Honor, I would.  And

13:50:56  20  I'd echo most of Mr. Lumish's points.  I don't see why

13:51:03  21  it's a problem to tell us what they know now.  I mean,

13:51:07  22  this is all just putting everything off farther and

13:51:10  23  farther.  I mean, for instance, if we know at least now

13:51:15  24  what they are saying are the trade secrets that are

13:51:18  25  misappropriated, we can begin the process of determining

1                    MOOG, INC. VS. SKYRYSE, INC.

13:51:21  2    what is relevant that Moog still hasn't produced and

13:51:25  3    that will help us with discovery disputes and this is

13:51:30  4    just going to continue pushing off this hearing.  And

13:51:37  5    the idea that we should have depositions without knowing

13:51:41  6    what the trade secrets are is just beyond the pale.  I

13:51:47  7    don't think it should be.  I don't see the problem with

13:51:51  8    telling us what you know now and just continuing to add

13:51:54  9    to it.  That is a normal practice in discovery.  And

13:51:59  10   it's not unreasonable at this point.  And I also, just

13:52:02  11   minor point, but we haven't, Moog has access to the

13:52:08  12   great majority of our devices.  In fact, 19 of 23.  So,

13:52:13  13   while there are still some disputes about a couple of

13:52:16  14   them, they do have access.  I don't know with respect to

13:52:21  15   Skyryse's devices, I haven't necessarily been involved

13:52:27  16   as intimately with that.  But, I think we can begin the

13:52:31  17   process now of identifying trade secrets and doing the

13:52:35  18   best we can at being efficient in discovery.  And with

13:52:41  19   that, I'll -- those are my comments, your Honor.

13:52:46  20            MAGISTRATE JUDGE MCCARTHY:  All right.

13:52:47  21   Thank you.

13:52:50  22            MR. LUMISH:  Your Honor, I'll be brief.

13:52:52  23            MAGISTRATE JUDGE MCCARTHY:  Yeah, go ahead.

13:52:54  24            MR. LUMISH:  Ms. Andoh's main premise to the

13:52:57  25   Court was she needs discovery before she can tell us

1            MOOG, INC. VS. SKYRYSE, INC.

13:53:00   2   what the trade secrets are.  And it's really what you

13:53:03   3   heard and that discovery is hard and there is lots of

13:53:06   4   discovery and image problems and things like that.  But,

13:53:09   5   that has got the whole thing backwards.  Many, many

13:53:13   6   courts will not even permit discovery until there is an

13:53:17   7   identification of the trade secrets.  And the reason for

13:53:20   8   that is because what the trade secret Plaintiff can do

13:53:23   9   is go root around in the incredibly sensitive and

13:53:27   10  proprietary discovery that Skyryse has given here and

13:53:32   11  others have given and then make it up.  I'm not saying

13:53:35   12  it is happening, but that is why it's organized that

13:53:41   13  way.  They can just make it up and say, oh, we found

13:53:44   14  this really cool thing in their source code and we do

13:53:50   15  that and so we'll just say that is our trade secret, or

13:53:53   16  even if we don't do it.  The notion of hindsight in

13:53:58   17  trade secret cases is an extremely dangerous one and

13:54:01   18  it's exactly why Plaintiffs have to identify their trade

13:54:06   19  secrets before they get discovery.

13:54:09   20            Now, of course, in this case, it's not the

13:54:11   21  way it's been organized because of the way things

13:54:15   22  started.  They have the discovery, they don't need the

13:54:18   23  discovery to tell us what the trade secrets are.  This

13:54:20   24  may be the bigger point in the 1.1 million files or

13:54:26   25  1,136,000 files that they say were taken, they have

MOOG, INC. VS. SKYRYSE, INC.

13:54:29 2 those files.  They identified them.  They know the file

13:54:31 3 names, they have possession of them.  They've had them

13:54:35 4 for months.  They have had every chance to review them

13:54:38 5 and think about them and talk about them and analyze

13:54:41 6 them and scrutinize them and tell us what trade secrets

13:54:45 7 are in them.  In discovery, they probably are not going

13:54:48 8 to get anything beyond those 1.2 million files because

13:54:52 9 that is what they know is taken.  I'm not aware of

13:54:57 10 anything else.  Maybe they will find something else and

13:55:00 11 they can supplement, maybe they won't.  But the notion

13:55:15 12 they need discovery, they need us to produce back to

13:55:19 13 them the 1.1 million files from Mr. Pilkington or the

13:55:22 14 136,000 files from Ms. Kim so they can start to review

13:55:27 15 them makes no sense at all.  They have them.  And Ms.

13:55:30 16 Andoh said they deleted or Mr. Pilkington deleted or Ms.

13:55:34 17 Kim has deleted.  Well, let's accept that at face value

13:55:38 18 for the sake of the argument without me acknowledging or

13:55:42 19 waiving our objection to it.  If that were true, it

13:55:45 20 still wouldn't matter, because they have those files on

13:55:48 21 their own servers.  If they are deleted means I don't

13:55:52 22 have them at all, but they have them, and they should be

13:55:55 23 the ones to look at their files and the path names that

13:55:59 24 they've identified in the directories and repositories

13:56:03 25 that they've called out and said equate to 1.2 million

1                    MOOG, INC. VS. SKYRYSE, INC.

13:56:08   2   files and tell us what the trade secrets are in those.

