UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MOOG INC.,

                Plaintiff,

v.

SKYRYSE, INC., ROBERT ALIN
PILKINGTON, MISOOK KIM, and
DOES NOS. 1–50.

                Defendants.
_____

**DECISION AND ORDER**

1:22-CV-187-LJV-JJM

        Before the court is defendant Skyryse, Inc.'s motion to compel trade secret identification and supplementation of interrogatory responses [166].[1] Having reviewed the parties' submissions ([166, 180, 194], supplemented by several e-mails) and heard oral argument on July 15, 2022 [204], the motion is granted in part and denied in part, without prejudice to later renewal.

**DISCUSSION**

        Familiarity with the relevant facts is presumed. "[T]he trade secret information at issue is Moog's source code for Platform software and related project-specific applications and programs, and the SEPG [Software Engineering Process Group] checklists and documents to ensure the software will meet certification requirements of aviation authorities around the world." Moog's Memorandum of Law [4-1] at 24. According to Moog, "we're talking about over one million [trade secrets] . . . . This is not a run of the mill case". [204] at 42.

---

[1]     Bracketed references are to CM/ECF docket entries, and page references are to CM/ECF pagination (upper right corner of the page).

Moog and Skyryse each offer compelling arguments as to why Moog should or should not be required to specifically identify its trade secrets at this time. Skyryse argues that "[t]he requirement that a plaintiff disclose its alleged trade secrets at the outset . . . exists for important policy reasons, including to ensure that a plaintiff cannot conjure up a trade secret claim after the fact, designing such claims to match the discovery produced by the defendant". Skyryse's Memorandum of Law [166-1] at 11. Moog counters that it "cannot presently identify with specificity each and every trade secret misappropriated by Defendants because of the data deletion and other obfuscation committed by Defendants. Thus, Moog will not be able to connect the dots and understand the full extent of what was taken until it has had an opportunity to completely evaluate the Skyryse's devices and files turned over to iDS". Moog's Opposition [180] at 17.

Skyryse proposes that Moog begin to identify its trade secrets now, with leave to supplement that identification as further information comes to light. However, that proposal "may cause new rounds of depositions and other discovery as the parties scramble to assess the newly-provided information". C. Graves & B. Range, "Identification of Trade Secret Claims in Litigation: Solutions for A Ubiquitous Dispute", 5 Northwestern Journal of Technology and Intellectual Property 68, 74 (2006) ("Graves & Range"). Moog argues that that "[i]f we have to continue to do this over and over again, it's going to become a full-time job for us to just supplement", and suggests that "[i]t makes infinite sense . . . that if they are to have an identification of trade secrets prior to depositions commencing, that we do this once we turn it over to them and then depositions commence . . . . [W]e should have a period of time, maybe it's four weeks or six weeks after we have access to all of these images, where we have an

opportunity to compile a list so that we give it over once and everyone can then continue discovery with respect to that". [204] at 43, 41.

Although I am sensitive to Skyryse's concern that Moog might attempt to concoct trade secret claims based on the information it receives from defendants, I believe that concern is outweighed in this case by Moog's need to first examine the information which was admittedly taken by its former employees Kim and Pilkington prior to their departure, particularly in view of Skyryse's admission that some of that information may now have been deleted ([95] at 20). Nevertheless, as Moog itself recognizes, "after a reasonable (*but not too long*) time, [it] will need to provide more specific responses to [Skyryse's] interrogatories . . . limited to the specific trade secrets that [it] contends were misappropriated". Moog's Opposition [180] at 18 (emphasis added), *quoting* IntelliCAD Technology Consortium v. Suzhou Gstarsoft Co., 508 F. Supp. 3d 790, 800 (D. Or. 2020).

Moog "must identify its trade secrets with a reasonable degree of precision and specificity that is particular enough as to separate the trade secret from matters of general knowledge". Big Vision Private Ltd. v. E.I. DuPont De Nemours & Co., 1 F. Supp.3d 224, 258 (S.D.N.Y. 2014), aff'd, 610 F. App'x 69 (2d Cir. 2015). "It is insufficient to describe the trade secrets by generic category. Rather, the plaintiff must identify the specific characteristics of *each* trade secret." Id. at 259 (emphasis added). Moog's suggestion that "Skyryse can depose Kim and Pilkington and ask whatever questions it wants regarding the data that was copied" because they are "intimately familiar with Moog's trade secrets" (Moog's Opposition [180] at 23) does not satisfy that obligation. "Plaintiff is the only one who can know what it believes its trade secrets are." Sit-Up Ltd. v. AC/InterActiveCorp., 2008 WL 463884, *7 (S.D.N.Y. 2008). "Even if a former employee defendant could guess what trade secret claims the former employer might

make, the specifics of the actual claim could differ from that speculation." Graves & Range at 73.[2]

