```
13:29:38    1              UNITED STATES DISTRICT COURT

            2             WESTERN DISTRICT OF NEW YORK

            3
                - - - - - - - - - - - - - - X
            4   MOOG INC.,                  )      22-CV-187
                                 Plaintiff  )
            5   vs.
                                                 Buffalo, New York
            6   SKYRYSE, INC., et al        )    July 27, 2022
                                 Defendant.      1:00 p.m.
            7   - - - - - - - - - - - - - - X
```

**ORAL ARGUMENT**
**Proceeding held via Zoom for Government Platform**
**All parties appeared remotely.**

```
            9
                               TRANSCRIPT OF PROCEEDINGS
           10      BEFORE THE HONORABLE JEREMIAH J. MCCARTHY
                        UNITED STATES MAGISTRATE JUDGE
           11

           12   FOR PLAINTIFF: SHEPPHARD MULLIN RICHETER & HAMPTON, LLP
                               BY: RENA ANDOH, ESQ.
           13                      LAI YIP, ESQ.
                                   KAZIM A. NAQVI, ESQ.
           14                      -and-
                               HODGSON RUSS, LLP
           15                      BY: ROBERT J. FLUSKEY, JR, ESQ.
                                       PAULINE MUTO, ESQ.
           16
                FOR DEFENDANT:  LATHAM & WATKINS, LLP
           17                      BY: DOUGLAS E. LUMISH, ESQ.
                                       GABRIEL S. GROSS, ESQ.
           18                      KELLEY STOREY, ESQ.
                                   CASSANDRA M. BALOGA, ESQ.
           19                      JULIANNE CATHERINE OSBORNE, ESQ.
                                   RYAN T. BANKS, ESQ.
           20                      JOSEPH LEE, ESQ.
                                   ARMAN ZAHOORY, ESQ.
           21

           22   FOR DEFENDANT
                PILKINGTON/KIM: WINGET, SPADAFORA & SCHWARTZBERG, LLP
           23                      BY: ALEXANDER ASHER TRUITT, ESQ.
                                   ANTHONY D. GREEN, ESQ.
           24                      ANNABEL MIRALES, ESQ.
```

           25   **COURT REPORTER: Karen J. Clark, Official Court Reporter**
                                 **Karenclark1013@AOL.com**

```
 1              MOOG, INC. VS. SKYRYSE, INC. ET AL
 2              P R O C E E D I N G
                  *           *           *
 3
 4
12:32:19
12:32:19  5
12:33:14  6         MS. ANDOH:  On behalf of Plaintiffs, Rena
13:33:30  7   Andoh from Shepphard Mullin, and along with me are my
13:33:35  8   colleagues, Travis Anderson, Lai Yip, and Kazim Naqvi.
13:33:46  9   And additionally representing Plaintiff from Hodgson
13:33:55 10   Russ are Pauline Muto and Douglas Fluskey.
13:33:58 11         MR. LUMISH:  All right.  This is Doug Lumish
13:33:58 12   speaking from Latham and Watkins.  From the company,
13:33:58 13   Jeri Looney, is on with us.  We also have my partner
13:34:01 14   Gabe Gross, Arman Zahoory, Ryan Banks, Joe Lee, Julianne
13:34:07 15   Osborne, and Cassie Baloga and Kelley Storey as well.
13:34:07 16   We have quite a few folks in case questions come up
13:34:23 17   about the details of the forensics.  And Mr. Flynn will
13:34:24 18   need to introduce himself as well.
13:34:28 19         MR. GREEN:  For the individual defendants, I
13:34:30 20   am Anthony Green from Winget, Spadafora & Schwartzbeng.
13:34:33 21   And with me are Alex Truitt and Annabelle Mireles.
13:34:44 22         MAGISTRATE JUDGE MCCARTHY:  Thank you.  All
13:35:14 23   right.  Good afternoon, everyone.
13:35:17 24         MS. ANDOH:  Good afternoon, Judge.
13:35:19 25         MR. LUMISH:  Good afternoon.
```

1          MOOG, INC. VS. SKYRYSE, INC. ET AL

13:35:19   2          MAGISTRATE JUDGE MCCARTHY:  Good morning to

13:35:21   3   some of you, I guess, depending on location.  All right.

13:35:24   4   Before we begin, I just want to advise everyone that

13:35:30   5   there are one or more participants in this conference

13:35:36   6   today who are not parties or attorneys.  I believe the

13:35:42   7   Buffalo News may be listening in.  We were advised, but

13:35:46   8   in any event, I just wanted to caution everyone, that

13:35:50   9   although I don't anticipate that we'll be discussing

13:35:53  10   anything in a level of detail that requires sealing of a

13:35:59  11   portion of the proceeding, if somebody believes that we

13:36:03  12   are going to be getting into that area, please notify me

13:36:07  13   in advance, okay?

13:36:08  14          Now, I'd like to -- well, I take it you've

13:36:14  15   all had the opportunity to review my decision of last

13:36:20  16   week, July 22nd, and we'll talk about that and the

13:36:28  17   framework for proceeding in a few moments.  But, before

13:36:31  18   we do that, I'd like to just preliminarily address the

13:36:36  19   issue of whether certain individual's names should

13:36:45  20   remained sealed or be unsealed.  I've reviewed the

13:36:50  21   party' submissions in that regard, and I don't believe

13:36:54  22   that there is a basis for continuing to have their names

13:36:57  23   sealed.  It's my understanding that the only thing that

13:37:04  24   is disclosed is their names.  There is no sensitive

13:37:08  25   information such as social security numbers or things of

```
 1              MOOG, INC. VS. SKYRYSE, INC. ET AL
 2    that sort.  I have read the case which Skyryse cited
 3    regarding privacy interests of certain California
 4    employees under the California Constitution, but, that
 5    appeared to deal with specific types of personal
 6    information other than their names.  So, at this point,
 7    I don't see a basis to seal any or to continue any of
 8    their names under seal, but if anybody wishes to seek
 9    review of that determination by Judge Vilardo, I will
10    stay that ruling for a period of 10 days.  And just in
11    that regard, well, 10 days, actually, will probably end
12    on a Monday, so why don't we just say now, I will -- I
13    will anticipate unsealing those names by August 8th,
14    unless someone has obtained a further stay from Judge
15    Vilardo.  And in that regard, I've also noted the
16    party's arguments and the case law which has been cited,
17    but, there is a presumption of public access and the
18    possibility of embarrassment and that sort is not
19    sufficient in my view to overcome that presumption on
20    top of which I don't really see, in this case, that as
21    to most of them, there would even be the potential for
22    embarrassment or adverse publicity, but even if there
23    were, I don't think that consideration overrides the
24    presumption of public access.  So, that will be my
25    ruling as to that.
```

13:37:13
13:37:19
13:37:24
13:37:29
13:37:34
13:37:38
13:37:44
13:37:49
13:37:54
13:38:00
13:38:03
13:38:13
13:38:20
13:38:24
13:38:28
13:38:33
13:38:39
13:38:43
13:38:46
13:38:50
13:38:54
13:38:59
13:39:03
13:39:07

1        MOOG, INC. VS. SKYRYSE, INC. ET AL

13:39:11   2        Now, turning to my July 22nd decision, I

13:39:20   3   hope I was self explanatory.  I'm sure, knowing you all,

13:39:25   4   that there will be some discussion as to what I

13:39:29   5   intended, but here is what I do intend.  I recognize

13:39:34   6   that everybody is interested in moving this case along

13:39:37   7   as quickly as possible, as am I, but I think it has to

13:39:42   8   be moved along in a manner that is as efficient as

13:39:49   9   possible, recognizing considerations of proportionality

13:39:53  10   and so forth.  And for that reason, I think, as I said

13:40:01  11   in my decision, that I'm going to sequence discovery.

13:40:04  12   And I want to focus, first and foremost, on Moog's

13:40:10  13   identification in a considerable level of detail, as I

13:40:15  14   discussed in my decision, of the trade secrets which it

13:40:19  15   considers to be at issue for purposes of the preliminary

13:40:22  16   injunction hearing.  Once those are identified, then the

13:40:27  17   parties can proceed to drill down further both in terms

13:40:33  18   of their research as to whether a particular item

13:40:37  19   claimed to be a trade secret is, perhaps, known

13:40:41  20   elsewhere or whether it has been properly protected as a

13:40:46  21   trade secret, but unless and until we get to that

13:40:51  22   identification, I don't see the point in proceeding on

13:40:54  23   other discovery.  And I recognize that this may cause

13:40:58  24   some further delay, but I think that is unavoidable

13:41:02  25   under the circumstances.  And I reread the transcript of

1          MOOG, INC. VS. SKYRYSE, INC. ET AL

13:41:08   2  our last proceeding on July 15th, and it seemed to me

13:41:12   3  that Moog was in agreement with proceeding on that

13:41:17   4  basis.  And, in fact, it was opposed to a rolling

13:41:23   5  identification of trade secrets.  I think a rolling

13:41:28   6  identification would be highly inefficient under the

13:41:31   7  circumstances of this case.  So, what I would like to do

13:41:35   8  for today's purposes, and I'm going to give you all a

13:41:38   9  minute to react to what I'm saying, but after that, then

13:41:42  10  I would like to drill down on exactly what needs to be

13:41:45  11  done in order to enable Moog to make that

13:41:52  12  identification.  All right.  Having said all that, I

13:41:54  13  will hear from whoever wishes to react to it.

13:41:59  14          MS. ANDOH:  Your Honor, Rena Andoh on behalf

13:42:03  15  of Moog.  I'm happy to go through.  We spent some

13:42:06  16  time -- I believe that we understand your Honor's ruling

13:42:08  17  very well and we're prepared to comply with it.  My

13:42:12  18  understanding of what is at issue at this point is,

13:42:15  19  essentially, that your Honor wants to understand what we

13:42:19  20  perceive to be the remaining issues that prevent us from

13:42:22  21  having full access to all of the materials that we need

13:42:25  22  access to at IDS, at the independent forensic vendor, so

13:42:32  23  we're able to proceed with our identification.  So, I'm

13:42:34  24  prepare to go through that list.  Some of those issues

13:42:38  25  are fully briefed before your Honor already pursuant to

1          MOOG, INC. VS. SKYRYSE, INC. ET AL

13:42:41   2   the motion to compel.  There are a few other issues that

13:42:44   3   are not fully briefed yet, but I can certainly summarize

13:42:48   4   them and figure out to expeditiously get through them.

13:42:53   5   And then I think with those issues, I think we would be

13:42:58   6   ready to proceed and get the identification in which the

13:43:02   7   Court described in its decision.

13:43:03   8          MAGISTRATE JUDGE MCCARTHY:  And before we

13:43:04   9   get into that, I'll hear from counsel for Skyryse and

13:43:08  10   for the individual defendants just in general as to

13:43:12  11   their understanding of how we're going to proceed,

13:43:15  12   whether they agree with it or disagree with it.  But I

13:43:18  13   think it's fair to say this will probably entail some

13:43:25  14   level of delay in the scheduling of the preliminary

13:43:29  15   injunction hearing, but, quite frankly, I don't see how

13:43:33  16   that can be avoided.  And you already do have in effect

13:43:36  17   a temporary restraining order, which gives some measure

13:43:40  18   of protection.  So I'll hear from counsel for any of the

13:43:45  19   defendants if they wish to weigh in at this point.

13:43:49  20          MR. LUMISH:  Thank you, your Honor.  Doug

13:43:51  21   Lumish, Latham, for Skyryse.  First of all, I want to

13:43:56  22   thank the Court for the decision.  We think it's very

13:43:58  23   helpful that there is clarity that there will be an

13:44:02  24   answer to our interrogatory 1, and it will be a complete

13:44:05  25   one without resort to 33(d).  It seems to me from your

1    MOOG, INC. VS. SKYRYSE, INC. ET AL

13:44:08 2 order, the only thing really remaining is the question

13:44:10 3 of when, not what, just when they are going to answer

13:44:14 4 interrogatory one.  And as I read your order, it seemed

13:44:17 5 to mostly focus on when Plaintiffs would have complete

13:44:20 6 access to the materials submitted to the neutral

13:44:23 7 discovery vendor, IDS.  And so from Skyryse's

13:44:27 8 perspective, we're done with that.  And so, I think the

13:44:31 9 big issue is really on the individual Defendant side.

