UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MOOG INC.,<br><br>                         Plaintiff,<br><br>  v.<br><br>SKYRYSE, INC., ROBERT ALIN PILKINGTON, MISOOK KIM, and DOES NOS. 1-50,<br><br>                         Defendants. | Case No.: No. 22-cv-00187<br><br>**PLAINTIFF'S MOTION TO COMPEL DISCOVERY NECESSARY FOR FURTHER TRADE SECRET IDENTIFICATION** |

**TABLE OF CONTENTS**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ...................................................................................................1

II. LEGAL STANDARD..............................................................................................3

III. MOOG HAS ALREADY DISCOVERED DOZENS OF EXAMPLES OF DIRECT COPYING BY SKYRYSE .......................................................................4

    A. Moog's Desktop Test Environment...........................................................4

    B. Moog's Software Process Checklist Templates........................................5

    C. Other Evidence of ███████ Moog's Data ..............................................6

IV. PRIVILEGE REVIEW HAS NOT BEEN COMPLETED ON FIVE ELECTRONIC DEVICES, INCLUDING THE MOST CRITICAL DEVICES IN THE CASE...............................................................................................................6

V. SKYRYSE HAS FAILED TO PRODUCE TO IDS 9 COMPUTERS AND 2 USB DEVICES THAT WERE INVOLVED IN THE MISAPPROPRIATION .........7

    A. Skyryse's Failure to Turn Over Relevant Devices to iDS ........................7

    B. Moog's Requests for Turnover of the Relevant Devices..........................9

VI. THE INDIVIDUAL DEFENDANTS ARE IMPROPERLY EXCISING DOCUMENTS FROM FIVE ELECTRONIC DEVICES BEFORE 2021 .......................................................................................................................10

VII. ADDITIONAL IDS LOGISTICAL HURDLES ARE PREVENTING MOOG ACCESS TO SEVERAL DEVICES ....................................................................12

    A. Volume Shadow Copies Issue .................................................................12

    B. Parallels Issue..........................................................................................13

VIII. SKYRYSE HAS REFUSED TO PRODUCE ITS SOURCE CODE PURSUANT TO THE EXISTING INSPECTION PROTOCOL............................................13

IX. SKYRYSE HAS NOT PRODUCED DOCUMENTS RESPONSIVE TO MOOG'S RFPS NOS. 8-10 ..................................................................................14

X. CONCLUSION......................................................................................................14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Air Crash Near Clarence Ctr., New York, on Feb. 12, 2009*
   No. 09-CV-961S, 2011 WL 6370189 (W.D.N.Y. Dec. 20, 2011) ............................................3

*Breon v. Coca–Cola Bottling Co. of New England*
   232 F.R.D. 49 (D.Conn. 2005)................................................................................................4

*Daval Steel Prods. v. M/V Fakredine*
   951 F.2d 1357 (2d Cir.1991)...................................................................................................4

*LaForest v. Honeywell Int'l Inc.*
   No. 03–CV–6248, 2004 WL 1498916 (W.D.N.Y. July 1, 2004) ............................................4

**Other Authorities**

Fifth Amendment .......................................................................................................................2, 6

Fed. R. Civ. P 26(b)(1)...................................................................................................................3

I.  **INTRODUCTION**

This Court has already correctly recognized that in order to provide a complete and fulsome trade secret identification, Moog "need[s] to first examine the information which was admittedly taken by its former employees Kim and Pilkington prior to their departure, particularly in view of Skyryse's admission that some of that information may now have been deleted." (ECF 205 at p. 3). So far, this examination of iDS devices has been an extremely fruitful exercise for Moog. Notwithstanding the highly limited access Moog has been granted so far to the electronic devices produced by Defendants to iDS[1], Moog has already discovered dozens of examples of direct, word-for-word copying by Skyryse of Moog source code files, software planning documents, and software process checklist documents. Moog has also identified chat communications involving Pilkington and another former Moog employee where he is openly discussing which Moog programs to ▮▮▮▮ files from. However, a number of issues remain that continue to prevent Moog's full access to the devices and files involved in Kim and Pilkington's theft.

