**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------------X
MOOG INC.,

                         Plaintiff,                        Case No.: 22-cv-187-LJV-JJM

        vs.

SKYRYSE, INC. ROBERT ALIN PILKINGTON, MISOOK
KIM, and DOES NOS. 1-50

                         Defendants.
-------------------------------------------------------------------------------X

**ROBERT ALIN PILKINGTON AND MISOOK KIM'S MEMORANDUM OF LAW IN**
**SUPPORT OF THEIR MOTION TO STAY THE ACTION PENDING RESOLUTION OF**
**THE USAO'S PARALLEL CRIMINAL INVESTIGATION**

         **WINGET, SPADAFORA &**
             **SCHWARTZBERG, LLP**
         45 Broadway, 32nd Floor
         New York, NY 10006
         (p): (212) 221-6900
         (f): (212) 221-6989

         *Attorneys for Robert Alin Pilkington*
         *and Misook Kim*

Of Counsel:    Anthony D. Green, Esq.
               Alexander A. Truitt, Esq.
               M. Annabel Mireles, Esq.

Dated:        August 3, 2022
               New York, New York

## <u>TABLE OF CONTENTS</u>

<u>Page No.</u>

PRELIMINARY STATEMENT ..................................................................................................1

RELEVANT BACKGROUND ...................................................................................................3

      I.      Allegations in the Complaint..................................................................................3

      II.     Status of the Civil Action.......................................................................................4

      III.    Plaintiff Can Identify the Alleged Trade Secrets or Classified Information At Issue Right Now ...............................................................................................................5

      IV.    The USAO Parallel Criminal Investigation ...........................................................8

      V.     Plaintiff Concealed Material Information Concerning Its Communications with the FBI and the USAO to Induce Defendants to (1) Enter into the Protective Order and Inspection Protocol, (2) Provide Devices to iDS, (3) Serve Initial Discovery Responses, (4) Make Information Available for Inspection, and (5) Waive Their Fifth Amendment Rights.....................................................................................9

ARGUMENT.............................................................................................................................11

      I.      Applicable Legal Standard to this Motion ............................................................11

      II.     The Proceedings Against the Individual Defendants Should be Stayed Pending Resolution of the USAO's Criminal Investigation ..................................................13

               A.  The Individual Defendants' Fifth Amendment Rights are Indisputably Implicated, as the Criminal Investigation Overlaps Entirely with this Action.........................................................................13

               B.  The Individual Defendants would be Irreparably Harmed if Required to Proceed with Discovery in this Action While the USAO's Parallel Criminal Investigation Remains Pending ...........................................................13

               C.  Plaintiff's Limited Interests Cannot Outweigh the Strong Interests of the Individual Defendants ..........................................................................14

               D.  The Court's and Public's Interests would be Best Served by a Stay of Proceedings until the Criminal Investigation is Resolved ...............................16

      III.    At the Least, the Individual Defendants' Discovery Obligations Should still be Stayed Pending Plaintiff's Identification of "Trade Secrets" and "Classified Information" ........................................................17

IV.     Plaintiff Is Able To Produce The Information and Documents Requested Right Now, But Chooses Not To ............................................................................................. 19

CONCLUSION ................................................................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Advanced Modular Sputtering, Inc. v. Superior Ct.*, 132 Cal. App. 4th 826,
33 Cal. Rptr. 3d 901 (Cal. Ct. App. 2005) ........................................................................18

*Ajaxo, Inc. v. E\*Trade Fin. Corp.*, 48 Cal. App. 5th 129,
261 Cal. Rptr. 3d 583 (Cal. Ct. App. 2020) ......................................................................15

*Brock v. Tolkow*, 109 F.R.D. 116 (E.D.N.Y. 1985) .........................................................13, 16, 18

*Chao v. Fleming*, 498 F. Supp. 2d 1034 (W.D. Mich. 2007) ........................................................11

*Colorado v. Spring*, 479 U.S. 564 (1987) ..............................................................................10

*FLIR Sys., Inc. v. Parrish*, 174 Cal. App. 4th 1270,
95 Cal. Rptr. 3d 307 (Cal. Ct. App. 2009) ......................................................................15

*Javier H. v. Garcia-Botello*, 218 F.R.D. 72 (W.D.N.Y. 2003) .........................................................17

*Keating v. Office of Thrift Supervision*, 45 F.3d 322 (9th Cir. 1995) ...................................11, 12

*Miranda v. Arizona*, 384 U.S. 436 (1966) ..............................................................................10

*S.E.C. v. Healthsouth Corp.*, 261 F. Supp. 2d 1298 (N.D. Ala. 2003) .........................................11

*SEC v. Dresser Indus.*, 628 F.2d 1368 (D.C. Cir. 1980) ..............................................11, 12, 13, 18

*Sec. and Exch. Commn. v. LaGuardia*, 435 F. Supp. 3d 616 (S.D.N.Y. 2020) ..........................12

*United States v. Kordel*, 397 U.S. 1 (1970) ..............................................................................11

*Vardi Trading Co. v. Overseas Diamond Corp.*, 85 CIV. 2240 (CSH),
1987 WL 17662 (S.D.N.Y. Sept. 23, 1987) ......................................................................16

