EXHIBIT D

17:27:33

1                    UNITED STATES DISTRICT COURT

2                   WESTERN DISTRICT OF NEW YORK

3    ***SEALED TRANSCRIPT****
     - - - - - - - - - - - - - - X
4    MOOG INC.,                  )      22-CV-187
                      Plaintiff  )
5    vs.
                                      Buffalo, New York
6    SKYRYSE, INC., et al        )    May 5, 2022
                      Defendant.
7    - - - - - - - - - - - - - - X
     STATUS CONFERENCE
8    Proceeding held via Zoom for Government Platform

9                      TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE JEREMIAH J. MCCARTHY
10                 UNITED STATES MAGISTRATE JUDGE

11

     FOR PLAINTIFF: SHEPPHARD MULLIN RICHETER & HAMPTON, LLP
12                  BY: RENA ANDOH, ESQ.
                        LAI YIP, ESQ.
13                      KAZIM A. NAQVI, ESQ.
                        TRAVIS J. ANDERSON, ESQ.
14                      -and-
                    HODGSON RUSS, LLP
15                  BY: ROBERT J. FLUSKEY, JR, ESQ.

16   FOR DEFENDANT: GIBSON DUNN & CRUTCHER, LLP
     SKYRYSE         BY: KATHERINE DOMINGUEZ, ESQ.
17                      JUSTINE M. GOEKE, ESQ.
                        -and-
18                  HARRIS BEACH, LLP
                    BY: TERRANCE P. FLYNN, ESQ.
19                      -and-
                    LATHAM & WATKINS, LLP
20                  BY: DOUGLAS E. LUMISH, ESQ.
                        GABRIEL S. GROSS, ESQ.
21   FOR DEFENDANT:
     PILKINGTON/KIM  LOCKE LORD, LLP
22                  BY: RORY S. MILLER, ESQ.

23

     COURT REPORTER: Karen J. Clark, Official Court Reporter
24                   Karenclark1013@AOL.com
                     100 State Street
25                   Rochester, New York 14614

```
 1              MOOG, INC VS. SKYRYSE, INC, ET AL

 2                  P R O C E E D I N G

 3              *              *              *

 4

 5              MAGISTRATE JUDGE MCCARTHY:  Good afternoon,

 6    everyone.

 7              MR. FLUSKEY:  Good afternoon.

 8              MS. DOMINGUEZ:  Good afternoon, your Honor.

 9              MR. FLYNN:  Good afternoon, your Honor.

10              MAGISTRATE JUDGE MCCARTHY:  What I'm going

11    to ask that we do is I'm going to ask Eric Glynn, my

12    courtroom deputy clerk, to call the case and I'll ask

13    everyone to identify themselves again and indicate whom

14    they represent.  Okay.  Eric, you want to call the case.

15              THE CLERK:  Yes, Judge.  We're on the record

16    in civil proceeding 22CV187 Moog, Inc versus Skyryse,

17    Inc, et al, for a sealed status conference.  The parties

18    appear by video with Zoom.  Would the participants

19    please state their appearances?

20              MS. ANDOH:  Your Honor, for Plaintiff you

21    have Rena Andoh, Lai Yip, Travis Anderson, Kazim Naqvi

22    from Sheppard, Mullin, and Rob Fluskey from Hodgson

23    Russ.

24              MR. FLYNN:  Your Honor, on behalf of

25    Skyryse, you have local counsel, Terrance Flynn, from
```

```
           1              MOOG, INC VS. SKYRYSE, INC, ET AL
17:39:19   2    Harris Beach, and Kate Dominguez and Justine Goeke from
17:39:23   3    Gibson Dunn, and Douglas Lumish and Gabriel Gross from
17:39:23   4    Latham & Winston.
17:39:29   5              MR. MILLER:  And, your Honor, on behalf of
17:39:30   6    the individual Defendants, Allen Pilkington and Kim,
17:39:36   7    Rory Miller.
17:39:37   8              MAGISTRATE JUDGE MCCARTHY:  Okay.  Thank
17:39:38   9    you, Mr. Miller.  You're by phone, correct.
17:39:42  10              MR. MILLER:  That's correct.
17:39:42  11              MAGISTRATE JUDGE MCCARTHY:  Okay.  Now, in
17:39:43  12    addition, I just wanted to everyone to know that Judge
17:39:46  13    Vilardo's law clerk, Will Hayes, is listening in by
17:39:51  14    telephone.  I also have, in my Chambers, my law clerk,
17:39:56  15    Matt Yusick, but other than that, we do not have -- I
17:40:01  16    recognize that the parties are concerned about
17:40:04  17    confidentiality and we do not have anybody else
17:40:07  18    listening in, as best as I can tell.
17:40:13  19              MS. ANDOH:  Your Honor, could be I heard on
17:40:15  20    that issue on confidentiality.
17:40:16  21              MAGISTRATE JUDGE MCCARTHY:  I'm sorry, who
17:40:18  22    is speaking.
17:40:18  23              MS. ANDOH:  This is Ms. Andoh for Moog.
17:40:21  24              MAGISTRATE JUDGE MCCARTHY:  Okay.  Rena,
17:40:22  25    yes.  This is like Hollywood Squares, I have to look and
```

```
         1              MOOG, INC VS. SKYRYSE, INC, ET AL
17:40:28 2    see.  I see you now.
17:40:28 3              MS. ANDOH:  It really is, I should probably
17:40:31 4    raise my hand so it's more obvious that I'm the talking
17:40:34 5    head that is talking.  Your Honor, we actually have a
17:40:38 6    little bit of concern around this idea that these
17:40:41 7    proceedings are sealed, presumptively.  We don't
17:40:44 8    actually believe that the material being discussed in
17:40:47 9    these conferences is confidential.  We've gone through
17:40:50 10   and we looked at the topics that were discussed in the
17:40:54 11   last status conference and what we really see is that
17:40:57 12   there is nothing confidential about it.  It appears that
17:41:01 13   Skyryse wants these proceedings sealed because they
17:41:05 14   don't want them on the public PACER docket, the
17:51:56 15   documents and transcripts related to their disclosures
17:52:00 16   around spoliation and around the use of our confidential
17:52:04 17   information.  You know, our view is, the prior
17:52:06 18   conference should not have been sealed and we don't
17:52:08 19   think this conference should, presumptively, be sealed.
17:52:12 20   We believe the standard procedure should be followed
17:52:15 21   going forward whereby Skyryse believes that there is
17:52:19 22   material in the conference that should be sealed.  They
17:52:22 23   should be making an application with case law with good
17:52:25 24   cause shown.  We're just not seeing anything that
17:52:28 25   warrants sealing.  And I will say that, you know, the
```

CONFIDENTIAL

```
             1              MOOG, INC VS. SKYRYSE, INC, ET AL
17:52:31     2    12-page letter that Skyryse sent to Moog on Monday was
17:52:37     3    designated presumptively attorneys'-eyes-only under the
17:52:40     4    protective order that hasn't yet been ordered.  And
17:52:45     5    while we're complying with that designation for the time
17:52:49     6    being, we view it as improper because we don't see
17:52:52     7    anything in the letter that is confidential, much less
17:53:22     8    AEO, with the exception of one of the exhibits that
17:53:24     9    contains information that arguably should be sealed.
17:53:28    10    So, you know, we just wanted to raise the concern
17:53:32    11    because we don't want to be in a universe where sealing
17:53:36    12    is being presumed without there being any kind of cause.
17:53:39    13              MAGISTRATE JUDGE MCCARTHY:   All right.  I
17:53:41    14    think that is a good point.  For present purposes,
17:53:45    15    though, at least for this afternoon, I'm going to
17:53:48    16    continue that in place.  But we may revisit on sealing,
17:53:54    17    not only what goes forward, but what has occurred to
17:53:58    18    date.  For example, I do tend to agree with you that
17:54:03    19    what was discussed last week was not confidential in
17:54:10    20    that it did not specifically disclose or describe any
17:54:17    21    particular information that might be considered a trade
17:54:20    22    secret.  But just to be on the safe side, I think for
17:54:28    23    purposes of today's proceeding, I'm going to keep that
17:54:31    24    in place and we can revisit it at a later date.  Is that
17:54:34    25    acceptable.
```

                    MOOG, INC VS. SKYRYSE, INC, ET AL
17:54:35   2        MS. ANDOH:  Thank you, your Honor.  It is.
17:54:36   3   And I guess at some point maybe we can discuss what the
17:54:40   4   procedures should be for the conferences.  I certainly
17:54:46   5   appreciate and Moog cares about its trade secrets or we
17:54:51   6   wouldn't be in front of you in the first place, but we
17:54:54   7   want to make sure the confidentiality designation isn't
17:55:13   8   being abused.
17:55:13   9        MAGISTRATE JUDGE MCCARTHY:  No, I agree.  I
17:55:15  10   agree.  So, we'll put that on the back burner for right
17:55:18  11   now, but I do have that in mind because there is also,
17:55:22  12   irrespective of the parties' wishes, there is a right of
17:55:25  13   public access, a presumptive right of public access, and
17:55:30  14   we'll weigh those factors at a later date.  But, for
17:55:35  15   present purposes, let's, just to be on the safe side,
17:55:40  16   let's deem this conference today sealed subject to
17:55:45  17   possible unsealing down the road.  Okay.
17:55:49  18        Now, I want to just so, and I believe I did
17:55:52  19   this last week as well, there has been a lot of
17:55:56  20   correspondence submitted to me last week and previously,
17:56:00  21   but I want to just list for the parties' benefit the
17:56:04  22   letters that I received yesterday, and those were
17:56:08  23   directed by me, so I guess I would say, in one sense I
17:56:12  24   appreciate that, and maybe in another sense, I don't,
17:56:15  25   but I asked for it.  So, I received, I think, in just in

|   |   |
|---|---|
| | 1 |

                    MOOG, INC VS. SKYRYSE, INC, ET AL

17:56:20   2   the order I received them, I received first a letter

17:56:27   3   from Rena Andoh dated May 4, which had an attached, I

17:56:41   4   think, three exhibits.  Next, in the order of time, if I

17:56:44   5   recall correctly, I received a letter also dated May 4,

17:56:47   6   from Rory Miller.  And last but not least, then I

17:56:51   7   received two letters from Kate Dominguez at Gibson Dunn,

17:56:57   8   both dated May 4th.  And the top May 4th letter is the

17:57:07   9   issue that grabbed my attention right off the bat, and I

17:57:17   10  want to discuss that before we get too far down the

17:57:20   11  road.  And that is the fact that apparently new counsel

17:57:23   12  or have appeared.  Let's see, we have Mr. Gross and who

17:57:32   13  else is -- I'm sorry, who else is with us?  Mr. Lumish.

17:57:36   14  Welcome to both of you.

17:57:38   15          MR. LUMISH:  Thank you, your Honor.

17:57:39   16          MAGISTRATE JUDGE MCCARTHY:  Are you going

17:57:40   17  to be taking over entirely or are you going to be

17:57:44   18  cocounsel with Gibson Dunn or how is this going to work.

17:57:48   19          MR. LUMISH:  The plan is for us to take over

17:57:51   20  entirely.  We're working to getting up to speed and

17:57:55   21  making that happen as expeditiously as possible.

17:57:59   22          MAGISTRATE JUDGE MCCARTHY:  Okay.  Well, I

17:58:00   23  think, ultimately, the decision on -- well, put it this

17:58:03   24  way.  I don't think the Court has any concern about

17:58:08   25  substitution if that is agreeable to the Plaintiff,

```
            1          MOOG, INC VS. SKYRYSE, INC, ET AL
17:58:10    2   provided that the substitution does not result in
17:58:16    3   further delay of proceedings.  So, I know you'll get up
17:58:22    4   to speed as quickly as you can and -- and I'm not trying
17:58:27    5   to delve into any attorney/client privilege issues, but
17:58:31    6   how long have you been in the case, so to speak.
17:58:35    7          MR. LUMISH:  Roughly 24 hours, your Honor,
17:58:37    8   so we have a bit to go.  We are committed to moving as
17:58:40    9   quickly as we can and cooperating with Moog's counsel
17:58:44   10   and the individual Defendant's counsel to make sure we
17:58:46   11   do not delay things.  We're not asking for delays, we're
17:58:49   12   not asking for new dates.  So, we're not intending in
17:58:52   13   any way to have our appearance be a reason for a delay
17:58:56   14   at this point.
17:58:57   15          MAGISTRATE JUDGE MCCARTHY:  Okay.  I
17:58:58   16   appreciate that.  Now, one of the things that Rena Andoh
17:59:10   17   had proposed in her letter, and I think, given the time
17:59:13   18   it was sent, I don't believe there were any responses
17:59:16   19   from opposing counsel, but a series of proposed
17:59:21   20   deadlines for various steps to be taken, culminating in
17:59:25   21   a preliminary injunction hearing to begin on or about
17:59:32   22   October 13th.  Has anybody had a chance to react to that
17:59:38   23   proposal yet.
17:59:40   24          MR. FLYNN:  Your Honor, Terry Flynn.  Can I
17:59:42   25   state something before we get going, if that is
```

|          |    |                                                            |
|----------|----|------------------------------------------------------------|
|          | 1  | MOOG, INC VS. SKYRYSE, INC, ET AL                          |
| 17:59:45 | 2  | possible?                                                  |
| 17:59:45 | 3  | MAGISTRATE JUDGE MCCARTHY:   Yes.                          |
| 17:59:46 | 4  | MR. FLYNN:  And, obviously, I expect Ms.                  |
| 17:59:48 | 5  | Dominguez and Mr. Lumish will address it, and I            |
| 17:59:53 | 6  | apologize for interjecting, so we have an understanding    |
| 17:59:56 | 7  | with the Court.  With respect to discussions you're       |
| 17:59:58 | 8  | going to hear today, specifically from Ms. Dominguez and   |
| 18:00:01 | 9  | others, that address forensic issues, I just want you to   |
| 18:00:04 | 10 | understand, our law firm and myself have not been privy    |
| 18:00:26 | 11 | in any manner to any of the forensic work, the             |
| 18:00:30 | 12 | investigation, anything whatsoever that has been           |
| 18:00:32 | 13 | identified, you know, conducted to date.  So, if there     |
| 18:00:36 | 14 | are any pleadings, filings, disclosures that may be        |
| 18:00:40 | 15 | based upon what was discussed today have to be amended     |
| 18:00:44 | 16 | in any way whatsoever, we don't have the background,       |
| 18:00:47 | 17 | your Honor, to certify what has been stated or not from    |
| 18:01:04 | 18 | a forensic viewpoint.  We learned, like you, from the      |
| 18:01:10 | 19 | letter there was going to be a change of counsel, which    |
| 18:01:13 | 20 | is totally appropriate for the client to so chose, and     |
| 18:01:28 | 21 | we don't know the circumstances beyond it, your Honor,     |
| 18:01:31 | 22 | and nor do we expect to learn the circumstances, your      |
| 18:01:35 | 23 | Honor, and, obviously, the 17-page letter that was just    |
| 18:01:37 | 24 | served on the 4th that deals with, specifically, with      |
| 18:01:40 | 25 | much forensic information, we did not participate in the   |

1       MOOG, INC VS. SKYRYSE, INC, ET AL

18:01:45    2   preparation of the letter or have any role in it.  And,

18:02:22    3   for that matter, we're not a signatory to the letter.

18:02:24    4   It's not that we're denying anything that has been

18:02:26    5   asserted but I think it's very important as a law firm

18:02:29    6   and a representative of our client to understand that

18:02:32    7   all of the forensic part and the forensic work that has

18:02:36    8   been done today has solely been done by lead counsel and

18:02:39    9   has not been done by Harris Beach and myself.  It's

18:02:43   10   important that you know that, your Honor, and that Judge

18:02:47   11   Vilardo know that, and counsel knows that so they know

18:02:50   12   any documentation they have, they know from which it

18:02:53   13   came.  And Ms. Dominguez can address, obviously, all of

18:02:56   14   the issues, as I'm sure you will raise, and it was

18:03:00   15   important we notify you of that.

18:03:09   16       MAGISTRATE JUDGE MCCARTHY:   Thank you.

