```
 1                    UNITED STATES DISTRICT COURT

 2                   WESTERN DISTRICT OF NEW YORK

 3
      - - - - - - - - - - - - - - X
 4    MOOG INC.,                  )      22-CV-187
                      Plaintiff   )
 5    vs.
                                         Buffalo, New York
 6    SKYRYSE, INC., et al        )    August 4, 2022
                      Defendant.
 7    - - - - - - - - - - - - - - X
      DISCOVERY HEARING
 8    Proceeding held via Zoom for Government Platform
      All parties appeared remotely.
 9    Transcribed from audio of Zoom for Government Platform

10                    TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE JEREMIAH J. MCCARTHY
11                 UNITED STATES MAGISTRATE JUDGE

12
      FOR PLAINTIFF: SHEPPHARD MULLIN RICHETER & HAMPTON, LLP
13                     BY: RENA ANDOH, ESQ.
                           LAI YIP, ESQ.
14                         KAZIM A. NAQVI, ESQ.
                           TRAVIS ANDERSON, ESQ.
15                           -and-
                       HODGSON RUSS, LLP
16                     BY: ROBERT J. FLUSKEY, JR, ESQ.
                           PAULINE MUTO, ESQ.
17
      FOR DEFENDANT:  LATHAM & WATKINS, LLP
18                     BY: DOUGLAS E. LUMISH, ESQ.
                           GABRIEL S. GROSS, ESQ.
19                         KELLEY STOREY, ESQ.
                           CASSANDRA M. BALOGA, ESQ.
20                         JULIANNE CATHERINE OSBORNE, ESQ.
                           RYAN T. BANKS, ESQ.
21                         JOSEPH LEE, ESQ.
                           ARMAN ZAHOORY, ESQ.
22
      FOR DEFENDANT
23    PILKINGTON/KIM: WINGET, SPADAFORA & SCHWARTZBERG, LLP
                       BY: ALEXANDER ASHER TRUITT, ESQ.
24                         ANTHONY D. GREEN, ESQ.
                           ANNABEL MIRALES, ESQ.
25    COURT REPORTER: Karen J. Clark, Official Court Reporter
                       Karenclark1013@AOL.com
```

1          MOOG, INC. VS. SYRYSE, INC, ET AL

2                    **P R O C E E D I N G**
                  *          *          *

3

4

5

6          THE CLERK:  Good afternoon, everyone.  We

7   are at 3 o'clock.  I'm not sure if we're expecting any

8   more people to join.  But we do have a 4 o'clock, so I

9   would like to start promptly, if we could.

10         Is Mr. Lumish joining us?

11         MR. GROSS:  Hello, everyone.  This is Gabe

12  Gross from Latham.  I'm on, Mr. Lumish won't be today.

13         THE CLERK:  Okay.  Anyone else for Skyryse?

14  I think I see all of --

15         MR. GROSS:  Also from Latham, I've got my

16  colleagues Julianne Osborne, Arman Zahoory, Ryan Banks,

17  my partner, Alex Wyman, is on by audio, he has not yet

18  made an appearance or moved pro hoc vice.  From Skyryse,

19  the general counsel, Jeri Looney is also joining us.

20  And we have, as always, our local counsel, Terry Flynn

21  from Harris Beach.  I don't think I missed anybody, but

22  if I have, please speak up.

