# Exhibit A

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MOOG, INC.,<br><br>               Plaintiff,<br><br>  v.<br><br>SKYRYSE, INC., ROBERT ALIN PILKINGTON, MISOOK KIM, and DOES NOS. 1-50.<br><br>               Defendants. | Civil Action No. 1:22-cv-00187-LJV-JJM<br><br>**SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANT SKYRYSE'S MOTION TO DISMISS OR, ALTERNATIVELY, TO TRANSFER VENUE** |

**TABLE OF CONTENTS**

                                                                      **Page**

I.     INTRODUCTION ...................................................................................................1

II.    RECENT DEVELOPMENTS CONFIRM THAT MOOG'S COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE. ..........................................................................................2

III.   IN THE ALTERNATIVE, THIS MATTER SHOULD BE TRANSFERRED TO THE CENTRAL DISTRICT OF CALIFORNIA. .................................................6

IV.   DISMISSAL OR TRANSFER WILL NOT PREJUDICE MOOG ..................................10

V.    CONCLUSION.......................................................................................................11

# **TABLE OF AUTHORITIES**

Page(s)

## CASES

*Carpenter v. U.S. Dep't of Just.*,
   No. 3:05CV172AWT, 2005 WL 1290678 (D. Conn. Apr. 28, 2005) .........................................8

*In re CenturyLink, Inc. Sec. Litig.*,
   No. 13 Civ. 03839(LTS), 2014 WL 1089116 (S.D.N.Y. Mar. 18, 2014)..................................6

*Houlihan Lokey Howard & Zukin Cap., Inc. v. Protective Grp., Inc.*,
   No. 05 CIV 4741 DC, 2005 WL 3367044 (S.D.N.Y. Dec. 12, 2005).......................................4

*Ikon Office Sols., Inc. v. Rezente*,
   No. 09-4178, 2010 WL 395955 (E.D. Pa. Feb. 3, 2010) ...........................................................4

*Moog, Inc. v. Newport Aeronautical, Inc.*,
   No. 14-CV-00504A(F), 2016 WL 3444238 (W.D.N.Y. June 23, 2016) ..................................7

*Multiform Desiccants, Inc. v. Sullivan*,
   No. 95-CV-0283E(F), 1996 WL 685744 (W.D.N.Y. Nov. 26, 1996),
   *on reconsideration*, No. 95-CV-0283E(F),
   1997 WL 9782 (W.D.N.Y. Jan. 2, 1997)...................................................................................7

*N.Y. Mar. and Gen. Ins. Co. v. LaFarge N. Am.*,
   599 F.3d 102 (2nd Cir. 2010).....................................................................................................7

*S.E.C. v. Roberts*,
   No. CIV.A.07 407 EGS, 2007 WL 2007504 (D.D.C. July 10, 2007) ...................................7, 8

*Walden v. Fiore*,
   571 U.S. 277 (2014)...................................................................................................................2

*Whitehaus Collection v. Barclay Prods., Ltd.*,
   No. 11 Civ. 217, 2011 WL 4036097 (S.D.N.Y. Aug. 29, 2011) ...............................................6

## STATUTES

28 U.S.C. 1391(b) .............................................................................................................................3

## RULES

Fed. R. Civ. P. 45(c)(1)(A)-(B)(ii)....................................................................................................9

Fed. R. Civ. P. 45(d)(3)(B) ...............................................................................................................9

ii

**I.      INTRODUCTION**

Defendant Skyryse submits this supplemental brief in support of its Motion to Dismiss or, Alternatively, to Transfer Venue. (ECF No. 48, amended on May 20, 2022 at ECF No. 117.) Recent developments have confirmed that this Court is not the right venue for this action, which was brought against a California company and two California citizens, based on alleged conduct that occurred in California, with virtually all of the witnesses and evidence located in California.

