UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MOOG INC.,

        Plaintiff,

 v.

SKYRYSE, INC., ROBERT ALIN
PILKINGTON, MISOOK KIM, and DOES NOS. 1-50,

        Defendants.

Case No. 22-cv-00187

**PLAINTIFF'S EMERGENCY MOTION FOR CLARIFICATION OF THE COURT'S ORDER AT ECF 216**

---

SMRH:4894-4958-6221.2

-i-

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ....................................................................................................................1

II.  PROCEDURE OF PRODUCTION OF DOCUMENTS FROM IDS DEVICES ...............2

III. SKYRYSE IS IMPROPERLY REFUSING TO COMPLY WITH THE
     INSPECTION PROTOCOL ..................................................................................................3

   A.   The Court Only Stayed Discovery Deadlines, Not All Deadlines ..........................3

   B.   Moog Requires The Production of Documents from iDS Devices to
        Complete its Trade Secret Identification, as Ordered by the Court ........................3

IV.  CONCLUSION ......................................................................................................................5

## I.  INTRODUCTION

In compliance with this Court's order that Moog identify its trade secrets with particularity, Moog has requested the production of certain documents stored on iDS devices pursuant to the procedures set forth in the Inspection Protocol (ECF 96-02). The production of documents on Skyryse's iDS devices is a logistical issue addressed by the Inspection Protocol, and is not related to pending discovery deadlines contemplated by the Court's temporary stay of discovery. While the images containing the documents and data have already been produced to iDS, any documents and data to be used in the case must be newly produced outside the iDS environment because the iDS environment prevents printing or copying of any of these materials.  More importantly, the production of documents and data from iDS devices is direct relevant to, and necessary for, Moog to properly complete its trade secret identification ordered by the Court (ECF 205). The Court has expressly stated that Moog's identification must discuss what was taken and used by Skyryse—how else can Moog provide this detail to the Court without attaching documents showing direct misappropriation from the iDS devices? These documents, among many others, provide evidence of direct use of Moog's source code and other trade secrets by Skyryse.  They are therefore clearly necessary to Moog's ongoing trade secret identification.

Notwithstanding this obvious nexus, Skyryse has abused this Court's recent ruling that "pending discovery deadlines are held in abeyance until the individual defendants' motion to stay is resolved" (ECF 216), wrongfully asserting it as a basis to refuse to produce any documents on Skyryse's iDS devices or otherwise comply with the procedures in the Inspection Protocol. Skyryse's position is preventing Moog from compliance with the Court's existing order to identify use of its trade secrets.  Moog respectfully requests that the Court clarify that the process for requesting the production of documents from iDS devices is not included in the temporary discovery stay.

**II.     PROCEDURE OF PRODUCTION OF DOCUMENTS FROM IDS DEVICES**

Under the Inspection Protocol, in order to request the production of documents from iDS devices, the requesting party "shall provide to the Producing Party the precise file path, file name, page numbers, and line numbers for any Inspection Materials that Receiving Party requests to be Produced." (ECF 96-02, § IV.1). The Producing Party then has five (5) business days to Bates number and produce the requested documents as designated under the Protective Order. (*Id.*). If the Producing Party objects to the requested production, then the parties must promptly meet and confer and if no resolution is reached, then the Producing Party must file a request within five (5) business days to prevent the production of any requested materials. (*Id.*, § IV.3).

On August 2, 2022, Moog's counsel requested the production of certain documents from Skyryse's iDS devices pursuant to Section IV.1 of the Inspection Protocol. (Declaration of Rena Andoh ("Andoh Dec."), Ex. A).  Specifically, Moog requested the chat communications between defendant Robert Alin Pilkington and former Moog employee and current/former Skyryse contractor Lori Bird which expressly discuss stealing Moog confidential information, and as discussed in Paragraph 23 of the August 3, 2022 declaration of Bruce W. Pixley (ECF 210-02). Under Section IV.1 of the Inspection Protocol, Skyryse's deadline to produce the requested materials or file a motion to prevent production was August 9, 2022. Skyryse did not complete either task as required.

Similarly, on August 4, 2022, Moog's counsel requested the production of certain documents from Skyryse's iDS devices pursuant to Section IV.1 of the Inspection Protocol. (Andoh Dec., Ex. B). Moog requested the production of, among other things, the 24 Skyryse source code files that are identical or near-identical copies of Moog's source code files, and the 10 Microsoft Excel Software Process Checklist Templates located on Pilkington's Skyryse-issued laptop which are nearly identical in structure, verbiage, and form to the Moog software process checklist templates found on Pilkington's Moog-issued laptop. These documents are discussed in detail in Paragraphs 12-17 of the August 3, 2022 declaration of Kevin Crozier (ECF 210-01).

Under Section IV.1 of the Inspection Protocol, Skyryse's deadline to produce the requested materials or file a motion to prevent production was August 11, 2022. Skyryse has made it clear during the parties' meet and confer correspondence that it will not produce the requested materials. (Andoh Dec., Ex. C).

### III. SKYRYSE IS IMPROPERLY REFUSING TO COMPLY WITH THE INSPECTION PROTOCOL

Skyryse has refused to produce the requested documents from its devices turned over to iDS on the following grounds: 1) the Court's discovery stay purportedly "applies to Skyryse's deadline to object to the production of documents under the iDS protocol, which would be rendered meaningless if Skyryse was required to produce documents during the stay"; and 2) Moog only needs access to iDS devices in connection with its trade secret identification, and does not need the production of such documents. (Andoh Dec., Ex. C). Both of these grounds are improper and inconsistent with the Court's prior orders and directives.

