UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MOOG INC.,

                              Plaintiff,

            v.                                          Case No.: No. 22-cv-00187

SKYRYSE, INC., ROBERT ALIN PILKINGTON,
MISOOK KIM, and DOES NOS. 1-50,

                              Defendants.

---

**MOOG'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
RESTORED ACCESS TO THE INDIVIDUAL DEFENDANTS' DEVICES**

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ..................................................................................1

FACTUAL BACKGROUND ...................................................................................3

    I.     The Complaint and the TRO .................................................................3

    II.    The Government Investigation and the Individual
            Defendants' Production of Devices...................................................4

    III.   The Individual Defendants Express Fifth Amendment "Concerns" ............................6

    IV.   The Individual Defendants' Exercise of Self-Help .........................................6

    V.    A Consolidated Timeline ...................................................................7

ARGUMENT .......................................................................................................8

    I.     The Court should not permit or otherwise endorse
            the Individual Defendants' improper act of self-help. ..................................8

    II.    The Protective Order provides no basis
            for the Individual Defendants' clawback. ...............................................9

    III.   The Fifth Amendment does not apply to
            the Individual Defendants' production of devices. ....................................11

    IV.   The Individual Defendants waived any purported
            Fifth Amendment protections, and their inducement
            theory is unfounded.........................................................................14

        A.    The Individual Defendants voluntarily produced
                discovery material to Moog. ...........................................................14

        B.    The Individual Defendants' inducement theory fails
                on multiple grounds ..................................................................15

    V.    Further trade secret identification is not required for
            invocation of the Fifth Amendment. ....................................................18

CONCLUSION....................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Burt Hill, Inc. v. Hassan*,
No. CIV. A. 09-1285, 2009 WL 4730231 (W.D. Pa. Dec. 4, 2009)......................................17

*Burt Hill, Inc. v. Hassan*,
No. CIV.A. 09-1285, 2010 WL 55715 (W.D. Pa. Jan. 4, 2010)................................12, 13, 14

*Cohen v. Altman*,
2022 WL 370948 (N.D.N.Y. Feb. 8, 2022) ...........................................................................16

*DG Creditor Corp. v. Dabah*,
151 F.3d 75 (2d Cir. 1998)......................................................................................................14

*Garner v. United States*,
424 U.S. 648 (1976).................................................................................................................14

*Matter of Grand Jury Empanelled Feb. 14, 1978*,
603 F.2d 469 (3d Cir. 1979).....................................................................................................11

*In re Grand Jury Subpoena Dated Feb. 2, 2012*,
741 F.3d 339 (2d Cir. 2013).....................................................................................................15

*Infinity Headwear & Apparel v. Jay Franco & Sons*,
No. 15CV1259JPORLE, 2016 WL 2659561 (S.D.N.Y. May 9, 2016)....................................8

*In re Int'l Bus. Machines Corp.*,
687 F.2d 591 (2d Cir. 1982).......................................................................................................8

*Maness v. Meyers*,
419 U.S. 449 (1975)...........................................................................................................11, 14

*Shady Recs., Inc. v. Source Enterprises, Inc.*,
371 F. Supp. 2d 394 (S.D.N.Y. 2005).......................................................................................8

*U.S. v. Certain Real Property and Premises Known as 4003-4005 5th Ave.,
Brooklyn, N.Y.*,
55 F.3d 78 (2d Cir. 1995).........................................................................................................16

*United Auto. Ins. Co. v. Veluchamy*,
747 F. Supp. 2d 1021 (N.D. Ill. 2010) ....................................................................................14

*United States v. Fridman*,
   337 F. Supp. 3d 259 (S.D.N.Y. 2018), *aff'd*, 974 F.3d 163 (2d Cir. 2020) ............................12

*United States v. Hubbell*,
   530 U.S. 27 (2000)...........................................................................................................11

*United States v. United Mine Workers of Am.*,
   330 U.S. 258 (1947)............................................................................................................8

**Federal Statutes**

18 U.S.C.A. § 1832...........................................................................................................1, 17

**Rules**

Fed. R. Civ. P. 26...........................................................................................................10, 17

**Constitutional Provisions**

Fifth Amendment .........................................1, 2, 3, 4, 6, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19

