**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------------------X
MOOG INC.,

                               Plaintiff,                    Case No.: 22-cv-187-LJV-JJM

               vs.

SKYRYSE, INC. ROBERT ALIN PILKINGTON, MISOOK
KIM, and DOES NOS. 1-50

                               Defendants.
--------------------------------------------------------------------------------X

### ROBERT ALIN PILKINGTON AND MISOOK KIM'S
### MEMORANDUM OF LAW IN SUPPORT OF THEIR ACTIONS TO CLAW BACK
### MATERIALS PROVIDED UNDER THE PROTECTIVE ORDER

                                        **WINGET, SPADAFORA &**
                                        **SCHWARTZBERG, LLP**
                                        45 Broadway, 32nd Floor
                                        New York, NY 10006
                                        (p): (212) 221-6900
                                        (f): (212) 221-6989

                                        *Attorneys for Robert Alin Pilkington*
                                        *and Misook Kim*

Of Counsel:    Anthony D. Green, Esq.
               Alexander A. Truitt, Esq.
               M. Annabel Mireles, Esq.

Dated:         August 11, 2022
               New York, New York

## TABLE OF CONTENTS

**Page No.**

PRELIMINARY STATEMENT ................................................................................................1

RELEVANT BACKGROUND ...............................................................................................1

    I.      Procedural History .......................................................................................1

    II.     Plaintiff's Dilatory Conduct Impedes Discovery .......................................3

    III.    Plaintiff Concealed The Fact It Initiated The USAO Investigation
          And Acts As An Agent For The Government .........................................6

    IV.    The Individual Defendants Properly Claw Back Their Twenty-Three
          Electronic Devices ...................................................................................10

ARGUMENT ...........................................................................................................................11

    I.      The Individual Defendants' Properly Suspended Access To The
          Twenty-Three Devices In iDS' Custody Under The Protective Order .................11

    II.     The Individual Defendants Have Not Waived Their Fifth Amendment
          Privilege Against Self-Incrimination ......................................................14

    III.    Plaintiff Should Not Be Allowed To Benefit From Its Deception........................18

CONCLUSION.........................................................................................................................20

i

## **TABLE OF AUTHORITIES**

### **CASES**

*Brock v. Gerace,* 110 F.R.D. 58 (D.N.J.1986) .........................................................17

*Cartier, a Div. of Richemont N. Am., Inc. v. Micha, Inc.,*
    No. 06 Civ. 4699 (D.C.), 2008 WL 2061386 (S.D.N.Y. May 12, 2008) ...................16, 18

*Colorado v. Spring*, 479 U.S. 564 (1987) ......................................................................15

*Emspak v. United States*, 349 U.S. 190 (1955) ......................................................15, 16

*HSH Nordbank AG New York Branch v. Swerdlow*, 259 F.R.D. 64 (S.D.N.Y. 2009) ...............17

*In re DG Acquisition Corp.*, 151 F.3d 75 (2d Cir. 1998) ...................................16, 17, 18

*Kastigar v. United States*, 406 U.S. 441 (1972) ...........................................................15

*Klein v. Harris*, 667 F.2d 274 (2d. Cir. 1981) ..............................................................16

*Miranda v. Arizona*, 384 U.S. 436 (1966) ....................................................................15

*Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.,* No. 96 Civ. 7590,
    1997 WL 736726 (S.D.N.Y. Nov. 26, 1997) ....................................................17

*Saks Inc. v. Attachmate Corp.,*
    No. 14 CIV. 4902 CM, 2015 WL 1841136 (S.D.N.Y. Apr. 17, 2015) ...........................14

*United States v. A & P Arora, Ltd.*, 46 F.3d 1152 (10th Cir.1995) ...............................17

*United States v. Doe*, 465 U.S. 605 (1984) ..................................................................15

*United States v. Hatchett*, 862 F.2d 1249 (6th Cir.1988) .............................................18

*United States v. Hubbell*, 530 U.S. 27 (2000) ..............................................................15

*United States v. O'Henry's Film Works, Inc.*, 598 F.2d 313 (2d Cir.1979) ...................15

*U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.,*
    No. 97 Civ. 6124, 2000 WL 744369 (S.D.N.Y. June 8, 2000) ................................17

## **RULES AND STATUTES**

28 U.S.C. §1404(a) .................................................................................................2

Fed. R. Civ. P. 26(b)(5)(B) ...............................................................................12, 13

Federal Rule of Evidence 502(d) .....................................................................12, 13

## **SECONDARY SOURCES**

Charles A. Wright, Arthur R. Miller and Richard L. Marcus,
   Federal Practice and Procedure § 2018, at 273 (2d ed. 1994) ..........................15

## PRELIMINARY STATEMENT

Individual defendants Robert Alin Pilkington and Misook Kim (collectively, the "Individual Defendants") respectfully submit this memorandum of law in compliance with the Court's text order dated August 4, 2022. *See* Dkt. 216. The August 4, 2022 text order directed the Individual Defendants to provide support for their decision to claw back certain materials pursuant to the Protective Order (and supporting addendum) entered in this action. *See e.g.*, Dkt. No. 89. As set forth herein, the Individual Defendants' actions were proper under the Protective Order. Contrary to plaintiff's averments, the Individual Defendants did not knowingly, voluntarily, and intelligently waive their rights under the Fifth Amendment to the U.S. Constitution.

