**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------X
MOOG INC.,

                              Plaintiff,              Case No.: 22-cv-187-LJV-JJM

            vs.

SKYRYSE, INC. ROBERT ALIN PILKINGTON, MISOOK
KIM, and DOES NOS. 1-50

                           Defendants.
-------------------------------------------------------------------------X

**ROBERT ALIN PILKINGTON AND MISOOK KIM'S**
**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR**
**RESTORED ACCESS TO THE INDIVIDUAL DEFENDANTS' DEVICES**


                                                        **WINGET, SPADAFORA &**
                                                        **SCHWARTZBERG, LLP**
                                                        45 Broadway, 32nd Floor
                                                        New York, NY 10006
                                                        (p): (212) 221-6900
                                                        (f): (212) 221-6989

                                                        *Attorneys for Robert Alin Pilkington*
                                                        *and Misook Kim*


Of Counsel:    Anthony D. Green, Esq.
                    Alexander A. Truitt, Esq.
                    M. Annabel Mireles, Esq.

Dated:          August 15, 2022
                    New York, New York

Individual defendants Robert Alin Pilkington and Misook Kim (collectively, the "Individual Defendants") respectfully submit this memorandum of law in response to the arguments set forth in plaintiff Moog, Inc.'s ("Plaintiff") motion for restored access to the Individual Defendants' devices ("Motion"). *See* Dkt. 228, *et seq*. As set forth herein, the Individual Defendants' actions were proper under the Protective Order. The Individual Defendants did not knowingly, voluntarily, and intelligently waive their rights guaranteed under the Fifth Amendment to the U.S. Constitution. As such, Plaintiff's Motion must be denied.

## PRELIMINARY STATEMENT[1]

The complete lack of candor in Plaintiff's Motion is astounding. It shocks the conscience that Plaintiff would represent to this Court that its "Timeline of Relevant Events" is complete and accurate when Plaintiff omits the facts that: (1) Plaintiff initiated the USAO Investigation prior to commencing this Action; (2) Plaintiff is deeply involved with the USAO Investigation and acts in an agency capacity for the very purpose of circumventing the Individual Defendants' Fifth Amendment rights; and (3) Plaintiff induced the Individual Defendants into the So-Ordered Stipulation, while withholding this information, and before the Individual Defendants even retained counsel. *See* Dkt. 228-1, pp. 11-12; *see also* Dkt. Nos. 25, p. 7, fn. 1; 229-15.

The Individual Defendants respectfully submit that a temporary restraining order, such as the one Plaintiff seeks in this action (and through which Plaintiff obtained the Expedited Discovery Order) is an equitable remedy—requiring Plaintiff to approach the Court with clean hands and proceed in good faith. As set forth in the Individual Defendants' Opening Brief (as well as several pending motions before this Court) Plaintiff has shown the upmost bad faith in this Action. Rather

---

[1] Except as otherwise stated, the Individual Defendants incorporate and rely on the terms previously defined in its opening brief ("Opening Brief"). *See* Dkt. No. 229-1.

1

than seek forgiveness for its dilatory conduct, Plaintiff blames the parties for ever believing it would act in good faith and further argues this Court must protect any advantage improperly obtained through Plaintiff's bad faith and deception.

Plaintiff's Motion must be denied. The Individual Defendants' actions were proper under the Protective Order and no waiver of their Fifth Amendment rights occurred.

## ARGUMENT

### I. The Individual Defendants Properly Clawed Back Their Devices Pursuant To The Protective Order

As set forth in the Opening Brief, the Individual Defendants' broad assertion of privilege is proper in light of the fact that: (1) Plaintiff refuses to identify the trade secrets and classified information at issue; (2) such identification is necessary to assert the privilege; (3) Plaintiff is acting in an agency capacity to provide the Government information that would otherwise be protected from disclosure; and (4) Plaintiff has stated it will not identify the trade secrets and confidential information until the Individual Defendants, effectively, waive their Fifth Amendment Rights against self-incrimination. *See* Dkt 229-1, pp. 11-12. Contrary to Plaintiff's argument, the Individual Defendants sufficiently communicated such objection to Plaintiff, which is all that is required under the Protective Order. *See* Dkt. 229-13; *see also* Dkt No. 89, §§ 16.1, 16.2.[2]

