UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————

MOOG, INC.,

                          Plaintiff,

            v.                                          Case No. 22-cv-00187

SKYRYSE, INC., ROBERT ALIN PILKINGTON,
MISOOK KIM, and DOES NOS. 1 – 50,

                          Defendants.

———————————————————————


### MOOG INC.'S MEMORANDUM OF LAW  IN OPPOSITION TO MOTION TO STAY ACTION BY DEFENDANTS PILKINGTON AND KIM

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................1

BACKGROUND ...................................................................................................3

    I.      The Criminal Investigation & the Individual Defendants' Participation in Discovery ....................................................................................................3

        A.    Moog's Communication with the FBI ...............................................6

    II.    Plaintiff Moog Inc.'s Identification of Trade Secrets & The Court's July 22 Order ...................................................................................................7

ARGUMENT .......................................................................................................8

    I.      A Stay is Not Warranted Here ..................................................................8

        A.    Stays Are Routinely Denied Where There Is No Indictment ..................10

            1.    None of the Authority Cited by the Individual Defendants Supports Their Request for a Pre-Indictment Stay ......................11

        B.    There is No Known "Overlap" of Criminal and Civil Proceedings...........13

        C.    The Individual Defendants' Private Interests, including the Specter of the Fifth Amendment, Do Not Warrant a Stay .....................................14

        D.    The Interests of Moog, the Court, and the Public Weigh in Favor of Denying a Stay and Proceeding Expeditiously.........................................16

            1.    The Interests of Plaintiff Moog....................................................16

            2.    The Interests of the Court ............................................................17

            3.    The Interests of the Public ...........................................................18

    II.    The Individual Defendants' "Alternative" Relief is an Improper Motion for Reconsideration of the Court's July 22 and 27 Orders ....................19

CONCLUSION....................................................................................................24

## **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Arden Way Assocs. v. Boesky*,
  660 F. Supp. 1494 (S.D.N.Y. 1987).................................................................17, 18

*Bernard v. Lombardo*,
  No. 16 CV. 863, 2017 WL 2984022 (S.D.N.Y. June 9, 2017)....................................14, 16, 17

*Brock v. Tolkow*,
  109 F.R.D. 116 (E.D.N.Y. 1985) .....................................................................12, 13

*Burt Hill, Inc. v. Hassan*,
  No. CIV.A. 09-1285, 2010 WL 55715 (W.D. Pa. Jan. 4, 2010)...............................................16

*Chao v. Fleming*,
  498 F. Supp. 2d 1034 (W.D. Mich. 2007) .........................................................9, 12

*Citibank, N.A. v. Hakim*,
  No. 92 CIV. 6233 (MBM), 1993 WL 481335 (S.D.N.Y. Nov. 18, 1993).........................10, 18

*Cohen v. Altman*,
  No. 519CV274TJMTWD, 2022 WL 370948 (N.D.N.Y. Feb. 8, 2022)............................15, 16

*Colvin v. Keen*,
  No. 13CV3595SJFARL, 2016 WL 233668 (E.D.N.Y. Jan. 19, 2016)...................................21

*Gellis v. Casey*,
  338 F. Supp. 651 (S.D.N.Y. 1972) .........................................................................9

*Jackson v. Heidelberg L.L.C.*,
  No. 02-CV-6536, 2006 WL 8446398 (W.D.N.Y. Sept. 29, 2006), *aff'd*, 296 F.
  App'x 102 (2d Cir. 2008) .................................................................................21, 23

*Javier H. v. Garcia-Botello*,
  218 F.R.D. 72 (W.D.N.Y. 2003).........................................................................12, 18

*JHW Greentree Cap., L.P. v. Whittier Tr. Co.*,
  No. 05 CIV. 2985 (HB), 2005 WL 1705244 (S.D.N.Y. July 22, 2005) ..........11, 13, 16, 17, 18

*Keating v. Off. of Thrift Supervision*,
  45 F.3d 322 (9th Cir. 1995) .................................................................................9, 11, 14

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936)..........................................................................................18

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
  676 F.3d 83 (2d Cir. 2012)........................................................................11, 16, 17

*Nealy v. U.S. Surgical Corp.*,
  587 F. Supp. 2d 579 (S.D.N.Y. 2008).........................................................................6

*Ong v. Chipotle Mexican Grill, Inc.*,
  329 F.R.D. 43 (S.D.N.Y. 2018)*, aff'd sub nom. Metzler Inv. Gmbh v. Chipotle
  Mexican Grill, Inc.*, 970 F.3d 133 (2d Cir. 2020)............................................21, 22

*PAB Aviation, Inc. v. United States*,
  No. 98-CV-5952 JG, 2000 WL 1240196 (E.D.N.Y. Aug. 24, 2000) ................21, 22

*In re Par Pharm., Inc. Sec. Litig.*,
  133 F.R.D. 12 (S.D.N.Y. 1990) ...............................................................................10

*Patrick v. Apple*,
  No. 920CV0047LEKDJS, 2020 WL 4816015 (N.D.N.Y. Aug. 19, 2020) ....10, 11, 14, 15, 16,
  18

*Pearson Educ., Inc. v. Kumar*,
  No. 1:07-CV-9399 (CSH), 2010 WL 2230574 (S.D.N.Y. May 27, 2010),
  *judgment vacated on other grounds*, 523 F. App'x. 16 (2d Cir. 2013) .....................17

*S.E.C. v. Healthsouth Corp.*,
  261 F. Supp. 2d 1298 (N.D. Ala. 2003) ...................................................................12

*S.E.C. v. Musella*,
  38 Fed. R. Serv. 2d 426 (S.D.N.Y. 1983) ............................................................10, 13

*Sec. & Exch. Comm'n v. Dresser Indus., Inc.*,
  628 F.2d 1368 (D.C. Cir. 1980) .................................................................................8

*Sec. & Exch. Comm'n v. LaGuardia*,
  435 F. Supp. 3d 616 (S.D.N.Y. 2020).......................................................................12

*United States v. Priv. Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*,
  811 F. Supp. 802 (E.D.N.Y. 1992) ...................................................................10, 13, 17

*Vardi Trading Co. v. Overseas Diamond Corp.*,
  No. 85 CIV. 2240 (CSH), 1987 WL 17662 (S.D.N.Y. Sept. 23, 1987) ...................12

*Volmar Distribs., Inc. v. New York Post Co.*,
  152 F.R.D. 36 (S.D.N.Y. 1993) ...............................................................................12

*Williams v. Swack*,
  No. 13-CV-00974 S M, 2015 WL 2237216 (W.D.N.Y. May 12, 2015) ................9, 10, 15, 19

