**Annabel Mireles**



From: Alexander Truitt
Sent: Wednesday, July 20, 2022 9:10 PM
To: Arman.Zahoory@lw.com; KNaqvi@sheppardmullin.com; Jeremiah_McCarthy@nywd.uscourts.gov
Cc: mccarthy@nywd.uscourts.gov; RAndoh@sheppardmullin.com; TAnderson@sheppardmullin.com; LYip@sheppardmullin.com; RFluskey@hodgsonruss.com; pmuto@hodgsonruss.com; MSubjeck@hodgsonruss.com; TBaker@sheppardmullin.com; Doug.Lumish@lw.com; Gabe.Gross@lw.com; Joseph.Lee@lw.com; Ryan.Banks@lw.com; Kelley.Storey@lw.com; Cassandra.Baloga@lw.com; Anthony Green <green.a@wssllp.com>; tflynn@harrisbeach.com; rdutta@hodgsonruss.com; julianne.osborne@lw.com
Subject: RE: Moog v. Skyryse, No. 22-cv-187 (W.D.N.Y.)

Your Honor,

On behalf of Alin Pilkington and Misook Kim (the "Individual Defendants"), this email responds to the third item from Plaintiff's July 18, 2022 email titled "Excision of Materials from the Individual Defendants' Devices Produced to iDS."

Plaintiff's email to the Court does not accurately reflect the status of the parties' attempts at resolving this dispute. Nor does it accurately portray the Individual Defendants' position. The Individual Defendants respectfully submit that Plaintiff has sought leave of the Court for the improper purpose of frustrating the discovery process while needlessly driving up defense costs. As such, the Individual Defendants request this Court deny Plaintiff's request.

**Relevant Background**

On June 24, 2022, Counsel for the Individual Defendants wrote to all parties, providing an update on the status of the Individual Defendants' devices. As part of that update, Counsel informed the parties that some of the devices contained vast caches of seemingly irrelevant, private messages dating back many, many years. Counsel for the Individual Defendants proposed that iDS excise all pre-January 1, 2021 messages for these devices as such communications were unlikely to have any bearing on this dispute and a comprehensive review would impose a disproportionate burden in cost and time to all parties while unnecessarily delaying iDS in making the relevant content from the parties' devices available through the inspection laptops.

On June 29, 2022, having received no response or objection from any of the parties, Counsel wrote to iDS, instructing it to excise the irrelevant pre-2021, communications from the devices. The next day, Plaintiff belatedly objected. Since that time, the parties have met and conferred, but Plaintiff has persistently ignored the Individual Defendants' requests that Plaintiff provide information explaining why pre-2021 communications could be relevant to its claim. The discovery process is thwarted when one party simply makes demands and then rushes to Court, rather than addressing the other party's concerns. As such, Plaintiff's objection appears pretextual; without any aim beyond increasing the burden and cost of all parties and without any consideration for relevance, proportionality, or the substantial delay it will impose on bringing this matter to a preliminary injunction hearing.

By way of illustration, the specific personal devices at issue contain the following communications as far back as 1992:

(1) iPad A1652, SN: DLXR3L7PGMW3: contains **230,213** iMessage/text message dating back to 2012;
(2) iPhone 13 or 12: contains **33,259** iMessage/text message dating back to 2015;
(3) MacBook Pro A1502, SN: C02P702TFVH9: contains **2,466** iMessage/text message dating from 2019, and **10,270** email attachments and **83,392** emails dating back to 1992;
(4) iPad A1459, SN: DMPJLOTCF18C: contains **299,129** iMessage/text message dating back to 2007; and
(5) MacBook Pro A19990 SN: C02XG6PHJH6: contains **145,556** iMessages dating back to 2012 and **12,153** emails dating back to 1994.

Due to the immense number of files, reviewing these communications will be costly. That burden is compounded since many of the communications at issue are stored without any named contact aside from the phone number or email address at issue. For some of the messages, the content of the communication does not provide any identifiable information of the sender/recipient.

