UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MOOG INC.,<br><br>                Plaintiff,<br><br>    v.<br><br>SKYRYSE, INC., ROBERT ALIN PILKINGTON, MISOOK KIM, and DOES NOS. 1-50.<br><br>                Defendants. | Civil Action No. 1:22-cv-00187-LJV-JJM |

**DEFENDANT SKYRYSE, INC.'S OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR CLARIFICATION OF THE COURT'S ORDER AT ECF 216**

**I.      INTRODUCTION**

There is no "emergency" need for a clarification of the Court's orders. The Court compelled Moog in no uncertain terms to identify with particularity its trade secrets in narrative form. (ECF 205.) The Court made clear that Moog's earlier plan to rely on Rule 33(d) to point Defendants to documents was "an insufficient response," and Moog must identify its own trade secrets in a narrative interrogatory response. (*Id.* at 4.) Nor is there any ambiguity in the Court's recent order that all "pending discovery deadlines are held in abeyance until the individual defendants' motion to stay is resolved." (ECF 216.) Nonetheless, Moog filed an emergency motion during this discovery stay, essentially seeking to compel Skyryse to formally produce documents *to which Moog already has unfettered access* through the neutral forensics vendor, iDS. The only reason Moog offers for this demand is that it wants to attach these documents to its identification of its trade secrets. This is unnecessary, does not justify lifting the stay, and is not an emergency.

Tellingly, Moog never claimed it needed a formal production of any of these internal Skyryse documents when it filed a brief for the express purpose of telling the Court what more discovery is "allegedly necessary to enable Moog to identify its trade secrets." (ECF 206.) In its brief on that issue, Moog nowhere suggested that it needed separate copies of documents it already has been reviewing through the inspection protocol. (ECF 210.) Even in its "emergency" motion, Moog offers no reason why it cannot refer to or describe any purportedly relevant parts of these Skyryse documents in its narrative identification of its own trade secrets, if it really needs to, without the formality of having those documents produced during a discovery stay. To be clear, Skyryse has no objection to producing responsive documents consistent with its discovery obligations when discovery resumes. But Moog has offered no justification for why it needs an additional production of documents it already has access to, in order to provide a narrative description of its own trade secrets. Respectfully, Moog's motion should be denied.

## II. MOOG'S MOTION FOR A "CLARIFICATION" OF THE COURT'S ORDERS SHOULD BE DENIED.

Moog offers no compelling reasons why the Court should "clarify" its orders, why Moog needs to attach any of Skyryse's documents to an interrogatory response providing a narrative description of Moog's own alleged trade secrets, or why it needs relief from the discovery stay, much less on an emergency basis. Its motion should be denied.

### A. Moog does not need to attach Skyryse's documents to identify Moog's alleged trade secrets.

The Court's instruction to Moog was clear: identify your trade secrets in a narrative response to Skyryse's interrogatory. (ECF 205.) Moog does not explain any purported need to attach Skyryse's documents to this narrative description, and as the Court has acknowledged, "[c]ourts should not allow trade secret plaintiffs to point to documents in which trade secrets are said to reside as a substitute for a detailed identification." (ECF 205 at 4 (*citing* Graves & Range at 92).) If *any* documents could be useful in identifying Moog's purported trade secrets, they would be Moog's, for as the Court has noted, "Plaintiff is the only one who can know what it believes its trade secrets are." (ECF 205 at 3 (*citing Sit-Up Ltd. v. AC/InterActiveCorp.*, 2008 WL 463884, *7 (S.D.N.Y. 2008).) In its complaint, Moog claims to know exactly which of *its own files* contain or reflect those trade secrets. (ECF 1, ¶¶ 39, 112, 115-120, 150-152, 165.) By contrast, Skyryse's internal documents cannot establish the existence of Moog's alleged trade secrets, that they qualify for trade secret protection, or Moog's purported ownership of them.

Moog conflates the distinction between trade secret identification and alleged misappropriation. Any trade secret plaintiff must identify what trade secrets it claims to own. 18 U.S.C. § 1839(3). If they qualify for trade secret protection, the question becomes whether the defendant misappropriated these alleged trade secrets. 18 U.S.C. § 1839(5). While Moog will be required to

2

explain its misappropriation theory in the near future, Moog's immediate, Court-imposed requirement is first to identify its alleged trade secrets.

