UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MOOG INC.,

                    Plaintiff,

v.

SKYRYSE, INC., ROBERT ALIN
PILKINGTON, MISOOK KIM, and
DOES NOS. 1–50.

                    Defendants.
_____

**DECISION AND ORDER**

1:22-CV-187-LJV-JJM

The parties' familiarity with the relevant facts is presumed. Before the court are motions by defendants Pilkington and Kim [214][1] and Skyryse Inc. [241][2] to stay this action pending resolution of the parallel criminal investigation by the U.S. Attorney's Office for the Central District of California. Plaintiff Moog, Inc. opposes both motions [240, 255, 258].

Although I had scheduled the motions for oral argument on September 12, 2022 [252], having now reviewed the parties' submissions [214, 240, 241, 255 and 258], I do not believe that oral argument would shed additional light on the relevant issues. For the following reasons, I conclude that a stay is not warranted at the present time. Accordingly, the motions are denied, without prejudice to renewal at a later date.

---

[1]    Bracketed references are to CM/ECF docket entries, and page refences are to CM/ECF pagination.

[2]    I converted Skyryse's Supplemental Memorandum of Law [241] to a motion. *See* Text Order [252].

## DISCUSSION

"It is well settled that a court has the authority to stay an action pending criminal investigation." JHW Greentree Capital, L.P. v. Whittier Trust Co., 2005 WL 1705244, *1 (S.D.N.Y. 2005). "In general, however, absent an indictment, a stay is an extraordinary remedy and disfavored." Id.

"The person seeking a stay bears the burden of establishing its need". Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 97 (2d Cir. 2012). While courts "have often utilized a six-factor balancing test"[3] in determining whether to issue a stay, these factors merely "act as a rough guide for the district court as it exercises its discretion", and "cannot replac[e] the district court's studied judgment as to whether the civil action should be stayed based on the particular facts before it and the extent to which such a stay would work a hardship, inequity, or injustice to a party, the public or the court." Id.

Pilkington and Kim argue that "proceeding with discovery would force [them] into the uncomfortable position of having to choose between waiving their Fifth Amendment privilege or effectively forfeiting the civil suit. On the one hand, if either [of them] invokes their constitutional privilege during civil discovery, not only does this prevent them from adequately defending their position, but it may subject them to an adverse inference from their refusal to testify. On the other hand, if either fails to invoke their Fifth Amendment privilege, they may waive it, and any evidence adduced in the civil case can then be used against them in the

---

[3] These factors are: "1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest." Id. at 99.

criminal trial." Pilkington and Kim's Memorandum of Law [214-11] at 18-19. Skyryse argues that "[i]f the Court does not grant a full stay of the civil case pending resolution of the criminal investigation, and the individual defendants invoke the Fifth Amendment, Skyryse will be severely prejudiced and deprived of its right to present a full and complete defense" (Skyryse's Supplemental Brief [241] at 90), and may "be subject to the same adverse inference" as that drawn against Pilkington and Kim. Skyryse's Reply [258] at 10.

   At this stage of the case, these concerns remain hypothetical, as Pilkington and Kim have not yet asserted a Fifth Amendment privilege. They argue that they "do not have the necessary information to assert [that] privilege because [Moog] improperly withholds . . . information" as to its trade secrets (Pilkington and Kim's Memorandum of Law [237] at 10), and suggest that once Moog "identifies with particularity the alleged 'trade secrets' and 'classified' information that are claimed to be at issue in this Action", they "will assess their Fifth Amendment claims". Pilkington and Kim's Memorandum of Law [214-11] at 23.

   While my July 22, 2022 Decision and Order [205] directed Moog to provide a detailed identification of the trade secrets at issue, it recognized Moog's need to obtain additional discovery from defendants before doing so. During a conference on July 27, 2022, I stated that "I'm going to sequence discovery. And I want to focus, first and foremost, on Moog's identification in a considerable level of detail . . . of the trade secrets which it considers to be at issue for purposes of the preliminary injunction hearing. Once those are identified, then the parties can proceed to drill down further . . . . [B]ut unless and until we get to that identification, I don't see the point in proceeding on other discovery". [209] at 5.

   That same day, I issued a Text Order [206] requiring Moog to "file any motions related to the discovery allegedly necessary to enable [it] to identify its trade secrets" by August

3, 2022. In response, Moog has now filed a "Motion to Compel Discovery Necessary for Further Trade Secret Identification" [210] which, together with Skyryse's "Motion to Enter a Source Code Protocol' [213], will be addressed on September 12, 2022. Neither motion requests testimony from Pilkington or Kim, and I have already ruled that they may not claim a Fifth Amendment privilege for the devices which they turned over to iDS. *See* August 29, 2022 Report, Recommendation and Order [253].

"The decision whether to stay civil proceedings in the face of a parallel criminal proceeding should be made in light of the particular circumstances and competing interests involved in the case", Keating v. Office of Thrift Supervision, 45 F.3d 322, 324 (9th Cir. 1995), "with the basic goal being to avoid prejudice". Volmar Distributors, Inc. v. New York Post Co., 152 F.R.D. 36, 39 (S.D.N.Y. 1993). Allowing this action to continue so that Moog may identify the trade secrets at issue furthers its interest (as well as that of the court and the public) in moving the case forward. It also furthers defendants' ability to defend themselves by obtaining greater specificity as to what Moog claims as its property, without (for now) requiring them to testify.

Once Moog identifies the trade secrets and confidential information at issue, defendants may (or may not) decide that a stay of this action is necessary to protect their interests in light of the pending criminal investigation. Whether such relief would be appropriate is a question for another day.

## CONCLUSION

The decision as to whether to grant or deny a stay lies "firmly within the discretion of the district court". Louis Vuitton, 676 F.3d at 100. For the reasons discussed, in the

exercise of that discretion I conclude that a stay of proceedings is not warranted at the present time. Accordingly, defendants' motions for a stay [214, 241] are denied, without prejudice to renewal at a later date.[4]

**SO ORDERED.**

Dated: September 8, 2022

                                         _Jeremiah J. McCarthy_
                                         JEREMIAH J. MCCARTHY
                                         United States Magistrate Judge

---

[4] "This is a Decision and Order rather than a Report and Recommendation because the grant or denial of a stay is nondispositive", Williams, 2015 WL 2237216, *1, n. 2, "for which the Court's standard of review . . . is highly deferential". McNeil v. Capra, 2015 WL 4719697, *2 (S.D.N.Y. 2015).