UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MOOG, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 1:22-cv-00187-LJV-JJM |
| SKYRYSE, INC., ROBERT ALIN PILKINGTON, MISOOK KIM, and DOES NOS. 1-50, | **Oral Argument Requested** |
| Defendants. | |

## DEFENDANT SKYRYSE'S OBJECTIONS TO REPORT AND RECOMMENDATION

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ..................................................................................................1

II.  BACKGROUND AND PROCEDURAL HISTORY.........................................................2

III.  LEGAL STANDARDS .........................................................................................5

IV.  THE COURT SHOULD RESOLVE SKYRYSE'S MOTION TO DISMISS OR
     TRANSFER NOW............................................................................................6

     A.  Delaying ruling on Skyryse's motion is contrary to law. .......................................6

     B.  Delaying ruling on Skyryse's motion unduly prejudices Skyryse..........................9

     C.  Deciding the preliminary injunction motion in this Court would waste
         judicial resources. ..............................................................................12

V.  THE PARTIES NEVER STIPULATED THAT JURISDICTION AND VENUE
    ARE PROPER IN THIS DISTRICT FOR PURPOSES OF THE PRELIMINARY
    INJUNCTION MOTION........................................................................................13

    A.  The plain text of the stipulations preserved Skyryse's challenges to the
        Court's jurisdiction and venue................................................................14

    B.  Skyryse stipulated to a proposed schedule subject to its express reservation
        of its right to challenge to jurisdiction and venue.................................16

    C.  Pre- and post-contract evidence supports Skyryse's interpretation of the
        stipulations. .................................................................................18

    D.  The R&R erroneously concludes that the stipulation exclusively allows
        this Court to maintain jurisdiction through the preliminary injunction
        hearing..........................................................................................21

VI.  CONCLUSION.................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adasar Grp., Inc. v. NetCom Sols. Int'l, Inc.*,
No. 01 CIV. 0279 (WHP), 2003 WL 1107670 (S.D.N.Y. Mar. 13, 2003)..............................19

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
751 F.3d 796 (7th Cir. 2014) ........................................................................................8

*In re Apple Inc.*,
979 F.3d 1332 (Fed. Cir. 2020)...................................................................................6, 8

*Arrowsmith v. United Press Int'l*,
320 F.2d 219 (2d Cir. 1963)...........................................................................................6

*Branson v. Exide Elecs. Corp.*,
625 A.2d 267 (Del. 1993) ..............................................................................................7

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*,
137 S. Ct. 1773 (2017)....................................................................................................5

*Buffalo Tungsten, Inc. v. CMW Int'l, Inc.*,
No. 11-CV-00875(M), 2013 WL 5472665 (W.D.N.Y. Sept. 30, 2013)................................21

*Carpenter v. U.S. Dep't of Just.*,
No. 3:05CV172AWT, 2005 WL 1290678 (D. Conn. Apr. 28, 2005) ....................................11

*Dollar Sav. Bank v. First Sec. Bank of Utah, N.A.*,
746 F.2d 208 (3d Cir. 1984)...........................................................................................7

*In re Google Inc.*,
No. 2015-138, 2015 WL 5294800 (Fed. Cir. July 16, 2015)....................................................9

*In re Horseshoe Ent.*,
337 F.3d 429 (5th Cir. 2003) ..........................................................................................6

*IBJ Schroder Bank & Tr. Co. v. Resol. Tr. Corp.*,
26 F.3d 370 (2d Cir. 1994)............................................................................................19

*McDonnell Douglas Corp. v. Polin*,
429 F.2d 30 (3d Cir. 1970)................................................................................12, 13, 15

*Mones v. Com. Bank of Kuwait, S.A.K.*,
204 F. App'x 988 (2d Cir. 2006) .....................................................................................7

*Moog, Inc. v. Newport Aeronautical, Inc.*,
    No. 14-CV-00504A(F), 2016 WL 3444238 (W.D.N.Y. June 23, 2016) ........................5, 9, 12

*Multiform Desiccants, Inc. v. Sullivan*,
    No. 95-CV-0283E(F), 1996 WL 685744 (W.D.N.Y. Nov. 26, 1996),
    *on reconsideration*, No. 95-CV-0283E(F),
    1997 WL 9782 (W.D.N.Y. Jan. 2, 1997) ...............................................................................10

*N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*,
    599 F.3d 102 (2d Cir. 2010) ................................................................................................18

*Old Colony Trust Co. v. City of Omaha*,
    230 U.S. 100 (1913) .............................................................................................................20

*Proctor & Gamble Co. v. Ranir, LLC*,
    No. 1:17-cv-185, 2017 WL 3537197 (S.D. Ohio Aug. 17, 2017) ..........................................7

*Reading Health Sys. v. Bear Stearns & Co.*,
    900 F.3d 87 (3d Cir. 2018) .....................................................................................................7

*Roberts v. Consol. Rail Corp.*,
    893 F.2d 21 (2d Cir. 1989) ...................................................................................................19

*Rudersal, EEOD v. Harris*,
    1:18-cv-11072-GHW, 2020 WL 5836517 (S.D.N.Y. Sept. 30, 2020) .....................................5

*Ruhrgas AG v. Marathon Oil Co.*,
    526 U.S. 574 (1999) ................................................................................................................7

*S.E.C. v. Roberts*,
    No. CIV.A.07 407 (EGS), 2007 WL 2007504 (D.D.C. July 10, 2007)..................................10

*Ubakanma v. Midwood Chayin Aruchim*,
    No. 09-CV-2647(DLI) (RLM), 2010 WL 1206500 (E.D.N.Y. Mar. 29, 2010) .....................15

*Walden v. Fiore*,
    571 U.S. 277 (2014)................................................................................................................5

## STATUTES

28 U.S.C.
    § 636(b)(1) .............................................................................................................................5
    § 1391(b)(2) .......................................................................................................................3, 5
    § 1404(a) .....................................................................................................................6, 14, 22

## RULES

Fed. R. Civ. P. 45(c)(1)(A)-(B)(ii)................................................................................................10

Fed. R. Civ. P. 45(d)(3)(B) .................................................................................................11

Fed. R. Civ. P. 72(b)(3)..........................................................................................................5

Rule 12 .................................................................................................................................15

## TREATISES

Restatement (Second) of Contracts § 202 (1981) .........................................................19

## OTHER AUTHORITIES

United States District Courts – National Judicial Caseload Profile, *available at*
     http://www.uscourts.gov/statistics-reports/caseload-statistics-data-tables .............................12

## I.      INTRODUCTION

Defendant Skyryse respectfully objects to the Magistrate Judge's August 29, 2022 Report and Recommendation (ECF 253) ("R&R"). The R&R erroneously recommends denying in part Skyryse's motion to dismiss or transfer venue, deferring ruling on the remainder of the motion, and finds that Skyryse consented to litigate Moog's preliminary injunction motion in this Court despite having challenged the Court's jurisdiction and the propriety of this venue. For the reasons stated below, Skyryse requests that the Court decline to adopt the R&R and, instead, dismiss or transfer the case without delay.

