**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------------X
MOOG INC.,

                              Plaintiff,                    Case No.: 22-cv-187-LJV-JJM

              vs.

SKYRYSE, INC. ROBERT ALIN PILKINGTON, MISOOK
KIM, and DOES NOS. 1-50

                              Defendants.
------------------------------------------------------------------------------X

### ROBERT ALIN PILKINGTON AND MISOOK KIM'S OBJECTIONS TO THE AUGUST 29, 2022 REPORT, RECOMMENDATION AND ORDER, PURSUANT TO FED. R. CIV. P. 72 AND 28 U.S.C. § 636

**WINGET, SPADAFORA &**
**SCHWARTZBERG, LLP**
45 Broadway, 32nd Floor
New York, NY 10006
(p): (212) 221-6900
(f): (212) 221-6989

*Attorneys for Robert Alin Pilkington*
*and Misook Kim*

Of Counsel:    Anthony D. Green, Esq.
                  Alexander A. Truitt, Esq.
                  M. Annabel Mireles, Esq.

Dated:          September 9, 2022
                 New York, New York

# TABLE OF CONTENTS

<u>Page No.</u>

SUMMARY OF ARGUMENTS .................................................................1

    I.    The RRO's Partial Ruling on the Motion to Dismiss was Erroneously Based upon an Argument that is not in the Motion Papers and is Contrary to Fact and Law.....1

    II.    Denial of the Individual Defendants' Motion to Claw Back Materials Protected by the Fifth Amendment was Clearly Erroneous and Contrary to Law ......................3

RELEVANT BACKGROUND .................................................................5

    I.    Relevant Background concerning the Motion to Dismiss for Lack of Personal Jurisdiction or, In the Alternative, Transfer Venue ...................................5

    II.    Relevant Background pertaining to the Motions to Claw Back Access to the Individual Defendants' Devices ...........................................................7

        A.    Procedural History In This Action .............................................7

        B.    Plaintiff's Dilatory Conduct Impedes Discovery.........................8

        C.    Plaintiff Concealed the Fact It Initiated the USAO Investigation and Acts as an Undisclosed Agent for the U.S. Government .................................10

        D.    The Individual Defendants Properly Claw Back Their Electronic Devices ...........................................................................12

SPECIFIC OBJECTIONS TO THE RRO .................................................14

    I.    Objections as to the portion of the RRO concerning the Motions to Dismiss for Lack of Personal Jurisdiction or, In the Alternative, Transfer Venue ..................14

        A.    A De Novo Standard of Review Applies as to the RRO's Holdings as to the Motions to Dismiss or, In the Alternative, Transfer Venue ...............14

        B.    The Magistrate Judge Erroneously Reconstructed the Motion to Dismiss.................................................................15

        C.    The Magistrate Judge Erroneously Recommended Denial of the Motion to Dismiss Based upon Arguments that Plaintiff Did Not Raise in its Opposition .................................................................16

        D.    The Stipulations at Issue Included an Explicit Reservation of Defendants' Right to Challenge Jurisdiction and Venue ...............................18

i

II.      Objections to the RRO, as it relates to the Individual Defendants' Motion to Claw
         Back Materials Protected by the Fifth Amendment ..............................................20

         A.      Standard of Review as to the RRO's Denial of the Individual Defendants'
                 Motion to Claw Back Materials Protected by the Fifth Amendment .......20

         B.      The Court Erroneously Applied the Act of Production Doctrine, as It Is
                 Not a Foregone Conclusion that any of the Individual Defendants' Devices
                 Contain Plaintiff's As-of-yet Unidentified Trade Secrets ......................20

         C.      The Protective Order Preserved the Individual Defendants' Right to
                 Withhold and Claw Back Privileged Materials on the basis of a Fifth
                 Amendment Assertion ...........................................................................22

         D.      The RRO Erroneously Held that the Fifth Amendment Privilege was
                 Waived ................................................................................................23

CONCLUSION.................................................................................................................26

# TABLE OF AUTHORITIES

## CASES

*Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564 (1985) ....................................................19

*Bagley v. Yale University*, No. 3:13-CV-1890 CSH,
    2014 WL 7370021 (D. Conn. Dec. 29, 2014) ..................................................14

*Buffalo Laborers Welfare Fund v. Aria Contracting Corp.*, No. 13-CV-01113(A)(M),
    2015 WL 12806604 (W.D.N.Y. Aug. 28, 2015), *report and recommendation*
    *adopted*, No. 13-CV-1113-A, 2016 WL 7035060 (W.D.N.Y. Dec. 2, 2016) ..................18

*CleanSpark, Inc. v. Discover Growth Fund, LLC*, 485 F. Supp. 3d 494 (S.D.N.Y. 2020) ..........15

*Commodity Futures Trading Comm'n v. Parnon Energy Inc.*, No. 11 CIV. 3543 WHP,
    2014 WL 2116147 (S.D.N.Y. May 14, 2014) ..................................................23

*Doe v. Menefee*, 391 F.3d 147 (2d Cir. 2004) ................................................................19

*Donahue v. Glob. Home Loans & Fin., Inc.*, No. 05 CV 8362 KMK HBP,
    2007 WL 831816 (S.D.N.Y. Mar. 15, 2007) ....................................................13

*Emspak v. United States*, 349 U.S. 190 (1955) .........................................................4, 23

*Fuld v. Palestine Liberation Org.*, 578 F. Supp. 3d 577 (S.D.N.Y. 2022) ............................ 18-19

*In re Bank of New York Mellon Corp. Forex Transactions Litig.*, No. 12 MD 2335 LAK,
    2014 WL 4827945 (S.D.N.Y. Sept. 22, 2014) ............................................4, 23

*In re Bernard L. Madoff Inv. Sec. LLC*, 525 BR 871 (Bankr. S.D.N.Y. 2015) ...........................18

*In re DG Acquisition Corp.*, 151 F.3d 75 (2d Cir. 1998) .........................................4, 23

*In re Grand Jury Subpoena Dated February 2, 2012*, 741 F.3d 339 (2d Cir. 2013) ...................20

*Kastigar v. United States*, 406 U.S. 441 (1972) ........................................................19

*Knipe v. Skinner*, 999 F.2d 708 (2d Cir. 1993) ........................................................2, 16

*Krause v. Kelahan*, 575 F. Supp. 3d 302 (N.D.N.Y. 2021) .....................................2, 16

*LG Corp. v. Huang Xiaowen*, No. 16-CV-1162 JLS,
    2017 WL 2504949 (S.D. Cal. June 8, 2017) ....................................................18

*Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.*, No. 96 Civ. 7590,
    1997 WL 736726 (S.D.N.Y. Nov. 26, 1997) ....................................................24

*Smart Study Co. v. TC Toy City Store*, No. 1:21-CV-9602-MKV,
    2021 WL 5987737 (S.D.N.Y. Dec. 17, 2021) ...................................................15

*United States v. Armour & Co.*, 402 U.S. 673 (1971) ...............................................18

*United States v. Doe*, 465 U.S. 605 (1984) ............................................................3, 20

