EXHIBIT A

13:29:38

1                    UNITED STATES DISTRICT COURT

2                   WESTERN DISTRICT OF NEW YORK

3
    - - - - - - - - - - - - - - X
4   MOOG INC.,                    )        22-CV-187
                     Plaintiff    )
5   vs.
                                       Buffalo, New York
6   SKYRYSE, INC., et al        )     August 4, 2022
                     Defendant.
7   - - - - - - - - - - - - - - X
    **DISCOVERY HEARING**
8   **Proceeding held via Zoom for Government Platform**
    **All parties appeared remotely.**
9   **Transcribed from audio of Zoom for Government Platform**

10                    TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE JEREMIAH J. MCCARTHY
11                UNITED STATES MAGISTRATE JUDGE

12
    FOR PLAINTIFF: SHEPPHARD MULLIN RICHETER & HAMPTON, LLP
13                    BY: RENA ANDOH, ESQ.
                        LAI YIP, ESQ.
14                      KAZIM A. NAQVI, ESQ.
                        TRAVIS ANDERSON, ESQ.
15                         -and-
                    HODGSON RUSS, LLP
16                    BY: ROBERT J. FLUSKEY, JR, ESQ.
                        PAULINE MUTO, ESQ.
17
    FOR DEFENDANT:   LATHAM & WATKINS, LLP
18                    BY: DOUGLAS E. LUMISH, ESQ.
                        GABRIEL S. GROSS, ESQ.
19                      KELLEY STOREY, ESQ.
                        CASSANDRA M. BALOGA, ESQ.
20                      JULIANNE CATHERINE OSBORNE, ESQ.
                        RYAN T. BANKS, ESQ.
21                      JOSEPH LEE, ESQ.
                        ARMAN ZAHOORY, ESQ.
22
    FOR DEFENDANT
23  PILKINGTON/KIM: WINGET, SPADAFORA & SCHWARTZBERG, LLP
                        BY: ALEXANDER ASHER TRUITT, ESQ.
24                        ANTHONY D. GREEN, ESQ.
                        ANNABEL MIRALES, ESQ.
25  **COURT REPORTER: Karen J. Clark, Official Court Reporter**
                    **Karenclark1013@AOL.com**

```
 1              MOOG, INC. VS. SKYRYSE, INC. ET AL.
 2                   P R O C E E D I N G
                  *            *            *
 3

 4
12:32:19
12:32:19  5

12:33:14  6              MAGISTRATE JUDGE MCCARTHY:  Good afternoon,
12:57:08  7   everyone, or good morning and good afternoon, I should
12:57:13  8   say.
12:57:15  9              MR. GROSS:  Good morning.
12:57:15 10              MS. ANDOH:  Good afternoon, your Honor.
12:57:20 11              MR. TRUITT:  Good afternoon.
12:57:20 12              MAGISTRATE JUDGE MCCARTHY:  Okay.  Eric,
12:57:22 13   have we noted the appearances or go ahead and call the
12:57:25 14   case.
12:57:25 15              THE CLERK:  I will, Judge.  We're on the
12:57:27 16   record in civil proceeding 22-CV-187, Moog Inc v Skyryse
12:57:35 17   Inc., et al for oral argument.  Present by video are
12:57:41 18   Rena Andoh, Kazim Naqvi, Lai Yip, Travis Anderson,
12:57:49 19   Pauline Muto, Tyler Baker, Robert Fluskey, Melissa
12:57:54 20   subject and Reena Dutta, are for Plaintiff Moog.
12:57:58 21              For Defendant Skyryse are Douglas Lumish,
12:58:35 22   Gabriel Gross, Ryan Banks, Arman Zahoory, Julianne
12:58:39 23   Osborne, Jerri Looney, Terrance Flynn, Cassandra Baloga
12:58:46 24   and Kelly Storey.
12:58:47 25              And for the individual Defendants are
```

1              MOOG, INC. VS. SKYRYSE, INC. ET AL.

12:58:49   2   Alexander Truitt, Anthony Green and Annabel Mirales.

12:58:56   3              The Honorable Jeremiah J. McCarthy

12:58:57   4   presiding.

12:58:58   5              MAGISTRATE JUDGE MCCARTHY:  Okay.  Welcome

12:59:00   6   again.  And, as you know, we're going to discuss several

12:59:05   7   motions today, not all of the motions that are pending,

12:59:09   8   but the ones that I had indicated.  And what I want to

12:59:13   9   do is segment the discussion.  I want to begin with the

12:59:19  10   discussion of jurisdiction and venue, but solely for

12:59:26  11   purposes of the preliminary injunction motion, not for

12:59:31  12   purposes of the remainder of the case, because that

12:59:35  13   issue does not need to be decided right now.  Next,

12:59:40  14   after that, I want to discuss the motions relative to

12:59:48  15   Pilkington and Kim's effort to claw back their devices

12:59:54  16   and Moog's motion for access to the devices.  Following

13:00:00  17   that, we will discuss Moog's motion for clarification.

13:00:05  18   So, I assure you, I don't have total recall of

13:00:10  19   everything.  But, I have spent a good deal of time

13:00:14  20   trying to get ready for today's argument.  I have

13:00:17  21   reviewed the relevant papers in considerable detail and

13:00:23  22   I will do so again, but so as you argue, there is no

13:00:28  23   need to reinvent the wheel.  If there is something I'm

13:00:32  24   not clear on, I will ask you.  So, just hit the high

13:00:36  25   points, if you will.

|     |                                                                    |
| --- | ------------------------------------------------------------------ |
| 1   | MOOG, INC. VS. SKYRYSE, INC. ET AL.                                |

2    By the way, I thank counsel for yesterday's

3  e-mails responding to the question, the three questions

4  that I had posed last week.  I have your responses and I

5  appreciate that.  So, with the motions for dismissal or

6  transfer of venue, again, solely relative to where the

7  preliminary injunction motion is going to take place, I

8  will hear from whoever wants to be heard.

9    MR. GROSS:  Thank you, your Honor.  This is

10  Gabe Gross on behalf of Skyryse.  Skyryse, of course, is

11  one of the Defendants who moved to dismiss for lack of

12  personal jurisdiction, lack of venue, and also in the

13  alternative to transfer the venue.  I'll work to limit

14  my comments to I think what your Honor is most

15  interested in, which is whether these motions -- how

16  these motions affect the personal jurisdiction

17  proceedings.  And the answer I think is that it is

18  entirely in the Court's discretion.  Because the

19  Defendants' challenges to jurisdiction and venue were

20  preserved.  They were not waived.  They were not

21  forfeited.  And that is the case ever since the first

22  stipulation the parties entered into in this case.  This

23  has been, I think, the subject of the most recent debate

24  dispute between the parties, but it's helpful to go back

25  to April when this motion was filed, actually earlier,

```
           1              MOOG, INC. VS. SKYRYSE, INC. ET AL.
13:02:15   2    March even, three weeks after the complaint was served,
13:02:20   3    Skyryse moved to dismiss the case on the pleadings for
13:02:23   4    lack of jurisdiction.  And it did that at the very first
13:02:27   5    opportunity.  And in the first few days of this lawsuit,
13:02:31   6    as your Honor is well familiar with, Skyryse and the
13:02:35   7    other Defendants, stipulated to some procedures to move
13:02:38   8    this case along subject to their challenges to the
13:02:41   9    Court's jurisdiction and to venue.
13:02:45   10             MAGISTRATE JUDGE MCCARTHY:  You see me
13:02:48   11   looking away, I am paying attention, I'm just trying to
13:02:51   12   pull up some documents that I have on my desk, so go
13:02:55   13   ahead.
13:02:55   14             MR. GROSS:  Okay.  Thank you, your Honor.
13:02:57   15   The stipulations that are at issue are on the Court's
13:03:00   16   docket at ECF 25 and 33.  I know the Court is familiar
13:03:05   17   with them by now.  But they did a number of things.
13:03:09   18   They addressed the urgency that Moog claimed it needed
13:03:13   19   relief and stipulated to some processes to move this
13:03:16   20   case forward while the Defendants preserved their right
13:03:19   21   to challenge jurisdiction and venue.  And the parties
13:03:23   22   collectively said so in the first stipulation ECF 25.
13:03:31   23   The parties were very clear that the Defendants had
13:03:33   24   consented to jurisdiction and venue only for the
13:03:36   25   purposes of that stipulation.  They said that, again, in
```

1           MOOG, INC. VS. SKYRYSE, INC. ET AL.

13:03:39   2    ECF 33, and said that they specifically were reserving

13:03:45   3    the right to challenge jurisdiction and venue.  And it

13:03:50   4    was only a couple weeks after that that the motion came

13:03:53   5    in, Skyryse filed its motion, so did the individual

13:03:57   6    Defendants to dismiss the case on these jurisdictional

13:04:00   7    and venue grounds.  And then in opposing that motion

13:04:04   8    back in April, Moog itself recognized in its opposition

13:04:08   9    that the Defendants had preserved these rights.  It

13:04:12   10   argued that the preservation was unequivocal or

13:04:37   11   insufficient, but they acknowledged that the

13:04:40   12   preservation was there.  And their argument to this

13:04:43   13   Court back then, in April, April 12th, was that if there

13:04:47   14   was a forfeiture, that was the term they used, in April,

13:04:51   15   if there was a forfeiture, it was by the Defendant's

13:04:54   16   counsel.  That even though the Defendants in these

13:04:56   17   stipulations expressly put in a reservation of rights,

13:05:01   18   the mere conduct of acting to move this case forward

13:05:06   19   procedurally agreed to preserve evidence, exchange

13:05:08   20   information with the Plaintiff, agreed to procedures for

13:05:14   21   discovery of electronic information and a briefing

13:05:18   22   schedule for an upcoming preliminary injunction, they

13:05:22   23   said the act of entering into those stipulations and

13:05:24   24   then starting to work on those processes was a

13:05:27   25   forfeiture through conduct of its right that it tried to

1       MOOG, INC. VS. SKYRYSE, INC. ET AL.

13:05:31    2   preserve on the papers to challenge jurisdiction.  We

13:05:34    3   address that in the reply briefing and explained that is

13:05:38    4   not the case.  Look at the language of the stipulation.

13:05:41    5   There is no waiver.  Both stipulations make clear that

13:05:45    6   the consent to jurisdiction for these early purposes was

13:05:48    7   limited just to the purposes of the stipulation itself.

13:05:51    8   And in arguing otherwise, Moog even complained to the

13:05:56    9   Court, I mean, it recognized the Court might reach the

13:05:58   10   jurisdiction issues before the PI hearing.  And even

13:06:02   11   argued that one of the dangers to it was that, well, if

13:06:06   12   the case is transferred, for example, that would really

13:06:10   13   delay the preliminary injunction hearing.  Moog was well

13:06:13   14   aware that neither, none of the parties tried to dictate

13:06:17   15   the order in which the Court would resolve these very

13:06:20   16   important motions.  Moog was just as aware as Skyryse

13:06:24   17   and the other Defendants, the Court may reach the

13:06:27   18   jurisdictional and venue thresholds first and decide

13:06:30   19   them in the Defendants' favor rather than Moog's, which

13:06:34   20   could result in the preliminary injunction being heard

13:06:37   21   in another court the Central District of California

13:06:39   22   where, of course, every single witness, shred of paper

13:06:44   23   from the Defendants, piece of evidence, electronic

13:06:47   24   repository is located.  So that was the status of the

13:06:51   25   dispute back in April.  And then, of course, as your

1          MOOG, INC. VS. SKYRYSE, INC. ET AL.

13:06:55   2   Honor knows, the parties spent the last few months

13:06:58   3   exchanging information, going through the expedited

13:07:02   4   discovery while the motions were pending.  And, of

13:07:04   5   course, that required a lot of time and attention from

13:07:07   6   everybody in this hearing.  But the jurisdictional and

13:07:10   7   venue motions remained pending and remained briefed.  It

13:07:17   8   was a couple weeks ago that, when your Honor let the

13:07:20   9   parties know that you intended to prioritize the

13:07:23   10  jurisdictional and venue issues, that Moog's position

13:07:28   11  changed.  And we saw this in a couple of ways.

13:07:30   12          First, it came through in formal e-mails

13:07:33   13  with counsel and the Court.  And Moog made an argument

13:07:35   14  we hadn't seen before, and one that, frankly, surprised

13:07:39   15  us.  And it was an argument, not that Skyryse had

13:07:43   16  somehow, through its conduct in participating in good

13:07:46   17  faith in this litigation at the outset for discovery

13:07:49   18  purposes had forfeited its right to challenge

13:07:55   19  jurisdiction, but now they said Skyryse actually

13:07:59   20  explicitly waived its right to challenge the Court's

13:08:03   21  jurisdiction and venue or to move to transfer in those

13:08:27   22  stipulations.  And I think, frankly, what inspired that

13:08:32   23  is the Court's renewed attention on those motions after

13:08:35   24  it shifted from administering discovery that the parties

13:08:39   25  had stipulated to.

|       |    |                                                            |
|-------|----|------------------------------------------------------------|
|       | 1  | MOOG, INC. VS. SKYRYSE, INC. ET AL.                        |
| 13:08:40 | 2  | MAGISTRATE JUDGE MCCARTHY:  Just bear in                |
| 13:08:42 | 3  | mind that, up until that point, the motions had not been |
| 13:08:46 | 4  | assigned to me for decision.  They were with Judge      |
| 13:08:53 | 5  | Vilardo when he made the dispositive referral which     |
| 13:08:59 | 6  | would include the jurisdictional motion.  That is when I |
| 13:09:02 | 7  | thought, well, we ought to get this thing resolved      |
| 13:09:05 | 8  | sooner rather than later because it deals with which    |
| 13:09:08 | 9  | court is going to be hearing this.  Go ahead.           |
| 13:09:13 | 10 | MR. GROSS:  We appreciate that you did, your            |
| 13:09:15 | 11 | Honor.  And I think it really goes to the point of      |
| 13:09:18 | 12 | timing.  The briefing on these motions originally       |
| 13:09:21 | 13 | occurred in April shortly after the suit was filed, it  |
| 13:09:25 | 14 | might have extended until May, but all of the briefing  |
| 13:09:28 | 15 | was complete in the first six weeks or so of the        |
| 13:09:31 | 16 | lawsuit.  And until that dispositive motion referral and |
| 13:09:34 | 17 | we had guidance from your Honor all the parties knew is |
| 13:09:38 | 18 | that it could be decided any day.  And I think that is  |
| 13:09:41 | 19 | why Moog recognized in its first opposition brief there |
| 13:09:45 | 20 | have been others since, but in the first opposition     |
| 13:09:48 | 21 | brief that the case could get transferred or dismissed  |
| 13:09:53 | 22 | before the preliminary motion was heard.               |
| 13:09:56 | 23 | MAGISTRATE JUDGE MCCARTHY:  And I know there            |
| 13:09:58 | 24 | may be reasons why you don't want to posture, Judge, but |
| 13:10:02 | 25 | did anybody ever say to Judge Vilardo, hey, Judge, this |

```
 1              MOOG, INC. VS. SKYRYSE, INC. ET AL.
 2  is a foundational issue here as to which court is going
 3  to hear this case, can you prioritize this.  Did anybody
 4  go to him and say that?
 5              MR. GROSS:  No, your Honor, I don't recall,
 6  at least a filing to that point.  But I do recall
 7  language --
 8              MAGISTRATE JUDGE MCCARTHY:  Anybody talk to
 9  his Chambers or anything because that would seem to me
10  that is before anything and everything else, that is
11  something that I would think all of the parties would
12  have wanted to have sorted out.
13              MR. GROSS:  Well, I think, in retrospect,
14  that may have been a wise idea.  I know there is always
15  a little bit of reluctance to pester a busy judge about
16  a motion that has been pending.  So, no, we didn't do
17  that.  But we did meet with him to discuss the status of
18  the case and the possible timing of the preliminary
19  injunction motion it may have come up at that
20  conference, but it wasn't in the form of a request that
21  you asked about.
22              MAGISTRATE JUDGE MCCARTHY:  Why would you be
23  discussing with Judge Vilardo the timing of a
24  preliminary injunction motion if you didn't think the
25  motion was going to be heard here?
```

1        MOOG, INC. VS. SKYRYSE, INC. ET AL.

2            MR. GROSS:  Well, your Honor, I think all

3    parties wanted some certainty and the, Judge, had raised

4    it, so we, of course, were going to discuss with the

5    Court our schedules and our client's availability, which

6    we did.

