UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MOOG INC.,

                              Plaintiff,

        v.                                                          Case No.: 1:22-cv-00187

SKYRYSE, INC., ROBERT ALIN
PILKINGTON, MISOOK KIM, and DOES NOS.
1-50,

                              Defendants.


**MOOG INC.'S MEMORANDUM OF LAW
IN OPPOSITION TO THE INDIVIDUAL DEFENDANTS'
OBJECTIONS TO AUGUST 29, 2022 REPORT, RECOMMENDATION
 AND ORDER (ECF 264) REGARDING FIFTH AMENDMENT ISSUES**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

FACTUAL BACKGROUND ....................................................................................................4

I.      The Complaint and Initial Filings ............................................................................4

II.     The March 11 Order..................................................................................................5

III.    The March 17 Order..................................................................................................5

IV.     The Individual Defendants' Production of Devices and Participation in
        Discovery ..................................................................................................................6

V.      The Individual Defendants Express Hypothetical Fifth Amendment
        "Concerns"................................................................................................................7

VI.     The Individual Defendants' Unilateral Exercise of Self-Help and a
        Consolidated Timeline ..............................................................................................8

VII.    The RRO ..................................................................................................................10

LEGAL STANDARD...............................................................................................................12

ARGUMENT .............................................................................................................................13

I.      The Individual Defendants Have Not Invoked the Fifth Amendment
        Privilege ..................................................................................................................13

II.     The RRO Correctly Determined that the Act of Production Applies to the
        Electronic Devices at Issue ....................................................................................15

        A.      The Act of Production Doctrine Applies Here ...........................................15

        B.      The Individual Defendants' Objection is Based on a Red Herring
                Unsupported by Legal Authority ...............................................................17

III.    The RRO Correctly Determined that the Stipulated Protective Order Does
        Not Permit the Individual Defendants to Claw Back the  Electronic
        Devices......................................................................................................................18

IV.     The RRO Correctly Determined that any Fifth Amendment Privilege Had
        Been Waived .............................................................................................................19

i

A.     The Individual Defendants Voluntarily Produced the Electronic Devices .......................................................................................21

B.     Moog's Communications with the USAO are a Red Herring ..................22

C.     Moog is Substantially Prejudiced ...........................................................23

CONCLUSION.............................................................................................................24

SMRH:4860-3865-0419.4

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Federal Cases**

*Am. Rock Salt Co., LLC v. Norfolk S. Corp.*,
  371 F. Supp. 2d 358 (W.D.N.Y. 2005) ..........................................................................13

*Burt Hill, Inc. v. Hassan*,
  2010 WL 55715 (W.D. Pa. 2010) .........................................................11, 15, 16, 17, 18

*Cohen v. Altman*,
  No. 519CV274TJMTWD, 2022 WL 370948 (N.D.N.Y. Feb. 8, 2022) ...............20, 21

*In re Gorsoan Ltd.*,
  No. 17-CV-5912 (RJS), 2020 WL 3172777 (S.D.N.Y. June 15, 2020) ...............20, 21

*Matter of Grand Jury Empanelled Feb. 14, 1978*,
  603 F.2d 469 (3d Cir. 1979) .........................................................................................15

*Mackey v. U.S.*,
  411 F.2d 504 (7th Cir. 1969) ........................................................................................13

*Nealy v. U.S. Surgical Corp.*,
  587 F. Supp. 2d 579 (S.D.N.Y. 2008) ..........................................................................23

*Pearson Education, Inc. v. Kumar*,
  2010 WL 2230574 (S.D.N.Y. May 27, 2010), judgment vacated on
  other grounds, 523 Fed. Appx. 2013 (Jun. 20, 2013) ..................................................23

*S.E.C. v. Caramadre*,
  717 F. Supp. 2d 217 (D.R.I. 2010) ................................................................................14

*Slainte Invs. Ltd. P'ship v. Jeffrey*,
  No. 3:14-CV-1750 CSH, 2015 WL 1445331 (D. Conn. Mar. 30, 2015) ....................14

*Tehan v. United States ex rel. Shott*,
  382 U.S. 406 (1966) ......................................................................................................14

*Thurmond v. Bowman*,
  199 F. Supp. 3d 686 (W.D.N.Y. 2016) .........................................................................12

*United States v. Doe*,
  465 U.S. 605 (1984). (*Id.*, p. 7) ...................................................................................11

iii

*United States v. Fridman*,
    337 F. Supp. 3d 259 (S.D.N.Y. 2018), aff'd, 974 F.3d 163 (2d Cir.
    2020) ................................................................................................15, 16

*United States v. Hubbell*,
    530 U.S. 27 (2000)..................................................................................15

*Upstate Shredding, LLC v. Northeastern Ferrous, Inc.*,
    2016 WL 865299 (N.D.N.Y. Mar. 2, 2016) ..............................................22

**Federal Statutes**

Computer Fraud and Abuse Act .......................................................................16

Defend Trade Secrets Act ("DTSA") ...............................................1, 4, 8, 20

**Rules**

Fed. R. Civ. P. 72...........................................................................................12

Rule 502 ...........................................................................................3, 12, 19

SMRH:4860-3865-0419.4

Pursuant to the Court's September 13, 2022 minute order (ECF 265), Plaintiff Moog, Inc. ("Moog"), by and through its undersigned counsel, hereby submits this memorandum of law in opposition to defendants Robert Alin Pilkington and Misook Kim's (the "Individual Defendants") Objections (the "Objections") to the August 29 Report, Recommendation and Order (the "RRO") (ECF 264) that are related to the Motion for Interim Stay (ECF 260) and Fifth Amendment issues.

**PRELIMINARY STATEMENT**

The Individual Defendants do not dispute that they stole more than 1.4 million Moog files relating to over a dozen flight control programs (including sensitive government programs) upon their departure from Moog and before joining Moog's competitor, defendant Skyryse, Inc. ("Skyryse"). The Individual Defendants' Objections to the RRO are just the latest effort designed to obstruct Moog's ability to fully understand the scope and nature of the flagrant misappropriation of trade secrets that has occurred.

