**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X
MOOG INC.,

                              Plaintiff,                      Case No.: 22-cv-187-LJV-JJM

        vs.

SKYRYSE, INC. ROBERT ALIN PILKINGTON, MISOOK
KIM, and DOES NOS. 1-50

                            Defendants.
------------------------------------------------------------------------X

**ROBERT ALIN PILKINGTON AND MISOOK KIM'S REPLY IN FURTHER
SUPPORT OF THEIR MOTION FOR AN INTERIM STAY AND OBJECTIONS TO
THE AUGUST 29, 2022 REPORT, RECOMMENDATION AND ORDER,
<u>PURSUANT TO FED. R. CIV. P. 72 AND 28 U.S.C. § 636</u>**

                                                                        **WINGET, SPADAFORA &**
                                                                         **SCHWARTZBERG, LLP**
                                                                         45 Broadway, 32nd Floor
                                                                         New York, NY 10006
                                                                         (p): (212) 221-6900
                                                                         (f): (212) 221-6989

                                                                *Attorneys for Defendants Robert Alin*
                                                                *Pilkington and Misook Kim*

Of Counsel:   Anthony D. Green, Esq.
                      Alexander A. Truitt, Esq.
                      M. Annabel Mireles, Esq.

Dated:         September 23, 2022
                New York, New York

## TABLE OF CONTENTS

**Page No.**

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT .....................................................................................................................2

    I.      This Court may Sustain the Individual Defendants' Objections to the RRO, so long as the Court Believes that a Mistake Has Been Committed ............................2

    II.     Supreme Court Precedent Establishes that the Act of Production Doctrine Applies ........................................................................................................3

    III.    The RRO's Interpretation of the Clawback Provision would Incorrectly Render the Definition of "Privileged Material" Superfluous ..............................................5

    IV.    The Individual Defendants Have Asserted their Fifth Amendment Privilege Broadly, Because Plaintiff Continues to Conceal what Trade Secrets are at Issue ........................................................................................................6

    V.     There Has Been No Waiver Due to any Inadvertent Productions, as Plaintiff's Concealment that It Initiated the USAO's Investigation and of the Trade Secrets at Issue is the Cause of any Delay in Asserting the Fifth Amendment Privilege ..........................................................................................7

CONCLUSION....................................................................................................................10

...
...

## **TABLE OF AUTHORITIES**

### **CASES**

*Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564 (1985) ...................................................2

*Burt Hill, Inc. v. Hassan*, CIV. A. 09-1285, 2009 WL 4730231 (W.D. Pa. Dec. 4, 2009) ............4

*Cohen v. Altman*, No. 519CV274TJMTWD, 2022 WL 370948 (N.D.N.Y. Feb. 8, 2022) ........8, 9

*Emspak v. United States*, 349 U.S. 190 (1955) ..............................................................................7

*In re DG Acquisition Corp.*, 151 F.3d 75 (2d Cir. 1998) ...........................................................2, 8

*HSH Nordbank AG New York Branch v. Swerdlow*, 259 F.R.D. 64 (S.D.N.Y. 2009) ...................8

*In re Gorsoan Ltd.*, No. 17-CV-5912 (RJS), 2020 WL 3172777 (S.D.N.Y. June 15, 2020) ..........9

*Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.,* No. 96 Civ. 7590,
    1997 WL 736726 (S.D.N.Y. Nov. 26, 1997) ....................................................................10

*Switch Commc'ns Grp. v. Ballard*, No. 2:11–CV–00285–KJD, 2012 WL 2342929
    (D. Nev. June 19, 2012)........................................................................................................7

*United States v. Doe*, 465 U.S. 605 (1984) ................................................................................3, 4

*United States v. Hubbell*, 530 U.S. 27 (2000) .......................................................................1, 3, 4

*United States v. O'Henry's Film Works, Inc.*, 598 F.2d 313 (2d Cir.1979) ...................................7

*Wilson v. Poughkeepsie City School Dist.*, 147 A.D.3d 1112 (2d Dep't 2017) .......................... 5-6

