UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MOOG INC.,

                              Plaintiff,

        v.                                              Case No.: 1:22-cv-00187

SKYRYSE, INC., ROBERT ALIN
PILKINGTON, MISOOK KIM, and DOES NOS.
1-50,

                              Defendants.

---

**MOOG'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT SKYRYSE'S OBJECTIONS TO AUGUST 29, 2022 REPORT,
RECOMMENDATION AND ORDER (ECF 263) REGARDING JURISDICTION AND
VENUE**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...........................................................................................1

FACTUAL BACKGROUND ...........................................................................................3

    I.     The Complaint and Initial Filings ............................................................3

    II.    The March 11 Order...................................................................................3

    III.   The March 17 Order...................................................................................5

    IV.   Defendants' Motions to Dismiss and Moog's Oppositions Thereto........................7

    V.    Defendants Change Legal Counsel ............................................................8

    VI.   The RRO ..................................................................................................8

LEGAL STANDARD..........................................................................................................9

    I.     The RRO is Entitled to Deferential Review ...............................................9

ARGUMENT .....................................................................................................................11

    I.     Contrary to Skyryse's Argument, the RRO Properly Addressed and
          Resolved Personal Jurisdiction and Venue Matters To The Extent
          Presently Required ...................................................................................11

    II.    Skyryse's Position Would Lead To Untenable Results ..................................15

    III.   The RRO Did Not Find That Skyryse Waived Any Constitutional Rights ...........19

    IV.   The Court Did Not Err in Denying Consideration of Skyryse's Improper
          Supplemental Reply as the Stipulated Orders Are Not Ambiguous and No
          Parol Evidence Is Necessary ...................................................................20

    V.    The Court Should Decline Skyryse's Invitation to Transfer the Case
          Immediately ............................................................................................24

CONCLUSION..................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**<u>Page(s)</u>**

<u>Federal Cases</u>

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*
  751 F.3d 796 (7th Cir. 2014) ................................................12

*Alpha Cap. Anstalt v. Real Goods Solar, Inc.*
  311 F. Supp. 3d 623 (S.D.N.Y. 2018) ....................................20, 21, 22

*Am. Rock Salt Co., LLC v. Norfolk S. Corp.*
  371 F. Supp. 2d 358 (W.D.N.Y. 2005) ....................................11

*Anscombe Broad. Grp., Ltd. v. RJM Commc'ns, Inc.*
  No. 03-CV-0306A(F), 2004 WL 2491641 (W.D.N.Y. Nov. 3, 2004) ...................10

*In re Apple Inc.*
  979 F.3d 1332 (Fed. Cir. 2020) ............................................12

*Arrowsmith v. United Press Int'l*
  320 F.2d 219 (2d Cir. 1963) ...............................................12

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*
  571 U.S. 49 (2013) ........................................................25

*D'Amato v. ECHL, Inc.*
  No. 13CV646S, 2015 WL 2151825 (W.D.N.Y. May 7, 2015) ...................9

*D.H. Blair & Co. v. Gottdiener*
  462 F.3d 95 (2d Cir. 2006) ................................................13, 25

*Dollar Sav. Bank v. First Sec. Bank of Utah, N.A.*
  746 F.2d 208 (3d Cir. 1984) ...............................................12

*Goldman v. Burch*
  778 F. Supp. 781 (S.D.N.Y.1991) ...........................................18

*Hashmi v. Etihad Airways P.J.S.C.*
  16-CV-04566 (PKC), 2016 WL 6916942 (E.D.N.Y. Nov. 21, 2016) ...................11

*In re Horseshoe Ent.*
  337 F.3d 429 (5th Cir. 2003) ..............................................12

*Hyatt Corp. v. Women's Int'l Bowling Cong., Inc.*
  80 F. Supp. 2d 88 (W.D.N.Y. 1999) .........................................21

*Icahn v. Todtman, Nachamie, Spizz & Johns, P.C.*
No. 99 CIV. 11783(JCF), 2002 WL 362788 (S.D.N.Y. Mar. 6, 2002) ...................................20

*Invs. Ins. Co. of Am. v. Dorinco Reinsurance Co.*
917 F.2d 100 (2d Cir. 1990)..............................................................................................22

*Khatabi v. Bonura*
No. 10 CIV. 1168 (ER), 2017 WL 10621191 (S.D.N.Y. Apr. 21, 2017) ...............................10

*Lamb v. Money Transfer Sys., Inc.*
No. 12-CV-6584 CJS, 2013 WL 5216442 (W.D.N.Y. Sept. 16, 2013)..................................20

*Miller v. Metro. Life Ins. Co.*
979 F.3d 118 (2d Cir. 2020)..............................................................................................14

*Mones v. Com. Bank of Kuwait, S.A.K.*
204 F. App'x 988 (2d Cir. 2006) ........................................................................................12

*Moog, Inc. v. Newport Aeronautical, Inc.*
No. 14-CV-00504A(F), 2016 WL 3444238, at *1, n.1 (W.D.N.Y. June 23, 2016) .................9

*Nat'l Equip. Rental, Ltd. v. Szukhent*
375 U.S. 311 (1964)..........................................................................................................13

*Nysa-Ila Med. v. Salco Trucking Corp.*
No. 90 CIV. 5949 (CSH), 1993 WL 119702 (S.D.N.Y. Apr. 15, 1993) ................................22

*Pan Am. World Airways, Inc. v. Flight Engineers' Int'l Ass'n, PAA Chapter, AFL-CIO*
306 F.2d 840 (2d Cir. 1962)..............................................................................................18

*Proctor & Gamble Co. v. Ranir, LLC*
No. 1:17-cv-185, 2017 WL 3537197 (S.D. Ohio Aug. 17, 2017) ..........................................12

*Roll v. Tracor, Inc.*
26 F. Supp. 2d 482 (W.D.N.Y. 1998) ..................................................................................25

*Roy v. Buffalo Philharmonic Orchestra Soc'y, Inc.*
161 F. Supp. 3d 187 (W.D.N.Y. 2016), *aff'd*, 682 F. App'x 42 (2d Cir. 2017) ...................14

*Snyman v. W.A. Baum Co.*
360 F. App'x 251 (2d Cir. 2010) ........................................................................................14

*Thurmond v. Bowman*
199 F. Supp. 3d 686 (W.D.N.Y. 2016) ...............................................................................11

*United States v. Armour & Co.*
402 U.S. 673 (1971)..........................................................................................................20

*United States v. Debeers Indus. Diamond Div. (Ireland) Ltd.*
    No. 74 CIV. 5389 LPG, 1976 WL 1399 (S.D.N.Y. Dec. 8, 1976)..........................................25

*United States v. ITT Continental Baking Co.*
    420 U.S. 223 (1975).................................................................................................................20

*United States v. Preveson Holdings, Ltd.*
    289 F. Supp. 3d 446 (S.D.N.Y. 2018)..............................................................................21, 24

State Cases

*Branson v. Exide Elecs. Corp.*
    625 A.2d 267 (Del. 1993) .......................................................................................................12

*Reiss v. Financial Performance Corp.*
    97 N.Y.2d 195 (2001) .............................................................................................................20

Federal: Statutes, Rules, Regulations, Constitutional Provisions

Federal Rules of Civil Procedure
    Rule 12 ....................................................................................................................................17
    Rule 72 ....................................................................................................................................11

Pursuant to the Court's September 13, 2022 minute order (ECF 265), Plaintiff Moog, Inc. ("Moog"), by and through its undersigned counsel, hereby submits this memorandum of law in opposition to defendant Skyryse, Inc.'s ("Skyryse") Objections (ECF 263) (the "Objections") to the August 29 Report, Recommendation and Order (ECF 253) (the "RRO") regarding jurisdiction and venue.

