```
 1                    UNITED STATES DISTRICT COURT

 2                    WESTERN DISTRICT OF NEW YORK

 3
       - - - - - - - - - - - - - X
 4     MOOG INC.,              )      22-CV-187
                     Plaintiff )
 5     vs.
                                   Buffalo, New York
 6     SKYRYSE, INC., et al    )    October 20, 2022
                     Defendant.        3:00 p.m.
 7     - - - - - - - - - - - - - X
       ORAL ARGUMENT
 8     Proceeding held via Zoom for Government Platform
       All parties appeared remotely.
 9
                         TRANSCRIPT OF PROCEEDINGS
10          BEFORE THE HONORABLE JEREMIAH J. MCCARTHY
                  UNITED STATES MAGISTRATE JUDGE
11

12     FOR PLAINTIFF: SHEPPHARD MULLIN RICHETER & HAMPTON, LLP
                         BY: RENA ANDOH, ESQ.
13                           LAI YIP, ESQ.
                             KAZIM A. NAQVI, ESQ.
14                           -and-
                         HODGSON RUSS, LLP
15                           BY: ROBERT J. FLUSKEY, JR, ESQ.
                             PAULINE MUTO, ESQ.
16
       FOR DEFENDANT:  LATHAM & WATKINS, LLP
17                         BY: GABRIEL S. GROSS, ESQ.
                             RYAN T. BANKS, ESQ.
18                           ARMAN ZAHOORY, ESQ.

19
       FOR DEFENDANT
20     PILKINGTON/KIM: WINGET, SPADAFORA & SCHWARTZBERG, LLP
                         BY: ALEXANDER ASHER TRUITT, ESQ.
21                           ANTHONY D. GREEN, ESQ.

22

23

24

25     COURT REPORTER: Karen J. Clark, Official Court Reporter
                        Karenclark1013@AOL.com
```

```
 1            MOOG, INC VS. SKYRYSE, INC, ET AL
 2              P R O C E E D I N G
 3                *          *          *
 4
 5            MAGISTRATE JUDGE MCCARTHY:  Good afternoon,
 6  everyone.  I see we have a lighter crowd than usual.
 7  People losing interest or what?  Okay.
 8            Eric, you want to call the case and take
 9  attendance.
10            THE CLERK:  Yes, Judge.  We're on the record
11  in civil proceeding 22-CV-187.  Moog Inc. V Skyryse
12  Inc., et al., for oral argument.
13            Present by video are Rena Andoh, Kazim
14  Noqvi, Lai Yip, Pauline Muto and Robert Fluskey for
15  Plaintiff; Gabriel Gross, Ryan Banks, Arman Zahoory and
16  Terrance Flynn for Defendant Skyryse; Alexander Truitt
17  and Anthony Green for the individual Defendants.
18            The Honorable Jeremiah J. McCarthy
19  presiding.
20            MAGISTRATE JUDGE MCCARTHY:  Good afternoon,
21  everyone.  It's good to see you.  It's been too long.
22  In any event, as you know, today we have on the docket
23  Moog's motions.  Its motion to compel discovery
24  necessary for further trade secret identification, that
25  is docket No. 210; and its motion to enter a source code
```

1          MOOG, INC VS. SKYRYSE, INC, ET AL

17:40:20   2   protocol, which is docket number 213.  And I recognize

17:40:24   3   that there are other motions outstanding, but these are

17:40:27   4   the two that we will be addressing today.

17:40:33   5          And, I thank you, Rena Andoh, I go your

17:42:23   6   letter yesterday, which really made my day, in terms of

17:42:25   7   narrowing some of the issues on motion 210.  I also

17:42:29   8   received Gabe Gross' e-mail of yesterday as well.

17:42:37   9          Is Gabe with us?

17:42:38   10          Oh, yeah, there he is.

17:42:42   11          MR. GROSS:  Hello, your Honor, I am.

17:42:44   12          MAGISTRATE JUDGE MCCARTHY:  I see you now.

17:42:45   13          Let's just begin -- well, let me say a

17:42:48   14   couple of things preliminarily.  You know, Judge

17:42:57   15   Vilardo, as you know, has ruled on the privilege issue.

17:43:00   16   He is commencing a jury trial.  Is it next week?

17:43:07   17   Tomorrow.  He is commencing a jury trial tomorrow on a

17:43:11   18   drug case that may last a while.  I don't know, I have

17:43:17   19   not spoken to him recently about this case, and I don't

17:43:20   20   know what his time table is for deciding the

17:43:27   21   jurisdictional and venue motions.

17:43:30   22          As you know, I've decided that, from my

17:43:35   23   standpoint, the case should remain in this court, at

17:43:39   24   least through the conclusion of the preliminary

17:43:42   25   injunction hearing.  I understand that's been objected

1                    MOOG, INC VS. SKYRYSE, INC, ET AL

17:43:47   2   to, but, so as far as I'm concerned, it's staying here.

17:43:52   3   If it turns out that he takes a different view, I still

17:43:56   4   think what we're still doing today and will be doing in

17:43:59   5   deciding the other motions will not be a wasted effort,

17:44:03   6   even if the case goes to California.  But, my overall

17:44:08   7   view, and, in particular, because we've -- we've had

17:44:14   8   these motions on hold for a while, is that I -- I want

17:44:19   9   to really move toward the identification stage, the

17:44:30   10  identification of trade secrets at issue in this case.

17:44:35   11  Not every one of Moog's trade secrets under the sun, but

17:44:39   12  only what is going to be at issue for purposes of the

17:44:42   13  preliminary injunction motion.  You know, I made my

17:44:45   14  ruling back in July on that issue, I think it's docket

17:44:49   15  205.  Nobody has objected to that.  So, you know, as far

17:44:57   16  as I'm concerned, I understand the Defendant's position

17:45:00   17  that they want Moog to identify its trade secrets, but

17:45:04   18  my ruling has been and continues to be, that before it's

17:45:07   19  required to do so, it needs the discovery necessary from

17:45:12   20  Defendants necessary to enable it to do so.

17:45:15   21           So, with that in mind, that is the way we're

17:45:18   22  going to proceed.  So, why don't we just, unless anybody

17:45:23   23  has a suggestion to the contrary, I would like to just

17:45:27   24  dive into motion 210, the motion to compel, and, in

17:45:34   25  particular, the three areas of dispute, which were

1         MOOG, INC VS. SKYRYSE, INC, ET AL

17:45:37  2   identified in Rena Andoh's letter of yesterday.

17:45:43  3         Rena, are you going to be arguing for Moog

17:45:46  4   or who is going to be arguing?

17:45:47  5         MS. ANDOH:  Your Honor, as much as I know

17:45:49  6   you miss my voice, I will not be arguing this motion.

17:45:52  7   I'll be turning it over to my colleague, Mr. Naqvi, to

17:45:56  8   argue.

17:45:56  9         MAGISTRATE JUDGE MCCARTHY:  Okay.  And I'm

17:45:57  10  crushed, but I will try to deal with it.  All right.

17:46:03  11        Kazim, you have the floor.  And, yes, so

17:46:06  12  let's just focus on the item number one of that letter,

17:46:10  13  the laptops, the nine laptops, et cetera.

17:46:19  14        MR. NAQVI:  Thank you, your Honor.  I think

17:46:21  15  it's first important to note that the nine laptops and

17:46:24  16  the USB device that are at issue, these were first

17:46:27  17  addressed by Skyryse, and raised by Skyryse, in its own

17:46:32  18  May 4 letter.  This is not something Moog pulled out of

17:46:39  19  thin air.  And Moog wouldn't even know about these

17:46:42  20  devices if it wasn't for the statements in Skyryse's May

17:46:50  21  4th letter.  And the May 4th letter describes how, in

17:46:52  22  connection with Skyryse's own investigation into the

17:46:55  23  possession and transfer of Moog data, Skyryse discovered

17:46:59  24  "It appears that Moog information may have been accessed

17:47:46  25  on Skyryse-issued laptops via personal USB devices held

1          MOOG, INC VS. SKYRYSE, INC, ET AL

17:47:52    2    by Robert Pilkington or Misook Kim."  And the letter

17:48:35    3    then lists on a table on page seven a number of Skyryse

17:49:08    4    computers that had been connected to the very USB

17:49:11    5    devices belonging to the individual Defendants that

17:49:14    6    Skyryse have identified in that same letter.

17:51:12    7          So, you know, as your Honor noted earlier,

17:51:14    8    the Court's trade secret identification order states

17:51:17    9    that, before making its identification, Moog must first

17:51:21    10   examine the information, which was admittedly taken by

17:51:24    11   its former employees Kim and Pilkington prior to their

17:51:28    12   departure.  So, the Skyryse computers that were

17:51:31    13   connected to Kim and Pilkington's USB devices are

17:51:35    14   relevant to the possession, the transfer or the use of

17:51:38    15   Moog data.  And Moog needs to investigate these

17:51:41    16   computers or images of these computers to understand

17:51:44    17   what files were transmitted, altered and/or used by

17:51:47    18   Skyryse employees.  We know that Kim and Pilkington used

17:51:52    19   various USB devices to copy and delete Moog data.  And

17:51:57    20   these Skyryse computers are relevant to Moog's

17:51:59    21   identification process for its trade secrets.

17:52:02    22          So, in response to our motion, as it has

17:52:05    23   done previously, Skyryse did produce certain information

17:52:09    24   after refusing to do so for several weeks, but, and, as

17:52:12    25   noted in our letter, there still remain outstanding

1                    MOOG, INC VS. SKYRYSE, INC, ET AL

17:52:15  2    issues.  There is the nine laptops and there is the USB

17:52:19  3    device that is number 55D28D65.

17:52:24  4                    Let me first address the nine laptops.

17:52:27  5    First, I think it's important to note there is no

17:52:29  6    additional burden involved in this request.  Skyryse,

17:52:33  7    admittedly, has already imaged the nine laptops.  All it

17:52:42  8    needs to do is send the images to iDS.  So, there is no

17:52:53  9    additional burden that we're imposing on Skyryse,

17:53:00  10   because the process is already in place.  Now, Skyryse

17:53:03  11   may complain about the burdens involved with the

17:53:06  12   privilege review.  But, the burdens involved with the

17:53:09  13   privilege review should not be a basis to hold up lawful

17:53:13  14   and relevant discovery.  A privilege review can be done

17:53:19  15   by running select search terms for certain lawyers or

17:53:27  16   legal terms.  Skyryse does not need to review every

17:53:31  17   single document.  And, as your Honor can well

17:53:33  18   appreciate, there have been large voluminous volumes of

17:54:02  19   privilege review on both sides of this case.  So, I

17:54:05  20   don't think that can be a basis to hold up discovery.

17:54:07  21                   In response to our motion, Skyryse did agree

17:54:11  22   to produce a connection and file listing for two of the

17:54:14  23   nine laptops.  But, that is insufficient.  First of all,

17:54:18  24   this information should have been provided for the other

17:54:22  25   seven laptops at minimum.  But, the notion that Moog is

1                   MOOG, INC VS. SKYRYSE, INC, ET AL

17:54:25   2   only entitled to file listings or connection histories,

17:54:28   3   but not the devices themselves, is improper.  And we've

17:54:32   4   heard this argument before.  We heard this same argument

17:54:35   5   in connection with Skyryse's motion to compel the trade

17:55:01   6   secret identification.  They claim that because Moog had

17:55:04   7   the file names for the almost 137,000 files that Ms. Kim

17:55:51   8   copied, Moog doesn't need to access the devices

17:55:54   9   themselves.  But, as your Honor noted, Moog does have

17:55:58  10   good cause to first inspect the devices because we need

17:56:01  11   to understand exactly what was taken, what may have been

17:56:04  12   altered in those files, who it was sent to, and

17:56:07  13   especially in this case where there has been admitted

17:56:10  14   deletion of files, the only way we can truly investigate

17:56:13  15   what happened is to do a forensic analysis.  Simply

17:56:20  16   getting the file names is insufficient.  Same thing

17:56:25  17   applies here.  We must get file names as to each of

17:56:30  18   these nine laptops.  We must understand what Moog data

17:56:34  19   was transferred to those laptops, how it was used and

17:56:37  20   how it was altered.  So, that is the nine laptops.

17:56:40  21          And then there is the lone USB device,

17:58:56  22   55D28D65.  Skyryse said in its opposition it doesn't

17:59:04  23   need to provide this device because it was apparently

17:59:07  24   only used by Skyryse's IT department to set up computers

17:59:14  25   at Skyryse.  Even though its May 4th letter suggests the

1          MOOG, INC VS. SKYRYSE, INC, ET AL

17:59:19   2   opposite, and this was a USB device used by the

17:59:22   3   individual Defendants.  But critically nowhere does

17:59:25   4   Skyryse ever represent that the device does not contain

17:59:31   5   Moog data.  And if there are no relevant files on the

18:00:42   6   device, which seems unlikely, given the statements they

18:00:46   7   made in the May 4 letter, then there is really no

18:00:50   8   prejudice to Skyryse.  But, Skyryse, notably, has been

18:00:55   9   silent as to the actual contents on the device.  And six

18:00:57  10   of the nine laptops in the May 4th letter were connected

18:01:01  11   to the device.  So, again, these laptops and devices,

18:01:04  12   they have been placed at issue by Skyryse in connection

18:01:07  13   with its investigation of Moog data.  These are not

18:01:10  14   devices that have been placed at issue by Moog.  And,

18:01:14  15   so, Moog has met its burden that these devices are

18:01:17  16   relevant to the claims and defenses in the case.  And

18:01:20  17   more specifically, directly relevant to Moog's trade

18:01:25  18   secret identification obligation.  If these devices were

18:01:27  19   not relevant, they would not have been discussed at

18:01:30  20   length by Skyryse in its own letter.  So, your Honor,

18:01:33  21   what we're requesting is that Skyryse transmit images of

18:03:21  22   the nine laptops at issue over to iDS, again, the images

18:03:25  23   have already been prepared, and that Skyryse, also,

18:03:31  24   transmit an image of the USB device, 55D28D65, or the

18:03:38  25   actual USB device itself over to iDS.  They can conduct

                        MOOG, INC VS. SKYRYSE, INC, ET AL

18:03:44  2   a privilege review before the contents are made

18:03:47  3   available to Moog itself, and then we can do our

18:03:51  4   forensic analysis as we've done with all of the other

18:03:54  5   devices in the case.

18:03:55  6                   MAGISTRATE JUDGE MCCARTHY:  Okay.  Thank

18:03:57  7   you.

18:03:59  8                   Gabe, are you arguing in opposition or who

18:04:02  9   is going to argue?

18:04:02  10                  MR. GROSS:  I will, your Honor.  Thank you.

18:04:04  11  I do have my colleagues, Mr. Zahoory and Mr. Banks with

18:04:09  12  me today because they have dug very deep into some of

18:04:13  13  these issues, which are factually complex.  So I may

18:04:17  14  defer to them, but I'll handle the bulk of the

18:04:20  15  opposition.

18:04:21  16                  And this is an issue that I'm happy to

18:04:23  17  explain, because I think the way it's been presented by

18:04:25  18  the Plaintiff is overly simplified, and, frankly,

18:04:29  19  inaccurate.  And I would like to walk the Court through

18:04:34  20  it in some detail.

18:05:22  21                  Your Honor, I'll take my guidance from you.

18:05:25  22  There are some intricate facts at issue.  I did prepare

18:05:29  23  a few visuals that I'm happy to share a screen and show

18:05:32  24  and lodge with the Court, if you would like, as a record

18:05:35  25  of the hearing.  I'm happy to proceed with or without

1            MOOG, INC VS. SKYRYSE, INC, ET AL

18:05:37   2   them.  I think they may be useful, but I'll take my

18:05:41   3   guidance from you.

18:05:41   4            MAGISTRATE JUDGE MCCARTHY:  Well, yeah, if

18:05:44   5   you want to put them up, we can -- how are we going to

18:05:48   6   make them part of the record then, I guess, is my

18:05:51   7   question?

18:05:52   8            MR. GROSS:  I'm happy to e-mail them to

18:05:55   9   everybody, and I can file them with the Court after the

18:05:57   10   hearing, if you would like.

18:05:58   11            MAGISTRATE JUDGE MCCARTHY:  Has Moog seen

18:06:00   12   these before now?

18:06:01   13            MR. GROSS:  No, I just prepared these

18:06:02   14   getting ready last night and today.  No one has had a

18:06:06   15   chance to see them.

18:06:06   16            MAGISTRATE JUDGE MCCARTHY:  I assume you're

18:06:07   17   basing them on matters that are already in the record,

18:06:11   18   correct?

18:06:11   19            MR. GROSS:  Just about everything.  I have a

18:06:13   20   couple of facts in the deck that I'm looking at that are

18:06:16   21   not in the briefing, and I can proceed however you would

18:06:23   22   like.

18:06:23   23            MS. ANDOH:  Your Honor, I have a little bit

18:06:25   24   of concern about this because we've never seen anything

18:06:27   25   that he is about to put up on the screen, and it's

                          MOOG, INC VS. SKYRYSE, INC, ET AL

18:06:30  2  difficult for us to review it in real time and figure

18:06:33  3  out if what's there is consistent with our understanding

18:06:36  4  of the record and what has actually been disclosed.

18:06:39  5  Obviously, it's your Honor's decision with respect to

18:06:41  6  that.  I certainly suggest that if he is going to be

18:06:46  7  allowed to do it, that we be given a period after the

18:06:49  8  hearing to lodge any complaints or issues with we have

18:06:54  9  with the demonstratives.

18:06:57  10             MR. GROSS:  Your Honor, I can make it easy,

18:06:59  11  I can only show the slides with things that are in the

18:07:02  12  record already, and there is a couple that have other

18:07:06  13  things, and I'm happy to keep them off the screen if

18:07:09  14  that will moot Ms. Andoh's concern.

18:07:12  15             MAGISTRATE JUDGE MCCARTHY:  Let's do it this

18:07:14  16  way.  If those slides which are not totally based on the

18:07:17  17  record are really helpful and are not going to be

18:07:20  18  objected to, then good for you.  And it may be helpful,

18:07:24  19  so I'm not going to decide whether they will be part of

18:07:27  20  the record.  And if I do allow them as a basis for my

18:07:32  21  consideration, then, if Moog requests, I'll give it an

18:07:36  22  opportunity to respond to that.  But, let me just say in

18:07:39  23  general, folks, that, obviously, we got to move this

18:07:46  24  case forward.  There have been some delays here and

18:07:50  25  there are due to disputes, which are nobody's fault, but

1                MOOG, INC VS. SKYRYSE, INC, ET AL

18:07:53  2   it does take some time, and I want to move things as

18:07:58  3   quickly as I can.  So, I'm not going to be giving you a

18:08:05  4   detailed written explanation of things, I will explain

18:08:09  5   my reasoning on the record, and we'll move on from

18:08:14  6   there.

18:08:14  7                But, so, with that Gabe, why don't you begin

18:08:18  8   your presentation and making use of whatever slides you

18:08:25  9   wish.  And, as we go along, if Moog has a particular

18:08:28  10  issue with one slide, they can speak up or ask for more

18:08:33  11  time to address it, et cetera.  Okay?

18:08:36  12                MR. GROSS:  Okay.  Thank you, your Honor.

18:08:37  13  I'll be judicious about it and stick to things that I

18:08:41  14  don't think are very controversial and mostly relate to

18:08:44  15  the record in this case.

18:08:45  16                MAGISTRATE JUDGE MCCARTHY:  Okay.

18:08:45  17                MR. GROSS:  One thing that I think would be

18:08:47  18  helpful to do to start this discussion is talk about the

18:08:51  19  data and information that is at issue into discovery in

18:08:55  20  this case, because we are going to get into a discussion

18:09:00  21  of proportionality and of burden, and that has to do

18:09:05  22  with the volume of information that is at issue in the

18:09:08  23  discovery and the discovery that has been requested.  So

18:09:10  24  just in terms of vocabulary, I would like to just step

18:09:13  25  back and talk about the amount of data we're talking

1                  MOOG, INC VS. SKYRYSE, INC, ET AL

18:09:16   2    about.  We're talking about not just gigabytes of data,

18:09:21   3    but terabytes of data.  And, for me, when I think about

18:09:23   4    those volumes, it takes me back to when I used to do

18:09:27   5    physical page turns of discovery information that would

18:09:30   6    show up in my office in banker's boxes, each of which

18:09:34   7    held about 2500 pages or 3000 pages in the box, and they

18:09:38   8    would stack up in the corner for me.  So, to put this in

18:09:42   9    perspective, your Honor, we're talking about multiple

18:09:45   10   terabytes of data, and I'll explain that as to how it

18:09:48   11   applies to the actual discovery in this case.  But, a

18:09:51   12   single terabyte, a single terabyte of data, is roughly

18:09:56   13   equivalent to 75 million pages of text if it were

18:10:00   14   printed out.  A gigabyte is 1,000th of that.  A gigabyte

18:10:06   15   is about 75,000 pages of text worth of data.  That is

18:10:11   16   what we're talking about.  A single gigabyte would fill

18:10:14   17   about 30 bankers boxes of paper.  That would fill up a

18:10:18   18   truck, your Honor.  And a terabyte would be a 1,000 of

18:10:23   19   those trucks.  Just to put some perspective on the

18:10:26   20   volumes we're going to be referring to.

