**SheppardMullin**

Sheppard Mullin Richter & Hampton LLP
30 Rockefeller Plaza
New York, NY 10112-0015
212.653.8700 main
www.sheppardmullin.com

212.634.3092 direct
randoh@sheppardmullin.com
File Number: 02HL-350124

November 7, 2022

**SUBMITTED VIA E-MAIL**

Hon. Jeremiah J. McCarthy           mccarthy@nywd.uscourts.gov
Deputy Clerk: Eric Glynn
United States Magistrate Judge
Robert H. Jackson United States Courthouse
2 Niagara Square
Buffalo, NY 14202

Re:   *Moog Inc. v. Skyryse, Inc., et al.*
      U.S. District Court, Western District of New York – Case No. 1:22-cv-00187

Dear Honorable Judge McCarthy:

Pursuant to the Court's minute order dated October 21, 2022 (ECF 279), Moog hereby provides an update regarding the four outstanding issues addressed during the October 20th hearing:

1. Moog's requested production of certain Skyryse-issued laptops and USB drives;

2. Moog's requested production of Volume Shadow Copies ("VSC") from defendant Misook Kim's Skyryse-issued laptop (iDS Device No. E0001);

3. The Individual Defendants' unilateral excision of documents before 2021 from at least five devices (iDS Device Nos. E0003, E0004, E0014, E0021, E0022) on the basis of relevance; and

4. Skyryse's proposed additional source code protocol.

After substantial telephonic and written meet and confer correspondence, we are pleased to report that Issue No. 2 above has been resolved and Skyryse has agreed to produce the VSC requested by Moog. However, the Parties have not reached agreement on any of the three other outstanding issues, and as a result, we will be requesting judicial intervention during the November 10th hearing. Pursuant to the Court's directives during the October 20th hearing, Moog respectfully requests that the Court adopt Moog's revised and narrowed proposals as communicated to Defendants during the meet and confer process:

1. Skyryse produce to iDS images of three Skyryse-issued laptops belonging to Sathya Achar, Eric Chung, and Tri Dao, as well as file and connection logs provided for each of the remaining, unproduced laptops (belonging to Skyryse employees Lawrence Chow, Santiago Correa-Mejia, John Stafford, Cynthia Le, and Mario Brenes) and for USB Device 55D28D65;

**SheppardMullin**

Honorable Judge McCarthy
November 7, 2022
Page 2

2. Moog be granted access to all communications from the five Individual Defendant Devices (iDS Device Nos. E0003, E0004, E0014, E0021, E0022) from January 1, 2016 to present; and

3. The current Inspection Protocol (ECF 96-02) govern all source code production and review in this case.

Moog hereby provides a summary of the Parties' respective positions on each of the three outstanding issues.

### I. Moog's Requested Production of Skyryse-Issued Laptops, USB Device 55D28D65, and File and Connection Logs

#### A. Meet and Confer Summary

During the October 20th hearing, the Parties argued regarding Skyryse's refusal to produce: 1) images of nine laptops connected to certain USB devices used by defendants Pilkington and Kim; and 2) USB Device No. 55D28D65. These computers and USB device are referenced and discussed in detail in Skyryse's May 4 letter. (ECF 169-01). After receiving the Court's directives about exploring a possible middle ground, Moog proposed that Skyryse produce three laptops of Moog's choosing, along with file and connection logs for the remainder of the laptops and USB Device No. 55D28D65. (10/20/22 Hrg. Tr. at 45:12-24). The Court "encourage[d] the parties to explore that further." (*Id.*, 47:24-25).

In an October 25th e-mail, and in an effort to reach a middle ground resolution, Moog's counsel proposed that Skyryse produce to iDS images of the following three laptops:

1. Dell Latitude 9520, service tag FM1W5J3 (belonging to Sathya Achar)

2. Dell Latitude 9520, service tag C1DD6J3 (belonging to Eric Chung)

3. Dell Latitude 9520, service tag JGNV5J3 (belonging to Tri Dao).

(*See* Ex. A). Skyryse also proposed that file and connection logs be provided for each of the remaining, unproduced laptops (belonging to Skyryse employees Lawrence Chow, Santiago Correa-Mejia, John Stafford, Cynthia Le, and Mario Brenes), as well as USB Device 55D28D65. (*Id.*). The Parties then telephonically met and conferred the next day, on October 26th regarding Moog's proposals.

