UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MOOG INC.,

                              Plaintiff,

        v.                                          Case No.: No. 22-cv-00187

SKYRYSE, INC., ROBERT ALIN
PILKINGTON, MISOOK KIM, and
DOES NOS. 1-50,

                              Defendants.

_____

# PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLARIFICATION OF THE COURT'S ORDERS REGARDING THIRD PARTY DISCOVERY

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ..........................................................................................................1

II.     FACTUAL BACKGROUND ......................................................................................3

     A.      Skyryse's Disclosures Regarding Possession of Non-Public Moog Data and Spoliation of Evidence ................................................................................3

     B.      Skyryse Claims it Does Not Have Possession, Custody or Control Over its Employees' Personal Devices Used for Work Purposes ........................................4

     C.      The Court States that Skyryse has Possession of Relevant Information on its Employees Devices .................................................................................6

     D.      Moog Serves an Initial Round of Subpoenas ..........................................................7

     E.      Gunderson, Lee, and Dao Serve Objections and Do Not Produce Documents ....................................................................................................7

     F.      The Court's Orders on Moog's Trade Secret Identification and Sequencing of Discovery ...............................................................................................8

     G.      Moog's Motion to Compel Discovery Necessary to Identify its Trade Secrets ...............................................................................................9

     H.      Moog's Second Round of Subpoenas to the Skyryse Personnel Referenced in the May 4 Letter............................................................................................10

     I.      Objections and Refusals to Produce Documents from the Skyryse Personnel Referenced in the May 4 Letter and Tim Baptist..................................11

     J.      Skyryse's Disclosure of Moog's Trade Secrets to Third Party Hummingbird Aero.................................................................................11

     K.      Moog's Substantial Meet and Confer Efforts .......................................................12

III.    LEGAL STANDARD.................................................................................................13

IV.     MOOG'S SUBPOENAS ARE NECESSARY AND RELEVANT TO ITS TRADE SECRET IDENTIFICATION OBLIGATIONS .................................................14

     A.      Moog's Subpoenas are Within the Court's Sequencing of Discovery .................14

     B.      The Subpoenas Seek Relevant Information.........................................................16

V.      CONCLUSION ...........................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Federal Cases**

*In re Air Crash Near Clarence Ctr., New York, on Feb. 12, 2009*,
    No. 09-CV-961S, 2011 WL 6370189 (W.D.N.Y. Dec. 20, 2011) .........................................13

*Breon v. Coca–Cola Bottling Co. of New England*,
    232 F.R.D. 49 (D.Conn. 2005).............................................................................................14

*Daval Steel Prods. v. M/V Fakredine*,
    951 F.2d 1357 (2d Cir.1991)...............................................................................................13

*LaForest v. Honeywell Int'l Inc.*,
    No. 03–CV–6248, 2004 WL 1498916 (W.D.N.Y. July 1, 2004) ...........................................14

**Rules**

Fed. R. Civ. P 26(b)(1)..............................................................................................................13

I.      **INTRODUCTION**

At the outset of this case, Skyryse took the position that it does not have possession, custody or control over the personal devices used by its employees, even if used for work purposes. This forced Moog (over no objection from Skyryse) to serve third party subpoenas to a number of current former Skyryse personnel who, based on Skyryse's own correspondence, document productions and filings, have been implicated in the possession, transfer, and/or use of Moog's confidential information. The subpoenas issued by Moog to these third parties generally seek documents related to the possession, use, or transfer of Moog's confidential information. Several months after these subpoenas were served and after the temporary stay on discovery has been lifted, ten of the subpoenaed individuals (Tim Baptist, Dan Gunderson, Alan Lee, Tri Dao, Sathya Achar, Mario Brenes, Lawrence Chow, Santiago Correa-Mejia, Cynthia Le and John Stafford (collectively, the "Subpoenaed Individuals")) served written objections where they refused to provide any substantive responses or produce any documents. The Subpoenaed Individuals claimed the requested discovery is premature and not proper under the Court's sequencing of discovery to focus on the discovery that Moog needs to completely identify its trade secrets. After weeks of meeting and conferring, Moog has not been able to fully resolve these issues with all of the Subpoenaed Individuals, and therefore is forced to burden the Court with this Motion to seek clarity that its third party subpoenas are proper, and relevant and necessary to its trade secret identification efforts, and therefore there is no stay with respect to these third parties' compliance with the subpoenas. While some of the Subpoenaed Individuals have recently indicated they will provide responses and/or produce some documents pursuant to

their objections, none of the Subpoenaed Individuals have withdrawn any of their threshold objections, and certain of them are still refusing to produce any documents.[1]

Moreover, Moog has found through discovery additional substantial misappropriation by way of Skyryse employees turning over Moog's non-public information to third party Hummingbird. As a result, Moog has also recently been forced to subpoena Hummingbird and two of its employees, and anticipates similar pushback from them absent guidance from the Court.

