Gabriel S. Gross
Direct Dial: 650.463.2628
gabe.gross@lw.com

140 Scott Drive
Menlo Park, California 94025
Tel: +1.650.328.4600 Fax: +1.650.463.2600
www.lw.com

**LATHAM & WATKINS** LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Century City | Paris |
| Chicago | Riyadh |
| Dubai | San Diego |
| Düsseldorf | San Francisco |
| Frankfurt | Seoul |
| Hamburg | Shanghai |
| Hong Kong | Silicon Valley |
| Houston | Singapore |
| London | Tel Aviv |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |

November 7, 2022

**VIA ECF**

Hon. Jeremiah J. McCarthy
United States Magistrate Judge
Robert H. Jackson United States Courthouse
2 Niagara Square
Buffalo, New York 14202

  Re: *Moog Inc. v. Skyryse, Inc. et al*, Case No. 1:22-cv-00187-LJV-JJM

Dear Magistrate Judge McCarthy:

  Pursuant to Your Honor's instruction, Skyryse writes to identify the "areas of agreement reached, and any remaining issues" to be addressed at the November 10, 2022 hearing regarding discovery allegedly necessary for Moog to identify its trade secrets. (ECF 279.) At the Court's instruction, on August 3, 2022 Moog filed a motion identifying categories of discovery it claims are necessary for it to identify its own trade secrets (ECF 210), beyond the nearly two terabytes of discovery it already had received from Skyryse.[1] Moog raised four issues as to Skyryse, demanding that: (1) Skyryse conduct a privilege review of five devices that had been withheld by the individual defendants on Fifth Amendment grounds; (2) Skyryse make available a number of computer backups called Volume Shadow Copies ("VSCs"); (3) Skyryse produce to iDS nine computers and two USB drives in their entirety; and (4) Skyryse make its source code available for review by producing it to iDS.

  We are pleased to report that the parties have resolved some of their disputes but still require the Court's assistance in resolving others. As to the first issue, Skyryse immediately took steps to commence its privilege review of the individual defendants' personal devices as soon as Judge Vilardo affirmed Your Honor's order and dissolved the Court's temporary stay. (ECF 272.) The majority of those devices will be available for Moog's review this week, and Skyryse expects to complete its review of the remaining two devices over the next two weeks. Regarding the second issue, Moog narrowed its discovery demand for ten VSCs to a more targeted request for a single VSC of one laptop, which Skyryse has agreed to produce. Those issues are now resolved and no longer in dispute, so the Court accordingly can deny Moog's motion in part as to those specific requests for relief, as stated in the accompanying Proposed Orders.

---

[1] Among the two terabytes of discovery Moog already has received are four laptops and a USB device in their entirety, 50,000 pages of written discovery, and access to Skyryse's potentially relevant source code.

I.    REMAINING DISPUTES

As to the third and fourth issues, the parties have made some progress in narrowing their differences but disputes remain for the Court to resolve.

A.    **Laptops and USB Devices**

As the parties met and conferred, Moog retreated from its demand for nine Skyryse laptops and two USB drives, in their entirety, but still demands three laptops, in their entirety, and also the connection and file logs for the contents of six other laptops and one USB device. Moog demands "that Skyryse produce: (1) the Skyryse laptops belonging to Sathya Achar, Eric Chung, and Tri Dao; and (2) connection and file logs for USB Device 55D28D65 and the Skyryse laptops belonging to Alex Wang, Lawrence Chow, Santiago Correa-Mejia, John Stafford, Cynthia Le, and Mario Brenes."[2] (Ex. A, Nov. 3, 2022 K. Naqvi Ltr. at 1.)[3] Moog's demands are disproportionate, unduly burdensome, lack factual support, and are based on speculation, and the Court should deny them.

