# Exhibit B


Case 1:22-cv-00187-LJV-JJM   Document 284-3   Filed 11/07/22   Page 2 of 5

Arman Zahoory
Direct Dial: 650.470.4985
arman.zahoory@lw.com

140 Scott Drive
Menlo Park, California 94025
Tel: +1.650.328.4600 Fax: +1.650.463.2600
www.lw.com

**LATHAM & WATKINS** LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Century City | Paris |
| Chicago | Riyadh |
| Dubai | San Diego |
| Düsseldorf | San Francisco |
| Frankfurt | Seoul |
| Hamburg | Shanghai |
| Hong Kong | Silicon Valley |
| Houston | Singapore |
| London | Tel Aviv |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |

October 31, 2022

**VIA EMAIL**

Kazim A. Naqvi
Sheppard Mullin Richter & Hampton LLP
1901 Avenue of the Stars
Suite 1600
Los Angeles, California 90067
knaqvi@sheppardmullin.com

Dear Mr. Naqvi:

We write to follow up on the parties' October 27, 2022 videoconference regarding Moog's demands for further discovery it claims is necessary to identify its trade secrets.

### I. LAPTOPS

We started the meeting by discussing Moog's October 26 request that Skyryse produce (1) three laptops in their entirety, and (2) connection and file logs for six additional laptops and the 55D28D65 USB device.

We first discussed Moog's demand that Skyryse produce the file listing and connection history for Mr. Wang's Skyryse-issued laptop (80RMDK3). We explained that Skyryse already produced this laptop to iDS prior to Moog filing its motion, which we further confirmed at the hearing and in the demonstrative we filed with the Court. (ECF 280.) You confirmed for us that Moog is therefore withdrawing its request for Mr. Wang's laptop.

We then discussed the three laptops Moog demands Skyryse produce in their entirety. These include the laptops issued by Skyryse to Sathya Achar, Eric Chung, and Tri Dao. We asked you to identify the evidentiary basis on which Moog bases its belief that these three laptops contain evidence that is relevant to the parties' claims or defenses, and how that could justify Moog's demands for every single file on these computers rather than just the potentially relevant ones. You responded by pointing to the fact that these individuals were identified in Skyryse's prior filings, and you also stated that Moog has additional reasons to believe these devices contain potentially relevant evidence but claimed that information is privileged. We reject your suggestion that asking Moog to establish the relevance of the discovery it seeks requires any sort of privilege waiver, which we discuss in more detail below. We also disagree that any statements made in Skyryse's prior filings regarding these three individuals' personal devices and accounts provides a basis to demand the production of their Skyryse-issued laptops, much less in their entirety and without any attempt to focus on potentially relevant information.

**LATHAM&WATKINS**LLP

  Setting aside that all three of these individuals have been subpoenaed in their personal capacities, Moog has identified no basis beyond its speculation to believe that potentially relevant information in their personal devices and accounts, if any exists, made its way onto the Skyryse-issued laptops Moog now demands in discovery.[1] Moog apparently has a pattern of expecting its employees to use their personal devices when handling allegedly confidential material at Moog. And Moog appears to have taken no reasonable steps to review or inquire into the contents of such personal devices when its former employees left Moog. This is no justification for the overbroad discovery of Skyryse-issued devices that Moog now demands.

  We next discussed Moog's demand that Skyryse produce file listings and connection logs for five additional laptops issued by Skyryse to Lawrence Chow, Santiago Correa-Mejia, John Stafford, Cynthia Le, and Mario Brenes, all of whom Moog has also subpoenaed in their personal capacities. We first asked you about the laptops and whether Moog has any basis to believe they contain potentially relevant evidence beyond the fact that they were connected to the 55D28D65 USB device, which as we have explained repeatedly to you and the Court, is used by Skyryse's IT department to set up laptops.[2] You confirmed that Moog has no other basis but you insisted that you cannot simply take us at our word regarding the contents of the 55D28D65 USB device, which you speculate may contain Moog confidential information.

  Even though Moog has articulated no basis for the relevance of the IT department's 55D28D65 USB device, we asked for your response to what Skyryse believes could be an entirely reasonable and workable potential compromise. Specifically, we asked you whether Moog would agree to Skyryse producing the file listing of the 55D28D65 device so that Moog can confirm for itself that the device does not contain information relevant to this case, and which would do away with Moog's need for file listings and connection histories of the laptops that were connected to it. You rejected that compromise. And when we asked you again whether Moog has any other basis to demand the production of information from these laptops beyond their connection to the 55D28D65 device, you shifted gears and averred that "there are other bases," but claimed that you could not disclose them because that information is privileged.

