14:29:33

1                    UNITED STATES DISTRICT COURT

2                   WESTERN DISTRICT OF NEW YORK

3
      - - - - - - - - - - - - - X
4     MOOG INC.,                  )      22-CV-187
                      Plaintiff  )
5     vs.
                                         Buffalo, New York
6     SKYRYSE, INC., et al        )   November 10, 2022
                      Defendant.          3:00 p.m.
7     - - - - - - - - - - - - - X
      **ORAL ARGUMENT**
8     **Proceeding held via Zoom for Government Platform**
      **All parties appeared remotely.**
9
                      TRANSCRIPT OF PROCEEDINGS
10        BEFORE THE HONORABLE JEREMIAH J. MCCARTHY
                  UNITED STATES MAGISTRATE JUDGE
11

12    FOR PLAINTIFF: SHEPPHARD MULLIN RICHETER & HAMPTON, LLP
                      BY: RENA ANDOH, ESQ.
13                        TRAVIS ANDERSON, ESQ.
                          KAZIM A. NAQVI, ESQ.
14

15    FOR DEFENDANT:  LATHAM & WATKINS, LLP
                      BY: GABRIEL S. GROSS, ESQ.
16                        JOSEPH LEE, ESQ.
                          ARMAN ZAHOORY, ESQ.
17                         -and-
                          TERRANCE FLYNN, ESQ.
18                    HARRIS BEACH, LLP

19    FOR DEFENDANT
      PILKINGTON/KIM: WINGET, SPADAFORA & SCHWARTZBERG, LLP
20                    BY: ALEXANDER ASHER TRUITT, ESQ.
                          ANTHONY D. GREEN, ESQ.
21                        ANNABEL MIRELES, ESQ.

22

23

24

25    **COURT REPORTER: Karen J. Clark, Official Court Reporter**
                      **Karenclark1013@AOL.com**

```
 1                    MOOG INC VS. SYRYSE, INC, ET AL
 2                 P R O C E E D I N G
                   *              *              *
 3

 4

 5      MAGISTRATE JUDGE MCCARTHY:  Good afternoon,
 6  everyone.
 7      MR. GROSS:  Good afternoon.
 8      MS. ANDOH:  Good afternoon.
 9      MAGISTRATE JUDGE MCCARTHY:  Okay.  I count
10  -- okay.  It looks like the gang is all here.
11      Eric, you want to call the case.
12      THE CLERK:  Yes, Judge.  We're in on the
13  record in case No. 22-CV-187, Moog Inc v. Skyryse, Inc.,
14  et. Al for a continuation of discovery hearings slash
15  oral argument.
16      Appearances by video are Rena Andoh, Kazim
17  Naqvi, Travis Anderson for Plaintiff; Gabriel Gross,
18  Joseph Lee, Arman Zahoory and Terrance Flynn for
19  Defendants Skyryse; Alex Truitt, Anthony Green and
20  Annabel Mireles for the individual Defendants.
21      The Honorable Jeremiah J. McCarthy
22  presiding.
23      MAGISTRATE JUDGE MCCARTHY:  Good afternoon.
24  Yeah, I guess it's good afternoon for everybody now,
25  even those of you in San Francisco, right?
```

|       |                                                              |
|-------|--------------------------------------------------------------|
| 1     | MOOG INC VS. SYRYSE, INC, ET AL                              |
| 2     | MR. GROSS:  It is.                                            |
| 3     | MAGISTRATE JUDGE MCCARTHY:  Afternoon all.                   |
| 4     | All right.  I have received and reviewed the November        |
| 5     | 7th letters from Rena Andoh and Gabe Gross, and, I mean,     |
| 6     | in addition to everything else that is already on file.      |
| 7     | I've also briefly reviewed the motion for clarification,     |
| 8     | Moog's motion, which is docket No. 283, as to which no       |
| 9     | briefing schedule has been filed yet, so why don't we        |
| 10    | start out with the letters, and I appreciate the fact        |
| 11    | that, based on your meetings and discussions among the       |
| 12    | parties since our last get together, that you have           |
| 13    | resolved some of the issues.  So, I applaud you for your     |
| 14    | progress in that regard.                                     |
| 15    | Oh, by the way, just a point of information,                 |
| 16    | and you all may have already heard this, I spoke to          |
| 17    | Judge Vilardo's law clerk, Will Hayes, and, apparently,      |
| 18    | the argument on the jurisdictional or venue issues is        |
| 19    | going to be scheduled in a couple of weeks.                  |
| 20    | Is that everybody's understanding?                           |
| 21    | MR. GROSS:  Yes, your Honor.  I think the                    |
| 22    | parties and Chambers were just working on exactly which      |
| 23    | date, probably the 29th or 30th, if I recall.                |
| 24    | MAGISTRATE JUDGE MCCARTHY:  Okay.  Okay.                     |
| 25    | Well, that's obviously not in my bailiwick, so I'm going     |

1          MOOG INC VS. SYRYSE, INC, ET AL

14:32:58  2   to proceed on the assumption that we are remaining here,

14:33:04  3   at least for the present time.  And if he takes a

14:33:07  4   different view, then so be it.

14:33:09  5          Okay.  I understand from the letters that

14:33:12  6   you have resolved the issue of the volume of shadow

14:33:20  7   copies, correct?

14:33:20  8          MR. GROSS:  That's correct, your Honor.

14:33:21  9          MAGISTRATE JUDGE MCCARTHY:  Okay.  All

14:33:23 10   right.  So let's talk about the production of Skyryse

14:33:35 11   laptops and the USB drives.  I understand that Moog took

14:33:39 12   up my suggestion to pick out three laptops, and I've

14:33:48 13   reviewed the letters with respect to the party's

14:33:52 14   positions on that, so, I'll hear from whoever wants to

14:33:56 15   be heard, I guess, Moog first.

14:34:04 16          MR. NAQVI:  Thank you, your Honor.  I'll be

14:34:07 17   arguing on behalf of Moog.

14:34:09 18          MAGISTRATE JUDGE MCCARTHY:  Okay.

14:34:11 19          MR. NAQVI:  So, your Honor, I think it's

14:34:13 20   important to take a step back and just set the table of

14:34:39 21   how we got to this dispute in the first place.  As your

14:34:43 22   Honor knows, Moog filed this lawsuit because of the

14:34:47 23   massive theft of data that has occurred.  The theft

14:34:50 24   itself is not disputed, and Moog wants its data back.

14:34:55 25   And pursuant to the March 11th order, Skyryse agreed to

1          MOOG INC VS. SYRYSE, INC, ET AL

14:35:00   2   return to Moog all of its non-public information.  In

14:35:03   3   late April, with Skyryse's prior counsel, they disclosed

14:35:29   4   to the Court that Moog data had, in fact, been located

14:35:32   5   on Skyryse's systems.  And that potential relevant

14:35:36   6   information has been deleted.  And we also know that

14:35:38   7   Skyryse placed a number of employees on leave, and,

14:35:41   8   eventually, terminated some of them.  And all three of

14:35:45   9   the custodians for the three laptops that Moog is

14:35:48  10   seeking the production of, were placed on leave.  So,

14:35:52  11   that is the background that we're dealing with, and I

14:35:54  12   think it's important to know that.  While this is a

14:35:56  13   discovery issue, this also deals with compliance with

14:36:07  14   the March 11th order and the return of Moog's data,

14:36:27  15   which Skyryse stipulated to.  So, at the last hearing we

14:36:31  16   had, we heard Mr. Gross say over and over again that

14:36:34  17   Moog is conducting a fishing expedition and has not made

14:36:38  18   a showing of relevance regarding laptops.  Mr. Gross

14:36:42  19   said, quote, "they are not telling you that the laptops

14:36:45  20   do have Moog data on it.  This is speculation that they

14:36:49  21   do.  We have no reason to think that the laptops are

14:36:54  22   laden with Moog data.  If they have specific discovery

14:37:15  23   that is based on fact, that would be different, but we

14:37:18  24   don't."

14:37:20  25          And so, from Moog's perspective, it already

1          MOOG INC VS. SYRYSE, INC, ET AL

14:37:23  2  had made a factual showing of relevance based on

14:37:27  3  Skyryse's own May 4th letter.  But at the last hearing,

14:37:31  4  Skyryse essentially challenged Moog to show that there

14:37:35  5  were Moog data on these computers.

14:37:37  6          MAGISTRATE JUDGE MCCARTHY:  Mr. Naqvi, Mr.

14:37:39  7  Naqvi, just a second because you were partially frozen,

14:37:45  8  I think.  Now I can see you moving.

14:37:47  9          Okay.  Just repeat the last couple of

14:37:50  10 sentences, if you would.

14:37:54  11          MR. NAQVI:  I apologize, your Honor.  I'm

14:37:55  12 having computer issues, I'm dialling in on my phone.  I

14:37:59  13 hope there is no more technical issues.

14:38:02  14          What I was saying is at the last hearing,

14:38:05  15 Skyryse challenged Moog to show that there was Moog data

14:38:08  16 on these computers.  That challenge was accepted.  And

14:38:12  17 Moog, as you've seen in the papers, has provided "the

14:38:34  18 discovery that is based on in fact" that Mr. Gross was

14:39:30  19 asking for at the last hearing.  As your Honor can see

14:39:33  20 in our letter, we provided specific examples of Mr.

14:39:37  21 Chung, Mr. Achar and Mr. Dao using Skyryse's e-mail

14:39:42  22 accounts and laptops to send and receive Moog

14:39:45  23 information.  For Mr. Achar, we discovered that he was

14:39:48  24 copied on at least three e-mails with Mr. Pilkington

14:39:52  25 with Moog documents as attachments.  For Mr. Chung, we

1          MOOG INC VS. SYRSE, INC, ET AL

14:39:55   2    discover that he created at least 255 spreadsheets while

14:39:59   3    at Moog, and tried to repurpose them for Skyryse use.

14:40:03   4    For Mr. Dao, we discovered that he exchanged at least

14:40:06   5    one e-mail with Alex Wang that contained Moog data.  And

14:40:11   6    as a reminder to the Court, Alex Wang is the individual

14:40:15   7    that Skyryse identified as deleting potentially relevant

14:40:20   8    evidence in this case.  So, there can be now no dispute

14:40:23   9    that each of these three individuals used their Skyryse

14:41:48   10   e-mail accounts and laptops to send and receive Moog

14:41:52   11   information.  And with this additional evidence that we

14:41:55   12   provided, instead of backtracking, Skyryse is doubling

14:41:59   13   down.  They previously said these laptops don't have

14:42:02   14   Moog data, and now they are claiming that Moog just

14:42:05   15   identifying certain examples of files on these computers

14:42:09   16   is not enough to produce the computers wholesale.

14:42:13   17   Skyryse's position appears to be that because the

14:42:35   18   evidence shows that these individuals may not have

14:42:38   19   engaged in the same level of misappropriation as Kim and

14:43:10   20   Pilkington that their computers do not need to be

14:43:13   21   produced.  But, your Honor, this is a trade secret

14:43:16   22   misappropriation case.  If Moog can show that any of its

14:43:19   23   data or files has been misappropriated, then it is

14:43:22   24   entitled to investigate the devices that were involved.

14:43:25   25   I mean how many files do we need to prove that are on

1          MOOG INC VS. SYRYSE, INC, ET AL

14:43:32  2  these computers, millions?  That is not how this case

14:43:34  3  can work.  And as I said before, this goes beyond the

14:43:38  4  discovery issues.  This deals with compliance with the

14:43:40  5  March 11th order.

14:43:41  6         And I think there is one more very important

14:43:44  7  thing to point out.  Skyryse's letter claims that, well,

14:43:58  8  Moog already has copies of the documents that it

14:44:00  9  identified in its letter, so it doesn't need the

14:44:03 10  computers.  And this shows that Skyryse's searches for

14:44:07 11  Moog data are working.  But that is completely false.

14:44:10 12  Moog only discovered the documents that it submitted,

14:44:13 13  that it identified in its letter, by reviewing Kim and

14:44:18 14  Pilkington's files.  So, this is a very indirect purview

14:44:21 15  that Moog has.  If Kim and Pilkington did not e-mail

14:44:25 16  Moog documents to these three individuals, we would not

14:44:28 17  be able to discover it.  So, there is no telling what

14:44:32 18  other Moog data resides on these computers that were not

14:44:35 19  directly sent by Kim and Pilkington via e-mail.  And

14:44:39 20  because of this, Moog has concerns that Skyryse's search

14:44:44 21  and turn over of Moog data pursuant to the March 11th

14:45:08 22  order may not have been complete.  And we are

14:45:10 23  discovering evidence that it likely was not complete.

14:45:13 24  And so it's not proper for Skyryse to say at the last

14:45:17 25  hearing, well, your Honor, this is a fishing expedition,

1                MOOG INC VS. SYRSE, INC, ET AL
2    Moog cannot identify any data on these computer.  And
3    when Moog does that exact same thing, Skyryse says,
4    well, Moog already has the files, so they don't need the
5    computers.  But that is not how this case works and that
6    is not how trade secret cases work.  We already have a
7    stipulated order that devices containing Moog
8    information must be returned.  And we're discovering
9    evidence that there are some inconsistencies with
10   Skyryse's compliance with that order.
11               So, now let's talk about Skyryse's proposal.
12   Skyryse's proposal is that, instead of producing these
13   three laptops, Moog should just review the file listings
14   for them, identify any potentially relevant files, and
15   then Moog can request a production of those files from
16   Skyryse.  There are two big problems with that proposal,
17   your Honor.
18               First, file listings prevent Moog from
19   accessing critical forensic information on the
20   computers.  The file listings do not allow Moog to
21   understand if and when any data was deleted.  And of
22   course file listing will only show what files are
23   currently on that computer.  Only the computers
24   themselves will allow Moog to investigate the deletion
25   of any files.  As your Honor knows, there have been

1                    MOOG INC VS. SYRSE, INC, ET AL

14:48:03    2    multiple instances of deletions of information by

14:48:09    3    multiple Skyryse's employees.  So the computers at issue

14:48:35    4    exchanged Moog data with the very people who deleted

14:48:39    5    Moog data.  And so Moog needs to be able to fully

14:48:42    6    investigate this.

14:48:43    7                    Second, file listings do not allow Moog to

14:48:46    8    understand when certain documents were created, who

14:48:48    9    created them, when they were transferred or who they

14:48:52   10    were transferred to.  It would only, again, provide the

14:48:57   11    name of the file, but that would not allow Moog to do a

14:49:00   12    full investigation.

