1                  **UNITED STATES DISTRICT COURT**
                   **WESTERN DISTRICT OF NEW YORK**
2
   _____
3  **MOOG INC.,**

                                    Case No. 1:22-CV-187
4                  Plaintiff,                    (LJV)

5  vs.                              November 29, 2022

6  **SKYRYSE, INC.,**
   **ROBERT ALIN PILKINGTON,**
7  **MISOOK KIM,**
   **DOES NOS. 1-50**
8
                   Defendants.
9  _____

10        **VIA ZOOM FOR GOVERNMENT VIDEOCONFERENCE**

11             **TRANSCRIPT OF ORAL ARGUMENT**
        **BEFORE THE HONORABLE LAWRENCE J. VILARDO**
12              **UNITED STATES DISTRICT JUDGE**

13
   **APPEARANCES:**              **SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
14                               **BY: KAZIM A. NAQVI, ESQ.**
                                    333 South Hope Street
15                                  43rd Floor
                                    Los Angeles, CA 90071
16
                                 **BY: RENA ANDOH, ESQ.**
17                                  30 Rockefeller Plaza
                                    New York, NY 10112
18
                                 **HODGSON RUSS LLP**
19                               **BY: REETUPARNA DUTTA, ESQ.**
                                    **ROBERT J. FLUSKEY, JR., ESQ.**
20                                  The Guaranty Building
                                    140 Pearl Street
21                                  Suite 100
                                    Buffalo, NY 14202
22
                                 **For the Plaintiff, Moog Inc.**
23

24

25

```
 1                         LATHAM & WATKINS LLP
                          BY: ARMAN ZAHOORY, ESQ.
 2                            DOUGLAS E. LUMISH, ESQ.
                              GABRIEL S. GROSS
 3                            140 Scott Drive
                              Menlo Park, CA 94025
 4
                          BY: JOSEPH H. LEE, ESQ.
 5                            650 Town Center Drive
                              20th Floor
 6                            Costa Mesa, CA 92626-1925

 7                        BY: JULIANNE CATHERINE OSBORNE, ESQ.
                              505 Montgomery Street
 8                            Suite 2000
                              San Francisco, CA 94111
 9
                          HARRIS BEACH LLP
10                        BY: TERRANCE P. FLYNN, ESQ.
                              Larkin at Exchange
11                            726 Exchange Street
                              Suite 1000
12                            Buffalo, NY 14210

13                        For the Defendant Skyryse, Inc.

14                        WINGET, SPADAFORA & SCHWARTZBERG, LLP
                          BY: ALEXANDER ASHER TRUITT, ESQ.
15                            ANTHONY D. GREEN, ESQ.
                              45 Broadway
16                            32nd Floor
                              New York, NY 10006
17
                          For the Defendants Robert Alin Pilkington
18                          And Misook Kim

19
     PRESENT:             STEPHEN KOO, CFO of Skyryse, Inc.
20
     LAW CLERK:           WILLIAM M. HAYES, ESQ.
21
     COURTROOM CLERK:     COLLEEN M. DEMMA
22
     COURT REPORTER:      ANN M. SAWYER, FCRR, RPR, CRR
23                        Notary Public
                          Robert H. Jackson Courthouse
24                        2 Niagara Square
                          Buffalo, New York 14202
25                        Ann_Sawyer@nywd.uscourts.gov
```

```
 1                    (Proceedings commenced at 2:35 p.m.)

 2                    THE COURT:  Okay.  Can everybody hear me?

 3                    THE CLERK:  Yes, Judge.  I'll call the case.

 4              United States District Court for the Western District

 5      of New York is now in session, the Honorable Lawrence J.

 6      Vilardo presiding.

 7                    22-CV-187, Moog, Inc. versus Skyryse, Inc., et al.

 8              Attorneys Kazim Naqvi, Reetuparna Dutta, Rena Ando,

 9      and Robert Fluskey, Jr. appearing on behalf of the plaintiff.

10              Attorneys Douglas Lumish, Gabriel Gross, Terrance

11      Flynn, Julianne Osborne, Joseph Lee, and Arman Zahoory

12      appearing on behalf defendant Skyryse, Inc.  Also present is

13      Stephen Koo, who is chief financial officer of Skyryse, Inc.

14              Attorneys Anthony Green and Alexander Truitt

15      appearing on behalf of defendants Pilkington and Kim.

16              All parties are appearing by videoconference, and

17      this is the date set for an oral argument.

18                    THE COURT:  Good afternoon, everybody.  Let me start

19      by saying what I've been saying at the beginning of all of

20      these proceedings that we've done by Zoom or by phone, and

21      that is that no one is to record or rebroadcast this in any

22      way, and that's under penalty of contempt and the sanctions

23      that might go along with it.

24              So who is going to argue for plaintiff, first of all?

25                    MS. DUTTA:  Reena Dutta, Your Honor, Hodgson Russ.
```

```
 1                THE COURT:  Okay, Ms. Dutta.  Who's going to argue

 2    for Skyryse?

 3                MR. GROSS:  That's me, Your Honor, Gabriel Gross.

 4                THE COURT:  Okay, Mr. Gross.  And who's going to

 5    argue for the individual defendants?

 6                MR. TRUITT:  Myself, Your Honor, Alexander Truitt.

 7                THE COURT:  Good.  Okay.  So this is the defendant's

 8    objection to Judge McCarthy's report and recommendation, and

 9    really it's the objection just to the first four pages, I

10    think, of the report and recommendation that deal with the

11    jurisdictional issues and Judge McCarthy's deciding that the

12    preliminary injunction would take place in this Court and then

13    the motion for jurisdiction and venue be decided after that.

14                So, Mr. Gross or Mr. Truitt, whoever's going to take

15    the lead, you can begin.

16                MR. GROSS:  I'm happy to, Your Honor, thank you.

17                Your Honor, I think there's really three reasons why,

18    respectfully, we think Magistrate Judge McCarthy erred in the

19    report and recommendation.

20                What he decided was that two stipulations the parties

21    entered into in the early days of the case reflected explicit

22    consent to this Court's authority over them, jurisdiction over

23    them and venue, for purposes of resolving a substantive-merits

24    motion, the preliminary injunction motion.

25                First, he got it wrong on the text.  The text of
```

 1   those stipulations, in order to support his conclusion, would

 2   need to reflect a meeting of the minds by the three

 3   defendants, all of whom live in California, and the plaintiff,

 4   that they intended to submit themselves indefinitely until the

 5   resolution of the substantive motion to this Court's authority

 6   and jurisdiction and venue.  And the text of those

 7   stipulations, which I'll gladly walk through with the Court

 8   today, just doesn't reflect that sort of meeting of the minds

 9   or that sort of intent by the parties.