13:56:10   3   They simply don't need discovery in that.  I'm not

13:56:16   4   saying they don't need discovery and I'm not saying they

13:56:20   5   are not entitled to supplemental discovery if something

13:56:24   6   identifies itself as new.  But the vast case, the

13:56:30   7   majority of what they are arguing is about files they

13:56:34   8   have identified to us as being taken by file name.  So

13:56:37   9   they don't need discovery to tell us which files in

13:56:41   10   those, plain and simple.  And the notion that they

13:56:44   11   shouldn't be obliged to tell us what the trade secrets

13:56:46   12   are until they spend months of discovery is completely

13:56:50   13   backwards than any other trade secret case I've been

13:56:53   14   involved in.  That is point one.

13:56:55   15            And the rest I'll be quick, which is what

13:56:58   16   you didn't hear from Ms. Andoh is any denial that they

13:57:03   17   don't know what the alleged trade secrets are.  She told

13:57:06   18   you that 20 buckets and they are working on categories.

13:57:14   19   Categories and buckets are not trade secrets.  But there

13:57:17   20   is nothing in their response to interrogatory one at

13:57:21   21   all.  So they know something now from the 1.1 and

13:57:24   22   136,000 files that they are going to say are trade

13:57:28   23   secrets.  They should tell us today what those are.

13:57:31   24   There is simply no reason to wait.  And back to what Mr.

13:57:35   25   Green said, we can't wait for briefing on this or two

1          MOOG, INC. VS. SKYRYSE, INC.

13:57:37   2   weeks before the hearing for this.  They want to start

13:57:41   3   taking depositions soon and we need to know so we can

13:57:46   4   take depositions of their people about reasonable

13:58:24   5   measures and possession and whether these things have

13:58:27   6   value and our witnesses need to know what they are being

13:58:30   7   accused of taking so they have some response to do we

13:58:34   8   even have that, especially on the Skyryse front.  They

13:58:38   9   have to show use, not just by the individual Defendants,

13:58:41   10  your Honor, they have to show use by Skyryse.  There is

13:58:44   11  a mental state requirement in the DTSA and trade secret

13:58:51   12  law, generally, that if you're accusing somebody of

13:58:57   13  getting the trade secrets from an intermediary, which

13:59:00   14  would be here the allegation that Mr. Pilkington and Ms.

13:59:04   15  Kim gave it to Skyryse, you still have to show that

13:59:07   16  Skyryse had some mental culpability, that they knew or

13:59:11   17  should have known that they had information coming in

13:59:14   18  from somebody in a way that it shouldn't.  They have to

13:59:17   19  tie all that stuff together and they can't do that

13:59:22   20  without telling us what the trade secrets are.  And we

13:59:25   21  can't defend ourselves unless we know what the trade

13:59:29   22  secrets are.

13:59:31   23          The IDS point, all of the problems in IDS.

13:59:35   24  Let's remind the Court, it's their protocol.  They

13:59:44   25  insisted on this process.  And, again, it is not one

MOOG, INC. VS. SKYRYSE, INC.

13:59:51  2   that is a predicate to giving an answer to the files

13:59:55  3   that sit on their own systems today.  They told us the

13:59:59  4   files that the trade secrets can be found in nine

14:00:02  5   devices, they produced that, Moog gave to IDS.  They

14:00:07  6   have those nine devices.  They have the files.  They

14:00:12  7   should tell us what they are, what is trade secret

14:00:15  8   information in them and separate that from the general

14:00:17  9   knowledge.  So, I think those are my major points.  The

14:00:22  10  last thing I would say, we need to test all of this in

14:00:25  11  discovery.  We can't wait for the hearing and be blind

14:00:31  12  sided by it.  We now have an acknowledgement that they

14:00:36  13  are not going to say -- they are going to tell Judge

14:00:39  14  Vilardo something different from what they've told us,

14:00:41  15  and so we need to get that information as soon as

14:00:44  16  possible.  And I've not heard an answer from Ms. Andoh

14:00:48  17  why they can't do it today on the information that they

14:00:52  18  have.  What I've heard is, well, we want to do it all at

14:00:58  19  once after we do a whole bunch of discovery.  There is

14:01:02  20  no need for that.  As Mr. Green says, you can supplement

14:01:07  21  later.

14:01:08  22          MS. ANDOH:  Your Honor, if I may.

14:01:09  23          MAGISTRATE JUDGE MCCARTHY:  Ms. Andoh, just

14:01:11  24  a second, and I will hear from you again.  If I can jump

14:01:15  25  in for a couple seconds.  As I heard everybody say, I

MOOG, INC. VS. SKYRYSE, INC.

think Moog agrees that in order to make a presentation to Judge Vilardo about what they claim is a wrongfully appropriated trade secret, they are first going to have to have identified that to the Defendants in the same level of detail that they will be presenting to Judge Vilardo.  And they are also going to have to have given the Defendants the opportunity to take -- to prepare adequately once that level of specific disclosure has been made, otherwise, I mean, if I were Judge Vilardo, and it may surprise you, but, I'm not, I think he would do one of two things.  He would either deny their request outright because they hadn't given adequate discovery or he would put the hearing on hold until such discovery and/or opportunity to prepare has been given.

One of the things that Ms. Andoh said that does give me pause is the notion of efficiency in terms of, and I guess I would be particularly concerned, if you get into depositions based on disclosures of certain trade secrets that have been disclosed, for example, and then there is a supplementation, and then you have to go back and perhaps do the same depositions over again or take new depositions on that new information, that doesn't strike me as -- as the most efficient way to proceed.  On the other hand, we can't wait forever.  So

MOOG, INC. VS. SKYRYSE, INC.

what would be the problem with just saying, all right,

I'm going to put things on hold.  And, by the way, I

think you all know, I mean, the Court has considerable

discretion in terms of how it sequences discovery and so

forth, but, what if I were to say, well, we're going to

put everything on hold until, until Moog has had the

opportunity to access the information that it can't

currently access, and then it can make in one fell swoop

its disclosures about trade secrets, and then the

Defendants can take discovery on that and prepare

themselves adequately.  It might result in -- well, it

seems right now that things may be delayed beyond

October anyway, but it might result in a lengthier

delay, but what would be the problem with proceeding in

that way.