In addition to referring Skyryse to Kim and Pilkington, "Moog invoked Rule 33(d) and advised that documents responsive to this request (including source code) are available on the 9 electronic devices turned over by Moog to iDS". Moog's Opposition [180] at 26. That too is an insufficient response. By its own terms, Rule 33(d) can be invoked only where "the answer to an interrogatory may be determined by examining . . . a party's business records . . . and if the burden of deriving and ascertaining the answer will be substantially the same for either party". "Courts should not allow trade secret plaintiffs to point to documents in which trade secrets are said to reside as a substitute for a detailed identification." Graves & Range at 92. "Without a precise identification of software code elements . . . the defendant cannot compare the claims against public domain information to challenge the alleged secrecy of such information." Id. at 69.

Therefore, Moog must "sufficiently identif[y] its source code secrets". Proofpoint, Inc. v. Vade Secure, Inc., 2020 WL 836724, *2 (N.D. Cal. 2020). "Where the plaintiff alleges misappropriation of source code, it should identify the specific lines of code or programs claimed to be secret by, for example, printing out the code on paper with numbered lines and identifying the allegedly misappropriated lines by page and line number, by highlighting, or by color-coding." Graves & Range at 95.

Nor can Moog avoid its disclosure obligation by reference to so-called "combination claims", namely "a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which, in

---

[2] Moreover, as Kim and Pilkington's attorney notes in a July 20, 2022 e-mail, they now face potential criminal exposure, which may affect their decision as to whether to testify in this action.

unique combination, affords a competitive advantage and is a protectable secret". Moog's Opposition [180] at 23. "[T]rade secret plaintiffs must identify combination trade secret claims just as they must identify individual trade secret claims." Graves & Range at 92; Big Vision, 1 F. Supp.3d at 258 ("simply to assert that a trade secret resides in some combination of otherwise known data is not sufficient, as the combination itself must be delineated with some particularity in establishing its trade secret status").

At the preliminary injunction hearing, Moog will be required to precisely identify to Judge Vilardo the trade secrets which it claims to have been misappropriated - not only to enable him to gauge Moog's likelihood of success as to each alleged secret, but also to facilitate the drafting of a proper order if Moog prevails. "[I]f a trade secret plaintiff fails to provide a precise identification of its alleged secrets, a court will not be able to issue an appropriately specific order against the defendant." Graves & Range at 82; Corning Inc. v. PicVue Electronics, Ltd., 365 F.3d 156, 158 (2d Cir. 2004) ("The preliminary injunction entered by the district court does not identify the trade secrets . . . . It is thus not possible to ascertain from the four corners of the order precisely what acts are forbidden").

Fairness requires that Moog provide defendants withat specific identification sufficiently in advance of the hearing to enable them to prepare a defense - for "without a precise identification, the defense lacks the information it needs to conduct public domain research and challenge the alleged secrecy of the information at issue". Graves & Range at 74. Moreover, early identification of the trade secrets at issue will enable this court and the parties "to set the proper bounds and scope of discovery", thereby avoiding "burdensome and expensive discovery into irrelevant areas". Id.

"This Court under Rule 26 has discretion to control the sequence and timing of discovery." Natixis Financial Products LLC v. Bank of America, N.A., 2016 WL 7165981, *4 (S.D.N.Y. 2016); 6 Moore's Federal Practice, §26.60[6] (3d ed. 2022). Therefore, I will exercise that discretion by requiring Moog to "answer in full Skyryse's Interrogatory No. 1 calling for Moog to identify with particularity every alleged trade secret it intends to assert in this action including through a narrative response and not solely by invoking Rule 33(d)" ([166], ¶1),[3] and deferring to a later date the consideration of all discovery demands and motions except those related to Skyryse's Interrogatory 1. *See* Graves & Range 71, 76 ("[c]ourts should first separate the question of whether the plaintiff has identified an alleged secret from the question of whether the information is, in fact, a trade secret . . . . [I]dentification is a necessary preliminary step leading to the secrecy analysis").

## CONCLUSION

For these reasons, Skyryse's motion to compel [166] is granted in part and denied in part, without prejudice to later renewal.

Dated: July 22, 2022

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge

---

[3]  Although Skyryse asks that this answer be provided "immediately", the timeframe for that disclosure will be further addressed at our next conference on July 27, 2022. In the interim, the parties shall discuss what steps are necessary for Moog to make that disclosure.