13:44:33 10 And I think we all probably want to hear from Mr. Green

13:44:36 11 or Mr. Truitt on that.  Because my understanding is

13:44:39 12 there may be issues that will prevent them from or

13:44:41 13 hinder them making materials available through IDS.  And

13:44:46 14 so if that is the going to be the case, then it seems to

13:44:49 15 me that your Honor will be faced with several paths that

13:44:53 16 you have to decide between, which is if there is a Fifth

13:44:59 17 Amendment plea, for example, and materials are not going

13:45:01 18 to be made available through the individual defendants,

13:45:04 19 do you separate tracks and have the proceeding for

13:45:07 20 Skyryse go, and do you stay the entire case, and I think

13:45:10 21 there are a number of issues that will sort of develop

13:45:12 22 from that.  From Skyryse's perspective, we would like an

13:45:18 23 answer to interrogatory one as soon as possible.

13:45:21 24    MS. ANDOH:  Your Honor, I want to actually

13:45:23 25 want to correct Mr. Lumish, that is actually not

|       |    |                                                          |
|-------|----|----------------------------------------------------------|
|          | 1  | MOOG, INC. VS. SKYRYSE, INC. ET AL |
| 13:45:26 | 2  | correct.  There are certain exercises that Skyryse has |
| 13:45:29 | 3  | to perform in order for us to get certain images.  I am |
| 13:45:32 | 4  | happy to go through those issues with your Honor. |
| 13:45:32 | 5  | MAGISTRATE JUDGE MCCARTHY:  Ms. Andoh, we'll |
| 13:45:33 | 6  | come back to those.  I understand.  I have in mind what |
| 13:45:37 | 7  | you've outlined as the logistical hurdles that you claim |
| 13:45:43 | 8  | you need in order to be able to identify your trade |
| 13:45:46 | 9  | secrets, but we'll come back to that in a minute. |
| 13:45:50 | 10 | Let me hear from counsel for the individual |
| 13:45:53 | 11 | defendants if you wish to weigh in. |
| 13:45:58 | 12 | MR. GREEN:  Yes, your Honor.  And what Mr. |
| 13:46:01 | 13 | Lumish was referring to, we did bring up with counsel |
| 13:46:06 | 14 | during a meet and confer yesterday that we do intend to |
| 13:46:10 | 15 | submit a pre-motion letter seeking a stay or at least |
| 13:46:18 | 16 | some sort of protection so that we -- that the |
| 13:46:22 | 17 | individual defendants are apprised exactly of what they |
| 13:46:27 | 18 | are accused of doing before we start asserting the Fifth |
| 13:46:31 | 19 | Amendment or before we know what we can assert it too. |
| 13:46:36 | 20 | And it may require a stay of all obligations.  It may |
| 13:46:41 | 21 | require only a stay of our obligations.  But that's -- |
| 13:46:46 | 22 | we haven't submitted the letter yet because we were |
| 13:46:49 | 23 | waiting for counsel for the other parties to indicate |
| 13:46:53 | 24 | whether they would consent to any such relief or not, |
| 13:46:57 | 25 | but we did intend to submit it later today.  And the |

|  |  |  |
|---|---|---|
|  | 1 | MOOG, INC. VS. SKYRYSE, INC. ET AL |
| 13:47:03 | 2 | question I have with that, while we're on the subject, |
| 13:47:06 | 3 | is whether we should direct that to your Honor or to |
| 13:47:11 | 4 | Judge Vilardo. |
| 13:47:14 | 5 | MAGISTRATE JUDGE MCCARTHY:  Oh, so you're |
| 13:47:16 | 6 | giving me the option of dumping something back to him? |
| 13:47:20 | 7 | MR. GREEN:  Well, your Honor, I just -- I |
| 13:47:22 | 8 | wasn't sure, based on -- based on the protocol so far |
| 13:47:32 | 9 | who would be the proper court to direct the motion to. |
| 13:47:37 | 10 | MAGISTRATE JUDGE MCCARTHY:  Okay.  Well, |
| 13:47:39 | 11 | yeah, let's come back to that in a minute.  And while |
| 13:47:42 | 12 | we're with you, Mr. Green, I just wanted to advise |
| 13:47:48 | 13 | everyone of my view on the issue of whether you can |
| 13:47:55 | 14 | excise information prior to, I believe the date was |
| 13:48:01 | 15 | January 1st of 2021, from your production, is that |
| 13:48:05 | 16 | right?  Mr. Green? |
| 13:48:11 | 17 | MR. GREEN:  I'm sorry, what is that? |
| 13:48:13 | 18 | MAGISTRATE JUDGE MCCARTHY:  I know there was |
| 13:48:13 | 19 | a dispute previously about whether or not the individual |
| 13:48:16 | 20 | defendants could excise or redact certain portions of |
| 13:48:21 | 21 | their documentation, and I believe the cut-off date was |
| 13:48:27 | 22 | prior to January 1st of 2021, right? |
| 13:48:29 | 23 | MR. GREEN:  Yes, your Honor.  There was an |
| 13:48:31 | 24 | issue with respect to that, too, but it may end up being |
| 13:48:36 | 25 | subsumed by the request that we're going to make later |

```
1              MOOG, INC. VS. SKYRYSE, INC. ET AL
13:48:40   2   today.  But, the basis of that, that objection is that
13:48:45   3   it's outside of the relevant time period.
13:48:48   4              MAGISTRATE JUDGE MCCARTHY:  No, I understand
13:48:49   5   your argument in that regard and whether it is subsumed
13:48:53   6   or not.  I've not had formal briefing on this, but I've
13:48:57   7   reviewed the party's e-mails.  And my view is in terms
13:49:00   8   of portionality, et cetera, I think it does make sense
13:49:04   9   to establish the cut off at that date, particularly
13:49:09  10   given your representation and your e-mail.  I forget the
13:49:13  11   date.  That if information preceding that date were
13:49:19  12   later shown to be relevant, it could be produced.  But I
13:49:22  13   guess, as you say, that may end up -- that whole issue
13:49:32  14   may be subsumed in the overarching issue of whether or
13:49:37  15   not these defendants are going to be producing
13:49:39  16   information in light of potential Fifth Amendment
13:49:42  17   concerns or not.  We get into a chicken and egg
13:49:47  18   situation when you say, and I understand your reasoning
13:49:50  19   for this, that you say, you know, they need to know that
13:49:56  20   so that they can decide whether or not to assert any
13:49:59  21   privilege, they need to know what the trade secrets are.
13:50:04  22   But, on the other hand, we come back to the conundrum,
13:50:09  23   and I do tend to side with Moog on this, that they need
13:50:13  24   to have access to information in order to enable them to
13:50:22  25   tell everyone what they consider the trade secrets to
```

```
                        MOOG, INC. VS. SKYRYSE, INC. ET AL
 1
13:50:25  2  be.  I mean, for example, Ms. Andoh did say at, you
13:50:28  3  know, at the July 15th proceeding, that you're dealing
13:50:32  4  with potentially a huge number of trade secrets in this
13:50:35  5  case.  I think she mentioned the figure of a million.
13:50:42  6  But, obviously, nobody is going to go to Judge Vilardo
13:50:46  7  on a preliminary injunction hearing with a million trade
13:50:50  8  secrets.  You can do that, but I can predict your
13:50:53  9  reception would not be overly favorable.  So, they are
13:50:57 10  going to have to be culled down in some fashion into a,
13:51:03 11  you know, a coherent presentation to Judge Vilardo.
13:51:08 12  But, again, my hope is that when that time comes for
13:51:12 13  Moog to identify the trade secrets on which it will seek
13:51:17 14  relief at the preliminary injunction hearing, that it
13:51:21 15  will be, you know a reasonably narrow scope.  So, I
13:51:26 16  guess I'll throw it back to counsel for Moog and Skyryse
13:51:33 17  just to react to Mr. Green's suggestion about what will
13:51:40 18  doubtless be incorporated in a letter that he is going
13:51:45 19  to be submitting, either a complete or partial stay.
13:51:49 20  Anybody want to react to that?
13:51:52 21           MR. LUMISH:  Maybe I should go fist.
13:51:53 22           MAGISTRATE JUDGE MCCARTHY:  Excuse me, Mr.
13:51:54 23  Lumish, somebody just said before.  Mr. Green?
13:51:58 24           MR. GREEN:  Yes, your Honor.
13:51:59 25           MAGISTRATE JUDGE MCCARTHY:  Back to Mr.
```

                            MOOG, INC. VS. SKYRYSE, INC. ET AL
13:52:00    2    Green then.  Go ahead.
13:52:01    3                MR. GREEN:  I want to add one thing.  A
13:52:04    4    grand jury has been convened, so, Moog must have
13:52:09    5    provided information to the government about what trade
13:52:14    6    secrets, otherwise the government has quite a huge hole
13:52:19    7    in its case.  So why is that information not being
13:52:22    8    produced?  If they were able to identify to the
13:52:27    9    government, why can't they identify it to the parties?
13:52:30   10                MS. ANDOH:  Your Honor, I would really
13:52:32   11    appreciate the opportunity to respond to this, if I may.
13:52:36   12                MAGISTRATE JUDGE MCCARTHY:  Ms. Andoh, I'm
13:52:38   13    going to give you the opportunity.  That is a legitimate
13:52:42   14    question, and I'll give you the opportunity, and I'll
13:52:45   15    give Mr. Lumish the opportunity to weigh in.
13:52:48   16    Preliminarily, I guess, that is really -- I mean, it's a
13:52:51   17    related issue, but in some respects, it's separate to
13:52:57   18    the issue whether there should be a stay in any of the
13:53:00   19    proceedings in this case as to them or as to everybody.
13:53:03   20    So, back to Ms. Andoh and/or Mr. Lumish or whoever else
13:53:07   21    wants to weigh in.
13:53:08   22                MS. ANDOH:  I would like to respond directly
13:53:10   23    first.  Thank you.
13:53:11   24                MR. LUMISH:  Ms. Lumish, you want to respond
13:53:15   25    to me?

<pre>
            1            MOOG, INC. VS. SKYRYSE, INC. ET AL
13:53:15    2            MAGISTRATE JUDGE MCCARTHY:  Just a second.
13:53:16    3   You're both talking at once.
13:53:18    4            MR. LUMISH:  I was going to propose, your
13:53:20    5   Honor, I'm going to be less than a minute, and Ms. Andoh
13:53:23    6   can address me and Mr. Green on the stay issue as
13:53:27    7   opposed to going to back and forth.
13:53:29    8            MAGISTRATE JUDGE MCCARTHY:  Okay.  Go ahead.
13:53:30    9            MR. LUMISH:  All I want to say about the
13:53:32   10   stay, your Honor, is we agree in principle, as you know
13:53:34   11   from our case submissions last week.  We believe there
13:53:38   12   should be no discovery until after the identification of
13:53:42   13   the trade secret.  We also recognize your Honor's ruling
13:53:46   14   and we're not going to reargue that.  And we also
13:53:51   15   recognize that our predecessor counsel agreed to a
13:53:52   16   procedure for discovery.  And so keeping to my pledge to
13:53:56   17   you the first time we met, I don't plan to disrupt those
13:54:00   18   things and do anything to slow down the case.  We agree
13:54:01   19   in principle with the individual defendants, we think
13:54:04   20   that is the right way to proceed, but we also intend to
13:54:09   21   honor our pledge.  And that is all I wanted to say.
13:54:10   22            MAGISTRATE JUDGE MCCARTHY:  Before I hear
13:54:12   23   from Ms. Andoh, Mr. Green, let me hear from you.  What
13:54:16   24   type of stay do you have in mind?
13:54:18   25            MR. GREEN:  Well, we're willing to discuss
</pre>

MOOG, INC. VS. SKYRYSE, INC. ET AL

13:54:20  2  it with the other parties.  At the very least, a stay of

13:54:25  3  the individual Defendants' obligations because while a

13:54:30  4  waiver needs to be knowing and voluntary, we don't want

13:54:33  5  to be in the situation where now we have to come back to

13:54:37  6  your Honor and say, well, we've produced this

13:54:39  7  information and it needs to be clawed back, any more

13:54:44  8  than it may already need to be.  So that is why I

13:54:47  9  believe that, at the very least, there needs to be

13:54:51  10  disclosures before the individual Defendants make any

13:54:54  11  further or participate any further in the discovery.