First, the Individual Defendants and Skyryse continue to prevent Moog from gaining access to five electronic devices produced by the Individual Defendants to iDS (Device Nos. E0005, 18, 19, 23, and 25). These five devices are particularly critical to Moog's ability to develop its case because two of these devices (Device Nos. E0018 and E0019) are the actual hard drives that Pilkington used to copy over 1.1 million Moog files – Moog identified these devices by serial number to Skyryse on March 21, 2022. They are likely the most important devices in the case given that they go to the heart of Moog's misappropriation claims.

Moog has been blocked from accessing these five devices because the Individual Defendants are not making them available for Skyryse to complete its privilege review before the images are released to Moog for review. Skyryse originally confirmed it intended to conduct this privilege review on June 27, and no further action has been taken since. At the Court's direction,

---

[1] That access has become even more limited as the result of the Individual Defendants' actions on July 29 to unilaterally terminate Moog's access to any of the Individual Defendants' images.

any Fifth Amendment issues relating to the Individual Defendants are being addressed in separate briefing. However, Moog cannot make a fulsome and complete trade secret identification without full access to these five devices.

Second, Skyryse has not turned over images of nine computers and two USB devices that, by Skyryse's own admission, are directly implicated in Defendants' misappropriation. On May 4, Skyryse served a letter (the "May 4 Letter") admitting that Moog information was "accessed on Skyryse-issued laptops via personal USB devices held by Alin Pilkington or Misook Kim" and that the devices involved were three SanDisk Cruzer devices that were connected at various times to nine other Skyryse computers. Only one of the three SanDisk Cruzer devices was turned over in this case, and it was wiped completely clean by defendant Kim on March 10, 2022, three days after this lawsuit was filed. The other two devices were thought to be missing based on representations made by Skyryse to Moog in the May 4 Letter, although Skyryse suddenly announced to Moog yesterday that it in fact does have possession of them. Moog has requested that Skyryse turn over images of the nine Skyryse computers (which Skyryse already imaged months ago) and the two previously missing SanDisk Cruzer devices at issue, but Skyryse has refused this request. These devices were squarely placed at issue by Skyryse as being involved in possession of Moog data. Moog's only path forward to understand the full contents of Moog data contained on the SanDisk Cruzer devices and the relevant Skyryse laptops is to get full access to them.

Third, the Individual Defendants have unilaterally excised hundreds of thousands of communications from five personal devices that they had previously turned over to iDS intact pursuant to the March 11 Order, incorrectly claiming lack of relevance and overbreadth as their justification.  However, the Inspection Protocol entered by this Court (ECF 96-02) only permits excision for privilege and/or personal privacy. Regardless, as a compromise, Moog proposes that communications before 2013 be excised. As expressly alleged in the Complaint, the time period of 2013 to present is relevant because Kim and Pilkington began working on certain of the flight control programs at issue (and that were misappropriated by the Individual Defendants) beginning

in 2013. Moog has already uncovered several examples of communications between Kim and Pilkington that discuss Moog's proprietary information and source code. In one of these examples, ██████████████████████████████████████████████████████████████████████████████████████████████ Moog is claiming misappropriation of trade secrets that have been in existence since 2013 and even earlier. It is far from speculative to believe that Kim and Pilkington referenced communications discussing Moog programs that occurred between 2013-2021 as a reference once they commenced their employment at Skyryse. As detailed in this brief, Moog has already identified a number of instances of clear referencing and direct copying of materials that were created between 2013 and 2021.

Fourth, there remain a number of technical and logistical issues that need to be resolved before Moog has full access to the relevant devices, most of which require Defendants' cooperation. The result of these issues is that Moog currently lacks partial or any access to no less than 12 iDS devices due to privilege or technical issues, setting aside the 23 devices that the Individual Defendants unilaterally revoked access to on July 29.

Finally, the production of Skyryse's source code pursuant to the Court's Inspection Protocol, and Skyryse's complete production in response to Moog's RFPs Nos. 8-10, are required for Moog to fully identify its trade secrets. As discussed during the July 27 hearing, these matters are fully briefed before the Court and Moog is concurrently filing a supplemental letter brief regarding the source code issue.