*Volmar Distributors, Inc. v. New York Post Co., Inc.*,
152 F.R.D. 36 (S.D.N.Y. 1993) ................................................................. 12, 13-14, 16

### <u>RULES AND STATUTES</u>

32 C.F.R. § 2001.1 ..............................................................................................................2, 18

32 C.F.R. § 2001.22 ............................................................................................................2, 18

32 C.F.R. § 2001.23 ............................................................................................................2, 18

32 C.F.R. § 2001.41 ...................................................................................................2, 18

18 U.S.C. § 1836 ...............................................................................................................3

Cal. Civ. Proc. Code § 2019.210 ...................................................................................18

Fed. R. Civ. P. 26(c) .......................................................................................................12

Federal Rule of Criminal Procedure 16(b) .............................................................12, 17

## SECONDARY AUTHORITY

Judge Milton Pollack, Parallel Civil and Criminal Proceedings,
    129 F.R.D. 201 (S.D.N.Y.1989) .......................................................................13

## PRELIMINARY STATEMENT

Defendants Robert Alin Pilkington ("Pilkington") and Misook Kim ("Kim" and, collectively with Pilkington, the "Individual Defendants") respectfully submit this memorandum of law in support of their motion ("Motion") for the following relief:

(1) A stay of this Action pending resolution of the parallel criminal investigation by the U.S. Attorney's Office for the Central District of California in Los Angeles ("USAO"), with the exception of the Defendants' fully-briefed Motions to Dismiss for lack of personal jurisdiction or to change venue, and the Individual Defendants' Motion to Dismiss for failure to state a claim (*see* Dkt. Nos. 47; 48; and 131); or, alternatively,

(2) A stay of the Individual Defendants' discovery obligations in this Action until forty-five (45) days (at which time the issue of a continuing stay could be revisited) after Plaintiff:

    a. identifies with particularity every alleged trade secret and classified information that Plaintiff intends to assert in this Action including through a narrative response and not solely by invoking Rule 33(d) (as Ordered by the Court on July 22, 2022). Such identification must provide an explanation of why the alleged trade secret or confidential information is properly categorized as such;[1]

    b. as to any allegedly "classified" information at issue, Plaintiff must produce sufficient documents and information to show that:

        i. the allegedly classified information is, in fact, classified, including any relevant contracts;[2]

---

[1] Such information was previously requested by Defendants' Interrogatories, No. 1, 3, 4, 5.

[2] Such documents were properly demanded through Defendants' Requests for Production, Nos. 1, 2, 5, 7, 8, 11, 13, and 15.

ii. that there was compliance with the requirements of 32 C.F.R. §§ 2001.1, *et seq.* (including, but not limited to, 32 C.F.R. §§ 2001.22; 2001.23; and 2001.41) and any other applicable laws, regulations and contractual requirements concerning any allegedly classified information;[3] and

c. produces all communications with, and all information and documents provided to, any governmental entity and any person acting on their behalf concerning the Individual Defendants, regardless of whether such communication or provision of information was voluntary, compelled by subpoena or otherwise.[4]

The Individual Defendants bring this Motion as they are subject to a criminal Grand Jury investigation and further litigation of this Action may impair their Fifth Amendment privilege against self-incrimination. In both this Action and the USAO's parallel criminal investigation, the Individual Defendants are accused of misappropriating trade secrets and "classified" information. However, Plaintiff has refused to make any identification of the specific trade secrets or classified information the Individual Defendants are alleged to have misappropriated, even though it is able to do so right now. Indeed, Plaintiff has refused to even concede that any allegedly misappropriated files are not trade secrets or classified information.

Plaintiff has refused to produce such information absent a complete waiver by the Individual Defendants. However, without proper disclosures concerning Plaintiff's alleged classified information, the Individual Defendants are unable to assess the potential impact of invoking the Fifth Amendment on their defenses in this Action or on their possible criminal exposure. Furthermore, neither the USAO's parallel criminal investigation nor this Action can

---

[3] *Id.*
[4] Such documents were properly demanded through Defendants' Requests for Production, Nos. 1, 3, 4, 5, 7, 9, 12, and 15.

proceed against the Individual Defendants without identification of the alleged trade secrets and confidential information, with a full explanation why that information is protectible under the law.

For the reasons set forth in full below, the Individual Defendants respectfully request this Court grant the Motion in full, with such other relief as it deems equitable, just, and proper.

## RELEVANT BACKGROUND

### I.     Allegations in the Complaint

Plaintiff commenced this action through filing the Complaint on March 7, 2022.  *See* Dkt. 1.  The Complaint alleges eleven Counts: (1) violation of 18 U.S.C. § 1836; (2) misappropriation of trade secrets; (3) breach of fiduciary duty; (4) aiding and abetting breach of fiduciary duty; (5) unfair competition; (6) conspiracy; (7) breach of contract; (8) breach of contract (against the Individual Defendants); (9) tortious interference with prospective economic advantage; (10) unjust enrichment; and (11) constructive trust. *Id*.