18:03:15   17       MS. ANDOH:  Your Honor, if I may be heard on

18:03:17   18   this.  So, your Honor had asked, had sort of referenced,

18:03:21   19   whether Plaintiff's counsel had any issue with the

18:03:23   20   substitution.  We don't.  We agree that Skyryse has the

18:03:27   21   right to have whatever counsel they would like.  We do

18:03:31   22   have some level of concern around the fact that there

18:03:55   23   have been a number of representations that were made by

18:03:58   24   representation from Gibson Dunn with respect to their

18:04:01   25   investigation into the spoliation issues and also into

MOOG, INC VS. SKYRYSE, INC, ET AL

18:04:05  2    the potential misrepresentations that were made on the

18:04:08  3    record about the use of Moog non-public information.

18:04:13  4    And so we just, we just want to make sure we, at least,

18:04:18  5    air on the record, that we have some level of concern

18:04:22  6    around Gibson Dunn withdrawing if there is not going to

18:04:26  7    be continuity in terms of the remedying of these

18:04:31  8    misrepresentations on the record.  There are a number of

18:04:34  9    them that we have concerns around.  We've outlined them

18:04:36  10   in our letter.  I'm also happy to list them.  But, you

18:04:39  11   know, we need some level of confidence that what we're

18:04:43  12   not going to get is new lead counsel stepping in with

18:04:47  13   local counsel, who have not been involved in the

18:04:49  14   investigation and saying, well, we don't know anything

18:04:51  15   about it.

18:04:52  16            MS. DOMINGUEZ:  Your Honor, if I may.

18:04:54  17            MAGISTRATE JUDGE MCCARTHY:   Go ahead, Kate.

18:04:56  18            MS. DOMINGUEZ:  So, first of all, I would

18:04:57  19   like to say, some of what was said relates to what Mr.

18:05:03  20   Krevitt presented at the conference last week, and I

18:05:04  21   would like to say before we get started, he would have

18:05:07  22   liked to be here, he had a family issue which required

18:05:11  23   him to fly back from Europe today, so that is the reason

18:05:14  24   he is not here today.  I would like to speak, because

18:05:19  25   Ms. Andoh made references to purported

MOOG0020329

MOOG, INC VS. SKYRYSE, INC, ET AL

18:05:21  2    misrepresentations.  We take this so seriously.  Gibson

18:05:28  3    Dunn takes our role, as officers of the court, as

18:05:32  4    seriously as we can take them.  And so I want to, first

18:05:36  5    of all, correct any statement that was made at any point

18:05:41  6    in a filing to the Court or in a letter to Moog or any

18:05:46  7    of the other parties was a statement that we believed to

18:05:53  8    be true at the time.  I think we said in our letters

18:05:55  9    that there are statements that in light of what we now

18:06:00  10   know, we wouldn't have made those statements if we had

18:06:03  11   the knowledge we have now.  So, for instance, Gibson

18:06:07  12   Dunn felt that it was incumbent upon us to withdraw the

18:06:12  13   12(b)(6) motion, we did that.  And to the extent that

18:06:16  14   there are other statements that, in light of, you know,

18:06:20  15   further investigation, require correction, those will be

18:06:24  16   corrected.  And we informed Moog that we would do that.

18:06:29  17   I just want to be clear, though, that at no point in

18:06:32  18   time was a representation made or a statement made to

18:06:37  19   the Court that we did not believe to be true.  And I

18:06:40  20   think that that is an important distinction to be drawn.

18:06:44  21   As to the investigation, we are, of course, Gibson Dunn

18:06:50  22   has been the one leading the investigation, as your

18:06:54  23   Honor knows, and as Mr. Krevitt said when we approached

18:06:59  24   Moog last, a week ago Sunday, and then the Court on

18:07:03  25   Monday, we take these issues incredibly seriously, and

```
            1              MOOG, INC VS. SKYRYSE, INC, ET AL
18:07:06    2     so seriously that wanted to come early to the Court, so
18:07:11    3     we approached Moog and we approached the Court while an
18:07:15    4     investigation was pending and remains pending.  And so I
18:07:19    5     want to just be clear that conclusions are not drawn
18:07:24    6     because the investigation is not over.  And the bulk of
18:07:30    7     what is being done now is in the hands of the forensic
18:07:36    8     investigator, FTI.  That firm will remain in place, and
18:07:39    9     we believe and have faith that Latham and Watkins will
18:07:45   10     be fully up to speed and capable of taking over that
18:07:49   11     investigation, so that there should be, we believe, no
18:07:54   12     prejudice or delay to any of the other parties by virtue
18:07:59   13     of the substitution of counsel as to any historical
18:08:02   14     matter.  I just want to be very clear, that Gibson Dunn
18:08:07   15     very much stands by all of the filings in terms of the
18:08:11   16     knowledge that we had at the time we made them.  And,
18:08:13   17     again, to the extent that something needed to be
18:08:15   18     withdrawn, we withdrew it.  I understand there are some
18:08:18   19     additional, for instance, as to the motion, as to the
18:08:22   20     venue motion, there may be -- current counsel may
18:08:25   21     consider amending that motion, and so there may be
18:08:29   22     future filings that are either amended or corrective,
18:08:34   23     but, as to anything that was done in the past, those
18:08:37   24     statements were made in good faith at the time they were
18:08:39   25     filed.
```

MOOG0020331

1          MOOG, INC VS. SKYRYSE, INC, ET AL

18:08:40    2          MAGISTRATE JUDGE MCCARTHY:    Well,

18:08:40    3    appreciate that.  I think, Ms. Andoh, and not to put

18:08:44    4    words in your mouth, but I think Ms. Andoh's concern is

18:08:48    5    that merely, if, for example, there were to be a change

18:08:51    6    of position and walking back on what was said last week,

18:08:59    7    at least there would be the opportunity to explore the

18:09:01    8    reason for the change.  I'm not saying that that will or

18:09:05    9    will not occur.  Obviously, I understand from last week,

18:09:07   10    that the investigation was ongoing and is still ongoing,

18:09:12   11    so, the only caveat I would have is that if -- if there

18:09:19   12    is going to be some type of change of position, that

18:09:23   13    there may be a requirement for an explanation that it

18:09:27   14    may or may not involve your firm.  Obviously, I'm not,

18:09:31   15    you know, we're going to be sensitive to impinging on

18:09:36   16    any attorney/client privilege, the information, but I

18:09:39   17    think we just have to abide the event right now and see

18:09:42   18    how that goes.  But, in terms of what was represented to

18:09:46   19    me last week by your firm, appreciate the fact that you

18:09:50   20    came forward with that as soon as you became aware of

18:09:55   21    it, and we'll just sort through as we go.

18:09:58   22          Now, the reason I ask, back to the question

18:10:07   23    about the timeline that counsel, Ms. Andoh on behalf of

18:10:12   24    Moog, has now proposed, is that, that's putting the

18:10:17   25    preliminary injunction hearing out until October.  And I

```
            1              MOOG, INC VS. SKYRYSE, INC, ET AL
18:10:21    2   recognize, also, from last week, and also from some of
18:10:25    3   the filings that were made yesterday, that the venue
18:10:29    4   motions -- well, certainly as to the individual
18:10:35    5   Defendants, the venue motion is still alive, and I
18:10:38    6   believe there was a statement that the venue motion on
18:10:41    7   behalf of Skyryse might be amended in some fashion.  As
18:10:48    8   you all know, I have a non-dispositive referral from
18:10:53    9   District Judge Vilardo, so, the motion, the 12(b)(6)
18:10:59   10   motion, which I believe was withdrawn by Skyryse, but it
18:11:04   11   was -- that motion was joined in by the individual
18:11:08   12   Defendants, that motion, as well as the venue motions,
18:11:15   13   at least, as things currently stand, will be addressed
18:11:19   14   by Judge Vilardo.  And one of the reasons -- Will Hayes
18:11:25   15   is listening in today and will correct me if I'm wrong,
18:11:28   16   but it's my understanding that you and Judge Vilardo
18:11:32   17   will be scheduling a proceeding with counsel sometime
18:11:36   18   next week to talk about those motions and the timing of
18:11:41   19   them.  Is that correct?  Go ahead, Will.  You there,
18:11:56   20   Will?  Well, I think if Will were with us, he would say,
18:12:05   21   yes, that is correct.  That is my understanding.
18:12:07   22              Will, you're still showing here.  Can you
18:12:10   23   speak up?
18:12:11   24              MR. HAYES:  Can you hear me now?
18:12:13   25              MAGISTRATE JUDGE MCCARTHY:   I can hear you
```

```
             1              MOOG, INC VS. SKYRYSE, INC, ET AL
18:12:14     2    now.
18:12:15     3              MR. HAYES:  Okay.  Yes, that is correct.
18:12:17     4              MAGISTRATE JUDGE MCCARTHY:   Okay.  Have you
18:12:19     5    set that yet or is that going to be subject to further
18:12:22     6    communication with counsel, correct.
18:12:25     7              MR. HAYES:  The scheduling?
18:12:26     8              MAGISTRATE JUDGE MCCARTHY:   Right.
18:12:31     9              MR. HAYES:  Tentatively, it will be Tuesday
18:12:33    10    afternoon.  I'll circle up with new counsel for Skyryse
18:12:37    11    after this so I can make sure the time and date works
18:12:40    12    for them as well.
18:12:41    13              MAGISTRATE JUDGE MCCARTHY:   Okay, thanks.
18:12:42    14    But then, counsel, back to my original question about, I
18:12:50    15    can't speak to how or when the motion to dismiss or the
18:12:54    16    venue motion will be addressed or decided and depending
18:12:58    17    on the outcome of that, the case may continue in this
18:13:01    18    Court or it may be moved to California, I don't know,
18:13:07    19    but the proposal that if the case stays in this Court,
18:13:14    20    the hearing on the preliminary injunction motion would
18:13:17    21    be sometime in October.  What is counsels' reaction to
18:13:22    22    that.
18:13:28    23              MS. DOMINGUEZ:  Your Honor, if I may, for
18:13:31    24    Skyryse, I believe that Skyryse believes that, in broad
18:13:35    25    strokes, the schedule is very reasonable and workable.
```

                                                    MOOG0020334

MOOG, INC VS. SKYRYSE, INC, ET AL

The one kind of caveat I would put to that, the schedule does call for a completion of document production by May 19th, and I believe that can substantially be met.  I have no expectation that there would be no problem with substantial completion by that date, but I have concerns about the ongoing nature of the investigation, the volume of information that is being uncovered, there could be additional productions after that and I wouldn't want there be to an issue, and what it means for, to have a complete document production on May the 19th.

MAGISTRATE JUDGE MCCARTHY:  Okay.  Anybody else want to weigh in on that.

MS. ANDOH:  Your Honor, I think the only point I would make is that document production was supposed to be completed on, I believe it was April 27th.  And the only reason why it didn't happen is because there was a pending dispute over the protective order.  So, you know, the parties should have been prepared to produce all of their materials by the end of last month, which is why we're trying very hard to keep this on track.  I'll also just note that your Honor obviously doesn't need to be told this again, but just for the record, the original stipulated TRO had a

MOOG0020335

MOOG, INC VS. SKYRYSE, INC, ET AL

18:16:18  2   hearing date this week.  Sorry, next week.  We then

18:16:24  3   shifted that hearing date back to the second week of

18:16:27  4   July based on the expedited discovery stipulation that

18:16:31  5   was filed with the Court a week later.  We're now

18:16:33  6   looking at having to move the hearing all the way into

18:16:36  7   October.  This case was filed in March.  It's a very

18:16:39  8   long timeline for a preliminary injunction, so the

18:16:43  9   Plaintiff is eager to move things forward and thinks

18:16:47  10  that, while there is always the possibility of

18:16:50  11  additional documents may be identified and produced,

18:16:53  12  that it is reasonable that the documents that should

18:16:55  13  have been produced on April 27th, be produced on May

18:16:59  14  19th subject to the resolution on the protective order.

18:17:02  15             MAGISTRATE JUDGE MCCARTHY:  And just

18:17:03  16  correct me if I'm wrong, but you do have injunctive

18:17:06  17  relief in place already under the docket No. 25.

18:17:13  18             MS. ANDOH:  We do.  So, I mean, and I

18:17:17  19  acknowledge that fully.  I think, based on the

18:17:19  20  disclosures that we've heard from Skyryse, we may be

18:17:24  21  modifying that preliminary injunctive relief that we're

18:17:27  22  seeking, which, I suppose, wouldn't be much of a

18:17:30  23  surprise to your Honor.  But we do have the injunction,

18:17:33  24  the TRO in place.  But I think the concern that Moog has

18:17:36  25  is that we, based on the disclosures that we received

MOOG0020336

```
                    1              MOOG, INC VS. SKYRYSE, INC, ET AL
18:17:40            2    from Skyryse, our understanding that that has been
18:17:44            3    violated.  And so it causes -- it causes pause for us in
18:17:49            4    having a protracted continued discovery process without
18:17:54            5    judicial intervention.  But, I think that is an issue
18:17:57            6    that, based on your Honor's admonitions, that your
18:18:05            7    referral is non-dispositive, it's unclear to us whether
18:18:10            8    the issue of violations of the March 11th order belong
18:18:17            9    before your Honor or belong before Judge Vilardo.
18:18:20           10              MAGISTRATE JUDGE MCCARTHY:  Well, I'll give
18:18:21           11    you an answer and it's not to shirk any work, but it's
18:18:25           12    my view, it's his order, so any claim of violations, I
18:18:28           13    think, should be taken up with him.  You know, I
18:18:32           14    indicated when we spoke last week, I believe, that you
18:18:38           15    know, the two track way of dealing with things, in most
18:18:45           16    cases, works quite well where the magistrate judge is
18:18:48           17    handling non-dispositive issues, such as discovery
18:18:52           18    disputes, and the district judge is handling dispositive
18:18:57           19    issues.  In a case like this, it presents some unique
18:19:04           20    issues because there could be a lot of overlap, but, for
18:19:10           21    now, at least, unless and until I'm advised otherwise,
18:19:15           22    that is the way we're going to proceed.
18:19:17           23              Rory Miller, I haven't heard from you on the
18:19:22           24    proposed schedule.  I know you now represent two
18:19:26           25    individuals who have been terminated from employment by
```

MOOG0020337

```
 1            MOOG, INC VS. SKYRYSE, INC, ET AL
 2   Skyryse, and, I take it, are not currently employed, is
 3   that right?  I'm not trying to pry, but I'm just trying
 4   to get a handle on where things currently stand.
 5            MR. MILLER:  No, your Honor, that's correct.
 6   They have not secured alternative employment in the last
 7   10 to 12 days.  And regarding the schedule as proposed
 8   by Moog, in large part, we are amenable to it.  We think
 9   there are a couple of details that are not necessary to
10   go into at this call, but, you know, the hearing date
11   seems fine.  We think that, perhaps, 14 days after the
12   close of discovery for opposition within three weeks for
13   reply after that maybe is not the best way to space
14   those two, but, again, that doesn't seem like something
15   we need to discuss with your Honor.  That seems like
16   something we can easily work out ourselves.  I do want
17   to note, there was a reference by Ms. Andoh to possibly
18   modifying the relief being sought in the preliminary
19   injunction.  I don't have any problem with that, but,
20   you know, I think that we should probably, as we talk
21   about what Skyryse is going to be ordered to disclose,
22   keep in mind, the deadline for it, and sort of say
23   finalizing the PI so we all know what we're doing
24   discovery on as well as what I'm opposing.
25            MAGISTRATE JUDGE MCCARTHY:   Yeah.  I think
```

|    | MOOG, INC VS. SKYRYSE, INC, ET AL |
|---|---|
| 18:21:01 2 | that is fair.  Let me get back to -- well, all right. |
| 18:21:07 3 | Does anybody else want to weigh in in general on the |
| 18:21:10 4 | dates that were proposed by Ms. Andoh?  Okay. |
| 18:21:24 5 | MR. MILLER:  This is Rory Miller again.  I |
| 18:21:26 6 | should add one more thing.  The May 19th completion of |
| 18:21:54 7 | productions is fine with the individual Plaintiffs -- |
| 18:22:02 8 | Defendants, assuming we come to a landing on whatever |
| 18:22:04 9 | the protective order is so we know what it is they are |
| 18:22:08 10 | doing. |
| 18:22:09 11 | MAGISTRATE JUDGE MCCARTHY:  We're going to |
| 18:22:10 12 | get to that in a few moments.  Because, obviously, that |
| 18:22:12 13 | is an issue that, we've talked about it a couple of |
| 18:22:16 14 | times, there has been a lot of correspondence on it, so |
| 18:22:20 15 | I do want to drill down on that in a short, in a short |
| 18:22:26 16 | while.  And then, again, in terms of in which forum this |
| 18:22:35 17 | case will be resolved in, everything that I'm saying |
| 18:22:39 18 | today and everything we're talking about in front of me |
| 18:22:42 19 | is on the assumption that the venue is going to remain |
| 18:22:48 20 | in this Court.  If that changes, obviously, that is |
| 18:22:51 21 | something that I have no control over. |
| 18:22:55 22 | Let's talk, for a few minutes about the |
| 18:23:00 23 | protective order.  My understanding, and, bear in mind, |
| 18:23:06 24 | folks, that, you know, I saw reference to one of the May |
| 18:23:10 25 | 4th letters being sent from one side to the other, |