23         THE CLERK:  Thank you, Gabe.  Yeah, I guess

24  would Plaintiff and the individual Defendants also state

25  their appearances?

```
 1              MOOG, INC. VS. SYRYSE, INC, ET AL
 2              MS. ANDOH:  Hello, from Shepphard Mullin,
 3   Rena Andoh, Lai Yip, Kazim Naqvi and Travis Anderson.
 4   And from Hodgson Russ, Rob Fluskey and Pauline Muto.
 5              MR. GREEN:  From Winget Spadafora, you have
 6   Anthony Green and Alex Truitt.
 7              THE CLERK:  All right.  Thank you very much.
 8              MR. GREEN:  Sorry.  You also have Annabelle
 9   Mirales.
10              MAGISTRATE JUDGE MCCARTHY:  Good afternoon.
11   I guess afternoon for everybody now.  Good afternoon,
12   everyone.
13              MR. GROSS:  Good afternoon.
14              MR. GREEN:  Hello, your Honor.
15              THE CLERK:  Judge, we stated appearances, we
16   can call the case.
17              MAGISTRATE JUDGE MCCARTHY:  Please do.
18              THE CLERK:  We are on the record in civil
19   proceeding 22CV187, Moog Inc v. Skyryse, Inc., et al.,
20   for a discovery hearing.  Appearances by counsel have
21   been stated.  The Honorable Jeremiah J. McCarthy
22   presiding.
23              MAGISTRATE JUDGE MCCARTHY:  All right.  Good
24   afternoon, again, everyone.  Long time no see, but we
25   are back together.  Just to kind of set the stage a
```

```
 1              MOOG, INC. VS. SYRYSE, INC, ET AL
 2   little bit for what we will be addressing today, as you
 3   recall, we spoke on, now, I believe, last Friday, last
 4   Friday, yes.  And then on Monday morning, I received an
 5   e-mail from Ms. Andoh regarding the fact that the
 6   individual Defendants were not going to be allowing
 7   access to their devices, and so I set up a conference
 8   for today.  I asked for a response to that by yesterday.
 9   I did receive that response from the individual
10   Defendants.  And then last night, I've also received
11   several motions:  A motion to stay by the individual
12   Defendants; motion to seal; a motion by Moog -- or, I'm
13   sorry -- motion by Skyryse, I guess, to order a source
14   code protocol; a motion to compel by Moog.  And these
15   are docket numbers 210, 212, 213, 214 and 215.  I have
16   available this afternoon, well, from now on, I have 55
17   minutes until 4 o'clock our time.  Not that you have to
18   use the entire time, but I kind of suspect we will.
19   Then I have a couple of detention hearings on criminal
20   matters.  So, I can't go beyond 4.  And I don't intend
21   to delve in too great detail to the various motions that
22   were filed yesterday just because, A, I don't have the
23   time to do that today; B, I have not drilled down in any
24   great level of detail on the motions, although I'm
25   generally familiar with what they are seeking.  But I
```

```
 1                MOOG, INC. VS. SYRYSE, INC, ET AL
 2    want to focus, for today's purposes, on what
 3    precipitated Ms. Andoh's August 1st e-mail, the fact
 4    that the individual Defendants, I guess, shortly after
 5    our conference last week, advised Moog that they were
 6    going to rescind permission to access any of their
 7    devices due to potential Fifth Amendment concerns.  And
 8    I guess my initial question is why didn't -- I know we
 9    talked during the conference last week about the
10    possibility of a stay and the possible consequences of
11    Fifth Amendment concerns, and, in fact, I set a briefing
12    schedule on the motion to stay, which was going to be
13    argued in September, but I'm wondering why the fact that
14    the individual Defendants were going to prohibit access
15    to their devices wasn't put on the table during our
16    conference last week.
17                Mr. Green, I guess I'll ask you that.
18                MR. GREEN:  Well, it came after
19    consideration of what we discussed in that conference,
20    and also further review of documents that indicated that
21    Moog has been acting hand in glove with the FBI and
22    acting almost as an agent of the government.  And at
23    this point, given we're going to deal with the motion to
24    stay anyway, we're going to deal with Fifth Amendment
25    issues, it seems prudent to have -- to halt access, at
```

```
 1                MOOG, INC. VS. SYRYSE, INC, ET AL
 2   this point, while we determine whether we need to assert
 3   Fifth Amendment privileges.  Because, by the time that
 4   we performed our privilege review, it was for
 5   attorney/client privilege, not the Fifth Amendment
 6   privilege.  This issue arose later, and I believe we do
 7   need to go through those devices once we receive the
 8   information I believe we need.
 9                MAGISTRATE JUDGE MCCARTHY:  Well, let me
10   just say, and we'll get into the merits of that, but
11   I'll just say at the outset that I really would have
12   preferred that that would have been put in issue during
13   our last conference because then I'm hit with a ton of
14   e-mails going back and forth.  And these things could
15   have been at least flushed out in a somewhat more
16   orderly fashion had I been aware last week that this was
17   in the offing.  But, be that as it may, let me ask
18   Moog's counsel, and if there is some reason work product
19   privilege or whatever else you want to raise as to why
20   you don't want to answer this question, I'll certainly
21   consider that, but whose idea was it to commence a
22   criminal investigation?  I mean, did the Government, on
23   its own, just decide to do that, maybe reading something
24   in the paper somewhere, or did Moog precipitate the
25   criminal investigation?
```

```
 1               MOOG, INC. VS. SYRYSE, INC, ET AL
 2               MR. FLUSKEY:  Rena, do you want me to handle
 3  that?
 4               MS. ANDOH:  Sure.  I'm happy to do it,
 5  either way.
 6               MAGISTRATE JUDGE MCCARTHY:  Let me ask,
 7  because, Rob, I enjoy looking at your face every week,
 8  but you haven't said much, so I'll hear from you.
 9               MR. FLUSKEY:  Sure.  It's about time.  I'm
10  glad to have an opportunity, Judge.  Moog is not an
11  agent of the government.
12               MAGISTRATE JUDGE MCCARTHY:  That is not my
13  question.  My question was:  Did Moog precipitate the
14  criminal investigation or did the Government decide to
15  do that on its own?
16               MR. FLUSKEY:  The Government has made
17  requests for documents from Moog, and Moog has provided
18  documents to the FBI.  Those documents have been
19  produced in this litigation, your Honor.  Moog is not in
20  a position nor did it initiate proceedings, that is the
21  Government's prerogative.
22               MAGISTRATE JUDGE MCCARTHY:  I understand
23  that Moog can't initiate criminal proceedings.  I'm just
24  trying to get the lay of the land here because it does
25  strike me as -- well, let me say this.  If I were
```

1              MOOG, INC. VS. SYRYSE, INC, ET AL

2    representing Moog and if I felt trade secrets had been

3    stolen, I probably would be proceeding along two tracks

4    simultaneously as well.  But, it does seem to me we've

5    gone a bit down the road with various protocols and

6    stipulations being agreed to, and then, come to find

7    out, that there is a criminal investigation which Moog

8    clearly knew about before it commenced the civil

9    litigation.  So, I'm trying to balance fairness and

10   interest of everybody, but, I do see the individual

11   Defendants' position that when they agreed to limited

12   bases for asserting privilege, at least they claimed

13   they didn't know there was a criminal investigation

14   ongoing.

15              Before I hear from you again, let me go back

16   to Mr. Green.  Your affidavit says that you found that

17   out from the individual Defendants' criminal attorneys,

18   so, I mean, when did you learn that there was an ongoing

19   criminal investigation?  And when I say "you," I mean

20   you collectively, you or your clients or whatever.