After months of expedited discovery intended to aid in resolving Plaintiff Moog's motion for a preliminary injunction – discovery to which Skyryse agreed only subject to an express reservation of its challenge to jurisdiction and venue (ECF No. 25, ¶ 11; ECF No. 33, ¶ 14) – it is now clearer than ever that the only proper venue for this action is the Central District of California. Three recent developments support Skyryse's pending motion to dismiss or transfer venue: (1) as counsel for Moog has disclosed to this Court, the United States Attorney's Office for the Central District of California, following a referral from Moog, opened an investigation premised on the same alleged conduct in California that underlies Moog's claims; (2) in expedited discovery, Moog has requested millions of files located in California and has subpoenaed *thirteen* non-party witnesses, each of whom resides in California, and none in New York; and (3) Moog has taken positions in the earliest stages of this case that undermine its claim that venue is proper or appropriate here in New York. These new developments reinforce the obvious: that this case has numerous, substantial, and undeniable connections to the Central District of California and little to none to this District. Against this backdrop, the Court raised with the parties at the last hearing the prospect of supplementing the briefing regarding venue (Ex. 1, Aug. 4, 2022 Tr. 29:12-30:7), and Skyryse now takes this opportunity to do so.

1

## II. RECENT DEVELOPMENTS CONFIRM THAT MOOG'S COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE.

First, and unbeknownst to Skyryse at the outset of this action or when it moved the Court to dismiss or transfer venue, the United States Attorney's Office for the Central District of California has opened an investigation into the facts at the center of this case. Based on a secret referral from Moog, which had been communicating with the FBI for months, the Government's investigation appears to be premised on the same conduct on which Moog bases its complaint. (*See* Ex. 2, June 10, 2022 Moog letter to the Court (describing the "ongoing federal investigation into *the files taken from Moog that are the subject of this lawsuit*."[1]).) Based on facts that Moog had unilaterally presented to it, the Department of Justice chose to open an investigation in California, not New York. Moog's own actions only confirm what Skyryse has said all along: a "substantial part" of the alleged events giving rise to Moog's claim occurred in California, not in the Western District of New York. If the Court declines to dismiss or transfer this action, the parties will be forced to engage in parallel legal processes on opposite sides of the country, wasting judicial and party resources.

Second, discovery has confirmed that jurisdiction and venue are not proper in the Western District of New York. To avoid dismissal, Moog must show that Skyryse is either "at home" in New York or "the defendant's suit-related conduct . . . create[s] a substantial connection with the forum State," *Walden v. Fiore*, 571 U.S. 277, 284 (2014), and that venue is proper because "a substantial part of the events or omissions giving rise to [Moog's] claim occurred" in the district.[2]

---

[1] All emphasis in quotes has been added unless otherwise indicated.

[2] Skyryse has its principal place of business in the Los Angeles area and the individual defendants reside in Torrance, California (Compl. ¶¶ 11-13; Motion, ECF No. 48 at 3-4; Amended Motion, ECF No. 117 at 14), so none of the defendants reside in the Western District of New York.

2

28 U.S.C. 1391(b). Expedited discovery has confirmed that Moog has not made and cannot make this showing.

The discovery Moog has chosen to pursue in the past four months is entirely from California. At Moog's request, Skyryse imaged and searched 37 computer devices containing millions of files, all originally located in California and belonging to California-based current and former Skyryse employees. Skyryse turned over a number of these entire devices to the neutral forensic vendor, iDS, for inspection by Moog's counsel. On top of the substantial discovery Moog has sought from Skyryse, Moog has also subpoenaed thirteen non-parties, all of whom live in California, seeking extensive discovery from their personal devices (also located in California).[3] Of these thirteen California residents, three are not employed by Skyryse or in its control. Moog has not subpoenaed anyone in New York. Moog's focus on taking discovery from witnesses in California confirms that the conduct underlying its claims occurred entirely in California, and the evidence and testimony Moog will attempt to marshal in support of its claims are in California as well.