#### A. The Court Only Stayed Discovery Deadlines, Not All Deadlines

First, the Court's stay only applies to "pending discovery deadlines." (ECF 216). The Parties' obligations to produce documents from devices they have turned over to iDS upon request pursuant to Inspection Protocol Section IV.1 are outside the confines of written discovery. It is just a procedure under the Inspection Protocol for a party to request the production of documents it already has access to via iDS and were turned over in response to the March 11 Order and/or Moog's written discovery requests (including Moog's RFP No. 1 which seeks "All Documents and Communications related to Skyryse's access, use, or disclosure of any Moog Confidential Information"). At no point has the Court ordered that all obligations under the Inspection Protocol are stayed, as that order remains in full force and effect.

#### B. Moog Requires The Production of Documents from iDS Devices to Complete its Trade Secret Identification, as Ordered by the Court

Skyryse's position is that that Moog is only permitted to access and describe documents stored on iDS devices in connection with its further trade secret identification, but cannot attach

those documents for the benefit of the Court (which has no access to the iDS devices). This makes no legal or practical sense.

As Moog has discussed with the Court, given the volume of trade secrets that were copied by Defendants (over 1.4 million files), Moog will need to tailor its trade secret identification to emphasize the trade secrets that have been directly accessed and used by Skyryse. A mere identification of all the stolen trade secrets, without any curation based on actual use by Skyryse, will merely be a lengthy exercise without the practical connection to Moog's trade secret claims and Skyryse's defenses. The Parties and Court will all benefit from an identification that specifies which of the 1.4 million files were referenced and/or used by Skyryse to focus what is actually at the heart of Moog's misappropriation claims.

Indeed, this Court has already directed that Moog's identification must include evidence of direct use. Specifically, during the July 15 hearing, the Court stated that Moog's trade secret identification is "going to have to give Judge Vilardo considerable detail as to ***precisely which trade secrets it claims to have been wrongfully used by the Defendants, taken and/or used***." (ECF 209 at 6:10-13, emphasis added). Similarly, the Court's July 22 Order makes clear that "Moog will be required to precisely identify to Judge Vilardo the trade secrets ***which it claims to have been misappropriated***[1]." (ECF 205 at p. 5).

Skyryse is taking the position that Moog must demonstrate use of trade secrets merely through attorney or expert descriptions of the misappropriated files at issue (which may draw evidentiary objections from Skyryse), as opposed to being permitted to attach them to Moog's trade secret identification statement. For example, as described in the August 3 declaration of Kevin Crozier (ECF 210-01), the 24 Skyryse documents which are identical or near identical copies to Moog's MDTE documents are evidence of direct use, and Moog must be able to show

---

[1] Under Moog's DTSA and related claims, "misappropriation" includes "use of a trade secret of another without express or implied consent." 18 U.S.C. § 1839 (5)(B).

them to the Court as opposed to having an attorney or expert describe such documents. There is no practical way for Moog to sufficiently and thoroughly explain the content and nature of the misappropriated documents at issue without attaching them for the Court's benefit and reference.[2] Moog's trade secret identification will be substantially prejudiced if it is barred from attaching documents showing direct use and misappropriation by Skyryse, as this Court has directed Moog to do.[3]

## IV. CONCLUSION

Moog respectfully requests that the Court clarify its prior order at ECF 216 that the temporary stay on "pending discovery deadlines" does not apply to the production of documents under Section IV.1 of the Inspection Protocol.

---

[2] Skyryse also argued during meet and confer that "the claim that Moog needs to attach documents to its trade secret identification is inconsistent with Judge McCarthy's ruling that Moog cannot identify its trade secrets by pointing to documents under Rule 33(d)." (Andoh Dec., Ex. C). However, the Court's ruling was merely that Moog cannot solely rely on Rule 33(d) to further identify its trade secrets. (ECF 205). Moog will provide a complete and fulsome narrative response as ordered by the Court. But, it must be permitted to attach documents supporting its narrative explanations and to show direct evidence of use by Skyryse. The Court did not order that no documents can be used in connection with Moog's trade secret identification.

[3] Skyryse also argued during meet and confer that the procedures under Section IV of the Inspection Protocol, including the objection process to a request for production of iDS materials, only benefits Moog and not Skyryse. This is patently false. Moog has produced 9 devices to iDS, which contain a large volume of relevant evidence. The procedures under Section IV of the Inspection Protocol apply equally to all parties, and Skyryse can also request the production of documents from Moog's iDS devices. It has simply elected not to do so.

Dated: New York, New York
August 11, 2022

                **SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
                *Attorneys for Plaintiff Moog Inc.*

By:   s/Rena Andoh
      Rena Andoh
      Travis J. Anderson (admitted *pro hac vice*)
      Tyler E. Baker (admitted *pro hac vice*)
      Kazim A. Naqvi (admitted *pro hac vice*)
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 653-8700

and

**HODGSON RUSS LLP**

By:   s/Robert J. Fluskey, Jr.
      Robert J. Fluskey, Jr.
      Melissa N. Subjeck
      Reetuparna Dutta
      Pauline T. Muto
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York 14202
(716) 856-4000