## PRELIMINARY STATEMENT

Moog asserted claims against the Individual Defendants by way of a complaint filed and served on March 8—including a claim under the Defend Trade Secrets Act, which has a criminal component. The Individual Defendants next stipulated to a temporary restraining order on March 11 (ECF 25), and as part of this stipulated order, turned over 23 electronic devices to iDS on April 1, 2022. This Court entered the Inspection Protocol on May 13 (ECF 96-2), which granted Moog full access to the 23 electronic devices. The Individual Defendants were served with written discovery on March 23, and responded on April 13. The Individual Defendants were served with a grand jury subpoena from the FBI at some point between April and June 2022 (although they refuse to disclose the exact date). On June 10, the Individual Defendants were placed on indisputable notice of an FBI investigation by Moog, and on June 13 consented to Moog providing certain hearing transcripts to the FBI. On June 29, the Individual Defendants consented to Moog receiving access to 17 of the Individual Defendants' electronic devices. ***At no point during this time did the Individual Defendants ever assert any Fifth Amendment privilege***. The Individual Defendants cite their purported lack of knowledge of a government investigation to excuse their delay in considering the Fifth Amendment. But that argument fails, not only as a matter of law, but also based on the undisputed timeline before the Court.

It was not until July 29 that the Individual Defendants unilaterally cut-off Moog's access to 17 devices previously made available for Moog's review under the temporary restraining order and Inspection Protocol. In support of their act of self-help, they argued that the devices ***might*** contain information over which they ***might*** assert Fifth Amendment protections. There is no principle of law that supports the Individual Defendants' unilateral

clawback in violation of multiple Court orders.  The case law is clear that a party may not disclose evidence and then retract it under the Fifth Amendment.  The Individual Defendants cannot rely on the clawback provisions of the stipulated Protective Order (which do not apply to the Fifth Amendment) because they have not asserted any privilege over the devices at issue. There is also no need for any defendant to have actual knowledge of an active criminal investigation in order to invoke Fifth Amendment rights.

Even if the Individual Defendants actually invoked the Fifth Amendment now, they could not properly shield these devices from Moog's review.  The Individual Defendants' act of production several months ago is not testimonial, and it is therefore not protected by the Fifth Amendment.  The Individual Defendants *do not and cannot cite a single case* allowing a party to claw back voluntarily produced documents based on a hypothetical assertion of the Fifth Amendment several months later.  There is simply no legal basis for this action, and so the Court cannot permit it.

Finally, the Individual Defendants' tired argument that they need to first receive Moog's detailed identification of trade secrets before determining whether to invoke the Fifth Amendment strains credibility because: (1) the Individual Defendants have already asserted the Fifth Amendment privilege in response to the FBI grand jury subpoenas (so they evidently have all the information they need to assert the privilege); (2) there is no legal authority supporting the notion that trade secret identification is required before a Fifth Amendment invocation can be made; and (3) this is merely re-litigating the Court's July 22 Order (ECF 205), which expressly granted Moog access to iDS devices before making a complete and fulsome trade secret identification.

The Individual Defendants must make a choice.  They must either (i) invoke the Fifth Amendment and litigate its applicability or (ii) participate in the discovery process.  A successful invocation of the Fifth Amendment can carry consequences, such as an adverse inference.  The Individual Defendants cannot dodge those consequences and simultaneously block (or clawback) Court-ordered discovery.

The Court should not allow the Individual Defendants' unilateral modification of the *status quo* based on the mere possibility of a Fifth Amendment claim.  This Court cannot continue to allow Defendants to violate Court orders.  The Court should immediately restore Moog's access to the 17 devices previously surrendered by the Individual Defendants.

## **FACTUAL BACKGROUND**

I.      **The Complaint and the TRO**

On March 7, 2022, Moog filed its Complaint against Misook Kim, Robert Alin Pilkington, and Skyryse, Inc., alleging that Defendants had engaged in the theft of Moog's most sensitive and proprietary data.  (ECF 1).  At the time of service, Kim and Pilkington (the "Individual Defendants") were placed on notice of the nature of the severe allegations against them.  They knew exactly what they had downloaded from Moog's servers and misappropriated in conjunction with Skyryse.  And their counsel knew, or should have known, that the DTSA includes criminal provisions.  Indeed, in the very first paragraph of its Complaint, Moog sought judicial relief to "stop the **illegal** taking and use of its trade secrets and the misappropriation of sensitive US Government technical data developed by Moog."  (*Id.* ¶ 1 (emphasis added)).  Kim and Pilkington were placed on notice of potential criminal actions the day this lawsuit was filed.

On March 11, 2022, Defendants stipulated to a temporary restraining order (the "March 11 Order" or the "TRO").  (ECF 25).  The March 11 Order directed the Defendants to

-3-

deliver "all Moog non-public information in each Defendant's possession, custody or control" to a neutral vendor "if such information has been integrated or used by any Defendant in such a manner that such delivery necessarily includes property of any Defendant," by April 1, 2022. (*Id.* ¶ 2).  On May 13, the Court entered an inspection protocol governing the review of these devices.  (ECF 109).