## RELEVANT BACKGROUND

### I.      Procedural History

Plaintiff Moog, Inc. ("Plaintiff") commenced this action by filing the Complaint on March 7, 2022. *See* Dkt. No. 1. The Complaint alleges, *inter alia*, that the Individual Defendants misappropriated certain computer files containing alleged trade secrets and classified information. *Id.* To date, Plaintiff has refused to identify the trade secrets or classified information at issue with any particularity.

At the same time Plaintiff commenced this action, Plaintiff also moved for: (1) a temporary restraining order and a preliminary injunction against all Defendants; (2) an expedited hearing on the temporary restraining order and preliminary injunction; and (3) expedited discovery. *See* Dkt. Nos. 4; 5; 6. The parties then entered into a stipulation requiring that certain electronic devices owned by the Individual Defendants be turned over to the custody of a third-party forensics firm (the parties subsequently retained iDiscovery Solutions ["iDS"] to serve in this custodial role), for

preservation pending resolution of the motions for preliminary injunction that was So-Ordered by the Court on March 11, 2022. *See* Dkt. No. 25.   The So-Ordered stipulation required the Defendants to deliver "any such non-public information, documents, records, files or data of Plaintiff…to a third-party forensics firm mutually agreed-upon by the parties for forensic imaging in lieu of providing such information directly to Plaintiff" within 21-days. *Id.* at 3.  The Individual Defendants had not retained and were not represented by counsel at the time of the So-Ordered stipulation. *Id.*

On March 17, 2022, the Court entered its Expedited Discovery Order. *See* Dkt. No. 33. Thereafter, Plaintiff filed its expedited requests for document production and requests for admission ("Expedited Discovery Requests") on March 21, 2022.  Meanwhile, the Individual Defendants retained counsel and timely filed a motion to dismiss ("First Motion to Dismiss) for lack of personal jurisdiction and improper venue or a transfer of venue to the Central District of California pursuant to 28 U.S.C. §1404(a). *See* Dkt. No. 47. However, to comply with the Expedited Discovery Order, the Individual Defendants were required to produce twenty-three personal devices to iDS, by April 1, 2022—before the First Motion to Dismiss was fully briefed and before the Individual Defendants even responded to Plaintiff's Expedited Discovery Requests. *See* Dkt. Nos. 63, 96-5; *see also* Declaration of Anthony D. Green ("Green Decl."), Ex. A.

On May 6, 2022, the parties entered into a stipulated Protective Order and an Inspection Protocol (as well as addendum thereto), which was So-Ordered on May 13, 2022. *See* Dkt. Nos. 89, 96, 109.  Pursuant to the Inspection Protocol, the parties were permitted to identify which files on devices maintained by iDS would be made available for the other parties' review, as well as what files were to be withheld on claims of privilege. *See* Dkt. Nos. 74-1; 89; 96-2; 96-3; 99-2; 109.  On June 29, 2022, after the Individual Defendants completed a preliminary review of their

devices for attorney-client privilege materials and private materials, iDS provided Plaintiff with access to the inspection laptops to begin review of certain devices. *See* Green Decl. Exs. B and C. Because Plaintiff refused to identify the trade secrets and classified information at issue, further review analyzing the Individual Defendants' Fifth Amendment rights was not possible.

## II.    Plaintiff's Dilatory Conduct Impedes Discovery

Expedited discovery may be appropriate in some cases; however, expedited discovery cannot work in a trade secrets case where the plaintiff refuses to identify the alleged trade secrets at issue.  Here, Plaintiff asserts the pretextual and false argument that it cannot identify the trade secrets and classified information at issue until it completes its forensic review of the Individual Defendants' twenty-three devices, as well as defendant Skyryse, Inc.'s ("Skyryse") devices and source code.  As such, Plaintiff does not seek expedited discovery or a return to the *status quo*—it improperly seeks one-sided discovery to the prejudice and exclusion of Defendants.  Furthermore, the discovery schedule Plaintiff relies upon was obtained through bad faith negotiations and misrepresentations to the Individual Defendants, which began before the Individual Defendants even retained legal counsel.