Plaintiff's Motion must be denied as it further relies on several blatant misrepresentations of the Protective Order. To start, Plaintiff argues the "clawback provisions of the Protective Order

---

[2] While Plaintiff takes issue with the Individual Defendants' objection, it is Plaintiff's dilatory conduct that prevents the Individual Defendants from objecting in the format that Plaintiff claims entitlement to. As set forth herein, the degree of specificity Plaintiff seeks is not required under the Protective Order. *See* Dkt. No. 89. Nonetheless, once Plaintiff identifies the trade secrets and classified information at issue, with particularity, the Individual Defendants will supplement and narrow their objection as necessary.

2

do not encompass the Fifth Amendment." *See* Dkt. No. 228-1, pp. 6, 9. This argument is unambiguously rejected by express language of the Protective Order.

The clawback provision of the Protective Order applies to "Privileged Material" as that term is defined under the Protective Order. *See* Dkt. No. 89, § 16.1. In turn, "Privileged Material" is defined as:

> Discovery Material protected from disclosure under the attorney-client privilege, attorney work product doctrine, United States or foreign bank disclosure laws or regulations, ***and/or any other applicable United States or foreign statute, law, regulation, privilege, or immunity from disclosure***.

Dkt. 89, § 1.15 (emphasis added). As the Individual Defendants' Fifth Amendment rights are an "applicable United States … statute, law, regulation, privilege, or immunity from disclosure," the Fifth Amendment is a sufficient basis to claw back materials under the Protective Order. *See id.*[3]

Plaintiff's Motion further misrepresents Section 11.1 of the Protective Order to argue the Individual Defendants have not sufficiently objected under the Protective Order. *See* Dkt. 228-1, p. 10. This argument is similarly baseless as Section 11.1 of the Protective Order requires that the receiving party (in this case Plaintiff) comply with Federal Rule of Civil Procedure 26(b)(5)(B). *See* Dkt. No. 89, § 11.1 (where "a Producing Party gives notice to Receiving Parties that inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the ***Receiving Parties*** are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B))(emphasis added).

The only requirement for a producing party to claw back materials under the Protective Order is that such party "provide notice in writing to the Receiving Party specifying the production

---

[3] As Plaintiff drafted the Protective Order and now argues in favor of radically divergent interpretations of the Protective Order, the well-established cannon of *contra proferentem* requires the Court to construe any ambiguities against Plaintiff. *See Saks Inc. v. Attachmate Corp.*, No. 14 CIV. 4902 CM, 2015 WL 1841136, at *2 (S.D.N.Y. Apr. 17, 2015).

number of the Discovery Material it wishes to claw back." *See* Dkt. 89, § 16.1; *see also* § 11.1. There is no requirement that notice comply with Plaintiff's interpretation of Fed. R. Civ. P., 26(b)(5)(B). Contrary to Plaintiff's arguments, the Individual Defendants were not required to seek leave of the Court prior to clawing back the materials in question. *See id*. §§ 16.1, 16.2.[4] Because the Individual Defendants identified the electronic devices that were previously made available for review, as well as the basis for the claw back, they satisfied all requirements under the Protective Order. *See* Dkt. 229-13.

Likewise, Section 16.3 of the Inspection Protocol is inapplicable because Plaintiff sought direct Court intervention, rather than serve the Individual Defendants with a "Challenge Notice," as required under the Protective Order. *See* Dkt. 89, § 16.3; *see also* Dkt. 228-12. For that matter, Plaintiff's Motion fails to identify, with specificity, the devices, documents, and files that have been viewed, which necessary is to any waiver argument. *In re Nat. Gas Commodity Litig.*, 229 FRD 82, 90 (S.D.N.Y. 2005) (Plaintiff must demonstrate how they have used and relied upon the inadvertently produced materials to secure establish waiver). If none of the Individual Defendants' devices were viewed and relied upon, then no waiver is possible. *Id.* Nonetheless, Plaintiff is the party refusing to provide the information necessary for the Individual Defendants to assert privilege with any greater specificity. Allowing Plaintiff continued access to rebut a privilege