**State Cases**

*Advanced Modular Sputtering, Inc. v. Superior Ct.*,
    132 Cal. App. 4th 826 (2005) ................................................................................19

**Federal Statutes**

18 U.S.C. 798.................................................................................................................24

**Constitutional Provisions**

Fifth Amendment ......................................................1, 2, 3, 4, 5, 6, 7, 9, 12, 14, 15, 16, 17, 22, 23

## PRELIMINARY STATEMENT

Plaintiff Moog, Inc. ("Moog"), by and through its undersigned counsel, hereby submits this memorandum of law in opposition to defendants Alin Pilkington's and Misook Kim's (collectively, the "Individual Defendants") motion to stay this action (the "Motion" or "Mot."). (ECF 214). The six elements to be considered by the Court in determining whether to stay a civil action pending a parallel criminal action are: 1) the status / procedural posture of the criminal investigation; 2) the overlap of the criminal and civil actions; 3) the private interests of the defendants; 4) the private interests of the plaintiffs; 5) the interests of the Court; and 6) the interests of the public. Each of the six elements to be considered weigh in favor of denying the Motion.

The first factor is the most important to the Court's analysis, and especially important is the fact that the Individual Defendants *have not* been indicted. The case law makes clear that where, as here, there is only a criminal investigation, but no indictment, a stay should not be granted and in fact can be denied on this ground alone.[1] Furthermore, without an indictment, the factor regarding overlap of the actions also weighs against a stay because the actual scope of any eventual criminal indictment (which is a necessary precursor to any criminal court case) remains hypothetical.

While the Motion gives heavy attention to Fifth Amendment rights and concerns, these arguments only pertain to one element of the test (the private interests of the defendants), and do not warrant a stay. Moreover, it is undisputed that the Individual Defendants have not invoked any Fifth Amendment rights to date in connection with this action and, more importantly, the

---

[1] The minimal authority on which the Individual Defendants rely for their argument that this action should be stayed due only to an ongoing investigation by the U.S. Attorney's Office ("USAO") does not actually support that result and, to the contrary, pre-indictment motions for stay are generally denied.

Court need not actually decide any Fifth Amendment issues in order to deny the Motion.[2] General concerns that a defendant may have to make a choice to invoke the Fifth Amendment do not suffice to warrant a stay in these circumstances. [3]

Further, the prejudice to Moog if a stay were entered would be substantial.  Moog would be indefinitely prevented from identifying what particular trade secrets were stolen, proceeding with the scheduled Preliminary Injunction hearing, and obtaining injunctive relief necessary to prevent further irreparable harm stemming from the Individual Defendants' undisputed theft of 1.4 million files containing Moog's proprietary information.  The Court's and the public's interest likewise both favor expeditious resolution of this matter.

There is overwhelming authority confirming that a stay should be denied in this case, where there is only a pending criminal investigation (i.e., only the *possibility* of an indictment), the defendants have not raised any unique Fifth Amendment concerns, and where the Plaintiff would suffer significant prejudice from a stay.  Because all of the factors weigh against a stay, the Motion is properly denied.

---

[2] Indeed, even though (as explained below) the Individual Defendants have waived Fifth Amendment claims through their intentional productions and prior statements in this action, a finding of waiver is not required.

[3] Like several of the Individual Defendants' recent filings and motions, the Motion misunderstands the scope and application of the Fifth Amendment protection.  The Individual Defendants want to have their cake and eat it too by slamming the brakes on discovery and progress in this case (while Moog faces irreparable harm from the defendants' indisputable theft of over a million files), without having actually invoked their Fifth Amendment rights, an action which, by intentional design, comes with consequential clear pros and cons, particularly in context of a civil action.  However, by contrast, the type of pre-invocation prophylactic relief the Individual Defendants request here finds no support in the case law, and the Court should be reluctant to adopt the Motion's proposed over-extension of what is, by design, a doctrine of limited application.

Finally, the Individual Defendants provide no applicable legal authority to support their alternative request, i.e., "a stay of the Individual Defendants discovery obligations" until after Moog fully identifies its trade secrets that were misappropriated and produces documents proving "classified" documents are in fact classified. The issue of when Moog should be required to identify its trade secrets been directly addressed and resolved in prior orders by the Court. Moreover, the Individual Defendants were indisputably aware of the FBI investigation the first time the issue of trade secret identification was litigated and decided in written order by this Court. This line of argument amounts to nothing more than an attempt by the Individual Defendants to yet again re-litigate the issue of identification of trade secrets, which the Court has already decided, and which does not affect or necessitate a stay.

## BACKGROUND

I.    **The Criminal Investigation & the Individual Defendants' Participation in Discovery**

The most important facts relevant to the Court's consideration of the Individual Defendants' Motion for stay are that:

1) There has been no indictment of or criminal charges made against any of the defendants in this case related to the proceedings herein;

2) None of the defendants in this case have invoked their Fifth Amendment privilege in this matter; and

3) The Individual Defendants *have* invoked their Fifth Amendment privilege as against the USAO investigation, plainly demonstrating that they are able to assert the privilege where they choose to do so.

The Individual Defendants, in compliance with the Court's March 11 Order, produced 23 electronic devices to the neutral ESI vendor, iDS, on April 1, 2022. Following that production, they began to review the devices for attorney-client privileged material. To Moog's knowledge,

the Individual Defendants were each served with a grand jury subpoena between April and June 2022, seeking the production of documents relating to their theft of Moog information.  Moog does not know the exact date of these subpoenas because the Individual Defendants refuse to disclose when they received them.  However, Moog's best understanding is that the Individual Defendants received their subpoenas well before Moog received a subpoena of its own from the Government on June 24, 2022.  Indeed, the Individual Defendants admit that Pilkington "retained criminal defense counsel on or near June 16." (ECF 229-1 at p. 10).

On June 10, 2022, Moog wrote to the Court seeking partial relief from the Court's seal Orders.  Moog informed the Court and all counsel that the FBI had requested copies of unredacted transcripts of the April 26 and May 5 Court conferences as part of an "**ongoing federal investigation into the files taken from Moog that are the subject of this lawsuit**." (ECF 228-04, emphasis added).  Three days later, on June 13, 2022, the Individual Defendants' counsel consented to Moog's request.  (ECF 228-005).  The Court granted Moog's unopposed request to provide the transcripts to the FBI on the same date.  (ECF 152).