**Plaintiff's Email Does Not Accurately Portray The Discovery Dispute**

The Individual Defendants' proposal that pre-January 1, 2021 messages be excised is not an arbitrary date designed to frustrate the discovery process. "January 1, 2021 until present" is the most expansive period that Plaintiff set in its "First Set of Request For Production of Documents and Things" to the Individual Defendants—which cover the communications Plaintiff now demands. Likewise, the alleged wrongful acts set forth in the Complaint all concern purported conduct taking place in the Winter of 2021. In other words, Plaintiff's Complaint and Plaintiffs' discovery requests clearly set the relevant period as extending no further back than January 1, 2021.

The Individual Defendants' position is consistent with the Inspection Order. Communications stored on the Individual Defendants' personal devices that occurred outside the period relevant to this dispute are necessarily private. There is nothing in the Inspection Protocol granting Plaintiff untrammeled access into the Individual Defendants' private lives. As such, pre-2021, communications are properly withheld under the Inspection Protocol. Likewise, Fed. R. Civ. P. 26(b)(1) only permits discovery of "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…" *See* Fed. R. Civ. P. 26(b)(1). While the Court may apply further limits, the Federal Rules of Civil Procedure do not require disclosure of non-relevant material where the burden of production is vastly disproportionate to its potential probative value.

Contrary to Plaintiff's email, the Individual Defendants are not the intransigent party unwilling to work through this dispute. Despite weeks of discussion, Plaintiff has never identified a need for pre-2021 communications because Plaintiff will not explain why such communications could be relevant. However, excising pre-2021 communications will not prejudice Plaintiff or permanently foreclose any inquiry into such materials. The Individual Defendants complied with the Court's Order and turned their devices over to iDS. So long as iDS maintains these devices consistent with the orders of this Court, the excised communications could be reviewed in greater detail once Plaintiff establishes that such communications could be relevant to this dispute. At such time and subject to the Individual Defendants' objections under the Inspection Protocol, the excised communications could then be migrated back to the reviewing laptops. However, due to Plaintiff's refusal to meet and confer in good faith, there is no current basis to consider a relevant period extending further back than January 1, 2021.

Counsel for the Individual Defendants have repeatedly asked Plaintiff to explain why pre-2021 communications are relevant to a DTSA claim where the alleged misappropriation occurred in the Winter of 2021. Plaintiff has persistently refused to provide the Individual Defendants with this information. Indeed, Plaintiff's email to this Court claims that Court intervention is needed to ensure it has "complete access to the relevant materials turned over to iDS," but Plaintiff will not explain to the Individual Defendants why pre-2021 communications are relevant.

The only, belated, response Plaintiff made to the Individual Defendants' attempt at meeting and conferring is the exceedingly thin statement that the Individual Defendants began working for Plaintiff in 2013, and because the Individual Defendants purportedly communicated about Plaintiff's alleged trade secrets (in the 2021 communications already produced), communications throughout their employment could contain Plaintiff's trade secrets. The Individual

2

Defendants respectfully state that this argument is pretext as Plaintiff would not even confirm the trade secrets at issue existed in 2013.  Indeed, the fact that Plaintiff claims it can identify the purported trade secrets and non-public information in communications the Individual Defendants produced, while simultaneously arguing before this Court that it needs to complete discovery before identifying the trade secrets in response to the defendants' interrogatories is astounding.  The Individual Defendants respectfully submit that Plaintiff's present demand should confirm that either: (1) Plaintiff can identify the trade secrets at issue with the degree of particularly requested by the defendants; or (2) that Plaintiff's present demand of the Individual Defendants is merely pretext designed to impose the greatest possible burden on the parties without any consideration for proportionality or relevance.