Moog argues that "the Court's July 22 Order makes clear that 'Moog will be required to precisely identify to Judge Vilardo the trade secrets which it claims to have been misappropriated.'" (Mot at 4 (citing ECF 205 at 5).) Of course it will, but Moog is confusing its immediate obligation to identify its alleged trade secrets with its ultimate burden at the preliminary injunction stage to show a likelihood of success in proving misappropriation. (*See* ECF 205 at 5 ("At the preliminary injunction hearing, Moog will be required to precisely identify to Judge Vilardo the trade secrets which it claims to have been misappropriated").) While Moog bears the burden of proving misappropriation and will be required to disclose those theories well in advance of the hearing, Moog must first identify its trade secrets, in detail, in a narrative (as the Court has already ordered).

There is no question that Moog already has access to relevant Skyryse documents on the iDS review computers, and that it can access, review, refer to, and describe them without restriction, and without Skyryse separately producing them during the stay of discovery. To the extent Moog wants to compare these documents to its internal documents in order to assess what alleged trade secrets are at issue, nothing has prevented Moog from performing that exercise already. In fact, Moog has already claimed that particular Skyryse documents allegedly contain materials copied from Moog. (*See* ECF 210, 210-1.) Moog now needs to collect and disclose the facts within its own control to identify its alleged trade secrets with particularity; Skyryse's documents are not necessary for that task.

  **B.**   **The Court stayed all pending discovery deadlines.**

Moog acknowledges that the Court stayed "*all* pending discovery deadlines"—as the Court already clarified at the last hearing (Aug. 4 Tr. at 36:18-37:5 ("Mr. Gross: I'd like to suggest that,

3

since this Fifth Amendment issue is tied to the stay issue, which that affects *all discovery*, I would like to suggest a vacatur of *all pending discovery deadlines* until the issue is resolved. Ms. Andoh: I believe *Judge McCarthy actually ordered that* at the last hearing. Mr. Gross: If that is the Court's intent, then I really appreciate that clarification. That would be fine with Skyryse. Magistrate Judge McCarthy: *Consider it clarified*.") (emphasis added).) At Moog's own request, this includes a stay of deadlines related to "materials produced to iDS." (July 27 Tr. at 57:17-24.) Backtracking, Moog now tries to argue that the stay is confined only to "written discovery," which it claims excludes the iDS protocol. (Mot. at 3.) Nothing in the Court's order supports the fine and self-serving distinctions Moog tries to draw here, or justifies an emergency lifting of the discovery stay.

### III.   CONCLUSION

Moog has already acknowledged that all pending discovery deadlines are stayed, and has offered no compelling reason why it needs relief from that stay or needs formal document productions from Skyryse during the stay, when it already has full access to the documents at issue. Respectfully, Moog's motion should be denied. In the alternative, if the Court is inclined to comment on its prior orders, Skyryse respectfully requests the Court confirm the stay applies to all discovery, including formal productions of documents provided to iDS for remote inspection, and that Moog, in providing its narrative identification of its trade secrets, may refer to material reviewed through the iDS protocol in that narrative response.

| | |
|---|---|
| Dated: August 18, 2022 | /s/ Gabriel S. Gross |

**LATHAM & WATKINS LLP**

Douglas E. Lumish (Admitted *Pro Hac Vice*)
Gabriel S. Gross
Arman Zahoory (Admitted *Pro Hac Vice*)
Ryan Banks (Admitted *Pro Hac Vice*)
140 Scott Drive
Menlo Park, California 94025
Telephone: (650) 328-4600
Facsimile: (650) 463-2600
Email: doug.lumish@lw.com
          gabe.gross@lw.com
          arman.zahoory@lw.com
          ryan.banks@lw.com

Joseph H. Lee (Admitted *Pro Hac Vice*)
650 Town Center Drive, 20th Floor
Costa Mesa, California 92626
Telephone: (714) 540-1235
Facsimile: (714) 755-8290
Email: joseph.lee@lw.com

Julianne C. Osborne (Admitted *Pro Hac Vice*)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
Fax: (415) 395-8095
Email: julianne.osborne@lw.com

**HARRIS BEACH PLLC**
Terrance P. Flynn
726 Exchange Street, Suite 1000
Buffalo, New York 14210
Telephone: (716) 200-5050
Email: tflynn@harrisbeach.com

Counsel for Defendant Skyryse, Inc.