The Western District of New York is not the right forum for this action. Moog brought this case against a California company and two California citizens who formerly worked for Moog in California, based on alleged conduct that occurred in California, with virtually all of the witnesses and evidence located in California. Despite the case's and parties' many substantial connections to the Central District of California, Moog filed its complaint here in New York, where no significant conduct material to its claims is alleged to have occurred.

Magistrate Judge McCarthy recognized that "there is a compelling case or argument to be made that the remainder of the case should be transferred to the Central District of California based on convenience of the parties, convenience of the witnesses, coupled with the fact that there is now an ongoing criminal investigation in the Central District of California." (Ex. 2, Aug. 25 Tr. 24:21-25:3.) The R&R nevertheless defers ruling on Skyryse's motion to dismiss or transfer—which has now been pending for nearly six months—and forces the Defendants to engage in more protracted litigation in this improper and inconvenient forum. At a minimum, the Court should decline to adopt the portion of the R&R that further delays ruling on Skyryse's motion to dismiss or transfer venue, and resolve that motion promptly and fully.

1

The R&R also embraces Moog's belated and incorrect arguments that, through two stipu-lations entered in the earliest days of this case, Skyryse consented to this Court resolving Moog's preliminary injunction motion before ruling on Skyryse's jurisdictional and venue challenges. The Court should reject this for four reasons. First, the R&R misreads the language of the stipulations and disregards Skyryse's clear and repeated reservation of its fundamental, threshold challenges to personal jurisdiction and venue, including in the stipulations themselves. Second, the parties have stipulated to the entirety of the preliminary relief Moog requested, and Moog has not sought any additional preliminary relief. Nonetheless, the R&R would keep the case in this Court for purposes of a preliminary injunction motion which seeks to accomplish no more than what has already been agreed to by stipulation. Third, the R&R's interpretation of the stipulations is incon-sistent with the parties' understanding of their agreement, as expressed through their well-docu-mented negotiation history, Skyryse's repeated insistence that it would not waive its fundamental constitutional right to defend itself in a proper jurisdiction, and Moog's own earlier positions which made clear Moog's true understanding that the stipulations did not somehow operate to force the preliminary injunction motion to occur in this Court, as it now argues. Finally, there is no basis to conclude that venue is *only* proper in this district for purposes of the preliminary injunction hearing and that transfer to the Central District of California would not serve the interests of justice and convenience. Respectfully, the Court should sustain Skyryse's objection to the R&R and dismiss or transfer the case without delay.

## II.    BACKGROUND AND PROCEDURAL HISTORY

Moog filed this lawsuit and moved for a temporary restraining order, preliminary injunc-tion, and expedited discovery on March 7, 2022. (ECF 1, 4, 6.) At the earliest opportunity on March 29, 2022, Skyryse filed a timely motion to dismiss, challenging this Court's jurisdiction

and venue and alternatively, seeking an order transferring venue. (ECF 48, amended on May 20, 2022 at ECF 117.) Today, nearly six months later, that threshold motion has yet to be resolved.

Because of the seriousness of Moog's accusations and the urgency with which it claimed to need relief, Skyryse has worked diligently and in good faith to move the case forward. Early in the case, Skyryse stipulated to certain procedures and schedules to provide Moog with the preliminary relief it claimed it needed (ECF 25), and avoided motion practice over expedited discovery that Moog requested. (ECF 33.)

Five months into the case, at Magistrate Judge McCarthy's suggestion, Skyryse supplemented the briefing on its motion challenging jurisdiction and venue to bring to the Court's attention recent developments that, in Skyryse's view, confirm that this Court was never the right venue for this action. (ECF 224.) This included the fact that the United States Attorney's Office for the Central District of California, following a referral from Moog, has opened an investigation premised on the same alleged conduct in California that underlies Moog's claims. It also included the fact that Moog's own post-complaint statements confirm that "a substantial part of the events or omissions giving rise to the claim" did not occur in this district. 28 U.S.C. § 1391(b)(2). Finally, the supplemental briefing informed the Court that Moog has been pursuing discovery exclusively from California – including requesting millions of files belonging to California-based current and former Skyryse employees, and subpoenaing thirteen non-party witnesses residing in California.

Around the same time, on August 9, the Court referred all dispositive motions to Magistrate Judge McCarthy. (ECF 221.) On August 10, Magistrate Judge McCarthy informed the parties that he "intend[ed] to give top priority to deciding defendants' pending motions for dismissal or transfer of venue [47, 48] – for regardless of the outcome of those motions, all parties deserve to know

3

sooner rather than later which court will preside over this litigation." (Ex. 1, Aug. 10 Email from the Magistrate Judge to the parties.)

It was not until then, months after the parties had briefed the issue, that Moog argued for the first time in an email to the Court (ECF 247-4) and in opposition to Skyryse's supplemental brief (ECF 239 at 3-5) that Skyryse had "agreed" that personal jurisdiction and venue were proper in this Court for purposes of resolving Moog's motion for a preliminary injunction. Moog claimed that the parties expressed that intent in the two stipulations entered shortly after the case commenced. (ECF 25, 33.) Skyryse subsequently sought leave to respond to this new argument, which Moog had only (untimely) raised for the first time after Skyryse had fully briefed its motion to dismiss or transfer. (ECF 247, 247-3.)