*United States v. Greenfield,* 831 F.3d 106 (2d Cir. 2016) .........................................20

*United States v. Hubbell*, 530 U.S. 27 (2000) ...............................................................3

*United States v. ITT Cont'l Baking Co.*, 420 U.S. 223 (1975) ...................................18

*United States v. O'Henry's Film Works, Inc.*, 598 F.2d 313 (2d Cir.1979) ............4, 23

*Zervos v. Verizon New York, Inc.*, 252 F.3d 163 (2d Cir. 2001) .................................13

## RULES AND STATUTES

28 U.S.C.§ 636(b)(1)(C) ..........................................................................................1, 13

Fed. R. Civ. P. 72 ....................................................................................................1, 13

Fed. R. Civ. P. 12(h)(1) ...............................................................................................17

Federal Rule of Evidence 502(d) .................................................................................22

Local Rule 72...............................................................................................................13

U.S. Constitution, Amendment V .......................................................................... passim

## SECONDARY AUTHORITY

Charles A. Wright, Arthur R. Miller and Richard L. Marcus,
    Federal Practice and Procedure § 2018 (2d ed. 1994) ....................................20

## SUMMARY OF ARGUMENTS

Pursuant to Fed. R. Civ. P. 72 and 28 U.S.C. § 636, Defendants Robert Alin Pilkington and Misook Kim (collectively, the "Individual Defendants"), through their undersigned counsel, respectfully submit the following objections to the Report, Recommendation and Order ("RRO") of Magistrate Judge Jeremiah J. McCarthy, dated August 29, 2022. (Dkt. No. 253).

**I.** **The RRO's Partial Ruling on the Motion to Dismiss was Erroneously Based upon an Argument that is not in the Motion Papers and is Contrary to Fact and Law**

The RRO erroneously refashioned the Individual Defendants' March 29, 2022 motion to dismiss for lack of personal jurisdiction or improper venue, or, in the alternative, change of venue to the Central District of California (the "Motion to Dismiss") into a motion to transfer venue of a preliminary injunction hearing. (Dkt. No. 253, pp. 1-4). To take any action, this Court must establish that it has personal jurisdiction over the Individual Defendants and that venue is proper. The Individual Defendants' Motion to Dismiss does not seek relief solely as to the preliminary injunction hearing ; the Motion to Dismiss seeks relief as to the entirety of this Action because, among other things, this Court does not have personal jurisdiction over the Individual Defendants. (Dkt. Nos. 47, 48).

Moreover, Magistrate Judge McCarthy erroneously reached his decision based upon <u>an argument that was not, raised in Plaintiff's Opposition to the Individual Defendants' Motion to Dismiss.</u>[1] For the first time, in a supplemental reply to Skyryse, Inc.'s ("Skyryse") separate motion

---

[1] Previously, Plaintiff had only argued that, by entering into those stipulations, Defendants had engaged in sufficient activity to waive jurisdictional challenges, ignoring the fact that the stipulations expressly reserved Defendants' rights to challenge both personal jurisdiction and propriety of venue. (Dkt. No. 63, p. 16). Plaintiff did not argue that the stipulations contained any limited consent to personal jurisdiction through the preliminary injunction hearing. Indeed, Plaintiff's argument is irreconcilable with arguments made in its opposition to the Individual Defendants' Motion to Dismiss. Fully recognizing that the Court might transfer this action to California while Plaintiff's preliminary injunction motion was still pending, Plaintiff argued

1

to dismiss for lack of personal jurisdiction (the "Skyryse Motion to Dismiss"), Plaintiff argued that the Defendants expressly consented to this Court's jurisdiction through the preliminary injunction hearing based on two stipulations, even though no such language exists in the stipulations and each stipulation expressly recognized that the Defendants reserved the right to challenge personal jurisdiction. The Individual Defendants were not afforded the opportunity to brief a response to Plaintiff's improperly submitted argument.

The fact that Plaintiff's argument was only first raised through Plaintiff's supplemental reply to Skyryse's supplemental reply in support of the Skyryse Motion to Dismiss is another reason not to adopt the Magistrate Judge's recommendation.  It is inarguably improper to raise arguments for the first time in a reply – let alone for the Individual Defendants' motion to be opposed by an argument that was only raised in a "supplemental reply" to a different defendant's motion.[2] *See Krause v. Kelahan*, 575 F. Supp. 3d 302, 307 (N.D.N.Y. 2021) ("[T]hat parties may not introduce arguments for the first time in reply is beyond well-established."); *see also Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993).

Additionally, Defendants' consent to jurisdiction "for purposes of this stipulated Order only and for no other purpose" [Dkt. Nos. 25, at ¶ 11; 33, at ¶ 14] means only that the Court had jurisdiction to Order the stipulation and make Orders in accordance with the Stipulation, until the Motions to Dismiss were determined. For the reasons set forth herein, as well as those contained

_____

(wrongly) that doing so would cause undue delay. (Dkt. No. 63, p. 22 ["Transferring this case to the Central District of California would also impede and interfere with Moog's ability to obtain injunctive relief. Given the gravity of the conduct at issue, any delay is irreparably harmful."]).

[2] Plaintiff's argument in its supplemental reply also did not respond to any specific argument raised by Skyryse's supplemental reply briefing, which merely concerned recent developments in the case that further demonstrated that dismissal for lack of personal jurisdiction or transfer of venue was proper. Thus, Plaintiff's argument was not even properly raised in reply to Skyryse's separate motion.

in the Individual Defendant's moving papers (*see* Dkt. Nos. 47; 77), the Individual Defendants respectfully request that this Court decline to adopt the RRO as it relates to their Motion to Dismiss.

## II.   Denial of the Individual Defendants' Motion to Claw Back Materials Protected by the Fifth Amendment was Clearly Erroneous and Contrary to Law

The RRO also improperly compels a waiver of the Individual Defendants' Fifth Amendment rights through its denial of their Clawback Motion. (Dkt. No. 253, pp. 4-11). The Individual Defendants have a valid Fifth Amendment objection to producing the contents of their electronic devices.   This objection relates to the allegations that the Individual Defendants misappropriated Plaintiff's trade secrets that lies at the heart of both this Action and the ongoing criminal investigation by the U.S. Attorneys' Office for the Central District of California (the "USAO").

Under the "act of production" doctrine, the Individual Defendants may assert this Fifth Amendment privilege over the content of their electronic devices as "the act of production may implicitly communicate 'statements of facts' by compelling the person 'to admit that the papers existed, were in his possession or control, and were authentic.'" *See United States v. Hubbell*, 530 U.S. 27 (2000) (*citing United States v. Doe*, 465 U.S. 605, 613 n. 11 (1984)). Here, if Plaintiffs were permitted access to the Individual Defendants' devices, that act of production could communicate whether Plaintiff's trade secrets exist on them, are in the Individual Defendants' possession or control, and are authentic. Thus, it would be a testimonial act and subject to Fifth Amendment protection.