7            MAGISTRATE JUDGE MCCARTHY:  Okay.  Okay.  Go

8    ahead.

9            MR. GROSS:  Thank you, your Honor.  So, the

10   argument that the parties have been having, your Honor,

11   has changed a little bit.  In recent weeks, Moog's

12   forfeiture through conduct argument changed.  They began

13   arguing that there was express waiver.  There were

14   suggestions in the e-mail to your Honor and I think also

15   in the supplemental briefing that parties provided, at

16   your suggestion to update the Court about recent

17   happenings involving the Government investigation and

18   discovery, there has been a suggestion by Moog that,

19   well, Skyryse's first counsel of record, as your Honor,

20   I'm sure, remembers my firm and my colleagues

21   substituted in for another law firm, and the suggestion

22   was that Skyryse's first counsel of record, knowingly

23   waived these rights, and now Skyryse needs to be held to

24   that, and so does the new counsel.  That just is,

25   frankly, wrong.  The fact that there was a substitution

1          MOOG, INC. VS. SKYRYSE, INC. ET AL.

13:12:36   2   of counsel doesn't change the explicit language and

13:12:39   3   reservations of rights in the stipulations.  If the

13:12:43   4   Court is inclined to consider it, we've provided

13:12:46   5   supplemental evidence from another of Skyryse's lawyers,

13:12:49   6   general counsel, Jerry Razlootny (phonetic), who has

13:12:55   7   been actively managing and instructing the outside firms

13:12:58   8   and was involved in the negotiations to describe how

13:13:02   9   they transpired and one of the things that the counsel,

13:13:05  10   did in negotiating the stipulations as you can imagine

13:13:08  11   is have back and forth about what provisions would be in

13:13:11  12   there.  And there is a very clear record of Moog's

13:13:15  13   counsel proposing language by which the parties would

13:13:17  14   have agreed to defer any resolution of the

13:13:21  15   jurisdictional or venue challenges until after the

13:13:25  16   preliminary injunction motion was resolved and Moog

13:13:29  17   rejected that.  Moog rejected that or, excuse me,

13:13:33  18   Skyryse rejected that.  Skyryse rejected that in favor

13:13:37  19   of the language that the parties ultimately agreed upon

13:13:41  20   and put in the stipulation that was ultimately ordered

13:13:44  21   by the Court.  So the suggestion that we've only heard

13:13:46  22   in recent weeks that there was an explicit waiver of the

13:13:50  23   right to challenge the Court's jurisdiction and venue

13:13:54  24   is, just frankly, counter factual.  And, your Honor,

13:13:58  25   these are, of course, these issues have important due

1               MOOG, INC. VS. SKYRYSE, INC. ET AL.

13:14:02   2   process considerations.  I have spent part of the

13:14:06   3   morning actually looking at maps.  Moog's facility in

13:14:13   4   Torrance, California is about a half a mile from where

13:14:17   5   Defendant Kim lives.  It's about a mile and a half from

13:14:21   6   where Defendant Pilkington lives.  Skyryse is up the

13:14:58   7   road seven or eight miles in a town called /EL /SA gun

13:15:01   8   /TKA.  This is all in the LA area near an airport where

13:15:05   9   there is a pretty established aerial space and aviation

13:15:36  10   industry and it's all within the Central District of

13:15:38  11   California.  And all of the discovery virtually -- well

13:15:44  12   certainly from the Defendants, all of the discovery from

13:15:47  13   the Defendants has come out of that area.  The people

13:15:49  14   live there, they work there.  Moog's people live and

13:15:53  15   work there near Torrance, and non-parties who have

13:15:57  16   already been getting third-party subpoenas from Moog

13:16:00  17   live and work there.  Moog hasn't taken any discovery

13:16:05  18   from New York, and, of course, has provided some, but

13:16:10  19   the vast majority of the facts, the witnesses, the

13:16:13  20   evidence, the testimony that is going to be elicited in

13:16:16  21   this case is coming from the Central District of

13:16:19  22   California.

13:16:20  23               So, there has been no waiver, your Honor.

13:16:23  24   There has been no forfeiture.  Skyryse has done its

13:16:29  25   level best because Moog came to this Court with its hair

1                    MOOG, INC. VS. SKYRYSE, INC. ET AL.

13:16:33   2    on fire claiming to need immediate, immediate, emergency

13:16:37   3    relief, and Skyryse has done its level best to work with

13:16:41   4    them in good faith to agree to preserve all evidence, to

13:16:45   5    start an exchange of information, to adopt the neutral

13:16:49   6    third-party protocol, that was all procedural and all of

13:16:52   7    it was subject to its reservation of rights to contest

13:16:55   8    the Court's jurisdiction and venue.  The motion that

13:17:00   9    Skyryse filed was at the earliest possible moment, 21

13:17:04   10   days after being even served with the complaint and

13:17:07   11   started this significant process of working with Moog

13:17:10   12   and its counsel to get them what they claimed to have

13:17:13   13   needed.

13:17:14   14                   And, your Honor, I think you know, as I

13:17:16   15   think about the question that you asked me before, why

13:17:20   16   haven't the parties or the counsel been asking the Court

13:17:22   17   to get this motion resolved.  I think, frankly, part of

13:17:26   18   the answer is that the urgency has subsided.  Moog

13:17:30   19   demanded emergency relief, and then it got it by

13:17:34   20   stipulation.  And I don't -- and we -- the date for the

13:17:39   21   hearing in October was so far out when the

13:17:45   22   jurisdictional and venue motions were filed, that I,

13:17:48   23   frankly, don't think it was likely that there was going

13:17:51   24   to be an issue getting these all resolved in a timely

13:17:54   25   fashion, and, in particular, you know, once the

1               MOOG, INC. VS. SKYRYSE, INC. ET AL.

13:17:56   2    emergency had subsided.  So, as your Honor knows, some

13:18:01   3    other things have happened that we think support both

13:18:05   4    dismissal or transfer in the alternative.  That

13:18:10   5    demonstrate the many substantial connections between

13:18:14   6    this suit and what would be the transferee court in the

13:18:17   7    Central District of California.  I won't get into those

13:18:20   8    right now because I don't think they go right to your

13:18:23   9    question of whether the preliminary injunction hearing

13:18:25   10   would be affected here.  But if the Court were to grant

13:18:28   11   either the motion to dismiss for lack of personal

13:18:31   12   jurisdiction or lack of proper venue or transfer the

13:18:34   13   case and do that in the near term, then, yes, that would

13:18:38   14   resolve in a preliminary injunction hearing if Moog

13:18:41   15   keeps its motion on file being heard by that court.

13:18:44   16   And, frankly, I don't -- we don't know what Moog will

13:18:48   17   do, because it has all of the relief and it has admitted

13:18:51   18   in the papers to your Honor that it received the

13:18:54   19   emergency relief, the preliminary relief it requested

13:18:57   20   via stipulation.  So it's a little unclear as to what

13:19:00   21   relief it will be seeking, if any, in a preliminary

13:19:04   22   injunction.  So, your Honor, I think the Court has broad

13:19:21   23   authority and discretion to decide these motions now.

13:19:27   24   Skyryse certainly has not forfeited.  It has not waived

13:19:30   25   its right.  We have ample evidence on that point before

```
  1              MOOG, INC. VS. SKYRYSE, INC. ET AL.
13:19:33  2    you including the declaration of Ms. Loony, if the Court
13:19:37  3    is inclined to consider it.  And I don't think there
13:19:41  4    will be any prejudice that it is material or undue to
13:19:44  5    either of the parties if the case is transferred.  The
13:19:47  6    evidence has been preserved by stipulation.  Discovery
13:19:51  7    is underway by stipulation.  Moog has the preliminary
13:19:55  8    relief that it asked for by stipulation.  If there is
13:19:59  9    any delay, if this case is transferred today, a court,
13:20:03 10    that because of its plethora of judges, its abundance of
13:20:09 11    judges, gets cases tried much sooner than this Court.
13:20:13 12    If the case is transferred or re-filed in that other
13:20:17 13    court, I think the parties will be able to keep it
13:20:19 14    moving along just as does this Court.
13:20:23 15              With that, I'll stop and I'm happy to answer
13:20:26 16    any questions that you have and then reserve time to
13:20:28 17    respond to whatever I hear from our colleagues.
13:20:32 18              MAGISTRATE JUDGE MCCARTHY:  Before I hear
13:20:33 19    from counsel for Moog, Mr. Green or Mr. Truitt, do you
13:20:37 20    want to weigh in on this issue?
13:20:39 21              MR. TRUITT:  Thank you, your Honor.  And
13:20:40 22    I'll be brief.  Just to touch on a few points, first
13:20:45 23    being that the individual Defendant's Rule 12 motion, it
13:20:50 24    didn't seek a carve out for the preliminary injunction
13:20:54 25    hearing to be heard.  It sought dismissal of the
```

|   |   |
|---|---|
|  | 1 |

                            MOOG, INC. VS. SKYRYSE, INC. ET AL.
13:20:56   2    complaint because this Court does not have jurisdiction
13:21:00   3    over the individual Defendants.  And now we've seen
13:21:02   4    arguments from the Plaintiff that sound in waiver and
13:21:07   5    they sound in estoppel, but none of these arguments are
13:21:13   6    (inaudible.)  The federal rules have very specific
13:21:17   7    Guidelines for when a waiver of a jurisdictional defense
13:21:20   8    may occur.  It's federal Rule 12(h)(1).  Federal Rule
13:21:26   9    12(h)(1) finds a waiver occurred if a responsive
13:21:28   10   pleading does not waive the argument that jurisdiction
13:21:31   11   doesn't exist.  Here there has been no answer filed.
13:21:35   12   The first responsive pleading was the jurisdictional
13:21:38   13   motion to dismiss.  So, the only other argument is that
13:21:42   14   perhaps estoppel might lead to some sort of forfeiture
13:21:46   15   of that defense.  But estoppel cannot lie where there
13:21:50   16   has been an express reservation of rights.  Now, the
13:21:54   17   stipulation contained an express reservation of rights
13:21:57   18   and then the motion to dismiss was filed.  So, at no
13:22:00   19   point could Moog even establish any sort of reliance on
13:22:05   20   some sort of notion that the individual Defendants were
13:22:07   21   waiving jurisdiction because they reserved it every step
13:22:11   22   of the way and then they filed a motion to dismiss for
13:22:15   23   lack of personal jurisdiction or to change venue.
13:22:20   24               MAGISTRATE JUDGE MCCARTHY:  Okay.  Thank
13:22:23   25   you.  Who wishes to be heard on Moog's behalf?

```
 1              MOOG, INC. VS. SKYRYSE, INC. ET AL.
13:22:28  2              MS. ANDOH:  I do, your Honor.  It's Reena
13:22:31  3    Dutta with Hodgson Russ.
13:22:34  4              MAGISTRATE JUDGE MCCARTHY:  Ms. Dutta.
13:22:37  5              MS. DUTTA:  Your Honor, I think we would
13:22:38  6    point to the language of the March 11th stipulation.  I
13:22:40  7    don't think you need to get into Skyryse's supplement
13:22:44  8    briefing or filing.  It very plainly says:  "By agreeing
13:23:03  9    to this stipulated order, Defendants consent to the
13:23:06  10   jurisdiction and venue of this Court for purposes of
13:23:08  11   this stipulated order only and for no other purpose."
13:23:12  12   And then paragraph 12, which states:  "This stipulated
13:23:15  13   order shall remain in effect until a hearing on
13:23:19  14   Plaintiff's motion for preliminary injunction takes
13:23:22  15   place and a final ruling on the merits, if issued."
13:23:25  16              And, as you, your Honor, pointed out
13:23:28  17   yourself, paragraph 10 of that same order expressly has
13:23:32  18   a date for the preliminary injunction hearing at a date
13:23:36  19   and time of this Court's choosing, this Court, that is
13:23:40  20   what they agreed to.  There is no other reading of this
13:23:43  21   stipulation, your Honor.  And Skyryse's counsel, in
13:23:46  22   their supplemental briefing and here today continually
13:23:51  23   refer to this as procedural, procedural stipulation,
13:23:54  24   procedural matters.  This stipulated order addressed
13:24:24  25   Moog's motion for a temporary restraining order.  This
```

```
 1              MOOG, INC. VS. SKYRYSE, INC. ET AL.
 2  is substantive relief in this order, including
 3  Defendant's agreeing not to use access, disclose any of
 4  Moog's non-public information.  It's simply incorrect to
 5  state that this was a procedural order governing
 6  procedures.  It's not --
 7              MS. DUTTA:  I apologize, Judge.
 8              MAGISTRATE JUDGE MCCARTHY:  That's okay.
 9              MS. DUTTA:  One additional thing, your
10  Honor.  We don't think you need to consider Skyryse's
11  supplemental briefing or Ms. Loony's declaration.  But,
12  to the extent you do, your Honor, we ask for the chance
13  to respond because we think Ms. Loony leaves out a
14  significant communication after the red line she
15  addresses, which she notes in her declaration occurred
16  on March 10th.  There was a subsequent communication on
17  March 11th in which that paragraph 12 of the stipulated
18  order was inserted into the order, which it is now.
19              So, your Honor, we think that, again,
20  supports our argument that this is what the parties
21  agreed to at the time.
22              MAGISTRATE JUDGE MCCARTHY:  Okay.  Thank
23  you.
24              Mr. Gross, you said you wanted to reserve
25  briefly?
```

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | MOOG, INC. VS. SKYRYSE, INC. ET AL.                          |
| 13:25:49 | 2 | MR. GROSS:  Thank you, your Honor.  And I                   |
| 13:25:50 | 3 | will be brief.  To Ms. Dutta's point --                     |
| 13:25:53 | 4 | MAGISTRATE JUDGE MCCARTHY:  Let me just say.                |
| 13:25:55 | 5 | Counsel, several of you, a couple of you said, "I will      |
| 13:26:00 | 6 | be brief."  I used to practice, too.  I said I would be     |
| 13:26:04 | 7 | brief and I never met it.  But I'll take it for what        |
| 13:26:07 | 8 | it's worth.                                                 |
| 13:26:08 | 9 | MR. GROSS:  Okay.  I'm going to be good to                  |
| 13:26:10 | 10 | my word.  I will be good to my word.                       |
| 13:26:12 | 11 | MAGISTRATE JUDGE MCCARTHY:  Okay.                          |
| 13:26:12 | 12 | MR. GROSS:  To Ms. Dutta's point that the                 |
| 13:26:15 | 13 | parties stipulated that their arrangements reflected in   |
| 13:26:19 | 14 | those stipulations would be in effect until the           |
| 13:26:21 | 15 | preliminary injunction ruling, that is still the case.    |
| 13:26:24 | 16 | Skyryse plans to abide by everything in there.  I mean,   |
| 13:26:27 | 17 | obviously, the scheduling might be subject to, as it      |
| 13:26:30 | 18 | already has been, to a change in circumstances, but      |
| 13:26:34 | 19 | Skyryse has preserved all of its evidence.  Skyryse      |
| 13:26:38 | 20 | never wanted or needed any Moog information and          |
| 13:26:41 | 21 | continues to agree that it's not going to use that.      |
| 13:26:44 | 22 | There is no relief that Skyryse is trying to seek from   |
| 13:26:48 | 23 | these stipulations they can remain in place and enforce  |
| 13:26:51 | 24 | as orders of the Court, at least until they change for   |
| 13:26:56 | 25 | some reason even after a transfer to another court.      |

1          MOOG, INC. VS. SKYRYSE, INC. ET AL.

13:26:59   2          And, finally, I wanted to finish with

13:27:02   3   pointing out, look it, if Moog really believed that the

13:27:06   4   preliminary injunction motion had to be heard and could

13:27:09   5   only be heard before these motions were resolved, it

13:27:14   6   would have said that in its first opposition.  It

13:27:16   7   wouldn't have said the opposite, that, hey, if you grant

13:27:19   8   the motion and the case goes to another court, that is

13:27:22   9   going to delay our preliminary injunction hearing.  So

13:27:26   10  the position that Moog has taken in recent weeks, I

13:27:29   11  think, are situational.  And what we see in the original

13:27:32   12  briefing is truer to what the parties intended in the

13:27:38   13  stipulation.

13:27:38   14          Thank you, your Honor.

13:27:39   15          MAGISTRATE JUDGE MCCARTHY:  Thank you all.

13:27:43   16          MR. TRUITT:  Your Honor, may I be brief?