Moog's Complaint and initial filings charged the Individual Defendants with misappropriation of trade secrets under the DTSA (which carries criminal penalties), and also previewed that the Government would likely take action in response to the data theft. On March 11, the Individual Defendants entered into a Stipulated Order which required them to produce all Moog non-public information in their possession, custody or control. (ECF 25). In response to this order, the Individual Defendants produced 23 electronic devices to a neutral forensics vendor on April 1, some of which were directly used to copy over 1.4 million Moog files. The Individual Defendants admit they were served with grand jury subpoenas on June 15. Yet, they consented to Moog's access to 17 of the 23 electronic devices at issue on June 29. It was not until July 27 that the Individual Defendants unilaterally revoked Moog's access to those devices based upon a hypothetical assertion of the Fifth Amendment privilege. Moreover, to this date, there has been

-1-

no actual assertion of Fifth Amendment by the Individual Defendants (presumably because they want to avoid the potential of an adverse inference).

After Moog was forced to burden the Court with a motion to restore its access to the devices at issue, Magistrate Judge McCarthy issued the detailed and well-reasoned RRO. The RRO determined that the Individual Defendants' unilateral clawback of  electronic devices (and the files contained therein) on a hypothetical assertion of the Fifth Amendment is improper because: 1) the devices are not subject to a Fifth Amendment privilege (because their production was voluntary and not compelled); 2) the production of devices was not testimonial as required for the Fifth Amendment to apply; 3) the Protective Order does not permit the Individual Defendants' unilateral clawback; and 4) even if a Fifth Amendment privilege existed (which it does not), the Individual Defendants have waived any privilege. After obtaining an interim stay of the RRO, the Individual Defendants now offer three objections to the RRO, none of which are supported by any legal authority or to meet the Individual Defendants' high burden of establishing the RRO was "clearly erroneous or contrary to law."

The Individual Defendants first claim that Magistrate Judge McCarthy's application of the "act of production" doctrine was in error. Because the Fifth Amendment is a testimonial privilege, the "act of production" doctrine provides that the production of documents is only protected by the Fifth Amendment where it would be incriminating to admit the possession or authenticity of certain documents. Here, under the "foregone conclusion" exception to the doctrine, there is no dispute that the electronic devices at issue belong to the Individual Defendants—they voluntarily produced them to the neutral forensics vendor ("iDS") in response to the stipulated March 11 Order.  Because the possession or authenticity of the electronic devices is not in dispute, the Individual Defendants advance the far-fetched argument that

because they have not admitted that the electronic devices at issue contain Moog's trade secrets, the "foregone conclusion" exception does not apply. They cite no legal authority for this proposition, nor can they—the "act of production" doctrine merely looks to whether the act of producing documents is testimonial (rather than the content of the documents themselves).

Next, the Individual Defendants claim that the RRO erroneously concludes that the Protective Order (ECF 89) does not permit the clawback of produced materials under a hypothetical Fifth Amendment assertion. But, the Individual Defendants do not even address whatsoever Magistrate Judge McCarthy's reasoning that Section 16.5 of the Protective Order is limited on its own terms to Rule 502(d), which only applies to attorney-client or attorney work-product privileges. There are several other threshold reasons why the Protective Order does not permit the Individual Defendants' unilateral clawback of produced materials.  Also, there has been no actual invocation of privilege.

Finally, the Individual Defendants challenge the RRO's finding of a waiver of the Fifth Amendment privilege (even if it did apply). The timeline of events showing a waiver cannot be more clear. The RRO correctly determined that the Individual Defendants were aware or should have been aware of potential criminal investigation when they were served with the Complaint on March 8, or at least on March 17 when they signed a Stipulated Order (through counsel that expressly references invocation of the Fifth Amendment. Even after being served with federal grand jury subpoenas, the Individual Defendants waited more than six weeks before asserting a hypothetical Fifth Amendment privilege. The Individual Defendants do not and cannot cite any legal authority justifying their delay or demonstrating that their production of 23 electronic devices pursuant to stipulation was not voluntary. The Individual Defendants also do not cite any legal authority supporting their hyperbolic claims that Moog engaged in some sort of improper

communication with the FBI or acted as a deputized agent of the FBI. However, even if there were no waiver, the RRO would still be sound on the bases of the other criteria listed above.

The RRO was issued after extensive briefing and hearing, is well-reasoned and supported by the law. The Individual Defendants' Objections, on the other hand, are not supported with any legal authority and merely express disagreement with the RRO. The Individual Defendants cannot meet their burden in demonstrating the RRO's ruling is "erroneous or contrary to law" because they do not and cannot cite any contrary law.

## FACTUAL BACKGROUND

### I.     The Complaint and Initial Filings

On March 7, 2022, Moog filed its Complaint against Skyryse and the Individual Defendants, alleging that Defendants had engaged in the theft of hundreds of thousands of Moog's most sensitive and proprietary data.  (ECF 1).  The Complaint alleges, in relevant part, that the Individual Defendants stole over 136,000 files of Moog's most sensitive and proprietary data related to over a dozen flight control programs (including many sensitive government programs) before joining Skyryse, Moog's direct competitor. (*Id*., ¶ 1). The Complaint also alleges that the Individual Defendants attempted to cover up their actions by intentionally deleting hard drives and other devices that were used to steal and misappropriate Moog's data. (*Id*., ¶ 2). The Complaint advances causes of action for, among other things, misappropriation of trade secrets pursuant to the Defend Trade Secrets Act ("DTSA"), which includes criminal provisions. The Individual Defendants' counsel knew, or should have known, that the DTSA includes criminal provisions.  Indeed, in the very first paragraph of its Complaint, Moog sought judicial relief to "stop the **illegal** taking and use of its trade secrets and the misappropriation of sensitive US Government technical data developed by Moog." (*Id*., ¶ 1). After the filing of the Complaint, Moog discovered that another approximately 1.3 million Moog files had been copied

by defendant Pilkington upon his departure from Moog and joining Skyryse. (ECF 63-03 at pp. 11-12).