### **RULES AND STATUTES**

28 U.S.C.§ 636.................................................................................................................................1

Fed. R. Civ. P. 72 ............................................................................................................................1

U.S. Constitution, Amendment V ......................................................................................... passim

Pursuant to Fed. R. Civ. P. 72 and 28 U.S.C. § 636, Defendants Robert Alin Pilkington and Misook Kim (the "Individual Defendants"), by their undersigned counsel, respectfully submit the within reply in further support of their motion for an interim stay of the Report, Recommendation and Order ("RRO") of Magistrate Judge Jeremiah J. McCarthy, dated August 29, 2022, to the extent it compelled production of materials in spite of the Individual Defendants' guaranteed constitutional protections under the Fifth Amendment. (Dkt. Nos. 260 and 264, respectively).

## **PRELIMINARY STATEMENT**

Plaintiff does not argue the interim stay should be lifted. Instead, Plaintiff asks this Court to affirm the RRO. As such, this Court should find that Plaintiff does not object to the interim stay. Accordingly, this brief will only respond to the arguments presented through Plaintiff's opposition.

The Individual Defendants' devices are entitled to Fifth Amendment protection under the "act of production" doctrine. The Individual Defendants have never admitted that any of the devices that they have placed in escrow with iDS contain Plaintiff's trade secrets, because they do not know what Plaintiff's claimed trade secrets are, as Plaintiff has refused to identify the trade secrets supposedly at issue.[1] Tus, to date, the Individual Defendants have merely disclosed that they used twenty-three personal electronic devices between March 2021 and March 2022.

At present, in order to assert a more specific Fifth Amendment objection over the devices, the Individual Defendants would be compelled to extensively rely upon the "contents of [their] own mind[s]" to determine what they believe Plaintiff's trade secrets might be, since Plaintiff refuses to identify them. *See United States v. Hubbell*, 530 U.S. 27, 42-43 (2000) (rejecting the argument that the act of production is merely a physical act). Thus, the "act of production" doctrine

---

[1] Despite Plaintiff's unsourced claims to the contrary, the Individual Defendants have never admitted to "stealing" anything. The only way there could be a "theft" is if Plaintiff identified and proved that any code it claims was stolen was a trade secret. Yet, Plaintiff has refused to do so.

1

applies because granting access to the subject devices is a testimonial act, which would require that the Individual Defendants contribute to a "link in the chain" of their prosecution and make incriminating admissions, in violation of the Fifth Amendment privilege. *Id*.

To that end, Plaintiff's failure to identify its trade secrets also demonstrates why there could not have been a "knowing" and "voluntary" waiver of the Individual Defendants' Fifth Amendment rights. Since they do not know what they are accused of "stealing" that could possibly support criminal prosecution, they could not have "knowingly" and "voluntarily" waived their privilege against self-incrimination. Plaintiff's primary argument that waiver occurred is that the Individual Defendants purportedly delayed asserting a Fifth Amendment privilege.[2] Yet, it is well-established that a delay of even six months (far longer than any 'delay' here) is insufficient to find waiver of a fundamental right. *See In re DG Acquisition Corp.*, 151 F.3d 75, 83 (2d Cir. 1988).

Further to that point, any delay is the result of Plaintiff's conduct. Plaintiff still refuses to identify its trade secrets that allegedly form the basis of this Action and the USAO's Investigation. Plaintiff also concealed its agency relationship with the Government to further the USAO Investigation. Plaintiff is using its own dilatory conduct in this Action as both a sword and shield.

The Court should not allow Plaintiff's gamesmanship to deprive the Individual Defendants of their fundamental constitutional rights and the RRO should be reversed.

## ARGUMENT

### I. This Court may Sustain the Individual Defendants' Objections to the RRO, so long as the Court Believes that a Mistake Has Been Committed

This Court may reverse the RRO, even if the RRO is supported by evidence, where the Court "is left with the definite and firm conviction that a mistake has been committed." *Anderson,*

---

[2] Contrary to Plaintiff's continuing representation, the Individual Defendants have asserted a Fifth Amendment objection, but have done so very broadly. Dkt. No. 263-3 (37:5-10). The Individual Defendants would narrow that objection, if only Plaintiff would identify its alleged trade secrets.