## PRELIMINARY STATEMENT

The RRO should be adopted in full and Skyryse's Objections should be denied.  In his RRO, Judge McCarthy made careful and limited rulings based on the unambiguous, express language and purpose of two stipulated orders relating to the adjudication of Moog's pending Motion for Preliminary Injunction (the "PI Motion"). (*See* ECF 25, 33).  Judge McCarthy's RRO properly analyzed the stipulated orders *as a whole* to discern their sensible meaning and reached the only tenable interpretation of those orders, namely, that: (1) the parties agreed that they would undertake certain limited procedures to advance the matter to enable a decision on the PI Motion; (2) that Defendants consented to jurisdiction and venue for the purposes of those orders; and (3) such orders would remain in place until Moog's PI Motion were adjudicated in the WDNY.  Any other interpretation would lead to nonsensical and inequitable results.  Following the logic in Skyryse's Objections, the parties only consented to jurisdiction and venue in the WDNY for the logistical step of filing the stipulated orders at issue, without regard for the actual substance and commitments in the stipulated orders.  This interpretation would render the stipulations effectively illusory, and would call into question the Court's power to issue the stipulated orders in the first place, an absurd result.  Admittedly, due to the complicated nature of the action and highly contentious expedited discovery process, the procedures necessary to resolve the PI Motion have taken longer to complete than was initially anticipated in March of this year when the stipulated orders were executed.  But any delay in completing expedited

-1-

discovery does not magically alter the meaning of the stipulated orders or render null their terms, as Skyryse's Objections now suggest.  Rather, they remain in full effect, and the parties must be held to their stipulated agreement, which is not changed because Skyryse has new outside counsel that disagrees with the strategic decisions of their predecessors in this action.

To surmount the clear language and purpose of the stipulated orders, Skyryse turns to strawmen arguments and false premises in its Objections, namely: (1) Judge McCarthy has erroneously decided that the PI Motion will be heard before a determination on personal jurisdiction and venue (actually, Judge McCarthy's RRO *first* determined there was consent to limited personal jurisdiction and venue for purpose of the PI Motion); (2) the reservation of rights in the stipulated orders, stating that Defendants "consent[ed] to the jurisdiction and venue of the Court for purposes of this stipulated Order only *and for no other purpose*" means that they only consented to some limited and incomplete discovery work to, in Skyryse's words, "move the case forward," with no clear end date (although the stipulated orders' surrounding provisions make clear there was an agreement to have the PI Motion decided by this Court, and the jurisdiction and venue consents were tied to that planned result); and (3) the Court can rely on parol evidence as to what Skyryse "really" expected the stipulated orders to mean (but, as Judge McCarthy correctly determined, the stipulated orders are not ambiguous and therefore review of parol evidence is not only unnecessary, but legally improper).  None of these arguments have any merit, and all require the Court to first assume premises that are belied by the record.

Skyryse's Objections also misstate the character, breadth, and import of the qualified RRO ruling.  Magistrate Judge McCarthy made the *limited* determination that Defendants consented to jurisdiction and venue in the WDNY for the limited purposes of Moog's PI Motion, and deferred the jurisdictional/venue challenges for the remainder of the case.  Contrary to

Skyryse's current arguments, Judge McCarthy did not make a dispositive ruling on jurisdiction

and venue for the entire action.  By intentional design, the RRO did not rule on the dispositive

nature of the Skyryse's Motion to Dismiss, namely, whether this Court has personal jurisdiction

over Skyryse for the *entire case*, or whether the *entire case* should be venued in WDNY.[1]

Skyryse tellingly cites no applicable legal authority for its baseless positions, and none of

the cases it relies upon involve a scenario, where parties, through counsel, stipulated to

jurisdiction and venue.  In short, Skyryse has not met the heavy burden to show that the RRO is

"clearly erroneous or contrary to law," and the Objections are therefore properly denied.

## FACTUAL BACKGROUND

### I.      The Complaint and Initial Filings

On March 7, 2022, Moog filed its Complaint against Skyryse and the Individual

Defendants, alleging that Defendants had engaged in the theft of hundreds of thousands of

Moog's most sensitive and proprietary data files.  (ECF 1.)  Moog also moved for a Temporary

Restraining Order and Preliminary Injunction the same day. (ECF 4-1.)  After the filing of the

Complaint, Moog discovered that another approximately 1.3 million Moog files had been copied

from Moog before the Individual Defendants joined Skyryse. (ECF 63-03 at 11-12.)

### II.     The March 11 Order

On March 11, 2022, in exchange for not proceeding with a public hearing on the merits

regarding Moog's Motion for Temporary Restraining Order and Preliminary Injunction,

Defendants stipulated to a temporary restraining order (the "March 11 Order" or the "TRO").

---

[1] By the same token, there has been no finding of waiver or estoppel as to Skyryse's reservation
of rights to challenge jurisdiction and venue in the stipulated orders.  In fact, Judge McCarthy
expressly cited to and acknowledged such reservation of rights, and stated that he is deferring
ruling on those issues for the remainder of the case until after the hearing on the PI Motion.

(ECF 25.)  The March 11 Order, among other things, contains substantive provisions enjoining Defendants from using, accessing, disclosing, or transmitting any Moog non-public information. (*Id*., ¶ 1.)  It also directed Defendants to produce, on or before April 1, 2022, all Moog "non-public information" in each "Defendant's possession, custody or control." (*Id*., ¶ 2.)  Defendants were required to turn over to a neutral third-party forensics vendor any Moog "non-public information" only if such information has been "integrated" or "used by any Defendant in such a manner that such delivery necessarily includes property of any Defendant."  (*Id*.)   The Individual Defendants were also required to produce to the neutral forensics vendor all personal devices they had used within the last twelve months. (*Id*., ¶ 4.)  The March 11 Order also contains other preservation requirements. (*Id*., ¶¶ 6, 9.)

The March 11 Order also contains detailed provisions regarding a briefing and hearing schedule on Moog's Motion for Preliminary Injunction.  In Paragraph 10 thereof, the parties agreed to meet and confer to "negotiate an agreed framework and schedule for reciprocal discovery relating to Plaintiff's Motion for Preliminary Injunction and a briefing schedule for Plaintiff's Motion for Preliminary Injunction." (*Id*., ¶ 10.)  The Parties agreed that the briefing and hearing dates for Plaintiff's Motion for Preliminary Injunction would be no earlier than:

- Defendants' Opposition: April 18, 2022

- Plaintiff's Reply: May 2, 2022

- Hearing: on or after May 9, 2022 at a date and time of the Court's choosing, or 7 days after Plaintiff's Reply is filed, whichever is later.