18:10:28   21              I think it's also useful to think about and

18:10:31   22   to be conscious of the discovery that is already

18:10:34   23   available to Moog today, and has been for months through

18:10:37   24   the processes that the parties have stipulated to and

18:10:40   25   through the information that has been exchanged.  Moog

1               MOOG, INC VS. SKYRYSE, INC, ET AL

18:10:43   2   already has, and this is just from Skyryse alone, this

18:10:46   3   is not from the individual Defendants, Moog has nearly

18:10:50   4   two terabytes of data available to it in discovery from

18:10:53   5   Skyryse right now.  Using those rough equivalents to

18:10:57   6   pages, that is about 150 million pages worth of data

18:11:01   7   that is already available in discovery.  And it's in

18:11:04   8   multiple forms.  It came from four laptops that Skyryse

18:11:08   9   turned over to iDS in their entirety pursuant to the

18:11:12  10   stipulation; two USB storage devices in their entirety;

18:11:17  11   there are two source code repositories, excuse me, that

18:11:22  12   Skyryse provided to iDS because they had hit on some of

18:11:26  13   Moog's search terms.  And out of an abundance of caution

18:11:30  14   because they might contain both sides' data, Skyryse

18:11:33  15   turned it over to iDS.  There is many other hit son

18:11:37  16   search terms.  And 50,000 thousand pages of discovery

18:11:40  17   that Skyryse collected because they were responsive to

18:11:43  18   discovery.  And Skyryse has made other relevant source

18:12:07  19   for inspection for the last three months now, that we

18:12:07  20   made available for inspection and they chose not to look

18:12:12  21   at it.  We asked that they provisionally begin some

18:12:17  22   security restrictions to begin their inspection in

18:12:20  23   earnest, which they claim they need all of that.

18:12:22  24   Together, your Honor, is already two terabytes of

18:12:26  25   information available to Moog today and has been for

1               MOOG, INC VS. SKYRYSE, INC, ET AL

18:12:29   2   months.

18:12:29   3               And today, we're going to talk about the

18:12:31   4   nine laptops that Mr. Naqvi just addressed.  The amount

18:12:35   5   of data on those laptops, your Honor, is another nearly

18:12:38   6   three and a half terabytes of data.  That would be over

18:12:42   7   200 million pages worth of data.  And if they are going

18:12:45   8   to be turned over wholesale without a showing of

18:12:49   9   relevance, without a showing of responsiveness, those

18:12:53   10  will require Skyryse's legal team to review their

18:12:56   11  contents for privilege, not quite as simple and quick as

18:13:00   12  Mr. Naqvi made it sound, that it could be all automated.

18:13:04   13  We're talking about attorney/client privilege review.

18:13:42   14              We'll turn to the volume shadow copies in

18:13:45   15  another part of this hearing.  That is another 112

18:13:49   16  gigabytes of data that Moog is demanding, your Honor.

18:13:52   17  That would be roughly 8 million pages worth.  Let's talk

18:13:56   18  about Ms. Kim's and Mr. Pilkington's devices.  Those

18:14:00   19  alone, the five devices that we'll hear from their

18:14:03   20  counsel about, those comprise another two terabytes of

18:14:07   21  data, your Honor, another 150 million pages worth of

18:14:10   22  data.  So, I think, as we go forward, I know one of the

18:14:14   23  questions the Court will be wrestling with is is there a

18:14:19   24  showing of relevance for this vast amount of data.  The

18:14:22   25  vast majority of which can't possibly be relevant, even

```
 1              MOOG, INC VS. SKYRYSE, INC, ET AL
 2    if there are some relevant documents in them.  What
 3    about proportionality?  What about the burden on the
 4    Defendants and the benefits of the discovery on top of
 5    the terabytes that the Plaintiff Moog here already has?
 6              So, with that, your Honor, I'd like to talk
 7    about these nine devices that Mr. Naqvi just addressed,
 8    because that is a significant volume of data.  That is
 9    three and a half, almost three and half terabytes in and
10    of itself.
11              So, at this point, your Honor, if I may,
12    I'll try my hand at sharing the visual aid, and I would
13    like to address that May 4th letter.  What I will put on
14    the screen is the excerpt that Mr. Naqvi just described.
15    So, this letter is one that Skyryse's prior counsel had
16    sent as its investigation was underway.  Let me stop for
17    a second, your Honor, and ask if you can see my screen.
18              MAGISTRATE JUDGE MCCARTHY:  Yes, I can see
19    it, and I also have the letter itself in front of me.  I
20    think that was exhibit D to Rena Andoh's declaration.
21    So, yeah, I have it.
22              MR. GROSS:  Correct ECF No. 210-7.  So, i
23    think we're all looking at the same thing.  This is
24    Gibson Dunn's letter as it was going through its
25    investigation urgently in May.  And Mr. Naqvi described
```

1          MOOG, INC VS. SKYRYSE, INC, ET AL

18:16:01   2   this and characterized it in a way that I'm familiar

18:16:05   3   with because I've seen it in their briefing several

18:16:09   4   times.  Things like, "Skyryse put it in issue and this

18:16:11   5   was Skyryse that implicated all of these devices."  I

18:16:15   6   think he had the facts mistaken when he said that

18:16:19   7   everything shown in this letter shows devices that were

18:16:22   8   owned by Kim and Pilkington that were connected to

18:16:26   9   Skyryse devices, which is not the case.  I think

18:16:29   10  throughout this letter, what you'll see is in the letter

18:16:31   11  is Skyryse's counsel was being very transparent with the

18:16:34   12  early stage investigation, basically updating Moog and

18:16:38   13  its counsel about what they were finding as the

18:16:40   14  investigation was underway and making it very clear.

18:16:43   15  You'll see it throughout the letter, look, we're

18:16:45   16  continuing to investigate the issues.  This

18:16:47   17  investigation is ongoing.  The answers we're giving you,

18:16:49   18  at this point, may be subject to change.  This isn't

18:16:54   19  final.  This isn't definitive.  And I think Moog

18:16:58   20  information, I think this is part of the quote that Mr.

18:17:25   21  Naqvi mentioned, Moog information may have been accessed

18:17:30   22  primarily via personal USB devices held by the

18:17:35   23  Defendants, Mr. Pilkington and Ms. Kim.  May have been

18:17:38   24  accessed by devices that those people had.  And

18:17:44   25  Skyryse's investigation into the interactions between

1                MOOG, INC VS. SKYRYSE, INC, ET AL

18:18:19   2   its employees and some SanDisk Cruzer, that is a brand

18:18:23   3   name, SanDisk Cruzer, USB information is ongoing.  So

18:18:28   4   while this investigation was underway, counsel provided

18:18:31   5   this list.  What it did not do, and what Skyryse did not

18:18:35   6   do, and Skyryse's prior counsel did not do is make an

18:18:39   7   admission or draw a conclusion that everything in this

18:18:41   8   letter that reflected the current state of counsel's

18:18:44   9   investigation was tied to a device owned by Pilkington

18:18:48   10  or Kim that was involved in misappropriation.  There are

18:18:52   11  no such admissions.

18:18:53   12          And, your Honor, the Court will see

18:18:56   13  throughout the briefing, what I respectfully submit are

18:19:00   14  a number of overstatements, even stronger than the terms

18:19:03   15  in which we heard Mr. Naqvi use today, say that these

18:19:07   16  are admittedly or necessarily implicated by

18:19:12   17  misappropriation, used by Ms. Kim and Pilkington and

18:19:17   18  misappropriation.  That is not the case.  This

18:19:19   19  particular chart that contains the nine devices that

18:19:21   20  Moog has moved to compel, does not, and did not in the

18:19:43   21  letter, get presented as an admission that every single

18:19:46   22  device in that chart was involved with Kim with

18:19:49   23  Pilkington and with any sort of alleged

18:19:52   24  misappropriation.  And let me unpack that for the Court,

18:19:54   25  please, because I think it's important to look at this

1          MOOG, INC VS. SKYRYSE, INC, ET AL

18:19:56   2   specifically in detail.

18:19:57   3          This next slide is just simply an

18:19:59   4   enlargement of the chart that was in the May 4th letter.

18:20:03   5   And I added numbers on the left side.  Those are the

18:20:06   6   nine devices that Moog enumerated in its motion about

18:20:10   7   the ones that they are compelling or moving to compel to

18:20:13   8   be produced in their entirety, nine entire computers,

18:20:17   9   your Honor.

18:20:17   10          MAGISTRATE JUDGE MCCARTHY:  Excuse me.  You

18:20:18   11   said something about a next slide, but I'm still seeing

18:20:21   12   the same slide.  Have you switched slides?

18:20:25   13          MR. GROSS:  Sure.  The slide I would like to

18:20:28   14   direct the Court's attention has a number 6 on the

18:20:31   15   bottom right.  And if that has not advanced, I will try

18:20:35   16   to restart it.

18:20:36   17          MAGISTRATE JUDGE MCCARTHY:  Maybe if I click

18:20:38   18   on it, no, nothing happens.

18:20:40   19          MR. GROSS:  All right.  I'll stop and start

18:20:42   20   the share again and see if I can get this up to speed.

18:20:45   21   If not, I'll just continue without the visuals.  But,

18:20:58   22   hopefully, I can bring us up to speed.

18:21:01   23          Thanks for your patience.  Is there a slide

18:21:03   24   number 6, that says:  "Moog's motion, nine laptops,"

18:21:06   25   available to you?

```
                       MOOG, INC VS. SKYRYSE, INC, ET AL
18:21:07   2           MAGISTRATE JUDGE MCCARTHY:  Yes.  Now, okay,
18:21:13   3   you have to all help me here because it's partially
18:21:19   4   blocked off by the videos of you folks to the right.  Is
18:21:22   5   that what you're seeing?
18:21:24   6           MR. GROSS:  That sounds like a personal
18:21:27   7   setting.  I have you in the margins and can see.
18:21:33   8           MAGISTRATE JUDGE MCCARTHY:  You're all on
18:21:34   9   the right-hand margin.  I have four of you on the
18:21:37  10   right-hand margin, but you're overlapping with the
18:21:40  11   slide.  So, I'm trying to figure out how to see the full
18:21:44  12   slide.
18:21:44  13           MS. ANDOH:  Gabe, you have it in -- not in
18:21:47  14   slideshow mode.  I would suggest that if you put it in
18:21:50  15   slideshow mode, it may actually blow it up so the Judge
18:21:54  16   can actually see it.
18:21:55  17           MAGISTRATE JUDGE MCCARTHY:  As much as I
18:21:56  18   like seeing your faces, I recognize your voices, so if I
18:22:01  19   look at the slides right now, that would be helpful.
18:22:03  20           MR. GROSS:  I appreciate that.  And in, as a
18:22:05  21   matter of fact, I had it in slideshow mode but it is
18:22:10  22   obviously not working over the Zoom platform.  I'll go
18:22:14  23   into the presentation mode now.  Has that helped anyone?
18:22:18  24           MAGISTRATE JUDGE MCCARTHY:  Nope.  Let me
18:22:20  25   see.  Nope.  Is everybody else, oh.
```

MOOG, INC VS. SKYRYSE, INC, ET AL

18:22:26  2   MR. GROSS:  Okay.  Well, I think then I'm
18:22:28  3   probably going to need to cancel the demonstratives or
18:22:33  4   just actually, I can switch to a better format in one
18:22:36  5   moment.
18:22:36  6   MAGISTRATE JUDGE MCCARTHY:  Well, okay.
18:22:37  7   MR. GROSS:  But I can -- what I'll do in a
18:22:40  8   moment, your Honor, is I'll switch to a sharing a PDF of
18:22:44  9   the same slide, and I think that will simplify it, but
18:22:47  10  in the meantime, I can unpack this a little bit.
18:22:50  11  MAGISTRATE JUDGE MCCARTHY:  All right.
18:22:51  12  MR. GROSS:  Exhibit D, ECF 210-7 of Ms.
18:22:56  13  Andoh's letter.
18:22:59  14  MAGISTRATE JUDGE MCCARTHY:  The May 4th
18:23:01  15  letter.
18:23:01  16  MR. GROSS:  Page seven has the chart on it.
18:23:03  17  And what I did is I will enumerate the nine devices on
18:23:07  18  there, and then I can explain their could connections to
18:23:11  19  these various USB devices and what the subsequent
18:23:15  20  investigation that continued after the May 4th letter
18:23:18  21  revealed about it, and how we have, on behalf of
18:23:20  22  Skyryse, continued to share information about them,
18:23:23  23  which, frankly, moot the issue.  And the information
18:23:26  24  that we've already turned over in discovery and shared
18:23:29  25  with Moog, shows that there is simply no basis, no

```
  1                 MOOG, INC VS. SKYRYSE, INC, ET AL
18:23:33  2   basis, to demand three and a half terabytes of that data
18:23:37  3   by turning over the entire contents of computers in
18:23:41  4   light of the significant information Moog has already
18:23:45  5   provided.  So, all right.  I just see my colleague help
18:23:52  6   me out here.
18:23:52  7                 Is the slide available to you now, your
18:23:55  8   Honor?
18:23:55  9                 MAGISTRATE JUDGE MCCARTHY:  Yeah.  I mean
18:23:56 10   it's, yeah, close enough.  I think the only thing that
18:24:00 11   is blocked is the final column.  Yeah.  I see it because
18:24:05 12   I also have the hard copy in front of me.  I see it.
18:24:08 13                 MR. GROSS:  All right.  Well, let's
18:24:09 14   continue.  So, you can see where we've enumerated the
18:24:13 15   different devices on the left.  You see 1 through 9
18:24:16 16   running vertically down the page.
18:24:18 17                 MAGISTRATE JUDGE MCCARTHY:  Wait a second.
18:24:20 18   Wait.  No.  I'm sorry.  I do see that now, 1 through 9,
18:24:34 19   I do see that now.
18:24:35 20                 MR. GROSS:  Thank the Court for your
18:24:36 21   patience.
18:24:37 22                 MAGISTRATE JUDGE MCCARTHY:  That's okay, but
18:24:38 23   you're going to be later sending these to everybody,
18:24:40 24   including me, right?
18:24:41 25                 MR. GROSS:  Absolutely.
```

```
            1                MOOG, INC VS. SKYRYSE, INC, ET AL
18:24:42    2                MAGISTRATE JUDGE MCCARTHY:  Okay, all right.
18:24:43    3           MR. GROSS:  We'll be happy to do that.
18:24:45    4                MAGISTRATE JUDGE MCCARTHY:  All right.
18:24:46    5           MR. GROSS:  So, what we added to the letter
18:24:48    6   are those nine numbers.
18:24:49    7                MAGISTRATE JUDGE MCCARTHY:  Right.
18:24:50    8           MR. GROSS:  To show the devices that are at
18:24:52    9   issue.  And a couple notes of clarification about the
18:24:55   10   column headings.  The one called "host serial" that was
18:24:59   11   in the Gibson Dunn letter, that we understand is just a
18:25:04   12   reference to the serial numbers.  And the far right
18:25:08   13   column, the abbreviation VSN.
18:25:11   14                MAGISTRATE JUDGE MCCARTHY:  Right.
18:25:11   15           MR. GROSS:  I don't know what the acronym
18:25:13   16   is, but I understand that to mean the serial numbers of
18:25:17   17   USB devices that may have been connected to the laptops
18:25:20   18   in the left column.  That is what we're looking at here.
18:25:23   19                Let's go to the next slide, please.
18:25:29   20                Now, right off the bat, we can eliminate
18:25:32   21   some of the laptops on this slide.  In particular,
18:25:35   22   number 9, because it's already been produced.  That has
18:25:40   23   been produced and not at issue.  Moog still asks for the
18:25:42   24   production of nine laptops.  The one that is number 9
18:25:44   25   has been produced, that is no longer at issue.  And
```

```
            1                MOOG, INC VS. SKYRYSE, INC, ET AL
18:25:48    2   there are two more that are not the subject of Moog's
18:25:51    3   motion, but I wanted to make clear those drop off the
18:25:56    4   chart as well.  There is no discovery dispute about
18:26:00    5   those.  So, the list is getting smaller.
18:26:00    6                Let's go to the next slide, please.
18:26:01    7                And then there is five others, your Honor,
18:26:03    8   actually more, that I think we can also just do away
18:26:07    9   with.  These are the ones that Mr. Naqvi mentioned as
18:26:11   10   having been connected to a particular USB device.  And
18:26:15   11   if we use row number 2 as an example, you'll see that
18:26:20   12   laptop was connected to a device in the right hand
18:26:22   13   column begins 55D.  Do you see that, your Honor?  That
18:26:27   14   row number 2 refers to a laptop connected to a device
18:26:32   15   that began with 55D.  And my colleague just highlighted
18:26:36   16   that.
18:26:37   17                MAGISTRATE JUDGE MCCARTHY:  I'm sorry, where
18:26:38   18   are you highlighting?  I'm having a little difficulty
18:26:41   19   seeing it.
18:26:42   20                MR. GROSS:  It's in the right-hand column of
18:26:45   21   the row that is numbered 2.
18:26:47   22                MAGISTRATE JUDGE MCCARTHY:  Last
18:26:47   23   disconnected.  How far down are we?
18:26:50   24                MR. GROSS:  The far right column, that is
18:26:52   25   headed "VSN," the header is VSN in the column.
```

1               MOOG, INC VS. SKYRYSE, INC, ET AL

18:26:56  2               MAGISTRATE JUDGE MCCARTHY:  Yes.

18:26:57  3               MR. GROSS:  All right.  VSN.

18:27:00  4               MAGISTRATE JUDGE MCCARTHY:  Just a second.

18:27:01  5    Just, yeah, see that is my problem.  Now my courtroom

18:27:06  6    deputy is here, and see the videos are blocking.  Okay.

18:27:19  7    Guess what, folks.  Can you still hear me?

18:27:22  8               MR. GROSS:  Sure can.

18:27:23  9               MAGISTRATE JUDGE MCCARTHY:  I have

18:27:24  10   eliminated your faces.  I don't know --

18:27:27  11               MR. GROSS:  No offense taken.

18:27:28  12               MAGISTRATE JUDGE MCCARTHY:  At some point, I

18:27:30  13   assume I'll be able to get them back, but now I'm able

18:27:33  14   to see the entire.  How do I get their faces?

18:27:36  15               THE CLERK:  When he stops screen sharing,

18:27:38  16   they'll come back.

18:27:39  17               MAGISTRATE JUDGE MCCARTHY:  All right.  So

18:27:41  18   when you stop screen sharing, your faces will come back.

18:27:45  19   See, you are not dealing with a technological Einstein.

18:27:49  20   I think that is becoming more and more apparent to you.

18:27:53  21   Anyway, I can see the document now, and I see it in its

18:28:02  22   entirety.

18:28:02  23               MR. GROSS:  Okay.  So, your Honor, what this

18:28:05  24   part of the presentation is designed to show is that

18:28:08  25   that particular device that begins with 55D, it's

|     |     |
| --- | --- |
| 1 | MOOG, INC VS. SKYRYSE, INC, ET AL |
| 18:28:12   2 | 55D28D65. |
| 18:28:17   3 | MAGISTRATE JUDGE MCCARTHY:  I see it. |
| 18:28:18   4 | MR. GROSS:  That was a USB device that |
| 18:28:20   5 | Gibson Dunn had identified as having been connected to |
| 18:28:24   6 | some laptops, and disclosed that to Moog and its |
| 18:28:27   7 | counsel.  And we continued the investigation, and here |
| 18:28:29   8 | is what we learned about it.  This is not a device owned |
| 18:28:34   9 | by Ms. Kim.  It's not a device owned by Mr. Pilkington. |
| 18:28:38  10 | This is a device that Skyryse's IT department used.  And |
| 18:28:42  11 | one of the things they used it for was to set up laptops |
| 18:28:48  12 | for employees at the company.  And you see it on the |
| 18:28:53  13 | side, the laptop numbered two, numbered 3, 4, 5, 6, 7 |
| 18:28:58  14 | and 8.  And that make the sense.  We interviewed the IT |
| 18:29:03  15 | personnel who are in charge of setting up laptops.  We |
| 18:29:08  16 | looked at this USB drive and determined, one, the vast |
| 18:29:12  17 | majority of the data is from '18 and '19, and years |
| 18:29:39  18 | prior to when Pilkington and Kim even joined the |
| 18:29:42  19 | company, and everything that post dated that date, had |
| 18:29:45  20 | nothing to do with Moog.  So, Mr. Naqvi made it sound as |
| 18:29:50  21 | though Skyryse will refuse to confirm that this device |
| 18:29:55  22 | has nothing to do with Moog.  Your Honor, as an Officer |
| 18:29:58  23 | of the Court, we've said in our briefing, and I'll say |
| 18:30:00  24 | it here again, this device had nothing to do with Moog. |
| 18:30:04  25 | It was the IT department's device used to set up |

1                MOOG, INC VS. SKYRYSE, INC, ET AL

2   laptops.