In a response letter dated October 31st, regarding the laptops belonging to Achar, Chung, and Dao, Skyryse claimed that Moog "identified no basis beyond its speculation to believe that potentially relevant information in their personal devices and accounts, if any exists, made its way onto the Skyryse-issued laptops Moog now demands in discovery." (*See* Ex. B, p. 2). Skyryse also claimed that Moog had established no relevance to obtain the file listings for the laptops belonging to Lawrence Chow, Santiago Correa-Mejia, John Stafford, Cynthia Le, and Mario Brenes. (*Id.*). Ultimately, Skyryse's counterproposal was that it only "produce the file listings for the laptops issued to Sathya Achar, Eric Chung, and Tri Dao and the 55D28D65 USB device." (*Id.*, p. 3). Skyryse then claimed that if Moog showed "that any of the files identified in those listings

**SheppardMullin**

Honorable Judge McCarthy
November 7, 2022
Page 3

reflect relevant evidence it needs to identify its own trade secrets, Skyryse will produce those files and their relevant metadata pursuant to the iDS protocol." (*Id*.).

Moog served a response meet and confer letter on November 2nd, which explained in detail why Skyryse's proposal is improper and unacceptable to Moog. (*See* Ex. C). Moog also provided substantial additional evidence demonstrating how Achar, Chung, Dao, and others possessed, transferred, and/or use Moog information using their Skyryse e-mail accounts and laptops, and why such laptops should be produced wholesale for inspection. (*Id*.). Moog hereby provides a summary of its November 2nd letter.

### B.  Substantial Evidence Shows Achar, Chung, and Dao Possessed, Transferred, and/or Used Moog Confidential Information Using Their Skyryse Laptops.

#### 1.  Sathya Achar

Moog has discovered at least three e-mails in Pilkington's Skyryse e-mail inbox with Achar as a recipient with Moog documents attached. (Ex. C, p. 2). The word "Moog" appears in the metadata of certain of these documents. (*Id*.). And, the file paths for these documents show that they appear in several different locations on Achar's computer and e-mail repositories. (*Id*.). Thus, there is no "speculation" that Achar is involved in the possession, transfer, and/or use of Moog data. Skyryse's own productions have confirmed this fact. And, given that Mr. Achar's Skyryse email address was copied on e-mails sending/receiving Moog data, these activities must have occurred on his Skyryse-issued laptop that Moog is requesting the production of.

Further, Moog's investigation has revealed that a USB device used by defendant Kim to carry and transmit Moog data before being completely wiped clean was connected to Achar's Skyryse-issued laptop on February 25, 2022. (*Id*., p. 3). This is confirmed by Skyryse's May 4 letter. This additional evidence provides further grounds why his laptop must be produced wholesale.

#### 2.  Eric Chung

Moog has discovered that there were 255 Excel files in both Kim and Pilkington's Skyryse data sets that were created by Eric Chung while he was at Moog. (*Id*., p. 3). Each of the 255 spreadsheets contains a Moog print header on the top of the spreadsheet. (*Id*.). In essence, Chung created these spreadsheets while at Moog, took them with him to Skyryse, and re-purposed it into various other spreadsheets for use at Skyryse. (*Id*.).  Moreover, Chung was placed on administrative leave on April 25 and was later terminated from Skyryse because Skyryse admits that Chung: "used what he understood to be Mr. Pilkington's personal USB hard drive and reviewed some Moog code for approximately five to ten minutes related to a demonstration of an open-source document-generation tool called Doxygen." (ECF 156, p. 18). Therefore, Skyryse has already admitted that Chung used and referred to Moog source code for the benefit of Skyryse.