There is no dispute that the Court has sequenced discovery to prioritize Moog's complete and fulsome identification of trade secrets. After extensive motion practice, the Court has determined that before Moog must completely identify is trade secrets, it needs "to first examine the information which was admittedly taken by its former employees Kim and Pilkington prior to their departure, particularly in view of Skyryse's admission that some of that information may now have been deleted." (ECF 205, p. 3). Thus, any discovery comprising or directly related to the large volume of Moog data taken by Kim and Pilkington is relevant to Moog's trade secret identification and within the Court's sequencing of discovery.

Skyryse's May 4 letter served to Moog (the "May 4 Letter") describes how at least three USB devices apparently belonging to Kim and Pilkington, and which were likely used to

---

[1] On November 4, 2022, Skyryse indicated that Dan Gunderson, Alan Lee, and Tri Dao will be "producing documents consistent with their objections in response to the subpoenas served on them." (Declaration of Kazim A. Naqvi, Ex. N).  On November 7, 2022, Skyryse indicated that "Lawrence Chow, Mario Brenes, Santiago Correa-Mejia, Cynthia Le, and John Stafford will be responding to Moog's subpoenas notwithstanding the Court's sequencing of discovery." (*Id*.). However, Moog has not yet received any documents and has no visibility as to whether these individuals intend to withhold any responsive documents pursuant to their objections. It is also unclear if Lawrence Chow, Mario Brenes, Santiago Correa-Mejia, Cynthia Le, and John Stafford will provide substantive responses or documents. Moreover, Baptist and Achar have still not agreed to produce any documents. These recent representations from certain of the Subpoenaed Individuals therefore do not moot Moog's need for clarity from the Court.

misappropriate Moog data, were connected to nine Dell laptops, some of which belonged to Achar, Brenes, Chow, Correa-Mejia, Dao, Le, and Stafford. In a June 14 filing, Skyryse described how  Gunderson, Lee, and Dao all possessed Moog data on their personal devices (ECF 156). And, in supplemental interrogatory responses, Skyryse identified the following individuals who "maintained or came into possession of any Moog Confidential Information upon commencing employment at Skyryse": Chung, Lee, Gunderson, Dao, and Tim Baptist. Moog's November 7th letter brief submitted to the Court also identifies direct evidence implicating Achar, Chung, Dao, and Brenes in the possession, transfer, and/or use of Moog data. Thus, each and every one of the Subpoenaed Individuals have been ***implicated by Skyryse in the possession, transfer, and/or use of Moog data***. In order for Moog to provide a complete and fulsome identification of trade secrets, consistent with the Court's order (ECF 205), it needs to first have access to discovery related to the possession, theft, and transfer of Moog data. Skyryse has prevented Moog from this discovery, and now the Subpoenaed Individuals (some of whom are represented by separate counsel) are mounting a coordinated effort to obstruct Moog from this discovery as well.

In order for this discovery to proceed and Moog to complete its trade secret identification, it requires a Court order clarifying that the third party subpoenas issued to the Subpoenaed Individuals are properly within the Court's sequencing of discovery, and are relevant and necessary to Moog's forthcoming trade secret identification.

## II.     FACTUAL BACKGROUND

### A.     Skyryse's Disclosures Regarding Possession of Non-Public Moog Data and Spoliation of Evidence

On April 25 and 26, Skyryse made several disclosures to Moog and the Court regarding Skyryse's possession of Moog data, deletion of data by Moog employees, and Skyryse placing

15 employees on administrative leave. In an April 26, 2022 Conference with the Court,

Skyryse's counsel disclosed the following regarding Skyryse's possession of Moog data:

- "We have discovered that there is . . . likely, [Moog] non-public information at Skyryse" (4/26/22 Transcript (ECF 95) 17:24-18:3);

- "we have found enough [Moog non-public information] that it does – it causes us concern" (*Id*., 18:12-13);

- "We have – we appear to have non-public Moog information at Skyryse." (*Id*., 18:14-15);

- Skyryse found a "significant number of hits" from the "list of file names and hash values" provided by Moog. (*Id*., 19:17-24).