As a compromise to help focus discovery on relevant documents, Skyryse offered to produce lists of every file located on all three laptops Moog is interested in *and* on the 55D28D65 USB device. Skyryse proposed that, once Moog reviews these detailed file listings, if it can show "that any of the files identified in those listings reflect relevant evidence it needs to identify its own trade secrets," then "Skyryse will produce those files and their relevant metadata pursuant to the iDS protocol." (*See* Ex. B, Oct. 31, 2022 A. Zahoory Ltr. at 3.) Skyryse's proposal would avoid the excessive burden, time, and cost associated with Moog's approach of taking indiscriminate discovery of the entire computers wholesale. Only a tiny fraction of the contents of these devices, at best, could be relevant but Moog's demands would require Skyryse to review them *all* for privilege and other issues. Skyryse's proposal, on the other hand, would give Moog ample opportunity to examine complete file listings from all three laptops and the USB drive, and then obtain any specific files it shows are relevant. Moog rejected Skyryse's offer. (Ex. A at 2.)

Skyryse asked Moog to explain its basis for demanding the entire contents of these three laptops and the file listings and connection histories for the IT department's USB drive and the laptops that were connected to it. In response, Moog (1) pointed to the parties' past court filings, (2) claimed that the attorney-client privilege entitles it to withhold other information that could establish the relevance of this discovery, and (3) identified a handful of emails received by the custodians of a few of the devices that are the subject of its motion. The Court is already familiar with the parties' prior filings, so Skyryse will not repeat them. And it is Moog's burden to establish the relevance of the materials it seeks; its refusal to do so on grounds of alleged privilege should be rejected as a classic sword-shield misuse of the privilege. Beyond this, Skyryse responds below to the remaining justifications Moog has offered for this discovery since the October 20 hearing.

---

[2] Skyryse already produced Mr. Wang's Skyryse-issued laptop to iDS, so it is no longer at issue.

[3] Moog has subpoenaed all nine of these California citizens in their personal capacity.

LATHAM&WATKINS LLP

1. Tri Dao's Skyryse-Issued Laptop

Moog points to a single email it claims it identified in "Alex Wang's mailbox" that allegedly contains "Moog data where Tri Dao was a recipient," and Moog argues that this already-produced email, which attaches a spreadsheet that references "Moog" in its metadata, justifies handing over Mr. Dao's entire laptop. (Ex. A at 3.) Setting aside that Moog already received this email and its attachment in discovery (thus confirming Skyryse's search process works), Moog provides no authority to support its position that one employee receiving one email justifies producing his entire laptop computer, and all of the many irrelevant, proprietary, and confidential files it holds. It does not. *See Medical Billing Consultants, Inc. v. Intelligent Medical Objects, Inc.*, 2003 WL 1809465 at *2 (N.D. Ill. Apr. 4, 2003) (denying motion to compel inspection of computer based on existence of an email "when it appears as though plaintiff now has access to the specific information it seeks to discover"). Moog also points to the metadata for this email and claims that "Dao has copies of the email corresponding to SKY_IDS_007220 in multiple Skyryse locations." (Ex. A at 3-4.) But all that metadata shows is that the email is stored locally and on a server, and does not justify handing over the entire laptop.

2. Eric Chung's Skyryse-Issued Laptop

Moog demands that Mr. Chung's Skyryse-issued laptop "be produced wholesale" because Mr. Chung allegedly created certain files while he was previously working at Moog, which Moog claims it has identified "in both Kim and Pilkington's data set." (*Id*. at 3.) Moog claims some of these documents contain "print headers" that refer to Moog, but does not actually assert that the contents of these documents are proprietary to Moog. Instead, Moog speculates that Mr. Chung "took them with him to Skyryse, and re-purposed it [*sic*, them] into various other spreadsheets for use at Skyryse." (*Id*. at 3.) But the fact that Mr. Chung created files *while working at Moog* that were later found in Ms. Kim or Mr. Pilkington's possession provides no basis to demand discovery into his entire laptop and the many irrelevant, confidential files it holds, instead of the potentially relevant files. Moog already knows what files Mr. Chung created when he worked at Moog, and which of those files purportedly ended up in Ms. Kim's and Mr. Pilkington's possession. Moog has more than enough information to identify its own trade secrets, and has offered no factual basis to demand the wholesale production of another entire Skyryse-issued laptop.