  Once again, we disagree that simply establishing the relevance of the discovery it demands requires Moog to waive privilege, and Skyryse has no intention of inquiring into privileged or work product information. Moog has provided no legal authority to support the position that it can

---

[1] Skyryse's June 14 filing (ECF 156) explained that its investigation had "revealed that at Mr. Pilkington's instruction, at Skyryse Mr. Chung used what he understood to be Mr. Pilkington's personal USB hard drive and reviewed some Moog code for approximately five to ten minutes related to a demonstration of an open-source document-generation tool called Doxygen." (ECF 156 at 18.) That "investigation has not indicated that Mr. Chung subsequently accessed or used any of this Moog code or deleted potentially relevant evidence" (*id.*), and these facts provide no basis for Moog's demands for the entire contents of his Skyryse-issued laptop.

[2] Gibson Dunn's May 4 letter reflects that the J54MD5K laptop was connected to two additional USB devices. But as you know, both of those USB devices have been produced to iDS and Skyryse produced the connection history between this laptop and the USB device moog claims was wiped by Ms. Kim.

refuse to disclose the factual bases for its claim that these devices contain relevant evidence on privilege grounds. Instead, as the propounding party, Moog "bears the burden of initially showing relevance," *Mandell v. The Maxon Co.*, No. 06 CIV. 460 (RWS), 2007 WL 3022552, at *1 (S.D.N.Y. Oct. 16, 2007), and is not entitled to discovery without demonstrating a factual basis that requests would lead to relevant evidence. *See Surles v. Air France*, No. 00CIV5004(RMBFM), 2001 WL 1142231, at *2 (S.D.N.Y. Sept. 27, 2001) (explaining that information "does not become relevant merely because [a party] speculates that it might reveal useful material") (internal citations and quotations omitted). You confirmed for us, however, that Moog does not intend to identify for us, or the Court, any additional bases as to why it believes these devices contain relevant evidence, but also that you would go back to your team to determine whether there is additional non-privileged information about Moog's reasons for seeking the production of these laptops that Moog would provide in advance of the November 7 filing deadline.

Setting aside the above, and without conceding that Moog has met its burden to establish that these devices contain relevant evidence, as it has not, Skyryse is prepared to produce the file listings for the laptops issued to Sathya Achar, Eric Chung, and Tri Dao and the 55D28D65 USB device. To the extent Moog can show that any of the files identified in those listings reflect relevant evidence it needs to identify its own trade secrets, Skyryse will produce those files and their relevant metadata pursuant to the iDS protocol.

## II.   VOLUME SHADOW COPIES

We also discussed Moog's demand that Skyryse produce a complete VSC[3] for iDS Device No. E0001 dated March 3, 2022. We asked you whether Moog has any basis to assert that the Volume Shadow Copy contains relevant evidence beyond what was identified in Moog's motion to compel discovery for further trade secret identification. (ECF 210.) Specifically, that motion (and the accompanying declaration of Mr. Pixley) asserts that Moog requires access to the VSC to investigate the contents of approximately 780 files Mr. Pixley believes were deleted from Ms. Kim's computer, and to determine whether those files contain Moog information.

Given the limited need identified in Mr. Pixley's declaration, we asked you why the production of those 780 specific files from the VSC would not enable Mr. Pixley to determine the content of those files, without requiring the production of countless other irrelevant files on the VSC. You responded that Moog needs access to the entire VSC because Moog needs to investigate forensic information for those files, including when they were accessed, modified, or deleted and by whom. We asked you why Skyryse could not then produce the specific files identified by Mr. Pixley along with the types of metadata Moog believes is necessary to identify its trade secrets. You agreed to follow up on that issue with Mr. Pixley and get back to us. We also asked you whether Moog is willing to identify the 780 files Mr. Pixley believes were deleted by Ms. Kim so Skyryse could investigate the issue as well. You refused on our call to provide the list of files but you agreed to take the issue back to your team.

---

[3] A Volume Shadow Copy, or VSC, is a snapshot or backup of a Microsoft Windows computer.

**October 31, 2022**
**Page 4**

**LATHAM & WATKINS** LLP

Sincerely,

Arman Zahoory
of LATHAM & WATKINS LLP