14:49:00   13                    The third problem with the file listing is

14:49:02   14    that it only gives Moog a surface level insight as to

14:49:06   15    the actual files.  For example, files could have been

14:49:09   16    renamed or repurposed, and Moog would not have any way

14:49:12   17    of knowing whether they contain Moog data or not without

14:49:16   18    looking at the files.  And we saw this very thing happen

14:49:23   19    with Eric Chung.  He took Moog spreadsheets and

15:03:35   20    repurposed them for Skyryse purposes.  So, if these

15:03:38   21    files were completely renamed to language or terms that

15:03:52   22    Moog doesn't use, it wouldn't be able to understand the

15:03:58   23    relevance of those files.  And the more practical issue,

15:04:02   24    your Honor, with Skyryse's proposal is that it's going

15:04:05   25    to create additional and unnecessary delay.  This Court

1          MOOG INC VS. SYRSE, INC, ET AL

15:04:08  2  has stated that it wants the trade secret identification

15:04:11  3  process to move forward, so does Moog.  But what is

15:04:15  4  going to happen under Skyryse's proposal is that Moog

15:04:18  5  would review the file listings and request the

15:04:21  6  production of certain files.  And given the history in

15:04:24  7  this case, Skyryse would likely object, the parties

15:04:30  8  would have to meet and confer, and there would likely be

15:04:36  9  substantial additional motion practice to get these

15:04:40  10  issues resolved.  And so that is additional months of

15:04:43  11  delay before the trade secret identification can

15:04:46  12  proceed.  And Moog, just like the Court, wants to

15:04:49  13  identify its trade secrets after getting access to the

15:04:52  14  information it needs.

15:04:53  15          And, your Honor, I'll just end with a

15:04:55  16  discussion of Skyryse's legal authority.  Skyryse cited

15:04:58  17  a number of cases in their letter that are completely

15:05:02  18  off point.  And I'm happy to discuss any of those cases

15:05:06  19  in particular if your Honor has any questions, but I'll

15:05:09  20  speak to some of them generally.  Skyryse cited to cases

15:05:42  21  that do not involve misappropriation of trade secrets,

15:05:46  22  the deletion of data, or other forensic information

15:05:49  23  necessary to this case.  They did not cite to cases that

15:05:53  24  involved a stipulated order where devices and the return

15:05:57  25  of the Plaintiff's information was already agreed to.

```
 1                MOOG INC VS. SYRYSE, INC, ET AL
 2   Many of the cases that Skyryse cite, involved the
 3   production of personal laptops or personal cell phones.
 4   And the Courts in those cases had privacy concerns
 5   because those are personal devices.  Your Honor, here
 6   we're dealing with Skyryse issued laptops, these are
 7   work laptops.  And many of the cases that Skyryse cites
 8   involves courts determining that, you know, you can't
 9   just get production of a computer or an image of a
10   computer just because you want to search for documents.
11   But these same courts hold that imaging of electronic
12   devices is justified where there are "discrepancies or
13   inconsistencies" in the opposing party's production.
14   That is exactly what we have here.  We have demonstrated
15   discrepancies and inconsistencies in Skyryse's positions
16   and their purported compliance with the March 11th
17   order.
18                And I will just address one case because
19   this is the main case that Skyryse cites.  It's *Calyon*
20   *v. Mizuho*.  And in that case, the Court dealt with the
21   imaging of personal computers and personal devices.  And
22   the Court had privacy concerns because those were
23   personal devices.  We don't have that issue for this
24   dispute.  And, here, the protective order and inspection
25   protocol provide detailed protection for the production
```

1          MOOG INC VS. SYRSE, INC, ET AL

2    or excision for Moog's information.  And, your Honor, I

3    want to point out one thing, the a *Calyon* case actually

4    supports Moog's position.  The Court in that case held

5    that, "In cases where a Defendant allegedly used a

6    computer itself to commit the wrong that is the subject

7    of the lawsuit, certain items on the hard drives may be

8    discoverable and that allegations that a Defendant

9    downloaded trade secrets onto a computer provide a

10   sufficient nexus between Plaintiff's claims and the need

11   to obtain a mirror image of the computer's hard drive."

12   So, *Calyon* is exactly on point.  It identifies certain

13   scenarios where getting access to an image or a computer

14   itself is appropriate in a trade secret case such as

15   this one.  So, I'm happy to discuss this case or the

16   optics in more detail, I just want to let the Court know

17   that the cases that Skyryse cite are not applicable to

18   the facts in this case.

19          MAGISTRATE JUDGE MCCARTHY:  Okay.  Thank

20   you.  Who wants to speak on behalf of Skyryse?

21          MR. GROSS:  Thank you, your Honor.  That's

22   me, Gabe Gross, speaking --

23          MAGISTRATE JUDGE MCCARTHY:  Gabe.

24          MR. GROSS:  -- for Skyryse.  Relevance and

25   proportionality are sort of the hallmarks under Rule 26

MOOG INC VS. SYRYSE, INC, ET AL

for discoverability.  So let's keep in mind where we are in the discovery process here.  Skyryse has already provided two terabytes of data to Moog.  We talked about some metrics on trying to help conceptualize or image conceptually just how much information that is.  That is equivalent to 150 million pages of text or data that Skyryse has already provided.  It's a significant amount of discovery, to say the least.  And what we're here disputing now is just how much more Moog claims to need from Skyryse before Moog identifies its own trade secrets.  So, we did have the discussion that Mr. Naqvi referred to to talk about what facts it could point to that could justify turning over entire machines wholesale, entire laptops, USB drives, things like that that in and of themselves contain hundreds of thousands, possibly millions of millions of files.  And so for these three laptops, in particular, they pointed us to the facts that Mr. Naqvi talked about.  Let's take the Skyryse issued laptop that was used by an employee named Tri Dao, for example.  We asked them to show us some facts that could establish the relevance of this entire laptop in discovery.  And, your Honor, they pointed us to one e-mail.  One e-mail.  That does not justify wholesale indiscriminate discovery of an entire computer

1          MOOG INC VS. SYRYSE, INC, ET AL

15:13:15   2   and all of its irrelevant contents.  What they said

15:13:21   3   about the e-mail is that it has the word "Moog" in its

15:13:24   4   metadata, not in the contents, they didn't say it

15:13:27   5   contained a trade secret.  They said the word "Moog"

15:13:30   6   showed up in metadata in an e-mail that was connected to

15:13:35   7   Mr. Dao, and now they are asking to you order broad

15:13:38   8   discovery into everything on his computer, all of the

15:13:41   9   hundreds of thousands of files.  For Mr. Achar, it is a

15:13:45   10  similar story.  They pointed us to three e-mails.

15:13:47   11  Again, they have the e-mails and they say the word

15:13:51   12  "Moog" ended up in the metadata in these e-mails.  And

15:13:54   13  so they now want Mr. Achar's entire laptop.  They are

15:13:59   14  not seeking targeted, focused, relevant discovery about

15:14:25   15  the e-mails that they are concerned about, which may be

15:14:28   16  a manageable universe.  They are demanding

15:14:31   17  indiscriminate discovery of God knows how many files

15:14:36   18  simply because they argue that these people are relevant

15:14:38   19  and these particular e-mails, four in the interest of

15:14:42   20  those four custodians, are relevant.  So, respectfully,

15:14:47   21  I would urge your Honor to find that pointing to an

15:14:50   22  e-mail is not justification for broad discovery of an

15:14:54   23  entire laptop.  This stuff is preserved.  This stuff is

15:14:58   24  secured.  But discovery needs to be bounded by relevance

15:15:03   25  of proportionality on top of the two terabytes of data

```
                    MOOG INC VS. SYRSE, INC, ET AL
15:15:07   2   they already have.
15:15:08   3               And Mr. Naqvi ended his presentation with
15:15:11   4   the discussion of all of the cases that we cite, and
15:15:13   5   there are seven or eight, including district courts here
15:15:17   6   in New York, that, your Honor, we've explained to the
15:15:19   7   Court in the briefing that I won't repeat, but these
15:15:22   8   courts have consistently limited discovery based on some
15:15:27   9   pretty simple principles, which is just because a
15:15:32   10  Plaintiff wants to search to see if relevant data
15:15:37   11  exists, that doesn't, pardon me, that doesn't justify
15:15:41   12  indiscriminate discovery into entire machines,
15:15:45   13  especially where the Plaintiff appears to have the
15:15:48   14  documents at issue.  And there is no indication from the
15:15:50   15  producing party that it's blocking or stymieing
15:15:54   16  discovery about those particular topics.  So, Mr. Naqvi
15:15:58   17  explained that, from his perspective, they think they've
15:16:01   18  made their showing of relevance, your Honor.  And they
15:16:06   19  may have done that with respect to those four e-mails,
15:16:08   20  they certainly have not done that with respect to the
15:16:11   21  contents of an entire device.
15:16:13   22              I mentioned Mr. Achar and Mr. Dao's laptops,
15:16:16   23  but I would like to take a moment to talk about Mr.
15:16:19   24  Chung's.  And what Moog put in its statement to the
15:16:22   25  Court I think was pretty interesting.  And what they
```

1                MOOG INC VS. SYRYSE, INC, ET AL
15:16:25   2   claimed was that they are aware of 255 files that Mr.
15:16:30   3   Chung made while he was at Moog.  He did work at Moog
15:16:35   4   before he worked at Skyryse.  They are aware of files
15:16:38   5   that he made while he was at Moog.  That is their words,
15:16:41   6   "while he was at Moog."  And they found them, according
15:16:44   7   to Moog, in Kim and Pilkington's data sets.  Not in
15:16:50   8   Chung's, but in Kim and Pilkington's.  And rather than
15:16:54   9   seeking discovery into those files, they are asking for
15:16:57  10   his entire laptop.  And they even, they even say, your
15:17:01  11   Honor, something, I need to correct the record on,
15:17:04  12   because it's false, they try and cast Mr. Chung as
15:17:06  13   having been terminated because he engaged in some
15:17:10  14   nefarious activity.  They've actually said on page 3 of
15:17:14  15   their letter at docket No. 282, that "he was later
15:17:17  16   terminated from Skyryse because Skyryse admits that
15:17:22  17   Chung used one of Mr. Pilkington's devices."  Your
15:17:26  18   Honor, that is just false.  They know that, and they
15:17:30  19   know that because we've kept Moog's counsel apprised of
15:17:34  20   our investigation along the way.  On June 21st -- June
15:17:38  21   24th, we learned that Mr. Chung had resigned, it was
15:17:43  22   effective that day.  I wrote Ms. Andoh a letter and
15:17:46  23   updated her on that fact.  He resigned.  He wasn't
15:17:49  24   terminated because of engaging in some conduct with Mr.
15:17:52  25   Pilkington.  So, you know, the picture that Moog's

1      MOOG INC VS. SYRSE, INC, ET AL
15:17:56    2   counsel are painting in their letter and through their
15:17:59    3   argument is not entirely accurate, your Honor, and they
15:18:03    4   haven't made any showing of the relevance of the entire
15:18:06    5   contents of these devices, but that is what they are
15:18:10    6   asking for.  So, Skyryse has done anything but stand in
15:18:14    7   the way of proportionate, relevant discovery.  We
15:18:18    8   understand they are interested in files that might have
15:18:21    9   been in the custody of these three employees.  We have
15:18:24   10   their laptops image.  We explained how they haven't come
15:18:28   11   close to showing the relevance of the entire contents of
15:18:32   12   these laptops, but we've got them preserved and we said,
15:18:35   13   look, we'll show you the listing of the files if there
15:18:39   14   is something in there that you can say is relevant.  For
15:19:18   15   example, if they can see the 255 Excel files that they
15:19:23   16   say Mr. Chung made on his Moog on his laptop, we will
15:20:29   17   turn them over, no problem, we will turn them over.  If
15:20:38   18   these e-mails that we're hearing about in the letter,
15:20:40   19   we'll turn them over.  And if they have other things
15:20:43   20   that they can show are relevant, we're more than willing
15:20:46   21   to have the discussion with them and provide the
15:20:48   22   relevant files.  But that is what discovery is about,
15:20:52   23   relevant, proportionate discovery of information that
15:20:56   24   actually relates to the issues in the case, the claims
15:20:57   25   and defenses, not Dao and Achar's calendar entries and

1          MOOG INC VS. SYRSE, INC, ET AL

15:21:00    2    and personal photos and whatever else might be on these

15:21:05    3    laptops, not to mention all of their confidential,

15:21:08    4    propriety unrelated work at Skyryse.  The vast majority

15:21:13    5    of these laptops will not be relevant to this lawsuit,

15:21:16    6    but that is exactly what Moog continues to demand

15:21:19    7    through this discovery request.

15:21:21    8          So, respectfully, we think if there is more

15:21:24    9    discovery to be had so they can identify their own trade

15:21:28   10    secrets, which we think they can do that right now, but

15:21:30   11    if there is more, let's do it in a step-like fashion and

15:21:34   12    let's focus on what is relevant and proportional.  We'll

15:21:38   13    show them the file files and we'll tell them what is

15:21:41   14    relevant and we will turn them over and they'll have

15:21:44   15    more information in the two terabytes, the mountain of

15:21:48   16    data that they are sitting on.  But this idea that they

15:21:51   17    made a satisfactory showing of relevance and entire

15:21:55   18    contents of the laptops is just wrong.  They haven't.

15:21:58   19    They haven't addressed the entire contents.  They

15:22:01   20    addressed the factual matter they are interested in and

15:22:05   21    shown the relevance of the three, four e-mails and some

15:22:09   22    of Mr. Chung's work, if it's even on his laptop, they

15:22:13   23    only said they identified it in Kim and Pilkington's

15:22:17   24    laptops.  I think there is a path forward here, but,

15:22:21   25    respectfully, it needs to focus on relevant information,

1          MOOG INC VS. SYRSE, INC, ET AL

15:22:24   2   relevant discovery, without putting the undue burden on

15:22:27   3   Skyryse without having to look at the entire contents of

15:22:31   4   whole computers and review them for privilege and expose

15:22:33   5   the sensitive, confidentially sensitive, propriety,

15:22:38   6   confidential and irrelevant data that is on the laptops

15:22:41   7   that is not going to move the needle on the case one way

15:22:46   8   or the other in this case.  So I think I'll rest there

15:22:46   9   on the three laptops.  And we've got some other

15:22:50   10  comments, but I think that is the gist of it from

15:22:52   11  Skyryse's perspective on those three laptops.  Thank

15:22:54   12  you, your Honor.