10          THE COURT:  So let me stop you there, and let me ask

11   you, because I've parsed these stipulations pretty closely.

12          So, the most troubling paragraphs for you, I think,

13   are paragraph -- the final bullet point in paragraph 6, and

14   the stipulation that's March 16th, the second stipulation,

15   which Judge McCarthy relies on.  And that stipulation provides

16   that the preliminary injunction hearing would be held subject

17   to the Court's availability.

18          And he says that because the Court, throughout this

19   stipulation, is the Western District of New York, that the

20   Court there needs to be the Western District of New York.

21   That makes some intuitive sense to me.

22          And then when you couple that with the last

23   paragraph, paragraph 12, of the other stipulation, the --

24   the -- I think the earlier of the two, if I recall correctly,

25   yeah, March 11th, that says that the stipulated order remains

1   in effect until a hearing on the preliminary injunction takes

2   place and a final ruling on the merits is issued.

3          So -- so, tell me why those two provisions read in

4   conjunction with one another don't suggest that

5   Judge McCarthy's right.

6          MR. GROSS:  They -- they don't, Your Honor, for a

7   number of reasons.

8          One is that, to go to your first point, about the

9   last bullet of paragraph 6 in the March 17th stipulation,

10  tentatively set an aspirational hearing date subject to the

11  Court's availability.  The purpose for this, Your Honor, is

12  because the parties met in good faith and agreed to advance

13  this case as much as they could subject to the defendant's

14  challenges to jurisdiction and venue.

15         And the way they did that was by asking for a hearing

16  date from which they could work backwards and set a briefing

17  schedule, and also arrange for expedited discovery that the

18  plaintiff claimed it needed.  And that's what the parties

19  agreed to.

20         And they agreed to do it, Your Honor, in both of

21  these stipulations subject to -- or, excuse me, in the

22  March 17th stipulation expressly, subject to any and all other

23  challenges to the Court's jurisdiction.

24         There is consent, to be sure.  There is a limited

25  consent to this Court's jurisdiction and venue for purposes of

1    these two stipulations.  And, Your Honor, the purposes of

2    these stipulations are very clear on their face.  And they say

3    a lot, but they don't say for purposes of resolving a

4    merits-based motion that speaks to things like the likelihood

5    of success that the Court would need to pass on in a ruling on

6    a preliminary injunction motion.

7            And if -- if -- if the Court would indulge me, I'll

8    be happy to go through in broad strokes the -- the types of

9    purposes of the motion, the things we actually see in the text

10   that I think put paragraph 6 and paragraph 12 into -- into

11   really clear context that we think, respectfully, Magistrate

12   Judge McCarthy didn't consider and -- and should have.

13           THE COURT:  You're going to point first to

14   paragraph 13 of the second one that says there's an agreement

15   set forth herein solely for purposes of expedited discovery,

16   aren't you?

17           MR. GROSS:  Well, that is one of them.  And you're

18   steps ahead of me, Your Honor, of course.

19           And if you ever wanted to see a clearer manifestation

20   of the purpose of a stipulation, see what it says about the

21   purpose.  And you read the one that I was going to begin with,

22   solely for the purposes of expedited discovery.

23           I think that actually may be a touch overstated,

24   because that same stipulation also talks about a briefing

25   schedule, so it's not just expedited discovery but a briefing

 1   schedule.  But it's really logistical in nature.  It says,

 2   hey, we're gonna agree to exchange some discovery, move it

 3   forward quickly according to a schedule and, Court, you can

 4   hold us to it, we will submit to your authority and venue for

 5   purposes of this stipulation.  And that's --

 6           THE COURT:  Is there any -- one of the things I have

 7   a tough time wrapping my head around is how I could enter a

 8   preliminary injunction granting merits-based relief against a

 9   party over whom I might not have jurisdiction.  That --

10   that -- that -- that concerns me.  I'm sure it concerns you,

11   too.

12           Tell me, is it -- is there any caselaw addressing

13   this sort of situation where parties stipulate to one court

14   granting injunctive relief -- and I'm presuming that the other

15   side is correct here on that.  So is there any caselaw

16   addressing the parties stipulating to a court's granting

17   injunctive relief before the jurisdictional issue was decided?

18           MR. GROSS:  Your Honor, we haven't been able to find

19   any caselaw with that precise fact pattern.

20           THE COURT:  Ms. Dutta, have you found anything?

21           MS. DUTTA:  Your Honor, we have not.  But I would

22   just like to note that Magistrate Judge McCarthy found there

23   was jurisdiction for purposes of the preliminary injunction.

24           THE COURT:  I get it.  I don't want to get to that.

25   I just want to know whether there's any caselaw precedent,

1     that's all.  And I'm going to give you plenty of time to make

2     your arguments.

3            So, go ahead, Mr. Gross.

4            MR. TRUITT:  Your Honor, in our opening -- sorry, in

5     our reply brief and our opening brief, you know, we did cite

6     to cases that established a general principal that the Court

7     must establish it has jurisdiction over the parties before it

8     can make.  And then in a Rule 12(h)(1), you know, it sets

9     forth the only basis by which, you know, the Court can find

10    that the parties have waived jurisdiction, you know,

11    eliminating the specific and general appearance problem that

12    used to exist.

13           And I think that's where this dispute really falls

14    into, is that we're entering into a stipulation that has a

15    clear reservation of rights, it was for a very limited

16    purpose, and the plaintiff is arguing that this is a general

17    appearance that requires us to consent to jurisdiction now.

18           THE COURT:  Okay.  I got it.  I got it.  I really

19    wanted to focus on just that specific question, and it sounds

20    like there isn't any caselaw.

21           So, go ahead, Mr. Gross.

22           MR. GROSS:  Thank you, Your Honor.

23           We -- we were troubled by the same thing that I think

24    troubled you.  But the 2nd Circuit and other circuit have

25    spoken to a very similar issue.  It's the Arrowsmith case that

1   we've cited to Your Honor in our briefing from the

2   2nd Circuit, it's almost 60 years old, it's from 1963.  And in

3   that case, the 2nd Circuit -- it remanded the case back to the

4   district court after the district judge, when faced with a

5   Rule 12(b)(6) motion, a personal jurisdiction challenge, and a

6   venue motion, decided to rule and dismiss the case under

7   12(b)(6) without addressing the threshold jurisdictional and

8   venue issues.