MS. ANDOH:  Well, certainly from my

perspective --

MAGISTRATE JUDGE MCCARTHY:  One at a time.

MR. LUMISH:  I assumed you were talking to

me.

MAGISTRATE JUDGE MCCARTHY:  Yeah.  Let me

hear from you first, and then I'll hear from Ms. Andoh

and Mr. Green.

MR. LUMISH:  I apologize for interrupting

1                MOOG, INC. VS. SKYRYSE, INC.

14:04:27  2   Ms. Andoh.

14:04:28  3                MAGISTRATE JUDGE MCCARTHY:  That's okay.

14:04:29  4                MR. LUMISH:  The problem, your Honor, is a

14:04:34  5   particular issue, which is the hindsight point that I

14:04:40  6   made before.  The concern is, the main concern I would

14:04:44  7   have from that process is that it does allow them to do

14:04:48  8   exactly what -- I could send you a supplemental brief,

14:04:52  9   if you want a dozen cases on this point, that says it's

14:04:55 10   inappropriate to let a Plaintiff root around in the

14:04:58 11   discovery and the secret sauce of a competitor and then

14:05:03 12   in hindsight say, oh, there is my trade secret, because

14:05:07 13   it allows for misconduct on that front.  That is why

14:05:10 14   most courts sequence it the other way.  And I get this

14:05:14 15   case started differently.  But most courts will start

14:05:17 16   the other way.  And in California, we actually have a

14:05:20 17   statute that compels it.  Because its codified this

14:05:24 18   notion that you can't, as a trade secret, Plaintiff,

14:05:27 19   come in after the fact and say, oh, I found my trade

14:05:31 20   secret and I'll just sort of attribute it to this thing

14:05:34 21   in the discovery.  You have to say up front what it is

14:05:37 22   and then see if it's been misappropriated.  That is my

14:05:40 23   main concern.  Logistically what your Honor said makes

14:05:46 24   sense.  And, efficiency, we don't want to take

14:05:50 25   depositions either of witnesses and then have to take

|       |    |                                                                    |
|-------|----|--------------------------------------------------------------------|
|       | 1  | MOOG, INC. VS. SKYRYSE, INC.                                        |
| 14:05:57 | 2 | them again because they changed their list of trade            |
| 14:06:01 | 3 | secrets after the fact.  So, we get that point.  But we        |
| 14:06:03 | 4 | do think there needs to be a trade secret identification       |
| 14:06:06 | 5 | now.  They should have known under Rule 11.  They should       |
| 14:06:10 | 6 | have known in light of their papers that they filed.           |
| 14:06:12 | 7 | They should have known a substantial chunk of these            |
| 14:06:15 | 8 | trade secrets already.  We want them to have to put that       |
| 14:06:18 | 9 | marker on the chess board, your Honor, because,                |
| 14:06:20 | 10 | otherwise, it gives them full unfettered access to do         |
| 14:06:25 | 11 | the hindsight thing that I think is a real problem.           |
| 14:06:27 | 12 | MS. ANDOH:  Your Honor --                                      |
| 14:06:27 | 13 | MAGISTRATE JUDGE MCCARTHY:  Ms. Andoh, just                   |
| 14:06:29 | 14 | a second, I'll hear from you.                                  |
| 14:06:30 | 15 | Mr. Green, anything you want to add in that                   |
| 14:06:32 | 16 | regard or no or just ditto.                                   |
| 14:06:35 | 17 | MR. GREEN:  Well, mostly ditto.  I think Mr.                  |
| 14:06:41 | 18 | Lumish is correct, that we do need -- it's only right,        |
| 14:06:48 | 19 | they made these allegations, they are serious                 |
| 14:06:51 | 20 | allegations, it's only right that we know what they are       |
| 14:06:55 | 21 | claiming are the trade secrets now, and we should have        |
| 14:06:58 | 22 | the opportunity to really organize our discovery              |
| 14:07:01 | 23 | strategy and litigation strategy right now.  And we           |
| 14:07:05 | 24 | can't do that while the ball is continuing to be hidden.      |
| 14:07:09 | 25 | MAGISTRATE JUDGE MCCARTHY:  All right.  Ms.                   |

1           MOOG, INC. VS. SKYRYSE, INC.

14:07:10   2   Andoh.

14:07:11   3           MS. ANDOH:  So, your Honor, I'm a little,

14:07:14   4   I'm on two line here about how to proceed because there

14:07:19   5   were a substantial number of misrepresentations that

14:07:23   6   occurred since the last time that I spoke, and I'm not

14:07:27   7   exactly sure how much of this I really feel I need to

14:07:34   8   correct right now on the record.  But, suffice it to

14:07:40   9   say, I don't believe Mr. Lumish and Mr. Green's

14:07:43   10  representations with respect to either the access we

14:07:45   11  currently have at IDS or with respect to what our burden

14:07:49   12  of proof is in the case or the disposition of the case

14:07:56   13  between when it was filed and what it is now, we

14:08:01   14  disagree.  I will say this, your Honor, that I will

14:25:50   15  specifically address Mr. Green's assertion that we have

14:25:53   16  access to 19 of the 23 devices, and that is actually not

14:25:58   17  correct.  IDS has informed us that, even though the

14:26:01   18  devices have been uploaded, a lot of them are missing

14:26:06   19  segments.  And what that means is we can't actually open

14:26:13   20  them, and they are completely unusable as they currently

14:26:19   21  stand right now.  We're trying to resolve the issue with

14:26:23   22  IDS, but there is no timeline right now for resolution.