13:55:01  12  MAGISTRATE JUDGE MCCARTHY:  Okay.  Ms.

13:55:01  13  Andoh, now I guess Mr. Lumish has said what he wanted to

13:55:06  14  say, so it's back to you now.

13:55:08  15  MS. ANDOH:  Thank you, your Honor.  So I

13:55:09  16  think a few different points here.  First of all, with

13:55:12  17  respect to Mr. Green's proposal of a stay, obviously

13:55:15  18  Moog is going to vigorously oppose that.  On its face,

13:55:19  19  it doesn't make a lot of sense to me that materials that

13:55:23  20  they've already produced would be clawed back on the

13:55:26  21  basis of potential incrimination.  You know, the

13:55:29  22  government -- at the end of the day, the fact that a

13:55:31  23  grand jury has been convened, as far as the case the

13:55:35  24  government is pursuing, I have no idea.  Grand juries

13:55:37  25  are entitled to secrecy, and I have no idea what charges

1              MOOG, INC. VS. SKYRYSE, INC. ET AL

13:55:41   2    they are considering pursuing.  But, I will simply point

13:55:45   3    out criminal statutes are very different than civil

13:55:49   4    common law claims and civil statutes.  So, to the extent

13:55:53   5    they are being pursued for theft, for example, your

13:55:56   6    Honor, I don't think there is particular analogy between

13:55:59   7    the government's case against the individual defendants

13:56:00   8    and ours with respect to trade secret identification.  I

13:56:03   9    will say, your Honor, that with respect to the question

13:56:06   10   of what we turned over to the FBI, as we've been told by

13:56:11   11   the FBI, that both sets of individual, both the

13:56:13   12   individual Defendants and Skyryse have been subpoenaed

13:56:16   13   as well as us, we actually reached out to counsel to try

13:56:20   14   and reach an agreement that all parties would exchange

13:56:23   15   the full productions that they have given to the

13:56:26   16   government.  We made that proposal about a week and a

13:56:28   17   half ago.  We were basically told, no, not basically, we

13:56:33   18   were actually told no by Skyryse, and told we would only

13:56:37   19   produce materials that were directly responsive to our

13:56:41   20   document request.  I think Skyryse remains fully

13:56:43   21   prepared, and, I'm sorry, Moog, remains fully prepared

13:56:48   22   and willing to do a full exchange of full production

13:56:50   23   that all of the parties have gave to the FBI, which,

13:56:53   24   frankly, to us, makes infinite sentence.  It seems to

13:56:57   25   us, based on what I know, and which is obviously more

1                    MOOG, INC. VS. SKYRYSE, INC. ET AL

13:57:01   2    limited based on what I know of the Government's case,

13:57:03   3    the Government's case is a subset of the claims we're

13:57:06   4    making in a civil case.  So I continue to find it very

13:57:08   5    difficult to conceive that anything that was turned over

13:57:10   6    by the individual Defendants or by Skyryse to the FBI

13:57:14   7    would not also be relevant to these claims.  But, again,

13:57:17   8    your Honor, that is an issue that we were trying to

13:57:19   9    negotiate through meet and confer, and have not yet

13:57:22   10   brought to your Honor's attention because our belief was

13:57:25   11   that we may be able to reach resolution before we get to

13:57:29   12   that.  As far as a stay in general, your Honor, I think

13:57:32   13   going back to the question of whether or not they are

13:57:35   14   entitled to one or not, what I don't see here is I don't

13:57:38   15   see the Government coming in and asking for a stay.

13:57:40   16   I've had plenty of cases where there have been

13:57:43   17   government investigations and even individuals of

13:57:46   18   companies that were charged with crimes where the

13:57:48   19   Government has not requested a stay of the case and

13:57:52   20   allowed the case to continue and only requested a

13:57:55   21   partial stay and the remainder of the case is able to

13:57:58   22   continue.  Again, I think we should be able to brief

13:57:59   23   this issue fully, but I don't think the interest of the

13:58:02   24   individual Defendant with respect to taking the Fifth

13:58:04   25   Amendment is an overriding factor in favor of a stay in

MOOG, INC. VS. SKYRYSE, INC. ET AL

1

13:58:09  2   a case like this.  If the Government wants to come in

13:58:11  3   and have a discussion about whether this case needs to

13:58:15  4   be modified in order to address their concerns, then,

13:58:17  5   obviously, Moog will defer to the Government's interest

13:58:20  6   in that case.  But, I guess, going back to the excision

13:58:24  7   issue, I would say, your Honor, we intentionally did not

13:58:28  8   respond to the individual Defendants' e-mail.  As your

13:58:32  9   Honor said, we would be given the opportunity to brief

13:58:34  10  it.  We don't agree with their position, and I think we

13:58:37  11  can explain pretty clearly why it is that the materials

13:58:37  12  that were created before 2021 are fully relevant to this

13:58:41  13  case, keeping in mind that the files that Mr. Pilkington

13:58:44  14  and Ms. Kim stole contained information that dates back

13:58:47  15  to the beginning of their employment at Moog in 2013.

13:58:51  16  And the issue with respect to their access and use of

13:58:55  17  information has nothing to do with when the information

13:58:58  18  was created, but when it was accessed and used.  And the

13:59:02  19  access and use date may well be in 2022, but that does

13:59:06  20  not mean that they could not inappropriately access and

13:59:09  21  view these materials that were on their devices that

13:59:11  22  were created prior to January 1st, 2021.  So I would

13:59:15  23  just like to say we would like the opportunity to brief

13:59:18  24  that issue.  And there are a couple other issues that

13:59:21  25  are in my list, your Honor, that are not briefed before

1          MOOG, INC. VS. SKYRYSE, INC. ET AL

13:59:25   2   your Honor, so what I would suggest in general, that we

13:59:28   3   agree to do a briefing with anything that is outstanding

13:59:31   4   with respect to issues that we believe are specific to

13:59:33   5   our ability to do a full analysis of IDS's materials,

13:59:37   6   and that we get it on the calendar as soon as possible,

13:59:40   7   so we have full resolution and we can move forward with

13:59:43   8   the identification.

13:59:44   9          And, your Honor, one more thing, just

13:59:45   10  because I want to go back and address what Mr. Lumish

13:59:48   11  said about Skyryse being fully complete.  Skyryse has

13:59:52   12  completed the privilege review on their devices.  But

13:59:55   13  back on June 27th, Skyryse represented to Moog that they

13:59:59   14  also wanted to be able to perform a privilege review on

14:00:04   15  some of the individual Defendant's devices because they

14:00:04   16  believed there was Skyryse materials that could be

14:00:04   17  privileged that existed on these individual Defendant's

14:00:10   18  devices, we've been asking them for a month to give us a

14:00:12   19  deadline by which they will complete that process and

14:00:15   20  we've yet to receive one from them.  So right now, there

14:00:19   21  are those devices, and I want to say, I think it's four

14:00:22   22  devices, those devices, we don't have access to at this

14:00:27   23  point -- five devices we don't have access to at this

14:00:32   24  point because they have not completed the privilege

14:00:35   25  review on individual Defendant's devices so that is the

```
 1            MOOG, INC. VS. SKYRYSE, INC. ET AL
 2   hold up.
 3            MR. LUMISH:  Your Honor, we don't have those
 4   devices.  Ms. Andoh knows that.  We have reviewed every
 5   device we have and we completed our review.  If somebody
 6   on the team thinks I'm wrong on that, they should chime
 7   in.  I think that is a misstatement of wording.
 8            MR. GROSS:  I would just qualify by noting
 9   the reason we can't review them because I don't think
10   the individual Defendants have reached the decision they
11   want to make them available to Skyryse yet.  I'll turn
12   it over to Mr. Green, but I agree with the way Mr.
13   Lumish described it.  It's not that we are holding up a
14   privilege review, it is just we have not been able to do
15   it on those handful of devices that came from the
16   individual Defendants.
17            MR. GREEN:  Yes, that is correct, that we
18   were coordinating with criminal defense counsel and we
19   have not yet provided them to Skyryse.  That is not on
20   Skyryse.  I'll be clear about that.  That is an issue of
21   whether we're going to claim Fifth Amendment privilege
22   over those, over those devices.  But, again, we are
23   lacking a great deal of information, and, you know, I
24   keep hearing Moog saying that they know what files were
25   downloaded, so why can't we, at this point, just have
```

1          MOOG, INC. VS. SKYRYSE, INC. ET AL

14:01:57  2   disclosure about those and which of those files that

14:02:00  3   were downloaded were trade secrets or classified

14:02:04  4   information?  We still, you know, don't know virtually

14:02:09  5   anything about whether anything was actually classified.

14:02:14  6   And I don't think there is any reason not to -- not to

14:02:21  7   ask them to do that.  While that will, at least, will

14:02:27  8   tell us the universe of documents that may be considered

14:02:30  9   trade secrets, because we're right now, we can't be

14:02:33  10  expected to go through that and make our own

14:02:36  11  determination that we believe this is Moog's trade

14:02:41  12  secret or not.  We don't know what Moog believes is a

14:02:44  13  trade secret or not.  We're not able to make that

14:02:47  14  determination.  And so we are left in this situation

14:02:52  15  where we either, we are just making these decisions on

14:03:00  16  incomplete information and they are very consequential

14:03:03  17  decisions.

14:03:05  18          MAGISTRATE JUDGE MCCARTHY:  No.

14:03:06  19          MS. ANDOH:  Your Honor, if I may.

14:03:07  20          MAGISTRATE JUDGE MCCARTHY:  Just a second,

14:03:08  21  please.  Mr. Green, I totally agree with you that it's a

14:03:12  22  very consequential decision, but this is a real

14:03:19  23  conundrum, at least as far as I'm concerned.  Because

14:03:23  24  what you're saying is, and I can understand this, that

14:03:27  25  you need to consider what they are going to claim as

MOOG, INC. VS. SKYRYSE, INC. ET AL

trade secrets before you decide on behalf of your
clients to invoke any Fifth Amendment or other
privilege.  On the other hand, Moog says we can't make
that identification or at least a complete
identification until we have all of the information,
which will enable us to do so, some of which is the
information that they are waiting for your clients to
produce.  So, those two considerations are really at
logger heads, aren't they.

MS. ANDOH:  Your Honor, if I may, I think
it's important to understand what these devices are
that, first of all, I'm a little confused about the turn
over of devices because my understanding is that these
devices have been turned over to IDS or the images of
them are already in the possession of the neutral
vendor, so they have been produced over to IDS.  The
devices that are at issue, according to IDS's inventory,
just for the record are devices E0005, 0018, 0019, 0023
and 0025.  So they all have inventory numbers for IDS
and those images have been turned over.  Certainly, to
the extent that the individual Defendants are not giving
access to Skyryse, it's simply because they have not
instructed IDS to turn those images over.  They have
been produced.  But to be really clear about this, your

MOOG, INC. VS. SKYRYSE, INC. ET AL

14:04:59   2   Honor, these images are critical to us.  These are the

14:05:03   3   images that we're talking about when we say we're trying

14:05:06   4   to get the complete copy of what Mr. Pilkington took.

14:05:08   5   The devices 18 and 19 are the hard drives that Mr.

14:05:12   6   Pilkington used to copy the Moog files.  The serial

14:05:17   7   numbers of those two devices match the information that

14:05:18   8   we have about the copies.  So those two devices are the

14:05:22   9   ones that presumptively, actually contain the material

14:05:25   10   that we're trying to get to in order to confirm the

14:05:28   11   exact identities all of the files that were taken.  And

14:05:31   12   we don't have any access to them because of this

14:05:33   13   privilege review issue.  And another one of them,

14:05:40   14   EEE0023 is another one of Mr. Pilkington's USB drives,

14:05:43   15   and it's one we don't have a serial number information

14:05:46   16   on, but our understanding, again, is Mr. Pilkington's MO

14:05:49   17   was using these external hard drives to copy material,

14:05:53   18   and so it's also, for obvious reasons, highly critical

14:05:57   19   to us to get access to see if there is any Moog data on

14:06:01   20   it.  And another one of the five devices is Ms. Kim's

14:06:06   21   individual Windows computer, and I believe it was the

14:06:09   22   one that was actually active at the time she turned over

14:06:13   23   to the Skyryse.  This is not a situation where the

14:06:16   24   images at issue are not part of the case.  And it's also

14:06:20   25   not a situation where these devices have not already

1                    MOOG, INC. VS. SKYRYSE, INC. ET AL

14:06:22    2    been produced.  They have been produced to IDS, to the

14:06:26    3    neutral forensic vendor.  And the idea that we would not

14:06:30    4    be given access to them to do our review because the

14:06:33    5    individual Defendants are declining to allow Skyryse to

14:06:36    6    do what they claim to be a privilege review on the

14:06:39    7    individual Defendant's devices, again, you know, at the

14:06:42    8    end of the day, you know, your Honor will forgive me for

14:06:47    9    saying that it just feels like every single time we try

14:06:50   10    to get access to the devices so we can do what we said

14:06:53   11    we needed to do, the basic things we need to do, every

14:06:58   12    single time a new roadblock gets thrown in our way and

14:07:02   13    we have new excuses as to why we can't get access to the

14:07:07   14    material in the case.