## II.   LEGAL STANDARD

Fed. R. Civ. P 26(b)(1) provides: that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." *Id*. "Discovery in federal court is broad and permissive." *In re Air Crash Near Clarence Ctr., New York, on Feb. 12, 2009*, No. 09-CV-961S, 2011 WL 6370189, at *2 (W.D.N.Y. Dec. 20, 2011). Information is relevant so long as it is reasonably calculated to lead to the discovery of admissible evidence. *See Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir.1991).

This relevance standard is "necessarily broad in scope in order to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *LaForest v. Honeywell Int'l Inc.*, No. 03–CV–6248, 2004 WL 1498916, at *2 (W.D.N.Y. July 1, 2004) (internal citations omitted)); *see also Breon v. Coca–Cola Bottling Co. of New England*, 232 F.R.D. 49, 52 (D.Conn. 2005) ("request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party.") (internal citations omitted).

### III. MOOG HAS ALREADY DISCOVERED DOZENS OF EXAMPLES OF DIRECT COPYING BY SKYRYSE

Despite lacking partial or any access to no less than 12 iDS devices (not including the revoked access to 23 of the Individual Defendants' devices), Moog has already uncovered many examples of Skyryse's direct copying, reference, and use of Moog's trade secrets. These discoveries, which are clearly just the tip of the iceberg, highlight why it is imperative that Moog receive unrestricted access to all iDS devices to uncover additional evidence of misappropriation.

#### A. Moog's Desktop Test Environment

The Moog Desktop Test Environment (MDTE) is a software test tool which supports different tiers of testing and provides a versatile execution environment used in the verification of safety critical software. (Declaration of Kevin M. Crozier ("Crozier Dec."), ¶ 12). Moog's aviation software and source code expert Kevin M. Crozier has discovered through his inspection that twenty-four (24) Moog MDTE Python and C source code files present on Pilkington's Moog-issued Dell Laptop (iDS Device No. E0031) are identical or nearly identical to the twenty-four (24) Skyryse ███████████████████████████ source code files present on Pilkington's Skyryse issued laptop (iDS Device No. E0027). (*Id*.). Certain files are identical copies, whereas the only difference in the majority of the 24 test environment documents is Skyryse merely

changing references to "MDTE" to █████[2] (*Id*. at ¶ 13). This is a clear example of Pilkington misappropriating Moog proprietary software documents to create an identical copy for Skyryse.

**B.    Moog's Software Process Checklist Templates**

In order to meet the Federal Aviation Administration's ("FAA") rigorous flight software certification requirements, aviation companies must follow a well-defined software development process which is tailored to meet the objectives of the FAA's certification requirements. (*Id*. at ¶ 14). The first step in meeting these objectives is to develop plans which document a software development process for the specific project. (*Id*.). These plans are followed by all of the software engineers during the course of the project, and are used to confirm that the document, code, or test developed by the engineer will meet the appropriate FAA certification objectives. (*Id*.). Companies generally make templates of these checklists and them reuse them (with some tailoring) for each software project. (*Id*. at ¶ 15). These checklists generally require significant effort and investment, and new companies looking to meet FAA certification requirements generally must either purchase these checklists and plan templates from another company or develop them from scratch, both of which are significant investments. (*Id*.).

Mr. Crozier discovered ten (10) Microsoft Excel Software Process Checklist Templates found on Pilkington's Skyryse-issued Mac Book Pro Laptop (iDS Device No. E0028) which are nearly identical in structure, verbiage and form to Moog software process checklist templates found on Pilkington's Moog-issued Dell Laptop (iDS Device No. E0031). (*Id*. at ¶ 16). The only changes to the Skyryse versions were to remove some Moog-specific instructions and remove

---

[2] The Court's Inspection Protocol (ECF 96-02) has a specific procedure for requesting production of files that are hosted by iDS. While Moog is currently in the process of making such requests for production of the 24 Skyryse files and other Skyryse files discussed here that are hosted by iDS, we have not yet obtained them within the short timeframe available to attach as evidence with this motion. However, the concurrently filed Crozier Dec. explains and identifies the file paths and file names of the 24 identical files in detail. If it would be helpful to the Court, Moog is prepared to request production and submit them to the Court under seal in advance of the September 12 hearing.

supporting information to assist in the completion of the checklist.  (*Id*. at ¶ 17).  The checklist items themselves were essentially unchanged from the Moog templates.  (*Id*.).