The Individual Defendants are former employees of Plaintiff, who joined Skyryse, Inc. ("Skyryse") in the Winter of 2021. *See* Dkt. 1, ¶¶ 12-13. Mr. Pilkington is alleged to have left Plaintiff on November 11, 2021, and Ms. Kim on December 18, 2021. *Id.,* ¶¶ 101, 104. Plaintiff alleges that, in November 2021, Ms. Kim purportedly misappropriated "Moog's confidential, proprietary, and trade secret data and program files" upon Mr. Pilkington's and/or Skyryse's instruction. *Id.,* ¶ 6. In doing so, Plaintiff alleges the Individual Defendants breached several contracts, including the employee handbook and an exit form signed by Ms. Kim. *Id.*, ¶¶ 231-239.

Critically, the Complaint does not identify the specific trade secret or classified information that allegedly serves as the basis for Plaintiff's claims.

## II.     Status Of The Civil Action

On the same day Plaintiff commenced this action, it also moved for a preliminary injunction and temporary restraining order against all Defendants. *See* Dkt. No. 4.[5] The parties then entered into a stipulation requiring that certain devices be turned over to the custody of a third-party forensics firm (the parties subsequently retained iDiscovery Solutions ["iDS"] to serve in this custodial role) for preservation pending resolution of the motion for preliminary injunction that was so Ordered by the Court on March 11, 2022. *See* Dkt. No. 25.

The parties also entered into a stipulated Protective Order (as well as addendum thereto) on May 6, 2022, and Inspection Protocol (as well as addendum thereto), which was So-Ordered on May 13, 2022, and permitted the parties to identify which files would be made available for the other parties' review, as well as what files were to be withheld on claims of privilege. The Protective Order is part of an expedited discovery process designed to provide the parties with the discovery needed in advance of the preliminary injunction hearing. *See* Dkt. Nos. 74-1; 89; 96-2; 96-3; 99-2; 109.

Plaintiff has never identified the alleged trade secrets and confidential information at issue with any particularity.  Defendants' Requests for Production and Interrogatories, which were served on March 23, 2022, demanding said information be disclosed. *See* Green Decl., Exs. F; G.  Indeed, on July 22, 2022, the Court ordered Plaintiff to provide responses to Interrogatory No. 1, which required identification of the trade secrets or other confidential information that Plaintiff claims

---

[5] Since the Complaint was filed, the Individual Defendants have also moved to dismiss for lack of personal jurisdiction and for failure to state a claim with respect to Plaintiff's Sixth (conspiracy), Ninth (tortious interference with prospective economic advantage); and Tenth (unjust enrichment) Counts.  Part of the Individual Defendants' motions argue California law should be apply to the substantive questions in this case. *See* Dkt. Nos. 47; 131. Those Motions should be determined if the remainder of the Action is stayed, since they have been fully briefed and would have a great impact on how this Action will proceed once any stay is lifted.

was misappropriated by the Individual Defendants. *See* Dkt. No. 205.  As set forth herein, Plaintiff

has no valid basis to withhold this information—it must be produced immediately.

### III.    Plaintiff Can Identify the Alleged Trade Secrets or Classified Information At Issue Right Now

Plaintiff, despite its claims to the contrary, ***already knows the alleged trade secrets and confidential information at issue and can provide it with particularity***. Plaintiff has already

identified the files it claims were downloaded by Misook Kim. *See* Dkt. No. 4-18. Plaintiff has

provided no reason why it is unable to do the same with files that were allegedly downloaded by

Alin Pilkington, ███████████████████████████████████████████

████████████████████████████████████████████████.

*See* accompanying Declaration of Anthony D. Green ("Green Decl."), Ex. A (July 15, 2022

Transcript, at 40:5-7 ████████████████████████████████████

██████████████████████████████.[6] The only way Plaintiff could know

how many files were taken is if they know what files were in each folder that was allegedly

downloaded. ████████████████████████████████████████████

████████████████████ but Plaintiff has refused to share even that working list with Defendants.

*Id*., at  21:20-22:8. ████████████████████████████████████

████████████████████████████████████████████████████

██████████████  *See* Green Decl., Ex. B. Obviously, Plaintiff managed to achieve this without a

---

[6] Plaintiff also intends to file a motion seeking disclosure of the Individual Defendants'
communications stretching back to 2013, although the Complaint only alleges conduct purportedly
occurring in 2021. When asked to confirm whether any of the trade secrets at issue existed eight
to nine years ago, Plaintiff's counsel chose not to respond. This is an example of Plaintiff using its
alleged trade secrets as both a sword and a shield.  Plaintiff's intended motion suggests that it
either has a very clear idea of what trade secrets are at issue in this Action or that it is has none
and merely filed this Action in search of a valid claim.

review of any of the Defendants' devices, since the communication took place a mere eleven days after the Complaint was filed.

Furthermore, in June 2013 Moog released its "Moog Inventions, Patents, Copyrights, Trademarks, Confidential Property;" a document that "defines Moog policies, guidelines, and best practices regarding Intellectual Property," which was most recently updated in March of 2017. *See* Green Decl., Ex. C. Through that document, Plaintiff established clear guidelines on the handling of its trade secrets as follows:



*See* Green Decl., Ex. C.