CONFIDENTIAL

```
        1              MOOG, INC VS. SKYRYSE, INC, ET AL
18:23:15  2   something like 1:29 a.m., and good for all of you, but I
18:23:21  3   tend to sleep around that time.  So I've tried my best
18:23:26  4   to study what came in yesterday in as much detail as I
18:23:32  5   can.  And try and prioritize what the various issues are
18:23:37  6   that need to be discussed, but, I'll say in advance, I'm
18:23:40  7   probably missing something, so, I encourage all of you
18:23:44  8   to jump in at any point and correct me where I'm wrong
18:23:51  9   and I will certainly take no offense.  But, on the
18:23:55 10   protective order, it seems to me that the major, perhaps
18:24:01 11   the only area of dispute, is attorney's-eyes-only, and
18:24:08 12   how that should apply to the individual Defendants,
18:24:13 13   whether they can be absolutely precluded from
18:24:19 14   attorney's-eyes-only documentation or whether they
18:24:23 15   should be allowed to review that in the presence of
18:24:27 16   their attorneys, but not to make any copies of it.  Is
18:24:27 17   that --
18:24:33 18              MS. ANDOH:  Your Honor, actually, the
18:24:34 19   dispute is with Skyryse with respect to their employees.
18:24:39 20   We have engaged in extensive meet and confers with the
18:24:44 21   individual Defendants' counsel, and we, with respect to
18:24:48 22   the individual Defendants, particularly given that
18:24:51 23   they've now been fired, even though it is certainly not
18:24:54 24   Moog's ideal situation to happen to be able to view
18:24:57 25   material that they took from us, we understand that they
```

```
              1              MOOG, INC VS. SKYRYSE, INC, ET AL
18:25:01      2    need to be able to prepare a defense, and that they've
18:25:04      3    got a need to have some ability to help guide their
18:25:08      4    counsel, and so we added a provision to be able to see
18:25:14      5    materials that they authored or that we sent and
18:25:19      6    received in the presence of their counsel and they are
18:25:22      7    laid out in the draft order we submitted.  The big
18:25:26      8    dispute we have outstanding is with Skyryse because we
18:25:31      9    don't believe their employees should be able to view
18:25:35     10    materials, even though they formally sent and received
18:25:38     11    them when they were formerly at Moog.  They have hired
18:25:42     12    20 former Moog employees.  I don't know how many are
18:25:45     13    currently out on administrative leave.  A number are out
18:25:49     14    on administrative leave because they -- because either
18:25:54     15    because of spoliation issues and/or there were search
18:25:58     16    term hits on their computers for Moog information.  So,
18:26:02     17    these are people that have been placed on leave by
18:26:05     18    Skyryse for, potentially, improperly accessing Moog
18:26:11     19    information or otherwise not complying with the
18:26:34     20    retention requirements, and those are the people that
18:26:38     21    they want to be excepted from the AEO provision to be
18:26:41     22    able to review our materials under the rubric that their
18:26:45     23    input is needed in order to prepare their defense.  To
18:26:48     24    put this in context, Mr. Krevitt, in the previous
18:26:52     25    conferences, referenced that Skyryse has 71 employees,
```

                                                        MOOG0020341

| | | |
|---|---|---|
| | 1 | MOOG, INC VS. SKYRYSE, INC, ET AL |
| 18:26:57 | 2 | of them, 20 of them are former Moog employees.  So, |
| 18:27:22 | 3 | allowing all former Moog employees to view their |
| 18:27:27 | 4 | materials, essentially allows a quarter of Skyryse's |
| 18:27:30 | 5 | workforce to basically violate the AEO provision.  It |
| 18:27:34 | 6 | essentially makes the AEO provision not an AEO |
| 18:27:39 | 7 | provision, that's for sure.  They also won't tell us, at |
| 18:27:42 | 8 | least to date, they have not told us who in the Moog |
| 18:27:46 | 9 | employees have been placed on administrative leave and |
| 18:27:49 | 10 | for what reasons they have been placed on administrative |
| 18:27:52 | 11 | leave, so we can't have a discussion with them around |
| 18:28:25 | 12 | whether there would be some subset or not that we would |
| 18:28:29 | 13 | agree to.  Although, given the allegations in the case, |
| 18:28:31 | 14 | I don't think we would under any circumstance.  You |
| 18:28:34 | 15 | know, we -- we just don't see that it's necessary. |
| 18:28:40 | 16 | There is a carve out in there that allows for one of |
| 18:28:43 | 17 | their in-house lawyers to view AEO material.  That same |
| 18:28:50 | 18 | carve out gives Moog one in-house lawyer that can review |
| 18:28:54 | 19 | AEO information.  That is an equal playing field.  If |
| 18:28:59 | 20 | Skyryse's version of the AEO provision were put in |
| 18:29:03 | 21 | place, it would be an incredibly prejudicial provision |
| 18:29:07 | 22 | for Moog because Moog does not have 20 former Skyryse |
| 18:29:12 | 23 | employees working for it that would be in a position to |
| 18:29:15 | 24 | view the materials that are at issue in this case.  And |
| 18:29:17 | 25 | it also would really render any ability for Moog to keep |

MOOG0020342

```
              1            MOOG, INC VS. SKYRYSE, INC, ET AL
18:29:22      2   its confidential information confidential in this case.
18:29:25      3   It would make it functionally extraordinarily difficult.
18:29:29      4   It's just our view is this is just not what a provision
18:29:33      5   is designed to be.
18:29:34      6            MAGISTRATE JUDGE MCCARTHY:   Who wishes to
18:29:35      7   be heard to the contrary.
18:29:37      8            MS. DOMINGUEZ:  Your Honor, if I could, Kate
18:29:39      9   Dominguez for Skyryse.  So, I want to address at the
18:29:42     10   outset something Ms. Andoh said about administrative
18:29:46     11   leave that is not correct, and it's incredibly important
18:29:50     12   that the record be clear.  We, at Gibson Dunn and
18:29:55     13   Skyryse, in coordination, were prophylactic in putting
18:30:02     14   individuals on administrative leave.  If, for instance,
18:30:05     15   they had hits against Moog's filing or hash value list
18:30:11     16   and indications of deletions, regardless of whether
18:30:15     17   there was knowledge at this point or indications that
18:30:19     18   the deletions were of relevant information, and as to
18:30:23     19   the file list, I'll just, I know Mr. Krevitt spoke to
18:30:26     20   this in the last hearing, your Honor, but it's really
18:30:29     21   important to understand, that file list is so over
18:30:31     22   inclusive that it includes common application files that
18:30:35     23   anyone on this -- in this conference might find on their
18:30:39     24   computer.  So if you ran that list against any of the
18:30:41     25   attendees of this conference, you may very well find
```

MOOG0020343

|          |    |                                                          |
|----------|----|----------------------------------------------------------|
|          | 1  |          MOOG, INC VS. SKYRYSE, INC, ET AL               |
| 18:30:46 | 2  | hits, and that may be just because we use all of the     |
| 18:30:49 | 3  | same common applications.  So, we're dealing with a      |
| 18:30:52 | 4  | situation where we sought a need to take immediate       |
| 18:30:55 | 5  | action.  We didn't know what situation we had on our     |
| 18:30:58 | 6  | hands.  We knew it would require investigation.  And so  |
| 18:31:01 | 7  | we took what we thought was fairly extreme prophylactic  |
| 18:31:07 | 8  | action to put individuals on leave.  As the             |
| 18:31:10 | 9  | investigation proceeds, many of those people may turn    |
| 18:31:13 | 10 | out to be completely innocent of any wrongdoing and I    |
| 18:31:17 | 11 | just, I want to make sure it's clear.  Because what Ms.  |
| 18:31:20 | 12 | Andoh said indicated that we already kind of know these  |
| 18:31:24 | 13 | are bad guys because they are on administrative leave    |
| 18:31:27 | 14 | and that is exactly what we're trying to avoid in our    |
| 18:31:30 | 15 | explanation of the prophylactic action we were taking.   |
| 18:31:44 | 16 | Sorry, my light just went out.  And to make it clear     |
| 18:31:47 | 17 | that the mere fact of someone having been put on leave   |
| 18:31:51 | 18 | is not the conclusion of wrongdoing.  So that is just    |
| 18:31:53 | 19 | the first thing I wanted to clarify for the record.      |
| 18:31:56 | 20 |          MAGISTRATE JUDGE MCCARTHY:   Well, just,        |
| 18:31:58 | 21 | along those lines, I didn't take it, when that statement |
| 18:32:02 | 22 | was made last week, I did not take that as being an      |
| 18:32:06 | 23 | indication of necessarily an indication of              |
| 18:32:09 | 24 | acknowledgement of wrong doing.  Maybe it is, maybe it   |
| 18:32:13 | 25 | isn't, but I took it in the sense that it was offered    |

CONFIDENTIAL

```
                              MOOG, INC VS. SKYRYSE, INC, ET AL
18:32:16    2    mainly an attempt to err on the side of caution.  So, if
18:32:24    3    your concern is that I or Judge Vilardo would already
18:32:28    4    draw a conclusion that the fact that somebody is put on
18:32:34    5    administrative leave means they must have done something
18:32:37    6    wrong, we're not drawing that inference at this time.
18:32:43    7    Maybe down the road, maybe not.
18:32:45    8                MS. DOMINGUEZ:  Thank you, your Honor.  And
18:32:46    9    if I may address the other part of what Ms. Andoh spoke
18:32:50   10    to with respect to the AEO provision.
18:32:52   11                MAGISTRATE JUDGE MCCARTHY:   Right.
18:32:54   12                MS. DOMINGUEZ:  So, our issue is we are
18:32:58   13    looking for a very limited provision that would allow
18:33:04   14    authors and recipients, those who were already privy to
18:33:08   15    the information, so senders, authors, recipients of
18:33:14   16    information that Moog has marked as "highly
18:33:16   17    confidential" or "confidential," that those individuals
18:33:19   18    be allowed, solely in the presence of counsel and not to
18:33:23   19    retain copies or to retain notes or anything like that,
18:33:27   20    but to be able to view those documents in the presence
18:33:30   21    of counsel for the purposes of Skyryse's defense.  And I
18:33:38   22    think the -- the idea that there is risk from that
18:33:42   23    because somehow these individuals would be, you know,
18:33:45   24    potentially misusing the information, is just totally
18:33:48   25    inconsistent with the controls that have been suggested
```

MOOG0020345

```
         1              MOOG, INC VS. SKYRYSE, INC, ET AL
18:33:52 2    and would be put in place around the context in which
18:33:55 3    the documents would be shown.  And then, further, to
18:33:59 4    that, there would be no harm in that context from the
18:34:02 5    individuals viewing the documents because these are
18:34:04 6    individuals who would have already seen the documents,
18:34:07 7    either because they were authors, recipients or senders.
18:34:12 8    And it is highly relevant, although, so one is, the
18:34:16 9    first point is there is no prejudice to Moog there under
18:34:20 10   the circumstances and controls that would be in place.
18:34:24 11   There is, on the other hand, prejudice to Skyryse in the
18:34:29 12   defense of this action if it's not allowed to show
18:34:32 13   individuals who have already seen the information.
18:34:36 14   There may be important context that will be missed, and
18:34:40 15   could be critical to the defense, that a lawyer would
18:34:43 16   not know without asking the individual about it.  And
18:34:46 17   that kind of context is difficult or maybe impossible to
18:34:51 18   get if the individual can't actually see the document
18:34:53 19   that we're talking about.  And I would just make one
18:34:56 20   other note, which is, we did -- we understand that for
18:35:00 21   issues that are taken up subject to or close to this
18:35:06 22   informal letter briefing process, that your Honor does
18:35:09 23   engage in a formal briefing process if issues are still
18:35:12 24   disputed.  So, we do understand that a decision may be
18:35:16 25   down the road on the ultimate dispute.  In the meantime,
```

```
                        MOOG, INC VS. SKYRYSE, INC, ET AL
18:35:18   2   we did e-mail counsel for Moog and let them know that,
18:35:22   3   pending resolution of this dispute, we are perfectly
18:35:25   4   amenable to abiding by the draft, the more restrictive
18:35:31   5   draft order that Moog has proposed.  We said that we
18:35:54   6   would, I produce and designate, subject to that draft,
14:22:21   7   and abide by the further restrictions in that draft
14:22:26   8   pending the Court's resolution of this dispute
14:22:28   9              MAGISTRATE JUDGE MCCARTHY:   Okay.
14:22:30  10              MS. ANDOH:  Your Honor, if I could be heard.
14:22:31  11              MAGISTRATE JUDGE MCCARTHY:   Yes.  Go ahead.
14:22:32  12              MS. ANDOH:  Just two points.  One is, you
14:22:39  13   know, Gibson Dunn's disclosures, to date, with respect
14:22:43  14   to what we know has happened with information is
14:22:46  15   incredibly concerning with respect to these folks being
14:22:52  16   able to view those documents in the presence of counsel.
14:22:55  17   The need for the 1:30 a.m. letter from Gibson --
14:23:00  18              MAGISTRATE JUDGE MCCARTHY:   That is not by
14:23:01  19   way of criticism.
14:23:03  20              MS. ANDOH:  No, no, no.  I also have
14:23:05  21   tremendous respect for the fact that they stuck it out
14:23:10  22   to get the letter out the door.  But, pointing to page
14:23:13  23   two of the letter, it says, so far, it appears -- this
14:23:15  24   is the middle of page two of the letter, "So far, it
14:23:17  25   appears that Moog information may have been accessed on
```

```
            1              MOOG, INC VS. SKYRYSE, INC, ET AL
14:23:23    2    Skyryse issued laptops primarily via personal USB
14:24:50    3    devices held by Pilkington or Kim that we believe
14:24:54    4    contained Moog information, and which were inserted into
14:24:57    5    the Skyryse issued laptops of certain other Skyryse
14:25:06    6    employees.  Network resources to which Mr. Pick
14:25:38    7    Pilkington uploaded certain files, which Moog may claim
14:25:42    8    as its own or may reflect information that Moog may
14:26:25    9    claim as its own.  And, three, what Mr. Pilkington and
14:26:30   10    Ms. Kim's accessing of what may be Moog files."  The
14:26:49   11    point I'm trying to make by reading this provision out
14:26:52   12    is to say that the value of looking at Moog's
14:26:55   13    information is looking at it, it's not necessarily
14:26:57   14    copying and pasting it for use, although that may have
14:27:00   15    also occurred.  A lot of the value of the material, of
14:27:04   16    the 1.4 million files that Ms. Kim and Mr. Pilkington
14:27:08   17    downloaded is essentially a reference library.  It's
14:27:12   18    like looking at Westlaw head notes to the idea they
14:27:16   19    would be given access to continue to review that
14:27:19   20    material even in the presence of counsel does not negate
14:27:49   21    the value that is found in them in being able to view
14:27:54   22    them.  I think that is a point that is very important to
14:27:58   23    make, because there is severe prejudice to us in them
14:28:01   24    being able to continue to reference and review those
14:28:06   25    materials.  And when Ms. Dominguez talks about how some
```

|       | 1  |           MOOG, INC VS. SKYRYSE, INC, ET AL |

MOOG, INC VS. SKYRYSE, INC, ET AL

14:28:09  2  of the search terms are highly generic, I think it's a

14:28:13  3  fair inference to make, your Honor, that these employees

14:28:16  4  were not placed on leave because Word, the Microsoft

14:28:20  5  application, Word application, hit on their documents.

14:28:24  6  You know, pages four and five of Gibson Dunn's letter

14:28:28  7  lists the search terms that were run against these

14:28:31  8  computers, and it's far more than generic file names.