21              MR. GREEN:  I don't know when my clients

22   did, but I believe I learned sometime in the earlier

23   part of July.  And after that, the criminal counsel had

24   to get up to speed on the case and we needed to

25   coordinate with them in order to determine the best way

```
 1                    MOOG, INC. VS. SYRYSE, INC, ET AL
 2    forward.
 3                    MAGISTRATE JUDGE MCCARTHY:  But, in any
 4    event, that was after the protocol was entered into and
 5    the various stipulations, is that right?
 6                    MR. GREEN:  Yes, and after we had made
 7    devices available.
 8                    MAGISTRATE JUDGE MCCARTHY:  Yeah.  All
 9    right.  Mr. Fluskey, back to you.  I didn't mean to cut
10    you off if there was something else you were going to
11    say.
12                    MR. FLUSKEY:  Your Honor, I would like to
13    clarify the timeline, because I don't believe the
14    timeline that you just heard is accurate.  So the
15    individual Defendants made 17 devices available to Moog
16    through IDS on June 30th.  Okay.  As of that date,
17    individual Defendants knew full well there was a
18    criminal investigation for multiple reasons.  Let's
19    start with the easiest.  I have in front of me a letter
20    I sent to your Honor on June 10th, copying everyone on
21    the Zoom call.  In that letter, Moog sought limited
22    relief from the seal in this case because the FBI had
23    requested a transcript.  Let me read to you what I said
24    in that letter.
25                    MAGISTRATE JUDGE MCCARTHY:  Let me just add,
```

```
 1              MOOG, INC. VS. SYRYSE, INC, ET AL
 2  is the letter part of the record or no?  I just don't
 3  recall it right now.
 4              MR. FLUSKEY:  Your Honor, the letter was
 5  sent by e-mail.  And then after we sent our e-mail, you
 6  asked whether the other parties consented to Moog's
 7  request for limited relief from the seal.  Skyryse
 8  promptly consented, and on June 13, Mr. Green consented.
 9  So, I don't believe it's on the docket.  I have to
10  double check that.  But there was e-mail correspondence.
11  And, actually, here is what I said in the letter.
12              "A Special Agent of the Federal Bureau of
13  Investigation has requested that Moog provide the FBI
14  with unredacted versions of the transcripts from the
15  April 26th and many conferences before your Honor.  We
16  understand that this request was made in connection with
17  an ongoing federal investigation into the files taken
18  from Moog that are the subject of this lawsuit."
19              Now, we believe the individual Defendants
20  must have known before June 10.  We don't know when they
21  got their grand jury subpoena, but, certainly, by June
22  10, they knew full well that the federal government was
23  investigating this and that the FBI was asking Moog for
24  documents relating to this case.  And they consented to
25  what I asked for in this letter.  Twenty days later,
```

1                MOOG, INC. VS. SYRYSE, INC, ET AL

2    long time to contemplate implication of Fifth Amendment

3    privilege, on June 30, the individual Defendants

4    authorized access, authorized Moog's access to 17

5    devices.  We're now hearing that somehow Moog duped them

6    into that voluntary waiver and that disclosure, and the

7    timeline belies that contention.  It's beyond dispute

8    that the individual Defendants knew that the federal

9    government was investigating this matter long before

10   they voluntarily surrendered access to those devices.

11   And, again, we don't know when the documents subpoena,

12   the grand jury document subpoena, was sent to the

13   individual Defendants, but it could have been even

14   before June 10, but there can be no question about June

15   10 that everyone knew at that point.  In addition,

16   shortly thereafter, Moog produced, in this case, its

17   communications with the FBI.  It offered -- it suggested

18   that all parties produce to each other the documents

19   produced to the government in response to subpoena.  So,

20   your Honor, Moog has been transparent on this point from

21   day one.

22                And one other important point.  The

23   individual Defendants appear to be contending that a

24   criminal investigation is somehow a prerequisite for

25   invocation of the Fifth Amendment.  That is not true.

1              MOOG, INC. VS. SYRYSE, INC, ET AL

2  It's not true at all.  Nothing prevented the individual

3  Defendants from considering these rights from day one.

4  The minute they got our Complaint, what did they know?

5  They knew Moog was accusing them of theft, theft of

6  intellectual property under the DTSA, which has a

7  criminal provision.  They knew Moog was accusing them of

8  theft of documents, documents in which the Government

9  had an interest.  It's all in the Complaint.  So, at

10  that point, Fifth Amendment rights could have been fully

11  analyzed and invoked.  But what happened after that?  We

12  spent hours of counsel's time, client's money and the

13  Court's time agreeing to a TRO.  A TRO which required

14  them to turn over these devices.  And that is an

15  important point.  That is often overlooked.  This is not

16  informal discovery.  We then spent time agreeing to an

17  ESI protocol ordered by this Court that governed the

18  relationship between IDS and counsel and the review of

19  these materials.  So, two days after our last

20  conference, when the individual Defendants unilaterally

21  cut off Moog's access, what were they doing?  They were

22  granting themselves interim relief on a motion to stay

23  that had not even been briefed and they were effectively

24  retracting compliance with two court orders.  This case

25  is busy.  We have no reason to raise collateral disputes

1            MOOG, INC. VS. SYRYSE, INC, ET AL

2     that have no consequence.  This one is consequential.

3     We have orders in place and there are directives and

4     processes.  And when the Defendants decide, without

5     bringing it to the Court's attention, without giving us

6     prior notice, without initiating a meet and confer, to

7     direct IDS to cut off our access, they were violating

8     those processes.  And what is the consequence, more

9     delay.  And in a preliminary injunction proceeding,

10    delay is prejudice to the Plaintiff per se.  We've been

11    waiting a long time to look at these devices.  If I were

12    the Defendants, I probably wouldn't want to give us

13    access either.  But that is not how the discovery

14    process works.  So, Judge, what we see in the e-mail

15    from the individual Defendants' counsel last night is

16    that somehow we misled the Court, misled them and duped

17    them into a knowing waiver of privilege.  It's just not

18    true.  It's false.  And I think the allegations are

19    irresponsibly presented, especially in light of the June

20    10th letter to the Court.