Finally, the positions Moog has recently taken in discovery undermine its claim that venue is proper or convenient here in New York. In opposing Skyryse's venue motion, Moog originally told the Court that "all of the data copied by Kim is located on Moog's internal servers in East Aurora, New York" (ECF No. 62, at 6), but since then it has claimed it does not even know what files were taken because it does not have access to those files on its own servers and that the key documents all are to be found in Defendants' and iDS's possession. (*See, e.g.,* ECF 170, June 1,

---

[3] Moog subpoenaed one of these witnesses at an incorrect address in Oregon City, Oregon but he is a California resident who lives in Los Angeles. Even if he did reside in Oregon, however, the Central District of California is far more convenient for an Oregon resident than the Western District of New York, 2,500 miles away.

3

2022 Hearing Tr. 30:3-6 ("We keep being told we need to identify our trade secrets with more specificity, but, *the only possible location in which our file[s] still exist is with the neutral vendor because Defendants turned them over*.")) Moog has repeatedly argued that Defendants' devices, obtained from California-based employees and turned over to iDS in California – rather than any data currently on its servers in New York – are the key to determining which of Moog's trade secrets are at issue in the case. (*See* Opposition to Skyryse's Motion to Compel Trade Secret Identification (ECF No. 180) at 12 ("Moog will not be able to connect the dots and understand the full extent of what was taken until it has had an opportunity to completely evaluate the Skyryse's [sic] devices and files turned over to iDS.").)

Moog's recent briefing also confirms that most of the data it now alleges was misappropriated was copied from Moog devices located in California, despite its earlier claim that all the data at issue was accessed from New York servers. (*See, e.g.*, Motion to Compel Discovery, ECF No. 210 at 8; Declaration of Bruce Pixley ("Pixley Decl."), ECF No. 210-2 ¶¶ 10-12.) While Skyryse disagrees that the location of Moog's servers has any relevance to an analysis of proper venue,[4] Moog claims that these servers are critical to the venue analysis. In opposing Skyryse's motion, Moog argued that Skyryse's "*most significant New York-based wrongful conduct*" was Skyryse's alleged "misappropriation of Moog's data *located in New York* via its conspiracy with Kim and Pilkington

---

[4] *See* Motion (ECF No. 48) at 21-22 and Amended Motion (ECF No. 117) at 21-22 (establishing that the operative events for purposes of a venue analysis is where Moog's trade secrets were allegedly accessed, disclosed, or used, which Moog alleges was is in California); *Ikon Office Sols., Inc. v. Rezente*, No. 09-4178, 2010 WL 395955, at *3 (E.D. Pa. Feb. 3, 2010) (rejecting argument that venue was proper in Pennsylvania: even "[a]ssuming the data that defendants accessed was stored on computers located in Pennsylvania, the defendants allegedly accessed the data from computers in California"); *Houlihan Lokey Howard & Zukin Cap., Inc. v. Protective Grp., Inc.*, No. 05 CIV 4741 DC, 2005 WL 3367044, at *5 (S.D.N.Y. Dec. 12, 2005) (holding that the location of plaintiff's servers in New York is of "little importance" – "[t]he point of a virtual 'data room' is that it is electronic and can be accessed from anywhere.").)

4

*to access Moog's New York based server.*" (Moog's Memorandum in Opposition to Skyryse's Motion to Dismiss or Transfer Venue, ECF No. 62 at 14, 22.) Yet in briefing to the Court over the course of expedited discovery, Moog has focused its allegations on conduct that overwhelmingly occurred using devices situated in California, not using these New York servers. Even if the evidence were to show that any allegedly misappropriated trade secrets once were electronically stored on a server in New York, this does nothing to change the facts that all the defendants' acts that Moog complains of occurred in California and that Moog now disclaims those New York servers as containing the relevant files.