## II.   The Government Investigation and the Individual Defendants' Production of Devices

On April 1, claiming compliance with the March 11 Order, the Individual Defendants turned over 23 electronic devices to the neutral ESI vendor, iDS, and began to review the devices for attorney-client privileged material pursuant to the ESI protocol. (Declaration of Robert Fluskey ("Fluskey Decl."), ¶ 4).  To be clear, the March 11 Order required turnover of Moog non-public information.  (ECF 25).  The Individual Defendants chose to turn over entire devices to iDS as a mechanism for compliance with that Order.  (Fluskey Decl., ¶ 4).  While Moog did not have access to the devices while the Individual Defendants conducted a privilege review, the devices remained physically in the custody and control of iDS, a non-party neutral.  At no time did the Individual Defendants seek return of those devices from iDS, or assert any Fifth Amendment objection.  (*Id.*).

On April 13, 2022 the Individual Defendants responded to documents requests, requests for admissions, and interrogatories.  They asserted no Fifth Amendment objections. (Fluskey Decl., ¶ 13).  The Individual Defendants have never amended or supplemented any of these responses.  (*Id.*).

Between April and June 2022, the Individual Defendants were each served with a grand jury subpoena, seeking the production of documents relating to their theft of Moog information.  Moog does not know the exact date of this subpoena because the Individual

-4-

Defendants refuse to disclose when they received it.  However, Moog's best understanding is

that the Individual Defendants received their subpoenas before Moog received a subpoena of its

own from the Government on June 24, 2022.  (Fluskey Decl., ¶ 12).  Tellingly, the Individual

Defendants' email to the Court (Ex. J) does not disclose, nor have the Individual Defendants

otherwise disclosed to Moog or the Court, the date on which they were initially contacted by the

Government, and the date on which they were subpoenaed.

      On June 10, 2022, Moog wrote to the Court seeking partial relief from the Court's

seal Orders.  (Fluskey Decl., Ex. B).  Moog informed the Court and all counsel that the FBI had

requested copies of unredacted transcripts of the April 26 and May 5 Court conferences as part of

an "**ongoing federal investigation into the files taken from Moog that are the subject of this**

**lawsuit**."  (*Id.*).  Three days later, on June 13, 2022, the Individual Defendants' counsel

consented to Moog's request.  (Fluskey Decl., Ex. C).  The Court granted Moog's unopposed

request to provide the transcripts to the FBI on the same date.  (ECF 152).

      On June 21, 2022, Skyryse filed a sequencing motion to compel Moog's trade

secret identification.  (ECF 166, the "Motion to Compel").  The Individual Defendants did not

expressly join in Skyryse's Motion to Compel.  (*Id.*).

      On June 29, 2022—nineteen days after Moog's June 10 letter advising of the

FBI's request for transcripts and after the Individual Defendants received a grand jury

subpoena—the Individual Defendants consented to Moog's access to 17 of the devices that had

been provided to iDS.  (Fluskey Decl., Ex. F).  The Individual Defendants had completed their

privilege review.  Moog immediately began reviewing data on these devices.

      On July 22, 2022, the Court granted Skyryse's Motion to Compel, only in part.

(ECF 205).  Significantly, the Court's decision permitted Moog to continue its inspection of the

devices turned over to iDS.  In its decision, the Court recognized Moog's "need to first examine the information which was admittedly taken by its former employees Kim and Pilkington prior to their departure." (*Id.* at 3).

### III.    The Individual Defendants Express Fifth Amendment "Concerns"

On July 27, 2022—more than 45 days after the Individual Defendants were placed on notice (at latest) about the FBI investigation and almost thirty days after the Individual Defendants granted Moog access to the 17 devices—the parties appeared before the Court for a scheduled conference.  The Individual Defendants informed the Court for the first time that they intended to seek a stay of this case because they ***might*** invoke Fifth Amendment to prevent ***further*** document production.  (Fluskey Decl., Ex. H; *see also* ECF 206).  The Court set a briefing schedule for the Individual Defendants' motion to stay, with the hearing scheduled for September 12.  (ECF 206).  At no point during the July 27 hearing did the Individual Defendants seek any relief with respect to the devices that Moog was already reviewing.  (Fluskey Decl., ¶ 18).

### IV.    The Individual Defendants' Exercise of Self-Help

Two days after the July 27 Court conference, the Individual Defendants' counsel unilaterally instructed iDS to cut-off Moog's access to the 17 devices that Moog was reviewing.  (Fluskey Decl., Ex. H).  The Individual Defendants provided no prior notice to Moog and sought no interim relief from the Court.  The Individual Defendants effectively granted themselves interim relief, pending briefing on their motion to stay.  They also withdrew access to devices that they were required to produce under the TRO and the ESI Protocol.  (ECF 25, 109).