During the May 5, 2022 conference, Plaintiff did not argue that it needed access to the Individual Defendants' devices to identify trade secrets, it argued that access to the Individual Defendants' devices was needed to establish use, misappropriation, and spoliation.  *See*, *e.g.*, Green Decl., Ex. D, pp. 65:18-21; 66:14-20.  Likewise, Plaintiff's memorandum of law in support of its proposed Protective Order argued that inspection of the Defendants' devices was needed as "identify[ing] *misappropriation* of Moog's flight control software … require[s] analyzing how Skyryse's flight control software is architected and the extent and nature of that architecture's similarities to Moog's, including by visually comparing code side-by-side where necessary." *See*

3

Dkt. No. 96-13, at p. 16 (emphasis added).  Plaintiff also argued that "[o]nly Defendants fully know how they have ***misappropriated*** Moog's data and how they have integrated such data into their own documents. Moog should not be forced to 'guess' at how they have misappropriated the data in order to provide search terms to Defendants while wearing a proverbial blindfold, but should instead be entitled to discover for itself the scope, depth, and breadth of Defendants' misappropriation." *Id*., at p. 19 (emphasis added).

At no point in Plaintiff's earlier polemic did it state that identification of the trade secrets at issue was impossible without unfettered access to Defendants' devices.  Had Plaintiff been candid about this, along with the parallel criminal investigation by the United States Attorney's Office ("USAO Investigation"), it is likely the instant motions before the Court would have been briefed much earlier, potentially negating the specific issue addressed in this memorandum.[1] Certainly, the parties would not have agreed to any schedule that released information to Plaintiff prior to its complete identification of the trade secrets and classified information at issue, with particularity.

Plaintiff's failure to raise this issue during prior conferences delayed the development of these discovery disputes by suggesting that complete access to devices was not, and is not, needed to identify the trade secrets at issue.  Plaintiff now argues that such delay should be held against the Individual Defendants.  However, the fact that Plaintiff failed to disclose this apparently critical issue prior to any direct confrontation over Plaintiff's improper refusal to identify the trade secrets

---

[1] The Expedited Discovery Order set an aggressive schedule for discovery that was made without complete understanding of the sophisticated technical and logistical hurdles that must be overcome at each phase of discovery. Dkt. No. 33.  Nonetheless, the deadlines established by the Expedited Discovery Order presume that Plaintiff can and will identify the trade secrets and classified information with particularity because Plaintiff never stated otherwise.  The entire schedule for discovery is thrown off the rails by Plaintiff's dilatory and pretextual objections.

with particularity establishes that Plaintiff's objection is simply pretext.  Now that Plaintiff's dilatory conduct has come to light, Plaintiff weaves a shroud spun of obscure computerese (the files are "living documents") and meaningless jargon (the files are actually "buckets") to cloak its complete refusal to participate in discovery.  The Individual Defendants respectfully request the Court reject such arguments.

On this point, the inexcusable basis for Plaintiff's objection was not immediately present at the time the parties made their responses to written discovery demands.  *See* Green Decl., Ex. E, Interrogatory No. 1.   After several letters and meetings, wherein Plaintiff clarified its irresolute and baseless refusal to participate in discovery, Skyryse filed a motion to compel the identification of Plaintiff's trade secrets, with particularity. *See* Dkt. No. 156.  On July 22, 2022, the Court Ordered Plaintiff to provide responses to Skyryse's Interrogatory No. 1, which required identification of the trade secrets or other classified information that Plaintiff claims was misappropriated by the Individual Defendants. *See* Dkt. No. 205.  To date, Plaintiff refuses to comply with the Court's order, citing the same pretextual objections raised prior to Skyryse's motion.

On July 28, 2022, Plaintiff produced its seventh document production with bates range MOOG0028324 - MOOG0028335. *See* Green Decl. Ex. F.  A gap in the bates range from Plaintiff's previous document productions indicated that certain document productions were not received by the Individual Defendants. *See id.*  On July 29, 2022, Plaintiff provided the Individual Defendants with document productions one, three, and four, followed by document productions five and six on August 1, 2022. *See id.*  Plaintiff's proffered reason, which the Individual Defendants have no reason to reject, is that certain document productions were inadvertently made

to Skyryse only.  Without assigning any wrongful intent, Plaintiff's issues in producing documents

to the Individual Defendants delayed presenting this dispute before the Court.

### III.    Plaintiff Concealed The Fact It Initiated The USAO Investigation And Acts As An Agent For The Government

Setting administrative hiccups aside, Plaintiff has engaged in deeply troubling conduct

throughout this Action, which only recently came to light.  Plaintiff's third document production

contains ongoing communications between Plaintiff and the Federal Bureau of Investigation

("FBI").  These communications establish that Plaintiff concealed the fact that it ████████

████████████████████████.  *See* Green Decl. Ex. G.  The day after it filed

the Complaint, Plaintiff ████████████████████.  *See id*.  Plaintiff continues

to ████████████████.  *See id*.

On April 14, 2022, ████████████████████████

████████████████████████████████████

████████████████.[2]  *See id*.  Following the April 26, 2022 status

conference, Plaintiff continued to ████████████████████████

████████████████████████████████████

████████  *See id*.  Later that afternoon, ████████████████

████████████████████████████████████

████████   *See id*.