---

[4] The only party required to seek Court intervention is Plaintiff. Before seeking Court intervention, however, the Plaintiff must serve the Individual Defendants with a Challenge Notice. *See* Dkt. 89, § 16.3. There is no challenge notice in the record, as Plaintiff first sought Court intervention before complying with the Protective Order. *See* Dkt. 228-12. As such, Plaintiff's reliance on *United States v. United Mine Workers of Am., In re Int'l Bus. Machines Corp.*, *Infinity Headwear & Apparel v. Jay Franco & Sons*, *Shady Recs.*, and *Inc. v. Source Enterprises, Inc.*, is irrelevant because each of those cases is founded upon the defendant violating a Court order, whereas here, the Individual Defendants complied with the Protective Order. *See* Dkt. 228-1, p. 8. (citing cases).

assertion that Plaintiff also prevents the Individual Defendants from intelligently making places the metaphorical cart directly before the horse.

Because the Individual Defendants acted properly under the Protective Order, this Court should allow the claw back of the devices in question and deny Plaintiff's Motion.

## II. The Individual Defendants' Inadvertent Production May Be Clawed Back

There is no question the Individual Defendants' production was inadvertent. In determining whether production subject to a claw back was inadvertent, courts consider: "(1) the reasonableness of the precautions taken to prevent inadvertent disclosure, (2) the time taken to rectify the error, (3) the scope of the discovery and extent of the disclosure, and (4) overarching issues of fairness. *See In re Bank of New York Mellon Corp. Forex Transactions Litig.*, No. 12 MD 2335 LAK, 2014 WL 4827945, at *1 (S.D.N.Y. Sept. 22, 2014) (citing *SEC v. Cassano*, 189 F.R.D. 83, 85 (S.D.N.Y.1999) (internal quotations omitted)). It is well-established that discovery orders protecting inadvertent disclosure, such as the Protective Order is this Action, form a reasonable precaution. *See In re Bank of New York Mellon Corp. Forex Transactions Litig.*, No. 12 MD 2335 LAK, 2014 WL 4827945, at *1 (S.D.N.Y. Sept. 22, 2014); *Commodity Futures Trading Comm'n v. Parnon Energy Inc.*, No. 11 CIV. 3543 WHP, 2014 WL 2116147, at *4 (S.D.N.Y. May 14, 2014).

Plaintiff argues the Individual Defendants' production was not inadvertent as: "[t]he individual Defendants willingly relinquished these devices to neutral discovery vendor iDS more than four months ago … and they allowed Moog to continue reviewing the devices for weeks (if not months) after learning of the FBI's investigation." *See* Dkt. No. 228-1 pp. 10-11 (internal citation omitted). This argument is insufficient, unsupported by any legal authority and should be rejected by this Court.

Here, Plaintiff ignores the fact(s) that: (1) Plaintiff initiated the USAO Investigation prior to commencing this Action; (2) Plaintiff is deeply involved with the USAO Investigation and acts in an agency capacity for the very purpose of circumventing the Individual Defendants' Fifth Amendment rights; and (3) Plaintiff induced the Individual Defendants into the So-Ordered Stipulation while withholding this information and before the Individual Defendants even retained counsel.  *See also* Dkt. Nos. 25, p. 7, fn. 1; 229-15.  Likewise, Plaintiff's June 10 Letter does not disclose how Plaintiff was acting as an agent of the Government to circumvent the Individual Defendants' Fifth Amendment rights against self-incrimination—it paints a misleading picture that minimizes Plaintiff's relationship with the Government.  *See* Dkt. 229-12.  Indeed, Plaintiff did not even produce its communications with the FBI until ***after*** the Individual Defendants clawed back access to their devices.[5]

Conversely, the Individual Defendants each retained criminal defense counsel by July 5, 2022.  The Individual Defendants were then advised they were the subject of a criminal investigation and asserted their Fifth Amendment rights in response to the grand jury subpoena.  Shortly thereafter, the Individual Defendants advised Plaintiff they would seek a stay and that they were further considering a claw back of materials already produced in this action.  As such, there is no question the Individual Defendants acted promptly in rectifying their error.  *In re DG Acquisition Corp.*, 151 F.3d 75, 83 (2d Cir. 1998) (finding a six-month delay in asserting Fifth Amendment privilege did not result in a waiver).