On June 24, 2022, Individual Defendants' counsel circulated an e-mail to all parties and iDS. (Declaration of Rena Andoh, Ex. B). For three of their devices, Individual Defendants' counsel asked for certain data to be excised pursuant to a privilege/privacy review and stated that once "the identified files have been excised, *these devices can be made available for review*." (*Id*., emphasis added). Similarly, after identifying four devices that may contain Skyryse data, Individual Defendants' counsel stated that other than "two personal files on the first device that we have identified as requiring excision, *the Individual Defendants have no personal objection to these devices being made available for review*." (*Id*., emphasis added). Thus, the Individual Defendants made several devices available to Moog's review, without any assertion of the Fifth

Amendment, *after completing a privilege/privacy review* and well after being aware of the FBI investigation.

On June 29, 2022—nineteen days after Moog's June 10 letter advising of the FBI's request for transcripts and after the Individual Defendants received a grand jury subpoena—the Individual Defendants consented to Moog's access to 17 of the devices that had been provided to iDS.[4] (ECF 228-008). The Individual Defendants had completed their privilege review of these 17 devices. Moog received that access from iDS and its review and assessment of the devices commenced. At no point between June 29, 2022 and July 27, 2022 did the Individual Defendants raise any Fifth Amendment concerns. Then, on July 27, 2022, more than 45 days after the Individual Defendants were placed on notice (at latest) about the FBI investigation and almost thirty days after the Individual Defendants granted Moog access to the 17 devices— the Individual Defendants informed the Court for the first time that they intended to seek a stay of this case because they *might* invoke the Fifth Amendment. (ECF 206). The Individual Defendants then filed this Motion to stay.

At no point have the Individual Defendants invoked the Fifth Amendment in this action. However, the Individual Defendants *have* invoked the Fifth Amendment against the USAO

---

[4] There are six other electronic devices that the Individual Defendants produced to iDS, but Moog has never had access to them because the Individual Defendants refuse to make those devices available to Skyryse for privilege review. Moog's need to access these six devices (some of which are the most important devices in the case and were directly involved in the acts of misappropriation) is addressed in Moog's Motion to Compel filed on August 3 (ECF 210). At no point prior to July 27 did the Individual Defendants assert any Fifth Amendment privilege over the six additional devices.

subpoena.  (ECF 228-12 at p. 3).  Consequently, it is clear that the Individual Defendants have all the information they need and could properly invoke the Fifth Amendment if they so choose.[5]

A.     **Moog's Communication with the FBI**

The Individual Defendants appear to attempt to make something of Moog's communications with the FBI, alleging that they were "induced" or duped into participating in discovery and alleging that Moog "concealed" information about the FBI and USAO, or that Moog is acting as a deceptive shadow agent of the FBI.  (Mot. at 9).  This is nothing but pure, unsupported conspiracy-mongering.  Quite to the contrary, Moog has been completely transparent regarding its communications with the FBI—it has produced all its communications with the FBI and has offered to provide a mutual exchange of complete document productions to the FBI (but Skyryse has refused).  (ECF 228-09).[6]  The Individual Defendants' assertion that Moog acted in "bad faith" by reporting a crime to the FBI is particularly remarkable coming from Defendants who admittedly stole upwards of 1.4 million files from Moog.

Further, the Individual Defendants' after-the-fact assertions that they would not have participated in discovery are belied by the fact that they consented to Moog's complete access to 17 electronic devices well after both the June 10 correspondence between the parties regarding

---

[5] As mentioned below and explained in more detail in Moog's other filings, any invocation of the Fifth Amendment as to the "act of production" of the devices by the Individual Defendants is either barred by the "foregone conclusion" exception or waived.  However, these issues need not be reached by the Court on deciding this Motion, as the requested stay is properly denied on other grounds.

[6] Further, as noted in Moog's opposition to the Individual Defendants Motion for Clawback, Moog could not have "concealed" something from the Individual Defendants, where, as here, there was no duty of disclosure.  *See Nealy v. U.S. Surgical Corp.*, 587 F. Supp. 2d 579, 585 (S.D.N.Y. 2008) (a concealment claim requires a showing that a party "had a duty to disclose material information.").  Moog was not required to disclose the fact that it had been communicating with the FBI before and after the Complaint was filed.

the FBI investigation and Pilkington's retaining of criminal counsel on June 16.  (*See* ECF 229 at p. 10; ECF 228-008; ECF 228-005).

## II.    Plaintiff Moog Inc.'s Identification of Trade Secrets & The Court's July 22 Order

The substantial portions of the Motion that argue that Moog must identify its trade secrets with particularity are nothing more than a thinly disguised and improper attempt to seek reconsideration of this Court's July 22 Order.  (ECF 205).  The facts related to Moog's identification of trade secrets are not at all related to the Motion for stay.  As noted above, any argument by the Individual Defendants that further identification is required for invocation of the Fifth Amendment is clearly disingenuous, at best, where the Individual Defendants were already able to invoke the Fifth Amendment against the USAO investigation with the information they currently possess.  (ECF 228-12 at p. 3).

In any event, the parties have already extensively briefed the facts and issues regarding Moog's identification of trade secrets.  On July 22, 2022, the Court issued an Order granting in part and denying in part the motion to compel.  The Court held that Moog must respond to Defendants' Interrogatory Number 1, but held that Moog "need[s] to first examine the information which was admittedly taken by its former employees Kim and Pilkington prior to their departure, particularly in view of Skyryse's admission that some of that information may now have been deleted."  (ECF 205 at p. 3).  On July 27, 2022, the parties held a conference at which the Individual Defendants' raised that they may seek a stay of the action, but they did not raise any issues to the Court regarding the already produced devices.  Yet, on July 29, 2022, the Individual Defendants unilaterally instructed iDS to prevent Moog's access to their devices produced to iDS, even though they did not invoke any privilege (and still have not).  Moog believes this revocation is completely improper and without legal justification, which is the subject of other filings before this Court.  Without access to these materials, Moog cannot

continue its process of examining the information so as to produce a more fulsome identification of its trade secrets, as the Court acknowledged is necessary given admitted theft of 1.4 million of Moog's files.  To be very clear, Moog's best understanding is that the only verifiable intact copies of the exact 1.4 million files stolen by Defendants are contained on the Individual Defendants' devices.  Moreover, the Individual Defendants, having already admitted to taking the 1.4 million files at issue in this case from Moog, are already well aware of what they took, how they took it, and how they used it.