Finally, Plaintiff's email to the Court omits critical information deeply bearing on this dispute.  To gain an improper tactical advantage in this action, the Individual Defendants believe that Plaintiff referred this case for criminal investigation by the U.S. Attorney's Office for the Central District of California in Los Angeles ("USAO").  This tactic underscores the absurdity of Plaintiff's position on the identification of the at-issue trade secrets.  On the one hand, Plaintiff argues to this Court that it should be excused from its obligation to identify the purported trade secrets while on the other, it is pushing the USAO to investigate the alleged theft of these same trade secrets.  This begs the question of whether Plaintiff has shared the alleged trade secret with the USAO, while denying it to the parties in this action.  Plaintiff's position is untenable—it cannot have it both ways and leverage potential criminal charges against the Individual Defendants to further its dispute with Skyryse.  Moreover, Plaintiff's participation with the USAO investigation injects uncertainty and calls into question Plaintiff's good faith in advocating for the Inspection Protocol this Court adopted—which was reached before the Individual Defendants learned of the USAO's investigation.

Simply put, the Individual Defendants no longer face a civil complaint primarily seeking injunctive relief—they face the risk of a criminal indictment exposing them to potential incarceration.  Counsel must assess the implication of Plaintiff's referral and the impact the referral has on the Individual Defendant's 5th Amendment rights against self-incrimination.  There is no denying the administration of this lawsuit will be substantially affected by the fact that there is now a parallel USAO investigation.  If the Court grants Plaintiff's demand, the Individual Defendants cannot begin to fairly assess whether to assert their 5th Amendment rights without Plaintiff first disclosing the alleged trade secrets at issue.  This Court should not allow Plaintiff to use its referral to the USAO as leverage against the Individual Defendants.

Based on the foregoing, the Individual Defendants respectfully request the Court deny Plaintiff's request.  We are available should the Court have any further questions.

Sincerely,

**Alexander A. Truitt, Esq.**
*Associate*
Winget, Spadafora & Schwartzberg, LLP
45 Broadway, 32nd Floor
New York, N.Y. 10006
Tel. (212)221-6900
Fax (212)221-6989

www.WSSLLP.com



PLEASE NOTE THIS MESSAGE IS INTENDED ONLY FOR THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED, AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL OR OTHERWISE PROTECTED FROM DISCLOSURE UNDER APPLICABLE LAW.  IF YOU ARE NOT THE INTENDED RECIPIENT OR OTHERWISE HAVE RECEIVED THIS EMAIL IN ERROR, PLEASE NOTIFY THE SENDER IMMEDIATELY BY RETURN EMAIL, AND DELETE THIS MESSAGE AND ALL ATTACHMENTS FROM YOUR COMPUTER SYSTEM.

IRS CIRCULAR 230 DISCLOSURE: TO ENSURE COMPLIANCE WITH U.S. TREASURY REGULATIONS GOVERNING TAX PRACTICE, WE INFORM YOU THAT:  ANY U.S. TAX ADVICE CONTAINED IN THIS COMMUNICATION (INCLUDING ATTACHMENTS) WAS NOT WRITTEN TO BE USED FOR AND CANNOT BE USED FOR (I) PURPOSES OF AVOIDING ANY TAX RELATED PENALTIES THAT MAY BE IMPOSED UNDER FEDERAL TAX LAWS, OR (II) THE PROMOTION, MARKETING OR RECOMMENDING TO ANOTHER PARTY OF ANY TRANSACTION OR MATTER ADDRESSED HEREIN.

**From:** Arman.Zahoory@lw.com <Arman.Zahoory@lw.com>
**Sent:** Wednesday, July 20, 2022 5:40 PM
**To:** KNaqvi@sheppardmullin.com; Jeremiah_McCarthy@nywd.uscourts.gov
**Cc:** mccarthy@nywd.uscourts.gov; RAndoh@sheppardmullin.com; TAnderson@sheppardmullin.com; LYip@sheppardmullin.com; RFluskey@hodgsonruss.com; pmuto@hodgsonruss.com; MSubjeck@hodgsonruss.com; TBaker@sheppardmullin.com; Doug.Lumish@lw.com; Gabe.Gross@lw.com; Joseph.Lee@lw.com; Ryan.Banks@lw.com; Kelley.Storey@lw.com; Cassandra.Baloga@lw.com; Anthony Green <green.a@wssllp.com>; Alexander Truitt <truitt.a@wssllp.com>; tflynn@harrisbeach.com; rdutta@hodgsonruss.com; julianne.osborne@lw.com
**Subject:** RE: Moog v. Skyryse, No. 22-cv-187 (W.D.N.Y.)