Magistrate Judge McCarthy held a hearing on August 25 on Defendants' motions to dismiss or transfer. As he stated, "there is a compelling case or argument to be made that the remainder of the case should be transferred to the Central District of California based on convenience of the parties, convenience of the witnesses, coupled with the fact that there is now an ongoing criminal investigation in the Central District of California." (Ex. 2, Aug. 25 Tr. 24:21-25:3.) He noted there is "more than a minimal possibility, that irrespective of where the preliminary injunction is heard, the remainder of the case may well be transferred to the Central District of California." (*Id.* at 25:9-14.) In spite of that, on August 29 Magistrate Judge McCarthy issued a Report and Recommendation denying Skyryse's request to file a supplemental brief, "recommend[ing] denial of that portion of defendants' motions suggesting that this court lacks personal jurisdiction and venue for consideration of Moog's preliminary injunction motion" and "deny[ing] that portion of the motions seeking transfer of venue to the Central District of California for determination of the preliminary injunction motion." (ECF 253, R&R at 4, 10.) The Magistrate did not rule on the

remainder of Skyryse's motion to dismiss or transfer, instead concluding that the motion, which has been pending for nearly six months, would be further "deferred for consideration until the preliminary injunction motion is decided." (*Id*. at 10)

## III.   LEGAL STANDARDS

The Court reviews *de novo* those portions of a Report and Recommendation made by a magistrate judge with respect to dispositive motions. 28 U.S.C. § 636(b)(1). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id*.; Fed. R. Civ. P. 72(b)(3). A magistrate judge's ruling on a motion to dismiss for lack of personal jurisdiction is dispositive, and thus the Court reviews the ruling under a *de novo* standard of review. *Rudersal, EEOD v. Harris*, 1:18-cv-11072-GHW, 2020 WL 5836517, at *3-4 (S.D.N.Y. Sept. 30, 2020). Motions to transfer venue are non-dispositive. *Moog, Inc. v. Newport Aeronautical, Inc.*, No. 14-CV-00504A(F), 2016 WL 3444238, at *1, n.1 (W.D.N.Y. June 23, 2016).

It is a plaintiff's burden to demonstrate that a court has personal jurisdiction over the defendant and that venue is proper. To avoid dismissal, the plaintiff must show that the defendant is either "at home" in the forum State or that "the defendant's suit-related conduct . . . create[s] a substantial connection with the forum State." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal*., 137 S. Ct. 1773, 1780 (2017); *Walden v. Fiore*, 571 U.S. 277, 284 (2014). If the plaintiff fails to make that showing, the Due Process Clause prohibits the Court from exercising jurisdiction over the defendant. *Id.*

The Federal Rules of Civil Procedure also authorize a court to dismiss an action where venue is improper. Venue is proper if "a substantial part of the events or omissions giving rise to the claim occurred" in the district. 28 U.S.C. § 1391(b)(2). Even if a court finds that venue is proper in the

court where the action was originally filed, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

## IV. THE COURT SHOULD RESOLVE SKYRYSE'S MOTION TO DISMISS OR TRANSFER NOW.

### A. Delaying ruling on Skyryse's motion is contrary to law.

By postponing final resolution of Skyryse's threshold challenge to personal jurisdiction and venue and mandating further litigation on the merits in the Western District of New York, the R&R errs as a matter of law. Magistrate Judge McCarthy denies Skyryse's motion to dismiss or transfer "solely for purposes of the preliminary injunction motion, not for purposes of the remainder of the case," finding that "that issue does not need to be decided right now." (Ex. 2, Aug. 25, 2022 Hearing Tr. 3:13-17.) The R&R does not suggest when Skyryse's motion will be resolved, and recommends that Skyryse's fundamental challenges to the Court's jurisdiction and venue be decided sometime after resolution of Moog's preliminary injunction motion on its merits, which is "probably a ways down the road" and has yet to be scheduled. (*Id*. at 3:14-17, 22:16-20.)

Deferring Skyryse's threshold motion to dismiss or transfer until after the Court reaches a decision on Moog's preliminary injunction motion is contrary to the law. As courts routinely recognize, a defendant's challenge to personal jurisdiction and venue should be resolved at the outset of litigation, with priority over any other decisions on the merits of the case. *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 234 (2d Cir. 1963) (finding that personal jurisdiction and venue motions must be resolved "before any further consideration of the merits."); *In re Apple Inc*., 979 F.3d 1332, 1337-38 (Fed. Cir. 2020) ("Although district courts have discretion as to how to handle their dockets, once a party files a transfer motion, disposing of that motion should unquestionably take top priority."); *see also In re Horseshoe Ent.*, 337 F.3d 429, 433 (5th Cir. 2003) ("[I]n our view

disposition of that [transfer] motion should have taken a top priority in the handling of this case by the Middle District Court."); *Reading Health Sys. v. Bear Stearns & Co.,* 900 F.3d 87, 95 (3d Cir. 2018) ("[T]hreshold disputes over venue and jurisdiction should be resolved before merits disputes.").

Prioritizing such motions makes sense: a court that lacks personal jurisdiction over a defendant has no authority to enter or enforce rulings on the merits. *Branson v. Exide Elecs. Corp.*, 625 A.2d 267, 269 (Del. 1993) ("[A] court's finding of personal jurisdiction is not only a condition precedent to a proper exercise of its own judicial authority, but it is determinative of the course of other litigation between the same parties."); *Mones v. Com. Bank of Kuwait, S.A.K.*, 204 F. App'x 988, 990 (2d Cir. 2006) ("Personal jurisdiction, too, is an essential element of district court jurisdiction, without which the court is powerless to proceed to an adjudication.") (quoting *Ruhrgas AG v. Marathon Oil Co*., 526 U.S. 574, 575 (1999)).