The RRO erroneously holds that the 'act of production' doctrine does not apply because it is a foregone conclusion that the Individual Defendants' devices within the custody of a third-party neutral are, in fact, their devices. However, the Individual Defendants are not being sued or prosecuted for owning their electronic devices; they are being sued and prosecuted for purportedly

misappropriating Plaintiff's trade secrets.  Plaintiff alleges that evidence of such alleged acts may exist on the Individual Defendant's electronic devices.  However, it is not a foregone conclusion that any of the devices at issue contain a single trade secret.  Plaintiff has never identified what trade secrets are purportedly at issue. Likewise, the Individual Defendants have never admitted they possessed any of Plaintiff's as-of-yet unidentified trade secrets.  By operation of logic, it cannot be a foregone conclusion that Plaintiff's trade secrets exist on the Individual Defendants' devices if Plaintiff cannot even identify the trade secrets at issue.

The RRO also incorrectly held that the Individual Defendants waived Fifth Amendment protection simply by placing their devices in escrow with the third-party neutral. However, the Protective Order provides that a party retains the right to withhold access to "Privileged Materials," which are defined as "Discovery Material protected from disclosure under…any other applicable United States or foreign statute, law, regulation, privilege, or immunity from disclosure." (Dkt. No. 89, p. 4; Dkt. No 96, p. 4).

The Individual Defendants also did not waive their Fifth Amendment rights by permitting Plaintiff to access their devices. It is well-established that any waiver of a Fifth Amendment privilege must be made "voluntarily, knowingly and intelligently" and that any "waiver of constitutional rights … is not lightly to be inferred." *Emspak v. United States*, 349 U.S. 190, 196 (1955). This Court is required to "indulge every reasonable presumption against waiver." *United States v. O'Henry's Film Works, Inc.*, 598 F.2d 313, 318-19 (2d Cir. 1979).

Here, since the disclosure of any Fifth Amendment material was inadvertent, it does not constitute a valid "knowing and voluntary" waiver. *See In re Bank of New York Mellon Corp. Forex Transactions Litig.*, No. 12 MD 2335 LAK, 2014 WL 4827945, at *1 (S.D.N.Y. Sept. 22,

2014).[3] Plaintiff's argument that a waiver occurred is essentially that the Individual Defendants took too long to assert their Fifth Amendment rights. However, it is well-settled that delay in asserting a privilege alone is insufficient to find that a constitutional right has been waived. *See In re DG Acquisition Corp.*, 151 F.3d 75, 83 (2d Cir. 1998) (finding a six-month delay in asserting Fifth Amendment privilege did not result in a waiver).

Furthermore, the Individual Defendants were not, at the time of the disclosures, aware either that there was going to be a criminal prosecution by the USAO or that, if there was to be one, they would be the subjects thereof.  Indeed, the Individual Defendants were intentionally kept in the dark concerning Plaintiff's status as an undisclosed agent of the U.S. government, through whom the Individual Defendants' Fourth and Fifth Amendment rights would be circumvented.

For the reasons set forth herein and in the Individual Defendants' motion papers (*see* Dkt. No 229), the RRO's findings concerning the Clawback Motion are clearly erroneous and contrary to law. Upon review, the Individual Defendants respectfully request that this Court grant the Individual Defendants' Clawback Motion.

## RELEVANT BACKGROUND

**I.     Relevant Background Concerning the Motion to Dismiss for Lack of Personal Jurisdiction or, In the Alternative, Transfer Venue**

On March 7, 2022, Plaintiff filed this suit in the Western District of New York, against Alin Pilkington and Misook Kim, two of Plaintiff's former employees (who not only are longstanding residents of the Central District of California, but whose entire affiliation with

---

[3] In determining whether production subject to a claw back was inadvertent, courts consider: "(1) the reasonableness of the precautions taken to prevent inadvertent disclosure, (2) the time taken to rectify the error, (3) the scope of the discovery and extent of the disclosure, and (4) overarching issues of fairness." *Id*.

Plaintiff was with its facilities in the Central District of California), as well as against Skyryse, a company headquartered in and operating out of the Central District of California. (Dkt. Nos. 47-2 [Kim Dec. ¶¶ 2-6]; 47-3 [Pilkington Dec. ¶¶ 2-5]). By Plaintiff's own allegations, each and every supposed wrongful act occurred in the Central District of California. (Dkt. No. 1). For the foregoing reasons, and as set forth fully in their submissions in support of the Motion to Dismiss, the Individual Defendants filed their Motion to Dismiss on March 29, 2022.  Skyryse moved to dismiss on similar, but not identical grounds, that same day. (Dkt. Nos. 47, 48, respectively).

On April 12, 2022, Plaintiff opposed the Individual Defendants' Motion to Dismiss. (Dkt. No. 63). Among other things, Plaintiff argued that, by merely entering into stipulations, Defendants engaged in sufficient activity to confer jurisdiction where none otherwise exists. (Dkt. No. 63, pp. 12-14). As Plaintiff's argument is completely defeated by the express language of Fed. R. Civ. P. 12(h), the Individual Defendants debunked Plaintiff's argument in its reply brief, which was filed on April 22, 2022. (Dkt. No. 77).

However, nowhere in opposition to the Individual Defendants' Motion to Dismiss did Plaintiff argue that the stipulations signed on March 11 and 16, 2022 [Dkt. Nos. 25, 33] constituted consent to this Court's jurisdiction for the purpose of any preliminary injunction proceedingIn fact, both stipulations expressly recognized that the Defendants would move to dismiss this Action for lack of personal jurisdiction and removed any doubt by expressly reserving the Defendants' right to do so. *Id.*

Plaintiff's argument, with the RRO adopted without affording the Individual Defendant's leave to submit a written response, only first appeared in its August 17, 2022 "supplemental reply" [Dkt. No. 239] as to Skyryse's supplemental reply [Dkt. No. 224] in support of Skyryse's own, separate Motion to Dismiss.  However, raising this argument in response to Skyryse's

supplemental reply is inappropriate in itself as Skyryse's supplemental reply only discussed events and facts that had come to light in the time since it filed its original motion challenging jurisdiction brief on April 22, 2022. (Dkt. No. 77).

Thus, Plaintiff's supplemental reply improperly raised arguments for the first time that could have been, but were not, raised in its initial opposition to the Individual Defendants' Motion to Dismiss. Consequently, Skyryse requested that, if these improperly-raised arguments were to be considered, Magistrate Judge McCarthy permit it an opportunity to respond, which would have included a submission of parol evidence concerning the parties' discussion and negation over the stipulations, which demonstrated that Plaintiff's new and improper argument misrepresented the parties' intent and understanding of the meaning of the stipulated language. (Dkt. No. 247).

Nevertheless, in the August 29, 2022 RRO, Magistrate Judge McCarthy recommended partially denying the Individual Defendants' Motion to Dismiss based upon arguments that Plaintiff never made in opposition thereto, to which the Individual Defendants were never provided an opportunity to respond through briefing, and, further, denied Skyryse's request to submit briefing that would have utterly refuted Plaintiff's new, improperly-raised arguments. (Dkt. No. 253, pp. 3-4).