13:27:44   17          MAGISTRATE JUDGE MCCARTHY:  Mr. Truitt, go

13:27:44   18  ahead.

13:27:46   19          MR. TRUITT:  I think there was original

13:27:49   20  language in the first stipulation that I would like to

13:27:51   21  emphasize.  The first is which, one, is it, I think,

13:27:54   22  documents 33 and 25 both say for the purpose of the

13:27:58   23  stipulation and no other purpose.  So, I respectfully

13:28:03   24  submit that Skyryse -- I'm sorry -- that Moog is arguing

13:28:07   25  that a stipulation to adjourn now suddenly puts the

```
               1              MOOG, INC. VS. SKYRYSE, INC. ET AL.
13:28:11       2     entire proceeding within the Court's jurisdiction.  I
13:28:15       3     would submit that is another purpose.
13:28:19       4              Second, document 33 says any and all
13:28:22       5     challenges to jurisdiction or venue in the Western
13:28:25       6     District of New York are expressly preserved.  That is
13:28:28       7     what is happening with these Rule 12 motions.  There are
13:28:31       8     challenges to the jurisdiction and venue of the Western
13:28:34       9     District of New York.  Thank you.
13:28:35      10              MAGISTRATE JUDGE MCCARTHY:  All right.
13:28:36      11     Thank you, counsel.
13:28:39      12              I've given a lot of thought to this and I
13:28:42      13     suppose, in one sense, which forum will hear the
13:28:52      14     preliminary injunction motion is not something that
13:28:56      15     needs to be decided now, because however you slice it,
13:29:01      16     it's probably a ways down the road.  Nonetheless, to
13:29:05      17     avoid any confusion and to give the parties an
13:29:09      18     opportunity to seek review by Judge Vilardo, if they
13:29:14      19     wish, I'm going to tell you my thoughts and what I am
13:29:19      20     going to do on this issue and on the other issues we're
13:29:24      21     going to be discussing today, is, I will tell you what
13:29:27      22     my ruling is going to be, at least on most of them.  And
13:29:31      23     then I will issue, in the next few days, a written
13:29:36      24     decision further explaining my reasoning.
13:29:41      25              First of all, I recognize that Skyryse, I
```

1          MOOG, INC. VS. SKYRYSE, INC. ET AL.

13:29:47  2  believe, two days ago has filed a motion for leave to

13:29:52  3  submit a supplemental reply pointing to prior

13:29:57  4  negotiations as indicating that the parties never

13:30:05  5  consented to have the jurisdiction or the preliminary

13:30:09  6  injunction motion considered in this court.  If I were

13:30:14  7  to conclude that the -- that the two stipulated orders,

13:30:21  8  dockets 25 and 33, were ambiguous in that regard, I

13:30:27  9  would allow that submission and I would give Moog a

13:30:31  10  further opportunity to reply to it.  However, I do not

13:30:36  11  find that the two stipulations, dockets 25 and 33, are

13:30:42  12  ambiguous in that regard, and, therefore, I don't see

13:30:47  13  any need or basis to consider evidence of prior

13:30:52  14  negotiations.  The question is not what the parties may

13:30:57  15  have intended, but what they said.  And I think, in

13:31:00  16  context, they clearly said that the preliminary

13:31:07  17  injunction hearing would take place here rather than in

13:31:11  18  another court.  They consented to the jurisdiction and

13:31:14  19  venue of this Court for purposes of the stipulated

13:31:18  20  order.  And one of the purposes of the stipulated order

13:31:22  21  was the scheduling of a preliminary injunction hearing.

13:31:27  22  There would be no point to talking about scheduling a

13:31:31  23  preliminary injunction hearing.  In fact, they did

13:31:37  24  schedule the preliminary injunction hearing subject to

13:31:40  25  the Court's availability.  But, there would be no point

1        MOOG, INC. VS. SKYRYSE, INC. ET AL.

13:31:44   2   in talking about that if this were not the Court that

13:31:47   3   was going to conduct the hearing.  That, in a nutshell,

13:31:51   4   is my reasoning.  I think it's the only fair reading

13:31:59   5   that can be given to the two stipulations and orders,

13:32:03   6   and, therefore, I think that, irrespective of where the

13:32:06   7   rest of the case will be conducted, the preliminary

13:32:11   8   injunction hearing should take place in the Western

13:32:15   9   District of New York.  I will elaborate on that in more

13:32:21   10  detail in my written decision.  Having said that,

13:32:25   11  though, I want to offer a few other observations.

13:32:29   12  First, with respect to the remainder of the case, and

13:32:31   13  that is not something that I'm going to be deciding

13:32:33   14  today, but if and when that issue has to be decided,

13:32:40   15  even if there is personal jurisdiction over the

13:32:43   16  remainder of the case, and I don't say whether there is

13:32:47   17  or not, based on what I've seen, I think there is a

13:32:52   18  compelling case or argument to be made that the

13:32:55   19  remainder of the case should be transferred to the

13:32:59   20  Central District of California based on convenience of

13:33:03   21  the parties, convenience of witnesses, coupled with the

13:33:06   22  fact that there is now an ongoing criminal investigation

13:33:11   23  in the Central District of California.  Again, to be

13:33:14   24  clear, I'm not deciding that issue right now.  That

13:33:17   25  might be affected by, you know, what occurs between now

```
                      MOOG, INC. VS. SKYRYSE, INC. ET AL.
13:33:20   2   and the time of the preliminary injunction hearing and
13:33:23   3   how familiar this Court has become with the issues;
13:33:26   4   vis-à-vis, court in the Central District of California.
13:33:31   5   I will just say that the parties should keep in mind the
13:33:35   6   possibility, at least, which I consider to be more than
13:33:38   7   a minimal possibility, that irrespective of where the
13:33:42   8   preliminary injunction is heard, the remainder of the
13:33:49   9   case may well be transferred to the Central District of
13:33:52  10   California.  I also want to point out for Moog's
13:33:55  11   benefit, and I think, Mr. Gross, you alluded to this,
13:33:58  12   but we did a little checking on our own, and I don't say
13:34:02  13   this to shirk any responsibility, because I will not be
13:34:06  14   the one conducting the preliminary injunction hearing,
13:34:10  15   in any event, but in this district, in Buffalo, we have
13:34:15  16   two active district judges, Judge Vilardo and Judge
13:34:20  17   Sinatra.  In the Central District of California -- we
13:34:22  18   also have, in fairness, we have two senior status
13:34:26  19   district judges, God bless them, Judge Arcara and Judge
13:34:31  20   Skretny, who are basically working full time.  But by
13:34:35  21   contrast, the Central District of California has, I
13:34:37  22   believe, 34 district judges.  So, in terms of how
13:34:45  23   quickly a preliminary injunction hearing could be
13:34:48  24   scheduled, I think there is a good argument that you
13:34:50  25   might get to a hearing more quickly in the Central
```

1           MOOG, INC. VS. SKYRYSE, INC. ET AL.

13:34:55  2   District of California than you would here.

13:34:57  3   Nonetheless, I think there is a contractual basis for

13:35:01  4   holding the hearing here, and so that will be my ruling.

13:35:07  5   If Judge Vilardo wants to take a different view of it,

13:35:10  6   well, that certainly is his prerogative.

13:35:15  7           Let's move on now to the companion motions

13:35:20  8   of -- and just to be clear, for that reason, I am also

13:35:25  9   denying Skyryse's motion to submit a supplemental reply

13:35:31  10   brief, which is docket No. 247, I believe.  That will

13:35:36  11   obviously be part of the record if somebody wants to

13:35:41  12   make further argument to Judge Vilardo and if he wants

13:35:44  13   to consider it, I presume he would give, at that point,

13:35:48  14   would give Moog an opportunity to reply to that.  But

13:35:52  15   that would be his call.

13:35:55  16           Let's turn then to the -- the motions -- the

13:36:00  17   claw back motions and Moog's motion for access to the

13:36:04  18   individual Defendant's devices.  And I'll hear from

13:36:09  19   whoever wants to be heard in that regard.

13:40:16  20           MR. FLUSKEY:  Your Honor, I can begin on the

13:40:18  21   restoration, if that is acceptable to the Court.

13:40:20  22           MAGISTRATE JUDGE MCCARTHY:  Okay, Rob.  Go

13:40:24  23   ahead.

13:40:24  24           MR. FLUSKEY:  So, your Honor, there are at

13:40:40  25   least five independent bases that we think compels

MOOG, INC. VS. SKYRYSE, INC. ET AL.

restoration of Moog's access.  And I, hopefully quickly,

I would like to march through each.  The first is a

process point, but it's an important process point.  The

Court should simply not permit its individual

Defendant's ability of self help.  The individual

Defendants were required to turn over access to these

devices under two court orders.  They had an opportunity

to seek relief from those orders.  But rather than to do

that, they unilaterally cut off access and took it upon

themselves to suspend their performance under those

orders.  That simply should not be condoned.  We think

on that basis alone, the issue could be resolved.  But,

there are other reasons.  Second, the protective order

in this case provides absolutely no basis for the claw

back of the protective order is one of the principal

arguments or principal bases that the individual

Defendants cite, but it doesn't apply here.  First, the

clawback provisions don't apply to Fifth Amendment

invocations.  They apply to attorney work product and

attorney/client privilege.  But even if it did, even if

the protective order or clawback provisions could apply

to a Fifth Amendment invocation, those revisions haven't

been triggered here because the individual Defendants

have not invoked Fifth Amendment rights.  Moog has said

1          MOOG, INC. VS. SKYRYSE, INC. ET AL.

13:42:28  2  that a lot in its brief, and we said it a lot on

13:42:32  3  purpose.  Because it's a threshold issue.  There has

13:42:35  4  been no invocation of the Fifth Amendment here.  There

13:42:38  5  has been participation in discovery, written document

13:42:43  6  responses, written RFAs, no assertion of the Fifth.  And

13:42:47  7  the individual Defendants can't have it both ways.  They

13:42:51  8  have a decision to make.  They either invoke the Fifth

13:42:53  9  and deal with the consequences that that invocation may

13:42:57  10  bring, perhaps an adverse inference for them and/or

13:43:03  11  Skyryse, or they participate in discovery in full.  They

13:43:08  12  can't hold up Moog's access to these devices based on

09:10:04  13  the specter of a potential inchoate Fifth Amendment

09:10:39  14  invocation.  That is not how it works.

09:10:42  15          Now, if there were any doubt about this, a

09:10:45  16  quick walk through of the protective order, I think

09:10:48  17  makes it clear, which is docket No. 89, your Honor.  So

09:10:53  18  Section 16.1 of the protective order governs claw back

09:10:58  19  of privileged material, and it reads to claw back

09:11:01  20  privileged material produced inadvertently, the

09:11:05  21  producing party must provide notice in writing to the

09:12:23  22  preceding party.  So, in order for this provision to

09:12:26  23  apply, two things must be in place.  We must be dealing

09:12:29  24  with privileged material and the production must have

09:12:34  25  been inadvertent.  Neither element is satisfied here.

|  |  |
|---|---|
| | 1 |
| 09:12:38 | 2 |
| 09:13:12 | 3 |
| 09:13:18 | 4 |
| 09:13:24 | 5 |
| 09:14:00 | 6 |
| 09:14:04 | 7 |
| 09:14:15 | 8 |
| 09:14:19 | 9 |
| 09:14:22 | 10 |
| 09:14:29 | 11 |
| 09:14:37 | 12 |
| 09:14:43 | 13 |
| 09:14:47 | 14 |
| 09:14:50 | 15 |
| 09:14:55 | 16 |
| 09:15:45 | 17 |
| 09:15:50 | 18 |
| 09:15:54 | 19 |
| 09:16:49 | 20 |
| 09:16:53 | 21 |
| 09:16:57 | 22 |
| 09:17:01 | 23 |
| 09:17:07 | 24 |
| 09:17:12 | 25 |

MOOG, INC. VS. SKYRYSE, INC. ET AL.

Privileged material, capital P, capital M, is defined in section 1.15. Privileged material means discovery material protected from disclosure under attorney/client privilege, attorney work product doctrine, United States foreign bank, disclosure laws or regulations and any other applicable foreign statute, law or regulation. There has been no invocation of any privilege here. So we're not dealing with privileged material, capital P capital M. Nor are we dealing with an inadvertent production. As we discussed at our last conference, these devices were made available to Moog, it wasn't an accident. Access was provided and then cut off. This isn't a situation where you had 20 associates reviewing documents in a database and five privileged documents slipped through. This is not an inadvertent production. Unless there were any doubt, section 11.1 of the protective order, also supports Moog's position. 11.1, which is under the heading "inadvertent production of privileged or otherwise protected material," reads "When a producing party gives notice to receiving parties that inadvertent produced material is subject to a claim of privilege or other protection, the obligation to the receiving parties are those set forth in Federal Rule 26(b)(5)(B). Again, there has been no invocation of any

|   |   |
|---|---|
| | 1 |
| 09:17:17 | 2 |
| 09:18:40 | 3 |
| 09:18:48 | 4 |
| 09:18:51 | 5 |
| 09:18:54 | 6 |
| 09:18:57 | 7 |
| 09:19:03 | 8 |
| 09:19:06 | 9 |
| 09:19:14 | 10 |
| 09:20:12 | 11 |
| 09:20:15 | 12 |
| 09:20:18 | 13 |
| 09:20:24 | 14 |
| 09:20:27 | 15 |
| 09:20:33 | 16 |
| 09:20:39 | 17 |
| 09:20:43 | 18 |
| 09:20:47 | 19 |
| 09:20:52 | 20 |
| 09:20:56 | 21 |
| 09:20:59 | 22 |
| 09:21:03 | 23 |
| 09:21:08 | 24 |
| 09:21:13 | 25 |

1          MOOG, INC. VS. SKYRYSE, INC. ET AL.

2   privilege here, so we're not dealing with information

3   that is "subject to a privilege or other protection.

4   So, again, point two, the protective order simply

5   provides no basis for the claw back.

6          Point three, and I should say the next three

7   points I'm going to address presuppose there has been an

8   invocation of the privilege.  So, in some respects, this

9   is hypothetical, but the issues have been addressed in

10   the brief, so I think they should be addressed here.

11   Point three is this, the Fifth Amendment doesn't apply

12   here in the first instance.  So, the Fifth Amendment is

13   principally a testimonial privilege.  Now, the Fifth

14   Amendment can apply in narrow circumstances to the act

15   of producing documents if that act itself is tantamount

16   to a testimonial admission.  It's the Act of Production

17   Doctrine.  But the Fifth Amendment can't attach if the

18   location and existence of the materials at issue are a

19   foregone conclusion.  The case law refers to this as the

20   foregone conclusion exception.  Here the existence and

21   location of the information at issue is unquestionably a

22   foregone conclusion.  There is no dispute that when the

23   individual Defendants left Moog and went to Skyryse,

24   they possessed Moog's confidential information.  How do

25   we know that?  They admitted it in response to RFAs.  So

1                    MOOG, INC. VS. SKYRYSE, INC. ET AL.

09:21:18   2   attached to my declaration, your Honor, docket No.

09:21:25   3   228-3, we include examples of the discovery that the

09:21:28   4   individual Defendants participated in in this case.  It

09:21:33   5   includes responses to requests for admissions.  Both

09:21:37   6   Pilkington and Kim were asked, and I'll read the

09:21:40   7   Pilkington example, "admit that Pilkington retained

09:21:48   8   possession of Moog confidential information upon

09:21:50   9   beginning his employment at Skyryse.  There are some

09:21:53   10  objections on ambiguity, no objection on Fifth

09:22:02   11  Amendment.  And the answer is "Mr. Pilkington admits

09:22:08   12  that he had possession of some of Moog's information and

09:22:11   13  documents, files and data that were non-public,

09:22:16   14  proprietary and confidential, including source code when

09:22:19   15  he began his employment at Skyryse.  The fact that the

09:22:22   16  individual Defendants possessed this information on

09:22:26   17  these devices is a foregone conclusion, it's not in

09:22:30   18  dispute.  So the Fifth Amendment here wouldn't apply in

09:22:32   19  the first place.  The act of producing this information

09:22:35   20  or providing access to it would be an act of surrender,

09:22:39   21  not a testimonial act.  And, your Honor, we cite a case

09:22:42   22  that is instructive on this in our brief, *Burt Hill v*

09:22:50   23  *Hassan*, and the facts are very similar where the

09:22:55   24  Defendants sought to prevent disclosure of electronic

09:22:59   25  devices is fighting the Act of Production Doctrine under

1                MOOG, INC. VS. SKYRYSE, INC. ET AL.

09:26:20    2    the Fifth Amendment.  The Court denied the Defendants'

09:26:43    3    attempt at invocation, citing the fact that the

09:26:46    4    Defendants in that case had already had admitted

09:26:50    5    possession of the devices and had provided access to

09:26:52    6    them.  Same facts here.  One difference between our case

09:26:56    7    and Burt Hill, of course, is that in Hill, the

09:26:58    8    Defendants actually invoked.  So, the situation we have

09:27:02    9    here is even stronger, stronger in favor of rejecting

09:27:06   10    any hypothetical invocation of the Fifth Amendment

09:27:09   11    privilege.