Moog also moved for a Preliminary Injunction the day the Complaint was filed. (ECF 4-1). As identified in the RRO, the supporting declaration of Michael Hunter emphasized his understanding that "the US Government often reacts strongly when its data has been compromised." (ECF 4-2, ¶ 66). Thus, the Individual Defendants were placed on notice of potential criminal investigation the day they were served with the Complaint and initial filings on March 8, 2022. They also knew exactly what they had downloaded from Moog's servers and misappropriated in conjunction with Skyryse.

## II.    The March 11 Order

On March 11, 2022, Defendants stipulated to a temporary restraining order (the "March 11 Order" or the "TRO").  (ECF 25).  The March 11 Order, among other things, directed the Defendants to turn over to Moog, on or before April 1, 2022, "all Moog non-public information in each Defendant's possession, custody or control." (*Id.*, ¶ 2).  Defendants were required to turn over to a neutral third-party forensics vendor any "Moog non-public information" only "if such information has been integrated or used by any Defendant in such a manner that such delivery necessarily includes property of any Defendant." (*Id.*).   The Individual Defendants were also required to produce to the neutral forensics vendor all personal devices they had used within the last twelve months. (*Id.*, ¶ 4).

## III.   The March 17 Order

On March 17, 2022, all Parties through their legal counsel entered into a stipulated order regarding expedited discovery procedures and deadlines, as well as a hearing and briefing schedule on Moog's Motion for Preliminary Injunction (the "March 17 Order"). (ECF 33). Notably, the March 17 Order specifically referenced a potential invocation of the Fifth

Amendment by stating: "***In the event that any witness knows prior to their noticed deposition that the witness will invoke the Fifth Amendment with respect to any subject matter***, counsel for the witness will inform the noticing party of that intention and the noticing party may opt to withdraw the notice." (*Id*., ¶ 3) (emphasis added). Certainly by this point and with the representation of legal counsel, the Individual Defendants were well aware of potential Fifth Amendment privilege issues in this case.

## IV.    The Individual Defendants' Production of Devices and Participation in Discovery

On April 1, claiming compliance with the March 11 Order, the Individual Defendants turned over 23 electronic devices to iDS.  These devices include the several hard drives that the Individual Defendants used to copy over 1.4 million files from Moog upon their departure. To be clear, the March 11 Order required turnover of Moog non-public information.  The Individual Defendants chose to turn over entire devices to iDS as a mechanism for compliance with that Order.  While Moog did not have access to the devices while the Individual Defendants conducted a privilege review, the devices remained physically in the custody and control of iDS, a non-party neutral.  At no time did the Individual Defendants seek return of those devices from iDS, or assert any Fifth Amendment objection. On May 13, the Court entered an inspection protocol governing the review of these devices held in the custody of iDS. (ECF 96-2, 109).

As discovery proceeded, the Individual Defendants did not assert any Fifth Amendment privilege.  For example, on April 13, 2022, the Individual Defendants responded to documents requests, requests for admissions, and interrogatories.  They asserted no Fifth Amendment objections.  (ECF 228-02, ¶ 13). The Individual Defendants have never amended or supplemented any of these responses.  (*Id*.).

On June 10, 2022, Moog wrote to the Court seeking partial relief from the Court's seal Orders.  (ECF 228-04). Moog informed the Court and all counsel that the FBI had requested

copies of unredacted transcripts of the April 26 and May 5 Court conferences as part of an "ongoing federal investigation into the files taken from Moog that are the subject of this lawsuit." (*Id.*, emphasis added). Three days later, on June 13, 2022, the Individual Defendants' counsel consented to Moog's request. (ECF 228-05). The Court granted Moog's unopposed request to provide the transcripts to the FBI on the same date. (ECF 152). Again, the Individual Defendants were placed on direct notice of the FBI's criminal investigation.

The Individual Defendants admit that they were each served with a grand jury subpoena on June 15, 2022, seeking the production of documents relating to their theft of Moog information. (Declaration of Rena Andoh ("Andoh Dec."), Ex. A).[1] They retained criminal defense counsel on June 16 and 17. (*Id.*). Evidently by this point the Individual Defendants were aware of the FBI investigation and potential criminal action.

On June 29, 2022—nineteen days after Moog's June 10 letter advising of the FBI's request for transcripts and after the Individual Defendants received a grand jury subpoena—the Individual Defendants consented to Moog's access to 17 of the devices that had been provided to iDS. (ECF 228-08). The Individual Defendants had completed their privilege review. Moog immediately began reviewing data on these devices.

## V.    The Individual Defendants Express Hypothetical Fifth Amendment "Concerns"

On July 27, 2022—nearly five months after the Complaint was filed, more than 45 days after the Individual Defendants were placed on direct notice about the FBI investigation, and

---

[1] Counsel for Individual Defendants disclosed the date upon which the Individual Defendants were served with grand jury subpoenas in an e-mail to the Court, in response to Magistrate Judge McCarthy expressly asking for such information before the August 25 hearing on these issues. This e-mail correspondence was considered and discussed by the Parties and Court during the August 25 hearing, but was not made part of the formal record, so Moog is attaching the relevant e-mail thread as Exhibit "A" to the Andoh Declaration.

-7-

almost thirty days after the Individual Defendants granted Moog access to the 17 devices—the

parties appeared before the Court for a scheduled conference.  The Individual Defendants

informed the Court for the first time that they intended to seek a stay of this case because they

might invoke Fifth Amendment to prevent further discovery.  (ECF 206).  The Court set a

briefing schedule for the Individual Defendants' motion to stay, with the hearing scheduled for

September 12.  (*Id*.). At no point during the July 27 hearing did the Individual Defendants seek

any relief with respect to the devices that Moog was already reviewing.  (*See generally* ECF

209).