2

470 U.S., at 573. Here, a mistake has been committed and the Individuals respectfully request this redress such error. Plaintiff's central role in manipulating the Individual Defendants into their current predicament, should not be permitted to succeed.

The Fifth Amendment questions before this Court are not often litigated in the context of the specific factual circumstances presented. However, the legal principles establishing the Individual Defendants' right to relief are well-established. Plaintiff attempts to create an artificial barrier by observing that this exact situation has rarely been encountered. However, the controlling legal principles cited by the Individual Defendants must be applied to a case of new impression. Those controlling legal principles are all that are required to sustain the present objections.

## II. Supreme Court Precedent Establishes that the Act of Production Doctrine Applies

Longstanding precedent from the United States Supreme Court establishes that the "act of production" doctrine applies. In the cases of *Doe* and *Hubbell*, Fifth Amendment privilege was found to apply, pursuant to the act of production doctrine, because the U.S. Government had issued very broad subpoenas that indicated that it did not know for certain whether the evidence it sought might exist and required the defendant to use its own judgment in determining whether incriminating evidence existed. *See Hubbell*, 530 U.S. 27, 43-45 (Subpoena sought all the defendant's business papers, without regard to their contents, and, further, required that defendant identify incriminating documents); *United States v. Doe*, 465 U.S. 605, 614, fn. 12 (1984).

Similarly, Plaintiff claims (albeit falsely) that it cannot identify the trade secrets the Individual Defendants are accused of misappropriating unless they allow Plaintiff to review every personal electronic device they used during a one-year period, ***without regard to whether their contents have any possible relevance to this case***. (Dkt. No. 266., pp. 5; 23). Plaintiff also requests that the Individual Defendants determine whether any "Moog non-public information" is within their possession and to produce it, despite refusing to provide that information itself. (Dkt. No.

3

266, p. 5). Thus, as in *Doe* and *Hubbell*, Plaintiff is asking that the Court compel the Individual Defendants to be informants against themselves; hence, the act of production doctrine applies.

Plaintiff's reliance on *Burt Hill, Inc. v. Hassan*, from the Western District of Pennsylvania, is misplaced. In *Burt Hill*, the specific devices at issue were made available for review because they were known to contain purportedly incriminating materials, since the defendant previously admitted as much and provided a privilege log identifying documents withheld on the basis of the privilege against self-incrimination. *See Burt Hill, Inc. v. Hassan*, CIV. A. 09-1285, 2009 WL 4730231, at *3 (WD Pa Dec. 4, 2009). In contrast, here, the devices at issue were placed in the custody of iDS merely because they had been used by the Individual Defendants during the period of March 2021 through March 2022 – ***not*** because they contained Plaintiff's alleged trade secrets.

All the Individual Defendants have acknowledged is that they used a total of twenty-three (23) electronic devices during that one-year period. There is nothing incriminating about that disclosure. However, under the RRO, the Individual Defendants would be compelled to disclose whether any incriminating materials are stored within their electronic devices. This is a testimonial act because it could be interpreted as admitting to possession of Plaintiff's alleged trade secrets (which are not even identified at this time), not merely possession of the devices. Further, the RRO compels the Individual Defendants to "make extensive use of the contents of [their] own mind[s] in identifying" whether any of their electronic devices might contain incriminating information, which would contribute to a "link in the chain" of their prosecution in violation of the Fifth Amendment privilege. *See Hubbell*, 530 U.S. 27, 42-43. This danger is especially present as Plaintiff refuses to identify its trade secrets. The Individual Defendants may not be compelled to make their own determination as to what *they* believe is or might be a trade secret, based upon the "contents of their own minds," since it would blatantly violate their Fifth Amendment rights. *Id*.

Accordingly, the Court should find that the Fifth Amendment privilege applies to the Individual Defendants' devices, by virtue of the "act of production" doctrine.