(*Id*.)   The parties were further allowed to ask "the Court" for a modification to the proposed briefing and hearing schedule on Moog's PI Motion.  (*Id*.)  Paragraph 11 of the March 11 Order states in its entirety: "By agreeing to this stipulated Order, ***Defendants consent to the***

*jurisdiction and venue of this Court for purposes of this stipulated Order* only and for no other

purpose." (*Id.*, ¶ 10 (emphasis added).)  In a similar and related provision, Defendants expressly

agreed that: "*This stipulated Order shall remain in effect until a hearing on Plaintiff's Motion*

*for Preliminary Injunction takes place and a final ruling on the merits is issued*." (*Id.*, ¶ 11

(emphasis added).)

When the March 11 Order was executed, Skyryse was represented by its prior counsel

Gibson Dunn & Crutcher LLP, and the Individual Defendants were not officially represented by

counsel but Moog communicated with Skyryse's prior counsel on their behalf.[2]

## III.    The March 17 Order

On March 17, 2022, all parties through their legal counsel entered into another stipulated

order regarding expedited discovery procedures and deadlines, as well as a hearing and briefing

schedule on Moog's Motion for Preliminary Injunction (the "March 17 Order"). (ECF 33.)  By

this point, the Individual Defendants were represented by their prior counsel, Locke Lord LLP.

At no point in time did Moog's counsel ever communicate with Skyryse's in-house general

counsel in connection with the March 11 or March 17 Stipulated Orders.

Paragraph 1 of the March 17 Order expressly referenced and incorporated Defendants'

obligations under the March 11 Order: "The Parties shall comply with all of the obligations and

requirements set forth in the Parties' Stipulation and Court's Order dated March 11, 2022 (ECF

Nos. 25, 28), including but not limited to the 21-day deadline to return certain of Moog's

information (if any) as further set forth in the March 11, 2022 Stipulation and Order." (*Id.*, ¶ 1.)

The March 17 Order also contains detailed provisions regarding a limit on number of discovery

---

[2] Skyryse's prior counsel confirmed the Individual Defendants' agreement to the March 11 Order
and obtained their signatures.

requests and depositions. (*Id*., ¶ 5.)  In Paragraph 6, the Parties stipulated to a detailed expedited discovery schedule, as well as a specific briefing and hearing schedule on Moog's PI Motion (modified from the March 11 Order) as follows:

- Defendants' Opposition: May 27, 2022, or 14 days after the final deposition concludes, whichever is later;

- Plaintiff's Reply: June 17, 2022, or 21 days after Defendants' Oppositions are filed, whichever is later; and

- Hearing: July 6, 2022, or 14 days after Moog's Reply is filed, whichever is later, "subject to the Court's availability."

(*Id*., ¶ 6.)  Once again, the parties agreed to a process to submit a status report "to the Court" to seek modification of the briefing and hearing schedule for Moog's PI Motion.  (*Id*. ¶ 8.)  In Paragraph 9, the parties stipulated to a discovery dispute procedure to be used throughout expedited discovery, involving submitting discovery disputes to Judge McCarthy for resolution. (*Id*., ¶ 9.)  The parties also agreed that the procedures and agreement in the stipulated order did not apply "to discovery conducted following the hearing" on Moog's PI motion. (*Id*. ¶ 13.)

Paragraph 14 of the March 17 Order contains a similar consent to jurisdiction and venue as contained in the March 11 Order: "By agreeing to this stipulated Order, Defendants consent to the jurisdiction and venue of the Court for purposes of this stipulated Order only and for no other purpose." (*Id*., ¶ 14.) The March 17 Order was the result of negotiation between parties represented at that time by sophisticated legal counsel.  Again, Defendants consented to jurisdiction and venue in the WDNY for all purposes of the March 17 Order, which by its terms includes a briefing and hearing schedule on Moog's PI Motion and contained specific expedited discovery dispute resolution procedures to take place in this Court. At the end of Paragraph 14,

Defendants did reserve their right to challenge jurisdiction and venue for purposes not related to the March 11 and March 17 Orders: "Any and all *other* challenges to jurisdiction and venue in the Western District of New York are explicitly reserved." (*Id.* (emphasis added).)  The use of the word "**other**" is critical, and was not accidental, confirming that Defendants consented to jurisdiction and venue in the WDNY for the hearing on Moog's PI Motion, but preserved all "other" challenges to jurisdiction and venue, i.e., for the remainder of the case after the preliminary injunction hearing.

**IV.    Defendants' Motions to Dismiss and Moog's Oppositions Thereto**

On March 29, 2022, after the March 11 and March 17 Orders were executed and entered by the Court, Defendants filed separate motions to dismiss the entire action for lack of personal jurisdiction or, alternatively, to transfer venue to the Central District of California. (ECF 47, 48). These motions were filed by Skyryse's prior counsel and the Individual Defendants' prior counsel.  Skyryse never sought to have its motion to dismiss the case or transfer venue expedited such that it would be determined prior to the hearing on Moog's PI Motion.  (*Id.*)

In opposition to both of these motions (and contrary to Skyryse's present arguments), Moog expressly referenced and discussed the March 11 and 17 Orders to show that Defendants had forfeited any jurisdictional/venue arguments. (ECF 62 at 12-14; ECF 63 at 12-14.)  Indeed, in both Oppositions, Moog argued that Defendants: "entered into two stipulations before this Court, essentially agreeing to Moog's request for temporary relief, and setting forth a comprehensive framework for document production, depositions, and briefing *in connection with Moog's motion for a preliminary injunction*. (*See* Dkts. 25, 33)."  (ECF 62 at 12; ECF 63 at 12) (emphasis added).  Moog further argued that Defendants "participated in an April 8, 2022 conference with Magistrate Judge McCarthy to address compliance with the Court's orders and

related matters; notably, counsel did not suggest that they were limiting their litigation activity in this Court given their objections based on jurisdiction." (ECF 62 at 13; ECF 63 at 13.)

## V.     Defendants Change Legal Counsel

On May 13, 2022, a considerable time after the March 11 and 17 Orders were negotiated, stipulated to, and entered by the Court, and after full submission of briefing on Defendants' motions to dismiss, both Skyryse and the Individual Defendants changed counsel.  Latham & Watkins LLP was substituted as counsel for Skyryse (ECF 107, 108), and Winget, Spadafora & Schwartzberg LLP was substituted as counsel for the Individual Defendants. (ECF 110, 112.)

## VI.    The RRO

Defendants' Motions to Dismiss were heard on August 25, and the Court issued the RRO on August 29.  (*See* ECF 253.)  The RRO evaluated the question of "which court should handle proceedings up to and including a decision on Moog's preliminary injunction motion." (RRO at 1.)  It expressly did not rule on the entirety of the Motions to Dismiss, and deferred those broader and more long-term rulings.