3                So, Gibson Dunn transparently showed this

4   among the list of USB devices connected to certain

5   employee's laptops.  This is not an admission that this

6   had anything to do with Moog or that it was Pilkington

7   or Kim's.  So there is no basis for this discovery, your

8   Honor, because it's simply not relevant.

9                And I heard Mr. Naqvi say something today

10  and say in the brief, hey, if it's irrelevant, there is

11  no burden on Skyryse to just turning over these laptops.

12  That is not how discovery works, your Honor.  The

13  relevance burden in discovery is low, admittedly, but

14  you still need to have a basis for relevance.  And there

15  is prejudice.  There is burden.  If Skyryse were ordered

16  to turn over three and a half terabytes in

17  indiscriminantly of data on laptops in discovery when

18  there is no showing of relevance whatsoever, much less

19  that outweighs the burden or any elements of

20  proportionality, those are the facts about the USB

21  55D28D65, it was connected to a number of laptops as

22  Gibson Dunn showed.  The investigation revealed it has

23  nothing to do with Moog.  There is no grounds for

24  discovery of laptops or that device simply because that

25  device was connected to a number of laptops.  So, that

                        MOOG, INC VS. SKYRYSE, INC, ET AL

18:32:11   2   is what I wanted to say about the USB device, and that

18:32:14   3   particular USB device, and its connections.

18:32:17   4           So that leaves us with the remaining devices

18:32:20   5   we see on the slide.  Let's go to the next one, please.

18:32:24   6   Next one, please.

18:32:33   7           MR. ZAHOORY:  I put it to the next one, is

18:32:35   8   it not showing?

18:32:36   9           MR. GROSS:  Let's go to the next one.

18:32:48   10          MR. ZAHOORY:  Can you guys see it?

18:32:50   11          MR. GROSS:  This may be a bill, Arman.  What

18:32:52   12  is on slide 10?

18:32:59   13          Okay.  Thank you.  All right.  Now, bear

18:33:02   14  with me, your Honor.  If I'd been able to build the

18:33:06   15  slide one piece at a time, this wouldn't be so

18:33:09   16  overwhelming.  I'll walk the Court through it.  On the

18:33:13   17  right hand of the slide, we put red boxes around the

18:33:18   18  three devices that are at issue, now that we've gotten

18:33:21   19  rid of the IT drive and the ones that were already

18:33:23   20  produced.  There are three remaining laptops that are at

18:33:27   21  issue.  The one that begins with a serial number FM1,

18:33:31   22  one that begins with a serial number starting J54, and

18:33:35   23  one that begins with a serial number C1D.

18:33:39   24          Your Honor, are you able to see those three

18:33:41   25  red boxes?

1         MOOG, INC VS. SKYRYSE, INC, ET AL

18:33:42   2         MAGISTRATE JUDGE MCCARTHY:  Yes, I do.

18:33:43   3         MR. GROSS:  Now, we also filled in some

18:33:45   4    blanks that had been in Gibson Dunn's letter because the

18:33:48   5    investigation continued.  At the point where Gibson left

18:33:51   6    off with its investigation and knew that the FM1 laptop

18:33:55   7    had been connected to three drives, but it didn't know

18:33:58   8    which ones, and so we filled in the blanks because we

18:34:01   9    continued the investigation with Skyryse and we learned

18:34:04   10   what they are.  So, Moog has been asking for one USB

18:34:08   11   device, that is in the red text below the chart, that is

18:34:12   12   the one we just discussed, that is the IT department's

18:34:14   13   device, that is just irrelevant.  There is no reason the

18:34:18   14   Court should order Skyryse to produce that USB drive

18:34:22   15   which has nothing to do with Moog or this lawsuit.

18:34:24   16         There are three others that still remain on

18:34:26   17   this chart, and there is no grounds to compel production

18:34:30   18   of these, either.  The one that begins in EC979, which

18:34:35   19   shows up in two places on this chart.  Arman just

18:34:39   20   highlighted one and the other connected to two different

18:34:42   21   laptops that has been produced.  So, there is no dispute

18:34:45   22   about Moog having access to the contents of that laptop.

18:34:49   23   The second one is the one that begins with the number

18:34:54   24   80, 80FC319F, that was connected to two other laptops,

18:34:59   25   and Defendant Kim already produced that, made it

1              MOOG, INC VS. SKYRYSE, INC, ET AL

18:35:03  2 available in discovery.  And beyond that, Skyryse has

18:35:07  3 been, in my view, very reasonable.  Skyryse said, look,

18:35:09  4 if you're interested in how that device that Ms. Kim

18:35:13  5 produced may have interacted with Skyryse machines, here

18:35:16  6 are the connection histories.  It's a log, if you will,

18:35:19  7 your Honor, the computers keep that shows when and how

18:35:24  8 other devices have been connected to them.  So, we

18:35:27  9 provided the connection history that Moog is free to

18:35:30  10 explore in discovery.  But there has been no showing of

18:35:34  11 any sort that the entire laptops to which that device

18:35:37  12 was connected with their millions of files on them,

18:35:42  13 should be produced in discovery.  If Moog would like to

18:35:45  14 meet and confer with us and talk about what they see on

18:35:48  15 the connection history and follow up with anything

18:35:50  16 targeted, we'll always be willing to consider that and

18:35:53  17 meet and confer with them.  What they are asking the

18:35:56  18 Court to do is order more wholesale productions of

18:35:59  19 entire devices with millions of files on them, the vast

18:36:03  20 majority of which are just irrelevant.

18:36:05  21        And now the last device, the USB device,

18:36:08  22 that remains at issue here is one that is called

18:36:12  23 SanDisk, and again that is the brand name, as we've told

18:36:16  24 Moog and we have known for some time, that is not

18:36:19  25 Skyryse's.  That belongs to an individual employee.

1            MOOG, INC VS. SKYRYSE, INC, ET AL

18:36:21  2  It's been the subject of third-party discovery, and that

18:36:24  3  is underway.  Skyryse is not in a position to produce

18:36:27  4  that, and I understand that those -- that this employee

18:36:30  5  is represented by his own counsel and I understand those

18:36:32  6  negotiations are underway.

18:36:34  7            MAGISTRATE JUDGE MCCARTHY:  So that -- that

18:36:35  8  employee is -- you're referring to someone -- well, it's

18:36:41  9  a current employee.

18:36:42  10           MR. GROSS:  Current employee, not --

18:36:44  11           MAGISTRATE JUDGE MCCARTHY:  Not the

18:36:45  12  individual Defendants.

18:36:45  13           MR. GROSS:  Correct.  It's an individual

18:36:47  14  employee who, and its his personal property, and so Moog

18:36:52  15  has taken steps to seek third-party discovery from him

18:36:56  16  and many others.

18:36:56  17           MAGISTRATE JUDGE MCCARTHY:  Okay.

18:36:57  18           MR. GROSS:  So, your Honor, I think this

18:37:00  19  brings me just about to a close on the nine laptops and

18:37:03  20  one USB device issue.  Keep in mind what they are asking

18:37:07  21  for.  They are asking for wholesale production of

18:37:09  22  devices, each of which contains millions of files on it

18:37:13  23  with no showing of relevance, of the benefit of it, of

18:37:17  24  the burden, just speculation that they need to go in and

18:37:20  25  find out what happened.  And, your Honor, I know it's a

1          MOOG, INC VS. SKYRYSE, INC, ET AL

18:37:24   2    cliche, but I know I'm going to need to use it more than

18:37:26   3    once in today's hearing.  This is a classic fishing

18:37:29   4    expedition.  There is no reason the Court should order

18:37:32   5    Skyryse to turn over three and a half terabytes of data,

18:37:36   6    the hundreds of millions of pages worth of data that

18:37:38   7    would contain, especially at this stage in a case when

18:37:43   8    Moog already knows what it's own trade secrets are, is

18:37:46   9    sitting on a mountain of data that Skyryse has already

18:37:49   10   provided, and has its own mountain of data identifying

18:37:53   11   with granularity exactly which files it claims the

18:37:57   12   individual Defendants took to Skyryse.  There is just no

18:38:01   13   showing for this discovery.

18:38:02   14          So you ordered, your Honor, that Moog should

18:38:05   15   file a motion to compel what discovery is necessary for

18:38:09   16   it to identify its own trade secrets.  These nine

18:38:14   17   laptops and this one USB device are not necessary for it

18:38:17   18   to do that.

18:38:18   19          MAGISTRATE JUDGE MCCARTHY:  All right.  Let

18:38:20   20   me, before I turn back to -- have you concluded your

18:38:24   21   presentation on this issue?

18:38:25   22          MR. GROSS:  On the nine laptops, I think

18:38:27   23   I've said what I needed to say, your Honor.

18:38:30   24          MAGISTRATE JUDGE MCCARTHY:  Before I turn

18:38:31   25   back to Mr. Naqvi, let me ask you, Mr. Gross, aside from

1          MOOG, INC VS. SKYRYSE, INC, ET AL

18:38:39    2   relevance, and I understand your position on that, but

18:38:42    3   in terms of burden to you, I understand the production

18:38:48    4   would all be, you know, by computer and so forth, so the

18:38:52    5   production itself, I don't think would be burdensome.

18:38:56    6   Do I understand correctly that what you are saying would

18:38:59    7   be burdensome, if I get past relevance, would be your

18:39:04    8   need to conduct a privilege review of all of those

18:39:09    9   devices?

18:39:10   10          MR. GROSS:  I think that is a significant

18:39:13   11   part of the burden, your Honor, but not the only part.

18:39:17   12          MAGISTRATE JUDGE MCCARTHY:  What is the

18:39:18   13   other part?

18:39:18   14          MR. GROSS:  Well, the fact that these are

18:39:20   15   available digitally and by computer does not eliminate

18:39:24   16   the burden.  And I'll give you an example, because of

18:39:27   17   the expense and the time that it takes to process these

18:39:30   18   sorts of volumes of data.  We have, as I think you know,

18:39:34   19   we've been working with the individual Defendants to

18:39:37   20   gain access to five of their devices.  And if memory

18:39:41   21   serves, the combined total volume of data on those

18:39:45   22   devices is about two terabytes of data, which Skyryse

18:39:49   23   needs to review for privilege.  The laptops contain much

18:39:52   24   more, about three and a half terabytes of data.  And I

18:39:57   25   mention this to show you by way of comparison, that just

1          MOOG, INC VS. SKYRYSE, INC, ET AL

18:40:00    2  to pay a vendor to upload to produce to the Defendants,

18:40:06    3  it's taken a week just to upload those files.  And we're

18:40:10    4  talking about a much more significant volume.  And once

18:40:13    5  uploaded, they need to be processed for review.  They

18:40:16    6  need to be accessible on a review platform, so you can

18:40:20    7  look for privilege issues.  And that takes a significant

18:40:22    8  amount of time and significant amount of expense.  And I

18:40:25    9  think, frankly, that pales in comparison to the number

18:40:27   10  of attorney hours it will take to do the privilege

18:40:30   11  review.  But I don't want to suggest that just because

18:40:32   12  the sufficient stuff is digital, there is no burden of

18:40:37   13  turning them over.  Yes, we imagined them, and that was

18:41:13   14  a significant and expensive process, it doesn't make it

18:41:16   15  immediately available for discovery.  This comes at

18:41:19   16  great expense, takes a significant amount of time.  And

18:41:21   17  then, your Honor, there is a rule of thumb that our

18:41:24   18  discovery vendors often use, which is attorneys

18:41:27   19  reviewing documents for privilege, if they are moving at

18:41:31   20  a good clip, can review about 50 documents an hour.

18:41:34   21  It's a very rough rule of thumb, documents have all

18:41:36   22  different shapes and sizes, but they can do about 50

18:41:40   23  documents an hour.  We're talking about hundreds of

18:41:42   24  millions of documents.  And while we'll use technology

18:41:45   25  to try to accelerate that process as best we can, it's a

```
  1                    MOOG, INC VS. SKYRYSE, INC, ET AL
  2    significant undertaking if Skyryse were ordered to
  3    produce this information when there has been no showing
  4    that the vast majority of it is relevant.
  5                    MAGISTRATE JUDGE MCCARTHY:  So, you're
  6    saying not in our lifetimes, is that what you're telling
  7    me?
  8                    MR. GROSS:  Well, you know, I would hope,
  9    your Honor, that technology would speed it along, but it
 10    will take hundreds or thousands of hours at a minimum to
 11    get through the review process, and that is using
 12    technology.
 13                    MAGISTRATE JUDGE MCCARTHY:  All right.
 14    Okay.  Thank you.
 15                    All right.  Back to you, excuse me, Kazim.
 16                    MR. NAQVI:  Thank you, your Honor.  You
 17    know, Mr. Gross said a lot of things.  I'll try to keep
 18    my reply short.  The biggest glaring omission from Mr.
 19    Gross' presentation is that you never heard him say that
 20    the laptops we're seeking images to be produced of do
 21    not contain Moog data.  That is the biggest unanswered
 22    question.  He did not make any representation that the
 23    laptops don't contain Moog data.  He made a certain
 24    representation about one of the USB devices, but not the
 25    laptops themselves.  And this case is much larger than
```

1              MOOG, INC VS. SKYRYSE, INC, ET AL

2  USB devices.  Once Moog files are entered, they can be

3  altered, they can be deleted, they can be used, they can

4  be used as a reference.  So laptops are very critical.

5  And you heard Mr. Gross talk significantly about burden

6  and the volume of discovery in this case.  We need to be

7  very circumspect about what the root cause of the volume

8  of discovery of this case is.  Moog should not be

9  penalized because the volume of trade secret theft in

10  this case is gargantuan.  It's 1.4 million files.  The

11  number of devices involved in the misappropriation and

12  turned over to iDS stipulated by the parties is well

13  over three dozen.  So, you know, we heard Mr. Gross talk

14  about hard copy pages.  And I think your Honor picked up

15  on it.  Data and number of hard copy pages does not

16  matter if they are producing electronic images.  They've

17  already imaged the devices.  That process is done.  It

18  was done months ago.  And so there is no further need to

19  process them.  IDS, which is the neutral forensic

20  vendor, you know, involved in this case, they will

21  facilitate making that image available for Moog's

22  review.  And, you know, your Honor, Moog is paying 50

23  percent of iDS's bill.  Skyryse is only paying 25

24  percent.  So the notion that Skyryse is going to bear

25  all of the cost of this process is not true.  They are

1              MOOG, INC VS. SKYRYSE, INC, ET AL

19:22:28  2    not required to search for documents, the laptops have

19:22:33  3    been imagined.  They are not required to print

19:22:35  4    documents.  They are not required to prepare bankers

19:22:37  5    documents.  They need to send the images to iDS.  I

19:22:41  6    understand they need to complete a privilege review.

19:22:43  7    But, your Honor, given the size and scope of this case,

19:22:48  8    and the volume of trade secrets that have been

19:23:49  9    misappropriated, a privilege review cannot hold up

19:23:53  10   lawful discovery.  If that was the case, then there

19:23:56  11   could be no discovery in this case.  All parties have

19:23:59  12   expended critical resources in conducting a privilege

19:24:04  13   review.  That is the nature and scope of the case given

19:24:07  14   what is at stake here.

19:24:11  15             What I think you heard, I think, is

19:24:14  16   important the change of tone.  I think, I appreciate you

19:24:16  17   made read the May 4th letter, and I think the May 4th

19:25:06  18   letter, while it has some ambiguous language about our

19:25:09  19   investigation is ongoing and things like that, the

19:25:11  20   devices at issue were clearly implicated in the letter.

19:25:14  21   We did not write that letter.  So, the notion that this

19:25:16  22   is a fishing expedition, I just think is unfair.  This

19:25:20  23   is Skyryse's letter.  And now I understand that

19:25:22  24   Skyryse's investigation has been ongoing, but there is a

19:25:26  25   complete change of course here.  And Moog needs to be

MOOG, INC VS. SKYRYSE, INC, ET AL

19:25:28  2  able to test that change of course.  You know, we can't

19:25:32  3  take Skyryse's word at face value; there is nothing

19:25:35  4  here, nothing further to be done, no discovery to be

19:25:39  5  had.  There has been a misappropriation of over 1.4

19:25:43  6  million files by Skyryse's former employees.  And, so,

19:26:18  7  Moog should be entitled to test whether these laptops

19:26:21  8  contain any Moog data, which there has been no

19:26:25  9  representation that they don't.  And what has happened

19:26:27  10  to these files, whether they have been altered or

19:26:30  11  whether they have been deleted or sent somewhere else.

19:26:32  12         And, lastly, we heard Mr. Gross talk about

19:26:35  13  Skyryse's IT department.  I don't think it matters who

19:26:38  14  connected the devices.  What matters is the content of

19:26:41  15  those devices and the content of those laptops.  And we

19:26:45  16  still have not heard Mr. Gross or any certification that

19:26:48  17  all of the devices we are seeking production of do not

19:26:51  18  contain any Moog information.  And the fact that that

19:26:54  19  answer, or that question remains unanswered, I think,

19:26:57  20  speaks for itself.

19:26:59  21         MR. GROSS:  Your Honor, if I may briefly.

19:27:01  22         MAGISTRATE JUDGE MCCARTHY:  Yeah, yes.

19:27:04  23         MR. GROSS:  Moog's speculation is not a

19:27:06  24  basis for discovery.  They have to show relevance.  They

19:27:11  25  are saying, don't trust them, your Honor.  They are not

1          MOOG, INC VS. SKYRYSE, INC, ET AL

19:27:14   2    coming to court with evidence of relevance that the IT

19:27:17   3    department somehow absconded with Moog's proprietary

19:27:21   4    information.  Speculation simply is not a ground for

19:27:25   5    discovery.  They've also, they are shifting their

19:27:28   6    theory.  They came to the Court saying, look what's in

19:27:31   7    the Gibson Dunn May 4th letter, laptops connected to

19:27:35   8    certain device.  Now, they are saying the investigation

19:27:38   9    is ongoing and we learned something about the USB

19:27:41   10   devices, but they are not telling you that the laptops

19:27:44   11   don't have Moog data on it.  Your Honor, that is

19:27:47   12   speculation that they do.  We have no reason to think

19:27:50   13   that the laptops are laden with Moog data.  If they have

19:27:54   14   specific discovery that is based on fact, that would be

19:27:58   15   different, but we don't.  Now, we keep hearing this

19:28:37   16   refrain that 1.4 million files have been taken.  They

19:28:46   17   know the factual basis for their allegations of who took

19:28:49   18   what and when, they have the machines on which those

19:28:53   19   files were allegedly copied.  That does not entitle them

19:28:56   20   to go into every computer, every drawer, every file

19:28:59   21   cabinet, every repository in Skyryse simply because they

19:29:04   22   have a factual basis to accuse wrong doing of certain

19:29:08   23   individuals.  It would be like saying, my home was

19:29:12   24   burglarized and the burglar took a sack of goods into a

19:29:16   25   high rise downtown and now I'm entitled to, because the

1          MOOG, INC VS. SKYRYSE, INC, ET AL

19:29:19   2   burglar went in there, to go in every closet, every

19:29:23   3   drawer, every computer, every repository in that

19:29:26   4   building because it might be someplace where the burglar

19:29:30   5   put the ill-gotten goods.  That is not how discovery

19:29:34   6   works.  And, frankly, your Honor, when they are sitting

19:29:37   7   on two terabytes that they already adduced into

19:29:40   8   discovery without identifying their trade secrets, they

19:29:44   9   have more than enough.

19:29:46   10          MR. NAQVI:  Your Honor, if I may briefly

19:29:48   11   reply.  I'll be 30 seconds.

19:29:50   12          I think Mr. Gross' analogy about the burglar

19:29:53   13   and goods, it just doesn't apply here.  We're dealing

19:29:56   14   with electronic files and items that are quickly

19:29:59   15   transferred between computers, so I don't think that

19:30:02   16   analogy works.