Chung's Skyryse-issued laptop will show possession of these files, as well as other Moog documents that Chung possessed, transferred, and/or used while at Skyryse. Chung's computer must be produced wholesale.

**SheppardMullin**

Honorable Judge McCarthy
November 7, 2022
Page 4

### 3. Tri Dao

Moog has discovered that former Skyryse employee Alex Wang's[1] mailbox contained an e-mail with Moog data where Tri Dao was a recipient. (*Id*., p. 3). The attachment to that e-mail is an Excel file which has "Moog" in the metadata of the document. The metadata and file paths for the e-mail shows that Dao has copies of the e-mail in multiple Skyryse locations, ***including his Skyryse-issued laptop***. The file path shows the e-mail is located on Computer Host Serial Number JGNV5J3, which is identified in Skyryse's May 4 letter. Thus, there can be no dispute that Dao possesses Moog information on his Skyryse-issued laptop.

During the October 20th hearing, Skyryse's counsel made the following charged arguments and representations regarding the subject laptops:

- Moog's requests for production of laptops are a "fishing expedition." (10/20/22 Hrg. Tr. at 33:3-4);

- "Moog's speculation is not a basis for discovery." (*Id*., 39:23-24).

- "they are not telling you that the laptops d[o] have Moog data on it . . . that is speculation that they do. ***We have no reason to think that the laptops are laden with Moog data. If they have specific discovery that is based on fact, that would be different, but we don't***." (*Id*., 40:10-15, emphasis added).

- "There is no basis for discovery of a laptop that has nothing to do with Moog or this lawsuit . . . We have to limit it to things they made a factual showing of relevance on." (*Id*., 46:24-47:7).

All of the above representations have been proven false. Moog has now provided to Skyryse numerous examples of direct evidence showing Achar, Chung, and Dao possessed and/or used Moog data in connection with their Skyryse e-mail accounts and computers. A factual showing of relevance is more than satisfied.

Given this showing, mere production of file listings instead of the laptops themselves is unacceptable. Production of file listings instead of the laptops themselves would prevent Moog from doing the complete forensic investigation it is entitled to perform, especially given all the undisputed events of data theft and deletion that have occurred in this case. The deletion of evidence in this case were committed by former Skyryse employees (Kim and Wang, at minimum) who sent or received Moog files with the exact individuals subject to Moog's requested production. Only production of the laptops themselves will allow Moog's experts to fully investigate various pieces of forensic information—such as when certain documents were accessed, transferred, and/or deleted, and by whom. Laptops may also contain fragments of deleted information that cannot be ascertained from file listings.

---

[1] Wang is the former Skyryse employee who admittedly deleted relevant evidence after the filing of this lawsuit and was subsequently terminated by Skyryse. (ECF 156, pp. 11-15).

**SheppardMullin**

Honorable Judge McCarthy
November 7, 2022
Page 5

Moog respectfully requests that the Court order Skyryse to produce images of the laptops belonging to Achar, Chung, and Dao to iDS within 14 days.

### C. Laptops Belonging to Chow, Correa-Mejia, Stafford, Le, and Brenes

In its October 31st letter, Skyryse proposed that instead of producing file and connection logs for these five laptops, Moog simply review file logs for USB Device 55D28D65, which was connected to the five laptops. (Ex. B, p. 2). This proposal is improper for several reasons.

As a threshold matter, a file listing for USB Device 55D28D65 will only list the files currently on that device. To the extent Moog files previously existed on USB Device 55D28D65 and were transferred to any of the five laptops, but were subsequently deleted from the USB device, Moog would be prevented from discovering this information under Skyryse's proposal. This alone provides a basis for Moog to receive file and connection logs of the five laptops themselves, rather than just USB Device 55D28D65.

Regarding Brenes, Moog's investigation has discovered at least two instances where Kim e-mailed Brenes Moog spreadsheets that were created by Chung. (Ex. C, p. 4). Specifically, the word "Moog" is in the metadata for both spreadsheets. (*Id*.). Thus, Brenes ostensibly accessed, transferred, and/or used at least these Moog documents from his Skyryse-issued laptop. Further, Skyryse's May 4 letter shows that the USB device used by Kim to carry Moog data that she subsequently wiped (produced by Kim as iDS Device E0013) was connected to Brenes computer on February 18, 2022. This again links Brenes to Kim and the devices she used to misappropriate Moog data.