Regarding deletion of data, Skyryse's counsel disclosed the following:

- "we have discovered forensically that since the complaint was filed certain information has been deleted." (*Id*. at 18:17-18);

- "What we have seen is – to us, is an alarming series of deletions" by Skyryse employees (*Id*. at 19:4-5);

- "it also is the case that some of the information deleted may not be recoverable" (*Id*. at 19:5-6).

- "that is a fact on the ground as we sit here today, unfortunately, that the information was deleted after the complaint was filed." (*Id*. at 19:8-10);

- "we do not have certainty it will be recoverable." (*Id*. at 19:11).

- Skyryse has imaged a total of "37 devices" implicated in possession of Moog data, deletion of data, or both. (*Id*. at 21:7-18).

**B.    Skyryse Claims it Does Not Have Possession, Custody or Control Over its Employees' Personal Devices Used for Work Purposes**

In a May 4 letter, Skyryse admitted it "does not issue smartphones to its employees."

(ECF 169-1, p. 1). Thus, Skyryse employees necessarily use their personal phones for some work

purposes (such as sending or receiving Skyryse e-mails). Yet, in its May 4 letter Skyryse

indicates it has only collected and imaged "Skyryse-issued devices" and that "[t]o the extent

employees used personal external storage devices, personal laptops, or personal tablets in the course of their work for Skyryse, those devices are not in the possession, custody, or control of Skyryse." (*Id*., pp. 8-9).  In a June 1 letter, Skyryse again confirmed its position that it "does not have possession, custody or control over employees personal devices that Skyryse did not issue." (ECF 142-10, p. 2). Skyryse took these positions notwithstanding the fact that Section 9 of the March 11 Order (ECF 25) provides: "Each party shall preserve all evidence in that party's possession, custody, or control relevant to any party's claim or defense in this action, including electronically stored information."

On June 8, 2022, Moog filed a motion to compel certain disclosures and other information from Skyryse pursuant to its April 25 and 26 disclosures to Moog and the Court. (ECF 142). In opposition thereto, Skyryse stated that former Skyryse engineer Alex Wang deleted 44 potentially relevant files, and that 32 of these 44 files were not recoverable. (ECF 156, pp. 11-14). Skyryse admitted that these files related to "wire and cable schematics" that Mr. Wang "brought with him from Moog and that he used as a reference while working at Skyryse." (*Id*.). Skyryse stated that it had collected Mr. Wang's Skyryse-issued and personal electronic devices. (*Id*.). Mr. Wang was terminated on June 14, 2022. (*Id*.). In the same opposition, Skyryse identified several other employees, Dan Gunderson, Alan Lee, Eric Chung and Tri Dao, who possessed Moog non-public information on their "personal devices or repositories." (*Id*., pp. 16-18). All four of these employees were placed on administrative leave, and two of them had returned to Skyryse as of June 14. (*Id*.).

Even though its opposition admitted that Skyryse had collected, searched, and examined the contents on multiple employees' personal devices, Skyryse still claimed it "does not have possession, custody or control of personal devices or repositories owned by its employees." (*Id*.,

p. 18). Moreover, Skyryse argued in its opposition that it has no obligation to turn over even the relevant materials it has collected from its employees' personal devices. (*Id*.).

C.     **The Court States that Skyryse has Possession of Relevant Information on its Employees Devices**

During a June 16, 2022 hearing, the Parties argued the issue of whether Skyryse has possession, custody or control over its employees' non-Skyryse issued devices that contain information relevant to this case. During the hearing, the Court stated:

- "my view would be that, to the extent they still are your employees, you have control over them and I think that you can direct that they produce whatever Moog information is on their personal devices." (6/16/22 Tr. at 24:11-14);

- "I think if Skyryse still employs these individuals, then it does have control over them to the extent of directing them not to -- or directing them to preserve all potentially relevant information in this case whether it's on their individual cell phone or not. If it's business related and it's on their cell phone and they are employed by Skyryse, then I think Skyryse, as a matter of law, has the legal ability to control that information and the legal ability to direct that that information not be disposed of." (*Id*., at 33:19-34:4).