3. Sathya Achar's Skyryse-Issued Laptop

Moog points to the fact that Mr. Achar purportedly received three emails (one of which he forwarded), which Moog claims included attachments containing Moog confidential information.[4] These documents, which Moog already has, reflect communications regarding the approach to,

---

[4] Moog inaccurately claims that these emails can be found "in nine different locations" on Mr. Achar's laptop. (Ex. A at 2-3.) Moog again misreads the metadata related to these files. The nine file paths identified by Moog reflect the fact that Skyryse collected and imaged these emails three times, and also that the same emails were tagged with different "labels" that a Gmail user can use to help organize their emails: https://support.google.com/mail/answer/118708?hl=en&co=GENIE.Platform%3DDesktop

LATHAM&WATKINS LLP

and staffing for, the testing of Skyryse's products. According to Moog, one of these documents includes the words "Moog, Inc." in its metadata, but Moog does not actually claim this document reflects its trade secrets. Skyryse already has produced the relevant emails and attachments. Their mere existence does not justify handing over an entire laptop and its many irrelevant files.

Skyryse's proposed compromise avoids the overbreadth and undue burden problems of Moog's demands for entire computers, and is designed to focus discovery on relevant information. Skyryse has offered to produce to Moog the complete file listings for all three of these laptops, and has agreed to produce any relevant files Moog identifies from those lists, and their accompanying metadata. (Ex. B at 3.) This is fair, thorough, and goes beyond the requirements of Rule 26, which permits only discovery "that is *relevant* to any party's claim or defense and *proportional* to the needs of the case." Moog rejected that offer, claiming that "[o]nly production of the laptops themselves will allow Moog to fully investigate various pieces of forensic information—such as when *certain* documents"—whatever those may be—"were accessed, transferred, and/or deleted, and by whom," speculating that the "[l]aptops may also contain fragments of deleted information that cannot be ascertained from file listings." (Ex. A at 4.)

As court after court has found, however, a plaintiff's speculation does not justify irrelevant, disproportionate, overly burdensome discovery of entire electronic devices. Nor has Moog explained why it needs these entire Skyryse computers, rather than the potentially relevant files, to identify Moog's own trade secrets. Federal courts, including here in New York, have regularly denied similarly excessive requests by plaintiffs in trade secret cases. For example, in *Calyon v. Mizuho Sec. USA Inc.*, plaintiff Calyon claimed that defendants "used e-mail and small, hand-held computer storage devices to remove, without Calyon's authorization, 'vast quantities' of Calyon's business data and documents." No. 07CIV02241RODF, 2007 WL 1468889, at *1 (S.D.N.Y. May 18, 2007). Like Moog, Calyon "contend[ed] that because the hard drives contain evidence of the Individual Defendants' removal of proprietary information, its forensic expert should be entitled to inspect the entirety of their mirror images." *Id.* Also like Moog, Calyon claimed that producing "certain files or data from" the hard drives would be insufficient because "certain hidden areas of the hard drives, such as the 'unused' portions and the 'fragments' of data resulting from the deletion of documents, may contain relevant information that could not be examined without inspecting a copy of the entire hard drive." *Id.* The court denied Calyon's request because it had not "identified any specific information that it seeks to recover from the mirror images" or "shown that the Individual Defendants would not be capable of, or willing, to produce that particular information." *Id.* at *5. That same reasoning applies here. The Court should reject Moog's demand for the production of entire laptops and their many irrelevant contents, and adopt Skyryse's proposal to first produce a complete file listing, followed by the production of any relevant files.

# LATHAM&WATKINS LLP

### 4.  USB Drive 55D28D65 and Five Connected Laptops

Moog also demands that Skyryse produce file listings and connection histories[5] for the 55D28D65 USB drive, and five laptops that were connected to it.[6] This, despite Skyryse's representation that this USB "device was used by Skyryse's IT department to set up computers at the company and its contents includes miscellaneous files unrelated to Moog or the claims and defenses in this case." (ECF 242 at 11.) Moog claimed it cannot accept counsel's representation, so as a compromise Skyryse offered to produce a listing of the files on the device so that Moog can review them, and follow up with requests for any specific files it shows are relevant.