15:22:55   13          MAGISTRATE JUDGE MCCARTHY:  Mr. Gross, could

15:22:57   14  you, and I know you've already said it once, but for my

15:23:02   15  benefit, could you explain what your proposal would be

15:23:08   16  relative to these three laptops.  If I understand

15:23:12   17  correctly, I think it's the same proposal as to the

15:23:14   18  other laptops that Moog has not designated.  Is that

15:23:18   19  right?

15:23:18   20          MR. GROSS:  Yes, your Honor.  I think I can

15:23:20   21  answer that, your Honor.  What our proposal is that one

15:23:25   22  it was, yes, thank you for focusing on three instead of

15:23:28   23  nine laptops.  If those are the three you're interested

15:23:30   24  in, here is what we're willing to do to move this

15:23:33   25  forward.  We'll give you the complete list of every file

MOOG INC VS. SYRSE, INC, ET AL

15:23:36  on those three laptops, so you have the time to look at

15:23:40  it and come back to us and tell us what you think might

15:23:43  actually be relevant to the lawsuit.  And I think that

15:23:45  does everyone a favor.  They can look at the calendar

15:23:50  entries and all the types of things we know won't have

15:23:52  anything to do with the lawsuit, and they can focus on

15:23:55  the things that we think will be relevant to the claims

15:23:58  in the case and we can move forward in that way.  With

15:24:02  respect to the other laptops, if I understand Moog's

15:24:04  position right now, there are five or six others, they

15:24:07  want the file listing of those, too, and they haven't

15:24:09  made any showing of relevance for that.  With respect to

15:24:13  the laptops, our position is let's go in step-wise

15:24:16  fashion for the three they are interested in to help

15:24:19  them focus on what they think is relevant and what would

15:24:22  help them make their trade secrets.  And as for the

15:24:25  other laptops, they made no showing of relevance on, and

15:24:26  so while they are preserved and they are not going to go

15:24:28  away, we don't see any discovery to those laptops being

15:24:32  necessary or appropriate right now.

15:24:33          MAGISTRATE JUDGE MCCARTHY:  Okay.  Mr.

15:24:35  Naqvi, any brief response on that?

15:24:38          MR. NAQVI:  Yes.  I'll just give a few brief

15:24:42  responses.  Your Honor, Mr. Gabe, or, excuse me, Mr.

                        MOOG INC VS. SYRYSE, INC, ET AL
15:24:45  2   Gross focused on the fact that we identified a couple of
15:24:49  3   handful of e-mails and we haven't demonstrated relevance
15:24:53  4   for the entire laptop.  Your Honor, we're being
15:24:58  5   prevented from doing that.  Again, we were only able to
15:24:59  6   identify files that they sent and received from
15:25:02  7   Pilkington and Kim.  We have to use an indirect route to
15:25:05  8   identify relevant files in the computers because, of
15:25:08  9   course, we haven't had access to them.  They haven't
15:25:12  10  produced Mr. Achar or Mr. Chung or Mr. Dao's e-mail
15:25:16  11  files.  We haven't been able to find them.  We've been
15:25:19  12  able to make a factual showing of relevance based on the
15:25:23  13  limited information we do have.  And this is a trade
15:25:27  14  secret misappropriation case.  This is not a normal
15:25:28  15  case.  This case inherently involves forensic issues.
15:25:32  16  And, as I said before, a file listing ties one hand
15:25:36  17  behind Moog's back in doing its forensic investigation.
15:25:39  18  Your Honor has already seen there has been a deletion of
15:25:42  19  data.  We need to be able to investigate that.  That is
15:25:49  20  exactly why, pursuant to the March 11th order, Skyryse
15:25:55  21  agreed to turn over to the Moog all of its non-public
15:26:00  22  information.  And to the extent any Moog information was
15:26:04  23  mixed with Skyryse information, it would be produced to
15:26:07  24  IDS.  That is why there has been dozen of devices that
15:26:10  25  have been produced to IDS.  So, this whole notion that

1         MOOG INC VS. SYRSE, INC, ET AL

15:26:14  2  we need to demonstrate that every file on the laptop or

15:26:17  3  the vast majority of the files on the laptops is

15:26:22  4  relevant, it is just not congruent on how discovery has

15:26:24  5  proceeded in this case.  If there are relevant files,

15:26:25  6  that needs to be turned over.  If the devices contain

15:26:32  7  Skyryse's information, they need to be imaged and sent

15:26:36  8  to IDS.  The vast majority of the data within IDS does

15:26:44  9  not necessarily relate to this case.  But that has been

15:26:47 10  the most efficient way to cut through discovery.

15:26:50 11        And, your Honor, I'm just going to close

15:26:52 12  with the notion that this is the most efficient way for

15:26:56 13  us to proceed by us reviewing file listings, I

15:27:00 14  completely disagree with that.  We're going to have more

15:27:03 15  disagreements on the files, and we are going to have

15:27:04 16  more motion practice about us moving to compel the

15:27:07 17  production of files and Skyryse resisting that.  And the

15:27:07 18  best way to cut through this is for us to get access to

15:27:17 19  three laptops, which we have already shown contain Moog

15:27:17 20  data.  That is the beginning and end of the

15:27:19 21  conversation.  If they contain Moog data, is there a

15:27:22 22  deletion of data, where did it go, who created it.  And

15:27:25 23  we can't do that with just file listings.

15:27:28 24        So, I'm going to end my comments on the

15:27:32 25  three laptops and I'm sure your Honor will get to the

```
                        MOOG INC VS. SYRYSE, INC, ET AL
15:27:35    2   other five in short order.
15:27:36    3           MR. GROSS:  Your Honor, if I may just very
15:27:38    4   briefly before we move on.
15:27:39    5           MAGISTRATE JUDGE MCCARTHY:  Yes.
15:27:39    6           MR. GROSS:  You know, the parties stipulated
15:27:42    7   at the outset as to which devices in their entirety
15:27:46    8   would be imaged and turned over to IDS.  That is done
15:27:49    9   and that is over.  And Mr. Naqvi raises the prospect
15:27:54   10   that data was deleted.  To the extent that happened,
15:27:59   11   either by Mr. Wang or Ms. Kim, their entire devices have
15:28:03   12   been turned over.  There were times and situations in
15:28:06   13   which the imaging and production of entire devices was
15:28:09   14   something the parties agreed to or Skyryse did
15:28:11   15   voluntarily.  That is not what we're talking about.
15:28:14   16   What we're talking about is what is left on the edges
15:28:17   17   after the two terabytes of data have been turned over
15:28:20   18   that Moog says it needs to identify its trade secrets.
15:28:24   19   They've identified three people, whose information or
15:28:26   20   whose documents they are interested in, but they haven't
15:28:28   21   made a showing as to why their entire computers are
15:28:31   22   required to be turned over.  It would go far beyond
15:28:33   23   anything the parties stipulated to or agreed to earlier
15:28:36   24   as to that sort of wholesale discovery.  I'll close
15:28:39   25   there.  Thank you.
```

1         MOOG INC VS. SYRYSE, INC, ET AL

15:28:39   2         MR. NAQVI:  Your Honor, may I make one

15:28:41   3   brief, but I think very important clarification to what

15:28:44   4   Mr. Gross just said.  The March 11th order did not say

15:28:49   5   which devices needed to be turned over.  It says Skyryse

15:28:53   6   is required to return to Moog all non-public

15:28:57   7   information.  If that non-public information necessarily

15:29:01   8   contained Skyryse information, that needed to go to IDS.

15:29:05   9   We have concerns that this process was not completely

15:29:08  10   complied with.  And we're now finding files on other

15:29:11  11   people's computers that we have to find indirectly

15:29:14  12   through Kim and Pilkington's e-mails.  How is Moog's

15:29:17  13   ability to search for relevant files as to Mr. Chow, Mr.

15:29:21  14   Dao or Mr. Chung, if we can't search for them, we've

15:29:26  15   only been able to search for custodians.  And we found

15:29:31  16   we have a strong suspicion this is the tip of the

15:29:33  17   iceberg.  If we found this amount of data through

15:29:37  18   inspecting other people's files, imagine how much Moog

15:29:41  19   data is on these computers by inspecting the computers

15:29:44  20   themselves.  And we still have not heard from Mr. Gross

15:29:48  21   that these computers do not contain Moog data.  He

15:29:50  22   obviously can't make that certification given the

15:29:53  23   evidence that has been presented.

15:29:53  24         MAGISTRATE JUDGE MCCARTHY:  So, Mr. Naqvi,

15:29:55  25   what Moog is asking for is entire imaged versions of

1          MOOG INC VS. SYRYSE, INC, ET AL

15:29:59  2    these three laptops be produced, correct?

15:30:04  3          MR. NAQVI:  That's correct, your Honor.

15:30:05  4          MAGISTRATE JUDGE MCCARTHY:  All right.  I

15:30:06  5    know that Moog's initial request was for many more

15:30:12  6    laptops to be imaged and produced.  It was my

15:30:16  7    suggestion, and, granted, I did say on October 20th that

15:30:22  8    it was just a suggestion, and I would consider things

15:30:26  9    further, but I continue to believe that a narrowing it

15:30:32  10   to three laptops is a reasonable accommodation and I

15:30:37  11   think that a sufficient showing has been made as to

15:30:39  12   these three laptops, mainly Achar, Chung and Dao, that

15:30:46  13   those imaged versions should be produced to Moog.  So, I

15:30:51  14   will order that.

15:30:53  15          Now, let's move onto the issue of the other

15:30:56  16   laptops.

15:30:59  17          MR. NAQVI:  Thank you, your Honor.  I'll --

15:31:01  18   this is a much briefer issue, as your Honor may

15:31:04  19   appreciate it.

15:31:05  20          So, for these five other laptops that have

15:31:08  21   been imaged, but not yet been produced, Skyryse does not

15:31:12  22   agree to provide anything, and, instead, is saying, we

15:31:15  23   will provide a file listing for the USB device that

15:31:19  24   these laptops were connected to.  And, Moog, you can

15:31:22  25   review the file listing for the USB device, but not the

MOOG INC VS. SYRSE, INC, ET AL

file listings for the laptops themselves.  So, your
Honor, this is now the second hearing we've had
regarding these laptops.  We still have not heard any
certification that these laptops do not contain Moog
data and that is striking.  If they contain Moog data,
we need to be able to see what that is.  And, again,
this goes back to Moog's efforts to get its data
returned to it.  And this goes beyond a discovery issue,
this goes back to the March 11th order.  For these five
laptops, Moog just wants the file listings so we can
determine to what extent these laptops have Moog data.
So Skyryse must certify that these laptops do not
contain Moog data or just turn over the file listings.
And the burden associated with turning over the file
listings is minimal.  And so Skyryse's proposal is we
will review the listing for the USB and not the laptop
itself.  There is a few problems with that.  A file
listing for the USB device will only list the files
currently on that device.  If there were Moog files that
previously existed on that USB device and were
transferred to any of the five laptops, but were later
deleted, again, we would be prevented from discovering
this information.  For one of the laptops belonging to
custodian Mario Brenes, we did identify to Skyryse and

MOOG INC VS. SYRSE, INC, ET AL

to the Court at least two occasions where Defendant
Missok Kim e-mailed Mr. Brenes Moog spreadsheets that
were created any Eric Chung.  And so it cannot be
disputed that Moog data resided at least on this
computer.  And, again, this is based on Moog's indirect
investigation from other custodians.  So Skyryse
continues to say, well, this USB device was used by its
IT department to set up laptops, so it doesn't have
anything on it.  Again, after weeks of litigating and
briefing this issue, Skyryse is not coming to the Court
and your Honor and saying, "Your Honor, we certify as
officers of the court that these five laptops do not
contain Moog data," and the fact that they continue to
not make that representation is very concerning to Moog.
So, the fact that we're only asking for these file
listings, we're not asking for these five laptops in
order to strike a middle ground, as your Honor directed,
the burden is minimal and a factual showing of relevance
has been made, both from Skyryse's May 4th letter, and
additional evidence that Moog has now provided to the
Court.

And I'll address this one issue.  This may
be a housekeeping issue.  But for the USB device,
Skyryse did agree in its letter and in the meet and

1       MOOG INC VS. SYRYSE, INC, ET AL

15:33:56   2   confer process to produce a complete file listing.  That

15:33:59   3   doesn't seem to be in dispute.  Moog also wants to

15:34:01   4   clarify for the record that it's also requesting all

15:34:04   5   connection logs.  To the extent that is stored in a

15:34:07   6   different format, Moog also wants to get the file

15:34:10   7   listings and also the connection history for that USB

15:34:14   8   device so that we can understand exactly which devices

15:34:18   9   that USB device was connected to to allow Moog to do its

15:34:24   10  forensic investigation.

15:34:26   11       MAGISTRATE JUDGE MCCARTHY:  Okay.  Mr.

15:34:26   12  Gross.

15:34:27   13       MR. GROSS:  Thank you, your Honor.  Why

15:34:28   14  don't I start where Mr. Naqvi left off with the USB

15:34:32   15  devices.  We did offer, as a compromise, to give them a

15:34:35   16  file listing of the USB we know the IT department used

15:34:39   17  to set up different employee's laptops.  I think it's

15:34:43   18  far above any beyond they've shown any relevance to.

15:34:46   19  But we're willing to do it to get past this.  Connection

15:34:47   20  logs are inappropriate.  We know that the device was

15:34:52   21  used by the IT team to set up multiple laptops.

15:34:52   22  Connection logs that show every connection between that

15:35:00   23  device and every laptop, they've shown no relevance for.

15:35:03   24  We'll give them the file listings so that they can look

15:35:06   25  at them themselves, that is more than what they are

                    MOOG INC VS. SYRSE, INC, ET AL
15:35:08  2  entitled to.  It is certainly more than what is

15:35:09  3  relevant.  And it is more than sufficient on the USB

15:35:12  4  drive.

15:35:12  5        On the remaining laptops, they are asking

15:35:14  6  again for an entirely asymmetric, disproportionate

15:35:21  7  irrelevant set of data.  They want file listings for

15:35:25  8  five different laptops, and their only justification for

15:35:29  9  it is what we just heard Mr. Naqvi say.  One guy,

15:35:34  10  Brenes, received some e-mail.  The only discovery or

15:35:37  11  offered any relevance showing for it is what e-mail Mr.