9          Now what the 2nd Circuit held there is -- on

10  remanding it is that the district court needed to consider the

11  issues of, first, jurisdiction, and then if those go in the

12  plaintiff's way, then venue, and if those issues fall the

13  plaintiff's way, then you can reach consideration of the

14  merits issues, like in the 12(b)(6) motion.

15         And I think that's -- and I think that's ample

16  guidance for the Court to do here.  Rather than reaching the

17  merits of a substantive injunctive motion, the Court needs to

18  first ascertain whether it has authority over the parties

19  before it before getting to that point.

20         And, Your Honor, this is actually a fact pattern that

21  comes up in a similar circumstances -- in a similar

22  circumstance in other IP cases.  And so the federal circuit,

23  which of course hears patent appeals, or appeals of patent

24  cases, has dealt with this on a number of occasions where

25  cases in fast-moving dockets get rather far along on the

1   merits while a motion to transfer venue or a motion

2   challenging jurisdiction or the propriety of venue is pending.

3   And so I'd refer to the Court In Re: Google and In Re: Apple

4   cases that we've cited in our brief, too.

5          The federal circuit applies different circuits' law,

6   depending on the districts that, of course, the patent cases

7   arise from.  And in In Re: Google, the Court made the same --

8   the same point, that a venue transfer motion should be a top

9   priority, and that if a court reaches that motion after the

10  case has proceeded along the merits, then the lower court

11  shouldn't be considering its familiarity with the case that

12  it's acquired in the months that have passed.  It actually

13  held that to be irrelevant to the transfer decision when the

14  Court reaches to it.

15         And in the Apple case, the federal circuit held that

16  it was actually legal error for the Court to consider the work

17  and the -- the steps it had taken on the merits of the case

18  before -- or, when it reached the transfer motion and weighed

19  the transfer considerations.

20         THE COURT:  Of course, in neither of those cases

21  there was a -- was there a stipulation like the one here.

22         MR. GROSS:  No, Your Honor, this -- this scenario is

23  unique.  But what's also unique about these stipulations is

24  that on their face, the consent is limited to the purposes of

25  the order.

1          So with that, if I could turn to the language of the

2     stipulations, I think it gives us all some guidance here.  And

3     this wasn't part of the briefing, it wasn't part of Magistrate

4     Judge McCarthy's analysis, because this issue never came up

5     during the initial briefing.  I think it tells you something

6     about the strength of the consent argument that the -- Moog

7     never raised it in its first brief.

8          Now to be sure, it argued that by participating in

9     some litigation events, the defendants have forfeited their

10    right to challenge the Court's jurisdiction, but -- but it did

11    not make an explicit consent argument and say that the

12    stipulations themselves affected a waiver of the right to

13    challenge venue for these purposes.  That only came up first

14    by email, and then through some supplemental briefing four

15    months later right before Magistrate Judge McCarthy issued his

16    decision when the defendants didn't have an opportunity to

17    respond.

18          THE COURT:  By the same token -- by the same token,

19    defense counsel certainly contemplated a hearing in front of

20    me, right?  There's multiple citations to that in the past.

21          MR. GROSS:  Oh, to be -- to be sure, Your Honor.  In

22    early proceedings and hearings before the magistrate, we then,

23    like today, knew we were in one court and one court only.

24    We -- we -- unless and until the case gets transferred or

25    dismissed and it ends up in a court like the Central District

1   of California, Your Honor is presiding over this case, and we

2   are assuming that a preliminary injunction proceeding will be

3   before Your Honor until we're told it's not.  But respectfully

4   we think it shouldn't be.

5          THE COURT:  Okay.

6          MR. GROSS:  So, if we could, I think it's useful to

7   look at the first of the two stipulations, that's ECF number

8   25.  And this -- the date matters here, this is March 11th.

9   So the complaint was filed March 7th.  This is just four days

10  after the complaint hit the docket in this Court, and the

11  parties were meeting/conferring to address what Moog said was

12  its need for very urgent relief.  And one of the things they

13  did was enter into this -- this stipulation.

14         So I won't -- I'll spare the Court the details of

15  going through paragraph by paragraph, but I think

16  categorically, we can -- we can see what the purposes of this

17  stipulation are by reference to its text.

18         The title is helpful.  It's a stipulation and

19  proposed order regarding the production of information, data

20  preservation, and forensic searching.  That's it.  It doesn't

21  say on its title or anywhere on the document that it's a

22  stipulation agreeing to the Court's jurisdiction and venue for

23  purposes of resolving substantive motions.

24         So paragraphs 1 through 7, and 9, those all relate

25  generally to preserving evidence and not using discoverable

 1    information.  I skipped paragraph 8 because that's a little

 2    different.  Paragraph 8 is a -- basically an admonition that

 3    nobody should violate this stipulation.

 4          The next one I haven't covered is paragraph 10.  This

 5    is really a scheduling provision.  It took the TRO and the

 6    preliminary injunction hearing off the calendar because the

 7    parties agreed -- they agreed, Your Honor, to the preliminary

 8    relief that Moog said it needed.  Took that off calendar, but

 9    ordered and agreed that the parties would work on a framework

10    for discovery and a briefing schedule leading up to a PI

11    motion.

12          And, of course, a briefing schedule and discovery,

13    those are the types of things that are the purposes of this

14    order that the defendants consented to jurisdiction and venue

15    for.  If the Court needed to enforce a schedule, modify a

16    schedule, resolve an expedited discovery dispute, the parties

17    consented to the Court's authority to do that.

18          And that brings us to paragraphs 11 and 12, and these

19    are the ones that I think really matter most.

20          Paragraph 11, which we see we repeated in the other

21    stipulation, says that by agreeing to the stipulated order,

22    defendants consent to the jurisdiction and venue of this court

23    for purposes of the stipulated order only, and for no other

24    purpose.

25          And we just went through what those purposes are on

 1    its face.

 2            Paragraph 12 says this order shall remain in effect

 3    until a hearing on plaintiff's motion for preliminary

 4    injunction takes place and a final ruling on the merits is

 5    issued.

 6            And actually, Your Honor, in paragraph 12, it uses

 7    passive voice.  A ruling is issued.  It's agnostic as to which

 8    court issues -- issues that ruling.