14:26:27   23  So, your Honor, I mean, again, I mean, I guess if you

14:26:31   24  want us to put in a supplemental report from IDS, we can

14:26:39   25  do that.  But the point is that the vast majority of

1                    MOOG, INC. VS. SKYRYSE, INC.

14:26:45   2   images that have been uploaded, even those that have

14:26:51   3   supposedly been made accessible to us, we can't access

14:26:55   4   them and we can't read them.

14:26:59   5           I think you know, certainly with respect to

14:27:02   6   Mr. Lumish's assertion that this would allow us to root

14:27:05   7   around in order to backward engineer a trade secret,

14:27:11   8   that's not -- that's not something that I believe your

14:27:19   9   Honor should take a lot of credence in.  We're very

14:27:22   10   clear about what the fact pattern is that led up to

14:27:25   11   this.  We're saying our stuff was taken.  We're either

14:27:30   12   going to be able to prove that it's ours or not.  Right

14:27:33   13   now what we need to do is go in and go look at exactly

14:27:38   14   what it was that was taken and compare it.  I know that

14:27:41   15   this is something that keeps coming up again and again,

14:27:45   16   but just because we know the file names doesn't mean

14:27:48   17   that we know what was taken.

14:27:50   18           Your Honor, in a lot of instances these

14:27:52   19   documents continue to evolve.  It's not like our company

14:27:57   20   was frozen in time while Mr. Pilkington and Ms. Kim took

14:28:04   21   these files.  A lot of these documents are living

14:28:07   22   documents and they continue to be updated and they

14:28:10   23   continue to be modified as time goes on.  So, even

14:28:14   24   though we may know generally what a document name was,

14:28:18   25   we don't necessarily have the ability to go back in time

MOOG, INC. VS. SKYRYSE, INC.

and know what was taken at the time it was taken.  That
is an oversimplification.  And with respect to Mr.
Pilkington's files, again, we have different information
with respect to Mr. Pilkington and with Ms. Kim.  Ms.
Kim, we know the file names.  With Mr. Pilkington, we
know the folder names, not the file names.  So, we
actually have -- we're at a slightly different situation
with Mr. Pilkington.  We actually have a little bit less
information about what he took, and it's the larger
take.  Ultimately, your Honor, I think that your
solution is the right one.  I think that if we're able,
a lot of this fighting has been that we were supposed to
have full access to these images six weeks ago and we
still don't have access to most of them.  We would have,
in all likelihood, been able to tell your Honor that we
were in a position to make an identification if we
actually had access to the images in the time frame we
were supposed to get them.  And, again, I'm not here to
cast aspersions, your Honor.  I'm just here, your Honor,
to try and find a path forward here that gives us the
discovery that Mr. Lumish claims he provided, because,
again, he may have produced it, but we haven't received
it because of the way the structure has been put
together with IDS.

1          MOOG, INC. VS. SKYRYSE, INC.

14:30:47   2          And I will also just say, because I feel the

14:30:50   3   need to correct the record here, that the procedure with

14:30:53   4   IDS that is in place was actually, it's Skyryse's review

14:30:59   5   protocol, which they requested and asked for, and your

14:31:02   6   Honor permitted them to do, and the privilege decision

14:31:11   7   process, meaning the process of pulling the privileged

14:31:20   8   documents out of the computer that has been causing this

14:31:24   9   delay.  So, this is not something that was a product of

14:31:31   10   the original protocol that was ordered by your Honor.

14:31:33   11   This is a result of the privilege review that we're

14:31:35   12   having so many issues of being able to get these devices

14:31:39   13   available online for review.  So I just sort of come

14:31:43   14   back to the same point that I keep making, which is to

14:31:46   15   say that I think it's entirely reasonable that we should

14:31:49   16   have a period of time, maybe it's four weeks or six

14:31:52   17   weeks after we have access to all of these images, where

14:31:56   18   we have an opportunity to compile a list so we give it

14:32:00   19   over once and then everybody can continue discovery with

14:32:04   20   respect to that.  I will also say, your Honor, with

14:32:06   21   respect to the case law and the issue of, you know,

14:32:08   22   what's appropriate and what's not appropriate, we've

14:32:13   23   cited to a plethora of cases where just this type of

14:32:18   24   discovery was contemplated and approved by the Court.

14:32:23   25   In a number of cases that were cited by Skyryse involved

MOOG, INC. VS. SKYRYSE, INC.

1

2   14:32:29   a number of cases where the Court shut down discovery

3   14:32:32   after months, many more months, years, in some cases, of

4   14:32:38   discovery than we are here or where the allegations are

5   14:32:47   very, very different.  And I will also point out, your

6   14:32:52   Honor, that in the cases that were cited by both

7   14:32:56   parties, the parties refer to hundreds of thousands of

8   14:33:05   trade secrets.  Here we're talking about over one

9   14:33:10   million.  And I know that Skyryse is sick of hearing us

10   14:33:16   talk about how many files were taken, but the volume

11   14:33:21   here is actually extraordinary.  This is not a

12   14:33:25   run-of-the-mill case.  This is not a normal

13   14:33:27   circumstance.  This is a circumstance in which a large

14   14:33:29   volume of files was taken and there are active steps

15   14:33:33   taken to cover the steps of the files that were taken

16   14:33:36   and the files have, at least hypothetically, as far as

17   14:33:41   we know, again, one of the things we keep wondering why

18   14:33:45   I can't get confirmation from any of the Defendants as

19   14:33:49   to whether or not the actual copied materials were

20   14:33:53   produced in their entirety to IDS or not because that

21   14:33:58   leaves us in this position where we have to go through

22   14:34:06   and review all of these images because we don't know if

23   14:34:10   there is one particular image that contains the

24   14:34:12   materials that were taken or not.  So, some of this

25   14:34:15   delay is also on Defendants because they have not

1          MOOG, INC. VS. SKYRYSE, INC.

14:34:17   2  identified what it is that is on the devices that have

14:34:21   3  been produced over to IDS with any specificity.