14:07:08   15                    MAGISTRATE JUDGE MCCARTHY:  Ms. Andoh, the

14:07:10   16    new excuse here, and maybe it's not new, but certainly a

14:07:13   17    factor of that was not present when we had our first

14:07:16   18    discussion, or, if it was, I didn't know about it, is

14:07:20   19    that there is now a criminal investigation going on.

14:07:22   20    And I don't know the answer to how you balance these

14:07:28   21    countervailing interests, but certainly from the

14:07:32   22    individual Defendant's perspective, I think they have to

14:07:37   23    carefully consider whether or to what extent they are

14:07:41   24    going to divulge information that might end up being

14:07:47   25    incriminatory.  Again, I have no idea what the

1              MOOG, INC. VS. SKYRYSE, INC. ET AL

14:07:50   2   Government's case is about.  And I know the general

14:07:56   3   rule, I think you're all familiar with, and maybe there

14:07:59   4   are exceptions, but the general rule is that a party to

14:08:03   5   a civil case can invoke a Fifth Amendment protections,

14:08:09   6   but, if they do so in the civil case, there may be a

14:08:16   7   presumption lodged against them for purposes only of the

14:08:21   8   civil case.  So, I mean, I'm wrestling with this.  I

14:08:26   9   think you're all wrestling with this.  I don't know the

14:08:31   10  answer is should they be further required to divulge

14:08:35   11  information that might come back to endanger them

14:08:38   12  criminally.  On the other hand, you have your civil

14:08:41   13  case, which you want to move forward, I understand that

14:08:44   14  as well.

14:08:47   15             Mr. Gross, you wanted to say something.

14:08:49   16             MR. GROSS:  Thank you, your Honor.  Gabe

14:08:51   17  Gross for Skyryse.  I just wanted to respond to a couple

14:08:54   18  of things that Ms. Andoh just said.  Which I think it's

14:09:00   19  important to keep in mind, regardless of whether the

14:09:03   20  individual Defendants end up invoking their Fifth

14:09:06   21  Amendment rights or not, Moog has a significant amount

14:09:09   22  of information about these files they've alleged were

14:09:12   23  taken by those individual Defendants.  And that is, of

14:09:14   24  course, the information that came out of their internal

14:09:17   25  investigation that they came to court with in the first

1          MOOG, INC. VS. SKYRYSE, INC. ET AL

14:09:19   2   place with declarations with the folks who itemized by

14:09:24   3   file type and name and that sort of thing, the type of

14:09:27   4   information they claim had been copied.  So, there is

14:09:30   5   really nothing right now that would stop Moog from

14:09:39   6   providing the fulsome narrative response to

14:09:39   7   interrogatory No. 1 that your Honor has ordered.  I

14:09:39   8   understand that Moog would like more discovery from the

14:09:42   9   individual defendants and it is yet to be seen whether

14:09:43   10  they will get that given the Fifth Amendment concerns

14:09:46   11  that Mr. Green mentioned.  But they are in a position to

14:09:49   12  at least identify some, if not most, of their trade

14:09:53   13  secrets at this point.  So I did want to just provide

14:09:56   14  that context to make sure we don't lose that.

14:09:59   15          MAGISTRATE JUDGE MCCARTHY:  Mr. Gross, it

14:10:00   16  seems to me that that is a rehash of the arguments we've

14:10:04   17  had previously.  And I've already, you know, I

14:10:08   18  understand your position, but I've already ruled, and I

14:10:13   19  think Moog will have to bear the consequences of any

14:10:18   20  delay that this may entail.  But I just think it makes a

14:10:23   21  lot more sense to have a global identification of the

14:10:28   22  trade secrets at issue, particularly before anybody

14:10:30   23  starts taking depositions, because if it's on a rolling

14:10:35   24  basis, you may take a deposition based upon the

14:10:38   25  information you have, and then suddenly some more

1          MOOG, INC. VS. SKYRYSE, INC. ET AL

14:10:41    2    information comes out, and now you've got to retake or

14:10:45    3    supplement that deposition.  And it just seems to me to

14:10:49    4    be a terribly inefficient way of proceeding.  If Moog

14:10:53    5    recognizes, you know, that the consequence of my

14:10:57    6    decision of last week may be that the preliminary

14:11:00    7    injunction hearing is going to have to be delayed, for

14:11:03    8    how long, I don't know, then I think that is something

14:11:07    9    that everybody can live with.  On the other hand, we

14:11:11   10    have the wrinkle of the potential criminal case in which

14:11:17   11    the individual Defendants need to know something, I

14:11:20   12    guess, before they can decide whether to invoke any

14:11:23   13    privilege.  So that is what -- that is what we're all

14:11:30   14    wrestling with.  Does that accurately, at least,

14:11:33   15    describe what the conundrum is here?

14:11:36   16          MR. GROSS:  No.  I think you have a firm

14:11:38   17    grasp of it, your Honor.  And I don't disagree with your

14:11:41   18    characterization of it.  And so, to be clear, Skyryse

14:11:44   19    has no interest in proceeding with depositions before

14:11:47   20    the trade secrets have been fully, and, hopefully,

14:11:50   21    finally identified.  So, whether that happens after the

14:11:54   22    first disclosure of trade secret identification or a

14:12:00   23    second one, I don't think it's in anyone's interest to

14:12:00   24    start the deposition process and then to return to it,

14:12:06   25    but to make sure the discovery is fulsome before we move

1                MOOG, INC. VS. SKYRYSE, INC. ET AL

14:12:06   2   to that phase of discovery.

14:12:09   3                MAGISTRATE JUDGE MCCARTHY:  Right.

14:12:09   4                MS. ANDOH:  Your Honor, I think, just to cut

14:12:11   5   to the chase a little bit here, it seems like the stay

14:12:14   6   issue clearly needs to be briefed.  I think that the

14:12:19   7   individual Defendants need to articulate very clearly

14:12:21   8   exactly what it is they are proposing to stay, and what

14:12:23   9   their basis is to seek for that stay.  To the extent

14:12:27  10   that they are seeking to claw back materials that have

14:12:27  11   already been produced to IDS, I think they would need to

14:12:34  12   articulate why that would be justified in this

14:12:35  13   situation.  And certainly I'm not prepared to argue that

14:12:38  14   issue today.  We only found out they were contemplating

14:12:42  15   seeking a stay yesterday after a meet and confer.  I

14:12:47  16   will say this, your Honor, of the other issues that we

14:12:51  17   have that would, otherwise, that are barriers,

14:12:53  18   apparently, this question that the privilege review on

14:12:57  19   these critical devices is tied up, to some degree, in

14:13:01  20   any way in briefing, we clearly need to brief the

14:13:05  21   question of those devices in their state, whether it's

14:13:09  22   connected to the motion to stay or whether it is

14:13:12  23   independent as of the motion to compel Skyryse to

14:13:15  24   complete the privilege review and the individual

14:13:18  25   Defendants to a permit Skyryse's access and make them do

                    MOOG, INC. VS. SKYRYSE, INC. ET AL

14:13:18  2  it.

14:13:24  3          The other issues that are outstanding, there

14:13:27  4  are two issues that have been fully briefed just as to

14:13:30  5  the motion to compel before your Honor.  Those issues

14:13:33  6  are the source code inspection protocol issue, because,

14:13:37  7  for obvious reasons, you know, from our perspective,

14:13:40  8  it's going to be incredibly difficult for us to be able

14:13:44  9  to conduct a review in comparison if Skyryse's source

14:13:49  10  code is housed in a separate facility where we don't

14:13:56  11  simultaneously have access to the materials that are

14:13:57  12  uploaded to IDS to perform that review.  It's going to

14:13:58  13  slow us down at a minimum and make our ability to

14:14:02  14  identify use next to impossible because we can't

14:14:07  15  actually line up the source code against the fragments

14:14:09  16  that we have at IDS.  The second issue that is already

14:14:12  17  briefed before your Honor are the failure of Skyryse to

14:14:16  18  produce documents in response to RP's 8 through 10.

14:14:26  19  Those are documents that are important to us.  They

14:14:27  20  relate to the explanation of the development of

14:14:31  21  Skyryse's light control software.  And that is really

14:14:34  22  important as well because, as you know, we don't

14:14:38  23  actually love saying this as much, but because of the

14:14:41  24  number of files involved and over a million files, one

14:14:44  25  of the things we're trying to do is triage this, and be

1          MOOG, INC. VS. SKYRYSE, INC. ET AL

14:14:48   2    able to identify, to your Honor's point, the materials

14:14:51   3    that we should look at first.  Because the library of

14:14:54   4    what they stole is vast.  And so if Skyryse's actual

14:14:59   5    focus and development is a small subsection of what the

14:15:04   6    library is, we would focus in on a portion of the

14:15:07   7    library that is directly relevant to what Skyryse is

14:15:09   8    doing.  And assume from a starting point, that the

14:15:14   9    materials are more tangential or less related to their

14:15:17   10   activities are lower priority.  And that would, quite

14:15:20   11   frankly, your Honor, how to address your concern about

14:15:20   12   how to put forward a coherent presentation in front of

14:15:27   13   Judge Vilardo in terms of our trade secrets at a

14:15:27   14   preliminary injunction meeting.

14:15:29   15          So those are the two issues that have

14:15:32   16   already been briefed.  The other two things that we're

14:15:34   17   having issues with respect to being able to get full

14:15:37   18   access, one of them we already discussed, which is this

14:15:40   19   excision issue, which we propose we brief and we can do

14:15:44   20   it on an expedited basis, if your Honor prefers, so we

14:15:49   21   don't have any more delay.  That is Moog's preference.

14:15:53   22   There are two sort of -- there is one issue that is very

14:15:57   23   new that we've just become aware of.  And under normal

14:16:01   24   circumstances, your Honor, this issue would have been

14:16:05   25   briefed in connection with the IDS motion to compel

MOOG, INC. VS. SKYRYSE, INC. ET AL

deadline, which, as your Honor knows, we never set a
final deadline for that because we got moved into this
trade secret identification issue.  We flagged this with
Skyryse, and we're still in meet and confer with them,
but it is actually quite critical for us.