      C.    **Other Evidence of ▓▓▓▓▓▓ Moog's Data**

The foregoing are just a few examples of many which confirm Skyryse's use of Moog's trade secrets.  There is much more damaging evidence.  For example, in his inspection of Pilkington's Skyryse laptop (Device E0028), Moog's forensic expert Bruce W. Pixley discovered chat communications between Pilkington and former Moog employee and current or former Skyryse consultant Lori Bird on December 14, 2021 (three days before Misook Kim's last day at Moog). (Declaration of Bruce W. Pixley ("Pixley Dec."), ¶ 24).  In these communications, Bird asks Pilkington for ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*Id*., emphasis added).  This evidence speaks for itself.

Moog provides these examples to demonstrate that its requests for unrestricted access to iDS devices is not made on conjecture or speculation.  The discovery Moog seeks has already proven to be relevant, proportional, and necessary.  In order to provide a full and complete identification of trade secrets, and also determine what merits the most focus at the preliminary injunction hearing (out of the approximately 1.4 million files stolen), Moog requires full access to all iDS devices.

IV.    <u>**PRIVILEGE REVIEW HAS NOT BEEN COMPLETED ON FIVE ELECTRONIC DEVICES, INCLUDING THE MOST CRITICAL DEVICES IN THE CASE**</u>

Of paramount concern to Moog is that it still has no access to five critically important electronic devices produced by the Individual Defendants to iDS (Device Nos. E0005, 18, 19, 23, and 25).

Two of the devices, E0018 (Serial Number AFDD0200107304) and E0019 (Serial Number S5SCNS0R700159M), are the hard drives that Pilkington used to copy over 1.1 million Moog files. (*Id*. at ¶ 10).  These are the same devices and serial numbers that Moog identified to Skyryse back on March 21, 2022 as being the devices involved in Mr. Pilkington's voluminous theft.  (ECF

180-02). They are likely the most important devices in the case given that they go to the heart of Moog's misappropriation claims. This Court has recognized "Moog's need to first examine the information which was admittedly taken by its former employees Kim and Pilkington prior to their departure, particularly in view of Skyryse's admission that some of that information may now have been deleted." (ECF 205 at p. 3). Given that the vast majority of what was taken is located on devices E0018 and E0019, it is axiomatic that Moog cannot complete its trade secret identification without full access to those devices. Yet, as represented during the July 27 hearing, Skyryse has represented it needs to review these devices for privilege (because it purportedly contains Skyryse information), and yet that review has not commenced because the Individual Defendants are refusing to make the images available to Skyryse based on purported Fifth Amendment concerns

Other devices that Moog has no access to are also important. E0005 is Kim's personal Windows computer that she was using during the relevant time period of misappropriation in 2021 and 2022, and therefore is likely to provide insight as to her file and deletion activity with the various external drives involved. (*Id*. at ¶ 11). E0023 is another one of Pilkington's USB drives, which is important because Pilkington has shown a tendency to use USB drives for copying and transferring Moog data. (*Id*. at ¶ 12). Likewise Skyryse has asserted it seeks privilege review of these devices, but the Individual Defendants have not made the images available to Skyryse.

E0025 is one of Pilkington's external hard drives, which iDS was only able to recently obtain access to due to a device error that required time to resolve. After that, on July 21, 2022, iDS asked Defendants if any review of the device was needed, and Defendants have yet to even respond to iDS. Moog cannot make a complete trade secret identification without full access to these five devices.