Thus, Plaintiff's claim that it cannot identify its own alleged trade secrets at issue in this Action is simply untrue, since all of Plaintiff's trade secrets were required to be clearly identified in its own files, pursuant to Plaintiff's internal policy.  Indeed, by continuing to make this assertion, Plaintiff admits the files at issue were not maintained pursuant to Plaintiff's internal policy.

Here, Plaintiff's arguments have improperly conflated: (1) identifying the trade secrets, classified and other allegedly protectible confidential information that were allegedly downloaded by the Individual Defendants and further explaining why that information is protectible as a trade secret or on any other cognizable theory, with (2) Plaintiff's purported inability to currently determine which files (not even necessarily trade secrets) remain in the possession of and/or are being used by any of the Defendants. If the files at issue were trade secrets and kept pursuant to Plaintiff's internal policies, Plaintiff can accomplish the former right now, even without reviewing the Individual Defendants' devices.

Indeed, during the May 5, 2022 conference, Plaintiff demonstrated its clear understanding of the distinction between: (1) identification of the trade secrets and other classified or confidential information alleged to be at issue and, (2) following that identification, engaging into an inquiry as to whether there has been any misappropriation (*i.e.*, the wrongful use of the downloaded information) or the existence of any cognizable damages, as separate inquiries. During the conference, Plaintiff did not argue that it needed access to the Individual Defendants' devices to identify trade secrets. Instead, Plaintiff argued only that it needed access to the Individual Defendants' devices to establish use, misappropriation, and spoliation. *See*, e.g., Green Decl., Ex. D (May 5, 2022 Transcript, 65:18-21 and 66:14-20).

7

Likewise, in Plaintiff's memorandum of law in support of its proposed Protective Order, Plaintiff similarly argued that inspection of the Defendants' devices was needed "to identify misappropriation of Moog's flight control software would require analyzing how Skyryse's flight control software is architected and the extent and nature of that architecture's similarities to Moog's, including by visually comparing code side-by-side where necessary." *See* Dkt. No. 96-13, at p. 16. Similarly, Plaintiff also argued that "[o]nly Defendants fully know how they have misappropriated Moog's data and how they have integrated such data into their own documents. Moog should not be forced to "guess" at how they have misappropriated the data in order to provide search terms to Defendants while wearing a proverbial blindfold, but should instead be entitled to discover for itself the scope, depth, and breadth of Defendants' misappropriation." *Id*., at p. 19.  Nowhere in its memorandum of law in support of the proposed Protective Order or in the May 5, 2022 conference does Plaintiff argue that it needs access to the Individual Defendants' devices for the purpose of identifying the trade secrets at issue in this case.

Simply put, Plaintiff's claim it must have complete and unfettered access to the Defendants devices prior to identification is pretext—Plaintiff did not raise this issue prior to any confrontation over its improper refusal to produce this information in discovery.

## IV.   The USAO Parallel Criminal Investigation

Recently, the Individual Defendants were served with grand jury subpoenas by the USAO. *See* Green Decl., ¶ 8. The Individual Defendants' criminal defense attorneys have informed civil counsel the USAO has represented that ███████████████████████████ ███████████████. *Id*. In both this Action and the USAO's parallel criminal investigation (which was referred by Plaintiff), the Individual Defendants are accused of misappropriating trade secrets and classified information. *Id*. However, there has never been an identification of either the

specific trade secrets or classified information that the Individual Defendants are alleged to have misappropriated by either the Plaintiff or the USAO. *Id.*

Without complete identification and proper disclosures regarding Plaintiff's classified information allegations, the Individual Defendants are unable to assess the potential impact of invoking the Fifth Amendment on their defenses in this Action or on their possible criminal exposure. Nor can the Individual Defendants even narrow down whether any discovery requests or deposition questions would not call for asserting Fifth Amendment rights.

Thus, as things currently stand, since Plaintiff refuses to provide anything less than an extremely broad, vaguely-defined (at best) description of the information that forms the alleged basis of Plaintiff's claim, the Individual Defendants would have no choice but to exercise a very broad Fifth Amendment privilege against providing responses to <u>any</u> discovery requests until such information is identified with specificity. As such, if a stay is granted, Plaintiff would not suffer any additional prejudice than if the requested stay were not granted.

**V. Plaintiff Concealed Material Information Concerning Its Communications with the FBI and the USAO to Induce Defendants to (1) Enter into the Protective Order and Inspection Protocol, (2) Provide Devices to iDS, (3) Serve Initial Discovery Responses, (4) Make Information Available for Inspection, and (5) Waive Their Fifth Amendment Rights**

The Individual Defendants only recently learned that: (1) ██████████████████ ████████████████████████████████████ ; (2) ████████████████████████████ ██████████████ ; and (3) ████████████████████████████████ ██████████████████████ . *See* Green Decl., Ex. E. On balance, a direct and previously undisclosed link between Plaintiff and the USAO exists.  In this relationship, Plaintiff affirmatively assists the USAO criminal investigation.