14:28:34  9  It includes the name "Moog" with a wild card on it.  And

14:28:38  10  it also includes 32 search terms that were proposed by

14:28:43  11  Moog's counsel based on very specific information that

14:28:47  12  we know tends to be highly unique to Moog's code.  And

14:28:51  13  they have not disclosed, at least not in full, the

14:28:56  14  number of hits that each of these search terms has

14:29:00  15  resulted in.  And so, you know, I just want to be really

14:29:04  16  clear, it's not as innocuous as Ms. Dominguez may be

14:29:09  17  inferring that it is.  I think, at its core, the concern

14:29:14  18  here is it's highly asymmetrical.  I mean, none of our

14:29:18  19  client representatives can be looking at any of their

14:29:51  20  stuff that is designated AEO when we already supplied

14:29:56  21  concerns for the Court that the AEO designation is being

14:30:00  22  overused.  So this idea that they are going to be able

14:30:34  23  to have one quarter of their work force review our

14:30:38  24  material when not a single one of our employees, who are

14:30:48  25  skilled or knowledgeable about source code would be

1          MOOG, INC VS. SKYRYSE, INC, ET AL

14:30:54  2   allowed to, and about the function of Moog's material,

14:30:57  3   would be able to review AEO materials is extremely

14:31:05  4   prejudicial.

14:31:06  5          MAGISTRATE JUDGE MCCARTHY:  Okay.  A couple

14:31:07  6   of things.  I appreciate, pending a ruling on this,

14:31:13  7   Skyryse will abide by the more conservative approach.  I

14:31:18  8   appreciate that.  And that raises a question in my mind

14:31:21  9   at which I'll discuss in a few minutes about just,

14:31:24  10  logistically, how we're going to address those issues

14:31:27  11  going forward, whether we'll just go immediately to

14:31:31  12  motion practice and whether we'll continue with a

14:31:34  13  correspondence and meeting like we do.

14:31:37  14          Let me ask Ms. Andoh.  You already have, by

14:31:43  15  way of the TRO, the stipulation and proposed order,

14:31:46  16  docket number 25, which Judge Vilardo approved, docket

14:31:51  17  No. 28.  You have a prohibition, a court order

14:31:57  18  prohibiting defendant from using, in any way, any

14:32:02  19  non-public Moog information.  I recognize that you may

14:32:07  20  have some level of concern about whether or not they

14:32:10  21  will abide by that, but I think that is true with any

14:32:14  22  type of court order.  And what troubles me is, and I'll

14:32:17  23  come back to it in a minute, the hardship here, you're

14:32:22  24  talking about in terms of your own employees as well,

14:32:24  25  but how can -- how can I be sure, or Judge Vilardo, that

```
              1              MOOG, INC VS. SKYRYSE, INC, ET AL
14:32:33      2    an attorney looking at something might not miss some
14:32:39      3    significance to a particular document that only, only
14:32:43      4    the employee would perceive.  It does seem to me right
14:32:50      5    now that the better approach is to allow them to look at
14:32:54      6    the documents that they authored or is shown as copied
14:32:59      7    on in the presence of counsel, not to copy, not to use.
14:33:02      8    You've already got a prohibition against use.  And, but,
14:33:06      9    that that should apply both ways then.  That if Skyryse
14:33:16     10    employees are going to be allowed that access, then,
14:33:20     11    then Moog should as well.
14:33:23     12              MS. ANDOH:  Your Honor --
14:33:24     13              MAGISTRATE JUDGE MCCARTHY:   What is wrong
14:33:24     14    with that.
14:33:26     15              MS. ANDOH:  So, I think a few things.
14:33:29     16    First, the concern we have about them abiding by, first
14:33:32     17    of all, the preliminary injunction or, sorry, the
14:33:35     18    stipulated TRO that is currently in place actually
14:33:39     19    restricts them from viewing the material, so this would
14:33:42     20    be an end run around that order.  And I also point out
14:33:46     21    that, and, again, I understand that this is probably an
14:33:49     22    issue for Judge Vilardo, we know they violated that
14:33:51     23    order already.  So it is particularly concerning to us
14:33:54     24    that we would then continue to rely on good faith in
14:33:58     25    abiding by that order when they are being allowed to
```

```
                    MOOG, INC VS. SKYRYSE, INC, ET AL
14:34:01   2    review our material.  I also think that, you know,
14:34:04   3    frankly, they can do the exact same thing that Moog is
14:34:07   4    having to do as a result of the AEO provision being put
14:34:11   5    in place and our software engineers not being able to
14:34:14   6    view Skyryse material, which is hire and independent
14:35:09   7    source code expert, educate them and send them in to do
14:35:35   8    the review.  You know, we would like for our software
14:35:38   9    engineers, who really understand this stuff, to be able
14:35:40  10    to view Skyryse AEO materials, too.  Of course, it's a
14:35:44  11    huge advantage, but the whole point of Skyryse refusing
14:35:47  12    to allow our folks to view it is the same issue we have
14:35:53  13    with their folks reviewing our stuff.  The fact that
14:37:13  14    they do understand it and it's competitive and sensitive
14:37:23  15    information that they can use in a context other than
14:37:26  16    this litigation, even if they are only viewing it in the
14:37:30  17    presence of counsel.
14:37:30  18             MAGISTRATE JUDGE MCCARTHY:   Well, okay.
14:37:32  19    Ms. Andoh, I think you just gave me a cheap and easy
14:37:36  20    out, which I may or may not avail myself of, but you
14:37:42  21    pointed out, which I had overlooked, that that is a
14:37:45  22    provision of Judge Vilardo's order, so maybe he is the
14:37:48  23    one that has to address this.  But I will just say, my
14:37:53  24    reaction to things is, and I'll hear again from Ms.
14:37:57  25    Dominguez or whoever wants to speak, that whatever level
```

MOOG, INC VS. SKYRYSE, INC, ET AL

of protection is in place, should be bilateral, so, both
sides should have the same opportunity to view or not
view information.  But, again, as I sit here today,
given the level of protections that are in place, I
don't see a real problem with an employee being allowed
to view a document which he or she either created or is
copied on in presence of counsel to be utilized either
way.  That, of course, would require a modification to
the stipulation.  But that then takes me back to the
logistical issue that I just raised, which is in a lot
of cases I've had good success with, the procedure that
we're implementing right now, which is before anybody
resorts to motion practice, we have exchange of
correspondence and then we talk about things and we see
if we can agree.  The problem in this case is, and I
don't want to invite more motion practice, but everybody
is operating under the assumption, as am I, that I can't
issue any orders in these type of conferences because
all I've asked for is correspondence, and there are no
formal motions.  So, let me toss it back to all of you
to see how you want to proceed.  You know, I don't want
to invite an onslaught of motions, on the other hand, if
we proceed this way and then somebody says, well, you
know, I give the benefit of my thinking, and somebody

                                                        MOOG0020353

|  | 1 | MOOG, INC VS. SKYRYSE, INC, ET AL |
|---|---|---|
| 14:39:55 | 2 | says, that's great, but I don't agree with that, and I |
| 14:39:58 | 3 | want to file a motion, which they are completely |
| 14:40:02 | 4 | entitled to do, but it does cause additional delay.  So, |
| 14:40:08 | 5 | I guess I'm asking all of you, should I -- should I |
| 14:40:17 | 6 | retract the process that I have used thus far in this |
| 14:40:20 | 7 | case and in many other cases with some measure of |
| 14:40:24 | 8 | success, and just tell everybody that if you go to -- |
| 14:40:27 | 9 | have a dispute, go ahead and make a motion, or should we |
| 14:40:32 | 10 | continue this way?  For example, if the parties were to |
| 14:40:34 | 11 | agree, okay, Judge, you've got all of the papers you |
| 14:40:37 | 12 | need, and you can make your decision based on the |
| 14:40:40 | 13 | papers, we can docket them and deem them to be motions. |
| 14:40:45 | 14 | So that is fine.  But anybody want to react how we want |
| 14:40:48 | 15 | to proceed here? |
| 14:40:51 | 16 | MR. MILER:  Your Honor, this is Mr. Miller |
| 14:40:53 | 17 | for the individual Defendants.  Not to throw a wrench |
| 14:40:57 | 18 | into the ordinarily progression of this hearing, but |
| 14:41:20 | 19 | there is one other issue on the substance of the |
| 14:41:22 | 20 | protective order that I wanted to raise before we move |
| 14:41:24 | 21 | on, if that is okay. |
| 14:41:26 | 22 | MAGISTRATE JUDGE MCCARTHY:  Yeah, we're not |
| 14:41:27 | 23 | done with it, but go ahead. |
| 14:41:29 | 24 | MR. MILLER:  Okay.  So, Ms. Andoh had said |
| 14:41:32 | 25 | that things have been resolved vis-à-vis, the AEO |

MOOG, INC VS. SKYRYSE, INC, ET AL

14:41:36  provisions as to the individual Defendants.  And that is

14:41:39  not entirely there.  We're about 95 percent resolved.

14:41:44  There is still about a 5 percent difference of opinion.

14:41:47  And what that really relates to is we don't have the

14:41:52  designated in-house attorney like either Moog or Skyryse

14:41:57  have.  So there is no one, other than our clients and

14:42:03  us, the outside counsel to make decision.  That leaves

14:42:07  us in an awkward position when we get things like, say,

14:42:11  the Skyryse disclosure letter that just, you know, came

14:43:09  in that your Honor has also seen, that was presumptively

14:43:14  designated "AEO."  I can't show that to my clients.  I

14:43:17  can't tell my clients what it says.  I can't ask my

14:43:20  clients their opinion on it if they are not allowed to

14:43:23  look at it.  I can't give them that information.  They

14:43:27  didn't write it and were not recipients of it.  So the

14:43:30  carve out, as it stands, doesn't really help them or me

14:43:34  to prepare their defense.  I can't ask them, hey, they

14:43:37  say there was this USB drive that was plugged in, what

14:43:41  does that refer to or did that really happen this way.

14:43:45  I'm prohibited from doing that under the way that the

14:43:48  protective order as currently drafted would be.  And

14:43:51  that is a humongous problem because we'll see that again

14:43:55  with discovery responses that are designated "AEO."

14:44:00  Materials that they don't often disclose on their face

1           MOOG, INC VS. SKYRYSE, INC, ET AL

14:44:04   2   who the authors or recipients were and so forth.  So,

14:44:20   3   our proposal was to simply strike the section which

14:44:24   4   limited it for the individual Defendants only as to

14:44:29   5   documents that say "authors" and "received" such that

14:44:32   6   they could review any AEO materials in the presence of

14:44:35   7   counsel without keeping copies, without taking notes,

14:44:38   8   without so forth, and having us retain all of the

14:44:40   9   documents at the end, and only for the purpose of this

14:44:43   10  litigation.  So, the issue that really comes up that

14:44:52   11  really doesn't apply to Moog or Skyryse, because they

14:44:56   12  have their in-house counsel, is what do I do about

14:44:58   13  litigation documents that I discuss with people?  So,

14:45:02   14  that is an issue that I think isn't necessarily as front

14:45:06   15  and centered with this discussion about, you know, who

14:45:10   16  should be seeing what source code and things, but it's a

14:45:13   17  problem that is unique to the individual Defendants.

14:45:15   18  And like I said, we proposed a solution that I don't

14:45:18   19  think Moog is entirely there on yet when we were talking

14:45:22   20  about it, but you know that is where there is still that

14:45:26   21  5 percent difference of opinion.

14:45:29   22          MS. ANDOH:  Your Honor, if I could be heard

14:45:30   23  on that.  I think we do have a difference of opinion on

14:45:33   24  that, and I think that that really goes back to the

14:45:37   25  question of over-designation and whether we are going to

```
                        MOOG, INC VS. SKYRYSE, INC, ET AL
14:45:42   2    engage in it, which we don't intend to.  I don't think
14:45:45   3    that the universe of materials that Mr. Miller is
14:45:48   4    concerned about is going to be very large.  But, I mean,
14:45:50   5    I think the point of putting these provisions in place
14:45:54   6    is you put the provision in place and there is a
14:45:56   7    procedure to request de-designation of materials if they
15:00:14   8    feel that the designation is either improper or if they
15:00:17   9    feel otherwise, if they feel they need to be able to
15:00:21   10   show the materials to their clients.  We don't think
15:00:25   11   it's appropriate to gut the AEO provision on the
15:01:25   12   possibility that there are certain materials that Mr.
15:01:28   13   Miller subsequently believes he wants to show his
15:01:31   14   clients in that instance or that he believes that we
15:01:51   15   over-designated on and are appropriately materials that
15:01:54   16   he should be able to show his clients.  If that happens,
15:01:57   17   we've told him repeatedly, we're happy to have that
15:02:01   18   discussion.  And if there is good cause for it, we'll
15:02:03   19   likely agree to it because we're not here to be
15:02:06   20   unreasonable.  And as your Honor has already sort of
15:02:09   21   pointed out, we've already agreed and understand they
15:02:12   22   are in a different position than Skyryse is with respect
15:02:15   23   to viewing materials and have agreed that they should be
15:02:18   24   able to review material that they authored or sent or
15:02:22   25   received, but the idea that they should be wholesale
```

MOOG0020357

|          |    |                                                              |
|----------|----|--------------------------------------------------------------|
|          | 1  | MOOG, INC VS. SKYRYSE, INC, ET AL                            |
| 15:02:43 | 2  | allowed to review presumptively all AEO materials, we        |
| 15:02:47 | 3  | don't think is an appropriate solution here.                 |
| 15:02:50 | 4  | MAGISTRATE JUDGE MCCARTHY:   Point me, if                    |
| 15:02:52 | 5  | you would, to the specific provision of the proposed         |
| 15:02:55 | 6  | protective order that provides for de-designation or         |
| 15:03:00 | 7  | undesignation of AEO materials.                              |
| 15:03:03 | 8  | MS. ANDOH:   Let me -- give me one second,                   |
| 15:03:06 | 9  | your Honor, to scroll to it.                                 |
| 15:03:07 | 10 | MAGISTRATE JUDGE MCCARTHY:   Sure.                           |
| 15:03:08 | 11 | MS. ANDOH:   I believe it is 6.6(c) or,                      |
| 15:03:27 | 12 | sorry, that is the expert disclosure, I apologize.  Give     |
| 15:03:32 | 13 | me one second here.                                          |
| 15:03:33 | 14 | MAGISTRATE JUDGE MCCARTHY:   Okay.                           |
| 15:05:55 | 15 | MR. MILLER:   Rena, look at section 5,"                      |
| 15:06:00 | 16 | challenging confidentiality designation."                    |
| 15:06:06 | 17 | MS. ANDOH:   Thank you.  Thank you.                          |
| 15:06:08 | 18 | MR. MILLER:   You were too far.  You got to                  |
| 15:06:10 | 19 | section 6, so you weren't going to find it.                  |
| 15:06:13 | 20 | MS. ANDOH:   So it's remand 5, your Honor, as                |
| 15:06:16 | 21 | Mr. Miller just helpfully pointed out.                       |
| 15:06:19 | 22 | MAGISTRATE JUDGE MCCARTHY:   Okay, just a                   |
| 15:06:20 | 23 | second.  Section 6.5.                                        |
| 15:06:23 | 24 | MS. ANDOH:   Roman numeral V, page, it's, if                 |
| 15:06:26 | 25 | you're looking at Moog's May 4th submission to your          |

                                                    MOOG0020358

MOOG, INC VS. SKYRYSE, INC, ET AL

15:06:31 Honor, it's the third exhibit.

15:06:33 MAGISTRATE JUDGE MCCARTHY:  Right.  I've

15:06:34 got it.

15:06:34 MS. ANDOH:  A to the third exhibit.

15:06:37 MAGISTRATE JUDGE MCCARTHY:  Okay, so I have

15:06:39 that in front of me.  What page.

15:06:41 MS. ANDOH:  Page nine, there is a header

15:06:43 Roman Numeral V "challenging confidentiality

15:06:46 designations."

15:06:47 MAGISTRATE JUDGE MCCARTHY:  Okay.  And that

15:07:00 talks about a meet and confer, and then within seven

15:07:04 days, if you can not resolve, you may seek relief from

15:07:10 the Court.  Okay.  I guess my question would be, how

15:07:19 many of these disputes might either I or Judge Vilardo

15:07:26 anticipate receiving.