21            So, what are we asking for here?  We know

22    that the issue of privilege and waiver is going to be

23    fully briefed and heard in September.  What we're asking

24    for here, Judge, is pretty narrow.  We're asking you to

25    restore the status quo that was in place on July 27th

```
 1            MOOG, INC. VS. SYRYSE, INC, ET AL
 2   when we discussed these issues before your Honor.  At
 3   that time, Moog had access to 17 devices.  It had
 4   access, because the individual Defendants gave us
 5   access, with full knowledge of an ongoing criminal
 6   investigation.
 7            Now, one more point.  In the e-mail that we
 8   got from the individual Defendants' counsel, it seems
 9   their main argument in support of this retraction of the
10   devices is a protective order, and, specifically,
11   section 16 of the protective order.  There is a clawback
12   provision, your Honor.  Those provisions don't apply for
13   multiple reasons.  First of all, we don't think they
14   even encompass Fifth Amendment privilege.  They are
15   designed to encompass work product and attorney/client.
16   But that issue is not even ripe.  In order to invoke the
17   clawback provisions of the protective order, you need to
18   assert the privilege.  The individual Defendants have
19   asserted no Fifth Amendment privilege in this case.  And
20   under the clawback provisions, after you assert the
21   privilege, you have to identify specifically the
22   documents over which you're asserting privilege and then
23   the receiving party, here Moog, has the right to object
24   to that assertion and can retain a copy of the allegedly
25   privileged materials to assess whether the privilege
```

1          MOOG, INC. VS. SYRYSE, INC, ET AL

2    applies.  None of that happened here.  So, the

3    protective order upon which the individual Defendants

4    are relying, well, they didn't comply with it.  So that

5    argument can't apply.  And in nowhere in their e-mail do

6    we see a single case which stands for the proposition

7    that a Defendant can retract a document produced in

8    litigation or device based on the Fifth Amendment.  The

9    Fifth Amendment doesn't allow for take backs.  That is

10   what we're dealing with here.  We're dealing with

11   documents and devices that were surrendered and then

12   retracted.

13          So, again, your Honor we're not looking to

14   hear or have you rule on the fundamental issue of

15   whether this privilege can even apply or whether there

16   should be a stay.  We simply want the status quo

17   restored so we can continue to review these materials

18   while the motion is pending.

19          MAGISTRATE JUDGE MCCARTHY:  Mr. Fluskey, you

20   made a statement a few minutes ago that I, if I heard

21   you correctly, it impressed me as significant.  I think

22   what you said is, if you were in their shoes, you

23   wouldn't turn them over, either.  So it seems -- or

24   something to that effect.  It seems to me that your

25   principal argument then, at this stage then, is first,

```
 1                  MOOG, INC. VS. SYRYSE, INC, ET AL
 2    of all, you're saying they haven't asserted a privilege.
 3    I understand where they are coming from, but it seems to
 4    me that your argument is that if there was a privilege,
 5    a Fifth Amendment privilege, it has been waived by their
 6    voluntary providing of access to the devices with
 7    knowledge that a criminal investigation was either
 8    commenced or likely to commence.  Is that your argument?
 9                  MR. FLUSKEY:  Your Honor, that is one of my
10    arguments, yes.  The other, more fundamentally, is they
11    haven't asserted the privilege.
12                  MAGISTRATE JUDGE MCCARTHY:  Yeah, they
13    haven't asserted the privilege.  And what they say is
14    they will, in a protective measure, they will assert a
15    privilege over everything because they don't know what
16    exactly you're claiming to be the trade secrets that
17    they stole.  I mean, I can see that.  That gets us back
18    to what I've characterized previously as "the chicken
19    and the egg problem," which is who goes first.  And I
20    had ruled on July 22nd that Skyryse was going to be
21    obligated to give a detailed identification of its trade
22    secrets that it contended were at issue in this case,
23    excuse me, Moog, not Skyryse.  Moog was going to be
24    required to give that detailed identification, but that
25    they were going to be given the opportunity to have
```

1              MOOG, INC. VS. SYRYSE, INC, ET AL
2   access to Defendant's information solely to the extent
3   that they needed to enable themselves to make that
4   global identification so that we will not be proceeding
5   in a piecemeal fashion, for example, by starting
6   depositions and then finding out that now there is
7   another trade secret asserted and possibly having to go
8   back.  So, I clearly, in my July 22nd Decision and
9   Order, I did not order Skyryse to make that
10  identification immediately.  In fact, that is one of the
11  issues that we were or were discussing last week.
12              Let me, Mr. Green or anybody else on behalf
13  of the individual Defendants, what about that?  As Mr.
14  Fluskey was saying and making reference to these various
15  e-mails, I'm looking at my e-mail chain on Lotus Notes,
16  and I do see what he is talking about.  I think on June
17  10th, there was a request for relief.  And then there is
18  an e-mail from you saying no objection from the
19  individual Defendants.  I believe that was on June 13th.
20  So, at that point, it seems to me that you should have
21  known, if you didn't actually know, that there was the
22  potential of a criminal investigation.
23              MR. GREEN:  Well, your Honor, that
24  communication doesn't say that our clients are the
25  subject of the investigation.  That we learned later.

                    MOOG, INC. VS. SYRYSE, INC, ET AL

1

2    And what we also didn't know at the time was that, and

3    we only learned in July, that Moog was talking to the

4    FBI before the action was filed.  They have been having

5    biweekly meetings.  I suppose they have been, even

6    though they are claiming everything in this action is

7    top secret, and that is kind of inappropriate when they

8    are then funneling information right back to the

9    government.  And what we also didn't know, and let's

10   also go back to the Fifth Amendment and how important

11   this is, and a waiver is not to be inferred lightly.  It

12   has to be knowing, voluntary and intelligently waived.

13   And what we also didn't know is what we still don't know

14   today, which is what the trade secrets are, what the

15   confidential information is, what the classified

16   information is.  And as we've made clear in our papers,

17   they can make that, they can make that disclosure.