For example, Moog recently filed a declaration from its forensics expert, Bruce Pixley (who lives in California), emphasizing that the alleged copying by Defendant Pilkington was from his Moog laptop (which was located in California) to his personal USB drive (which was also located in California). (*See* Pixley Decl., ECF No. 210-2 ¶ 10.b ("On October 27, 2021, at 9:40 a.m., Pilkington plugged in the Buffalo[5] Device for the first time and copied over 1 million files and folders to this device, *which was effectively a complete backup of his Moog laptop*" and that "[o]n November 12, 2021, [Mr. Pilkington] created an updated copy of data *from his Moog laptop to a folder called '11-12-2021.'*"); *id.* ¶ 12 ("During my analysis, I found that both Pilkington and Kim actively used USB storage devices to copy Moog's data prior to their departure from Moog.")) Under Moog's own theory, then, Pilkington copied Moog's files using local storage devices in Torrance, California, while he was employed in Moog's Torrance office. Moog never alleges that Pilkington came to New York, or even that he accessed Moog's New York servers remotely.

In addition, while Moog previously claimed that "[a]ll of the data copied by Kim *is located on Moog's central servers in East Aurora, New York*" (ECF No. 1 ¶ 112), Moog has recently

---

[5] Buffalo refers to the manufacturer of the external hard drive.

refused to confirm the accuracy of this statement, claiming instead that the "files that were taken … are *located on the devices* that Moog produced to iDS on June 1," referring to several Moog-issued devices that Pilkington and Kim used in the course of their employment at Moog's office in Torrance, California. (Ex. 3, Aug. 5, 2022 email from K. Naqvi.) Discovery has substantially undermined Moog's claim that any significant conduct material to its claims occurred in New York.

### III. IN THE ALTERNATIVE, THIS MATTER SHOULD BE TRANSFERRED TO THE CENTRAL DISTRICT OF CALIFORNIA.

If the Court declines to dismiss Moog's claims against Skyryse for lack of personal jurisdiction or improper venue, the interests of justice and convenience of the parties weigh heavily in favor of transferring this case to the Central District of California. That is where the parties and witnesses are separately engaged in a related criminal investigation and where, as discovery has confirmed, the vast majority of witnesses and evidence are located.

As discussed in Skyryse's motion, Section 1404(a) lays out a two-part test to aid a district court in determining whether an action should be transferred: "First, the transferee district must be one where jurisdiction over the defendant could have been obtained at the time the suit was brought, regardless of defendant's consent..…... Second, the transfer must be in the interest of justice and convenience of the parties and witnesses." *In re CenturyLink, Inc. Sec. Litig.*, No. 13 Civ. 03839(LTS), 2014 WL 1089116, at *1 (S.D.N.Y. Mar. 18, 2014) (alterations omitted) (quoting *Whitehaus Collection v. Barclay Prods., Ltd.*, No. 11 Civ. 217, 2011 WL 4036097, at *1 (S.D.N.Y. Aug. 29, 2011)). To assess whether justice and convenience would be served by a transfer, courts evaluate: "(1) the plaintiff's choice of forum, (2) the convenience of the witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling

witnesses, [] (7) the relative means of the parties," (8) the forum's familiarity with the governing law, and (9) trial efficiency and the interests of justice. *Moog, Inc. v. Newport Aeronautical, Inc.*, No. 14-CV-00504A(F), 2016 WL 3444238, at *3 (W.D.N.Y. June 23, 2016) (citing *N.Y. Mar. and Gen. Ins. Co. v. LaFarge N. Am.*, 599 F.3d 102, 112 (2nd Cir. 2010). Recent developments make clearer than ever that the balance of these factors weighs heavily in favor of transfer to the Central District of California.