## V.     A Consolidated Timeline

Below is a timeline of key events with relevant citations.

| TIMELINE OF RELEVANT EVENTS | |
|---|---|
| **3/8/22** | Individual Defendants are served with the Complaint, placing them on notice of large-scale trade secret misappropriation claims under the DTSA, which carry criminal penalties.  (ECF 1). |
| **3/11/22** | Individual Defendants sign and consent to a stipulated TRO requiring turnover of all personal devices used in the last 12 months.  (ECF 25). |
| **4/1/22** | Individual Defendants produce 23 devices to iDS, pursuant to March 11 Order.  (Fluskey Decl., ¶ 4). |
| **Unknown Date** | At some point in or about between April and June 2022, the Individual Defendants are each served with grand jury subpoenas.  The Individual Defendants refuse to disclose the date of the subpoenas. |
| **6/10/22** | Moog's counsel emails the Court, copying all counsel, advising that the FBI would like certain transcripts unsealed because of an ongoing criminal investigation.  (Fluskey Decl., Ex. B). |
| **6/13/22** | Counsel for the Individual Defendants provides e-mail consent to the unsealing of transcripts for FBI purposes, and the Court grants Moog's unopposed Motion to Unseal.  (Fluskey Decl., Ex. C; *see also* ECF 152). |
| **6/20/22** | Skyryse serves a meet and confer letter, requesting production of all communications between Moog and the FBI.  (Fluskey Decl., Ex. D). |
| **6/23/22** | Moog sends e-mail agreeing to produce "all communications between Moog and the FBI/USAO that relate to Skyryse or any of the allegations in the Complaint."  (Fluskey Decl., Ex. E). |
| **6/24/22** | Moog receives subpoena from Government.  (Fluskey Decl., ¶ 12). |
| **6/29/22** | Moog is given access to iDS devices. All counsel are copied on this e-mail correspondence, and counsel for Individual Defendants does not object. (Fluskey Decl., Ex. F). |
| **7/1/22** | Moog produces FBI communications to Skyryse.  The Individual Defendants are inadvertently not copied, but the same production was made to the Individual Defendants on July 29.  (Fluskey Decl., ¶ 14). |
| **7/8/22** | Moog sends e-mail to all parties stating: "We understand that Skyryse and the Individual Defendants have all been served with grand jury subpoenas from the FBI requesting the production of documents. Moog has also received a grand jury subpoena for documents. We propose that all parties produce to each other the documents that they are producing or have produced to the FBI, as all such documents would be relevant to the claims and defenses in this case."  (Fluskey Decl., Ex. G). |

| 7/25/22 | Counsel for Skyryse and the Individual Defendants respond to Moog's production proposal. Neither agree to the proposal. (*See id.*). |
| 7/27/22 | Individual Defendants raise, for the first time, their intention to seek a stay of this action. The Court sets a briefing schedule for the motion. (Fluskey Decl., ¶ 17; *see also* ECF 206). |
| 7/29/22 | Individual Defendants e-mail iDS and demand revocation of access to all Individual Defendants' devices, and iDS complies with this request. (Fluskey Decl., Ex. H). |

## ARGUMENT

I.   **The Court should not permit or otherwise endorse
     the Individual Defendants' improper act of self-help.**

"[A]n order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 293 (1947); *see also In re Int'l Bus. Machines Corp.*, 687 F.2d 591, 599 (2d Cir. 1982) (noting that the Supreme Court established "a stringent limitation on a party's entitlement to resort to self-help when confronted with a court order"). Where a Court has issued a discovery order, "Defendants may not engage in self-help…noncompliance [with the Court's discovery order] is not an appropriate position." *Infinity Headwear & Apparel v. Jay Franco & Sons*, No. 15CV1259JPORLE, 2016 WL 2659561, at *3 (S.D.N.Y. May 9, 2016). Indeed, a party must comply with a TRO, even if a later determination may reverse it. *See Shady Recs., Inc. v. Source Enterprises, Inc.*, 371 F. Supp. 2d 394, 397 (S.D.N.Y. 2005) (upholding a contempt order because a defendant consented to the entry of the TRO but then violated the order, and noting that "a party must comply with a court order, even one later determined to be unconstitutional").