In its continued efforts to aid in the USAO Investigation, ████████████████

████████████████████████████████.  *See id*.

─────────────────────

[2] That Plaintiff ████████████████████████████████
████████████ calls into question the basis for Plaintiff's arguments that such information should
be protected from public disclosure.

On June 1, 2022, Plaintiff provided ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████  *See id*.  The most recent communication between Plaintiff and the FBI ████████

████████████████████████████████████████████  *See id*.

Simply put, Plaintiff freely cooperates with the Government, advising it of the trade secrets and classified information at issue.[3]  At the same time, Plaintiff argues before this Court that providing any information concerning its trade secrets is impossible without complete access to all the Individual Defendants' devices.  The two positions are inconsistent, to say the least.  Most alarming is the fact that Plaintiff represents to the Court that it has ████████████████████

████████████, even though Plaintiff ██████████████████████████  *See* Green

Decl. Ex. H, p. 15:23-24 ████████████████████████████████████.

While Plaintiff ████████████████████████, Plaintiff's interactions with the

FBI closely resemble an agency relationship.  ████████████████████████████

████████████████████████[4]  ████████████████████████████

---

[3]  Among other things, ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████  *See* Green Decl. Ex. G.  While Plaintiff has refused to answer interrogatories and document requests seeking this information, Plaintiff provided ████  *See id*.  The Individual Defendants have not located ████████████████ in Plaintiff's document productions.

[4]  During the August 4, 2022 conference, ████████████████████

████████████████████████████████████████████████

████████████████████████████████  *See* Green Decl. Ex. I (August 4, 2022 Transcript at 7:13-21).

██████████████████████████████████████████████████. ██████████████████████████████

██████████████████████████████████.

If Plaintiff is permitted to access the Individual Defendants' devices, Plaintiff will be able to provide the Government with information the Government would not be able to obtain otherwise, due to the Individual Defendants' Fifth Amendment rights. Here, Plaintiff's actions further a common interest in prosecuting the USAO Investigation. In turn, the USAO Investigation is controlled by the Government. These indisputable facts form the basis of a symbiotic agency relationship between the Government and Plaintiff.

Indeed, Plaintiff's arguments before this Court tacitly admit that Plaintiff acts as an undeputized agent of the Government. Here, Plaintiff simply argues that it should be permitted to continue to act in this capacity—sharing information with the Government that would otherwise be protected by the Individual Defendants' Fifth Amendment rights. This type of insidious relationship should not be condoned by the Court, especially when it is borne out of Plaintiff's deception and bad faith.

Plaintiff's argument that its June 10, 2022 letter ("June 10 Letter") provided the Individual Defendants with proper notice lacks merit and is otherwise insufficient. *See* Green Decl. Ex. J. To start, the June 10 Letter does not state that Plaintiff ███████████████████████████████ ██████████████████████████████████. Likewise, it does not disclose ████████████ ████████████████████████████ or how Plaintiff intends to act as an agent of the Government to circumvent the Individual Defendants' Fifth Amendment rights against self-incrimination. Instead, the June 10 Letter knowingly paints a misleading picture, minimizing Plaintiff's relationship with the Government while concealing the USAO Investigation's purpose in seeking certain information protected under seal. For that matter, the information sought is

simply a transcript of Court proceedings, it is not information otherwise protected from disclosure under the Fifth Amendment.  Nowhere in the June 10 letter does Plaintiff state that ████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████ .

   Critically, by June 10, 2022, the parties already entered into the Protective Order and the Inspection Protocol.  The Individual Defendants already produced their twenty-three devices to iDS.  The very foundation of the discovery protocol in this Action was set in motion before the Individual Defendants were even represented by Counsel.  Plaintiff did not disclose ██

████████████████████ at that time.  There is no denying that Plaintiff intentionally withheld this material information until after the Protective Order and Inspection Protocol were in force.

   During the August 4, 2022 conference, ███████████████████████████████

████████████████████████████████████████████████████ *See* Green

Decl. Ex. I, p. 13:11-13.  As such, Plaintiff openly boasts that it obtained an advantage it should not be otherwise entitled to, based on its own deception.  In bringing this dispute before the Court, Plaintiff states that it intends to exploit this advantage and provide information to the Government that would otherwise be protected by the Individual Defendants' Fifth Amendment rights.[5] Plaintiff's request should be denied.

---

[5] Plaintiff has not produced any communications with the USAO, even though such communications are duly demanded through the Defendants' Joint Requests for Production. Likewise, Plaintiff has not produced any communications with the Government after July 20, 2022.  Plaintiff's testimony before the Court on ████████████████████████████████

████████████████████████ Plaintiff did not respond when Counsel for the Individual Defendants asked Plaintiff to confirm it produced all documents and information provided to the Government or state the basis by which such materials were withheld.