---

[5] While Plaintiff has explained that its earlier failure to provide certain document productions to the Individual Defendants was inadvertent; it is Plaintiff who must bear the consequence for any delay arising from this mistake.  Even applying the date Plaintiff's document production to Skyryse, it is irrefutable that Plaintiff did not intend to disclose its involvement with the USAO Investigation until after it secured access to the Individual Defendants' devices.

6

Furthermore, the overarching issues of fairness weigh heavily in favor of the Individual Defendants. The simple fact is that none of the parties would have agreed to the So-Ordered Stipulation had Plaintiff fully disclosed its involvement with the USAO Investigation. Given the protections afforded to *pro se* defendants, counsel does not believe the Court would have signed the So-Ordered Stipulation without first advising Plaintiff of their Fifth Amendment rights or affording the Individual Defendants time to retain counsel.[6]

Likewise, there is no prejudice to Plaintiff because Plaintiff does not have a right to privileged materials. *Prescient Partners L.P. v. Fieldcrest Cannon, Inc.*, 96 Civ. 7590, 1997 WL 736726 at *7 (S.D.N.Y. Nov.26, 1997) (prejudice factor does not consider whether removing access would deprive plaintiff of pertinent information). Indeed, Plaintiff is not harmed by the Individual Defendants' decision to claw back access to their devices, Plaintiff is merely prevented from obtaining a "windfall" that in improperly obtained through deception and bad faith. *United States v. Rigas*, 281 F. Supp. 2d 733, 742 (S.D.N.Y. 2003).

As such, the Individual Defendants respectfully request this Court find its earlier production is inadvertent.

### III.     Plaintiff's Foregone Conclusion Argument Lacks Merit

It is well established that the production of documents and materials, including data on the Individual Defendants' devices, may be subject to a Fifth Amendment claim as "[t]he act of production may implicitly communicate 'statements of facts' by compelling the person 'to admit that the papers existed, were in his possession or control, and were authentic.'" *United States v.*

---

[6] The Individual Defendants' Opening Brief argued that Plaintiff should not be allowed to benefit from its deception. *See* Dkt. 229-1, pp. 18-20. While Plaintiff states its entitlement to the So-Ordered Stipulation and Protective Order is absolute, each may be modified by the Court upon good cause shown. *See* Dkt. Nos. 25, 89. The Individual Defendants respectfully submit that Plaintiff's wrongful conduct in this action is sufficient good cause.

7

*Doe*, 465 U.S. 605, 613 n. 11 (1984); *see also* Charles A. Wright, Arthur R. Miller and Richard L. Marcus, Federal Practice and Procedure § 2018, at 273 (2d ed. 1994).  None of the authority cited by Plaintiff rebuts this maxim as Plaintiff's proffered authority confirms "the "act of production" may have a "compelled testimonial aspect" and "may certainly communicate information about the documents' existence, custody, and authenticity." *See, e.g., United States v. Hubbell*, 530 U.S. 27, 28 (2000); *see also* Dkt. No. 228-1, pp 11-14.  Where, as here, the incriminating aspect of the production is its existence, the privilege applies.  *In re Grand Jury Subpoena Dated February 2, 2012*, 741 F3d 339, 343 (2d Cir. 2013) (citing *Fisher v. United States*, 425 U.S. 391 (1976).[7]

Contrary to Plaintiff's assertion, the information on the Individual Defendants' devices is anything but a foregone conclusion.  Plaintiff has repeatedly refused to identify the trade secrets and classified information at issue with any degree of particularity.  Plaintiff cannot argue that all the information on the Individual Defendants' devices is already known, thus making the information a "foregone conclusion," while also stating that it cannot identify its own trade secrets.[8]

Furthermore, *Burt Hill Inc. v. Hassan*, is inapplicable to this dispute.  *See Burt Hill, Inc. v. Hassan, CIV.A.* 09-1285, 2010 WL 55715 (W.D. Pa. Jan. 4, 2010).  In *Burt Hill,* the defendants

---

[7] Unlike in *Matter of Grand Jury Empanelled Feb. 14, 1978*, where the question analyzed was whether documents created by the defendants contained privileged information and whether there was any compulsion in the creation of the documents, here, the issue is whether the act of producing the materials at issue would constitute compelled testimony.  *Matter of Grand Jury Empaneled Feb. 14, 1978*, 603 F.2d 469 (3d Cir. 1979).