The Court's July 22 Order governs Moog's required identification of trade secrets in this case, and while Moog is required to provide an interrogatory response prior to the preliminary injunction hearing, Moog is entitled to continue its review of the devices (including those improperly removed by the Individual Defendants), in advance of that response.  (*Id.*).  The Individual Defendants' rehashed arguments that Plaintiff is currently able to identify its trade secrets and must identify them immediately is contrary to the Court's July 22 Order and amounts to an improper motion for reconsideration of the Court's July 22 Order.[7]

## **ARGUMENT**

## I.    **A Stay is Not Warranted Here**

Even the authority cited by the Individual Defendants makes clear that "[t]he Constitution [] does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings."  *Sec. & Exch. Comm'n v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980).  Indeed, the Individual Defendants' cited authority cautions that "[a] stay of a civil case is

---

[7] Indeed, all of the arguments and "facts" raised in the Motion with regard to Plaintiff's identification of trade secrets, such as its argument that Moog's need for access to the devices is "pretext" or that Moog has conflated what is required for identification of trade secrets, are irrelevant to the current Motion for stay and are part of the Individual Defendants' improper motion for reconsideration.

an *extraordinary remedy* that should be granted only when justice so requires." *Chao v.*
*Fleming*, 498 F. Supp. 2d 1034, 1037 (W.D. Mich. 2007).  A stay is not warranted here.

Courts in this Circuit generally consider six factors when determining whether to stay
civil proceedings in view of pending criminal proceedings: "1) the extent to which the issues in
the criminal case overlap with those presented in the civil case; 2) the status of the case,
including whether the defendants have been indicted; 3) the private interests of the plaintiffs in
proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the
private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public
interest." *Williams v. Swack*, No. 13-CV-00974 S M, 2015 WL 2237216, at *2 (W.D.N.Y. May
12, 2015) (denying motion for stay).  Of particular importance is the second factor, i.e., whether
the defendants have been indicted, and the case law is clear that "pre-indictment requests for a
stay of civil proceedings are generally denied."  *Id*.  The Individual Defendants have not been
indicted, and every one of the factors strongly weigh in favor of denying a stay.

The alleged Fifth Amendment issues raised by the Individual Defendants do not warrant
a different result.  Even *assuming arguendo* that  the Fifth Amendment "act of production"
privilege were able to apply to this case, the mere fact that a defendant ***may, one day, decide*** to
assert their Fifth Amendment privilege in a civil case does not support a stay.  *See, e.g.*, *Keating*
*v. Off. of Thrift Supervision*, 45 F.3d 322, 325 (9th Cir. 1995); *Gellis v. Casey*, 338 F. Supp. 651,
653 (S.D.N.Y. 1972).[8]  Here, there is only an investigation and the Individual Defendants may
not ever actually be indicted or prosecuted.  The weight of authority holds that no stay is
warranted, and Moog thus asks the Court to deny the Motion for stay in its entirety.

---

[8] But as explained below, the "act of production" privilege cannot be applied to the Individual
Defendants' devices in this case.  *See infra*, at n. 11.

### A.    Stays Are Routinely Denied Where There Is No Indictment

"Pre-indictment requests for a stay of civil proceedings are generally denied." *United States v. Priv. Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 811 F. Supp. 802, 805-06 (E.D.N.Y. 1992); *see also, e.g.*, *Williams*, 2015 WL 2237216, at *2.   Indeed, courts in this Circuit have explained that "[w]hether the defendant has been indicted has been described as 'the most important factor' to be considered in the balance of factors." *Patrick v. Apple*, No. 920CV0047LEKDJS, 2020 WL 4816015, at *3 (N.D.N.Y. Aug. 19, 2020).   Consequently, "[t]he weight of authority in this Circuit indicates that courts will . . . deny a stay of the civil proceeding where no indictment has issued." *In re Par Pharm., Inc. Sec. Litig.*, 133 F.R.D. 12, 14 (S.D.N.Y. 1990).

Where a "defendant [] allegedly is a target of a continuing grand jury investigation, [but] does not claim to have been indicted," the defendant's "pre-indictment motion to stay can be denied *on this ground alone*." *Citibank, N.A. v. Hakim*, No. 92 CIV. 6233 (MBM), 1993 WL 481335, at *1 (S.D.N.Y. Nov. 18, 1993) (emphasis added); *see also, e.g.*, *Priv. Sanitation Indus. Ass'n.*, 811 F. Supp. at 805 ("since [defendant] has yet to be indicted by any grand jury, his motion to stay may be denied on that ground alone."); *S.E.C. v. Musella*, 38 Fed. R. Serv. 2d 426 at *1-2 (S.D.N.Y. 1983) (where "a grand jury in this district is considering the matter" and defendants "are targets of that inquiry," but "[n]o indictment has been returned as yet," denying a motion to stay as "contrary to established authority.").   Even where Courts consider the other factors, pre-indictment motions to stay fail.  *See, e.g.*, *Priv. Sanitation Indus. Ass'n.*, 811 F. Supp. at 807-08 (finding that "a pre-indictment stay is unwarranted once one weights the various interest involved").

The distinction between pre- and post- indictment motions for stay is significant, as where there is no indictment, each of the other factors in the analysis are affected.  *See, e.g.*,

*Patrick*, 2020 WL 4816015 at *3 (noting that "[p]re-indictment stays are relatively unusual," that "a post-indictment procedural posture appears in practice to be almost a prerequisite to a stay of related civil proceedings," and explaining how pre-indictment posture affects other factors); *JHW Greentree Cap., L.P. v. Whittier Tr. Co.*, No. 05 CIV. 2985 (HB), 2005 WL 1705244, at *1 (S.D.N.Y. July 22, 2005) ("the difference between being a 'target' of an investigation and indicted weighs significantly against the granting of a stay.").

As explained above, there have been no indictments of any of the Individual Defendants in this case.  Whether any such indictments will ever occur is, at this point, purely a matter of speculation.  *See, e.g.*, *Patrick*, 2020 WL 4816015 at *3 (noting that pre-indictment "the court cannot know…whether [an investigation] will result in charges…").  The amount of authority holding that a pre-indictment stay in this context should be denied is overwhelming; the Individual Defendants' pre-indictment motion for stay should thus be denied.[9]  *See, e.g.*, *id*.