Your Honor,

We write in response to counsel's email below, and to confirm for the Court that Skyryse has taken all actions possible to ensure that Moog has access to potentially relevant evidence on a timely basis.  This includes making Skyryse's source code available for review as of July 14, 2022.  We have not heard back from Plaintiffs asking to inspect the code despite being told it is available to them, but reiterate that Skyryse's source code is available for Moog to review pending your ruling on Moog's motion to compel (ECF No. 176.)

Respectfully submitted,
Arman Zahoory


**Arman Zahoory**

**LATHAM & WATKINS LLP**
140 Scott Drive | Menlo Park, CA 94025
D: +1.650.470.4985

**From:** Kazim Naqvi <KNaqvi@sheppardmullin.com>
**Sent:** Monday, July 18, 2022 2:56 PM
**To:** Jeremiah McCarthy <Jeremiah_McCarthy@nywd.uscourts.gov>
**Cc:** NYWDml_McCarthy PpO <mccarthy@nywd.uscourts.gov>; Rena Andoh <RAndoh@sheppardmullin.com>; Travis Anderson <TAnderson@sheppardmullin.com>; Lai Yip <LYip@sheppardmullin.com>; RFluskey@hodgsonruss.com; pmuto@hodgsonruss.com; MSubjeck@hodgsonruss.com; Tyler Baker <TBaker@sheppardmullin.com>; Lumish, Douglas (Bay Area) <Doug.Lumish@lw.com>; Gross, Gabriel (Bay Area) <Gabe.Gross@lw.com>; Lee, Joseph (OC) <Joseph.Lee@lw.com>; Zahoory, Arman (Bay Area) <Arman.Zahoory@lw.com>; Banks, Ryan (Bay Area) <Ryan.Banks@lw.com>; Storey, Kelley (DC) <Kelley.Storey@lw.com>; Baloga, Cassandra (NY) <Cassandra.Baloga@lw.com>; green.a@wssllp.com; truitt.a@wssllp.com; tflynn@harrisbeach.com; rdutta_hodgsonruss.com <rdutta@hodgsonruss.com>; Osborne, Juli (Bay Area) <julianne.osborne@lw.com>
**Subject:** RE: Moog v. Skyryse, No. 22-cv-187 (W.D.N.Y.)

Your Honor:

Pursuant to Your Honor's directives during the July 15 hearing, this e-mail provides Moog's update regarding the electronic devices turned over to iDS, as well as related issues that impact the timing of Moog's ability to further identify its trade secrets.

### Status of Electronic Devices/Files Turned Over to iDS

As of today (July 18) at approximately 2 p.m. Eastern, Moog does *not* have access to ten devices—four of which are Skyryse's, and six of which are individual defendants'. While Skyryse said in its Monday morning email to Your Honor that it has completed the privilege review of its own devices, Skyryse neglected to mention two things. First, Skyryse has *not* completed privilege review of *individual defendants'* devices, which Skyryse says it wants to do yet has not provided to Moog even an ETA on completion. Second, while its privilege review is purportedly complete as to its own devices (something Skyryse already represented to the Court on Friday), the relevant issue is when iDS will be able to get the purportedly privileged documents *excised* and the remaining images fully uploaded for Moog's inspection. In reality, as noted, Moog still has no access to four of Skyryse's devices, due either to the devices not being uploaded yet by iDS or due to corrupted or missing segments on the devices. (A segment is a portion of a forensic image. Because a forensic image may be very large, it is common practice to break it down into smaller segments of data; all of the segments together will contain the same data as the whole forensic image. If one or more segments is missing or corrupt, our forensic tools will not open the image.)