The Magistrate Judge's decision to proceed with resolving an injunction motion *before* resolving Skyryse's challenge to jurisdiction and venue is legally erroneous. Indeed, "[i]t is reversible error to address injunctive relief prior to a claim of improper venue." *See, e.g., Proctor & Gamble Co. v. Ranir, LLC*, No. 1:17-cv-185, 2017 WL 3537197, at *4 (S.D. Ohio Aug. 17, 2017) ("Courts faced with an argument that venue is improper must resolve that issue prior to addressing the merits of any claim, including a preliminary injunction."). In choosing to postpone a decision on Skyryse's jurisdiction and venue motion until *after* ruling on Moog's preliminary injunction motion, the R&R risks that any preliminary injunction the Court enters will be unenforceable if the Court later finds that it lacks personal jurisdiction over Skyryse. *See, e.g., Dollar Sav. Bank v. First Sec. Bank of Utah, N.A*., 746 F.2d 208, 215 (3d Cir. 1984) (vacating preliminary injunction entered by district court because court had erred in not first establishing whether the court had

personal jurisdiction over defendant); *Advanced Tactical Ordnance Sys., LLC v. Real Action Paint-ball, Inc*., 751 F.3d 796, 800 (7th Cir. 2014) ("In order for the district court's preliminary injunc-tion to be valid, that court had to have personal jurisdiction over the defendant."). To avoid this legal error, the Court should decline to adopt the R&R's recommendation to further delay resolving Skyryse's motion to dismiss or transfer until after a preliminary injunction hearing.

Further delay in resolving Skyryse's threshold motion to dismiss or transfer will only invite continued protracted litigation in the Western District of New York, which Moog has been using to gain an unfair tactical advantage. Moog cannot contest that the vast majority of witnesses and evidence are located in California. Instead, in opposing Skyryse's motion to dismiss or transfer, Moog originally argued forfeiture *by conduct*, claiming that Skyryse "has waived any objections to venue *by litigating* in this Court" in the beginning stages of this suit. (ECF 62 at 16.) Since then, Moog has exploited the delay in resolving that motion for its own purposes, arguing that dismissal or transfer will cause the Court and parties to "lose the benefit of the significant familiarity with the facts and issues this Court has gained thus far, whereas a California court will have to start over from scratch." (ECF 239, Moog's Supplemental Opp., at 14.)

Skyryse challenged the Court's jurisdiction and venue at the first opportunity just three weeks into this case, and stipulated in good faith to certain processes and discovery that would help move the case along while the Court resolved its threshold motion. For the delay in resolving that motion to be used against Skyryse, and result in a finding of forfeiture by conduct, would be fundamentally unfair and contrary to the law. *In re Apple Inc*., 979 F.3d at 1343 ("Setting aside the questionable prioritization of other proceedings over the pending transfer motion, the district court legally erred in concluding that the merits-related steps it had taken weighed heavily against transfer. A district court's decision to give undue priority to the merits of a case over a party's

transfer motion should not be counted against that party in the venue transfer analysis."); *In re Google Inc.*, No. 2015-138, 2015 WL 5294800, at *2 (Fed. Cir. July 16, 2015) ("We remind the lower court that any familiarity that it has gained with the underlying litigation due to the progress of the case since the filing of the complaint is irrelevant when considering the transfer motion and should not color its decision.")

Accordingly, the Court should decline to adopt the portion of the R&R that postpones final resolution of Skyryse's motion to dismiss or transfer venue, and resolve that motion immediately.

### B.   Delaying ruling on Skyryse's motion unduly prejudices Skyryse.

Skyryse bears additional burden and expense with each day the action remains in this district. Skyryse is a small company headquartered in California, and the individual defendants both reside in California as well. (Compl. ¶¶ 11-13.) All of Skyryse's employees and key witnesses are located in California, and none lives or works in the Western District of New York. (*Id.*; ECF 48-5, Rey Decl. ¶¶ 17-18, 23.) Skyryse, its employees, and the individual defendants would incur significant time, expense, and inconvenience if required to continue to defend themselves in a forum across the country from where they live and work – a factor which courts consider significant in assessing whether transferring a case is in the in the interest of justice and convenience of the parties and witnesses. *Moog, Inc.*, 2016 WL 3444238, at *3-4.[1] To avoid imposing this sort of burden on parties and their witnesses is another reason courts encourage speedy resolution of a defendant's motion to dismiss for lack of personal jurisdiction or improper venue. *In re Google*

---

[1] The *Moog, Inc.* case has strikingly similar facts. There, Moog filed suit in this Court, alleging trade secret misappropriation and other claims against a California corporation that had its principal place of business in California and employees entirely located in the Central District of California. Judge Foschio ruled that the balance of factors weighed in favor of transferring the action to the Central District of California and granted the defendant's motion to transfer venue.

*Inc.*, 2015 WL 5294800, at *1 (finding delay in resolving such a threshold motion "force[s] [Defendants] to expend resources litigating substantive matters in an inconvenient venue while a motion to transfer lingers unnecessarily on the docket.").

Ongoing proceedings in this district also threaten to force Skyryse and its employees to participate in duplicative litigation in multiple jurisdictions. The parties are already engaged in a related criminal investigation in the Central District of California, and any charges or future proceedings that arise from this investigation are expected to be brought in the Central District of California, resulting in legal process, evidence-gathering, and witness testimony in California. To prevent such duplicative efforts, courts regularly transfer cases to another jurisdiction where a related case is being handled. *S.E.C. v. Roberts*, No. CIV.A.07 407 (EGS), 2007 WL 2007504, at *3 (D.D.C. July 10, 2007) (granting motion to transfer case from the District of Columbia to Northern California where "defendant is facing criminal charges in Northern California stemming out of exactly the same conduct at issue in this case."); *Multiform Desiccants, Inc. v. Sullivan*, No. 95-CV-0283E(F), 1996 WL 685744, at *2 (W.D.N.Y. Nov. 26, 1996), *on reconsideration*, No. 95-CV-0283E(F), 1997 WL 9782 (W.D.N.Y. Jan. 2, 1997) ("Closely related litigation in another forum is a persuasive factor favoring transfer thereto.")

Moog also has subpoenaed thirteen California-based witnesses, and no New York-based witnesses.[2] All of these non-party witnesses live in or around Los Angeles, California, and forcing

---

[2] Moog has tried to minimize its efforts to subpoena California residents by arguing they are simply employees of Skyryse. But these subpoenas were sent to at least three *former* employees of Skyryse who are outside of the Court's subpoena power for trial because they are not within 100 miles of the courthouse and do not live in or regularly do business in New York. Fed. R. Civ. P. 45(c)(1)(A)-(B)(ii). And, even for current employees, Moog has subpoenaed these California residents in their *personal* capacities because it insists on discovery that is not in Skyryse's possession, custody, or control, e.g., information on their personal devices and accounts. These subpoenas require compliance (and possibly additional legal process) in California.

them to testify in New York in connection with Moog's preliminary injunction motion would impose further burden, expense, and inconvenience on them, on top of the substantial burden they have already borne in responding to Moog's sweeping subpoenas. In addition, any motions to quash these subpoenas or compel the production of documents in connection with these subpoenas necessarily will be heard in the Central District of California, *see* Fed. R. Civ. P. 45(d)(3)(B), creating the risk that, if this case is not transferred, two different jurisdictions will be adjudicating overlapping discovery issues and could reach inconsistent results.