## II.   Relevant Background to the Motions to Claw Back Access to the Individual Defendants' Devices

### A.   Procedural History In This Action

At the same time Plaintiff commenced this action, Plaintiff also moved for: (1) a temporary restraining order and a preliminary injunction against all Defendants; (2) an expedited hearing on the temporary restraining order and preliminary injunction; and (3) expedited discovery. (Dkt. Nos. 4; 5; 6).  The parties then entered into a stipulation requiring that certain electronic devices owned by the Individual Defendants be turned over to the custody of a third-party forensics firm (the

parties subsequently retained iDiscovery Solutions ["iDS"] to serve in this custodial role), for preservation pending resolution of the motions for preliminary injunction that was So-Ordered by the Court on March 11, 2022. (Dkt. No. 25). The March 11 Stipulation required the Defendants to deliver "any such non-public information, documents, records, files or data of Plaintiff…to a third-party forensics firm mutually agreed-upon by the parties for forensic imaging in lieu of providing such information directly to Plaintiff" within 21-days. *Id.* at 3. The Individual Defendants were not represented by counsel at the time of the March 11 Stipulation. *Id.* On March 17, 2022, the Court entered its Expedited Discovery Order. (Dkt. No. 33).

On May 6, 2022, the parties entered into a stipulated Protective Order and an Inspection Protocol (as well as addendum thereto), which was So-Ordered on May 13, 2022. (Dkt. Nos. 89; 96; 109).  Pursuant to the Inspection Protocol, the parties were permitted to identify which files on devices maintained by iDS would be made available for the other parties' review, as well as what files were to be withheld on claims of privilege. (Dkt. Nos. 74-1; 89; 96-2; 96-3; 99-2; 109).  On June 29, 2022, after the Individual Defendants completed a preliminary review of their devices for attorney-client privilege materials and private materials, iDS first provided Plaintiff with access to the inspection laptops to begin review of certain devices. (Dkt. Nos. 229-4; 229-5).  However, since Plaintiff refused to identify the trade secrets and classified information at issue, any review analyzing the Individual Defendants' Fifth Amendment rights has not been possible.

**B.     Plaintiff's Dilatory Conduct Impedes Discovery**

Expedited discovery cannot work in a trade secrets case where the plaintiff refuses to identify the alleged trade secrets at issue.  Here, Plaintiff asserts the pretextual and false argument that it cannot identify the trade secrets and classified information at issue until it conducts a forensic review of the Individual Defendants' twenty-three devices, as well as defendant Skyryse's

devices and source code. This argument lacks merit as review of the Skyryse's source code is irrelevant to identifying the alleged trade secrets the Individual Defendants are accused of misappropriating—that information is presently known by Plaintiff.

Indeed, during a May 5, 2022 conference, Plaintiff did not argue that it needed access to the Individual Defendants' devices to identify trade secrets, it argued that access to the Individual Defendants' devices was needed to establish use, misappropriation, and spoliation. (Dkt. No. 104, pp. 65:18-21; 66:14-20).  Likewise, Plaintiff's memorandum of law in support of its proposed Protective Order argued that inspection of the Defendants' devices was needed as "identify[ing] *misappropriation* of Moog's flight control software … require[s] analyzing how Skyryse's flight control software is architected and the extent and nature of that architecture's similarities to Moog's, including by visually comparing code side-by-side where necessary." (Dkt. No. 96-13, at p. 16) (emphasis added).

At no point in Plaintiff's earlier polemic did it state that identification of the trade secrets at issue was impossible without unfettered access to Defendants' devices.  It was only after Plaintiff refused to answer interrogatories seeking this information (without raising such objection), that Plaintiff's pretextual objection was first articulated.  Had Plaintiff been candid about this, along with the USAO's parallel criminal investigation, the parties would not have agreed to any schedule that released information to Plaintiff prior to its complete identification of the trade secrets and classified information at issue, with particularity. [4]

---

[4] The Expedited Discovery Order set an aggressive schedule for discovery that was made without complete understanding of the sophisticated technical and logistical hurdles that must be overcome at each phase of discovery.  Dkt. No. 33.  Nonetheless, the deadlines established by the Expedited Discovery Order presume that Plaintiff can and will identify the trade secrets and classified information with particularity because Plaintiff never stated otherwise.  The entire schedule for discovery is thrown off the rails by Plaintiff's dilatory and pretextual objections.

**C.      Plaintiff Concealed the Fact It Initiated the USAO Investigation and Acts as an Undisclosed Agent for the U.S. Government**

On July 28, 2022, Plaintiff produced its seventh document production with bates range MOOG0028324 - MOOG0028335. (Dkt. No. 229-8). A gap in the bates range from Plaintiff's previous document productions indicated that certain document productions were not received by the Individual Defendants. *See id.*  On July 29, 2022, Plaintiff provided the Individual Defendants with document productions one, three, and four, followed by document productions five and six on August 1, 2022. *See id.* Plaintiff's claimed that certain document productions were inadvertently made to Skyryse only. Regardless, Plaintiff's failure to timely produce documents to the Individual Defendants delayed presenting this dispute to the Court.

Plaintiff's third document production contains ongoing communications between Plaintiff and the Federal Bureau of Investigation ("FBI"). These communications establish that Plaintiff concealed the fact that it instigated the USAO Investigation prior to filing the Complaint. (Dkt. No. 229-9). The day after it filed the Complaint, Plaintiff notified the FBI that the Complaint was filed. *See id.*  Plaintiff continues to have biweekly "check-in" meetings with the FBI. *See id.* On April 14, 2022, the FBI contacted Plaintiff, asking for unredacted copies of the complaint and accompanying exhibits, as well as the unredacted motion for a temporary restraining order and accompanying declarations and exhibits.[5]  *See id.*  Following the April 26, 2022 status conference, Plaintiff continued to feed the government information by providing the FBI with a "high level summary of the relevant information our counsel has recently received from Defendants." *See id.*

---

[5] That Plaintiff provides the Government with documents and information it seeks to redact and/or file under seal calls into question the basis for Plaintiff's arguments that such information should be protected from public disclosure.

Later that afternoon, Plaintiff received an introductory email from the Assistant United States Attorney ("AUSA") and invited the AUSA to attend "our recurring call" with the FBI. *See id.*

In its continued efforts to aid in the USAO Investigation, Plaintiff provided the FBI with a list of search terms Plaintiff sent to Skyryse to identify potential non-public information. *See id.* On June 1, 2022, Plaintiff provided the FBI with a list of Plaintiff's alleged proprietary information and confirmed that the list of search terms previously provided was compiled by looking "at what Kim and Pilkington took to make this list. These were words that had a frequent occurrence in the code they took." *See id.* The most recent communication between Plaintiff and the FBI is a June 20, 2022 email requesting an updated calculation of Plaintiff's alleged damages. *See id.* Simply put, Plaintiff freely cooperates with the Government, advising it of information under seal or restricted through protective order, including the trade secrets and classified information at issue in this Action. At the same time, Plaintiff argues before this Court that providing any information concerning its trade secrets is impossible without complete access to all the Individual Defendants' devices. The two positions are inconsistent, to say the least.