09:27:10   12                Your Honor, point four, even if the

09:27:14   13    individual Defendants invoked, and even if the Act of

09:27:19   14    Production Doctrine could apply, the Defendants have

09:27:21   15    waived.  The timeline is now clear, and I think

09:27:28   16    undisputed.  And on page 7 of Moog's brief docket, No.

09:27:33   17    228-1, we provide a table with what we consider to be an

09:27:43   18    indisputable comprehensive timeline.  On June 10, the

09:29:13   19    individual Defendants were informed that the FBI was

09:29:17   20    asking Moog for transcripts from this case.  We now know

09:29:21   21    on June 15, the individual Defendants received a grand

09:29:25   22    jury subpoena and hired criminal defense counsel shortly

09:29:29   23    thereafter.  In mid June, between June 23, June 24,

09:29:35   24    there was an exchange of discovery communication where

09:29:39   25    Skyryse was insisting that Moog produce its

1          MOOG, INC. VS. SKYRYSE, INC. ET AL.

09:29:42   2   communications with the FBI.  Moog agreed.  Then on June

09:29:47   3   29, access to the devices at issue was provided.  So 20

09:29:51   4   days after the June 10 letter where Moog advised the

09:29:56   5   Court and all counsel that the FBI was investigating

09:29:59   6   this case, and at least two weeks after the receipt of a

09:30:03   7   grand jury subpoena, the individual Defendants provided

09:30:09   8   access to the devices.  When they provided access, they

09:30:15   9   knew full well what the potential criminal implications

09:30:20   10  of the civil case could be, in fact, I think it's pretty

09:30:23   11  clear they knew that in March when Moog filed the

09:30:27   12  lawsuit that accused them of theft under a statute that

09:30:31   13  carries criminal provisions.  So, again, even if the

09:30:34   14  privilege could apply, it's been waived here.  And a

09:30:39   15  subsidiary point, your Honor, is, there is no basis to

09:30:46   16  claw back information produced under the Fifth

09:30:50   17  Amendment.  The individual Defendants do not cite a

09:30:54   18  single case where a court has allowed a Defendant, under

09:31:01   19  the citing the potential invocation of the Fifth

09:31:04   20  Amendment, to claw back materials that it's already

09:31:07   21  produced.  And that is what we have here.  We think it

09:31:11   22  would be unprecedented.  We can't find a case where that

09:31:15   23  has happened.

09:31:16   24          Finally, your Honor, fifth point.  The

09:31:19   25  individual Defendants continue to say that they need

```
 1              MOOG, INC. VS. SKYRYSE, INC. ET AL.
 2   further trade secret identification in order to decide
 3   whether the Fifth Amendment applies.  Your Honor, the
 4   individual Defendants know all they need to know to make
 5   that decision.  How do we know that?  They've invoked
 6   the Fifth Amendment in response to the subpoena that
 7   they've received from the Government.  If they have
 8   enough information to make the decision in that venue,
 9   they can do it here.  Your Honor has already ruled on
10   this issue.  The Court has recognized that Moog's needs
11   additional further access to these devices to make its
12   additional trade secret identification.  And individual
13   Defendants have failed to explain why they need that
14   information in order to make this invocation decision.
15              Your Honor, for those reasons, we think
16   access should be restored immediately so that we can
17   move forward with discovery leading up to the
18   preliminary injunction.
19              MAGISTRATE JUDGE MCCARTHY:  Okay.  So, Mr.
20   Fluskey, your argument addresses both opposing their
21   clawback motion and granting your motion for access,
22   correct?
23              MR. FLUSKEY:  That is correct, Judge.
24              MAGISTRATE JUDGE MCCARTHY:  Okay.  All
25   right.  Who wants to be heard on behalf of the
```

```
          1              MOOG, INC. VS. SKYRYSE, INC. ET AL.
09:34:11  2    individual Defendants?
09:34:16  3              MR. GREEN:  It will be me, your Honor.
09:34:18  4              MAGISTRATE JUDGE MCCARTHY:  Okay, Mr. Green.
09:34:20  5              MR. GREEN:  Thank you.  I think we have to
09:34:22  6    start with the protective order.  And there was an
09:34:24  7    interesting truncation of what privileged material means
09:34:29  8    by Mr. Fluskey.  He left off the end part of this that
09:34:34  9    it includes any other applicable United States or
09:34:37 10    foreign statute, law, regulation, privilege or immunity
09:34:42 11    from disclosure.  That is the Fifth Amendment.  That is
09:34:45 12    one of those privileges and immunities from disclosure.
09:34:49 13              MAGISTRATE JUDGE MCCARTHY:  But, Mr. Green,
09:34:50 14    Section 16.5 of the protective order says that it's
09:34:56 15    operating pursuant to Federal Rule of Evidence 502(d)(3)
09:35:01 16    and Rule 502 expressly applies to only claw back of
09:35:08 17    attorney/client privilege and work product privilege.
09:35:13 18    It says nothing about Fifth Amendment privilege.  How
09:35:16 19    does that protect you?
09:35:17 20              MR. GREEN:  Well 16.1 uses the defined term
09:35:24 21    "privileged material."  And as it was defined in the
09:35:26 22    protective order, that includes the Fifth Amendment
09:35:29 23    objection.
09:35:30 24              MAGISTRATE JUDGE MCCARTHY:  All right.  But
09:35:32 25    16.5, which allows to you claw back or says it's not a
```

```
                              MOOG, INC. VS. SKYRYSE, INC. ET AL.
09:35:37    2    waiver, expressly says pursuant to Federal Rule of
09:35:41    3    Evidence 502(d)(3) and that rule is limited to two
09:35:46    4    privileges:  Attorney/client privilege and work product
09:35:49    5    privilege.  So how can you use that to assert a basis to
09:35:53    6    claw back a Fifth Amendment -- something produced under
09:35:58    7    a Fifth Amendment privilege?
09:36:00    8                 MR. GREEN:  Because that is reading it out
09:36:02    9    of context.
09:36:05   10                 MAGISTRATE JUDGE MCCARTHY:  I'm just reading
09:36:06   11    what it says.  I don't think that is out of context.
09:36:10   12                 MR. GREEN:  Well, that is just preserving,
09:36:12   13    that is just preserving against waiver.  It's not saying
09:36:17   14    what you can and can't claw back.  And the way
09:36:24   15    privileged material is defined, it would include
09:36:27   16    material that is protected by the Fifth Amendment.  And,
09:36:34   17    I'd like to go on from there, which is there is also no
09:36:39   18    requirement in the protective order that we seek the
09:36:45   19    Court's approval before we provide notice to the
09:36:48   20    opposing party.  All we're supposed to do is provide
09:36:52   21    notice and that is what we did.  There is also no
09:36:57   22    requirement that we assert the Fifth Amendment privilege
09:37:01   23    at this point.  The only issue is whether it is subject
09:37:06   24    to a claim of privilege and this material is subject to
09:37:12   25    a claim of privilege.  And we would like to narrow that
```

MOOG, INC. VS. SKYRYSE, INC. ET AL.

09:37:17  2   down.  But Plaintiff is not providing the information

09:37:22  3   that we need in order to do that.  So, right now we're

09:37:36  4   stuck with a blanket assertion, but that is something

09:37:41  5   that we would like to cut down and our motion to stay

09:37:46  6   deals with that issue.

09:37:48  7         MAGISTRATE JUDGE MCCARTHY:  Mr. Green, you

09:37:50  8   know, the complaint in the preliminary injunction

09:37:54  9   motion, rightly or wrongly, makes abundantly clear that

09:38:00  10  your clients are being charged with theft, with illegal

09:38:04  11  conduct.  Why wouldn't you have been on notice at that

09:38:11  12  point that by producing the documents, there was at

09:38:15  13  least the potential of criminal implications?  You don't

09:38:19  14  need a definition of what the trade secrets are.  I

09:38:24  15  mean, at that point, you could have said, "we're not

09:38:28  16  producing anything based on the Fifth Amendment."

09:38:33  17        MR. GREEN:  Well, when that happened, our

09:38:36  18  clients were not even represented by counsel.  So --

09:38:39  19        MAGISTRATE JUDGE MCCARTHY:  Well, they were

09:38:40  20  represented by counsel as of March 16th, docket No. 33,

09:38:52  21  which they were represented by previous counsel, but

09:38:57  22  they were represented by counsel.  And that document,

09:39:00  23  the second stipulated order reaffirmed and incorporated

09:39:05  24  by reference all of the obligations of the initial

09:39:08  25  stipulated order, which is docket No. 25.  So the

```
                      MOOG, INC. VS. SKYRYSE, INC. ET AL.
09:39:12   2   argument that they weren't represented by counsel when
09:39:17   3   the production took place strikes me as less than
09:39:21   4   persuasive.
09:39:24   5          MR. GREEN:  Well, the stip was signed before
09:39:27   6   they had counsel.  And --
09:39:29   7          MAGISTRATE JUDGE MCCARTHY:  No.  The first
09:39:31   8   stip was signed before they had counsel.  A few days
09:39:34   9   later, a second stip was signed by counsel, which
09:39:37  10   expressly reaffirmed all of the obligations of the first
09:39:42  11   stip.  So, again, that, to me, doesn't move the needle,
09:39:51  12   as far as I'm concerned.
09:39:53  13          MR. GREEN:  Well, your Honor, there are a
09:39:57  14   large number of cases, large number of civil cases that
09:40:01  15   if you really wanted to (inaudible) up and work and get
09:40:43  16   the prosecution involved, there could be a potential
09:40:47  17   criminal case.  But here there is a lot that we did not
09:40:50  18   know.  There was a lot that we did not know.  We did not
09:40:53  19   know that the Plaintiff was instigating through
09:40:58  20   pre-complaint communications, a prosecution, against our
09:41:02  21   clients.  We did not know how deeply involved the
09:41:05  22   Plaintiff was with that prosecution.  Their meeting
09:41:09  23   biweekly, that they were providing them our information
09:41:13  24   and circumventing our Fifth Amendment rights in that
09:41:17  25   sense.  And --
```

1                   MOOG, INC. VS. SKYRYSE, INC. ET AL.

09:41:19    2          MAGISTRATE JUDGE MCCARTHY:  You know, Mr.

09:41:20    3   Hunter said in his declaration in support of the

09:41:23    4   preliminary injunction motion, which was served on your

09:41:26    5   clients, I believe, on March 8th, he said, "I am going

09:41:30    6   to have to notify the Government, and based on my

09:41:32    7   experience, the Government doesn't take lightly to this

09:41:36    8   type of treatment of their information."

09:41:39    9          Now, I grant you that it appears that Moog

09:41:43   10   was in contact with portions of the government prior to

09:41:47   11   that time, but he made clear, I mean, there couldn't

09:41:51   12   have been any doubt after the date of your client's

09:41:55   13   receiving his declaration that the government would be

09:41:58   14   contacted and things might not go well, once the

09:42:03   15   Government was contacted.  And, particularly, when your

09:42:07   16   clients are being charged with theft and illegal

09:42:12   17   conduct, I have difficulty seeing why a Fifth Amendment

09:42:18   18   alarm bells wouldn't be going off at that point.

09:42:22   19          MR. GREEN:  Well, they've withdrawn the

09:42:24   20   claim that classified information and then let's even

09:42:27   21   look at that statement as your Honor noted.

09:42:30   22          MAGISTRATE JUDGE MCCARTHY:  By the way,

09:42:31   23   where did they withdraw that?  I know you made a

09:42:34   24   statement similar to that effect, but where?

09:42:37   25          MR. GREEN:  I believe they withdrew it or

```
                          MOOG, INC. VS. SKYRYSE, INC. ET AL.
09:42:40   2    said that it doesn't exist anymore in their motion to
09:42:46   3    compel.
09:42:48   4                    MAGISTRATE JUDGE MCCARTHY:  Counsel, for
09:42:50   5    Moog, is that correct?
09:44:04   6                    MR. TRUITT:  I believe it was the motion to
09:44:08   7    stip.
09:44:11   8                    MAGISTRATE JUDGE MCCARTHY:  Okay.  And just
09:44:18   9    can I hear from somebody on behalf of Moog and somebody
09:44:22  10    point me to a docket number.
09:44:27  11                    MR. FLUSKEY:  Your Honor, I confess, I don't
09:44:29  12    know if that is correct.  If my other colleagues believe
09:44:32  13    that is correct or incorrect.
09:44:35  14                    MS. ANDOH:  Sorry, your Honor.  Can somebody
09:44:37  15    please repeat the question, I probably can answer it.
09:44:39  16                    MAGISTRATE JUDGE MCCARTHY:  Mr. Green has
09:44:41  17    said that Moog has withdrawn its claim that confidential
09:44:46  18    information was taken.
09:44:48  19                    MS. ANDOH:  Confidential or classified?
09:44:50  20    Because I think that one of the issues here, your Honor,
09:44:53  21    is that they conflate those two categories of
09:44:57  22    information repeatedly in their brief.  So, I want to
09:45:00  23    make sure that everyone is very clear about what the
09:45:02  24    allegations are and what they aren't.  We allege that
09:45:05  25    confidential information was taken, and we also allege
```

1        MOOG, INC. VS. SKYRYSE, INC. ET AL.

09:45:08  2   that some of that information could rise to the level of

09:45:11  3   what the government calls "sensitive information" or

09:45:14  4   CUI.  It's an abbreviation.  What the complaint did not

09:45:19  5   allege or that we never have alleged is that classified

09:45:22  6   information was included in that complaint.  And I will

09:45:24  7   say, your Honor, without making any waiver of privilege

09:45:27  8   or anything else, that had our internal investigation

09:45:31  9   indicated that there was classified information involved

09:45:33  10  in the theft, we would not have been able to proceed by

09:45:37  11  filing the complete file listing the way that we did in

09:45:41  12  connection of the civil complaint.  There would have

09:45:46  13  been other procedures that would have needed to be

09:45:48  14  followed because there was classified information that

09:45:52  15  was implicated.

09:45:54  16        So, is there sensitive information involved?

09:45:57  17  Absolutely.  Is there a very broad swath of information

09:46:01  18  that are specific to sensitive government programs?

09:46:05  19  Yes.  Is any of that information that was taken

09:46:08  20  classified?  To the best of our understanding and to the

09:46:11  21  best of our engagement on trying to determine this, the

09:46:14  22  answer is no, and we've never made that allegation.

09:46:17  23        MAGISTRATE JUDGE MCCARTHY:  Okay.  Thank

09:46:17  24  you.

09:46:19  25        MR. GREEN:  Well, they did imply that, and

1        MOOG, INC. VS. SKYRYSE, INC. ET AL.

09:46:24   2    at least imply, and at least in paragraph 244 of the

09:46:28   3    complaint, so I disagree that they haven't made that

09:46:31   4    allegation, but it's been withdrawn.  And let's talk

09:46:35   5    about that statement, your Honor.  As you noted, they

09:46:40   6    said, well, we might contact the Government.  They

09:46:44   7    already were talking to the government.  And there are

09:46:47   8    many trade secret cases, allegations of taking trade

09:46:54   9    secrets, where there is never any prosecution and we've

09:46:57   10   proceeded just along civil lines.  There was no reason

09:47:00   11   for us to suspect that this would actually go to that

09:47:08   12   extreme.  And I don't think it was warranted, either.

09:47:11   13   But, it has happened, we're aware of it now, and the

09:47:17   14   fact is we -- I would consider this an inadvertent

09:47:25   15   disclosure.  When you ask what an inadvertent disclosure

09:47:29   16   is, you look at several factors the reasonableness of

09:47:32   17   the precautions used to prevent inadvertent disclosures.