## VI.   **The Individual Defendants' Unilateral Exercise of Self-Help and a Consolidated Timeline**

Two days after the July 27 Court conference, the Individual Defendants' counsel

unilaterally instructed iDS to cut-off Moog's access to the 17 devices that Moog was reviewing.

(ECF 228-10). The Individual Defendants provided no prior notice to Moog and sought no

interim relief from the Court.  The Individual Defendants effectively granted themselves interim

relief, pending briefing on their motion to stay.  They also withdrew access to devices that they

were required to produce under the TRO and the ESI Protocol.

Below is a timeline of key events with relevant citations.

| TIMELINE OF RELEVANT EVENTS | |
| --- | --- |
| **3/8/22** | Individual Defendants are served with the Complaint, placing them on notice of large-scale trade secret misappropriation claims under the DTSA, which carry criminal penalties. (ECF 1). Individual Defendants are also served with Moog's Motion for Preliminary Injunction (ECF 4-1) and the accompanying Declaration of Michael Hunter, which addresses how "the US Government often reacts strongly when its data has been compromised." (ECF 4-2, ¶ 66). |
| **3/11/22** | Individual Defendants sign and consent to a stipulated TRO requiring production of all personal devices used in the last 12 months, and all Moog non-public information. (ECF 25). |

| | |
|---|---|
| **3/17/22** | Individual Defendants, through counsel, sign and consent to a stipulated order that expressly discusses assertion of the Fifth Amendment during deposition. (ECF 33, ¶ 3). |
| **4/1/22** | Individual Defendants produce 23 personal electronic devices to iDS, pursuant to March 11 Order. (ECF 228-02, ¶ 4). |
| **6/10/22** | Moog's counsel emails the Court, copying all counsel, advising that the FBI would like certain transcripts unsealed because of an ongoing criminal investigation. (ECF 228-04). |
| **6/13/22** | Counsel for the Individual Defendants provides e-mail consent to the unsealing of transcripts for FBI purposes, and the Court grants Moog's unopposed Motion to Unseal. (ECF 228-05). |
| **6/15/22** | Individual Defendants are each served with a federal grand jury subpoena. (Andoh Dec., Ex. A). |
| **6/16/22-6/17/22** | Individual Defendants retain criminal defense counsel. (Andoh Dec., Ex. A). |
| **6/20/22** | Skyryse serves a meet and confer letter, requesting production of all communications between Moog and the FBI. (ECF 228-06). |
| **6/23/22** | Moog sends e-mail agreeing to produce "all communications between Moog and the FBI/USAO that relate to Skyryse or any of the allegations in the Complaint." (ECF 228-07). |
| **6/24/22** | Moog receives subpoena from Government. (ECF 228-02, ¶ 12). |
| **6/29/22** | Moog is given access to iDS devices. All counsel are copied on this e-mail correspondence, and counsel for Individual Defendants does not object. (ECF 228-08). |
| **7/1/22** | Moog produces FBI communications to Skyryse. The Individual Defendants are inadvertently not copied, but the same production was made to the Individual Defendants on July 29. (ECF 228-02, ¶ 14). |
| **7/8/22** | Moog sends e-mail to all parties stating: "We understand that Skyryse and the Individual Defendants have all been served with grand jury subpoenas from the FBI requesting the production of documents. Moog has also received a grand jury subpoena for documents. We propose that all parties produce to each other the documents that they are producing or have produced to the FBI, as all such documents would be relevant to the claims and defenses in this case." (ECF 228-09). |

| 7/25/22 | Counsel for Skyryse and the Individual Defendants respond to Moog's production proposal. Neither agree to the proposal. (*See Id.*). |
| 7/27/22 | Individual Defendants raise, for the first time, their intention to seek a stay of this action.  The Court sets a briefing schedule for the motion. (ECF 228-02, ¶ 17); (*see also* ECF 206). |
| 7/29/22 | Individual Defendants e-mail iDS and demand revocation of access to all Individual Defendants' devices, and iDS complies with this request. (ECF 228-10). |

## VII.   The RRO

After the Individual Defendants unilaterally shut off Moog's access to 17 electronic devices, Moog contacted the Court and a hearing was quickly scheduled for August 4, 2022. The Court then ordered an expedited briefing schedule on whether the Individual Defendants' clawback of 17 devices from iDS was proper. (ECF 216).  After the Individual Defendants and Moog filed cross-motions regarding the Individual Defendants improper clawback of iDS materials (ECF 228, 229), and filed cross-oppositions (ECF 234, 237), the Court issued the RRO. (ECF 253). In the detailed and well-reasoned RRO, the Court granted Moog's Motion to restore its access to the 17 electronic devices in question. Magistrate Judge McCarthy determined that the electronic devices produced by the Individual Defendants are not subject to a First Amendment privilege for several reasons.

First, Judge McCarthy determined that the Fifth Amendment did not apply because the electronic devices at issue were not compelled. (EF 253, pp. 4-7). In doing so, the RRO notes that "Pilkington and Kim produced their electronic devices for inspection pursuant to Orders to which they agreed." (*Id.*, p. 4). The RRO also cites to several cases holding that the Fifth Amendment privilege only protects "compelled" self-incrimination. (*Id.*). The RRO specifically mentions how the Individual Defendants were represented by counsel when they entered into the

March 17 Order, which incorporates and references the obligations under the March 11 Order. (*Id*., p. 5) (ECF 33, ¶ 1).