**III.   The RRO's Interpretation of the Clawback Provision would Incorrectly Render the Definition of "Privileged Material" Superfluous**

Plaintiff's claim the Individual Defendants have not explained why the RRO's interpretation of the Protective Order's claw-back provision was incorrect is false. The Individual Defendants' opening brief explained that Section 16.5 of the Protective Order states "if a party **at any time** notifies any other Party that it, for any reason, disclosed documents, testimony, information, and/or things that are protected as **Privileged Material**…the disclosure alone, pursuant to Rule 502(d), shall not be deemed a waiver…of any applicable privilege or protection." (Dkt. No. 89, § 16.5) (emphasis added).

Indeed, throughout Section 16, the Protective Order details the claw-back mechanism as it applies to "Privilege Material," not merely attorney communications and work product.  There is no need to speculate over the parties' intent, as the Protective Order broadly defines "Privileged Material" as "Discovery Material protected from disclosure under the attorney-client privilege, attorney work product doctrine, United States or foreign bank disclosure laws or regulations, and***/or any other applicable United States or foreign statute, law, regulation, privilege, or immunity from disclosure***." *See* Dkt. No 89, p. 4 (emphasis added). The defined term is broad enough to include material that is protected by the Fifth Amendment. As such, the Protective Order's use of the defined term "Privileged Material" in Section 16.5 establishes that the clawback and waiver protections therein are not limited solely to attorney-client privilege or work product.

On this point, a basic tenet of contractual interpretation is that "a court should not read a contract so as to render any term, phrase, or provision meaningless or superfluous." *See Wilson v. Poughkeepsie City School Dist.*, 147 A.D.3d 1112, 1114 (2d Dep't 2017). "[A] contract is to be

5

construed in accordance with the parties' intent, which is generally discerned from the four corners of the document itself… when parties set down their agreement in a clear, complete document, their writing should be enforced according to its terms." *Id*.

However, Plaintiff's proposed reading of the Protective Order – which they drafted – would improperly render the definition of "Privileged Material" and its usage in the clawback provision both meaningless and superfluous. Even though the very section is titled "Claw Back of Privileged Material" and the defined term appears in every subsection relevant to the Court's analysis, Plaintiff argues the section is limited to attorney communications and work product only. Plaintiff's interpretation requires the Court to delete a specifically defined term and replace it with one that does not reflect the clear intent behind the parties' choice of words. Therefore, the RRO is clearly erroneous and contrary to fact, to the extent that it nullifies the Individual Defendants' contractual right to claw-back access to their electronic devices based on the Fifth Amendment.

### IV. The Individual Defendants Have Asserted their Fifth Amendment Privilege Broadly, Because Plaintiff Continues to Conceal what Trade Secrets are at Issue

Contrary to Plaintiff's arguments, the Individual Defendants have asserted a Fifth Amendment privilege over their personal electronic devices. At this time, they have only done so broadly because Plaintiff continues to hide what this case is about and has attacked the Individual Defendants' right to conduct any Fifth Amendment review of their devices. The Individual Defendants' inability to perform an informed privilege review of their devices and assert a narrow Fifth Amendment objection is the direct result of Plaintiff's refusal to identify its trade secrets on the false pretext that it cannot do so without seeing the Individual Defendants' devices.

Plaintiff can identify its trade secrets, but is choosing not to, for the improper purpose of fabricating a Fifth Amendment waiver. Plaintiff has repeatedly misled Magistrate Judge McCarthy through its undeniably false claims, which omit the material information that: (1) Plaintiff

6

possesses the Individual Defendants' former Moog laptops; (2) Plaintiff knows what files were allegedly downloaded; and (3) Plaintiff knows the precise content of those files at the time they were allegedly downloaded because Plaintiff **is required** to use version control software under the applicable federal regulations for the flight control programs at issue. *See*, e.g., DO-178C, "Software Considerations in Airborne Systems and Equipment Certification" (January 5, 2012). Plaintiff's refusal to identify its trade secrets is a dilatory tactic intended for the legally impermissible purpose to manufacture a trade secret claim in hindsight[3], rather than commit itself to a specific claim that may be tested through discovery.