The RRO determined that the sole question before it regarding personal jurisdiction and venue was "clearly answered" by the March 17 Order because "defendants, all of whom were represented by counsel," "consent to the jurisdiction and venue of the Court for purposes of this stipulated Order."  (*Id*. at 2.)  Judge McCarthy explained that the March 17 Order established "procedures regarding expedited discovery, and briefing and hearing schedule on Moog's Motion for Preliminary Injunction," "provided a mechanism for my resolving discovery disputes," and "scheduled the preliminary injunction hearing for July 6, 2022, or 14 days after Moog's Reply in Support of its Motion for Preliminary Injunction is filed, whichever is later, subject to the Court's availability." (*Id*. (internal citations omitted).)  The RRO logically explained that "there would be no point to scheduling a hearing 'subject to the Court's

-8-

availability' if the hearing was not to be held here." (*Id.*)  Judge McCarthy also cited comments

from Skyryse's counsel during a July 15 hearing, expressly acknowledging that the parties would

be "in front of Judge Vilardo" on Moog's PI Motion. (*Id.*)

The RRO cited substantial legal authority regarding parties consenting to jurisdiction and

venue based on stipulation or contract. (*Id.* at 2-4.)  Regarding Skyryse's Motion for Leave to

file a supplemental reply brief (ECF 247), which sought to introduce parol evidence regarding

the parties' negotiations of the March 11 and 17 Orders, Judge McCarthy determined that there

was "no ambiguity in the language of the Stipulated Order" and, thus, such parol evidence need

not be considered. (*Id.* at 3.)  The RRO concluded: "Having consented to litigate Moog's

preliminary injunction motion in this court, defendants cannot now be heard to argue that it

should be determined by a different court." (*Id.*)

## LEGAL STANDARD

### I.     The RRO is Entitled to Deferential Review

Skyryse's Objections concede that a motion to transfer venue is non-dispositive.  *See*

ECF 263 at 5 (citing *Moog, Inc. v. Newport Aeronautical, Inc.*, No. 14-CV-00504A(F), 2016 WL

3444238, at *1, n.1 (W.D.N.Y. June 23, 2016)).[3]  This is in line with this Court's prior holdings

that motions to transfer or change venue are "non-dispositive" motions.  *See, e.g., D'Amato v.*

*ECHL, Inc.*, No. 13CV646S, 2015 WL 2151825, at *3 (W.D.N.Y. May 7, 2015)).  And even if

Defendants' respective motions, as specific to personal jurisdiction, were considered to be

dispositive motions, the RRO was purposely and expressly a ruling of limited scope, which did

---

[3] While Skyryse argues that the *Moog, Inc.* decision has "strikingly similar facts," most relevant
here, that case did not involve a stipulation of consent to hear a limited portion of the case in
WDNY, a critical difference which renders the decision inapplicable for review of the RRO.
The *Moog, Inc.* case is further distinguishable on its facts as explained in Moog's opposition to
Skyryse's motion to dismiss/transfer.  (ECF 62 at 23-24.)

not determine final jurisdiction and venue for the entire case.  Instead, it addressed only the interpretation of the March 11 and 17 Orders to determine Defendants' consent regarding Moog's PI Motion.  The RRO is therefore a non-dispositive ruling.  Indeed, case law is clear that a court may issue a non-dispositive order in response to a dispositive motion.  *See Anscombe Broad. Grp., Ltd. v. RJM Commc'ns, Inc.*, No. 03-CV-0306A(F), 2004 WL 2491641, at \*1 n. 1 (W.D.N.Y. Nov. 3, 2004) (in response to a motion to dismiss for personal jurisdiction or improper venue, magistrate judge issued non-dispositive pretrial determination to transfer venue); *Khatabi v. Bonura*, No. 10 CIV. 1168 (ER), 2017 WL 10621191, at \*3 (S.D.N.Y. Apr. 21, 2017) (in determining whether a magistrate judge's sanction order was dispositive or non-dispositive, the "the critical factor is what sanction the magistrate judge actually imposes").

The text of the RRO itself confirms that it is a non-dispositive ruling.  *See* RRO at 10; *see also id.* at 4 (expressly acknowledging Defendants' reservation of rights to challenge personal jurisdiction and venue in the March 17 Order, and determining that "the question of jurisdiction and venue for the remainder of the case will be decided once Moog's preliminary injunction motion is resolved.").  Indeed, the RRO recommended denial of the personal jurisdiction and venue motions only "to the extent they seek to prevent this court's conducting a hearing and determining Moog's preliminary injunction motion, ***but otherwise deferred for consideration until the preliminary injunction motion is decided***." (*Id*. (emphasis added).)  The RRO cannot be dispositive because it does not issue a final ruling on Defendants' Motions to Dismiss.  Skyryse's suggestion that the RRO be subject to *de novo* review is therefore misguided.[4] Instead, the more deferential "clearly erroneous" standard of review applies.

---

[4] But even under a *de novo* standard, for the reasons explained herein, the RRO should be adopted, as the findings and conclusions therein are legally sound.

-10-

A district judge may only set aside a non-dispositive order if it is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72. "The clearly erroneous/contrary to law standard of review is highly deferential and a district court may reverse the order only if on the entire evidence, the district court is left with the definite and firm conviction that a mistake has been committed." *Thurmond v. Bowman*, 199 F. Supp. 3d 686, 689 (W.D.N.Y. 2016) (internal quotation marks omitted). "The party seeking to reverse a Magistrate Judge's ruling concerning discovery bears a heavy burden, in part, because the Magistrate Judge is afforded broad discretion in these matters." *Am. Rock Salt Co., LLC v. Norfolk S. Corp.*, 371 F. Supp. 2d 358, 360 (W.D.N.Y. 2005). A party's objections "must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed to take a second bite at the apple by simply relitigating a prior argument." *Hashmi v. Etihad Airways P.J.S.C.*, 16-CV-04566 (PKC), 2016 WL 6916942, at *3 (E.D.N.Y. Nov. 21, 2016) (internal quotation marks and citation omitted).

## ARGUMENT

### I.    Contrary to Skyryse's Argument, the RRO Properly Addressed and Resolved Personal Jurisdiction and Venue Matters To The Extent Presently Required

Skyryse's Objections rely on the incorrect argument that Judge McCarthy erred by deciding "to proceed with resolving an injunction motion *before* resolving Skyryse's challenge to jurisdiction and venue." ECF 263 at 7 (emphasis in original). To the contrary, the RRO expressly resolved Skyryse's challenge to jurisdiction and venue, albeit in a manner that was limited to the extent presently required. Thus, there is no danger that the Court is proceeding with ruling on a PI Motion without having jurisdiction over Skyryse. Importantly, the RRO does not constitute an erroneous decision on the merits, improperly determined before procedural matters; instead, the RRO is a *procedural* determination addressing the limited question of

whether Defendants consented to the jurisdiction and venue of this Court for purposes of

resolving Moog's PI Motion, and, for the reasons explained therein, found in the affirmative.[5]

While Skyryse argues that "a court that lacks personal jurisdiction over a defendant has

no authority to enter or enforce rulings on the merits" (ECF 263 at 7), that argument ignores that

(1) Skyryse stipulated to the Court's jurisdiction for purposes of the TRO (and therefore the

Court's supervision regarding the same), and (2) the RRO did, in fact, make a determination that

there is personal jurisdiction, albeit limited in scope, as a result of Defendants' consent to the

same in the stipulated orders until resolution of the PI Motion.  To suggest that Judge McCarthy

made no determination on personal jurisdiction and venue entirely misunderstands the RRO.