19:30:03   17          And I really just want to end the foundation

19:30:05   18   of this entire issue.  These are devices that Skyryse

19:30:09   19   identified in its own letter.  The notion that Moog is

19:30:12   20   trying to open every drawer, every computer, every file

19:30:15   21   at Skyryse is just not true.  We do have good cause.

19:30:19   22   Skyryse provided the good cause as part of its

19:30:22   23   investigation into what happened to the files taken by

19:30:25   24   Mr. Pilkington and Ms. Kim.  It all starts from the May

19:30:29   25   4th letter, which is from Skyryse's counsel, and,

MOOG, INC VS. SKYRYSE, INC, ET AL

19:30:32   2  unfortunately, Moog has not had visibility into what

19:30:35   3  happened to the files, where they were transferred once

19:30:38   4  they were taken.  That is part of our investigation that

19:30:40   5  we are entitled to.  And it's the same thing we heard

19:30:43   6  before, when, oh, Moog, has a file, that is all they

19:30:48   7  need.  And as your Honor noted, that is not all we need.

19:30:51   8  We need to do a full forensic investigation, it's the

19:30:55   9  same issue occurring.

19:30:56  10       MAGISTRATE JUDGE MCCARTHY:  You both -- I

19:30:59  11  don't mean this to kick the can down the road.  You both

19:31:01  12  make very compelling points.  I'm trying to explore

19:31:08  13  whether there is -- and, again, I want to just say, I

19:31:14  14  applaud everybody for what is reflected in Rena's letter

19:31:20  15  of yesterday, that there were a lot of other issues on

19:31:23  16  the table, and you've made good progress in resolving

19:31:26  17  them.  So, what I'm trying to do now is just explore.

19:31:31  18  Is there a possibility of, by way of a middle ground, of

19:31:36  19  maybe doing some random sampling of these various

19:31:40  20  devices and seeing what you come up with and then

19:31:44  21  deciding whether further exploration is necessary?  That

19:31:51  22  would minimize the -- I mean, I'm concerned about cost

19:31:55  23  and I'm concerned about time delay because we want to

19:31:58  24  move this forward.  And if, for example, a privilege

19:32:00  25  review is going to take a long time, I don't know that

1           MOOG, INC VS. SKYRYSE, INC, ET AL

19:32:04  2    that is in anybody's interest.  But, I mean, would it be

19:32:07  3    possible to, you know, take random samples of these

19:32:13  4    devices and see what you're hitting on.  And if you're

19:32:16  5    hitting on a fair amount, then maybe you need to go

19:32:19  6    further.  And if you're not hitting on anything, that is

19:32:22  7    of interest, maybe you say, okay, well, in the grand

19:32:28  8    scheme of things, we can live with that.  Is there any

19:32:32  9    merit to that approach?

19:32:35  10           MR. GROSS:  I do have a thought on it, your

19:32:37  11   Honor.  I mean, first, to be candid, having done random

19:32:40  12   sampling in discovery when it's merited in other cases,

19:32:45  13   this doesn't strike me as the type of facts that lends

19:32:49  14   itself well to anything statistically meaningful

19:32:52  15   analysis.  But, but, I do think the parties, in their

19:32:56  16   work together up through this stage, have done something

19:32:59  17   equivalent, which is run across enormous repositories,

19:33:04  18   thousands of search terms to see where they hit and

19:33:09  19   produce the responsive results.  And the searches get

19:33:14  20   run through large repositories.  And so Moog provided

19:33:18  21   search terms, and you know we had issues with some of

19:33:19  22   them, and the parties worked together with search terms

19:33:25  23   and provided responsive documents.  So it's not as

19:33:27  24   though Moog has no insight into what is in the company

19:33:33  25   when you sort of use a shotgun approach to fine things

1          MOOG, INC VS. SKYRYSE, INC, ET AL

19:33:34  2   relative to the lawsuit.  We've done that.  This is on

19:33:36  3   top of that, what they are demanding.  And, keep in mind

19:33:40  4   what they are demanding it for.  They say they need it

19:33:43  5   to identify their own trade secrets.  That is the only

19:33:45  6   issue before the Court right now in this motion.  They

19:33:50  7   have enough information, I don't think random sampling.

19:33:53  8          MAGISTRATE JUDGE MCCARTHY:  To identify,

19:33:54  9   they know what their trade secrets are in the abstract,

19:33:57  10  but the issue in this case is which trade secrets may

19:34:03  11  have been misappropriated by the Defendants, and,

19:34:05  12  therefore, will be at issue for the preliminary

19:34:10  13  injunction motion.

19:34:13  14          MR. GROSS:  Well, your Honor, I beg to

19:34:14  15  differ with that just a little bit.  Because, Moog has

19:34:18  16  not shown us that they know what their trade secrets

19:34:20  17  are.  And I think what they will do, if they are

19:34:23  18  permitted more indiscriminate discovery, they'll find

19:34:29  19  things that look like Moog's, or things they identify

19:34:30  20  look like Moog's and then they'll assert trade secrets

19:34:32  21  in those.  They should know what their trade secrets are

19:34:35  22  now based on the steps they took to keep them trade

19:34:38  23  secrets.  And this is a hindsight risk that we want to

19:34:41  24  guard against.

19:34:43  25          MAGISTRATE JUDGE MCCARTHY:  I understand

1          MOOG, INC VS. SKYRYSE, INC, ET AL

19:34:44  2  your concern about that, and I addressed it, I think, in

19:34:48  3  my Decision and Order.  I mean, there has to be a

19:34:52  4  certain level of trust here.  I know that is

19:34:56  5  theoretically possible that they could generate a

19:34:59  6  claimed trade secrets based on what they've seen in your

19:35:02  7  documents, but you also have a record of what you

19:35:06  8  developed and how you developed it.  So, yeah, I can see

19:35:10  9  both points, but I don't think that is a deal breaker.

19:35:13  10         Mr. Naqvi, were you going to say something?

19:35:18  11         MR. NAQVI:  Yes, your Honor.  And I

19:35:19  12  appreciate your Honor taking the practical approach

19:36:28  13  here.  I would have a proposal here that I think may cut

19:36:33  14  through this issue and tries to reach a middle ground

19:36:35  15  and keeps in mind relevance and proportionality.  I

19:36:40  16  think Moog would be okay with, instead of entire images

19:36:43  17  of all nine laptops being turned over, that Skyryse

19:36:48  18  turns over three laptops of our choosing, and also

19:36:50  19  provides file lists of all the laptops, that way --

19:36:53  20         MAGISTRATE JUDGE MCCARTHY:  I'm sorry,

19:36:54  21  provides all of what for three of the laptops?

19:36:59  22         MR. NAQVI:  Images of three laptops of our

19:37:01  23  choosing, and as well as file lists for all nine

19:37:04  24  laptops.  That way we can see what the contents are, we

19:37:06  25  can still do our forensic investigation for three of the

```
1                    MOOG, INC VS. SKYRYSE, INC, ET AL
2       laptops, and if we see there is a common pattern here,
3       then we can meet and confer.  And if there is a dispute,
4       come back to the Court for good cause to get the other
5       images.  But, I think at least we'll be able to do a
6       forensic analysis for three of the laptops, and we will
7       also be able to see a file listing for all of the other
8       laptops.  And we'll determine if there are documents or
9       certain groups of documents that are relevant and we can
10      conduct our investigation that way.
11                    MAGISTRATE JUDGE MCCARTHY:  Okay.  Have you
12      made that proposal to Skyryse previously or is that a
13      new idea?
14                    MR. NAQVI:  That is a new idea.  I mean,
15      previously, Skyryse's position was they were not going
16      to turn over anything.  We're trying to work to find a
17      middle ground.
18                    MR. GROSS:  Your Honor, it is an interesting
19      thought and it's the first we heard about it.  There are
20      problems with it.  One of which is Moog should not be
21      able to pick, as a laptop of its choosing, a laptop, the
22      only reason we're talking about which, is because Gibson
23      Dunn transparently explained it was connected to what we
24      now know is an IT USB drive.  There is no basis for
25      discovery of a laptop that has nothing to do with Moog
```

1              MOOG, INC VS. SKYRYSE, INC, ET AL

19:38:27  2   or this lawsuit.  And that would permit them to go on

19:38:32  3   the proverbial fishing expedition for millions of files

19:38:34  4   that they've shown no relevance of showing.  Laptops of

19:38:37  5   their choosing is just not an appropriate way to proceed

19:38:40  6   without other parameters.  We have to limit it to things

19:38:45  7   they made a factual showing of relevance on.

19:38:47  8              MAGISTRATE JUDGE MCCARTHY:  Well, I think,

19:38:49  9   because, folks, what you got to appreciate, and I think

19:38:51  10  it's obvious to you, you know, I'm much more

19:38:54  11  comfortable, for example, dealing with motions for stay,

19:39:00  12  motions regarding privilege, things of that sort, than I

19:39:04  13  am dealing with the nuts and bolts of a

19:39:09  14  computer-generated information and what is or is not

19:39:12  15  relevant.  So, you're never going to get from me a

19:39:17  16  detailed and perfectly satisfactory resolution which

19:39:24  17  makes sense to everybody.  You know, and I'm being

19:39:30  18  candid in saying that, and I just got to get that out

19:39:32  19  for you.  And for that matter, and he might take

19:39:35  20  offense, but I also don't think you'll get it from Judge

19:39:38  21  Vilardo.  There are limits to what we can do in a case

19:39:41  22  like this.  And, therefore, I think Mr. Naqvi's proposal

19:39:46  23  may not be totally acceptable or satisfactory, but I

19:39:50  24  think it's a good starting point, and I encourage the

19:39:53  25  parties to explore that further.  And if it's a matter

                    MOOG, INC VS. SKYRYSE, INC, ET AL

19:39:57   2   of me choosing the three laptops, I'm happy to do that.

19:40:01   3   I've got a dart board here, so I can.  But, there has

19:40:07   4   got to be a way.  I guess it's an offshoot of what my

19:40:11   5   proposal regarding random sampling was.  And, you know,

19:40:14   6   it may not work in this type of scenario, but in a

19:40:20   7   sense, that is random sampling, because you're looking

19:40:23   8   at three rather than nine.  So, I'm -- because we got to

19:40:27   9   move onto other issues --

19:40:29   10                  MR. GROSS:  Sure.

19:40:29   11                  MAGISTRATE JUDGE MCCARTHY:  -- I'm going to

19:40:30   12   encourage the parties to explore that further.

19:40:34   13                  MR. GROSS:  I agree with your Honor that

19:40:36   14   it's a good start and we'll be happy to meet and confer

19:40:39   15   with Mr. Naqvi and his team.  It's certainly narrower

19:40:43   16   than where we started with this motion, so we will be

19:40:44   17   happy to do it.

19:40:44   18                  MAGISTRATE JUDGE MCCARTHY:  And then we can

19:40:46   19   reconvene, and now it's back to me.  And as I said

19:40:49   20   before, I'm going to proceed with this -- I'm going to

19:40:52   21   proceed with this as though it's staying here.  You

19:40:57   22   know, if Judge Vilardo takes a different view, then he

19:41:02   23   does.  But, as I said at the outset, I don't think

19:41:06   24   anything we're doing here will be a wasted effort

19:41:09   25   because whether you need it here or you need it in

1               MOOG, INC VS. SKYRYSE, INC, ET AL

19:41:15   2   California, you're going to need it.  I'm happy to meet

19:41:17   3   with you again.  Like I said, we've been away from each

19:41:20   4   other for two months or whatever, and I missed you.

19:41:25   5   But, you know, I can set up more frequent meetings now.

19:41:29   6   So, we'll come back to that at the end of today's

19:41:32   7   session, and we'll set a date for a further reconvening

19:41:37   8   on that issue and the other issues we're going to

19:41:43   9   discuss today.  Okay?  All right?

19:41:45  10               MR. GROSS:  Okay.

19:41:46  11               MR. NAQVI:  Okay.  Of course, your Honor.

19:41:48  12   Thank you.

19:41:49  13               MAGISTRATE JUDGE MCCARTHY:  Let's move onto

19:41:50  14   item two in Rena's letter, the volume shadow copies.

19:41:56  15               And who is going to speak?

19:41:58  16               MR. NAQVI:  Thank you, your Honor.  This is

19:42:02  17   Kasim Naqvi and I will be speaking.

19:42:02  18               This is fortunately, for the Court, a

19:42:04  19   narrower issue than that one before.  And for the

19:42:08  20   Court's edification, to the extent it's helpful, let me

19:42:12  21   explain what a volume shadow copy is.  Your Honor may

19:42:16  22   have that question.

19:42:16  23               A volume shadow copy is a technology

19:42:19  24   included Microsoft Windows that creates backup copies or

19:44:29  25   snapshots of computer files or volumes even when the

1          MOOG, INC VS. SKYRYSE, INC, ET AL

19:44:57   2    computer is in use.  So, it can be used to access files

19:45:02   3    or volumes that were subsequently deleted, basically a

19:45:06   4    snapshot back in time.

19:45:07   5          In this case, it is undisputed that Ms. Kim,

19:45:11   6    Defendant Kim, deleted what appears to be approximately

19:45:14   7    780 Moog files from her Skyryse-issued Windows laptop.

19:45:19   8    And that has been produced to iDS as device number one.

19:45:24   9    The dispute right now is, Moog is requesting a

19:45:27   10   production of the volume shadow copy for Ms. Kim's

19:45:33   11   laptop at a certain point in time so Moog can understand

19:45:36   12   exactly what was deleted, what happened to those files,

19:45:40   13   what the contents of those files are, and so on and so

19:45:42   14   forth.  Skyryse's position is that Moog has already been

19:45:45   15   provided a file listing for the 780 files and it doesn't

19:45:50   16   need to access the volume shadow filing itself.

19:45:54   17          As your Honor can appreciate, this is a

19:45:56   18   constant theme in the case that where Skyryse claims

19:45:59   19   that file listings is all we need, and access to actual

19:46:02   20   files or backups are not appropriate.  But file listings

19:46:06   21   are not sufficient for the exact same reason that we've

19:46:08   22   already discussed with the trade secret identification

19:46:10   23   and now the laptop issue.  We need access to the volume

19:46:14   24   shadow copy so we can inspect the files themselves and

19:46:18   25   understand their contents.  The files may have been

1               MOOG, INC VS. SKYRYSE, INC, ET AL

19:46:21   2   altered, they may have been transposed, they may have

19:46:24   3   been transferred to other locations, and this is all

19:46:27   4   relevant and necessary information.  And Skyryse, more

19:46:32   5   recently, not in their papers, but in a meet and confer

19:46:35   6   with us, has argued that, you know, it's more arguments

19:46:39   7   about burden and cost.  But iDS, the neutral vendor, has

19:46:44   8   already processed the volume shadow copy data to prepare

19:46:47   9   the file list.  So, there would be minimal additional

19:46:51   10  effort for iDS to export the entire volume shadow copy

19:46:56   11  to a logical evidence file.  And, you know, they may

19:47:15   12  argue again about a privilege review.  But, again, a

19:47:18   13  privilege review should not be permitted to hold up

19:47:20   14  discovery, especially where it involves deletion of 780

19:47:25   15  files, 780 Moog files, by one of the Defendants in the

19:47:29   16  case.  This is not -- this is not another employee.

19:47:32   17  This is either a file deleted by Ms. Kim from her

19:47:37   18  laptop.  Moog needs to have access to a snapshot of that

19:47:42   19  laptop so we can understand exactly what those files and

19:47:46   20  what was done.

19:47:46   21              MAGISTRATE JUDGE MCCARTHY:  Okay.  Thank

19:47:47   22  you.

19:47:47   23              Gabe, are you up or?

19:47:48   24              MR. GROSS:  Yes, I'll handle this, your

19:47:51   25  Honor.  So, I think Mr. Naqvi was very clear on what

                    MOOG, INC VS. SKYRYSE, INC, ET AL

19:47:54  2   their focus was here.  It is the 780 files that were

19:47:58  3   allegedly deleted.  And they want to know if there are,

19:48:01  4   I guess, remnants of them or information in them in

19:48:05  5   backup copies.  That, frankly, seems like reasonable

19:48:08  6   targeted discovery to me.  It's not what they are asking

19:48:12  7   for.  They are asking for 10 virtual shadow copies,

19:48:16  8   which are entire backups of complete devices, and they

19:48:19  9   want to get them from three devices, not just the one

19:48:22  10  Ms. Kim used.  So, it's another example of this over

19:48:26  11  reach, where rather than focusing on the thing that they

19:48:29  12  say they are alarmed about with a factual basis, they

19:48:33  13  are asking for entire backups of laptops that contain

19:48:36  14  millions of files with no showing of relevance and no

19:48:40  15  respect for the burden that would impose.  This would

19:48:43  16  cover the 10 VSC, or virtual shadow copies they've asked

19:49:14  17  for, would encompass over 100 gigabytes of data and

19:49:21  18  about 8 million pages of data.  And, your Honor, there

19:49:23  19  is just no showing to impose that kind of burden on them

19:49:23  20  to identify their own trade secrets.  I would be happy

19:49:28  21  to meet and confer with them about a way to get

19:49:32  22  reasonable backups targeting those 780 files.  That

19:49:34  23  sounds targeted and perhaps productive to move this

19:49:37  24  forward.  But what they are asking for is orders of

19:49:40  25  magnitude that they have made no showing they are

                              MOOG, INC VS. SKYRYSE, INC, ET AL

19:49:43    2    entitled to.

19:49:44    3                  MAGISTRATE JUDGE MCCARTHY:  Okay.

19:49:46    4                  MR. NAQVI:  Your Honor, may I briefly

19:49:50    5    respond?  Respectfully, we're trying to -- we're happy

19:49:52    6    to meet and confer.  The problem is, we're trying to

19:49:56    7    move this case along, and I think your Honor is trying

19:49:56    8    to move this case along to the identification phase.

19:49:56    9    And we've met with Skyryse and they have refused to

19:50:00   10    provide any volume shadow copies.  We've made these

19:50:06   11    exact arguments to them and they refuse to provide

19:50:08   12    anything.

19:50:09   13                  MAGISTRATE JUDGE MCCARTHY:  Well, whether

19:50:11   14    they have refused to the past or not, what Mr. Gross

19:50:13   15    said a minute ago is that they might be willing to give

19:50:16   16    you volume shadow copies of the deleted files.  Is that

19:50:20   17    right?

19:50:21   18                  MR. GROSS:  That is where we should focus

19:50:23   19    our efforts, your Honor.  A single volume shadow copy is

19:50:26   20    an entire laptop, it's millions of files.  If it

19:50:30   21    contains those 780, we're happy to look for those.  That

19:50:34   22    sounds appropriate.  But, no, they are not entitled to a

19:51:24   23    single, much less 10 entire volume shadow copies, but

19:51:29   24    the focused 780 files, that is something we can work

19:51:34   25    with.

1          MOOG, INC VS. SKYRYSE, INC, ET AL

2          MAGISTRATE JUDGE MCCARTHY:   Mr. Naqvi.

3    Because I have to say, when I was reviewing the papers,

4    what struck me, if she has deleted files, so you don't

5    know what was in them or without looking at them, then

6    you should be able to get the shadow copies.   Beyond

7    that, I don't necessarily, at this point, see the need,

8    maybe there is a reason, but it seems to me that would

9    be a good starting point for your discussions if you're

10   going to meet and confer, and I would encourage you both

11   to do so, and then we can take it up again when we

12   reconvene.   And, again, I am willing to get back with

13   you, both or with everybody, in two weeks or whatever

14   time frame you suggest.   But, but, you know, again, I

15   don't mean to sound like a broken record, because I know

16   this is a concern of all of yours, which is expense

17   being one of them to everybody, but, also, this is a

18   preliminary injunction motion, and those are normally

19   supposed to move pretty quickly.   And, you know, we're,

20   through nobody's fault, but we're several months down

21   the road, and we're nowhere close to getting a hearing

22   date.   So, I just, if I have to cut the baby in half on

23   certain things and it's a less than perfect solution,

24   that is what I'm going to do.   But I am going to

25   encourage you to talk with each other.   And it does seem

1          MOOG, INC VS. SKYRSE, INC, ET AL

19:53:05  2   to me that you're entitled to shadow copies of the

19:53:08  3   deleted files.  If you can make a compelling argument as

19:53:11  4   to why you need shadow copies of anything else, you

19:53:15  5   know, I'll listen at our next get together.  But, you

19:53:18  6   know, we got other issues we've got to confront today as

19:53:22  7   well.  So, can I leave it at that for now?

19:53:27  8          MR. NAQVI:  Thank you, your Honor.  We're

19:53:28  9   okay with that.  And I think I'll just note for the

19:53:31  10  record that we have requested other volume shadow

19:53:33  11  copies.  We will defer on those issues, while reserving

19:53:36  12  our rights, but we'll meet and confer with counsel, at

19:53:39  13  least as to Ms. Kim's device.