Skyryse has refused to produce any information related to these five laptops, including any file logs or connection logs. Skyryse claims that because it has represented that the device "is used by Skyryse's IT department to set up laptops," that Moog is not entitled to its production. (Letter, p. 2). But, notably, **Skyryse has never represented that these laptops do not contain any Moog data**. Nor can it, given the direct evidence cited above. Given the foregoing, Moog is entitled to conduct its own investigation by reviewing, at minimum, the file and connection logs associated with these laptops to determine how and when Moog data was possessed, accessed, transferred, and/or used.

Finally, Skyryse's proposal that Moog review file listings for just three laptops and USB Device 55D28D65 and then go back to Skyryse if it finds any relevant files will only inject further delay into these proceedings. This Court has stated that it "want[s] to really move toward the . . . identification of trade secrets at issue in this case." (10/20/22 Hrg. Tr. at 4:8-10). So does Moog. Skyryse's proposal will only cause months of further delay to Moog's identification of trade secrets because Skyryse will likely object to Moog's identification of files that it deems relevant and should be produced. This will lead to further motion practice. The most efficient way to cut through all of this is for Moog to get full access to the three requested computers and file and connection logs for the remaining devices at issue. Moog respectfully requests that the Court order Skyryse to produce complete file and connection logs for the Skyryse-issued computers belonging to Chow, Correa-Mejia, Stafford, Le, and Brenes, and USB Device 55D28D65.

**SheppardMullin**

Honorable Judge McCarthy
November 7, 2022
Page 6

### D. USB Device 55D28D65

Moog appreciates that Skyryse has agreed to produce the file listings for USB Device 55D28D65. But, it has not agreed to produce any connection logs, which are necessary for Moog to understand which other computers and devices the USB Device was connected to. Moog respectfully requests that the Court order that all file and connection logs for USB Device 55D28D65 be produced in lieu of production of the entire device itself.

## II. The Individual Defendants' Unilateral Excision of Communications Based on Relevance

The issue discussed at the October 20th hearing was whether the Individual Defendants are entitled unilaterally excise communications before 2021 from five devices (iDS Device Nos. E0003, E0004, E0014, E0021, E0022) on the basis of relevance. Moog proposed that only communications before 2013 be excised.

During the October 20th hearing, after hearing the Parties' respective arguments, the Court opined: "you've offered to cut it off at 2013, I think you need to add a couple more years onto that and go back to, I don't know, 2016, something of that sort, cut it in half, and then work with that." (10/20/22 Hrg. Tr. at 69:8-12). The Court further directed: "I'm going to say 2016." (*Id*., 69:22-23). Moog noted on the record that the Court's proposal was acceptable. (*Id*., 69:13-14).

In its October 25 meet and confer e-mail, consistent with the Court's directives, Moog proposed that it "be permitted access to all documents and communications from these devices from the time period of January 1, 2016 to present." The Parties then telephonically met and conferred the following day, October 26.

On November 4, Individual Defendants' counsel rejected Moog's approach, citing to the volume of responsive communications during the proposed time period of 2016 to present. (*See* Ex. D). In doing so, Individual Defendants curiously identified the number of communications from eleven different devices, as opposed to the five devices at issue (iDS Device Nos. E0003, E0004, E0014, E0021, E0022). (*Id*.). Individual Defendants argued yet again that Moog's must identify its trade secrets now in order to resolve this dispute, despite the Court's sequencing of discovery and repeated affirmations of the same. (*Id*.). Individual Defendants also claimed that they would be required to review each and every communication at issue before providing access to Moog. (*Id*.).