Because of Skyryse's positions, Moog expressly advised Skyryse and the Court that "if Skyryse's position is that they don't control the employees for purposes of these devices, then we should be permitted to subpoena the employees individually to get those devices ourselves." (*Id*., 33:6-9). In response, Skyryse did not object to Moog's service of third party subpoenas by stating at the conference: "if through the course of normal discovery, the plaintiff decides that it would like to take third-party discovery or subpoena a person who is not Skyryse, an individual, we haven't suggested they don't have the right to do that. So if that's where the investigation that plaintiff wants to conduct takes them, it has every right to do that." (*Id*., 34:17-22).

Despite the Court's directives during the June 16 hearing, in a June 24 letter, Skyryse claimed the Court "did not conclude that Skyryse has possession, custody, or control of personal

devices owned by its employees" and doubled down on its position. (Declaration of Kazim Naqvi ("Naqvi Dec.") Ex. A).

Further, in supplemental interrogatory responses served on June 24, 2022, Skyryse identified the following current or former employees who "maintained or came into possession of any Moog Confidential Information upon commencing employment at Skyryse": Alin Pilkington, Misook Kim, Alex Wang, Eric Chung, Alan Lee, Dan Gunderson, Tri Dao, and Tim Baptist." (*Id.*, Ex. B at pp. 21-22).

### D. Moog Serves an Initial Round of Subpoenas

Because it was apparent that several current and former Skyryse employees possessed or accessed Moog non-public information and other information relevant to this case, and given Skyryse's claims that it had no control over this information, in July 2022 Moog proceeded to serve subpoenas to then-current Skyryse employees Gonzalo Rey, Tim Baptist, Dan Gunderson, Alan Lee, and Tri Dao. The subpoenas generally sought documents and communications related to the possession, transfer, and use of Moog's trade secrets. These subpoenas were served to Skyryse's current counsel. Moog also served subpoenas to former Skyryse employees Eric Chung and Alex Wang, both of whom were represented by separate counsel. Messrs. Rey and Baptist ultimately retained separate counsel to respond to Moog's subpoenas. Rey, Chung, and Wang have substantively responded to the subpoenas served upon them and have produced responsive documents.

### E. Gunderson, Lee, and Dao Serve Objections and Do Not Produce Documents

On August 1, 2022, Gunderson, Lee, and Dao, represented by Skyryse's counsel Latham & Watkins, served objections to the subpoenas served upon them, and to date have not agreed to produce any responsive documents. (Naqvi Dec., Ex. C). Gunderson, Lee, and Dao each listed a

host of objections, including that the requests are overbroad, unduly burdensome, vague and ambiguous, and sought privileged material. (*Id*.). Of particular relevance to the present motion, they also objected to the requests on the grounds that Moog had not yet identified its trade secrets with particularity. (*Id*.).

Moog sent a detailed meet and confer e-mail on August 3, 2022, and the parties telephonically met and conferred on August 10, 2022 but were not able to reach any resolution. (*Id*., Ex. D).

F.     **The Court's Orders on Moog's Trade Secret Identification and Sequencing of Discovery**

On June 21, 2022, Skyryse filed a motion to compel an immediate trade secret identification from Moog. (ECF 166). After the motion was fully briefed and argued, the Court issued its ruling on July 22, 2022. (ECF 205). Therein, the Court determined that Moog must specifically identify its trade secrets at issue in this case, but that Moog has a compelling need "to first examine the information which was admittedly taken by its former employees Kim and Pilkington prior to their departure, particularly in view of Skyryse's admission that some of that information may now have been deleted." (*Id*., p. 3). The Court ordered Moog to, at a later date and after it has examined the information taken by Kim and Pilkington, answer Skyryse's Interrogatory No. 1 and the Court "deferred to a later date the consideration of all discovery demands and motions except those related to Skyryse's Interrogatory No. 1." (*Id*., p. 6).

During a July 27, 2022 hearing, the Court stated: "I'm going to sequence discovery. And I want to focus, first and foremost, on Moog's identification in a considerable level of detail . . . of the trade secrets which it considers to be at issue for purposes of the preliminary injunction hearing. Once those are identified, then the parties can proceed to drill down further." (ECF 209, p. 5).