Moog rejected Skyryse's compromise and demands instead that Skyryse also produce file listings and connection histories of five laptops connected to this USB drive. Moog theorizes that "*[t]o the extent* Moog files previously existed on USB device 55D28D65 and were transferred to any of the five laptops, but were subsequently deleted from the USB device, Moog would be prevented from discovering this information." (Ex. A at 4.) This speculation does not justify irrelevant, overly burdensome, disproportionate discovery.[7] *See*, *e.g.*, *Trilegiant Corp. v. Sitel Corp.*, 275 F.R.D. 428, 435-36 (S.D.N.Y. 2011) ("Mere speculation as to the existence of additional documents is insufficient to warrant an order to compel"); *Surles v. Air France*, No. 00CIV5004 (RMBFM), 2001 WL 1142231 at *2 (S.D.N.Y. Sept. 27, 2001) ("information sought by Defendant does not become relevant merely because Defendant speculates that it might reveal useful material"). As Skyryse has explained, no facts suggest that the contents of this device relate to Moog or the claims or defenses in this action. It is conjecture to suggest that "Moog files previously existed" on it, much less that they "were subsequently deleted" or "transferred to any of the five laptops." (Ex. A at 4.) Nonetheless, Skyryse has offered to produce a list of the files on the USB drive so that Moog can make requests for any specific files it shows are relevant. This is sufficient.

As cases like *Calyon*, *Trilegiant*, and *Surles* establish, Moog's prior discovery of several of emails and its speculation about documents that might exist are insufficient. Other courts agree and have denied the type of wholesale discovery of entire devices that Moog demands. *See also*, *e.g.*, *Piccone v. Town of Webster*, No. 09-CV-6266T, 2010 WL 3516581, at *7-8 (W.D.N.Y. Sept.

---

[5] A "connection history" refers to metadata reflecting the history of what devices were connected to the USB drive, when they were connected, and what files were accessed.

[6] Moog has refused to explain why file listings would be sufficient for these laptops but not the three laptops Moog demands be produced in their entirety.

[7] Moog points to "at least two instances" where a custodian of one of the five laptops allegedly received two emails from Ms. Kim attaching spreadsheets where "the word 'Moog' is in the metadata" as further justification for the production of the file listings and connection histories of these devices. (Ex. A at 4-5.) Setting aside that Moog does not claim the contents of these spreadsheets as Moog's proprietary information or explain how one custodian receiving two emails justifies discovery into four other laptops, Moog's argument is misplaced. The fact that a custodian may have *received* an email does not justify producing information about entire devices, especially here, where the relevant emails have been produced.

LATHAM&WATKINS LLP

3, 2010) (denying demand for entire devices because "'a party may not inspect the physical hard drives of a computer merely because the party wants to search for additional documents responsive to the party's document request.'") (internal citation omitted); *In re Terrorist Attacks on Sept. 11, 2001*, No. 03-MD-1570 (GBD)(SN), 2021 WL 9100176, at *3-4 (S.D.N.Y. Oct. 21, 2021) (denying request to inspect entire devices because the "proposed discovery would incur burdens disproportionate to the need of this hearing and likely generate a large amount of irrelevant material," and denying demand for "file structure and names of all relevant items" as "disproportionate"); *Lifeng Chen v. New Trend Apparel, Inc.*, 2012 WL 4784855 at *2 (S.D.N.Y. 2012) (denying access to entire computer based on fact that audio recordings were uploaded to it where "the same recordings were long ago made available to the movants"); *Henson v. Turn, Inc.*, No. 15-CV-01497-JSW (LB), 2018 WL 5281629, at *5 (N.D. Cal. Oct. 22, 2018) (denying request for production of "complete forensic images of [plaintiffs'] mobile devices," because the requested discovery "threatens to sweep in documents and information that are not relevant to the issues in this case").

Skyryse has already provided Moog with two terabytes of discovery, and has agreed to provide additional discovery when Moog provides sufficient factual basis for it. But as this Court noted at the October 20 hearing, the time has come to "move toward the identification [of trade secrets] stage … Not every one of Moog's trade secrets under the sun, but only what is going to be at issue for purposes of the preliminary injunction." (Oct. 20, 2022 Hr. Tr. at 4:6-13.) Skyryse's reasonable proposals are more than sufficient to achieve this goal; Moog's demands, by contrast, are disproportionate, over-reaching, and excessive.