15:35:42  12  Brenes received.  That is what discovery should be

15:35:44  13  focused on.  They should not be entitled to fishing

15:35:48  14  through calendar entries, irrelevant e-mails or other

15:35:53  15  confidential entires stored on five different people's

15:35:54  16  laptops just because they think there might be something

15:35:58  17  interesting there.  The cases that we've cited to your

15:36:01  18  Honor establish very clearly that a Plaintiff's

15:36:03  19  speculation and desire for more investigation is not an

15:36:06  20  adequate grounds for discovery.  They haven't made a

15:36:09  21  showing of relevance.  They haven't made a showing of

15:36:12  22  proportionality.  And they haven't made a showing that

15:36:17  23  this is worth the burden that is continuing to reflect

15:36:18  24  on my client, Skyryse, who is the only person producing

15:36:22  25  more and more and more discovery.  It's not going two

1          MOOG INC VS. SYRYSE, INC, ET AL

15:36:27  2  ways.  They haven't made a showing --

15:36:28  3          MAGISTRATE JUDGE MCCARTHY:  Mr. Gross, let

15:36:30  4  me jump in to alleviate your concern because of the

15:36:34  5  stage we're at.  Believe me, you are going to be

15:36:37  6  entitled to discovery down the road.  My focus right

15:36:41  7  now, as I've said repeatedly, I want to get to a stage

15:36:47  8  where Moog has identified the trade secrets that it

15:36:51  9  claims to have been misappropriated and in a detailed

15:36:55 10  fashion pursuant to my July whatever it was, 20th, or

15:37:00 11  whatever Decision and Order.  But, so you are going to

15:37:04 12  get discovery.  You can rest assured.  It is just a

15:37:08 13  question of what sequence we're going here.

15:37:11 14          How about Mr. Naqvi, and, Mr. Gross, I'm

15:37:15 15  directing this to you as well, I believe, you know, Moog

15:37:19 16  says in their papers, and I think Mr. Naqvi just said it

15:37:23 17  again, that, excuse me, this is specifically at page

15:37:26 18  five in their November 7th letter, that Skyryse has

15:37:31 19  never represented that the laptops do not contain any

15:37:35 20  Moog data.  It seems to me, if you can make that

15:37:38 21  representation, then, and maybe you have, they are

15:37:41 22  saying you have not.  Where does that leave us?

15:37:44 23          MR. GROSS:  Sure.  So, your Honor, I think

15:37:46 24  it's a little flip the way they phrased it.  They

15:37:49 25  haven't told us what Moog data they are talking about.

1          MOOG INC VS. SYRYSE, INC, ET AL

15:37:52   2   They haven't said any of the e-mails that they are

15:37:54   3   talking about contained Moog confidential information.

15:37:57   4   What we do know is that Moog data could be a reference

15:38:01   5   to "Moog" in a public document.

15:38:03   6          MAGISTRATE JUDGE MCCARTHY:  The March 11th

15:38:05   7   order required you to turn -- return to Moog any

15:38:09   8   non-public Moog information.  And so can -- are you able

15:38:14   9   to certify to them that these laptops do not contain

15:38:18   10   non-public Moog information.

15:38:21   11          MR. GROSS:  Your Honor, I can certify that

15:38:23   12   Skyryse has done everything in its power to comply with

15:38:26   13   those orders and those stipulations.  We have run

15:38:29   14   hundreds of thousands of search terms at Moog's

15:38:33   15   insistence across a massive amount of data to ensure

15:38:56   16   compliance with that order.  I can't prove a negative to

15:38:58   17   your Honor right now and put it in the terms that Moog's

15:39:01   18   counsel would like, and say these laptops don't contain

15:39:05   19   anything related to Moog ever.  What I can say is that

15:39:09   20   Skyryse, and its teams of lawyers, have taken every

15:39:13   21   reasonable step to ensure compliance with those orders.

15:39:16   22   Everything that we've found, we've turned over.  So,

15:39:20   23   your Honor, all I can tell you is that we are in

15:39:23   24   substantial compliance with the order.  Skyryse is in

15:39:26   25   substantial compliance with the order.  We're not aware

```
 1                MOOG INC VS. SYRYSE, INC, ET AL
 2   of violations of that order.  And we've done anything we
 3   can to get anything that hints of Moog out of the
 4   company's system.  Skyryse never wanted it.  It never
 5   wanted it.  To get Moog it back.  I can't prove the
 6   negative, as Mr. Naqvi challenged me to do, I can say
 7   that my client has done everything in its power to
 8   comply with the order.
 9                MAGISTRATE JUDGE MCCARTHY:  What I'm going
10   to direct that as to the Brenes laptop, that you produce
11   the file listings for Moog.  And then we'll see where we
12   go from there.  And on the USB device, you're going to
13   produce a connection logs, is that right?
14                MR. GROSS:  We've offered to produce the
15   file listings, your Honor.  We thought the connection --
16                MAGISTRATE JUDGE MCCARTHY:  File listing on
17   the USB device.  Okay.  And then depending on what is
18   shown or what is shown on the review of the mirror
19   images of the three laptops that I've already directed
20   you to produce, I may reconsider that ruling and extend
21   it as to other laptops.  But for now we're going to
22   leave it at that.
23                MR. NAQVI:  Your Honor, maybe, I appreciate
24   where your Honor is landing on this.  I do just want to
25   discuss the connection log, because I do think that is
```

1          MOOG INC VS. SYRSE, INC, ET AL

15:40:52  2    important.  And what Mr. Gross said or was not able to

15:40:55  3    say, I think, remains very concerning to Moog.  The

15:40:59  4    standard is not substantial noncompliance.  He cannot

15:41:03  5    certify there is no Moog data on these computers.  What

15:41:06  6    we would ask is, in addition to the file logs, that we

15:41:09  7    be, we get the connection log for that USB device.  It

15:41:14  8    can be limited in time from 2021 to present, but we need

15:41:19  9    to be able to see which other devices this USB device

15:41:25  10   was connected to.  There is no risk of divulging

15:41:31  11   confidential information by giving us the connection

15:41:33  12   log.  And I think that goes hand in hand with our

15:41:37  13   ability to review the file.  So what I ask is that in

15:41:39  14   addition to the file listing, we also need the

15:41:41  15   connection log.  This is something that Skyryse can

15:41:45  16   provide us and minimal burden and it still gives us

15:41:49  17   limited information and it helps with our forensic

15:41:52  18   information.

15:41:53  19          MR. GROSS:  Your Honor, if I may, there

15:41:54  20   still has been no showing that the device that the IT

15:41:58  21   department has used is relevant.  And there is certainly

15:42:02  22   no showing that the connection logs of every device it

15:42:03  23   has ever been connected to, that is just is irrelevant.

15:42:05  24          MAGISTRATE JUDGE MCCARTHY:  Mr. Gross, I'll

15:42:06  25   say in that regard, and I know I appreciate your

MOOG INC VS. SYRYSE, INC, ET AL

15:42:10  2  position that it's impossible to prove a negative, and I

15:42:15  3  agree with that, but, I do think, and I also take you at

15:42:21  4  your word, I have no reason to doubt that you've made

15:42:25  5  great efforts to make sure that all non-public Moog

15:42:32  6  information of which Skyryse is aware has been returned.

15:42:36  7  Nonetheless, you can't, and I don't fault you for this,

15:42:40  8  but you can't make a categorical representation of that,

15:42:44  9  so I think on balance, and I don't -- I don't see a huge

15:42:49  10  burden or danger to producing the connection logs, so,

15:42:55  11  for the USB device, so I'll direct that be produced as

15:43:00  12  well.  Okay.

15:43:00  13       Let's move onto the individual -- this is

15:43:08  14  the individual Defendant's excision of communications.

15:43:15  15  At our last conference, I had suggested that, maybe,

15:43:18  16  you, let's see, Moog, you wanted to from as far back as

15:43:22  17  2013 and I suggested 2016.  And, so, that was only a

15:43:30  18  suggestion, but I will hear from whoever wants to be

15:43:33  19  heard in that regard.

15:43:40  20       MR. NAQVI:  Your Honor, this is Kazim Naqvi

15:43:43  21  again.  I'll be brief again.  I think this is a briefer

16:32:53  22  issue.

16:32:53  23       As your Honor noted, you suggested 2016, we

16:32:56  24  think that is reasonable and proportional.  And in

16:33:02  25  meeting and conferring, the individual Defendants

1        MOOG INC VS. SYRYSE, INC, ET AL

16:33:05   2   rejected that position.  They didn't provide any

16:33:09   3   tangible alternative proposal and their argument is

16:33:14   4   that, well, there is still such a large volume of

16:33:37   5   communications from 2016 to present, and the burden

16:34:32   6   associated with the file by file review is too much.

16:34:35   7   But there is legal and practical problems with that

16:34:38   8   position.  A file-by-file review, this is a self imposed

16:34:43   9   and voluntary burden.  There is absolutely no

16:34:46   10  requirement in any order or the federal rules that

16:34:49   11  requires a file-by-file privacy review.  They do not

16:34:53   12  have to perform that privacy review.  If that is

16:34:56   13  something they want to do, that is on them, but there is

16:35:04   14  no legally accepted burden because there is no legal

16:35:11   15  obligation that they must undertake.  Practically, there

16:35:19   16  is no reason why a file-by-file review is required in

16:35:24   17  this case or needed.  Even if there were private

16:35:47   18  communications on these devices, again, which no showing

16:35:50   19  has been made, they are all presumptively designated as

16:35:54   20  "highly confidential, attorney's eyes only."  And so

16:36:01   21  they can only be disclosed to Moog's outside counsel and

16:36:08   22  experts.  The individual Defendants have not identified

16:36:10   23  any real concern, any real problem with having these

16:36:15   24  theoretically private communications being disclosed

16:36:18   25  only to outside counsel or expert.  No file-by-file

```
                              MOOG INC VS. SYRYSE, INC, ET AL
16:36:21    2   review has taken place for any other devices, at least
16:36:28    3   from Moog's perspective, and turned over to IDS.  And,
16:36:36    4   so, from our perspective, this is just a pretextual
16:36:42    5   argument that does not actually tie to any real burden
16:36:46    6   that is required to block Moog from discovery.  And, so,
16:36:49    7   you know, we've already discussed how there is no court
16:36:52    8   order that allows excision based on relevance.  And to
16:36:56    9   excise documents based on privacy, you have to
16:37:05   10   specifically identify them, similar to a privilege log.
16:37:08   11   And the individual Defendants have not done that.  They
16:37:14   12   are, again, making a blanket claim over a large group of
16:37:18   13   communications without doing the work to specifically
16:37:22   14   identify anything private on them.  We saw this same
16:37:25   15   tactic when clawing back documents under the Fifth
16:37:29   16   Amendment concern.  So we're seeing the same exact
16:37:31   17   conduct occur here, but it's not tied to any valid
16:37:35   18   procedure, any court order or any other rule.  So,
16:37:38   19   Moog's position is 2016 to present is reasonable.  There
16:37:42   20   are no privacy concerns.  And if there are privacy
16:37:45   21   concerns, it's adequately dealt with with the protective
16:38:00   22   order and the inspection protocols.
16:38:09   23             MAGISTRATE JUDGE MCCARTHY:  All right.
16:38:09   24   Thank you.
16:38:11   25             Mr. Green or Mr. Truitt.
```

1        MOOG INC VS. SYRYSE, INC, ET AL

16:38:16   2        MR. TRUITT:  Your Honor, I will be speaking

16:38:17   3   today.  So, I just wanted to talk about what has

16:38:20   4   happened since the last court conference.  We performed

16:38:23   5   an analysis of all of the devices, and we uncovered that

16:38:28   6   there was approximately 560,000 communications from the

16:38:35   7   period of January 1st of 2016 to December 31st, of 2020.

16:38:46   8   The remaining, you know, going forward from December

16:38:50   9   31st of 2020, sorry, of 2021, all of those -- no, 2020,

16:38:55   10   all of those have already been produced already.  So,

16:38:59   11   that is an immense number of communications.  And in my

16:39:11   12   e-mail to Kazim, which I believe is exhibit D to his

16:52:26   13   letter to the Court, it sort of sets out our position.

16:52:29   14        And, you know, for us to review and for us

16:52:34   15   to consider, and for us to perform the level of

16:52:41   16   redaction that Kazim is demanding that we perform, it

16:52:47   17   could take thousands of attorney hours.  It could take

16:52:51   18   multiple attorneys months to process through that.  And

16:52:56   19   the cost associated with it, is just absurd when there

16:53:01   20   is no basis for it whatsoever.  So, as we set forth in

16:53:05   21   our initial opposition brief, the allegations in the

16:53:09   22   complaint concern a period in very late 2021.  The

16:53:16   23   discovery requests seek communications from January 1st

16:53:19   24   of 2021 through the date of the complaint.  They have

16:53:23   25   already been provided.  What the Plaintiff is seeking is

MOOG INC VS. SYRSE, INC, ET AL

private communications on the individual Defendant's
private and personal devices.  And the suggestion that
he is making right now is that, well, you don't need to
have any objections because the protective order will
take care of you.  And that is not sufficient.  And it's
borderline offensive.  And just to, you know, restate
our position is, our position is that they need no
further discovery from the individual Defendants to
identify any trade secret that is alleged to be
contained in the files that are set forth in the
complaint.  Okay.  And now, I, I feel like I'm
digressing a little bit, but I just want to make this
point.  In their papers, they continually address our
position as attempting to reargue the Court's prior
order.  Well, first of all, as your Honor's aware, the
Court's order was made without prejudice to renew.  So,
we have been trying to discuss this with Plaintiff and
they just refuse to respond.  Because of the fact of the
matter is that Plaintiff is required by the FAA to use
version control software.  Version control software
allows Plaintiff to, even if there was a living document
that the individual Defendants are alleged to have
misappropriated and other Moog employees saved over it
in the course of their ordinary course of business,

1          MOOG INC VS. SYRSE, INC, ET AL

16:55:25   2   version control software allows you to go back in time,

16:55:30   3   allows you to go back and say, okay, so our forensic

16:55:35   4   expert is claiming that on X date, one of the individual

16:55:38   5   Defendants inappropriately downloaded these documents.

16:55:41   6   Now I see that it's been saved over 17 times by other

16:55:45   7   Moog employees throughout the course of the business,

16:55:48   8   but I have version control software, so I can go exactly

16:55:52   9   back to that last version that was accessed on the date

16:55:56   10  at issue.  And they can do this to identify the trade

16:56:00   11  secrets in the files that are alleged to be

16:56:02   12  misappropriated in the complaint.  So, our position,

16:56:04   13  we're not trying to reargue, we're saying that when the

16:56:07   14  Plaintiff came to this Court and said that it could not

16:56:10   15  perform a trade secret identification because of alleged

16:56:14   16  deletions on devices, that is not responding to the

16:56:17   17  question, because they have version control software.