 9            And I think we can -- we can put that first

10    stipulation, ECF-225, aside for now, because I covered the

11    content.  There is nothing in it that says the parties

12    consented to jurisdiction for the purpose of resolving the

13    merits motion.  It's scheduling, it's discovery, it's

14    preserving history.

15            THE COURT:  Got it.

16            MR. GROSS:  Your Honor, I can be a little briefer

17    with the next stipulation, this is ECF 33.  I think, again,

18    the title is useful.  This was a stipulation and proposed

19    order regarding expedited discovery procedures and a briefing

20    schedule for the preliminary injunction.  A schedule, a

21    briefing schedule for the preliminary injunction, not an

22    agreement to which which court has authority to resolve it.

23            So, we see a repetitive paragraph 1 that reminds

24    everybody of their -- of their obligation to comply with the

25    earlier stipulation.

1            Paragraph 2 authorizes the parties to serve some

2    discovery requests.

3            Paragraphs 3 through 5, 7, 10, and 11, authorize

4    limited depositions and the parameters around them.

5            Paragraph 6, which we've already touched on briefly,

6    that one sets out a schedule for the discovery, Your Honor,

7    including an aspirational date for -- oh, excuse me,

8    including, yeah, including an aspirational date for the

9    hearing depending on the Court's availability.

10           8 is a paragraph that allows a party to seek to

11   modify the schedule.  And, again, this is the type of thing

12   the parties consented to the Court having authority to

13   resolve.  If you need to change the schedule and you show good

14   cause, nobody was going to argue that the Court didn't have

15   jurisdiction to resolve that dispute.

16           Same with paragraph 9 about discovery disputes.  This

17   paragraph authorized Judge -- authorized the parties to submit

18   letter briefs to Judge McCarthy to resolve any discovery

19   disputes that might arise.

20           This is why the consent is limited in scope,

21   Your Honor.

22           Paragraph 12 says simply that entering into this

23   stipulation won't be used against any party in a manner to

24   oppose or support Moog's motion for a preliminary injunction.

25           And paragraph 13, Your Honor, this is the key one

 1   that you mentioned before, expressly stating what a purpose of

 2   this stipulation is, it's for expedited discovery.

 3        14, now this one's key, too.  This repeats the

 4   language that we saw in the other paragraph about the consent

 5   being limited.  It's just for purposes of the stipulated

 6   order.  But this one actually really hits it on the nose with

 7   the final sentence.  It says any and all other challenges to

 8   jurisdiction and venue and here in this Court are explicitly

 9   preserved.

10        And now Moog has argued that any other matters, any

11   and all other challenges to jurisdiction and venue are

12   preserved as though the defendants waived their right to

13   challenge jurisdiction and venue for purposes of merits

14   disputes.  That's not, I think, a fair -- a fair reading.

15        The parties consented to jurisdiction and venue for

16   limited purposes, and other than that, other than that limited

17   consent, they explicitly preserve their challenges to the

18   Court's venue and jurisdiction.

19        So, Your Honor, this is a -- this was really my first

20   point about how we think that Magistrate Judge McCarthy just

21   made a mistake in looking at the text.  We don't think he

22   considered the stipulations in their entirety, and we don't

23   think he considered them accurately.  And when the entire

24   agreements are looked at and examined for what their purposes

25   are, we think there's really only one inescapable, unambiguous

1    reading here, which is that consent is limited.

2          So, Your Honor, I mentioned there was a second reason

3    where we saw error in the report and recommendation, and

4    that's an error of law.  We touched on it when I mentioned the

5    Arrowsmith case to Your Honor, but we think it's legal error

6    for a district court to proceed with substantive proceedings

7    on the merits before -- before resolving challenges to the

8    Court's authority, its personal jurisdiction, its venue, and

9    considering a transfer motion.

10         I mentioned Arrowsmith, I mentioned In Re: Google and

11   In Re: Apple, and I'll leave it at that.

12         But there is another error of law that we see in the

13   report and recommendation, and that's this.  It's -- it's the

14   way Magistrate Judge McCarthy went about his -- his analysis

15   of the consent, and then his treatment of the venue transfer

16   motion.  It was part of -- it was part of the -- the

17   jurisdictional and venue challenges that the defendants

18   brought.

19         And to be clear, Your Honor, they brought it on the

20   day an answer was due, instead of filing an answer at the

21   earliest opportunity, they filed these motions.

22         If Magistrate Judge McCarthy was correct, and we

23   don't think he was, but if he were correct in finding that the

24   parties through these stipulations consented to the Court's

25   jurisdiction and venue for the preliminary injunction ruling,

1   then he viewed the stipulation as a forum selection clause.

2           THE COURT:  As an exclusive agreement to

3   jurisdiction, not --

4           MR. GROSS:  Yep.

5           THE COURT:  -- an agreement to jurisdiction here and

6   maybe elsewhere.

7           MR. GROSS:  That's right, Your Honor.  And I think,

8   again, you're a step ahead of me.  In order to --

9           THE COURT:  No, no.  Believe me, I'm not.  I'm not.

10          MR. GROSS:  Okay.  All right.  Well, in order to

11  support his conclusion, he had to view the -- the stipulations

12  as an exclusive forum selection clause.  And the 2nd Circuit

13  has dealt with --

14          THE COURT:  Right.

15          MR. GROSS:  -- exclusive forum selection clauses, and

16  forum selections clauses that are not exclusive before.

17          And the rule of thumb here is that even a forum

18  selection clause that clearly selects one forum by the parties

19  to resolve their disputes unless it contains that sort of

20  exclusive, exclusionary language saying in no other forum,

21  then courts generally don't enforce them, and they will

22  allow -- in fact, they have to deal with venue transfer

23  considerations.  And Magistrate McCarty didn't do that.

24          THE COURT:  I got that.  I got that.  I understand

25  that.  Go to your third point, if you would.

1          MR. GROSS:  All right.  Okay.  Thank you, Your Honor.

2          So we do submit that a 1404 analysis is necessary if

3     there is a finding of consent, and it wasn't -- it wasn't made

4     here.

5          So the last point, Your Honor, is really one where I

6     just want to appeal to our -- the basic sense of, well, really

7     common sense and fairness here.

8          The -- Skyryse is a small California company.

9     Mr. Pilkington lives in California.  Ms. Kim lives in

10    California.

11         The plaintiff has conceded in its briefing here that

12    all of the claims are predicated on its allegations of trade

13    secret misappropriation, and all of the alleged acts of

14    misappropriation were said to have occurred in California.