14:34:24   4          Ultimately, your Honor, I think you, know

14:34:26   5  notwithstanding the fact that I've kind of gone on a

14:34:30   6  little bit of a diatribe here, we're in 100 percent

14:34:34   7  agreement with your Honor to the extent that we are

14:34:36   8  entirely committing to giving an identification of trade

14:34:40   9  secrets if we are just given the access we've been

14:34:45  10  trying to get for four months now to these images at IDS

14:34:49  11  and we get a reasonable amount of time to review them so

14:34:55  12  that we can compile a list that is actually going to be

14:34:58  13  meaningful.  And I'll also say, in response to their

14:35:02  14  suggestion that we continue to update or we continue to

14:35:11  15  supplement, if we have to continue to supplement with

14:35:15  16  given the volume that is involved here, we're talking

14:35:18  17  about potentially hundreds of thousands of individual

14:35:21  18  identifications.  If we have to continue to do this over

14:35:24  19  and over again, it's going to become a full-time job for

14:35:27  20  us to just supplement.  It makes infinite sense what

14:35:33  21  your Honor is proposing that if they are to have an

14:35:36  22  identification of trade secrets prior to depositions

14:35:41  23  commencing, that we do this once we turn it over to them

14:35:44  24  and then depositions commence.

14:35:46  25          MAGISTRATE JUDGE MCCARTHY:  Now, let me ask,

```
                    MOOG, INC. VS. SKYRYSE, INC.
14:35:48   2   and maybe I need to hear from somebody at IDS, but do
14:35:52   3   you have any idea, does anybody have any idea as to when
14:35:56   4   the log jam with them is going to be broken?
14:35:59   5                 MR. LUMISH:  Your Honor, let me defer to one
14:36:01   6   of my colleagues, if I might.  I want to raise another
14:36:04   7   issue that goes to that.  Ms. Andoh said something very,
14:36:07   8   very concerning, which is they have not been preserving,
14:36:11   9   according to what I heard, the documents that they claim
14:36:14  10   was sent to us or stolen, allegedly, by the individuals.
14:36:17  11   I think what I just heard, these are living documents
14:36:20  12   that are changing, and so she needs to see what is on
14:36:23  13   IDS in order to know what is in them.  Presumably,
14:36:28  14   before they sued, they would have done what any
14:36:31  15   Plaintiff has to do when they know a lawsuit is eminent,
14:36:35  16   which is put a document hold in place.  They should have
14:36:38  17   these documents already.  I resist the notion, if that
14:36:40  18   is not true, they have a spoliation problem.  If it is
14:36:44  19   true, they shouldn't need this discovery.
14:36:47  20                 Let me defer to Mr. Zahoory.
14:36:50  21                 MS. ANDOH:  Your Honor, I have to respond to
14:36:52  22   that, I'm sorry.
14:36:53  23                 MAGISTRATE JUDGE MCCARTHY:  Time.  Hold it.
14:36:55  24   Let I hear from Mr. Zahoory.  Ms. Andoh, you got upset
14:37:00  25   about that, so I will hear from you briefly, then I'll
```

                         MOOG, INC. VS. SKYRYSE, INC.

14:37:03   2   hear from Mr. Zahoory.

14:37:05   3             MS. ANDOH:  Your Honor, Mr. Lumish may have

14:37:08   4   forgotten this, but we actually provided an

14:37:10   5   identification to them that the materials that were on

14:37:14   6   Mr. Pilkington's computer, which is the best

14:37:16   7   approximation we have of the materials that were in

14:37:19   8   existence at the time that he did his downloads, have

14:37:23   9   all been produced on his laptop to IDS.  And I believe

14:37:27  10   we actually responded to that in discovery.  So there is

14:37:30  11   no credible allegation that we somehow or another failed

14:37:40  12   to preserve the materials.  And, clearly, your Honor,

14:37:43  13   this seems like the type of thing where your Honor,

14:37:48  14   unfortunately, is going to be hearing more about this

14:37:51  15   going forward, but, again, that is not an issue.  The

14:37:53  16   preservation is there.

14:37:55  17             MAGISTRATE JUDGE MCCARTHY:  All right.

14:37:55  18   Thank you.

14:37:56  19             Mr. Zahoory, can you speak to the IDS issue

14:38:00  20   at all.

14:38:00  21             MR. ZAHOORY:  Your Honor, thank you very

14:38:02  22   much.  I can speak to it at a high level.  And what I

14:38:06  23   can confirm for you is that Skyryse has taken

14:38:09  24   considerable steps to complete the privilege review of

14:38:12  25   the devices that we sent to IDS, and that we confirmed

MOOG, INC. VS. SKYRYSE, INC.

that those privilege reviews were complete within the

deadlines that were set by the Court.  IDS has had

logistical issues on their end with identifying the

files, excising the files.  You know, we've worked very,

very hard with IDS to help them identify basically less

than 100 files and excise them from those devices so

they can be available to Plaintiff Moog.  And,

unfortunately, IDS has hit roadblock after roadblock.

And it seems as though those roadblocks s are within

IDS's own systems.  But the key thing to point out is

that Skyryse met its court-imposed deadlines.  We hit

those deadlines of when those privilege reviews were

supposed to be complete.  And then the log jams have

been potentially because the systems that IDS uses can't

read or can't identify the specific metadata in order to

excise them from the devices.