There are -- rewinding, your Honor, to May
4, when Skyryse's predecessor counsel, Gibson Dunn, they
told us, at the time, that there were -- that they had
found that there were certain ScanDisk Cruzer devices,
basically external hard drives that plug into a
computer.  And there were three of them that were
identified by serial number.  And in that May 4th
letter, Skyryse disclosed to us that they understood
that those devices were connected to nine laptops.  And
the issue, at the time, the question was, were those
devices turned over to IDS.  And, at the time, Moog did
not have access to IDS, and so we did not know whether
or not those ScanDisk Cruzer devices had been turned
over or not.  What we have now found out, now that we at
least had access to be able to review, is that two of
the three ScanDisk Cruzer devices that Skyryse disclosed
in their May 4 letter are missing.  The May 4 letter
indicated that they thought that the individual
Defendants might have them.  But if the individual

```
                    MOOG, INC. VS. SKYRYSE, INC. ET AL
14:17:43   Defendants do have them, they have not been turned over
14:17:46   to IDS.  They are not in existence.
14:17:48        The third device, the third ScanDisk Cruzer
14:17:51   device, has been wiped.  And, as a matter of fact, your
14:17:55   Honor, our forensic expert has identified that it was
14:17:59   wiped three days after Moog complaint in this case was
14:18:03   filed, but completely wiped.  There is nothing
14:18:04   recoverable on it.  And, as a result of the fact that
14:18:04   you have these problems with these three devices, one is
14:18:10   wiped and the other two are missing, the only way for us
14:18:13   to be able to reconstruct what was on the devices and
14:18:17   the pattern of connection of the two devices to Skyryse
14:18:21   computers, would be for the individuals to turn over the
14:18:25   nine laptops that they've identified were connected to
14:18:29   so we can repeat them.  And they have not, to this date,
14:18:32   turned over the nine devices.  And, again, this is an
14:18:35   issue for us in part because we don't actually know what
14:18:38   was on the ScanDisk Cruzer devices, other than Skyryse
14:18:38   disclosed as part of that May 4 letter, that they
14:18:45   believed there was Moog confidential information on
14:18:47   those devices.  Again, with respect to this issue, we're
14:18:50   still trying to discuss it with Skyryse, and trying to
14:18:53   see if we can work something out.  But I would suggest,
14:18:57   your Honor, that, again, this is a situation where in
```

1              MOOG, INC. VS. SKYRYSE, INC. ET AL

14:18:59   2   order for us to actually understand everything that has

14:19:02   3   been taken and what is at issue in the case, we would

14:19:04   4   need to be able to understand what was on those devices

14:19:08   5   that Skyryse has already told us our materials were on.

14:19:13   6              MAGISTRATE JUDGE MCCARTHY:  Okay.  So,

14:19:17   7   obviously, there is going to be some more briefing on

14:19:21   8   various issues.  If I could come back to Mr. Green for a

14:19:24   9   minute.  Mr. Green, what is going to enable you to, if

14:19:32   10  anything, at this point, is going to enable you to make

14:19:35   11  a determination as to whether or not your clients are

14:19:38   12  going to provide any further information in the civil

14:19:42   13  case?

14:19:44   14             MR. GREEN:  Thank you, your Honor.  A few

14:19:47   15  things.  One, we need -- we need Moog to comply with

14:19:53   16  your order and identify the trade secrets that are at

14:19:56   17  issue.

14:19:57   18             MAGISTRATE JUDGE MCCARTHY:  But let me just

14:19:58   19  interrupt you there.  My order was that they will comply

14:20:02   20  and identify, once they have had access to the

14:20:07   21  information that they need to enable them to make a

14:20:09   22  global determination, and that is where we get back to

14:20:13   23  the conundrum.  Part of the information they say they

14:20:16   24  need is information from your clients.  And while I can

14:20:20   25  understand that you, you know, you want to be cautious

                    MOOG, INC. VS. SKYRYSE, INC. ET AL

14:20:24   2   in deciding whether or not to provide that, again, I

14:20:30   3   said before, chicken and egg, and I think that is what

14:20:34   4   it is.  If you're not going to provide it, I understand

14:20:36   5   that, but then they are not going to be able to make

14:20:38   6   their identification.

14:20:41   7                    MR. GREEN:  Well, your Honor, I just don't

14:20:44   8   think that is true because, let's take a step back.

14:20:50   9   First of all, the grand jury can't proceed unless this

14:20:53  10   identification is made, unless the Government is told by

14:20:57  11   Moog what is a trade secret, what was alleged to have

14:21:03  12   been stolen, what was supposedly classified, so, if we

14:21:08  13   take the fifth, everything -- I just don't think that

14:21:13  14   there is any way to get around it.

14:21:16  15                    MAGISTRATE JUDGE MCCARTHY:  For example, Mr.

14:21:18  16   Green, right now, I don't think any of us here know what

14:21:23  17   theory the Government it investigating.  It could be, as

14:21:28  18   somebody said previously, I think I heard that, it might

14:21:32  19   be a straight larceny case, not a trade secret case, and

14:21:36  20   a claim that they took information that belonged to Moog

14:21:39  21   and they shouldn't have taken it irrespective of any

14:21:44  22   trade secrets, or it might be, I don't know, it may be

14:21:48  23   if there is such a thing as a criminal trade secret

14:21:52  24   case, it may be that.  But nobody knows these things.

14:21:57  25   Go ahead.

                    MOOG, INC. VS. SKYRYSE, INC. ET AL

14:21:58    2          MR. GREEN:  There are.  And even if it was

14:22:00    3   just a straight theft case, they would still have to

14:22:05    4   tell us what we stole.  So, and with respect, I just

14:22:10    5   also want to address a different comment that by turning

14:22:14    6   over devices to IDS, we've somehow waived privilege.  We

14:22:20    7   haven't.  They are just in the custody of the devices.

14:22:25    8   And we're all allowed to make privileged designations at

14:22:32    9   this point.  And it's actually a favor, and that is a

14:22:37   10   factor in favor of putting in a stay because that

14:22:43   11   information is preserved so we can let the Government's

14:22:47   12   criminal investigation proceed, and then the information

14:22:53   13   won't be lost.  But, our devices, I still figure, they

14:22:57   14   would only show whether we still have any of the

14:23:00   15   information that was downloaded, not whether -- not the

14:23:04   16   information that was downloaded.  Moog knows what

14:23:08   17   information was downloaded.  Moog can identify that

14:23:11   18   information without looking at our devices.  That is

14:23:15   19   just the second -- I mean, first, they have to identify

14:23:21   20   trade secrets, and then they have to show the

14:23:24   21   misappropriation.  So, the trade secrets need to be

14:23:26   22   identified first.  And under California law and New York

14:23:31   23   law and pretty much everywhere else, there is not even

14:23:35   24   supposed to be discovery until the Plaintiff in a trade

14:23:38   25   secrets case has disclosed the trade secrets that are

1          MOOG, INC. VS. SKYRYSE, INC. ET AL

14:23:42   2   were supposedly misappropriated.

14:23:45   3          MAGISTRATE JUDGE MCCARTHY:  Well, there is

14:23:47   4   case law going both ways on that and it has been fully

14:23:53   5   briefed and I've ruled as I've ruled.

14:23:56   6          Ms. Andoh, back to you for a minute.  You

14:23:58   7   said that you had offered, that the parties would all

14:24:07   8   exchange the information that they gave to the

14:24:09   9   government.  Was that your proposal?

14:24:10  10          MS. ANDOH:  That's right, your Honor.  We

14:24:12  11   proposed that everybody turn over their full productions

14:24:19  12   in response to the grand jury.

14:24:19  13          MAGISTRATE JUDGE MCCARTHY:  And Skyryse

14:24:20  14   objected to that proposal.

14:24:22  15          MS. ANDOH:  That is correct.

14:24:23  16          MR. GROSS:  I'm happy to describe Skyryse's

14:24:27  17   position on that.

14:24:28  18          MAGISTRATE JUDGE MCCARTHY:  I'll come back

14:24:29  19   to you.  I take it, Mr. Green, your clients have not

14:24:32  20   turned anything over to the government, correct?

14:24:35  21          MR. GREEN:  No, we haven't.  And we did

14:24:38  22   request that Moog, because I think Moog's proposal is

14:24:43  23   too limited.  They may have not had to produce anything

14:24:48  24   under a subpoena to the government because they may have

14:24:51  25   produced it previously.  That may be why, we believe

```
  1            MOOG, INC. VS. SKYRYSE, INC. ET AL
14:24:54  2   that is why the Government began the investigation.
14:24:59  3            MAGISTRATE JUDGE MCCARTHY:  Well, Ms. Andoh
14:25:01  4   just said that her proposal was all parties would
14:25:06  5   exchange everything they gave to the government.
14:25:12  6            MR. GREEN:  Only what was produced pursuant
14:25:15  7   to subpoena.  And we asked if they produced anything not
14:25:18  8   according to subpoena and we received no answer.
14:25:21  9            MAGISTRATE JUDGE MCCARTHY:  Ms. Andoh, back
14:25:21 10   to you.  Is your proposal that Moog would, if the other
14:25:21 11   parties are willing to do likewise, that Moog would
14:25:21 12   exchange everything they have produced to the
14:25:30 13   government.
14:25:30 14            MS. ANDOH:  Again, we were subpoenaed by the
14:25:32 15   Government.  And, I think, again, there seems to be a
14:25:36 16   fair enough of skepticism about what Moog's situation
14:25:41 17   with respect to the Government production is.  The
14:25:45 18   Government sent us a very broad subpoena, and we
14:25:47 19   produced a large number of materials in response to it.
14:25:50 20   And, yes, there is almost complete overlap with what was
14:25:54 21   produced in this case.  But part of that is because
14:25:57 22   Skyryse's and the individual Defendants' document
14:26:00 23   demands were incredibly broad and had to be pushed back
14:26:05 24   for the most part.  And so, yeah, as a matter of fact,
14:26:08 25   when Skyryse demanded we produce all communications with
```

1          MOOG, INC. VS. SKYRYSE, INC. ET AL

14:26:10   2    the Government, we did it.  We did that already.  And

14:26:13   3    that isn't even subject to the Government subpoenas.

14:26:16   4    We've been very transparent with respect to what we have

14:26:19   5    and haven't done as far as the Government is concerned.

14:26:22   6    And, frankly, we think it's entirely appropriate that

14:26:25   7    the individual Defendants should do the same and

14:26:28   8    Skyryse.

14:26:28   9          MAGISTRATE JUDGE MCCARTHY:  Okay.  Well, Mr.

14:26:30  10    Green would having nothing to produce to you because he

14:26:34  11    hasn't produced anything.  But, Mr. Gross, you were

14:26:37  12    going to talk about Skyryse's position.

14:26:38  13          MR. GROSS:  I did want to explain it.

14:26:40  14          MAGISTRATE JUDGE MCCARTHY:  Yes.

14:26:41  15          MR. GROSS:  Thank you, your Honor.  I did

14:26:42  16    want to explain it.  Our understanding is that Moog has

14:26:45  17    been in touch with the Government for some time that

14:26:48  18    have led to this investigation.  Skyryse has received a

14:26:52  19    subpoena in connection with that investigation.  Skyryse

14:26:56  20    is complying with it and interfacing with the Government

14:27:00  21    in response to that.  In expedited discovery of the

14:27:05  22    civil action, Moog served on us its limited set of

14:27:09  23    discovery requests, we did the same, and the parties

14:27:11  24    have been responding to those.  So, Moog came to us,

14:27:16  25    long after it knew the Government investigation was

1                    MOOG, INC. VS. SKYRYSE, INC. ET AL
14:27:18   2    underway, and long after it selected its discovery
14:27:24   3    request to serve on Skyryse, and said, hey, we
14:27:27   4    understand that you've been subpoenaed by the
14:27:29   5    Government, and let's exchange anything that everybody
14:27:32   6    has given to the government.  And our response was,
14:27:34   7    look, we're happy to produce anything, we're not
14:27:37   8    withholding anything that you actually asked for in
14:27:39   9    expedited discovery, but what they wanted was something
14:27:43  10    outside of the order of discovery.  And we pointed out,
14:27:46  11    we're not withholding anything you asked for.  We don't
14:27:46  12    see a need from a mutual exchange.  We are giving you
14:27:46  13    everything you requested in discovery, and expect you
14:27:55  14    have done the same.  That is where we were.  We didn't
14:27:57  15    think this instance justified the need for any
14:28:00  16    additional discovery that has been ordered in the
14:28:03  17    context of expedited discovery that leads up to the
14:28:07  18    preliminary injunction motion, your Honor.  That is the
14:28:09  19    discussion we had.  It's not that this material would
14:28:12  20    never, ever be relevant or to the future requests in the
14:28:12  21    ordinary course of discovery, it is that we are not in
14:28:18  22    that position yet and asking for more.  We didn't think
14:28:21  23    that was appropriate at this point.
14:28:22  24                    MAGISTRATE JUDGE MCCARTHY:  Just a second,
14:28:23  25    Ms. Andoh.

                    MOOG, INC. VS. SKYRYSE, INC. ET AL

14:28:24    2            Mr. Gross, I understand that your position

14:28:30    3    that you had produced everything they had asked for in

14:28:32    4    the civil case, but, the proposal that Ms. Andoh was

14:28:37    5    making was different - let's just give each other

14:28:41    6    everything we've given to the government.  And even

14:28:44    7    though a discovery demand for that information has not

14:28:49    8    been made in this case.  But, I mean, would you be

14:28:52    9    willing to do that or no?