V. **SKYRYSE HAS FAILED TO PRODUCE TO IDS 9 COMPUTERS AND 2 USB DEVICES THAT WERE INVOLVED IN THE MISAPPROPRIATION**

A. Skyryse's Failure to Turn Over Relevant Devices to iDS

A new and critical issue has arisen resulting from Moog's expert Bruce Pixley's investigation of certain of the available electronic devices with iDS.

In Skyryse's May 4 Letter served to Moog and filed with the Court, Skyryse acknowledges that based on Skyryse's "investigation into the device connection history of the imaged Skyryse-issued devices," "it appears that Moog information may have been accessed on Skyryse-issued laptops via personal USB devices held by Alin Pilkington or Misook Kim." (Declaration of Rena Andoh ("Andoh Dec."), Ex. D at p. 6). Skyryse then provided a table on page 7 that apparently "reflects connection to SanDisk Cruzer devices that, based on the index prepared by iDS and shared with the parties, may have been delivered to iDS by individual defendants Misook Kim and Alin Pilkington." (*Id*. at p. 7).

There are three SanDisk Cruzer devices for which Skyryse provided VSN (Volume Serial Numbers): 55D28D65, 80FC319F, and EC979D10. (Pixley Dec., ¶ 14). Notably, Skyryse did not provide any VSN for device connections involving the Skyryse-issued laptop bearing Host Serial Number FM1W5J3, which belongs to custodian Sathya Achar. (*Id*.). So there may be additional USB devices involved beyond the three devices for which VSN were provided.

While Skyryse claims that certain "SanDisk Cruzer devices" were delivered to iDS by Kim and/or Pilkington, there were only two SanDisk devices that were turned over by Kim (iDS Devices Nos. E0013 and E0024). (*Id*. at ¶ 15). And only one of those two SanDisk Cruzer devices turned over by Kim (E0013) matches one of the VSN in Skyryse's chart (80FC319F). (*Id*.). Mr. Pixley has discovered through his review that Kim wiped that SanDisk Cruzer device and then formatted it on March 10, 2022, resulting in a complete and irreversible deletion of all data and metadata on the device (just as she had done before returning a hard drive to Moog in February 2022). (*Id*. at ¶ 16). That same wiped drive had previously been plugged into Mario Brenes' computer (Host Serial: J54MD5K) on February 18, 2022. (*Id*.).

Perhaps of most concern is that none of the Dell computers listed in Skyryse's table (that Skyryse admits were connected to the SanDisk Cruzer devices at issue) have been turned over to iDS, except for those belonging to Kim and Pilkington. (*Id*. at ¶ 17). Specifically, Skyryse has not turned over images of:

- Dell Latitude 9520 belonging to Sathya Achar (Host Serial FM1W5J3);

- Dell Latitude 9520 belonging to Mario Brenes (Host Serial J54MDK);

- Dell Latitude 9520 belonging to Lawrence Chow (Host Serial HSYLDK3);

- Dell Latitude 9520 belonging to Eric Chung (Host Serial C1DD6J3);

- Dell Latitude 9520 belonging to Santiago Correa-Mejia (Host Serial 174LDK3);

- Dell Latitude 9520 belonging to Tri Dao (Host Serial JGNV5J3);

- Dell Latitude 9520 belonging to Cynthia Le (Host Serial 4S8LDK3);

- Dell Latitude 9520 belonging to John Stafford (Host Serial CRGD6J3); and

- Dell Latitude 9520 belonging to Alex Wang (Host Serial 80RMDK).

Skyryse has additionally not turned over images of the following two SanDisk Cruzer Devices that it now admits it has possession of: SanDisk Cruzer Devices 55D28D65 and EC979D10. (Andoh Dec., Ex. A).

The May 4 Letter provides that the 9 laptops had already been imaged by Skyryse months ago. (Andoh Dec., Ex. D at p. 6). Moreover, in this matter, USB storage devices have been the primary method to copy and take Moog data. (Pixley Dec., ¶ 19). Thus, inspection of these 9 laptops and two SanDisk Cruzer devices is critical to determining whether Moog data was transferred to them from the various USB storage devices used by Kim and Pilkington, as well as understanding the connection history with such devices. (*Id*.). Skyryse placed these devices at issue, not Moog.