9

Plaintiff did not disclose this material information as it induced the Individual Defendants to enter into the so-Ordered Protective Order and Inspection Protocol (and the amendments thereto) governing expedited discovery in this matter. Moreover, Plaintiff did not even make this disclosure while the Individual Defendants were conducting a privilege review of the devices turned over to iDS.  This earlier review was made on the basis of attorney-client privilege, rather than for existence of a Fifth Amendment privilege, which the Individual Defendants are (and would have been) unable to intelligently do until after Plaintiff identifies the alleged trade secrets and classified information it may assert in this Action.

Plaintiff's bad faith decision to omit this material information was intended to induce the Individual Defendants to unknowingly and involuntarily disclose information that would be protected by a Fifth Amendment privilege and provide such information to the USAO in furtherance of a criminal indictment. Had Plaintiff properly disclosed this information, the Individual Defendants would not have (1) entered the Protective Order and Inspection Protocol, (2) provided devices to iDS, or (3) made any information available for inspection absent the relief sought through this Motion.  As such, any earlier disclosure is not a valid waiver of the Individual Defendants' Fifth Amendment rights, since a waiver is only effective if it is made "voluntarily, knowingly and intelligently." *See Colorado v. Spring*, 479 U.S. 564, 573 (1987), (*quoting Miranda v. Arizona*, 384 U.S. 436, 444 [1966]).

For that reason, the Individual Defendants properly ceased all access to their devices in the custody of the Court-appointed neutral, iDS. The Individual Defendants actions were proper under Protective Order that Plaintiff misleadingly induced the Individual Defendants to enter into. *See* Dkt. 89, §§ XI, XVI.  Plaintiff's complaints are the result of its own inexcusable delay in disclosing pertinent information that would have allowed resolution of this issue at a much earlier point.

Based on the foregoing, the most reasonable course of action that would protect the most compelling interests is a stay of this Action. Therefore, the Individual Defendants respectfully request this Court grant their Motion, in full, with such other relief as the Court deems equitable, just and proper.

## ARGUMENT

### I.     Applicable Legal Standard to this Motion

Because of the USAO's active parallel criminal investigation, the Individual Defendants find themselves in the precarious position of having to decide whether to waive their Fifth Amendment privilege in order to defend themselves in this Action, or asserting the privilege in an abundance of caution and risk harming their defense in this Action.

It is well-settled that a court has broad discretion to stay a civil action pending the outcome of criminal proceedings. *See*, *e.g.*, *SEC v. Dresser Indus*., 628 F.2d 1368, 1375 (D.C. Cir. 1980) ("[A] court may decide in its discretion to stay civil proceedings, postpone civil discovery, or impose protective orders and conditions when the interests of justice seem … to require such action.") (quoting *United States v. Kordel*, 397 U.S. 1, 12 n. 27 (1970) (internal quotation marks omitted); *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995) (same); *see also Chao v. Fleming*, 498 F. Supp. 2d 1034, 1037 (W.D. Mich. 2007) ("While nothing in the Constitution requires a civil action to be stayed in the face of a pending or impending criminal indictment, a court still has broad discretion in determining whether to stay a civil action while a criminal action is pending or impending."); *S.E.C. v. Healthsouth Corp*., 261 F. Supp. 2d 1298, 1326 (N.D. Ala. 2003) ("No question exists that this court has the power to stay a civil proceeding

due to an active, parallel criminal investigation."); *see also* Fed. R. Civ. P. 26(c) (permitting a court to issue a protective order forbidding discovery or specifying terms for the discovery).

Courts are afforded the discretion to grant a stay because the denial of a stay could, among other things, "impair a party's Fifth Amendment privilege against self-incrimination, extend criminal discovery beyond the limits set forth in Federal Rule of Criminal Procedure 16(b), expose the defense's theory to the prosecution in advance of trial, or otherwise prejudice the criminal case." *Fleming*, 498 F. Supp. 2d at 1037. The court must make the determination whether to stay the civil action "in the light of the particular circumstances of the case." *Dresser Indus.*, 628 F.2d at 1375; *see also Keating*, 45 F.3d at 324 ("The decision whether to stay civil proceedings in the face of a parallel criminal proceeding should be made in light of the particular circumstances and competing interests involved in the case.") (internal quotation marks and citation omitted).

Courts generally consider: "(1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the case, including whether the defendants have been indicted; (3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; (4) the private interests of and burden on the defendants; (5) the interests of the courts; and (6) the public interest." *Sec. and Exch. Commn. v. LaGuardia*, 435 F. Supp. 3d 616, 621 (S.D.N.Y. 2020). "Balancing these factors is a case-by-case determination, with the basic goal being to avoid prejudice." *Volmar Distributors, Inc. v. New York Post Co., Inc.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993).

As set forth below, the totality of the above-stated factors weighs heavily in favor of granting the Individual Defendants' motion to stay these proceedings pending resolution of the USAO's parallel criminal investigation.