15:07:31 MS. ANDOH:  Well, and I will make the

15:07:32 representation to the Court, we do not intend to

15:07:35 over-designate material as "AEO."  That is not where we

15:07:38 sit.  You know, I can't represent how many disputes

15:07:42 there are going to be.  As you know, we already know

15:07:46 that Skyryse has over-designated materials as "AEO" even

15:07:50 before the protective order is in place.  What I would

15:07:52 envision here is that document production is supposed --

15:07:58 is to be complete in short order pursuant to your

MOOG0020359

```
              1           MOOG, INC VS. SKYRYSE, INC, ET AL
15:08:02      2    Honor's instruction.  And when that date comes, we
15:08:05      3    should be able to consolidate any dispute over AEO
15:08:09      4    materials into a single submission.  Again, I don't
15:08:13      5    know, I certainly, with respect to Moog's document
15:08:16      6    production, based on the document requests that we
15:08:19      7    received from counsel, the volume of material that we
15:08:23      8    anticipate producing through the document production
15:08:27      9    process as opposed to the source code production process
15:08:30     10    is not highly voluminous.
15:08:32     11           MAGISTRATE JUDGE MCCARTHY:  Okay.  Then,
15:08:34     12    what is -- and I'll ask all of you, because I'm still,
15:08:39     13    you know, trying to understand how this is all going to
15:08:41     14    work.  Obviously, the document production is going to
15:08:51     15    precede anybody from the other side looking at things or
15:08:54     16    wanting to look at things, so what is the harm of
15:08:58     17    approving the -- the protective order in the manner
15:09:07     18    proposed by Moog right now and then we take a look at
15:09:11     19    how things play out in practice?  If there is a huge or
15:09:16     20    if there is a claim that there is massive
15:09:19     21    over-designation, maybe we revise the protective order
15:09:25     22    or somebody makes a motion to revise the protective
15:09:27     23    order at that time.  If, on the other hand it's
15:09:32     24    relatively discrete, and with or without court
15:09:36     25    intervention, those particular issues can be worked
```

| | | |
|---|---|---|
| | 1 | MOOG, INC VS. SKYRYSE, INC, ET AL |
| 15:09:39 | 2 | through, then maybe the protective order is good as it |
| 15:09:44 | 3 | stands.  What is the problem with proceeding in that |
| 15:09:47 | 4 | fashion right now. |
| 15:09:49 | 5 | MR. MILLER:  Your Honor, this is Mr. Miller. |
| 15:09:50 | 6 | I'll start for the individual Defendants. |
| 15:09:53 | 7 | MAGISTRATE JUDGE MCCARTHY:   Okay. |
| 15:09:54 | 8 | MR. MILLER:  I think the problem is several |
| 15:09:56 | 9 | fold.  One, I've already identified, and I appreciate |
| 15:10:01 | 10 | Ms. Andoh's representations as to Moog, but I already |
| 15:10:06 | 11 | have an a problem with Skyryse and the letter they sent |
| 15:10:10 | 12 | about their supposed investigation being designated |
| 15:11:12 | 13 | "AEO."  Secondly, I shouldn't have to disclose my work |
| 15:11:15 | 14 | product in the course of my investigative analysis of |
| 15:11:18 | 15 | the case by asking for permission to show each and every |
| 15:11:21 | 16 | document to my clients.  We're in a situation here, and |
| 15:11:24 | 17 | I should mention, not every protective order, as your |
| 15:11:27 | 18 | Honor well knows, even has attorney's-eyes-only as |
| 15:11:31 | 19 | opposed to filing publically. |
| 15:11:33 | 20 | MAGISTRATE JUDGE MCCARTHY:   But many of |
| 15:11:34 | 21 | them do. |
| 15:11:35 | 22 | MR. MILLER:  I know, but it's not as if it |
| 15:11:38 | 23 | is a default given.  But we're in a world where, |
| 15:11:43 | 24 | essentially, both parties are asking for a large swath |
| 15:11:47 | 25 | of documents to be excluded forever from Defendants in |

MOOG0020361

1          MOOG, INC VS. SKYRYSE, INC, ET AL

15:11:51  2    this case.

15:11:52  3          MAGISTRATE JUDGE MCCARTHY:   No, no, no, no,

15:11:53  4    no, not excluded forever, because there is the method,

15:11:58  5    there is a mechanism in the order to challenge that.

15:12:01  6          MR. MILLER:   Why should it be the

15:12:03  7    Defendants' burden to ask for permission to see

15:12:05  8    information which is necessary to the defense of their

15:12:09  9    case in their own case.   Again, this is not a situation

15:12:12  10   where they have certain sub-segments like in-house

15:12:15  11   counsel who are entitled to it.   The Defendants would

15:12:19  12   have to come hat in hand if they can't get an agreement

15:12:23  13   voluntarily from either Skyryse or Moog to the Court

15:12:26  14   every time and say, please, we would like to see

15:12:28  15   evidence in a case where we are being sued for damages

15:12:32  16   and permanent injunctive relief, which may effect their

15:12:36  17   ability to ever obtain further employment.

15:12:42  18         MAGISTRATE JUDGE MCCARTHY:   Ms. Andoh, you

15:12:44  19   want to respond to that.

15:12:45  20         MS. ANDOH:   I mean, your Honor, the reason

15:12:48  21   why we need an AEO provision in here in the first place

15:12:52  22   is because there was an actual taking of Moog's trade

15:12:56  23   secrets, and we now have admitted use.   So, it isn't, as

15:13:01  24   your Honor pointed out, yes, not -- while it's true that

15:13:06  25   not every protective order has an AEO provision,

```
         1              MOOG, INC VS. SKYRYSE, INC, ET AL
15:13:22  2   certainly cases like this, when we're talking about the
15:13:24  3   entire nature of the case revolving around sensitive
15:13:59  4   competitive information, an AEO provision is appropriate
15:14:03  5   and necessary.  And in this instance, we're trying to
15:14:06  6   work with the individual Defendants, understanding that
15:14:08  7   they don't have an in-house counsel to de-designate, but
15:14:12  8   at the same time, Moog's interest in protecting its
15:14:16  9   trade secret information from people who have admitted
15:14:20  10  to downloading the files and Skyryse has presented
15:14:24  11  evidence of plugging in external hard drives to view by
15:14:47  12  other Moog employees is, it's a serious set of
15:14:51  13  admissions that Moog needs to have protection against
15:14:56  14  further bleeding from.  And so, so, you know, we don't
15:14:59  15  -- we think it is appropriate that, if they want to show
15:15:02  16  materials that we designated as competitively AEO, that
15:15:06  17  they can tell us that they think we've over-designated
15:15:10  18  them or they otherwise need to show them.  I don't think
15:15:13  19  the work product waiver issue is one that really holds
15:15:17  20  water here.  I think they can all be done in a single
15:15:19  21  motion, and to the extent that meet and confer doesn't
15:15:25  22  resolve it.  And I, you know, I just don't see where in
15:15:29  23  all of this, Moog's interest in protecting its trade
15:15:32  24  secret information is somehow automatically subsumed
15:15:37  25  against with which the ease to which Defendants have
```

|       |    | MOOG, INC VS. SKYRYSE, INC, ET AL |
|-------|----|-----------------------------------|
| 15:16:00 | 2  | access to our materials to prepare their case.  There |
| 15:16:04 | 3  | needs to be a balancing of interests. |
| 15:16:06 | 4  | MAGISTRATE JUDGE MCCARTHY:  Okay. |
| 15:16:07 | 5  | MS. DOMINGUEZ:  Your Honor -- |
| 15:16:07 | 6  | MAGISTRATE JUDGE MCCARTHY:  Does anybody |
| 15:16:08 | 7  | else wish to weigh in. |
| 15:16:10 | 8  | MS. DOMINGUEZ:  Yes, your Honor. |
| 15:16:12 | 9  | MAGISTRATE JUDGE MCCARTHY:  And, Ms. |
| 15:16:12 | 10 | Dominguez, let me ask you something, and please don't |
| 15:16:16 | 11 | take any offense at this question, but I'm just |
| 15:16:19 | 12 | wondering.  I take it you are still authorized to speak |
| 15:16:22 | 13 | on behalf of Skyryse even though you're apparently going |
| 15:16:25 | 14 | to be replaced. |
| 15:16:29 | 15 | MS. DOMINGUEZ:  Yes, your Honor.  So, as to |
| 15:16:30 | 16 | the issues before the Court being the person more |
| 15:16:33 | 17 | familiar, most familiar as between Mr. Lumish and |
| 15:16:38 | 18 | myself, we thought it made sense for me to address the |
| 15:16:41 | 19 | Court's questions.  Obviously, though, what you flagged |
| 15:16:45 | 20 | is a reason why there should be a formal -- if this |
| 15:16:49 | 21 | dispute remains after this discussion, which it seems |
| 15:16:53 | 22 | like it will, there should be a formal briefing process, |
| 15:16:56 | 23 | I think that is true for a couple of reasons.  One is |
| 15:16:59 | 24 | because Skyryse took this proceeding in the spirit with |
| 15:17:03 | 25 | which we thought it was intended, which is, we submitted |

MOOG0020364

```
              1              MOOG, INC VS. SKYRYSE, INC, ET AL
15:17:07      2    fairly brief letters in comparison to what Moog
15:17:10      3    submitted, and we intended to discuss the issues.  But
15:17:13      4    we did not view this as a formal briefing process, and,
15:17:16      5    particularly, in light of the fact that counsel from
15:17:21      6    Latham, Watkins will be taking over, I'll just flag, it
15:17:24      7    does seem particularly appropriate there that if the
15:17:28      8    issues are not resolved, that there be a briefing
15:17:30      9    process.  But I did --
15:17:32     10              MAGISTRATE JUDGE MCCARTHY:   Yes.   In
15:17:33     11    fairness, I will allow that.  But, again, it brings me
15:17:36     12    back to, which we'll discuss in a few minutes, maybe in
15:17:40     13    a case like this, this is not the most efficient way to
15:17:44     14    proceed, but we can take that up in a few moments.  So,
15:17:47     15    I cut you off, so what else did you want to say.
15:17:51     16              MS. DOMINGUEZ:  So, there was just a couple
15:17:52     17    of comments made by both Ms. Andoh and Mr. Miller that I
15:17:56     18    would like to address.  There was suggestion that it was
15:17:59     19    inappropriate to designate our letter of 1:30 something
15:18:04     20    a.m., our late Tuesday night letter, I'll say that,
15:18:08     21    those concerns were, among them, were the issues that I
15:18:13     22    have listed, which is I have an ongoing investigation,
15:18:16     23    we have not drawn conclusions and there could be severe
15:18:20     24    reputational harm both to the company and to
15:18:23     25    individuals, the letter attached an exhibit which listed
```

                                           MOOG0020365

MOOG, INC VS. SKYRYSE, INC, ET AL

15:18:25    2    the names of all of the employees whose laptops were

15:18:31    3    managed.  So, we do think, given the pending nature of

15:18:34    4    the investigation and the representational harm that

15:18:37    5    could result, we don't consider the designation of that

15:18:41    6    letter and its exhibits as AEO to be an

15:18:46    7    over-designation.  I just wanted to address that.  It's

15:18:48    8    certainly not Skyryse's intention, as a general matter

15:18:51    9    in this case or at all to over-designate or abuse the

15:18:55   10    AEO designation.  The other thing that I just wanted to

15:18:58   11    note for the record, Ms. Andoh indicated there was an

15:19:01   12    admission or a concession of trade secret use.  I want

15:19:05   13    to clarify.  What we provided, in full disclosure,

15:19:10   14    because we do want to be transparent, it was incredibly

15:19:13   15    important, especially to the Gibson Dunn firm, that we

15:19:17   16    provided the information we could.  We provided

15:19:19   17    information that we believe was use of information that

15:19:21   18    either, maybe, Moog would claim as its own, it wasn't

15:19:26   19    speaking to whether that information constitutes trade

15:19:28   20    secrets or anything like that.  I wanted to clarify that

15:19:31   21    because Ms. Andoh did.

15:19:35   22         MAGISTRATE JUDGE MCCARTHY:  Okay.  I

15:19:36   23    understand, and your position is noted.  Folks, just in

15:19:39   24    the, you know, in the time that we have.  I want to

15:19:42   25    bring this issue, the protective order issue to some

```
           1              MOOG, INC VS. SKYRYSE, INC, ET AL
15:19:46   2    type of closure, at least for today's purposes.  So, in
15:19:49   3    fairness, as was indicated, and, Ms. Dominguez, you
15:19:53   4    understand it to be such, I think all counsel understand
15:19:55   5    it to be such, I said at the outset last week or
15:19:58   6    whenever that I do not consider these meetings to be
15:20:03   7    formal proceedings.  Well, they are formal proceedings,
15:20:07   8    but they are not such that I can issue a binding order
15:20:10   9    because they haven't been fully briefed.  On the other
15:20:13  10    hand, I'm going to tell you what I think today.  And if
15:20:18  11    motions are filed, I'll certainly consider them, and I
15:20:21  12    may change my mind, but I think the current AEO
15:20:28  13    provision, which has been proposed, when coupled with
15:20:32  14    the mechanism for requesting de-designation or
15:20:38  15    undesignation or challenging what somebody feels to be
15:20:43  16    excessive AEO designations, is appropriate and
15:20:49  17    sufficient to protect everybody's interest.  And if a
15:20:54  18    motion is filed, you're welcome to do that.  I think
15:20:58  19    that is likely the way I'll come down.  But, again, you
15:21:02  20    know, depending on what you say, I might change my mind.
15:21:06  21    But, you know, conferences like this aren't going to
15:21:09  22    serve anybody well unless you have a feeling for where
15:21:16  23    my head is at right now.  So, as I see it right now, and
15:21:19  24    I have gone back and forth a little bit, but I think the
15:21:22  25    AEO proposal currently as Moog has indicated a
```

                    1              MOOG, INC VS. SKYRYSE, INC, ET AL
15:21:30    2    willingness to modify with respect to the individual
15:21:32    3    Defendants is going to be appropriate.  So if anybody
15:21:38    4    wants to file a motion in that regard, we can talk about
15:21:41    5    a briefing schedule for that.
15:21:43    6              MS. ANDOH:  Your Honor, is there a
15:21:45    7    possibility of having the putative protective order
15:21:53    8    entered temporarily subject to motion practice so we
15:21:57    9    don't have further delays in document production while
15:22:14   10    the motion practice is ongoing.
15:22:16   11              MAGISTRATE JUDGE MCCARTHY:   Well, anybody
15:22:18   12    want to react to that?  I think, what I thought you said
15:22:21   13    earlier or somebody said was that you were -- your
15:22:25   14    productions were going to abide by that until an order
15:22:31   15    was entered anyway.
15:22:32   16              MS. ANDOH:  What has happened so far is that
15:22:34   17    the materials that have been exchanged between the
15:22:37   18    parties, there hasn't been actual document production.
15:22:39   19    But, for example, the letter that has gotten a lot of
15:22:43   20    air today, it's been presumptively designated under the
15:22:48   21    protective order.  And I think that with respect to
15:22:51   22    these materials, with those types of correspondence, I
15:22:54   23    think the parties are willing to abide by that.  I think
15:22:58   24    it's a different issue for us to be producing actual
15:23:01   25    evidence in the case without a protective order in

```
              1              MOOG, INC VS. SKYRYSE, INC, ET AL
15:23:05      2    place.  That is Moog's view.  And, obviously, we're not
15:23:08      3    looking to delay the document production further.  We're
15:23:10      4    the ones who are asking for the Court to impose, you
15:23:14      5    know, the discovery schedule that we attached.  But I
15:23:19      6    think we would be concerned about producing actual,
15:23:23      7    actual trade secret sensitive documents without having
15:23:27      8    some kind of a protective order that actually has been
15:23:30      9    ordered.
15:23:31     10              MS. DOMINGUEZ:  To be clear, your Honor,
15:23:33     11    what we have suggested and we're willing to abide by was
15:23:37     12    Skyryse was and is willing to make document productions
15:23:41     13    designated subject to the draft order without that order
15:23:45     14    being entered, understanding among all of the parties
15:23:48     15    that the order would be filed until such time that a
15:23:51     16    final order is entered.
15:23:52     17              MAGISTRATE JUDGE MCCARTHY:  Does anybody
15:23:53     18    have -- that is a statement that has just been made on
15:23:56     19    the record, and if everyone agrees on the record that
15:23:58     20    that is how it's going to be applied, then, I mean, de
15:24:05     21    facto, the protective order is governing unless and
15:24:08     22    until a different order is entered.
15:24:15     23              MR. FLUSKEY:  Your Honor, could be I heard
15:24:17     24    on that?
15:24:18     25              MAGISTRATE JUDGE MCCARTHY:  Yes, go ahead.
```