18                    They are conflating two separate issues.

19   One issue is what are the trade secrets; and the other

20   issue is were they misappropriated.  Which trade secrets

21   were downloaded by my clients.  That is what we're

22   asking them to identify.  They can do that.  They have

23   that in their information.  They've been able to tell us

24   how many files were taken.  They can go through it and

25   their own guidelines require them to mark things as

```
 1                   MOOG, INC. VS. SYRYSE, INC, ET AL
 2    trade secrets.  And Federal guidelines require you to
 3    mark things as "classified," because the person who gets
 4    them has to know what they are using, what they are
 5    being involved in.  So they can make that
 6    identification.  Whether they can go onto the second
 7    element and show misappropriation or damages, that is a
 8    different inquiry.  So, I don't think there actually is
 9    a chicken-and-egg situation.
10                   But, if we go back to the protective order,
11    I do want to point this out.  If you read the definition
12    of "privileged material," and I'll read it right here,
13    it means, "discovery material protected from disclosure
14    under the attorney/client privilege, attorney work
15    product doctrine, United States or foreign bank
16    disclosure laws or regulations and/or any other
17    applicable United States or foreign statute, law,
18    regulation, privilege or immunity from disclosure."  So,
19    this idea that it's only limited to the first two
20    examples of what privileged material is is a complete
21    red herring.  We've provided notice that we were clawing
22    it back and all it says, what we had to do is merely say
23    that it's subject to a claim of privilege or other
24    protection.  And, at this point, based on what we know,
25    it may all be.  We just don't know because Moog won't do
```

1              MOOG, INC. VS. SYRYSE, INC, ET AL

2     what every other trade secret Plaintiff does, which is

3     tell you what the case is about in the first place so we

4     can identify what should and should not be claimed as

5     privileged.  So, I think there was a great deal that we

6     did not know at the time that we made devices available,

7     that has only since come to light.

8              MR. GROSS:  Your Honor, if I may.

9              MAGISTRATE JUDGE MCCARTHY:  Yes, Mr. Gross.

10             MR. GROSS:  Thank you, your Honor.  On

11    behalf of Skyryse, we're not going to take a position on

12    this particular motion, but I do think, as a factual

13    matter, it may be helpful to point out some of the

14    chronology in the docket, including the stipulation and

15    order that required the turn over of devices to IDS that

16    was negotiated and agreed to by the parties and entered

17    by the Court back in March.  That is March 11th.  The

18    relevant docket numbers are 25 and 28.  And the

19    stipulation that required expedited discovery was the

20    next week on March 17th.  That is docket No. 33.  And I

21    offer that for full context because that was a few

22    months before the June 10th letter that Mr. Fluskey

23    pointed out.

24             MR. FLUSKEY:  May I respond, your Honor?

25             MAGISTRATE JUDGE MCCARTHY:  I didn't know if

```
1              MOOG, INC. VS. SYRYSE, INC, ET AL
2    Mr. Gross was done.  Are you done?
3              MR. GROSS:  I am.  I wanted to provide the
4    event and dates as context.
5              MAGISTRATE JUDGE MCCARTHY:  Okay.  Thank
6    you.
7              Mr. Fluskey.
8              MR. FLUSKEY:  Your Honor, the disclosure at
9    issue here today occurred on June 30th.  The 17 devices
10   that the individual Defendants decided unilaterally we
11   could no longer see were made available on June 30th.
12   There is no doubt that they knew or should have known
13   that a criminal investigation was under way when they
14   made that disclosure.  So, there is no basis for a
15   retraction under some type of fraudulent inducement
16   theory, which is what I think I'm hearing.  Now, when
17   the protective order -- so, to me, the only basis,
18   possible basis, for a clawback here is the protective
19   order.  And I think it's beyond dispute, it doesn't
20   apply.  Whether the protective order encompasses the
21   Fifth Amendment, even if it did, Section 16, the
22   clawback provision requires the assertion of the
23   privilege.  So, the provision is not even triggered if
24   you say, well, I might assert a privilege in the future,
25   I have to think about it.  And then even if you do
```

1                  MOOG, INC. VS. SYRYSE, INC, ET AL

2    assert the privilege, you got to identify with

3    particularity what is privileged and Moog would still

4    get to keep a copy for the purpose of assessing whether

5    the privilege applies.  And, your Honor, I'm not sure we

6    do believe there has been a waiver, certainly, of the

7    entire Fifth Amendment privilege, but certainly on these

8    devices.  But, what Moog is not contending is that if

9    this Court allows us to continue reviewing the 17

10   devices, that is to say, return to the status quo, that

11   that order or that forward-looking review constitutes

12   waiver.  If there was a waiver, it already happened.

13            So, again, what we're asking for is to

14   restore the status quo.  We don't see any basis in the

15   case law or in the protective order for the retraction

16   or for the clawback.  And, clearly, Moog did not conceal

17   or mislead anybody about the Government's interest in

18   this case before, at any time, and clearly not before

19   June 30th, which is when the disclosure occurred.

20            MAGISTRATE JUDGE MCCARTHY:  Okay.  Anybody

21   else want to weigh in on this issue?

22            MR. GREEN:  Yes, your Honor.  I don't see

23   anywhere in Section 16 that there needs to be a claim of

24   privilege, but --

25            MAGISTRATE JUDGE MCCARTHY:  Would somebody

```
 1                    MOOG, INC. VS. SYRYSE, INC, ET AL
 2    please turn me to the docket number for that document?
 3                    MR. FLUSKEY:  Document No. 89, your Honor.
 4                    MAGISTRATE JUDGE MCCARTHY:  Let me get to
 5    it, please.  Protective order, May 6th.  All right.
 6                    Now, Mr. Green, you were going to cite me to
 7    a particular provision of that.
 8                    MR. GREEN:  It's Section 16, but I do want
 9    to make another point.
10                    MAGISTRATE JUDGE MCCARTHY:  Let's just stick
11    on this while it's in my mind and then you can go to
12    your other point.  Let me go to Section 16.  All right.
13    Clawback.  Okay.  What were you going to say about
14    Section 16?
15                    MR. GREEN:  That it doesn't say what Mr.
16    Fluskey has been saying it says.  And, either way, we
17    are making a somewhat blanket privilege because we
18    haven't been given the information to make it any more
19    narrow.  And I wanted -- even if Mr. Fluskey was
20    correct, that making those -- making those devices
21    available could have created any sort of waiver, well,
22    then they need to tell us what they already looked at.
23    And if they've already looked at everything, then why
24    haven't they identified the trade secrets since this is
25    apparently what they've been waiting for.  If they
```