First, the fact that the United States Attorney's Office is conducting a parallel investigation in the Central District of California weighs heavily in favor of a transfer; not only does it reaffirm that the bulk of the relevant evidence and witnesses are located in California (factor no. 3), but it implicates the convenience of witnesses participating in both proceedings (factor no. 2) and the efficient use of judicial resources (factor no. 9). Any charges or future proceedings that might arise from this pending criminal investigation are expected to be brought in the Central District of California, resulting in legal process, evidence-gathering, and witness testimony in California. Courts regularly transfer cases to another jurisdiction where a related case is being handled. *S.E.C. v. Roberts*, No. CIV.A.07 407 EGS, 2007 WL 2007504, at *3 (D.D.C. July 10, 2007) (granting motion to transfer case from the District of Columbia to Northern California where "defendant is facing criminal charges in Northern California stemming out of exactly the same conduct at issue in this case."); *Multiform Desiccants, Inc. v. Sullivan*, No. 95-CV-0283E(F), 1996 WL 685744, at *2 (W.D.N.Y. Nov. 26, 1996), *on reconsideration*, No. 95-CV-0283E(F), 1997 WL 9782 (W.D.N.Y. Jan. 2, 1997) ("Closely related litigation in another forum is a persuasive factor favoring transfer thereto.")

This is for good reason: it makes little sense for two different jurisdictions across the country to expend resources managing cases predicated on identical facts. Even though one of the cases

7

is civil and the other, potentially, is criminal and they could not be consolidated, each necessarily will impact the other. This has already begun, as the individual defendants have moved to stay this action pending resolution of the criminal investigation, so they can ascertain whether and how to assert their Fifth Amendment rights. (ECF No. 214.) This "demonstrates . . . that the cases are closely related, and a court handling both would be in a better position to manage and supervise discovery and trial in each case" should charges eventually be brought in the criminal case. *Roberts*, 2007 WL 2007504 at *5 (rejecting plaintiff's argument that "the existence of the parallel criminal case is irrelevant because it could not be consolidated with this case."). Moreover, because the Government's investigation is proceeding in California, Moog will be involved in fact-gathering and potentially litigation in California anyway, and thus "a transfer to [California] does not result in [its] being sent off to some district with which [it] has no connection." *Carpenter v. U.S. Dep't of Just.*, No. 3:05CV172AWT, 2005 WL 1290678, at *1 (D. Conn. Apr. 28, 2005). To the contrary, Moog has a well-established presence, facilities, and hundreds of people in Torrance, California.

      Second, the discovery Moog has taken confirms that "the location of relevant documents and relative ease of access to sources of proof" (factor no. 3) weighs in favor of transfer to California. Moog demanded that Skyryse image and search 37 devices, all located in California and belonging to California-based current and former Skyryse employees, and turn over many of them to the neutral discovery vendor. Skyryse has also produced directly to Moog, at Moog's request, thousands of documents and emails from its databases in its El Segundo, California headquarters. And Moog has subpoenaed thirteen non-parties based in the Los Angeles area, demanding a wide range of documents from their personal devices, also located in California. Moog has not sought a shred of dis-

covery from New York, nor could it, because all of Moog's allegations focus on activity that allegedly occurred only in California, and any evidence supporting its claims is therefore also located in California. The location of relevant discovery weighs heavily in favor of transfer to California.

Finally, the convenience of the thirteen (and counting) California-based witnesses Moog has subpoenaed (factor no. 2) – and the availability of process to compel their attendance at trial (factor no. 6) – also favor transfer. All of these non-party witnesses live in or around Los Angeles, California, and the sweeping subpoenas Moog has served on them have already imposed significant burden on them. Forcing these non-parties to testify in New York[6] would impose further burden, expense, and inconvenience – not to mention on the individual defendants and dozens of other California-based Skyryse employees who have also been wrapped up in this suit. Moreover, any motions to quash these subpoenas or compel the production of documents in connection with these subpoenas necessarily will be heard in the Central District of California, *see* Fed. R. Civ. P. 45(d)(3)(B), creating the risk that, if this case is not transferred, two different jurisdictions across the country will be adjudicating overlapping discovery issues and could reach inconsistent results. Not only would this be an inefficient use of judicial resources, it would also double the burden on the California-based witnesses and litigants forced to participate in litigation in two far-flung jurisdictions.