In this instance, the Individual Defendants had numerous prior opportunities to assert the Fifth Amendment privilege before this Court, most recently at the July 27 and August

4, 2022 appearances.  The Individual Defendants also had the opportunity to proceed by motion, as this Court authorized in its May 6, 2022 text order allowing the parties to "bypass the informal discovery process" for "discovery disputes that require prompt attention."  (ECF 87).  Rather than pursue appropriate judicial channels, the Individual Defendants resorted to an improper exercise of self-help by unilaterally withdrawing Moog's access to the subject devices (through demand to iDS).  (Fluskey Decl., Ex. H).  In so doing, the Individual Defendants acted in contravention of two Court orders—the March 11 Order and Inspection Protocol.  (*See* ECF 25, 109).  The Individual Defendants' decision to wait until this stage of litigation to raise Fifth Amendment "concerns"—***without actually asserting the privilege***—suggests a concerted effort by the Individual Defendants to avoid compliance with this Court's prior Orders and simultaneously avoid the adverse inference associated with Fifth Amendment invocation in civil matters.

This Court's Orders are only as effective as the Parties' compliance with them.  This Court should not countenance unilateral relief from Court Orders without proper motion practice and ensuing Court Orders.  For this reason alone, the Court should restore Moog's access to the 17 devices.  The Court should not permit the Individual Defendants to benefit from their improper decision to grant themselves interim relief.

## II.    The Protective Order provides no basis for the Individual Defendants' clawback.

Having no case law to support their unilateral clawback of voluntarily produced materials based on a hypothetical invocation of the Fifth Amendment, the Individual Defendants resort to the Protective Order as purported justification for their actions.  But the clawback provisions of the Protective Order do not encompass the Fifth Amendment.  (*See* ECF 89, § 16.1-16.5).  And even if those provisions did apply to the Fifth Amendment, they would only be

triggered if the Individual Defendants actually asserted Fifth Amendment protections.  The
Individual Defendants have not invoked Fifth Amendment rights.  Therefore, the clawback
provisions of the Protective Order cannot justify the Individual Defendants' clawback.

   Under the terms of the Protective Order, "Privileged Material" is defined as
"Discovery Material protected from disclosure under the attorney-client privilege, attorney work
product doctrine, United States or foreign bank disclosure laws or regulations, and/or any other
applicable United States or foreign statute, law, regulation, privilege, or immunity from
disclosure."  (ECF 89, § 1.15).  Where "a Producing Party gives notice to Receiving Parties that
inadvertently produced material *is subject to a claim of privilege or other protection*, the
obligations of the Receiving Parties are those set forth in Federal Rule of Civil Procedure
26(b)(5)(B)."  (*Id.*, § 11.1 (emphasis added)).  The referenced Rule expressly requires the party
making the claim of privilege to notify the receiving party "of the [privilege] claim and the basis
for it."  (Fed. R. Civ. P. 26(b)(5)(B)).  And under the express terms of the Protective Order, a
party seeking to "claw back Privileged Material produced inadvertently," the Producing Party
must notify the Receiving Party in writing specifying the production number of the Discovery
Material it wishes to claw back.  (ECF 89, § 16.1).

   The Individual Defendants have not complied the terms of the Protective Order.
No Fifth Amendment privilege has been asserted, and the Receiving Party—Moog—was not
provided with the written notice expressly required under the Protective Order.  Instead, the
Individual Defendants withdrew Moog's access to the devices on the basis of unarticulated
"potential Fifth Amendment concerns."  (ECF 220 (8/4/22 Hrg. Tr.) at 5:7).  Moreover, the
subject devices were not produced to Moog "inadvertently," and any argument to that effect is
belied by the plain facts.  The individual Defendants willingly relinquished these devices to

neutral discovery vendor iDS more than four months ago (Fluskey Decl., ¶ 4), and they allowed Moog to continue reviewing the devices for weeks (if not months) after learning of the FBI's investigation.

Even if the individual Defendants had produced this material to Moog inadvertently—and they clearly did not—the Protective Order permits the Receiving Party to retain a copy of the clawed-back material to pursue challenge proceedings. (ECF 89, § 16.3). Moog was prevented from retaining a copy of the material in this case, in violation of the Protective Order, because the Individual Defendants unilaterally cut-off Moog's access to the devices before a copy could be obtained.