IV.    **The Individual Defendants Properly Claw Back Their Twenty-Three Electronic Devices**[6]

The Individual Defendants were recently served with grand jury subpoenas by the USAO. Upon information and belief, Mr. Pilkington retained criminal defense counsel on or near June 16, 2022 and Ms. Kim retained criminal defense counsel on or near July 5, 2022. ███████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████

Once the Individual Defendants ████████████████████████████

██████████████████ counsel in this Action began to analyze whether the Individual Defendants must assert their Fifth Amendment rights in this Action.  It was quickly determined that the Individual Defendants could only make a broad Fifth Amendment claim absent complete disclosure of the trade secrets and classified information at issue.  Given the state of discovery, including Plaintiff's refusal to provide such information, the Individual Defendants determined that a stay was necessary to protect their Fifth Amendment rights against self-incrimination. Indeed, following Plaintiff's pretextual argument to its logical conclusion, the Individual Defendants would have to completely waive their Fifth Amendment rights just to understand whether they must assert them.

During a July 26, 2022, meet and confer with all parties, the Individual Defendants advised Plaintiff they intended to file a pre-motion letter in anticipation of the now-pending motion to stay. *See* Dkt. No. 214.  The Individual Defendants also informed Plaintiff they were considering whether they must claw back materials in iDS' custody, but had not made their final decision, and

---

[6] Of the twenty-three devices, five of the Individual Defendants' devices have never been made available for review by any party.

further sought the parties' consent for the requested stay.  The next day, the parties debated the anticipated motion before the Court, in lieu of a pre-motion letter.  Because of how this discussion evolved, the Individual Defendants did not expressly state that it was considering a claw back. The Individual Defendants regret this oversight; however, prior Court approval is not required under the Protective Order.  *See* Dkt. No. 89.

During the July 27, 2022 Court conference, 

*See* Green Decl. Ex. H, pp. 15:18-21; 23:24-25; 24:2-3; *see also* pp. 28:9-15; 31:20-23.  Plaintiff's statements anticipate

After considering Plaintiff's statements, the Individual Defendants instructed iDS to temporarily suspend access to their devices on July 29, 2022.  *See* Green Decl. Ex. K.

Based on the foregoing, the Individual Defendants respectfully request this Court uphold their decision to claw back materials under the Protective Order.

## **ARGUMENT**

### I.     **The Individual Defendants' Properly Suspended Access To The Twenty-Three Devices In iDS' Custody Under The Protective Order**

The Individual Defendants' broad assertion of privilege is warranted in light of the fact that: (1) Plaintiff refuses to identify the trade secrets and classified information at issue; (2) such identification is necessary to assert the privilege; (3) Plaintiff is acting in an agency or near-agency capacity to provide the Government information that would otherwise be protected from disclosure; and (4) Plaintiff has stated it will not identify the trade secrets and classified

information until the Individual Defendants, effectively, waive their Fifth Amendment rights against self-incrimination.  Once all these matters were brought to light, the Individual Defendants properly suspended access to their devices. *See* Green Decl. Ex. K.

The relevant sections of the Protective Order are parsed below:

## I. DEFINITIONS

\*\*\*

1.15 Privileged Material means Discovery Material protected from disclosure under the attorney-client privilege, attorney work product doctrine, United States or foreign bank disclosure laws or regulations, ***and/or any other applicable United States*** or foreign statute, law, regulation, ***privilege, or immunity from disclosure***.

\*\*\*

## XI. INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL

11.1 When a Producing Party gives notice to Receiving Parties that inadvertently produced material is ***subject to a claim of privilege or other protection***, the obligations of the Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B). This provision is not intended to modify whatever procedure may be established in an e-discovery order that provides for production without prior privilege review. Pursuant to Federal Rules of Evidence 502(d) and (e), the Parties agree the inadvertent disclosure of a communication or information covered by the attorney-client privilege or work product protection shall not waive the privilege or protection.

\*\*\*

## XVI. CLAW BACK OF PRIVILEGED MATERIAL

16.1 ***To claw back Privileged Material*** produced inadvertently, ***the Producing Party must provide notice in writing to the Receiving Party specifying*** the production number of ***the Discovery Material it wishes to claw back***.

16.2 ***Upon notice that a Producing Party wishes to claw back Discovery Material*** protected as Privileged Material produced inadvertently, ***the Receiving Party shall promptly*** undertake commercially reasonable efforts to return the Discovery Material to the Producing Party and destroy all summaries or copies of the Discovery material, shall ***provide to the Producing Party's Counsel a signed verification certifying in writing that all such information and copies of information have been returned or destroyed, and shall not use such items for any purpose until further order of the Court***.