[8] For that matter, Plaintiff is also aware of the differences between the Individual Defendants asserting the Fifth Amendment privilege in the grand jury investigation as opposed to this action.  These competing interests are discussed in the Individual Defendants' Motion to Stay.  Nonetheless, even if the Court found an adverse inference (which is not supported by the record) Plaintiff would still have to identify its trade secrets—without the benefit of the Individual Defendants' devices—or its claim would fail.

already possessed sufficient information to assert their Fifth Amendment right against self-incrimination and did so while making multiple offers to allow Plaintiff's to review their electronically stored data. *Id.* Here, the Individual Defendants: (1) do not have the necessary information to assert their Fifth Amendment privilege because Plaintiff improperly withholds such information; and (2) did not offer, but were compelled to turn over their devices pursuant to the So-Ordered Stipulation. As discussed above, Defendants were not aware of the USAO investigation at this time, nor were the Individual Defendants even represented by counsel. *See* Dkt. No. 25. Based on the foregoing, the Individual Defendants may assert their Fifth Amendment privilege over the twenty-three individual devices in iDS' custody

## IV.     The Individual Defendants Have Not Waived Their Fifth Amendment Rights

It is well-established that any waiver of a Fifth Amendment privilege must be made "voluntarily, knowingly and intelligently" and that any "waiver of constitutional rights … is not lightly to be inferred." *Emspak v. United States*, 349 U.S. 190, 196 (1955); *Colorado v. Spring*, 479 U.S. 564, 573 (1987) (*quoting Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). This Court is required to "indulge every reasonable presumption against waiver." *United States v. O'Henry's Film Works, Inc.*, 598 F.2d 313, 318–19 (2d Cir.1979) (quoting *Emspak*, 349 U.S. at 198, 75 S.Ct. 687).

Plaintiff's cited caselaw does not support its argument. Reliance on *In re DG Acquisition Corp.*, is misplaced as the *DG Acquisition* court excused a six-month delay in asserting privilege because the defendants had no basis to assert the privilege when they initially objected to the subpoenas at issue. *In re DG Acquisition Corp.*, 151 F.3d 75 (2d Cir. 1998). Likewise, the *DG Acquisition* court found that informal assertions of privilege through discovery responses (like the

9

informal objection in the Individual Defendants' discovery responses) precluded a claim of waiver through inaction. *Id* at 82; *see also* Dkt. No. 229-3.

Furthermore, *United Auto. Ins. Co. v. Veluchamy,* is inapplicable because the defendants were aware of an ongoing government investigation when they served interrogatory responses. *See United Auto. Ins. Co. v. Veluchamy*, 747 F. Supp. 2d 1021 (N.D. Ill. 2010). Here, the Individual Defendants were not aware of the USAO Investigation at the time they delivered their devices to iDS because Plaintiff actively concealed this fact. As the *United Auto* Court stated, "one either asserts the Fifth Amendment or responds to proper discovery or seeks a stay of the cease so that one is not obligated either to respond to the complaint or to discovery request." *Id*., at 1026. This is precisely what the Individual Defendants have done through their pending Motion to Stay. The remaining cases cited by Plaintiff involve government entities, whose participation in the litigation placed the defendants on notice of, at least, the potential for parallel investigations.

Based on the foregoing, the Individual Defendants respectfully submit that no voluntary, knowing, and intelligent Fifth Amendment waiver occurred.

## CONCLUSION

For the foregoing reasons, the Individual Defendants respectfully request this Court deny Plaintiff's Motion in its entirety.

Dated: New York, New York  
       August 15, 2022

**WINGET, SPADAFORA & SCHWARTZBERG, LLP**

By: *Anthony D. Green*  
Anthony D. Green, Esq.  
Alexander A. Truitt, Esq.  
M. Annabel Mireles, Esq.  
45 Broadway – 32nd Floor  
New York, NY 10006

*Attorneys for Defendants Robert Alin Pilkington and Misook Kim*