1.      **None of the Authority Cited by the Individual Defendants Supports Their Request for a Pre-Indictment Stay**

The majority of cases cited by the Individual Defendants in which a stay was granted are cases where the movant was *already indicted*.  As explained above, this is a significant factor in the analysis of whether a stay is granted, and courts in this Circuit routinely deny motions for stay that are brought before an indictment.  *See* Section I.A, *supra*.  Thus, most of the cases relied on by the Individual Defendants concerned a very different set of facts and different

---

[9] Note that, should an indictment be granted in the future, the imposition of a stay is not automatic and may still be inappropriate.  While status of the criminal case is a substantial factor in a courts' analysis, a post-indictment stay may also be denied upon a court's consideration of the circumstances of the case and other factors.  *See, e.g.*, *See Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 104 (2d Cir. 2012) (finding no abuse of discretion where post-indictment motion for stay was denied); *Keating*, 45 F.3d at 325 (same).  In the event that an indictment does actually issue against the Individual Defendants in the future, Moog reserves the right to oppose any new application for a stay based on the circumstances presented at that point in time.

analysis than what the Court must assess here.  *See Volmar Distribs., Inc. v. New York Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993) (all of the defendants moving for a stay had already been indicted); *Sec. & Exch. Comm'n v. LaGuardia*, 435 F. Supp. 3d 616, 621 (S.D.N.Y. 2020) (grand jury had already issued an indictment of the defendant); *Vardi Trading Co. v. Overseas Diamond Corp.*, No. 85 CIV. 2240 (CSH), 1987 WL 17662, at *1-2 (S.D.N.Y. Sept. 23, 1987) (the defendant had already been indicted and already invoked the Fifth Amendment privilege at a deposition); *Javier H. v. Garcia-Botello*, 218 F.R.D. 72, 73 (W.D.N.Y. 2003) (the indictment of defendant had been issued before the complaint, and the plaintiff had consented to the government's intervention in the action and had themselves requested a stay).

Only three decisions cited by the Individual Defendants granted a stay pre-indictment, and each was a case in which, importantly, there were special circumstances: the government was *both* the plaintiff in the civil action and the prosecutor of the criminal action.  *See Chao*, 498 F. Supp. 2d at 1040 (ERISA-related action where the Court granted a pre-indictment stay and expressly noted that one of  "[t]he considerations weighing most heavily in the Court's analysis" was "the fact that the government is the interested party in both cases."); *S.E.C. v. Healthsouth Corp.*, 261 F. Supp. 2d 1298, 1326 (N.D. Ala. 2003) (granting a pre-indictment stay where there was a "special danger" because the government was the plaintiff in the civil action as well as the prosecutor in criminal case and where numerous parties, including a defendant and crucial witnesses, had already invoked their Fifth Amendment privilege); *Brock v. Tolkow*, 109 F.R.D. 116, 120 (E.D.N.Y. 1985) (like *Chao*, an ERISA-related action where the government was both the civil plaintiff and criminal prosecutor).  By contrast, the government is not the plaintiff in the

instant action, so the Individual Defendants' cited cases are inapposite.[10]  The E.D.N.Y's *Brock*

case is the only in-Circuit authority cited by the Individual Defendants which grants a pre-

indictment stay, and *Brock* was later specifically distinguished in a subsequent E.D.N.Y.

decision, *Priv. Sanitation Indus. Ass'n*, which declined to follow *Brock* and noted that *Brock* did

not follow the weight of authority holding that pre-indictment motions to stay are generally

denied.  *See* 811 F. Supp. at 806.

> The Individual Defendants do not offer any factually-analogous persuasive authority, let

alone binding authority, suggesting a stay is warranted for the factual situation before the Court.

## B.     There is No Known "Overlap" of Criminal and Civil Proceedings

> Where, as here, there is no indictment, any assertion about the extent of the overlap

between the criminal proceeding and the civil proceedings is speculative, and therefore this

factor weighs against a stay.  *JHW Greentree Cap., L.P.*, 2005 WL 1705244 at *1.  In a footnote,

the Motion argues that this argument is a "red herring" because, according to the Individual

Defendants, the criminal investigation is based on the same allegations as those in the Complaint.

(Mot. at 13.)  However, the Individual Defendants cite no authority for their contention that this

factor weighs in favor of a stay pre-indictment.

> To the contrary, Moog's position is in accord with numerous decisions from this Circuit.

"Absent indictment….this Court cannot determine the extent to which an indefinite criminal case

overlaps with a pending civil action."  *Id.* (holding that the "overlapping issues" factor advocated

---

[10] The Individual Defendants have, in a separate motion, argued that Moog is an "agent" of the government.  (ECF 229-1.)  Their argument is completely unsubstantiated and without any legal support.  As explained in Moog's response to that motion, Moog is not an "agent" of the government.  (ECF 236.)  Furthermore, even in the situation of simultaneous parallel actions by the government, under "established authority," "[i]t has long been recognized that the federal government may pursue civil and criminal actions, arising out of the same operative facts, either 'simultaneously or successively.'"  *Musella*, 38 Fed. R. Serv. 2d 426 at *1 (denying a stay).

against a stay); *see also Bernard v. Lombardo*, No. 16 CV. 863 (RMB), 2017 WL 2984022, at *2-4 (S.D.N.Y. June 9, 2017) (denying motion for stay where plaintiff argued that the scope of a criminal case was indefinite prior to indictment). Neither Moog nor the Individual Defendants know the full scope of the USAO investigation or what, if any, charges may ultimately be brought, and this factor therefore weighs against a stay.

### C.   The Individual Defendants' Private Interests, including the Specter of the Fifth Amendment, Do Not Warrant a Stay

Here, all that the Individual Defendants have offered as the prejudice they face is the general assertion that they may be placed "into the uncomfortable position of having to choose between waiving their Fifth Amendment privilege or effectively forfeiting the civil suit." (Mot. at 13.) The Individual Defendants do not explain why they would be forced to "forfeit" the civil suit, beyond potentially incurring an adverse inference if they do not testify. This "generalized concern, *present in every instance* of parallel civil and criminal proceedings . . . in the abstract, absent any evidence of unique or unusual burdens on the defendant, will not alone justify a stay of civil discovery." *Patrick*, 2020 WL 4816015, at *6 (emphasis added).

The Individual Defendants have shown no unique or unusual burdens – indeed, they spend less than half a page of their Motion discussing this factor, and do nothing more than recite the general concern present in all parallel proceedings. Thus, case law makes clear that no special exception is warranted here:

> A defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege. Not only is it permissible to conduct a civil proceeding at the same time as a related criminal proceeding, even if that necessitates invocation of the Fifth Amendment privilege, but it is even permissible for the trier of fact to draw adverse inferences from the invocation of the Fifth Amendment in a civil proceeding.

*Keating*, 45 F.3d at 325. Thus, while the Defendants may be required to choose between asserting their privilege and incurring an adverse inference or providing testimony that may be

self-incriminating, such a choice does not dictate the issuance of a stay, especially where, as here, there is no indictment of the Individual Defendants and each of the other factors weigh against a stay.