As to the segment problems, Moog's experts are still making their way through each of defendants' devices and are continuing to discover these segment problems in real time and this is causing delays to our inspection of the devices. It is very possible that we may discover in the coming weeks that we lack access to more than ten devices.

### Skyryse's Source Code

As described in Moog's Motion to Compel (ECF 176), Moog also still does not have access to Skyryse's source code. Moog contends Skyryse's source code responsive to written discovery should have been produced to iDS pursuant to the Court's Inspection Protocol by June 2. Skyryse contends a separate, second source code review protocol is necessary.

Moog requires access to Skyryse's source code to identify what Moog source code has been integrated and thus the full scope of the trade secrets at issue. Moog has been operating on the assumption that it would obtain access to Skyryse's source code through iDS pursuant to the Court's Inspection Protocol. Moog believes this is the proper course, but if this does not occur, that will present further impediments to the trade secret identification process.

We would note that an in-person inspection of the source code in a physical room at Skyryse's outside counsel's offices pursuant to a new inspection protocol—what Skyryse is demanding—will *not* enable Moog to identify the misappropriated trade secrets. This is because Skyryse's physical inspection room would *only* have Skyryse source code, not Moog's source code. Thus, it would be impossible under Skyryse's proposed setup for Moog to compare, *side by side*, Moog's source code with Skyryse's source code, which is an absolutely paramount and foundational aspect of the trade secret misappropriation analysis required for this case. This is only one of the many deep flaws with Skyryse's proposed new protocol, and exemplifies why the Skyryse's new proposed protocol would take weeks to negotiate. Unless Moog is granted immediate access to Skyryse's source code through iDS pursuant to the Court's Inspection Protocol, there will be further impediments to the trade secret identification process.

### Excision of Materials from the Individual Defendants' Devices Produced to iDS

Moog and the Individual Defendants have a dispute over the Individual Defendants' requests to excise large volumes of materials from certain devices produced to iDS for reasons other than for privilege or privacy, as set forth in the Inspection Protocol entered by the Court on May 13. Moog's understanding is that the parties are at an impasse on this issue, which would need to be resolved for Moog to have complete access to the relevant materials turned over to iDS.

At Your Honor's convenience, Moog respectfully requests that the Court set a briefing schedule on this narrow issue before the next scheduled hearing on July 27. Moog proposes that its position on this issue be filed by July 21, and the Individual Defendants' Opposition be filed by July 25, and that both briefs be 5 pages or less.

Please let us know if the Court requires any further information at this time. Thank you for your attention to this matter.

Yours Truly,


**Kazim Naqvi**
**Sheppard**Mullin | Los Angeles
+1 424-288-5336 | ext. 15336

**From:** Jeremiah McCarthy <Jeremiah_McCarthy@nywd.uscourts.gov>
**Sent:** Friday, July 15, 2022 4:42 PM
**To:** Kazim Naqvi <KNaqvi@sheppardmullin.com>
**Cc:** NYWDml_McCarthy PpO <mccarthy@nywd.uscourts.gov>; Rena Andoh <RAndoh@sheppardmullin.com>; Travis Anderson <TAnderson@sheppardmullin.com>; Lai Yip <LYip@sheppardmullin.com>; RFluskey@hodgsonruss.com; pmuto@hodgsonruss.com; MSubjeck@hodgsonruss.com; Tyler Baker <TBaker@sheppardmullin.com>; Doug.Lumish@lw.com; Gabe.Gross@lw.com; Joseph.Lee@lw.com; Arman.Zahoory@lw.com; Ryan.Banks@lw.com; Kelley.Storey@lw.com; Cassandra.Baloga@lw.com; green.a@wssllp.com; truitt.a@wssllp.com; tflynn@harrisbeach.com; rdutta_hodgsonruss.com <rdutta@hodgsonruss.com>; julianne.osborne@lw.com
**Subject:** Re: Moog v. Skyryse, No. 22-cv-187 (W.D.N.Y.)

Thank you.