Moog, in contrast, will suffer no prejudice if the case is dismissed or transferred to California. It already received by stipulation the preliminary relief it claimed to need. If Moog does get around to seeking some additional provisional relief—something it has repeatedly told the Court it *may* seek but has yet to actually request—its six-month (and growing) delay in doing so undermines any claim of urgency. And there is no reason a court in the Central District of California could not fairly and efficiently resolve such a motion. This case remains in its early stages (Moog has yet to even identify its alleged trade secrets, and Skyryse has not yet answered the complaint), and Moog will not be prejudiced by dismissal or transfer. Additionally, Moog has a significant presence in the Central District of California, with offices there – including at three locations near Los Angeles – and hundreds of California employees, so litigating its case where all the central facts are alleged to have occurred would not inconvenience Moog. (ECF 48-4, Ex. B to Skyryse's Motion to Dismiss or Transfer.) And because the Government's investigation is proceeding in California, Moog will be involved in fact-gathering and potentially litigation in California anyway, and "a transfer to [California] does not result in [it] being sent off to some district with which [it] has no connection." *Carpenter v. U.S. Dep't of Just.,* No. 3:05CV172AWT, 2005 WL 1290678, at *1 (D. Conn. Apr. 28, 2005).

11

**C.      Deciding the preliminary injunction motion in this Court would waste judicial resources.**

Requiring the parties to participate in a preliminary injunction hearing in the Western District of New York also disserves the Court's and parties' interest in the efficient resolution of Moog's claims. *Moog, Inc*, 2016 WL 3444238, at *3, *7. First, as Magistrate Judge McCarthy has noted, given the number of active district judges in the Central District of California (34) compared to the Western District of New York (2), and the relative size of their dockets, Moog's preliminary injunction motion will likely be resolved more quickly in California. (Ex. 2, Aug. 25 Tr. 25:15-26:6 ("So, in terms of how quickly a preliminary injunction hearing could be scheduled, I think there is a good argument that you might get to a hearing more quickly in the Central District of California than you would here.")) The case is also likely to reach trial more quickly in California, given that median trial time in this district is almost three times longer than in the Central District of California. (*See* ECF 48, Motion to Dismiss or Transfer, at 16, 25.)[3]

Second, should the case be transferred after a ruling on Moog's preliminary injunction motion, as Magistrate Judge McCarthy suggested may happen (Ex. 2, Aug. 25 Tr. 24:21-25:3), two different courts would be forced to adjudicate overlapping merits-based disputes in the same case. This is inefficient and creates the risk that the courts could reach inconsistent results, or, as noted above, that this Court's rulings will be invalidated by its lack of jurisdiction. For example, if this Court adjudicates a preliminary injunction motion, it will be required to determine key issues on the merits, including whether Moog has established a likelihood of success and whether it has proven that it faces irreparable harm. These issues will overlap with future merits-based decisions a district court in California reaches, including at trial. *McDonnell Douglas Corp. v. Polin*, 429

---

[3] *See* United States District Courts – National Judicial Caseload Profile, *available at* http://www.uscourts.gov/statistics-reports/caseload-statistics-data-tables.

F.2d 30, 30 (3d Cir. 1970) ("[T]he court which ultimately decides the merits of the action should also decide the various questions which arise during the pendency of the suit instead of considering it in two courts.") Additionally, the issue of whether Moog has fully identified the trade secrets it alleges are at issue with sufficient particularity will be fundamentally intertwined with any preliminary injunction motion. Moog's trade secret identification, which it will be required to disclose before any preliminary injunction hearing is held (ECF 205, Order on Motion to Compel Identification of Trade Secrets, at 5), will continue to be relevant throughout the remainder of the case, and the court that presides over the case after a preliminary injunction hearing is likely to be required to rule on the sufficiency of Moog's disclosures as well.

It makes little sense for two different courts to be burdened with such overlapping issues, especially if a decision here will not be binding if the Court later determines it lacks jurisdiction. It would be far more efficient for the Court to decide whether to dismiss or transfer the case now, before it expends additional resources evaluating Moog's trade secret disclosures and adjudicating a preliminary injunction motion. Because Moog has not yet served any trade secret disclosures or filed an amended preliminary injunction motion, transferring the case now would allow a transferee court in California to start on a clean slate, minimizing the risk of duplicating this Court's efforts or reaching contradictory decisions.

## V.  THE PARTIES NEVER STIPULATED THAT JURISDICTION AND VENUE ARE PROPER IN THIS DISTRICT FOR PURPOSES OF THE PRELIMINARY INJUNCTION MOTION.

If the Court agrees it should rule on Skyryse's motion to dismiss or transfer in full before presiding over any further merits-based litigation, then it need not necessarily reach the question on which the R&R predominantly focuses: whether or not the parties consented to holding a preliminary injunction hearing in this district. For example, if the Court resolves Skyryse's jurisdictional and venue challenges against it, then the case will proceed here (subject to any appeal).

13

Likewise, the Court can dismiss the action or transfer venue to the Central District of California in the interests of justice pursuant to 28 U.S.C. § 1404(a), *even if* it finds that the parties stipulated to having a preliminary injunction hearing in the Western District of New York. Regardless, if the Court reaches the question, it should reject the R&R's conclusion that Skyryse "consented to litigate Moog's preliminary injunction motion in this court" (R&R at 3) for the reasons described below.

> **A.    The plain text of the stipulations preserved Skyryse's challenges to the Court's jurisdiction and venue.**

Magistrate Judge McCarthy's finding that Skyryse waived its right to challenge jurisdiction and venue until after a hearing on Moog's preliminary injunction motion is contrary to the express language of the parties' stipulations. In both stipulations, Skyryse explicitly preserved its jurisdiction and venue challenges: "By agreeing to this stipulated Order, Defendants consent to the jurisdiction and venue of the Court for purposes of this stipulated Order only *and for no other purpose*." (ECF 33, ¶ 14; ECF 25, ¶ 11) (emphasis added). And in agreeing to engage in the expedited discovery Moog demanded, Skyryse also "explicitly preserved" "[a]ny and all other challenges to jurisdiction and venue." (ECF 33, ¶ 14.)