Plaintiff's interactions with the FBI indicate an agency relationship. Plaintiff's communications with the FBI are the catalyst that initiated the USAO Investigation. Plaintiff initiated those communications to obtain Government intervention and gain unfair advantage in its commercial dispute with Skyryse. Plaintiff provides the FBI with regular updates to assist the USAO Investigation. If Plaintiff is permitted to access the Individual Defendants' devices, Plaintiff will be able to provide the Government with information it would not be able to obtain otherwise, due to the Individual Defendants' Fourth and Fifth Amendment rights. These indisputable facts form the basis of a symbiotic agency relationship between the Government and Plaintiff.

**D.      The Individual Defendants Properly Claw Back Their Electronic Devices**[6]

The Individual Defendants were served with grand jury subpoenas on June 15, 2022. Mr. Pilkington retained criminal defense counsel on June 16, 2022 and Ms. Kim retained criminal defense counsel on June 17, 2022. Thereafter, the USAO advised the Individual Defendants' criminal defense counsel that they are the subjects of the USAO's parallel criminal investigation, which concerns the same subject matter as this instant Action.

Once the Individual Defendants invoked their Fifth Amendment rights in response to the USAO grand jury subpoena, counsel in this Action began to analyze whether they must assert their Fifth Amendment rights in this Action. However, the Individual Defendants are only able to make a broad Fifth Amendment claim, in light of Plaintiff's failure to disclose the trade secrets and classified information at issue. Indeed, following Plaintiff's false and pretextual argument that it cannot identify its trade secrets without access to the Individual Defendants' devices to its logical conclusion, the Individual Defendants would have to completely waive their Fifth Amendment rights just to understand whether they must assert them.

During a July 26, 2022, meet and confer with all parties, the Individual Defendants advised Plaintiff they intended to file a pre-motion letter in anticipation the Individual Defendants' motion to stay.  (Dkt. No. 214). The Individual Defendants also informed Plaintiff they were considering whether they must claw back materials in iDS' custody, but had not made their final decision, and further sought the parties' consent for the requested stay. Then, during the July 27, 2022 Court conference, Plaintiff stated it believed the Individual Defendants waived their Fifth Amendment rights with respect to all discovery by placing their devices in the custody of "iDS, to the neutral

---

[6] Of their twenty-three electronic devices, five of the Individual Defendants' devices have never been made available for review by any party.

forensic vendor." (Dkt. No. 229-10, pp. 15:18-21; 23:24-25; 24:2-3; *see also* pp. 28:9-15; 31:20-23). After considering Plaintiff's statements, the Individual Defendants instructed iDS to temporarily suspend access to their devices on July 29, 2022, so that a review for Fifth Amendment privilege could be performed. (Dkt. No. 229-13).

On August 11, 2022, the Individual Defendants filed their Motion to Claw Back Access and Plaintiff filed their concurrent Motion to Compel Access. (Dkt. Nos. 229, 228). On August 25, 2022, the Court heard oral arguments on those Motions. Magistrate Judge McCarthy issued his RRO, granting Plaintiff's Motion to Compel Access and denying the Individual Defendants' Motion to Claw Back Access. (Dkt. No. 253, pp. 4-11).

In the RRO, Magistrate Judge McCarthy made findings that: (1) the Individual Defendants were not compelled to turn over their devices to the third-party neutral, iDS and thus, no Fifth Amendment privilege applies to their electronic devices [*see* Dkt. No. 253, at p. 7]; (2) the act of production doctrine did not apply to the Individual Defendants' electronic devices because it is a foregone conclusion that their devices are, in fact, their devices [*see Id.*, at p. 7-8]; and 3) any potential Fifth Amendment privilege "has been waived by their voluntary production of their devices" because the provisions of the Protective Order protecting and allowing clawback of Privileged Material do not apply to a Fifth Amendment privilege [*see Id.*, at p 9].

As set forth herein, the Individual Defendants respectfully submit that Magistrate Judge McCarthy's RRO in connection with their Clawback Motion was issued in error and would wrongly compel disclosure of Fifth Amendment-protected material. Accordingly, the Court should reverse the RRO insofar as it compelled the Individual Defendants to permit Plaintiff to access their electronic devices.

## SPECIFIC OBJECTIONS TO THE RRO

**I.**     **Objections as to the Portion of the RRO Concerning the Motions to Dismiss for Lack of Personal Jurisdiction or, In the Alternative, Transfer Venue**

**A.**     **A *De Novo* Standard of Review Applies as to the Motions to Dismiss or, In the Alternative, Transfer Venue**

A District Judge may refer a defendant's motion to dismiss to a Magistrate Judge for recommendation. 28 U.S.C.§ 636(b)(1); F.R.C.P. 72(b)(1). When a party makes specific objections to a Magistrate Judge's report and recommendation on such a motion, however, the District Judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Fed. R. Civ. P. 72(b)(2); 28 U.S.C.§ 636(b)(1)(C). S*ee also Donahue v. Glob. Home Loans & Fin., Inc.*, No. 05 CV 8362 KMK HBP, 2007 WL 831816, at *1 (S.D.N.Y. Mar. 15, 2007). A "specific" objection must "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection… supported by legal authority." L. R. 72(b).

*De novo* review is conducted "without deference" and as though the question has come to the Court for the first time. *See Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 168 (2d Cir. 2001). The District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. *See* 28 U.S.C. § 636(b)(1)(C).  The District Judge may also receive further evidence or recommit the matter to the Magistrate Judge with instructions. *Id*.

The Individual Defendants respectfully request that the Court decline to adopt the Magistrate Judge's recommendation in the RRO as it relates to the Motions to Dismiss and, instead, grant the Motion to Dismiss. In this vein, the Individual Defendants request an Order that the Motion to Dismiss should be determined solely upon arguments in the papers. Additionally, if

14

personal jurisdiction is lacking or this case is transferred to another venue, no portion of this case should remain within this District.

**B.      The Magistrate Judge Erroneously Reconstructed the Motion to Dismiss**

The Individual Defendants' Motion to Dismiss sought dismissal or transfer of the entire action, without exception for any individual proceedings therein. (Dkt. No. 47). Furthermore, in opposition to the Individual Defendants' Motion to Dismiss, Plaintiff did not raise any argument that this Court could permissibly retain jurisdiction over any portion of the proceedings even after the Motion to Dismiss was granted. (Dkt. No. 63).

Nevertheless, during the parties' August 25, 2022 oral argument and the evidence by the resulting RRO, the Magistrate Judge improperly limited the scope of the Motion to Dismiss. *See* Declaration of Anthony D. Green ("Green Decl."), Ex. A [August 25, 2022 Transcript, at 3:9-13]. The Individual Defendants made clear that their Rule 12 motion to dismiss did not "seek a carve out for the preliminary injunction hearing to be heard. It sought dismissal of the complaint because this Court does not have jurisdiction over the Individual Defendants." *Id.*, at 16:24-25; 17:2-3.