09:47:38   18   Two, the time taken to rectify the error.  Three, the

09:48:10   19   scope of the discovery and extent of the disclosure.

09:48:13   20   And, four, overarching issues of fairness.

09:48:16   21        Now, with number one, the reasonableness of

09:48:19   22   the precautions.  We had a protective order in place

09:48:22   23   that provided for claw back.  So, I think that is fairly

09:48:28   24   clear that we did have a reasonable precaution.  Now,

09:48:32   25   the time taken to rectify the error.  That is their main

MOOG, INC. VS. SKYRYSE, INC. ET AL.

09:48:37  2  point that I suppose we took too long.  But the Second

09:48:45  3  Circuit has found that even six months is not too long

09:48:48  4  to assert the privilege.  So, I don't believe that we

09:48:55  5  are considering the gravity of this.

09:49:01  6          MAGISTRATE JUDGE MCCARTHY:  Mr. Green, let's

09:49:03  7  turn to what I consider to be another really, I guess,

09:49:07  8  foundational issue is here is do you have a Fifth

09:49:11  9  Amendment privilege at all?

09:49:14  10          MR. GREEN:  Yes.  Thank you.

09:49:15  11          MAGISTRATE JUDGE MCCARTHY:  Were you

09:49:16  12  compelled to turn over these documents, these devices?

09:49:22  13  You turned them over pursuant to a stipulated orders

09:49:26  14  that you agreed to.

09:49:30  15          MR. GREEN:  Yes, your Honor.  But I don't

09:49:32  16  believe that that prevents us from asserting the

09:49:37  17  privilege.  And --

09:49:39  18          MAGISTRATE JUDGE MCCARTHY:  Well, the Fifth

09:49:41  19  Amendment protects only against compelled incrimination.

09:49:45  20  So, how were you compelled to turn these devices over?

09:49:49  21  You agreed to at the outset to the two documents, and,

09:49:54  22  granted, your clients were not represented by counsel

09:49:59  23  when the first document was signed, but they were when

09:50:02  24  the second document was signed, 33.  I grant you that

09:50:06  25  wasn't your firm, but they were represented by counsel.

```
 1              MOOG, INC. VS. SKYRYSE, INC. ET AL.
 2  They agreed to that.  The Court could not have issued
 3  and order unless the parties had agreed to it because
 4  it's a stipulated order.  So, how were they compelled to
 5  produce this information?
 6              MR. GREEN:  They would be compelled to
 7  produce it if we were ordered to provide access again.
 8  If we were ordered to provide, we didn't -- there was
 9  never any promise in those orders that everything would
10  be produced.  And there was a great deal we didn't know
11  at the time.  And even those orders and the protective
12  order, this all contemplated privileged information.
13  Being turning over privileged information.  And not only
14  that, but also personal private information.  So, it's
15  not -- agreeing to that stipulation is not in any sense
16  a waiver of our Fifth Amendment rights.  And if we are
17  compelled to waive them by order of the Court, which is
18  what Moog is seeking, that is a different story.
19              And, you know, if I can get back to the, if
20  we want to talk about the act of production and the
21  foregone conclusion doctrine.
22              MAGISTRATE JUDGE MCCARTHY:  Yes, let's talk
23  about that.
24              MR. GREEN:  And, your Honor, I find it very
25  strange, this argument that there is a foregone
```

1          MOOG, INC. VS. SKYRYSE, INC. ET AL.

09:51:35    2    conclusion when, first of all, Plaintiff hasn't told us

09:51:41    3    exactly how much of our devices that they ever had

09:51:44    4    access to they've even reviewed.  But, they've

09:51:51    5    constantly said that they don't know what is on those

09:51:54    6    devices, that they need to look at them to see what is

09:51:57    7    on those devices in order to tell us what their trade

09:52:03    8    secrets are.  I don't believe they actually do need to

09:52:05    9    look at them to tell us what their trade secrets are,

09:52:09   10    even based on their own admissions.  But they have said

09:52:13   11    over and over that they don't know what is on those

09:52:17   12    devices.

09:52:18   13          MAGISTRATE JUDGE MCCARTHY:  Mr. Green, let

09:52:19   14    me just jump in for a second.  Whether or not they know

09:52:22   15    what's on the devices, my understanding, and correct me

09:52:25   16    if I'm wrong, but the foregone -- first of all, I think

09:52:29   17    it's well settled that the contents of the devices

09:52:32   18    themselves are not protected by the Fifth Amendment.

09:52:38   19    What is protected, potentially, by the Fifth Amendment

09:52:41   20    is a testimonial production, which would indicate that

09:52:46   21    your client, that they were your client's devices.  But,

09:52:52   22    that's, as far as I can tell, that is a foregone

09:52:56   23    conclusion.  Your clients have repeatedly admitted that

09:52:59   24    those were those devices and they turned over their

09:53:03   25    devices to IDS.

1            MOOG, INC. VS. SKYRYSE, INC. ET AL.

09:53:05   2            MR. GREEN:  No, your Honor.

09:53:06   3            MAGISTRATE JUDGE MCCARTHY:  What is

09:53:07   4  privileged about that?  It may be that the contents are

09:53:10   5  incriminating, it may be that they are not, I don't

09:53:13   6  know.  But if they are, the contents are not protected

09:53:18   7  by the Fifth Amendment.

09:53:19   8            MR. GREEN:  No, your Honor, it's the

09:53:27   9  existence of information on those devices that would be

09:53:31  10  testimonial.  It's what that -- what that -- the fact

09:53:37  11  that they have those devices, that those devices are

09:53:41  12  theirs, that is not -- I wouldn't say that is relevant.

09:53:46  13  What is relevant is what data is on them.  And if they

09:53:51  14  provide access to those devices, your Honor, then that

09:53:56  15  would admit existence of certain data in their

09:54:03  16  possession, custody and control.  And we haven't

09:54:07  17  admitted that as to any particular device.  So, the Act

09:54:15  18  of Production Doctrine does apply.  There is no foregone

09:54:17  19  conclusion of what any of those devices contain.  What

09:54:22  20  we were asked to provide to IDS is very broad.  It was

09:54:27  21  just any device that we had used while we were -- while

09:54:33  22  our clients were employed by Moog.  So, that, in itself,

09:54:42  23  does not tell you this is what's on this device, this is

09:54:46  24  what's on that device, and that is a far different

09:54:51  25  issue.  What information exists on those devices.  That

| | | |
|---|---|---|
| | 1 | MOOG, INC. VS. SKYRYSE, INC. ET AL. |
| 09:54:56 | 2 | is the testimonial aspect.  For instance, say you have a |
| 09:55:01 | 3 | safe, and you -- everyone knows, it's a foregone |
| 09:55:05 | 4 | conclusion that someone has a safe.  But it's not a |
| 09:55:09 | 5 | foregone conclusion of what's inside the safe.  And if a |
| 09:55:13 | 6 | person provides -- so the Act of Production Doctrine |
| 09:55:17 | 7 | would apply before someone could give you the password |
| 09:55:21 | 8 | to open that safe and see what's inside because that is |
| 09:55:25 | 9 | how you would confirm the existence of -- |
| 09:55:30 | 10 | MAGISTRATE JUDGE MCCARTHY:  Well, the giving |
| 09:55:31 | 11 | of the password is testimonial because that establishes |
| 09:55:34 | 12 | a tie between you and -- not you -- but a person and |
| 09:55:38 | 13 | what's in the safe.  But, and, you know, I'll take |
| 09:55:44 | 14 | another look at it, but my understanding is the contents |
| 09:55:48 | 15 | of the safe themselves are not protected by the Fifth |
| 09:55:52 | 16 | Amendment, even though they may be incriminating.  The |
| 09:55:55 | 17 | only thing that is protected is testimonial connection |
| 09:55:59 | 18 | between the potential Defendant and the document or the |
| 09:56:04 | 19 | electronic device or whatever.  And in this case, that |
| 09:56:09 | 20 | is really not an issue any longer, as far as I can see. |
| 09:56:18 | 21 | MR. GREEN:  But it's not, though.  There has |
| 10:17:13 | 22 | not been any admission as to what is on any particular |
| 10:17:17 | 23 | device. |
| 10:17:17 | 24 | MAGISTRATE JUDGE MCCARTHY:  That's true, but |
| 10:17:21 | 25 | what has been admitted is that they are their devices. |

|     |     |
| --- | --- |
| | 1 |

```
                1        MOOG, INC. VS. SKYRYSE, INC. ET AL.
10:17:26        2        MR. GREEN:  Yes, that they are their
10:17:32        3   devices.  But that does not -- that's not with the Act
10:17:41        4   of Production Doctrine protects.  The Act of Production
10:17:51        5   Doctrine protects the actual contents of the device.
10:17:57        6   And to produce the contents of those devices, that would
10:18:02        7   be an -- that could be an incriminating act.  So, that
10:18:10        8   act of production, it does apply.  I can actually read
10:18:21        9   -- hold on, let me find.  Yes, the Act of Production may
10:18:31       10   implicitly communicate statements of fact by compelling
10:18:35       11   the person to admit that the papers existed, were in his
10:19:34       12   possession or control and were authentic, that is United
10:19:42       13   States v Dell.
10:19:42       14        MAGISTRATE JUDGE MCCARTHY:  Exactly.  And
10:19:43       15   the Defendants here have admitted, we're talking about
10:19:47       16   23 electronic devices, and the Defendants have admitted
10:19:52       17   that they are theirs.  So, regardless what is in those
10:19:55       18   devices, the content of those devices is not what is
10:19:59       19   protected by the Fifth Amendment.
10:20:01       20        MR. GREEN:  Your Honor, we're not sued for,
10:20:05       21   for having possession of those devices.  Those are our
10:20:08       22   devices.  What we're sued for is what might be,
10:20:12       23   according to Plaintiff, on those devices.
10:20:14       24        MAGISTRATE JUDGE MCCARTHY:  Right.
10:20:15       25        MR. GREEN:  So, the fact that the devices
```

1          MOOG, INC. VS. SKYRYSE, INC. ET AL.
10:20:17   2    exist and were ours, that's not very relevant to this,
10:20:27   3    to this inquiry.  What is relevant to this inquiry is
10:20:31   4    what's inside the devices.  Whether -- whether any of
10:20:35   5    Moog's data is inside these devices.  And that is what
10:20:43   6    the act of production, how the Act of Production
10:20:50   7    Doctrine applies to them.  So, it does apply, there is
10:20:55   8    no foregone conclusion as to what the devices contain.
10:20:59   9    And for us to provide access to them would allow the
10:21:07   10   confirmation of the existence or would communicate
10:21:13   11   information about, you know, certain data's existence,
10:22:24   12   (inaudible) and authenticity.  And that is why the Fifth
10:22:28   13   Amendment would apply to our devices.
10:22:31   14          MAGISTRATE JUDGE MCCARTHY:  Okay.  I'll
10:22:34   15   consider that.
10:22:36   16          Mr. Fluskey, do you agree with Mr. Green's
10:22:39   17   characterization of what the Fifth Amendment protects?
10:22:42   18          MR. FLUSKEY:  I do not, your Honor.  I would
10:22:44   19   agree with the construct that you summarized, which is
10:22:49   20   that the documents themselves are not subject to Fifth
10:22:53   21   Amendment privilege.  And, in fact, the *Burt Hill* case,
10:22:58   22   *Burt Hill v. Hassan* that we cite in our brief addresses
10:23:00   23   this very issue.  So the document itself or the data
10:23:09   24   itself is not subject to Fifth Amendment privilege.  And
10:23:13   25   the foregone conclusion that the devices are the

```
 1            MOOG, INC. VS. SKYRYSE, INC. ET AL.
 2    individual Defendants.  It's also a foregone conclusion
 3    that they possessed Moog's confidential information
 4    because they admitted in RFAs, R-F-A, responses.  So, I
 5    don't agree with Mr. Green's summary of whether or not
 6    the Fifth Amendment would apply in the first instance.
 7            And two of their very quick points, your
 8    Honor, counsel has indicated that there has been a
 9    blanket assertion of the Fifth Amendment privilege.  It
10    has not happened.  We're dealing with a hypothetical
11    invocation of a privilege.  There has been no amendment
12    to discovery responses where the Fifth Amendment was
13    invoked.
14            One final point, you need not even get to
15    waiver, your Honor, to restore access to these devices.
16    Because there is no basis for the claw back.  This
17    information was already disclosed, Moog was in the
18    process of reviewing it.  And the Act of Production
19    Doctrine does not apply.  So you need not reach waiver.
20    Waiver is an independent basis for restoring access, but
21    you need not reach it.
22            MR. GREEN:  Your Honor, if I could just add
23    something.  What the requests have stated or request for
24    admission, and we did reserve our or preserve our
25    objections to that, but whether there is Moog data on
```

1          MOOG, INC. VS. SKYRYSE, INC. ET AL.

10:28:05   2   the devices isn't even the question, but whether there

10:28:09   3   are Moog trade secrets on the devices.  So, looking at

10:28:16   4   -- and that is the -- that is the important question.

10:28:18   5   Because there could be a whole host of data from Moog

10:28:22   6   that is not a trade secret.  But Moog hasn't told us

10:28:25   7   what the trade secrets are.  And that is why the Act of

10:28:35   8   Production Doctrine does apply.  Whether it would

10:28:40   9   confirm or disconfirm, if that is the word, whether

10:28:49   10  there are trade secrets on those devices, and that is

10:28:55   11  not a foregone conclusion.

10:28:58   12          MAGISTRATE JUDGE MCCARTHY:  Okay.  Thank you

10:28:59   13  all.  I recognize that the Fifth Amendment privilege of

10:29:03   14  all of the privileges that are available to anyone is

10:29:07   15  certainly one of the most important privileges and I

10:29:11   16  treat it as such.  I treat my approach to this issue

10:29:16   17  very carefully.  Having said that, I don't think there

10:29:21   18  is a privilege.  I think I respectfully disagree with

10:29:26   19  Mr. Green that the contents of the devices are what is

10:29:31   20  protected by the Fifth Amendment.  I think the case law

10:29:34   21  is clear that that is not what is protected.  What is

10:29:37   22  protected is any testimonial connection between the

10:29:42   23  individual and the devices.  But, the relationship

10:29:47   24  between Defendants Pilkington and Kim in these 23

10:29:53   25  devices is a foregone conclusion.  They've already

|  |  |  |
|---|---|---|
| | 1 | MOOG, INC. VS. SKYRYSE, INC. ET AL. |
| 10:29:57 | 2 | admitted that they are their devices.  Whether there is |
| 10:30:01 | 3 | anything on them that is incriminatory or not, I |
| 10:30:04 | 4 | certainly can't say, I haven't seen them.  Moog can't |
| 10:30:07 | 5 | say, they haven't seen them.  But, I think there is no |
| 10:30:11 | 6 | privilege to protect. |
| 10:30:16 | 7 | Secondly, if there was a privilege, it was |
| 10:30:20 | 8 | -- the production was not compelled.  The production was |
| 10:30:24 | 9 | voluntary under the two stipulations and orders to which |
| 10:30:28 | 10 | the Defendants agreed.  The second one, docket No. 33, |
| 10:30:33 | 11 | they agreed after they were represented by counsel, and |
| 10:30:37 | 12 | that document specifically reaffirmed all of the |
| 10:30:40 | 13 | obligations under the initial stipulation and order, |
| 10:30:44 | 14 | docket No. 25. |
| 10:30:48 | 15 | Thirdly, if there was the privilege, I think |
| 10:51:12 | 16 | it has been waived.  I think it was or should have been |
| 10:51:17 | 17 | obvious to the Defendants from the outset of this case |
| 10:51:19 | 18 | that there was potential Fifth Amendment ramifications |
| 10:51:22 | 19 | to the production of any evidence.  And, perhaps, one |
| 10:51:27 | 20 | striking indication of that fact is that the second |
| 10:51:30 | 21 | Stipulation and Order, docket No. 33, specifically |
| 10:51:36 | 22 | mentions at paragraph 3, the possibility of a Fifth |
| 10:51:41 | 23 | Amendment.  And it says, and I quote, "In the event any |
| 10:52:40 | 24 | witness knows prior to their noticed deposition that the |
| 10:52:43 | 25 | witness will invoke the Fifth Amendment," and then says |

|   |   |
|---|---|
| | 1 |

                    MOOG, INC. VS. SKYRYSE, INC. ET AL.