Second, Judge McCarthy found that the Individual Defendants' production of electronic devices was not testimonial. (EF 253, pp. 7-9).  The RRO cites to United States Supreme Court authority that the Fifth Amendment "protects a person only against being incriminated by his own compelled testimonial communications", and the "production of documents does not compel oral testimony." *United States v. Doe*, 465 U.S. 605, 610-11 (1984). (*Id*., p. 7).  The RRO notes a single exception to the "act of production" doctrine, where the act of production can be testimonial when it implicitly communicates statements of fact. (*Id*.).  This applies where, for example, a producing party produces documents in response to certain requests, thereby admitting that the documents existed, were in his possession, and were authentic. (*Id*.).  The RRO cited to *Burt Hill, Inc. v. Hassan*, 2010 WL 55715 (W.D. Pa. 2010), where the defendants asserted a Fifth Amendment privilege over the production of external storage devices and hard-copy documents, but the Court rejected the assertion of privilege because the defendants repeatedly offered to the plaintiff that it could access the storage devices in a secure location and that the materials in question were in their possession (thereby negating any issue of authenticity). (*Id*., p. 8). Magistrate Judge McCarthy then concluded that just as in *Burt Hill*, the Individual Defendants "have repeatedly admitted that the devices in question are theirs, and not only agreed to make those devices available for inspection, but did so." (*Id*.).

The RRO then held that even if a Fifth Amendment privilege existed (which it does not), it was waived by the Individual Defendants. (*Id*., p. 9). Magistrate Judge McCarthy determined that the Individual Defendants were "clearly on notice of potential criminal exposure from the outset of this case." (*Id*.).  As examples, the RRO cites to various allegations in Moog's

Complaint and preliminary injunction motion that made the Individual Defendants "criminal exposure obvious from the outset of this case." (*Id.*, p. 6). The RRO also cites to the March 17 Order and it "expressly contemplat[ing] the possibility of invoking the Fifth Amendment." (*Id.*).

Finally, the RRO establishes how the Stipulated Protective Order (ECF 89) does not authorize the Individual Defendants' clawback of materials under a hypothetical Fifth Amendment assertion. The RRO explains how the Individual Defendants' reliance on Section 16.5 of the Protective Order (which permits a clawback of produced materials under certain circumstances) is improper because, by its terms, it only operates "[p]ursuant to Federal Rule of Evidence 502(d)" and Rule 502 only applies to disclosure of attorney-client or attorney work-product information. (*Id.*, p. 9). Thus, the Fifth Amendment does not fall under the clawback provisions of Section 16.5. And, the RRO determined that the Individual Defendants' reliance on Section 16.1 of the Protective Order to clawback inadvertently produced materials cannot apply because the  electronic devices at issue were "produced for inspection by Pilkington and Kim" and were not "inadvertently produced." (*Id.*, p. 10). The RRO granted Moog's motion to compel access to the Individual Defendants' electronic devices and denied the Individual Defendants' motion to claw back those devices. (*Id.*).

## LEGAL STANDARD

The Individual Defendants admit that the RRO's denial of the Individual Defendants' motion to claw back the 17 devices in question is a "non-dispositive matter," and a district judge may only set aside a non-dispositive order if it is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72; (ECF 264, p. 25).

"The clearly erroneous/contrary to law standard of review is highly deferential and a district court may reverse the order only if on the entire evidence, the district court is left with the definite and firm conviction that a mistake has been committed." *Thurmond v. Bowman*, 199

F. Supp. 3d 686, 689 (W.D.N.Y. 2016) (internal quotation marks omitted). "The party seeking to reverse a Magistrate Judge's ruling concerning discovery bears a heavy burden, in part, because the Magistrate Judge is afforded broad discretion in these matters." *Am. Rock Salt Co., LLC v. Norfolk S. Corp.*, 371 F. Supp. 2d 358, 360 (W.D.N.Y. 2005)

## ARGUMENT

In the Objections, the Individual Defendants identify three purported issues with Magistrate Judge McCarthy's RRO: 1) that the "act of production" doctrine does not apply to the production of the contents of the Individual Defendants' devices because it is not a foregone conclusion that the 17 electronic devices at issue contain Moog's trade secrets; 2) that Judge McCarthy erred in finding that the Protective Order does not apply to the Individual Defendants' assertion of a Fifth Amendment Privilege; and 3) that Magistrate Judge McCarthy's finding of a waiver of the Fifth Amendment privilege (even if it applied) was clearly erroneous. (Obj., pp. 20-25). However, the Individual Defendants make no showing how any of the findings they question are "clearly erroneous or contrary to law." Instead, they merely express disagreement with the RRO without sufficient legal support, which falls well short of the high burden the Individual Defendants must meet.

## I.     The Individual Defendants Have Not Invoked the Fifth Amendment Privilege

A foundational issue is that the Individual Defendants *have not in fact asserted any Fifth Amendment Privilege in connection with this action*. They instead claim they are entitled to clawback hundreds of thousands of produced documents based on a hypothetical assertion of privilege because they need additional information to determine whether to actually invoke the privilege in this action or not. (Obj., p. 12).  This is not the law.

First, as a threshold issue, the Fifth Amendment does not require a criminal investigation as a pre-requisite and is not retroactive. *See Mackey v. U.S.*, 411 F.2d 504, 508 (7th Cir. 1969)

(noting that "the scope of the privilege against self-incrimination did not warrant retroactive application.") (citing *Tehan v. United States ex rel. Shott*, 382 U.S. 406, 416 (1966)). Therefore, the real issue that the Individual Defendants are facing is that they did not invoke the Fifth Amendment in this action, and instead voluntarily produced materials as a matter of course and pursuant to Court orders from which they did not seek contemporaneous relief.  Now, the Individual Defendants are trying to have the ultimate cake while eating it too.  They are attempting the legally unsupported trifecta of:

1.  Refusing to assert the Fifth Amendment in this action in order to avoid conceding any adverse inference;

2.  Hypothetically asserting the Fifth Amendment in the criminal investigation over materials they already voluntarily produced in this action; and

3.  Trying to claw back materials they voluntarily produced in this action to cover their tracks regarding their assertion of the Fifth Amendment in the criminal investigation.