Thus, the Individual Defendants' Fifth Amendment concerns add enormous weight toward a finding that it is manifestly reasonable for them to withhold access to their devices under a broad invocation of their Fifth Amendment privileges, until Plaintiff identifies the trade secrets at issue in this action, as it should have done when it filed the Complaint six months ago.

V. **There Has Been No Waiver Due to any Inadvertent Productions, as Plaintiff's Concealment that It Initiated the USAO's Investigation and of the Trade Secrets at Issue is the Cause of any Delay in Asserting the Fifth Amendment Privilege**

It is well-established that any waiver of a Fifth Amendment privilege must be made "voluntarily, knowingly and intelligently" and that any "waiver of constitutional rights … is not lightly to be inferred." *Emspak v. United States*, 349 U.S. 190, 196 (1955). The Individual Defendants are not to be held to a perfection standard, finding waiver if they have not acted perfectly. This Court is required to "indulge every reasonable presumption against waiver." *United States v. O'Henry's Film Works, Inc.*, 598 F.2d 313, 318-19 (2d Cir. 1979). As set forth in the

---

[3] *Switch Commc'ns Grp. v. Ballard*, No. 2:11–CV–00285–KJD, 2012 WL 2342929, at *4 (D. Nev. June 19, 2012) ("[R]equiring the plaintiff to state its claimed trade secrets prior to engaging in discovery ensures that it will not mold its cause of action around the discovery it receives.")

Individual Defendants' opening papers, this high burden has never been met by Plaintiff, because the production of privileged materials was inadvertent. (Dkt. No. 264, pp. 24-25).

Plaintiff's arguments that there has been a waiver and that the production was not inadvertent are both based on the faulty premise that the Individual Defendants caused an unreasonable delay in asserting the Fifth Amendment privilege. Yet, it is well-settled that even a six-month delay in asserting a privilege is insufficient to find that a constitutional right has been waived. *See In re DG Acquisition Corp.*, 151 F.3d 75, 83. Likewise, informal assertions of privilege, such as those in the Individual Defendants' discovery responses and the Protective Order, also preclude finding a waiver through inaction. *Id.*, at 82.[4] Plaintiff ignores this directly on-point Second Circuit precedent and cites to two easily distinguishable and noncontrolling cases.

First, Plaintiff cites *Cohen v. Altman*, No. 519CV274TJMTWD, 2022 WL 370948, at **3-4 (N.D.N.Y. Feb. 8, 2022). However, in that case, there was reason to believe that the defendants had timed their assertion of the Fifth Amendment privilege in a manner that "served mostly to frustrate the discovery process," since they only did so after they were ordered to cease ignoring discovery requests. *Id.*, at *4. Here, the Individual Defendants have not ignored any discovery requests. They have not been the subject of any adverse findings concerning their responsiveness in discovery. To the contrary, Plaintiff's argument in support of a 'waiver by delay' is premised upon the Individual Defendants' good faith efforts to participate in an expedited discovery process in what has been a complex, time-intensive litigation with heavy motion practice.[5]

---

[4] *See also, HSH Nordbank AG New York Branch v. Swerdlow*, 259 F.R.D. 64, 74-75 (S.D.N.Y. 2009); Dkt. No. 89 (§ 20.1).

[5] The circumstances surrounding the Individual Defendants' purported waivers deserves far more recognition than it has received when evaluating the reasonableness and promptness of their efforts. Unlike Plaintiff, the Individual Defendants are not a multi-billion-dollar corporation. The reasonableness of their efforts must be judged by their circumstances. They acted diligently when they found out about the USAO Investigation, which Plaintiff intentionally concealed.

8

Furthermore, the *Cohen* Court was also motivated by finding the defendants' invocation of privilege was "not justified by any legitimate fear of potential criminal liability." *Cohen*, 2022 WL 370948, at *4. The same cannot possibly be said about the Individual Defendants, who are the subjects of the USAO's Investigation, in which a grand jury has already been convened. The Individual Defendants' concerns are very real and made all the worse by the fact that, even in this civil case, ***they have never been told what Plaintiff considers to be its trade secrets***.