Judge McCarthy found consent to jurisdiction and venue in the WDNY for there to be a

resolution on the PI Motion, consistent with the language and purpose of the March 11 and

March 17 stipulated orders.[6]  And, for that reason, even if the Court at a later date finds that the

WDNY lacks personal jurisdiction over Skyryse (which Moog disputes for the reasons explained

---

[5] While there is no dispute that, in the abstract, challenges to personal jurisdiction and venue should be resolved before merits determinations, that broad issue was not before the Court in deciding the RRO.  Rather, the more specific issue addressed by the RRO was the meaning and impact of the stipulated orders.  Skyryse's reliance on the following cases, which did not deal with a stipulation to jurisdiction and venue for purposes of preliminary matters, are therefore inapposite: *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 234 (2d Cir. 1963); *In re Apple Inc.*, 979 F.3d 1332, 1337-38 (Fed. Cir. 2020); *In re Horseshoe Ent.*, 337 F.3d 429, 433 (5th Cir. 2003); *Proctor & Gamble Co. v. Ranir, LLC*, No. 1:17-cv-185, 2017 WL 3537197, at *4 (S.D. Ohio Aug. 17, 2017); *Dollar Sav. Bank v. First Sec. Bank of Utah, N.A.*, 746 F.2d 208, 215 (3d Cir. 1984); *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014).  Skyryse does not cite a single case with the facts comparable to those before this Court, *i.e.*, where the defendants consented by stipulation to jurisdiction and venue for expedited discovery procedures and briefing and hearing on a preliminary injunction motion.

[6] For this reason, the "condition precedent" for the proper exercise of jurisdiction which Skyryse argues is lacking has, in fact, been established, and would continue to be in place for any ruling on the PI Motion.  Skyryse's reliance on *Branson v. Exide Elecs. Corp.*, 625 A.2d 267, 269 (Del. 1993) and *Mones v. Com. Bank of Kuwait, S.A.K.*, 204 F. App'x 988, 990 (2d Cir. 2006), is therefore misguided.  Those cases simply do not address the situation before the Court now.

in its opposition to Skyryse's motion to dismiss), such a finding would not moot, nullify, or

render unenforceable the more narrow and specific finding of consent to limited jurisdiction and

venue via the stipulated orders.  As explained in the RRO, Second Circuit case law makes clear

that "[p]arties can consent to personal jurisdiction through forum-selection clauses in contractual

agreements." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006) (citing *Nat'l*

*Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 315–16 (1964) ("And it is settled . . . that parties

to a contract may agree in advance to submit to the jurisdiction of a given court . . . .")); RRO at

3.  While Skyryse argues that "delay in resolving Skyryse's [motion to dismiss] will only invite

continued protracted litigation in the [WDNY]," and accuses Moog of using this forum for

"unfair tactical advantage," Skyryse is merely getting what it agreed to by contract in signing the

March 11 and March 17 Orders: resolution of the PI Motion in the WDNY.[7]  Skyryse should not

be heard to complain now because that resolution has taken longer than initially expected

(including for reasons resulting from Skyryse's intractable positions in discovery and the

Individual Defendants' improper clawback of produced materials).[8]

---

[7] Admittedly, due to the complicated nature of the action and highly contentious expedited discovery process, the procedures necessary to resolve the PI Motion have taken longer to complete than was initially anticipated in March of this year when the stipulated orders were executed.  But any delay in completing expedited discovery does not magically alter the meaning of the stipulated orders or render null their terms, as Skyryse's Objections now suggest.

[8] Likewise, Skyryse's argument that "[i]n choosing to postpone a decision on Skyryse's jurisdiction and venue motion until after ruling on Moog's preliminary injunction motion, the R&R risks that any preliminary injunction the Court enters will be unenforceable if the Court later finds that it lacks personal jurisdiction over Skyryse" (ECF 263 at 7) misunderstands the RRO.  The RRO found that there is limited jurisdiction over defendants for purposes of the PI Motion based on Defendants' consent.  Skyryse's reference to potential unenforceability therefore misunderstands the sequencing in play here: (1) Defendants consented to jurisdiction and venue for the TRO; (2) Defendants consented to jurisdiction for purposes of preparing for and deciding the PI Motion; and (3) the Court therefore has jurisdiction (albeit limited) over Defendants for any ruling and order relating to the PI Motion and expedited discovery.

Leaving aside this misreading of the RRO, Skyryse's main issue appears to be that Judge McCarthy made only a limited ruling, as opposed to dealing with all matters presented in Skyryse's Motion to Dismiss.  But Judge McCarthy was not obligated to decide all aspects and all issues presented in Skyryse's Motion to Dismiss when a more limited ruling would suffice for now, and Skyryse's cited authority does not hold otherwise.  *See Miller v. Metro. Life Ins. Co.*, 979 F.3d 118, 124 (2d Cir. 2020) (highlighting "the cardinal principle of judicial restraint—if it is not necessary to decide more, it is necessary not to decide more—counsels us to go no further."); *Snyman v. W.A. Baum Co.*, 360 F. App'x 251, 254 (2d Cir. 2010) (refusing to reach broader issues once sufficient holding was reached); *Roy v. Buffalo Philharmonic Orchestra Soc'y, Inc.*, 161 F. Supp. 3d 187, 193 n.3 (W.D.N.Y. 2016), *aff'd*, 682 F. App'x 42 (2d Cir. 2017) (court need not reach two issues presented where motion was decided on other grounds).

Judge McCarthy's reading of the stipulated orders (the only reasonable reading of such stipulations) is confirmed by Defendants' own language.  Defendants' use of the phrase "Any and all other challenges to jurisdiction and venue . . . are explicitly reserved" in Paragraph 14 of the March 17 Order confirms that Defendants consented to jurisdiction and venue in the WDNY for the hearing on Moog's PI Motion, but preserved all "other" challenges to jurisdiction and venue, i.e., for the remainder of the case after the preliminary injunction hearing.  Moreover, as the RRO notes, during the July 15, 2022 conference, Skyryse's current counsel, Mr. Lumish, expressly and repeatedly acknowledged that the PI Hearing would be held in the WDNY:

> We are, unless [Moog is] successful in . . . mov[ing] the hearing, which we may object to, three months away from a ***hearing in front of Judge Vilardo*** where they are going to ask ***Judge Vilardo*** to impose very significant injunctive relief on Skyryse.

(ECF 204 at 10:6-23 (emphasis added).)

If they don't meet those thresholds that they even begin to have trade secrets, they lose. ***So, we know they have to come to Judge Vilardo with something.***

(*Id.* at 11:8-11 (emphasis added).)

We think we are entitled to, today, your Honor, to know everything they are ***going to allege to Judge Vilardo*** [for the hearing on the PI Motion] that they are aware of.

(*Id.* at 15:24-16:4 (emphasis added).)

[W]e need to test all of this in discovery. ***We can't wait for the hearing and be blindsided by it.*** We now have an acknowledgement that they are not going to say -- ***they are going to tell Judge Vilardo something different from what they've told us***, and so we need to get that information as soon as possible.

(*Id.* at 33:10-16 (emphasis added).)[9]

Skyryse plainly has not demonstrated that Judge McCarthy's finding of limited consent to jurisdiction and venue is "clearly erroneous or contrary to law."