19:53:41  14          MAGISTRATE JUDGE MCCARTHY:  Okay.  Good,

19:53:42  15  good, good, good.

19:53:43  16          Now we move to item three on Ms. Andoh's

19:53:48  17  letter, which relates to the Defendants Pilkington and

19:53:53  18  Kim, and their excision of documents prior to 2021.  And

19:54:02  19  the theory being that is when everything happened here?

19:54:06  20  Is that -- who is going to -- let's see, Anthony Green,

19:54:13  21  who is arguing on behalf of them?

19:54:17  22          MR. GREEN:  My colleague Alex Truitt will

19:54:20  23  handle this for us.

19:54:21  24          MR. TRUITT:  Can you hear us?

19:54:23  25          MAGISTRATE JUDGE MCCARTHY:  Yes, I can hear

1          MOOG, INC VS. SKYRYSE, INC, ET AL

19:54:25   2    you and I can see you, so it's all good.

19:54:27   3          MR. TRUITT:  So, I think the first place to

19:54:29   4    start with this is that this is not a motion to seek the

19:54:33   5    discovery to further the identification of trade

19:54:36   6    secrets.  This is a motion that, you know, if you look

19:54:39   7    at their motion, you get the impression that they

19:54:41   8    already know what their trade secret is, and they can

19:54:44   9    identify it.  And our position is if you can identify

19:54:47   10   your trade secret, identify the trade secret, and then

19:54:49   11   come back to us and we'll discuss about how to deal with

19:54:52   12   these communications.  Because what there is 700,000

19:54:57   13   communications that are on these devices going back to

19:55:00   14   1992.  And there is an immense burden in reviewing them

19:55:06   15   for the reasons that we have set forth.  And what we're

19:55:09   16   dealing with is a complaint.  The complaint describes

19:55:13   17   alleged acts of misappropriation in the winter of 2021.

19:55:18   18   We have discovery requests that seek information going

19:55:20   19   back to January 1st, 2021.  And we've provided all of

19:55:25   20   that.  The Plaintiffs have every communication by the

19:55:31   21   individual Defendants during their time at Moog.  What

19:55:34   22   they are looking for is private communications on their

19:55:38   23   personal devices.  And just to repeat what Mr. Gross has

19:55:41   24   said, you know, the way discovery works under Federal

19:55:45   25   Rule 26 is that the Plaintiff makes a showing of why

1           MOOG, INC VS. SKYRYSE, INC, ET AL

19:55:49   2   there is probative value to this information sought, and

19:55:52   3   then the Defendant says, well, yes, no, here is the

19:55:56   4   burden of compliance.  And what we're saying here is

19:55:59   5   that there is an immense number of communications that

19:56:02   6   are at issue.  We've received no information from

19:56:05   7   Plaintiff about why this could have any bearing on their

19:56:08   8   claim, why this has any relationship to the alleged acts

19:56:12   9   of misappropriation which occurred in the winter of

19:56:15   10  2021, and they won't even confirm with us whether the

19:56:19   11  alleged trade secrets at issue even existed during the

19:56:21   12  time period that is at issue.  So, the burden of

19:56:25   13  requiring us to then, you know, go through hundreds of

19:56:29   14  thousands of communications without any showing by the

19:56:34   15  Plaintiff it's immense, it's over the top, and it's

19:56:37   16  absurd.  This is going to be months of attorney time.

19:56:40   17          MAGISTRATE JUDGE MCCARTHY:  I took you out

19:56:42   18  of order, actually.  I just wanted to identify you.  And

19:56:45   19  then, I guess, I was going to hear from Moog first, but

19:56:49   20  then from you, but since you have spoken, that's fine.

19:56:52   21          Let me ask you a couple of questions that

19:56:54   22  might not be directly relevant to this issue, but I

19:56:58   23  think would be, might be, indirectly relevant.  First of

19:57:02   24  all, are either of them, have either of them obtained

19:57:06   25  new employment?

1          MOOG, INC VS. SKYRYSE, INC, ET AL

19:57:09   2          MR. TRUITT:  At this time, we have not been

19:57:12   3   informed they have obtained new employment.

19:57:15   4          MAGISTRATE JUDGE MCCARTHY:  I'm sorry?

19:57:16   5          MR. TRUITT:  At this time, we have not been

19:57:19   6   informed either of them have obtained new employment.

19:57:21   7          MAGISTRATE JUDGE MCCARTHY:  Secondly, have

19:57:23   8   there been any developments that they are aware of in

19:57:25   9   the criminal investigation.

19:57:28   10         MR. TRUITT:  At this time we've not been

19:57:30   11  given any update by the Government or anything.

19:57:32   12         MAGISTRATE JUDGE MCCARTHY:  So I take it no

19:57:33   13  charges have been filed, right?

19:57:35   14         MR. TRUITT:  Nothing at this time.

19:57:43   15         MAGISTRATE JUDGE MCCARTHY:  All right.  I

16:52:43   16  will turn to Mr. Naqvi, I guess, and then I'll hear from

16:52:46   17  you again if you need, okay?  Go ahead.

16:52:48   18         MS. ANDOH:  Thank you, your Honor.  First,

16:52:51   19  you know, I think we consistently hear re-arguments

16:52:55   20  about the sequencing and of trade secret identifications

16:52:58   21  in this case.  And your Honor already ruled on that, so

16:53:01   22  that cannot be a basis to oppose our motion.  There are

16:53:04   23  two issues here.  There is a procedural issue and then

16:53:07   24  there is a relevance issue.  So, let me first address

16:53:10   25  the procedural issue.  There is no court order,

                         MOOG, INC VS. SKYRYSE, INC, ET AL

16:53:12  2   stipulation or other agreement that allows what the

16:53:15  3   individual Defendants are trying to do here.  The Court

17:06:21  4   entered a very detailed inspection protocol that does

17:06:25  5   not allow any excision for reasons other than for

17:06:30  6   privilege or privacy.  And now we're trying to get large

17:06:33  7   scale excision based on relevance.  We already litigated

17:06:37  8   this issue heavily.  If I recall correctly, the

17:06:39  9   independent Defendants did not submit their own

17:06:42  10  information protocol.  They did not raise this as being

17:06:44  11  an issue before, that there may be large volumes of

17:06:47  12  communication that should not be turned over.  This

17:06:50  13  should have been brought up six months ago when the

17:06:53  14  inspection protocol was entered.  And in compliance with

17:06:56  15  the inspection protocol, many devices have been turned

17:07:00  16  over to iDS, but, and I don't want to speak for Skyryse,

17:07:06  17  but Moog has not excised any material on the basis of

17:07:59  18  relevance because that was not permitted under the

17:08:01  19  inspection protocol.  And, so, to the extent the

17:08:04  20  individuals claim that all pre 2021 communications are

17:08:09  21  private, which I think that blanket assertion is

17:08:11  22  improper on its face, it's also important to note that

17:08:14  23  the inspection protocol requires any documents excised

17:08:19  24  for privilege or privacy be specifically identified in a

17:08:24  25  log.  That has not occurred here.  That is a procedural

1           MOOG, INC VS. SKYRYSE, INC, ET AL

17:08:27  2   issue.  None of the courts allow this practice.

17:08:30  3           Let's go to relevance.  Mr. Truitt argued

17:08:33  4   that we have not made any showing, but that is just not

17:08:37  5   true.  As alleged in our complaint, and as set forth in

17:08:40  6   our papers, the individual Defendants were hired in 2012

17:08:43  7   and 2013.  We've already offered, we can get rid of

17:08:47  8   everything before 2013.  I understand some of these

17:08:51  9   communications go back to the 1990s.  We don't need

17:08:55  10  them.  We have already offered that to the individual

17:08:57  11  Defendants.  And specifically to the trade secrets in

17:09:01  12  this case, we explicitly alleged, they started working

17:10:07  13  some of those programs in 2013.  One of the programs is

17:10:16  14  ERTOS, E-r-t-o-s.  That is one of the programs that is

17:10:18  15  identified in our complaint that Mr. Pilkington actually

17:10:22  16  spearheaded that program, and that is one of the

17:10:24  17  programs that we've alleged was misappropriated.  A

17:10:28  18  large volume of files for that program was

17:10:30  19  misappropriated.  And so, you know, we've seen and we

17:10:34  20  have put in our papers several examples of

17:10:36  21  communications between Mr. Pilkington and Ms. Kim where

17:10:40  22  they openly discuss Moog trade secrets, where they

17:10:43  23  openly discuss disclosing Moog trade secrets to third

17:10:46  24  parties.

17:10:47  25          MAGISTRATE JUDGE MCCARTHY:  Yeah, no, I've

                    MOOG, INC VS. SKYRYSE, INC, ET AL

17:10:48  2  seen those.  But some of those when -- let me see here.

17:10:54  3  I mean don't those -- the things that you cited, I think

17:11:00  4  it's exhibit B to a Rena Andoh's declaration 210,

17:11:08  5  although the documents are at 210-11, but, like, they

17:11:13  6  are, for example, I'm not going to, because we're in a

17:11:16  7  public proceeding, so I'm not going to -- there is

17:11:20  8  reference to a particular text exchange on December 9th

17:11:26  9  of 2021 at, I believe, 6:59 a.m. where Mr. Pilkington

17:11:35  10  said certain things that he plans to do and references

17:11:38  11  that program.  But that is in 2021.  So, why do you need

17:11:46  12  -- and I agree with you in terms of what the protocol

17:11:49  13  says.  But, just in terms of, again, a practical

17:11:54  14  resolution here, why -- that would be information that

17:11:59  15  you -- well, first of all, you already have it, because

17:12:02  16  you've seen it, but I can see that what happened after

17:12:06  17  2021 is certainly relevant.  What they did with whatever

17:12:10  18  they developed is certainly relevant.  But, what they

17:12:15  19  did while they were working for Moog before they left

17:12:20  20  for Skyryse or before they left in general, why is that

17:12:24  21  relevant?  I presume you would already know that.

17:12:27  22           MS. ANDOH:  Well, your Honor, we're seeking

17:12:30  23  communications from their personal devices.  And so to

17:12:33  24  the extent they used personal devices to share Moog

17:12:37  25  information between themselves for unauthorized purposes

MOOG, INC VS. SKYRYSE, INC, ET AL

17:12:40  2   or with third parties, we need to be able to investigate

17:12:44  3   that.  And they had access to Moog trade secrets

17:12:47  4   beginning in 2013.  And we can't provide those examples

17:12:51  5   to the Court because we don't have them.  That is how

17:12:54  6   we're going to get them.  And, your Honor, you brought

17:12:56  7   up a great point with practicality.  What is the

17:12:59  8   practical hurdle here?  There has been no claim that any

17:13:02  9   of these communications are privileged.  There is a very

17:13:05  10  broad privacy concern.  But from our perspective, the

17:13:10  11  privacy concern is completely eliminated by all of the

17:13:32  12  strict protections in the inspection protocol.  It's not

17:13:35  13  like Moog, that the client is going to see these

17:13:38  14  materials.  These communications and whatever other

17:13:40  15  documents there are, are only going to be accessible to

17:13:44  16  Moog's outside counsel and its experts.  So, there has

17:13:47  17  been no claim of privilege burden.  And, you know, and

17:13:51  18  any privacy concern is done with with the inspection

17:13:54  19  protocol.  That is why we have a detailed protective

17:13:58  20  order and inspection protocol.  Your Honor, that is why

17:14:01  21  we met and conferred with the individual Defendant

17:14:03  22  counsel, and they articulated some of the volume

17:14:06  23  concerns they had which helped narrow the scope of what

17:14:10  24  we're requesting, we removed everything prior to 2013,

17:14:13  25  and we're requesting they produce communications on

1          MOOG, INC VS. SKYRYSE, INC, ET AL

17:14:16    2    these devices after 2013 so we can determine, in their

17:14:19    3    personal capacity, to what extent they disclosed Moog

17:14:24    4    trade secrets to third parties.

17:14:25    5          MAGISTRATE JUDGE MCCARTHY:  Okay.  Mr.

17:14:26    6    Truitt, back to you.

17:14:28    7          MR. TRUITT:  Couple of things here.  You

17:14:30    8    know, first, the protective order and inspection

17:14:34    9    protocol, it required the production of devices used in

17:14:38    10   the year 2021 to the date of the complaint.  So, again,

17:14:42    11   with the allegations in the complaint, and the time

17:14:44    12   frame sought in the discovery requests, it's all saying

17:14:49    13   2021 is the relevant period.  And our position is that

17:14:53    14   communications on their personal devices that have no

17:14:58    15   relationship to the complaint or anything that has been

17:15:02    16   alleged are necessarily private and properly withheld

17:15:06    17   under the precise terms of the inspection protocol at

17:15:10    18   issue.  So, I would just say that, you know, we disagree

17:15:14    19   with Mr. Naqvi's representation of what our rights are

17:15:17    20   under that, and that we have properly objected on the

17:15:20    21   grounds of privacy, which is permitted under the

17:15:24    22   inspection protocol.

17:15:25    23          The next thing is that, what we're dealing

17:15:31    24   with here is still a situation where there is going to

17:15:35    25   be immense burden, and all we've received from the

1          MOOG, INC VS. SKYRYSE, INC, ET AL

17:15:39  2   Plaintiff is simply speculation, which, again, is

17:15:41  3   nowhere in the complaint, it's speculation that

17:15:44  4   such-and-such is happening, and that, you know, the

17:15:49  5   individual Defendants are doing this vague evil.  And

17:15:53  6   what we're asking for is not that these files be

17:15:58  7   permanently excised, but that we get some sort of

17:16:00  8   identification of the trade secret, and we get some sort

17:16:03  9   of communication from Mr. Naqvi's client about what

17:16:07  10  might be relevant in these massive files.  And even from

17:16:12  11  the period that Mr. Naqvi has truncated his claim to,

17:16:16  12  it's still hundreds of thousands of communications.  And

17:16:20  13  once they do that, we will then go and, you know,

17:16:24  14  continue to meet and confer to figure out if there is a

17:16:28  15  way to reduce the burden, okay?  But, right now it is

17:16:32  16  just all burden on the individual Defendants.  And what

17:16:35  17  we haven't heard from Mr. Naqvi is why these pre-2021

17:16:40  18  communications are relevant to their identification of

17:16:44  19  the trade secrets at issue.  What you see in the motion

17:16:47  20  papers is that the Plaintiff has a great idea of what

17:16:51  21  the trade secrets at issue are, but they won't identify

17:16:55  22  it.  Our position is, identify them, let's get this show

17:16:59  23  on the road.  And until you do so, there is no reason to

17:17:02  24  have this unilaterally and obscene burden placed on the

17:17:05  25  individual Defendants.

1          MOOG, INC VS. SKYRYSE, INC, ET AL

2          MR. NAQVI:  Your Honor, if I may briefly

3     reply?

4          MAGISTRATE JUDGE MCCARTHY:  Go ahead.

5          MR. NAQVI:  Again, for now probably the

6     third or fourth time, we're hearing a reargument of the

7     sequencing of discovery.  Mr. Truitt wants Moog to

8     identify it's trade secrets before they provide

9     discovery.  We've already dealt with that issue.  So,

10    again, let's be very clear about that.

11         And, your Honor, I want to direct your Honor

12    to the complaint where we do implicate the time period

13    of 2013 to present.  We specifically alleged in

14    paragraphs 13 and 48 that Ms. Kim and Mr. Pilkington

15    were hired in 2012 and 2013.  We allege in paragraph 53

16    that Pilkington and his team built ERTOS beginning in

17    2013.  We alleged paragraph 117, that ERTOS is one of

18    the programs from which large volume of files were

19    completely misappropriated.  And, your Honor, I think

20    it's very important to make very clear, that the

21    individual Defendants stipulated to a court order to

22    turn over these devices wholesale.  And that stipulation

23    did not contain any limitation.  And the inspection

24    protocol, which is somewhat of an extention of the March

25    11th order, did not contain any limitations.  If there

1             MOOG, INC VS. SKYRYSE, INC, ET AL

17:18:21   2   were concerns about what this process would entail, they

17:18:25   3   should have been dealt with long ago.

17:18:26   4             The problem we're having here id the

17:18:28   5   individual Defendants stipulated to a court order to

17:18:31   6   turn over devices wholesale.  And just as Moog is

17:18:34   7   getting access to these devices, they are trying to walk

17:18:37   8   back the provisions of the stipulated order saying they

17:19:39   9   should have access to some of the materials and not

17:19:42  10   others.  And, your Honor, the unfairness here, honestly,

17:19:46  11   if the parties were able to excise materials based on

17:19:49  12   relevance, Moog, and I don't want to speak on behalf of

17:19:52  13   the Skyryse, but the other parties in this case may have

17:19:55  14   elected to do so.  But, of course, that creates an

17:19:59  15   extraordinary amount of time and burden on the other

17:20:02  16   parties.  And way to cut through that is turn the

17:20:04  17   devices over wholesale.  They agreed to the stipulated

17:20:08  18   order.  The inspection protocol does not permit what

17:20:12  19   they are trying to do.  We're seeking compliance with

17:20:14  20   the Court's order, that is all we are trying to do.

17:20:17  21             MR. TRUITT:  Your Honor, if I may just very

17:20:19  22   briefly.  Mr. Naqvi keeps saying we're claiming it's

17:20:23  23   relevance.  We're not claiming relevance.  We're talking

17:20:27  24   burden and the immense undue burden that his client is

17:20:32  25   trying to inflict on our client.  And when you evaluate

MOOG, INC VS. SKYRYSE, INC, ET AL

burden, you have to look at relevance.  Mr. Naqvi's

motion is a rule 23 motion.  Everything we need to know

is within Rule 26.  And Rule 26, and every case law that

deals with this question says that the Plaintiff needs,

or the party seeking disclosure needs to identify the

relevance, and then it's weighed against the burden to

the party who is seeking to withhold production.  And so

what we have here is a question of whether this

information is relevant to the individual Defendants,

I'm sorry, the Plaintiff's identification of the trade

secrets.  And the fact that Mr. Kim -- or Mr. Pilkington

and Ms. Kim were employed in 2013, completely

irrelevant.  The fact that there was some work on the

ERTOS, that existed prior to 2021, if that really is a

trade secret at issue, completely irrelevant.  The

reason why I am saying that they need to identify the

trade secrets is because that is what we are seeking

discovery for right now.  We are seeking discovery for

the identification of trade secrets.  And what Mr. Naqvi

is asking for is just not it.

MS. ANDOH:  Your Honor, I just want to make

one very quick point.

MAGISTRATE JUDGE MCCARTHY:  Yeah.

MS. ANDOH:  There is no burden here.  The

|     |     |
| --- | --- |
|     | 1 |

1          MOOG, INC VS. SKYRYSE, INC, ET AL

17:21:54   2   devices have already been turned over to iDS.  They

17:21:58   3   instructed iDS to withhold portions of images to us.

17:22:02   4   This is not a case they have to go back and collect and

17:22:05   5   process.  It's all there, there is no additional burden.

17:22:08   6   I just want to make that very clear.

17:22:10   7          MR. TRUITT:  We have to review hundreds of

17:22:12   8   thousands --

17:22:12   9          MAGISTRATE JUDGE MCCARTHY:  For what?  You

17:22:14   10  have to review for personally private information

17:22:16   11         MR. TRUITT:  For personal information, for

17:22:19   12  personal private information, in the event there is

17:22:20   13  attorney/client communications, they are not going to be

17:22:23   14  related to this action, but could be related to personal

17:22:26   15  matters.  Again, like, this could have a seamless

17:22:29   16  receipt in here that has their credit card information.

17:22:33   17  The burden that is going to go into reviewing hundreds

17:22:36   18  of thousands of communications is immense.  It's going

17:22:39   19  to take the attorneys at our firm months to complete.

17:22:42   20  And, if Mr. Naqvi wants to narrow this down and give us

17:22:46   21  search terms or give us this, that or the other thing,

17:22:50   22  that is something to consider.  But the wholesale review

17:22:53   23  of hundreds of thousands of communications is an absurd

17:22:57   24  burden when Mr. Naqvi refuses to provide this

17:23:01   25  information to us.

1                    MOOG, INC VS. SKYRYSE, INC, ET AL

17:23:01   2          MAGISTRATE JUDGE MCCARTHY:  Okay, folks.

17:23:03   3   Look, again, we're not living in a perfect world.  We're

17:23:06   4   living in a practical world.  I do understand Moog's

17:23:11   5   position about what the protocol says, but I also want

17:23:17   6   to move this case forward, and both in terms of expense,

17:23:22   7   but possibly even more so in terms of time delay.  I

17:23:29   8   think you need to put a -- you need to -- you've offered

17:23:33   9   to cut it off at 2013, I think you need to add a couple

17:23:37   10  more years onto that and go back to, I don't know, 2016,

17:23:42   11  something of that sort, cut it in half, and then work

17:23:46   12  with that.  But --

17:23:48   13          MR. NAQVI:  2016 is okay with us, your

17:23:53   14  Honor.