The Individual Defendants' positions are baseless for several reasons. They continue to re-argue this Court's sequencing of discovery and the timing of Moog's trade secret identification. They completely ignore the Court's directive during the October 20th hearing that 2016 to present is an appropriate time period, and did not offer any other sort of solution. Even if there were private communications on these devices (of which no showing has been made),[2] they are all designated

---

[2] Under the Inspection Protocol, all documents withheld for privacy must be specifically identified and logged. (ECF 96-02, § III.A.5). The Individual Defendants have provided no such information, nor can they. They are making a blanket assertion of privacy over a large volume of communications without actually identifying anything private. This was the same tactic the Individual Defendants employed when clawed back dozens of electronic devices and millions of

as "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" and therefore can only be disclosed to Moog's outside counsel and experts in this case, through the various procedures and protections under the Protective Order (ECF 89) and Inspection Protocol (ECF 96-02). Individual Defendants have not identified any issue with potentially private communications being disclosed to outside counsel and experts only. Indeed, Individual Defendants did not perform this file-by-file review for the many other devices they have granted Moog access to. Moog did not perform this file-by-file review for private information because no such effort is proper under the Inspection Protocol nor necessary. The notion that Individual Defendants' counsel must review each and every communication is a false pretense to block Moog from lawful discovery.

Consistent with the Court's prior directives, Moog respectfully requests that the Court permit Moog to access all communications from iDS Device Nos. E0003, E0004, E0014, E0021, E0022 from January 1, 2016 to present.

### III.     Skyryse's Proposed Additional Source Code Protocol

#### A.     Meet and Confer Summary

The issue discussed at the October 20th hearing was whether the Court should enter Skyryse's proposed additional source code protocol (ECF 213-02) to govern the production and review of certain categories of source code, in addition to the Inspection Protocol that has already been entered (ECF 96-02) and that has governed the production and review of various categories of source code to date.

The primary issue addressed at the hearing was whether Moog should be permitted to conduct an automated comparison between its code and Skyryse's code, which is not possible under Skyryse's proposed source code protocol. After hearing argument, the Court stated:

- "because of the volume of information that we're dealing with in or the need to get through it, it seems to me there ought to be some type of computerized comparison allowed, otherwise it's going to take forever." (10/20/22 Hrg. Tr. at 84:4-8);

- "there has to be some type of provision for side by side comparison on a computer or comparison by computer rather than comparing hard copy or from one computer to the other where they can't both be looking at the same universe. I don't know a whole lot about computers, but it does seem to me it's just not practical to do that type of a comparison unless you can do it by computer." (*Id.*, 91:22-92:5).

Consistent with the Court's directives, on October 25th, Moog advised Skyryse that because its proposed source code protocol does not permit an automated source code comparison, Moog stands by its proposal that the existing Inspection Protocol govern the production and review of all source code in the case. (Ex. A). In response, Skyryse asked that Moog identify "what capabilities it contends to need in order to perform a source code comparison." (*Id.*). Moog then pointed to the previously-filed declaration of its source code expert,

---

files based on a hypothetical assertion of the Fifth Amendment privilege, which this Court found to be improper. This same conduct should not be countenanced here.

**SheppardMullin**

Honorable Judge McCarthy
November 7, 2022
Page 8

Kevin Crozier, which already identified the types of comparison software he would use and how he would use it. (ECF 238-1). Moog also explained that a discussion of comparison tools is not productive given that under Skyryse's proposed additional protocol—where the parties' respective source code would not be accessible on the same computer—no automated comparison is physically possible at all. (Ex. A).

The Parties met and conferred by videoconference on October 27th regarding the source code issues. During the call, Skyryse's counsel did not propose any solution to accommodate an automated source code comparison. Skyryse also raised certain concerns about source code files being produced in native format pursuant to the existing Inspection Protocol.[3]

On November 2, Skyryse proposed certain modifications to its proposed source code review protocol. (Ex. A). Specifically, Skyryse proposed that it would "(1) allow the installation of UltraCompare (or similar software) on the producing party's source code review computer and (2) permit a source code reviewer to connect an external storage device to the producing party's source code review computer on a read-only basis." (*Id*.). Skyryse also proposed that the "external storage device can contain any files that the reviewer wishes to compare with files on the source code computer, including source code of the reviewing party" but that the "directory and file listings . . . of the external storage device will be subject to inspection by the producing party at the time of review." (*Id*.).