Following the July 27 hearing, the Court issued a text order which stated, in relevant part: "Moog and Skyryse shall file any motions related to the discovery allegedly necessary to enable Moog to identify its trade secrets." (ECF 206).

### G.     Moog's Motion to Compel Discovery Necessary to Identify its Trade Secrets

At the Court's direction, on August 3, 2022, Moog filed a motion to compel discovery necessary to complete its trade secret identification obligations (the "Motion to Compel") (ECF 210). The Motion to Compel describes, in relevant part, how Skyryse's May 4 Letter admits that "Moog information may have been accessed on Skyryse-issued laptops via personal USB devices held by Alin Pilkington or Misook Kim." (ECF 210 at p. 8). Skyryse then provided a table that apparently "reflects connection to SanDisk Cruzer devices that, based on the index prepared by iDS and shared with the parties, may have been delivered to iDS by individual defendants Misook Kim and Alin Pilkington." (*Id*.). While there were three SanDisk Cruzer devices identified in Skyryse's May 4 letter, only two such devices were turned over by Kim and Pilkington to iDS. (*Id*.). Further, Moog's forensic expert discovered that one of the two SanDisk Cruzer devices turned over by Kim had been completely wiped and formatted on March 10, 2022 (three days after this lawsuit was filed), resulting in a complete and irreversible deletion of all data and metadata on the device).  (*Id*.). The same wiped drive had been plugged into the computer of Skyryse employee Mario Brenes on February 18, 2022. (*Id*.).

Skyryse's May 4 letter describes how the USB devices apparently belonging to Kim and Pilkington were connected to nine Dell laptops, including the laptops belonging to nine Skyryse employees--Sathya Achar, Mario Brenes, Lawrence Chow, Eric Chung, Santiago Correa-Mejia, Tri Dao, Cynthia Le, John Stafford, and Alex Wang. (*Id*., p. 9). The May 4 Letter also confirms that these 9 laptops had already been imaged by Skyryse months ago. (*Id*.). Thus, Skyryse's own

letter and investigation has placed each of these Skyryse personnel at issue, and indicates that each of them was involved in the theft, transfer, and/or use of Moog's confidential information vis a vis Kim and Pilkington and devices they used. Moog's Motion to Compel sought an order requiring the production of the USB storage devices at issue and images of the nine laptops referenced above.

**H.     Moog's Second Round of Subpoenas to the Skyryse Personnel Referenced in the May 4 Letter**

On August 1, 2022, given the statements in the May 4 Letter and Skyryse's refusal to turn over devices or information related to the Skyryse personnel referenced in the May 4 Letter, Moog served subpoenas to Skyryse's counsel for the Skyryse personnel who had not been previously subpoenaed--Sathya Achar, Mario Brenes, Lawrence Chow, Santiago Correa-Mejia, Cynthia Le and John Stafford. The subpoenas generally sought documents and communications related to the possession, transfer, and use of Moog's trade secrets. Skyryse's counsel agreed to accept service for all such personnel. Mr. Achar later retained separate counsel.

In opposition to Moog's Motion to Compel filed on August 17, 2022, Skyryse agreed to produce the connection history of one of Kim's USB devices, a listing of files accessed from the USB device, and another USB device used by Kim that had not previously been produced to iDS(despite refusing to produce this information for weeks). (ECF 242, pp. 10-11). Skyryse also acknowledged that there was a "fourth USB device [that] was connected to Mr. Achar's Skyryse-issued laptop" but that the device "is owned by Mr. Achar." (*Id*., p. 11). Skyryse acknowledged that Mr. Achar had been subpoenaed in his individual capacity but argued that the subpoena was on hold because of the Court's temporary stay of discovery while motions to stay the entire case were pending pursuant to the Court's order at ECF 216. (*Id*.).

I.      **Objections and Refusals to Produce Documents from the Skyryse Personnel Referenced in the May 4 Letter and Tim Baptist**

Once the Court denied Defendants' motions to stay, the temporary discovery stay implemented by ECF 216 were lifted. Mario Brenes, Lawrence Chow, Santiago Correa-Mejia, Cynthia Le and John Stafford, represented by Skyryse's counsel, served objections to Moog's subpoenas served upon them on September 23, 2022. (Naqvi Dec., Ex. E). Baptist, represented by his own counsel, also served objections to Moog's subpoena served upon him on September 23, 2022. (*Id*., Ex. F). Achar, represented by his own counsel, served objections to Moog's subpoena served upon him on September 30, 2022. (*Id*., Ex. G).