For the reasons above, Skyryse respectfully requests that the Court grant-in-part and deny-in-part Moog's motion, and enter the accompanying proposed order reflecting Skyryse's proposed compromise to produce file listings for the 55D28D65 USB drive and the laptops issued by Skyryse to Messrs. Dao, Chung, and Achar, and to further produce any relevant files Moog can identify on these devices, along with their accompanying metadata.

    **B.**    **Source Code**

The parties' counsel met in an attempt to better understand Moog's purported need to electronically compare the parties' source code in discovery. Moog refused to explain the specific comparisons it seeks to perform,[8] but Skyryse nonetheless offered to modify its proposed source code protocol to enable the comparisons Moog sought, while still preserving the security of both parties' source code. Specifically, Skyryse has offered to permit a source code reviewer to bring with him an external storage device containing his own client's source code; connect that drive to the source code review computer on a read-only basis; and install software on the source code review computer that would allow the comparison of the two sides' source code. Skyryse proposed that for security purposes, the inspecting party disclose a file listing—but not the contents—of its external storage device, to ensure it contains only source code to be used for comparison, and no unauthorized software or other materials.

---

[8] Moog described only that file-to-file and perhaps folder-to-folder comparisons would be needed, but otherwise declined to explain what comparisons it might perform.

**LATHAM & WATKINS** LLP

Moog did not dispute that Skyryse's proposal will allow Moog to perform the very sort of automated comparisons it has insisted upon. Instead, Moog's only response was, in essence, to suggest that Skyryse's counsel are untrustworthy. In particular, Moog suggested that the source code review computer Skyryse would provide could contain "backup processes" that would copy any Moog source code that Moog's reviewer brings on the external storage device. (*See* Exhibit C, Nov. 3, 2022 K. Naqvi email.) Moog further claimed Skyryse might also extract forensic information regarding what Moog folders and files its expert accessed during their inspection. (*id.*) Moog also took issue with allowing Skyryse to inspect the file listings of the external drive.[9]

Despite counsel explaining that it would be the outside law firm, not Skyryse, that would set up and maintain custody over the source code computer, and that counsel had no intention of spying on Moog's source code review, let alone copying Moog's code, Moog refused to accept those assurances. Even when Skyryse's counsel offered to make those assurances explicit in the source code protocol, which would become an order of the Court, Moog continued to refuse.

The Court should reject Moog's motion to apply the unsuitable iDS Protocol onto the parties' discovery and review of source code, and instead should adopt Skyryse's reasonable proposal.[10] Moog's complaints about Skyryse's proposal have no merit, and would apply to source code protocols routinely entered by courts across the country in similar cases. *See, e.g.*, ECF 213-1 at 6-8; ECF 225 at 1-2. Counsel would agree and the Court would order that any forensic information left on the review computer shall not be examined by the producing party. Skyryse and its counsel would similarly abide by and respect the confidentiality of any reviewer's inspection, just as they expect Moog and its counsel would do, and Skyryse has made that prohibition explicit in its protocol and subject to Court order.

Moog's insistence that the iDS protocol should be used for discovery of all source code risks unnecessarily exposing both sides' proprietary source code not just to a third party, but to a competitor in its native format. In meeting and conferring, Moog doubled-down on its position that any of Skyryse's source code that gets produced to iDS also should be produced in native format directly to Moog. More specifically, on November 1 Moog proposed a stipulation governing electronically stored information (ESI) that would require source code, including the text of such code, be produced electronically. But source code consists only of text, so this would effectively give Moog a native electronic copy of any and all source code Skyryse produces in discovery. Under Moog's proposal, Skyryse would not even receive the typical, basic protections afforded to the discovery of highly confidential source code, such as prohibiting copying or safely securing access to the code. Skyryse's compromise proposal, by contrast, will satisfy Skyryse's legitimate security concerns while also allowing Moog to conduct the comparisons it desires, which is why it should be adopted by the Court.

---

[9] Moog also raises concerns regarding Skyryse's proposed limits on the printing of source code. But Moog has never proposed an alternative to Skyryse's proposed limit of 100 pages, and in any event, Skyryse remains available to meet and confer with Moog regarding the issue.

[10] A proposed order containing the updated version of Skyryse's proposed source code protocol with the offered modification is submitted with this letter.

LATHAM&WATKINS LLP

Respectfully,

Gabriel S. Gross
of Latham & Watkins LLP