16:56:20   18  At all times they had version control software.  And

16:56:23   19  they can put it to use and identify the trade secrets

16:56:27   20  which my clients are accused of stealing.  Okay.  It

16:56:30   21  doesn't matter what Moog or, sorry, what Skyryse is

16:56:34   22  accused of stealing, my clients have been accused of

16:56:37   23  stealing certain discrete files, and they have the

16:56:41   24  ability to produce them.

16:56:42   25          Now, what we haven't heard from Plaintiff is

1          MOOG INC VS. SYRYSE, INC, ET AL
16:56:45   2    why is this necessary at this time.  They want to look
16:56:49   3    back to 2016.  Well, the statute of limitations for any
16:56:55   4    misappropriation to be timely, that would have been
16:56:58   5    March 7 of 2019.  So they want to look back three years
16:57:02   6    beyond that and get hundreds of thousands of more
16:57:06   7    documents that wouldn't be relevant for any cause of
16:57:11   8    action.  Then, they refuse to show why this information
16:57:17   9    is necessary for this part of the discovery.  What we
16:57:23  10    have said to Kazim, and Ms. Andoh through e-mail, but
16:57:28  11    Kazim over the phone, is that this is not necessary
16:57:31  12    right now.  There is an immense burden that is going to
16:57:36  13    be associated with the compliance.  It could be hundreds
16:57:39  14    of thousands of dollars, thousands of attorney hours and
16:57:43  15    why don't we find some kind of solution.  So, if you
16:57:46  16    look through exhibit D, you're going to see my
16:57:50  17    exasperation because I've asked them every question that
16:57:54  18    think I can possibly ask them to help reduce the number
16:57:57  19    of potential documents that we have to consider and
16:58:00  20    resolve this.  And I've asked them, have you identified
16:58:03  21    any time where the individual Defendants potentially
16:58:09  22    downloaded Moog information onto their personal devices.
16:58:14  23    That could be immensely beneficial to resolving this
16:58:17  24    dispute.  Instead, we get crickets, that is all we get.
16:58:24  25    We get no responses to any of our attempts to bridge

MOOG INC VS. SYRYSE, INC, ET AL

this gap.  So, if the Court is inclined to put this

burden on the individual Defendants without Plaintiff

cooperating in the meet and confer process, without

Plaintiff showing any indication of why it's relevant,

we have to consider (inaudible), because, at this point,

it just seem punitive.  And if Plaintiff really wants

this information, then they, a billion dollar revenue

company, can pay the cost associated for it.  All right.

We can find a vendor who will charge a cheap price, and

they will go and review everything that needs to be done

to protect the individual Defendant's rights under the

protective order, and they can get all of the

information that they are looking for that they have a

right to, and we don't have to now staff 10 attorneys,

which we don't have, to perform this review.  So, that

is where we end up on this one.

MAGISTRATE JUDGE MCCARTHY:  Okay.  Let me

ask a couple of questions that I was going to ask at

some point today anyway, but I might as well ask them

now, and that sort of follow up on questions I had asked

when we were last together.

First of all, are there any, to your

knowledge, are there any new developments in the

criminal investigation that your clients are aware of?

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | MOOG INC VS. SYRSE, INC, ET AL                               |
| 17:00:19 | 2  | MR. TRUITT:  I don't have information to                  |
| 17:00:21 | 3  | comment on that right now.                                 |
| 17:00:22 | 4  | MAGISTRATE JUDGE MCCARTHY:  So, I mean, I                  |
| 17:00:23 | 5  | take it if they had been charged criminally, you would    |
| 17:00:26 | 6  | be aware of that, right?                                   |
| 17:00:28 | 7  | MR. TRUITT:  I would be aware of that, yes,                |
| 17:00:31 | 8  | your Honor.                                                |
| 17:00:31 | 9  | MAGISTRATE JUDGE MCCARTHY:  And because                   |
| 17:00:32 | 10 | you're not, I can infer they have not been.               |
| 17:00:35 | 11 | MR. TRUITT:  They have not been.                           |
| 17:00:36 | 12 | MAGISTRATE JUDGE MCCARTHY:  Doesn't mean                  |
| 17:00:37 | 13 | anything way or the other for the future.  But,           |
| 17:00:40 | 14 | secondly, have either of them obtained employment?  I     |
| 17:00:47 | 15 | think the last time you said they had not.                |
| 17:00:51 | 16 | MR. TRUITT:  They have not, no.                            |
| 17:00:53 | 17 | MAGISTRATE JUDGE MCCARTHY:  Briefly, Kazim,               |
| 17:00:54 | 18 | back to you briefly on this issue, and I'll tell you       |
| 17:00:57 | 19 | where I'm at.                                              |
| 17:00:59 | 20 | MR. NAQVI:  Very briefly, just two points,                 |
| 17:01:01 | 21 | your Honor.  I think Mr. Truitt talked about a lot of      |
| 17:01:04 | 22 | things that are not necessarily relevant to this exact     |
| 17:01:13 | 23 | dispute.  I want to go back to the March 11th order.       |
| 17:01:16 | 24 | The March 11th ordered required the individual            |
| 17:01:20 | 25 | Defendants to turn over these devices to the vendor.  It   |

1           MOOG INC VS. SYRYSE, INC, ET AL

17:01:26   2   didn't say that only information from a certain period

17:01:29   3   of time will be available.  All parties, Defendants,

17:01:32   4   turned over a bunch of devices, and there was never any

17:01:36   5   procedure to limit them to a certain time period.  That

17:01:38   6   had just not been a thing in this case.  So they turn

17:01:41   7   over the devices and they cannot now try to block Moog

17:01:46   8   from accessing certain portions of those devices.  The

17:01:49   9   second thing is burden.  Your Honor, there is no burden

17:01:51   10  here.  IDS has the image.  They already released certain

17:01:55   11  contents of that image to Moog.  All they have to do is

17:01:59   12  release the portions of that image from 2016 to present.

17:02:03   13  There is no file-by-file review.  We need to make that

17:02:06   14  very clear.  This notion of cost shifting and burden and

17:02:09   15  we need to review 500,000 files, and it's going to take

17:02:14   16  tens of thousands of hours, is false.  That is not true.

17:02:16   17  That does not need to be happen.  IDS has the image and

17:02:20   18  it needs to be released to Moog.  That's it.  Thank you.

17:02:24   19          MR. TRUITT:  Your Honor, may I just address

17:02:26   20  one thing or are we ready to move on?

17:02:28   21          MAGISTRATE JUDGE MCCARTHY:  No, go ahead.

17:02:30   22          MR. TRUITT:  Okay.  So, when the individual

17:02:36   23  Defendants and their prior counsel were dealing with the

17:02:42   24  earlier stipulations in this case, no one had any clue

17:02:45   25  about the immense amount of communications that were on

1          MOOG INC VS. SYRSE, INC, ET AL

17:02:49   2   this device.  All right.  And while, you know, sometimes

17:02:56   3   I'm going to rephrase my question.

17:02:58   4          While sometimes we view the protective order

17:03:00   5   as if it was written in stone and taken down from a

17:03:04   6   mountain, section 20.1 says that this Court can modify

17:03:09   7   it upon good cause.  All right?  So, at the same time, I

17:03:14   8   will make the application right now that good cause

17:03:16   9   exists that we can say, hey, let's not look into these

17:03:22   10   communications until we have some sort of reason, some

17:03:26   11   sort of need or some sort of explanation from the

17:03:29   12   Plaintiff, which still isn't there about why it is

17:03:32   13   necessary for this phase of discovery.

17:03:37   14          MAGISTRATE JUDGE MCCARTHY:  Mr. Truitt, you

17:03:39   15   said that you had already turned over the information

17:03:44   16   from, I believe, 2020 to date.  Is that right?

17:03:48   17          MR. TRUITT:  I'll defer to Kazim to correct

17:03:51   18   me if I'm incorrect.  I believe we've produced from

17:03:56   19   January 1 of 2021 to the present.

17:03:58   20          MAGISTRATE JUDGE MCCARTHY:  2021, okay.  And

17:04:00   21   before doing that, did you do the type of search that

17:04:04   22   you're talking about now as to that information?

17:04:08   23          MR. TRUITT:  We performed that search for

17:04:10   24   only attorney/client privilege.

17:04:18   25          MAGISTRATE JUDGE MCCARTHY:  Okay.  I'm going

1          MOOG INC VS. SYRYSE, INC, ET AL
17:04:28   2   to direct, I'm going to modify the time frame that is at
17:04:33   3   issue.  I'll take it up to 2019, which is the statute of
17:04:37   4   limitations.  So, for 2019, so for years 2019 and 2020,
17:04:43   5   that information should be produced.  If you want to do
17:04:47   6   your attorney/client analysis for that, you're free to
17:04:50   7   do so.  As far as any privacy analysis or whatever,
17:04:54   8   again, I think that is adequately protected by the
17:04:57   9   protective order.  I don't think they have -- I don't
17:05:01  10   think Moog or anybody has any interest in truly private
17:05:05  11   communications.  So, I'm going to leave it at that.
17:05:09  12          MR. TRUITT:  Your Honor, just to clarify,
17:05:11  13   you're saying March 7th, 2019?
17:05:13  14          MAGISTRATE JUDGE MCCARTHY:  Yes, yes, yes.
17:05:15  15          MR. TRUITT:  Thank you.
17:05:16  16          MAGISTRATE JUDGE MCCARTHY:  Okay.  Source
17:05:19  17   code.  Back to, I guess, Kazim.  Mare you taking this
17:05:26  18   one as well?
17:05:27  19          MR. NAQVI:  Yes, your Honor.  I'm happy to
17:05:29  20   talk about this.  So, you know, your Honor directed the
17:05:33  21   parties to meet and confer, and your Honor provided very
17:05:36  22   helpful guidance at the last hearing that after hearing
17:05:39  23   argument, you know, given the volume of source code in
17:05:42  24   this case, that Moog wouldn't be able to perform an
17:05:47  25   automated source code comparison.  So, we met and

                    MOOG INC VS. SYRYSE, INC, ET AL

conferred with Skyryse.  And I won't bore the Court with
the histrionics of the meet and confer.  Where we
ultimately ended up was Skyryse proposed that certain
amendments be made to its proposed source code protocol,
which would basically entail Moog's expert bringing
Moog's source code on an external hard drive and
plugging it into a computer that contains Skyryse code
and that Skyryse's counsel be permitted to review the
file listing on the hard drive that Moog's expert would
bring into the review.  This would be an in-person
review at Lathem's office.  We have significant concerns
about this proposal for several reasons.  Moog actually
anticipated this proposal a long time ago when it
opposed Skyryse's motion to enter its source code
protocol.  While we appreciate Skyryse has certain
security concerns, I think your Honor can appreciate
Moog has substantial security concerns in this case
given the voluminous acts of theft and deletion of data
that have occurred.  Moog is justified in not wanting to
connect its source code, which has already been stolen
by former Skyryse employees, into a computer that hosts
Skyryse code, and of which Moog has no control over and
in which an appointed neutral have no control over.
This computer that Moog's code would be plugged into

MOOG INC VS. SYRYSE, INC, ET AL

will automatically maintain information about what's

plugged in.  And will make copies of the information

about Moog's files and folders that were accessed during

the review.  And Moog is not casting aspersions on

Skyryse's counsel.  But regardless of what assertions

Skyryse's counsel can make, Moog has concerns about its

source code being connected to a computer with Skyryse

source code.  And Moog has no control over that process.

A third-party neutral has no control over that process.

And this is, your Honor, this is exactly why cases like

this, we appoint a neutral so that neither party can

have that concern.  The neutral is the one who hosts all

of these.  The neutral is the one that governs the

transmission and making the code available.  And so the

notion that -- another problem we have is that Skyryse's

proposal that they be able to review the file listing

that Moog brings into the source code review, that is

not turning in a review of what is supposed to be

Skyryse into an inspection of Moog's source code files.

And, again, we don't think that procedure is proper at

all.

Another practical issue with Skyryse

proposal, is injects an additional delay and burden on

all parties.  Under its protocol, in-person attendance

MOOG INC VS. SYRYSE, INC, ET AL

17:29:59  2   at Lathem's offices would be required for this review.

17:30:02  3   Now, you know, Covid is still ramped, there are other

17:30:06  4   illnesses.  And, one, it requires experts and personnel

17:30:10  5   to travel in person to Lathem's offices.  That is

17:30:13  6   additional delay, additional burden.  It compromises the

17:30:17  7   health risk of everyone.  The idea of ours is completely

17:30:22  8   virtual.  All parties have been using it several months.

17:30:26  9   There have been zero security issues.  Skyryse has

17:30:33  10  identified not a single security issues within the IDS

17:30:44  11  environment.  That has been absolutely what we've used

17:30:50  12  over the past several months.  And I think going back to

17:30:54  13  a threshold issue, your Honor.  We already have a

17:30:58  14  protective order.  Source code has already been reviewed

17:31:02  15  under that inspection protocol.  Skyryse still has not

17:31:11  16  cited a single case where a court has entered two

17:31:24  17  different source code protocols to govern the review of

17:31:28  18  two different types of source code.  They haven't cited

17:31:31  19  a single case.  And that can't be an accident.  And, so,

17:31:34  20  there is no reason to add another level of complexity

17:31:38  21  and burden to a process that is already in place and the

17:31:41  22  parties have already been using it.  The experts have

17:31:43  23  already been using it.  And there have been no security

17:31:47  24  concerns.  So, your Honor, we think that even, you know,

17:31:50  25  under Skyryse's additional proposal, we have substantial

1          MOOG INC VS. SYRYSE, INC, ET AL

17:31:54    2    security concerns, and that is why we should go through

17:31:57    3    an appointed neutral that neither party can have these

17:32:01    4    concerns.

17:32:01    5          MAGISTRATE JUDGE MCCARTHY:  Okay.  Gabe or

17:32:02    6    who is going to take this?

17:32:04    7          MR. GROSS:  Thank you, your Honor.  I may

17:32:06    8    invite my colleague Joe to participate in this part of

17:32:12    9    the discussion, but I can get it started with the gist

17:32:14   10    of it.

17:32:15   11          First of all, a number of the critiques Mr.