15         It just doesn't make sense that when the parties

16    enter into a stipulation four days into this case, and the

17    defendants say we're only consenting for purposes of the

18    stipulation and reserving explicitly our right to challenge

19    the courts in Buffalo, New York, a Buffalo, New York courts

20    jurisdiction and venue, it doesn't make sense to find a

21    meeting of the minds that they actually agreed that the Court

22    here would take substantive action and resolve motions as

23    important as a preliminary injunction.  It just --

24         THE COURT:  Okay.

25         MR. GROSS:  -- doesn't make sense.  It's not

1   supported by the text.  And it's, frankly, not supported by

2   even the extrinsic evidence, if the Court is inclined to

3   consider it, which we've provided in the supplemental brief

4   that Magistrate Judge McCarthy declined to consider.

5           And then finally, Your Honor, the last point about

6   the sort of pragmatic issues that I think the motion raises,

7   and the report and recommendation raises, is that if the Court

8   were to continue along the path that Magistrate Judge McCarthy

9   has charted, it raises the very real and, I think, likely

10  possibility that this Court issue substantive rulings, engages

11  even further into the merits of the case, devotes more

12  resources to it, only to then turn to the transfer of

13  jurisdictional analysis and decide that this case belongs in

14  the Central District of California where the witnesses and

15  documents are, and the parallel criminal investigation is

16  being pursued by the U.S. Attorney's Office in that district,

17  and then move the case.  At which point, there's a risk of

18  inconsistent outcome, there's a risk of a total waste of

19  resources, and we think that's a -- for judicial economy, that

20  should be avoided.

21          So with that, Your Honor, I'm happy to catch my

22  breath and turn it over to one of my colleagues.

23          THE COURT:  Okay.  So, Mr. Truitt, is there anything

24  you would like to add?

25          MR. TRUITT:  Yes, Your Honor, thank you.

1          So, Mr. Gross touched on most of the -- of the -- of

2   the -- of the real salient points, so I just wanted to provide

3   a couple -- a couple small points to supplement, as well.

4          I think the first thing that we would like to remind

5   the Court is that stipulations adjourning the return date of a

6   event that's creating -- that's created by a filing happen all

7   the time.

8          THE COURT:  Yep.

9          MR. TRUITT:  They happen all the time.  They are

10  constantly adjourned by a stipulation between the parties

11  where the parties do not consent to the jurisdiction for the

12  Court, and a subsequent date before that same court is

13  established.  And they are constantly interpreted to not

14  consenting to the jurisdiction of the Court for the very

15  purpose of what is outlined in the Federal Rules of Civil

16  Procedure 12(h)(1), which is the only basis to find consent is

17  when the parties fail to raise it in a responsive motion or an

18  answer.

19         The second point is, Judge McCarthy's decision, it

20  says "the Court," but in nowhere in these stipulations is the

21  Court defined as "the Western District of New York."

22         In their -- there are parts of the stipulation where

23  Judge McCarthy is specifically identified, so you know those

24  things specifically refer to Judge McCarthy.

25         However, there is no basis to say "the Court" should

1   mean "the Western District of New York" as opposed to the

2   Court that is deciding or required to evaluate the

3   merits-based decision or whether or not this stipulation needs

4   to be enforced.

5          Now, the first stipulation is designed to preserve

6   evidence, and prevent, you know, provide certain restrictions

7   as the parties are -- are preparing for a -- a -- a

8   preliminary injunction hearing.

9          But the parties well knew that there were

10  jurisdictional disputes at issue because they were reserved.

11  And the purpose of that stipulation is simply to preserve

12  those protections to the plaintiff in the event that

13  jurisdiction is found to not exist and the case is dismissed.

14         The second thing is that Judge McCarthy --

15         THE COURT:  So your argument -- your argument is that

16  when the stipulation uses the words "the Court," it means

17  generically "the Court where the case is then pending," not --

18         MR. TRUITT:  No, I think it's two points, Your Honor.

19         THE COURT:  Go ahead.

20         MR. TRUITT:  I think -- that is my interpretation of

21  it.  But there's another point that comes to drafting.  And if

22  there is a term that is ambiguous, and here, Judge McCarthy's

23  interpretation of "the Court" meaning "the Western District of

24  New York" specifically creates an ambiguity, where I would say

25  none exists, then the proper procedure for the Court would

1  have been to look to the extrinsic evidence, which Mr. Gross's

2  firm submitted in papers that were not -- that were not

3  considered by the Court.

4  THE COURT:  Got it.  Got it, yep.

5  MR. TRUITT:  So now the second thing is that the

6  report and recommendation, it doesn't -- it doesn't address

7  the full -- the full text, and -- or even the full sentence of

8  what it refers to.

9  So I have to pull up docket number 33, and then we go

10  down to --

11  THE COURT:  Hang on.

12  MR. TRUITT:  -- the last paragraph.

13  THE COURT:  Hang on, hang on.

14  MR. TRUITT:  -- and the portion --

15  THE COURT:  Wait, wait, wait.  Stop, stop, stop.

16  MR. TRUITT:  Sorry, sir.

17  THE COURT:  33 is the second stipulation?

18  MR. TRUITT:  Yes, sir.

19  THE COURT:  Okay.  I got it.  Go ahead.

20  MR. TRUITT:  Okay.  So in the report and

21  recommendation, the language that Judge McCarthy uses from

22  paragraph 14 is:  By agreeing to this stipulated order, comma,

23  defendants consent to the jurisdiction and venue of the Court

24  for purposes of this stipulated order.

25  And that's where it stops in the report and

1    recommendation.

2           But the full sentence says:  Only and for no other

3    purpose.

4           And then there's another sentence that says:  Any and

5    all other challenges to jurisdiction and venue in the Western

6    District of New York are explicitly preserved.

7           So when you are -- the stipulations at no point say

8    there is an express consent to the Western District of

9    New York.

10          So when you are looking at that consent and then

11   applying it for another purpose other than the demarked

12   purposes in the stipulation, you are essentially finding that

13   consent for another purpose which violates the express

14   language of the stipulation.

15          So if the Court had used the full sentence --

16          THE COURT:  I got it.

17          MR. TRUITT:  -- it would reach the opposite

18   conclusion.