MAGISTRATE JUDGE MCCARTHY:  All right.

Well, I guess what I need to know, if it's knowable, is

are we talking about, you know, something that may be

resolved within the next month or two or is this an

indefinite log jam.

MS. ANDOH:  Your Honor, if I might.  I would

ask my colleague, Ms. Yip, to provide her perspective

because she has been overseeing this process from the

                    MOOG, INC. VS. SKYRYSE, INC.

14:40:09   Plaintiff's side.

14:40:09            MAGISTRATE JUDGE MCCARTHY:  Okay, Ms. Yip.

14:40:16            MS. YIP:  Yeah, so I don't know whether

14:40:18   whether or not what the timeline would be for IDS to

14:40:21   address these issues.  I know IDS has been working on an

14:40:25   ex parte basis with Skyryse's counsel to try and work

14:40:29   out these issues.  I don't have a sense of the timeline.

14:40:33   So, if Mr. Zahoory knows the timeline for IDS to may be

14:40:39   able to get the excision done, I would welcome him to

14:40:43   jump in on that.  But we don't know.  I actually

14:40:46   followed up with IDS on that the timeline of the

14:40:50   excision and I haven't received a response on that.

14:40:54            MR. ZAHOORY:  Your Honor, without putting a

14:40:57   firm date down, saying a month should be enough time.

14:41:01   It should be considerably less than a month.  We've hit

14:41:09   our deadlines.  We've been working really hard with IDS.

14:41:17   Our feeling is that it's at the last stages of this that

14:41:21   IDS should be able to excise this, and, if not, it

14:41:24   should already be done as of today.  So a month is

14:41:27   significantly longer.  It would be significantly less

14:41:30   than that.

14:41:32            MAGISTRATE JUDGE MCCARTHY:  Okay.

14:41:34            MS. ANDOH:  Well, your Honor, I will say

14:41:35   this, though, there is also an excision problem with the

1          MOOG, INC. VS. SKYRYSE, INC.

14:41:38  2   individual Defendants, and so, you know, I just want to

14:41:41  3   make sure that we're all on the same page about the fact

14:41:44  4   that even if Skyryse's devices are resolved, that there

14:41:49  5   is a volume issue, your Honor, I think is what I'm

14:41:51  6   trying to say.  But I do think it's a matter of a month

14:41:55  7   or weeks as opposed to sort of an indefinite set of

14:42:00  8   issues.  I think that the vast majority of these

14:42:03  9   devices, it's just a back log.

14:42:07  10          MAGISTRATE JUDGE MCCARTHY:  And, so, let me

14:42:09  11  see if I understand you correctly, I hope I do.  That

14:42:12  12  once all of those log jam issues are resolved, then you

14:42:20  13  would be in a position to start making -- to make your,

14:42:25  14  within some period of time, make your global

14:42:31  15  identification of what trade secrets you claim are at

14:42:35  16  issue in this case, is that right?

14:42:37  17          MS. ANDOH:  That's right, your Honor.

14:42:38  18  Certainly at least for purposes of the preliminary

14:42:41  19  injunction.  I just want to be really clear, we're in an

14:42:44  20  expedited discovery for purposes of the preliminary

14:42:55  21  injunction.  The answer is, we would make a universal

14:43:01  22  identification that would be the scope of what we would

14:43:04  23  be seeking to prove for purposes of the preliminary

14:43:08  24  injunction.  I just want to be careful about that, your

14:43:10  25  Honor, because, obviously, we have other claims in the

1       MOOG, INC. VS. SKYRYSE, INC.

14:43:12    2    case that we're not conducting any discovery on right

14:43:18    3    now because they are not part of the basis for the

14:43:22    4    preliminary injunction.  For example, unfair

14:43:28    5    competition.  Obviously, once the preliminary injunction

14:43:30    6    process is over, there is going to be more expansive

14:43:33    7    discovery.  We would obviously reserve the right to be

14:43:35    8    able to expand our list of trade secrets if we go

14:43:46    9    through a second round of discovery and identify

14:43:51    10   additional ones.  But we would be comfortable with being

14:43:57    11   bound for purposes of the PI hearing with whatever input

14:44:03    12   we provided following reasonable examination once we

14:44:10    13   identify what IDS has.

14:44:16    14       MR. LUMISH:  I'll just repeat my objection

14:44:18    15   to all of that, your Honor.  It's just a recipe for them

14:44:21    16   to use hindsight in the way that the cases just don't

14:44:25    17   permit.  Your Honor has heard me on that, I won't keep

14:44:27    18   repeating that.

14:44:28    19       MAGISTRATE JUDGE MCCARTHY:  Yes, I've heard

14:44:29    20   you, and I know it's in your papers somewhere.  And this

14:44:33    21   may be shocking to you, but you've all submitted a

14:44:38    22   rather large volume of papers, so I'm doing my best to,

14:44:42    23   and I don't fault you for that, I recognize it's

14:44:44    24   necessary, but if you could both, and, Mr. Lumish, if

14:44:51    25   you could pinpoint me to the portions of your submission

1                     MOOG, INC. VS. SKYRYSE, INC.

14:44:54  2   and/or the cases that you claim favor your position that

14:45:01  3   the identification should not be delayed, and, Ms.