14:28:53   10            MR. GROSS:  Well, we did decline at first

14:28:56   11    because it was the umpteenth request we've had for

14:29:00   12    discovery outside of the request for discovery.

14:29:03   13            MAGISTRATE JUDGE MCCARTHY:  I'm trying to

14:29:04   14    break the log jam here, if I can, and maybe I can't.

14:29:08   15    But what Mr. Green is saying is that, you know, he needs

14:29:13   16    some further information from Moog in order to determine

14:29:18   17    whether or not to identify his or to assert a Fifth

14:29:23   18    Amendment privilege on behalf of his clients.  And I

14:29:29   19    think, Mr. Green, I don't want to put words in your

14:29:31   20    mouth, but I think you said, obviously, you would like

14:29:34   21    an identification of trade secrets, but in the

14:29:36   22    alternative, you would accept copies of what Moog gave

14:29:39   23    to the government.  Is that right?

14:29:41   24            MR. GREEN:  Not exactly.  Your Honor, what I

14:29:47   25    meant, what I meant was that I believe that they've

1                   MOOG, INC. VS. SKYRYSE, INC. ET AL

14:29:53   2   already made an identification of the trade secrets to

14:29:55   3   the government.  I could be wrong about that.  And if

14:29:59   4   there is something that they haven't told to the

14:30:01   5   government that is at issue in this case that might be

14:30:05   6   provided to the government, then I would like to know

14:30:08   7   that as well.

14:30:09   8               MAGISTRATE JUDGE MCCARTHY:  All right.  Let

14:30:11   9   me just cut you off here, and let me ask Ms. Andoh, and,

14:30:15   10   Ms. Andoh, you can answer or not, I guess.  I can't

14:30:19   11   compel you to, but a simple question, in your

14:30:22   12   submissions to the Government, have you identified what

14:30:26   13   you consider to be the trade secrets that have been

14:30:30   14   taken?

14:30:31   15               MS. ANDOH:  We have not provided an

14:30:33   16   additional identification of trade secrets beyond the

14:30:35   17   materials that have been filed and produced in this case

14:30:38   18   to date.

14:30:39   19               MAGISTRATE JUDGE MCCARTHY:  Okay.  All

14:30:41   20   right.  So, Mr. Green, you're going to, I think you

14:30:52   21   should, let's not do a letter, let's do a motion and

14:30:57   22   I'll talk with Judge Vilardo as to whether he or I will

14:31:04   23   consider that motion initially.  I suspect that he will

14:31:07   24   want me to, but I could be wrong.  But you have got to

14:31:10   25   lay out what type of stay you're seeking, why you're

1          MOOG, INC. VS. SKYRYSE, INC. ET AL

14:31:14   2   seeking it, et cetera, et cetera.  I can put this on an

14:31:18   3   expedited basis.

14:31:20   4          Moog, Ms. Andoh, you indicated that Moog had

14:31:24   5   some additional issues that it wishes to brief,

14:31:26   6   including, and in fairness to you, I do agree, that the

14:31:30   7   issue of January 1st cut off, you didn't have an

14:31:33   8   opportunity to specifically address that, so I will give

14:31:37   9   both sides that opportunity to formally address that.

14:31:41   10  But I just don't see how we can move further until we

14:31:46   11  have answers to these questions.  Now, with respect to

14:31:53   12  the protocol which you raised a few minutes ago, you

14:31:58   13  want to use the protocol that I previously approved, and

14:32:01   14  Skyryse wants to have a separate protocol.

14:32:05   15         MS. ANDOH:  And our position, just to be

14:32:07   16  clear, our position is that the protocol that your Honor

14:32:09   17  already ordered includes a provision that permits

14:32:13   18  specifically for the source code that Skyryse does not

14:32:18   19  want turned over pursuant to it.  But I suggest to your

14:32:20   20  Honor that the issues, obviously, are fully briefed.  I

14:32:24   21  think if your Honor wants further argument on them,

14:32:27   22  we're happy to do that.  If that is the case, I would

14:32:29   23  turn it over to my partner, Ms. Yip, to have that

14:32:33   24  discussion with your Honor.  I also think it would be

14:32:37   25  easier --

                           MOOG, INC. VS. SKYRYSE, INC. ET AL

14:32:38    2          MAGISTRATE JUDGE MCCARTHY:  Ms. Andoh, let

14:32:39    3   me jump in here.  To me, the critical issue on that

14:32:41    4   question is whether -- you said a few minutes ago and I

14:32:48    5   think you said on a previous occasion, that you need to

14:32:52    6   be able to compare Skyryse's source code with your

14:32:57    7   source code to determine whether or not there has been

14:33:01    8   appropriation, right?

14:33:02    9          MS. ANDOH:  That's correct, your Honor.

14:33:04   10          MAGISTRATE JUDGE MCCARTHY:  And you're

14:33:04   11   saying that under their proposal and under the protocol

14:33:10   12   that they are proposing, you would not be able to do

14:33:13   13   that.  Is that correct?

14:33:16   14          MS. ANDOH:  Yes, that is right, your Honor.

14:33:17   15   And there is nuance to it, but the bottom line to it is

14:33:22   16   that, yes, having to go into an unwired separate room

14:33:27   17   that has a computer sitting in it with their source code

14:33:31   18   on it where we cannot simultaneously be logged into IDS

14:33:37   19   and review the materials that is being housed at IDS is

14:33:40   20   logistically, functionally it makes it impossible for us

14:33:45   21   to be able to perform any type of really good

14:33:48   22   substantive analysis that I suspect that Judge Vilardo

14:33:54   23   will let us have.

14:33:55   24          MAGISTRATE JUDGE MCCARTHY:  And I expect you

14:33:56   25   to have.  Mr. Lumish, do you want to speak to that?  She

```
 1              MOOG, INC. VS. SKYRYSE, INC. ET AL
 2  is either right or not right on that.  And if she is
 3  right that, that seems to me to be a pretty significant
 4  obstacle of the identification of the trade secrets.  If
 5  you have a proposal that would enable to do that in the
 6  same room and compare things side by side, I'm all ears.
 7              MR. LUMISH:  Would it be better for Mr.
 8  Banks to resolve this or address this with the Court?
 9              MAGISTRATE JUDGE MCCARTHY:  Sure, if he
10  wants to resolve it, better.
11              MR. LUMISH:  I would love for him to resolve
12  it.
13              MAGISTRATE JUDGE MCCARTHY:  I'm good with
14  that.
15              MR. BANKS:  Good afternoon, your Honor.
16              MAGISTRATE JUDGE MCCARTHY:  There you are,
17  Mr. Banks.  Now I see you.
18              MR. BANKS:  A few issues here, first to get
19  to the issue of comparing source code side by side, I
20  would just like to address that is not how the source
21  code protocols work.  In a standard trade secret case, a
22  source code protocol is entered.  This is, you know, the
23  typical norm typical source code is entered, and its
24  source code is reviewed on a stand-alone computer
25  separately.  There is no reason to perform a red line of
```

1          MOOG, INC. VS. SKYRYSE, INC. ET AL

14:35:10   2   sorts between the two source codes.  Moog can identify

14:35:14   3   its trade secrets.  Once it's done so, it can go into

14:35:18   4   our source code, and, essentially, hit control F and

14:35:22   5   look to see if their trade secrets exist in our source

14:35:26   6   code.  Doing it the opposite, running this red line, has

14:35:31   7   the same hindsight issues that Mr. Lumish raised on the

14:35:36   8   last hearing.  If, for example, taking it to a different

14:35:39   9   context, a legal brief, if I were to compare two

14:35:42   10  completely irrelevant legal briefs and run a red line

14:35:46   11  between the two, I may find that both have the headers,

14:35:50   12  "Introduction" and "Conclusion," but that mere

14:35:53   13  coincidental similarity between the two briefs, does not

14:35:59   14  in any way mean that one brief stole from the other

14:36:02   15  brief.  They don't need to do this red lining to then go

14:36:08   16  ah-ha, there is some related coincidental similarity

14:36:14   17  between the two, and then say that, of course, that must

14:36:17   18  be our trade secret, this coincidental overlap, that

14:36:22   19  happens to be our trade secret.  That is going about the

14:36:25   20  process in reverse.  How standard source code protocols

14:36:30   21  work, which is the norm all across the country in trade

14:36:34   22  secret cases, patent cases, all of these cases, it's a

14:36:37   23  stand-alone computer where you look at it, you review it

14:36:40   24  and if they want to have printouts, if they want to take

14:36:43   25  notes, they can go in and look and take those printouts,

MOOG, INC. VS. SKYRYSE, INC. ET AL

those notes, they can compare that on their own to their
source code, but there is no need for this red line of
sorts.  That is not how IP cases, trade secret cases,
that is not how it works.  They have no need for this.
And I'll point out, this was never noted in their brief
anywhere.  This is a red herring issue that only
provides them this inappropriate hindsight that is not
needed in this case to identify their trade secrets.

MAGISTRATE JUDGE MCCARTHY:  Well, and,
again, you are all talking to the world's preeminent
non-source code expert, okay, or source code non-expert,
but I'll just say this.  Moog's claim, at least now,
and, hopefully, to be narrowed down, is that there are
tremendous volumes of source code that may have been
utilized.  Now, Mr. Banks, under your proposal, they
would come in and they would look at your source code,
without internet access or anything, they could print
whatever of it they want, right, and then they take it
and compare it with their source code in another room or
after their inspection is over, and then they say, okay,
this was or this was not taken.  Is that how you see it
unfolding?

MR. BANKS:  Yes, essentially.  I mean, or
they can, you know, they can identify from what they

MOOG, INC. VS. SKYRYSE, INC. ET AL

14:38:18  2  know or what they believe to have been taken is in fact

14:38:22  3  a trade secret, and they can take that knowledge to our

14:38:25  4  source code, and they can look at it and determine,

14:38:28  5  okay, are there things in our source code that seem to

14:38:34  6  be reflective of what Moog had.  They don't need to run

14:38:38  7  this red line between source codes.  That is just not

14:38:42  8  how we've shown, we've included in our briefing the

14:38:47  9  standard protocols that are used across the country.

14:38:51  10 This is how IT cases work with source code reviews.