B.   **Moog's Requests for Turnover of the Relevant Devices**

On July 27, 2022, Moog notified Skyryse of these discoveries and requested, among other things, that Skyryse turn over to iDS images of the above-referenced 9 computers and missing SanDisk Cruzer devices on or before August 3. (Andoh Dec., Ex. A). Skyryse has so far refused to turn over the 9 referenced laptops at issue, despite Skyryse's prior acknowledgment that these computers have already been imaged. (*Id*.). Skyryse, who has been conducting its own extensive investigation through its experts at FTI – according to its own representations (*Id*., Ex. D) – also did not deny that the 9 computers at issue contain Moog data. (*Id*., Ex. A). Skyryse also confirmed that it has possession of the very two missing SanDisk Cruzer devices highlighted in Skyryse's

May 4 Letter (55D28D65 and EC979D10) but will not agree to turn them over. (*Id*.). It is highly unfair and improper for Skyryse to acknowledge the involvement of the SanDisk Cruzer devices and nine laptops in possession and transfer of Moog data, but fail to turn them over for inspection. Moog requires immediate relief to get access to these 9 laptops and the two SanDisk Cruzer devices.

## VI. THE INDIVIDUAL DEFENDANTS ARE IMPROPERLY EXCISING DOCUMENTS FROM FIVE ELECTRONIC DEVICES BEFORE 2021

The March 11 Order required the Individual Defendants to preserve and turn over to iDS all "electronic devices used in the last twelve months." (ECF 25, § 4). The Individual Defendants turned over a total of 23 electronic devices to iDS. However, at the Individual Defendants' request, and over the objections of Moog, iDS has excised all communications before 2021 from the following five electronic devices for reasons completely unrelated to privacy or privilege:

- iPad A1652, Serial Number: DLXR3L7PGMW3 (iDS Device No. E0022);
- iPhone 12 or 13 (iDS Device No. E0003);
- MacBook Pro A1502, Serial Number: C02P702TFVH9 (iDS Device No. E0004);
- iPad A1459, Serial Number: DMPJLOTCF18C (iDS Device No. E0021); and
- MacBook Pro A19990, Serial Number: C02XG6PHJH6 (iDS Device No. E0014).

The Individual Defendants' blanket excision of hundreds of thousands of potentially relevant communications is improper and prejudicial to Moog for several reasons.

First, as a threshold matter, there is no Court order, stipulation, or other agreement between the parties that permits excision of materials from electronic devices turned over to iDS for any reason other than for privacy and privilege. The Inspection Protocol entered by the Court on May 13 (ECF 96, 96-02, 109), and the Parties' June 2 Stipulation and ensuing Court order (ECF 137), only contemplate and permit the excision of privileged and/or private information from the electronic devices of the Individual Defendants. Indeed, if the parties were permitted to excise documents based on potential relevance, then Moog could have and likely would have done so. Moog has turned over several electronic devices with millions of files, a large number of which

are likely irrelevant to this case. Given the protections within the Protective Order and Inspection Protocol, it was never contemplated nor agreed that any party would excise documents from devices turned over to iDS based on relevance. The Individual Defendants' blanket excision is procedurally improper and not permitted by the discovery procedures and Court orders in this case.

Second, the Individuals Defendants' claim that the time period before 2021 is not relevant to this case is simply incorrect. The Complaint alleges that Mr. Pilkington was employed by Moog from July 2012 through November 2021. (Comp., ¶¶ 12, 48). It also alleges that Ms. Kim was employed by Moog from January 2013 through December 2021. (*Id*. at ¶¶ 13, 48). It alleges in several places that Moog has developed certain of the flight control programs at issue (and that were misappropriated by the Individual Defendants) over the past 15 years. (*Id*. at ¶¶ 27, 35, 37, 51, 52, 148). More specifically, Kim and Pilkington began working on certain of the flight control programs at issue (and that were misappropriated by the Individual Defendants) beginning in 2013. Indeed, the Complaint expressly alleges that "Pilkington and his team built eRTOS beginning in 2013." (*Id*. at ¶ 53). eRTOS is one of the programs from which large volumes of files were copied and misappropriated. (*Id*. at ¶ 117).