## II.   The Proceedings Against the Individual Defendants Should be Stayed Pending Resolution of the USAO's Criminal Investigation

### A.   The Individual Defendants' Fifth Amendment Rights are Indisputably Implicated, as the Criminal Investigation Overlaps Entirely with this Action

"The strongest case for granting a stay is where a party under criminal indictment is required to defend a civil proceeding involving the same matter." *Volmar*, 152 F.R.D., at 39; *see also Dresser Industries*, 628 F.2d at 1375–76; *Brock v. Tolkow*, 109 F.R.D. 116, 119 (E.D.N.Y.1985); Judge Milton Pollack, Parallel Civil and Criminal Proceedings, 129 F.R.D. 201, 203 (S.D.N.Y.1989) ("The most important factor at the threshold is the degree to which the civil issues overlap with the criminal issues.").

This Action and the USAO's parallel criminal investigation both concern allegations that the Individual Defendants misappropriated the same alleged trade secrets or classified information from Plaintiff. As such, the issues in this Action <u>completely</u> overlap with the issues in the USAO's parallel criminal investigation.[7]

### B.   The Individual Defendants would be Irreparably Harmed if Required to Proceed with Discovery in this Action While the USAO's Parallel Criminal Investigation Remains Pending

In the words of the *Volmar* Court, "[p]roceeding with discovery would force [the Individual Defendants] into the uncomfortable position of having to choose between waiving their Fifth Amendment privilege or effectively forfeiting the civil suit. On the one hand, if either [of the Individual Defendants] invokes [their] constitutional privilege during civil discovery, not only

---

[7] Plaintiff has previously raised a red herring argument that there is no way of knowing what the USAO might charge the Individual Defendants with violating and, as such, there is no overlap This is untrue. The USAO's parallel criminal investigation has been instigated and informed by Plaintiff, ████████████████████████████████. The USAO parallel criminal investigation it is based upon the same allegations of trade secret and classified information misappropriation (which Plaintiff has, thus far, chosen not to identify with any particularity).

does this prevent [them] from adequately defending [their] position, but it may subject [them] to an adverse inference from [their] refusal to testify ... On the other hand, if either fails to invoke [their] Fifth Amendment privilege, [they may waive] it, and any evidence adduced in the civil case can then be used against [them] in the criminal trial." *Id.*, 152 F.R.D., at 39-40 (internal citations omitted).

The Individual Defendants' highly compelling liberty and economic interests justify the requested stay and the irreparable nature of the harm they would suffer without it is clear.

C.    <u>Plaintiff's Limited Interests Cannot Outweigh the Strong Interests of the Individual Defendants</u>

Plaintiff lacks any compelling interest sufficient to counter those of the Individual Defendants. There is no risk that any delay in turning over the Individual Defendants' information will result in lost evidence, given that their devices are already in safekeeping with iDS, the Court-appointed neutral. Additionally, a second layer of protection exists, as "the criminal justice system will help safeguard the evidence" during the stay. *Volmar*, 152 F.R.D., at 40.

As discussed herein, Plaintiff uses its trade secrets as both a sword and a shield.  Plaintiff has a crystalline understanding of its trade secrets in all instances, except when defendants seek disclosure of this information. ██████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████[8]

---

[8] ██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████

Plaintiff's statement that it cannot identify the trade secrets and confidential information at issue in this action without a complete waiver of the Individual Defendants' Fifth Amendment rights is simply pretext.

Nor would Plaintiff's interests in obtaining an injunction be harmed by a stay, since the Individual Defendants are no longer employed by Defendant Skyryse, Inc., which Plaintiff alleges made use of its unidentified trade secrets. Under settled California law, an injunction may not issue on the mere speculation that defendants might misappropriate and use Plaintiff's trade secrets in the future, once they find new employment. *See FLIR Sys., Inc. v. Parrish*, 174 Cal. App. 4th 1270, 1277, 95 Cal. Rptr. 3d 307, 314-15 (Cal. Ct. App. 2009). ("[T]he doctrine of 'inevitable disclosure' … violate[s] public policy favoring employee mobility… [and] is not the law in California… [S]peculation that a departing employee may misappropriate and use a trade secret in a startup

---

█████████████████████████████████████████████ Plaintiff's admission raises serious preservation and spoliation concerns that may render proof of damages impossible. *See Ajaxo, Inc. v. E*Trade Fin. Corp.*, 48 Cal. App. 5th 129, 171, 261 Cal. Rptr. 3d 583, 616 (Cal. Ct. App. 2020) (Plaintiff failed to properly preserve "software, source code, and/or Javadoc source code documentation," which properly led to a finding that damages could not be proven.).

Of further concern is that Plaintiff's counsel subsequently contradicted those statements ████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████ *See* Green Decl., Ex. H. Thus, Plaintiff abandoned its above-stated objections to its ability to identify its alleged trade secrets immediately when confronted with the consequences to be drawn from it. Plaintiff has a very clear view of what its alleged trade secrets are for all aspects of this case, except when Defendants ask Plaintiff to disclose them.

business will not support an injunction… 'A trade secrets plaintiff must show an actual use or an actual threat.'") (Internal citations omitted).[9]

Since Plaintiff could only obtain relief against the Individual Defendants relating to alleged conduct that has already happened, a stay of discovery would not pose any continuing danger to either Plaintiff or the public. *See Tolkow*, 109 F.R.D., at 120 (Stay of discovery granted, in part because there was no "tangible threat of immediate and serious harm to the public at large" or any "indication that [the parties in interest] are suffering or will suffer any irreparable injury if civil discovery is stayed.").