CONFIDENTIAL

```
              1              MOOG, INC VS. SKYRYSE, INC, ET AL
15:24:19      2              MR. FLUSKEY:  It seems to me that is no
15:26:22      3      different than entering an order and adding a provision
15:26:25      4      that it is subject to the pending motion practice.  I
15:26:28      5      think Moog needs to have that comfort that we have an
15:26:31      6      entered protective order before we begin rolling out
15:26:35      7      trade secrets in production.
15:26:37      8              MAGISTRATE JUDGE MCCARTHY:  Okay.  So,
15:26:38      9      you're talking about the what is Exhibit A to, Exhibit A
15:26:47     10      to Exhibit 3 to the May 4 letter, is that what we're
15:26:51     11      talking about the redlined.  Rena, you're muted.
15:26:56     12              MS. ANDOH:  Sorry, yes.  Exhibit 3-A to
15:27:00     13      Moog's May 4 letter to your Honor.  That is a mouthful.
15:27:03     14              MAGISTRATE JUDGE MCCARTHY:  Right.  But
15:27:04     15      that has a lot of redlining to it.
15:27:07     16              MS. ANDOH:  That was to show the points of
15:27:09     17      dispute that we had with Defendants.  We could certainly
15:27:14     18      provide a clean version of it to be provisionally
15:27:18     19      entered subject to motion practice.
15:27:20     20              MAGISTRATE JUDGE MCCARTHY:  All right.  All
15:27:23     21      right.  I'm going to do that.  I'm going to do that.
15:27:25     22      So, give me a clean copy.  Just so you know, as I
15:27:28     23      indicated, I'm out of town tomorrow, and I'm reachable.
15:27:33     24      Matt will check things, I want a provision in there that
15:27:38     25      it is a provisional protective order subject to further
```

```
          1            MOOG, INC VS. SKYRYSE, INC, ET AL
15:27:42  2   motion practice and we'll docket it.  Everybody reserves
15:27:47  3   their right to say I should come to a different
15:27:50  4   conclusion.  But at least so you can all start meeting
15:27:53  5   your document production deadlines.  Not everybody will
15:27:58  6   be happy with that, but I think we just have to move on.
15:28:04  7            Now, let me ask you, all of you, again, I'm
15:28:10  8   -- I think I'm finding that what works in other cases
15:28:14  9   may not work in this case in terms of these informal
15:28:18 10   conferences without going directly to motion practice.
15:28:23 11   I really hate to do that, because I think a lot of
15:28:26 12   things can be -- can be worked out.  But, anybody, I'll
15:28:32 13   throw it back to all of you, I'm not going to ask for a
15:28:37 14   majority vote or whatever.  But how do you want to
15:28:40 15   proceed?
15:28:44 16            MS. DOMINGUEZ:  Your Honor, if I could, this
15:28:45 17   is one topic that I don't think I should speak.  The
15:28:48 18   going forward practice will be, of course, Mr. Lumish
15:28:52 19   and Mr. Gross' concern, so I'll not give an answer, if
15:28:58 20   that is okay with your Honor, on this particular
15:29:00 21   question.
15:29:01 22            MAGISTRATE JUDGE MCCARTHY:  Okay.
15:29:04 23            MR. LUMISH:  I'm happy to respond, your
15:29:07 24   Honor.
15:29:07 25            MAGISTRATE JUDGE MCCARTHY:  Go ahead, Mr.
```

MOOG, INC VS. SKYRYSE, INC, ET AL

15:29:08  2  Lumish.  By the way, in looking at the docket, you have

15:29:11  3  a motion pro hac vice pending.

15:29:15  4          MR. LUMISH:  I do, your Honor.  And if you

15:29:17  5  prefer I not speak --

15:29:18  6          MAGISTRATE JUDGE MCCARTHY:   No.  Unless

15:29:19  7  somebody else has a major issue with it, I don't have a

15:29:22  8  problem with your speaking.  I think, Mr. Gross, you

15:29:25  9  have a similar motion pending, is that right.

15:29:29  10          MR. GROSS:  Actually, your Honor, I happen

15:29:30  11  to be admitted to the court from a prior time.

15:29:34  12          MAGISTRATE JUDGE MCCARTHY:   I'm sorry.

15:29:36  13          MR. GROSS:  I'm the one that sponsored Mr.

15:29:39  14  Lumish.

15:29:39  15          MAGISTRATE JUDGE MCCARTHY:   Somebody, one

15:29:40  16  of your other colleagues.

15:29:42  17          MR. GROSS:  That's true.

15:29:43  18          MAGISTRATE JUDGE MCCARTHY:   Okay, fine.

15:29:44  19  Mr. Lumish, I don't have a problem with your speaking.

15:29:49  20          MR. LUMISH:  Thank you, your Honor.  What I

15:29:50  21  was going to say, to the extent it's your Honor's normal

15:29:53  22  practice to have informal conferences, we would

15:29:56  23  certainly appreciate them as well.  And if you think

15:30:09  24  it's not working, we're happy to resort to whatever you

15:30:12  25  prefer.  But, if the normal practice is for your Honor

```
                    MOOG, INC VS. SKYRYSE, INC, ET AL
15:30:15    2    to do this, we would be in favor as a way to hopefully
15:30:18    3    cut through some of these issues.
15:30:20    4            MAGISTRATE JUDGE MCCARTHY:   I guess, for
15:30:21    5    example, I just had five patent cases that went on for
15:30:27    6    several years involving probably 30 attorneys, I don't
15:30:32    7    know.  But they would come in monthly and discuss, I'd
15:30:37    8    ask for letters, and then we would have monthly
15:30:40    9    conferences and we had a fair amount of success in
15:30:44   10    avoiding motion practice, so I would like to continue
15:30:47   11    that process, but I think I need to carve out those
15:30:54   12    situations in which something is really time sensitive
15:30:59   13    and one party or the other thinks that they want a
15:31:03   14    formal ruling, then, I guess, I'll leave the door open
15:31:06   15    to that.  Otherwise, I prefer if we can to try to, you
15:31:12   16    know, get together by Zoom or teleconference, or, hey,
15:31:15   17    if any of you want to come into Buffalo, and it stopped
15:31:19   18    snowing and I love to see you.  You know, I think those
15:31:23   19    are -- those are helpful as well, but, so maybe we'll
15:31:28   20    leave it at that.  We'll have periodic conferences, but
15:31:32   21    if anybody feels, given a certain time constraints or
15:31:35   22    for whatever other reason, they need to make a motion,
15:31:39   23    you should feel free to do so.  And if it requires
15:31:44   24    expedited briefing or whatever, we'll set that up.
15:31:51   25            MS. ANDOH:   Your Honor, we appreciate having
```

MOOG0020373

MOOG, INC VS. SKYRYSE, INC, ET AL

15:31:52  2  that -- sorry.  On behalf of Plaintiff, I think we would

15:31:55  3  appreciate having that dual track.  I think we do find

15:31:58  4  these conferences with your Honor to be helpful and

15:32:01  5  certainly getting your Honor's view on the issues.  But

15:32:04  6  it also, particularly when we're talking about things

15:32:07  7  like the protective order or things like this inspection

15:32:09  8  protocol, they can really wind up being -- there could

15:32:14  9  be a blockage, sort of a cascade of events that happens

15:32:17  10  as a result.  And so there needs to be the ability to

15:32:22  11  dual track, you know, in those instances.  If it's

15:32:26  12  something that is not, you know, that is an outstanding

15:32:29  13  dispute over a document, for example, that, you know, we

15:32:31  14  want to use in a deposition, but that deposition is

15:32:33  15  scheduled to happen in a week, you know, we may need to

15:32:36  16  be able to have a procedure by which we can have

15:32:41  17  resolution of that issue, because the deposition needs

15:32:44  18  to happen.  There are these kinds of issues that can

15:32:48  19  have real effects that can wind up having a massive

15:32:52  20  effect on a schedule.

15:32:53  21  MAGISTRATE JUDGE MCCARTHY:  I agree, I

15:32:54  22  agree.  You know, if we have the two track, we can, at

15:32:58  23  the time, set up periodic conferences down the road,

15:33:00  24  and, hopefully, work through a lot of things.  But, if

15:33:03  25  anybody feels they need to make a motion on a particular

```
              1              MOOG, INC VS. SKYRYSE, INC, ET AL
15:33:06      2    issue, if it is a non-dispositive issue, you make it to
15:33:10      3    me.  I won't speak for Judge Vilardo as to how he wants
15:33:14      4    things handled, but, to the extent it's a dispositive
15:33:17      5    motion, it's got to go to him.  So, with my indication
15:33:23      6    that I am going to sign the protective order, which is
15:33:30      7    Exhibit 3-A to your May 4 letter, with leave to revisit
15:33:35      8    that, what else do we need to address today.
15:33:40      9              MS. ANDOH:  The other really, sort of, I
15:33:42     10    won't call it hair-on-fire emergency, but the other
15:33:45     11    thing that is in desperate need of resolution as the
15:33:49     12    threshold, which is the inspection protocol, which is
15:33:52     13    basically a procedure that is set for materials not
15:33:55     14    being produced in the sort of standard discovery
15:33:59     15    document exchange manner would be handled.  There is a
15:34:03     16    massive divide between Plaintiff and Defendant.  Skyryse
15:34:07     17    specifically, with respect to whether or not Plaintiff
15:34:13     18    would have access to forensic images to be able to
15:34:17     19    conduct its own investigation as opposed to having to
15:34:19     20    rely on either an independent expert who doesn't
15:34:23     21    necessarily have specific expertise in the area is
15:34:25     22    necessary to be able to make these assessments.  And,
15:34:29     23    also, Skyryse has hired forensic experts.  I would turn
15:34:34     24    this over to my colleague, Lai Yip, if your Honor wants
15:34:40     25    an overview of the pending dispute.  It's actually quite
```

MOOG, INC VS. SKYRYSE, INC, ET AL

substantial, because, as of right now, the independent
forensic firm that was retained by the parties, is
currently holding 23 devices from the individual
Defendants, plus, I think it's four, two devices or
three devices and two hard drives, maybe, from Skyryse.
And there are 37 additional images that are currently
being taken by Skyryse that we believe probably needs to
be turned over to IBS, so the independent vendor and
then there is, so, basically, when that happens, there
is a massive dispute of what is going to happen to those
devices and how they are going to be inspected and what
access the parties are going to have to the contents of
those devices.  It's really the heart of the case
because what we know so far from disclosures from
Skyryse, and also what we know from our own
investigation that was done on Moog systems, is that due
to the volume and types of these files, the access,
reading and copying of files is all electronic and these
devices are the devices that were used to conduct that
copying and use.  And so with that, I would propose that
my colleague Lai Yip be permitted to address the Court
with regard to the specifics of Moog's proposal and the
difference with Skyryse.

                MAGISTRATE JUDGE MCCARTHY:  So, you're

```
          1                MOOG, INC VS. SKYRYSE, INC, ET AL
15:37:52  2    referring to page six Roman numeral III of your May 4
15:37:57  3    letter.
15:37:58  4                MS. ANDOH:  Sorry, I'm scrolling back up to
15:38:01  5    the beginning here.  It would be.
15:38:05  6                MAGISTRATE JUDGE:  Heading "parties ongoing
15:38:06  7    dispute regarding inspection protocol."
15:38:10  8                MS. ANDOH:  Yes, that would be it, your
15:38:12  9    Honor.
15:38:12 10                MAGISTRATE JUDGE MCCARTHY:   Yeah.  Okay.
15:38:17 11    Ms. Yip.
15:38:18 12                MS. YIP:  Yes, thank you, your Honor.  So,
15:54:18 13    as Ms. Andoh stated, a lot of devices have already been
15:54:23 14    turned over to the neutral vendor and more to come.  So,
15:54:27 15    in the end, we could have up to 60 devices that are in
15:54:31 16    the possession of the neutral vendor.  And our problem
15:54:35 17    is, to this day, we really don't know exactly what Moog
15:54:40 18    data is on these very devices.  These devices are
15:54:47 19    essentially a black box for us right now because we have
15:54:51 20    zero access to them.  So what we have, if Defendants are
15:54:54 21    in possession of the evidence of misappropriation and
15:54:57 22    theft, spoliation, and we don't.  And we need a way to
15:55:00 23    be able to inspect those devices to determine, for
15:55:04 24    example, what Moog data is on them.  This is
15:55:07 25    foundational for the case.  How and when Moog data was
```

1               MOOG, INC VS. SKYRYSE, INC, ET AL

15:55:11  2   transferred on or off of devices, how Moog data has been

15:55:16  3   used and misappropriated and what spoliation has

15:55:20  4   occurred.  And we need the devices to prosecute our

15:55:24  5   claims.  For instance, Ms. Dominguez has made, today, a

15:55:27  6   lot of claims about what has been found, what has not

15:55:30  7   been found, overbreadth of search terms, and we don't

15:55:33  8   have a way right now to vet those claims because we have

15:55:36  9   zero access to the devices.  So, the dispute really

15:55:43  10  revolves around Defendants voicing some prior concern

15:55:45  11  about giving Moog access to devices that may contain

15:55:49  12  confidential privileged or private information, but we

15:55:53  13  believe our inspection protocol more than adequately

15:55:57  14  addresses those concerns while permitting Moog and the

15:56:01  15  Court the access that is absolutely necessary to be able

15:56:05  16  to uncover the truth, the facts in this case.  So, I can

15:56:11  17  provide some description of our protocol to give you the

15:56:14  18  context, your Honor.

15:56:15  19              MAGISTRATE JUDGE MCCARTHY:  I'm looking at

15:56:17  20  the May 4 letter now, which refers me back to the April

15:56:20  21  27th letter at page 7.  Is that right?  And, again,

15:56:24  22  counsel, I apologize, well, I don't apologize, I'm doing

15:56:27  23  the best I can here, but trying to get my arms around

15:56:31  24  all of these issues.  So I'm going to look at page 7 of

15:56:40  25  that letter.  So, basically, you're saying that you need

                                          MOOG0020378

```
           1              MOOG, INC VS. SKYRYSE, INC, ET AL
15:56:46   2    to not just take their word for it, but you need to be
15:56:49   3    able to see the devices yourself rather than just
15:56:53   4    relying on what the -- what somebody else says about
15:56:59   5    them, is that right.
15:57:01   6              MS. YIP:  Absolutely, you put it so well,
15:57:04   7    your Honor.
15:57:04   8              MAGISTRATE JUDGE MCCARTHY:  Flattery will
15:57:08   9    get you everywhere.
15:57:10  10              MS. YIP:  Yes, so our letter submitted on
15:57:52  11    May 4 essentially references a prior letter that we
15:58:47  12    submitted, which talks about the dispute in great
15:58:49  13    detail.  And we understand that is a lot of materials,
15:58:52  14    so what I'm hoping I can do is be able to give you the
15:58:56  15    highlights and greatest hits of what is the dispute.
15:58:59  16    And, so, under our proposed protocol, Moog does not get
16:01:10  17    physical possession of the Defendants' devices.  We
16:01:12  18    don't even get physical possession of the forensic
16:01:17  19    images of the devices.  Instead, the physical possession
16:01:21  20    is always with the neutral vendor.  The only thing we
16:01:24  21    get to do is log on the neutral vendor's computer to
16:01:29  22    view the forensic images.  We're not allowed to edit the
16:01:33  23    forensic images and we're not allowed to copy anything
16:01:37  24    from the forensic images.  And while we're reviewing the
16:01:56  25    images, we are being monitored by the neutral vendor to
```

1          MOOG, INC VS. SKYRYSE, INC, ET AL

16:02:03   2   ensure the security of their data.  And, in fact, there

16:02:08   3   is even a video recording provision in the protocol and

16:02:32   4   we believe that all of these measures more than

16:02:35   5   adequately addresses the security and confidential

16:02:39   6   concerns that Skyryse has raised.  Moreover, only Moog's

16:02:44   7   outside counsel and experts can view this information

16:02:48   8   that is posted and housed by the neutral vendor.  Moog's

16:02:53   9   in-house counsel are not going to access it.  Moog's

16:02:56   10  employees are not going to access it nor anyone else at

16:02:59   11  Moog.  And Moog's outside counsel are not allowed to

16:03:02   12  share the information or discuss it with in-house

16:03:04   13  counsel or employees of Moog or anyone else at Moog.