1          MOOG, INC. VS. SYRYSE, INC, ET AL

2    haven't looked at it yet, then there hasn't been any

3    waiver because it hasn't actually been disclosed.  But I

4    don't think there has been waiver, in any event, when

5    you consider all of the things that we did not know and

6    the importance of the Fifth Amendment right, and the

7    fact that we're going to be dealing with these issues on

8    the motion to stay.  And after the motion to stay,

9    however it's resolved, we're going to be dealing with

10   these issues.  So, I don't believe we need to determine

11   right now whether there is going to be a waiver,

12   especially when, you know, we continue to contend that

13   they have not identified the trade secrets, even though

14   they are able to.  They are --

15          MAGISTRATE JUDGE MCCARTHY:  But, Mr. Green,

16   the difference between now and last week when we set up

17   the briefing schedule on the stay motion, which was not

18   going to be argued until September, I think the status

19   quo or the status of events at that time was there was

20   not going to be an, at least when we were talking, now

21   later Friday, I guess that position changed, but when we

22   were talking, Moog was going to be able to continue --

23   access to the individual Defendants' devices was not

24   going to be prevented.  That just came up after the

25   conference.  So, you know, we can say, yeah, well,

1          MOOG, INC. VS. SYRYSE, INC, ET AL

2     nothing is going to be decided until September about

3     whether the action is stayed or not, but, in the

4     interim, things could have been going on and now your

5     position is that nothing can go on vis-a-vis, their

6     devices.  So, that, to me, is the difference.  Whether

7     you're right or wrong is another question.  But, that is

8     how I see it.

9          Let me ask, and I don't want to throw --

10    I'll get back to you, but I don't want to throw another

11    issue on the table that maybe is not an issue, but I

12    guess I'll direct it to Mr. Gross.  Let me preliminarily

13    address it to everybody.  Do I pretty well understand

14    that nobody knows what the government intends to do,

15    whether they intend to charge anybody, whether they

16    intend to charge the individual Defendants or Skyryse or

17    anybody, right?  Nobody knows that, is that correct?

18          MR. FLUSKEY:  Correct, your Honor.

19          MR. GREEN:  Well, I don't believe that is

20    true, because from what our client's criminal counsel

21    have been told, you know, semi recently, is that our

22    clients actually are the subject of the investigation.

23    And it's fairly rare, I don't practice criminal law, but

24    according to our counsel, it's fairly rare to be told

25    prior to the grand jury investigation that you are the

```
 1              MOOG, INC. VS. SYRYSE, INC, ET AL
 2   subject.  So, I think we do know where this is headed.
 3              MAGISTRATE JUDGE MCCARTHY:  Okay.  Do I
 4   understand correctly then, and I guess I'll ask Mr.
 5   Gross, has Skyryse received any similar type of
 6   communication from the Government?
 7              MR. GROSS:  Skyryse has been contacted by
 8   the Government, and we've communicated with them and are
 9   cooperating.  We won't purport to know what position the
10   Government may be taking, though.
11              MAGISTRATE JUDGE MCCARTHY:  Okay.  But
12   you're not asserting any privilege, any Fifth Amendment
13   privilege with respect to your information, correct?
14              MR. GROSS:  No, we are not.  On behalf of
15   Skyryse, the corporation, that's correct.
16              MAGISTRATE JUDGE MCCARTHY:  Right.  Okay.
17              MR. GREEN:  Your Honor, if I can make
18   another point.  Every disclosure that we've made, even
19   on June 30th, it was pursuant to the orders that we
20   agreed to before we, indisputably, before we had any
21   knowledge that Moog was working with the Government, was
22   having biweekly meetings, was in instigating a criminal
23   investigation of our client or had any idea that there
24   was going to be a criminal investigation, and what
25   should have stayed a civil matter.  So, all of the
```

                    MOOG, INC. VS. SYRYSE, INC, ET AL

1   disclosures flowed from orders and agreements that were

2   entered into without that knowledge.

3                   MAGISTRATE JUDGE MCCARTHY:  All right.

4   Anybody else on this issue?

5                   MR. FLUSKEY:  Your Honor, if I could just

6   very briefly.