---

[6] Moog argued in its Opposition to Skyryse's Motion to Transfer Venue (ECF No. 62) that "all properly identified witnesses will be required to testify in New York as employees of either Skyryse or Moog." (Opp., ECF No. 62, at 21.) Yet among the individuals Moog has subpoenaed are at least three former employees of Skyryse whose availability at trial is outside of Skyryse's control. And there are no guarantees more relevant witnesses will not leave the employ of either party. To the extent Moog intends to compel the attendance of these non-parties at trial, they will be outside of the Court's subpoena power because they are not within 100 miles of the courthouse and do not live in or regularly do business in the state. Fed. R. Civ. P. 45(c)(1)(A)-(B)(ii).

## IV. DISMISSAL OR TRANSFER WILL NOT PREJUDICE MOOG

Dismissal or transfer to the Central District of California will not materially inconvenience or prejudice Moog. Moog already has a significant presence in this district, with offices in California – including at three locations in Torrance – and hundreds of California employees (ECF No. 48-4). It has long been cooperating with a parallel criminal investigation in the Central District of California, which will require fact-finding and potentially litigation in that district. Moog claims that "[t]ransferring this case to the Central District of California would also impede and interfere with Moog's ability to obtain injunctive relief" and that "any delay is irreparably harmful" (Opp., ECF No. 62 at 22), but this is plainly untrue. Skyryse has already stipulated to the entirety of the preliminary relief Moog requested, eliminating any purported urgency. (ECF Nos. 25, 28). Although Moog has intimated for months that it might take some steps to seek different forms of preliminary injunctive relief, it has not filed any such motion or explained what additional relief it plans to seek. (*See, e.g.*, ECF No. 214-3, July 15, 2022 Hearing Tr. at 24:18-25:2 ("[Y]our Honor, when you asked us, did we intend to modify the relief we were seeking and did we intend to do anything in terms of modifying the motion for preliminary injunction, and I believe I answered at the time that we always knew that discovery was going to influence the way in which these things were going to be sought, ultimately.")) Even if Moog does get around to moving for some additional "emergency" relief beyond what it already has received by stipulation, its delay in doing so undermines any claim of urgency, and there is no reason why the court in the Central District of California could not fairly and efficiently resolve such a motion. This case remains in its early stages, and Moog will not be prejudiced by dismissal or transfer.

## V.  CONCLUSION

Skyryse has endeavored in good faith to move this case forward, even while its venue challenges are pending, by engaging in expedited discovery related to Moog's requests for a temporary restraining order and preliminary injunction. The discovery taken so far has confirmed that venue is proper and convenient only in the Central District of California, and it would be fundamentally unfair for the remainder of this action to be litigated in New York. In the interests of justice, this action should be dismissed for lack of personal jurisdiction or improper venue, or in the alternative, transferred to the Central District of California. Skyryse respectfully requests that Moog's Complaint be dismissed or, in the alternative, that the Court transfer this action to the United States District Court for the Central District of California.

Dated: August 9, 2022                            /s/ Gabriel S. Gross

**LATHAM & WATKINS LLP**

Douglas E. Lumish (Admitted *Pro Hac Vice*)
Gabriel S. Gross
Arman Zahoory (Admitted *Pro Hac Vice*)
Ryan Banks (Admitted *Pro Hac Vice*)
140 Scott Drive
Menlo Park, California 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600
Email: doug.lumish@lw.com
           gabe.gross@lw.com
           arman.zahoory@lw.com
           ryan.banks@lw.com

Joseph H. Lee (Admitted *Pro Hac Vice*)
650 Town Center Drive, 20th Floor
Costa Mesa, California 92626
Telephone: (714) 540-1235
Facsimile: (714) 755-8290
Email: joseph.lee@lw.com

Julianne C. Osborne (Admitted *Pro Hac Vice*)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
Email: julianne.osborne@lw.com

**HARRIS BEACH PLLC**
Terrance P. Flynn
726 Exchange Street, Suite 1000
Buffalo, New York 14210
Telephone: (716) 200-5050
Email: tflynn@harrisbeach.com

Counsel for Defendant Skyryse, Inc.