## III.   The Fifth Amendment does not apply to <u>the Individual Defendants' production of devices.</u>

To begin with, the Individual Defendants, to date, *have not* invoked the Fifth Amendment privilege. The Fifth Amendment "is not a self-executing mechanism." *Maness*, 419 U.S. at 466 (1975). Thus, until invoked, the privilege does not apply. However, even if the Individual Defendants had invoked the privilege, it would not apply to their production of the devices at issue. The Fifth Amendment is primarily is a testimonial privilege. The production of documents is only considered to have "a compelled testimonial aspect" for purposes of the Fifth Amendment in the limited circumstances where the "act of production" itself would be tantamount to a defendant admitting incriminating existence, possession, and authenticity of documents. *United States v. Hubbell*, 530 U.S. 27, 36 (2000). If the "act of production" itself is not tantamount to an admission, then the privilege does not apply, and the privilege does not prevent discovery of pre-existing incriminating documents. *See, e.g.*, *Matter of Grand Jury Empanelled Feb. 14, 1978*, 603 F.2d 469, 476 (3d Cir. 1979).

-11-

Where "the existence and location of the papers are a foregone conclusion and the [producing party] adds little or nothing to the sum total of the [requester's] information by conceding that he in fact has the papers," then there is no relevant testimonial admission, and the Fifth Amendment testimonial privilege *does not attach* to production of documents or materials. *United States v. Fridman,* 337 F. Supp. 3d 259, 265 (S.D.N.Y. 2018), *aff'd,* 974 F.3d 163 (2d Cir. 2020); *see also Burt Hill, Inc. v. Hassan*, No. CIV.A. 09-1285, 2010 WL 55715, at *2 (W.D. Pa. Jan. 4, 2010) (finding that "testimonial privilege" did not attach where foregone conclusion exception applied).  This is known as the "foregone conclusion" exception.  In order for the foregone conclusion exception to apply, all that is needed is for the requesting party to "demonstrate with reasonable particularity that it knows of the existence and location of the [requested] documents."  *Fridman*, 337 F. Supp. 3d at 265.  This "foregone conclusion" exception is fatal to the Individual Defendants' potential assertion of the Fifth Amendment in this case.

*Burt Hill* is instructive.  The defendants in *Burt Hill,* facing claims of trade secret theft and unauthorized access to computers, relied on "act of production" arguments in an attempt to use the Fifth Amendment privilege to block production of three removable flash drives and an external hard drive used by certain individual defendants.  *See Burt Hill*, 2010 WL 55715 at *1.  They argued that producing the drives would be a testimonial act because it would admit the existence, possession, and authenticity of those drives, which could be incriminating under the federal Computer Fraud and Abuse Act.  *Id*.  But prior to making these arguments, the defendants had "routinely and consistently acknowledged possession" of the materials at issue and offered the plaintiffs the opportunity to inspect them.  *Id*. at *2.  The court held that the

-12-

existence and location of these materials was a foregone conclusion, and therefore, not protected by the Fifth Amendment right against self-incrimination. *Id.*

Here, as in *Burt Hill,* "the existence and location of the materials" at issue is a foregone conclusion. *Id.* The Individual Defendants have—like the defendants in *Burt Hill*— acknowledged possession of the devices at issue and Moog data thereon. They also made the devices available for inspection under a *stipulated* TRO. (ECF 25). Review of the Individual Defendants' electronic devices had been in process for weeks before the Individual Defendants unilaterally cut-off Moog's access to the material.[1] (*See* Timeline of Relevant Events, *supra,* at 7). As the Court in *Burt Hill* observed, "the mere fact that the requested materials contain information that may be incriminating is not a legitimate basis for withholding production." *Id.* The testimonial privilege therefore does not apply to the Individual Defendants production of the devices, and the Individual Defendants should not be permitted to withdraw Moog's access to the devices on these inadequate grounds.

Even if the Fifth Amendment did apply to the Individual Defendants' production of electronic devices (which it does not), no legal authority permits clawback under the Fifth Amendment. The Individual Defendants tellingly **have not cited a single case** demonstrating that clawback is permissible under the Fifth Amendment in any circumstances, and Moog is not aware of any case law that supports this notion. Further, even if clawback were permissible under some circumstances, the foregone conclusion doctrine vitiates the possibility of claw-back in this context. As *Burt Hill* makes clear, because the Individual Defendants have already

---

[1]    To the extent that the Court finds the government's knowledge of the materials to be relevant, the information about the existence and location of the materials is equally available to the government in the public record. *See* ECF No. 25.

disclosed the existence and location of the documents such that the act of production of these materials would not now be testimonial, the Fifth Amendment privilege cannot now be applied to production of the devices at issue.  *See Id*. at *2.

Importantly, the Court need not find a waiver of the Fifth Amendment in order to compel the Individual Defendants to restore access to the devices.  The *Burt Hill* Court noted that, while "a case for waiver can be made, it is unnecessary for the Court to reach this issue" because where the foregone conclusion applies, no privilege exists to be waived.  *Id*. at *3. Thus, even if the Court does not find waiver, the Court should find that no privilege applies to the "act of producing" the devices at issue, and the Individual Defendants should be ordered to return access to the devices.