16.3 In all events, such return, destruction, and certification must occur within 10 days of receipt of the request, unless the Receiving Party provides notice of its intent to challenge the assertion of a claim of protection under Federal Rule of Civil Procedure 26(b)(5) (the "Challenge Notice"), in which event the Receiving Party may retain no more copies (the "Retained Copies") of the disclosed material than are sufficient to prosecute its challenge to the assertion of protection. Having provided a Challenge Notice, the Receiving Party must raise a challenge with the Court within 30 days of that Challenge Notice, or otherwise return or destroy the Retained Copies within that period. Moreover, in the event a Challenge Notice is provided, the Receiving Party shall make no use of the Discovery Material subject to the request for return other than in connection with the Receiving Party's prosecution of its challenge to the assertion of privilege, until the challenge is resolved. However, for good cause shown the Receiving Party may request a reasonable extension of the deadline for the return or destruction of Retained Copies, and a request for such an extension shall not be unreasonably denied.

16.4 For the avoidance of doubt, nothing in this Section shall be construed as restricting the right of any Party to challenge a claim of privilege at any time permissible under the Federal Rules of Civil Procedure and other relevant laws after return or destruction of the Retained Copies.

16.5 Pursuant to Federal Rule of Evidence 502(d), if a Party at any time notifies any other Party that it, for any reason, disclosed documents, testimony, information, and/or things that are protected as Privileged Material, or the Receiving Party discovers such disclosure (in which case the Receiving Party shall give the Producing Party prompt notice), the ***disclosure alone***, pursuant to Rule 502(d), ***shall not be deemed a waiver—in the action or in any other proceeding, including in federal or state proceedings—of any applicable privilege or protection***.

*See* Dkt. No. 89 (emphasis added); *see also* Fed. R. Civ. P. 26(b)(5)(B); FRE 502(d).

Pursuant to the Protective Order, "Privileged Material" includes the twenty-three devices subject to the Individual Defendants' broad Fifth Amendment claim. *See* Dkt. No. 89, § 1.15. The Individual Defendants' production of their devices does not waive such privilege. *See id.* §§ 11.1, 16.5. Contrary to Plaintiff's arguments, the Individual Defendants were not required to seek leave of the Court prior to clawing back the materials in question. *See id.* §§ 16.1, 16.2. Likewise, Section 16.3 is inapplicable because Plaintiff refuses to provide the information necessary to assert the privilege with any greater specificity. *See id.,* § 16.3. Allowing Plaintiff continued access to

rebut a privilege assertion that Plaintiff also prevents the Individual Defendants from intelligently making places the metaphorical cart directly before the horse.[7]

Likewise, Plaintiff's argument that the Individual Defendants must make a particularized objection prior to clawing back is not supported by the text of the Protective Order.  All the Protective Order requires is the identification of the materials to be clawed back. *See* Dkt. No. 89, §§ 16.1, 16.2.  Here, Individual Defendants identified the electronic devices that were previously made available for review, as well as the basis for the claw back.  *See* Green Decl. Ex. K.  This is all that is required under the Protective Order.

In any event, Plaintiff is not prejudiced by the Individual Defendants' actions.  There is no risk of spoliation because the Court appointed neutral maintains the devices.  Once Plaintiff complies with the July 22, 2022 Order requiring the identification of its alleged trade secrets and classified information with particularity, the Individual Defendants will be able to assert their Fifth Amendment privileges as to specific files on the electronic devices.  At that time, Plaintiff may evaluate the Individual Defendants' privilege claim.

Because the Individual Defendants acted properly under the Protective Order, this Court should allow the claw back of the devices in question.

## II.    The Individual Defendants Have Not Waived Their Fifth Amendment Privilege Against Self-Incrimination

The Fifth Amendment protects a person from being "compelled in any criminal case to be a witness against himself." *See* U.S. Const., Amend. V  Although the Fifth Amendment refers to criminal cases, "[i]t can be asserted in any proceeding, civil or criminal, ... against any disclosures

---

[7] To the extent Plaintiff argues the express language of the Protective Order compels a different conclusion, the well-established cannon of *contra proferentem* requires the Court to construe ambiguous terms against Plaintiff, who drafted the Protective Order. *See Saks Inc. v. Attachmate Corp.*, No. 14 CIV. 4902 CM, 2015 WL 1841136, at *2 (S.D.N.Y. Apr. 17, 2015).

that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." *Kastigar v. United States*, 406 U.S. 441, 444–45 (footnotes omitted) (1972).

Not only does the Fifth Amendment apply to testimony at trial, but "[a] civil litigant may legitimately use the Fifth Amendment to avoid having to answer inquiries during any phase of the discovery process." *See* Charles A. Wright, Arthur R. Miller and Richard L. Marcus, Federal Practice and Procedure § 2018, at 273 (2d ed. 1994). "[C]ourts have repeatedly held that the privilege against self-incrimination justifie[s] a person in refusing to answer questions at a deposition, or to respond to interrogatories, or requests for admissions, or to produce documents." *Id.* With respect to the production of materials, "[t]he act of production may implicitly communicate 'statements of facts' by compelling the person 'to admit that the papers existed, were in his possession or control, and were authentic.'" *United States v. Hubbell*, 530 U.S. 27 (2000) (*citing United States v. Doe*, 465 U.S. 605, 613 n. 11 (1984)). As such, the Individual Defendants may assert their Fifth Amendment privilege over the twenty-three individual devices in iDS' custody.