Importantly, Individual Defendants have *not* exercised or invoked the privilege and, as numerous cases make clear, the Fifth Amendment is not self-executing.  *See, e.g.*, *Cohen v. Altman*, No. 519CV274TJMTWD, 2022 WL 370948 *4 (N.D.N.Y. Feb. 8, 2022).  Therefore, the Fifth Amendment, and the rights and considerations that flow from its invocation, are not currently at issue in this litigation.  The Individual Defendants' repeated statements that they *may* seek to invoke their Fifth Amendment rights *in the future* only underscores that the issue is not presently before the Court.  Indeed, in this context, the burden on the defendant is "relatively remote and conjectural," as opposed to the "real and immediate burdens on the Plaintiff's interest in expeditiously advancing [its] claims" should a stay be granted.  *Patrick*, 2020 WL 4816015, at *6.

All that the Individual Defendants have raised is the general concern that the Individual Defendants may have to make a choice as to whether to invoke the Fifth Amendment; this is insufficient to justify a stay, and this factor weighs against the Motion to stay.  *See, e.g.*, *Williams v. Swack*, No. 13-CV-00974 S M, 2015 WL 2237216, at *3 (W.D.N.Y. May 12, 2015) (quoting authority holding that the "predicament [of having to choose to testify or risk adverse inferences] will not alone justify a stay of civil discovery").[11]

---

[11] In any event, as explained more fully in Moog's other submissions to the Court (*see* ECF 228, 236), the Fifth Amendment does not apply to the production of the devices at issue, which is the only context in which the Individual Defendants have raised even the possibility of asserting the Fifth Amendment privilege (though, as noted, they have *not* invoked it).  Only the "act of production" of the devices is protected by the privilege, and such privilege does not attach where, as here, the existence and possession of the materials by the defendants are already

**D.      The Interests of Moog, the Court, and the Public Weigh in Favor of Denying a Stay and Proceeding Expeditiously**

The remaining three factors are the interests of plaintiff Moog, the interests of the Court, and the public interest.  For similar reasons, each of these three factors weighs heavily for denial of the stay request.

**1.      The Interests of Plaintiff Moog**

Plaintiff Moog would be extremely prejudiced by the imposition of a stay.  First, because this is a pre-indictment motion for stay, if a stay were granted "the delay imposed on the plaintiff is potentially indefinite." *Patrick*, 2020 WL 4816015 at \*3 (internal quotation marks omitted). Indeed, "the court cannot know how complicated the government's investigation may be, whether the allegations of the particular civil plaintiff are merely the tip of an iceberg that will result in a lengthy and open-ended investigation, what priority the government assigns to the investigation, whether it will result in charges that will have to be litigated, or how time-consuming the resulting criminal case will be." *Id.*  Consequently, granting a stay at this juncture would indefinitely prevent Moog from obtaining relief.

The interests of Moog "in proceeding expeditiously, including the prejudice to Plaintiff[] caused by delay, support denial of a stay." *Bernard*, 2017 WL 2984022 at \*3; *see also Louis Vuitton Malletier S.A.*, 676 F.3d at 104; *JHW Greentree Cap., L.P.*, 2005 WL 1705244 at \*1 (where "a stay would frustrate a speedy resolution of a civil action, Plaintiffs' interest weighs

_____

known.  *See, e.g.*, *Burt Hill, Inc. v. Hassan*, No. CIV.A. 09-1285, 2010 WL 55715, at \*1 (W.D. Pa. Jan. 4, 2010).

Further, as also explained more fully in Moog's other submissions to the Court (ECF 228, 236), even if the privilege did attach, the privilege has been waived by the Individual Defendants here. *See, e.g.*, *Cohen*, 2022 WL 370948, at \*5 (affirming finding of waiver of the Fifth Amendment privilege).  However, the Court need not reach the issues of exception or waiver in order to deny the instant Motion for a stay.

indubitably against a stay").  An indefinite stay of discovery here would be especially prejudicial because there is a pending motion for preliminary relief based on the irreparable harm that Moog faces from the Individual Defendants' undisputed theft of over a million files, including those containing proprietary, confidential, and/or trade secret information.  Indeed, where an injunction is required to prevent continued misuse of stolen intellectual property, a delay in the entry of an injunction will prejudice the plaintiff.  *See Pearson Educ., Inc. v. Kumar*, No. 1:07-CV-9399 (CSH), 2010 WL 2230574, at *2 (S.D.N.Y. May 27, 2010), *judgment vacated on other grounds*, 523 F. App'x.  16 (2d Cir. 2013).  If discovery is halted, Moog will indefinitely be prevented from identifying what trade secrets were stolen, proceeding with the scheduled Preliminary Injunction hearing, and obtaining injunctive relief necessary to prevent further irreparable harm. Consequently, this factor weighs heavily against a stay.

## 2.      The Interests of the Court

The "Court's interest is in managing its cases and docket efficiently and resolving this litigation."  *JHW Greentree Cap., L.P.*, 2005 WL 1705244 at *2; *see also Bernard*, 2017 WL 2984022 at *4.  Indeed, "convenience of the courts is best served when motions to stay proceedings are discouraged. Courts must be mindful that 'a policy of issuing stays solely because a litigant is defending simultaneous lawsuits would threaten to become a constant source of delay and an interference with judicial administration.'"  *Priv. Sanitation Indus. Ass'n*, 811 F. Supp. at 808 (quoting *Arden Way Assocs. v. Boesky*, 660 F. Supp. 1494, 1497 (S.D.N.Y. 1987) (finding that stay of civil case was not warranted on theory that assertion of Fifth Amendment privilege, because of pending criminal proceeding, would hamper effective response to suits)).

To that end, the Second Circuit has made clear that a district court has "reason to proceed forthwith based on its own well-recognized interest in disposing 'of the causes on its docket with economy of time and effort for itself . . . .'"  )).  *Louis Vuitton Malletier S.A.*, 676 F.3d at 104

(affirming denial of stay after indictment and quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254

(1936)).  The interest of the Court weighs even more forcefully against a stay where, as here,

there is no indictment: "[I]t is unrealistic to postpone indefinitely the pending action until

criminal charges are brought or the statute of limitations has run for all crimes conceivably

committed by [defendant]." *Citibank, N.A. v. Hakim*, No. 92 CIV. 6233 (MBM), 1993 WL

481335, at *2 (S.D.N.Y. Nov. 18, 1993); *see also Patrick*, 2020 WL 4816015 at *3 (finding this

factor weighed against a stay where granting a stay "would entail putting this case on hold for an

indeterminate period of time").[12]   Consequently, the Court's interests weigh against a stay.