Sent from my iPhone

> On Jul 15, 2022, at 7:26 PM, Kazim Naqvi <KNaqvi@sheppardmullin.com> wrote:
>
>   CAUTION - EXTERNAL:
>
> Dear Your Honor:
>
> Pursuant to Your Honor's directives during today's hearing, please find below a list of the cases cited in Moog's Opposition to Skyryse's Motion to Compel Trade Secret Identification (and their parenthetical citations in the Opposition) (ECF 180) supporting the notion that, especially under the circumstances in this case, a trade secret plaintiff is entitled to conduct certain discovery before identifying the trade secrets at issue with additional particularity.
>
>   1. *Medtech Prod. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 819–20 (S.D.N.Y. 2008) ("I conclude that Medtech should be allowed limited discovery on the trade secret claim prior to being required to identify the precise trade secrets it is alleging were misappropriated.") (ECF 180 at p. 14);
>
>   2. *IntelliCAD Tech. Consortium v. Suzhou Gstarsoft Co.*, 508 F. Supp. 3d 790, 800 (D. Or. 2020) (denying motion to compel interrogatory responses, permitting the plaintiff to "inspect Gstar's source code under appropriate conditions of confidentiality" and then determining "after a reasonable (but not too long) time, the ITC will need to provide more specific responses to Gstar's interrogatories, **although limited to the specific trade secrets that the ITC contends**

*were misappropriated by Gstar* (i.e., not all trade secrets owned by the ITC).") (emphasis added) (ECF 180 at p. 14);

3. *St. Jude Med. S.C., Inc. v. Janssen-Counotte*, 305 F.R.D. 630, 641 (D. Or. 2015) (the plaintiff was not required to identify its trade secrets with greater particularity before taking discovery, in part because "Plaintiff appears to have numerous trade secrets but…no way of knowing which trade secrets have been misappropriated until it receives discovery on how the defendant is operating.") (ECF 180 at p. 14);

4. *Mobile USA, Inc. v. Huawei Device USA, Inc.*, 115 F. Supp. 3d 1184, 1193 (W.D. Wash. 2015) (Noting that "because it is the defendant who knows what it misappropriated, a plaintiff should not be compelled to divulge with specificity all of its possible trade secrets (especially not to a defendant who it believes has already misappropriated at least one of them) in order to proceed to discovery") (EF 180 at p. 14);

5. *Bytemark, Inc. v. Xerox Corp.*, No. 17 CIV. 1803 (PGG), 2022 WL 120980, at *5 (S.D.N.Y. Jan. 11, 2022) (where the plaintiff agreed to "identify its trade secrets immediately through production of all of the source code and confidential information in its possession," the court held:  "This case is in its very early stages. . . . . At this stage of the litigation, Plaintiff is not required – as a prerequisite for obtaining relevant discovery from Defendants – to identify its trade secrets with the specificity that Defendants demand.") (ECF 180 at pp. 15-16).

Copies of the cases with the relevant portions highlighted are attached to this e-mail.

We intend to submit a status report regarding iDS and the relevant electronic devices on Monday under separate cover.

Please let us know if there is anything else the Court requires. Thank you for your attention to this matter and have a great weekend.

Sincerely,

**Kazim A. Naqvi**
+1 424-288-5336 | direct
KNaqvi@sheppardmullin.com | Bio

**Sheppard**Mullin
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067-6017
+1 310-228-3700 | main
www.sheppardmullin.com | LinkedIn | Twitter

Attention: This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

**CAUTION - EXTERNAL EMAIL: This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.**

_____

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient.  Any review, disclosure, reliance or distribution by others or forwarding without express permission

is strictly prohibited.  If you are not the intended recipient, please contact the sender and delete all copies including any attachments.

Latham & Watkins LLP or any of its affiliates may monitor electronic communications sent or received by our networks in order to protect our business and verify compliance with our policies and relevant legal requirements. Any personal information contained or referred to within this electronic communication will be processed in accordance with the firm's privacy notices and Global Privacy Standards available at www.lw.com.