This language is clear on its face. In stipulating that "Defendants consent to the jurisdiction and venue of the Court for purposes of this stipulated Order only *and for no other purpose*" (ECF 33, ¶ 14; ECF 25, ¶ 11) (emphasis added), Skyryse was explicit that it consented to jurisdiction and venue only for the limited purposes of the stipulations themselves — which set out processes for preserving discoverable evidence and delivering certain materials, parameters for expedited discovery, a briefing schedule related to Moog's preliminary injunction motion, and a hearing date "subject to the Court's availability." (ECF 25; ECF 33, ¶ 6.) Skyryse consented "for no other purpose," including resolving any of Moog's claims on their merits. By "explicitly preserv[ing]"

"[a]ny and all other challenges to jurisdiction and venue," Skyryse made plain its reservation of rights so its threshold objections to jurisdiction and venue could be resolved without delay.

The R&R's construction of the stipulations gives no effect to Skyryse's explicit reservation of its rights and expressed intent to preserve "[a]ny and all" other challenges to jurisdiction and venue." (ECF 33, ¶ 14.) Such an interpretation cannot be accepted. "Under New York law, the terms of a contract must be construed so as to give effect to the intent of the parties as indicated by the language of the contract." *Ubakanma v. Midwood Chayin Aruchim*, No. 09-CV-2647(DLI) (RLM), 2010 WL 1206500, at *2 (E.D.N.Y. Mar. 29, 2010). With these stipulations, Skyryse agreed to move the case forward in view of Moog's claims of urgency, subject to Skyryse's threshold challenge to jurisdiction and venue. Any reading of the stipulations that finds Skyryse waived fundamental constitutional rights that it expressly stated it was preserving does not effectuate the parties' clear intent.

The R&R also reads into the stipulations an agreement the parties never reached (and lack the power to establish): that the Court should resolve Moog's preliminary injunction motion *before* resolving Skyryse's motion challenging jurisdiction and venue. The stipulations do not dictate the order or timing in which the Court will resolve the defendants' Rule 12 or transfer motions and Moog's preliminary injunction motion. The purpose of the stipulations was to *begin* to move this case forward by providing Moog with the preliminary relief and expedited discovery it claimed it needed, not to bind the parties to litigating in a court whose jurisdiction they challenged. Skyryse never would have voluntarily agreed to delay or deprioritize its threshold challenge to jurisdiction and venue. In fact, given the threshold nature of its objection to personal jurisdiction and venue, and the significance of the constitutional rights at stake, Skyryse expected that motion would be given priority. *See McDonnell Douglas Corp.*, 429 F.2d at 30 ("Judicial economy requires that

15

another district court should not burden itself with the merits of the action until it is decided that a transfer should be effected."). Skyryse never waived its right to have its jurisdictional and venue challenges resolved promptly, and fully expected that if this Court granted Skyryse's motion to dismiss or transfer, any further proceedings—including on Moog's preliminary injunction motion—would be heard by another court in the Central District of California.

### B.    Skyryse stipulated to a proposed schedule subject to its express reservation of its right to challenge to jurisdiction and venue.

Nothing in the stipulations contemplates the interpretation that the R&R embraces: that the parties decided that this Court should exercise and maintain jurisdiction for purposes of Moog's preliminary injunction motion, however long that may take, and regardless of when or how it rules on Skyryse's Motion to Dismiss or Transfer. The R&R relies on language in the March 17 stipulation (ECF 33) that provisionally scheduled a preliminary injunction hearing "for July 6, 2022, or 14 days after Moog's Reply in Support of its Motion for Preliminary Injunction is filed, whichever is later, subject to the Court's availability." (R&R at 2 (quoting ECF 33, ¶ 6.)) The R&R reasons that "there would be no point to scheduling a hearing 'subject to the Court's availability' if the hearing was not to be held here." (*Id.*) Respectfully, that is wrong, for two reasons.

First, and most importantly, this provision, like every other provision in the stipulation, was subject to Skyryse's express reservation of its challenge to personal jurisdiction and venue. (ECF 33, ¶ 14.) If that fundamental challenge to personal jurisdiction and venue were to be resolved promptly and in Skyryse's favor, then this provisional schedule would be set aside if the action were dismissed, or to allow for a transferee court in California to resolve Moog's preliminary injunction motion. And, conversely, if the motion were denied, then subject to any appeal, the stipulation would serve to govern events leading up to the hearing.

Second, Moog received by stipulation the preliminary relief it requested, rendering the

scheduling provisions on which Magistrate Judge McCarthy relied obsolete. (ECF 25; *see also* ECF 214-6, May 5, 2022 Tr. 18:15-24 (Upon being asked by the Court "And just correct me if I'm wrong, but you do have injunctive relief in place already under the docket No. 25," counsel for Moog responded, "*We do*. So, I mean, and *I acknowledge that fully*.") (emphasis added).) The preliminary relief to which Defendants stipulated was comprehensive, and covered in its entirety the relief Moog had initially requested, including, for example, the broad requirement that:

> each Defendant shall refrain from using, accessing, disclosing, copying, or transmitting, for any purpose, any non-public information, documents, records, files, or data in that Defendant's possession, custody, or control (i) of, from, or belonging to Plaintiff, and (ii)(a) provided, offered, transmitted, or conveyed to any Defendant by any current or former Moog employee, and/or (ii)(b) copied or taken from Plaintiff's email, shared network drives, desktop computers, laptops, USB drives, databases, work-issued phones, and work issued tables (if any).

(ECF 25 ¶ 1.)

Although Moog has intimated for months that it might take steps to seek some different forms of preliminary injunctive relief, it has not filed anything amending its requested relief, nor has it explained what additional relief it plans to seek. (*See* ECF 224, Skyryse's Supplemental Brief, at 10; ECF 247-3, Skyryse's [Proposed] Supplemental Reply at 6-7.) Given the breadth of the relief to which Defendants have already stipulated, it is unclear what further relief Moog could seek, and its failure to request any additional relief to date speaks volumes. For the Magistrate Judge to find a waiver of Skyryse's fundamental due process rights based on a stipulation setting a now obsolete, provisional schedule for briefing and a hearing on a motion seeking injunctive relief to which the parties already stipulated, reads far too much into this language and deprives Skyryse of its right to be heard first on its motion to dismiss.