In doing so, Magistrate Judge McCarthy placed the cart far ahead of the horse. A decision on the Motions to Dismiss will directly impact the motion for a preliminary injunction hearing, as it may render the preliminary injunction hearing moot and "any prior hearing on that subject [would] stand revealed as a waste of time and resources." *See Bagley v. Yale University*, No. 3:13-CV-1890 CSH, 2014 WL 7370021, at *3 (D. Conn. Dec. 29, 2014). Due process requires that, before the Court issues injunctive relief against a defendant, the Court must have personal jurisdiction over that defendant. *Smart Study Co. v. TC Toy City Store*, No. 1:21-CV-9602-MKV, 2021 WL 5987737, at *1 (S.D.N.Y. Dec. 17, 2021); *see CleanSpark, Inc. v. Discover Growth Fund, LLC*, 485 F. Supp. 3d 494, 500 (S.D.N.Y. 2020) ("A district court is 'powerless to proceed' on a motion for preliminary injunction 'in the absence of personal jurisdiction.'").

Yet, Magistrate Judge McCarthy erroneously recommended "denial of that portion of defendants' motions suggesting that this court lacks personal jurisdiction and venue for consideration of Moog's preliminary injunction motion, and [of] that portion of the motions seeking transfer of venue to the Central District of California for determination of the preliminary injunction motion." (Dkt. No. 253, p. 3). Again, nowhere in the Individual Defendants' Motion to Dismiss did they argue for a piecemeal dismissal or transfer of venue. If this Court lacks personal jurisdiction, as the Individual Defendants respectfully submit it does, there must be a dismissal or transfer of this case in its entirety.

### C.   The Magistrate Judge Erroneously Recommended Denial of the Motion to Dismiss Based upon Arguments that Plaintiff Did Not Raise in its Opposition

On August 9, 2022, this Court referred the Dispositive motions to Magistrate Jerimiah A. McCarthy. (Dkt. No. 221). On August 10, 2022, the Court set "oral arguments on defendants' motions to dismiss or transfer venue [47, 48]" to be heard on August 25, 2022. (Dkt. No. 223). Within that same Order, the Court granted Skyryse's request for leave to file supplemental briefing in support of its separate, albeit related motion to dismiss on jurisdictional and venue grounds and set a deadline for Plaintiff to respond to that supplemental briefing. *Id*. However, Plaintiff never requested and the Court never granted permission to submit further briefing in opposition to the Individual Defendants' Motion to Dismiss. *Id*.  Nor did Plaintiff request leave to raise new arguments not presented through Plaintiff's earlier opposition to the Individual Defendants' Motion to Dismiss.

On August 10, 2022, Skyryse submitted supplemental reply briefing in support of its separate, albeit related motion--merely setting forth events transpiring since Skyryse's motion was initially briefed that provided further basis to dismiss the Action for lack of personal jurisdiction or transfer venue. (Dkt. No. 224). The very next day, Plaintiff submitted an improper email to the

Court raising, for the first time, the argument that "even if the Court grants Defendants' motions to dismiss, or alternatively, transfer venue, the Stipulated Orders on March 11 and March 17 provide that this Court is to maintain jurisdiction and venue for purposes of the March 11 Stipulated Order and Moog's Motion for Preliminary Injunction." *See* Green Decl., Ex. B (August 11 and 12, 2022 Emails to the Court). After this improper argument, the Court indicated that it was considering Plaintiff's newly raised argument. *Id.* ("[A]s I sit here today I am having difficulty seeing how the Stipulations [25, 33] could reasonably be interpreted to contemplate the preliminary injunction hearing taking place in a court other than the WDNY – irrespective of where the remainder of the case will proceed."). It is not proper for Plaintiff to test out their new arguments by emailing the Magistrate Judge for preliminary review of such arguments.

Seizing on an opportunity, Plaintiff improperly included its newly-raised argument that all Defendants consented to jurisdiction and venue for the purposes of the preliminary injunction hearing by signing the March 11 and March 25 Stipulated Orders. in its supplemental reply brief to Skyryse's Motion to Dismiss. (Dkt. No. 239, p. 5). Skyryse sought leave to respond to Plaintiff's newly-raised arguments, but was denied that opportunity. (Dkt. Nos. 247; 253, p. 4).

The RRO erroneously ignores the fact that Plaintiff's supplemental reply improperly raised new arguments for the first time, which could have been raised in its April 12, 2022 opposition to the Individual Defendants' Motion to Dismiss, but were not. *See Krause*, 575 F. Supp. 3d 302, 307 ("that parties may not introduce arguments for the first time in reply is beyond well-established."); *see also Knipe*, 999 F.2d 708, 711 ("Arguments may not be made for the first time in a reply brief."). Indeed, the newly-raised arguments did not even respond to any arguments raised within Skyryse's supplemental reply briefing. Skyryse attempted to raise this issue, but to no avail. *See* Green Decl., Ex. A, at 8:8-15. Likewise, Skyryse sought to introduce parol evidence, which the

Court should review if it considered any aspect of the stipulations vague or ambiguous, but was denied that opportunity.

Plaintiff cannot validly defeat the Individual Defendants' Motion to Dismiss based upon arguments that were never raised in opposition thereto, or based upon arguments that were raised for the first time in supplemental reply briefing to Skyryse's Motion to Dismiss, to which no Defendant has had an opportunity to respond.

**D.    The Stipulations at Issue Included an Explicit Reservation of Defendants' Right to Challenge Jurisdiction and Venue**

Moreover, the Individual Defendants never consented to jurisdiction and venue for the preliminary injunction hearing. In fact, the Defendants expressly reserved the rights to jurisdiction and venue through express language in the Stipulated Orders. (Dkt. Nos. 25, at ¶ 11 ["By agreeing to this stipulated Order, Defendants consent to the jurisdiction and venue of the Court for purposes of this stipulated Order only and for no other purpose."]; 33, at ¶ 14 [… Any and all other challenges to jurisdiction and venue in the Western District of New York are explicitly preserved]). In stipulating to adjourn hearing dates and engage in expedited discovery demanded by Moog, "[a]ny and all other challenges to jurisdiction and venue in the Western District of New York" were "explicitly preserved." (Dkt. No. 33 ¶ 14). Any argument for estoppel fails because of the express reservation of rights in the Stipulated Order. (Dkt. Nos. 25 and 33). *See also In re Bernard L. Madoff Inv. Sec. LLC*, 525 BR 871, 888 (Bankr. S.D.N.Y. 2015) (stipulations entered by that court that reserved rights to later challenge jurisdiction did not support argument the movant consented to jurisdiction).

Furthermore, Fed. R. Civ. P. 12(h)(1) holds that a waiver of a parties right to contest jurisdiction occurs only if a responsive pleading does not include an affirmative defense that jurisdiction and venue are improper. *See* Fed. R. Civ. P. 12(h)(1); *see also Fuld v. Palestine*

*Liberation Org.*, 578 F. Supp. 3d 577, 586 (S.D.N.Y. 2022) (discussing limited circumstances where waiver may be found).  Here, the first and, to date, only responsive pleading filed by the Individual Defendants was the jurisdictional motion to dismiss. (Dkt No. 47).