10:52:46   2   what should occur.  So, somebody was thinking of Fifth

10:52:51   3   Amendment back at that early date before any production

10:52:54   4   of these devices was made.  Now, having said that, and

10:52:59   5   so my conclusion is, and I will or I am writing on this

10:53:04   6   and you'll get that, I think that there is no Fifth

10:53:08   7   Amendment protection with respect to the devices

10:53:11   8   themselves.  If there was a Fifth Amendment protection,

10:53:15   9   it has been waived.

10:53:16  10          However, and this, I guess, segues into the

10:53:21  11   stay motion, which we'll be discussing on a different

10:53:25  12   date, that does not mean that the Defendants have waived

10:53:28  13   any Fifth Amendment right that they would have to refuse

10:53:32  14   to testify in a deposition.  And if the case is not

10:53:38  15   stayed, and if they invoke that right, there may be a

10:53:43  16   presumption drawn against them.  That is not a question

10:53:45  17   that I need to address today, but I just want to make

10:53:48  18   clear that I am not saying that they have waived any

10:53:53  19   future testimonial Fifth Amendment privilege.  They

10:53:56  20   remain free to assert that.  Because this is such an

10:54:00  21   important issue, even though my understanding of whether

10:54:07  22   a ruling on a privilege issue is dispositive or

10:54:12  23   non-dispositive, I think the case law is clear that it

10:54:15  24   is non-dispositive, meaning that any decision that I

10:54:18  25   render would be reviewable only if clearly erroneous.

1          MOOG, INC. VS. SKYRYSE, INC. ET AL.

10:54:25   2   Nonetheless, I will give -- I will, once my written

10:54:29   3   decision is issued, I will give the individual

10:54:33   4   Defendants a brief period of time to obtain a stay, if

10:54:38   5   they can, from Judge Vilardo.  But I want to be clear

10:54:42   6   that that doesn't mean that they apply for a stay and

10:54:45   7   the stay is effective.  It is effective only if they

10:54:49   8   obtain a stay from him.  They may, they may not, I don't

10:54:53   9   know, but I just want that to be clear.

10:54:57   10          And in terms of the timing of my written

10:55:00   11  decision, I've been working on it already.  I'm going to

10:55:03   12  be out of the office tomorrow.  I plan to get my

10:55:07   13  decision out to the parties early next week, both on the

10:55:15   14  jurisdictional issues with respect to -- or on the

10:55:19   15  proper forum for the preliminary injunction hearing, and

10:55:24   16  on the claw back and access issues.  And I will give

10:55:30   17  Pilkington, and, excuse me, and Kim a brief opportunity

10:55:35   18  to obtain a stay from Judge Vilardo if they can.

10:55:39   19          Now --

10:55:44   20          MR. LUMISH:  Your Honor, may I add one thing

10:55:46   21  on behalf of Skyryse, and I did not get a chance to

11:09:06   22  speak before you issued your decision.

11:09:13   23          MAGISTRATE JUDGE MCCARTHY:  Yes.

11:09:16   24          MR. LUMISH:  And I'm not going to try to

11:09:18   25  talk you out of the tentative as much as the timing,

MOOG, INC. VS. SKYRYSE, INC. ET AL.

11:09:27  2   which is the real thing that this argument has

11:09:31  3   illuminated for Skyryse is the really critical need for

11:09:37  4   a stay while these criminal proceedings are going

11:09:40  5   forward.  Because what I heard was your Honor's ruling

11:09:44  6   will be that the documents and the devices will be

11:09:47  7   produced, but that the witnesses may still now rely upon

11:09:52  8   the Fifth Amendment when they are deposed about those

11:09:55  9   documents.  And that is a catastrophic situation for

11:10:00  10  Skyryse in that our position is that we need the

11:10:04  11  discovery, too, for a full defense and for due process

11:10:07  12  for us.  And we also heard Mr. Fluskey talk about, and

11:10:12  13  preview, that he intends to ask for an adverse inference

11:10:16  14  against Skyryse, who has produced everything that it can

11:10:22  15  find in a timely fashion.  And so my request to the

11:13:09  16  Court is actually that your Honor hold back in issuing

11:13:13  17  your ruling until you decide the stay question because

11:13:16  18  the need for a stay is, in fact, evidenced by this

11:13:21  19  issue.  Part of our argument is that we need either all

11:13:24  20  or nothing in the civil case, and it should be, if we're

11:13:27  21  going to get partial, because the Fifth Amendment

11:13:30  22  invocations on testimony, and then requests for adverse

11:13:34  23  inferences based on those invocations, Skyryse is being

11:13:38  24  extraordinarily prejudiced through no conduct of its

11:13:43  25  own, and so --

```
                    MOOG, INC. VS. SKYRYSE, INC. ET AL.
11:13:43   2        MS. ANDOH:  Your Honor, can I be heard on
11:13:45   3   this?
11:13:45   4        MAGISTRATE JUDGE MCCARTHY:  Just a minute.
11:13:46   5   Just a minute.  Mr. Lumish, just to give you a bit of
11:13:51   6   comfort, you know, I want to be clear.  I am not ruling
11:13:54   7   that there is an adverse inference to be drawn against
11:13:58   8   anybody, and, in particular, an adverse inference to be
11:14:03   9   drawn against Skyryse, which, unless I'm surprised,
11:14:09  10   Skyryse's witnesses will not be invoking Fifth Amendment
11:14:15  11   grounds for refusing to testify at a deposition.  Maybe
11:14:19  12   they will, in which case that may be become an issue.
11:14:22  13   But, you know, I know there is a lot of considerations
11:14:26  14   to be drawn as to whether a stay should be granted, and,
11:14:31  15   if not, whether an adverse inference can be drawn
11:14:35  16   against anyone.  So, I'm not -- I'm certainly not
11:14:37  17   deciding those today.
11:14:39  18        MR. LUMISH:  I appreciate that very much,
11:14:41  19   your Honor.
11:14:41  20        MS. ANDOH:  Your Honor, if I may because
11:14:43  21   there is a related --
11:14:44  22        MAGISTRATE JUDGE MCCARTHY:  One at a time,
11:14:45  23   please, okay?
11:14:46  24        Ms. Andoh, you go now.
11:14:49  25        MS. ANDOH:  Thank you, your Honor.  So, what
```

1               MOOG, INC. VS. SKYRYSE, INC. ET AL.

11:14:51   2  Mr. Lumish just stated on the record here raises another

11:14:55   3  concern that Moog has and wanted to raise this before

11:14:58   4  your Honor today just to figure out procedurally what

11:15:01   5  the best option would be here.  So, a week ago, when we

11:15:05   6  were responding to the individual Defendant's motion to

11:15:09   7  stay, vis-a-vis the, individual Defendants only, meaning

11:15:17   8  the individual Defendants moved for a stay only with

11:15:20   9  respect to the two of them, after we had already filed

11:15:26  10  our opposition to that motion to stay, Skyryse filed a

11:15:30  11  brief that, in which they sought, even though they were

11:15:34  12  not a movant, a stay of the entire action.  And our view

11:15:38  13  of that is both that it is improper because it was not

11:16:40  14  actually a motion, it was also not styled as a cross

11:16:44  15  motion, it was styled as sort of a "me too" brief,

11:16:47  16  except they were now arguing for a stay of the complete

11:16:53  17  case instead of a vis-a-vis the individual Defendants

11:17:03  18  and also because of the structure of the briefing, in

11:17:10  19  other words, the individual Defendants filed the initial

11:17:12  20  motion, we were intending to oppose it and the

11:17:15  21  individual Defendants were then going to file a reply,

11:17:17  22  which we've now done.  We were given no opportunity

11:17:21  23  whatsoever to respond to Skyryse's request for relief,

11:17:26  24  which is not only improper, but also different in scope

11:17:31  25  than the relief that individual Defendants were

                        MOOG, INC. VS. SKYRYSE, INC. ET AL.

11:17:35   2   receiving.  We were going to file a motion for leave

11:17:39   3   with a supplemental brief, but, frankly, your Honor,

11:17:42   4   given how cluttered the docket has been over the last

11:17:48   5   few weeks, we actually thought it would be better to

11:17:51   6   actually come to your Honor and try and find out what

11:17:56   7   your Honor would prefer as a mechanism you prefer to

11:18:04   8   address these arguments prior to the argument on

11:18:09   9   September 12th.  But Moog absolutely needs the

11:18:16   10  opportunity to respond to this because the relief that

11:18:21   11  is being sought, to the extent that it's even being

11:18:24   12  sought, because it's not in the context of it, actually,

11:18:30   13  as an affirmative motion, is substantially broader and

11:18:36   14  the arguments that are being made are substantially

11:18:39   15  different than the arguments that Moog responded to in

11:18:41   16  its opposition brief.

11:18:42   17                  MAGISTRATE JUDGE MCCARTHY:  Okay.  Ms.

11:18:44   18  Andoh, I will confess that, you know, I've had a fairly

11:18:48   19  full plate just getting ready for today, so other

11:18:52   20  motions that have been filed, I have not paid close

11:18:56   21  attention to.  Tell me the docket number, if you can, of

11:19:01   22  the --

11:19:01   23                  MS. ANDOH:  Geez, your Honor.

11:19:03   24                  MAGISTRATE JUDGE MCCARTHY:  Maybe Mr. Lumish

11:19:06   25  or when was it filed?

                        MOOG, INC. VS. SKYRYSE, INC. ET AL.

11:19:07    2           MS. ANDOH:  It was filed a week ago

11:19:09    3   yesterday.  So, basically what happened, your Honor, is

11:19:11    4   when your Honor gave the briefing schedule for the

11:19:14    5   motion to stay, the original brief in the motion to stay

11:19:17    6   was filed by the individual Defendants, and it was filed

11:19:19    7   at the, I believe, it was the end of July and then --

11:19:24    8           MAGISTRATE JUDGE MCCARTHY:  I only thought

11:19:26    9   at the time that the individual Defendants were the only

11:19:30   10   ones seeking a stay.

11:19:32   11           MS. ANDOH:  That is true.

11:19:33   12           MAGISTRATE JUDGE MCCARTHY:  So this is news

11:19:35   13   to me.

11:19:35   14           MS. ANDOH:  And so then, and so they did,

11:19:37   15   they filed their brief.  And we then, two weeks later,

11:19:40   16   so August 3rd was the date of the original filing by the

11:19:43   17   individual Defendants for a stay, vis-a-vis, them.  We

11:19:47   18   then responded on, with our opposition brief, on the

11:19:52   19   17th of August.  And we responded to the individual

11:19:54   20   Defendant's motion.  Skyryse then filed, after we had

11:19:59   21   already filed our opposition brief, filed a brief that

11:20:03   22   was a responsive brief.

11:20:07   23           MAGISTRATE JUDGE MCCARTHY:  I see it now.

11:20:08   24           MS. ANDOH:  Yeah, to the individual

11:20:11   25   Defendants, but it's seeking a stay of the entire

                          MOOG, INC. VS. SKYRYSE, INC. ET AL.

11:20:13   2   action.  So, it's operationally a completely different

11:20:17   3   motion for stay than the individual Defendants, and Moog

11:20:19   4   has had no opportunity to respond to it.

11:20:21   5                MAGISTRATE JUDGE MCCARTHY:  Okay.  I think

11:20:22   6   I'm looking at it now.  It's docket No. 241.

11:20:28   7                MR. LUMISH:  Correct, your Honor.

11:21:45   8                MR. GREEN:  Your Honor, can we be heard on

11:21:47   9   this briefly to clarify something?

11:21:50  10                MAGISTRATE JUDGE MCCARTHY:  Can you please

11:21:51  11   just let me look at the document first?  And then I'll

11:21:53  12   get -- we got plenty of time.  I've cleared my

11:21:57  13   afternoon.

11:21:57  14                MR. GREEN:  Thank you, your Honor.

11:21:58  15                MAGISTRATE JUDGE MCCARTHY:  Everyone will

11:21:59  16   get a chance to speak, but I'm trying to go through one

11:22:02  17   thing at a time.

11:22:03  18                I'm looking at docket No. 241, entitled

11:22:07  19   "Skyryse's Supplemental Brief in Support of Individual

11:22:10  20   Defendant's Motion to Stay the Action."  Is that what

11:24:10  21   we're talking about?

11:24:11  22                MS. ANDOH:  That is it, your Honor.  And

11:24:13  23   that, and that is what we've not responded to.

11:24:17  24                MAGISTRATE JUDGE MCCARTHY:  Understandably.

11:24:19  25   Mr. Lumish or Mr. Gross, I mean, you didn't make your

```
                    MOOG, INC. VS. SKYRYSE, INC. ET AL.
11:24:24   2    own motion.  What's going on?
11:24:28   3            MR. GREEN:  Your Honor may I.
11:24:32   4            MAGISTRATE JUDGE MCCARTHY:  Mr. Green, just
11:24:33   5    a second, I asked Mr. Gross and Mr. Lumish a question,
11:24:36   6    you'll have your opportunity in a moment.
11:24:39   7            MR. GREEN:  Thank you, but Ms. Andoh's, our
11:24:41   8    request for a stay was of this action, not just against
11:24:47   9    us.
11:24:48  10            MAGISTRATE JUDGE MCCARTHY:  I'm not talking
11:24:49  11    about your motion.  I'm talking about Skyryse's
11:24:52  12    supplemental brief.  Okay?
11:24:54  13            MR. LUMISH:  Yes, your Honor.  This is Doug
11:24:55  14    Lumish for Skyryse.  We understood the individual
11:24:58  15    Defendant's motion to request a stay of the entire
11:25:00  16    action, and, in the alternative, a stay for them.  And
11:25:05  17    so what we filed was a motion or a brief, I should say,
11:25:09  18    excuse me, in support of that relief.  We think a stay
11:25:12  19    of the entire action is critical, and we think it would
11:25:15  20    be prejudicial to Skyryse to stay only the individual
11:25:18  21    Defendants for the reasons that I previewed, but have
11:25:21  22    not fully argued to your Honor.  If we should have filed
11:25:24  23    that as a separate motion, we're happy to do that.  We
11:25:27  24    can do that right away.  And we have no objection to
11:25:29  25    Moog's responding to it.
```

|       |    |                                                                    |
|-------|----|--------------------------------------------------------------------|
|       | 1  | MOOG, INC. VS. SKYRYSE, INC. ET AL.                                |
| 11:25:31 | 2  | MAGISTRATE JUDGE MCCARTHY:  Okay.  Well, I                       |
| 11:25:33 | 3  | mean, again, folks, I have not drilled down on any of           |
| 11:25:37 | 4  | the stay motions right now because I've had enough to do        |
| 11:25:40 | 5  | to get ready for today.  But, whether -- the issue is           |
| 11:25:45 | 6  | out there now on behalf of the individual Defendants as         |
| 11:25:48 | 7  | well as on behalf of Skyryse.  I won't make Skyryse go          |
| 11:25:53 | 8  | through the needless formality of deeming it a "me too"         |
| 11:25:58 | 9  | motion, but I'll deem it a "me too" motion and I'll             |
| 11:26:02 | 10 | issue a text order to that effect, but I will give Moog         |
| 11:26:06 | 11 | an opportunity to respond to it because they are               |
| 11:26:08 | 12 | certainly entitled to that.                                     |
| 11:26:11 | 13 | So, Ms. Andoh, you know, I would like to try           |
| 11:26:14 | 14 | and keep things on with respect to the stay motion for         |
| 11:26:17 | 15 | -- what are we on for, the 12th?                                |
| 11:26:19 | 16 | MS. ANDOH:  We are, your Honor.  I think we             |
| 11:26:21 | 17 | should be able to respond within, how about a week from        |
| 11:26:26 | 18 | today, so you have enough time to review it before the         |
| 11:26:29 | 19 | hearing?  Does that work?                                       |
| 11:26:34 | 20 | MAGISTRATE JUDGE MCCARTHY:  Today is?                 |
| 11:26:35 | 21 | MS. ANDOH:  The 25th, so September 1st.               |
| 11:26:37 | 22 | MAGISTRATE JUDGE MCCARTHY:  Yes, certainly.          |
| 11:26:39 | 23 | Yes, absolutely.  Even if you need a little more time          |
| 11:26:42 | 24 | than that.  I want to remind people, I think I mentioned        |
| 11:26:45 | 25 | that at one of our more recent conferences, but as of          |

MOOG, INC. VS. SKYRYSE, INC. ET AL.
September 15th, I will be out of the country, returning,
depending on flight arrangements, either on the 26th or
27th.  So I will definitely be back in on the 28th.
But, yes, I will be available, and I can conduct the
argument on the stay motions.  We'll call them motions
now.  I'll consider it an additional motion by Skyryse.
So, I will be prepared for the argument on the 12th.  If
you get it in by -- why don't, you said the 1st?  Why
don't -- I'll give you well the 5th is Labor Day, so
even if you want to get -- if you can get it in by --
get it in by the 2nd, can you do that?