Every single one of the Individual Defendants' objections (clawback, waiver, etc.) are predicated on an actual assertion and claim of affirmative privilege. Even after litigating this issue for months, that has still not occurred here. Any protections under the Fifth Amendment are only invoked when the privilege has actually been asserted. *See Slainte Invs. Ltd. P'ship v. Jeffrey*, No. 3:14-CV-1750 CSH, 2015 WL 1445331, at *6 (D. Conn. Mar. 30, 2015) ("because the Fifth Amendment privilege is not self-executing, *Defendant must invoke it in order to receive its protection*") (emphasis added).  Indeed, a party cannot obtain protections under the Fifth Amendment without asserting it in order to avoid an adverse inference in a civil case. *See S.E.C. v. Caramadre*, 717 F. Supp. 2d 217, 222 (D.R.I. 2010) (holding "the Fifth Amendment protects a party from self-incrimination; it does not protect someone from having to invoke the right to

avoid self-incrimination in the first place" and "there is no pre-incrimination right not to have to use the Fifth Amendment except as a measure of last resort").

## II.     The RRO Correctly Determined that the Act of Production Applies to the Electronic Devices at Issue

### A.      The Act of Production Doctrine Applies Here

Even if the Individual Defendants had invoked the Fifth Amendment privilege, the RRO correctly determined that it would not apply to their production of the devices at issue.  The Fifth Amendment is primarily is a testimonial privilege.  The production of documents is only considered to have "a compelled testimonial aspect" for purposes of the Fifth Amendment in the limited circumstances where the "act of production" itself would be tantamount to a defendant admitting incriminating existence, possession, and authenticity of documents.  *United States v. Hubbell*, 530 U.S. 27, 36 (2000).  If the "act of production" itself is not tantamount to an admission, then the privilege does not apply, and the privilege does not prevent discovery of pre-existing incriminating documents.  *See, e.g.*, *Matter of Grand Jury Empanelled Feb. 14, 1978*, 603 F.2d 469, 476 (3d Cir. 1979).

Where "the existence and location of the papers are a foregone conclusion and the [producing party] adds little or nothing to the sum total of the [requester's] information by conceding that he in fact has the papers," then there is no relevant testimonial admission, and the Fifth Amendment testimonial privilege *does not attach* to production of documents or materials. *United States v. Fridman,* 337 F. Supp. 3d 259, 265 (S.D.N.Y. 2018), aff'd, 974 F.3d 163 (2d Cir. 2020); *see also Burt Hill, Inc. v. Hassan*, No. CIV.A. 09-1285, 2010 WL 55715, at *2 (W.D. Pa. Jan. 4, 2010) (finding that "testimonial privilege" did not attach where foregone conclusion exception applied).  This is known as the "foregone conclusion" exception.  In order for the foregone conclusion exception to apply, all that is needed is for the requesting party to

"demonstrate with reasonable particularity that it knows of the existence and location of the [requested] documents." *Fridman*, 337 F. Supp. 3d at 265.  This "foregone conclusion" exception is fatal to the Individual Defendants' potential assertion of the Fifth Amendment in this case.

*Burt Hill*, cited and analyzed in the RRO in detail, is on point and instructive.  The defendants in *Burt Hill,* facing claims of trade secret theft and unauthorized access to computers, relied on "act of production" arguments in an attempt to use the Fifth Amendment privilege to block production of three removable flash drives and an external hard drive used by certain individual defendants. *See Burt Hill*, 2010 WL 55715 at *1.  They argued that producing the drives would be a testimonial act because it would admit the existence, possession, and authenticity of those drives, which could be incriminating under the federal Computer Fraud and Abuse Act. *Id*.  But prior to making these arguments, the defendants had "routinely and consistently acknowledged possession" of the materials at issue and offered the plaintiffs the opportunity to inspect them. *Id*. at *2.  The court held that the existence and location of these materials was a foregone conclusion, and therefore, not protected by the Fifth Amendment right against self-incrimination.  *Id.*

Here, as in *Burt Hill,* "the existence and location of the materials" at issue is a foregone conclusion. *Id.*  The Individual Defendants have—like the defendants in *Burt Hill*—acknowledged possession of the devices at issue and Moog data thereon.  They also made the devices available for inspection under a *stipulated* TRO.  Review of the Individual Defendants' electronic devices had been in process for weeks before the Individual Defendants unilaterally cut-off Moog's access to the material.  As the Court in *Burt Hill* observed, "the mere fact that the requested materials contain information that may be incriminating is not a legitimate basis for

withholding production." *Id.*  The testimonial privilege therefore does not apply to the Individual Defendants production of the devices, and the RRO correctly determined that the Individual Defendants were not permitted to withdraw Moog's access to the devices on these inadequate grounds.

Even if the Fifth Amendment did apply to the Individual Defendants' production of electronic devices (which the RRO concluded it does not), no legal authority permits clawback of produced materials under the Fifth Amendment.  In fact, the Individual Defendants do not cite ***a single case*** demonstrating that clawback of produced materials is permissible under the Fifth Amendment in any circumstances, let alone a hypothetical assertion of the Fifth Amendment. Moog is not aware of any case law that supports this notion, and the Individual Defendant still do not and cannot cite any such authority in their Objections.

Further, even if clawback were permissible under some circumstances, the foregone conclusion doctrine vitiates the possibility of claw-black in this context.  As *Burt Hill* makes clear, because the Individual Defendants have already disclosed the existence and location of the documents such that the act of production of these materials would not now be testimonial, the Fifth Amendment privilege cannot now be applied to production of the devices at issue.  *See Id*. at *2. Shockingly, despite the RRO's reliance on *Burt Hill*, the Individual Defendants do not address the case whatsoever, attempt to distinguish it, or provide contrary law.