Second, Plaintiff cites to *In re Gorsoan Ltd.*, but this decision does not support Plaintiff's argument. *In re Gorsoan Ltd.*, No. 17-CV-5912 (RJS), 2020 WL 3172777, at *5 (S.D.N.Y. June 15, 2020). Here, again, the *Gorsoan* Court found that the invocation of the privilege "smack[ed] of 'procedural gamesmanship' and 'dilatory tactics'" and that the defendant "intentionally delayed asserting her privilege for strategic advantage, resulting in significant prejudice to" the plaintiff.

However, Plaintiff cannot explain, and the Individual Defendants cannot fathom, how they have "intentionally delayed" asserting the privilege or gained any "strategic advantage" thereby. The Individual Defendants' brief delay in asserting the privilege is reasonably explained when one considers that they did so in a matter of weeks after: (1) they were served with grand jury subpoenas on June 15; (2) promptly retained criminal defendant counsel on June 16 and 17; (3) who needed time to familiarize themselves with the claim (something not easily done, since Plaintiff has not identified the supposed 'trade secrets' at issue); and (4) were shockingly informed that they were subjects of the USAO's Investigation. Plaintiff concealed its agency for the USAO Investigation until well after the Individual Defendants produced any materials on June 30, 2022.

The only party that gained strategic advantage by timing and withholding disclosures is Plaintiff, who seeks to profit from both a waiver and an invocation of the Fifth Amendment. Plaintiff cannot and has never been asked to explain its over **<u>five-month delay</u>** in disclosing that

9

it instigated the USAO Investigation or that it has had ongoing biweekly meetings with the FBI to coordinate litigation strategy. (Dkt. No. 229-9). Plaintiff even admits that it only disclosed these facts to Skyryse on July 1, 2022, while it improperly withheld that same information from the Individual Defendants **until July 29, 2022**, four weeks after Plaintiff gained access to the Fifth Amendment-protected materials and only after the Individual Defendants cut off wrongful access. (Dkt. No. 266, p. 9 ["Moog produces FBI communications to Skyryse... the same production was made to the Individual Defendants on July 29."]). Meanwhile, Plaintiff had induced the Individual Defendants into the So-Ordered Stipulation before they even retained counsel, which Plaintiff now proposes as the "waiver event" (*see* Opp. Mem., p. 8). Additionally, while Plaintiff continues to refuse to identify its trade secrets, Plaintiff has already provided the FBI with a list of its alleged trade secrets by looking "at what Kim and Pilkington took to make this list." (Dkt. No. 229-9).

Plaintiff's claim that it is being unfairly prejudiced by not being permitted to review Fifth Amendment-protected material is, thus, neither supported by law nor fact. *See Prescient Partners L.P. v. Fieldcrest Cannon, Inc.*, 96 Civ. 7590, 1997 WL 736726 at *7 (S.D.N.Y. Nov.26, 1997). The equities indisputably support the Individual Defendants and the RRO should be reversed.

## CONCLUSION

For the foregoing reasons, as well as those set forth in the Individual Defendants' moving papers (Dkt. Nos. 228 and 250) and initial submissions in support of their objections (Dkt. No. 264), the Individual Defendants respectfully request this Court grant the Individual Defendants' motion to claw back access to their devices and deny Plaintiff's motion to restore access to those devices, together with such other and further relief as the Court may deem necessary and proper.

Dated: New York, New York  
       September 23, 2022

WINGET, SPADAFORA &  
SCHWARTZBERG, LLP

By: */s/ Anthony D. Green*

                Anthony D. Green, Esq.
                Alexander A. Truitt, Esq.
                M. Annabel Mireles, Esq.
                45 Broadway – 32nd Floor
                New York, NY 10006
                P: (212) 221-6900
                F: (212) 221-6989
                Green.A@wsllp.com
                Truitt.A@wsllp.com
                Mireles.A@wsllp.com

                *Attorneys for Defendants Robert Alin*
                *Pilkington and Misook Kim*