## II.    Skyryse's Position Would Lead To Untenable Results

Skyryse spends considerable space in its Objections arguing that the particular language in the stipulated orders, "[b]y agreeing to this stipulated Order, Defendants consent to the jurisdiction and venue of the Court for purposes of this stipulated Order only and for no other purpose," means only that Skyryse "stipulated in good faith to certain processes and discovery" that would "help move the case along" (ECF 263 at *e.g.* 8, 14.)  Tellingly, Skyryse fails to explain how its new interpretation of the orders would sensibly work.  Skyryse somewhat circularly argues that it consented to jurisdiction and venue "only for purpose of the stipulations

---

[9] Elsewhere in its brief, Skyryse argues that the Court should look to certain "post-contract conduct" to discern the parties intent as to the meaning of the stipulated orders. *See* ECF 263 at 19-20. While Moog disagrees with that position, and maintains that reference to extrinsic evidence would be legally improper here, Skyryse's counsel's statements to the Court quoted above would constitute, under Skyryse's own argument, "post-contract conduct" confirming Skyryse's understanding that there was consent to jurisdiction for the PI Motion in the WDNY.

themselves," which it now says means the (i) processes for preserving discoverable evidence and delivering certain materials, (ii) parameters for expedited discovery, (iii) a briefing schedule related to Moog's preliminary injunction motion, and (iv) a hearing date "subject to the Court's availability," and (v) "no other purpose." (*Id.* at 14.) But what does this practically mean? Is it believable that the parties and this Court would have agreed to do all the work leading up to a preliminary injunction proceeding (including heavy involvement and material rulings by a WDNY magistrate judge on a plethora of complex discovery matters which set the evidentiary scope for the preliminary injunction hearing), only to ship the case to a new court for resolution on the PI Motion? Is it believable, let alone practical, that the WDNY would set a briefing schedule and hearing date for the PI Motion that *a different court* would actually hear (and is that even possible)? Is it believable that Moog would have agreed to simply have this Court referee some preliminary matters on expedited discovery to "help move the case along" knowing that the PI Motion would not be heard by the WDNY? Why would it be efficient to have a new court, unfamiliar with the procedure and facts underlying the TRO and the expedited discovery process, decide the PI Motion after months of involvement by the WDNY? Skyryse's new interpretation of the stipulated orders begs, but does not answer, these very practical questions.

The true answer, of course, is that the stipulated orders were meant to avoid such absurdity, confusion, and speculation; by consenting to jurisdiction and venue for purposes of resolving the PI Motion, the parties removed any question about where the PI Motion would be resolved, what court would handle discovery matters leading up thereto, and what processes the WDNY would manage and oversee in connection with the same. Judge McCarthy's RRO was correct in reasoning that "there would be no point to scheduling a hearing 'subject to the Court's availability' if the hearing was not to be held here." RRO at 2. Indeed, under Skyryse's

interpretation that every provision in the stipulated orders was subject to Skyryse's challenge based on personal jurisdiction and venue, if the Court found that it lacked jurisdiction, Skyryse would be bound by nothing in the stipulated orders, allowing it to (among other things) use and disclose non-public Moog information.  This cannot be.  Such a reading only invites uncertainty and illogicality, which would never have been agreed to or intended in March of this year when it was (optimistically) expected that the PI Motion would be resolved in a matter of weeks.

Skyryse argues that "[t]he stipulations do not dictate the order or timing in which the Court will resolve the defendants' Rule 12 or transfer motions and Moog's preliminary injunction motion."  ECF 263 at 15.  But the order of decisions on the Motion to Dismiss and the PI Motion was *made irrelevant* by the consent to jurisdiction in the stipulated orders, and thus there was no reason to require such order of operation in the stipulations.  Said differently, because Defendants expressly consented to the WDNY for purposes of resolving the PI Motion, even if there were a more general finding against personal jurisdiction and venue in the WDNY, there would still be a more specific and applicable consent, through two stipulated orders, to jurisdiction and venue for the limited purposes of advancing and deciding the PI Motion.  Thus, Skyryse's argument that it has been somehow swindled into agreeing to "delay or deprioritize its threshold challenge" is simply incorrect and misguided, as are its claims of prejudice from being "made" to continue to litigate in this forum.  *See* ECF 263 at 15.  Importantly, if Skyryse believed that its Motion to Dismiss had to be decided prior to Moog's PI Motion (initially scheduled for approximately eight weeks after the March 11 Order), it could (and should) have taken steps to expedite the hearing on that motion.  Skyryse took no steps to expedite because Skyryse (and its counsel at that time) understood, as did Moog, that the preliminary injunction

hearing would take place in WDNY, and its Motion to Dismiss was irrelevant to that proceeding. Skyryse is being held to what it expressly agreed to _twice_ in March.

Skyryse's argument that Moog received by stipulation the preliminary relief it requested, rendering the provisions of the stipulated orders addressing scheduling of a hearing on the PI Motion "obsolete" (ECF 263 at 16-17) is equally nonsensical, and would lead to an improper nullity or absurdity. *Goldman v. Burch*, 778 F. Supp. 781, 788 (S.D.N.Y.1991) ("construction of contract provisions resulting in the parties' agreement to nullities or absurdities is to be avoided"). Skyryse is essentially claiming that, simply because Moog obtained a TRO, there is no point to having a hearing on the PI Motion, and thus the provisions of the stipulated orders dealing with scheduling on hearing on the PI Motion can effectively be ignored, and were an improper basis for Judge McCarthy's RRO ruling. *See id.* This, of course, is nonsense, as the relief that Moog presently has is pursuant to a *temporary* restraining order which, by definition, is temporally limited, and meant to be of lesser duration than that of a preliminary injunction. *See Pan Am. World Airways, Inc. v. Flight Engineers' Int'l Ass'n, PAA Chapter, AFL-CIO*, 306 F.2d 840, 842 (2d Cir. 1962) ("The purpose of a temporary restraining order is to preserve an existing situation in status quo until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction."). As is clear from the plain language of the stipulated orders, Defendants consented to the relief granted by the TRO not in perpetuity, but until resolution of the PI Motion *via* a hearing for a preliminary injunction, which would replace (or not) the TRO. And a ruling on the PI Motion could award additional and different relief than the TRO, based on developments from the ordered expedited discovery in advance of the preliminary injunction hearing. And, in any event, Skyryse has not consented to entry of a preliminary injunction against it. Skyryse's attempts to "read out" entire clauses of the stipulated

-18-

orders on this basis is not supported by the law, and unsurprisingly, Skyryse cites no legal authority in support of its argument. *See* ECF 263 at 16-17. In sum, the existence of the stipulated TRO is obviously not a concession by Defendants that no preliminary injunction hearing is needed – the schedule for that hearing is contained that very stipulation.

## III.    The RRO Did Not Find That Skyryse Waived Any Constitutional Rights

Skyryse's Objections repeatedly advance another strawman argument that Judge McCarthy in some way ruled that Skyryse waived its constitutional rights. *See* ECF 263 at 2 ("the R&R's interpretation of the stipulations is inconsistent with . . . Skyryse's repeated insistence that it would not waive its fundamental constitutional right to defend itself in a proper jurisdiction"); *id.* at 15 ("Any reading of the stipulations that finds Skyryse waived fundamental constitutional rights that it expressly stated it was preserving does not effectuate the parties' clear intent."); *id.* at 16 ("Skyryse never waived its right to have its jurisdictional and venue challenges resolved promptly"); *id.* at 17 ("For the Magistrate Judge to find a waiver of Skyryse's fundamental due process rights based on a stipulation setting a now obsolete, provisional schedule for briefing and a hearing on a motion seeking injunctive relief to which the parties already stipulated, reads far too much into this language and deprives Skyryse of its right to be heard first on its motion to dismiss."). But the RRO does not contain *any* ruling, express or implicit, on waiver of constitutional rights, and in fact, holds quite the opposite.