17:23:53   15          MR. TRUITT:  We haven't looked at the entire

17:23:55   16  amount of communications that are available in 2016, so

17:23:58   17  I don't have the information there.  But I still would

17:24:00   18  like to meet and confer with Mr. Naqvi about some sort

17:24:03   19  of search parameters, search terms, if they want us to

17:24:07   20  look at --

17:24:08   21          MAGISTRATE JUDGE MCCARTHY:  We'll talk about

17:24:09   22  that.  If search terms can help, good, but I'm going to

17:24:13   23  say 2016.  We're going to reconvene on these three

17:24:18   24  issues in a couple of weeks anyway, so talk to each

17:24:21   25  other with my mind-set as the back drop.  I'm telling

1          MOOG, INC VS. SKYRYSE, INC, ET AL

17:24:24   2   you kind of where I'm leaning right now, and I haven't

17:24:28   3   definitively decided anything.  But we'll leave it at

17:24:33   4   that, because we're now an hour and a half into things

17:24:36   5   and I want to turn to the other motion.  Okay.

17:24:42   6          And then when we're all said and done here,

17:24:45   7   I'll give you a date and time in a couple of weeks to

17:24:48   8   come back and talk about things, okay?  Is that fair

17:24:52   9   enough?

17:24:52   10          MR. NAQVI:  Yes, your Honor, thank you.

17:24:54   11          MAGISTRATE JUDGE MCCARTHY:  Everybody good?

17:24:55   12   All right.

17:24:55   13          Then let's turn to motion 213.  And who --

17:25:03   14   and, you know, I have reviewed the motion papers, folks,

17:25:07   15   so, you can jump in as you see fit.

17:25:16   16          MS. YIP:  Moog is happy to go first, your

17:25:18   17   Honor, if you don't have a preference.

17:25:20   18          MAGISTRATE JUDGE MCCARTHY:  It's your

17:25:20   19   motion.

17:25:22   20          MS. YIP:  Well, yeah, so, Skyryse filed this

17:25:25   21   additional motion to enter their source code protocol,

17:25:29   22   but it is really just an extension of the issues we

17:25:32   23   previously discussed and an extension of Moog's motion

17:26:56   24   to compel their production of source code.  So, I'm

17:26:59   25   happy to go first and address the issue.

MOOG, INC VS. SKYRYSE, INC, ET AL

17:27:01  MAGISTRATE JUDGE MCCARTHY:  Okay.

17:27:02  MS. YIP:  I think that it's important here
17:27:04  to just step back for a moment and look at this issue in
17:27:09  the big picture.  There is just no reason whatsoever to
17:27:14  add a new inspection protocol to this case.  The
17:27:17  inspection protocol has been discussed at length during
17:27:21  this hearing already.  It's been doing a fine job.  The
17:27:24  Court's inspection protocol has been demonstrably
17:27:28  effective for over five months.  Both parties have been
17:27:31  inspecting source code pursuant to the Court's
17:27:33  inspection protocol, including Skyryse's source code.

17:27:37  MAGISTRATE JUDGE MCCARTHY:  And, Ms. Yip,
17:27:39  let me interject for a minute, I do apologize.  I see
17:27:42  that 213 is Skyryse's motion, so, but you're already
17:27:47  into it, so go ahead.

17:27:49  MS. YIP:  Okay.  So, both parties have been
17:27:53  inspecting source code pursuant to the Court's
17:29:03  inspection protocol, including Skyryse's source code,
17:29:05  and both parties have produced source code pursuant to
17:29:09  the Court's inspection protocol.  And the Court's
17:29:12  inspection protocol has already proven effective at
17:29:14  uncovering use of Moog's source code, including verbatim
17:29:21  copying.  Moreover, the Court's inspection protocol is
17:29:23  extremely secure.  That is one of the issues that

1        MOOG, INC VS. SKYRYSE, INC, ET AL

2   Skyryse has been raising throughout the briefing.  But,

3   when the Court entered the inspection protocol in the

4   first place, the Court expressly determined that it was

5   secure.  And there is no reason to question that now.

6   Our expert, Bruce Pixley, who has been conducting an

7   inspection pursuant to the Court's protocol for over

8   five months stated, under oath, in a declaration

9   submitted to this Court, "In my decades of experience in

10  working with Defendants, Plaintiffs, and as a

11  third-party neutral, this is the most comprehensive

12  protocol I have seen established for both parties to be

13  able to conduct a thorough review of all data in a

14  secure and controlled environment.  Mr. Pixley also

15  testified, there is no way for any reviewer to transmit

16  source code or any other sensitive data out of the

17  inspection environment.

18        Skyryse has never submitted any rebuttal

19  testimony to any of this.  To this day, Skyryse has not

20  articulated any reason why this particular subset of the

21  source code merits special treatment or justifies adding

22  a whole new layer of complexity and cost to this case.

23  The parties have spent over five months working within

24  the Court's inspection protocol, expending time and

25  resources to get everything set up and running smoothly

1          MOOG, INC VS. SKYRYSE, INC, ET AL

17:30:49   2   with a neutral vendor, getting everybody set up with

17:30:53   3   inspection laptops and so forth, and it's working.  To

17:30:56   4   add a second protocol at this point is just completely

17:31:00   5   gratuitous.  This court is empowered to tailor the

17:31:04   6   protocol to the needs of this case, which is truly an

17:31:10   7   extraordinary case, and the Court has already done so in

17:31:13   8   the form of the inspection protocol.

17:31:14   9          MAGISTRATE JUDGE MCCARTHY:  Let me just

17:31:15   10  interrupt for a second.  I know they'll raise this, they

17:31:18   11  have.  What about the argument that the protocol, which

17:31:21   12  I approved, dealt with or, by its terms, dealt with a

17:31:29   13  mixture of Moog and Skyryse source code, and what you're

17:31:38   14  talking about now is only Skyryse's source code?

17:31:44   15         MS. YIP:  So, to be clear, the inspection

17:31:46   16  protocol is not limited to a mix of information between

17:31:51   17  Moog and Skyryse.  And we can see that from the data

17:31:54   18  that has already been turned over.  The Moog data that

17:31:57   19  was turned over, we turned over our source code, it's

17:32:00   20  not a mix of from our own laptops, right.  It's our

17:32:04   21  stuff and we turned it over.  I think what your Honor

17:32:07   22  might be thinking about is Skyryse's argument that the

17:32:11   23  TRO prohibits this, which is just, which is incorrect.

17:32:16   24  The TRO does not prohibit Skyryse from producing its own

17:32:23   25  source code to iDS.  And, in fact, Skyryse already has,

1                    MOOG, INC VS. SKYRYSE, INC, ET AL

17:32:27   2    by its own admission.  The TRO only prohibits Skyryse

17:32:34   3    from producing information to iDS if the information is

17:33:02   4    entirely Moog's, which makes sense, because that should

17:33:05   5    just be returned to us directly.  It's all ours.  The

17:33:08   6    TRO says nothing about whether Skyryse can make its own

17:33:13   7    source code available for inspection through iDS.  If

17:33:16   8    you look at the inspection protocol, what it governs is

17:33:19   9    information that is turned over to iDS.  It doesn't say

17:33:23   10   that information turned over to iDS must be X, Y or Z.

17:33:26   11   It's what the parties turn over to iDS.  And here, it

17:33:29   12   makes perfect sense to have all of the source code

17:33:32   13   turned over to IDS, because iDS is secure for all of the

17:33:37   14   reasons I discussed earlier.  And the parties already

17:33:40   15   turned over source code to iDS.  What Skyryse is

17:33:44   16   withholding, of course, we don't know what the volume,

17:33:47   17   we haven't seen it, but my presumption is relative to

17:33:52   18   everything already turned over, Mr. Gross discussed at

17:33:54   19   length, the volume of data that has been already turned

17:33:57   20   over to iDS, what they are withholding now is likely a

17:34:01   21   relatively small subset of the information at issue

17:34:06   22   here.  There is no reason to have this small subset of

17:34:10   23   information cause the implementation of a brand new

17:34:15   24   inspection protocol that governs (inaudible.)  There is

17:34:21   25   already an inspection protocol in place, that is robust,

```
 1                    MOOG, INC VS. SKYRYSE, INC, ET AL
 2      and the parties have been using and makes sense to use
 3      here.
 4                    MAGISTRATE JUDGE MCCARTHY:  Before I hear
 5      from Skyryse, and apologies to Skyryse, it was your
 6      motion and I preempted you, sorry about that.
 7                    But, Ms. Yip, do I understand that Moog's,
 8      one of their primary thrusts in arguing for the -- that
 9      you need to have computerized side-by-side analysis; is
10      that one of your concerns.
11                    MS. YIP:  Yes, that is.
12                    MAGISTRATE JUDGE MCCARTHY:  They are saying
13      you can bring in your paper copies and you can have up
14      to 100 pages or something.  And your argument is that
15      that is just not practical in a case like this.
16                    MS. YIP:  Correct, right, right, right.  So
17      for Moog's expert to bring in paper copies of our own
18      source code, which is voluminous, into a separate
19      inspection, physical inspection room, doesn't make sense
20      and doesn't reflect the realities of this case.  So,
21      under such an arrangement, as you noted, your Honor, the
22      parties, with respect to source code, would not be on
23      the same computer.  And because it's not on the same
24      computer our expert cannot use the software tools that
25      he needs to search for and compare different files.
```

                        MOOG, INC VS. SKYRYSE, INC, ET AL

17:40:08   2   Instead, he would have to literally look at a page of

17:40:12   3   his, Moog's source code, and then manually sift through

17:40:15   4   hundreds or thousands of pages of Skyryse's code to find

17:40:20   5   the corresponding page.  And if he can't find the

17:40:23   6   corresponding page using this manual visual method after

17:40:27   7   maybe dozens or hundreds of hours, he would have to

17:40:30   8   manually and visually compare the pages to see what

17:40:33   9   similarities are, which makes no sense when over 40,000

17:40:39   10  files of Moog's source code were taken by Skyryse and

17:40:42   11  can potentially be found in Skyryse's code.  And in

17:40:45   12  addition to all of that, because the process would be

17:40:48   13  manual, it would not only be slow, but can cause a lot

17:40:53   14  of delay, not only slow and can cause a lot of delay

17:40:56   15  but, there could be error as well.  By contrast, under

17:41:01   16  the Court's protocol, both parties is on the same

17:41:05   17  computer hosted by the same third party, and our expert

17:41:09   18  can use software for the analysis and comparison.

17:41:12   19  Skyryse new protocol, it cannot.

17:41:18   20           MAGISTRATE JUDGE MCCARTHY:  Under the

17:41:18   21  current protocol, they can be observed what's going on

17:41:23   22  at any point to make sure no dastardly deeds are

17:41:29   23  occurring.

17:41:30   24           MS. YIP:  Absolutely, it's video recorded

17:41:32   25  and iDS has a person present at all times.

1          MOOG, INC VS. SKYRYSE, INC, ET AL

17:41:35   2          MAGISTRATE JUDGE MCCARTHY:  Who is going to

17:41:36   3   argue for Skyryse?

17:41:41   4          MR. GROSS:  You get to hear my voice again,

17:42:36   5   your Honor.  That is Gabe Gross for Skyryse.  I'll be

17:42:37   6   arguing for Skyryse, thank you.

17:42:38   7          MAGISTRATE JUDGE MCCARTHY:  Okay.

17:42:39   8          MR. GROSS:  I would like to address what Ms.

17:42:41   9   Yip covered, and I think most of that is actually in the

17:42:44   10   briefing in front of your Honor and touches on what we

17:42:46   11   discussed last time we had a hearing on this issue.

17:42:48   12   After I respond to that, I would like to be brief, I

17:42:51   13   would like to address a new issue that came up since the

17:42:55   14   initial briefing and supplemental briefing went in.

17:42:58   15          So, first of all, Ms. Yip represented that

17:43:03   16   Skyryse has already turned over source code under the

17:43:06   17   iDS protocol.  And part of her argument that I think was

17:43:11   18   intended to convey that things are going swimmingly

17:43:14   19   under the iDS protocol.  It's true that some source code

17:43:17   20   has been part of what Skyryse has provided under the iDS

17:43:21   21   protocol because the stipulation and order in this case

17:43:27   22   required Skyryse to turn over to iDS anything that could

17:43:31   23   arguably contain Moog information.  And we ran those

17:43:34   24   search term hits that I told you about and found stuff

17:43:38   25   that could be mixed.  So, there is some source code on

1                    MOOG, INC VS. SKYRYSE, INC, ET AL

17:43:40  2    the iDS protocol.  And, as Moog has made very clear,

17:43:44  3    they think that has been very fruitful for them, and

17:43:47  4    they've had significant and extensive access to it,

17:43:50  5    which they think they've been benefited by.  So they are

17:43:54  6    getting mileage out of the iDS protocol.  But I want to

17:43:58  7    be absolutely clear, while Ms. Yip said the TRO, the

17:44:01  8    stipulated restraining order in this case, doesn't

17:44:05  9    prohibit Skyryse from turning over its own code or

17:44:08  10   either side from turning over its own code to iDS, when

17:44:12  11   there is no reason to think it has mixed information of

17:44:15  12   both sides in it, it doesn't require it.  And so the

17:44:19  13   whole purpose of the iDS protocol is to deal with

17:44:24  14   information that might contain both sides' sensitive

17:45:22  15   data by entrusting it with a trusted third party.  You

17:45:23  16   see that, for example, in paragraph two of docket No.

17:45:27  17   25, which is the stipulation and order about producing

17:45:31  18   information data and preserving data and running

17:45:36  19   forensic searches.  What that stipulation says is, this

17:45:40  20   sort of non-public information has been integrated,

17:45:44  21   combined, inserted, modified, updated, upgraded or

17:45:49  22   otherwise used by a Defendant in a matter that

17:45:52  23   necessarily includes the property -- I'm sorry, your

17:45:57  24   Honor, I think I bungled the quote.  Let me paraphrase

17:46:00  25   instead of trying to quote it right.

1              MOOG, INC VS. SKYRYSE, INC, ET AL

17:46:02   2              MAGISTRATE JUDGE MCCARTHY:  I've got it on

17:46:03   3    my screen right now.  You're talking about paragraph

17:46:06   4    two, right?

17:46:09   5              MR. GROSS:  That's right.  And the idea

17:46:11   6    behind it, and this is repeated through the TRO, if

17:46:14   7    there is information that necessarily integrates one

17:47:37   8    party's information with the other, it can go to this

17:47:40   9    neutral vendor, which I don't think had been selected at

17:47:43   10   the time that was entered.  But the parties put that

17:49:02   11   vendor in place.  We have the neutral third party there

17:49:05   12   to deal with mixed information.  And then the protective

17:49:09   13   order addresses source code and says, the parties will

17:49:12   14   negotiate another stipulation.

17:49:14   15             So, Ms. Yip said there is no reason for the

17:49:17   16   court to order, a second source code order.  It isn't a

17:49:21   17   second source code order.  We need to negotiate a source

17:49:25   18   code order to govern the discovery of source code in

17:49:48   19   this case.  And the one that we have proposed and we've

17:49:51   20   included with our motion is one that is very similar to

17:49:54   21   those used by courts around the country.  You've seen in

17:49:58   22   the letter briefing, we cited, I understand Mr. Pixley

17:50:00   23   has his opinion on that, but I don't think his

17:50:42   24   experience, you know, holds a candle to that of this

17:50:46   25   Court, of the District Court in Delaware, of the Central

1          MOOG, INC VS. SKYRYSE, INC, ET AL

17:50:50   2    District of California, the district courts in Texas and

17:50:52   3    the district courts in North Carolina and Pennsylvania

17:50:56   4    that they do it differently than Mr. Pixley is proposing

17:50:59   5    to do it.  So, your Honor, this would not be gratuitous

17:51:02   6    or it would not be duplicative.  It would be the first

17:51:06   7    order of its kind in this case designed to deal with

17:51:08   8    what, frankly, is routine discovery of source code in

17:51:13   9    intellectual property cases.

17:51:14   10         Your Honor, Ms. Yip, also said that Skyryse

17:51:17   11   was withholding source code.  I just have to take issue

17:51:22   12   with that because it's wrong.  One, we have produced a

17:51:28   13   number of the source code that falls in the potentially

17:51:30   14   mixed category that she was talking about; but, two,

17:51:32   15   more than three months ago, Skyryse offered up its own

17:51:32   16   proprietary source code that has no reason to believe

17:51:32   17   contains any Moog source code, more than three months

17:53:18   18   ago.  You want to know how urgent this is to Plaintiff,

17:53:18   19   ask them if they actually took us up on the inspection.

17:53:18   20   They refused.  We said, look, just agree to our security

17:53:25   21   restrictions provisionally, you're not waiving your

17:53:28   22   right have this fight we're having right now.  But if

17:53:30   23   you want to look at them, go ahead and take a look at

17:53:32   24   them and just agree to the security provisions.  They

17:53:35   25   don't want to look at them on a stand alone secure

1          MOOG, INC VS. SKYRYSE, INC, ET AL

17:53:38   2   computer unless they get the ability to do side by side

17:53:41   3   comparisons on their own.  And this, I appreciate how

17:53:44   4   transparent Moog has been, they said in the briefs and

17:53:46   5   said to you today that we want the ability on a single

17:53:49   6   machine to take our own Moog code base and run other

17:53:53   7   comparisons to the Skyryse code base before we even

17:53:56   8   identify our trade secrets.  And, your Honor, you've

17:53:59   9   heard me express my concerns over a number of hearings,

17:54:04   10  the creation of hindsight creation of trade secrets, but

17:54:09   11  I think this is telling, and it would be a mistake to

17:54:11   12  permit this type of discovery so that the Plaintiff can

17:54:15   13  run these automated side-by-side comparisons, and have

17:54:18   14  the benefits of where the overlap is before they've even

17:54:22   15  gone through the burden or gone through the task of

17:54:24   16  identifying their own trade secrets.  It highly

17:54:29   17  incentivizes a Plaintiff to do what Judge (inadible) has

17:54:32   18  described, and this is the *Khatabi* case we cited, about

17:54:36   19  using discovery to redefine the trade secrets to

17:54:39   20  coincide with the Defendant's.

17:54:42   21          MAGISTRATE JUDGE MCCARTHY:  Mr. Gross, I

17:54:44   22  understand that concern, and I addressed it in my July

17:54:48   23  Decision and Order, and, believe me, I'm sensitive to

17:54:53   24  it.  But, on the other hand, if I understand your

17:54:57   25  proposed protocol correctly, you would be willing to

1          MOOG, INC VS. SKYRYSE, INC, ET AL

17:55:01   2    allow them to make that comparison, but they've got to

17:55:04   3    do it by bringing in paper copies and then looking at

17:55:08   4    your source code on the computer.  It would just be much

17:55:12   5    more difficult for them to do that.  But, you are

17:55:15   6    willing to allow them to make that comparison.  Isn't

17:55:18   7    that right or --

17:55:19   8          MR. GROSS:  Well, your Honor, we're willing

17:55:21   9    to give them a fair inspection of the source code.  If

17:55:24   10   that is the way they want to proceed with it, we won't

17:55:26   11   stop them from doing that.  But they can come and

17:55:29   12   inspect it, which they've refused to do.

17:55:32   13         MAGISTRATE JUDGE MCCARTHY:  But we're

17:55:34   14   talking about huge volumes.  I don't know if in

17:55:37   15   terabytes or what, we're talking about huge volumes of

17:55:40   16   information, correct?

17:55:41   17         MR. GROSS:  I agree, your Honor.  There

17:55:42   18   could be potentially many, many lines of code, and its

17:55:46   19   incumbent on the Plaintiff to know what in there is its

17:55:49   20   own trade secret, not to go and find comparisons and

17:55:52   21   look the comparisons.  I don't mean to harp on the

17:55:55   22   issue, your Honor because, I know your inclination on

17:55:57   23   this and I respect the ruling you've already made about

17:56:00   24   about the sequence of discovery, but in the context of

17:56:03   25   comparing source code, I think it's important to discuss

MOOG, INC VS. SKYRYSE, INC, ET AL

17:56:07  2  this a little further because source code is written in

17:56:11  3  computer languages that have certain conventions by

17:56:14  4  software engineers who do some things the same way.

17:56:18  5  There will be similarities.  There is no doubt there

17:56:21  6  will be similarities between any two code bases written

17:56:25  7  in similar languages.  So, those similarities are going

17:56:28  8  to be there.  And it's not appropriate for a Plaintiff

17:56:31  9  to identify its own trade secrets by looking for those

17:56:35  10  similarities.