On November 3, Moog replied to Skyryse's proposed modifications and explained why they are unacceptable and improper in this case. (Ex. A).

### B.  Skyryse's Proposed Modifications to its Proposed Source Code Review Protocol are Improper and Compromise the Security of Moog's Code

Skyryse's proposal that Moog bring its source code on an external hard drive to plug into Skyryse's computer was already addressed by Moog in its Opposition to Skyryse's Motion to Enter Source Code Protocol. (ECF 238, fn. 1). As described therein, this proposal was, and remains, unacceptable to Moog. While Skyryse claims to have security concerns, Moog has substantial security concerns of its own. It is Skyryse's former employees who stole approximately 1.4 million files from Moog.  It is Skyryse's current or former employees who deleted Moog files

---

[3] To address Skyryse concerns, on November 2, Moog circulated to Skyryse a proposed ESI Protocol which would govern the format of production of various types of data in the case. The Parties have not completed the meet and confer process regarding Moog's proposed ESI Protocol.

Regardless, any purported concerns that Skyryse has regarding the format of producing source code files are a red herring that should not further delay the Court's decision to deny Skyryse's request to enter an additional source code protocol. The source code review should commence as soon as practicable while the Parties continue to discuss the format for producing source code (which has no bearing on the actual review or comparison of source code). The two issues are not related (and indeed, Skyryse has produced no source code in native to date under the Court's Inspection Protocol, instead producing such files in image format only). Any further delay in allowing Moog to review Skyryse's source code will prejudice Moog's ability to complete its further trade secret identification obligations.

**SheppardMullin**

Honorable Judge McCarthy
November 7, 2022
Page 9

and thereby spoliated relevant evidence.  And it is Skyryse's current and former employees who have misappropriated Moog data—and indeed, Moog continues to discover evidence of further misappropriation through the iDS inspection environment.  If anyone should be concerned about the security of its source code, it should be Moog.  Given the history of Skyryse's theft and misappropriation in this case, it is improper to demand that Moog be the one that risks the security of its source code by plugging it into Skyryse's computer.

The security concerns that Moog has are significant and tangible. Moog has no insight as to what backup processes or software would be running in the background of Skyryse's computer which may be able to copy or retain information from Moog's code. Further, computer operating systems can track forensic information such as what Moog files and folders were accessed during Moog's inspection, and the computer would be able to retain partial or complete pieces of Moog data that are opened on the computer. This is exactly why a neutral like iDS was appointed—so that neither party needs to plug its source code into the other party's computer.

Further, Skyryse's demand that it be permitted to inspect the "directory and file listings" that Moog's expert would bring to the source code inspection is wholly improper. This essentially turns what is supposed to be an inspection of its own source code into an inspection of Moog's source code directories and file listings. iDS is already set up to securely and neutrally host any party's source code (and already has been), so all of the above security risks and additional burdens can be avoided.

Finally, Skyryse's latest proposals do not address other objections that Moog has to Skyryse's proposed source code protocol. For example, in its Opposition to Skyryse's Motion to Enter Source Code Protocol, Moog explained why Skyryse's proposed printing limits on consecutive pages (10) and total pages (100) are unnecessary and inappropriate given the volume of source code misappropriated in this case (at least 43,000 source code files). (ECF 238, pp. 7-9). Skyryse has not addressed Moog's objections on this issue.

For all the reasons set forth in Moog's prior briefing (ECF 176, pp. 7-13; ECF 195, pp. 4-8; ECF 211, ECF 238), and the additional reasons discussed above, Moog respectfully requests that the Court order that the existing Inspection Protocol (ECF 96-2) govern the production and review of all source code in this case, and that Skyryse make its source code available for Moog's review within 14 days.

Very truly yours,

Rena Andoh
for SHEPPARD MULLIN RICHTER & HAMPTON LLP


SMRH:4864-7244-6525.4

Cc:     All counsel of record