Apparently in a coordinated effort, Brenes, Chow, Correa-Mejia, Le, Stafford, Achar, and Baptist all served objections to each and every document request propounded by Moog, and refused to produce a single document. (*Id*, Exs. E-G). Aside from the host of general and boilerplate objections asserted, these individuals primary objected on the following grounds; 1) Moog's requests are "premature given the Court's sequencing of discovery" and seek documents not necessary for Moog to identify its trade secrets; 2) Moog's requests seek information outside the possession, custody or control of the subpoenaed individuals; and 3) Moog's requests seek irrelevant information. (*Id*.).

J.      **Skyryse's Disclosure of Moog's Trade Secrets to Third Party Hummingbird Aero**

Through inspection of certain electronic devices produced by Defendants to iDS, Moog has discovered several additional examples of misappropriation of Moog trade secrets and unauthorized disclosure to third parties. For example, on December 18, 2021 (approximately one month after leaving Moog), Pilkington sends certain chat messages to Lori Bird, an employee for

Hummingbird Aero and Skyryse contractor. Therein, Pilkington and Bird are discussing certain Moog documents which would be helpful to use at Skyryse, including "███████████" and "███████████." (*Id.*, Ex. H (SKY_IDS_000003)). Pilkington asks Bird "█████ ███████████████████████" to which Bird responds: "█████." In another exchange on December 13, 2021, Pilkington complains to Bird that Skyryse does not have certain software documentation: "███████████████████████." (*Id.*, Ex. I (SKY_IDS_000001)). In response, Bird mentions "███████████" and asks Pilkington if she should get them for him. (*Id.*). Pilkington responds that he "███████████" and asks whether "███████████████████████" to which Bird responds "███." (*Id.*). There are also several examples of Bird sending to Pilkington and other Hummingbird employees (including an individual named Rex Hyde) various Moog software review checklists. (*Id.*, Ex. J (SKY_IDS_0000068, 2257, 3123, 3217).

As a result of these and other communications, on October 25, 2022, Moog proceeded to serve subpoenas for production of documents to Hummingbird Aero, Hyde, and Bird. (*Id.*, ¶ 12). While the production deadlines for these subpoenas have not yet elapsed (November 14, 2022), these additional recently-served subpoenas fall under the scope of this motion and Moog seeks clarification that they are properly within the Court's sequencing of discovery. Counsel for Moog and Hummingbird Aero have started the meet and confer process regarding the subpoena. (*Id.*). Counsel for Moog has not heard from Hyde or Bird. (*Id.*).

### K.    Moog's Substantial Meet and Confer Efforts

Regarding the objections served by Brenes, Chow, Correa-Mejia, Le and Stafford, Moog sent a detailed meet and confer e-mail on September 26, 2022. (*Id.*, Ex. K). The Parties

telephonically met and conferred on September 29, 2022 and were unable to reach a resolution. (*Id.*, ¶ 13).

Regarding the objections served by Baptist, Moog sent a detailed meet and confer e-mail on September 26, 2022. (*Id.*, Ex. L). The parties telephonically met and conferred on September 29, 2022 and were unable to reach a resolution. (*Id.*, ¶ 14).

Regarding the objections served by Achar, Moog sent a detailed meet and confer e-mail on October 3, 2022. (*Id.*, Ex. M). The parties telephonically met and conferred on October 7, 2022 and were unable to reach a resolution. (*Id.*, ¶ 15).

On November 4, 2022, Skyryse's counsel advised Moog for the first that "Alan Lee, Tri Dao, and Dan Gunderson will be producing documents consistent with their objections in response to the subpoenas served on them." (*Id.*, Ex. N). On November 7, 2022, Skyryse's counsel advised Moog that "Lawrence Chow, Mario Brenes, Santiago Correa-Mejia, Cynthia Le, and John Stafford will be responding to Moog's subpoenas notwithstanding the Court's sequencing of discovery." (*Id.*).