17:32:17   12    Naqvi was making against what he called Skyryse's

17:32:21   13    proposal is not the proposal on the table.  It's a

17:32:24   14    proposal that we discussed as we met and conferred.

17:32:27   15    But, we have offered to accommodate with a separate

17:32:30   16    standalone source code review protocol every concern

17:32:34   17    they raised.  We all know, and I won't repeat the

17:32:38   18    briefing from either a hearing or two hearings ago and

17:32:41   19    the discussion we had there.  The IDS protocol was

17:32:54   20    designed for a different purpose.  To deal through a

17:32:58   21    neutral third party forensic vendor with information on

17:33:02   22    where the two side's confidential information may have

17:33:05   23    gotten intermixed.  That is not what we're talking

17:33:08   24    about.  What we're talking about now is one side or the

17:33:11   25    other's propriety source code, some of its most

MOOG INC VS. SYRSE, INC, ET AL

17:33:15  2  sensitive information, one of the most valuable assets

17:33:22  3  of any technology company, which we believe has no

17:33:27  4  reason to be mixed with the other side's source code.

17:33:33  5  So, what we heard from Moog and we heard from your Honor

17:33:37  6  loud and clear last time, is they want the ability and

17:33:40  7  should have the ability to run comparisons in an

17:33:43  8  automated way.  So, what we've proposed to do through

17:33:46  9  the standalone protocol that would allow source code to

17:33:50  10  be reviewed and inspected in a secure way was to have

17:33:53  11  the inspecting party, let's use Moog as an example, who

17:33:58  12  is going to inspect the other side's source code, bring

17:34:03  13  in the source code if they want to, on a hard drive that

17:34:08  14  they can plug in to the review computer.  We offered to

17:34:12  15  put in software called "Ultra Compare" or something

17:34:15  16  similar, that allows exactly the kind of electronic

17:34:19  17  comparisons that we discussed last time.  And as we

17:34:22  18  discussed, and they raised these concerns about, well,

17:34:25  19  we don't know, can't be sure that you won't be reviewing

17:34:28  20  the information we leave on the computer, can't let you

17:34:31  21  look at what source code we're bringing in, we offered

17:34:35  22  to accommodate those concerns.  Look, we'll order that

17:34:38  23  the only thing that you can bring in on the external

17:34:41  24  hard drive is the source code, the source code you want

17:34:44  25  to compare, and we won't need to inspect it.  We offered

1          MOOG INC VS. SYRYSE, INC, ET AL

17:34:47   2   to put in the order a mandate that the party who is

17:34:51   3   hosting the inspection, the party whose source code is

17:34:55   4   being inspected, their counsel cannot look at any

17:35:10   5   forensic data that may be left by the inspecting party

17:35:15   6   on the computer.  Can't do it.  And we won't.  And so we

17:35:19   7   proposed, and it's in front of the court, your Honor, at

17:35:38   8   docket 284-6, a proposed order that accommodates every

17:35:43   9   concern that Mr. Naqvi and Moog have raised.  In section

17:35:46   10  4.3 in particular, and I won't bother reading this into

17:35:51   11  the record, but it's subsections (c).

17:35:54   12          MAGISTRATE JUDGE MCCARTHY:  Let me just -- I

17:35:56   13  am just turning to it right now.  So, I'm sorry, what

17:36:00   14  section did you say?

17:36:01   15          MR. GROSS:  It's on page 8, section 4.3, it

17:36:05   16  spans a few pages, bear with me, but I can direct the

17:36:09   17  Court's attention to the appropriate provisions.  Page 8

17:36:12   18  at the bottom PDF page 10.

17:36:16   19          MAGISTRATE JUDGE MCCARTHY:  All right.

17:36:16   20  Okay.  Yes, I found it.

17:36:17   21          MR. GROSS:  At section 4.3 (c) which spans

17:36:22   22  to pages there, that is the provision that allows the

17:36:27   23  receiving party, in other words, the party receiving the

17:36:29   24  discovery or taking the inspection.  At the end of

17:36:32   25  subsection (c) you'll see that the receiving party's

1          MOOG INC VS. SYRYSE, INC, ET AL

17:36:38   2   representative can bring in an external storage device

17:36:42   3   with its own parties it's own client's code on it and

17:36:46   4   can connect it to the review computer for the purpose of

17:36:49   5   allowing automated comparisons of one side's code

17:36:54   6   against the other.  So, we've accommodated that concern.

17:36:57   7          Your Honor in subsection (e) towards the

17:37:00   8   bottom of page nine, we mention, and this would be, this

17:37:04   9   is what we propose to be an order of the court, we

17:37:07   10  mention about five or six lines from the bottom that

17:37:10   11  tools for performing automated file to file or directory

17:37:15   12  to directory comparison such as "Ultra Compare" may be

17:37:19   13  requested under this paragraph to be loaded on the

17:37:21   14  machine.  And, your Honor, that phrase actually has

17:37:24   15  meaning, that file to file or directory to directory

17:37:27   16  comparison it has meaning because that is what Moog told

17:37:31   17  us when they met and conferred, that is what they wanted

17:37:34   18  to do.  They weren't ready to get more specific.  They

17:37:38   19  said that is the type of comparisons we want to run.

17:37:41   20  And we said this is the type of software and we can have

17:37:44   21  you load up on the machine to let you do it.

17:37:46   22          If we go to pages 11 and 12, you'll see

17:37:49   23  subsection (j) and in (j) on page 12, about four or five

17:37:58   24  lines from the top of page 12, there is a sentence that

17:38:00   25  begins with the word, "however" and here it says that

1          MOOG INC VS. SYRUSE, INC, ET AL
2     "to the extent the source code computer maintains any
3     forensic information regarding the activities of the
4     receiving party's representatives," and those are the
5     people conducting the inspection, "then the producing
6     party and its agents, its counsel and experts shall not
7     review or extract that sort of forensic investigation."
8     We're basically saying you don't need to worry about
9     anyone spying on your inspection, we'll have a court
10    order prohibiting that.
11            So, your Honor, this proposed order, which
12    we offered to Moog and its counsel during the meet and
13    confer, accommodates every concern they've raised.  And
14    the reasons we've heard for them rejecting it are that
15    we, in essence, we don't trust you to comply with it.
16    And, your Honor, that is not a basis for turning down a
17    reasonable source code protocol.  And, moreover, they
18    haven't explained why the IDS protocol, which is, on its
19    face, designed for a different purpose, should be
20    foisted onto this different type of source code
21    inspection.  And, finally, your Honor, there is one very
22    important point that I would be remiss if I didn't make,
23    and it's changed a little bit since the last hearing.
24    We understood when we spoke a couple of weeks ago that
25    Moog was reading the IDS protocol as though it

1          MOOG INC VS. SYRYSE, INC, ET AL

17:39:28   2   authorized them to request and receive native electronic

17:39:33   3   files of anything they reviewed under the IDS protocol,

17:39:36   4   which we were very concerned would apply to source code.

17:39:39   5   Source code is just text.  And if that were provided in

17:39:42   6   a native electronic format with no protections, anybody

17:39:46   7   could do anything they want with the text file, which

17:39:49   8   could be, you know, published, copied, paste, whatever

17:39:52   9   you want to do, and it wouldn't be locked down in a

17:39:55   10  secure room.  And since that hearing, Moog has proposed

17:39:59   11  to us what they call an ESI protocol, a protocol for

17:40:05   12  discovery of electronically stored information.  And

17:40:06   13  under their own proposal, it would require the same

17:40:08   14  thing.  That Skyryse would have to produce upon request

17:40:12   15  a native file of its source code.  That is how they are

17:40:17   16  doing the IDS protocol, and their own view towards ESI.

17:40:21   17  That is not okay for a company's most valuable sensitive

17:40:26   18  source code asset.  With the proposal we've offered,

17:40:29   19  offers a secure standalone review of both side's source

17:40:33   20  code, it would protect both sides, both sides would have

17:40:38   21  to operate under it, and it wouldn't allow one side or

17:40:40   22  the other to be able to access native files of the

17:40:43   23  source code and lose all of those secure protections.

17:40:47   24  So, this idea that it would be cumbersome and lead to

17:41:24   25  delay, it's just overblown.  And I'm sure you recall to

1          MOOG INC VS. SYRYSE, INC, ET AL

17:41:28  2   the briefing before this, we've pointed to the Court to

17:41:33  3   a dozen or so other courts that entered a source code

17:41:37  4   review, just like this, what we offer, it's fully

17:41:42  5   compliant where with other courts have done around the

17:41:45  6   world.  And because of the standalone nature, it's more

17:41:49  7   secure than having to give the source code to a third

17:41:52  8   party and having to inject a third party into the mix.

17:41:55  9          So, your Honor, I wanted to make sure I

17:41:57  10  didn't miss anything that my colleague Mr. Lee would

17:41:59  11  like to add to it.  But we simply see no reason not to

17:42:04  12  apply the protocol that we've proposed to both sides'

17:42:09  13  source code.

17:42:10  14         MAGISTRATE JUDGE MCCARTHY:  What about, I

17:42:13  15  believe I heard Mr. Naqvi say that your proposal would

17:42:17  16  require them to come to your office.

17:42:20  17         MR. GROSS:  Right.  Your Honor, it's

17:42:22  18  routine.  We have offices in all of the same cities, I

17:42:25  19  think.  We are in Orange County, LA, San Francisco, New

17:42:29  20  York.  Your Honor, we've had our code available in an

17:42:31  21  office for them to inspect for months, and they turned

17:42:35  22  us down.  If they would like it in New York, so it's

17:42:39  23  more convenient for Ms. Andoh and her colleagues, we'll

17:42:43  24  send it there.  If they want it in New York, we'll set

17:43:10  25  it up there.  These are big firms with people scattered

1          MOOG INC VS. SYRYSE, INC, ET AL

17:43:14   2   throughout the country all in the same major markets.

17:43:17   3   This is not a big deal.

17:43:19   4          MR. NAQVI:  Your Honor, may I just?

17:43:20   5          MAGISTRATE JUDGE MCCARTHY:  I'm sorry, Mr.

17:43:23   6   Naqvi, just a minute.  I'll get back to you in a minute.

17:43:26   7          So, Gabe, you are, because the other issue

17:43:31   8   that Kazim had raised was this was going to entail

17:43:35   9   further delay and you're saying it's not.

17:43:37   10          MR. GROSS:  No, it's not, your Honor.

17:43:38   11          MAGISTRATE JUDGE MCCARTHY:  How quickly can

17:43:40   12   this be implemented?

17:43:41   13          MR. GROSS:  We're ready to go right now and

17:43:43   14   they've known for months.  Our code is sitting on a

17:43:47   15   machine waiting for their review.  If they tell us what

17:43:50   16   comparison software they want to use, we'll get it

17:43:53   17   loaded up.  And if they tell us what office they want to

17:43:56   18   inspect it in, we'll get it ready to go.  This is very

17:44:24   19   similar to the same review i have done for major

17:44:27   20   technology companies that I've done for many, many

17:44:30   21   years.  And one of the fortunate realities of this case

17:44:52   22   is we have big law firms with sophisticated counsel and

17:45:16   23   support staff who are experienced in this.

17:45:18   24          MAGISTRATE JUDGE MCCARTHY:  Okay.  Kazim,

17:45:20   25   back to you.

MOOG INC VS. SYRSE, INC, ET AL

17:45:22  2      MR. NAQVI:  Yes, so three things.  One thing
17:45:25  3   we did not hear Mr. Gross say is why the IDS protocol
17:45:29  4   cannot be used to inspect what Skyryse is characterizing
17:45:33  5   its own independent code.  He has not identified a
17:45:37  6   single security issue.  And, your Honor, this is
17:45:40  7   important because, again, Skyryse has not cited a single
17:45:43  8   case where a court has entered two different source code
17:45:47  9   protocols under the circumstances here, and that can't
17:45:49  10  be an accident.  We have an IDS protocol in place.
17:45:52  11  Source code has been produced by Skyryse and Moog.  It's
17:45:56  12  been reviewed.  And Skyryse is trying to draw a
17:46:02  13  distinction between code that was potentially mixed with
17:46:27  14  Moog's or its own independent code.  That is a
17:46:30  15  distinction without a practical difference, your Honor.
17:46:32  16  And I'll tell you, Moog has produced its own code to, in
17:46:37  17  the IDS environment, and it's been sitting there and
17:46:40  18  it's been likely reviewed by Skyryse.  So, the whole
17:46:43  19  notion that there needs to be a separate protocol to
17:46:46  20  govern each party's separate source code is not true
17:46:50  21  because Moog has already produced its individual source
17:46:53  22  code into the IDS environment.  And without identifying
17:46:57  23  any actual tangible security concern with the IDS
17:47:02  24  protocol, then there is no reason to go through all of
17:47:05  25  these steps to have another protocol.

MOOG INC VS. SYRSE, INC, ET AL

17:47:07   2    And let me address the native source code

17:47:36   3    issue that Mr. Gross raised.  We sent them an ESI

17:47:42   4    protocol.  The parties have not met and conferred on it.

17:47:45   5    We haven't discussed it.  The parties are trying to work

17:47:47   6    out those issues.  So, your Honor, I think how source

17:47:50   7    code will be produced or used in this case or submitted

17:47:53   8    to the Court, that is a secondary issue.  But, in order

17:47:56   9    for this trade secret identification process to move

17:48:00   10   forward, Moog's expert needs to start comparing the

17:48:03   11   code.  So, what we would ask is, as a primary issue, the

17:48:07   12   IDS protocol stays in place.  Skyryse makes its separate

17:48:12   13   bucket of code available for review, and Moog's expert

17:48:28   14   begins its review.  And until the meet and confer

17:48:31   15   process with Skyryse is resolved, all of Skyryse's code

17:48:35   16   would stay in the IDS virtual environment.  None of it

17:48:38   17   will be produced in native format or otherwise until the

17:48:42   18   parties have worked out those issues.  There is already

17:48:45   19   a protocol in place.  There is no need to inject another

17:48:48   20   protocol.  And Moog maintains other objections to

17:49:42   21   Skyryse's proposed source code protocol.  For example,

17:49:46   22   the page limit of printing 100 pages of code.  I think

17:49:49   23   your Honor can appreciate, we've identified at least

17:49:54   24   43,000 source code files that have been misappropriated

17:49:57   25   at least the.  A 100-page limit is completely improper.