19          Finally, you know, reservations of rights which,

20   again, are not commonly used in jurisdictional stipulations

21   anymore because of Rule 12(h), but they are designed to be a

22   complete defense against the very argument that Moog has

23   raised now, which is that some sort of waiver, consent,

24   estoppel needs to exist because we have already agreed to

25   participate in limited discovery during the pendency of these

1   motions.

2          Now, in every other context when they are used, a

3   reservation of right is considered to be a hands-down, no

4   dispute, complete defense to the very arguments that Moog has

5   raised.

6          So for the Court to reach its decision without

7   addressing the fact that there is an express reservation of

8   the right to challenge any and all other challenges is -- is,

9   again, just taking the stipulation out of context.

10          Finally, the last point that we wanted to make right

11   now, unless we're going to address the actual merits of the

12   jurisdictional motions that were --

13          THE COURT:  No, we're not.  We're not.

14          MR. TRUITT:  -- is that plaintiff's argument, which

15   was first raised in emails to the Court, has never been

16   alleged against our clients.

17          We did not file a supplemental brief as Gabe's client

18   did, because we did not want plaintiff doing the very thing

19   that it's done, which is raise new arguments that we would not

20   get a chance to respond to.

21          So we did not take Magistrate Judge McCarthy up on

22   his opportunity to advise the Court of further developments as

23   it would affect a venue motion.

24          So, the arguments that plaintiff has now raised,

25   which is the basis of the RRO as it respects to the

1    jurisdictional motions, they do not appear in any responsive

2    paper to the plaintiffs.

3              THE COURT:  Okay.  Okay.

4              MR. TRUITT:  I mean, sorry, to the individual

5    defendants.

6              THE COURT:  Got it.  Thank you.

7              MR. TRUITT:  Thank you, Your Honor.

8              THE COURT:  Ms. Dutta?

9              MS. DUTTA:  Good afternoon, Judge.

10             I -- I find it difficult to understand defendants'

11   reading of these stipulated orders, Your Honor.

12             I think if you look to the first order, the

13   March 11th order, paragraph 11 says expressly, by agreeing to

14   this stipulated order, defendants consent, consent, to the

15   jurisdiction and venue of this Court for purposes of the

16   stipulated order only and for no other purpose.

17             That stipulated order, Judge, sets a hearing date on

18   the preliminary injunction motion.

19             THE COURT:  Where does it say that this Court can

20   grant or -- or can decide the preliminary injunction?  Where

21   do they -- where do they explicitly agree to this Court's

22   jurisdiction to decide the preliminary injunction?

23             MS. DUTTA:  Judge, they agree to it for purposes of

24   the stipulated order.

25             THE COURT:  Where?  Where?  Give me the language --

1  give me the language of the order that says the Western

2  District of New York is going to decide the preliminary

3  injunction.

4       MS. DUTTA:  Well, Judge, paragraph 10 of the first

5  stipulation.  Hearing.  On or after --

6       THE COURT:  Hearing.  That's a hearing.  That's a

7  hearing, that's not a decision.

8       I want -- I want the language that says that they're

9  stipulation to merits-based relief in this Court.

10       They've reserved the right to challenge this Court's

11  jurisdiction, and so what I -- what I want is language that

12  says that this Court is to decide the preliminary injunction.

13       MS. DUTTA:  Judge, I think you get there from

14  paragraphs 10 to 12 of that first stipulation, setting a

15  hearing date subject to this Court -- the Court, the Court,

16  capital C, Court, choosing, by agreeing to the order

17  defendants consent to the jurisdiction of this Court for

18  purposes of stipulated order, and this stipulated order

19  remains in effect until a hearing on the motion for

20  preliminary injunction and a final ruling takes place.

21       THE COURT:  But the order -- the -- the whole crux of

22  the order is to expedite discovery and set a briefing

23  schedule.  That's the whole idea behind the order, isn't it?

24       MS. DUTTA:  Your Honor, respectfully, I disagree.

25       Paragraph 1 of the first order, defendant shall

1  refrain from using, accessing, disclosing, copying,

2  transmitting for any purpose any non-public information.

3       This is the temporary relief that Moog was moving for

4  when it --

5       THE COURT:  Yeah, which is -- which is -- which is to

6  put off the date of the TR -- which is to put off the

7  necessity for a TRO.

8       I mean, the defendants say you've already gotten what

9  you've asked for in your request for a preliminary injunction.

10  Why isn't that correct?  Why haven't you gotten what you

11  wanted in your preliminary injunction.

12       MS. DUTTA:  Your Honor, we resolved the temporary

13  restraining order and set in place a schedule for expedited

14  discovery so that Moog could understand and develop the

15  factual information around what happened here.

16       THE COURT:  So what more do you want?  What's the

17  preliminary relief that you don't have now that you want?

18       MS. DUTTA:  Your Honor, the parties are still in the

19  midst of discovery.  Depositions haven't even occurred yet.

20  We will --

21       THE COURT:  And you can't tell me any preliminary

22  relief that you don't have now that you want now?

23       MS. DUTTA:  I can't right now, Judge, but we're

24  entitled to --

25       THE COURT:  So -- so why isn't that very, you know,

 1   Mr. Gross makes a pretty compelling argument that if this case

 2   belongs in California, it belongs in California now, not after

 3   I, perhaps, say that there's a likelihood of success on the

 4   merits, and the Court in California says the hell there is.

 5        You know, why isn't there a compelling practical

 6   reason to send this case to California now if, in fact, the --

 7   this Court venue is appropriate there, not here?

 8        MS. DUTTA:  Well, Your Honor, looking at the docket

 9   in this case, this case was filed I believe -- it was in

10   March, and there's almost 300 docket entries since that time.

11   It's not even been a full year.  All of those docket entries

12   spring from these two stipulations.

13        The parties negotiated for and agreed to expedited

14   discovery.  At this point --

15        And that discovery should be counted against Skyryse,

16   Your Honor, for purposes of the motion of transfer.  They've

17   agreed to it.  It's happened, there's been numerous --

18        THE COURT:  What do you mean, counted against them?

19        MS. DUTTA:  Your Honor, they reference two cases, In

20   Re: Google and In Re: Apple, in which the courts held that

21   litigation that occurred after the motion to transfer should

22   not be counted against the moving parties because they had

23   already made their motion.

24        That's not the case here, Judge, because both -- all

25   the parties contemplated discovery in these two stipulations.

Moog v Skyryse - Oral Argument - 11/29/22

1   They agreed to it at the outset before those motions to

2   transfer were filed.  And as a result of that, we've got

3   almost 300 docket entries, numerous appearances in front of

4   Judge McCarthy and Your Honor.

5        At this point, transferring the case to California

6   would be hugely inefficient.