14:45:04  4   Andoh, you've mentioned a couple of cases that you say

14:45:08  5   favor the position that it should be, I want to think

14:45:13  6   about this, and while this whole topic is, is still

14:45:21  7   relatively fresh in my mind.  I do want to write on

14:45:25  8   this, just for the parties' benefit and perhaps for

14:45:30  9   Judge Vilardo's benefit, if somebody wants to take it up

14:45:36  10  to him, bearing in mind that any discovery-related

14:45:39  11  decision is usually reviewed on a, you know, clearly

14:45:44  12  erroneous standard.  But I just, and I'm not, as I said

14:45:49  13  in my e-mail today, I'm not issuing any definitive

14:45:55  14  ruling right now.  I can see both of your positions.  I

14:46:00  15  want to take a few days and get something out in writing

14:46:03  16  and then we'll reconvene.  I'll put the other aspects of

14:46:07  17  the other motions and so forth on hold.  Because I think

14:46:11  18  we're going to go one way or the other on this.  And

14:46:14  19  what I want to do is proceed in the way that makes --

14:46:19  20  that is most efficient for everybody and makes the most

14:46:23  21  amount of sense.  You may agree or may disagree with

14:46:27  22  whatever approach I take, but I can assure you, I'm just

14:46:31  23  trying to come up with something that makes the most

14:46:35  24  sense for everybody.  So, I will, if you can just both

14:46:40  25  get me those citations, you can just shoot me an e-mail

                        MOOG, INC. VS. SKYRYSE, INC.

14:46:45   2  or whatever.  I want to think about this a little bit.

14:46:48   3  I'm going to get something out to all of you in the next

14:46:51   4  couple of days on this issue and then we can reconvene.

14:46:55   5  Okay?

14:46:56   6          MR. LUMISH:  Your Honor, may I ask, on the

14:46:58   7  question you also had about the IDS backlog, we've had a

14:47:07   8  chat going here, and one of my associates has suggested

14:47:11   9  that we may be finished.  I don't want to represent that

14:47:14  10  to your Honor or Ms. Andoh until I confirmed it.  Would

14:47:17  11  it also be acceptable if we sent an e-mail to your Honor

14:47:21  12  giving an update on where we stand on that giving you an

14:47:26  13  idea?

14:47:27  14          MAGISTRATE JUDGE MCCARTHY:  On the IDS

14:47:28  15  backlog?

14:47:30  16          MR. LUMISH:  Yes.  You asked where we are

14:47:35  17  and I want to make sure we're careful in telling you

14:47:38  18  where we are in that process.  And so if you are open to

14:47:44  19  it, we can send you an e-mail also giving you a quick

14:47:49  20  report on that.

14:47:50  21          MS. ANDOH:  And, your Honor, I ask that we

14:47:52  22  be allowed to do the same.  Obviously, we may have

14:47:56  23  slight differences in opinion given where we are in the

14:48:00  24  process.  Although, I will say this, your Honor, with

14:48:05  25  respect to the question of Skyryse and IDS's working

1                    MOOG, INC. VS. SKYRYSE, INC.

14:48:07   2   with each other, some of that work is being done ex

14:48:12   3   parte, so, obviously, we're going to rely on their

14:48:18   4   representations with respect to that.

14:48:20   5                    MAGISTRATE JUDGE MCCARTHY:  Okay.  And let

14:48:21   6   me just ask a couple of general questions because I'm

14:48:26   7   going to draw today's session to a close.  I know there

14:48:29   8   are a couple of other issues out there, but I think this

14:48:33   9   particular issue is one that I just want to get, get you

14:48:39  10   my final view on how we're going to do this.  And then

14:48:43  11   you can take it up if you want.  But, notwithstanding

14:48:49  12   the number of disagreements that you have on a lot of

14:48:53  13   issues, that you all strike me as very capable attorneys

14:49:00  14   and very diligent and honest attorneys.  I'm not just

14:49:04  15   blowing smoke here.  But I just want to, as I've done in

14:49:07  16   the past, I want to encourage you all to try to work out

14:49:12  17   among yourselves as many issues as you can because, and

14:49:16  18   I don't say this in a whining sense, you may think I am,

14:49:20  19   but I'm really not.  I'm trying to deal with as many

14:49:26  20   issues as I can, but you throw a lot at me and there are

14:49:31  21   limits to what, you know, what I can decide.  For

14:49:34  22   example, on this one, I think it's important that I put

14:49:36  23   something down in writing.  But I can't do that on

14:49:40  24   everything.  And so some of it, I'm just going to, you

14:49:45  25   know, do the best I can on.  But, what I just encourage

1       MOOG, INC. VS. SKYRYSE, INC.

14:49:49  2  you all to do is to continue your discussions and try to

14:49:54  3  work through as many issues on your own as you can

14:50:00  4  before you come to the Court.  And I know, you know,

14:50:04  5  you're aware of the requirements under the discovery

14:50:08  6  rules that you do that anyway, and I think you have been

14:50:11  7  doing that.  But there has been some suggestions that

14:50:14  8  one side or the other isn't fully meeting that

14:50:17  9  obligation, and I'm not deciding whether or not that is

14:50:20  10  true.  But I'll just say there are limits to what I can

14:50:24  11  address in this case because I have other cases, just as

14:50:27  12  you do.  So, I think I've said enough for today.  As I

14:50:33  13  indicated, I will get a decision.  I would like those

14:50:36  14  e-mails -- well, today is Friday afternoon, if you can

14:50:40  15  get me something either over the weekend or by Monday

14:50:44  16  that I can just try to get some type of preliminary

14:50:48  17  decision out to you sometime next week and then we can

14:50:53  18  decide when to reconvene.  Okay?

14:50:55  19       MS. ANDOH:  Your Honor, does it make sense

14:50:56  20  for us to schedule a follow update now since we got

14:51:00  21  everybody on the line just because?

14:51:02  22       MAGISTRATE JUDGE MCCARTHY:  Yeah, that

14:51:03  23  probably makes some sense.  Let me -- we just went to a

14:51:09  24  new calendaring system, which I'm not fully -- okay.