14:38:54  11 They are not -- and I'll just point you to a few of the

14:38:59  12 issues that come with this.  You know, if we use this

14:39:01  13 IDS protocol, you know, first off, that requires that

14:39:07  14 Skyryse effectively hands over control of its source

14:39:10  15 code to IDS.  You've been hearing, you know, the last

14:39:13  16 several hearings now about all of the issues that we've

14:39:16  17 been dealing with IDS, and all of the problems and

14:39:19  18 hiccups.  And it's not their fault, necessarily, but

14:39:22  19 that relinquishes our ability to properly maintain,

14:39:27  20 supervise, the review of our source code.  That is why

14:39:31  21 it's done in a separate room without internet access and

14:39:34  22 all of these security measures keep source code

14:39:37  23 protected.  With the IDS protocol, they installed, for

14:39:42  24 example, software that may not be appropriate for a

14:39:44  25 review computer.  They have internet browsers on these

1                    MOOG, INC. VS. SKYRYSE, INC. ET AL
14:39:51    2    review computers.  That is highly inappropriate for a
14:39:55    3    source code review.  They are supposed to be in an
14:39:58    4    enclosed dark room.  You don't have internet access.
14:40:01    5    You can't go online and can't e-mail yourself the source
14:40:04    6    code.  So, we have these issues that the IDS protocol
14:40:08    7    wasn't created to address.  It was created for this
14:40:11    8    unique situation where this is a mix of Skyryse and Moog
14:40:15    9    information together on a device, so we ship that off to
14:40:19   10    IDS for safe keeping.  The source code that Moog is now
14:40:26   11    seeking, it doesn't fit that category.  This is
14:40:30   12    Skyryse's own proprietary source code with no indication
14:40:34   13    of having Moog information.  And I'll just note for your
14:40:39   14    Honor that this source code has already been produced.
14:40:42   15    It's sitting in an office a few doors down from me.
14:40:46   16    It's ready to be reviewed by Moog.  They have just
14:40:50   17    refused to acknowledge to accept that.  We've offered to
14:40:55   18    work with them on the protocol that we sent them, I
14:40:58   19    think, a month ago now.  It's been produced and ready
14:41:02   20    for weeks.  We've offered to transport the computer to a
14:41:06   21    place to a Latham office that is more convenient for
14:41:09   22    them.  They've simply refused.  So, you know, the motion
14:41:15   23    here that they filed was a motion to compel source code.
14:41:18   24    And I think it's important to note that the source code
14:41:21   25    they are asking to be compelled, it's produced, it's

```
 1                MOOG, INC. VS. SKYRYSE, INC. ET AL
14:41:24    2    ready for them to review.
14:41:26    3                MAGISTRATE JUDGE MCCARTHY:  Okay.  I
14:41:27    4    understand your position.  Ms. Andoh, then why is it not
14:41:31    5    logistically feasible to do what Mr. Banks says, which
14:41:36    6    is take in -- well, not take in, I guess, but have at
14:41:41    7    hand those aspects of your source code that you consider
14:41:44    8    to be trade secret, and then go look for them in
14:41:50    9    Skyryse's source code to see if they can be found.
14:41:58   10                MS. YIP:  Maybe I can jump in here your
14:42:01   11    Honor, to address the issue.
14:42:01   12                MAGISTRATE JUDGE MCCARTHY:  Who?  Yes.
14:42:02   13                MS. YIP:  Yes, so while their source code
14:42:05   14    protocol, the framework that they would like to proceed
14:42:08   15    under did not permit us to bring anything into the room.
14:42:11   16    That is part of their security mechanism that they baked
14:42:15   17    into their framework.  And so it is impossible for us to
14:42:18   18    bring anything in.  Responding to Mr. Banks' point about
14:42:23   19    what is typical in source code review in a trade secret
14:42:27   20    case, he is simply incorrect.  All of the source code
14:42:32   21    protocols that he, that Skyryse cited in their brief,
14:42:38   22    really pertain to patent cases.  Those were patent
14:42:43   23    cases.  And patent cases are very different.  You don't
14:42:46   24    have to compare the infringer's source code in a patent
14:42:50   25    case to the patent owner's source code in a patent case.
```

                    MOOG, INC. VS. SKYRYSE, INC. ET AL
14:42:55  2  You don't have to look at two sets of source code side
14:42:59  3  by side and analyze whether copying, sometimes very
14:43:05  4  subtle copying, has occurred.  The task is completely
14:43:08  5  different.  The patent owner's expert merely has to
14:43:09  6  review the infringer's source code to determine whether
14:43:12  7  certain patent claims have been infringed and it's
14:43:14  8  extremely narrow.  There is no comparison of source code
14:43:17  9  of the party's respective -- comparison of the party's
14:43:21  10  respective source code.  Skyryse's framework, their
14:43:24  11  protocol, is modeled after source code review protocols
14:43:28  12  in patent cases and they are just completely
14:43:30  13  inappropriate for a trade secret case.  I am familiar
14:43:34  14  with trade secret protocol, and they do permit for
14:43:38  15  source code to be reviewed side by side.  And this is
14:43:41  16  why third party vendors, third party neutrals are
14:43:45  17  retained for this purpose, so they can have both
14:43:48  18  parties' source code, rather than have one party hand
14:43:52  19  over source code to the other party so that it can be
14:43:52  20  reviewed side by side.  That is why your Honor's
14:43:52  21  inspection protocol, the inspection protocol already
14:43:52  22  entered by the Court, is appropriate.  And it is the
14:44:04  23  only way we can make it work.  Mr. Banks kept referring
14:44:05  24  to running a red line.  We're not running a red line.
14:44:08  25  It's a very sophisticated comparison.  We're talking

1              MOOG, INC. VS. SKYRYSE, INC. ET AL

14:44:11    2    about millions of lines of source code.  He used the

14:44:15    3    analogy of trying to figure out whether copying has

14:44:18    4    occurred in a legal brief.  Can you imagine trying to

14:44:20    5    determine is copying has occurred in a legal brief, even

14:44:23    6    let's say a 25-page legal brief, by just reading it

14:44:27    7    without having something to compare it to?  I'm not

14:44:30    8    talking about whether the header has been copied or

14:44:32    9    something, something more subtle, something more

14:44:36   10    nuanced, presumably not all the copy is going to be word

14:44:36   11    for word where you can see it in a red line.  It is more

14:44:41   12    about being able to see structure.  Being able to see

14:44:42   13    routines that are copied.  Being able to see algorithm.

14:44:46   14    An algorithm is not word for word, it is a way that

14:44:51   15    something happens, maybe not using the same words, but a

14:44:56   16    sequence nuanced.  That is why we have source code

14:44:59   17    expert to do it.  If this was something where you go in

14:45:02   18    and look at a million lines of code and be able to see,

14:45:04   19    based on your memory, oh, this is copied, this would be

14:45:08   20    a different story, clearly that is not the case.  This

14:45:11   21    idea that we could use something that was built for a

14:45:14   22    patent case where you have a very narrow element of a

14:45:17   23    claim, you can determine, this code performs this

14:45:22   24    element of the claim and can transport that into a trade

14:45:24   25    secret case that involves millions of lines of code is

1          MOOG, INC. VS. SKYRYSE, INC. ET AL

14:45:25  2  totally the wrong way of looking at this.  Just totally

14:45:28  3  incorrect.

14:45:31  4          I do want to address this issue of security.

14:45:34  5  So, first of all, whether or not the protocol through

14:45:41  6  IDS is secure, that has already been briefed and

14:45:45  7  decided.  Your Honor, we briefed the issue of whether or

14:45:47  8  not IDS's set up is secure.  That was thoroughly

14:45:53  9  discussed in our prior briefing.  Your Honor reviewed it

14:45:56  10 and it is decided, it's over.  For them to say the IDS

14:45:59  11 protocol is not secure enough.  It's an attempted do

14:46:03  12 over of what your Honor has already decided.  If anyone

14:46:07  13 should be concerned about security and protection for a

14:46:10  14 source code, it's Moog.  It's the Defendants that took

14:46:14  15 over 1.4 million files from Moog.  Yet Moog has already

14:46:18  16 provided its source code to IDS pursuant to the Court's

14:46:22  17 inspection protocol.  Why?  Because it's extremely

14:46:23  18 secure.  I've personally looked at the inspection

14:46:26  19 laptops.  It literally has two applications on it.  For

14:46:30  20 one of them, when you click on it, it takes you to a

14:46:33  21 remote log in screen.  You log onto an IDS remote Zoom

14:46:39  22 link.  You connect with IDS so they can watch you on a

14:46:44  23 webcam and record you as you're doing your inspection.

14:46:46  24 There is no confidential material of any kind on the

14:46:50  25 inspection laptops themselves.  All of the data is on

1          MOOG, INC. VS. SKYRYSE, INC. ET AL

14:46:54   2  virtual machines that are owned and housed by IDS.  The

14:47:00   3  inspection laptops are network, but only because

14:47:02   4  otherwise there is no way to connect into IDS's remote

14:47:07   5  server.  It is not possible, it is literally not

14:47:10   6  possible to send any confidential material to or from

14:47:14   7  the inspection laptop, at least because there are no

14:47:18   8  tools on the machines to do so.  They have very limited

14:47:22   9  functionality.  And from a security perspective are

14:47:22   10  completely locked down.

14:47:25   11          MAGISTRATE JUDGE MCCARTHY:  All right.  I

14:47:26   12  have your respective positions.  I will decide that

14:47:29   13  issue.  But the overarching issue, I think that we need

14:47:34   14  to address and brief is Mr. Green's, it's not going to

14:47:43   15  be a letter, it will be a motion for stay, and you can

14:47:46   16  tell me, file it with the Court and between Judge

14:47:50   17  Vilardo and I, we'll decide who takes first crack at it.

14:47:54   18  Again, I suspect that he will want me to, but I can't

14:47:58   19  guarantee that.  And tell me, tell us specifically what

14:48:07   20  type of stay you're seeking, why you're seeking it.

14:48:10   21  You've indicated that what type of information from

14:48:15   22  Moog, which I think we've been over before, but you

14:48:17   23  would need in order to make your Fifth Amendment

14:48:22   24  determination.  So, I'll set a date for you to do that.

14:48:27   25  I'll set a date for Defendants to respond.  Moog, if you

1                MOOG, INC. VS. SKYRYSE, INC. ET AL

14:48:30  2   want to, I think Ms. Andoh, you indicated there were a

14:48:35  3   couple of additional issues you want to raise.  I'm not

14:48:41  4   going to ask you to raise them today.  I'm going to say,

14:48:44  5   put them in your brief and I'll set it on whatever time

14:48:49  6   table you folks propose.  But, the only thing that is

14:48:53  7   clear to me right now is that Moog is going to have to

14:48:56  8   give a detailed global definition of its trade secrets,

14:49:00  9   the time within which it will do so has yet to be

14:49:03  10  determined, and that we are not going to go into other

14:49:06  11  forms of discovery until that occurs.  So I'm going to

14:49:11  12  focus on what discovery is necessary in order to enable

14:49:15  13  Moog to make that determination.  That may be impacted

14:49:19  14  by the individual Defendants' motion to stay.  It may

14:49:24  15  not be.  We'll see how things shake out.  So you all

14:49:28  16  tell me what you can live with by way of a briefing

14:49:33  17  schedule.

14:49:35  18                Mr. Green, I guess you go first because

14:49:38  19  you're the one that said it.

14:49:39  20                MR. GREEN:  Thank you, your Honor.  I think

14:49:43  21  we can have a brief and a motion in within one week from

14:49:50  22  today, so August 3rd.

14:49:55  23                MAGISTRATE JUDGE MCCARTHY:  Okay.  All

14:49:56  24  right.  Moog and/or Skyryse, how much time do you want

14:50:03  25  to respond?  Well, respond and/or cross motion, whatever

1          MOOG, INC. VS. SKYRYSE, INC. ET AL

14:50:07   2    you're talking about.

14:50:09   3          MS. ANDOH:  Well, your Honor, so, I guess,

14:50:13   4    procedural question, because I think if you're talking

14:50:16   5    about having briefs in on August 3rd, that would give us

14:50:20   6    a week to continue to try and meet and confer and narrow

14:50:22   7    the issues that we have that haven't been briefed yet.

14:50:26   8    So, it may make more sense to do one set of motions and

14:50:30   9    Moog files its motion to compel, the issues that we've

14:50:34   10   raised that are threshold issues for us to complete our

14:50:34   11   trade secret identification at the same time the motion

14:50:46   12   to stay is filed, I think that is more efficient.

14:50:52   13         MR. GREEN:  I agree with that, Ms. Andoh, on

14:50:55   14   that we should have a chance to confer a little bit.

14:50:57   15         MAGISTRATE JUDGE MCCARTHY:  Great.  So any

14:50:59   16   additional motions then that the parties currently

14:51:03   17   contemplate will be filed by August 3rd.  Can I say

14:51:09   18   responses by August 10th?

14:51:14   19         MR. LUMISH:  Your Honor, this is Doug Lumish

14:51:16   20   for Skyryse.  I guess without knowing everything, it

14:51:19   21   sounds like Ms. Andoh and Moog are going to list a host

14:51:25   22   of issues.  So, while we could say we could easily

14:51:28   23   respond on the stay, I would ask for two, given there

14:51:31   24   are a large number of motions brought by Moog.

14:51:37   25         MAGISTRATE JUDGE MCCARTHY:  All right.  So

1            MOOG, INC. VS. SKYRYSE, INC. ET AL

14:51:40    2   that would be August 17th then, correct?  All right.

14:51:51    3   And then I'll allow a reply to whatever motions have

14:51:55    4   been filed.

14:52:00    5            MR. LUMISH:  And just to flag, your Honor.

14:52:03    6   I'm getting notes, we also may file motions.  We'll have

14:52:06    7   further meet and confers and we may also file motions as

14:52:10    8   well.  There are a number of disputes brewing as well.

14:52:13    9            MS. ANDOH:  Your Honor, if I can, can we

14:52:16   10   just clarify, on the 3rd, we're planning on limiting the

14:52:18   11   issue that we file to those that are critical to

14:52:21   12   resolution of our ability to get access to IDS.  I'm

14:52:24   13   assuming that your Honor's instruction that other

14:52:27   14   discovery for the parties is stayed right now.