Thus, because Kim and Pilkington had access to eRTOS beginning in 2013, Moog requires access to communications on their personal devices from this time period. Moog has already uncovered several examples of chat communications between Kim and Pilkington that openly discuss misappropriating Moog's proprietary information and source code and disclosing it to third parties. (Andoh Dec., Ex. B). In one striking example, Pilkington advises Kim on December 9, 2021 (one week before Kim left Moog) that he is going to show ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id*.). Given their conduct in the case, it is reasonably likely that Kim and Pilkington discussed Moog's trade secrets with third parties going back to 2013, or used information related to Moog programs between 2013-2021 as a reference during their employment at Skyryse.

As a compromise, Moog has proposed that the Individual Defendants excise communications before 2013, but the Individual Defendants rejected that proposal. There are no procedural or factual grounds for the Individual Defendants' to unilaterally excise hundreds of thousands of communications from their personal devices over a period of 8 years. If there are no relevant communications between 2013-2021, then there is no additional prejudice to the Individual Defendants. However, Moog requires full access to the devices turned over to iDS to understand with certainty which of its trade secrets were misappropriated and used by Defendants.

## VII. ADDITIONAL LOGISTICAL HURDLES ARE PREVENTING MOOG ACCESS TO SEVERAL DEVICES

In addition to the foregoing issues related to Defendants, there remain other technical issues that are preventing Moog's full access to the iDS devices.

### A. Volume Shadow Copies Issue

iDS is currently working with Defendants to make available "Volume Shadow Copies" for certain of the electronic devices. (Pixley Dec., ¶ 20). "Volume Shadow Copies" are automatic backups that are generated and stored by Windows laptops. (*Id.*). Moog requires access to "Volume Shadow Copies" for Windows laptops turned over to iDS because Moog has discovered that Kim deleted what appears to be approximately 780 Moog files from her Skyryse-issued Windows laptop (iDS Device No. E0001). (*Id.* at ¶ 21). The only way Moog can possibly see the contents of these deleted files (and to confirm that they are in fact Moog files) is by seeing if they can be recovered from the automatic backup "Volume Shadow Copies." (*Id.*). To Moog's knowledge to date, this issue impacts at least Skyryse Devices Nos. E0001 and E0027, but may include additional devices because Moog does not have access to all devices yet, including those to which access has been revoked by the Individual Defendants. (*Id.* at ¶ 22).

On July 26, 2022, Moog's counsel requested that iDS make available certain "Volume Shadow Copies" for Skyryse Devices Nos. E0001 and E0027. (Andoh Dec., Ex. C). Moog also requested that because Skyryse's counsel would presumably like to review the "Volume Shadow Copies" for privilege before they are made available to Moog, that Skyryse complete its privilege

review within two weeks of iDS making the "Volume Shadow Copies" available for review. (*Id*.). While the parties and iDS are continuing to work together to try to resolve this issue, it has not been resolved yet.

> B. **Parallels Issue**

Certain of Defendants' devices have a virtual machine application called Parallels. (Pixley Dec., ¶ 23). Parallels is a commercially available program that allows an Apple user to run a Windows-based operating system on their Apple computer. (*Id*.). Each Parallels virtual machine stored on the Apple computer has a proprietary virtual hard drive, which is a large container-type file that mimics a hard drive. (*Id*.). In addition to the virtual hard drives stored on the Defendants' devices, there are backups copies of the virtual hard drives stored on the Defendants' external hard drive. (*Id*.). These proprietary virtual hard drives cannot be viewed or accessed through the iDS virtual machine because the virtual machines are Windows machines. (*Id*.). This impacts at least Individual Defendants' Devices Nos. E0014, 0016, and 0017, and Skyryse Device No. E0028. (*Id*.). In order to fix the issue, iDS must perform a conversion task by converting the proprietary virtual hard drives to what Parallels refers to as a "plain" image format. (*Id*.). Once iDS has completed this conversion process, Defendants will be able to conduct a privilege review of the virtual hard drives just like the other images hosted by iDS before being released to Moog for review. (*Id*.). However, the three Individual Defendants' devices are not blocked from further activity based on the Individual Defendants' unilateral revocation of access. As to the Skyryse device, iDS will not perform the conversion until Skyryse indicates its assent, but Skyryse claims to have technical difficulties with the conversion of its own copies of the Parallels virtual hard drives of the Skyryse device. Meanwhile, Skyryse has not responded to Moog's most recent correspondence directed to resolving this Parallels issue with Skyryse.