Accordingly, while "the stay might result in inconvenience and delay" for Plaintiff, "under settled authority the fifth amendment privilege takes precedence." *See Vardi Trading Co. v. Overseas Diamond Corp.*, 85 CIV. 2240 (CSH), 1987 WL 17662, at *2 (S.D.N.Y. Sept. 23, 1987). Since Plaintiff's interests do not begin to rival the Individual Defendants' Fifth Amendment concerns, they fail to provide sufficient basis to deny the requested stay.

D.    The Court's and Public's Interests would be Best Served by a Stay of Proceedings until the Criminal Investigation is Resolved

In *Volmar*, the Court found that allegations of unfair competition, such as those involved in this Action, do not represent a "compelling public interest" sufficient to deny a request for a stay pending resolution of criminal proceedings. *Id.*, 152 F.R.D., at 40. As such, Plaintiff's commercial claims are not sufficient to oppose a stay.

On the other hand, it is well-established that the Court and the public have a compelling interest in: (1) safeguarding citizens' civil rights under the Fourth and Fifth Amendments; (2)

---

[9] It is indisputable that California law exclusively governs the Individual Defendants' current and future activities, since they are California residents with no activities in or directed towards New York State at the present time.

ensuring that law enforcement objectives are not circumvented by civil discovery; and (3) resolving civil disputes on their merits and "unobstructed by concerns regarding self-incrimination." *See Javier H. v. Garcia-Botello*, 218 F.R.D. 72, 75 (W.D.N.Y. 2003). As such, the balance of competing interest weighs heavily in favor of granting the Individual Defendants' request for a complete stay.

In *Garcia-Botello,* this Court aptly summarized this principle as follows:

> A stay of discovery pending resolution of the criminal case clearly serves both the interests of the Court and those of the public. By proceeding first with the criminal prosecution, the Court makes efficient use of judicial time and resources by insuring that common issues of fact will be resolved and subsequent civil discovery will proceed unobstructed by concerns regarding self-incrimination. Moreover, the public's interest in the integrity of the criminal case is entitled to precedence over the civil litigant. A trial judge should give substantial weight to the public interest in law enforcement in balancing the policy against the right of a civil litigant to a reasonably prompt determination of his civil claims or liabilities.
> *Id.* (internal citations and quotations omitted).

Additionally, counsel for the Individual Defendants reached out to the USAO for its position on the present request for a stay. ███████████████████████████████ ███████████████████████████████, the relevant factors overwhelmingly favor granting the stay of discovery requested by the Individual Defendants.

## III.   At the Least, the Individual Defendants' Discovery Obligations Should still be Stayed Pending Plaintiff's Identification of "Trade Secrets" and "Classified Information"

The Individual Defendants respectfully submit that the most efficient and effective way to protect the compelling interests at stake would be a stay of the Action pending resolution of the USAO's parallel criminal investigation.  This Action, "if not deferred, might undermine the [Individual Defendants'] Fifth Amendment privilege against self-incrimination, expand rights of criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b), expose the basis

of [their] defense to the prosecution in advance of criminal trial, or otherwise prejudice the case."
*See Tolkow*, 109 F.R.D., at 119 (*quoting Dresser Indus., Inc.*, 628 F.2d, at 1376).

However, short of that, there should be a stay of the Individual Defendants' discovery obligations for a period of forty-five (45) days after Plaintiff identifies with particularity the alleged "trade secrets" and "classified" information that are claimed to be at issue in this Action. Additionally, as the Individual Defendants are left to defend themselves against the misappropriation of nebulous information, including in a criminal probe, Plaintiff who brought this Action should be ordered to produce sufficient information to show both that the allegedly classified information is, in fact, classified and that there was compliance with the requirements of 32 C.F.R. §§ 2001.1, *et seq.* (including, but not limited to, 32 C.F.R. §§ 2001.22; 2001.23; and 2001.41) and any other applicable laws, regulations and contractual requirements concerning any allegedly classified information. Once such information is provided, the Individual Defendant will assess within the forty-five (45) day period or make an application setting forth why the stay should be continued.

As recognized by the case law cited within the Court's July 22, 2022 Order, the disclosure at issue is usually required before any discovery whatsoever takes place in trade secret cases.[10] In

---

[10] Indeed, if California law were applied to the claims (as it must be, for the reasons set forth in the Defendants' pending Motions to Dismiss), then Plaintiff would be required to identify any allegedly misappropriated trade secrets with particularity "before commencing discovery." *See* Cal. Civ. Proc. Code § 2019.210 ("In any action alleging the misappropriation of a trade secret under the Uniform Trade Secrets Act (Title 5 (commencing with Section 3426) of Part 1 of Division 4 of the Civil Code), ***before commencing discovery relating to the trade secret***, the party alleging the misappropriation shall identify the trade secret with reasonable particularity subject to any orders that may be appropriate under Section 3426.5 of the Civil Code.") (emphasis supplied). Furthermore, "[w]here, as here, the alleged trade secrets consist of incremental variations on, or advances in the state of the art in a highly specialized technical field, a more exacting level of particularity may be required to distinguish the alleged trade secrets from matters already known to persons skilled in that field." *Advanced Modular Sputtering, Inc. v. Superior Ct.*, 132 Cal. App. 4th 826, 836, 33 Cal. Rptr. 3d 901, 908 (Cal. Ct. App. 2005).