16:03:07   14  Obviously, this is all subject to, if, at some point, if

16:03:11   15  we feel like certain documents in the forensic images

16:03:14   16  should be produced in the normal course and designated

16:03:53   17  appropriately and there are provisions in the protocol

16:03:55   18  to address that mechanism, but as an initial matter,

16:03:58   19  this would be limited to outside counsel and expert's

16:04:01   20  eyes only.  And under the protocol, the forensic images

16:04:06   21  are designated by default in this way; outside counsel

16:04:10   22  and expert's eyes only.  Moreover, before we ever even

16:04:14   23  get to review the forensic images using these monitoring

16:04:19   24  security measures and so forth, the Defendants will have

16:04:21   25  an opportunity to review the forensic images for

```
            1              MOOG, INC VS. SKYRYSE, INC, ET AL
16:04:24    2     privileged information.  And the individual Defendants
16:04:27    3     who have raised a privacy concern will be able to review
16:04:30    4     the forensic images for any personally private
16:04:33    5     information and have this material excised from the
16:04:38    6     forensic image before our outside counsel and experts
16:04:41    7     will get access to them.  And, in fact, due to the
16:04:45    8     provision in the protocol that permits this privacy
16:04:49    9     review, the individual Defendants no longer have an
16:04:53   10     objection to our protocol and have now taken a neutral
16:04:57   11     position on it.  As we understood it, when the parties
16:05:01   12     were discussing the use of a neutral vendor early on,
16:05:05   13     the point of engaging in the neutral vendor was so that
16:05:08   14     we do not get physical possession of the Defendants'
16:05:11   15     devices.  And under our inspection protocol, that is
16:05:14   16     exactly what happened.  We don't get physical possession
16:05:17   17     of the devices.  We don't get physical possession of the
16:05:21   18     forensic images.  All we get is supervised access to the
16:05:25   19     forensic images, which stay in the possession of the
16:05:28   20     neutral vendor.
16:05:29   21              Since your Honor has recently handled a big
16:05:32   22     slate of patent cases, perhaps this next analogy may
16:05:39   23     resinate a bit.  From my perspective, the mechanics of
16:05:43   24     this process are not very different from typical source
16:06:07   25     coding inspections that occur in patent cases.  In
```

                        MOOG, INC VS. SKYRYSE, INC, ET AL

16:06:11    2    patent cases, oftentimes you have a vendor that houses a
16:06:17    3    source code and parties get to go and look at the source
16:06:20    4    code through this vendor under all kinds of monitoring
16:06:25    5    provisions.  The primary difference in this case,
16:06:27    6    however, is that it's not just source code at issue.
16:06:30    7    What is at issue are entire devices, entire forensic
16:06:34    8    images.  Because of the breadth of the scope of what's
16:06:37    9    been taken, which is, at least over one point, three
16:06:41   10    million files, the evidence of trade secret
16:06:44   11    misappropriation could be anywhere in these devices
16:06:47   12    could be in source code in presentation in drawings in
16:06:51   13    design documents, architecture documents, Word
16:06:54   14    documents, metadata regarding the device that tells you
16:06:57   15    when the device was connected to other devices, what
16:07:00   16    data was transferred to other devices comes from some
16:07:04   17    other devices and when.  And the evidence of spoliation
16:07:08   18    can, likewise, be anywhere in these devices.  Based on
16:07:12   19    what Skyryse and the Gibson Dunn firm have told us, we
16:07:17   20    have reason to believe that the spoliation in this case
16:07:19   21    is very extensive.  We believe that the security
16:07:24   22    measures that we have put in place in our proposed
16:07:29   23    protocol addresses all of Skyryse's concerns.  And we
16:07:32   24    know that they address the individual Defendants'
16:07:35   25    concerns.

```
 1              MOOG, INC VS. SKYRYSE, INC, ET AL
16:07:36  2              Now, in terms of what we find problematic
16:07:39  3    with Skyryse's proposed protocol, their protocol
16:07:43  4    basically blocks all of our access.  Under their
16:07:47  5    protocol we get zero access to the forensic images.  All
16:07:51  6    we get is to provide search terms to the neutral vendor,
16:07:56  7    which must be agreed to by Skyryse in advance.  The
16:08:00  8    neutral vendor then runs those search terms, provides
16:08:05  9    the resulting files to the Defendants for a privilege
16:08:07 10    review, and we get whatever is left over after their
16:08:10 11    privilege review.  We would then review those documents
16:08:13 12    and determine if further searches are needed and then
16:08:16 13    the process begins again and we do this again and again
16:08:19 14    and again.  This approach will not only take a very long
16:08:23 15    time, way more time than we have to spare in this case
16:08:28 16    across 50, nearly 60 devices.  It will be totally
16:08:34 17    ineffectual in uncovering the facts and the truth in
16:08:37 18    this case.  For example, searching for search terms will
16:08:43 19    not enable us to fully uncover the spoliation, the
16:08:48 20    extensive spoliation that we believe has occurred on
16:08:51 21    these devices.  To find spoliation, searching for words
16:08:57 22    is not enough.  You have to look at underlying metadata,
16:09:00 23    which will indicate where data has been deleted.
16:09:04 24    Second, as I mentioned earlier, at least over 1.3
16:09:07 25    million files have been stolen, which covers a huge
```

1                    MOOG, INC VS. SKYRYSE, INC, ET AL
16:09:11   2    diversity of file types and projects and many of these
16:09:15   3    files are not chiefly composed of words that can be
16:09:19   4    searched for such as drawings, designs, schematics,
16:09:24   5    executables, images models diagrams, there are
16:09:28   6    hand-drawn figures that are at issue, object files and
16:09:31   7    so forth.  And as another example, unrelatedly, much of
16:09:38   8    the use and Ms. Andoh touched on this earlier much of
16:09:41   9    the use is not literal copying at all like taking an
16:09:45   10   image and copying it over from one directory to another.
16:09:48   11   It's adapting Moog's processes.  Their data flows, their
16:09:53   12   algorithms, their structure, their architecture.  Again,
16:09:59   13   searching for words will not be sufficient to find
16:10:02   14   evidence of this type of use and theft.  So, from our
16:10:30   15   view, to adequately uncover the kinds of
16:10:34   16   misappropriation that I have just identified, you really
16:10:37   17   need a human being to look at the file, to compare them
16:10:41   18   side by side and to draw from their experience and their
16:10:44   19   expertise and their judgment to follow the truth of
16:10:48   20   misappropriation that we believe has taken place.  You
16:10:52   21   can't just do this kind of brute force mechanical search
16:10:56   22   for words, which is what Skyryse is proposing.  That is
16:11:01   23   not going to work here.  What we believe is that what we
16:11:06   24   need to do here is a much more sophisticated nuanced
16:11:10   25   analysis to be able to uncover the full extent of the

                                        MOOG0020384

MOOG, INC VS. SKYRYSE, INC, ET AL

16:11:15  2  theft and the misappropriation and the spoliation and

16:11:17  3  the violations, frankly, of the March 11th court order

16:11:22  4  the temporary restraining order.  One thing is that

16:11:27  5  Skyryse has claimed, in this case, that, in connection

16:11:31  6  with this dispute, that what we have proposed is not

16:11:35  7  standard, "standard."  And as a threshold matter, we

16:11:41  8  disagree that there is a standard here as Skyryse has

16:11:45  9  described it.  In our previous submission that is

16:11:49  10  referred to in our letter from yesterday, we cited a

16:11:53  11  number of cases showing that our protocol is very

16:11:58  12  reasonable.  But, even if it were the case that our

16:12:01  13  protocol were not "standard," this is not a "standard"

16:12:07  14  case.  We have over 1.3 files that have been taken that

16:12:12  15  we are presently aware of, there could be more, and,

16:12:15  16  perhaps, even more importantly, the Defendants have made

16:12:18  17  admissions that essentially amount to spoliation.  And

16:12:24  18  spoliation here is so serious that Skyryse's outside

16:12:27  19  counsel felt the need to request an emergency

16:12:31  20  conference, Mr. /OT-er, to discuss it.  And so we

16:12:34  21  believe that, based on what we've been told so far, as I

16:12:37  22  said earlier, the spoliation is very serious and the

16:12:40  23  case law makes very clear that the permitting the

16:12:42  24  Plaintiff direct access to foreign images, to devices in

16:12:46  25  a trademark secrets case where spoliation has occurred

1              MOOG, INC VS. SKYRYSE, INC, ET AL

16:12:50   2   is very appropriate.

16:12:51   3              And the last comment that I'll make is one

16:12:54   4   of the reasons why inspection protocol is very necessary

16:12:58   5   in this case is timing.  The expedited discovery

16:13:02   6   schedule and the preliminary injunction briefing

16:13:05   7   schedule has been thrown off course by the conduct that

16:13:09   8   has occurred so far, and Defendant's protocol, which is

16:13:15   9   very iterative and puts an intermediary between us, Moog

16:13:20   10  and the evidence that we need to look at with respect to

16:13:28   11  use and misappropriation and so forth, it will take too

16:13:31   12  long.  There is too many iterations, too many cycles to

16:13:37   13  go through.  And to have to go through the intermediary

16:13:40   14  will not be workable in this case.  We need to cut

16:13:44   15  through all of that and essentially to have Skyryse make

16:13:47   16  good on its promise to be open and transparent and

16:13:51   17  permit outside counsel and experts to inspect the

16:13:57   18  consents directly.

16:13:58   19             MAGISTRATE JUDGE MCCARTHY:   Okay.  Before I

16:13:59   20  hear from counsel for Skyryse, correct me if I'm wrong,

16:14:03   21  you said that Mr. Miller takes no position on your

16:14:06   22  protocol.  Is that right, Mr. Miller.

16:14:11   23             MR. MILLER:  Your Honor, that is correct.

16:14:14   24  Additionally, the privacy screens that, as I indicated

16:14:58   25  in my letter submission, satisfies the concern we have

                            MOOG, INC VS. SKYRYSE, INC, ET AL
16:15:01   2   with Moog's proposal as it stands, we no longer have any
16:15:04   3   position vis-à-vis Moog's or Skyryse's protocol.
16:15:08   4            MAGISTRATE JUDGE MCCARTHY:   Okay.   And
16:15:09   5   before I hear from counsel for Skyryse just on the
16:15:14   6   protocol, I know time is of the essence, but what in
16:15:19   7   particular is time sensitive about the need to get a
16:15:23   8   written protocol in place?   Is that going to affect your
16:15:29   9   May 19th production deadline.
16:15:34   10            MS. YIP:   Yeah, so, it's absolutely critical
16:15:37   11   to keeping our revised schedule on track that we get the
16:15:44   12   inspection protocol entered as soon as possible.   As Ms.
16:15:48   13   Andoh intimated before, everything flows from this.
16:15:53   14   It's a big cascade.   And if the inspection protocol is
16:15:57   15   in place, that means we don't get access to the devices
16:16:00   16   that are turned over.   We don't get access to any of the
16:16:03   17   nearly 30 devices that are in the possession of the
16:16:06   18   neutral vendor right now.   And we do not get access to
16:16:09   19   the additional 37 devices or of the forensic images of
16:16:13   20   those devices that we feel we are entitled to as well.
16:16:16   21   As Ms. Andoh also said earlier, that is the heart of our
16:16:20   22   case, and that is why we believe Skyryse is making -- is
16:16:26   23   interjecting so many objections to us being able to
16:16:29   24   access them, because they are the heart of our case.
16:16:32   25   So, it is absolutely, to answer your question, your

```
                    MOOG, INC VS. SKYRYSE, INC, ET AL
16:16:35   2   Honor, it's absolutely critical for us to get that
16:16:38   3   entered as soon as possible.
16:16:41   4            MS. ANDOH:  Your Honor, with respect to --
16:16:42   5            MAGISTRATE JUDGE MCCARTHY:   Go ahead.
16:16:42   6            MS. ANDOH:  Sorry.  With respect to the May
16:16:44   7   19 question.
16:16:45   8            MAGISTRATE JUDGE MCCARTHY:   Yeah.
16:16:46   9            MS. ANDOH:  The May 19thdeadline that is in
16:16:49  10   place has specifically to do with document production
16:16:54  11   outside of the protocol, but to Lai's point, there are a
16:16:57  12   number of other deadlines we would not want to take
16:17:00  13   depositions until the analysis of those images is
16:17:03  14   complete.  A lot of the evidence that we expect to want
16:17:22  15   to cover with witnesses is going to come from that
16:17:25  16   inspection, so even though the May 19 deadline is not
16:18:56  17   directly implicated by the resolution of this inspection
16:19:00  18   protocol issue, a number of other deadlines will be
16:19:02  19   impacted if the inspection protocol issue is not
16:19:05  20   resolved.
16:19:07  21            MS. YIP:  And if I could -- sorry, your
16:19:08  22   Honor.  Go ahead.
16:19:09  23            MAGISTRATE JUDGE MCCARTHY:  I was going to
16:19:10  24   say, you know, I'm trying to triage here, and I need to
16:19:14  25   have in mind what absolutely needs to be decided first
```

MOOG0020388

MOOG, INC VS. SKYRYSE, INC, ET AL

16:19:20  2   and then a method for deciding that, whether it is a

16:19:23  3   motion or whatever.  So, I've already, you know, I've

16:19:28  4   already indicated that the one order is going to be in

16:19:31  5   place.  I'm going to hear from counsel for Skyryse on

16:19:36  6   this.  I'm not, unless somebody says, yeah, you can do

16:19:41  7   it, I don't think I'm in a position to say one protocol

16:19:45  8   or the other goes in place today.  So, I'm going to give

16:19:49  9   the parties a brief opportunity to submit motion papers

16:19:54  10  on it and I'll decide it as soon as I can.  But that is

16:19:59  11  why I asked, does May 19th hinge on this, and I think

16:20:04  12  the answer is no.

16:20:06  13          MS. YIP:  If I could clarify on that point?