7                   MAGISTRATE JUDGE MCCARTHY:  Yes.

8                   MR. FLUSKEY:  There is a fundamental process

9   here in addition to this set of issues, which is, the

10  individual Defendants shouldn't be permitted to exercise

11  self help like this.  We were here just on the 27th and

12  discussed these issues.  They did not seek emergency

13  relief, interim relief.  They just took it upon

14  themselves to claw back access to these devices where

15  there are two orders at issue that govern.  And we just,

16  we don't think that conduct can be, should be,

17  permitted.  That, in itself, we believe is enough to

18  restore the status quo.  But, in addition to that

19  process point, there is no basis for the retraction of

20  Moog's access to these materials.  The protective order

21  doesn't provide for it.  And there is not a single case

22  cited in these e-mails that allows for a take back under

23  the Fifth Amendment after you've made documents

24  available to an adversary.

```
 1              MOOG, INC. VS. SYRYSE, INC, ET AL
 2              MR. GREEN:  Your Honor, there is a clawback
 3     provision.
 4              MAGISTRATE JUDGE MCCARTHY:  Counsel, and I'm
 5     going to look at the clawback provision, let me just say
 6     this.  I'm going to say this to all of you.  As you
 7     know, if you look at your clocks, Buffalo time, it is
 8     now 3:41, so I have 19 more minutes to give to you and
 9     then, much as I would love to stay on with you, I have
10     to go to other matters.  And I mean that.  I'm not being
11     sarcastic when I say, "love to stay on with you,"
12     because we need to.  I need to fully understand what's
13     at play here.  But, nonetheless, what I intend to do,
14     because, basically, this particular issue that we've
15     been talking about here has all come up by way of an
16     e-mail or e-mail exchange.  It has not come up by way of
17     formal motion practice.  And I think I need to rule on
18     that.  And I want to do that on a more formal record,
19     which we can accelerate as quickly as you want to do.
20     But, I think we need to do that.  So I'm going to come
21     back to that in a minute, and we can talk about more
22     briefing, you know, an accelerated briefing schedule on
23     that issue.  We'll talk about the other motions on some
24     other day.
25              Let me ask you this.  It occurs to me now --
```

```
 1                   MOOG, INC. VS. SYRYSE, INC, ET AL
 2      well, let me ask a preliminary question first.  Skyryse
 3      is in California, correct?
 4                   MR. GROSS:  Yes, your Honor, (inaudible)
 5      California, Central District.
 6                   MAGISTRATE JUDGE MCCARTHY:  The individual
 7      Defendants are in California, correct?
 8                   MR. GREEN:  That is correct, your Honor.
 9                   MAGISTRATE JUDGE MCCARTHY:  When they were
10      working for Moog, were they in California?
11                   MR. GREEN:  Yes, they were.
12                   MAGISTRATE JUDGE MCCARTHY:  So, we now have
13      a criminal investigation in California that may or may
14      not result in criminal charges, and we have a civil case
15      in New York, as to which motions are pending before
16      Judge Vilardo for either dismissal for lack of
17      jurisdiction or for transfer of venue.  In light of the
18      criminal developments, does anybody intend to supplement
19      those motions and bring this information to Judge
20      Vilardo's attention?  Because, frankly, and I have not
21      studied those issues, but if we stay in New York on the
22      civil case and we've got a criminal investigation in
23      California, that may or may not result in criminal
24      charges.  If it does, I presume those charges are going
25      to be brought in California.  I'm just wondering in
```

1            MOOG, INC. VS. SYRYSE, INC, ET AL

2   terms of judicial efficiency, what is the best way to

3   proceed.  Those motions are not before me, but it seems

4   to me somebody may want to bring these developments to

5   Judge Vilardo's attention.  If anybody wants to react to

6   that, you're welcome to, or, if you chose not to, that

7   is your prerogative as well.

8            MR. GROSS:  Your Honor, this is Mr. Gross

9   for Skyryse.  And I appreciate you bringing up the

10  issue.  It's a little sensitive.  We understand the

11  confidentiality concerns around any government

12  investigation, which Skyryse, of course, respects.  It

13  is our understanding that an investigation by the

14  Government in the Central District of California, if it

15  were to lead to charges, would be to charges there.  And

16  we think it's important the Court, and you obviously

17  understand, that there are these other proceedings

18  pending in that jurisdiction.  So, we would like a

19  little time to think about if and when and whether to

20  formally raise the issue with Judge Vilardo.  I know

21  that the two proceedings, while they have some factual

22  overlap, are not technically related, but we appreciate

23  the time to think about it.

24            MAGISTRATE JUDGE MCCARTHY:  How can they not

25  be related?

1          MOOG, INC. VS. SYRYSE, INC, ET AL

2          MR. GROSS:  As a matter of proceedings, any

3     criminal investigation --

4          MAGISTRATE JUDGE MCCARTHY:  I mean, they are

5     not obviously consolidated, they can't be, but I got to

6     believe that whatever the criminal investigation is is

7     in some way related to the issues in this civil

8     litigation.  I mean, how can they not be?

9          MR. GROSS:  I certainly agree that the

10    factual issues overlap.  I don't mean to suggest

11    otherwise.  I mean, as a matter of judicial proceedings,

12    I don't view them as one in the same.

13          MR. GREEN:  Right, right.

14          MAGISTRATE JUDGE MCCARTHY:  I didn't

15    understand you to be suggesting that.  All right.  All

16    right.  Well, in any event, let's go back to what we're

17    going to do about this issue of the so-called self help,

18    and I'll just use Mr. Fluskey's characterization,

19    whether that is accurate or not, but, in any event, the

20    issue on the table and the reason I scheduled this

21    hearing today was to address solely that issue, which is

22    can the Defendant, the individual Defendants, be allowed

23    to block access to their information based on a Fifth

24    Amendment.  And I would like to just get a more formal

25    record on that issue.

1            MOOG, INC. VS. SYRYSE, INC, ET AL

2            So, Mr. Green, you took the step initially,

3    so I think it should be -- well, I don't care who brings

4    it formally first, one side or the other, but somebody

5    has either got to make a motion for relief in respect to

6    that, and I will you know, we'll get to it as quickly as

7    we can.  But you tell me when you can file motions and

8    respond, et cetera.  I'm all ears.

9            MS. ANDOH:  Your Honor, if I can, I think, I

10   don't know that it's proper for us, the moving party, to

11   reserve the status quo, so I'm a little concerned about

12   taking on the responsibility of being the one to file

13   the motion, because it seems like the burden should be

14   on them to demonstrate why it is that they have the

15   right to disrupt the status quo in this instance.

16   Having said that, your Honor, given the nature of the

17   issue here and the speed with which we require

18   resolution of it, can I just suggest that we, instead,

19   do a simultaneous submission and it be deemed a motion,

20   because you already have all sides' position, so then

21   you can set a date for submission.