## IV.   The Individual Defendants waived any purported Fifth Amendment protections, and their inducement theory is unfounded.

### A.   The Individual Defendants voluntarily produced discovery material to Moog.

The Fifth Amendment privilege "is not self-executing; if not invoked it may be deemed to have been waived[.]"  *DG Creditor Corp. v. Dabah*, 151 F.3d 75, 80 (2d Cir. 1998) (quoting *Garner v. United States*, 424 U.S. 648, 654 n.9 (1976) (internal citation omitted)). Federal courts have repeatedly held that "[t]he Fifth Amendment privilege (like non-constitutional privileges and other non-privilege objections) may not be relied upon unless invoked in a timely fashion."  *United Auto. Ins. Co. v. Veluchamy*, 747 F. Supp. 2d 1021, 1026 (N.D. Ill. 2010) (holding defendant's "failure to have timely raised a Fifth Amendment objection to discovery resulted in a Fifth Amendment waiver to the interrogatories that were posed"); *see also Maness v. Meyers*, 419 U.S. 449, 466 (1975) (recognizing that the privilege "can be affirmatively waived, or lost" if not timely asserted).  The Supreme Court "has strongly hinted that, while waiver must be voluntary, there is no requirement of any "knowing" and "intelligent"

-14-

waiver of Fifth Amendment rights." *In re Grand Jury Subpoena Dated Feb. 2, 2012*, 741 F.3d 339, 352 (2d Cir. 2013) (internal quotations omitted).

Even if the Individual Defendants actually invoked the Fifth Amendment (which they have not), and even if the Fifth Amendment applied to their act of production (which it does not), they have waived any conceivable protections over the subject devices.  The Individual Defendants were on notice of Moog's claims of theft and potential criminal implications of the DTSA when they were served with the Complaint back in March.  (ECF 1).  Notwithstanding that fact, they voluntarily signed on to the March 11 Order requiring turnover of Moog non-public information by April 1.  (ECF 25).  Then, on April 1, they chose to turn over complete electronic devices— 23 of them—to a third party, iDS, as a means of complying with the March 11 Order.  (Fluskey Decl., ¶ 4).  They served written discovery responses that included no Fifth Amendment objections.  (*Id.* at ¶ 5; *see also* Ex. A).  They never supplemented or amended those responses.  (*Id.*).  They were served with grand jury subpoenas sometime between April and June 2022.  (*See* Timeline of Relevant Events, *supra,* at 7).  They were placed on affirmative notice of a parallel FBI investigation on June 10.  (Fluskey Decl., Ex. B).  They voluntarily authorized access to the 17 devices on June 29 with full knowledge of the government's pending criminal investigation.  (*Id.* at ¶ 13; *see also* Ex. F).  On these undisputed facts, the Individual Defendants cannot block Moog's access to already-surrendered material.  That ship has sailed.

### B.      **The Individual Defendants' inducement theory fails on multiple grounds.**

The Individual Defendants appear to contend that they were somehow duped by Moog into granting access to the devices at issue: had they known about the Government's investigation, they might have considered the Fifth Amendment earlier.  (ECF 220 (8/4/22 Hrg.

Tr.) at 18:1-17; *see also* Fluskey Decl., Ex. J).  This inducement theory finds no support in the law, and it is contradicted by the indisputable factual timeline.

The existence of a criminal investigation is not a prerequisite for invocation of the Fifth Amendment.  "[T]here is no question that an individual is entitled to invoke the privilege against self-incrimination during a civil proceeding."  *U.S. v. Certain Real Property and Premises Known as 4003-4005 5th Ave., Brooklyn, N.Y.*, 55 F.3d 78, 82 (2d Cir. 1995) (recognizing that "a civil litigant may legitimately use the Fifth Amendment to avoid having to answer inquiries during any phase of the discovery process"); *see also Cohen v. Altman*, 2022 WL 370948, at *3 (N.D.N.Y. Feb. 8, 2022) (noting that litigants may assert the Fifth Amendment "during any phase of the discovery process").  The Individual Defendants could have invoked the Fifth Amendment when they were sued for theft under a statute that carries potential criminal penalties (*i.e.*, the DTSA).  They plainly knew, back in March, the nature of Moog's allegations, which included express allegations of theft of sensitive material and information relating to specific U.S. Government projects.  (ECF 1).  More importantly, the Individual Defendants know exactly what acts they have engaged in—they have always known what they downloaded and took from Moog's systems since the day they did it.  It bears repeating that the Individual Defendants have never denied that they took 1.4 million files from Moog.