It is well-established that any waiver of a Fifth Amendment privilege must be made "voluntarily, knowingly and intelligently." *See Colorado v. Spring*, 479 U.S. 564, 573 (1987) (*quoting Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). "[W]aiver of constitutional rights … is not lightly to be inferred." *Emspak v. United States*, 349 U.S. 190, 196 (1955). Indeed, "courts 'must indulge every reasonable presumption against waiver.'" *United States v. O'Henry's Film Works, Inc.*, 598 F.2d 313, 318–19 (2d Cir.1979) (quoting *Emspak*, 349 U.S. at 198, 75 S.Ct. 687). Before an individual can be found to have waived the Fifth Amendment privilege, the Second Circuit requires that "the witnesses' prior statements [must] have created a significant likelihood

that the finder of fact will be left with and prone to rely on a distorted view of the truth" and "the witness [must have] had reason to know that his prior statements would be interpreted as a waiver." *Cartier, a Div. of Richemont N. Am., Inc. v. Micha, Inc.*, No. 06 Civ. 4699 (D.C.), 2008 WL 2061386, at *2 (S.D.N.Y. May 12, 2008) (*quoting Klein v. Harris*, 667 F.2d 274, 287 (2d. Cir. 1981)).  None of these necessary conditions are present in the record before this Court.

The Individual Defendants respectfully submit that this Court should find they have not waived any right to claim privilege in this Action.   The Fifth Amendment privilege is a fundamental right, and the Individual Defendants sought to assert this right as soon as they became aware it was at issue.  *Emspak*, 349 U.S. 190.  Any delay in asserting it is due to Plaintiff's deception and, thus, cannot form a voluntarily, knowing, and intelligent waiver.  Plaintiffs' June 10 Letter disclosing the Government's interest in a transcript is not sufficient to establish a waiver. Moreover, the June 10 Letter does not disclose the fact that Plaintiff ██████████████ ██████████ or that Plaintiff acts as an undeputized agent of the Government for the express purpose of providing information that would otherwise be protected from disclosure.   The Individual Defendants' Fifth Amendment rights only became a known issue once ████████ ███████████████████████████████████████████████████████.

Be that as it may, it is well-established that mere delay in notifying the Court of potential Fifth Amendment concerns is not a sufficient reason to find waiver of the Individual Defendants' Fifth Amendment privilege. *See In re DG Acquisition Corp.*, 208 B.R. 323, 328 (Bankr. S.D.N.Y.), *aff'd*, 213 B.R. 883 (S.D.N.Y. 1997), *aff'd*, 151 F.3d 75 (2d Cir. 1998)("no reason to assume that Congress intended" Rule 45 to be an absolute "time-bar for the assertion of Fifth Amendment rights.").  Some courts have found that untimeliness, without more, can never justify finding of waiver of the Fifth Amendment privilege because that privilege is "qualitatively distinct from other

discovery objections." *United States v. A & P Arora, Ltd.*, 46 F.3d 1152 (10th Cir.1995) (unpublished); *see also Brock v. Gerace,* 110 F.R.D. 58, 64 (D.N.J.1986)("[t]he court must be reluctant, however, to equate the loss of the Fifth Amendment privilege with the loss of other discovery privileges of less fundamental scope"). As such, Plaintiff's argument that the Individual Defendants waived their Fifth Amendment rights by not immediately asserting them on June 10, 2022 lacks support under the law.

In *HSH Nordbank AG New York Branch v. Swerdlow*, the Southern District of New York found that a protective order formed a complete defense to the receiving party's waiver argument where such order expressly stated that inadvertent production of privileged materials would not prejudice a later privilege claim by the producing party. *See HSH Nordbank AG New York Branch v. Swerdlow*, 259 F.R.D. 64, 74–75 (S.D.N.Y. 2009); s*ee also U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.,* No. 97 Civ. 6124, 2000 WL 744369, at *4 (S.D.N.Y. June 8, 2000); *Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.,* No. 96 Civ. 7590, 1997 WL 736726, at *4 (S.D.N.Y. Nov. 26, 1997). Here, the Protective Order contains similar language, as follows: "if a party ***at any time*** notifies any other Party that it, ***for any reason***, disclosed documents, testimony, information, and/or things that are protected as Privileged Material… the disclosure alone, pursuant to Rule 502(d), shall not be deemed a waiver…of any applicable privilege or protection." *See* Dkt. No. 89, § 16.5 § (emphasis added). As such, the Protective Order completely rebuts Plaintiff's waiver arguments.[8]

---

[8] Similarly, informal assertions of privilege, like those in the Individual Defendants' discovery responses also preclude a claim of waiver through inaction. *In re DG Acquisition Corp.*, 151 F3d 75, 82 (2d Cir. 1998) ("counsel's informal notice that a privilege objection might be made later was not a waiver through non-assertion"); *See also* Green Decl., Ex. A.