### 3.       The Interests of the Public

Finally, the interests of the public, like the interests of the Court, are "in the

administration of justice" and are best "served by preventing an indefinite delay of this civil

proceeding." *JHW Greentree Cap., L.P.*, 2005 WL 1705244 at *2.  There is no indication that

Moog's pursuance of its claims will impair the investigatory activities of the USAO such that an

unfairness would be worked against the public interest. *Arden Way Assocs.*, 660 F. Supp. at

1499.  Further, the Individual Defendants have pointed to nothing that would prevent completion

of the USAO's investigation of the circumstances relating to the Individual Defendants' actions

that might justify a stay here. *Id.*  Neither the USAO or any other government agency has

"sought to intervene on this motion," or any motions presently before the Court, and "therefore it

must be assumed that they consider that a threat to the public interest has not as yet ripened" at

---

[12] The case relied on by Individual Defendants to argue that the Court's and Public's interest
weigh in favor of a stay is completely inapposite; in that case, an indictment had already been
issued even before the civil complaint was filed and the criminal prosecution was already well
under way. *Javier H. v. Garcia-Botello*, 218 F.R.D. 72, 73 (W.D.N.Y. 2003).  Furthermore, in
that case "the civil plaintiffs ha[d] waived their interest in proceeding expeditiously with this
civil action by consenting to [a] government[] motion to intervene and stay discovery." *Id.* at 75.
Obviously, *Javier H.* bears little resemblance to the circumstances currently before the Court.

this stage of the case.  *Id.* at 1499–500.  Instead, "[t]he public has an interest in both the prompt resolution of civil cases as well as the prosecution of criminal cases."  *Williams*, 2015 WL 2237216 at *3.  For the reasons outlined above, a stay of this case would be indefinite.  This factor weighs against imposition of a stay.

While the Individual Defendants understandably seek to delay any result on the pending motion for preliminary relief, there is no credible (let alone compelling) reason at present to delay the procedures that this Court has approved to expeditiously advance this matter towards resolution of the preliminary injunction motion filed in March.  As explained above, the Individual Defendants' Motion lacks grounding in law, and it would be improper to delay these proceedings based on nothing more than a criminal indictment that may or may not occur.

In sum, every factor to be considered by the Court weighs against the imposition of a stay at this juncture, and the Individual Defendants' Motion should be denied.

## II.    The Individual Defendants' "Alternative" Relief is an Improper Motion for Reconsideration of the Court's July 22 and 27 Orders

The Motion seeks "alternative" relief in the form of "a stay of the Individual Defendants' discovery obligations" until after Moog fully identifies its trade secrets that were misappropriated and produces documents proving "classified" documents are in fact classified. (Mot. at 18).  The Individual Defendants spend over a third of their brief arguing that Moog should be required to immediately further identify its trade secrets before discovery can continue, but despite the focus on this issue by Individual Defendants, they fail to cite *any* legal authority supporting their position that a stay should be granted on its "alternative" grounds.[13]  Indeed, the

---

[13] The *only* case cited by the Individual Defendants that discusses a stay with regard to trade secret identification is *Advanced Modular Sputtering, Inc. v. Superior Ct.*, 132 Cal. App. 4th 826 (2005).  That case, even applying a California statute with regard to identification of trade secrets that does not apply here, found that no stay was warranted.  *Id.* at 836-37.  Furthermore, *Advanced Modular Sputtering, Inc.* is completely irrelevant to the situation before the Court in

Individual Defendants fail to cite any case law justifying their "alternative" request for relief because their position lacks any support in the law.

To the contrary, Individual Defendants "alternative" request for relief amounts to nothing more than an improper attempt to re-litigate the Court's July 22 Order.  On July 27, 2022, following a conference, the Court set a schedule for the filing of any motions regarding discovery "necessary to enable Moog to identify its trade secrets," resulting in the flurry of motions currently before the Court.  (ECF 206).  Thus, the issue of whether Moog needs to identify its trade secrets immediately in order for discovery to continue has already been litigated and decided by this Court.  (ECF 205, 206).  Indeed, the arguments raised by the Individual Defendants here, that identification is needed to prepare defenses and that Moog is already able to identify its trade secrets (Mot. at 5-8, 19-21), were already made in the briefing considered by this Court prior to the issuance of the Orders setting out when Moog must identify its trade secrets.  (*See* ECF 166 at 13-17).  The Individual Defendants' argument that, as "alternative" relief,  "[t]he time for Plaintiff's compliance should be now" is a clear attempt to re-litigate the Court's decisions and Orders.[14]

Given that the Individual Defendants are re-litigating prior orders, their "alternative" relief is actually just an improper motion for reconsideration.  Where a party disguises an attempt to have a Court reconsider a prior order, it is appropriate for the Court to apply the standard for a

---

this motion, which is ostensibly predicated on a parallel investigation by the government, which was not at issue in the cited case.

[14] The Individual Defendants claim, without substantiation, that Plaintiff is "in defiance of the Court's July 22, 2022 Order" because Plaintiff "has not provided a timeline for its compliance." (Mot. at 19).  This allegation is obviously without merit, as the Court's July 27, 2022 Order set a schedule for motions regarding the information required "to allow Moog to identify its trade secrets at issue," which are only now being briefed before the Court.  (ECF 207).

motion for reconsideration.  *See, e.g.*, *Colvin v. Keen*, No. 13CV3595SJFARL, 2016 WL 233668, at *2 (E.D.N.Y. Jan. 19, 2016), *reconsidered on other grounds*, No. 13CV3595SJFARL, 2016 WL 5408117 (E.D.N.Y. Sept. 28, 2016) (where a plaintiff made "objections" that were actually an "improper attempt to relitigate issues already determined by this Court in [prior] orders," applying the standard for a motion for reconsideration and denying the attempt to reconsider the orders).

A motion for reconsideration may only be granted where "(1) there is an intervening change in the controlling law; (2) new evidence not previously available comes to light; or (3) it becomes necessary to remedy a clear error of law or to prevent manifest injustice." *Jackson v. Heidelberg L.L.C.*, No. 02-CV-6536, 2006 WL 8446398, at *1 (W.D.N.Y. Sept. 29, 2006), *aff'd*, 296 F. App'x 102 (2d Cir. 2008).  Such a motion is properly denied where, as here, there is no previously unavailable evidence or intervening law at issue and the "moving party only s[eeks] to relitigate an issue already decided."  *Id*.  "A party may not advance a new argument in a motion to reconsider; that argument is waived."  *PAB Aviation, Inc. v. United States*, No. 98-CV-5952 JG, 2000 WL 1240196, at *1 (E.D.N.Y. Aug. 24, 2000).  Nor may a party "rehash old arguments."  *Ong v. Chipotle Mexican Grill, Inc.*, 329 F.R.D. 43, 55 (S.D.N.Y. 2018*), aff'd sub nom. Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133 (2d Cir. 2020).  The Individual Defendants do both in the Motion, and their improper motion for reconsideration should be denied.