In sum, not only is the stipulated provisional schedule no longer in effect, but that stipulation (ECF 33) in no way binds Skyryse to submit to the Court's jurisdiction and venue for purposes of resolving the preliminary injunction motion in its present form or as Moog may somehow seek

to modify it.

**C.   Pre- and post-contract evidence supports Skyryse's interpretation of the stipulations.**

The R&R finds that the question of "which court should handle proceedings up to and including a decision on Moog's preliminary injunction motion" is "clearly answered by the parties' March 16, 2022 Stipulation and Proposed Order" (ECF 33), and that the stipulations are unambiguous, so no extrinsic evidence of the parties' intent should be considered. (R&R at 2, 3.) Skyryse agrees that the parties' stipulations are unambiguous, but only in that they plainly do *not* mandate that a preliminary injunction hearing must be held in this district, and expressly preserve Skyryse's challenges to jurisdiction and venue. "Defendants consent[ed] to the jurisdiction and venue of this Court for purposes of this stipulated Order only," i.e, for preserving evidence, starting discovery, and agreeing to a schedule for the period before the case might be dismissed or transferred, "*and for no other purpose*." (ECF 33, ¶ 14; ECF 25, ¶ 11 (emphasis added).) Defendants "explicitly preserved" "[a]ny and all other challenges to jurisdiction and venue." (ECF 33, ¶ 14.)

To the extent the Court finds the stipulations ambiguous, then it can consider pre- and post-contract extrinsic evidence of the parties' intent, both of which support Skyryse's interpretation of the stipulations. *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc*., 599 F.3d 102, 114 (2d Cir. 2010) (finding that "the court may accept any available extrinsic evidence to ascertain the meaning intended by the parties" when construing an ambiguous contract). When Moog claimed for the first time, only recently, that it interpreted the stipulations as reflecting Skyryse's *consent* to litigate in this district through the preliminary injunction hearing, Skyryse offered extrinsic evidence of the parties' contrary intent in a supplemental reply brief. (ECF 247-3.) The Magistrate declined to consider it (R&R at 4), but stated it would "obviously be part of the record" for purposes of any objections to the R&R. (Ex. 2, Aug. 25 Tr. 26:11-19.)

The parties' well-documented negotiations contradict the interpretation that the R&R adopts, and are persuasive evidence of the parties' intent. *Roberts v. Consol. Rail Corp.*, 893 F.2d 21, 24 (2d Cir. 1989) (finding intent determined by "acts and circumstances surrounding the execution of the ambiguous terms to ascertain the parties' intent"); *Adasar Grp., Inc. v. NetCom Sols. Int'l, Inc.*, No. 01 CIV. 0279 (WHP), 2003 WL 1107670, at *7 (S.D.N.Y. Mar. 13, 2003) (same). At all times, Skyryse made explicit its reservation of and refusal to waive its right to challenge jurisdiction or venue. (*See* ECF 247-5, Declaration of Jeri Rouse Looney ¶¶ 4-14.) In fact, Skyryse's counsel *rejected* language Moog proposed that would have waived and delayed any resolution of Skyryse's jurisdictional challenge "*until after the hearing* on Plaintiff's Motion for Preliminary Injunction takes place and after a final ruling is issued by the Court." (ECF 247-7, March 10, 2022 Draft of the March 11 Stipulation (ECF 25) circulated by counsel for Moog (showing, redlined in ¶ 11, the language that Moog proposed to explicitly delay resolution of Skyryse's jurisdiction and venue challenge until after the preliminary injunction hearing); ECF 247-8, Subsequent March 10, 2022 Draft circulated by counsel for Skyryse (striking Moog's proposed language in ¶ 11.).) In rejecting this, Skyryse explained that it would *not* agree to waive its personal jurisdiction and venue challenges through the preliminary injunction hearing. (*See* ECF 247-5, Declaration of Jeri Rouse Looney ¶¶ 9-11.)

Post-contract evidence also supports Skyryse's common-sense interpretation of the stipulations. Post-contract conduct of the parties can be reliable evidence of the meaning of a contract because "[t]he parties to an agreement know best what they meant, and their action under it is often the strongest evidence of their meaning." Restatement (Second) of Contracts § 202, comment g (1981); *see also IBJ Schroder Bank & Tr. Co. v. Resol. Tr. Corp.*, 26 F.3d 370, 374 (2d Cir. 1994)

("Generally speaking, the practical interpretation of a contract by the parties to it for any considerable period of time before it comes to be the subject of controversy is deemed of great, if not controlling, influence.") (quoting *Old Colony Trust Co. v. City of Omaha*, 230 U.S. 100, 118 (1913)). Two examples of the parties' post-contract conduct, in particular, are compelling evidence that the R&R's interpretation of the stipulations is at war with the parties' intent.

First, shortly after entering the two stipulations on March 11 and March 17, Skyryse filed on March 29 a timely motion to dismiss or transfer the *entire* action. Skyryse never qualified in its motion that it only requested dismissal or transfer *after* a preliminary injunction hearing, or even intimated that it had "consented to litigate Moog's preliminary injunction motion in this court" (R&R at 3)—because it never did. Rather, Skyryse was clear in its motion that Moog's case "does not belong in this Court" and argued, without qualification, that "the claims against Skyryse should be dismissed." (ECF 48 at 1-2, 11.) It is hard to envision a more overt and comprehensive challenge to a court's jurisdiction and venue than such an unqualified motion to dismiss or transfer, which Skyryse filed at the very first opportunity.