Defendants' consent to jurisdiction "for purposes of this stipulated Order only and for no other purpose" means only that the Court had jurisdiction to Order the stipulation and make Orders in accordance with the Stipulation, until the Motions to Dismiss were determined and until the case was transferred to the Central District of California. The RRO incorrectly reasons that agreeing to the deadlines in the Stipulated Order would be meaningless if the parties did not consent to jurisdiction of the Court for the preliminary injunction hearing. However, setting a schedule laying out the groundwork leading up to the hearing was not meaningless; it allowed the case to proceed while awaiting the determination from the Court on the threshold issue of jurisdiction.

The RRO also erroneously relies on inapposite cases involving consent decrees and settlement agreements to support its finding that the parties consented to jurisdiction and venue for the preliminary injunction hearing.[7] However, none of the cited cases support the RRO's holding, since the Defendants reserved their objections to jurisdiction and venue of the entire case.

Thus, the Court should not adopt the RRO's findings and Plaintiff's improperly-raised arguments should be barred from consideration.

---

[7] *See United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 244, 95 S. Ct. 926 (1975); *United States v. Armour & Co.*, 402 U.S. 673, 682, 91 S. Ct. 1752, 1757 (1971); *Buffalo Laborers Welfare Fund v. Aria Contracting Corp.*, No. 13-CV-01113(A)(M), 2015 WL 12806604, at *1 (W.D.N.Y. Aug. 28, 2015), *report and recommendation adopted*, No. 13-CV-1113-A, 2016 WL 7035060 (W.D.N.Y. Dec. 2, 2016).

19

II.   **Objections to the RRO, as it Relates to the Individual Defendants' Motion to Claw Back Materials Protected by the Fifth Amendment**

A.   **Standard of Review as to the RRO's Denial of the Individual Defendants' Motion to Claw Back Materials Protected by the Fifth Amendment**

With respect to a magistrate judge's decision on a non-dispositive matter, a district judge may reconsider any pretrial matter where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law. *See* 28 U.S.C. § 636(b)(1)(A). "Clear error review permits only limited reexamination factual findings where the district court's account of the evidence is plausible in light of the record viewed in its entirety." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573-74 (1985) (internal citations omitted). The reviewing court may also reverse, even if there is evidence to support the finding, when "on the entire evidence [the court] is left with the definite and firm conviction that a mistake has been committed." *Doe v. Menefee*, 391 F.3d 147, 164 (2d Cir. 2004) (internal citations omitted).

B.   **The Court Erroneously Applied the Act of Production Doctrine, as It Is Not a Foregone Conclusion that any of the Individual Defendants' Devices Contain Plaintiff's As-of-yet Unidentified Trade Secrets**

The Fifth Amendment protects a person from being "compelled in any criminal case to be a witness against himself." *See* U.S. Const., Amend. V.  The Fifth Amendment "can be asserted in any proceeding, civil or criminal ... against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." *Kastigar v. United States*, 406 U.S. 441, 444-45 (1972).

It is well established that the production of documents and materials, including data on the Individual Defendants' devices, may be subject to a Fifth Amendment claim as "[t]he act of production may implicitly communicate 'statements of facts' by compelling the person 'to admit that the papers existed, were in his possession or control, and were authentic.'" *United States v.*

*Doe*, 465 U.S. 605, 613 n. 11 (1984); *see also* Charles A. Wright, Arthur R. Miller and Richard L. Marcus, Federal Practice and Procedure § 2018, at 273 (2d ed. 1994). Where, as here, the incriminating aspect of the production is its existence, the privilege applies. *In re Grand Jury Subpoena Dated February 2, 2012*, 741 F.3d 339, 343 (2d Cir. 2013) (citing *Fisher v. United States*, 425 U.S. 391 (1976).

However, an exception to the act of production doctrine is the foregone conclusion doctrine. For the foregone conclusion doctrine to apply, Plaintiff must "demonstrate with reasonable particularity that it knows of the existence and location of subpoenaed documents." *In re Grand Jury*, 1 F.3d 87, 93. To meet the reasonable particularity standard, Plaintiff "must know, and not merely infer, that the sought documents exist, that they are under the control of defendant, and that they are authentic." *United States v. Greenfield,* 831 F.3d 106, 116-17 (2d Cir. 2016).

The RRO erroneously found that the "act of production" doctrine does not apply to protect production of the contents of the Individual Defendants' devices because it is a foregone conclusion that the devices belong to the Individual Defendants." (Dkt. No. 253, pp. 7-9). This is an incorrect application of the act of production doctrine. The issue in this case is not whether the Individual Defendants possess devices, but whether they possess Plaintiff's trade secrets.  It cannot be a foregone conclusion the Individual Defendants possess Plaintiff's alleged trade secrets if the Plaintiff is incapable of even identifying such alleged trade secrets.

 The Individual Defendants have never admitted that any trade secrets exist on any of the twenty-three personal devices at issue. By providing their personal devices to iDS, the only thing the Individual Defendants have admitted is that these devices fall under the provisions of the Expedited Discovery Order, which required that the Individual Defendants provide to iDS any personal devices used within the period of March 2021 to March 2022. (Dkt. No. 25, ¶¶ 4, 6). Even

Plaintiff agreed that the foregone conclusion doctrine applies to the information that may be contained on the devices, not, as the RRO found, that the devices provided to iDS belong to the Individual Defendants. *See* Green Decl., Ex. A, at 31:16-18; 50:2-4.

Plaintiff's repeated arguments that they require access to the Individual Defendants' devices to identify Plaintiff's trade secrets at issue further substantiates that there is no foregone conclusion as to what, if any, trade secrets exist on any of the Individual Defendants' devices. (Dkt. No. 210, p. 2 ["Moog cannot make a fulsome and complete trade secret identification without full access to these five devices."]). Since there is no foregone conclusion as to whether or not any of the Individual Defendants' twenty-three personal devices contain Plaintiff's trade secrets, compelling the Individual Defendants to provide access to their personal devices through iDS could constitute an admission that trade secrets exist within their possession, custody, and control, thereby triggering application of the 'act of production' doctrine.

Accordingly, the Court should find that the Fifth Amendment privilege does apply to the Individual Defendants' devices and grant the Individual Defendants' Clawback Motion.

**C.      The Protective Order Preserved the Individual Defendants' Right to Withhold and Claw Back Privileged Materials on the basis of a Fifth Amendment Assertion**

The Magistrate Judge erroneously found that the Individual Defendants' placement of their electronic devices in iDS's custody effectively waived any Fifth Amendment privilege. (Dkt. No. 253, pp. 4-7). The Individual Defendants merely complied with the stipulated Order that required they turn over <u>any</u> personal electronic device used within the "past twelve months" to a third-party neutral, regardless of what its contents might be. (Dkt. No. 25 ¶¶ 4, 6).