MS. ANDOH:  I can, your Honor, that is fine.
I, frankly, and I don't want to jinks anybody from, my
view, my hope is to give the team the Labor Day off so
I'll submit by then.

MAGISTRATE JUDGE MCCARTHY:  You're getting
soft.  You're getting soft.

MS. ANDOH:  I feel I'm jinxing it by saying
it out loud.

MR. LUMISH:  Your Honor.

MAGISTRATE JUDGE MCCARTHY:  Yes, who spoke?

MR. LUMISH:  First, an apology, and then a
request.  To the extent we misunderstood your Honor's
text order, which instructed the individual Defendants

```
  1              MOOG, INC. VS. SKYRYSE, INC. ET AL.
11:28:16   2   to file their motion and for responses to come in from
11:28:19   3   the other parties, that is on me, and I apologize for
11:28:22   4   that.  I didn't appreciate that would have contemplated
11:28:26   5   it as a separate motion.  Since we're now deeming it as
11:28:29   6   a separate motion, we would then ask for a reply brief
11:28:33   7   in the normal course.
11:28:34   8              MAGISTRATE JUDGE MCCARTHY:  So, if Moog
11:28:35   9   gets, Rena, what did I say, next Friday?  I mean, if you
11:28:40  10   folks want to have the weekend off, we can make it
11:28:44  11   Thursday.
11:28:45  12              MS. ANDOH:  Friday, September 2nd is fine
11:28:47  13   with us.
11:28:48  14              MAGISTRATE JUDGE MCCARTHY:  So, then I will
11:28:49  15   allow replies by, how about by close of business?  Can
11:28:57  16   we say close of business on September 7th, or I won't
11:29:04  17   even say close of business, I'll say September 7th,
11:29:08  18   because I know for you folks means 11:59 p.m., I've seen
11:29:13  19   that.
11:29:13  20              MR. LUMISH:  11:59:59, your Honor.
11:29:16  21              MAGISTRATE JUDGE MCCARTHY:  And plus you get
11:29:19  22   West Coast, so you can bump it out three hours further.
11:29:21  23   But does that work for everybody?
11:29:23  24              MR. LUMISH:  We much appreciate it, your
11:29:26  25   Honor.  Thank you.
```

|  | 1 | MOOG, INC. VS. SKYRYSE, INC. ET AL. |
|---|---|---|
| 11:29:26 | 2 | MAGISTRATE JUDGE MCCARTHY:  Let me just say, |
| 11:29:28 | 3 | I am going to get a written decision out on what we've |
| 11:29:31 | 4 | discussed today, because I think everybody needs to |
| 11:29:37 | 5 | cogitate on it.  But, again, with respect to the proper |
| 11:29:44 | 6 | forum for the preliminary injunction motion, I will not |
| 11:29:47 | 7 | be changing my mind regardless, maybe Judge Vilardo will |
| 11:29:51 | 8 | take a different view, but I think the parties have |
| 11:29:55 | 9 | contractually consented to the preliminary injunction |
| 11:30:02 | 10 | motion being held in this court regardless of what they |
| 11:30:06 | 11 | thought they were doing or what they intended to do, I |
| 11:30:09 | 12 | think the language of the two, of 25 and 33, read in |
| 11:30:12 | 13 | conjunction with each other, can only mean that the |
| 11:30:17 | 14 | preliminary injunction would take place here.  But, |
| 11:30:22 | 15 | having said that, I just want to repeat just for |
| 11:30:26 | 16 | people's benefit, I have not decided down the road |
| 11:30:31 | 17 | whether the remainder of this case would go to |
| 11:30:34 | 18 | California.  If Judge Vilardo doesn't fire me in the |
| 11:30:41 | 19 | interim, I think a transfer motion would be |
| 11:30:46 | 20 | non-dispositive, again, subject to review only for being |
| 11:30:52 | 21 | clearly erroneous.  And, obviously, there are a number |
| 11:30:56 | 22 | of factors to be considered between now and when that |
| 11:30:59 | 23 | issue would be decided.  But I'll just say for the |
| 11:31:02 | 24 | parties' benefit, as I sit here right now, I think there |
| 11:31:06 | 25 | is a pretty strong argument that once the preliminary |

|       |    |                                                                        |
|-------|----|------------------------------------------------------------------------|
|       | 1  | MOOG, INC. VS. SKYRYSE, INC. ET AL.                                     |
| 11:31:11 | 2  | injunction motion is decided in this court, the balance             |
| 11:31:14 | 3  | of the case should go out there.  And then you're faced             |
| 11:31:18 | 4  | with a decision, okay, now you've got an, or, you either            |
| 11:31:21 | 5  | do or do not have a preliminary injunction order from               |
| 11:31:24 | 6  | Judge Vilardo, now you have a different judge                        |
| 11:31:28 | 7  | potentially, at least, looking at it and deciding                    |
| 11:31:31 | 8  | whether he or she agrees with it and where the rest of              |
| 11:31:36 | 9  | the case goes.  So, those are just things that I would             |
| 11:31:39 | 10 | hope you're all thinking about.  And I don't say that              |
| 11:31:42 | 11 | because I want to get out of any, you know, work.                    |
| 11:31:49 | 12 | Obviously this case is pretty fascinating right now.                 |
| 11:31:51 | 13 | And if I don't do this case, I have other cases to work            |
| 11:31:55 | 14 | on.  I know that may surprise some of you.  I think                |
| 11:31:58 | 15 | these are factors that you all ought to be considering,            |
| 11:32:02 | 16 | I'm sure you have.  I don't mean to suggest you haven't.           |
| 11:32:06 | 17 | MR. GREEN:  Your Honor --                                            |
| 11:32:07 | 18 | MAGISTRATE JUDGE MCCARTHY:  No.  Mr. Green,                          |
| 11:32:08 | 19 | you wanted to say something?                                         |
| 11:32:09 | 20 | MR. GREEN:  I didn't mean to interrupt.                              |
| 11:32:12 | 21 | Just with the timing of the order, I have vacation                  |
| 11:32:16 | 22 | scheduled for next week, and I'd just like to give                  |
| 11:32:20 | 23 | myself enough time to respond to the order, especially,             |
| 11:32:26 | 24 | you know, on the Act of Production issues.                           |
| 11:32:31 | 25 | MAGISTRATE JUDGE MCCARTHY:  Okay.  You know,                         |

                         MOOG, INC. VS. SKYRYSE, INC. ET AL.

11:32:32   2   I understand people need to have some R and R time and

11:32:40   3   we all want to move the case along, but I think in the

11:32:44   4   grand scheme of things, particularly given the time of

11:32:47   5   year, that what we're still going to be arguing a stay

11:32:51   6   motion on September 12th, so, I will give you some time,

11:32:55   7   too.  Are you out all of next week?

11:32:59   8                MR. GREEN:  Yes, I am, your Honor.

11:33:01   9                MAGISTRATE JUDGE MCCARTHY:  Okay.  So I'll

11:33:03   10  factor that into how long we -- and, you know, I may

11:33:09   11  roll the whole thing over into the stay motion, but one

11:33:13   12  way or the other, my view is that you're going to have

11:33:16   13  to allow the access sooner or later, you can see if you

11:33:21   14  can convince Judge Vilardo otherwise.

11:33:25   15                One other thing, and Moog made a point of

11:33:27   16  this in one of their recent submissions, but I would

11:33:31   17  just like to reiterate because I have seen, and I forget

11:33:34   18  who, but somebody on the defense side saying more than

11:33:38   19  once that I have ordered Moog to disclose their trade

11:33:45   20  secrets now.  And if you look back at my July, I think,

11:33:49   21  27th or whatever order, docket No. 205, that is not what

11:33:56   22  I did.  What I said is, we're going to proceed in an

11:34:00   23  orderly fashion.  I recognize the arguments on both

11:34:02   24  sides.  But, on balance, Moog is going to have to make

11:34:06   25  that disclosure, but after they've had a sufficient

1          MOOG, INC. VS. SKYRYSE, INC. ET AL.

11:34:10   2   opportunity to figure out, not what their trade secrets

11:34:16   3   are, because, frankly, in the abstract, I don't care

11:34:21   4   what their trade secrets are, what I care about are

11:34:24   5   trade secrets that they claim in this case for purposes

11:34:27   6   of this preliminary injunction motion, to have been

11:34:32   7   misappropriated.  So, that is why they need access to

11:34:36   8   the Defendants' information.  Once that occurs, then

11:34:39   9   they will be required to make that disclosure.  So, and

11:34:42   10  I don't want there to be any confusion about whether or

11:34:46   11  not I have already ordered Moog to do this, because I

11:34:49   12  have not.  Okay.

11:34:52   13          Is there anything else that anybody wants to

11:34:56   14  bring to my attention today?

11:34:59   15          MS. YIP:  Yes, your Honor.  This is Lai Yip

11:35:01   16  on behalf of Moog.  I think at the beginning of the

11:35:03   17  hearing you had said that the motion for clarification

11:35:07   18  brought by Moog would be heard today.  I just wanted to

11:35:10   19  confirm that that still will be heard.

11:35:15   20          MAGISTRATE JUDGE MCCARTHY:  Yes.  Although,

11:35:17   21  as I see it, it kind of dovetails in with the stay

11:35:21   22  motion.  Yes, I will hear from you on that and then I'll

11:35:24   23  hear from Defendants.

11:35:26   24          MS. YIP:  Okay.  Well, thank you, your

11:35:28   25  Honor.

1          MOOG, INC. VS. SKYRYSE, INC. ET AL.

2                    So, the Court issued an order directing that

3     pending discovery deadlines our temporarily stayed.  The

4     issue here, and the subject of our motion, which is

5     Skyryse's refusal to print documents from the inspection

6     environment is not a discovery deadline issue.  It's not

7     even fundamentally about discovery.  We've already

8     discovered the information in the IDS inspection

9     environment, that is undisputed.  We've already seen it

10    and we're seeing it every day.  The issue is one of

11    form.  The problem is, that Skyryse is refusing to print

12    the documents that we have already discovered so that we

13    can actually use it in this case.  And when I say

14    "print," I'm using that as a shorthand to refer to

15    Skyryse providing us the document outside of the IDS

16    inspection environment.  So, for example, we've already

17    discovered during the inspection the chat messages on

18    the Skyryse device where Skyryse employees discussed

19    what Moog data can be "pilfered."  But Skyryse is

20    refusing to print that document in this case so that we

21    can use it in this case.  We also need the documents

22    printed so that it receives the proper confidentiality

23    designation.  Everything available for inspection at IDS

24    is, by default, designated "outside counsel" and "expert

25    eye's only."  Documents get properly and accurately

1                    MOOG, INC. VS. SKYRYSE, INC. ET AL.

11:38:02   2    designated when they are printed.  For example, going

11:38:05   3    back to the chat messages where Skyryse personnel are

11:38:11   4    discussing pilfering Moog data, that is by default

11:38:21   5    designated "outside counsel" and "expert's eyes only."

11:38:24   6    But these messages definitely do not merit this

11:38:57   7    designation, and certainly it makes sense that we cannot

11:39:04   8    discuss the messages specific content with our clients.

11:39:08   9    But that is exactly what's happening right now.  And the

11:39:11   10   ability to discuss those contents and those documents

11:39:14   11   with our clients is important for our trade secret

11:39:16   12   identification process, going back to your comments

11:39:18   13   earlier about that.  When these Skyryse personnel, who

11:39:22   14   are former Moog employees, are discussing what you

11:39:26   15   pilfer, they are using terms of art, technical terms,

11:39:28   16   that are specific to Moog.  And we need Moog employees

11:39:31   17   to explain to us what those Moog terms mean.  But right

11:39:35   18   now we're unable to do that because Skyryse refuses to

11:39:39   19   print the documents and designate them appropriately.

11:39:42   20   And it's impeding our ability to identify the trade

11:39:45   21   secrets that have been used by Skyryse.  Again, going

11:39:48   22   back to your Honor's comments that you're not interested

11:39:51   23   in seeing all of our trade secrets, but what has been

11:39:54   24   used in this case, what has been misappropriated.  Using

11:39:57   25   an analogy here, it's like us going into a physical

1          MOOG, INC. VS. SKYRYSE, INC. ET AL.

11:40:02   2  inspection to inspect source code where we find and

11:40:08   3  thoroughly analyze a document that clearly shows Skyryse

11:40:12   4  use of our trade secrets.  And we ask Skyryse, can we

11:40:18   5  have a printed copy of this document pursuant to the

11:40:20   6  protocol, and they say "no."  "You can look at the

11:40:24   7  document, you can analyze it all you want, but we won't

11:40:27   8  give you a copy of it so you can actually use it in this

11:40:31   9  case or show it to the Court."  And that makes no sense.

11:40:34  10          One final thing, I do want to point out a

11:40:38  11  very important misrepresentation in Skyryse's response

11:40:43  12  brief at page 3.

11:40:45  13          MAGISTRATE JUDGE MCCARTHY:  Which response

11:40:47  14  brief?  To the clarification?

11:40:51  15          MS. YIP:  Yes, and this would be docket 246,

11:40:56  16  this is Skyryse's response to our motion for

11:40:59  17  clarification.

11:41:00  18          MAGISTRATE JUDGE MCCARTHY:  Okay.  Let me

11:41:01  19  get that up.  And you say page 3?

11:41:04  20          MS. YIP:  Yes.

11:41:05  21          MAGISTRATE JUDGE MCCARTHY:  Just a minute.

11:41:22  22  Okay.  Okay.

11:41:28  23          Where are we here?

11:41:30  24          MS. YIP:  In the second full paragraph, the

11:41:32  25  sentence starts with "there is no question," and I'll

```
              1              MOOG, INC. VS. SKYRYSE, INC. ET AL.
11:41:35      2    read.
11:41:36      3              MAGISTRATE JUDGE MCCARTHY:  I have it.
11:41:37      4              MS. YIP:  Okay.  And they say "There is no
11:41:39      5    question that Moog already has access to relevant
11:41:43      6    Skyryse documents on the IDS review computers, and that
11:41:47      7    it can access, review, refer to, and describe them
11:41:50      8    without restriction."  That is not true.  We can not,
11:41:56      9    for example, this notion that we can describe the
11:42:00     10    documents without restriction is not true.  We can not,
11:42:05     11    for example, quote chunks of text in the documents in
11:42:09     12    our submission to the Court because that would be
11:42:11     13    copying of that text and copying of material from the
11:42:14     14    inspection environment is prohibited under the protocol
11:42:17     15    at section (3)(h)(1).  We can only quote chunks of texts
11:42:22     16    from the documents if Skyryse provides us with a
11:42:25     17    properly designated copy first.  And they have not done
11:42:28     18    so.  So, going back to the example of the chat messages
11:42:32     19    discussing pilfering of Moog data, we cannot quote the
11:42:36     20    specific chunks of text that discuss pilfering Moog
11:42:40     21    data, or even the precise Moog data that Skyryse is
11:42:48     22    pilfering.  And that is why as you can see that is a
11:42:52     23    consequence in one of our submissions to the Court at
11:42:58     24    docket 210-2, this is the declaration of Kevin Krozner,
11:43:05     25    which is one of the technical experts, that we are
```

1                    MOOG, INC. VS. SKYRYSE, INC. ET AL.

11:43:11    2    forced to discuss the pilfering in pretty vague terms.

11:43:18    3                    MAGISTRATE JUDGE MCCARTHY:  Let me just pull

11:43:19    4    that up for a minute.  210-2?

11:43:27    5                    MS. YIP:  Yes.  That is Bruce --

11:43:41    6                    It's Bruce Pixley's declaration, not Kevin

11:43:47    7    Krozner.  Bruce Pixley is also our technical expert.

11:43:52    8                    MAGISTRATE JUDGE MCCARTHY:  Okay.  And,

11:43:54    9    okay.