### B.     The Individual Defendants' Objection is Based on a Red Herring Unsupported by Legal Authority

Without having any legal basis for their position, the Individual Defendants resort to moving the goal posts under the "act of production" doctrine. They claim, without citing any legal authority, that Magistrate Judge McCarthy incorrectly applied the "act of production" doctrine because the "issue in this case is not whether the Individual Defendants possess devices,

but whether they possess Plaintiff's trade secrets." (Obj., p. 21). The Individual Defendants then conclude that they "have never admitted that any trade secrets exist on any of" the "personal devices at issue" and therefore it "cannot be a foregone conclusion the Individual Defendants possess Plaintiff's alleged trade secrets." (*Id.*, pp. 21-22).

This argument simply stretches the "act of production" doctrine well beyond its scope. The doctrine is simply limited to whether there is any doubt as to whether certain produced materials or documents belong to or are in the possession of the producing party. Whether those documents provide proof of possession or misappropriation of trade secrets is simply not relevant. The Individual Defendants cite zero legal authority to support their far-fetched argument. Indeed, the *Burt Hill* case involved trade secret misappropriation claims, and the "act of production" analysis focused on whether the producing party acknowledged possession of the produced materials in question, and not the specific content of such materials. The Individual Defendants do not and cannot meet their high burden to show the RRO's application of the "act of production" doctrine was "clearly erroneous or contrary to law" because they do not cite any contrary law. They cite no substantive law at all.

**III.    The RRO Correctly Determined that the Stipulated Protective Order Does Not Permit the Individual Defendants to Claw Back the  Electronic Devices**

Next, the Individual Defendants object that the RRO's determination that the Protective Order (ECF 89) did not permit the clawback of materials under a hypothetical Fifth Amendment assertion was erroneous. (Obj., pp. 22-23). The Individual Defendants argue that "Privileged Material," as defined in the Protective Order, includes "Fifth Amendment-protected material." (Obj., p. 23). They then conclude, citing to Section 16.5 (which the RRO discusses in detail), that there was no waiver of privilege for materials clawed back under that provision. (*Id.*).

Stunningly, the Individual Defendants *do not address in any manner* the grounds for why Magistrate Judge McCarthy determined the Protective Order did not permit a clawback. The RRO held that Section 16.5 of the Protective Order, by its terms, operates pursuant to Rule 502(d), and that such rule is limited to privileged materials falling under the attorney-client or attorney work-product privileges. (RRO, p. 9).  The portion of Section 16.5 cited by the Individual Defendants even includes the phrase "pursuant to Rule 502(d)." (Obj., p. 23). Yet, the Individual Defendants do not provide any legal authority showing how Magistrate Judge McCarthy's ruling on this issue was "clearly erroneous or contrary to law." The completely ignore the quoted provisions from Section 16.5 of the Protective Order and the limitations imposed by Rule 502.

Even if the Individual Defendants had produced this material to Moog inadvertently— and they clearly did not—the Protective Order permits the Receiving Party to retain a copy of the clawed-back material to pursue challenge proceedings. (ECF 89, § 16.3). Moog was prevented from retaining a copy of the material in this case, in violation of the Protective Order, because the Individual Defendants unilaterally cut-off Moog's access to the devices before a copy could be obtained.

For all these reasons, the Individual Defendants do not and cannot meet their burden to show the RRO's rulings as to the inapplicability of the Protective Order are "clearly erroneous or contrary to law."

## IV.   The RRO Correctly Determined that any Fifth Amendment Privilege Had Been Waived

Finally, the Individual Defendants object to the RRO's determination that any Fifth Amendment privilege had been waived, even if it could apply. (Obj., p. 23). As the RRO points out, the facts supporting a waiver are clear and go all the way back to filing and service of the

Complaint. The RRO cites to the several allegations in the Complaint placing the Individual

Defendants on direct notice of potentially illegal conduct under a DTSA claim that carries

potential criminal penalties, as well as the March 17 Stipulation (that the Individual Defendants

signed through legal counsel) that expressly references a potential Fifth Amendment invocation.

(RRO, p. 6). But, the complete timeline of events above shows that while the Individual

Defendants should have been aware of potential criminal investigation back in March, they were

certainly aware of it no later than the middle of June when they were served with grand jury

subpoenas. Yet, they waited several more weeks before clawing back electronic devices under a

hypothetical Fifth Amendment assertion. While the Individual Defendants claim they "acted

promptly" in rectifying their error after they learned of the criminal investigation, there was

nothing prompt about the action. (Obj., p. 25). The Individual Defendants waited at least six

weeks after the middle of June before clawing back the materials at issue. In the middle of this

period, the Individual Defendants consented to Moog's access to 17 of the 23 electronic devices

turned over to iDS on June 29. Courts are unambiguous that this period of time passing between

knowledge of criminal investigation and seeking protections under the Fifth Amendment

privilege (which has not been asserted) constitutes a waiver. *See Cohen v. Altman*, No.

519CV274TJMTWD, 2022 WL 370948, at **3-4 (N.D.N.Y. Feb. 8, 2022) (where the

defendants "did not assert the Fifth Amendment to resist discovery until long after the discovery

process began," the court held the "assertion of the Fifth Amendment came at a point that the

assertion served mostly to frustrate the discovery process." The court further cautioned: "***Courts

must be especially alert to the danger that the litigant might have invoked the privilege

primarily to abuse, manipulate, or gain an unfair strategic advantage over opposing parties***.")

(internal citations omitted, emphasis added); *In re Gorsoan Ltd.*, No. 17-CV-5912 (RJS), 2020

WL 3172777, at *5 (S.D.N.Y. June 15, 2020) (holding "Bullock's belated invocation of her privilege after months of negotiation smacks of 'procedural gamesmanship' and 'dilatory tactics'" and "Bullock intentionally delayed asserting her privilege for strategic advantage, resulting in significant prejudice to Gorsoan").

The Individual Defendants do not address the relevant timeline of events discussed in the RRO, and do not attempt to explain why they were not or should not have been aware of potential criminal ramifications from the outset of this case. Despite this timeline of events, the Individual Defendants advance several arguments regarding waiver, none of which demonstrate that Magistrate Judge McCarthy's order was "clearly erroneous or contrary to law."