The RRO does not deprive Skyryse of any right to be heard on its motion to dismiss; the RRO simply does not fully resolve the motion to dismiss in the timeframe that Skyryse wants. That status is not a judicial error, let alone some kind of constitutional rights violation. Judge McCarthy expressly acknowledged and cited to Skyryse's reservation of rights to challenge jurisdiction and venue as to the remainder of the case and therefore determined that "the question of jurisdiction and venue for the remainder of the case will be decided once Moog's preliminary

injunction motion is resolved." (RRO at 4.) Thus, the RRO never determined that the Skyryse's

reservation of rights was improper or has been waived. To the contrary, it expressly

acknowledges that such objections and challenges remain intact and will be decided at a later

date. So, any argument that the RRO incorrectly determined there was a waiver (or some

estoppel) is not accurate or congruent with the language of the RRO.

## IV.    The Court Did Not Err in Denying Consideration of Skyryse's Improper Supplemental Reply as the Stipulated Orders Are Not Ambiguous and No Parol Evidence Is Necessary

Judge McCarthy was correct to find that the stipulated orders are unambiguous, and

consequently, also correct to reject Skyryse's attempt to infuse ambiguity into the stipulated

orders through the introduction of external evidence, through a Supplemental Reply, of

Skyryse's purported "intent" with respect to those stipulations.[10] "Whether a contractual term is

ambiguous must be determined by the court as a matter of law, looking solely to the plain

language used by the parties within the four corners of the contract to discern its meaning and

not to extrinsic sources." *Alpha Cap. Anstalt v. Real Goods Solar, Inc.*, 311 F. Supp. 3d 623,

628 (S.D.N.Y. 2018). Decisions of this Court repeatedly make clear that "[e]xtrinsic and parol

evidence is not admissible to create an ambiguity in a written agreement which is complete and

clear and unambiguous on its face." *Lamb v. Money Transfer Sys., Inc.*, No. 12-CV-6584 CJS,

2013 WL 5216442, at *5 (W.D.N.Y. Sept. 16, 2013) (quoting *Reiss v. Financial Performance

Corp.*, 97 N.Y.2d 195, 199 (2001)); *see also* RRO at 3 (quoting *United States v. Armour & Co.*,

---

[10] Skyryse does not appear to dispute the RRO's statement that "a consent decree or order is to be construed for enforcement purposes basically as a contract." RRO at 2 (quoting *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 238 (1975). "A stipulation is interpreted in light of the rules of construction in the jurisdiction in which it was entered into." *Icahn v. Todtman, Nachamie, Spizz & Johns, P.C.*, No. 99 CIV. 11783(JCF), 2002 WL 362788, at *3 (S.D.N.Y. Mar. 6, 2002).

402 U.S. 673, 682 (1971) ("the scope of a consent decree must be discerned within its four

corners, and not by reference to what might satisfy the purposes of one of the parties to it . . .

[T]he instrument must be construed as written, and not as it might have been written.").

Moreover, "[w]hether a contract is ambiguous is a matter of law for the court to decide and parol

evidence is not admissible to create an ambiguity.  **If consideration of a contract as a whole**

**resolves the ambiguity created by one clause, there is no occasion to consider extrinsic**

**evidence of the parties' intent**."  *Hyatt Corp. v. Women's Int'l Bowling Cong., Inc.*, 80 F. Supp.

2d 88, 94–95 (W.D.N.Y. 1999) (emphasis added) (citations omitted); *see also Alpha Cap.*

*Anstalt*, 311 F. Supp. 3d at 628 ("The courts should construe a contract in a manner that avoids

inconsistencies and reasonably harmonizes its terms.").

  As the RRO explains, the stipulated orders are not ambiguous, and internal reference to

the various terms resolves any apparent ambiguity from viewing an individual provision in

isolation (there is none).  *See* RRO at 2 (explaining that use of the phrase "the Court" in

paragraph 6 ("subject to the Court's availability") has the same meaning as "the Court" used in

paragraph 14 ("Defendants consent to the jurisdiction and venue of the Court for purposes of this

stipulated Order")); *United States v. Preveson Holdings, Ltd.*, 289 F. Supp. 3d 446, 453

(S.D.N.Y. 2018) ("terms in [a] contract must be assumed to have the same meaning

throughout").  Skyryse does not actually point to a specific ambiguity in the contract language

that would warrant consideration of extrinsic evidence, and instead argues that "[t]o the extent

the Court finds the stipulations ambiguous, then it can consider pre- and post-contract extrinsic

evidence" which it argues support Skyryse's new interpretation of the stipulated orders.  The

Court should decline that invitation now.  As explained above (subpart II, *supra*), Skyryse's new

interpretation of the stipulated orders leads to untenable, confusing results, underscoring that the

interpretation explained by Judge McCarthy in the RRO is the only sensible, and thus unambiguous, meaning of the stipulated orders. *Alpha Cap. Anstalt*, 311 F. Supp. 3d at 629 ("[a] contract should not be interpreted to produce a result that is absurd.").

The evidence that Skyryse seeks to introduce and have considered is the declaration of its general counsel, Ms. Jeri Looney (ECF 247-5). As is clear from the face of her declaration, Ms. Looney did not have *any* direct communications with Moog's outside counsel in negotiating the stipulated orders. Ms. Looney's declaration tellingly includes no emails between counsel for the parties from the time of negotiations, and instead, seeks to put forth two selected "drafts" of the March 11 stipulation to show a meaning of that stipulation that is purportedly different from the plain meaning of the executed version. This type of limited and "cherry-picked" extrinsic evidence, designed to infuse ambiguity where none exists, is precisely the reason for the parol evidence rule, and the Court should decline to consider such material. *See Invs. Ins. Co. of Am. v. Dorinco Reinsurance Co.*, 917 F.2d 100, 104 (2d Cir. 1990) (parol evidence rule precludes party from "introducing extrinsic evidence of the contract's purpose in order to vary the plain meaning of the writing"); *cf. Nysa-Ila Med. v. Salco Trucking Corp.*, No. 90 CIV. 5949 (CSH), 1993 WL 119702, at *2 (S.D.N.Y. Apr. 15, 1993) (finding that defendant could not escape the terms of contract "through a selective use of parol evidence.").[11]

Skyryse is incorrect that Moog has "claimed for the first time, only recently, that it interpreted the stipulations as reflecting Skyryse's consent to litigate in this district through the preliminary injunction hearing," or that Moog previously conceded that "the transferee court would hear the preliminary injunction motion." ECF 263 at 18, 20. To the contrary, as

---

[11] To the extent the Court intends to consider Ms. Looney's declaration or any other parol evidence, Moog respectfully requests that it be given the opportunity to respond to what it believes is an incomplete recitation of events and relevant documents by Ms. Looney.

explained above, in opposing Defendants' motions to dismiss months ago, Moog expressly

referenced and discussed the March 11 and 17 Orders to show that Defendants had forfeited any

jurisdictional/venue arguments. (ECF 62 at pp. 12-14; ECF 63 at pp. 12-14).[12]  Skyryse's

arguments now that Moog failed to address stipulated orders in opposing Defendants' motions to

dismiss is simply not true and belied by the record.  Further, Skyryse's out-of-context quoting of

Moog's argument opposing transfer is just that: more selective cherry-picking by Skyryse which

does not alter the plain and sensible reading of the stipulated orders.  Regardless, all of Moog's

arguments regarding why Defendants consented to jurisdiction and venue in WDNY through the

ruling on Moog's PI Motion were addressed in Moog's supplemental opposition (ECF 239 at 8-

11) and are now part of the formal record.