17:56:36  11  MAGISTRATE JUDGE MCCARTHY:  But, all right.

17:56:38  12  I mean, I presume, you know, that Moog is as familiar

17:56:43  13  with those concerns as you are, and they are not going

17:56:49  14  to try and make it -- I wouldn't think it would be very

17:56:52  15  productive to make an argument that a comparison,

17:56:57  16  unlike, you know, a 40,000 foot level is their trade

17:57:02  17  secret.  It would have to be very significantly similar.

17:57:06  18  And so, you know, your concern, if I understand, I do

17:57:13  19  understand that, is I think you don't want them

17:57:18  20  creating, because I'm not requiring them to identify

17:57:20  21  their trade secrets right now, you don't want them

17:57:24  22  creating claims of miss appropriated trade secrets based

17:57:28  23  on what they see in your source code for the first time.

17:57:31  24  Is that right?

17:57:32  25  MR. GROSS:  That is a concern, your Honor.

```
 1              MOOG, INC VS. SKYRYSE, INC, ET AL
 2         MAGISTRATE JUDGE MCCARTHY:  And, you know, I
 3    understand, and I respect that concern.  But, on the
 4    other hand, just because of the volume of information
 5    that we're dealing with in or the need to get through
 6    it, it seems to me there ought to be some type of
 7    computerized comparison allowed, otherwise it's going to
 8    take forever.
 9         MR. GROSS:  Well, ours does facilitate.
10    Your Honor, this idea that it's a manual comparison,
11    it's a little bit of a misnomer.  The computers we've
12    provided on which the source code has been available is
13    a fully functioning computer, it's not connected to the
14    internet, and there are some restrictions on it.  But
15    they are allowed, and Mr. Banks may jump in here if I
16    get any of this wrong, they are allowed to meet and
17    confer with us about the software tools to put on that
18    computer that will facilitate an electronic review of
19    the source code.  It's not as though it is on paper and
20    they are literally are manually flipping through it.
21    They will have the ability to run electron searches, to
22    look for key words and put in significant amounts of
23    search terms and permutations of them to see if it's in
24    there.  And, but, your Honor, I think this source code
25    dispute spans two particular discovery issues.  One is,
```

MOOG, INC VS. SKYRYSE, INC, ET AL

17:58:54 2  what's necessary for them to discover yet to identify
17:58:57 3  their own trade secrets.  Under the stipulated TRO, they
17:59:02 4  already have in the iDS protocol any source code that
17:59:06 5  Skyryse concluded even arguably might contain
17:59:09 6  information that could have come from both parties.  So
17:59:12 7  do they need this additional source code protocol to
17:59:17 8  investigate Skyryse's source code that is not in that
17:59:20 9  category, but is just Skyryse's proprietary source code?
17:59:24 10  No.  They have what they need through the iDS protocol
17:59:28 11  already.  But this protocol that Skyryse now has moved
17:59:31 12  for and proposed will govern, and this is the second
17:59:33 13  part of the point, will govern discovery going forward.
17:59:36 14  And it protects both sides.  Both sides would benefit,
17:59:40 15  both sides would have the security of their own source
17:59:43 16  code being kept in the custody of their own lawyers and
17:59:47 17  made available to the other side to review.  Now, your
17:59:50 18  Honor, I wanted to close with the point I mentioned
17:59:52 19  earlier about a new -- a new item that has come up since
17:59:56 20  the briefing went in, and I think it just underscores
18:00:00 21  why the iDS protocol, which we know was drafted for the
18:00:05 22  point of dealing with mixed information, which isn't
18:00:06 23  appropriate for the other side's source code, where it's
18:00:10 24  one side or the other own propriety information.  In
18:00:13 25  recent days and weeks, as we're working on discovery

1          MOOG, INC VS. SKYRYSE, INC, ET AL

18:00:17   2   with our colleagues Shepphard Mullin, they made requests

18:00:21   3   for the production by Skyryse of certain information

18:00:24   4   that they requested through the iDS platform, and we

18:00:28   5   have responded to those as they have come in.  Recently

18:00:31   6   Moog has taken the position that Skyryse is not only

18:00:35   7   required to produce documents on request as images with

18:00:41   8   Bates number and appropriate confidentiality labels as

18:00:44   9   they requested before, but they now have taken the iDS

18:00:49   10  protocol that they say they want to apply to source

18:00:53   11  code, they are taking a position that the iDS protocol

18:00:58   12  requires Skyryse to produce, at their request, native

18:01:02   13  files that they reviewed through the iDS protocol.  If

18:01:07   14  that were to apply to source code, then it would force

18:01:11   15  Skyryse to take its most proprietary sensitive source

18:01:17   16  code, and on Moog's request, turn it over to in their

18:01:49   17  native format to Moog's counsel.  That would defeat the

18:01:53   18  purpose of any security restrictions in the protocols.

18:01:56   19  I don't mean to be implying any sort of nefarious intent

18:02:00   20  on Moog or its counsel, but it just demonstrates why

18:02:04   21  it's not the right vehicle.  The iDS protocol is not the

18:02:07   22  right vehicle for source code discovery.  And when, we

18:02:11   23  will get through our disputes of whether it requires

18:02:14   24  even native format productions, if we disagree with, but

18:08:03   25  that the position Moog has taken, and I think we need to

```
 1                    MOOG, INC VS. SKYRYSE, INC, ET AL
 2      keep that in mind.  And I think it's the wrong order to
 3      deal with discovery source code, which many courts have
 4      done in the way Skyryse has proposed with great success
 5      over the years.
 6                    MAGISTRATE JUDGE MCCARTHY:  Well --
 7                    MS. YIP:  May I respond?
 8                    MAGISTRATE JUDGE MCCARTHY:  Yeah, I'll give
 9      you a minute.  But the new issue, obviously, is
10      something I'm not prepared to deal with today, but we
11      will deal with it at our next session.
12                    Go ahead, Ms. Yip.
13                    And before you do, let me ask a question
14      that has come up based on what Mr. Gross has said.  Why,
15      I mean, if you already have under the existing protocol,
16      the ability to get access to anything that contains both
17      Moog and Skyryse source code, so that would seem to me
18      to be the best evidence of potential misappropriation,
19      why do you need access to their source code beyond that?
20                    MS. YIP:  The reason is because we just
21      cannot take Skyryse's word for it.  Basically, Skyryse
22      is taking the position that we should trust them to have
23      turned over everything that contains our data that is
24      incorporated, that has incorporated our data, that was
25      created using our data, and we have very, very strong
```

88

1                    MOOG, INC VS. SKYRYSE, INC, ET AL

18:09:59   2   reason to believe that what they have turned over is

18:10:02   3   incomplete based on what we've seen in our own data

18:10:06   4   based on what we've seen in the inspection environment.

18:10:09   5   Frankly, it's very, very hard for us to trust what

18:10:12   6   Skyryse is saying about what they have turned over.  And

18:10:16   7   I think it's an understandable position for Moog to

18:10:18   8   take, given the events and the misconduct and the theft

18:10:21   9   that has brought us all here today.  For Skyryse to say,

18:10:25  10   you don't need to look at our source code or whatever

18:10:28  11   the set of source code is that they've withheld because

18:10:31  12   it doesn't contain your data, we shouldn't have to rely

18:10:34  13   on that.  We should be able to conduct our own

18:10:37  14   inspection to make that call for ourselves rather than

18:10:41  15   rely on a party that has indisputably taken data from

18:10:48  16   us, rely on them to be able to make an accurate

18:10:51  17   representation to us.  We should be entitled to make

18:10:54  18   that call for ourselves and that is what the discovery

18:10:56  19   process is all about.

18:10:58  20                    MR. GROSS:  Your Honor, I'll close with the

18:11:00  21   fact that we offered it three months ago.  We're not

18:11:04  22   hiding something.  It is not that they don't trust us

18:11:07  23   and they don't get the discovery.  We've made this

18:11:11  24   available for three months, they chose not to look at

18:11:14  25   it.

MOOG, INC VS. SKYRYSE, INC, ET AL

18:11:14   MS. YIP:  May I address that?

18:11:16   MR. GROSS:  Yes.

18:11:17   MS. YIP:  The reason it doesn't make sense
18:11:19   to travel to their offices and into an inspection room
18:11:22   and do the inspection under their regime is we would
18:11:26   have a hand tied behind our back.  We would have a piece
18:11:30   of paper or thousands of pieces of paper on one hand,
18:11:33   and, on the other hand, a stand-alone computer, yes, it
18:11:37   may have tools, but the tools are of very limited value
18:11:40   if we can't run them against two sets of source code at
18:11:44   once.  Maybe a system like that might be okay if 10
18:11:48   source code files were taken, five files were taken from
18:11:51   Moog, but here we have over 40,000 source code files
18:11:56   that were taken, and, approximately, 1.4 million files,
18:11:59   as, you know, your Honor, and maybe more, we don't know.
18:12:02   That is what we know now.  In a case like this, it
18:12:05   doesn't make sense for us to bring say 40,000 files,
18:12:10   however many pages, that corresponds to into a physical
18:12:13   inspection room and then be limited to be doing this
18:12:17   visual comparison.  There is no tool that can enable you
18:12:20   to run a comparison between two sets of source code when
18:12:23   one set of source code is not even on the computer or
18:12:26   it's somewhere else, whether in a printed copy, printed
18:12:30   form or something else.  And these cases that Mr. Gross

1                     MOOG, INC VS. SKYRYSE, INC, ET AL

18:12:33    2    has been talking about that he says support his point of

18:12:37    3    view, they really don't advance the discussion here.

18:12:39    4    Those cases are completely different from this case.

18:12:42    5    Those cases did not involve a situation where an

18:12:45    6    inspection protocol was already in place for over five

18:12:48    7    months that expressly governs source code.  The Court's

18:12:53    8    inspection protocol specifically says it governs source

18:12:56    9    code.  And when Mr. Gross says the inspection protocol

18:12:59   10    was drafted to address only mixed code, I know that is

18:13:04   11    not true because I drafted it.  I was the part of the

18:13:08   12    group of people who drafted it.  And so, in conference

18:13:12   13    with the other -- with Skyryse's former counsel.  So,

18:13:16   14    for him to say it was drafted with this intent, is just

18:13:20   15    false.  And, in fact, Mr. Gross wasn't involved in the

18:13:22   16    drafting of that inspection protocol.  He was

18:13:25   17    substituted in as counsel afterwards.  And so, this

18:13:29   18    case, this is not a case like those cases that he has

18:13:32   19    been referencing.  Those cases did not involve a

18:13:34   20    situation where the parties have already reviewed and

18:13:38   21    produced significant amounts of source code under such a

18:13:40   22    preexisting inspection protocol.  And none of the cases

18:13:43   23    were the parties already paying for the services of a

18:13:46   24    third-party neutral vendor to host materials like source

18:14:26   25    code.  Our neutral vendor iDS has been doing a fine job.

1                  MOOG, INC VS. SKYRYSE, INC, ET AL

18:14:30    2    And there has not been a single security breach in the

18:14:34    3    last five months.  And, again, perhaps most importantly,

18:14:37    4    none of those cases involve the scale of the theft that

18:14:39    5    we've seen here.  None of them involve theft of

18:14:42    6    approximately 1.4 million files and over 40,000 source

18:14:47    7    code files.  This case needs a tailored approach, and we

18:14:50    8    already have one in the inspection protocol the Court

18:14:52    9    already entered in May.  There is no need to reinvent

18:14:55   10    the wheel or to add a fifth wheel.  The Court's

18:14:59   11    inspection protocol is appropriate for inspecting all

18:15:02   12    source code in this case.

18:15:03   13                  MAGISTRATE JUDGE MCCARTHY:  All right.

18:15:04   14    Counsel.  This has been helpful to me.  We've been at

18:15:08   15    this two hours now.  And I'm going to have to draw to a

18:15:13   16    close for today's purpose.  But I want you to continue,

18:15:16   17    as you are, discussing the other issues.  I want you to

18:15:21   18    continue discussions on this issue, too, bearing in mind

18:15:27   19    that, as I sit here today, my primary concerns are,

18:15:32   20    first of all, on Moog's behalf or from Moog's

18:15:37   21    standpoint, it does seem to me that, given the volume of

18:15:41   22    files or whatever and source code here, it's -- there

18:15:46   23    has to be some type of provision for side by side

18:15:51   24    comparison on a computer or comparison by computer

18:15:57   25    rather than comparing hard copy or from one computer to

the other where they can't both be looking at the same
universe.  I don't know a whole lot about computers, but
it does seem to me it's just not practical to do that
type of a comparison unless you can do it by computer.
So, that leans towards Moog's position.  Leaning though
towards Skyryse's position, I am concerned with the
possibility of -- I won't say I'm concerned, I recognize
their concerns about the security of their information
and preventing the possibility of just generating claims
of trade secret misappropriation based on what Moog sees
in the computerized comparison.  I do think, though,
that there are provisions which can protect against
that, and certainly the Court would not be pleasantly
disposed to any type of or creation of claims that don't
have a basis in fact.  And I think you're all good
attorneys, you're all honest attorneys, and I'm sure you
would do your best not to allow that to occur.  I'm not
deciding this issue today.  I'm just giving you what my
current concerns are.  And I want you to continue
talking and then come back to me.

What do you want to do, folks, two weeks,
three weeks, you tell me.

MS. ANDOH:  Your Honor, I would suggest, so,
a couple of housekeeping issues that I was planning on

1                 MOOG, INC VS. SKYRYSE, INC, ET AL

18:18:10    2    raising anyway at the close of this that might impact

18:18:13    3    the timing of this.

18:18:14    4                 MAGISTRATE JUDGE MCCARTHY:  Okay.

18:18:15    5                 MS. ANDOH:  There are a couple of other

18:18:17    6    issues that have come up that -- that we think are

18:18:21    7    actually going to require your intervention that are, to

18:18:24    8    some degree, related.  For example, one of them, Mr.

18:18:26    9    Gross mentioned, that what is the issue of the format of

18:18:30   10    the production because that is pretty mission critical

18:18:33   11    for us at this point.  There also has been a series of

18:18:38   12    concerns that have been raised with interpretation of

18:20:38   13    your Honor's prior orders with respect to the third

18:20:40   14    party discovery relevant to our trade secret I.D.

18:20:45   15                 MAGISTRATE JUDGE MCCARTHY:  Relevant to

18:20:46   16    what?

18:20:47   17                 MS. ANDOH:  Our trade secret identification

18:20:49   18    process.

18:20:49   19                 MAGISTRATE JUDGE MCCARTHY:  Okay.

18:20:50   20                 MS. ANDOH:  So, I think those two issues

18:20:52   21    we're going to have to move on.  And so what I would

18:20:54   22    suggest is that you do the next hearing -- your Honor,

18:21:00   23    the reason I'm hedging a little bit here, I'm actually

18:21:03   24    on jury trial the week of November 14th, but I also

18:21:06   25    don't want to be let this go away on this.  I would

1                    MOOG, INC VS. SKYRYSE, INC, ET AL

18:21:12   2    suggest, I would suggest probably the best move here,

18:21:17   3    your Honor, would be to have the hearing in three weeks.

18:21:20   4    I'm going to hope that if you do it on the Friday, the

18:21:22   5    18th, I'll be done with my trial by then.  And if not,

18:21:25   6    I'll support my colleagues in moving forward without me.

18:21:30   7    But the reason why I think there needs to be three weeks

18:21:33   8    is because I think there needs to be time for us to file

18:21:36   9    additional motions and have them fully consider

18:21:41   10   submitted for consideration.  And I think with respect

18:21:42   11   to the materials that your Honor has suggested that we

18:21:51   12   need to meet and confer with opposing counsel, we

18:21:54   13   probably should be in a position to do a joint

18:21:58   14   stipulation, not joint submission, logistically that is

18:22:05   15   really tough, but simultaneous submission to your Honor,

18:22:09   16   maybe like 72 hours ahead of the next hearing that

18:22:12   17   basically briefs your Honor on progress and identifies

18:22:15   18   issues that have been resolved, and also summarizes he

18:22:19   19   remaining outstanding issues that the parties believe

18:22:22   20   the Court needs to decide.  I think one thing that is

18:22:25   21   happening, as time goes by, these issues -- these issues

18:22:29   22   have a tendency to become almost (inaudible) issues,

18:22:34   23   your Honor.  And so I think it's important that when we

18:22:36   24   actually get to the Court, that your Honor has something

18:22:39   25   in writing from each of the party's understanding what

                          MOOG, INC VS. SKYRYSE, INC, ET AL

18:22:42   2   they understand the issues to be what the status of the

18:22:44   3   issue to be.  And that way your Honor has a very clear

18:22:48   4   road map in which to make any decisions going forward.

18:22:50   5            MR. GROSS:  Your Honor, if I could respond

18:22:52   6   to that, please.

18:22:52   7            MAGISTRATE JUDGE MCCARTHY:  Yeah.

18:22:53   8            MR. GROSS:  We have operated under your

18:22:57   9   instruction that all discovery, except for what Moog

18:23:01   10  says it needs to identify its trade secrets, is

18:23:04   11  sequenced for after that gets resolved.  And I'm hearing

18:23:07   12  now that they want to bring in more motions.  We have a

18:23:10   13  motion to compel that was filed June 30th.  We have been

18:23:15   14  holding off third-party discovery.  We need to test

18:23:15   15  what's going on with Moog's alleged efforts to keep its

18:23:21   16  trade secret secret, and all of that has been on hold.

18:23:23   17  So I'm concerned about this asymmetry, and if we're

18:23:27   18  going to bring more motions.  And if that is the case

18:23:29   19  and there is going to be open season on discovery, then

18:23:31   20  I am sure we're going to get right to work and we'll

18:23:33   21  have motions.  But I would appreciate the Court's

18:23:35   22  guidance on exactly what the next hearing is for.  If it

18:23:38   23  is to follow up on issues here and is going to proceed

18:23:42   24  in order after that, no problem.  If you tell us that

18:23:45   25  discovery can proceed full bore, no problem but we need

1            MOOG, INC VS. SKYRYSE, INC, ET AL

18:23:51  2  some parity here.

18:23:51  3          MS. ANDOH:  Your Honor, the issues that we

18:23:52  4  plan on bringing are issues that need to be resolved for

18:23:55  5  the trade secret identification.  And what you're

18:23:57  6  hearing right now is exactly what hear on the meet and

18:23:59  7  confers when we show up and say, we need this

18:24:03  8  information for our trade secret identification, and the

18:24:07  9  Defendants say, no, you don't.  And this material is

18:24:08  10  stayed and you don't get it right now.  And then we get

18:24:11  11  gridlocked.  So, from our perspective, we are fully

18:24:16  12  aware of the fact that the only motions you need to hear

18:24:20  13  right now are ones that relate to our ability to do our

18:24:20  14  trade secret identification.

18:24:21  15          These additional issues that have arisen, in

18:24:24  16  our view, which I believe the Court is going to share

18:24:29  17  once it is fully submitted, is that they are necessary

18:24:30  18  for us to engage in our trade secret I.D.  Very clearly

18:24:31  19  from the shaking of the heads of the Skyryse attorneys,

18:24:32  20  they disagree with us and they'll make that position on

18:24:35  21  paper, but we need to get guidance from your Honor in

18:24:38  22  order to proceed.

18:24:39  23          MAGISTRATE JUDGE MCCARTHY:  Okay.  If it

18:24:42  24  will help the parties, I will reiterate my understanding

18:24:46  25  of how we're going.  And that is, we're not -- I'm

MOOG, INC VS. SKYRYSE, INC, ET AL

tabling everything except the discovery that is
necessary for Moog to identify its trade secrets with
the level of specificity that I talked about in my July
Decision and Order.  Other issues such as discovery into
whether or not something identified as a trade secret
that has been misappropriated was in fact a trade
secret, such as what measures did you take, did Moog
take to preserve it, preserve confidentiality, et
cetera, et cetera, those are for down the road.  So,
that is what I envision happening in terms of the
sequencing here.

Now, if Moog truly needs third-party
discovery in order to identify the trade secrets, that
which of its trade secrets have been misappropriated,
then conceptually that wouldn't bother me.  I haven't
seen the details of anything along those lines.  But, I
did not mean to cabin your ability to do discovery on
that issue only to discovery from each other.  But,
again, it's only discovery necessary to enable Moog to
identify the trade secrets that it claims to have been
misappropriated.  Because, again, folks, remember, we're
just dealing right now with discovery that is necessary
for the preliminary injunction hearing.  Other discovery
will take place at a later date, either in this court or

                    1                MOOG, INC VS. SKYRYSE, INC, ET AL

18:26:33    2    in California.