Moog has not received any documents from any of the Subpoenaed Individuals to date. It remains unclear whether Alan Lee, Tri Dao, and Dan Gunderson will be withholding any responsive documents pursuant to their objections.  And, it remains unclear whether Lawrence Chow, Mario Brenes, Santiago Correa-Mejia, Cynthia Le, and John Stafford will be providing substantive responses or producing any documents at all. Baptist and Achar have still refused to produce any documents and are standing on their objections.

## III.   <u>LEGAL STANDARD</u>

Fed. R. Civ. P 26(b)(1) provides: that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." *Id*. "Discovery in federal court is broad and permissive." *In re Air Crash Near Clarence Ctr., New York, on Feb. 12, 2009*,

No. 09-CV-961S, 2011 WL 6370189, at *2 (W.D.N.Y. Dec. 20, 2011). Information is relevant

so long as it is reasonably calculated to lead to the discovery of admissible evidence. *See Daval*

*Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir.1991).

      This relevance standard is "necessarily broad in scope in order to encompass any matter

that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or

may be in the case." *LaForest v. Honeywell Int'l Inc.*, No. 03–CV–6248, 2004 WL 1498916, at

*2 (W.D.N.Y. July 1, 2004) (internal citations omitted)); *see also Breon v. Coca–Cola Bottling*

*Co. of New England*, 232 F.R.D. 49, 52 (D.Conn. 2005) ("request for discovery should be

considered relevant if there is any possibility that the information sought may be relevant to the

claim or defense of any party.") (internal citations omitted).

## IV.   MOOG'S SUBPOENAS ARE NECESSARY AND RELEVANT TO ITS TRADE SECRET IDENTIFICATION OBLIGATIONS

### A.   Moog's Subpoenas are Within the Court's Sequencing of Discovery

      The Subpoenaed Individuals' first and primary objection to substantively responding to

the Subpoenas and producing documents is that the Subpoenas are premature because they are

not within the Court's sequencing of discovery to focus on Moog's identification of trade secrets.

This argument fails for many reasons.

      There is no dispute that the Court has sequenced discovery to prioritize Moog's complete

and fulsome identification of trade secrets. There is also no dispute that the Court has determined

that before Moog must completely identify its trade secrets, it needs "to first examine the

information which was admittedly taken by its former employees Kim and Pilkington prior to

their departure, particularly in view of Skyryse's admission that some of that information may

now have been deleted." (ECF 205, p. 3). Thus, any discovery comprising or directly related to

the large volume of Moog data taken by Kim and Pilkington is relevant to Moog's trade secret identification and within the Court's sequencing of discovery.

In sequencing discovery, the Court directed Moog to file a motion to compel whatever discovery it deemed necessary for its trade secret identification obligation. (ECF 206). Moog filed that Motion (ECF 210), and the vast majority of the Subpoenaed Individuals are expressly referenced and at issue in that Motion based on the statements in Skyryse's May 4 Letter. Specifically, Sathya Achar, Mario Brenes, Lawrence Chow, Eric Chung, Santiago Correa-Mejia, Tri Dao, Cynthia Le, John Stafford, and Alex Wang are all implicated in the theft, transfer, or use of Moog data because their computers were connected to the USB devices Kim and Pilkington used to copy Moog data. Thus, the information sought by Moog from these individuals is directly relevant and necessary for Moog's complete trade secret identification, and Moog is entitled to that information before it makes its complete trade secret identification. And, Moog's November 7th letter brief submitted to the Court concurrently with this filing also identifies direct evidence implicating Achar, Chung, Dao, and Brenes in the possession, transfer, and/or use of Moog data using their Skyryse e-mail accounts and laptop devices.

In addition, Skyryse has already admitted in filings that Alex Wang, Dan Gunderson, Alan Lee, Eric Chung, and Tri Dao possessed Moog data on their personal devices. (ECF 156, pp. 11-18). And, Skyryse has admitted in discovery responses that Tim Baptist maintained or came into possession of any Moog Confidential Information upon commencing employment at Skyryse. (Naqvi Dec., Ex. B at pp. 21-22). So, the Subpoenaed Individuals who are not implicated in the May 4 Letter are also relevant and necessary to Moog's trade secret identification because Skyryse has already admitted that they possess and/or have used Moog data while at Skyryse.