                    MOOG INC VS. SYRYSE, INC, ET AL

17:50:00  2   We already have procedures to request the production and

17:50:03  3   printing of source code, of materials from the IDS

17:50:07  4   environment.  And I don't know, there is just no basis

17:50:10  5   to add a second layer, a second protocol, to govern a

17:50:13  6   separate set of source code when source code has already

17:50:17  7   been produced and it's already been reviewed.  And

17:50:20  8   without identifying a tangible security concern, Skyryse

17:50:25  9   has no met its burden to add another protocol.

17:50:58  10            MR. GROSS:  Your Honor, if I may.  So, look,

17:51:01  11  to the extent, and we've discussed this last time, but I

17:51:03  12  think it's worth reminding everyone that to the extent

17:51:07  13  there is source code on the IDS machines right now,

17:51:11  14  those were produced under the IDS protocol, which, as we

17:51:14  15  know, is governed to control the discovery of materials

17:51:17  16  that may have an intermixing of the party's information

17:51:20  17  on it.  That is how information got there.  Now, Moog

17:51:23  18  may have chose to help itself and just provide its own

17:51:28  19  source code through that protocol because that is the

17:51:30  20  way it wants it to work, but that is not the order calls

17:51:34  21  for.  Now, what we have raised as Skyryse's concerns

17:51:35  22  that we raised with the IDS protocol is, one, we know

17:51:39  23  Moog is interpreting it as requiring the production of

17:51:42  24  native files.  They made that request to us on a number

17:51:45  25  of occasions.  And, two, Skyryse is not prepared and

MOOG INC VS. SYRSE, INC, ET AL

this is not to impune IDS by any means, but outside of
the purposes and the requirements of the IDS protocol,
Skyryse is not prepared to simply put one of its most
valuable assets in the hands of a third party,
especially when there is no reason to think it contains
any Moog information in it.  So, Moog has not said it
won't be able to do source code comparisons as it wants
to under the reasonable proposal Skyryse has offered.
We've told Moog, if it encounter an actual page limit
problem, we'll solve it.  We'll meet and confer and
figure it out.  Printing source code is like getting
ready for a deposition exhibits, if they need 110 pages
or 200 pages, we'll work those things out.  This is part
of a routine part of discovery of source code.  But
Skyryse's concerns about taking that ill-fitting IDS
protocol and sitting it on top of source code review in
a different context and trying to make it work are
serious and they are legitimate and we've accommodated
every concern Moog has made with the protocol Moog has
raised at 286-4.  Their only push back on that is we
don't think we need a second order and we aren't sure we
can trust Skyryse and its counsel to comply with it.
And I can assure you, your Honor, that of course we
will.

1                     MOOG INC VS. SYRSE, INC, ET AL

17:54:32   2          MR. NAQVI:  Your Honor, may I address two

17:54:35   3   points, and one of them is brief.  There is an actual

17:54:38   4   and practical and logistical issue with entering a

17:54:41   5   second protocol.  There is not a separate set of people

17:54:44   6   who would be reviewing the two different sets of codes.

17:54:47   7   The problem that presents is an expert will not be able

17:54:51   8   to log on the IDS platform and review what is on the IDS

17:54:55   9   environment, and also do the source code review at

17:55:00   10  Lathem at the same time.  They would have to travel back

17:55:03   11  and forth.  They would have to do the review at Lathem's

17:55:07   12  office and then look into the IDS and back and forth and

17:55:11   13  back and forth, that creates unnecessary burden and

17:55:16   14  unnecessary delay.  It's a mathematician issue.

17:55:58   15  Everything needs to be in one place so the expert can

17:56:01   16  review what Skyryse is claiming is a separate code and

17:56:04   17  code that Skyryse potentially contends contains both.

17:56:09   18  The notion of traveling to an office and then going back

17:56:12   19  to the IDS virtual environment, back and forth, is going

17:56:15   20  to create massive issues for experts on all sides and

17:56:18   21  there are several experts in this case.  And so that is

17:56:22   22  an additional logistical problem.  And, I just want to

17:56:26   23  close with, we heard Mr. Gross say, Skyryse does not

17:56:31   24  trust IDS to host, but what Skyryse is asking is for

17:56:34   25  Moog to trust Skyryse to allow Moog to plug into Skyryse

                    MOOG INC VS. SYRYSE, INC, ET AL

17:56:39   computer.  How does that make sense?  We have a mutual

17:56:42   vendor that holds everyone's code as it already has been

17:56:45   doing, and that makes the most sense.  So, for Skyryse

17:56:49   to have a problem with a third party and expect Moog not

17:56:57   to have problems with plugging into Skyryse computer, to

17:57:01   me, makes no sense at all.

17:57:07            MR. GROSS:  Well, now just to make sure I

17:57:09   was very clear in this.  I'm not suggesting, and our

17:57:12   proposal doesn't require or even would allow Skyryse to

17:57:15   host any source code inspection.  This is done by

17:57:18   outside counsel only and experts only are allowed and

17:57:22   counsel are allowed to access this stuff.  Skyryse would

17:57:26   not be hosting this inspection, nor would we expect Moog

17:57:35   to host its inspections, this is where we trust the

17:58:18   outside law firms to do what to they do on a routine

17:58:24   basis in technology disputes.

17:58:26            MAGISTRATE JUDGE MCCARTHY:  Gabe, what about

17:58:28   Kazim's argument that this is inefficient because it

17:58:32   requires the expert to go to your office and then go

17:58:35   back and log onto IDS and can't do it all in one place.

17:58:39            MR. GROSS:  Yeah, I just disagree, your

17:58:41   Honor.  Having had to deal with source code reviews in

17:58:45   intellectual property disputes for the better part of

17:58:48   the last two decades right now, the source code review

MOOG INC VS. SYRSE, INC, ET AL

itself is virtually always us isolated in a secure
location.  Other discovery efforts have to take place in
other places.  Maybe it's at the counsel's office or an
expert's office or somewhere else.  But source code
review is virtually always isolated for security reasons
and we're just proposing to do it that way.  And, in
fact, we've even gone beyond that by allowing the other
side's source code to come into that room to facilitate
these comparisons.  I don't think it's inefficient.  I
think we're facilitating the other comparisons that Moog
says it wants and speed things up.  There is, by design,
a separation between source code and other inspection of
other.  I don't find that in inefficient and it secures
security.

MAGISTRATE JUDGE MCCARTHY:  Counsel, I heard
your positions today, and I've heard them when we were
last together on October 20th.  And I'll tell you in the
interest full disclosure, that you collectively have
exhausted my expertise in source code inspection
methodology.  I will just tell you this.  That as I sit
here today, I don't see a great harm in adopting
Skyryse's source code proposal.  I recognize it's not --
it's a different protocol, but I am interested first and
foremost, and I think everybody is interested first and

1               MOOG INC VS. SYRYSE, INC, ET AL
18:00:52   2   foremost in getting this trade secret identification
18:00:56   3   completed in the quickest and most efficient manner
18:00:59   4   possible.  And I -- it strikes me that the proposal made
18:01:05   5   by Skyryse is a reasonable proposal that best
18:01:10   6   accommodates everyone's interest.  However, if issues
18:01:14   7   should arise, such as page limitations on copying, et
18:01:19   8   cetera, et cetera, Mr. Gross, I take you at your word
18:01:22   9   that you will meet and confer and work through those
18:01:27   10  issues, otherwise we may have to revisit it.  And I'll
18:01:31   11  just say to you, beyond that, if somebody wants to take
18:01:35   12  my decision up to Judge Vilardo, God bless you.  He, I
18:01:40   13  don't think, he'll take a different view.  He may, but
18:01:43   14  it would seem to me that the next step, because, as I
18:01:46   15  indicated, I think you've -- I'm at the limit of my
18:01:51   16  understanding of this technology, then the next step, if
18:01:55   17  necessary, and hopefully not, would be for me to appoint
18:01:59   18  a special master to just coordinate that entire process,
18:02:04   19  which would lead to additional expense and delay, but I
18:02:07   20  hope it doesn't come to that.  So, those are going to be
18:02:11   21  my rulings.  We do have the motion for clarification,
18:02:17   22  docket No. 283, that was filed on November 7th.  Today
18:02:24   23  is November 10th.  There has been no briefing schedule.
18:02:28   24  I'm willing to set it.  I've only skimmed that motion.
18:02:34   25  I have not reviewed it in great detail, but I'll just

                        MOOG INC VS. SYRYSE, INC, ET AL

18:02:37   2   say that, unless there is a real compelling need to get

18:02:44   3   into third-party discovery, I think we should be

18:02:48   4   focusing on what we already have and nailing that down.

18:02:52   5   But, I'm not saying no, I'm not saying yes.  We'll take

18:02:56   6   that up on another date.

18:03:00   7           What do the parties propose as to a briefing

18:03:03   8   schedule on that?  Because the other thing, I recognize

18:03:06   9   a lot of the people to whom subpoenas have been

18:03:09  10   addressed are, I guess, Skyryse employees.  So, Mr.

18:03:14  11   Gross, would your office be representing them on this or

18:03:18  12   because --

18:03:18  13           MR. GROSS:  Your Honor, we are representing

18:03:21  14   many of those witnesses.  There may be some on the

18:03:25  15   edges.  There is a handful that we are not representing.

18:03:28  16   But we certainly are representing many of them.

18:03:30  17           MAGISTRATE JUDGE MCCARTHY:  And then there

18:03:31  18   was another company mentioned, right?

18:03:33  19           MS. ANDOH:  Hummingbird, your Honor, that

18:03:36  20   would be the other company.

18:03:37  21           MAGISTRATE JUDGE MCCARTHY:  So they are

18:03:38  22   going to have to be heard, I take it.

18:03:40  23           MS. ANDOH:  Your Honor, I actually would

18:03:42  24   argue, no, they don't, because this isn't a motion by

18:03:45  25   them to quash or modify, it's a motion by us to compel

1          MOOG INC VS. SYRSE, INC, ET AL

18:03:48   2   compliance with any --

18:03:49   3          MAGISTRATE JUDGE MCCARTHY:  But they've

18:03:50   4   lodged objections, right?

18:03:52   5          MS. ANDOH:  Well, the objections -- your

18:03:55   6   Honor, the objection that they've lodged is that their

18:03:57   7   interpretation of your Honor's order does not require

18:03:59   8   them to comply with the subpoena right now.  So, the

18:04:03   9   only issue that we're seeking to discuss with the Court

18:04:06  10   is a clarification as to whether or not third party

18:04:08  11   subpoenas can be implicated as part of this.  And I will

18:04:12  12   -- I will say, I mean the only, the only reason why

18:04:15  13   these subpoenas got served on the Skyryse employees to

18:04:19  14   begin with is because -- it's because Skyryse took the

18:04:24  15   position that even if their employees used their

18:04:27  16   personal devices for work purposes, that they would not

18:04:31  17   take responsibility for producing them as part of party

18:04:34  18   discovery.  And we moved -- we actually made a motion on

18:04:37  19   that.  And as a compromised position, instead of your

18:04:42  20   Honor ruling on it, your Honor instead said go serve

18:04:45  21   subpoenas on them.  But these Skyryse employees that we

18:05:18  22   served subpoenas on, this is not a standard third party

18:05:21  23   situation, this is a situation where we were trying to

18:05:51  24   get access to Skyryse material for their work for

18:05:54  25   Skyryse that was sitting on their devices.

1          MOOG INC VS. SYRSE, INC, ET AL

18:05:56   2          MAGISTRATE JUDGE MCCARTHY:  How about the

18:05:57   3   other company, Hummingbird.

18:05:59   4          MS. ANDOH:  So, Hummingbird is a slightly

18:06:01   5   different issue, your Honor, but they actually have not

18:06:04   6   objected or responded.  We included it in the motion for

18:06:08   7   full disclosure so you knew we went ahead and served

18:06:11   8   them.  There are two former Skyryse employees, we

18:06:14   9   haven't received official confirmation of this, but my

18:06:18   10  impression is that -- well, I shouldn't presume.  There

18:06:21   11  are two Skyryse employees, Mr. Baptist and Mr. Achar who

18:06:26   12  have retained separate counsel that are not being

18:06:29   13  represented by Lathem who received subpoenas who are

18:06:33   14  objecting on this basis.  There are other people that we

18:06:37   15  have served that have not objected with separate

18:06:40   16  counsel.  And as we understand, last we heard the

18:06:42   17  employees that Lathem was representing, were going to be

18:06:46   18  producing materials.  We haven't received them yet for

18:06:50   19  everybody.  We think we've received two productions so

18:06:53   20  far.  It may be with respect to the Lathem employees,

18:06:55   21  the Lathem represented employees, there may not be this

18:07:00   22  continuing issue, it's just not clear.  But we already

18:07:03   23  reached and impasse with counsel for Mr. Baptist and Mr.

18:07:08   24  Achar, irrespective whether or not the Lathem

18:07:11   25  representatives produce this issue, we still have the

1          MOOG INC VS. SYRYSE, INC, ET AL

18:07:15   2   problem with the interpretation of your Honor's order.

18:07:17   3          MAGISTRATE JUDGE MCCARTHY:  So, they will

18:07:18   4   need to be heard on this, right?

18:07:20   5          MS. ANDOH:  Your Honor, I guess, your Honor,

18:07:22   6   my point on this would be, I don't understand how they

18:07:25   7   would have standing.  Because this order only applies to

18:07:29   8   this case.  They are not parties to this case.  If they

18:07:32   9   want --

18:07:32   10          MAGISTRATE JUDGE MCCARTHY:  No, but --

18:07:33   11          MS. ANDOH:  If they want to quash or modify.

18:07:35   12          MAGISTRATE JUDGE MCCARTHY:  Yeah.  Well, no.

18:07:37   13   I haven't seen their responses.  Maybe it's in your

18:07:41   14   papers.  As I said, I have not drilled down on that

18:07:45   15   motion because I had enough else to focus on for today.

18:07:49   16   But, if they are, I agree with you that they don't have

18:07:55   17   standing to say that you can or cannot do this.  But

18:07:59   18   they do have standing to object to the subpoenas or

18:08:05   19   their merits.  And then I presume the next step would be

18:08:08   20   you bring a motion to compel and they are entitled to be

18:08:12   21   heard on that or they bring a motion to quash or

18:08:16   22   whatever.  So, at some point, they are going to be heard

18:08:19   23   on some aspect of this, right?

18:08:21   24          MS. ANDOH:  Unless they decide they are

18:08:23   25   going to withdraw their objections.  Again, right now

1                    MOOG INC VS. SYRYSE, INC, ET AL

18:08:25   2    the only objection of theirs that we're dealing with is

18:08:29   3    this concept that there is a stay of discovery such that

18:08:32   4    they don't need to comply because of your Honor's order.