7        THE COURT:  Okay.  Tell me -- okay, explain that to

8   me.  Explain -- explain why transferring the case to

9   California now would be inefficient for this Court.  What's

10  going to happen that's inefficient?

11       MS. DUTTA:  Your Honor, a new judge, a new court

12  would have to start from scratch.

13       THE COURT:  Why?  Why?  There's been a -- you have a

14  stipulation that covers expedited discovery, that will remain

15  in effect because it's going to remain in effect until a

16  hearing on the plaintiff's motion for preliminary injunction

17  takes place and a final ruling on the merits is issued.

18       MS. DUTTA:  Your Honor, the amount of familiarity,

19  the amount of briefing that has already been done in front of

20  this Court, the active involvement of Magistrate Judge

21  McCarthy in the discovery disputes, of which there have been

22  many, that's -- that's not going to be easily replicated

23  without a substantial amount of time by a new judge and a new

24  court.  And why?  They've agreed --

25       THE COURT:  Because -- because -- because if I don't

 1   have jurisdiction and I enter relief -- well, for two reasons,

 2   I guess, to answer your question.

 3          Number 1, because if I don't have jurisdiction, how

 4   would I enter a merits-based relief against a party over which

 5   I don't have jurisdiction?

 6          So I -- so I enter merits-based relief against

 7   Skyryse, and I say, oops, never had jurisdiction in the first

 8   place.  That's a problem.  Especially because, as -- as I

 9   think you and I might be able to agree, there's nothing that

10   explicitly says in either of these stipulations, that this

11   Court is to decide a preliminary injunction motion; and then

12          Number 2, because if the case ends up getting

13   transferred -- putting that aside, let's -- let's put that

14   aside, if the case ends up getting transferred after the

15   preliminary injunction is issued, a judge in California is

16   going to have to get up to speed then anyway.

17          So not only have we wasted the time that this Court

18   has spent getting up to speed to enter the preliminary

19   injunction, we now have the court in California having to do

20   everything that it would have had to do three or four or six

21   months earlier had I transferred it earlier on.

22          Aren't those two good reasons?

23          MS. DUTTA:  That's a very good reason, Your Honor,

24   not to transfer the case, period, the end.  Before or after

25   the preliminary injunction.  Absolutely.

1          THE COURT:  Right.  So your argument is that by

2    entering into this stipulation, they really didn't reserve

3    their right to -- to raise jurisdictional arguments, they

4    really consented to jurisdiction wholesale?

5          MS. DUTTA:  Judge, we absolutely take the position

6    that they have forfeited arguments for purpose of the entire

7    case relating to jurisdiction and venue, for purposes of --

8          THE COURT:  Even though -- even though the explicit

9    language of the agreement says they consent to jurisdiction

10   and venue of this Court for purposes of the stipulated order

11   only?

12         How do you -- how do you give meaning to that by --

13   with your argument?  How -- how does that provision, you know,

14   there's a -- a principle that the Court should try to give

15   meaning to every provision of a contract.

16         How do I give meaning to that provision if I accept

17   what you're arguing to me now?

18         MS. DUTTA:  Your Honor, we made this argument in our

19   papers, and our argument is that their litigation conduct has

20   forfeited that reservation of rights.

21         They have litigated in this Court.  They have agreed

22   to these two stipulated orders that have spawned discovery

23   leading to 300 docket entries' worth of discovery issues and

24   disputes, Your Honor.  That is conduct that evidences a

25   forfeiture of this defense for the entire case.

1          THE COURT:  But their conduct was simply to comply

2    with the stipulation that they entered into, right?

3          MS. DUTTA:  That they entered into, exactly,

4    Your Honor.

5          THE COURT:  Right.  And the stipulation says

6    explicitly, both of them, the defendants consent to the

7    jurisdiction and venue of this Court for purposes of this

8    stipulated order only.

9          I mean, isn't your argument circular?  That -- that

10   -- that because they stipulated to the purposes of this order,

11   and because this order really stipulates to jurisdiction

12   generally, they've stipulated to jurisdiction generally and,

13   therefore, that provision doesn't mean anything?  I mean,

14   that's a circular argument, isn't it?

15         MS. DUTTA:  No, Your Honor, because they have -- they

16   have actively litigated in this Court.

17         THE COURT:  By doing what?

18         MS. DUTTA:  By engaging in the discovery contemplated

19   by these orders, which, like I said, Your Honor, has spawned a

20   number of disputes.  We have -- we have been actively engaged

21   in litigation in this Court, all the parties.

22         THE COURT:  Let me ask you this.  What about -- what

23   about Mr. Gross's argument that even if they did stipulate to

24   venue in this Court, that that is not a stipulation to venue

25   exclusively in this Court?

 1              MS. DUTTA:  Well, first, I would note, Judge, that

 2      they have -- defendants have a very high burden to transfer

 3      from plaintiff's initial filing.  They have to show by clear

 4      and convincing evidence a strong case for transfer.

 5              Secondly, it is undisputed that Magistrate Judge

 6      McCarthy's order as far as a motion to transfer is reviewed

 7      under clearly erroneous standard.  That's a very highly

 8      deferential standard.

 9              THE COURT:  What's the basis for this Court's venue?

10              MS. DUTTA:  I'm sorry, Judge?

11              THE COURT:  What is the basis for this Court's venue?

12              MS. DUTTA:  Substantial -- the underlying facts, as

13      substantial underlying facts have occurred in this venue.

14              THE COURT:  Okay.  And what substantial underlying

15      facts occurred here?

16              MS. DUTTA:  The trade secrets that were

17      misappropriated by defendants were housed in this district.

18      And that, Your Honor --

19              THE COURT:  Where were they misappropriated?

20              MS. DUTTA:  I'm sorry, Your Honor?

21              THE COURT:  Where were they misappropriated?

22              MS. DUTTA:  They -- they were housed here, and they

23      were misappropriated by defendants in California.  Well, they

24      were accessed by defendants in California, improperly

25      accessed.

1      THE COURT:  And they were housed here.  When you say

2  they're housed here, how are they housed here?