14:51:18  25  Assuming I get something out to you next week, let me

|         |    |                                                        |
|---------|----|--------------------------------------------------------|
|         | 1  | MOOG, INC. VS. SKYRYSE, INC.                           |
| 14:51:26 | 2 | just -- one of the problems is our scheduling system  |
| 14:51:29 | 3 | locks me out all of the time if I don't use it.  I have |
| 14:51:33 | 4 | to put my password back in.  Okay.                    |
| 14:51:42 | 5 | How about I'll get something out to you next            |
| 14:51:45 | 6 | week.  And then we can -- how about if we reconvene, how |
| 14:52:06 | 7 | about Tuesday the 24th, maybe, at like maybe 4 o'clock. |
| 14:52:14 | 8 | MR. LUMISH:  I have the 24th is a Sunday,               |
| 14:52:18 | 9 | your Honor.                                            |
| 14:52:18 | 10 | MAGISTRATE JUDGE MCCARTHY:  It is?  I'm               |
| 14:52:21 | 11 | sorry.  Yeah, my bad.                                  |
| 14:52:23 | 12 | Tuesday the 26th.  I have availability at 4             |
| 14:52:30 | 13 | o'clock or our time or I could do.                    |
| 14:52:43 | 14 | MR. LUMISH:  That works for me, your Honor.           |
| 14:52:44 | 15 | MS. ANDOH:  That certainly works for                  |
| 14:52:50 | 16 | Sheppard Mullin.  Mr. Fluskey or Ms. Muto, are one of  |
| 14:52:52 | 17 | you at least available?                                |
| 14:52:55 | 18 | MR. FLUSKEY:  Yes.                                    |
| 14:52:55 | 19 | MAGISTRATE JUDGE MCCARTHY:  That works for            |
| 14:52:57 | 20 | Plaintiffs.                                            |
| 14:52:57 | 21 | MR. GREEN:  If we do 4 o'clock, then, well,           |
| 14:53:02 | 22 | I'll need my associate Alex to stand in for me.  I will |
| 14:53:06 | 23 | not be able to do 4 o'clock.                          |
| 14:53:08 | 24 | MAGISTRATE JUDGE MCCARTHY:  Well, how about           |
| 14:53:10 | 25 | Wednesday, July 27th, I have, I have one thing on in the |

```
         1              MOOG, INC. VS. SKYRYSE, INC.
14:53:16 2    morning, but I have the entire -- I currently have the
14:53:19 3    entire afternoon open, if that works better for people.
14:53:25 4              MR. LUMISH:  No better, your Honor, but I
14:53:27 5    can make that work.
14:53:29 6              MR. GREEN:  If we could just, my problem is
14:53:32 7    only with the time of 4 o'clock.  If we could do it 3
14:53:36 8    eastern or earlier, I understand there are people on the
14:53:41 9    west coast, I don't want to be difficult about this.
14:53:44 10   And Mr. Truitt certainly is very capable of --
14:53:51 11             MAGISTRATE JUDGE MCCARTHY:  Well, are we
14:53:52 12   still talking about the 26th?  See, I have an oral
14:53:56 13   argument at 2 o'clock.
14:53:58 14             MS. ANDOH:  Your Honor, the 27th, I think we
14:54:01 15   can do the 27th.  I would actually ask that it be
14:54:05 16   earlier in the afternoon.  Is it possible to do 1, 1:30,
14:54:09 17   something like that?
14:54:10 18             MAGISTRATE JUDGE MCCARTHY:  Sure.  Yeah.
14:54:11 19   Currently the only thing I have is at -- I have a status
14:54:17 20   conference at 10 a.m.  So I could do 1, if you want.
14:54:24 21             MR. FLUSKEY:  1:30?
14:54:25 22             MAGISTRATE JUDGE MCCARTHY:  I'm sorry?
14:54:26 23             MR. FLUSKEY:  1:30 would be preferable for
14:54:29 24   Hodgson Russ, if possible.
14:54:30 25             MS. ANDOH:  That is Mr. Fluskey.
```

```
 1              MOOG, INC. VS. SKYRYSE, INC.
 2              MR. GREEN:  I want to confirm we're talking
 3    eastern time, 1:30.
 4              MAGISTRATE JUDGE MCCARTHY:  Yes.
 5              Does that work for everybody?
 6              MR. FLUSKEY:  That would, your Honor, thank
 7    you.
 8              MAGISTRATE JUDGE MCCARTHY:  Let me ask this.
 9    Is there anybody else on this Hollywood squares who has
10    Covid?
11              UNIDENTIFIED PERSON:  I had it in May.
12              UNIDENTIFIED PERSON:  I am four days out, I
13    win the competition, your Honor.
14              MAGISTRATE JUDGE MCCARTHY:  I wish you a
15    speedy recovery.  And I'm glad we're talking through a
16    screen rather than in person.  And I do look forward to
17    meeting the rest of you in person one of these days.
18    Everybody enjoy your weekend and I'll just do a text
19    order scheduling the next conference.  It will be by
20    Zoom.  And we will, as I said, I'll get something out to
21    you next week.  Okay?
22              MR. LUMISH:  Thank you, your Honor.
23              MS. ANDOH:  Thank you, your Honor.
24              MR. GREEN:  Thank you, your Honor.
25              MAGISTRATE JUDGE MCCARTHY:  Take care.
```

1          MOOG, INC. VS. SKYRYSE, INC.

2

3                    *     *     *

4              CERTIFICATE OF REPORTER

5

6     I certify that the foregoing is a correct transcript

7  of the record to the best of my ability of proceedings

8  transcribed from the audio in the above-entitled matter.

9

10 S/ Karen J. Clark,  RPR

11 Official Court Reporter