14:52:30   15            MAGISTRATE JUDGE MCCARTHY:  I only want

14:52:31   16   motions that relate to enabling Moog to get to the point

14:52:36   17   of identifying its trade secrets.  By way of example,

14:52:43   18   Skyryse has already filed a companion motion asking Moog

14:52:48   19   to identify what steps it took to maintain secrecy of

14:52:55   20   its trade secret information.  I'm putting that on hold

14:52:58   21   right now until we get the trade secrets identified,

14:53:02   22   because it doesn't make any sense to me, you know,

14:53:07   23   hopefully, we'll be dealing with a relatively finite

14:53:10   24   universe of -- I guess that is contradiction in terms of

14:53:15   25   finite universe, but relatively finite scope of what

```
 1                    MOOG, INC. VS. SKYRYSE, INC. ET AL
 2      we'll be talking about for the preliminary injunction
 3      hearing.  Once we get that defined, then we can proceed
 4      to additional discovery such as was it -- is it known
 5      elsewhere or did Moog properly preserve its
 6      confidentiality, et cetera, et cetera.  But all I want
 7      to focus on right now, I guess I'll say this for the
 8      fifth time, is what I need to decide in order to enable
 9      Moog to make its global identification of the trade
10      secrets which it intends to prove at the preliminary
11      injunction hearing.  And, again, it's been mentioned
12      previously by somebody, but we're only talking about the
13      discovery relative to the preliminary injunction hearing
14      or motion depending on the outcome or regardless of or
15      presumably be other discovery relating to the remainder
16      of the case at a later date, so...
17                    MS. ANDOH:  Your Honor, one other point of
18      procedure, I apologize, I know there are so many of
19      them.  We currently have a deadline of August 4th to
20      bring any motions to compel with respect no the
21      materials produced to IDS, and we currently have a
22      discovery cut off of August 25th, may I ask that those
23      dates get vacated for now, and we can revisit them once
24      we're done with the process?
25                    MAGISTRATE JUDGE MCCARTHY:  I'll gladly
```

MOOG, INC. VS. SKYRYSE, INC. ET AL

14:54:47  2   vacate those deadlines.  Consider them vacated.

14:54:50  3            MS. ANDOH:  Good.

14:54:51  4            MAGISTRATE JUDGE MCCARTHY:  Again, I'm not

14:54:52  5   trying to kick the can down the road on any of this,

14:54:55  6   it's just that, you know, there are a lot of complex

14:54:59  7   issues at play.  So, we'll proceed sequentially.  All

14:55:03  8   right.

14:55:04  9            So, motions, just to repeat then, again,

14:55:10  10  August 3rd will be the individual Defendants' motions

14:55:16  11  for stay and with an explanation of why they need that

14:55:21  12  or what information they need from Moog to enable them

14:55:26  13  to determine whether they'll invoke Fifth Amendment

14:55:29  14  privileges.  That will also be the deadline for Moog's

14:55:33  15  motions -- motion, but, again, limited to issues to

14:55:41  16  enable it to make its trade secret identification.

14:55:45  17            Mr. Lumish, you said Skyryse may be making a

14:55:49  18  motion at about the same time, right?

14:55:52  19            MR. LUMISH:  I'm hopeful we won't need to,

14:55:55  20  your Honor, and I think your guidance on keeping this

14:55:57  21  focused on the IDS issues as opposed to the broader

14:56:01  22  issue of the PI should be helpful.

14:56:03  23            MAGISTRATE JUDGE MCCARTHY:  Okay.  So then

14:56:07  24  the response to the stay motion will be due by August

14:56:12  25  17th.  Right.  And then you want replies, I'll say

```
                      MOOG, INC. VS. SKYRYSE, INC. ET AL
14:56:22   2  replies by the 24th.  And I'll give you an oral argument
14:56:29   3  date.  Bear with me a minute.  For early September.  How
14:56:59   4  about, can we do September 8th at 4 o'clock Eastern.
14:57:20   5             MR. GREEN:  That works for the individual
14:57:22   6  Defendants.
14:57:22   7             MS. ANDOH:  Your Honor, I hate to do this.
14:57:24   8  I'm not available on September 8th.  Can we do the 9th?
14:57:28   9             MAGISTRATE JUDGE MCCARTHY:  Let me check.
14:57:39  10  Yes.  We could do September 9th.  Why don't we say 2
14:57:43  11  o'clock our time, so for you coastal people, it would be
14:57:50  12  11 o'clock, right?  Does that work?
14:57:54  13             MS. ANDOH:  That works for Moog.
14:57:57  14             MR. GREEN:  That works for the individual
14:57:59  15  Defendants, your Honor.
14:57:59  16             MAGISTRATE JUDGE MCCARTHY:  Okay.
14:58:02  17             MR. LUMISH:  I'm sorry, I was on mute, it is
14:58:07  18  Doug Lumish.  I lose Mr. Gross that week.  Our
14:58:09  19  preference would be the week of -- the week of the 12th,
14:58:12  20  but if you need to do it the week of the 9th, we'll make
14:58:15  21  it work.
14:58:16  22             MAGISTRATE JUDGE MCCARTHY:  Let me see.
14:58:18  23  Just a minute.  How about the 12th at 2 o'clock?  Does
14:58:39  24  that work for everybody?
14:58:40  25             MR. LUMISH:  Mr. Gross can answer for
```

1             MOOG, INC. VS. SKYRYSE, INC. ET AL

14:58:46  2   himself, but for me, that does work.  It looks like he

14:58:48  3   might be frozen, but he sent me an e-mail.

14:58:52  4             MR. GROSS:  Sorry, user error.  That would

14:58:54  5   be fine, your Honor.  Thank you.

14:58:55  6             MAGISTRATE JUDGE MCCARTHY:  So we all good

14:58:57  7   on those dates?

14:58:58  8             MS. ANDOH:  Yes.  On behalf of Shepphard

14:59:04  9   Mullin, we will be available then.

14:59:10 10             MR. FLUSKEY:  We're available.

14:59:12 11             MAGISTRATE JUDGE MCCARTHY:  A word of

14:59:14 12   warning to all of you, on the 15th, I leave for Europe

14:59:17 13   and I'm not going to change that for all of your sakes.

14:59:21 14   I'm sorry, but I will be back in due course.  Unless the

14:59:26 15   motions are such that I feel I should just stay over

14:59:29 16   there, okay?  So anyway, all right.  I'll get a text

14:59:35 17   order out confirming this schedule.  And, again, I just

14:59:41 18   encourage you, as I have in the past, just, you know,

14:59:45 19   you've got a lot of disagreements, which I understand,

14:59:48 20   but you're also all good people and I encourage you to

14:59:54 21   cooperate with each other to narrow issues on everything

14:59:59 22   as best you can.  Okay?

15:00:02 23             MS. YIP:  Your Honor, can I raise something

15:00:05 24   really quick before we end?  We've been talking about a

15:00:07 25   lot of motions that will be filed soon, but one motion

1                    MOOG, INC. VS. SKYRYSE, INC. ET AL
15:00:10   2    that does impact all these issues, the trade secret I.D.
15:00:14   3    issue that has been already briefed, is the source code
15:00:16   4    issue, as you know.  And I just wanted to make clear
15:00:19   5    because Skyryse, in its opposition, has asked for
15:00:23   6    affirmative relief, they asked that their new source
15:00:26   7    code protocol be entered.  And I just wanted to clarify
15:00:29   8    for the Court that this is a motion -- that issue is not
15:00:32   9    ripe.  The motion is -- that is pending before your
15:00:36   10   Honor is Moog's motion to compel the production of
15:00:39   11   Skyryse's source codes through IDS pursuant to your
15:00:43   12   Honor's inspection protocol.  The motion is not
15:00:47   13   Skyryse's motion to enter its new inspection protocol.
15:00:51   14   And so I just wanted to make sure that to the extent
15:00:54   15   that your Honor is going to be issuing an order on the
15:00:56   16   source code issue separately because it's been briefed
15:01:00   17   and today it's been heard, that it be clear that, to the
15:01:03   18   extent, we obviously believe our motion should be
15:01:06   19   granted on the source code issue, but, to the extent
15:01:08   20   it's not granted, the alternative outcome should not be
15:01:12   21   the entry of their protocol because we have not
15:01:15   22   conferred with them about it, the content of it would
15:01:18   23   still be up for negotiation, and there are a lot of
15:01:21   24   provisions we strenuously disagree with.  I wanted to
15:01:26   25   make sure it's clear what is in front of the Court in

```
 1              MOOG, INC. VS. SKYRYSE, INC. ET AL
 2   terms of the source code issue.
 3              MAGISTRATE JUDGE MCCARTHY:  You're correct
 4   procedurally, but, on the other hand, it's going to go
 5   presumably one way or the other, and I don't know yet
 6   which way it will go.  So, I mean, if Skyryse wants to
 7   make a motion to that effect, I presume it will do so by
 8   August 3rd.
 9              Ms. Yip, let me ask you, you drew a
10   distinction when talking about the competing proposals
11   on source code.  You said that the case law that Skyryse
12   had cited dealt with patent cases and protocols in
13   patent cases.  Did you cite -- and you said that the
14   protocols for trade secret cases are different.  Did you
15   cite case law to that effect?
16              MS. YIP:  I don't have our brief in front of
17   us.  I am not sure if we did.
18              MAGISTRATE JUDGE MCCARTHY:  You don't have
19   total recall?
20              MS. YIP:  I don't.  And I certainly could
21   not do a source code inspection from memory myself.  But
22   if we have not, there is definitely case law out there
23   and/or the very least there are cases where such a
24   protocol has been put in place by the Court, a
25   third-party hosts both side's source code review, so it
```

```
 1                    MOOG, INC. VS. SKYRYSE, INC. ET AL
 2    comparatively be done, so we're happy to submit those to
 3    your Honor.
 4                    MAGISTRATE JUDGE MCCARTHY:  All right.  Do
 5    so within a week.  And, Skyryse, if you wish to reply,
 6    you may do so in a week, the week after, okay?
 7                    MR. LUMISH:  Yes, your Honor.
 8                    MAGISTRATE JUDGE MCCARTHY:  All right.
 9    Always a pleasure, folks.  And we will be in touch.  Let
10    me just close by, and I don't even know if I should say
11    this.  The further we get into this, the greater I think
12    the differential will be between my knowledge of the
13    case and Judge Vilardo's knowledge of the case, and I
14    just renew my suggestion to you that you consider, at
15    least for purposes of the preliminary injunction
16    hearing, consenting to my jurisdiction.  But, if
17    somebody doesn't want to do that, that is also totally
18    fine and would give me some other things to do.  But I
19    just throw that out for your consideration and we will
20    be in touch, everybody.  And please enjoy.  We're
21    halfway through the summer now, so enjoy the remainder.
22    For you LA folks, do you have any water out there?
23    Nobody is answering.
24                    UNIDENTIFIED SPEAKER:  I'm sorry.  We are in
25    the bay.
```

| | | |
|---|---|---|
| | 1 | |
| 15:04:18 | 2 | MR. LUMISH:  We're all over the map, it's |
| 15:04:19 | 3 | pretty bad.  The drought is quite bad and the fires that |
| 15:04:24 | 4 | stem are awful. |
| 15:04:25 | 5 | MAGISTRATE JUDGE MCCARTHY:  My sympathies. |
| 15:04:29 | 6 | You know Buffalo has ideal weather.  I'm not trying to |
| 15:04:33 | 7 | gloat, but so far so good all right folks take care. |
| 15:04:36 | 8 | MR. LUMISH:  Thank you very much, your |
| 15:04:36 | 9 | Honor. |
| 15:04:37 | 10 | MS. ANDOH:  Thank you, your Honor. |
| 15:04:38 | 11 | MR. GREEN:  Take care. |
| | 12 | |
| | 13 | *     *     * |
| | 14 | CERTIFICATE OF REPORTER |
| | 15 | |
| | 16 | I certify that the foregoing is a correct transcript |
| | 17 | of the record of proceedings in the above-entitled |
| | 18 | matter. |
| | 19 | |
| | 20 | S/ Karen J. Clark,  RPR |
| | 21 | |
| | 22 | Official Court Reporter |
| | 23 | |
| | 24 | |
| | 25 | |