**VIII.   SKYRYSE HAS REFUSED TO PRODUCE ITS SOURCE CODE PURSUANT TO THE EXISTING INSPECTION PROTOCOL**

As set forth in Moog's Motion to Compel and accompanying Reply Brief (ECF 176, 195), and as argued during the July 27 Conference, Moog requires the production of and access to

Skyryse's source code that should have been produced a long time ago pursuant to this Court's Inspection Protocol entered on May 13 (ECF 96, 96-02, 109). Analysis of Skyryse's source code will allow Moog's experts to determine what portions of Moog's source code and other trade secrets have been misappropriated and used by Skyryse. At the Court's direction (ECF 206), Moog is filing concurrently herewith a letter brief with legal authority addressing the distinction between source code search protocols for patent and trade secret cases.

IX.  **SKYRYSE HAS NOT PRODUCED DOCUMENTS RESPONSIVE TO MOOG'S RFPS NOS. 8-10**

As set forth in Moog's Motion to Compel and accompanying Reply Brief (ECF 176, 195), Skyryse has not produced all documents responsive to Moog's RFPs Nos. 8-10. These requests seek documents showing the structure of Skyryse's networks and servers related to flight control software, documents related to the development of Skyryse's flight control software, and deletion and versioning logs from Skyryse's software versioning control systems. Moog requires these documents to fully understand the extent of use of Moog's trade secrets by Skyryse. Given the volume of trade secrets at issue in this case, Moog intends to tailor its trade secret identification and presentation to Judge Vilardo at the Preliminary Injunction hearing to Moog's trade secrets used by Skyryse (as opposed to generally everything that was copied).

X.  **CONCLUSION**

Moog respectfully requests that the Court enter an order that:

1. The Individual Defendants permit the release to Skyryse of images for iDS Devices Nos. E0005, 18, 19, 23, and 25, and that Skyryse complete its privilege review of such devices within two weeks of receiving such images;

2. Skyryse turn over to iDS, within 7 days, images of the nine laptop computers and two SanDisk Cruzer devices (55D28D65 and EC979D10) addressed in Section V.A;

3. The Individual Defendants are not permitted to excise any communications from iDS Devices Nos. 0003, 4, 14, 21, 22 after January 1, 2013 other than for privilege or personal privacy;

4. Skyryse produce its source code responsive to Moog's Interrogatory No. 1 to iDS pursuant to the Court's Inspection Protocol within 7 days;

5. Skyryse produce all responsive non-privileged documents to Moog's RFPs Nos. 8-10 within 7 days;

6. Moog shall file a status report with the Court when it has been granted full access to all electronic devices in iDS's possession, pursuant to the other orders herein;

7. Moog shall have 6 weeks from the time its status report is filed to complete its trade secret identification pursuant to the Court's July 22, 2022 order (ECF 205).


Dated: New York, New York
       August 3, 2022

          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
          *Attorneys for Plaintiff Moog Inc.*

          By: */s/ Rena Andoh*
              Rena Andoh
              30 Rockefeller Plaza
              New York, New York 10112
              Telephone: (212) 653-8700

and

HODGSON RUSS LLP

          By:    s/Robert J. Fluskey, Jr.
              Robert J. Fluskey, Jr.
              Melissa N. Subjeck
              Reetuparna Dutta
              Pauline T. Muto
              The Guaranty Building
              140 Pearl Street, Suite 100
              Buffalo, New York 14202
              (716) 856-4000