light of the USAO's parallel criminal investigation, it is untenable for Plaintiff to further delay meeting its threshold obligations.[11] Yet, in defiance of the Court's July 22, 2022 Order, Plaintiff has not provided a timeline for its compliance. During the parties' pre-conference meet and confer session, Plaintiff repeated its rejected arguments that it needs to obtain further discovery from the Defendants before it can even provide a specific timeline. *See* Green Decl., ¶ 12. Plaintiff's position is that the Court's July 22, 2022 Order has no effect and, despite being ordered to produce the information at issue, Plaintiff is under no obligation to do anything other than what it already planned on doing. The time for Plaintiff's compliance should be now, before any other discovery is required from the Defendants, and Plaintiff has the information and ability to do so.

In the meantime, the Individual Defendants cannot be fairly expected to make such a consequential decision as to whether to invoke their Fifth Amendment rights without the information that Plaintiff has withheld. Accordingly, at the very least and in an effort to preserve fairness, the Individual Defendants' discovery obligations should be stayed until the alleged trade secrets and classified information at issue in this Action and materials concerning the USAO's parallel criminal investigation are disclosed.

---

Here, Plaintiff has usurped an enormous unfair advantage by improperly filing in this Court, rather than the appropriate California District Court with jurisdiction to hear this dispute. The Individual Defendants respectfully submit Plaintiff adopted this tactic to avoid the application of California law. While the Defendants' Motions to Dismiss challenging jurisdiction and the application of New York law to this dispute remain pending, Plaintiff should not be permitted to deprive the Individual Defendants of their Fifth Amendment Rights by virtue of improper forum shopping.

[11] Recent discussions with Plaintiff's counsel indicates that Plaintiff also has no intention of ever disclosing critical information needed to prove that any files at issue were truly classified or that Plaintiff properly maintained such materials as required. Plaintiff's reasoning appears to be the nothing more than its own declaration that the files were classified. *See* Green Decl., ¶ 13. By this circular logic, Plaintiff does not have to establish the allegedly classified material is truly classified because they state such materials are classified. Plaintiff cannot prevail by mere *ipse dixit*.

## IV.    Plaintiff Is Able To Produce The Information and Documents Requested Right Now, But Chooses Not To

As demonstrated above (*see* pp. 3-6 *supra*), Plaintiff is already able to provide the information and documents sought via the alternative relief proposed by this Motion. Plaintiff's failure to do so is a choice and, as such, it does not provide valid grounds to deny any of the relief sought. Indeed, the relief requested by this Motion should be granted because Plaintiff is responsible for the logjam potentially requiring a broad Fifth Amendment objection in this Action and the USAO's parallel criminal investigation.

Inspection of the Individual Defendants' devices is not necessary for Plaintiff to provide the information and documents sought via the alternative relief proposed by this Motion. To reiterate, Plaintiff has already identified the files it claims were downloaded by Kim. *See* Dkt. No. 4-18. Plaintiff has provided no reason why it is unable to do the same with files that were allegedly downloaded by Pilkington, since its own systems surely have a record of any downloads. ███████
███████████████████████████████████████████████████████████. *See* Green Decl., Ex. A (July 15, 2022 Transcript, at 40:5-7█████████████████████
████████████████████████████████). ████████████████████
████████████████████████████████████████████████████████
███████████████. *See* Green Decl., Ex. B.

Likewise, Plaintiff's own procedures ████████████████████████████. *See* Green Decl., Ex. C.  If Plaintiff is truly unable to identify its trade secrets, it must admit that ████████████████████████████████████████████████.

Plaintiff has repeatedly used its failure to disclose the alleged trade secrets and confidential information at issue as both a sword and a shield.  In all aspects other than when Defendants seek disclosure, Plaintiff possess a clear understanding of its trade secrets.  Plaintiff conflates the issue

of identification of the information that was allegedly improperly taken, and whether it has since been used (i.e., misappropriated). At this time, Plaintiff can make that showing without reference to any of the Defendants' devices. Plaintiff is simply choosing not to do so.

## CONCLUSION

For the foregoing reasons, the Individual Defendants respectfully request this Court grant the instant Motion for a Stay, together with such other and further relief as the Court may deem necessary and proper.

Dated: New York, New York
      August 3, 2022

**WINGET, SPADAFORA &**
**SCHWARTZBERG, LLP**

By:   */s/ Anthony D. Green*
     Anthony D. Green, Esq.
     Alexander A. Truitt, Esq.
     M. Annabel Mireles, Esq.
     45 Broadway – 32nd Floor
     New York, NY 10006
     P: (212) 221-6900
     F: (212) 221-6989
     Green.A@wssllp.com
     Truitt.A@wssllp.com
     Mireles.A@wssllp.com

*Attorneys for Defendants Robert Alin*
*Pilkington and Misook Kim*