16:20:09  14  So the May 19th deadline does hit on a number of things,

16:20:14  15  one is the document production that Ms. Andoh hit on,

16:20:17  16  but the other is to finish the privilege review that

16:20:20  17  Skyryse had asked for on the devices that are already in

16:20:23  18  the possession of the neutral vendor, a privilege review

16:20:28  19  is going to take some time.  And what we had proposed is

16:20:32  20  that by May 19th, that Skyryse finishes that review so

16:20:36  21  the devices that are with the neutral vendor can be made

16:20:39  22  accessible to us.  So, ideally on May 19th, our outside

16:20:45  23  counsel and experts will be able to view at least the

16:20:50  24  devices that the neutral vendor has now.  If we're going

16:20:53  25  to keep the follow on deadlines relating to depositions,

MOOG0020389

                    MOOG, INC VS. SKYRYSE, INC, ET AL
16:21:21   2  discovery and so forth, it is absolutely critical that
16:21:24   3  we get access to those devices as early as possible.
16:21:27   4  And if we don't make sure that the privilege review is
16:21:31   5  on track so it can be completed by May 19th, it could
16:21:35   6  adversely impact the rest of the schedule, so I wanted
16:21:38   7  to make that clarification.
16:21:40   8                    MAGISTRATE JUDGE MCCARTHY:  Okay.  I
16:21:41   9  understand.  And May 19th, today is -- what is today?
16:21:44  10  Today is May 5th, Cinco de Mayo.  Happy Cinco de Mayo,
16:21:49  11  everybody.  So May 19th is a week from Thursday.  Now,
16:21:55  12  as I indicated, I am out next week.  I'm out beginning
16:22:01  13  tomorrow and I'm out of Chambers returning on the 16th,
16:22:05  14  but I am working remotely, not tomorrow, but Monday,
16:22:11  15  Tuesday, Thursday and Friday of next week, so I'll have
16:22:14  16  access to everything, so I will devote time to it.  But
16:22:18  17  I just need to know, my sense is you would like
16:22:22  18  something decided by the 16th, or, well, as soon as
16:22:27  19  possible.  It's on my front burner, but I'm not going to
16:22:32  20  decide it today.  That much I can tell you, because I
16:22:34  21  don't think that would be fair to anybody.  But having
16:22:37  22  said that, I will hear from whoever wishes to speak on
16:22:41  23  behalf of Skyryse or, Ms. Dominguez, do you want to
16:22:45  24  defer?  I don't know if Mr. Lumish or Mr. Gross can
16:22:49  25  speak to that today or what do you want to do?

|   | |
|---|---|
| 1 | MOOG, INC VS. SKYRYSE, INC, ET AL |
| 16:22:53  2 | MS. DOMINGUEZ:  I can speak to it or if Mr. |
| 16:22:56  3 | Lumish or Mr. Gross wants to speak to it, I'll give them |
| 16:22:59  4 | the floor. |
| 16:23:42  5 | MR. LUMISH:  Your Honor, I'm happy to make a |
| 16:23:44  6 | few comments and invite Ms. Dominguez to clean up |
| 16:23:47  7 | whatever I haven't said that is important and based on |
| 16:23:51  8 | her superior experience with the case.  I would actually |
| 16:23:54  9 | like to start with one of the comments that Ms. Yip made |
| 16:23:58  10 | that is terribly concerning.  With trade secret cases, |
| 16:24:01  11 | one of the things that is supposed to happen is |
| 16:24:03  12 | discovery is supposed to guard against the notion that |
| 16:24:06  13 | they can just hire an expert who can then deconstruct |
| 16:24:10  14 | all of the information from a defendant and say, oh, I |
| 16:24:13  15 | can find a trade secret in here.  And what she is asking |
| 16:24:16  16 | you for is 60 devices full unfettered access for an |
| 16:24:22  17 | expert to go through with some effort to pull out |
| 16:24:26  18 | privileged material only, and then reconstruct and |
| 16:24:30  19 | deconstruct in a revision history way, oh, there is our |
| 16:24:53  20 | trade secrets, even though there is no copying, and we |
| 16:24:57  21 | can't actually see our code or any reference to Moog in |
| 16:25:02  22 | it, and that is exactly how trade secret discovery is |
| 16:25:05  23 | supposed to go.  I start there, but the source code |
| 16:25:08  24 | analogy that your Honor was given from patent cases is |
| 16:25:11  25 | actually and apt one for why you should deny their |

MOOG0020391

1          MOOG, INC VS. SKYRYSE, INC, ET AL

16:25:16   2    protocol, because what happens in a source code

16:25:18   3    inspection is the source code that is at issue for the

16:25:20   4    accused functionality is put on an inspection computer

16:25:24   5    and the experts are given access to that.  They are not

16:25:27   6    given access to all of the source code in the company,

16:25:29   7    which is obviously extremely proprietary and valuable to

16:25:57   8    the defendant.  They are not given access to the all of

16:25:59   9    the information in the company, which I can only surmise

16:26:03   10   60 devices is going to give them, essentially, you know,

16:26:06   11   an unfettered window into the entire company and all of

16:26:09   12   our trade secrets and all of our information that has

16:26:12   13   absolutely no bearing on this case.  And so, if you're

16:26:15   14   going to look at it like a source code inspection, then

16:26:18   15   our protocol is the one that gets closer, which is have

16:26:23   16   pulled out of these devices the things that are

16:26:26   17   potentially relevant to the case and let them inspect

16:26:28   18   those.  And it's not just the key words.  The argument

16:26:31   19   was made, well, it's just a word.  No, the copy word

16:26:36   20   leads to a file and the file can be inspected by the

16:26:39   21   human being and analyzed from that point.  And, so, I

16:26:44   22   like the source code analogy because I think it actually

16:26:47   23   proves our point and would actually take way more time,

16:26:50   24   not the point that counsel argued, it would take more

16:26:54   25   time to have 60 devices in their entirety that would

1          MOOG, INC VS. SKYRYSE, INC, ET AL

16:26:59  2   have to be the subject of the analysis by them and

16:27:03  3   subjected by analysis by us as well and as opposed,

16:27:17  4   something that has been reduced to more likely to be

16:27:21  5   narrow files and component of those drives.

16:27:23  6          Last point was on spoliation.  Counsel said

16:27:26  7   that the metadata needs to be looked for.  Metadata is

16:27:30  8   words and dates and artifacts and things like that they

16:27:34  9   can identify and we can negotiate and use as potential

16:27:37  10  search terms or search strings to try and find what they

16:27:41  11  are looking for.  But the notion they need to have a

16:27:45  12  human being going through the metadata with unfettered

16:27:49  13  access doesn't really add up to that, either.

16:28:06  14         So, those are my reactions to what I heard,

16:28:08  15  but I'm sure Ms. Dominguez has more, based on the actual

16:28:11  16  specifics with our protocol, which I'm less familiar

16:28:14  17  with.

16:28:15  18         MAGISTRATE JUDGE MCCARTHY:  Before I hear

16:28:16  19  from Kate, I will, just one thing, and, again, I'm

16:28:20  20  obviously not deciding any aspect of the merits of this

16:28:23  21  case.  I won't, at any point in this case, that is not

16:28:28  22  my job, but, you know, I've reviewed the pleadings and

16:28:32  23  one of the things that kind of jumps out at me is,

16:28:35  24  apparently, material has been deleted.  And they

16:28:44  25  don't -- I mean, if I were representing Moog, and I'm

|        |    |                                                                          |
|--------|----|--------------------------------------------------------------------------|
|        | 1  | MOOG, INC VS. SKYRYSE, INC, ET AL                                        |
| 16:28:48 | 2  | not, but there is some appeal to the argument, we don't                |
| 16:28:53 | 3  | even know what they took because it's all gone.  So, you               |
| 16:28:59 | 4  | know, I've got to keep that in mind as well.                           |
| 16:29:02 | 5  | Ms. Dominguez, I'll hear from you.                                      |
| 16:29:04 | 6  | MS. DOMINGUEZ:  Sure.  So on that, and I                               |
| 16:29:08 | 7  | think, your Honor, it ties into something I found                      |
| 16:29:10 | 8  | troubling as well about counsel for Moog's presentation                |
| 16:29:16 | 9  | there.  She started by making really broad and sweeping                |
| 16:29:20 | 10 | conclusions, unwarranted conclusions based on an                       |
| 16:29:23 | 11 | investigation that is still under way.  I've tried to be               |
| 16:29:26 | 12 | clear and Mr. Krevitt tried to be clear last week that                 |
| 16:29:31 | 13 | when we saw an indication of a problem, we felt it was                 |
| 16:29:34 | 14 | incumbent upon us to come to the court early.  The                     |
| 16:29:37 | 15 | investigation is not concluded and we do not have reason               |
| 16:29:40 | 16 | to believe that all of these 37 laptops have what Ms.                  |
| 16:29:45 | 17 | Yip called a spoliation problem.  The purpose of the                   |
| 16:29:48 | 18 | investigation is to find out if indeed, among the                      |
| 16:29:52 | 19 | deletions, were relevant information, and if indeed                    |
| 16:29:57 | 20 | relevant information is lost as to preserved on the                    |
| 16:30:01 | 21 | network drives, which are backed up daily and have                     |
| 16:30:06 | 22 | indicated no real possibility of loss.  And I wanted to                |
| 16:30:11 | 23 | bring that up because it gives rise to this                            |
| 16:30:13 | 24 | unprecedented fishing expedition where counsel thinks 37               |
| 16:30:18 | 25 | images should be turned over.  That would be                           |

CONFIDENTIAL

MOOG, INC VS. SKYRYSE, INC, ET AL

unprecedented.  There is no reason to depart from the

normal course production, which is that counsel looks

for a responsive information, responsive information is

produced.  That is what has been happening.  We, in

fact, made another production today.  It went out in the

course of this hearing.  So, I did find it troubling

that counsel seeks to make sweeping conclusions based on

an investigation that is not concluded yet, and then to

rely on those sweeping conclusions to go on this

unprecedented fishing expedition where they want to sort

through the images of 37 laptops, which are certain to

include information far beyond what is relevant to this

case.

MAGISTRATE JUDGE MCCARTHY:  Okay.  Counsel,

here is what I'm going to suggest.  You know, you've

submitted, everybody submitted a lot of correspondence

with proposals and so forth.  I don't -- this is not --

this particular issue is not one that I can say, okay,

Moog's protocol is going to be adopted or Skyryse's.

I'll give you a brief, brief opportunity to file motions

in support of your respective positions.  And, if you

want, you can just incorporate by reference the

particular portions of your letters that have already

been submitted.  But, if there is anything additional

```
                    MOOG, INC VS. SKYRYSE, INC, ET AL
16:31:45   2   you want to have me consider in that regard, I'm happy
16:31:51   3   to do it.  But I think you need, because you're telling
16:31:54   4   me this is time sensitive, and I believe it, then you
16:31:59   5   need to give me those motions, I would say, by
16:32:03   6   Wednesday.  And I will, I will get to it as quickly as I
16:32:10   7   can.  You know, I've had your oral argument.  I don't
16:32:13   8   need any additional oral argument and then I'll get a
16:32:18   9   decision out on that issue as soon as I can.  If that
16:32:22  10   means that May 19th deadline is somehow affected because
16:32:27  11   I conclude you do get access or not and you haven't had
16:32:31  12   access, then it's going to be have to be modified, but
16:32:36  13   I'm not saying which way I'm going because, quite
16:32:39  14   frankly, I don't know.  But, you know, we've been at
16:32:45  15   this, and it's been helpful to me and I hope it's
16:32:49  16   helpful to you, but we've been at it for two hours.  And
13:34:38  17   we'll talk down the road about setting up additional
13:34:41  18   conferences again if somebody feels that there is
13:34:44  19   something that they need to have decided, that it's
13:34:48  20   something I can decide, make a motion.  If it's
13:34:51  21   something that Judge Vilardo has to decide, make the
13:34:53  22   motion to him.  But I urge you, particularly because
13:34:59  23   we're going to have new counsel, you all, obviously, are
13:35:03  24   very accomplished professionals, you all know more about
13:35:07  25   this area of law than I do, and I dare say than Judge
```

                                                    MOOG0020396

```
 1              MOOG, INC VS. SKYRYSE, INC, ET AL
 2    Vilardo does.  But I just encourage you all to work with
 3    each other as best you can on minimizing issues that you
 4    need to bring to the Court.  And, again, I don't say
 5    that because I'm trying to duck work.  I mean, you all
 6    have plenty of work to do.  I have plenty of work to do.
 7    We're not going to run out of work.  So, but in terms of
 8    what you need the Court to decide, try to keep focused
 9    on that.  Was somebody else going to say something?
10              MS. ANDOH:  Your Honor, I was going to
11    reference the fact that we had one additional request
12    for relief in the May 4 letter, which related to, in
13    addition to the discovery schedule, which I think, based
14    on what your Honor is saying, we can sort of operate as
15    though it's in place, but your Honor won't order it
16    until it's clear whether the protective order is going
17    to be put in place in whatever structure it is.  The
18    other issue we had was the question around ordering
19    disclosures from Skyryse, further information relating
20    to the disclosures that they made to your Honor, I guess
21    it was last week.  I think in light of the situation and
22    in light of the need for a ruling on the inspection
23    protocol, perhaps we can raise with Judge Vilardo
24    whether the more appropriate way to move to compel those
25    disclosures is in connection with what we perceive to be
```

MOOG0020397

MOOG, INC VS. SKYRYSE, INC, ET AL

13:36:43   violations of the March 11th and March 17th orders as

13:36:46   opposed to through a discovery mechanism.  But I sort of

13:36:51   hold that issue up for your Honor's consideration.

13:36:55   MAGISTRATE JUDGE MCCARTHY:  I'll tell you

13:36:56   right now that you will get no argument from me to the

13:37:01   contrary of that, so you can bring it up to him and he

13:37:06   can kick it back to me if he wants, but you're going to,

13:37:10   I believe, be talking to him on Tuesday.  And,

13:37:12   initially, why don't you take it up with him?  And, I

13:37:16   will say that the disclosure having been made about the

13:37:18   problem or about the issue having arisen last week, I

13:37:22   would expect that Skyryse, and I have no reason to

13:37:26   doubt, but I will just again emphasize that Skyryse

13:37:32   needs to keep going on that inspection or investigation

13:37:37   and make disclosures to Moog as soon as reasonably

13:37:43   possible as to the progress of that investigation.  I'm

13:37:47   not going to put a particular deadline in place right

13:37:52   now.  Maybe Judge Vilardo will want to do that, but that

13:37:56   is up to him.

13:37:57   Okay.  Is there anything else -- oh.  Let me

13:38:03   ask this.  I mean, and, again, maybe it's none of my

13:38:08   business, but by when is the transition of counsel for

13:38:12   Skyryse going to be complete?

13:38:15   MS. DOMINGUEZ:  Your Honor, we're working on

```
          1              MOOG, INC VS. SKYRYSE, INC, ET AL
13:38:17  2   that with Latham and Watkins.  We only learned of this
13:38:20  3   news yesterday, but we expect to complete it very
13:38:26  4   expeditiously.
13:38:26  5              MAGISTRATE JUDGE MCCARTHY:  Ms. Dominguez,
13:38:27  6   if we don't speak again or anybody from your firm, I
13:38:30  7   hope our paths will cross on another case.  So, and,
13:38:33  8   again, I, without deciding any issue as to the merits, I
13:38:40  9   do appreciate the fact that your firm came forward last
13:38:45  10  week and made that disclosure to Moog and to the Court.
13:38:50  11             MS. DOMINGUEZ:  Thank you, your Honor.  And
13:38:51  12  I just make one note, because you did ask the question
13:38:56  13  of whether or not the investigation has continued, it
13:39:27  14  absolutely has.  Skyryse has devoted tremendous
13:40:33  15  resources and asked FTI to add additional staff.  So
13:40:37  16  there are many folks at FTI working around the clock to
13:40:41  17  get that forensic investigation done.
13:40:46  18             MR. LUMISH:  And we will continue that
13:40:47  19  effort.  We'll do nothing but push that forward.
13:40:50  20             MAGISTRATE JUDGE MCCARTHY:  Okay, thank you.
13:40:51  21             Rob, were you going to say something.
13:40:54  22             MR. FLUSKEY:  I just want to know one thing,
13:40:57  23  your Honor.  In terms of the further disclosures,
13:41:00  24  Skyryse promised to amend certain discovery responses.
13:41:04  25  We ask for a date by which that will occur.  I do think
```

MOOG0020399

|   |   |
|---|---|
|  | 1 |
| 13:41:08 | 2 |
| 13:41:11 | 3 |
| 13:41:14 | 4 |
| 13:42:05 | 5 |
| 13:42:08 | 6 |
| 13:42:10 | 7 |
| 13:42:16 | 8 |
| 13:42:23 | 9 |

MOOG, INC VS. SKYRYSE, INC, ET AL

that issue is within the scope of your referral.  This
is a discovery issue.  I'm not asking for a ruling now,
obviously, but I do see on the horizon a potential
dispute, because, to date, we appreciate the disclosures
from counsel, make no mistake, but, ultimately, we need
to hear that from Skyryse under oath.  And some of the
interrogatories that Moog served call for that.  So, go
ahead.

13:42:23   10       MAGISTRATE JUDGE MCCARTHY:  Again, your
13:42:25   11  point is noted.  I'm not going to impose any deadline
13:42:30   12  today that may come back to me as being within my, you
13:42:33   13  know, my discretion, but we'll take that up at a later
13:42:38   14  date, okay?  I want to focus on getting the protocol
13:42:41   15  issue resolved and then we'll move on from there.
13:42:47   16       Okay.  Anything further?  Okay.  Thank you
13:42:52   17  all.  I look forward to working with you going forward
13:42:59   18  and we will see what transpires.  Okay.  Thank you.
13:43:03   19       MR. FLUSKEY:  Thank you.
13:43:04   20       MS. ANDOH:  Thank you, your Honor.
13:43:05   21       MS. DOMINGUEZ:  Thank you, your Honor.
           22              *    *    *
           23       CERTIFICATE OF REPORTER
           24
           25   I certify that the foregoing is a correct transcript

1          MOOG, INC VS. SKYRYSE, INC, ET AL

2     of the record to the best of my ability of proceedings

3     transcribed from the audio in the above-entitled matter.

4

5     S/ Karen J. Clark,   RPR

6     Official Court Reporter

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CONFIDENTIAL

MOOG0020401