22            MAGISTRATE JUDGE MCCARTHY:  Ms. Andoh, that

23   is fine with me.  I just don't want anybody saying

24   you're deciding something on e-mails that are not part

25   of the record.  We've had this informal procedure, which

1          MOOG, INC. VS. SYRYSE, INC, ET AL
2    was my suggestion, and I've used it in other cases, but
3    I do recognize as well that there are limits to when
4    that procedure is or is not appropriate.  And I think
5    since either the individual Defendants are asking me to
6    give judicial approval to what they've done or Moog is
7    asking me to tell them they can't do that, so, court
8    relief is being requested one way or the other, and I
9    just, if you want to do a simultaneous submission, that
10   is fine with me.  However you want to do it will work.
11   I do recognize that this is an issue that needs to be
12   decided sooner or later, and I also recognize that.  And
13   I'm not saying which way I'll go on this.  Frankly, I
14   don't know.  But if I were to say to the individual
15   Defendants, no, you have to provide access since it
16   arguably involves a question of privilege and Fifth
17   Amendment, and I recognize the opposing view that it
18   doesn't, but, in any event, I would probably stay my
19   decision to give, at least for a short period of time,
20   to give somebody the opportunity to seek further review
21   by Judge Vilardo.  And I'm not suggesting that you take
22   it to him initially, because I think it makes more sense
23   to let me rule on it initially.  I'm much more familiar
24   with the underlying facts right now than he is.
25   Although, I will point out that his law clerk, Will

```
 1              MOOG, INC. VS. SYRYSE, INC, ET AL
 2    Haze, is listening in, so if he, in consultation with
 3    Judge Vilardo, wants to take a crack at it instead of
 4    me, I say God bless you, go ahead.  But, if not, I will
 5    take the first shot at it.  Okay.
 6              So, having said all of that, who wants to
 7    file what and when?
 8              MS. ANDOH:  Your Honor, I would just suggest
 9    that we, I mean, once again, the advantage of your
10    Honor's procedures is that everybody is very clear on
11    the positions that both sides are taking.  There are no
12    surprises at this point.  The issues have been flushed
13    out thoroughly with respect to both sides.  Given that,
14    I renew my suggestion the Court order a simultaneous
15    submission of briefs, and it be a single shot, because,
16    again, I mean, both sides have already submitted their
17    opening shot, so to speak, and your Honor has flushed
18    out the issues in a very detailed manner in this
19    briefing.  So, you know, I think it would make sense,
20    and, again, we don't want to wait until September
21    because, from our perspective, the status quo and our
22    ability to move towards making this identification that
23    your Honor instructed us to make is being impacted by
24    this revocation, so --
25              MAGISTRATE JUDGE MCCARTHY:  Ms. Andoh.
```

```
 1                  MOOG, INC. VS. SYRYSE, INC, ET AL
 2                MS. ANDOH:  I think maybe the 11th, a week,
 3    we submit to you, and you have both sides briefs.  And
 4    then if you require further argument, we're happy to
 5    provide it, but, otherwise, it just goes to your Honor.
 6                MAGISTRATE JUDGE MCCARTHY:  You're
 7    suggesting the 11th?
 8                MS. ANDOH:  I would suggest sooner, but I
 9    assume that we're going to get objections on it.  I
10    think we could submit briefs on Monday, on the 8th.  I
11    don't think anything new is going to get argued here.
12                MAGISTRATE JUDGE MCCARTHY:  Mr. Green, did
13    you want to say something?
14                MR. GREEN:  Your Honor, I'm fine with
15    simultaneous submissions on the 11th, but I think we
16    should also be able to simultaneously submit opposition
17    on the 18th, because if what we're submitting on the
18    11th is it, and Ms. Andoh is suggesting that everything
19    has already been laid out in e-mails, I don't believe it
20    has.  There would be no reason for briefing if we're not
21    going to address potential other legal arguments that
22    are made.
23                MAGISTRATE JUDGE MCCARTHY:  Mr. Green, okay,
24    here is what I'm going to do.  And I don't mean to ruin
25    anybody's weekend, but so be it.  Simultaneous briefing
```

```
 1              MOOG, INC. VS. SYRYSE, INC, ET AL
 2   by August 11th, reply briefing by August 15th.  And then
 3   I will decide it on the submissions.  I don't need any
 4   additional further argument.  And I would just suggest
 5   that, you know, there is -- reference has been made
 6   today to, like, the June 10th letter and various
 7   e-mails.  Make those factors part of the record in some
 8   fashion or other, okay?  And, again, I'm not saying that
 9   I'm swayed by the June 10th letter or not, but I
10   certainly want to consider all of that.  Okay?
11              MR. GROSS:  Your Honor, if I can just raise
12   one related issue.  Whether or not there will be
13   discovery available from the individual Defendants,
14   obviously, has an impact on Skyryse, as much as the
15   other parties, and how this case will be resolved.  In
16   the meantime, there are lots of related discovery issues
17   and deadlines pending.  And coming up, there are
18   subpoenas that require responses to.  I'd like to
19   suggest that, since this Fifth Amendment issue is tied
20   to the stay issue, which that affects all discovery, I
21   would like to suggest a vacatur of all pending discovery
22   deadlines until the issue is resolved.
23              MS. ANDOH:  I believe Judge McCarthy
24   actually ordered that at the last hearing.
25              MR. GROSS:  If that is the Court's intent,
```

```
 1              MOOG, INC. VS. SYRYSE, INC, ET AL
 2   then I really appreciate that clarification.  That would
 3   be fine with Skyryse.
 4              MAGISTRATE JUDGE MCCARTHY:  Consider it
 5   clarified.
 6              MR. GROSS:  Thank you.
 7              MAGISTRATE JUDGE MCCARTHY:  All right.  Then
 8   I will -- we'll proceed along those timelines.  And,
 9   again, the other motions that were filed, we will get to
10   them, but we'll take it from there.  And thank you all
11   and I brought it in with seven minutes to spare.  So
12   there we go.  Thank you all.
13              MR. GREEN:  Thank you, your Honor.
14              MS. ANDOH:  Thank you, your Honor.
15              MR. GROSS:  Thank you, your Honor.
16                        *    *    *
17                 CERTIFICATE OF REPORTER
18
19      I certify that the foregoing is a correct transcript
20   of the record to the best of my ability of proceedings
21   transcribed from the audio in the above-entitled matter.
22
23   S/ Karen J. Clark,  RPR
24   Official Court Reporter
25
```