Moreover, the Individual Defendants had knowledge of the pending criminal investigation before they authorized Moog's access to the devices.  No later than June 10, the date they received email correspondence from Moog's counsel regarding the FBI's transcript request, they knew that the FBI was investigating the matter.  (Fluskey Decl., Ex. B).  Although the Individual Defendants have not disclosed the date of their grand jury subpoena, Moog

-16-

believes that the Individual Defendants likely learned of the investigation at an even earlier date. If knowledge of a government investigation is truly was set-off the "Fifth Amendment lightbulb," the Individual Defendants could have raised the issue with the Court immediately upon notice of the pending criminal investigation.  They did not.

In any event, Moog was under no obligation to disclose to the Individual Defendants that Moog had been in touch with law enforcement regarding the theft of Moog's materials.  Federal Rule 26 does not create any obligation to disclose such communication, *see* Fed. R. Civ. P. 26, and the Individual Defendants have cited no authority whatsoever for the proposition that Moog would be required to disclose such a communication.  Furthermore, the Individual Defendants were on notice that a possible criminal action could be brought against them because the claims brought under the DTSA are part of a statute that also allows for criminal enforcement against the same conduct. *See* 18 U.S.C.A. § 1832 (West).  Where a complaint alleges a civil claim under a statutory regime that could also be used to bring domestic criminal charges, the defendant should have a "reasonable apprehension[] of self-incrimination." *See, e.g.*, *Burt Hill, Inc. v. Hassan*, No. CIV. A. 09-1285, 2009 WL 4730231, at *2 (W.D. Pa. Dec. 4, 2009) (holding that a complaint's allegations of violation of CFAA, a criminal statute with civil remedies like the DTSA, could give defendants apprehension of domestic criminal charges).

Finally, the Individual Defendants ***still*** have not invoked the Fifth Amendment, despite being irrefutably aware of the Government's pending investigation for at least two months.  The Individual Defendants' failure to assert the Fifth Amendment—even at this belated juncture—contradicts the Individual Defendants' baseless inducement narrative.

-17-

**V.    Further trade secret identification is
        not required for invocation of the Fifth Amendment.**

During the Court's August 4, 2022 conference, the Individual Defendants argued that further trade secret identification by Moog is a necessary prerequisite to their potential invocation of the Fifth Amendment. (ECF 220 (8/4/22 Hrg. Tr.) at 18:8-17). The Court should reject this argument for at least three reasons.

First, the Individual Defendants' trade secret identification contention is an improper attempt to reargue Skyryse's Motion to Compel. (ECF 166). The Court should reject the argument on that basis alone. After ample briefing and opportunities to argue (ECF 166, 180, 194, 201), the Court ruled on the issue and determined that Moog is entitled to full access of iDS devices before making a complete and fulsome trade secret identification. (ECF 205). The matter is closed, yet all Defendants continue to re-litigate the matter.

Second, the Individual Defendants have not presented any legal authority to support the notion that trade secret identification is a prerequisite to invocation of the Fifth Amendment, nor have they offered any explanation as to why they need a more precise trade secret identification to assess their Fifth Amendment rights. They have been on notice of Moog's allegations and claims for months, and they know what they downloaded from Moog's systems. Any assertions on the Individual Defendants' part regarding what charges the Government might be pursuing are, without evidence, pure speculation. And the Individual Defendants have provided absolutely no evidence regarding the timing or scope of the Government's investigation.

Third, the Individual Defendants have admitted that they possess all of the information needed to make an informed Fifth Amendment invocation decision. ***They have already asserted Fifth Amendment rights in response to the Government's subpoena***. (Fluskey

Decl., Ex. J at 3). If they are able to claim the Fifth Amendment protections in response to the

Government's subpoena, they can do so here. Again, even that invocation would not make a

clawback of previously produced materials appropriate. But right now, they have no basis to

argue any relief from discovery obligations at all.

## CONCLUSION

This Court should proscribe the Individual Defendants' exercise of self-help and

restore the status quo pending resolution of the motion to stay.

Dated:   August 11, 2022

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
*Attorneys for Plaintiff Moog Inc.*


By:   s/Rena Andoh
      Rena Andoh
      Travis J. Anderson (admitted *pro hac vice*)
      Tyler E. Baker (admitted *pro hac vice*)
      Kazim A. Naqvi (admitted *pro hac vice*)
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 653-8700

and

**HODGSON RUSS LLP**


By:   s/Robert J. Fluskey, Jr.
      Robert J. Fluskey, Jr.
      Melissa N. Subjeck
      Reetuparna Dutta
      Pauline T. Muto
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York 14202
(716) 856-4000

-19-