Furthermore, the Individual Defendants could not knowingly and intelligently make their Fifth Amendment objections when they entered into the Stipulation for Expedited Discovery, the Protective Order and Inspection Protocol, or when they complied with said Orders and turned over their twenty-three electronic devices to iDS, because Plaintiff withheld the fact ██████████ ████████████████████ and was acting as an undeputized agent of the Government for the express purpose of circumventing the Individual Defendants' Fifth Amendment privilege. *See In re DG Acquisition Corp.*, 151 F.3d 75, 83 (2d Cir. 1998) (there could not be a waiver under Rule 45 if the Dabah Wives had no firm basis for asserting the privilege in December 1995 [when they first stated their other objections to these subpoenas] and only acquired that basis later). *See also United States v. Hatchett*, 862 F.2d 1249, 1252 (6th Cir.1988) (remanding for determination whether appellant had reasonable fear of self-incrimination during Rule 33 period). Even if there were a waiver concerning reviewed materials produced under false pretenses (which has not occurred), the Individual Defendants may take such action as necessary to prevent any involuntary, unknowing, and misinformed alleged "waiver" of their Fifth Amendment privilege.[9] *See*, *e.g.*, *Cartier*, 2008 WL 2061386, at *2.

Based on the foregoing, the Individual Defendants respectfully submit that no voluntary, knowing, and intelligent Fifth Amendment waiver occurred.

### III.    Plaintiff Should Not Be Allowed To Benefit From Its Deception.

Had Plaintiff properly disclosed that ████████████████████████ and continues to act as an undeputized agent of the Government, the Individual Defendants would not have (1)

---

[9] Even if a waiver could be found (which it cannot), it must only apply to documents and information Plaintiff actually reviewed under the Protective Order. Given Plaintiff's vehement objection to the Individual Defendants' claw back, it is apparent that Plaintiff has not completed its review of the devices. Thus, Plaintiff must identify, with specificity, the devices, documents, and files that have been viewed as a necessary precursor to any waiver argument.

entered the Protective Order and Inspection Protocol, (2) provided devices to iDS, or (3) made any information available for inspection absent the relief sought through the pending motion to stay. *See* Dkt. No. 214. ███████████████████████████████. *See* Green Decl. Ex. I, p. 13:11-13.  Because Plaintiff concealed this information, the Individual Defendants have been deeply prejudiced through expedited discovery compelling them to turn over electronic devices and release information without knowing ████████████████████████—or even knowing what they are accused of misappropriating.

The only reason the Individual Defendants turned over any devices to iDS is because of the expedited discovery schedule.  The Individual Defendants respectfully submit that Plaintiff obtained expedited discovery by not only deceiving the parties, but also deceiving the Court.  There is no denying that Plaintiff's involvement in the USAO Investigation would have been a relevant fact to consider during earlier disputes over the Protective Order, Expedited Discovery Order, and Inspection Protocol.   Notably, in support of expedited discovery, Plaintiff argued that Defendants would "not be prejudiced by expedited discovery, as responding to these demands is something that Defendants would be required to do shortly in this litigation in any event." *See* Dkt. No. 6.  This statement is undeniably false once Plaintiff's relationship with the FBI and the USAO Investigation was revealed.

By arguing that a waiver exists, Plaintiff essentially admits it sought to improperly induce such waiver of the Individual Defendants' Fifth Amendment rights.  Rather than seek forgiveness, Plaintiff asks this Court to reward it for its deception, and for no other reason than the fact that Plaintiff's deception succeed.  As set forth above, the foundation of the discovery protocol in this Action was establish during a time where the Individual Defendants were not even represented by counsel. *See* Dkt. No. 25.  Plaintiff should not be permitted to retain any benefit gained through

deception.  Nonetheless, the record before this Court establishes that no voluntary, knowing, and intelligent waiver occurred.

Based on the foregoing, the most reasonable course of action that would protect the most compelling interests at issue is to allow the Individual Defendants to claw back their devices and conduct a review to identify any potential Fifth Amendment privilege, after Plaintiff fully complies with the Court's July 22, 2022, Order.

## CONCLUSION

For the foregoing reasons, the Individual Defendants respectfully request this Court uphold their decision to claw back materials under the Protective Order, together with such other and further relief as the Court may deem necessary and proper.

Dated: New York, New York
      August 11, 2022

**WINGET, SPADAFORA & SCHWARTZBERG, LLP**

By:   *Anthony D. Green*
      Anthony D. Green, Esq.
      Alexander A. Truitt, Esq.
      M. Annabel Mireles, Esq.
      45 Broadway – 32nd Floor
      New York, NY 10006
      P: (212) 221-6900
      F: (212) 221-6989
      Green.A@wssllp.com
      Truitt.A@wssllp.com
      Mireles.A@wssllp.com

      *Attorneys for Defendants Robert Alin Pilkington and Misook Kim*