There is no new evidence that was not previously available, as the Individual Defendants were well aware of the pending USAO investigation when defendant Skyryse's Motion to Compel a more particular trade secret identification from Moog, and all subsequent briefing relating to that motion, was filed.  (ECF 228-04; ECF 228-05).  Indeed, the parties had

exchanged correspondence regarding the USAO investigation over a month before that motion was filed.  (*Id*.)  Neither Skyryse nor the Individual Defendants raised the USAO investigation in connection with that motion, likely because they have failed to identify any legal authority supporting that an identification of trade secrets is at all related to a pending parallel criminal investigation.  They also have provided no evidence that the identification of trade secrets by Moog in this civil action is even relevant to the criminal investigation.  Indeed, the Individual Defendants originally claimed – without basis and incorrectly – that Moog had shared additional trade secret identification information with the government that was not provided to Defendants. When Moog's counsel was posed that question during the July 27 hearing, Moog set that record straight and, the Individual Defendants' filings do not provide any evidence supporting their outlandish claims. (7/27/22 Hrg. Tr. at 16:6-17:12).  They cannot raise this new argument now. *PAB Aviation, Inc.*, 2000 WL 1240196 at *1.

Furthermore, the Individual Defendants' argument that they need a more particular identification of trade secrets in order to exercise their Fifth Amendment privilege is not only completely unsupported by legal authority but is also unsubstantiated and demonstrably false based on the facts of this case.  The Individual Defendants have *already* invoked the Fifth Amendment in response to the USAO's investigation.  (ECF 228-12 at p. 3).  Clearly, they are capable of determining whether to invoke the privilege based on the information available to them (though as noted above, they have *not* invoked the privilege here).  Indeed, the Individual Defendants stole 1.4 million files from Moog – they have always known what the issues in this

case are.  The specter of the Fifth Amendment privilege raised by the Individual Defendants does

not warrant reconsideration of the Court's Orders.[15]

There is likewise no intervening change in the law warranting the Individual Defendants'

improper motion for reconsideration.  In fact, there is no legal authority whatsoever for

Individual Defendants' requested pre-invocation relief in the form of reconsideration of the

Court's order on identification of trade secrets.  While the Individual Defendants spend the last

few pages of their Motion arguing that Moog could identify its trade secrets immediately, these

arguments are irrelevant to the motion for stay and are either rehashed arguments that have

already been considered and rejected by the Court or improperly raised new arguments that

should have been asserted in the briefing regarding the motion to compel.  The Individual

Defendants request for "alternative" relief,  which is no more than a disguised motion for

reconsideration, should be denied.  *See, e.g.*, *Jackson*, 2006 WL 8446398 at *1.[16]

---

[15] The Individual Defendants also make the misplaced argument that California law should apply to Moog's trade secret misappropriation claims, and therefore the disclosure of the trade secrets should occur prior to any discovery.  *See* Mot. at 18 n. 10.  This argument has no place in deciding the Motion.  As explained, the Court has already issued its July 22 Order on procedure for when and how Moog will disclose identification of trade secrets, so the Individual Defendants argument that California law is dispositive on the point is flatly incorrect.  Further, as the Motion admits, the choice of law question, to the extent there is one (Moog disputes that there is in fact any conflict of law), has been addressed and responded to in other motions pending before the Court and need not be considered for purposes of deciding the instant Motion.

[16] In another red herring argument, the Individual Defendants mistakenly advance the notion that Moog has not properly preserved documentation, and therefore may not be able to prove damages.  *See* Mot. at 14 n. 8.  This is nonsense.  The Motion cites to an incomplete email chain on the point.  On August 5, 2002, counsel for Moog made clear to counsel for Skyryse (copying counsel for the Individual Defendants) that there Moog has properly preserved all relevant information that the Defendants did not destroy in their attempts to cover their tracks following their theft, and that the information sought by Defendants has been produced by Moog to iDS. (Declaration of Rena Andoh, Ex. A).

In other words, Moog has taken all reasonable measures to preserve documents and there is no credible doubt as to Moog's document preservation in this matter.  In any event, the Individual

Finally, the Individual Defendants raise the red herring of "classified" information multiple times in their Motion.  At no time has Moog indicated, and Moog currently has no reason to believe, that "classified" information (i.e., as defined at 32 CFR 117; *see* 18 U.S.C. 798) is at issue in this case.  Indeed, the Complaint in this action does not allege that there were any classified materials among the stolen files.  Moreover, Moog is not aware of any instance in which the existence of classified information or the lack thereof has been discussed with Defendants' counsel.  For lack of confusion, Moog understands that all of the stolen files at issue in this action are unclassified, including some Controlled Unclassified Information.  In any event, there is no legal authority in the Motion for tying allegedly "classified" information – or unclassified information – to their requested relief of a stay.

## <u>CONCLUSION</u>

Moog requests that the Court deny Skyryse's Motion in its entirety.

---

Defendants argument makes no sense as it pertains to identification of trade secrets, which is itself a red herring argument for purposes of the Motion; the Court has already ruled as to how and when Moog will be required to disclose details on the trade secrets that were misappropriated: in an interrogatory response prior to the preliminary injunction hearing, but after Moog has "first examine[d] the information which was admittedly taken by its former employees Kim and Pilkington prior to their departure[.]" (ECF 205 at p. 3).

Dated:   New York, New York
          August 17, 2022

**SHEPPARD, MULLIN,
RICHTER & HAMPTON LLP**
*Attorneys for Plaintiff Moog, Inc.*

By:   /s/ Rena Andoh
          Rena Andoh
          Travis J. Anderson (*pro hac vice*)
          Tyler E. Baker (*pro hac vice*)
          Kazim A. Naqvi (*pro hac vice*)
30 Rockefeller Plaza
New York, New York 10112
212.653.8700

and

**HODGSON RUSS LLP**

By:   /s/ Robert J. Fluskey, Jr.
          Robert J. Fluskey, Jr.
          Melissa N. Subjeck
          Reetuparna Dutta
          Pauline T. Muto
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York  14202-4040
716.856.4000