Second, Moog's positions before the Court contradict the R&R's finding that Skyryse "agreed" personal jurisdiction and venue were proper here through the preliminary injunction hearing. In opposing Skyryse's Motion to Dismiss or Transfer, Moog knew and expressly recognized that the Court might indeed transfer the action to California while Moog's preliminary injunction motion remained pending, contradicting its opportunistic argument now to the contrary. To persuade the Court not to transfer, Moog argued that "[t]ransferring to another court will almost certainly delay this hearing"—not that Skyryse had waived its jurisdictional and venue challenges and that the hearing must occur pre-transfer. (*See* ECF 133, Moog Memorandum of Law in Further Opposition, at 6.) Moog's prior concession that the transferee court would hear the preliminary

injunction motion cannot be squared with its contrary argument today, and is powerful evidence of the parties' true intent. *Buffalo Tungsten, Inc. v. CMW Int'l, Inc.*, No. 11-CV-00875(M), 2013 WL 5472665, at *3 (W.D.N.Y. Sept. 30, 2013) (finding that "a failure to assert a fact, when it would have been natural to assert it, amounts in effect to an assertion of the non-existence of the fact" and that "[t]here is no surer way to find out what parties meant, than to see what they have done," as "[p]arties in such cases often claim more, but rarely less, than they are entitled to.").

In short, both parties' conduct establishes their true intent: that Skyryse preserved its objections to jurisdiction and venue for all issues, and did not consent to the preliminary injunction motion being decided by this Court.

### D.    The R&R erroneously concludes that the stipulation exclusively allows this Court to maintain jurisdiction through the preliminary injunction hearing.

The R&R finds that "[h]aving consented to litigate Moog's preliminary injunction motion in this court, defendants cannot now be heard to argue that it should be determined by a different court." (R&R at 3.) The R&R offers no support or explanation for its finding that the parties consented *only* to a court in the Western District of New York hearing the preliminary injunction motion. The language on which the R&R relies – for example, paragraph 6 of ECF 33 proposing a briefing and hearing schedule in this Court – does not compel such a result. Even accepting, *arguendo*, that this language suggests that the parties contemplated that the preliminary injunction motion *could* be decided in this district (if, for example, the motion to dismiss were denied), the conclusion that the hearing *must* be held in this Court does not follow. Yet the R&R makes this leap, and finds that the parties *unambiguously* agreed that jurisdiction and venue are *exclusively* proper in the Western District of New York – a conclusion that cannot be reconciled with Skyryse's unqualified motion for immediate dismissal or transfer of the entire case (ECF 48) or with Moog's

later professed concern that dismissal or transfer of the case would delay the preliminary injunction motion being heard by the transferee court. (ECF 133 at 6.)

The Court should reject the R&R's finding that the stipulations *unambiguously* mandate that only a court in this district can hear Moog's preliminary injunction motion, and either (a) consider the extrinsic evidence Skyryse offered in support of its contrary interpretation of the stipulations (ECF 247-3), or (b) find that, in any event, a transfer to the Central District of California is warranted in the interests of justice and convenience.

The R&R's conclusion that the parties agreed that an injunction hearing must be held here is not based on any unambiguous contractual language. The Court thus can consider the extrinsic evidence Skyryse offered of the parties' contrary intent (ECF 247-3), which the Magistrate erroneously declined to consider. (R&R at 4.) This evidence—of Skyryse rejecting Moog's attempt to get Skyryse to consent to the Court's jurisdiction and venue until *after* the hearing on the preliminary injunction motion—plainly disproves Moog's argument, and the R&R's finding that Skyryse intended to waive its personal jurisdiction and venue challenge through the preliminary injunction hearing. *Supra* Section V.C.

Alternatively, even if the Court disagrees with Skyryse and finds that the parties agreed the motion *could* be heard here, it still may elect to transfer the case in the interests of justice and convenience. The Court may transfer an action, even if it finds that venue is proper in the court where the action was originally filed, "[f]or the convenience of parties and witnesses, in the interest of justice" "to any other district or division where it might have been brought."[4] 28 U.S.C. § 1404(a).

---

[4] The R&R cites *Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas*, 571 U.S. 49, 64 (2013) for the proposition that "[w]hatever inconvenience the parties would suffer by being forced to litigate in the contractual forum as they agreed to do was clearly foreseeable at the time of contracting." (R&R at 3.) That case has no applicability here. It involved a clear and unqualified forum-selection clause upon which the parties agreed

Such a finding would be warranted here, for all of the reasons discussed in Section IV, *supra*, including because the bulk of the relevant evidence is located in California, California is a far more convenient forum for the overwhelmingly California-based witnesses and parties, and allowing a California court to decide the entire case, including any amended preliminary injunction motion Moog files, would avoid inconsistent results across different forums.

## VI.    CONCLUSION

For the foregoing reasons, Skyryse respectfully requests that the Court sustain its objection to the R&R and promptly resolve Skyryse's motion to dismiss or transfer. Skyryse further requests that the Court decline to adopt the R&R's finding that Skyryse stipulated that jurisdiction and venue are proper in this district for purposes of resolving Moog's motion for a preliminary injunction.

Dated: September 12, 2022          */s/ Gabriel S. Gross*
                                                         **LATHAM & WATKINS LLP**

                                                         Douglas E. Lumish (Admitted *Pro Hac Vice*)
                                                         Gabriel S. Gross
                                                         Arman Zahoory (Admitted *Pro Hac Vice*)
                                                         Ryan Banks (Admitted *Pro Hac Vice*)
                                                         140 Scott Drive
                                                         Menlo Park, California 94025
                                                         Telephone: (650) 328-4600
                                                         Facsimile: (650) 463-2600
                                                         Email: doug.lumish@lw.com
                                                                 gabe.gross@lw.com
                                                                 arman.zahoory@lw.com
                                                                 ryan.banks@lw.com

                                                         Joseph H. Lee (Admitted *Pro Hac Vice*)
                                                         650 Town Center Drive, 20th Floor
                                                         Costa Mesa, California 92626
                                                         Telephone: (714) 540-1235

---

long before the dispute arose. By contrast, the parties' stipulation in this case "explicitly preserv[ed]" "[a]ny and all other challenges to jurisdiction and venue" and the parties never agreed in advance to litigating in this forum. (ECF 33, ¶ 14.)

Facsimile: (714) 755-8290
Email: joseph.lee@lw.com

Julianne C. Osborne (Admitted *Pro Hac Vice*)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
Email: julianne.osborne@lw.com

**HARRIS BEACH PLLC**
Terrance P. Flynn
726 Exchange Street, Suite 1000
Buffalo, New York 14210
Telephone: (716) 200-5050
Email: tflynn@harrisbeach.com

Counsel for Defendant Skyryse, Inc.

24