The Protective Order explicitly provides that a party may withhold Privileged Material from production, regardless of whether a device is placed in iDS's custody. (Dkt. No. 96, p. 4 ["before forensic images are made available to Authorized Reviewers…to inspect, the Producing

Party shall have an opportunity [to] review the forensic images for privileged information and, as to personal devices only, personally private information… and work with iDS to excise such information from the forensic images"]). "Privileged Material" is also defined to include Fifth Amendment-protected material, not merely those protected by the attorney-client privilege.[8]

Additionally, the Protective Order explicitly states that "if a party *at any time* notifies any other Party that it, *for any reason*, disclosed documents, testimony, information, and/or things that are protected as Privileged Material… the disclosure alone, pursuant to Rule 502(d), shall not be deemed a waiver…of *any applicable privilege or protection*." (Dkt. No. 89, § 16.5) (emphasis added). Consequently, Magistrate Judge McCarthy's ruling that the Individual Defendants waived their Fifth Amendment privilege merely by providing the electronic devices to the third-party neutral was clearly erroneous.

### D.    The RRO Erroneously Held that the Fifth Amendment Privilege was Waived

Magistrate Judge McCarthy's finding that the Individual Defendants waived their Fifth Amendment privilege by making any of their devices available for review was also clearly erroneous. (Dkt. No. 253, pp. 9-10). As noted, the Individual Defendants only permitted access while having the guarantee under the Protective Order that they could claw back materials that were subsequently determined to be privileged, and they have complied with the procedure for doing so. (Dkt. No. 89, §§ 16.1-16.5).

---

[8] The Protective Order broadly defines Privileged Material as "Discovery Material protected from disclosure under the attorney-client privilege, attorney work product doctrine, United States or foreign bank disclosure laws or regulations, and/or any other applicable *United States or foreign statute, law, regulation, privilege, or immunity from disclosure." See* Dkt. No 89, p. 4 (emphasis added). If the Protective Order was not intended to protect any privilege other than attorney-client privilege or work product, then it would not have defined Privileged Material as such.

Furthermore, Plaintiff has never identified Plaintiff has never identified what part of any of the Individual Defendants devices have been accessed to date. Plaintiff cannot claim that privilege has been waived as to any materials that it has not even viewed yet.

Moreover, it is well-established that any waiver of a Fifth Amendment privilege must be made "voluntarily, knowingly and intelligently" and that any "waiver of constitutional rights … is not lightly to be inferred." *Emspak v. United States*, 349 U.S. 190, 196 (1955). This Court is required to "indulge every reasonable presumption against waiver." *United States v. O'Henry's Film Works, Inc.*, 598 F.2d 313, 318-19 (2d Cir. 1979).

Here, there is no question the Individual Defendants' production was inadvertent and cannot constitute a knowing and voluntary waiver. In determining whether production subject to a clawback was inadvertent, courts consider: "(1) the reasonableness of the precautions taken to prevent inadvertent disclosure, (2) the time taken to rectify the error, (3) the scope of the discovery and extent of the disclosure, and (4) overarching issues of fairness. *See In re Bank of New York Mellon Corp. Forex Transactions Litig.*, 2014 WL 4827945, at *1. It is well-established that discovery orders protecting inadvertent disclosure, such as the Protective Order is this Action, form a reasonable precaution. *Id.*; *Commodity Futures Trading Comm'n v. Parnon Energy Inc.*, No. 11 CIV. 3543 WHP, 2014 WL 2116147, at *4 (S.D.N.Y. May 14, 2014).

The Court's adoption of Plaintiff's argument that the Individual Defendants' production was not inadvertent because of delay in halting access for "weeks (if not months) after learning of the FBI's investigation" ignores controlling law from the Second Circuit. (Dkt. No. 228-1, pp. 10-11) (internal citation omitted). It is well-settled that even a six-month delay in asserting a privilege is insufficient to find that a constitutional right has been waived. *See In re DG Acquisition Corp.*, 151 F.3d 75, 83. Additionally, the RRO's adoption of Plaintiff's arguments ignores the fact that

Plaintiff induced the Individual Defendants into the So-Ordered Stipulation before the Individual Defendants even retained counsel, while concealing that Plaintiff is deeply involved with the USAO Investigation and acts in an agency capacity for the very purpose of circumventing the Individual Defendants' Fifth Amendment rights.[9] (Dkt. Nos. 25, p. 7, fn. 1; 229-15). Once the Individual Defendants were advised that they were the subject of a criminal investigation, they asserted their Fifth Amendment rights in response to the grand jury subpoenas. Soon thereafter, the Individual Defendants advised Plaintiff they would seek a stay and would claw back their devices. As such, they acted promptly in rectifying their error.

Furthermore, the overarching issues of fairness weigh heavily in favor of the Individual Defendants, since they would not have agreed to the So-Ordered Stipulation had Plaintiff disclosed its involvement with the USAO Investigation.  Given the protections afforded to *pro se* defendants, counsel does not believe the Court would have signed the So-Ordered Stipulation without first advising them of their Fifth Amendment rights or affording them time to retain counsel.[10]

Likewise, there is no prejudice to Plaintiff because Plaintiff does not have a right to privileged materials. *See Prescient Partners L.P. v. Fieldcrest Cannon, Inc.*, 96 Civ. 7590, 1997 WL 736726 at \*7 (S.D.N.Y. Nov.26, 1997) (prejudice factor does not consider whether removing access would deprive plaintiff of pertinent information).  Based on the foregoing, the Individual Defendants respectfully submit that there was no waiver of their Fifth Amendment privilege.

---

[9] While Plaintiff has explained that its earlier failure to provide certain document productions to the Individual Defendants was inadvertent; it is Plaintiff who must bear the consequence for any delay arising from this mistake.  Even applying the date Plaintiff's document production to Skyryse, it is irrefutable that Plaintiff did not intend to disclose its involvement with the USAO Investigation until after it secured access to the Individual Defendants' devices.

[10] To the extent necessary, the So-Ordered Stipulation and Protective Order both may be modified by the Court upon good cause shown.  *See* Dkt. Nos. 25, 89.  The Individual Defendants respectfully submit that Plaintiff's wrongful conduct in this action is sufficient good cause.

## CONCLUSION

For the foregoing reasons, as well as the reasons contained in the Individual Defendants'

moving papers (Dkt. Nos. 47, 77, 228, and 250), the Individual Defendants respectfully request

this Court decline to adopt the Magistrate Judge's recommendations as to the Individual

Defendants' Motion to Dismiss; grant the Individual Defendants' motion to claw back access to

their devices; and deny Plaintiff's motion to restore access to those devices, together with such

other and further relief as the Court may deem necessary and proper.

Dated: New York, New York                     **WINGET, SPADAFORA &**
      September 12, 2022                   **SCHWARTZBERG, LLP**

By:   */s/ Anthony D. Green*
      Anthony D. Green, Esq.
      Alexander A. Truitt, Esq.
      M. Annabel Mireles, Esq.
      45 Broadway – 32nd Floor
      New York, NY 10006
      P: (212) 221-6900
      F: (212) 221-6989
      Green.A@wssllp.com
      Truitt.A@wssllp.com
      Mireles.A@wssllp.com

      *Attorneys for Defendants Robert Alin*
      *Pilkington and Misook Kim*