11:43:55   10                    MS. YIP:  And you'll see that in the last

11:43:57   11    paragraph of his declaration, he is talking about this

11:44:00   12    pilfering that is occurring.  And you'll see he talks

11:44:03   13    about the fact that there are these chat messages, but

11:44:07   14    there is no real detail in there about exactly what Moog

11:44:11   15    data is being referred to.  And, again, that is because

11:44:14   16    of this restriction against copying of material, which

11:44:20   17    would include copying whole chunks of text or being able

11:44:26   18    to include all of the chats that are going back and

11:44:28   19    forth between these two Skyryse employees.  So, when

11:44:32   20    Skyryse says --

11:44:34   21                    MAGISTRATE JUDGE MCCARTHY:  Ms. Yip, as I'm

11:44:35   22    at 210-2 of the last paragraph is redacted so presumably

11:44:40   23    because, so, is there an unredacted version of that

11:44:44   24    filed somewhere?

11:44:45   25                    MS. YIP:  It should be.

1          MOOG, INC. VS. SKYRYSE, INC. ET AL.

11:44:47  2         MAGISTRATE JUDGE MCCARTHY:  Paragraph 23 is,

11:44:49  3  it looks like the Mar-A-Lago search warrant application,

11:44:53  4  so I can't really see anything.

11:44:55  5         MS. YIP:  Yes.  It was e-mailed to your

11:44:58  6  Honor, the sealed version was e-mailed to your Honor.

11:45:01  7         MAGISTRATE JUDGE MCCARTHY:  Yeah, I'll find

11:45:02  8  it.  I'll find it.

11:45:04  9         MS. YIP:  But you'll see, when you look at

11:45:06 10  it, we have to describe it pretty generally.  And out of

11:45:09 11  an abundance of caution, even though it was described

11:45:16 12  pretty generally, we still sealed it.

11:45:18 13         MAGISTRATE JUDGE MCCARTHY:  Okay.

11:45:19 14         MS. YIP:  So when Skyryse says we can

11:45:24 15  describe what we are seeing "without restriction," is

11:45:28 16  just false.  To be clear, these provisions of the

11:45:31 17  protocol that prohibit copying materials from the

11:45:34 18  inspection environment, they are sensible measures to

11:45:38 19  insure security, but they only work if certain other

11:45:42 20  provisions of the protocol are honored.  Skyryse should

11:45:51 21  provide copies of documents when requested pursuant to

11:45:58 22  the protocol, because we are prohibited from copying

11:46:01 23  material or the material ourselves.  We believe that

11:46:05 24  Skyryse is well aware that without printouts of the

11:46:08 25  documents, we cannot describe the misappropriation that

```
              1              MOOG, INC. VS. SKYRYSE, INC. ET AL.
11:46:11      2    we're seeing with the kind of particularity and
11:46:14      3    specificity that would be effective.  So Skyryse's
11:46:17      4    position is, in effect, a mechanism for obscuring
11:46:21      5    details of the misappropriation from the Court and from
11:46:24      6    our client.
11:46:25      7              MAGISTRATE JUDGE MCCARTHY:  Okay.  Thank
11:46:26      8    you.  Mr. Lumish or Mr. Gross, you want to respond to
11:46:32      9    that?
11:46:32     10              MR. LUMISH:  Yes.  Thank you, your Honor.  I
11:46:33     11    start where you did.  Our general view is this is part
11:46:36     12    and parcel with the issues in the stay motion.  What
11:46:39     13    they are asking for is production of documents, which is
11:46:43     14    discovery, which, you know, either you're going to tell
11:46:46     15    us.
11:46:47     16              MAGISTRATE JUDGE MCCARTHY:  Well, they say
11:46:48     17    it's production of documents that they've already seen.
11:46:50     18              MR. LUMISH:  Right.  That makes it even
11:46:52     19    worse for them, because they have the documents
11:46:54     20    available to them at IDS, they can review and access
11:46:58     21    them.  They are not circumscribed in their ability to do
11:47:02     22    any of the work that they need to do to identify their
11:47:05     23    trade secrets in this case.  What Ms. Yip just said,
11:47:08     24    we're trying to hold back from you evidence of
11:47:11     25    "misappropriation."  That is discovery for the case that
```

1            MOOG, INC. VS. SKYRYSE, INC. ET AL.

11:47:15   2   is going to go forward, if your Honor denies the stay

11:47:19   3   motion, which, at which point, we'll be happy to comply

11:47:23   4   with all of our discovery obligations and provide

11:47:53   5   non-privileged materials as required.  What you're being

11:48:00   6   asked to do is force a production of documents while you

11:48:04   7   haven't yet addressed the stay, despite the notion that

11:48:07   8   we're holding these things in abeyance, when they have

11:48:10   9   full unfettered access to those documents.  And, you

11:48:13   10  know, Ms. Yip, her argument was, well, it's all

11:48:16   11  confidential and we can't say things, I think she said

11:48:20   12  the word "pilfer" six times, whether that is for your

11:48:24   13  Honor's benefit or the press', I don't know, but that is

11:48:27   14  a quote from a document she is telling you she can't

11:50:16   15  quote from.  At the end of the day, if she needs to

11:50:47   16  characterize something about misappropriation, that

11:50:49   17  there is no need for that now while we're waiting for a

11:50:52   18  stay to be decided.  There is no need for that while

11:50:55   19  they haven't yet identified their trade secrets per your

11:50:58   20  Honor's orders.  They are supposed to tell us what trade

11:51:02   21  secrets are at issue, not all of their evidence for

11:51:04   22  misappropriation.  Your Honor may deny the stay motion,

11:51:07   23  at which point all bets are off and discovery will

11:51:10   24  proceed.  But, if you grant it, this is just an end

11:51:13   25  around on that specific stay.  So, that is where I come

                    MOOG, INC. VS. SKYRYSE, INC. ET AL.

11:51:17   2   down, your Honor, we're happy to comply with our

11:51:20   3   obligations.  We just think it should be mutual.  If

11:51:23   4   there is a stay of discovery, we think it should apply

11:51:27   5   to discovery, generally, other than the things they need

11:52:07   6   to identify trade secrets.  And quoting to your Honor

11:52:10   7   the specifics of some text message does not help them

11:52:13   8   identify their trade secrets and it's not required for

11:52:16   9   that.

11:53:10   10              MS. YIP:  May I respond to that?

11:53:12   11              MAGISTRATE JUDGE MCCARTHY:  Yes, you may.

11:53:32   12              MS. YIP:  So, as I mentioned earlier, this

11:53:34   13   is not just about quoting, being able to show your Honor

11:53:36   14   what exactly has been going on, which we've been

11:53:41   15   hamstrung from being able to do, as I mentioned earlier.

11:53:45   16   It is about being able to discuss with our client

11:53:49   17   specific Moog terms, data, references to Moog materials

11:53:56   18   that we need the client's assistance to understand.

11:54:00   19   Again, going back to the chat messages, there is very

11:54:03   20   specific Moog terms of art that are discussed in those

11:54:07   21   chat messages that Moog employees and engineers will

11:54:10   22   know what they are talking about and we need that

11:54:13   23   assistance.  The Court has stated that, in our trade

11:54:16   24   secret identification, we should identify the trade

11:54:19   25   secrets that are most at issue, that is what has been

                      MOOG, INC. VS. SKYRYSE, INC. ET AL.

11:54:22   2   used, copied, incorporated, et cetera, by the Defendants
11:54:25   3   and not all 1.4 million files that have been
11:54:28   4   indisputably stolen.  The Court has also decided that
11:55:35   5   the ability to inspect the devices at IDS is
11:55:39   6   foundational to be able to identify the trade secrets
11:55:41   7   better at issue.  Skyryse's position would, in effect,
11:55:45   8   circumvent the Court's ruling by basically nullifying a
11:55:49   9   key provision in the protocol that would enable us to
11:55:52   10  fully identify the trade secrets at issue by preventing
11:55:55   11  us from obtaining copies of the documents showing the
11:55:58   12  misappropriation so that we can analyze them fully.
11:56:01   13  These documents are of limited use to us if they are
11:56:04   14  stuck on IDS's machines in Washington D.C.  As we noted,
11:56:10   15  we are in a position where we cannot show the documents
11:56:13   16  to your Honor.  We can not quote chunks of text to them
11:56:16   17  to describe with particularity to your Honor what has
11:57:09   18  been misappropriated that we are finding on the IDS
11:57:13   19  virtual machines and we're in this lopsided situation
11:57:17   20  where, for the very same document, we cannot quote or
11:57:20   21  describe the document with particularity, but Skyryse
11:57:25   22  can because it's from their own device.  And, of course,
11:58:39   23  for these types of documents, like the ones talking
11:58:41   24  about pilfering, we don't believe that Skyryse is
11:58:45   25  particularly incentivized to describe them to your Honor

```
 1              MOOG, INC. VS. SKYRYSE, INC. ET AL.
 2   with particularity.
 3              MAGISTRATE JUDGE MCCARTHY:  Okay.  Ms. Yip,
 4   let me ask you this, and without in any way diminishing
 5   the importance of these issues because they are
 6   important, I grant you that.  But we are scheduled for
 7   an oral argument on the stay motion in just a little
 8   over two weeks on September 12th.  Ms. Andoh has said
 9   that she is just in a lazy mood, I guess, so she is
10   going to try to give you people the Labor Day weekend
11   off.  But I guess is it, is there a compelling reason
12   why this cannot, and I'm going to look at it again and
13   focus on it, but is there a compelling reason why this
14   has to be decided between now and September 12th?
15              MS. YIP:  Well, certainly being able to --
16   being able to discuss and analyze the documents with our
17   client would be very helpful, but we also understand
18   some of the scheduling issues that has been discussed.
19   And, so, if this is something that your Honor feels
20   would be better addressed in conjunction with some of
21   the other pending issues, it would be fine with us.  We
22   do believe that it will slow down our analysis, as I've
23   mentioned, and I think we all recognize that there is
24   some urgency to that.  But, we also understand some of
25   the other counterveiling concerns.
```

|   |   |
|---|---|
|  | 1 |
| 12:00:20 | 2 |
| 12:00:20 | 3 |
| 12:00:25 | 4 |
| 12:00:30 | 5 |
| 12:00:32 | 6 |
| 12:00:33 | 7 |
| 12:00:36 | 8 |
| 12:00:39 | 9 |
| 12:00:42 | 10 |
| 12:00:49 | 11 |
| 12:00:54 | 12 |
| 12:00:57 | 13 |
| 12:01:02 | 14 |
| 12:01:08 | 15 |
| 12:01:13 | 16 |
| 12:01:16 | 17 |
| 12:01:20 | 18 |
| 12:01:23 | 19 |
| 12:01:26 | 20 |
| 12:01:33 | 21 |
| 12:01:54 | 22 |
| 12:01:57 | 23 |
| 12:02:00 | 24 |
| 12:02:06 | 25 |

1          MOOG, INC. VS. SKYRYSE, INC. ET AL.

2        MAGISTRATE JUDGE MCCARTHY:  Thank you.  I'm

3  not saying I will or will not defer it, but where did

4  Rena Andoh go?  There she is.  Rena, make sure Lai Yip

5  gets that weekend off.

6        MS. ANDOH:  Understood, your Honor.

7        MAGISTRATE JUDGE MCCARTHY:  But let me just,

8  and we're not going to discuss the stay motions in any

9  great detail right now, because, frankly, I have not

10  studied those submissions in any great detail, but let

11  me just ask defense counsel in general, I mean to stay

12  the entire case pending -- which I think is what you

13  want -- pending the conclusion of a criminal

14  investigation and/or proceeding that nobody knows if or

15  when there will be charges or if so, how long it will

16  take to resolve those charges, we could be talking

17  years, right?

18        MR. TRUITT:  It's certainly possible, your

19  Honor.  I think it's important to note that it looks

20  like a criminal indictment is coming down.  They are the

21  subjects, not just witnesses of an investigation.  And I

22  think, you know, once you get back to look at the

23  motions to stay, you're going to see that the

24  identification of these trade secrets is a pivotal

25  point, which is sort of getting in the way of everything

|   |   |
|---|---|
| | 1 |
| 12:02:08 | 2 |
| 12:02:11 | 3 |
| 12:02:14 | 4 |
| 12:02:16 | 5 |
| 12:02:19 | 6 |
| 12:02:23 | 7 |
| 12:02:27 | 8 |
| 12:02:32 | 9 |
| 12:02:37 | 10 |
| 12:02:40 | 11 |

1    MOOG, INC. VS. SKYRYSE, INC. ET AL.

2  proceeding in a timely manner, at least from the

3  Defendants' perspective.

4    MAGISTRATE JUDGE MCCARTHY:  Okay.  Well,

5  yeah, I mean, I got a lot of thinking to do between now

6  and then.  But, I mean, and I've said this before, but

7  we're kind of in a chicken and egg situation.  Because,

8  I mean, I've ruled what I've ruled in terms of who has

9  got to disclose what when.  And nobody has objected that

10  to Judge Vilardo, and your time to do that has now

11  expired, so that order stands.

12    MR. GREEN:  But, your Honor --

13    MAGISTRATE JUDGE MCCARTHY:  Mr. Green, just

14  a second, please.  If you're going to tell me that you

15  did object, maybe I missed it.  But, in any event, my

16  view of the world is that Moog needs information from

17  Defendants before it can identify the trade secrets at

18  issue in this case.  And Defendants are saying, well, we

19  can't, you know, we should put a hold on all that

20  because it may be incriminating, and we have to wait

21  until the criminal proceeding is concluded.  Those are

22  two kind of irreconcilable considerations that I'll have

23  to wrestle with.  Mr. Green, what did you want to say?

24    MR. GREEN:  Your Honor, I just wanted to say

25  that I believe that the briefing on the motion to stay

1          MOOG, INC. VS. SKYRYSE, INC. ET AL.

12:03:32   2   will satisfy you in terms of the chicken or the egg

12:03:36   3   situation.  I mean, first of all, we know that Moog has

12:03:39   4   already identified the files that Ms. Kim virtually

12:03:46   5   downloaded, and yet they haven't identified any of them

12:03:50   6   as trade secrets.

12:03:51   7          And, second, they claim or their expert has

12:03:54   8   claimed, and in one of their filings, that Mr.

12:03:58   9   Pilkington downloaded his entire Moog laptop.  They have

12:04:04  10   that laptop.  So, if there is -- if there are any trade

12:04:11  11   secrets on that laptop or in the files that they've

12:04:15  12   identified as having been downloaded by Ms. Kim, they

12:04:19  13   can identify any of those as trade secrets right now.

12:04:22  14   So, we go into this further in our motion for the stay.

12:04:31  15   But it's simply not true that they can't make this

12:04:37  16   determination right now.

12:04:39  17          MAGISTRATE JUDGE MCCARTHY:  All right.

12:04:40  18   Well, I will, you know, I'll study all of the

12:04:44  19   submissions regarding the stay and be ready to hit the

12:04:49  20   ground running on September 12th.  With respect to what

12:04:52  21   Ms. Yip has just argued, I may get to that sooner, I may

12:04:56  22   not.  I'll just see how things go.  Okay?

12:04:59  23          Is there anything else that I need to

12:05:01  24   address today, counsel?

12:05:06  25          MS. ANDOH:  Nothing on behalf of Plaintiffs.

```
                1            MOOG, INC. VS. SKYRYSE, INC. ET AL.
12:05:08        2              MR. LUMISH:  Not for Skyryse, your Honor.
12:05:09        3              MAGISTRATE JUDGE MCCARTHY:  Mr. Green?
12:05:10        4              MR. GREEN:  No, not right now, your Honor.
12:05:15        5              MAGISTRATE JUDGE MCCARTHY:  Mr. Green, enjoy
12:05:17        6     your vacation.  Don't think about this case.  I hope
12:05:19        7     you'll be on a beach.
12:05:22        8              MR. GREEN:  It will hard not to think about
12:05:25        9     the case, but I will try.
12:05:26       10              MAGISTRATE JUDGE MCCARTHY:  Okay.  I will,
12:05:28       11     we will reconvene in a couple of weeks and we'll see
12:05:32       12     where we go.  Thank you all.
12:05:35       13              MR. LUMISH:  Thank you, your Honor.
12:05:36       14              MR. GREEN:  Thank you.
12:05:37       15              MS. ANDOH:  Thank you, your Honor.
               16                        *    *    *
               17                   CERTIFICATE OF REPORTER
               18
               19       I certify that the foregoing is a correct transcript
               20     of the record to the best of my ability of proceedings
               21     transcribed from the audio in the above-entitled matter.
               22
               23     S/ Karen J. Clark,  RPR
               24     Official Court Reporter
               25
```