A. **The Individual Defendants Voluntarily Produced the Electronic Devices**

The Individual Defendants argue there was no waiver because their production of electronic devices to iDS "was inadvertent." (Obj., p. 24). However, as the RRO found, the production was anything but inadvertent—it was made in response to the stipulated March 11 Order and March 17 Order (where the Individual Defendants were represented by counsel and which affirmed the obligations under the March 11 Order). The Individual Defendants elected to produce to iDS 23 electronic devices, and permitted Moog's access to 17 of those devices on June 29, well after the Individual Defendants had been served with grand jury subpoenas and had retained criminal defense counsel. Magistrate Judge McCarthy's decision that any Fifth Amendment privilege as to the devices would have been waived by the Individual Defendants' conduct in voluntary producing the devices and participating in discovery is well-supported by law. *See, e.g., Cohen*, 2022 WL 370948, at **3-4 (upholding magistrate judge's order that the Fifth Amendment privilege was waived where the defendants "did not assert the Fifth Amendment to resist discovery until long after the discovery process began"); *In re Gorsoan Ltd.*, 2020 WL 3172777, at *5 (holding that a party waived their Fifth Amendment privilege

through belated invocation of her privilege after months of participating in discovery and discovery negotiations).

**B.      Moog's Communications with the USAO are a Red Herring**

The Individual Defendants complain they "would not have agreed to the So-Ordered Stipulation had Plaintiff disclosed its involvement with the USAO Investigation." (Obj., p. 25). The Individual Defendants further complain that Moog concealed its purported "involve[ment] with the USAO Investigation" and acted "in an agency capacity for the very purpose of circumventing the Individual Defendants' Fifth Amendment rights." (*Id*.).

These accusations are unfounded and prejudicial. The Individual Defendants cite no legal authority showing that it is improper for Moog to report a theft of over 1.4 million files (many of which pertain to sensitive Government programs) to the FBI.  When the FBI has made certain requests from Moog in connection with its criminal investigation, there is nothing improper with Moog responding to those requests and providing information. *See Upstate Shredding, LLC v. Northeastern Ferrous, Inc.*, 2016 WL 865299, at *4 (N.D.N.Y. Mar. 2, 2016) (finding no fault or basis for sanctions when "Weitzman [witness] was cooperating with the FBI investigation."). The Individual Defendants are effectively suggesting that the victim of a crime must tell a perpetrator of that crime that the victim has reported that crime to the authorities – a nonsensical concept.  And certainly the Individual Defendants are not heard to argue that Moog has an obligation to refrain from communication with law enforcement.  There certainly is no prejudice or impropriety to the Individual Defendants given that a Moog has been completely transparent regarding its communications with the FBI—it has produced all its communications with the FBI and has offered to provide a mutual exchange of complete document productions to the FBI (but Skyryse has refused). The Individual Defendants keep grasping at straws because there is no justification for their conduct.

Further, in order for Moog to have "concealed" something from the Individual

Defendants, there must have been a duty of disclosure. *See Nealy v. U.S. Surgical Corp.*, 587 F.

Supp. 2d 579, 585 (S.D.N.Y. 2008) (a concealment claim requires a showing that a party "had a

duty to disclose material information.").  Noticeably, the Individual Defendants do not and

cannot cite to any legal authority that Moog was required to disclose the fact that it had been

communicating with the FBI before and after the Complaint was filed. Without any such

authority, the Individual Defendants' conjectural and hyperbolic complaints about Moog acting

as an agent of the FBI cannot be heard.

### C.      Moog is Substantially Prejudiced

Finally, the Individual Defendants argue that there "is no Prejudice to Plaintiff because

Plaintiff does not have a right to privileged materials." (Obj., p. 25). As a threshold matter, this

argument fails because there are no "privileged materials" at issue—the Individual Defendants

have not made any affirmative claim of privilege. Regardless, this Court has ruled already that

Moog is entitled to review all the relevant iDS devices before making a fulsome and complete

trade secret identification, which will be a substantial and onerous task given the volume of trade

secrets at issue in this case. (ECF 205). The prejudice is self-evident—Moog cannot proceed

with its prosecution of the case and obtaining a preliminary injunction until it has an opportunity

to review the electronic devices that were involved in the misappropriation of over 1.4 million

Moog files. *See Pearson Education, Inc. v. Kumar*, 2010 WL 2230574, at *2 (S.D.N.Y. May 27,

2010) (finding that "Plaintiffs would be prejudiced by a delay in entry of an injunction . . ."),

judgment vacated on other grounds, 523 Fed. Appx. 2013 (Jun. 20, 2013).  But also, Plaintiff

does have a right to the materials – clearly delineated in the March 11 and March 17 stipulated

order, as well as the discovery propounded in this case.

The Individual Defendants do not and cannot meet their high burden to establish that the RRO's rulings as to waiver are "clearly erroneous or contrary to law."

## **CONCLUSION**

Moog requests that the Court deny the Individual Defendants' Objections to the RRO regarding Fifth Amendment issues in their entirety, and lift the interim stay on restoring Moog's access to the 17 electronic devices at issue.

Dated:  New York, New York
      September 19, 2022

 

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
*Attorneys for Plaintiff Moog Inc.*

By:   s/Rena Andoh
    Rena Andoh
    Travis J. Anderson (admitted *pro hac vice*)
    Lai Yip (admitted *pro hac vice*)
    Tyler E. Baker (admitted *pro hac vice*)
    Kazim A. Naqvi (admitted *pro hac vice*)
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 653-8700

and

**HODGSON RUSS LLP**

By:   s/Robert J. Fluskey, Jr.
    Robert J. Fluskey, Jr.
    Melissa N. Subjeck
    Reetuparna Dutta
    Pauline T. Muto
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York 14202
(716) 856-4000