Skyryse makes the further (incorrect) argument that the stipulated orders merely

contemplate that the PI Motion would be heard by *some court*, but not exclusively by *this Court*.

*See* ECF 263 at 21-22.  In other words, Skyryse's position is that the stipulations only agree that

the PI Motion "could" be heard by the WDNY, but is not required to be.  *See id.*  This section of

Skyryse's brief does not cite to any particular language of the stipulated orders to justify that

proposal, but instead argues simply that the language of the stipulated orders doesn't contradict

such an interpretation.  *See id.*  Skyryse's warped reading of the stipulated orders is, of course,

belied by their express terms, which expressly and unambiguously use the phrase "**the Court**,"

---

[12] Moog argued back in April that Defendants "entered into two stipulations before this Court,
essentially agreeing to Moog's request for temporary relief, and setting forth a comprehensive
framework for document production, depositions, and briefing ***in connection with Moog's
motion for a preliminary injunction***. (*See* Dkts. 25, 33)." (ECF 62 at 12; ECF 63 at 12)
(emphasis added).  Moog further argued that Defendants "participated in an April 8, 2022
conference with Magistrate Judge McCarthy to address compliance with the Court's orders and
related matters; notably, counsel did not suggest that they were limiting their litigation activity in
this Court given their objections based on jurisdiction." (ECF 62 at 13; ECF 63 at 13).

inarguably meaning the WDNY, and not the phrase "*a* court" or "*any* court."[13]  The repeated use

of the definite article "the" and the capitalized term "Court" leaves no room for confusion or

debate that any court other than the WDNY was intended to hear and decide the PI Motion.[14]

## V.    The Court Should Decline Skyryse's Invitation to Transfer the Case Immediately

Throughout its Objections, Skyryse suggests that the Court should, notwithstanding the

unambiguous consents to jurisdiction and venue in the stipulated orders, transfer the case

immediately to California.  *See* ECF 263 at 6-13, 22-23.  This argument should be ignored

because it does not point to an actual error by Judge McCarthy and the RRO did not rule that

Skyryse's motion to dismiss or transfer should not be addressed.  *See* RRO at 1-4.  The RRO

---

[13] *See* ECF 33 ¶ 6 ("The hearing on Moog's Motion for Preliminary Injunction shall be scheduled . . . subject to **the Court's** availability") (emphasis added); *id.* ¶ 14 ("By agreeing to this stipulated Order, Defendants consent to the jurisdiction and venue of **the Court** . . .") (emphasis added); ECF 25 ¶¶ 2-5 ("any party may submit a status report to **the Court** seeking a modification to the proposed briefing and hearing schedule on Plaintiff's Motion for Preliminary Injunction upon good cause.") (emphasis added); *id.* ¶ 10 ("the parties shall file with **the Court** their agreed stipulation and proposed order concerning discovery and briefing relating to Plaintiff's Motion for Preliminary Injunction. . . .  In any event, the parties agree that the briefing and hearing dates for Plaintiff's Motion for Preliminary Injunction shall be no earlier than the following: . . . Hearing: on or after May 9, 2022 at a date and time of **the Court's** choosing. . . . Any party may submit a status report to **the Court** seeking a modification to the proposed briefing and hearing schedule on Plaintiff's Motion for Preliminary Injunction upon good cause.") (emphasis added); *id.* ¶ 11 ("By agreeing to this stipulated Order, Defendants consent to the jurisdiction and venue of **the Court** . . .").

[14] Moreover, Skyryse's brief elsewhere argues that it "stipulated in good faith to certain processes and discovery that would help move the case along while **the Court** resolved its threshold motion."  ECF 263 at 8 (emphasis added).  Thus, Skyryse concedes that it agreed to certain processes and discovery overseen by the WDNY, while the WDNY also resolved its motion to dismiss.  But Skyryse also wants to argue that use of "the Court" in one provision means the WDNY, and another use of "the Court," *within the same document*, can mean *another court*.  This illogical proposition flies directly in the face of the axiomatic rule of contract construction that "terms in [a] contract must be assumed to have the same meaning throughout." *Preveson Holdings, Ltd.*, 289 F. Supp. 3d at 453.  Thus, it was simply not erroneous, let alone clearly erroneous, for Judge McCarthy to interpret the references in the stipulated orders to "the Court" to mean that the parties intended the PI Motion hearing to be only before the WDNY.

simply said that the PI Motion would need to be resolved in and by the WDNY based on the consent of the parties to the same.  *See id.*  And, as explained above, if the Court were to decide Skyryse's broader personal jurisdiction and venue challenges, or decide that the case generally should be transferred to California (all points Moog disputes, as explained in its opposition briefs on such motion), resolution of the PI Motion would still need to occur in the WDNY based on the specific and limited consent to jurisdiction and venue in the stipulated orders.  *See United States v. Debeers Indus. Diamond Div. (Ireland) Ltd.*, No. 74 CIV. 5389 LPG, 1976 WL 1399, at *4 (S.D.N.Y. Dec. 8, 1976) (defendant consented to jurisdiction of court for limited purposes of entry of final judgment to be decided); *cf. Roll v. Tracor, Inc.*, 26 F. Supp. 2d 482, 485 (W.D.N.Y. 1998) (in deciding venue challenge, noting that parties had "stipulate[d] that venue and jurisdiction [were] proper in the Western District of New York for the purposes of" deciding a particular motion); *cf. Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 63 (2013) ("a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases."); *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006).

In light of the same, the RRO correctly reasoned that such larger rulings could and should be deferred until resolution on the PI Motion, a conclusion which is not erroneous and thus should be adopted.

## CONCLUSION

Moog requests that the Court deny Skyryse's Objections to the RRO regarding personal jurisdiction and venue in their entirety.

Dated: New York, New York
September 27, 2022

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
*Attorneys for Plaintiff Moog Inc.*


By:   s/*Rena Andoh*
Rena Andoh
Travis J. Anderson (admitted *pro hac vice*)
Lai Yip (admitted *pro hac vice*)
Tyler E. Baker (admitted *pro hac vice*)
Kazim A. Naqvi (admitted *pro hac vice*)
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 653-8700


and

**HODGSON RUSS LLP**

By:   s/*Robert J. Fluskey, Jr.*
Robert J. Fluskey, Jr.
Melissa N. Subjeck
Reetuparna Dutta
Pauline T. Muto
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York 14202
(716) 856-4000