18:26:35    3                MR. GROSS:  Understood.  Your Honor, if,

18:26:37    4    just for clarity, please.

18:26:40    5                MAGISTRATE JUDGE MCCARTHY:  Yeah.

18:26:40    6                MR. GROSS:  You ordered the Plaintiff on

18:26:43    7    July 27th to file its motion to compel this discovery

18:26:46    8    allegedly necessary to enable itself to identify trade

18:26:50    9    secrets.  We didn't raise third party discovery issues

18:26:53   10    then.  We're asking if you are giving them leave to file

18:26:57   11    another motion to compel discovery.

18:26:59   12                MAGISTRATE JUDGE MCCARTHY:  They were moving

18:27:00   13    to compel discovery from you or from the individual

18:27:03   14    Defendants.

18:27:03   15                MR. GROSS:  That was their choice.

18:27:05   16                MAGISTRATE JUDGE MCCARTHY:  Pardon?

18:27:05   17                MR. GROSS:  That was their choice.

18:27:07   18                MAGISTRATE JUDGE MCCARTHY:  Yeah.  But I

18:27:08   19    mean, again, folks, you are telling me that things are

18:27:11   20    coming up, which I haven't seen any detail about.  So,

18:27:15   21    maybe yes, maybe no.  But, I guess what I want to happen

18:27:19   22    is when we get to the point of identifying trade secrets

18:27:22   23    at issue, I don't want Moog saying, well, no, we need

18:27:28   24    more discovery to tell you more trade secrets.  We have

18:27:31   25    to have kind of a drop dead date.  And that is what

1          MOOG, INC VS. SKYRYSE, INC, ET AL

18:27:34  2    we're going to deal with for purposes of the preliminary

18:27:37  3    injunction motion.  Down the road, if discovery leads in

18:27:40  4    other directions for the balance of remainder of the

18:27:43  5    case, then so be it.  But, so that is how I see things

18:27:50  6    now.  Again, you're throwing a lot at me that I have not

18:27:54  7    heard about before, and I'll deal with it at the

18:27:56  8    appropriate time.  And, in terms of what the time frame

18:28:01  9    will be, I'm fine with three weeks from now.  I'm not so

18:28:05  10   fine with only getting your letters two days in advance,

18:28:11  11   because that doesn't really give me enough time to, you

18:28:17  12   know, meaningfully react to things.  I'm a slow study.

18:28:22  13        So, I would suggest, if you want to put it

18:28:24  14   more than three weeks, but I want your letters, I would

18:28:27  15   think, at least four days before the hearing.

18:28:36  16        MS. ANDOH:  That is fine, your Honor.  And

18:28:39  17   some -- I mean, the other thing we could consider doing,

18:28:42  18   your Honor, because there is a lot going on here, we

18:28:45  19   could decide to schedule two separate hearings, although

18:28:48  20   I know your Honor was sort of probably secretly happy

18:28:51  21   not to see us for the last couple of months.

18:28:53  22        MAGISTRATE JUDGE MCCARTHY:  No, no,

18:28:54  23   seriously I missed you people.  I was so happy to see

18:28:57  24   you all again.  And I'm very disappointed that I don't

18:29:00  25   usually have my Hollywood Squares.  Where is everybody

| | | |
|---|---|---|
| | 1 | MOOG, INC VS. SKYRYSE, INC, ET AL |
| 18:29:04 | 2 | else?  Tell them I'm disappointed they are not here. |
| 18:29:07 | 3 | MS. ANDOH:  Your Honor, one thing we could |
| 18:29:08 | 4 | do, we could do a hearing on these issues on November |
| 18:29:11 | 5 | 10th, and then we could set a second hearing to deal |
| 18:29:15 | 6 | with the new motion practice.  Essentially, your Honor, |
| 18:29:18 | 7 | because it seems to me it took two hours to get through |
| 18:29:21 | 8 | this round, it might be a lot to ask that one hearing |
| 18:29:24 | 9 | could cover everything.  Having said that, your Honor, |
| 18:29:28 | 10 | I'm very eager to try and put a bookend on this, |
| 18:29:32 | 11 | contrary to some insinuations that might have been made. |
| 18:29:37 | 12 | We are really trying to move this case forward |
| 18:29:39 | 13 | incredibly hard. |
| 18:29:41 | 14 | MAGISTRATE JUDGE MCCARTHY:  I know you are. |
| 18:29:42 | 15 | Believe me, folks, your disputes, I haven't thus far, at |
| 18:29:47 | 16 | least, seen somebody that impresses me as really just |
| 18:29:50 | 17 | trying to play fast and loose.  I think you're all |
| 18:29:53 | 18 | working in good faith.  And that is what makes it hard |
| 18:29:57 | 19 | because it's easy if I can see somebody that is just, |
| 18:30:01 | 20 | you know, I can say in a minute, no, your argument is |
| 18:30:04 | 21 | crazy.  Nobody has advanced crazy arguments to me thus |
| 18:30:09 | 22 | far.  So, I know you're all trying your best. |
| 18:30:13 | 23 | But, Rena, I think I do agree that there is |
| 18:30:17 | 24 | a limit to what I can process at any one time.  So maybe |
| 18:30:21 | 25 | our next meeting should be addressed to the progress |

1              MOOG, INC VS. SKYRYSE, INC, ET AL

18:30:27    2    that you've made in your meet and confer on what we

18:30:30    3    discussed today.  And then I'll decide what I have to

18:30:33    4    decide and then we can turn to the next issues.  Does

18:30:37    5    that make sense?

18:30:41    6              MR. GREEN:  Yes, your Honor.  Could I make a

18:30:43    7    suggestion, though, just because, you know, I don't feel

18:30:47    8    that the motion that was directed against us actually

18:30:51    9    had to do with us identifying trade secrets.  And since

18:31:14   10    we don't what other motions Moog is planning on filing,

18:31:19   11    could we table other motions being filed or at least

18:31:25   12    discuss that at the next conference as to whether you

18:31:29   13    believe that actually has to do with the identification

18:31:33   14    with trade secrets so that there is a lack of parity

18:31:39   15    that Mr. Gross mentioned, which is true.

18:31:42   16              MS. ANDOH:  Your Honor, we'll make the case

18:31:43   17    in our motion that it directly relates to the trade

18:31:46   18    secret I.D.  If your Honor disagrees, he'll deny or

18:32:47   19    suspend it until the trade secret I.D. is over.  But

18:32:51   20    what Mr. Green is essentially suggesting is that the

18:32:54   21    Court is going to act as an gatekeeper without the full

18:32:58   22    information on what the basis for our motions actually

18:33:40   23    are.  And that, your Honor, we would strongly oppose.

18:33:42   24              MAGISTRATE JUDGE MCCARTHY:  All right.

18:33:43   25    Okay.

1          MOOG, INC VS. SKYRYSE, INC, ET AL

18:33:43   2          MR. GROSS:  Your Honor, I'm sorry, I need

18:33:45   3     some clarification.  Who has leave to file motions right

18:33:48   4     now, because the Defendants have a bunch of discovery

18:33:51   5     that bears on the PI hearing that we would like to get

18:33:56   6     going.  And it sounds like the Plaintiff has the

18:33:59   7     opportunity to file motions right now.

18:34:01   8          MAGISTRATE JUDGE MCCARTHY:  No, I didn't say

18:34:02   9     -- maybe I'm confused.  I would like, by the time of our

18:34:07  10     -- I would like to draw the curtain on on the issues we

18:34:17  11     have been talking about today and get them decided, and

18:34:19  12     I commit to do them at our next proceeding, hopefully,

18:34:24  13     with your assistance, through your meet and confer,

18:34:27  14     having narrowed the issues even further.  Let's get

18:34:30  15     these taken care of and then let's take up what comes

18:34:33  16     next.  If you want to do that in two weeks rather than

18:34:37  17     three weeks, whatever, that is fine.  But, again, I'm

18:34:40  18     trying to proceed in some orderly fashion here.

18:34:44  19          But, so, let's just set a date to wrap up

18:34:47  20     these issues, let's hold off on other things until we

18:34:51  21     get these issues wrapped up.

18:34:53  22          MS. ANDOH:  Your Honor, if I may, I don't

18:34:55  23     think there is actually confusion here.  Your Honor was

18:34:58  24     crystal clear that the only issues that were supposed to

18:35:00  25     be moved forward in discovery right now are ones related

MOOG, INC VS. SKYRYSE, INC, ET AL

to our ability to identify our trade secrets that have
been misappropriated for purposes of the preliminary
injunction.  If we require further motion practice in
order to be able to obtain the information we need in
order to push that trade secret I.D. process forward,
our understanding is, based on your Honor's guidance as
well as the order, is we're permitted to make them.  I
would suggest, your Honor, that we go ahead and make the
motions, because we need to be in a briefing schedule,
and then we need to have a hearing on them.  And, so, if
we don't proceed with doing that, and then we have
another discussion at the next hearing in two weeks
about what the motions would be, it's going to be after
Christmas b y the time those motions are resolved.  As
an Officer the Court, I'm making a representation to
your Honor, we have a good faith belief that the
outstanding issue that we have that we're going to move
on, are directly related to our ability to complete the
task that your Honor ordered us to complete in the trade
secret identification order.  We will not make those
motions if that is not the case.  And to the extent that
the Defendants believe they also have motions that are
relevant to those proceeding, your Honor, if they are
motions for protective order, for example, then my

1    MOOG, INC VS. SKYRYSE, INC, ET AL

18:36:41 2 request that your Honor also tell them they can do that,

18:36:43 3 too.

18:36:44 4    The foundational issue is, does it relate to

18:36:47 5 our ability to identify our trade secrets that we are

18:36:47 6 going to be asserting misappropriation on in the

18:36:47 7 preliminary injunction, and we believe that the motion

18:37:28 8 practice that we need to engage in is directly related

18:37:29 9 to that.

18:37:30 10    MAGISTRATE JUDGE MCCARTHY:  Okay, folks.  If

18:37:31 11 you want to make those motions, you can make those

18:37:34 12 motions.  Limited to those issues.

18:37:37 13    We're going to meet in two weeks again,

18:37:40 14 right, November 10th.  Is that what you suggested?

18:37:42 15 First you suggested November 18th, you're on trial the

18:37:46 16 week of --

18:37:47 17    MS. ANDOH:  The 14th.  The 10th is fine,

18:37:50 18 your Honor.

18:37:50 19    MAGISTRATE JUDGE MCCARTHY:  All right.  So

18:37:51 20 let me go back to, so if you want to make the motions in

18:37:54 21 the interim, go ahead and make them, but I won't set a

18:37:58 22 briefing schedule on them until we meet on the 10th, and

18:38:01 23 I'll set a briefing schedule.  But what we're going to

18:38:04 24 talk about on the 10th is resolving the issues that

18:38:07 25 we've talked about today.  Okay?

1                    MOOG, INC VS. SKYRYSE, INC, ET AL

18:38:09    2            MS. ANDOH:  Understood, your Honor.  Yeah,

18:38:11    3    the 10th is fine.  Anything up until the 14th is fine.

18:38:17    4            MAGISTRATE JUDGE MCCARTHY:  Okay.  When do

18:38:18    5    you start your trial?

18:38:19    6            MS. ANDOH:  Monday the 14th.

18:38:22    7            MAGISTRATE JUDGE MCCARTHY:  Okay.  Oh, yeah,

18:38:23    8    the 11th is Veteran's Day, so, yeah, let's do the 10th,

18:38:30    9    I have something at 2 o'clock, our time.  So why don't

18:38:38   10    we -- why don't we say -- let's do 3 o'clock again.

18:38:42   11    Does that work for everybody?

18:38:44   12            MR. GROSS:  Skyryse can make that work, your

18:38:46   13    Honor.

18:38:46   14            MS. ANDOH:  Plaintiffs can make that work.

18:38:48   15            MR. GREEN:  We can make it work.  I'm not

18:38:50   16    sure if I will be here, but at least Mr. Truitt will be

18:38:54   17    able to be here.

18:38:55   18            MAGISTRATE JUDGE MCCARTHY:  Okay.  Thank

18:38:56   19    you.  And what, again, what I would like, so that I can

18:39:02   20    react to it and be able to hit the ground running on the

18:39:06   21    10th, if you can get me your letters, how about, and get

18:39:15   22    me your letters by noon on the 8th.

18:39:20   23            MS. ANDOH:  Your Honor, is election day a

18:39:22   24    court holiday?

18:39:25   25            MAGISTRATE JUDGE MCCARTHY:  Good question.

```
 1              MOOG, INC VS. SKYRYSE, INC, ET AL
 2              MS. ANDOH:  I think it is.
 3              MAGISTRATE JUDGE MCCARTHY:  Yeah, we'll be
 4  here anyway.  But I don't know if it is.  Is that a
 5  problem for you then, then I can say the 7th.  I don't
 6  want to wait until the 9th.  That is not realistic for
 7  me.  So, I can either say the 7th.  How about the 7th at
 8  midnight because that is the way a lot of people operate
 9  anyway.
10              MR. GREEN:  That is a fact, that works for
11  the individuals.
12              MAGISTRATE JUDGE MCCARTHY:  I don't want the
13  California people to take advantage of this midnight,
14  that is 9 o'clock.
15              MR. GROSS:  We understand local time, but,
16  your Honor, can I just have you repeat the deadline that
17  you just said that was for submitting what papers?
18              MAGISTRATE JUDGE MCCARTHY:  Just an update
19  on what you have, what progress you've made in the
20  discussions as a result of today's conference.  And
21  telling me what issues are off the table and what
22  issues.  And, hopefully, some, at least, and what issues
23  remain in dispute and need to be decided by me on the
24  10th.
25              MR. GROSS:  Okay.
```

```
 1              MOOG, INC VS. SKYRYSE, INC, ET AL
```

18:41:11   2         MAGISTRATE JUDGE MCCARTHY:  That is what I'm

18:41:12   3    going to do.  If, in the interim, if anybody wants to

18:41:16   4    make another motion related to Moog's ability to

18:41:23   5    identify the trade secrets which it claims to have been

18:41:27   6    misappropriated, you can make those motions, but again,

18:41:33   7    I mean, Mr. Gross, you do make a good point that Moog

18:41:37   8    already did make its motions, so there may be reasons

18:41:42   9    it's got to make additional motions, but I'll just want

18:41:45   10   to take a look at those, I don't know.  You can make

18:41:47   11   those motions whenever you want, but I'm not going to

18:41:51   12   set a briefing schedule on them until the 10th.  So,

18:41:54   13   okay?

18:41:54   14        MS. ANDOH:  Understood, your Honor.  What

18:41:56   15   we'll try to do is get them on file so your Honor has

18:41:58   16   sufficient opportunity to review them prior to the

18:42:02   17   conference.  And, your Honor --

18:42:03   18        MAGISTRATE JUDGE MCCARTHY:  Again, I will

18:42:05   19   want to know why this is something that wasn't

18:42:08   20   encompassed in your docket No. 210 that was supposed to

18:42:14   21   be your motion.

18:42:16   22        MS. ANDOH:  I appreciate the guidance.

18:42:18   23   We'll make sure to do that.

18:42:19   24        Two very minor housekeeping issues.

18:42:22   25        MAGISTRATE JUDGE MCCARTHY:  Yes.

1     MOOG, INC VS. SKYRYSE, INC, ET AL

18:42:22 2    MS. ANDOH:  The first is with respect to the

18:42:25 3 RRO, with respect to the individual Defendants, the

18:42:30 4 deadline passed for the RRO to be de-designated and

18:42:34 5 nobody objected to the de-designation, but I believe

18:42:42 6 it's still sealed on the docket.

18:42:51 7    MAGISTRATE JUDGE MCCARTHY:  I'm sorry, is

18:42:52 8 this the privilege.

18:42:53 9    MS. ANDOH:  Yes, the privileged order.  I

18:42:55 10 believe it's so your Honor set a deadline for any party

18:42:58 11 to object to it becoming public and the deadline

18:43:02 12 elapsed, but it hasn't been made public.  So, honesty in

18:43:06 13 advertising, it's a pure housekeeping issue, but I

18:43:09 14 believe it hasn't been unsealed yet on PACER.

18:43:12 15    MAGISTRATE JUDGE MCCARTHY:  Can somebody

18:43:13 16 point me to the docket number of that or I can find it.

18:43:20 17 Yeah, it's 253, I believe.  Yeah 253.  I'm pulling that

18:43:27 18 up right now.  Yeah, it says "filed under seal," so that

18:43:30 19 is dealing with the dismissal or transfer of venue and

18:43:34 20 the privilege issue, yeah.  Yeah, I think that the

18:43:44 21 deadline has expired, so what I would do is just, I

18:43:49 22 guess, re-docket it and take out "sealed," because if I

18:43:53 23 make it public as is, it looks strange because it says

18:44:00 24 "filed under seal," and somebody might say, then why am

18:44:04 25 I looking at it.  I would change page one to say

```
              1                    MOOG, INC VS. SKYRYSE, INC, ET AL
18:44:08      2      "Report, Recommendation and Order" and delete the "filed
18:44:10      3      under seal," and I'll re-docket it.  Does that make
18:44:13      4      sense?
18:44:14      5                    MS. ANDOH:  It does, your Honor.
18:44:16      6                    And the only other housekeeping issue is
18:44:18      7      with respect to the demonstratives that Mr. Gross was
18:44:21      8      showing earlier today.  With respect to having those
18:44:24      9      made part of the record, I don't think we'll object to
18:44:28     10      having that.  I think the only slides shown were five
18:44:30     11      through ten of his PowerPoint presentation, so we ask
18:44:35     12      that the only slides be made part of the record are five
18:44:39     13      through ten and the remaining slides not be submitted.
18:44:44     14                    MR. GROSS:  That is, by our count, that is
18:44:52     15      it.
18:44:53     16                    MAGISTRATE JUDGE MCCARTHY:  You agreed on
18:44:55     17      something.
18:44:55     18                    MS. ANDOH:  Miracles of miracles.
18:44:57     19                    MAGISTRATE JUDGE MCCARTHY:  Gabe, if you
18:44:58     20      want, at the time you file them, you can accompany them
18:45:02     21      with a little letter, and I was trying to pay attention,
18:45:05     22      but the significance as you see it.  And then Moog, you
18:45:08     23      can respond if you want, okay?  Just by the time --
18:45:13     24      hopefully, you're all going to be making some progress
18:45:16     25      with the guidance I've given you.
```

|  |  |  |
|---|---|---|
|  | 1 | MOOG, INC VS. SKYRYSE, INC, ET AL |
| 18:45:18 | 2 | MR. GROSS:  But, your Honor, would it be |
| 18:45:20 | 3 | helpful to you to have a little bit of a narrative |
| 18:45:23 | 4 | description of the description in the slides. |
| 18:45:25 | 5 | MAGISTRATE JUDGE MCCARTHY:  Yes. |
| 18:45:26 | 6 | MR. GROSS:  We'll be happy to put that |
| 18:45:27 | 7 | together. |
| 18:45:28 | 8 | MS. ANDOH:  Your Honor, if that is going to |
| 18:45:29 | 9 | happen, I ask that he submit that prior to our deadline |
| 18:45:32 | 10 | to submit and update to your Honor. |
| 18:45:34 | 11 | MAGISTRATE JUDGE MCCARTHY:  Yeah.  I mean, I |
| 18:45:35 | 12 | would like to see that, I'd like that by early next |
| 18:45:39 | 13 | week. |
| 18:45:39 | 14 | MR. GROSS:  It's coming soon. |
| 18:45:41 | 15 | MAGISTRATE JUDGE MCCARTHY:  All right. |
| 18:45:43 | 16 | Folks, I'm leaving tomorrow to go out to South Bend to |
| 18:45:46 | 17 | see my Alma Mater play football, and they disappointed |
| 18:45:51 | 18 | me this year, but I'll be thinking of you all when I'm |
| 18:45:56 | 19 | out there. |
| 18:46:06 | 20 | MR. BANKS:  I'll be bringing my daughter |
| 18:46:08 | 21 | back.  I might see you there. |
| 18:46:08 | 22 | MAGISTRATE JUDGE MCCARTHY:  I'll be looking |
| 18:46:09 | 23 | for you, Rob, we can talk about the case. |
| 18:46:12 | 24 | MR. GROSS:  Thank you, your Honor. |
| 18:46:13 | 25 | MS. ANDOH:  Thank you. |

1           MOOG, INC VS. SKYRYSE, INC, ET AL

2                      *    *    *

3               CERTIFICATE OF REPORTER

4

5      I certify that the foregoing is a correct transcript

6   of the record to the best of my ability of proceedings

7   transcribed from the audio in the above-entitled matter.

8

9   S/ Karen J. Clark,  RPR

10  Official Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25