Because of the massive volume of trade secret theft in this case (over 1.4 million stolen files), the Parties and Court have already discussed how Moog's identification of trade secrets should be tailored to the trade secrets actually used and referenced by Skyryse. (August 25, 2022 Hrg. Tr. at pp. 67-68 ("I care about are trade secrets that they claim in this case for purposes of this preliminary injunction motion, to have been misappropriated.")).  Because all of the Subpoenaed Individuals are implicated in the theft, transfer, and/or use of Moog trade secrets (by having computers connected to Kim and Pilkington's USB devices, possession Moog data on their personal phones, or otherwise), Moog is entitled to conduct third party discovery to determine how and to what extent each of these individuals possessed and used Moog's trade secrets. Skyryse has made it clear that it will not assert control over the personal devices of the Subpoenaed Individuals, so Moog was forced to subpoena them (and Skyryse did not object to such third party discovery). The Subpoenas served on the Subpoenaed Individuals are within the confines of the Court's sequencing of discovery because they are relevant and necessary for Moog to complete its trade secret identification.

Moreover, these subpoenas were only necessitated in the first place by Skyryse refusing to take responsibility for producing its employees' electronic devices used for work purposes. This refusal had the direct result of having to deal with numerous third parties that do not have the direct context for the Court's prior orders.

### B.     The Subpoenas Seek Relevant Information

The Subpoenaed Individuals also object on the grounds that Skyryse's Motion to Compel (ECF 210) "fails to identify any information in the [Subpoenaed Individuals'] custody or control . . . as necessary for Plaintiff to identify their trade secrets." But, that is not true. Moog's Motion to Compel expressly discusses how Skyryse's May 4 Letter admits that "Moog information may

have been accessed on Skyryse-issued laptops via personal USB devices held by Alin Pilkington or Misook Kim." (ECF 210 at p. 11). The Motion to Compel further describes how Skyryse's May 4 Letter identifies a number of USB devices apparently belonging to Kim and Pilkington and which were connected to nine Dell laptops, including the laptops belonging to each of the Subpoenaed Individuals. (*Id.*, pp. 8-9). Thus, *Skyryse's own letter and investigation* and its own produced documents have placed the vast majority of Subpoenaed Individuals at issue, and indicates that each of them was involved in the theft, transfer, and/or use of Moog's confidential information. The objection that Moog has not identified relevant information in each of the Subpoenaed Individuals' custody or control is improper, as Moog has no way of knowing what each individual has in their possession because the Subpoenaed Individuals are refusing to provide any visibility or provide any substantive responses.

Before Moog completes its trade secret identification obligations, it is entitled to understand all the individuals involved in the theft, transfer, and/or use of Moog trade secrets. It has only subpoenaed individuals who *Skyryse has admitted* (either through the May 4 Letter, ECF 156, or verified interrogatory responses) have been involved in the theft, transfer, and/or use of Moog data. Moog is not conducting a fishing expedition and subpoenaing third parties without good cause. It has been forced to serve third party subpoenas given Skyryse's position that it does not have control over its employees' personal devices.

Moreover, this objection again tries to evade obligation to produce relevant materials by relying on this Court's prior order regarding trade secret ID.  It cannot be in the efficiency interests of the Court to require multiple phases of compliance by each of the subpoenaed individuals, partitioned out by subject matter, especially where there is a clear connection

between materials sought in the subpoena and the trade secret identification process as described by the Court.

## V.  <u>CONCLUSION</u>

Moog respectfully requests that the Court issue an order clarifying that the third party subpoenas served by Moog as addressed in the Motion are appropriate under the Court's sequencing of discovery, and are relevant to Moog's forthcoming trade secret identification obligations.

Dated:  New York, New York
        November 7, 2022

                       **SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
*Attorneys for Plaintiff Moog Inc.*

By:     s/Rena Andoh
       Rena Andoh
       Travis J. Anderson (admitted *pro hac vice*)
       Tyler E. Baker (admitted *pro hac vice*)
       Kazim A. Naqvi (admitted *pro hac vice*)
30 Rockefeller Plaza
New York, New York 10112
Telephone:  (212) 653-8700

and

**HODGSON RUSS LLP**

By:     s/Robert J. Fluskey, Jr.
       Robert J. Fluskey, Jr.
       Melissa N. Subjeck
       Reetuparna Dutta
       Pauline T. Muto
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York 14202
(716) 856-4000
*rfluske@hodgsonruss.com*