18:08:34   5    That is the only issue that is before your Honor at the

18:08:37   6    moment.  We've intentionally not taken up the rest of

18:08:40   7    those objections because we don't think this is the

18:08:43   8    proper forum to do that.

18:08:45   9                    MAGISTRATE JUDGE MCCARTHY:  Mr. Gross,

18:08:45   10   anything you want to say?

18:08:46   11                   MR. GROSS:  I do.

18:08:47   12                   MAGISTRATE JUDGE MCCARTHY:  Let me, Mr.

18:08:49   13   Gross or Mr. Green or Mr. Truitt, I mean this impacts

18:08:53   14   all of you, I guess, in one way or another.

18:08:56   15                   MR. GROSS:  I appreciate that, your Honor.

18:08:57   16   I'm actually, I'm going to turn it over to my colleague

18:09:02   17   Mr. Zahoory, who has been working closely with the third

18:09:06   18   parties to respond.  Before I do that, the motion, in

18:09:09   19   our view, isn't ripe.  It is premature.  We let, on

18:09:14   20   behalf the third parties we represent, we let counsel

18:09:17   21   know that they would be providing documents in response

18:09:19   22   to the subpoena and the motion came in any way.  Let me

18:09:22   23   have Mr. Zahoory flesh out the positions at this stage,

18:09:27   24   and we, of course, reserve our right to oppose the

18:09:30   25   motion if the full briefing goes forward.

1          MOOG INC VS. SYRYSE, INC, ET AL

18:09:32    2          MAGISTRATE JUDGE MCCARTHY:   Okay.   But so

18:09:33    3   everybody understands, first of all, this is a motion

18:09:37    4   for clarification.   Nobody has formally responded.

18:09:42    5   While we're all together, I guess, I'll hear briefly

18:09:44    6   from you.   But if the question is is Moog allowed to

18:09:55    7   serve third-party subpoenas in order to identify the

18:10:01    8   trade secrets that it claims to have been

18:10:04    9   misappropriated, I guess my answer to that, and I think

18:10:09   10   I alluded to that at our last conference, would be yes.

18:10:13   11   But I am concerned that we not end up going down a whole

18:10:18   12   different series of alleyways on this because, at some

18:10:24   13   point, we have to bring the curtain down on

18:10:26   14   identification trade secrets with the caveat that, as

18:10:32   15   we've said from the get go, at some point you identify

18:10:38   16   the trade secrets that you claim to have been

18:10:40   17   misappropriated.   If, thereafter, you find that there

18:10:44   18   are other trade secrets, you can identify those for, you

18:10:47   19   know, on a showing of good cause, which I think would

18:10:50   20   be, you know, Judge Vilardo or I would be relatively

18:10:56   21   open to.   But, we're now, and it's not anybody's fault,

18:11:00   22   but it is what it is.   This action was commenced in

18:11:03   23   March, I believe, and we're now in November, and we have

18:11:08   24   no preliminary injunction hearing scheduled.   I guess it

18:11:14   25   remains an open issue of whether that hearing will be

                    1            MOOG INC VS. SYRYSE, INC, ET AL
18:11:17    2    here or in California.  But, we just, at some point, we
18:11:23    3    got to say, okay, enough, and now identify.  And if you
18:11:26    4    need to identify more stuff later, then okay.  But, do
18:11:31    5    you understand where I'm coming from?
18:11:33    6            MR. GROSS:  We do, your Honor.  If I may ask
18:11:36    7    Mr. Zahoory to just make a few statements on this
18:11:39    8    position.
18:11:40    9            MAGISTRATE JUDGE MCCARTHY:  Well, before I
18:11:41   10    do, I guess back to Ms. Andoh.  I mean, I'm not saying
18:11:45   11    you can't, and I didn't last time.  I just, I'm
18:11:51   12    concerned that we not go off in all different kinds of
18:11:55   13    different directions, which is going to delay this
18:11:59   14    indefinitely without there being any identification.
18:12:02   15            MS. ANDOH:  Your Honor, no one is more
18:12:03   16    frustrated than Moog is that this process is taking so
18:12:06   17    long.  The problem that we simply have, and we heard a
18:12:10   18    lot of it in this hearing, is that our information has
18:12:12   19    now passed through, that we're aware of, a large number
18:12:16   20    of hands of employees that are associated with Skyryse.
18:12:19   21    And, so, we're just doing the best we can to track that
18:12:22   22    down so that, in our trade secret identification, we can
18:12:25   23    identify what has been used, and we have the fullest
18:12:29   24    scope of information available to us, because, as your
18:12:31   25    Honor pointed out, for purposes of the preliminary

1          MOOG INC VS. SYRSE, INC, ET AL

2    injunction, we need to be able to demonstrate, right,

3    the likelihood on the merits with respect to any of the

4    trade secrets that we're going to present at the

5    preliminary injunction.  And that likelihood of success

6    on the merits requires us to provide evidence of use.

7    We're not trying to go down rabbit holes.  This is us

8    trying to comply with the suggestion that instead of

9    fighting with Skyryse over whether Skyryse was obligated

10   to collect its own company information off of its

11   employees' personal devices, that we take the route of

12   serving them.  And I point out from what Mr. Gross said

13   previously, I understand that the Lathem represented

14   employees are representing the third-party employees are

15   going to provide documents with respect to the

16   third-party subpoenas.  And if they do that, that is

17   great.  And as I mentioned before, there are two

18   additional subpoena recipients who are Skyryse

19   employees, Mr. Achar and Mr. Baptist, who is represented

20   by two separate counsel, that are not Lathem and

21   Watkins, who we met and confer, and they refuse to move

22   off their position.

23          MAGISTRATE JUDGE MCCARTHY:  Okay.  Let me

24   say this.  I don't think I need to hear from Mr. Zahoory

25   on this.  If the issue is, irrespective of the merits of

1   MOOG INC VS. SYRYSE, INC, ET AL

2   the subpoena, if the issue is whether Moog is allowed to

3   serve these third-party subpoenas to the extent that

4   they are directed at identifying trade secrets which

5   have been misappropriated, I will clarify that, yes,

6   they are allowed to do that.  But, as to any particular

7   objection to any subpoena, whether it's relevant,

8   whether it's burdensome, anything of that sort,

9   obviously I can't speak to that right now.  So, you can

10  tell the other attorneys who are representing these

11  other parties that, no, I am not prohibiting you from

12  serving the subpoenas nor am I saying the subpoenas are

13  proper or anything of that sort, that would have to be

14  taken up at a later date.  Okay?

15      MS. ANDOH:  Your Honor, that is literally

16  the only relief that we were seeking by way of that

17  motion was that specific clarification.  So, from our

18  perspective, we can take this transcript and use that,

19  and we don't have to worry about doing a full briefing.

20      MAGISTRATE JUDGE MCCARTHY:  Okay.  But,

21  again, everybody reserves their right to say as to any

22  particular subpoena, this is not relevant, this is too

23  burdensome, this is not directed at identifying trade

24  secrets, whatever.  I'll decide all of those issues, if

25  I need to, down the road.  But, to clarify, I've

```
 1              MOOG INC VS. SYRYSE, INC, ET AL
 2   clarified.  Okay.
 3              MS. ANDOH:  Thank you, your Honor.
 4              MR. GROSS:  Thank you, your Honor.  Could I
 5   ask just for clarity on the record, would you please ask
 6   Moog's counsel then if they withdraw the motion so we
 7   know it's not something that is owed an opposition or
 8   response?
 9              MAGISTRATE JUDGE MCCARTHY:  They don't have
10   to withdraw the motion, I just ruled on the motion.
11   I've clarified that they are allowed to serve the
12   subpoenas.
13              MR. GROSS:  I appreciate that, your Honor.
14   We heard that clarification last time, too.  It does
15   request different relief.  It asks for a ruling on the
16   relevance of the subpoenas.  It gets to the merits a
17   little bit, and that is still outstanding.
18              MAGISTRATE JUDGE MCCARTHY:  Okay.  That is
19   what I'm not going to do today.  And I said, I'm aware
20   that the motion has been filed, and I hadn't studied it
21   and I skimmed it.  And Ms. Andoh just told me that is
22   the only clarification she was asking for in the motion.
23   And if that is the only clarification, then fine.  And
24   we'll take up everything else at a later date.  I mean,
25   I can do a text order that specifies that.
```

1          MOOG INC VS. SYRYSE, INC, ET AL

18:17:29   2          MS. ANDOH:  That would be very helpful, your

18:17:31   3  Honor.

18:17:31   4          MAGISTRATE JUDGE MCCARTHY:  Okay.  All

18:17:32   5  right.

18:17:34   6          MR. TRUITT:  And, sorry, just to clarify, no

18:17:37   7  response to required right now to that motion.

18:17:42   8          MAGISTRATE JUDGE MCCARTHY:  Not only is no

18:17:44   9  response required, I wouldn't --

18:17:47  10          MR. TRUITT:  Not permitted either.

18:17:49  11          MAGISTRATE JUDGE MCCARTHY:  No, it would be

18:17:50  12  permitted, but I think with what I just said, that is

18:17:53  13  the only issue I'm clarifying.  And any issue as to any

18:17:56  14  particular subpoena, the propriety of it is deferred

18:18:02  15  into a later date.  Okay?

18:18:03  16          MR. TRUITT:  Okay, thank you.

18:18:04  17          MAGISTRATE JUDGE MCCARTHY:  Are we all good

18:18:05  18  on that then?

18:18:07  19          MS. ANDOH:  We are, your Honor.

18:18:08  20          MAGISTRATE JUDGE MCCARTHY:  Now, my, you

18:18:15  21  know, everything I say, every conference we have is on

18:18:18  22  the record, so I appreciate that because it helps us all

18:18:23  23  remember what we said.  But I'm not going to issue any

18:18:28  24  formal ruling beyond the bench rulings that I've made

18:18:32  25  today other than for the benefit of non parties, I will

```
                        MOOG INC VS. SYRYSE, INC, ET AL

18:18:36    2   issue a text order on the motion for clarification.  But

18:18:43    3   other than that, my rulings will stand as I've indicated

18:18:46    4   today.  Okay.

18:18:48    5                Now, you're next going to be seeing Judge

18:18:51    6   Vilardo, I think.  But, just in terms of moving things

18:18:55    7   along with me, if he says we're still going to be here,

18:19:02    8   I'll leave it open to the parties as to what you next

18:19:05    9   want to propose.  If you want to propose that we set

18:19:10   10   another conference now, I can do that, or, if you just

18:19:14   11   want to wait and see what transpires, vis-à-vis the

18:19:18   12   subpoenas, I can wait until I'm called onto rule on

18:19:22   13   something.

18:19:22   14                MR. GROSS:  Your Honor, while we were in

18:19:24   15   this hearing, I saw that Judge Vilardo's Chambers did

18:19:35   16   set a date for the hearing, which I believe is on the

18:19:37   17   29th, which is on the motion about jurisdiction and

18:19:40   18   venue, so, in light of that, our suggestion would be

18:19:46   19   that we reconvene about a status conference after that

18:19:50   20   hearing when we might have some more guidance or

18:19:53   21   direction as to where the case is heading.

18:19:54   22                MAGISTRATE JUDGE MCCARTHY:  Why don't I give

18:19:56   23   you a date right now?  Is that okay?

18:19:58   24                MR. GROSS:  Certainly.

18:20:01   25                MAGISTRATE JUDGE MCCARTHY:  Bear with me a
```

```
              1              MOOG INC VS. SYRSE, INC, ET AL
18:20:02      2    minute.  So 29th, I don't know if he is going to rule at
18:20:09      3    that time or defer, but, in any event, let me just give
18:20:16      4    you a date.  My problem with my calendar, it logs me off
18:20:27      5    automatically, and I have to log back in.  Your meeting
18:20:32      6    with him on the 29th, so how about I would say Pearl
18:20:39      7    Harbor day, but let's not do that.  How about Thursday,
18:20:43      8    December 8th, that gives folks enough time to digest
18:20:48      9    whatever has happened in the meanwhile.  Is that good?
18:20:55     10              MR. GROSS:  That works for Skyryse, your
18:20:57     11    Honor.
18:20:57     12              MS. ANDOH:  That works for Plaintiff.
18:20:59     13              MR. TRUITT:  Works for the individual
18:21:00     14    Defendants as well.
18:21:01     15              MAGISTRATE JUDGE MCCARTHY:  Okay.  Why don't
18:21:02     16    we say -- wait a second.  Just having said that, I have
18:21:09     17    a 4 o'clock conference.  Can we start ours at 2 o'clock
18:21:16     18    Eastern time.
18:21:19     19              MS. ANDOH:  For Plaintiff, that works.
18:21:20     20              MR. GROSS:  We're good.
18:21:22     21              MR. TRUITT:  Yes.
18:21:22     22              MAGISTRATE JUDGE MCCARTHY:  That would be 11
18:21:23     23    o'clock for Mr. Gross and whoever is out on the coast.
18:21:28     24              MR. GROSS:  Sure thing, your Honor.
18:21:30     25              MAGISTRATE JUDGE MCCARTHY:  Okay.  All
```

```
                      MOOG INC VS. SYRYSE, INC, ET AL
18:21:32   2    right.  And, again, obviously, if Judge Vilardo would
18:21:38   3    send this case elsewhere in the interim, I'll take it
18:21:41   4    out.  But I have no indication from him one way or the
18:21:46   5    other what he plans to do.
18:21:49   6              So, all right, folks, I do appreciate that
18:21:53   7    you disagree on issues, but you've done a good job on
18:21:57   8    working through a lot of issues with each other and I
18:22:02   9    encourage you to continue doing so.  So, thank you all.
18:22:07  10              MR. GROSS:  All right.  Thank you, your
18:22:08  11    Honor.
18:22:08  12              MS. ANDOH:  Thank you, your Honor.
18:22:09  13              MR. TRUITT:  Thank you, your Honor.
18:22:11  14              MAGISTRATE JUDGE MCCARTHY:  Take care.
          15                        *    *    *
          16                  CERTIFICATE OF REPORTER
          17
          18       I certify that the foregoing is a correct transcript
          19    of the record to the best of my ability of proceedings
          20    transcribed from the audio in the above-entitled matter.
          21
          22    S/ Karen J. Clark,  RPR
          23    Official Court Reporter
          24
          25
```