3      MS. DUTTA:  They are stored in a server located in

4  East Aurora, Your Honor.

5      THE COURT:  The server is physically located in

6  East Aurora?

7      MS. DUTTA:  Correct.

8      THE COURT:  Okay.

9      MS. DUTTA:  And in addition to that, Your Honor, the

10  individual defendants worked for an East-Aurora-based company,

11  they were overseen by a manager in East Aurora, they had

12  regular communications with East Aurora, they traveled to

13  East Aurora as part of their employment.

14      Moreover, Skyryse engaged in poaching of

15  East-Aurora-based employees, Your Honor.

16      So there are a number matters of venue, Your Honor.

17      THE COURT:  Okay.  Okay.  Okay.  Any other arguments

18  you want to make to me about the text of the stipulations?

19      MS. DUTTA:  Your Honor, I would just note again that

20  paragraph 12 in the first stipulation presupposes that those

21  stipulated orders remain in place until a final ruling on the

22  merits of the issue, and that presupposes this Court making

23  that ruling.

24      THE COURT:  Why -- no.  So the second -- the second

25  sentence you just said, I think, to me, is a non sequitur.

1          Why does that presuppose that the ruling is going to

2   be made in this Court?

3          MS. DUTTA:  Because the hearing is scheduled for this

4   Court.

5          THE COURT:  Okay.  Your friends on the other side say

6   that that's not necessarily the case because the words "the

7   Court" can be interpreted -- can mean "the Court where a case

8   is then pending."  And they -- and they support that argument

9   with the references to Judge McCarthy, which seem to suggest

10  that where the parties wanted to say "the Western District of

11  New York," they didn't want do it by saying Judge McCarthy,

12  and where they wanted to use the more generic term "the Court"

13  that they wanted to do that, too.  Why isn't that correct?

14         MS. DUTTA:  Your Honor, the reference to Magistrate

15  Judge McCarthy, that's in the second stipulation in

16  paragraph 9, it's specifically to reference his standing order

17  regarding discovery disputes and how those disputes are to be

18  addressed.

19         Also, in that second order, paragraph 14, by agreeing

20  to this stipulated order, defendants consent to the

21  jurisdiction and venue of the Court, the Court, for purposes

22  of the stipulated order and for no other purpose.  Any and all

23  other challenges to jurisdiction and venue in the Western

24  District are preserved.  The Court and the Western District

25  are the same.

1          THE COURT:  Okay.  Okay.  Do you want to address

2     the -- the -- the third -- the common-sense argument that

3     Mr. Gross made?  That this case belongs in California and

4     belongs in California now, and -- and the problems that might

5     occur were this Court to enter merits-based relief now and

6     then decide, oops, didn't have jurisdiction.

7          MS. DUTTA:  Your Honor, we -- we believe that there

8     is jurisdiction for purposes of the preliminary injunction

9     hearing and that decision.

10          THE COURT:  No, I know that.  But my point is,

11     Judge McCarthy decided to do this jurisdictional motion

12     piecemeal.  He decided to say -- he decided to say, look it,

13     we've got jurisdiction for purposes of the preliminary

14     injunction hearing, and I'm going to put off the decision on

15     the jurisdictional issue overall later on.

16          So that creates the possibility of the Court now

17     granting preliminary injunction merits-based relief, and then

18     finding it was without jurisdiction.  That is a possibility

19     inherent in what Judge McCarthy decided.

20          Mr. Gross says, Judge, that's -- that's nonsensical,

21     that's -- that's -- it defies common sense to have one court

22     granting merits-based relief, and then finding that it didn't

23     have jurisdiction to grant that -- maybe I'm overstating

24     because I may have jurisdiction to grant the merits-based

25     relief because your argument is I have limited jurisdiction to

 1  a preliminary injunction.

 2         And Mr. Gross says -- and I'm sorry if I'm misstating

 3  your argument as well as you did, Mr. Gross -- but there's a

 4  common-sense problem with the Court granting merits-based

 5  relief and then finding it doesn't have jurisdiction over the

 6  case and transferring the case to another court that will have

 7  to consider the same sorts of issues.

 8         So, as a -- as a for instance, like we would with

 9  success on the merits, like I said earlier, I make a decision

10  saying you're entitled to a preliminary injunction because

11  it's likely that you're going to succeed on the merits.  And

12  the court in California says the hell it is.

13         Isn't that a compelling common-sense argument to

14  transfer the case now?

15         I'm not saying that carries the day, Ms. Dutta,

16  because there are other issues, legal issues.  But -- but

17  isn't there -- there's some merit to what Mr. Gross is saying

18  by way of common sense?

19         MS. DUTTA:  Your Honor, that -- I think that that

20  presupposes we would lose on personal jurisdiction for the

21  remainder of the case, and I don't think we do.  And we're

22  happy to discuss that, but I think we --

23         THE COURT:  It doesn't -- it doesn't presuppose it,

24  it just -- it just raises the possibility that you might.

25         MS. DUTTA:  And if it does, we'll go elsewhere,

 1   Judge.  But this --

 2         THE COURT:  And that would create -- and that would

 3   create the common-sense problems that Mr. Gross pointed to,

 4   correct?

 5         MS. DUTTA:  No, Your Honor.  Because we would have,

 6   or not, a preliminary injunction motion, or preliminary

 7   injunction decision to which the parties had already consented

 8   to jurisdiction.

 9         THE COURT:  Okay.  Okay.  Mr. Gross, Mr. Truitt,

10   anything further?

11         MR. GROSS:  Your Honor, we're happy to -- we're happy

12   to submit it on these arguments.  Thank you.

13         THE COURT:  Okay.  Mr. Truitt?

14         MR. TRUITT:  The same, Your Honor.

15         THE COURT:  Okay.  Terrific.  Okay, folks, thank you

16   very much.  I appreciate the arguments, both sides, well

17   argued.  And we will issue a decision.

18         MR. GROSS:  Thank you, Judge.

19         MR. TRUITT:  Thank you, Your Honor.

20         MS. DUTTA:  Thank you, Judge.

21         (Proceedings concluded at 3:26 p.m.)

22              *    *    *    *    *    *    *

23

24

25

1

2

3                    **CERTIFICATE OF REPORTER**

4

5              In accordance with 28, U.S.C., 753(b), I

6    certify that these original notes are a true and correct

7    record of proceedings in the United States District Court for

8    the Western District of New York on November 29, 2022.

9

10

11                        s/ Ann M. Sawyer
                          Ann M. Sawyer, FCRR, RPR, CRR,
12                        NYRCR, NYACR, Notary Public
                          Official Court Reporter
13                        U.S.D.C., W.D.N.Y.

14

15

16

17

18

19

20

21

22

23

24

25